UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

VICTOR G. REILING ASSOCIATES and       :
DESIGN INNOVATION, INC.,                :
                                        :
        Plaintiffs,                     :       Civil No. 303CV222 (JBA)
                                        :
v.                                      :
                                        :
FISHER-PRICE, INC.,                     :
                                        :
        Defendant.                      :       FEBRUARY 19, 2004

## DECLARATION IN OPPOSITION TO MOTION TO AMEND

        ROBERT J. LANE, JR., under penalty of perjury and pursuant to 28 U.S.C.

§ 1746, declares the following is true and correct:

        1.      I am a member of the firm of Hodgson Russ LLP, attorneys for defendant

Fisher-Price, Inc. ("Fisher-Price"), in this action.  I make this declaration in opposition to

plaintiffs' motion to amend for two reasons:  (1) to place before the Court certain deposition

testimony and documents generated during discovery in this case; and (2) to describe for the

Court the additional discovery that would be required if plaintiffs' motion to amend is granted.

**Deposition Testimony and
Documents Relevant to this Motion**

        2.      Relevant pages from the deposition testimony of Bruce Popek, one of the

principals of plaintiff Design Innovation, are attached as Exhibit A.

        3.      Relevant pages from the deposition testimony of Bruce Benedetto, one of

the principals of plaintiff Design Innovation, are attached as Exhibit B.

4.      Relevant pages from the deposition of Douglas Melville, one of the principals of plaintiff Design Innovation, are attached as Exhibit C.

5.      Relevant pages from the deposition testimony of Victor Reiling, the principal of plaintiff Victor Reiling Associates, are attached as Exhibit D.

6.      Photos of the prototype plaintiffs submitted to Fisher-Price with their first submission are attached as Exhibit E.  I personally took these photos.

7.      Plaintiffs' second request for the production of documents, dated December 16, 2003, is attached as Exhibit F.

8.      A Fisher-Price Optic Force Rescue Hero photographer figure, of the type depicted in Exhibit T to the proposed second amended complaint, is attached as Exhibit G.

9.      A letter dated March 27, 2002 from Toy Biz (one of Fisher-Price's competitors) to Bruce Popek at Design Innovation, Inc. is attached as Exhibit H.  This letter was produced by Toy Biz earlier this week in response to a subpoena.  This letter reflects that plaintiffs submitted the "Reel Heroes" concept at issue in this case to Toy Biz for its consideration.  It was rejected by Toy Biz because it was not novel.

**Additional Discovery Would Be Necessary**
**if Plaintiffs' Motion to Amend Is Granted**

10.     In their papers supporting their motion to amend, plaintiffs argue that only minimal additional discovery will be necessary if the motion to amend is granted.  Fisher-Price disagrees with this position.

11.     First, plaintiffs seek to add claims relating to the Mission Select Jet, Fire Truck, and Police Cruiser, and the Mission Select Mountain Command Center play set.  I never asked any questions relating to these products at the depositions of plaintiffs' principals (Victor

Reiling, Bruce Popek, Bruce Benedetto, and Douglas Melville) or at the deposition of plaintiffs' expert, James Kipling. The reason I did not ask questions relating to these products is because I had no reason to believe that they were relevant to any claims in the case. They are not mentioned in the complaint or the first amended complaint in any respect. Indeed, the complaint and first amended complaint make clear on their face that only one Fisher-Price product is being charged with misappropriating plaintiffs' "concept" — Fisher-Price's Voice Tech Video Mission Rescue Heroes figures.

12.    I did ask questions about the Fisher-Price Voice Tech Jet, Fire Truck, and Police Cruiser. In response, Bruce Benedetto of Design Innovation testified specifically that plaintiffs were *not* making any claim with respect to these products. Exhibit B at 122-24. Accordingly, Fisher-Price was deprived of any opportunity to question plaintiffs' witnesses about the alleged basis for the claim they now seek to assert. Certainly, if plaintiffs are permitted to assert claims relating to these products, Fisher-Price should be permitted to re-depose them regarding these products.

13.    I never asked any questions of any witness regarding the Optic Force Rescue Heroes figure which plaintiffs now seek to add to their complaint. Again, I had no reason to believe that this figure was part of plaintiffs' claims. The figure had not been mentioned in any previous pleading or discovery request. Additional depositions of Messrs. Reiling, Popek, Benedetto, Melville, and Kipling would be necessary to explore the alleged basis for plaintiffs' claims regarding these products.

14.    I asked a very limited number of questions regarding Fisher-Price's Voice Tech Mission Command and Voice Tech Mission Select Rescue Heroes figures, because there had been no claim in any pleading that these figures were at issue in this case. Additional

questioning of the same deposition witnesses would be required regarding these products if plaintiffs' motion to amend is granted.

15.     At the depositions of Messrs. Reiling, Popek, and Benedetto, I asked a small number of questions regarding plaintiffs' claims, if any, to videos, movies, and/or computer games.  To the extent these questions were answered, plaintiffs' witnesses stated either that they were not making any claims regarding these products or that they were not sure whether or not they had claims regarding these products.  *See* Exhibit B at 128-30.  If plaintiffs are permitted to amend to add claims relating to these products, Fisher-Price would need to re-depose plaintiffs' witnesses to explore in detail the basis for any such claims.

16.     Finally, Fisher-Price has engaged in extensive investigation and discovery regarding prior art that is relevant on the issue of novelty with respect to the Voice Tech Video Mission Rescue Heroes figures.  Fisher-Price would be required to engage in a similar prior art/novelty search with respect to the other fourteen products that plaintiffs now seek to add.  Thus, Fisher-Price's expense and the expenditure of resources necessary to defend this case would be greatly expanded if plaintiffs' motion were granted.

17.     For these reasons, Fisher-Price has been substantially prejudiced by the failure of plaintiffs to include the products it now seeks to add in their original or first amended complaint.

Dated:  February 19, 2004

Robert J. Lane, Jr.

# EXHIBIT A

Reiling Associates vs Fisher Price

11/19/2003                                              Bruce Popek

Page 1

1                    UNITED STATES DISTRICT COURT
                       DISTRICT OF CONNECTICUT

2

3     - - - - - - - - - - - - - - - - x          COPY

                                        |
4     VICTOR G. REILING ASSOCIATES
      AND DESIGN INNOVATION, INC.,      |     Case Number
5             Plaintiffs,                     303-CV-222(JBA)

      VS.                                |
6
      FISHER-PRICE, INC.,                |
7             Defendant.

                                         |
8     - - - - - - - - - - - - - - - - x
9
10
11
                      DEPOSITION OF:  Bruce P. Popek
12                    DATE:  November 19, 2003
                      HELD AT:  Robinson & Cole
13                              280 Trumbull Street
                                Hartford, Connecticut
14
15
16
17
18
19
20
21
22
            Reporter:  Robin L. Balletto, RPR, LSR # 230
23            BRANDON SMITH REPORTING SERVICE
                      (860) 549-1850
24                44 Capitol Avenue
              Hartford, Connecticut  06106
25

7e44b5d4-64b4-40b4-8a46-7c666ad3207a

Reiling Associates vs Fisher Price

11/19/2003                                                          Bruce Popek

Page 42

1    or whether it was a sit-down meeting.

2         Q    Yes, I didn't ask it right.  I mean the actual

3    concept you were presenting, did you know how it worked?

4         A    Yes, oh, sure.

5         Q    Was there a --

6         A    No.

7         Q    TV/movie monitor on the backpack?

8         A    No.  Mr. Reiling is an independent designer

9    inventor.  Design Innovation is staffed with designers

10   and inventors.  We have a vision.  If you two gentlemen

11   left the room and had to do something, you would both do

12   it in your own way.  Neither of them would be wrong, but

13   more than likely neither of them would be the same, and

14   so what Mr. Reiling did could be totally different than

15   what was done by Design Innovation for that first

16   presentation.

17        Q    So do you know whether Mr. Reiling's view of

18   the concept was different from Design Innovation's?

19        A    The concept, the pure concept of putting an

20   image on the backpack to create a better role playing

21   experience for the child was true to both of us.

22        Q    Now, you just described the concept as putting

23   an image on the backpack.

24        A    Yes.

25        Q    Wasn't the concept putting an image in the

7e44b5d4-64b4-40b4-8a46-7c666ad3207a

Reiling Associates vs Fisher Price

11/19/2003                                                    Bruce Popek

Page 57

1       Q    I mean, are you familiar with the fact that

2    there have been certainly more than five, and probably

3    more than ten, play-sets marketed by different companies

4    that include a TV news van?

5       A    Oh, yes, I take that back.

6       Q    With a cameraman?

7       A    Ninja Turtles, they had a vehicle that was a

8    camera studio for one of their characters, yes.

9       Q    So action figures who were photographers

10   carrying TV cameras were not new in the fall of 1998?

11      A    No, it had been done before.

12      Q    So that is not part of the novelty of this

13   idea using a photographer action figure?

14      A    Absolutely not.

15      Q    Even one carrying a TV camera, that is not a

16   new idea?

17      A    Oh, no.

18      Q    Was there discussion at the first meeting in

19   the fall of '98 about the Reel Heroes concept of the

20   fact that Fisher-Price had previously marketed a hand

21   cranking film strip viewer?

22      A    Yes.

23      Q    And did Mr. Reiling bring one of those to the

24   meeting?

25      A    It may have been present, I'm not sure.  I

7e44b5d4-64b4-40b4-8a46-7c666ad3207a

Reiling Associates vs Fisher Price

11/19/2003                                                      Bruce Popek

Page 108

1    that.

2         Q     And it wouldn't be later because Toyfair would

3    be over?

4         A     That's right.  Although, I will say that some

5    toy companies now send out their catalogs after Toyfair

6    and ask for your business card and they send it to you,

7    because maybe it is not printed yet.

8         Q     In your experience does Fisher-Price usually

9    have theirs ready in time for Toyfair, their catalog?

10        A     Yes, they're a big company.

11        Q     Did you see the Mission Card figures at

12   Toyfair in 2001?

13        A     No.

14        Q     When did you first see one?

15        A     That I recall, probably a month or two ago

16   when it was brought to my attention by Stan Clutton.

17        Q     So in preparing to file the lawsuit in this

18   case you didn't look through Fisher-Price catalogs at

19   Rescue Hero figures?

20        A     We did not have in our possession at the time

21   the 2001 catalog, which probably was because we didn't

22   attend Toyfair or the Fisher-Price showroom in that

23   year, so the first we knew about anything that maybe

24   related to our concept was in the following year when we

25   saw the Mission backpacks.

7e44b5d4-64b4-40b4-8a46-7c666ad3207a

Reiling Associates vs Fisher Price

11/19/2003                                                         Bruce Popek

Page 109

1        Q    Do you know whether your company did any work

2    compensated on an hourly basis for the Mission Card

3    figures?

4        A    Probably not.

5        Q    Do you know for sure one way or the other?

6        A    No, I don't.

7        Q    Have you done any search for records that

8    would have reflected any such work?

9        A    No, I haven't.

10       Q    Has there been any effort to find records

11   showing your company's hourly work on Rescue Heroes?

12       A    Not by me.

13       Q    Are you aware of any such search by anyone?

14       A    No, I don't think so.

15       Q    I want you to assume for a minute, and I

16   realize that you think this is unlikely, but I'm just

17   trying to figure out what kind of documents you have.

18   Let's assume that your company had done hourly work

19   creating a model in 2000 of the Mission Card figure,

20   what sort of documents would exist at the company?

21       A    We would have -- it is a paid job now, so

22   we're getting paid work for hire, so we would have a

23   project book, and in that project book would be a single

24   line item, and it would have a project number, it would

25   have the client, and it would have a brief three- or

7e44b5d4-64b4-40b4-8a46-7c666ad3207a

Reiling Associates vs Fisher Price

Page 110

1    four- or five-word description of what the project is.

2         Q    Would there be a purchase order?

3         A    No.  Fisher-Price didn't necessarily use

4    purchase orders until 2003.

5         Q    Would there be an invoice?

6         A    Maybe, sometimes.  Yes, there would probably

7    be an invoice.  Not in that book, there would be an

8    invoice.

9         Q    Would there be some sort of record of the

10   number of hours and who spent them?

11        A    Yes, there would be.

12        Q    What would that document be?

13        A    There would be two documents, one would be

14   probably one of our individual employee's time sheets,

15   and the second document would be a dollar bill form or

16   billing form, because if we are working without a

17   purchase order, even if we are, we, at the end of each

18   project, collect our employees' hours from all the

19   employees that worked on them, and that way we would

20   know what to bill our clients.

21        Q    Is there some sort of document reflecting what

22   the assignment is from the company?

23        A    Well, yes.  In my case if I had a project,

24   typical project, my invoice, or I would quote a project.

25   If I quoted a project, it would have a brief description

7e44b5d4-64b4-40b4-8a46-7c666ad3207a

Reiling Associates vs Fisher Price

11/19/2003                                                     Bruce Popek

Page 111

1    of what I'm going to do, of course.  In the project file

2    there might also be any correspondence from the client

3    as to what they want done, so yes, there would be.

4    Usually there is, but not always, sometimes it is thrown

5    out.

6        Q    Earlier you testified that you are aware that

7    there was some early work done in the mid '90s on Rescue

8    Heroes by your company.

9        A    Yes.

10       Q    Are you aware of any other work ever done on

11   Rescue Heroes by your company from then till the

12   present?

13       A    Yes.

14       Q    Can you describe that for me?

15       A    Between the early concepts in the mid '90s,

16   before they were even known as Rescue Heroes they were

17   just action figures that we were working on, there was

18   probably some sculpting work done where we took

19   designers from Fisher-Price, their sketches and made

20   sculpted models of it, preliminary models.  Currently

21   we're doing -- we've done accessories, modeled

22   accessories for them over maybe the last three or four

23   years, and currently we're doing sculpting of the new

24   characters.  We've done a lot of sculpting on these

25   characters in parts of their line.

7e44b5d4-64b4-40b4-8a46-7c666ad3207a

Reiling Associates vs Fisher Price

11/19/2003                                          Bruce Popek

Page 112

1        Q      Do you know which characters are currently

2    being sculpted?

3        A      No, I don't.

4        Q      And do you know for what type of Rescue Hero

5    line those products are intended?

6        A      No, I don't.  Often the work we have, we're

7    just doing the work, we don't know what the plans are or

8    what the final things are.  These are also very

9    preliminary models.

10       Q      Do you know when those assignments were

11   received?

12       A      The current ones?

13       Q      Yes.

14       A      More likely within the last month or so.

15       Q      Now, the description you just gave me, and

16   correct me if I'm wrong, leads me to conclude that if we

17   just focus on the figures, your company did work in the

18   mid '90s, and then in the last few months.  Is there any

19   other work in between that that your company did on the

20   figures?

21       A      On the figures, no.  I don't think so.  Again,

22   this is not my area or not my client that I deal with.

23       Q      So there is none that you can think of, but it

24   is possible?

25       A      Sporadically through the years, probably it is

7e44b5d4-64b4-40b4-8a46-7c666ad3207a

Reiling Associates vs Fisher Price

11/19/2003                                                          Bruce Popek

Page 113

1    possible.

2         Q      You said that you had modeled accessories for

3    Fisher-Price relating to the Rescue Heroes line?

4         A      Yes.

5         Q      What are accessories?

6         A      Accessories are items or items that go along

7    with the character, or is sold along with the character

8    in the package.  There could be vehicles that are sold

9    separately or with characters.

10        Q      Like the fire truck we have over there, is

11   that an accessory?

12        A      In the broadest sense that is an accessory,

13   yes, you could say that that --

14        Q      Exhibit 219?

15        A      Yes.  I guess that is an accessory to go along

16   with your characters, yes.

17        Q      Or the jet, Exhibit 220?

18        A      Sure, that would be considered an accessory,

19   because without the character it wouldn't be that much

20   fun.

21        Q      Did Design Innovation model any of these

22   vehicles?  And just for the record, I'm pointing at the

23   fire truck, the jet, and the police cruiser.

24        A      I can't be sure.

25        Q      What accessories do you remember that Design

7e44b5d4-64b4-40b4-8a46-7c666ad3207a

Reiling Associates vs Fisher Price

11/19/2003                                                      Bruce Popek

Page 114

1    Innovation did model for Fisher-Price?

2         A    Without seeing a picture of them or a catalog,

3    I can't tell.  It would all be by memory of seeing it in

4    our offices.

5         Q    Take a minute and look through Exhibit 221 and

6    see if you recognize any?

7         A    We did Buster.

8         Q    And just for the record that is page 8 of

9    Exhibit 221, and Buster is the dog at the bottom of the

10   page, am I right?

11        A    Yes, I'm pretty sure we did that.  And I can't

12   be sure of anything on that page.  We did Smoky the fire

13   dog.

14        Q    What page is that on?

15        A    Page 82.  I think we did the mountain lyon,

16   the sculpting of the mountain lyon.  I think we did the

17   sculpting of the St. Bernard, which, again, is on page

18   82, and there may be more, but I'm not familiar with

19   them.

20        Q    Did your company do any model making of

21   play-sets for the Rescue Heroes?

22        A    Not that I recall.

23        Q    Let me direct your attention, we're still

24   looking at Exhibit 221, to page 78 and 79, which shows

25   the Aquatic Rescue Command Center, which is referred to

7e44b5d4-64b4-40b4-8a46-7c666ad3207a

Reiling Associates vs Fisher Price

11/19/2003                                                        Bruce Popek

Page 123

1         Q      Did you discuss making a complaint to

2    Fisher-Price that they were using your idea?

3         A      If anything, I would have said, Does Vic know

4    about this.

5         Q      Why didn't you make a complaint to

6    Fisher-Price two years ago when you first saw the ARCC?

7         A      Well, using a large image, and I'm pretty sure

8    that this was, this ARCC was earlier than two years ago.

9    I think there was a version of it that didn't have the

10   Mission Cards.  I'm not clear.

11        Q      Well, actually, let's clear that up, because

12   that is important, and I can show you the 2000 catalog,

13   just so you get it clear in your own mind.  We'll mark

14   that as Exhibit 232.

15                     (Defendant's Exhibit 232:  Marked for

16                      Identification.)

17   BY MR. LANE:

18        Q      And I think you'll find that the first time

19   the ARCC was ever marketed was the beginning of 2001,

20   but why don't you confirm that for yourself, and I'll

21   get one for your counsel.

22        A      Okay.  It is not in this catalog as far as I

23   can tell.

24        Q      In any event, let me ask again.  Why didn't

25   you complain to Fisher-Price whenever you first saw the

Brandon Smith Reporting Service

7e44b5d4-64b4-40b4-8a46-7c666ad3207a

Reiling Associates vs Fisher Price

11/19/2003                                                    Bruce Popek

Page 124

1    ARCC, which you recall as being more than two years ago?

2        A    Okay.  One, I had just seen it on a shopping

3    trip to Toys R Us.  Two, I never purchased the product,

4    to open it up and see what it was all about.  If you

5    look quickly at the picture of the product on the

6    package, which I think was pretty similar to this, you

7    cannot see the Mission Cards, I mean, I didn't.  I

8    didn't see the Mission Cards.  All I saw was a large

9    image on the top of the play-set.  That is what caught

10   my attention, and that is what I mentioned to Bruce.  As

11   I said, I never knew about the Mission Card aspect of it

12   until Stan brought it to my attention a couple of months

13   ago, and then I looked it up because I wanted to know

14   what he was talking about Mission Cards.

15        So why wouldn't we sue Fisher-Price?  We're

16   not the type of company that goes around suing people

17   because we see a similarity, and it is really not

18   anything that we have shown Fisher-Price.  We have never

19   shown them lenticular lenses moving back and fourth, and

20   in fact, because I never had the product in front of me,

21   I had never seen the product in person, I'm just

22   assuming by the pictures that it is lenticular lenses.

23   So we felt at that point that it wasn't an infringement,

24   it was a coincidence that they're using it on play-sets,

25   which I think probably had been done before maybe,

7e44b5d4-64b4-40b4-8a46-7c666ad3207a

# EXHIBIT B

Reiling Associates vs Fisher Price

11/18/2003                                                    Bruce J. Benedetto

Page 1

1                    UNITED STATES DISTRICT COURT
                        DISTRICT OF CONNECTICUT

2

3       - - - - - - - - - - - - - - - x          COPY
                                       |
4       VICTOR G. REILING ASSOCIATES,
        AND DESIGN INNOVATION, INC.,    |        Case Number
5               Plaintiffs,                       303-CV-222(JBA)

        VS.                             |
6
        FISHER-PRICE, INC.,             |
7               Defendant.
                                        |
8       - - - - - - - - - - - - - - - x
9
10
11
                         DEPOSITION OF:   Bruce J. Benedetto
12                       DATE:  November 18, 2003
                         HELD AT:  Robinson & Cole
13                                 280 Trumbull Street
                                   Hartford, Connecticut
14
15
16
17
18
19
20
21
22
                 Reporter:  Robin L. Balletto, RPR, LSR # 230
23                   BRANDON SMITH REPORTING SERVICE
                              (860) 549-1850
24                           44 Capitol Avenue
                     Hartford, Connecticut  06106
25

d4eb8e4c-2df6-4a2e-b780-88f522fe290b

Reiling Associates vs Fisher Price

11/18/2003                                              Bruce J. Benedetto

Page 106

1    the back, the Rescue Heroes R?

2         A    I don't recall, but they might have.

3         Q    Is that an image?

4         A    Depends on what it looks like.  Is it a molded

5    in logo like this here?

6         Q    Oh, the VT there for Voice Tech, is that what

7    you're looking at?

8         A    Uh-huh.

9         Q    How about that, does that infringe your idea,

10   the VT molded into the backpack?

11        A    I would say no.

12        Q    Why not?

13        A    Because there is no real enhanced play.

14        Q    Now, your first complaint to Fisher-Price was

15   when?

16        A    I don't recall.

17        Q    Did you make any complaint to Fisher-Price

18   before your attorney sent a letter to the company?

19        A    Me personally, no.

20        Q    Are you aware of Mr. Reiling or Mr. Popek

21   making any complaint direct to Fisher-Price before your

22   attorney sent a letter?

23        A    I don't recall.

24        Q    Did you keep up to date on the Rescue Heroes

25   line of products, what was happening with it?

d4eb8e4c-2df6-4a2e-b780-88f522fe290b

Reiling Associates vs Fisher-Price

Page 107

1      A     Somewhat.

2      Q     I'm going to show you the letter your attorney

3  wrote to Fisher-Price, which is dated January 21, 2002.

4  Do you recognize that as a letter that was sent on

5  Design Innovation's behalf to Fisher-Price?

6      A     Yes.

7      Q     And do you recognize that as the first

8  complaint made that Fisher-Price was appropriating any

9  Design Innovation ideas regarding the Reel Heroes

10  concept?

11      A     I'm not sure.

12      Q     Do you have any reason to believe there was an

13  earlier complaint?

14      A     No.

15      Q     That letter makes clear that it is at least

16  the first letter from your lawyer, right?

17      A     Yes.

18      Q     It doesn't refer to any earlier letter, right?

19      A     No.

20      Q     Are you aware of any earlier complaint?

21      A     No.

22      Q     My question to you is I want you to assume

23  that the Mission Card Rescue Heroes like Exhibit

24  216 were out in the market beginning in early 2001.  If

25  that was true, why did it take a year and a half for you

Reiling Associates vs Fisher Price

11/18/2003                                                    Bruce J. Benedetto

Page 108

1    to make any complaint to Fisher-Price?

2        A    I don't know.

3        Q    Were you even aware that these figures, the

4    Mission Card figures like Exhibit 216 existed before

5    this lawsuit was brought?

6        A    Might have, but I don't recall specifically.

7        Q    When they first came out to the market, do you

8    remember seeing them in 2001?

9        A    Again, it looks very familiar.

10       Q    When you first saw them, did you believe that

11   they infringed your idea at that time?

12       A    Yes.  Anything that had a picture on it we

13   were skeptical of, and I don't think -- I don't recall

14   who saw them first.

15       Q    Isn't it true that the first time you believed

16   that Fisher-Price had appropriated any of the Reel

17   Heroes ideas was when it marketed the Video Mission

18   figures?

19       A    That was when Vic felt that they were.

20       Q    Had you believed it earlier to that, earlier

21   than that?

22       A    I don't recall.  Like I said, if we saw these

23   we might have said, you know, this looks awfully close

24   to our concept.  An image, you know, role play.

25       Q    Even though the image in this case is meant to

d4eb8e4c-2df6-4a2e-b780-88f522fe290b

Case 3:03-cv-00222-JBA    Document 42    Filed 02/20/2004    Page 23 of 37
Reiling Associates vs Fishe.  rice
11/18/2003                                                    Bruce J. Benedetto

Page 117

1      Q    So if I look at my TV at home, I'm looking

2   into a viewer?

3      A    Well, that might be stretching viewer if

4   you're looking at the TV.

5      Q    Isn't that the case with Exhibit 216?

6      A    No.  I don't think so.  I think you're looking

7   at an image, and this is a viewer.  I could say this is

8   a viewer.

9      Q    If I look at my computer screen at work, am I

10  looking at a viewer?

11     A    No, I would say no.

12     Q    When I go to the movies am I looking at a

13  viewer?

14     A    No.

15     Q    So a viewer isn't something that just shows an

16  image, is it?

17     A    No.

18     Q    What makes the back of the backpack on Exhibit

19  216 a viewer?

20     A    That it is a small screen.

21     Q    Isn't it true that all of the submissions made

22  by Design Innovation and Victor Reiling to Fisher-Price

23  allowed the child to view multiple images through the

24  backpack rather than just a single image?

25     A    Yes, that is true.

d4eb8e4c-2df6-4a2e-b780-88f522fe290b

Reiling Associates vs Fisher Price

11/18/2003                                                    Bruce J. Benedetto

Page 122

1     Q     We've marked as Exhibit 219 the Voice Tech

2  fire truck.  Do you claim that this appropriates any of

3  the Reiling/Design Innovation submissions in any

4  respect?

5     A     I'll look at this, but I'm not entirely aware

6  of all aspects of it.

7     Q     Take as long as you need.

8     A     Did you have the box this came in?

9     Q     Yes, I have the box.  Do you want me to mark

10  it?  I should mark it if you're going to look at it.

11              MR. LANE:  I will mark as Exhibit 222 a

12  fire truck box.

13              (Defendant's Exhibit 222:  Marked for

14                 Identification.)

15     A     I would say no.

16  BY MR. LANE:

17     Q     Let me hand you the Voice Tech jet, which we

18  have marked as 220, and I guess I'm going to mark the

19  box as 223?

20              (Defendant's Exhibit 223:  Marked for

21                 Identification.)

22  BY MR. LANE:

23     Q     Does the Voice Tech jet appropriate any of the

24  ideas or features of the Reiling/Design Innovation

25  submissions to Fisher-Price?

d4eb8e4c-2df6-4a2e-b780-88f522fe290b

Case 3:03-cv-00222-JBA   Document 42   Filed 02/20/2004   Page 25 of 37
Reiling Associates vs Fishe.   .ice
11/18/2003                                          Bruce J. Benedetto

Page 123

1        A    I would have to say no.

2        Q    I'm going to hand you the Voice Tech police

3    cruiser.   This is Exhibit 224.

4                    (Defendant's Exhibits 224 and 225:

5                    Marked for Identification.)

6    BY MR. LANE:

7        Q    And the box is marked as Exhibit 225.  I have

8    the same question, does the police cruiser appropriate

9    any of the ideas or features of the Reiling/Design

10   Innovation submissions?

11                   MR. DIZE:  I'm going to object to the

12   line of the questioning on the grounds that he doesn't

13   necessarily know by taking a brief look at the product

14   whether it appropriates.

15                   MR. LANE:  Well, this case has been

16   pending for a year, presumably he should know what his

17   claims are.

18                   MR. DIZE:  My objection is the claims may

19   not be readily apparent from viewing the item here

20   today.

21   BY MR. LANE:

22       Q    I'll ask the question over again.

23                   Mr. Benedetto, does the Voice Tech police

24   cruiser appropriate any of the ideas or features of the

25   Reiling/Design Innovation submissions to Fisher-Price?

Reiling Associates vs Fisher Price

11/18/2003                                                    Bruce J. Benedetto

Page 124

1        A    I would say no.

2        Q    I have marked as Exhibit 221 the selected

3    pages from the Toyfair 2001 catalog.  Have you seen this

4    before?

5        A    Yes.

6        Q    And have you had a chance to go through it in

7    preparation for your deposition?

8        A    The catalog?

9        Q    Or pages from it.

10       A    Yes.

11       Q    So, for instance, this catalog has a

12   photograph of the Voice Tech jet on page 77, do you see

13   that?

14       A    Yes.

15       Q    And the fire truck?

16       A    Yes.

17       Q    So you were able to review those before your

18   deposition today?

19       A    Yes.

20       Q    And then on page 78 and 79 we have a picture

21   of something called the Aquatic Rescue Command Center,

22   and the short name given that is ARCC, A-R-C-C.  If I

23   refer to the ARCC, will you know what I'm talking about?

24       A    Yes.

25       Q    Do you know when Fisher-Price first introduced

d4eb8e4c-2df6-4a2e-b780-88f522fe290b

Reiling Associates vs Fisher Price

11/18/2003                                                      Bruce J. Benedetto

Page 126

1   the type that we have marked as Exhibit 209?

2        A    No, I do not know.

3        Q    Does the ARCC appropriate any of the ideas or

4   concepts in the Reiling/Design Innovation submissions?

5        A    I would say in the image of an enhanced role

6   play.

7        Q    Is it your claim, then, that Fisher-Price

8   couldn't use an image on any of its products after

9   receiving your submission?

10       A    If it is used in this context, I would say no.

11       Q    No, it could not?

12       A    No.

13       Q    And what is the context that you're referring

14  to in your answer?

15       A    That it is used with their action figures, it

16  is an image enhance, whether the image be done, like we

17  said, still life or otherwise, to enhance a role play.

18                    (Defendant's Exhibit 226:  Marked for

19                    Identification.)

20  BY MR. LANE:

21       Q    Exhibit 226, this is an EBay submission

22  showing a Teletubby.  Are you familiar with Teletubbies?

23       A    Yes.

24       Q    And this Teletubby has a video image on its

25  belly of some butterflies and flowers, do you see that?

d4eb8e4c-2df6-4a2e-b780-88f522fe290b

Page 128

1    You're not allowed to give a speaking objection when the

2    witness has not yet answered.

3    BY MR. LANE:

4        Q    Go ahead.

5        A    I might have said, or I'm sure I said that it

6    was in conjunction with the backpack, but my feeling is

7    that it's, the concept that was brought in was images to

8    enhance role play for the Rescue Heroes, and that is

9    what this one does, the ARCC.

10       Q    So you think that is how broad your concept

11   was?

12       A    Yes.

13       Q    Any image used with a Rescue Hero would

14   infringe your concept?

15       A    Yes.

16       Q    How about a video on TV?

17       A    No, I don't think that would be.

18       Q    Well, isn't that an image used to enhance role

19   play with Rescue Heroes?

20       A    You're watching a TV program or a tape?

21       Q    See there is a videotape that is sold along

22   with Exhibit 209?

23       A    Yes.

24       Q    You're not making any claim to that videotape,

25   are you?

11/18/2003                                          Bruce J. Benedetto

Page 129

1       A     No.

2       Q     Or any computer games, DVDs, are you making

3    any claim to those?

4       A     No.

5       Q     Or Rescue Heroes is coming out with a new

6    movie in the next couple of weeks, are you making any

7    claims to that movie?

8       A     No.

9       Q     Do you have any basis for making a claim to

10   the ARCC, other than the fact that there is an image in

11   the control center area at the top of the ARCC?

12      A     I would say no.

13      Q     If that was a still image, just a decal of the

14   character Warren Waters, would you still take the

15   position that it infringed your idea?

16      A     I would say yes.

17                    (Defendant's Exhibit 227:  Marked for

18                     Identification.)

19   BY MR. LANE:

20      Q     Let me hand you what's been marked as Exhibit

21   227.  This is an EBay page of an action figure called

22   Cravex from the line Visionaries.  Are you familiar with

23   Visionaries?

24      A     No, I'm not.

25      Q     Cravex has a hologram on his chest, and I will

d4eb8e4c-2df6-4a2e-b780-88f522fe290b

Reiling Associates vs Fisher Price

Page 130

1    tell you, even though you can't see it in this picture,

2    that it is basically a hologram of a pterodactyl type

3    creature.  If Fisher-Price made this after receiving the

4    Reiling/Design Innovation submissions, would you

5    consider it to be a misappropriation of your submission?

6        A    Without knowing this in more detail, I

7    couldn't say.

8        Q    What would you need to know to answer that

9    question?

10       A    Well, if I had the thing in front of me,

11   maybe.  It is hard to tell from this, it is not like a

12   Teletubby.

13       Q    Are there any other Fisher-Price products that

14   you're aware of, as you sit here right now, that you

15   think appropriated the Design Innovation/Reiling

16   submission that we haven't already talked about?

17       A    No.  Off the top of my head, I can't say.

18       Q    Let me hand you another exhibit.

19               (Defendant's Exhibit 228:  Marked for

20                  Identification.)

21   BY MR. LANE:

22       Q    This is Exhibit 228, and it is a memo for

23   Peter Pook dated December 7, 2000, and I believe it is

24   from Vic Reiling.  Have you seen it before?

25       A    I might have.

Brandon Smith Reporting Service

Reiling Associates vs Fisher Pı.

11/18/2003                                                    Bruce J. Benedetto

Page 171

1    Exhibit 209, which is a video mission backpack, and put

2    it on another action figure like Captain America, would

3    that infringe your submission?

4         A    I would have to say yes.

5         Q    And why is that?

6         A    If it used the video or image --

7         Q    On an action figure other than Rescue Heroes?

8         A    Yes.

9         Q    So your concept was not particular or specific

10   to the Rescue Heroes?

11        A    I would say no.

12        Q    What if Fisher-Price had put the same

13   lenticular lens image that we see on the backpack in

14   Exhibit 209 in a square on the front chest of the Billy

15   Blazes figure instead of on the backpack, would that

16   have infringed your submission?

17        A    I don't know.  I can't say.  I would have to

18   think about that one.

19        Q    So as you sit here now, you can't tell me

20   whether or not that would be an appropriation of your

21   submission, or the Reiling submission?

22        A    I would have to say that I think it would,

23   only because it is using an image.

24        Q    On an action figure, right?

25        A    Yes.

d4eb8e4c-2df6-4a2e-b780-88f522fe290b

# EXHIBIT C

1/22/2004                                                    Douglas Melville

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - )
                                )
VICTOR G. REILING ASSOCIATES    ) INDEX NO.
and DESIGN INNOVATION, INC.     ) 3:03CV222 (JBA)
          PLAINTIFFS            )
                                )
VS.                             )
                                )
FISHER-PRICE, INC.              )
          DEFENDANT             )
                                )
- - - - - - - - - - - - - - - - )

COPY

DEPOSITION OF:  DOUGLAS MELVILLE
ON: JANUARY 22, 2004
HELD AT: ROBINSON & COLE, LLP
         280 TRUMBULL STREET
         HARTFORD, CONNECTICUT

Reporter:  IRENE J. PARRISH, RMR, LSR #85

BRANDON SMITH REPORTING SERVICE, LLC

44 Capitol Avenue

Hartford, CT  06106

Tel:  (860) 549-1850

Fax:  (860) 549-1537

Brandon Smith Reporting

59d34bb8-099e-4433-ba8b-8debf227d2f7

1/22/2004                                         Douglas Melville

Page 14

1          problems that we solve -- any of the ideas or

2          concepts generated within that scope of work is

3          the property of Fisher-Price.

4    Q     And you get compensated?

5    A     And we get compensated on an hourly or project

6          basis, yeah.

7    Q     Did you ever work on any Rescue Heroes related

8          projects?

9    A     No.

10   Q     Were you -- are you familiar with the fact that

11         there was work done by Design Innovation

12         related to Rescue Heroes?  And for purposes of

13         this question, I'm excluding this spec project

14         at issue in this lawsuit.

15   A     Yes.

16   Q     What sort of work are you familiar with?

17   A     Concept sketches and models, styling sketches

18         and models.

19   Q     Do you know who did that work?

20   A     Bruce Benedetto.  He was in charge of that

21         work, and he would have then delegated that

22         work to our staff.

23   Q     Now, you testified that you've done some work

24         for Fisher-Price, and apparently so has

25         Mr. Benedetto?

Reiling vs Fisher-Price

1/22/2004                                                    Douglas Melville

Page 21

1    A    Yes.

2    Q    Were any other uses of the film reel mechanism

3         ever pursued?

4    A    I'm not -- no -- I don't recall.

5    Q    Even to the level of making a sketch of a

6         drawing.  Do you remember?

7    A    I don't recall.

8    Q    So the only use of the film reel mechanism that

9         you recall proceeding beyond the brainstorming

10        stage is the use that we see reflected in

11        Exhibit 202?

12   A    It's the only version we modeled.

13   Q    And is it the only version you can recall being

14        sketched?

15   A    Oh, I wasn't involved in reviewing all the

16        sketches at that point so from my standpoint,

17        yes.

18   Q    Okay.  At the end of that meeting, what was

19        your understanding of the concept that had been

20        discussed between you and Mr. Reiling,

21        Mr. Popek and Mr. Benedetto?

22   A    The concept was having images that created a

23        play pattern for the Rescue Heroes that

24        described their actions, that helped them play

25        out their character roles.

Brandon Smith Reporting

59d34bb8-099e-4433-ba8b-8debf227d2f7

Reiling vs Fisher-Price

1/22/2004                                          Douglas Melville

Page 22

```
 1    Q    And within that concept, did the images have to
 2         be associated with the backpack?
 3    A    No.
 4    Q    So it could have been images on the chest of
 5         the action hero?
 6    A    We didn't look at it like that.
 7    Q    Well, if there -- if someone were to make
 8         images and put them on the chest of a rescue
 9         hero, would you consider that to be a use of
10         your concept?
11    A    If those images showed missions, yes.
12    Q    Did you ever have any discussions with anyone
13         at Fisher-Price about the concept?
14    A    No.
15    Q    Now, were you aware that the concept was
16         ultimately -- strike that.
17              Were you aware that submissions were
18         made to Fisher-Price relating to the concept?
19    A    Yes.
20    Q    Did you review those submissions before they
21         were made?
22    A    Not formally, just sort of like -- I don't
23         think I saw all of what was submitted.
24    Q    Did you see Exhibit 202, the model?
25    A    Yes.
```

59d34bb8-099e-4433-ba8b-8debf227

Page 25

```
 1    Q    What if instead of a film loop and a backpack
 2         Fisher-Price took the same fireman in
 3         Exhibit 202 and put a film loop mechanism in
 4         his chest that you could look at by viewing it
 5         through a lens in his back?  Would that be a
 6         use of your concept?
 7    A    Yes.
 8    Q    How about if instead of using a film loop
 9         inside his chest they put a Viewmaster disk
10         inside of his chest, and it could be viewed by
11         looking through a lens either on his chest or
12         in his back?
13    A    Yes.
14    Q    That would still be a use of your concept?
15    A    Yes.
16    Q    Would it be a use of the Design
17         Innovation/Victor Reiling submission if instead
18         of a film reel inside the backpack they put a
19         decal on the outside of the backpack containing
20         an image?
21    A    Yes.
22    Q    How about if they put that decal on the
23         fireman's chest still containing an image?
24    A    If that image was of a mission play pattern, I
25         would say yes.
```

59d34bb8-099e-4433-ba8b-8debf227d2f7