# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

VICTOR G. REILING ASSOCIATES and  :
DESIGN INNOVATION, INC.,  :
  :
    Plaintiffs,  :  Civil No. 303CV222 (JBA)
  :
v.  :
  :
FISHER-PRICE, INC.,  :
  :  FEBRUARY 20, 2004
    Defendant.  :

# FISHER-PRICE'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO AMEND AND IN SUPPORT OF ITS MOTION TO STRIKE

Bradford S. Babbitt (ct13938)
email: bbabbitt@rc.com
ROBINSON & COLE LLP
Michael J. Kolosky (ct22686)
email: mkolosky@rc.com
280 Trumbull Street
Hartford, CT 06103-3597
tel. no.: (860) 275-8200
fax no.: (860) 275-8299

and

Robert J. Lane, Jr. (ct24598)
e-mail: rlane@hodgsonruss.com
Jodyann Galvin (ct24599)
e-mail: jgalvin@hodgsonruss.com
HODGSON RUSS LLP
One M&T Plaza, Suite 2000
Buffalo, New York 14203-2391
tel. no: (716) 856-4000
fax no.: (716) 849-0349

*Attorneys for Fisher-Price, Inc.*

ORAL ARGUMENT REQUESTED

Table of Contents

Page

Preliminary Statement..................................................................................................1

Factual Background .....................................................................................................2

    The Rescue Heroes Action Figures.........................................................................2

    Plaintiffs' Submissions ...........................................................................................4

    The Secondary Concept in Plaintiffs' Submissions................................................8

    The Three Rescue Heroes Figure Sub-Lines Plaintiffs Seek to Add in this Motion ...........8

        1.    Voice Tech Mission Command Rescue Heroes...........................................8

        2.    Mission Select Rescue Heroes ....................................................................9

        3.    Optic Force Rescue Heroes.......................................................................10

Argument ..................................................................................................................11

    I.    PLAINTIFFS' REQUEST TO ADD THE MISSION
        COMMAND, MISSION SELECT, AND OPTIC FORCE
        FIGURES SHOULD BE DENIED BECAUSE SUCH AN
        AMENDMENT WOULD BE FUTILE................................................................12

        A.    Fisher-Price Did Not Use Any Of Plaintiffs' Submissions ..................... 13

        B.    Plaintiffs' Concept Was Not Novel ....................................................... 14

            1.    Plaintiffs are required to show that their concept was novel .........13

            2.    Plaintiffs' concept was not novel when submitted to
                 Fisher-Price ...............................................................................15

    II.    PLAINTIFFS' UNDUE DELAY AND PREJUDICE TO
        FISHER-PRICE REQUIRE DENIAL OF THEIR
        MOTION TO AMEND.......................................................................................18

        A.    Plaintiffs' Second Amended Complaint Significantly
            Broadens the Scope of Plaintiffs' Claims ............................................... 19

        B.    Plaintiffs' Motion is Untimely and Has Resulted in Undue
            Delay .................................................................................................... 20

            1.    The Voice Tech Vehicles.............................................................22

            2.    The Aquatic Rescue Command Center.........................................22

i

Table of Contents
(continued)

Page

3.    Voice Tech Mission Command Figures. ........................................23

4.    Rescue Heroes Videos and Computer Games. ..............................24

C.    Plaintiffs Have Failed to Provide a Satisfactory (or Any)
Explanation for the Delay ........................................................................ 25

D.    Discovery Is Substantially Complete and Additional
Discovery Would Be Required ................................................................ 25

E.    Fisher-Price Is Prejudiced by the Amendment ........................................ 26

III.    PLAINTIFFS' PROPOSED AMENDMENTS RELATING
TO VOICE TECH VEHICLES AND OTHER
PRODUCTS ARE FUTILE................................................................................27

A.    Plaintiffs Have Admitted They Have No Claims To The
Voice Tech Vehicles ................................................................................ 27

B.    Voice Tech Vehicles Do Not Use Plaintiffs' Submissions....................... 28

C.    Claims Relating to the Voice Tech Jet and the Voice Tech
Fire Truck are Time-Barred and Do Not Relate Back.............................. 29

D.    Plaintiffs Have Admitted They Have No Claims on Videos,
DVDs, Games or the Movie...................................................................... 30

IV.    THE PROPOSED AMENDMENTS WILL REQUIRE
SIGNIFICANT ADDITIONAL DISCOVERY....................................................31

V.    IF AMENDMENT IS GRANTED, PLAINTIFFS
SHOULD BEAR THE EXPENSE OF ADDITIONAL
DISCOVERY AND THE COURT SHOULD LIMIT
PLAINTIFFS TO THE PRODUCTS NOW IDENTIFIED..................................33

VI.    ANY REFERENCE TO STATEMENTS MADE DURING
SETTLEMENT DISCUSSIONS MUST BE STRICKEN ....................................34

A.    Plaintiffs Improperly Disclose Statements Made During
Settlement Negotiations and Discussions ................................................. 35

B.    Permitting Allegations Regarding Settlement Discussions
Would Be Futile. ...................................................................................... 37

Conclusion ...................................................................................................................37

BFLODOCS 896271v1 (J7KF01!.DOC)

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

VICTOR G. REILING ASSOCIATES and    :
DESIGN INNOVATION, INC.,          :
                                      :
             Plaintiffs,      :          Civil No. 3:03 CV 222 (JBA)
v.                                :
                                      :
FISHER-PRICE, INC.,           :
                                      :          FEBRUARY 20, 2004
             Defendant.     :

## FISHER-PRICE'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO AMEND AND IN SUPPORT OF ITS MOTION TO STRIKE

### Preliminary Statement

Fisher-Price, Inc. ("Fisher-Price") submits this memorandum of law in opposition to the motion by plaintiffs Victor G. Reiling Associates and Design Innovation to file a *second* amended complaint adding claims regarding a number of Fisher-Price products not previously at issue in this action. As originally filed, the complaint in this action (and the first amended complaint) asserted claims relating to only *one* Fisher-Price product: Voice Tech Video Mission Rescue Heroes action figures.[1] Plaintiffs now seek to add claims regarding at least *fifteen*[2] additional products, expanding the scope of this action so radically that it is essentially an entirely different lawsuit. This memorandum is also submitted in support of Fisher-Price's

**ORAL ARGUMENT REQUESTED**

[1]    *See* Complaint ¶¶ 3, 27-30.

[2]    Plaintiffs seek to add: Voice Tech Rescue Jet; Voice Tech Fire Truck; Voice Tech Police Cruiser; Aquatic Rescue Command Center; Voice Tech Mission Command Figures; Mission Select Figures; Mission Select Police Cruiser; Mission Select Fire Truck; Mission Select Mountain Action Command Center; Optic Force Telly Photo Figure; Rescue Heroes feature-length movie; videos; DVDs; and computer games and video games. *See* plaintiffs' proposed second amended complaint (the "SAC") at ¶¶ 35-39.

motion to strike, should amendment be permitted, improper references in the proposed second amended complaint to settlement discussions between Fisher-Price and Design Innovation.

Plaintiffs' motion to amend must be denied for four reasons. First, amendment would be futile because the products plaintiffs seek to add clearly did not make use of plaintiffs' concept as reflected in their submissions to Fisher-Price. Second, amendment would be futile because plaintiffs' "concept," as defined in the second amended complaint and by plaintiffs themselves, was not novel. Third, plaintiffs' motion is untimely, and plaintiffs have failed to explain their failure to include in their original complaint products about which they knew or should have known. Finally, the proposed amendment is also futile because certain of the new claims are time-barred.

Amendment at this late stage – less than a month before the discovery cut-off — will have the effect of winding this action back to the time of its commencement a full year ago. Significant additional discovery will be necessary, and much of the discovery already completed will have to be repeated. If plaintiffs' motion to amend is granted (which it should not be), the Court should shift the expense of additional discovery to plaintiffs. Moreover, this Court should strike from the second amended complaint any reference to statements made during settlement discussions.

## **Factual Background**

### **The Rescue Heroes Action Figures**

Fisher-Price is engaged in the business of designing, manufacturing, and marketing toys, including action figures. In the late 1990s, Fisher-Price's internal designers developed a line of action figures that were eventually marketed under the "Rescue Heroes"

name. These figures were approximately seven inches tall and made out of molded plastic. They were distinguished from other action figures by three features: (1) their construction was much heavier than most action figures; the figures were broad and heavy and had large feet so that they would stand up reliably; (2) the individual characters for the Rescue Hero line were given "rescue" related identities – such as a firefighter, a police officer, a scuba diver, a paramedic, etc.; and (3) each of the figures came with a backpack which was molded to relate to the figure's character (*e.g.*, the fireman's backpack looked like oxygen tanks, the paramedic's backpack carried medical equipment, etc.). Catalog pages showing the original Rescue Heroes figures are attached to the declaration of Christopher Pardi (the "Pardi Dec.") as Exhibit A. These figures were first sold to the public in December 1997. Pardi Dec. ¶¶ 2-4.

For the most part, Fisher-Price organizes the Rescue Heroes figures into two general categories: its "premium" line and its "basic" line. The premium line Rescue Heroes figures have speech and sound effects which are generated by a computer chip in the figure's backpack. Pardi Dec. ¶ 10. These figures are marketed under the "Voice Tech" name. The first Voice Tech figures were introduced in early 2000, and variations (or "sub-lines") have been introduced each year thereafter. For the most part, the new sub-lines changed the configuration of the figure's backpacks and were intended to increase the interactivity between the figures (*i.e.*, provide different ways to get them to talk to each other or, at least, to speak about the same thing). *Id.* ¶¶ 10, 18. The reason that the Voice Tech line is referred to as Fisher-Price's "premium" line of Rescue Heroes is because the electronics necessary to generate sound effects and speech add to the expense of producing the figures. Thus, Voice Tech figures typically sell for approximately $10, while the basic Rescue Heroes figures sell for approximately $7. *Id.* ¶ 12.

Fisher-Price's "basic" figures do not have any speech or sound effect capability. Pardi Dec. ¶ 9. Many different sub-lines that have been introduced over the last six years. For example, "Night Squad" Rescue Heroes figures were introduced in 2000. These figures are equipped for operations in the dark. The "Wildlife Team" figures were introduced in 2003. Each figure comes with an animal companion. The "Optic Force" Rescue Hero figures are each equipped with particular optically related accessories (such as a microscope, periscope, etc.). *Id.* ¶ 9. There are a number of additional basic Rescue Heroes sub-lines. Over the last six years, Fisher-Price has, on average, released two to six different sub-lines of Rescue Heroes figures each year. Constant innovation and "refreshment" of the product line is necessary in the toy industry to maintain the interest of consumers. *Id.* ¶¶ 7, 9.

**Plaintiffs' Submissions**

In late 1998, approximately a year after the successful introduction of the Rescue Heroes product line, plaintiffs made the first submission at issue in this case. It is important to understand that plaintiffs' submissions did not propose or conceive of a new product. Instead, plaintiffs suggested a modification or variation to pre-existing Rescue Heroes figures. Thus, as shown in Exhibit B to the proposed second amended complaint, plaintiffs' first submission in late 1998 (the "1998 Submission") showed an existing Rescue Heroes firefighter character with a backpack (like all other Rescue Heroes).[3] The feature that plaintiffs identified as novel with respect to their 1998 Submission was the fact that the backpack contained a battery operated thirty-second film reel which could be viewed by a child placing one eye up to a magnifying lens

---

[3]    Photos of the prototype of the firefighter figure with the film cassette in his backpack, which plaintiffs included with their 1998 Submission, are attached as Exhibit E to the Declaration of Robert J. Lane, Jr., dated February 19, 2004 ("Lane Dec.").

and looking into the interior of the backpack.[4]  Fisher-Price rejected plaintiffs' 1998 Submission as being too expensive and not versatile enough.  SAC, Exhibit G.

Plaintiffs re-submitted their concept in May 1999 (the "1999 Submission").  That submission reflected a Rescue Heroes firefighter figure with a backpack-shaped viewer.  The backpack included a tinted housing containing a drum with approximately twenty still action frames showing Rescue Heroes in action.  SAC, Exhibit H.  These frames could be viewed only by placing one eye up to a magnifying lens and looking inside the backpack.  The frames were advanced sequentially by means of a hand crank.  *Id.*  Fisher-Price also rejected this submission.  SAC ¶ 23.

Plaintiffs submitted their concept for a third time in December 2000 (the "2000 Submission"), showing an action figure with a backpack and a digital camera device containing a Viewmaster-style film disc about two inches in diameter with six or more images.  SAC, Exhibit I.  The images were located inside the backpack or camera and could be viewed only by placing one eye up to a magnifying lens and looking into the interior of the backpack or into the digital camera device.  The images were advanced sequentially by pushing a lever.  *Id.*

It is undisputed that Fisher-Price never used the concepts reflected on any of the three submissions submitted by plaintiffs.  Fisher-Price never made or sold a Rescue Heroes figure with a film loop inside its backpack which could be viewed only be placing an eye up to a magnifying lens (or with any film loop at all).  Fisher-Price never manufactured a Rescue Heroes

---

[4]    *See* SAC, Exhibit C (plaintiffs' concept submission form describing the "unique features" of their submission as "Batt[ery] op[erated] film strip units for each Rescue Hero") & Exhibit F (and Exhibit A thereto) (in which plaintiffs' concept is described as "a battery operated film reel that is activated when the child pushes a button on the backpack of the action figure").

figure with a backpack containing a drum with still frames, which could be viewed only by placing an eye up to a magnifying lens to look inside the backpack. Fisher-Price never manufactured a Rescue Heroes figures with a backpack, digital camera, or other device into which Viewmaster-style film discs could be inserted for viewing. *See* Declaration of Howard Bollinger, dated February 17, 2004 ("Bollinger Dec.") ¶¶ 7-8.

Plaintiffs seem to recognize that Fisher-Price never used the concept reflected in any of their three submissions. As a result, they have re-defined their concept to eliminate all of the specific features in the submissions they made to Fisher-Price. By eliminating any reference to specific features and describing their "concept" in the most general terms possible, plaintiffs seek to craft a definition of their alleged "concept" which -- although never submitted to or even discussed with Fisher-Price -- might capture within it some of Fisher-Price's products. Thus, in their deposition testimony, plaintiffs have proposed the following definition for their concept:

> ***the use of an image or images with an action figure to enhance the role play of children using the action figure.***[5]

There are two problems with plaintiffs' attempt to expand the definition of their concept to capture Fisher-Price's products. First, the new definition does not accurately reflect what they submitted to Fisher-Price. Bollinger Dec. ¶ 10. By generalizing their concept to a

---

[5]    *See* Lane Dec., Exhibit B (Benedetto Testimony) at 126 (the concept is an image "with…action figures…to enhance role play"); Lane Dec., Exhibit A (Popek Testimony) at 42 (the concept was "putting an image on the backpack to create a better role playing experience for the child"); Lane Dec., Exhibit B (Benedetto Testimony) at 171 (the image does not have to be on or in the backpack to embody plaintiffs' concept, but can be anywhere on the action figure); Lane Dec., Exhibit C (Melville Testimony) at 21-22 (images did not have to be associated with the backpack and could be on chest of action figure); Lane Dec., Exhibit D (Reiling Testimony) at 42 (the novelty of plaintiffs' concept was "to be able to bring these images into the [Rescue Heroes] line and give a child a chance to really get involved with play patterns and how much it would enhance the play value of the rest of the [Rescue] Heroes"); Lane Dec., Exhibit D (Reiling Testimony) at 186, 195 (the image does not have to be on or in the backpack to embody plaintiffs' concept, but can be anywhere on the figure).

high level of abstraction, plaintiffs capture Fisher-Price products that do not make use of any of the specific features of their submissions. Plaintiffs may as well claim that because they submitted a "toy" concept, all toys are within the scope of their concept, or because they submitted an action figure concept, all action figures are within the scope of their concept.

The second problem with plaintiffs' new definition of their concept is that, in expanding their definition to capture Fisher-Price products, they have defined a concept that was not novel at the time of their submissions.[6] The use of images in or with an action figure to "help create role playing scenarios" (SAC ¶ 18) has been well known in the toy industry long before plaintiffs' first submission in late 1998. Bollinger Dec. ¶ 13. For example, Toy Biz (a major competitor of Fisher-Price) introduced a line of projector action figures in 1993. Each figure (Spiderman, Wolverine, etc.) came with 3 discs, each of which contained 16 images on film. The discs could be inserted in the figure's chest. The images were projected on a nearby surface through a lens on the figure's chest. The images were advanced by turning a knob on the back of the figure, thereby presenting an adventure for the figure. An example of one of these figures is attached as Exhibit B to the Bollinger declaration. This was a successful product, sold nationwide by Toy Biz from 1993-95 and was well known in the toy industry. Bollinger Dec. ¶ 13.

If there is any novelty at all in plaintiffs' submissions (and Fisher-Price does not concede this), it is limited to the specific mechanism disclosed in plaintiffs' first submission — *i.e.,* a 30-second film loop inside an action figure that could be viewed only by the child placing his eye up to a lens and looking into the backpack to see the film. As discussed above, it is clear

---

[6]    As discussed below, novelty is a requirement of all of plaintiffs' claims.

- 8 -

that none of the three types of Rescue Heroes action figures that plaintiffs seek to add in their proposed Second amended complaint make any use of this mechanism (or, for that matter, any of the specific features in any of plaintiffs' three submissions).

**The Secondary Concept in Plaintiffs' Submissions**

Plaintiffs claim that their submissions (at least the 1998 and 2000 Submissions) also included a second, independent concept — a TV cameraman figure holding a TV camera.[7] The camera was designed with a window on top, through which the child could look to see out of the camera lens — giving the impression that he was viewing what the cameraman was "filming." SAC, Exhibit I.

Again, this element of plaintiffs' concept was not novel in late 1998. Indeed, Fisher-Price had itself sold a TV cameraman action figure as early as the 1970s. That figure also came with a TV camera that the child could look through to see what cameraman was "filming." Bollinger Dec. ¶ 17; Pardi Dec. ¶ 21. A copy of a 1978 Fisher-Price catalog reflecting that figure is attached as Exhibit K to the Pardi declaration.

**The Three Rescue Heroes Figure Sub-Lines**
**Plaintiffs Seek to Add in this Motion**

In the second amended complaint, plaintiffs seek to add claims relating to three Rescue Heroes figure sub-lines: the Voice Tech Mission Command Rescue Heroes; Mission Select Rescue Heroes; and the Optic Force Rescue Heroes. These are described below.

1.    **Voice Tech Mission Command Rescue Heroes.**  Fisher-Price introduced these figures in early 2001. They were a modification of the Voice Tech Rescue Heroes figures

---

[7]    SAC ¶ 18. The 1999 Submission made no reference to this figure.

which had been introduced in 2000. The Voice Tech figures contained a computer chip which stored a number of speech segments. When the child pressed a button, the figure would speak, saying something related to a potential rescue mission. Pardi Dec. ¶ 14.

The Mission Command figures came with a card that carried a computer chip which stored speech. The card could be inserted into the figure's backpack and, like the Voice Tech figures, when a button was pressed, the figure would say something related to a rescue mission. Each figure's card was unique to that figure. Thus, the fireman figure came with a card with a decal showing a burning building, the construction worker came with a card showing a road cracking from an earthquake, etc. The speech stored in the chip on each card was tailored to the decal on the card. A portion of the figure's speech was specific to that mission; the rest was generic. The mission cards could be switched to any figure. Thus, although the earthquake card was sold only with the construction worker figure, it could be placed in the fireman's backpack. If it was, a portion of the fireman's speech would be about earthquakes and the remainder would be generic. Pardi Dec. ¶ 14. This allowed the child, by moving the card from figure to figure, to have them all talk about the same "mission." This was an improvement in interactivity from the original Voice Tech line — in which the fireman always spoke principally about fires, the construction worker always spoke principally about earthquakes, etc. Pages from Fisher-Price's 2001 catalog showing these figures are attached as Exhibit E to the Pardi declaration. An actual Mission Command figure has been submitted as Exhibit F to the Pardi declaration.

      2.    **Mission Select Rescue Heroes.**  Fisher-Price introduced these figures in early 2003. They represented a further improvement in speech interactivity among the figures. Each figure came with a dial on the figure's backpack. The dial allowed the child to *"select"*

among the six scenarios that form the core of the Rescue Heroes storyline (fire, earthquake, flood, avalanche, volcanic eruption, tornado). Pardi Dec. ¶ 18. Thus, the child could set all three dials on the back of the fireman, construction worker, and policeman to "fire," and all three would then talk about fire (or say something generic not inconsistent with fire). This was intended as an improvement over the Mission Command figures where the card had to be moved from figure to figure to achieve this result. Pages from Fisher-Price's 2003 catalog showing the Mission Select figures are attached as Exhibit I to the Pardi declaration. An actual Mission Select figure has been submitted as Exhibit J to the Pardi declaration.

**3.    Optic Force Rescue Heroes.** Fisher-Price introduced these figures in October 2003. These figures are not part of the "Voice Tech" line; they have no sound or speech capability. Instead, they are one of Fisher-Price's sub-lines of basic figures. "Optic Force" figures all come with some type of optical tool or accessory, such as a microscope, periscope, camera, etc.[8] As far as Fisher-Price can tell from the complaint, plaintiffs are making a claim only to the Optic Force cameraman figure — apparently on the basis that he embodies the secondary concept from their 1998 and 2000 submissions consisting of a cameraman. The complaint does not disclose any basis for a claim by plaintiffs to the figures with the microscope, periscope, etc. An actual Optic Force cameraman figure has been submitted as Exhibit G to the Lane declaration.

---

[8]    Other examples of specialty lines of Rescue Heroes include the "Night Squad," in which the figures are outfitted for missions in the dark, and the "Wildlife Team," in which each figure comes with an animal companion. Pardi Dec. ¶ 9.

- 11 -

### Argument

Denial of leave to amend is warranted in the face of "undue delay, bad faith, or dilatory motive on the part of the movant, undue prejudice, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of the amendment." *Coleman v. Aztec Lighting*, 2004 WL 213031, *2 (D. Conn. Jan. 28, 2004).[9] *See also Cartier v. Four Star Jewelry Creations, Inc.*, 2004 WL 169746, *1 (S.D.N.Y. Jan. 28, 2004) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

The reasons that plaintiffs' motion to amend must be denied fall into two broad categories: (1) the proposed amendment would be futile because it seeks to add claims that are demonstrably without merit; and (2) plaintiffs have unduly delayed in bringing this motion, to the prejudice of Fisher-Price. These issues are discussed below.

### I.    PLAINTIFFS' REQUEST TO ADD THE MISSION COMMAND, MISSION SELECT, AND OPTIC FORCE FIGURES SHOULD BE DENIED BECAUSE SUCH AN AMENDMENT WOULD BE FUTILE

Plaintiffs' claim for misappropriation and their other causes of action all share two common elements: to prevail plaintiffs must establish that: (1) Fisher-Price made use of their concept, and (2) their concept was novel at the time they submitted it to Fisher-Price. *See Nadel v. Play-by-Play Toys & Novelties*, 208 F.3d 368, 375-79 (2d Cir. 2000).[10] Because there is

---

[9]    All unpublished decisions cited in this memorandum are attached, in alphabetical order, as Exhibit A to this memorandum.

[10]    The law of New York governs the claims at issue here. The only meeting between the parties occurred at Fisher-Price's offices in New York. Lane Dec., Exhibit D (Reiling Testimony) at 45-47. Plaintiffs reached out into New York to initiate contact with Fisher-Price; Fisher-Price did not initiate contact with plaintiffs. *Id.* at 44. All of plaintiffs' submissions were sent to Fisher-Price in New York. *Id.* at 63-64. If the alleged misappropriation occurred (which it did not), occurred in New York.

no genuine dispute that plaintiffs cannot make these required showings with respect to the
Mission Command, Mission Select, or Optic Force figures, plaintiffs' motion to amend to add
these products should be denied.

**A.    Fisher-Price Did Not Use Any
Of Plaintiffs' Submissions**

It is well-established, of course, that in order to prevail on a misappropriation of
idea claim (or any of the related claims alleged in the proposed second amended complaint) a
plaintiff is required to show that the defendant actually used the idea at issue. *See Nadel*, 208
F.3d at 377; *AEB & Assoc. Design Group v. Tonka Corp.*, 853 F.Supp. 724, 734 (S.D.N.Y.
1994). Plaintiffs' request to amend the complaint to add claims relating to the Voice Tech
Mission Command, Mission Select, and Optic Force Rescue Heroes figures should be denied as
futile because even a cursory examination of these figures makes clear that they do not embody
or make use of the features in plaintiffs' submissions.

As discussed in the accompanying declaration of Howard Bollinger, Fisher-Price
never made or sold a Rescue Heroes figure embodying the essential elements of plaintiffs' 1998
Submission (an action figure with the film loop inside its backpack which could be viewed only
by placing one eye up to a magnifying lens).[11] Fisher-Price never manufactured a Rescue Heroes
figure embodying the essential elements of the 1999 Submission (*i.e.,* a backpack containing a
drum with still frames which could be viewed only by placing an eye up to a magnifying lens to
look inside the backpack). Finally, Fisher-Price never manufactured a Rescue Heroes figure
with the essential elements of the 2000 Submission a backpack, digital camera, or other device

---

[11]     In fact, Fisher-Price never made any Rescue Hero figure which included any type of film loop at all.

into which Viewmaster-style film discs could be inserted for viewing and which could be viewed only by placing an eye up to a magnifying lens. Bollinger Dec. ¶ 8.

Accordingly, because Fisher-Price has not made any use of the features submitted to it by plaintiffs, permitting plaintiffs to amend the complaint to add additional types of Rescue Hero figures would be futile.[12]

**B.    Plaintiffs' Concept
        Was Not Novel**

1.    **Plaintiffs are required to show that their concept was novel**. The Second Circuit has made clear that an inventor has no protectible rights in any idea or inventor unless it is novel. *See Nadel*, 208 F.3d at 380 ("unoriginal, known ideas have no value as property and the law does not protect against the use of that which is freely available to all"). If the idea or invention lacks novelty, it may be used by anyone at any time without compensation to the purported inventor — because he obtains no property right or other protectible interest by conceiving of an idea that is not novel or new. *Id.*

There are two different novelty standards. The more stringent standard applies to tort-based misappropriation, unfair competition, and breach of implied contract claims. A plaintiff alleging such claims must show that the invention or concept was truly novel at the time it was disclosed to the defendant — in the sense that it was entirely unknown in the industry or elsewhere. *Nadel*, 208 F.3d at 378. Thus, if the concept or invention was known in the

---

[12]    Fisher-Price does not make this argument with respect to the Optic Force Rescue Heroes. Plaintiffs apparently contend that Fisher-Price's Rescue Heroes Optic Force cameraman, Telly Photo, has some similarity to the secondary concept submitted by plaintiffs in their 1998 and 2000 Submissions. However, as discussed below, this concept had no novelty at the time submitted by plaintiffs.

industry, the plaintiff has no claim if the defendant uses it without compensating him, even if it was entirely unknown to the defendant at the time it was submitted. *Id.*

A relaxed novelty standard applies if the plaintiff sues for breach of express contract. Under those circumstances, the inventor need only show that the concept or invention was novel *to the defendant* (not the industry or world at large) when submitted. *Nadel*, 208 F.3d at 380. The reason for applying a relaxed standard in these circumstances is because the defendant has expressly agreed to pay for the invention, and even an invention that is not truly novel may have value to one who is unaware of it. *Id.* at 377. This is distinguished from tort-based misappropriation, unfair competition, and implied contract claims where the defendant has not agreed to pay for a concept or invention which, while new to it, lacks true novelty.

Here, all of the claims asserted by plaintiffs are governed by the more stringent "true novelty" standard. The second through fifth causes of action all allege tort-based misappropriation theories of recovery. The first cause of action — which alleges an "implied" agreement — does not allege any specific promise by Fisher-Price to pay any particular amount for the use of plaintiffs' concept. *See* SAC ¶¶ 41-47.[13] Indeed, the "prayer for relief" makes this clear in seeking an unspecified royalty (among other relief). Plaintiffs do not even contend that there was any specific agreement to compensate them in an agreed amount for use of their concept. In the absence of such a material term, there was no contract between the parties, and

---

[13]    *Nadel* makes clear that, while an implied contract claim may exist under some circumstances where misappropriation of an idea is alleged, plaintiff still bears the burden of showing an agreement on all material terms of the alleged contract. 208 F.3d 376 n.5. Price or consideration is a required material term that must be agreed with definiteness for an enforceable contract to exist. *See, e.g., Ellenberg v. Schneider*, 109 Misc.2d 1058, 1062, 441 N.Y.S.2d 581 (Sup. Ct. Nassau Co. 1981).

plaintiffs' breach of implied contract claim must proceed (if at all) subject to the more stringent

novelty standard applicable to tort claims.

Finally, it should be noted that the issue of novelty is a question of law that is

appropriately determined by the court on motion. *See AEB*, 853 F.Supp. at 734 ("[w]hether an

idea is novel is an issue of the law which may properly be decided on a motion for summary

judgment"); *Nadel*, 208 F.3d at 379 ("a court may conclude, as a matter of law, that the idea

lacks both the originality to support a misappropriation claim and the novelty to the buyer

necessary to support a contract claim").

**2.    Plaintiffs' concept was not novel when submitted to Fisher-Price.**  As

discussed in the declaration of Howard Bollinger, plaintiffs' concept — as they themselves

define it — was not novel at the time it was submitted to Fisher-Price. Plaintiffs have defined

their concept as:  the use of an image or images with an action figure to enhance the role play of

children using the action figure. At the time of plaintiffs' first submission to Fisher-Price in late

1998, this was an old concept, well known in the toy industry.

Mr. Bollinger provides two examples in his declaration.  First, in 1993, Toy Biz (a

competitor of Fisher-Price) introduced "Projectors" action figures, which came with

Viewmaster-type film discs showing the figure's adventures.  The discs were inserted in the

figure's chest and images were projected on a nearby surface through a lens on the figure's chest.

Bollinger Dec. ¶ 13, Exhibit B.

Second, in 1996, a patent entitled "Image Projective Toy" was issued and

assigned to Toy Biz.  The patent disclosed projector action figures, like those described above.  It

also disclosed a different mechanism in which the images were not projected, but were viewed

by the child looking through a lens on the figure's chest to view the images on the disc inside the

figure's chest. This is virtually indistinguishable from plaintiffs' concept as reflected in their

third submission. Bollinger Dec. ¶ 14, Exhibit C. In fact, plaintiffs have admitted that their

concept had the very same features embodied in the Image Projective Toy patent which was

issued at least two years prior to their 1998 Submission and four years prior to their 2000

Submission.

> Q.   How about if instead of using a film loop inside his chest
>      they put a Viewmaster disk inside of his chest, and it could
>      be viewed by looking through a lens either on his chest or
>      his back?
>
> A.   Yes.
>
> Q.   That would be still be a use of your concept?
>
> A.   Yes.

Lane Dec., Exhibit C (Melville Testimony) at 25. The Image Projective Toy patent matches this

description precisely and vitiates any claim of novelty of their concept. Bollinger Dec. ¶¶ 14-15;

*see AEB*, 853 F.Supp. at 734 ("a plaintiff may not claim that an idea is original if it was already

in use in the industry at the time of the submission"). Toy Biz (the holder of the patent) also

informed plaintiffs that their concept was not novel in March 2002, ten months prior to plaintiffs'

complaint. *See* Lane Dec., Exhibit H.

Finally, plaintiffs also seek to add a claim relating to Fisher-Price's new Optic

Force photographer figure, alleging that it appropriates a secondary concept in their first and

third submissions which showed a cameraman holding a camera that the child could look

through, to see out the camera lens — giving the impression that he was viewing what the

cameraman was "filming." SAC ¶¶ 18, 24. This secondary concept was also lacking in novelty.

Fisher-Price itself sold a TV cameraman action figure as early as the 1970s. That figure also

- 17 -

came with a camera the child could look through to see what the cameraman was "filming."

Bollinger Dec. ¶ 17. Plaintiffs have admitted that a cameraman action figure is not novel:

> Q.    So action figures who were photographers carrying TV
>        cameras were not new in the fall of 1998?
>
> A.    No, it has been done before.
>
> Q.    So that is not part of the novelty of this ideal using a
>        photographer action figure?
>
> A.    Absolutely not.
>
> Q.    Even one carrying a TV camera, that is not a new idea?
>
> A.    Oh, no.

Lane, Dec., Exhibit A (Popek Testimony) at 57. Accordingly, any claim of novelty on a

cameraman action figure must be rejected.

Thus, because plaintiffs will be unable to show an essential element of their

claims — that their concept was novel — the proposed amendment would be futile and should be

denied.

## II.    PLAINTIFFS' UNDUE DELAY AND PREJUDICE TO FISHER-PRICE REQUIRE DENIAL OF THEIR MOTION TO AMEND

Courts have routinely denied motions to amend where the plaintiff delayed in

moving to amend until after substantial discovery has occurred, to the prejudice of the defendant.

In evaluating this ground for denial of a motion to amend, the courts consider the following

factors: "(1) that the proposed amendment represents a significant broadening of claims against

defendants; (2) that additional discovery would be required as to the new cause of action; (3) that

the amendment may require a change of litigation strategy on the part of defendants; (4) that

discovery is complete and the case is trial ready; (5) that the motion to amend was untimely

made; and (6) that plaintiffs have given no satisfactory reason for their delay." *Cuccolo v. Lipsky, Goodkin & Co.*, 1994 WL 381596, *1 (S.D.N.Y. July 21, 1994).

Here, plaintiffs' proposed second amended complaint adds claims increasing the number of products at issue from *one* to *sixteen* or more, thereby radically broadening the claims against Fisher-Price. Moreover, significant additional discovery will be required at a time where: (1) the parties are less than a month from the discovery deadline; (2) the parties have exchanged expert reports; (3) ten depositions have been conducted and only three remain; and (4) document discovery is nearly complete.

**A.      Plaintiffs' Second Amended
         Complaint Significantly Broadens
         the Scope of Plaintiffs' Claims**

The original and first amended complaints asserted claims against only one Rescue Heroes figure sub-line: Voice Tech Video Mission figures. The proposed second amended complaint seeks to add at least fifteen new products, including a number of toy vehicles and play sets, computer games, videos, a movie, other types of Rescue Heroes figures, etc.

It cannot be disputed that the addition of at least fifteen products in comparison to the single product identified in plaintiffs' original and first amended complaint is a significant broadening of the claims against Fisher-Price. Plaintiffs' claim that the proposed amendments "simply expand the factual bases for the already alleged causes of action" is simply inaccurate. Plaintiffs' Memo at 6.

Contrary to plaintiffs' characterization, the addition of fifteen new products in the proposed amendment does not represent a mere "amplification of existing allegations," but rather represents fifteen new and independent additional claims. Each "newly discovered" product would constitute a separate event of alleged misappropriation by Fisher-Price and will require

new analysis and investigation by Fisher-Price. Whether these new products "use" plaintiffs' concept or are themselves novel are issues that will have to be determined entirely independently from the single product identified in the original and first amended complaint. Moreover, Fisher-Price will undoubtedly have to re-evaluate its defense strategy if the amendment is granted, as amendment will substantially increase the damages alleged by plaintiffs.

**B.    Plaintiffs' Motion is Untimely
and Has Resulted in Undue Delay**

A party's delay in bringing a motion to amend supports denying the amendment where the party knew of the facts or circumstances surrounding the new claim at the time of filing the original or an earlier amended complaint. *See, e.g., Cartier*, 2004 WL 169746, *2 (finding that "inordinate delay" supported denial of motion to amend); *Bell v. Allstate Life Ins. Co.*, 160 F.3d 452, 454 (8th Cir. 1998) (affirming denial of plaintiff's motion to amend complaint because of prejudice and undue delay, where the only reason for such untimeliness was plaintiff's "lack of due diligence"). Delay is an especially compelling reason to deny a motion to amend "*[w]here the party seeking amendment knows or should have known of the facts* upon which the proposed amendment is based but fails to include them in the original complaint." *Pallotino v. City of Rio Rancho*, 31 F.3d 1023, 1027 (10th Cir. 1994) (upholding denial of motion to amend) (emphasis added).

Plaintiffs undoubtedly knew or should have known of the facts upon which their proposed amendment is based. Plaintiffs are members of the toy invention and development community. Design Innovation was actually paid by Fisher-Price on a work-for-hire basis to work on the Rescue Heroes line and continued to do such work into late fall 2003. Lane Dec., Exhibit A (Popek Testimony) at 108-14; Exhibit C (Melville Testimony) at 14. Moreover,

- 20 -

Design Innovation witnesses testified that they kept abreast of developments in the Rescue Heroes' line. Lane Dec., Exhibit B (Benedetto Testimony) at 106-07.

This dispute first arose in July 2002, when plaintiffs' counsel first wrote to Fisher-Price demanding compensation. SAC, Exhibit O. Plaintiffs claim that they first saw the Voice Tech Video Mission Rescue Heroes figures (the only product mentioned in the original complaint) when they attended Toy Fair[14] in February 2002. Thus, a full year passed between plaintiffs' first alleged exposure to the Voice Tech Video Mission Rescue Heroes figures and the filing of the original complaint in this matter. A year is more than enough time for plaintiffs to research the Rescue Heroes line and determine whether they should have made a claim on any other products.

It is particularly inappropriate that plaintiffs seek to add claims relating to products which were actually *sold to the public before* the Voice Tech Video Mission Rescue Heroes which were the subject of the original complaint. Plaintiffs seek to add claims relating to the following products, all of which were on sale long before the filing of the original complaint in this case: the Voice Tech Fire Truck, Police Cruiser and Jet, all of which have been in the Rescue Heroes line for at least two years; the Mission Command Rescue Heroes figures, which were first introduced in February 2001; the Aquatic Rescue Command Center play set which was first introduced in February 2001; and Rescue Heroes videos, which have been sold or given away with Rescue Heroes action figures since 1998. Pardi Dec. ¶¶ 5, 14, 15. Plaintiffs' lack of diligence in including these products in the original complaint requires denial of their motion to amend.

---

[14]     Toy Fair is an annual trade show held in New York City. Attendees include toy manufacturers, inventors, and the press.

### 1.    The Voice Tech Vehicles.

The Voice Tech Jet and Fire Truck were first sold to the public in July 2000 and August 2000, respectively — over two and one-half years before this action was commenced. Pardi Dec. ¶ 13.  It is indisputable that plaintiffs were (or should have been) aware of these products before filing the original complaint.  In fact, in referencing photos of the Voice Tech Video Mission figures, ***plaintiffs attached the very catalog page referencing the Voice Tech Fire Truck and Jet***, along with a website page and another promotional piece reflecting these products, to their original complaint.  *See* Complaint, Exhibits K, L, M.[15]  These products, along with the Voice Tech Police Cruiser, also appear in the 2002 Fisher-Price catalog.  *See* Pardi Dec., Exhibit G.  Plaintiffs had the 2002 catalog, and they attached just one page from it to their original complaint (Exhibit K), first amended complaint ("FAC") (Exhibit K), and now the proposed second amended complaint (Exhibit K).  Thus, plaintiffs' claim that they were unaware of these vehicles when the original complaint was filed is false.  They can offer no excuse for failing to include these products in their original and first amended complaints when they had possession of catalog pages reflecting them.

### 2.    The Aquatic Rescue Command Center.

Similarly, the Aquatic Rescue Command Center play set was on the market long before the plaintiffs' original complaint.  It was first introduced in February 2001.  Pardi Dec. ¶ 15.  Plaintiffs knew about the Aquatic Rescue Command Center ***at least as early as November 2001***.  As Bruce Popek of Design Innovation testified at his deposition on November 19, 2003:

---

[15]    These pages were apparently attached because they also showed Voice Tech Video Mission figures.  No claims regarding the vehicles were raised.

> Q.    . . . Why didn't you complain to Fisher-Price whenever you
> first saw the ARCC, which you recall *as being more than
> two years ago?*
>
> A.    Okay.  One, I had just seen it on a shopping trip to Toys R
> Us.  Two, I never purchased the product, to open it up and
> see what it was all about.

Lane Dec., Exhibit A (Popek Testimony) at 123-24 (emphasis added).  And, if this direct

admission is not enough to prove plaintiffs' actual knowledge of the Aquatic Rescue Command

Center is not enough, plaintiffs had possession of the Fisher-Price 2002 catalog in which the

Aquatic Rescue Command Center was featured and attached pages specifically referencing the

Aquatic Rescue Command Center to their prior complaints.  *See, e.g.,* FAC, Exhibits K & M.

These pages were apparently attached because they also showed Voice Tech Video Mission

figures; no claims regarding the Aquatic Rescue Command Center were raised.  Thus, all of the

facts surrounding any claim regarding the Aquatic Rescue Command Center have been known to

plaintiffs for over two years and should have been included in the original complaint.

### 3.    Voice Tech Mission Command Figures.

The Voice Tech Mission Command Rescue Heroes figures were first introduced

in February 2001.  Pardi Dec. ¶ 14.  Plaintiffs should have known about the Voice Tech Mission

Command Rescue Heroes figures at that time or, at a minimum, when they were first sold at

retail in April 2001.  Plaintiffs cannot dispute that if they had conducted any reasonable

investigation or acted diligently prior to filing the original complaint, they would have become

aware of these products and could have included them in the original complaint.

Reiling's statement in his declaration that he did not learn of the Voice Tech

Mission Command figures until his deposition in December 2003 cannot be credited.  Reiling

Dec. ¶ 6.  First, his co-plaintiffs have testified that they were aware of these figures at least as

early as September 2003, if not sooner. Bruce Benedetto of Design Innovation testified that he

"might have" been aware of Voice Tech Mission Command Rescue Heroes figures prior to the

lawsuit. He also testified:

> Q. When [the Mission Command Rescue Heroes figures] first
> came on to the market, do you remember seeing them in
> 2001?
>
> A. Again, it looks very familiar.

Lane Dec., Exhibit B (Benedetto Testimony) at 107-08. And, Bruce Popek of Design Innovation

testified that he was aware of mission cards (the cards which slid into the Voice Tech Mission

Command figure's backpack) "a couple of months" prior to his November 19, 2003 deposition

when "Stan [Clutton of Fisher-Price] brought it to [his] attention." Lane Dec., Exhibit A (Popek

Testimony) at 124. Thus, if plaintiffs believed they had a claim relating to the Voice Tech

Mission Command Rescue Heroes figures, they should have filed their motion to amend in a

timely manner, long before February 2004 when discovery had been essentially completed.

### 4. Rescue Heroes Videos and Computer Games.

Videos featuring the Rescue Heroes characters have been on the market since fall

1998. Pardi Dec. ¶ 5 & Exhibit A. The videos, which were packaged as a giveaway or were sold

separately at retail, were almost exclusively episodes of the Rescue Heroes series, which aired on

CBS and the Warner Brothers Network. Pardi Dec. ¶ 5. Their public availability and airing on

television undermines plaintiffs' claim that they have only recently learned of the videos. *See*

Reiling Dec. ¶ 7. Moreover, Exhibit M to the first amended complaint actually depicts part of a

video package plaintiffs had possession of. Computer games featuring the Rescue Heroes have

been available since fall 1999. Pardi Dec. ¶ 6. Plaintiffs should not be permitted to amend to

add these products when they can be charged with knowledge of them long before they now claim and where most claims on these products would be time-barred.

## C.   Plaintiffs Have Failed to Provide a Satisfactory (or Any) Explanation for the Delay

"[W]here considerable time has elapsed between the filing of the complaint and the motion to amend, ***the moving party has the burden to provide a satisfactory and valid explanation for the delay***." *Cartier*, 2004 WL 169746, *3 (emphasis added). In the absence of such a satisfactory explanation for the delay, denial of a motion to amend is proper. *See id.*, *See also Krumme v. Westpoint Sevens, Inc.*, 143 F.3d 71, 88 (2d Cir. 1988) (plaintiff "offered no adequate excuse for delay in seeking to amend); *Avent v. Solfaro*, 2003 WL 21361730 (S.D.N.Y. June 12, 2003) (relying on factor of unexplained delay to deny amendment); *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1130 (10th Cir. 1998).

Plaintiffs have plainly failed to provide a satisfactory and valid explanation for their delay in seeking to amend their complaint. As set forth above, plaintiffs knew about the Voice Tech vehicles, the Aquatic Rescue Command Center, Rescue Heroes videos, and Mission Command Rescue Heroes figures prior to the commencement of this action. In the absence of any explanation for their delay in asserting these claims, plaintiffs' motion to amend should be denied.

## D.   Discovery Is Substantially Complete and Additional Discovery Would Be Required

Where, as here, the delayed motion comes "at a point where discovery is substantially complete and would require the parties to engage in additional discovery," prejudice is shown and the motion to amend should be denied. *Semiconductor Energy Lab. Co.,*

- 25 -

*Ltd. v. Sanyo N. Am. Corp.*, 2001 WL 194303, *3 (D. Del. Feb. 22, 2001) (finding prejudice where the parties would have to engage in additional discovery to determine the relationship between patents and technology already in the litigation and the proposed additions). The Second Circuit has affirmed the denial of leave to amend where the proposed amendments "could significantly expand the scope of discovery at a time when the case should be ready to proceed to trial," and created "an imminent danger that plaintiff would seek to force a favorable settlement by abusive use of the discovery process." *Barrows v. Forest Lab., Inc.*, 742 F.2d 54, 58 (2d Cir. 1984).

Here, despite the fact that plaintiff knew of all of these products months, if not years, ago, the motion to amend comes just a few weeks before the close of discovery. As set forth in the accompanying Lane declaration (¶¶ 11-15), at least four witnesses would have to be re-deposed and substantial additional factual investigation would be required by the proposed amendment. Finally, it should also be noted that the motion to amend comes just after an unsuccessful settlement conference, and it threatens to open the floodgates to further discovery.

**E.    Fisher-Price Is Prejudiced
        by the Amendment**

Prejudice results where "allowing the amendment would require the non-moving party to expend significant additional resources or significantly delay the resolution of the dispute." *Cartier*, 2004 WL 169746 at *3; *see also Krumme*, 143 F.3d at 87 (motion to amend properly denied because it was "readily apparent that the proposed amendments would require a new wave of discovery and would substantially delay the resolution of [the] action"); *Grace v. Rosenstock*, 228 F.3d 40, 54 (2d Cir. 2000) (denial of leave to amend proper "where the belated motion would unduly delay the course of proceedings by, for example, introducing new issues for discovery").

- 26 -

Prejudice also results if "the opposing party would experience undue difficulty in defending a lawsuit because of a change in tactics or theories on the part of the movant," or if the proposed amendments represent "a significant broadening of theories under which plaintiffs seek to recover." *Cartier*, 2004 WL 169746 at *3, *4 (internal quotes omitted).

As discussed above and in the Lane declaration, if the proposed amendment is permitted, Fisher-Price will be required to re-depose all of plaintiffs' witnesses, including their expert, conduct additional factual investigation, produce and request voluminous additional documents, and conduct a number of wide-ranging prior art searches. This is exactly the sort of prejudice the courts recognize as requiring denial of a motion to amend.

### III.  PLAINTIFFS' PROPOSED AMENDMENTS RELATING TO VOICE TECH VEHICLES AND OTHER PRODUCTS ARE FUTILE

Amendment must be denied where, as here, the proposed amendment would be futile. *See Coleman v. Aztec Lighting*, 2004 WL 213031, *2 (D. Conn. Jan. 28, 2004). Here, plaintiffs' claims in second amended complaint which relate to the Voice Tech Fire Truck, Voice Tech Jet and Voice Tech Police Cruiser are futile because: (1) plaintiffs have admitted they have no claim to the Voice Tech vehicles; (2) none of these products use plaintiffs' submissions; and (3) the claims relating to the Voice Tech Fire Truck and Voice Tech Jet are barred by the statute of limitations.

### A.  Plaintiffs Have Admitted They Have No Claims To The Voice Tech Vehicles

Plaintiffs' request to add claims relating to the Voice Tech Fire Truck, Voice Tech Jet, and Voice Tech Police Cruiser is inexplicable because plaintiffs have admitted under oath, just three months prior to making this motion, that the Voice Tech vehicles do not

- 27 -

misappropriate any of the plaintiffs' submissions.  At his deposition, Mr. Benedetto, a principal at Design Innovation, testified:

> Q.    We've marked as Exhibit 219 the Voice Tech [F]ire [T]ruck.  Do you claim that this appropriate any of Reiling Design Innovation submissions in any respect?
>
>         * * *
>
> A.    I would say no.
>
>         * * *
>
> Q.    Does the Voice Tech [J]et appropriate any of the ideas or features of the Reiling/Design Innovation submissions to Fisher-Price?
>
> A.    I would have to say no.
>
>         * * *
>
> Q.    . . . Mr. Benedetto, does the Voice Tech [P]olice [C]ruiser appropriate any of the ideas or features of the Reiling/Design Innovation submissions to Fisher-Price?
>
> A.    I would say no.

Lane Dec., Exhibit B (Benedetto Testimony) at 122-24.  There could not be a more clear case of futility than plaintiffs' belated attempt to add claims relating to the Voice Tech Fire Truck, Jet and Police Cruiser.  Plaintiffs have already admitted – under oath – that the Voice Tech vehicles do not appropriate any of the ideas or features of their submissions to Fisher-Price.

**B.    Voice Tech Vehicles Do Not Use Plaintiffs' Submissions**

As discussed above, plaintiffs have defined their concept as the use of an image or images with an action figure to enhance the role play of children using the action figure.  The Voice Tech vehicles identified by plaintiffs do not incorporate any of the features of plaintiffs' allegedly novel submission.

The Voice Tech vehicles do not use or incorporate any "image player" or any backpacks. Rather, they are compatible with and were marketed for use with *all* Rescue Heroes figures. And, to the extent plaintiffs claim that the Voice Tech vehicles are somehow accessories exclusive to the allegedly misappropriated Voice Tech Mission Command, Voice Tech Video Mission, or Mission Select figures at issue in the proposed second amended complaint, this claim must be rejected, because they were marketed and sold *before* any of these figures. These vehicles were introduced and sold in 2000 with the original Voice Tech figures — regarding which plaintiffs have asserted no claim. Pardi Dec. ¶ 13.

**C.     Claims Relating to the Voice Tech Jet
        and the Voice Tech Fire Truck are
        Time-Barred and Do Not Relate Back**

Plaintiffs seek to add "additional products that were released in connection with the Voice Tech Video Mission Rescue Heroes line of Toys." Plaintiffs' Memo at 3. Among the products plaintiffs claim were "released" in connection with the Voice Tech Video Mission line of toys are the Voice Tech Rescue Fire Truck and the Voice Tech Jet. Plaintiffs' Memo at 3; SAC ¶ 36. This is not true. Both the Voice Tech Rescue Fire Truck and the Voice Tech Jet were launched in February 2000, when the Voice Tech Video Mission figures were not even available. Pardi Dec. ¶ 13.

Four years have passed since the introduction and the belated attempt at amendment. Plaintiffs' second through fifth causes of action are all governed by a three year statute of limitations.[16] Thus, plaintiffs' claims relating to the Voice Tech Jet and the Voice

---

[16]     *See* C.P.L.R. 214(4) (action to recover damages for an injury to property to be commenced within three years); *Pordy v. Land O' Lakes, Inc.*, 2001 WL 1478808, *3 (S.D.N.Y. Nov. 20, 2001) (statute of limitations for misappropriation claim is three years); *M&T Chemicals, Inc. v. Int'l Business Machines Corp.*, 403 F.Supp. 1145, 1148 (S.D.N.Y. 1975) (referring to C.P.L.R. 214(4) and the three year statute of

Footnotes continued on next page.

Tech Fire Truck are time-barred and are therefore futile.

Any argument that plaintiffs' claims regarding the Voice Tech Fire Truck or the Voice Tech Jet should relate back to the filing of the original complaint must be rejected. A claim that a particular product infringes a party's intellectual property rights does not encompass different claims even though similar facts may be at issue, especially where discovery is almost complete. *See Semiconductor*, 2001 WL 194303. Therefore, there should be no relation back, and plaintiffs may not rely on the filing of their complaint regarding Voice Tech Video Mission Rescue Heroes figures as tolling the statute of limitation on claims relating to the Voice Tech Jet or Fire Truck.

**D.    Plaintiffs Have Admitted They Have No
Claims on Videos, DVDs, Games or the Movie**

Of the products plaintiffs seek to add, they list unspecified videos, DVDs, and games. Plaintiffs also seek to add the Rescue Heroes movie. SAC ¶ 39. *Id.* Plaintiffs' attempts to add these products must be rejected because plaintiffs have already admitted they are not making claims on these products:

---

Footnotes continued from previous page.

limitations for misappropriation claims; denying plaintiff's motion for leave to file second amended complaint because misappropriation claims were time-barred); *Timmons v. City of Hartford*, 283 F.Supp.2d 712, 719 (D. Conn. 2003) (CUPTA statute of limitations is three years); *Ediciones Quiroga, S.L. v. Fall River Music, Inc.*, 1995 WL 103842, *8 (S.D.N.Y. March 7, 1995) (appropriate limitations provision for unfair competition claim was C.P.L.R. 214(4)); *Mopex, Inc. v. American Stock Exchange, LLC*, 2002 WL 342522, * 11 (S.D.N.Y March 5, 2002) (unfair competition claim subject to three year limitations period because it constituted injury to property); *Besicorp LTD v. Kahn*, 290 A.D.2d 147, 150, 736 N.Y.S.2d 708, 711 (3d Dep't 2002) (three year statute of limitations applied to tortious interference with prospective economic advantage claim). Moreover, there can be no "continuing tort" theory where the disclosure of the allegedly misappropriated idea has occurred. *See M&T Chems.*, 403 F.Supp. at 1148.

Q.   Any image used with a Rescue Hero would infringe your concept?

A.   Yes.

Q.   How about a video on TV?

A.   No, I don't think that would be.

     * * *

Q.   See there is a [Rescue Heroes] videotape that is sold along with Exhibit 209 [Jake Justice figure]?

A.   Yes.

Q.   You're not making any claim to that videotape, are you?

A.   No.

Q.   Or any computer games, DVDs, are you making any claim to those?

A.   No.

Q.   Or the Rescue Heroes is coming out with a new movie in the next couple of weeks, are you making any claims to that movie?

A.   No.

Lane Dec., Exhibit B (Benedetto Testimony) at 128-29. Thus, as early as November 2003 (and likely long before), plaintiffs knew of these products and denied making claims to them. Plaintiffs' motion to amend to add these products must thus be denied.

## IV.    THE PROPOSED AMENDMENTS WILL REQUIRE SIGNIFICANT ADDITIONAL DISCOVERY

If plaintiffs are permitted to amend their first amended complaint, the proposed amendments will require significant additional discovery and will have the effect of the commencement of a new action. Plaintiffs attempt to argue that they "do not anticipate that

Fisher-Price will need significant additional discovery." Plaintiffs' Memo at 7. They base this claim on the fact that some of the "newly-discovered products were marked as exhibits during . . . depositions." Plaintiffs' Memo at 7.

Nevertheless, Fisher-Price will require the re-deposition of plaintiffs, including Victor Reiling, Bruce Popek, Bruce Benedetto, and Douglas Melville. Fisher-Price did not question any of these witnesses about Mission Select vehicles, The Mountain Action Command Center, the Rescue Heroes Feature Movie, Rescue Heroes videos, or the Optic Force Rescue Heroes team. Lane Dec. ¶¶ 11-15.

Moreover, Fisher-Price was not able to effectively question plaintiffs' witnesses about even those products that were marked as exhibits. Because plaintiffs had not asserted any claims regarding these products, it was not possible to pin them down on their views of whether (and why) these products might infringe. This problem is best illustrated by the questioning relating to the Voice Tech vehicles. As discussed above, Mr. Benedetto testified these products did not use plaintiffs' concept; the proposed second amended complaint claims they do. If amendment is allowed, clearly additional questions will be required.

Finally, plaintiffs have changed their allegations of what constitutes their concept from being a "**battery operated animated image player**" to simply a "battery operated image player." *Compare* FAC ¶ 18 to SAC, ¶ 18. Clearly, plaintiffs have changed their definition of their concept and Fisher-Price is entitled to complete discovery on this change.

Plaintiffs also argue that any additional discovery they will seek will be limited to "primarily ... sales figures" on the additional product. Plaintiffs' Memo at 7. This is false. Plaintiffs' Second Request for the Production of Documents, dated December 16, 2004, seeks sales information, plans for 2004 and 2005, patent disclosures, patents, patent searches and

novelty searches, copyrights, SKUs, information related to the creation and development of each

of the fifteen "new" products, and communications between Fisher-Price and any third parties

related to the development of these products.[17]  Lane Dec., Exhibit F.  Given that Fisher-Price

has already produced 2286 documents in response to plaintiffs' previous requests related to

Voice Tech Video Mission Rescue Heroes figures, it is fair to say that thousands of additional

documents will be sought by plaintiffs.  Plaintiffs have remained silent as to whether they will

seek additional depositions or whether they would seek to re-depose witnesses already produced

by Fisher-Price.  The silence can hardly be accidental.

Plaintiffs also recognize that additional expert work will be required.  Their

motion to amend comes just three days after Fisher-Price served its expert report in this matter.

Thus, this motion is indisputably untimely, and its effect on discovery will be far-reaching.

## V.    IF AMENDMENT IS GRANTED, PLAINTIFFS SHOULD BEAR THE EXPENSE OF ADDITIONAL DISCOVERY AND THE COURT SHOULD LIMIT PLAINTIFFS TO THE PRODUCTS NOW IDENTIFIED

This Court should, if it grants plaintiffs' motion to amend, condition the

amendment upon plaintiffs' bearing the expense of additional discovery.  *See Polycast Tech.*

*Corp. v. Uniroyal, Inc.*, 728 F.Supp. 926, 939 (S.D.N.Y. 1989) (citing 6 WRIGHT & MILLER,

FEDERAL PRACTICE AND PROCEDURE (1971) § 1486 at 423-24); *see also Leased Optical Depts.-*

*Montgomery Ward, Inc. v. Opti-Center, Inc.*, 120 F.R.D. 476, 480 (D.N.J. 1988) ("The recovery

of costs -- in whole or in part -- is '[t]he most common condition imposed on an amending

---

[17]    In its response, Fisher-Price objected to these requests as being overbroad and as seeking irrelevant information not likely to lead to the discovery of admissible evidence.  As plaintiffs' instant motion concedes, none of these products were within the scope of the original or first amended complaints.

party'"). After granting a plaintiff's motion to amend its complaint to add new claims, the court

can order plaintiff to pay the costs of discovery necessitated by such amendments in order to cure

any prejudice to the defendant. *Polycast*, 728 F.Supp. at 944; *see, e.g., Cemar, Inc. v. Nissan*

*Motor Corp. in USA*, 678 F.Supp. 1091, 1106 (D. Del. 1988) (ordering plaintiff to reimburse

defendant for any duplicative discovery caused by the amended complaint). This Court should

similarly order plaintiffs to bear the costs of additional discovery (including attorneys' fees,

travel costs, etc.), especially in view of the unexplained lateness of the amendment.

Finally, although the proposed second amended complaint seeks to add fifteen

new products, plaintiffs expressly leave open the possibility of adding more products later.

*See* SAC ¶¶ 35-36 (listing products plaintiffs allege misappropriate their concept and indicating

that their claims "include, but may not be limited to" the listed products). In addition, the

proposed second amended complaint refers to "videos, DVDs, computer games, and video

games," but does not identify which of many such possible products it is charging with

misappropriation. SAC ¶ 39. If this Court grants plaintiffs' motion to amend (which it should

not), it should order that plaintiffs may not pursue claims relating to any products not specifically

identified by name in the proposed second amended complaint.

## VI.    ANY REFERENCE TO STATEMENTS MADE DURING SETTLEMENT DISCUSSIONS MUST BE STRICKEN

If the Court permits plaintiffs to file a second amended complaint (which it should

not), Fisher-Price moves to strike all references to confidential settlement discussions between

the parties and any reference to Fisher-Price's legitimate determination to cease doing business

with Design Innovation. Statements made during settlement negotiations are plainly not

admissible. And, even if such statements were admissible, the statements here fail to state a

claim for tortious interference with business relations between Design Innovation and Reiling.

At paragraph 40 of the proposed Second amended complaint, plaintiffs allege:

> "After the First Amended Complaint was filed, Defendant
> threatened to terminate its business relationship with
> Plaintiff DI unless DI withdrew from the lawsuit. Because
> the business relationship between Defendant and DI results
> in significant business to DI, DI considered this request.
> However, DI was then informed that not only would DI
> have to withdraw from the lawsuit in order to maintain the
> business relationship, but Reiling would have to withdraw
> as well. When Reiling refused to withdraw, Defendant
> terminated its business relationship with DI. The foregoing
> acts by Defendant constitute tortious interference with
> business relationship between Reiling and DI in that
> Defendant has attempted and continues to attempt to force
> DI to use its influence with Reiling to persuade Reiling to
> withdraw from the lawsuit."

As discussed in the accompanying affidavit of Stan Clutton, any discussions of the type

referenced in paragraph 40 were made exclusively during settlement discussions. Another

reference to settlement discussions appears in plaintiffs' fourth cause of action for common law

unfair competition, specifically at paragraph 57, where plaintiffs claim that the alleged "tortious

interference" forms a basis for their unfair competition claim.

A.    **Plaintiffs Improperly Disclose
       Statements Made During Settlement
       Negotiations and Discussions**

Federal Rule of Civil Procedure 12(f) permits the court to strike material in a

pleading that is "redundant, immaterial, impertinent, or scandalous." Fed. R. Civ. P. 12(f); *see

also Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 892 (2d Cir. 1976). Where "it can be

shown that no evidence in support of the [challenged] allegation would be admissible" at trial, a

motion to strike those portions of the complaint is proper. *Id.* at 893 (finding that, because the

- 35 -

material referred to in the complaint would not be admissible evidence, the motion to strike was proper).

It is well settled that settlement discussions are privileged. *Helene Curtis Indus., Inc. v. Sales Affiliates, Inc.*, 121 F.Supp. 490, 509 (S.D.N.Y. 1954). And, Federal Rule of Evidence 408 provides that evidence of conduct or statements made in compromise negotiations is not admissible to prove liability for or the invalidity of a claim. Fed. R. Evid. 408; *see also Pierce v. F.R. Tripler & Co.*, 955 F.2d 820, 826 (2d Cir. 1992). Admission into evidence of settlement negotiations "could inhibit settlement discussions and interfere with the effective administration of justice." *Pierce*, 955 F.2d at 827.

Here, the parties agreed to conduct direct discussions among themselves, without the presence of counsel. Clutton Dec. ¶¶ 3-4. Plaintiffs agreed in writing that the discussions regarding settlement would be "confidential, not subject to discovery, inadmissible and are made without prejudice to any claims or defenses." Clutton Dec., Exhibit A. Any request by Fisher-Price for plaintiffs to terminate this action was made in the context of settlement discussions and would thus be inadmissible. Therefore, should the Court grant plaintiffs' motion to amend, the Court should also strike any reference to settlement discussions.

Moreover, the allegation that Fisher-Price terminated its relationship with Design Innovation as a result of being sued by Design Innovation should also be stricken. This decision by Fisher-Price was plainly within its rights as a paying customer of Design Innovation, and plaintiffs apparently acknowledge that no claim may be brought against Fisher-Price for termination of its use of Design Innovation's services because they have alleged no such cause of action. This gratuitous factual allegation thus does not support any pleaded cause of action in the

- 36 -

proposed second amended complaint but rather transparently attempts to prejudice Fisher-Price

for a legitimate – and eminently reasonable – business decision.

**B.    Permitting Allegations Regarding
        Settlement Discussions Would Be Futile.**

In addition to being inadmissible under Federal Rule of Evidence 408, allegations

regarding the discussions among the parties should be stricken because they do not support any

cognizable legal claim.  Plaintiffs purport to rely on these allegations as a basis for tortious

interference with the business relationship *between DI and Reiling*.  SAC ¶¶ 40, 57.  This claim

is subject to dismissal for failure to state a claim because plaintiffs can neither plead nor

demonstrate any actual loss.

In order to state a claim for tortious interference with business relations, a plaintiff

must plead:  (1) "a prospective business relationship existed between the plaintiffs and a specific

third party. . . (2) the defendant knew of the relationship; (3) the defendant intentionally

interfered with the relationship, and (4) as a result of the defendant's tortious conduct, the

plaintiff suffered actual, ascertainable  loss."  *In re Conn. Mobilecom, Inc, v. Cellco Partnership*,

2003 WL 23021959, *8 (S.D.N.Y. Dec. 23, 2003) (citing *Hi-Ho Tower, Inc. v. ComTronics, Inc.*,

255 Conn. 20, 761 A.2d 1268, 1275 (Conn. 2000)).  Plaintiffs have pleaded no actual,

ascertainable loss — both Design Innovation and Reiling have remained in this lawsuit.  Thus,

plaintiffs have not alleged — and cannot allege — any prospective relations between them which

have actually been interfered with; nor have they pleaded knowledge of the relationship or

intentional interference with that relationship by Fisher-Price.  Thus, plaintiffs' claim of tortious

interference cannot proceed.  Accordingly, this Court should strike both paragraph 40 and the

portion of paragraph 57 relating to termination of the relationship between Fisher-Price and

Design Innovation if plaintiffs' motion to amend is granted in any respect.

## Conclusion

For the foregoing reasons, plaintiffs' motion to amend should be denied. If the Court, however, grants plaintiffs' motion to amend, the Court should order plaintiffs to bear all expenses of additional discovery and should also grant plaintiffs' motion to strike.

Dated:  February 20, 2004

By _____
Bradford S. Babbitt (ct13938)
email:  bbabbitt@rc.com
ROBINSON & COLE LLP
Michael J. Kolosky (ct22686)
email:  mkolosky@rc.com
280 Trumbull Street
Hartford, CT 06103-3597
tel. no.: (860) 275-8200
fax no.: (860) 275-8299

and

Robert J. Lane, Jr. (ct24598)
e-mail:  rlane@hodgsonruss.com
Jodyann Galvin (ct24599)
e-mail:  jgalvin@hodgsonruss.com
HODGSON RUSS LLP
One M&T Plaza, Suite 2000
Buffalo, New York  14203-2391
tel. no: (716) 856-4000
fax no.: (716) 849-0349

*Attorneys for Fisher-Price, Inc.*