UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

VICTOR G. REILING ASSOCIATES and       :
DESIGN INNOVATION, INC.,                :
                                        :
          Plaintiffs,                   :    Civil No. 303CV222 **(JBA)**
                                        :
v.                                      :
                                        :
FISHER-PRICE, INC.,                     :
                                        :
          Defendant.                    :
                                        :    FEBRUARY 17, 2003

**DECLARATION IN OPPOSITION**
**TO PLAINTIFFS' MOTION TO AMEND**

          HOWARD BOLLINGER, under penalty of perjury and pursuant to 28 U.S.C.

§ 1746, declares that the following is true and correct:

          1.        I have been retained by defendant Fisher-Price, Inc. ("Fisher-Price") to

provide my independent expert opinion on certain issues in this case.  My qualifications and

background are summarized on the resume attached as **Exhibit A.**

          2.        I have been advised by counsel for Fisher-Price that plaintiffs have moved

for permission to file a Second Amended Complaint in this case adding a number of new

Fisher-Price products that they now claim make use of the "concept" they disclosed to

Fisher-Price in three separate submissions between late 1998 and December 2000.  The purpose

of this declaration is (1) to demonstrate that no Fisher-Price products have made any use of the

ideas or concepts reflected in plaintiffs' three submissions; and (2) to demonstrate that plaintiffs'

concept, *as they themselves have now defined it*, is not novel and was not novel at the time of

plaintiffs' first submission to Fisher-Price in 1998.

- 2 -

## Plaintiffs' Submissions

3.    I have reviewed and analyzed plaintiffs' three submissions to Fisher-Price that are at issue in this case. My comments are set forth below.

4.    Plaintiffs allege in their First Amended Complaint (the "Complaint") that in late 1998, approximately 10 months after the successful introduction of the Rescue Heroes product line by Fisher-Price, plaintiffs made the first submission at issue in this case. Complaint ¶¶ 18-19. It is important to understand that plaintiffs' submissions did not propose or conceive of a new product or new product line. Instead, plaintiffs suggested a modification or variation to pre-existing Rescue Heroes figures. *Id.* ¶¶ 17-18. Thus, as shown in Exhibit B to the proposed Second Amended Complaint, plaintiffs' first submission in late 1998 (the "1998 Submission") showed an existing Rescue Heroes firefighter character with a backpack (like all previous Rescue Heroes).[1] The feature that plaintiffs themselves identified as novel with respect to their 1998 Submission was the fact that the backpack contained a battery operated film reel which could be viewed by a child placing one eye up to a magnifying lens and looking into the interior of the backpack.[2] Fisher-Price rejected plaintiffs' 1998 Submission as being too expensive and as lacking sufficient play value. Complaint, Exhibit G.

---

[1]    Photos of the prototype of the firefighter figure with the film cassette in his backpack, which plaintiffs included with their 1998 Submission, are attached as Exhibit E to the Declaration of Robert J. Lane, Jr., dated February 19, 2004 ("Lane Declaration").

[2]    Exhibit C to the proposed Second Amended Complaint is a Fisher-Price Concept Submission Form completed by Victor Reiling. That form requires the submitting inventor to "carefully define[ ]" the unique feature[s] of his submission. Mr. Reiling wrote: "Batt[ery] Op[erated] film strip units for each Rescue Hero . . . ." Exhibit F to the Complaint is the Option Agreement signed by plaintiffs in connection

Footnotes continued on next page.

- 3 -

5.      Plaintiffs re-submitted their concept in May 1999 (the "1999 Submission"). Complaint ¶ 23 & Exhibit H. That submission reflected a Rescue Heroes firefighter figure with a backpack-shaped viewer. The backpack included a tinted housing containing a drum with approximately twenty still action frames showing Rescue Heroes in action. These frames could be viewed only by placing one eye up to a magnifying lens and looking inside the backpack. The frames were advances sequentially by means of a hand crank. Fisher-Price also rejected this submission. Complaint ¶ 23.

6.      Plaintiffs submitted their concept for a third time in December 2000 (the "2000 Submission") showing an action figure with a backpack and a separate digital camera device, each containing a Viewmaster-style film disc[3] about two inches in diameter with six or more images. The images were located inside the backpack or camera and could be viewed only by placing one eye up to a magnifying lens and looking into the interior of the backpack or into the digital camera device. The images were advanced sequentially by pushing a lever. Complaint ¶ 24 & Exhibit I.

---

Footnotes continued from previous page.

with their submission to Fisher-Price. Exhibit A to the Option Agreement describes the concept, as agreed to between the parties. It reads: "Submitted concept extends cartoons to action figures play pattern. The concept is a battery operated film reel that is activated when the child pushes a button on the backpack of the action figure. The child may then look through the viewer on the backpack to see the film . . . . The concept may be incorporated into the assorted Fisher-Price Rescue Heroes action figures. The unique aspect of the concept is the combination of existing action figures with film for play pattern."

[3]  "Viewmaster" is a hand-held viewing device for film discs that has been sold for decades. The discs were traditionally made out of cardboard and contained approximately 14 transparent film images. The images were viewed by looking through a magnifying lens to see the film image which was illuminated by ambient light.

- 4 -

**Fisher-Price Never Used the Submissions**

7.    I have reviewed Fisher-Price's Rescue Heroes figures as presented in its catalogs and on its website. I have reviewed all of the types of Rescue Heroes figures, vehicles, and accessories identified in the proposed Second Amended Complaint.

8.    Based on that review, it is clear that Fisher-Price never used the concepts reflected in any of the three submissions submitted by plaintiffs. Fisher-Price never made or sold a Rescue Heroes figure with a film loop inside its backpack which could be viewed only by placing an eye up to a magnifying lens (or with any film loop at all). Fisher-Price never manufactured a Rescue Heroes figure with a backpack containing a drum with still frames, which could be viewed only by placing an eye up to a magnifying lens to look inside the backpack. Fisher-Price never manufactured a Rescue Heroes figure with a backpack, digital camera, or other device into which Viewmaster-style film discs could be inserted for viewing.

9.    Moreover, none of the vehicles (*e.g.*, the Voice Tech Jet, Police Cruiser and Fire Truck) utilize a film loop, a drum with still frames, or a Viewmaster-style film disc viewed through a magnifying lens or viewer. *See* Declaration of Christopher Pardi, dated February 18, 2004 ("Pardi Declaration"), **Exhibit C** at **(FP 1609-10)**; **Exhibit G** at **(FP 1631)**. Finally, the Fisher-Price play sets identified in the proposed Second Amended Complaint (at ¶¶ 35-36) — the Aquatic Rescue Command Center and the Mountain Action Command Center do not utilize a film loop, a drum with still frames or a Viewmaster-style film disc viewed through a magnifying lens or viewer.

- 5 -

### The "Concept" as Plaintiffs
### Define It Was Not Novel in 1998

10.     It cannot seriously be disputed that Fisher-Price never used the concept or features reflected in any of their three submissions.  Plaintiffs have re-defined their concept to eliminate all of the specific features in the submissions they made to Fisher-Price.  It appears that by eliminating any reference to specific features and describing their "concept" in the most general terms possible, plaintiffs seek to craft a definition of their alleged "concept" which would capture within it some of Fisher-Price's products.

11.     In their deposition testimony, plaintiffs have proposed the following definition for their concept:

> the use of an image or images with an action figure to
> enhance the role play of children using the action figure.[4]

12.     There are two problems with plaintiffs' attempt to expand the definition of their concept to capture Fisher-Price's products.  First, the new definition does not accurately reflect what they submitted to Fisher-Price.  By generalizing their concept to a high level of

---

[4]     *See* Lane Declaration, Exhibit B (Benedetto Testimony) at 126 (the concept is an image "with . . . action figures . . . to enhance role play");  Lane Declaration, Exhibit A (Popek Testimony) at 42 (the concept was putting an image on the backpack to create a better role playing experience for the child");  Lane Declaration, Exhibit B (Benedetto Testimony) at 171 (the image does not have to be on or in the backpack to embody plaintiffs' concept, but can be anywhere on the action figure);  Lane Declaration, Exhibit D (Reiling Testimony) at 42 (the novelty of plaintiffs' concept was "to be able to bring these images into the [Rescue Heroes] line and give a child a chance to really get involved with play patterns and how much it would enhance the play value of the rest of the [Rescue Heroes]");  Lane Declaration, Exhibit D (Reiling Testimony) at 186, 195 (the image does not have to be on or in the backpack to embody plaintiffs' concept, but can be anywhere on the figure);  Lane Declaration, Exhibit C (Melville Testimony) at 21-22 (image could be on figure's chest).

- 6 -

abstraction, plaintiffs appear to be re-defining their concept to attempt to encompass Fisher-Price products that do not make use of any of the specific features of their submissions.

13. The second problem with plaintiffs' new definition of their concept is that, in expanding their definition to capture Fisher-Price's products, they have defined a concept that was not novel at the time of their submissions. The use of images in or with an action figure to "help create role playing scenarios"[5] has been well known in the toy industry long before plaintiffs' first submission in late 1998. For example, Toy Biz (a major competitor of Fisher-Price) introduced a line of projector action figures in 1993. Each figure (Spiderman, Wolverine, Cyclops, etc.) came with three Viewmaster-type discs, each of which contained 16 images on film. The discs could be inserted in the figure's chest. The images were then projected on a nearby surface through a lens on the figure's chest. The images were advanced by turning a knob on the back of the figure, thereby presenting an adventure for the figure. An example of one of these figures is attached as **Exhibit B**. This was a successful product, sold nationwide by Toy Biz from 1993-95, and was well known in the toy industry.

14. Attached as **Exhibit C** is a patent entitled "Image Projective Toy" which was issued and assigned to Toy Biz in 1996. This patent discloses projector action figures like the one attached as **Exhibit B**. Significantly, in column 3, this patent also discloses a slightly different mechanism than the one contained in the figures actually sold by Toy Biz. In this embodiment, the images on the Viewmaster-type discs are not projected on a wall; instead, "the

---

[5] Proposed Second Amended Complaint ¶ 18.

- 7 -

images may be viewed internally by placing the lens [on the chest] directly in front of the eye."[6] This is virtually indistinguishable from plaintiffs' concept as reflected in their third submission.

15.    Both the Toy Biz figure attached as **Exhibit B** and the patent attached as **Exhibit C** disclosed plaintiffs' concept as they now define it — the use of images with an action figure to enhance the role play of children using the action figure.  Because both the Toy Biz figure was on sale and the patent was issued long before plaintiffs' submission in late 1998, it is clear that plaintiffs' concept was not novel at the time of their submissions to Fisher-Price.

## The Secondary Concept in Plaintiffs' Submissions

16.    Plaintiffs claim that their submissions (at least the 1998 and 2000 Submissions) also included a second, independent concept — a TV cameraman figure holding a TV camera.  Complaint ¶¶ 18, 24.[7]  The camera was designed with a window on top, through which the child could look to see out of the camera lens — giving the impression that he was viewing what the cameraman was "filming." *Id.* ¶.

17.    Again, this element of plaintiffs' concept was not novel in late 1998. Indeed, Fisher-Price had itself sold a TV cameraman action figure as early as the 1970s.  That figure also came with a TV camera that the child could look through to see what the cameraman

---

[6] In addition, the patent states, also at column 3 (on page FP 2259), "the ability to project images which may be related in some manner to the character of the toy figure greatly increases the "play-value . . ."

[7] The 1999 Submission made no reference to this figure.

- 8 -

was "filming." A copy of a 1978 Fisher-Price catalog reflecting that figure is attached as an exhibit to the Pardi Declaration.

Dated:    February 17, 2004

_____
Howard Bollinger