UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

VICTOR G. REILING ASSOCIATES and
DESIGN INNOVATION, INC.,

                   Plaintiffs,

  - against -

FISHER-PRICE, INC.,

                  Defendant.

Index No.: 3:03 CV 222 (JBA)

March 3, 2004

## PLAINTIFFS' MOTION TO COMPEL DISCOVERY

Plaintiffs, Victor G. Reiling Associates ("Reiling") and Design Innovation, Inc. ("DI") (collectively, "Plaintiffs"), upon the annexed declarations of James M. Kipling and Russell D. Dize, the exhibits thereto and the accompanying Memorandum of Law, respectfully move the Court for an order, pursuant to Rule 37 of the Federal and Local Rules of Civil Procedure, compelling Defendant to produce certain documents requested by Plaintiffs that are essential to Plaintiffs' case and to which Defendant has objected, and for such other and further relief as the Court deems just and proper.

Dated: Norwalk, Connecticut
March 3, 2004

Respectfully Submitted,

GRIMES & BATTERSBY, LLP

By: _____
Gregory J Battersby (Bar No. 7386)
Edmund J. Ferdinand, III (Bar No. 21287)
Russell D Dize (Bar No. 23064)
Jessica L. Elliott (Bar No. 24871)
488 Main Avenue, Third Floor
Norwalk, Connecticut 06851-1008
(p) (203) 849-8300
(f) (203) 849-9300

Attorneys for Plaintiffs Victor G. Reiling
Associates and Design Innovation, Inc.

2

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing Plaintiffs' Motion to Compel Discovery has been served upon defendant Fisher-Price, Inc., on this 3rd day of March 2004, via U.S. Mail, First Class, postage prepaid, to:

Bradford S. Babbitt, Esq.
Michael J. Kolosky, Esq.
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, CT 06103-3597

Robert J. Lane, Jr., Esq.
Jodyann Galvin, Esq.
HODGSON RUSS LLP
One M&T Plaza, Suite 2000
Buffalo, New York 14203-2391

Russell D. Dize

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

VICTOR G. REILING ASSOCIATES and
DESIGN INNOVATION, INC.,

Index No.: 3:03 CV 222 (JBA)

Plaintiffs,

- against -

FISHER-PRICE, INC.,

March 2, 2004

Defendant.

## DECLARATION OF JAMES M. KIPLING IN SUPPORT OF
## PLAINTIFFS' MOTION TO COMPEL DISCOVERY

I, JAMES M. KIPLING, pursuant to the requirements of 28 U.S.C. §1746, declare that the following is true and correct:

1.     I have been retained by Plaintiffs to be an expert witness in this case. I am familiar with the facts set forth herein and I make this declaration upon personal knowledge. I submit this declaration in support of Plaintiffs' Motion to Compel Discovery.

2.     As indicated in my Expert Report, I have practiced in the area of Intellectual Property since being admitted to the Bar in 1972. Between 1968 and 1974, I was employed by the General Electric Company and worked in the company's Patent Law Department in its Alexandria, Virginia and Cincinnati, Ohio offices. In 1974, I became House Counsel with the Kenner Toy Company, then a subsidiary of General Mills, Inc. In 1980, I became Vice President

Law with the Kenner Products Division of CPG Products Corporation, and later with Kenner-Parker Toys, Inc. From 1987 through 1990, the latter entity was a subsidiary of Tonka Corporation. In 1991, Tonka was acquired by Hasbro, Inc. and I was Vice President and Managing Attorney with Hasbro until 2001. Thereafter, I joined Frost Brown Todd LLC as Of Counsel to the Intellectual Property Law Department based in Cincinnati, Ohio. A principal focus of my practice since 1974 has been the process by which toy and game concepts are created, developed and marketed, as well as the various intellectual property law protections for such concepts and products. A true and correct copy of my Expert Report in this matter is attached hereto as Exhibit A.

3.    Central issues in this case are the extent to which concept submissions made to toy companies by outside toy inventors are changed by the time finished products incorporating the concept are ultimately offered for sale by the toy company, and the extent to which inventors are entitled to royalties for use of their concept or of products based on or influenced by the concept, regardless of changes to the concept submissions.

4.    As I indicated in my Expert Report, toy concepts are usually disclosed by outside inventors to toy manufacturers in the form of "kit-bash" models that may use pieces of existing toy and non-toy products assembled by the inventor and used to demonstrate the structure and/or function of a proposed toy concept, as well as in the form of drawings and/or written descriptions. It is fully understood and widely accepted in the toy industry that manufacturers expect to acquire new toy properties from inventors in "concept" form and to expend substantial

2

company resources in refining, embellishing and expanding those concepts into "finished" licensed products and product lines.

5.    As I further indicated in my Expert Report, I do not recall the occurrence of any manufacturer's marketing a product in the form submitted by an outside inventor. The custom and practice for the 25 plus years of my participation in the industry has been to compensate inventors and designers for the underlying concept in its various product line manifestations regardless of revisions, enhancements and changes made by the toy company subsequent to submission.

6.    In this case, Defendant seeks to avoid payment of a royalty to Plaintiffs on the grounds that, *inter alia*, it did not "use" Plaintiffs' concept in the Rescue Heroes line and that the Defendant's products were not "based on" or "influenced by" Plaintiff's concept. In Fisher-Price's Memorandum in Opposition to Plaintiffs' Motion to Amend, Defendant states that "it is undisputed that Fisher-Price never used the concepts reflected on any of the three submissions submitted by plaintiffs...." (Fisher-Price's Memorandum in Opposition to Plaintiffs' Motion to Amend and in Support of its Motion to Strike, dated February 20, 2004 ("Def. Opp.") at 6) (but, in point of fact, isn't that one of central issues in this case?) In addition, Defendant states that "Fisher-Price never made or sold a Rescue Heroes figure embodying the essential elements of plaintiffs' 1998 Submission;" "Fisher-Price never manufactured a Rescue Heroes figure embodying the essential elements of the 1999 Submission;" and "Fisher-Price never manufactured a Rescue Heroes figure with the essential elements of the 2000 Submission ...." (Def. Opp. at 13). In its Answer And Affirmative Defenses To Amended Complaint, Defendant

3

on three separate occasions "...denies any implication that Fisher-Price's product was based on or influenced by plaintiff's submission..." (Answer and Affirmative Defenses to Amended Complaint, dated May 15, 2003, at 13, 18 and 20).

7.    I am aware that Plaintiffs have requested documents from Defendant, as follows:

All documents that refer or relate to outside inventor submissions made to Fisher-Price from 1996 through 2000 that have resulted in or have been incorporated into commercialized products (i.e., products offered for sale) by Fisher-Price, including, but not limited to: (a) documents reflecting each such submission and the corresponding concept disclosure forms; (b) any option agreement or license agreement relating thereto; and (c) a sample of the final product or a catalog page depicting the final product commercialized by Fisher-Price.

8.    These documents are essential to Plaintiffs' case in that they will demonstrate that the custom and practice in the industry, as evidenced by Defendant's own actions, has been to compensate inventors and designers for the underlying concept in its various product line manifestations regardless of revisions, enhancements and changes made by the toy company subsequent to submission. These documents will also demonstrate the extent to which Fisher-Price has considered past products offered for sale by the company to use, be based on or influenced by concept submissions from outside toy inventors.

9.    During my career at Kenner Products and Hasbro, Inc., it was my experience that of the hundreds of concepts that were submitted by outside inventors for consideration by the company, on average only about ten of the company's products offered for sale each year were subject to license agreements with outside inventors.

4

I hereby declare that the foregoing is true and correct under penalty of perjury.

Dated: March 2, 2004

James M. Kipling

CtnLibrary/1375604.2

# EXHIBIT A

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| VICTOR G. REILING ASSOCIATES and DESIGN INNOVATION, INC., <br><br> Plaintiffs, <br><br> – against – <br><br> FISHER-PRICE, INC., <br><br> Defendant. | Index No.: 3:03 CV 222 (JBA) <br><br><br> January 5, 2004 |

## EXPERT REPORT OF JAMES KIPLING
## ON BEHALF OF PLAINTIFFS
## VICTOR G. REILING ASSOCIATES AND DESIGN INNOVATION, INC.

### I.    BACKGROUND

I have been retained in this action by Counsel for Victor G. Reiling Associates ("Reiling") and Design Innovation, Inc. ("DI"), (collectively "Plaintiffs") to provide expert analysis and testimony, if necessary, regarding the customs and practices prevalent in the toy and game industry in connection with the development of new toy concepts by outside inventors and the process by which such concepts are disclosed to, and necessary rights are acquired by, toy manufacturers, including typical royalty compensation paid to inventors by such toy manufacturers. It is my understanding that I may be asked to review and comment on the opinions of opposing expert witnesses.

In preparing to provide this service, I have been asked to review certain documents and other materials relating to this current litigation including the First Amended Complaint and Exhibits attached thereto, filed May 1, 2003. Included among these materials are copies of certain drawings and submissions presented to Fisher-Price by Plaintiffs for a toy concept which is characterized in Plaintiffs' materials as "Real Heroes/Reel Action" (the "concept"); an Option Agreement executed by Plaintiffs and by Fisher-Price apparently during February, 1999; and certain correspondence between Plaintiffs and Fisher-Price regarding the possible acquisition of rights in the concept by Fisher-Price through license from Plaintiffs  (For simplicity, I will refer to the parties' plaintiff individually and collectively as "Plaintiffs").

The analysis and opinions stated herein are dependent upon the information and materials that have been made available to me at the time of the preparation of this report. It is possible that additional information and materials may come to my attention which may result in additions to or changes of certain aspects of this analysis. Exhibit I attached hereto comprises a

list of materials that I have reviewed in preparing this report.

## II.    QUALIFICATIONS

I am a member of the Bar of the State of Ohio and am admitted to practice before the United States Patent and Trademark Office. I have practiced in the area of Intellectual Property since being admitted to the Bar in 1972.

Between 1968 and 1974, I was employed by the General Electric Company and worked in the Company's Patent Law Department in its Alexandria, Virginia and Cincinnati, Ohio offices. In 1974, I became House Counsel with the Kenner Toy Company, then a subsidiary of General Mills, Inc. In 1980, I became Vice President Law with the Kenner Products Division of CPG Products Corporation, and later with Kenner-Parker Toys, Inc. From 1987 through 1990, the latter entity was a subsidiary of Tonka Corporation. In 1991, Tonka was acquired by Hasbro, Inc. and I was Vice President and Managing Attorney with Hasbro until 2001. Thereafter, I joined Frost Brown Todd LLC as Of Counsel to the Intellectual Property Law Department based in Cincinnati, Ohio.

A principal focus of my practice since 1974 has been the process by which toy and game concepts are created, developed and marketed, as well as the various intellectual property law protections for such concepts and products. Among my responsibilities during and throughout my career since 1974 has been negotiation of license and other agreements involving new toy concepts and various other properties for toy and game products, and I have participated in several hundred such negotiations. My experience includes the licensing of inventions, technologies, brands, sports stars, entertainment properties, and celebrity rights for use in the creation and development of toy products. Products which have resulted from negotiations that I have personally handled have sold in excess of $2 billion dollars at wholesale prices.

I have negotiated hundreds of license agreements on behalf of toy companies, toy designers and inventors in connection with intellectual property rights in toy products. In negotiating these agreements, I have come to understand the compensation that is typically paid in connection with the licensing of new toy concepts and other properties applicable to the toy and game industry.

Since joining my current law firm, I have been active in industry events and associations including those of the International Licensing Industry Merchandisers' Association ("LIMA"), and the Toy Industry Association ("TIA"), and have participated in seminars and programs conducted by these associations. As set forth in greater detail in Exhibit II attached hereto, I have written articles and given presentations on matters involving intellectual property and licensing to and on behalf of such professional groups. I have also been a panelist and moderator at various TIA and LIMA seminars and presentations on toy product development and licensing principles.

As the result of my practice and these professional activities, I have become familiar with the practice of licensing new toy and game concepts and properties in the toy industry, as well as the valuation thereof and compensation typically paid to designers and inventors by toy

companies. In rendering the analysis and opinions expressed herein, I rely upon my knowledge and experience in the toy and game industry and, in particular, in connection with the inventorship, disclosure and licensing of new toy products by outside inventors to toy and game manufacturers.

My law firm's compensation in this matter is $305.00 per hour.

## III.    ANALYSIS AND OPINIONS

### A.    Independent Inventors Typically Submit And Toy Companies Typically Receive Product Concepts Rather Than Finished Toy Products For Consideration; Upon Licensing Such Concepts, Toy Companies Typically Make Substantial Changes To The Submitted Concepts Prior To Marketing Licensed Products.

As further discussed in my article *"Toy Licenses Are Different"* which appeared in two parts in the February and March, 2002 issues of *The Licensing Book*, the toy industry has relied for many years on outside inventors and designers for new ideas and concepts which they acquire and develop into finished toy products. The use of such outside resources is a normal practice for the majority of toy companies because such inventors provide a diversity and flow of new ideas without the overhead burden associated with employing a similar number of inventors and designers.

Historically, toy inventing developed as a "cottage industry" of individuals or small groups, though there are a number of sophisticated toy design firms now in existence. Toy manufacturers routinely seek out the submissions of talented inventors, both from small groups as well as from the larger design firms.

Toy concepts are usually disclosed by outside inventors to toy manufacturers in the form of "kit-bash" models that may use pieces of existing toy and non-toy products assembled by the inventor and used to demonstrate the structure and/or function of a proposed toy concept. Embellishments and potential variations or line extensions to the basic concepts are often communicated in accompanying renderings and/or written descriptions. The inventor sometimes describes additional elements, capabilities and enhancements in these forms or orally during concept presentation meetings with company representatives. The submission of "concepts" as distinguished from "finished products" is typical of both individual inventors and the more sophisticated design firms.

It is fully understood and widely accepted in the toy industry that manufacturers expect to acquire new toy properties from inventors in "concept" form and to expend substantial company resources in refining, embellishing and expanding those concepts into "finished" licensed products and product lines. In addition to the normal "finishing" changes and refinements to the inventor's original concept, in the event that an inventor's concept is to be incorporated into an existing branded product line (for example, "Barbie", "Nerf" or "Rescue Heroes"), additional adaptations may be made by the manufacturer to insure that the thematic and aesthetic "consistency" of the respective branded line is maintained. Moreover, the packaging and advertising plans of the toy manufacturer can influence the final execution of the licensed

product line as well.

As noted above, I have personally negotiated hundreds of toy license agreements on behalf of my various clients including Kenner, Tonka, Hasbro and a number of inventors as well. The majority of these license agreements resulted from the submission of partially developed toy concepts or ideas which the toy manufacturer ultimately refines, engineers and manufactures. I do not recall the occurrence of any manufacturer's marketing a product in the form submitted by an outside inventor. The custom and practice for the 25 plus years of my participation in the industry has been to compensate inventors and designers for the underlying concept in its various product line manifestations regardless of revisions, enhancements and changes made by the toy company subsequent to submission.

**B.**   **Independent Inventors And Toy Companies Typically Contemplate That Toy Concepts Submitted Will Not Be Commercialized By The Recipient Unless An Accommodation Is Reached Between The Parties; It Appears That Fisher-Price Has Based Products On Plaintiffs' Disclosures.**

Toy manufacturers may have formal or informal processes for the receipt, documentation and consideration of toy concept submissions from independent inventors. Some manufacturers require the execution of a disclosure agreement setting forth the terms and conditions which are stated to control the submission process. Manufacturers typically create and preserve records of inventor submissions for future reference. From the materials which I have reviewed, it appears that Fisher-Price has a routine process for receiving, recording, considering and communicating with outside inventors in connection with toy concept submissions.

In the custom and practice of the toy industry, the inventor and toy manufacturer normally expect that commercial use of or derivation from an inventor's submission will not be made by the recipient company unless some mutually agreed accommodation is established between them by which the inventor is compensated for such commercialization of the submitted concept by the manufacturer. Unless the manufacturer is already developing the same concept internally or it has previously received the concept from a bona fide third party source, the manufacturer and inventor anticipate that concepts similar to the inventor's concept will not be used without the inventor's permission. Moreover, the fact of any such prior internal development or third-party submission of the concept is typically disclosed to a submitter at the time of making the submission. Furthermore, even in the event of some such intervening agency, concerns of toy manufacturers for their reputations in the inventing community often lead to accommodations in favor of submitting inventors.

I have had occasion to review depictions and descriptions of the Plaintiffs' disclosures as well as of the finished Fisher-Price products. The Plaintiffs' disclosures are typical of the nature of concept disclosures made by inventors and designers in the industry, as I have described above. In reviewing the Fisher-Price products, I note sufficient similarities to the Plaintiffs' disclosures to lead me to believe that, in absence of bona fide prior internal development or prior third party submission of the concept, the Fisher-Price products were based on or derived from the Plaintiffs' disclosures. I also conclude that, in the custom and practice of the industry, Plaintiffs and Fisher-Price would normally expect that an agreed accommodation should have

been reached between them to authorize commercialization by Fisher-Price of the Plaintiffs' concept.

This opinion is further supported by the fact that Fisher-Price entered into an option agreement with Plaintiffs for the subject concept, under which agreement Plaintiffs agreed to refrain from disclosure to competing toy manufacturers of the subject concept "…or any similar idea, product or concept…" for an extended period during which Fisher-Price had: (a) the exclusive opportunity to consider, review and evaluate in detail all aspects of the submitted concept; (b) the exclusive option to acquire a license or complete assignments of rights to the concept for use in producing licensed products; and (c) the assurance that Plaintiffs would not only refrain from further disclosure of the concept but also would preserve and maintain in "strictest confidence, in a manner adequate to protect trades secrets, any information relating to the Licensed Products and the existence of this Option Agreement itself…".

From the option agreement it is clear to me that Fisher-Price recognized the commercial significance and advantages of the Plaintiffs' concept "…or any similar idea, product or concept…" and the importance of its potential use in future licensed products. It is clear from the option agreement that Fisher-Price contemplated using the concept in licensed products within its "Real Heroes" product line. Unfortunately, it also appears that a subsequent decision was made to make such use of the Plaintiffs' concept without reaching an agreed accommodation with the Plaintiffs, notwithstanding the obligations of Fisher-Price under the option agreement and further notwithstanding common industry custom and practice.

### C.    Typical Royalty Rates in the Toy Industry

My experience has been that toy companies and inventors typically negotiate for the use of submitted concepts on the basis of payment of a percentage of the manufacturer's selling price of all products based on or derived from the submitted concept. This percentage is characterized as a "royalty" and is typically in the range of 5% of total sales.

This experience is consistent with authoritative industry publications including *The Toy & Game Inventor's Guide, Second Edition* (Kent Press, 1996) by Battersby & Grimes at §7.4.5. Similarly, *Licensing Royalty Rates, 2003* (Aspen Press, 2003) by Battersby & Grimes reports that in 2002 developer royalties of between 1% and 6% were reported in the 10K filing of Jakks Pacific (a medium-sized toy manufacturer), and developer royalties between 4% and 5% were reported in the 10K filing of Marvel Enterprises for toy products developed by Arad Associates

I am familiar with a recent decision by the Seventh Circuit Court of Appeals in *Learning Curve Toys, Inc. v. PlayWood Toys, Inc.* 342 F.3d 714 (Seventh Circuit, 2003) in which the Court reversed a lower court decision dismissing an action after a jury had awarded an independent inventor a royalty of 8% of a toy manufacturer's sales of products based upon unauthorized use of the inventor's submitted concept. The actions of the manufacturer were found to justify an award of royalty in excess of those in the normal ranges referenced above.

I am aware that the option agreement entered between Plaintiffs and Fisher-Price specified royalty percentages of 3% and 5% depending upon particular applications of the

submitted concept within the Fisher-Price product line. I do not believe, however, that this royalty rate should apply as a limit upon Plaintiffs' remedy in the current situation, since behavior of Fisher-Price contrary to its obligations to Plaintiffs should result in its having lost the "benefit of the bargain". A party should not be permitted to negotiate an agreed royalty percentage and thereafter to use that percentage as a "cap" on any financial exposure it may incur by *subsequently reneging on the very deal that it seeks to enforce,* after detection of and challenge to its behavior has occurred.

This principle has been recognized by the Court of Appeals for the Federal Circuit in patent infringement litigation where damages awarded against infringers have been higher than traditional royalty rates. This is further discussed by Michael McCoy, et al in "Royalty Rate Trends and Valuation and Patent Technology Licensing", *Licensing Update, 2003,* Aspen Press by Battersby & Grimes at §8.01[E], to wit, "It should not be surprising that rates awarded as damages by courts exceed those normally found in transactions negotiated outside of litigation. In litigation, the parties are directed to compute damages to compensate for infringement, but 'in no event less than a reasonable royalty'."

Based on the foregoing, it is my opinion that the subject Fisher-Price products based upon or derived from the Plaintiffs' submitted concept appropriately should bear royalty payable to Plaintiffs in the 6% to 7% range.

### D.    Line Extension Royalties

As previously discussed, products based on or derived from an inventor's submitted concept are compensated by toy manufacturers at the applicable royalty rate regardless of changes, revisions or enhancements made in defining the finished licensed products based on or derived from the submitted concept. In addition, it has been common industry practice that toy manufacturers compensate inventors not only for such embodiments of the submitted concept itself, but also for "line extensions" which can include accessories that do not embody the submitted concept but which are marketed for use with licensed products embodying such concept. Such compensation is invariably payable when the accessories are suggested or developed by the inventor, and is frequently paid when they are independently created and developed by the toy company, notwithstanding the fact that they are not embodiments of the original submitted concept. Such line extensions may extend beyond "accessories" and include peripheral products such as video games or video tapes or third-party merchandise (eg, apparel, lunch boxes etc.) which may use or embody *images or elements* drawn from the licensed products or concept, or products that may be used independently of the original licensed products. In essence, such compensation recognizes that none of the sales of these extensions, whether accessories or stand-alone peripheral products, would be enjoyed by the manufacturer without the inventor's original concept submission.

Whether the inventor is compensated when line extensions are independently created and developed by the toy company is generally a matter of negotiation in the final license agreement for the submitted concept. In the current instance, Plaintiffs were deprived of the opportunity to negotiate this and other terms of a license agreement by an apparent Fisher-Price decision to ignore their rights and proceed without necessary permission. In reviewing the Fisher-Price

product line, it is my opinion that Video Mission video tapes and other line extensions, whether included in the original submitted concept or subsequently developed by Fisher-Price, should be subject to the royalty and other obligations of Fisher-Price to Plaintiffs.

\* \* \* \* \*

Dated: January 5, 2004

James M. Kipling

## EXHIBIT I

### DOCUMENTS REVIEWED

1. First Amended Complaint, *Victor G. Reiling Associates v. Fisher-Price, Inc.,* No. 3:03 CV 222 (JBA) (District Court of Connecticut, filed May 1, 2003).

2. Exhibit A to First Amended Complaint: Print-out from Amazon.com showing image of Rescue Heroes – FDNY Billy Blazes and print-out from Amazon.com showing image of Rescue Heroes – Sergeant Siren Collector.

3. Exhibit B to First Amended Complaint: Drawings of Reel Heroes Concept.

4. Exhibit C to First Amended Complaint: Concept Submission Form dated October 29, 1998 and one page summary of Reel Action Concept on Victor G. Reiling Associates letterhead.

5. Exhibit D to First Amended Complaint: Correspondence dated December 8, 1998 from Pat Grabianowski at Fisher-Price to Victor G. Reiling.

6. Exhibit E to First Amended Complaint Preliminary terms for Option Agreement dated February 2, 1999.

7. Exhibit F to First Amended Complaint: Correspondence dated February 22, 1999 from Elizabeth M. Tommaney to Victor G. Reiling enclosing fully executed Option Agreement dated February 17, 1999 and February 18, 1999.

8. Exhibit G to First Amended Complaint: Correspondence dated March 23, 1999 from Henry Schmidt of Fisher-Price to Victor G. Reiling and Douglas Melville.

9. Exhibit H to First Amended Complaint: Correspondence dated May 22, 1999 from Victor G. Reiling to Paul Snyder of Fisher-Price enclosing revised Action Heroes Concept submission.

10. Exhibit I to First Amended Complaint: Correspondence dated December 7, 2000 from Victor G. Reiling to Peter Pook of Fisher-Price enclosing revised Reel Heroes/Action Heroes Concept Submission.

11. Exhibit J to First Amended Complaint: Correspondence dated January 5, 2001 from Pat Grabianowski at Fisher-Price to Victor G. Reiling returning the Reel Heroes/Action Heroes Concept Submission.

12. Exhibit K to First Amended Complaint: Cover of Fisher-Price Toy Fair 2002 Catalog and interior page showing Voice Tech Video Mission Rescue Heroes

13. Exhibit L to First Amended Complaint: Print-out from Mattel, Inc. website showing Rescue Heroes toys available for consumer purchase.

14. Exhibit M to First Amended Complaint: Print-out from "rescueheroes.com" advertising Voice Tech Video Mission Rescue Heroes figures.

15. Exhibit N to First Amended Complaint: one page summary of Reel Heroes/Action Heroes concept on Victor G. Reiling Associates letterhead.

16. Exhibit O to First Amended Complaint: Correspondence dated July 25, 2002 from Gregory J. Battersby to Neil Friedman, President of Fisher-Price.

17. Exhibit P to First Amended Complaint: Correspondence dated October 17, 2002 from Gregory J. Battersby to Stan Clutton, Vice-President of Fisher-Price.

18. Exhibit Q to First Amended Complaint: Electronic mail correspondence between Gregory J. Battersby and Stan Clutton dated October 23, 2002 and October 24, 2002.

19.  *The Toy & Game Inventor's Guide, Second Edition* (Kent Press, 1996) by Battersby & Grimes

20.  *Licensing Royalty Rates, 2003* (Aspen Press, 2003) by Battersby & Grimes

21.  *Licensing Update, 2003*, Aspen Press by Battersby & Grimes

22.  *Learning Curve Toys, Inc. v. PlayWood Toys, Inc*, 342 F.3d 714 (Seventh Circuit, 2003)

23.  *Nadel v. Play-By-Play Toys & Novelties, Inc.*, 208 F.3d 368 (Second Circuit, 2000)

24.  FP0018, FP0019, FP0073:  Policy and Agreement Concerning Ideas Submitted by Persons outside of Fisher-Price; Fisher-Price Concept Submission Form

25.  Web pages from fisherprice.com and amazon.com displaying Rescue Heroes products sold by Fisher-Price

26.  Samples of Rescue Heroes products sold by Fisher-Price

## EXHIBIT II

### PUBLICATIONS

The following is a list of publications I have authored within the preceding ten years:

**I.** ***The Licensing Book, published by Adventure Publishing Group, Inc.***

February 02       *"Character License Exclusivity:  Like Moths To The Flame?"*

March 02          *"FDNY Memorial:  Moral Question....Legal Answer?"*

April 02          *"Loopholes and More Loopholes"*

May 02            *"Can You Keep A Secret?"*

June 02           *"Eye Of The Storm"*

July 02           *"Sweepstakes, Contests And Lotteries"*

August 02         *"Patent Protection Strategies: New Choices"*

September 02      *"Ninth Circuit Gives Thumbs-Up To Thumb-Nails"*

October 02        *"Entertainment Licenses: Better To Ask Questions Before Signing...."*

November 02       *"...And Avoid Those Nagging Worries Later"*

December 02       *"Tis The Season For Reflection"*

January 03        *"Software Licenses: Will Your Contract Crash Before Your System Does?"*

February 03       *"Toy Licenses Are Different"*

March 03          *"Toy Licenses Are Different (Part II)"*

April 03          *"Copyright VS. Patent....An Economical Alternative"*

May 03            *"Work-For-Hire Pitfalls"*

June 03           *"Coordination Essential In Sports"*

September 03      *"How Much Is Enough?"*

November 03          *"Quoth The Client, 'Nevermore'"*

December 03          *"A Rose By Any Other Name"*

January 04           *"A Rose By Any Other Name (Part II)"*

February 04          *"Protecting What's Yours"*

## II. *Toy Fair Times, published by Toy Industry Assn., Toy Fair 2002*

*"Evaluating That Character License· Why Not Do Your Second-Guessing <u>Before</u> Signing?"*

## III. *The Licensing Journal, published by Aspen Law & Business*

May 03          *"Toy And Game Licensing"*

February 04     *"Prototypes: Potential Patent Pitfalls"*

## IV. Miscellaneous Publications

*"Legal Outline For Inventors"*

Distributed:

Toy And Game Inventors' Forum, September 2001

Industrial Design Society of America, October 2001

Public Library of Cincinnati and Hamilton County

Industrial Design Society of America, October 2002

*"Licensing Opportunities and Risk Assessment"*

Toy Manufacturers of America, Summer Conference (May 2001)

*"Entertainment Property Licenses Are Nothing to Toy With"*

Toy Industry Assn. (TIA) International Licensing and Merchandisers Assn. (LIMA)

Joint Convention (May 2003)

*"Copyright Law Summary"*

American International Toy Fair 2003 (TIA)

## EXPERT TESTIMONY

I have not testified as an expert at trial or by deposition within the preceding four years.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing Expert Report of James

Kipling on Behalf of Plaintiffs Victor G. Reiling Associates and Design Innovation, Inc. has

been served upon defendant Fisher-Price, Inc. on this 5th day of January, 2004, via U.S. Mail,

First Class, postage prepaid, to:

Bradford S. Babbitt, Esq.
Michael J. Kolosky, Esq.
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, CT 06103-3597

Robert J. Lane, Jr., Esq.
Jodyann Galvin, Esq.
HODGSON RUSS LLP
One M&T Plaza, Suite 2000
Buffalo, New York 14203-2391

Russell D Dize

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

VICTOR G. REILING ASSOCIATES and
DESIGN INNOVATION, INC.,

                Plaintiffs,

    - against -

FISHER-PRICE, INC.,

                Defendant

Index No.: 3:03 CV 222 (JBA)

March 3, 2004

## DECLARATION OF RUSSELL D. DIZE IN SUPPORT OF
## PLAINTIFFS' MOTION TO COMPEL DISCOVERY

I, RUSSELL D. DIZE, pursuant to the requirements of 28 U.S.C. §1746, declare that the following is true and correct:

1.    I am an attorney associated with Grimes & Battersby, LLP in Norwalk, Connecticut, counsel to Plaintiffs, Victor G. Reiling Associates ("Reiling") and Design Innovation, Inc ("DI") (collectively, "Plaintiffs"). I drafted Plaintiffs' discovery requests in this matter, and therefore, I am fully familiar with the facts set forth herein. I submit this declaration in support of Plaintiffs' Motion to Compel Discovery.

2    Plaintiffs served a Second Request for Production of Documents to Defendant Fisher-Price on December 16, 2003. A true and correct copy of Plaintiffs' Second Request for Production of Documents is attached hereto as Exhibit A

3.    As part of their Second Request for Production of Documents, Plaintiffs requested

that Defendant produce certain documents related to concept submissions made to Fisher-Price

by outside toy inventors that ultimately resulted in commercialized products.    Requests 19

through 22 of Plaintiffs' Second Request for Production of Documents pertain to these

documents.    Specifically, Plaintiffs made the following requests:

Request No. 19

    All documents that refer or relate to concept submissions made to Fisher-Price
    since January 1, 1998, including, but not limited to, all concept disclosure forms.

Request No. 20

    All agreements between inventors and Fisher-Price executed since January 1,
    1998, including, but not limited to, all option agreements.

Request No. 21

    For each concept submission that is responsive to Request #19 herein, samples
    and photographs of the final product introduced by Fisher-Price.

Request No. 22

    For each agreement that is responsive to Request #20 herein, samples and
    photographs of the final product introduced by Fisher-Price.

(See Plaintiffs' Second Request for Production of Documents, attached hereto as Exhibit A).

4.    On January 27, 2004, Defendant objected to each of these requests.    A true and

correct copy of Defendant's objections to Plaintiffs' Second Set of Interrogatories is attached

hereto as Exhibit B.

5.    On February 2, 2004, I attended a Status Conference before the Court in which

this discovery dispute was discussed.    Specifically, counsel for Defendant indicated that the

requested documents would not be relevant to any of the defenses raised by Defendant.

2

6.    However, on February 11, 2004, during a telephone conversation with Robert J. Lane, Jr., lead counsel for the Defendant, Mr. Lane confirmed that one of Defendant's defenses in this action is that it did not use Plaintiffs' concept – that the concept is not included in any of Defendant's current products.

7.    On February 19, 2004, I wrote to counsel for the Defendant in an attempt to resolve the discovery dispute. In an effort to resolve the dispute, Plaintiffs consolidated the four disputed discovery requests into one revised, narrowed request. Plaintiffs narrowed the request by limiting it only to products that were actually commercialized (*i.e.*, offered for sale) by Defendant, and by further limiting it to outside inventor submissions made to Defendant during a specific five year period of time. Specifically, Plaintiffs' made the following consolidated request:

> All documents that refer or relate to outside inventor submissions made to Fisher-Price from 1996 through 2000 that have resulted in or have been incorporated into commercialized products (*i.e.*, products offered for sale) by Fisher-Price, including, but not limited to: (a) documents reflecting each such submission and the corresponding concept disclosure forms; (b) any option agreement or license agreement relating thereto; and (c) a sample of the final product or a catalog page depicting the final product commercialized by Fisher-Price.

A true and correct copy of Plaintiffs' February 19, 2004 letter is attached hereto as Exhibit C.

8.    On February 25, 2004, I again wrote to counsel for the Defendant in an attempt to resolve the discovery dispute, requesting confirmation that Defendant would produce documents responsive to the consolidated request. A true and correct copy of Plaintiffs' February 25, 2004 letter is attached hereto as Exhibit D

9.    On February 26, 2004, counsel for Defendant responded and indicated that Defendant maintained its objections with respect to the consolidated request. A true and correct copy of Defendant's February 26, 2004 letter is attached hereto as Exhibit E.

10.    The requests for production to which Defendant has objected are relevant and material to this proceeding, and should be complied with. The requested documents are relevant in that one of Defendant's defenses in this action is that it did not use Plaintiffs' concept. Implicit in this defense is an argument that Plaintiffs' submissions were not incorporated into the products actually produced by Defendant (*i.e.*, the products actually produced were not "close enough" to Plaintiffs' submissions). In view of that defense, Plaintiffs are entitled to review past submissions made by outside inventors to Defendant, any resulting agreements relating thereto and the final products that Defendant ultimately commercialized. These documents have probative value as to the extent to which Defendant has considered past products that it has commercialized to "read on" the corresponding concept submissions from outside inventors. These documents are essential to Plaintiffs' case and Plaintiffs will need to explore these documents, once they are produced, with both Stan Clutton, Senior Vice President of Inventor Relations of Fisher-Price, and Howard Bollinger, Defendant's expert witness, both of whom have been noticed for deposition.

11.    I certify that I have conferred with counsel for the Defendant in an effort in good faith to resolve by agreement the issues raised by this motion without the intervention of the Court, but have been unable to reach such an agreement.

4

I hereby declare that the foregoing is true and correct under penalty of perjury.

Dated: March 3, 2004

_____
Russell D. Dize

# EXHIBIT A

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

VICTOR G. REILING ASSOCIATES and
DESIGN INNOVATION, INC.,

Index No.: 3-03 CV 222 (JBA)

Plaintiffs,

- against –

FISHER-PRICE, INC.,

December 16, 2003

Defendant.

### PLAINTIFFS' SECOND REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiffs, Victor G. Reiling Associates ("Reiling") and Design Innovation, Inc. ("DI") (collectively, "Plaintiffs"), request that Defendant, Fisher-Price, Inc. ("Fisher Price"), make available for inspection and copying all documents described herein which are in its possession, custody or control, within thirty (30) days, at the offices of Grimes & Battersby, LLP, 488 Main Avenue, Norwalk, Connecticut 06851, subject to the following definitions:

### DEFINITIONS

A.      For purposes of these requests for production, unless otherwise indicated or unless the context otherwise requires:

1.      The term "any" shall be construed to include the word "all" and "all" shall be construed to include the word "any" as necessary to bring within the scope of a request all responses which might otherwise be construed to be outside its scope.

2.      The term "between" shall be construed to include the word "among" and "among" shall be construed to include the word "between" as necessary to bring within the scope of a request all responses which might otherwise be construed to be outside its scope.

3.      The term "Reiling" shall refer to Victor G. Reiling Associates, and, where appropriate in the context, its predecessors in interest, parents, subsidiaries and/or affiliated corporations.

4.      The term "DI" shall refer to Design Innovation, Inc., and, where appropriate in the context, its predecessors in interest, parents, subsidiaries and/or affiliated corporations.

5.      The term "Plaintiffs" shall refer to Reiling and DI and all individual persons, partnerships or corporations that have controlled, participated in, approved or ratified their acts, including without limitation, all officers, directors, agents, employees, servants, attorneys, parent companies, affiliates, subsidiaries, divisions, sales agents, predecessors or successors in interest and all other representatives and persons in their control or acting on their behalf.

6.      The terms "you," "your" or "Fisher Price" shall refer to Fisher-Price, Inc., and any affiliated corporations or other business entities under its control, any predecessors or successors in interest with respect to the VOICE TECH VIDEO MISSION RESCUE HEROES line of toys, any licensees or other entities that have or are intended to produce, manufacture or distribute the VOICE TECH VIDEO MISSION RESCUE HEROES line of toys with the consent of Fisher-Price, and any of its directors, officers, employees, agents or representatives.

7.      The terms "control" or "controlled" shall mean the power or ability of an entity to direct the management and policies of any person, firm or corporation.

8.      The term "document" shall include (a) all tangible things of any type, composition, construction or nature, including without limitation, magazines, any packaging,

2

labels, cartons and boxes and (b) all documents as defined in Rule 34(a) of the Federal Rules of Civil Procedure including all the originals and each non-identical copy or draft of each such document (together with all worksheets, supporting documents, notes and other relevant material), whether inscribed by hand or mechanical, electronic, microfilm, photographic or other means (such as recording, film, tape, videotape, disc, diskette, CD-ROM disc, laser disc, or other means including data processing files and other computer readable records or programs and all other data compilations from which information can be obtained, transcribed and translated), and including without limitation: correspondence, letters, telegrams, telefaxes, telexes, e-mail messages, TWX's, telephone logs, diaries, teletype messages, memoranda, notes, reports, printouts, records of meetings, conferences or telephone or other conversations or communications, appointment calendars, surveys, studies, statistical analyses, technical analyses, test reports, search reports, tabulations, drawings, plans, blueprints, specifications, designs, graphs, books, magazines, newspapers, publications, articles, booklets, pamphlets, circulars, bulletins, brochures, advertising copy, contract bids, contracts, contract addenda, amendments, changes, modifications, data compilations, computerized records, etc.

       9.    The term "Option Agreement" shall refer to the agreement dated February 16, 1999 by and between Fisher-Price, on the one hand, and both Victor G. Reiling Associates and Design Innovation, Inc , on the other hand.

       10.    The term "Property" shall mean the toy submission idea and other works of authorship of Plaintiffs Reiling and DI, submitted to Defendant Fisher Price under the names "Reel Action," "Real Heroes," "Reel/Real Heroes," "Action Heroes," "Reel Action/Real Heroes," "Reel Heroes/Action Heroes," etc., as more particularly described in Exhibits B, C, H, and I in the Amended Complaint.

3

B.     The use of a verb in any tense shall be construed as the use of the verb in all other tenses, wherever necessary to bring within the scope of a request all documents and items which might otherwise be construed to be outside its scope.

C.     A plural noun shall be construed as a singular noun, and a singular noun shall be construed as a plural noun, wherever necessary to bring within the scope of a request all documents and items which might otherwise be construed to be outside its scope.

D.     Definitions provided herein apply to any grammatical variant of the term or phrase definition.

## INSTRUCTIONS

1.     If you claim that any document or thing requested herein is protected from discovery by any privilege against disclosure, please specify the basis for the privilege or other ground for exclusion and produce a separate list of all such documents and things with your responses hereto. Such separate list shall identify each such document and thing by date, nature and/or type of document or thing, identity of each author(s) or creators) (with title and designation), identity of each recipient(s) (with title and designation), the original document/thing and/or any copies, title and subject matter of document or nature of thing, identity of each custodian and/or location of the original document, thing and/or any copies, and the grounds for such claim of privilege.

2.     Unless otherwise indicated, the requests herein call for documents in existence at any time from January 1, 1998 to the date of this request, inclusive.

## DOCUMENT REQUESTS

1. All documents identified or referenced in Defendant's responses to Plaintiffs' Second Set of Interrogatories to Defendant.

2. All of Defendant's sales records describing the dollar and unit volume of sales for each SKU sold under Fisher Price's VOICE TECH MISSION COMMAND RESCUE HEROES line of toys from January 1, 1998 to the present.

3. All of Defendant's sales records describing the dollar and unit volume of sales for each SKU sold under Fisher Price's VOICE TECH VIDEO MISSION RESCUE HEROES line of toys from January 1, 1998 to the present.

4. All of Defendant's sales records describing the dollar and unit volume of sales for each SKU sold under Fisher Price's VOICE TECH MISSION SELECT RESCUE HEROES line of toys from January 1, 1998 to the present.

5. All of Defendant's sales records describing the dollar and unit volume of sales for each SKU sold under Fisher Price's VOICE TECH OPTIC FORCE RESCUE HEROES line of toys from to January 1, 1998 to the present.

6. All of Defendant's sales records describing the dollar and unit volume of sales for each SKU sold under Fisher Price's VOICE TECH RESCUE JET line of toys from January 1, 1998 to the present.

7. All of Defendant's sales records describing the dollar and unit volume of sales for each SKU sold under Fisher Price's VOICE TECH FIRE TRUCK line of toys from January 1, 1998 to the present.

5

8. All of Defendant's sales records describing the dollar and unit volume of sales for each SKU sold under Fisher Price's VOICE TECH POLICE CRUISER line of toys from January 1, 1998 to the present.

9. All of Defendant's sales records describing the dollar and unit volume of sales for each SKU sold under Fisher Price's AQUATIC RESCUE COMMAND CENTER (A.R.C.C.) line of toys from January 1, 1998 to the present.

10. All of Defendant's sales records describing the dollar and unit volume of sales, by each SKU, for activity centers sold in connection with VOICE TECH MISSION COMMAND RESCUE HEROES, VOICE TECH VIDEO MISSION RESCUE HEREOES, VOICE TECH MISSION SELECT RESCUE HEROES and VOICE TECH OPTIC FORCE RESCUE HEROES, from January 1, 1998 to the present.

11. All documents that refer or relate to revenue derived from the sale of CD-ROM's that refer or relate to VOICE TECH MISSION COMMAND RESCUE HEROES, VOICE TECH VIDEO MISSION RESCUE HEREOES, VOICE TECH MISSION SELECT RESCUE HEROES and VOICE TECH OPTIC FORCE RESCUE HEROES, from January 1, 1998 to the present.

12. All documents that refer or relate to revenue derived from the sale of videocassettes that refer or relate to VOICE TECH MISSION COMMAND RESCUE HEROES, VOICE TECH VIDEO MISSION RESCUE HEREOES, VOICE TECH MISSION SELECT RESCUE HEROES and VOICE TECH OPTIC FORCE RESCUE HEROES, from January 1, 1998 to the present.

13. All documents that refer or relate to revenue derived from the sale of DVD's that refer or relate to VOICE TECH MISSION COMMAND RESCUE HEROES, VOICE TECH VIDEO MISSION RESCUE HEREOES, VOICE TECH MISSION SELECT RESCUE HEROES and VOICE TECH OPTIC FORCE RESCUE HEROES, from January 1, 1998 to the present.

14. All documents that refer or relate to revenue derived from animated or live action theatrical motion pictures that refer or relate to VOICE TECH MISSION COMMAND RESCUE HEROES, VOICE TECH VIDEO MISSION RESCUE HEREOES, VOICE TECH MISSION SELECT RESCUE HEROES and VOICE TECH OPTIC FORCE RESCUE HEROES, from January 1, 1998 to the present.

15. All documents that refer or relate to revenue derived from licensed products that refer or relate to VOICE TECH MISSION COMMAND RESCUE HEROES, VOICE TECH VIDEO MISSION RESCUE HEREOES, VOICE TECH MISSION SELECT RESCUE HEROES and VOICE TECH OPTIC FORCE RESCUE HEROES, from January 1, 1998 to the present.

16. All documents that refer or relate to plans for the VOICE TECH MISSION COMMAND RESCUE HEROES, VOICE TECH VIDEO MISSION RESCUE HEREOES, VOICE TECH MISSION SELECT RESCUE HEROES and VOICE TECH OPTIC FORCE RESCUE HEROES in 2004 and 2005.

17. All documents, including, but not limited to e-mail, between employees of Fisher-Price that refer or relate to the Property.

7

18.    All documents, including, but not limited to e-mail, between employees of Fisher-Price, on the one hand, and third parties, on the other hand, that refer or relate to the Property.

19.    All documents that refer or relate to concept submissions made to Fisher-Price since January 1, 1998, including, but not limited to, all concept disclosure forms.

20.    All agreements between inventors and Fisher-Price executed since January 1, 1998, including, but not limited to, all option agreements.

21.    For each concept submission that is responsive to Request # 19 herein, samples and photographs of the final product introduced by Fisher-Price.

22.    For each agreement that is responsive to Request #20 herein, samples and photographs of the final product introduced by Fisher-Price.

23.    All documents that support Defendant's position that the concept submitted by Plaintiffs to Fisher-Price was not novel at the time it was submitted

24.    All documents in the possession of Stan Clutton that refer or relate to RESCUE HEROES, CarterBench, Reiling or DI.

25.    All patent disclosures submitted by Fisher-Price employees and third parties that refer or relate to VOICE TECH MISSION COMMAND RESCUE HEROES, VOICE TECH VIDEO MISSION RESCUE HEREOES, VOICE TECH MISSION SELECT RESCUE HEROES, VOICE TECH OPTIC FORCE RESCUE HEROES, and all activity centers and accessories associated therewith, from January 1, 1998 to the present.

26.    All patents issued to or applied for by Fisher-Price that refer or relate to VOICE TECH MISSION COMMAND RESCUE HEROES, VOICE TECH VIDEO MISSION RESCUE HEREOES, VOICE TECH MISSION SELECT RESCUE HEROES, VOICE TECH

OPTIC FORCE RESCUE HEROES, and all activity centers and accessories associated therewith, from January 1, 1998 to the present.

27. All patent searches performed by or caused to be performed by Fisher-Price that refer or relate to VOICE TECH MISSION COMMAND RESCUE HEROES, VOICE TECH VIDEO MISSION RESCUE HEREOES, VOICE TECH MISSION SELECT RESCUE HEROES, VOICE TECH OPTIC FORCE RESCUE HEROES, and all activity centers and accessories associated therewith, from January 1, 1998 to the present.

28. All novelty searches performed by or caused to be performed by Fisher-Price that refer or relate to VOICE TECH MISSION COMMAND RESCUE HEROES, VOICE TECH VIDEO MISSION RESCUE HEREOES, VOICE TECH MISSION SELECT RESCUE HEROES, VOICE TECH OPTIC FORCE RESCUE HEROES, and all activity centers and accessories associated therewith, from January 1, 1998 to the present.

29. All copyrights applied for or obtained by Fisher-Price that refer or relate to VOICE TECH MISSION COMMAND RESCUE HEROES, VOICE TECH VIDEO MISSION RESCUE HEREOES, VOICE TECH MISSION SELECT RESCUE HEROES, VOICE TECH OPTIC FORCE RESCUE HEROES, and all activity centers and accessories associated therewith, from January 1, 1998 to the present.

30. All license agreements that refer or relate to RESCUE HEROES from January 1, 1998 to the present.

31. Documents sufficient to identify all SKU's for the VOICE TECH MISSION COMMAND RESCUE HEROES, VOICE TECH VIDEO MISSION RESCUE HEREOES, VOICE TECH MISSION SELECT RESCUE HEROES, VOICE TECH OPTIC FORCE

RESCUE HEROES, and all activity centers, vehicles and accessories associated therewith, from January 1, 1998 to the present.

32.    All documents that refer or relate to lawsuits filed by inventors against Fisher-Price or Mattel alleging a failure to pay royalties.

33.    All documents that support the proposition that the concept submitted by Plaintiffs to Fisher-Price was not novel to Fisher-Price or to the toy industry as a whole at the time it was submitted.

34.    All documents that relate or refer to, evidence, or support efforts undertaken by Defendant to create and develop the VOICE TECH MISSION COMMAND RESCUE HEROES, VOICE TECH VIDEO MISSION RESCUE HEREOES, VOICE TECH MISSION SELECT RESCUE HEROES, VOICE TECH OPTIC FORCE RESCUE HEROES, and all activity centers, vehicles and accessories associated therewith, from January 1, 1998 to the present.

35.    All documents that relate or refer to communications, whether oral or written (electronic or otherwise), between Defendant Fisher Price and any other companies or individuals that participated in, and/or contributed to, the development and creation of the VOICE TECH MISSION COMMAND RESCUE HEROES, VOICE TECH VIDEO MISSION RESCUE HEREOES, VOICE TECH MISSION SELECT RESCUE HEROES, VOICE TECH OPTIC FORCE RESCUE HEROES, and all activity centers, vehicles and accessories associated therewith, from January 1, 1998 to the present.

36.    To the extent that Defendant denies any of the requests for admission contained in Plaintiffs' First Requests for Admission, all documents that support Defendant's denial of any such request for admission

10

Dated: Norwalk, Connecticut
        December 16, 2003

Respectfully Submitted,

GRIMES & BATTERSBY, LLP

*[signature]*

Gregory J. Battersby (Bar No.7386)
Edmund J. Ferdinand, III (Bar No. 21287)
Russell D. Dize (Bar No. 23064)
Jessica L. Elliott (Bar No. 24871)
488 Main Avenue
Norwalk, Connecticut 06851-1008
(p) (203) 849-8300
(f) (203) 849-9300

Attorneys for Plaintiffs Victor G. Reiling
Associates and Design Innovation, Inc.

11

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing Plaintiffs' Second Request

for Production of Documents to Defendant have been served upon defendant Fisher Price, Inc.,

on this 16th day of December, 2003, via U.S. Mail, First Class, postage prepaid, to:

Bradford S. Babbitt, Esq.
Michael J. Kolosky, Esq.
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, CT  06103-3597

Robert J. Lane, Jr., Esq.
Jodyann Galvin, Esq.
HODGSON RUSS LLP
One M&T Plaza, Suite 2000
Buffalo, New York  14203-2391

Jessica L. Elliott

# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

VICTOR G. REILING ASSOCIATES and
DESIGN INNOVATION, INC.,

Plaintiffs,

- against -                                                    Index No.: 3:03 CV 222 (JBA)

FISHER-PRICE, INC.,

Defendant.

**FISHER-PRICE'S RESPONSES AND OBJECTIONS TO**
**PLAINTIFFS' SECOND REQUEST FOR PRODUCTION**

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendant Fisher-

Price, Inc. ("Fisher-Price"), by its attorneys Hodgson Russ, LLP and Robinson & Cole LLP

hereby responds and objects to Plaintiffs' second request for production. Fisher-Price reserves

the right to supplement these responses should additional information come to its attention

through discovery or otherwise.

**General Objections to Definitions**

A.    Fisher-Price objects definitions 3, 4, and 5 because no entities other than Victor

G. Reiling Associates and Design Innovation have been identified. Therefore, all requests

relating to "Reiling," "Design Innovation" or "DI" and "Plaintiffs" are responded to only as to

those entities.

B.    Fisher-Price objects to definition number 6 as overbroad; as imposing a burden
beyond that required under the Federal Rules of Civil Procedure and the Local Rules of the
District of Connecticut; and as requiring the production of information protected by the attorney-
client privilege. Fisher-Price states that all responses are made only on behalf of Fisher-Price.

## RESPONSES

1.    All documents identified or referenced in Defendant's responses to
Plaintiffs' Second Set of Interrogatories to Defendant.

**RESPONSE:** Fisher-Price will produce documents responsive to this request at
the offices of its counsel for review upon reasonable notice.

2.    All of Defendant's sales records describing the dollar and unit volume of
sales for each SKU sold under Fisher Price's VOICE TECH MISSION COMMAND RESCUE
HEROES line of toys from January 1, 1998 to the present.

**RESPONSE:** Fisher-Price objects to this request as overbroad and as seeking
irrelevant information which is not likely to lead to the discovery of admissible evidence.

3.    All of Defendant's sales records describing the dollar and unit volume of sales for each SKU sold under Fisher Price's VOICE TECH VIDEO MISSION RESCUE HEROES line of toys from January 1, 1998 to the present.

**RESPONSE:** Fisher-Price has already produced responsive documents to the extent they exist. If additional documents relating to Voice Tech Video Mission Rescue Heroes are located, they will be produced.

4.    All of Defendant's sales records describing the dollar and unit volume of sales for each SKU sold under Fisher Price's VOICE TECH MISSION SELECT RESCUE HEROES line of toys from January 1, 1998 to the present.

**RESPONSE:** Fisher-Price objects to this request as overbroad and as seeking irrelevant information which is not likely to lead to the discovery of admissible evidence.

5.    All of Defendant's sales records describing the dollar and unit volume of sales for each SKU sold under Fisher Price's VOICE TECH OPTIC FORCE RESCUE HEROES line of toys from to January 1, 1998 to the present.

**RESPONSE:** Fisher-Price objects to this request as overbroad and as seeking irrelevant information which is not likely to lead to the discovery of admissible evidence. Fisher-Price further objects to this request on the basis that Fisher-Price has never sold any product designated as "Voice Tech Optic Force Rescue Heroes."

- 3 -

6.    All of Defendant's sales records describing the dollar and unit volume of sales for each SKU sold under Fisher Price's VOICE TECH RESCUE JET line of toys from January 1, 1998 to the present.

**RESPONSE:**  Fisher-Price objects to this request as overbroad and as seeking irrelevant information which is not likely to lead to the discovery of admissible evidence.

7.    All of Defendant's sales records describing the dollar and unit volume of sales for each SKU sold under Fisher Price's VOICE TECH FIRE TRUCK line of toys from January 1, 1998 to the present.

**RESPONSE:**  Fisher-Price objects to this request as overbroad and as seeking irrelevant information which is not likely to lead to the discovery of admissible evidence.

8.    All of Defendant's sales records describing the dollar and unit volume of sales for each SKU sold under Fisher Price's VOICE TECH POLICE CRUISER line of toys from January 1, 1998 to the present.

**RESPONSE:**  Fisher-Price objects to this request as overbroad and as seeking irrelevant information which is not likely to lead to the discovery of admissible evidence.

- 4 -

9.    All of Defendant's sales records describing the dollar and unit volume of sales for each SKU sold under Fisher Price's AQUATIC RESCUE COMMAND CENTER (A.R.C.C.) line of toys from January 1, 1998 to the present.

**RESPONSE:** Fisher-Price objects to this request as overbroad and as seeking irrelevant information which is not likely to lead to the discovery of admissible evidence.

10.    All of Defendant's sales records describing the dollar and unit volume of sales, by each SKU, for activity centers sold in connection with VOICE TECH MISSION COMMAND RESCUE HEROES, VOICE TECH VIDEO MISSION RESCUE HEREOES, VOICE TECH MISSION SELECT RESCUE HEROES and VOICE TECH OPTIC FORCE RESCUE HEROES, from January 1, 1998 to the present.

**RESPONSE:** Fisher-Price objects to this request as overbroad and as seeking irrelevant information which is not likely to lead to the discovery of admissible evidence. Fisher-Price further objects on the basis that it has never sold any product designated as "Voice Tech Optic Force Rescue Heroes."

- 5 -

11.    All documents that refer or relate to revenue derived from the sale of CD-ROM's that refer or relate to VOICE TECH MISSION COMMAND RESCUE HEROES, VOICE TECH VIDEO MISSION RESCUE HEREOES, VOICE TECH MISSION SELECT RESCUE HEROES and VOICE TECH OPTIC FORCE RESCUE HEROES, from January 1, 1998 to the present.

**RESPONSE:** Fisher-Price objects to this request as overbroad and as seeking irrelevant information which is not likely to lead to the discovery of admissible evidence. Fisher-Price further objects on the basis that it has never sold any product designated as "Voice Tech Optic Force Rescue Heroes."

12.    All documents that refer or relate to revenue derived from the sale of videocassettes that refer or relate to VOICE TECH MISSION COMMAND RESCUE HEROES, VOICE TECH VIDEO MISSION RESCUE HEREOES, VOICE TECH MISSION SELECT RESCUE HEROES and VOICE TECH OPTIC FORCE RESCUE HEROES, from January 1, 1998 to the present.

**RESPONSE:** Fisher-Price objects to this request as overbroad and as seeking irrelevant information which is not likely to lead to the discovery of admissible evidence. Fisher-Price further objects on the basis that it has never sold any product designated as "Voice Tech Optic Force Rescue Heroes."

13.     All documents that refer or relate to revenue derived from the sale of DVD's that refer or relate to VOICE TECH MISSION COMMAND RESCUE HEROES, VOICE TECH VIDEO MISSION RESCUE HEREOES, VOICE TECH MISSION SELECT RESCUE HEROES and VOICE TECH OPTIC FORCE RESCUE HEROES, from January 1, 1998 to the present.

**RESPONSE:** Fisher-Price objects to this request as overbroad and as seeking irrelevant information which is not likely to lead to the discovery of admissible evidence. Fisher-Price further objects on the basis that it has never sold any product designated as "Voice Tech Optic Force Rescue Heroes."

14.     All documents that refer or relate to revenue derived from animated or live action theatrical motion pictures that refer or relate to VOICE TECH MISSION COMMAND RESCUE HEROES, VOICE TECH VIDEO MISSION RESCUE HEREOES, VOICE TECH MISSION SELECT RESCUE HEROES and VOICE TECH OPTIC FORCE RESCUE HEROES, from January 1, 1998 to the present.

**RESPONSE:** Fisher-Price objects to this request as overbroad and as seeking irrelevant information which is not likely to lead to the discovery of admissible evidence. Fisher-Price further objects on the basis that it has never sold any product designated as "Voice Tech Optic Force Rescue Heroes."

15.    All documents that refer or relate to revenue derived from licensed products that refer or relate to VOICE TECH MISSION COMMAND RESCUE HEROES, VOICE TECH VIDEO MISSION RESCUE HEREOES, VOICE TECH MISSION SELECT RESCUE HEROES and VOICE TECH OPTIC FORCE RESCUE HEROES, from January 1, 1998 to the present.

**RESPONSE:** Fisher-Price objects to this request as overbroad and as seeking irrelevant information which is not likely to lead to the discovery of admissible evidence. Fisher-Price further objects on the basis that it has never sold any product designated as "Voice Tech Optic Force Rescue Heroes."

16.    All documents that refer or relate to plans for the VOICE TECH MISSION COMMAND RESCUE HEROES, VOICE TECH VIDEO MISSION RESCUE HEREOES, VOICE TECH MISSION SELECT RESCUE HEROES and VOICE TECH OPTIC FORCE RESCUE HEROES in 2004 and 2005.

**RESPONSE:** Fisher-Price objects to this request as overbroad and as seeking irrelevant information which is not likely to lead to the discovery of admissible evidence. Fisher-Price further objects on the basis that it has never sold any product designated as "Voice Tech Optic Force Rescue Heroes." Subject to and without waiving these objections, no such documents exist for the Voice Tech Video Mission Rescue Heroes figures.

17.    All documents, including, but not limited to e-mail, between employees of Fisher-Price that refer or relate to the Property.

**RESPONSE:** Fisher-Price states that all non-privileged documents relating to plaintiffs' submissions have been produced.

18.    All documents, including, but not limited to e-mail, between employees of Fisher-Price, on the one hand, and third parties, on the other hand, that refer or relate to the Property.

**RESPONSE:** Fisher-Price states that all non-privileged responsive documents, if they exist, have been produced.

19.    All documents that refer or relate to concept submissions made to Fisher-Price since January 1, 1998, including, but not limited to, all concept disclosure forms.

**RESPONSE:** Fisher-Price objects to this request as overbroad, unduly burdensome and as seeking irrelevant information which is not likely to lead to the discovery of admissible evidence.

20.    All agreements between inventors and Fisher-Price executed since January 1, 1998, including, but not limited to, all option agreements.

**RESPONSE:** Fisher-Price objects to this request as overbroad, unduly burdensome and as seeking irrelevant information which is not likely to lead to the discovery of admissible evidence.

- 9 -

21.    For each concept submission that is responsive to Request #19 herein, samples and photographs of the final product introduced by Fisher-Price.

**RESPONSE:** Fisher-Price objects to this request as overbroad, unduly burdensome and as seeking irrelevant information which is not likely to lead to the discovery of admissible evidence.

22.    For each agreement that is responsive to Request #20 herein, samples and photographs of the final product introduced by Fisher-Price.

**RESPONSE:** Fisher-Price objects to this request as overbroad, unduly burdensome and as seeking irrelevant information which is not likely to lead to the discovery of admissible evidence.

23.    All documents that support Defendant's position that the concept submitted by Plaintiffs to Fisher-Price was not novel at the time it was submitted.

**RESPONSE:** Fisher-Price objects to this request as overbroad and vague because plaintiffs have not defined "concept." Fisher-Price further objects to this request as duplicative of Request No. 12 in Plaintiffs' First Set of Document Requests. Subject to and without waiving these objections, Fisher-Price has already produced responsive documents and will produce any additional responsive documents at the office of its counsel for review upon reasonable notice.

- 10 -

24.    All documents in the possession of Stan Clutton that refer or relate to RESCUE HEROES, CarterBench, Reiling or DI.

**RESPONSE:** Fisher-Price objects to this request as overbroad and as seeking irrelevant information which is not likely to lead to the discovery of admissible evidence. Subject to and without waiving these objections, any non-privileged documents relating to Reiling or DI's first, second, or third submissions or Voice Tech Video Mission Rescue Heroes have already been produced.

25.    All patent disclosures submitted by Fisher-Price employees and third parties that refer or relate to VOICE TECH MISSION COMMAND RESCUE HEROES, VOICE TECH VIDEO MISSION RESCUE HEREOES, VOICE TECH MISSION SELECT RESCUE HEROES, VOICE TECH OPTIC FORCE RESCUE HEROES, and all activity centers and accessories associated therewith, from January 1, 1998 to the present.

**RESPONSE:** Fisher-Price objects to this request as overbroad; as seeking irrelevant information which is not likely to lead to the discovery of admissible evidence; and as confusing to the extent it calls for "patent disclosures." Fisher-Price further objects to this request on the basis that Fisher-Price has never sold any product designated as "Voice Tech Optic Force Rescue Heroes." Subject to and without waiving these objections, Fisher-Price states that no such documents exist for the Voice Tech Video Mission Rescue Heroes figures, and if such documents existed, they would be protected by attorney-client privilege.

- 11 -

26.     All patents issued to or applied for by Fisher-Price that refer or relate to

VOICE TECH MISSION COMMAND RESCUE HEROES, VOICE TECH VIDEO MISSION

RESCUE HEREOES, VOICE TECH MISSION SELECT RESCUE HEROES, VOICE TECH

OPTIC FORCE RESCUE HEROES, and all activity centers and accessories associated

therewith, from January 1, 1998 to the present.

**RESPONSE:** Fisher-Price objects to this request as overbroad and as seeking

irrelevant information which is not likely to lead to the discovery of admissible evidence.

Fisher-Price further objects to this request on the basis that Fisher-Price has never sold any

product designated as "Voice Tech Optic Force Rescue Heroes." Subject to and without waiving

these objections, Fisher-Price states that no such documents exist for the Voice Tech Video

Mission Rescue Heroes figures.

27.     All patent searches performed by or caused to be performed by Fisher-

Price that refer or relate to VOICE TECH MISSION COMMAND RESCUE HEROES, VOICE

TECH VIDEO MISSION RESCUE HEREOES, VOICE TECH MISSION SELECT RESCUE

HEROES, VOICE TECH OPTIC FORCE RESCUE HEROES, and all activity centers and

accessories associated therewith, from January 1, 1998 to the present.

**RESPONSE:** Fisher-Price objects to this request as overbroad; as seeking

irrelevant information which is not likely to lead to the discovery of admissible evidence.

Fisher-Price further objects to this request on the basis that Fisher-Price has never sold any

product designated as "Voice Tech Optic Force Rescue Heroes." Subject to and without waiving

these objections, Fisher-Price states that no such documents exist for the Voice Tech Video

Mission Rescue Heroes figures, and if such documents existed, they would be protected by attorney-client privilege.

28. All novelty searches performed by or caused to be performed by Fisher-Price that refer or relate to VOICE TECH MISSION COMMAND RESCUE HEROES, VOICE TECH VIDEO MISSION RESCUE HEREOES, VOICE TECH MISSION SELECT RESCUE HEROES, VOICE TECH OPTIC FORCE RESCUE HEROES, and all activity centers and accessories associated therewith, from January 1, 1998 to the present.

**RESPONSE:** Fisher-Price objects to this request as overbroad; as seeking irrelevant information which is not likely to lead to the discovery of admissible evidence; and as confusing to the extent it calls for "novelty searches." Fisher-Price further objects to this request on the basis that Fisher-Price has never sold any product designated as "Voice Tech Optic Force Rescue Heroes." Subject to and without waiving these objections, Fisher-Price states that no such documents exist for the Voice Tech Video Mission Rescue Heroes figures, and, if such documents existed, they would be protected by attorney-client privilege.

29. All copyrights applied for or obtained by Fisher-Price that refer or relate to VOICE TECH MISSION COMMAND RESCUE HEROES, VOICE TECH VIDEO MISSION RESCUE HEREOES, VOICE TECH MISSION SELECT RESCUE HEROES, VOICE TECH OPTIC FORCE RESCUE HEROES, and all activity centers and accessories associated therewith, from January 1, 1998 to the present.

**RESPONSE:** Fisher-Price objects to this request as overbroad and as seeking irrelevant information which is not likely to lead to the discovery of admissible evidence.

– 13 –

Fisher-Price further objects to this request on the basis that Fisher-Price has never sold any product designated as "Voice Tech Optic Force Rescue Heroes." Subject to and without waiving these objections, Fisher-Price states that no such documents exist for the Voice Tech Video Mission Rescue Heroes figures.

30. All license agreements that refer or relate to RESCUE HEROES from January 1, 1998 to the present.

**RESPONSE:** Fisher-Price objects to this request as overbroad, unduly burdensome and as seeking irrelevant information which is not likely to lead to the discovery of admissible evidence.

31. Documents sufficient to identify all SKU's for the VOICE TECH MISSION COMMAND RESCUE HEROES, VOICE TECH VIDEO MISSION RESCUE HEREOES, VOICE TECH MISSION SELECT RESCUE HEROES, VOICE TECH OPTIC FORCE RESCUE HEROES, and all activity centers, vehicles and accessories associated therewith, from January 1, 1998 to the present.

**RESPONSE:** Fisher-Price objects to this request as overbroad and as seeking irrelevant information which is not likely to lead to the discovery of admissible evidence. Fisher-Price further objects to this request on the basis that Fisher-Price has never sold any product designated as "Voice Tech Optic Force Rescue Heroes." Subject to and without waiving these objections, Fisher-Price states that any responsive documents relating to the Voice Tech Video Mission Rescue Heroes figures have already been produced.

- 14 -

32.    All documents that refer or relate to lawsuits filed by inventors against Fisher-Price or Mattel alleging a failure to pay royalties.

**RESPONSE:** Fisher-Price objects to this request as overbroad, as seeking irrelevant information which is not likely to lead to the discovery of admissible evidence, and as seeking information protected by the attorney-client or the work product doctrine. Fisher-Price further objects to this request to the extent it seeks documents relating to lawsuits against Mattel as seeking information which is not within Fisher-Price's custody or control.

33.    All documents that support the proposition that the concept submitted by Plaintiffs to Fisher-Price was not novel to Fisher-Price or to the toy industry as a whole at the time it was submitted.

**RESPONSE:** Fisher-Price objects to this request as overbroad and as vague because plaintiffs have not defined "concept." Fisher-Price further objects to this request as duplicative of Request No. 12 in Plaintiffs' First Set of Document Requests and of Request No. 23 herein. Subject to and without waiving these objections, Fisher-Price has already produced responsive documents and will produce additional responsive documents at the offices of its counsel for review upon reasonable notice.

34.     All documents that relate or refer to, evidence, or support efforts undertaken by Defendant to create and develop the VOICE TECH MISSION COMMAND RESCUE HEROES, VOICE TECH VIDEO MISSION RESCUE HEREOES, VOICE TECH MISSION SELECT RESCUE HEROES, VOICE TECH OPTIC FORCE RESCUE HEROES, and all activity centers, vehicles and accessories associated therewith, from January 1, 1998 to the present.

**RESPONSE:** Fisher-Price objects to this request as overbroad and as seeking irrelevant information which is not likely to lead to the discovery of admissible evidence. Fisher-Price further objects to this request on the basis that Fisher-Price has never sold any product designated as "Voice Tech Optic Force Rescue Heroes." Subject to and without waiving these objections, Fisher-Price states that responsive documents relating to the Voice Tech Video Mission Rescue Heroes figures have already been produced. If additional documents relating to Voice Tech Video Mission Rescue Heroes are located, they will be produced.

35.   All documents that relate or refer to communications, whether oral or written (electronic or otherwise), between Defendant Fisher Price and any other companies or individuals that participated in, and/or contributed to, the development and creation of the VOICE TECH MISSION COMMAND RESCUE HEROES, VOICE TECH VIDEO MISSION RESCUE HEREOES, VOICE TECH MISSION SELECT RESCUE HEROES, VOICE TECH OPTIC FORCE RESCUE HEROES, and all activity centers, vehicles and accessories associated therewith, from January 1, 1998 to the present.

**RESPONSE:** Fisher-Price objects to this request as overbroad and as seeking irrelevant information which is not likely to lead to the discovery of admissible evidence. Fisher-Price further objects to this request on the basis that Fisher-Price has never sold any product designated as "Voice Tech Optic Force Rescue Heroes." Subject to and without waiving these objections, Fisher-Price states that any responsive documents relating to the Voice Tech Video Mission Rescue Heroes figures have already been produced. If additional documents relating to Voice Tech Video Mission Rescue Heroes are located, they will be produced.

36.   To the extent that Defendant denies any of the requests for admission contained in Plaintiffs' First Requests for Admission, all documents that support Defendant's denial of any such request for admission.

**RESPONSE:** Fisher-Price objects to this request as overbroad, vague, as failing to identify the requested documents with specificity sufficient to permit a response, and as seeking information which is not likely to lead to the discovery of admissible evidence.

- 17 -

Dated: January 27, 2004

HODGSON RUSS LLP

*Attorneys for Defendant Fisher-Price, Inc.*

By: _____
       Robert J. Lane, Jr.
       Jodyann Galvin
One M&T Plaza, Suite 2000
Buffalo, New York 14203
Telephone: (716) 856-4000

Bradford S. Babbitt, Esq.
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103-3597
Telephone: (860) 275-8209

BFLODOCS 386868v1 (J08S011.DOC)

- 18 -

EXHIBIT C

## GRIMES & BATTERSBY, LLP

ATTORNEYS AT LAW
488 MAIN AVENUE
NORWALK, CONNECTICUT 06851-1008
(203) 849-8300

www.gandb.com

FAX: (203) 849-9300

February 19, 2004
*Via Facsimile and U.S. Mail*

Jodyann Galvin, Esq.
Hodgson Russ LLP
One M&T Plaza
Suite 2000
Buffalo, NY 14203-2391

> Re:   Victor G. Reiling Associates v. Fisher-Price, Inc.
>        Civil Action No. 3:03 CV 222 (JBA)
>        Our File No. VGR001USL

Dear Ms. Galvin:

This letter addresses a dispute between the parties regarding certain documents requested by Plaintiffs as part of their Second Request for Production of Documents. Plaintiffs have made the following requests:

Request No. 19

"All documents that refer or relate to concept submissions made to Fisher-Price since January 1, 1998, including, but not limited to, all concept disclosure forms." Fisher-Price has objected to this request as overbroad, unduly burdensome and irrelevant.

Request No. 20

"All agreements between inventors and Fisher-Price executed since January 1, 1998, including, but not limited to, all option agreements." Fisher-Price has objected to this request as overbroad, unduly burdensome and irrelevant.

Jodyann Galvin, Esq.
February 19, 2004
Page 2 of 3

<u>Request No. 21</u>

"For each concept submission that is responsive to Request #19 herein, samples and photographs of the final product introduced by Fisher-Price." Fisher-Price has objected to this request as overbroad, unduly burdensome and irrelevant.

<u>Request No. 22</u>

"For each agreement that is responsive to Request #20 herein, samples and photographs of the final product introduced by Fisher-Price." Fisher-Price has objected to this request as overbroad, unduly burdensome and irrelevant.

As explained during the Status Conference with Judge Arterton, these documents are relevant in that one of Fisher-Price's defenses in this case is that they did not use Plaintiffs' concept. Implicit in this defense is an argument that Plaintiffs' submissions were not incorporated into the products actually produced by Fisher-Price (i.e., the products actually produced were not "close enough" to Plaintiffs' submissions). Bob Lane confirmed that this is one of Fisher-Price's defenses in a telephone conversation on February 11, 2004. In view of that defense, Plaintiffs are entitled to review past submissions made by outside inventors to Fisher-Price, any resulting agreements relating thereto and the final products that Fisher-Price ultimately commercialized. These documents have probative value as to the extent to which Fisher-Price has considered past products that it has commercialized to "read on" the corresponding concept submissions from outside inventors. These documents are essential to Plaintiffs case and Plaintiffs will need to explore these documents, once they are produced, with both Stan Clutton and Howard Bollinger, who are currently noticed for deposition.

In an effort to resolve the discovery dispute in good faith, to minimize the burden on Fisher-Price and to narrow the requests as much as possible, Plaintiffs are condensing the four requests outlined above into the following revised request:

All documents that refer or relate to outside inventor submissions made to Fisher-Price from 1996 through 2000 that have resulted in or have been incorporated into commercialized products (i.e., products offered for sale) by Fisher-Price, including, but not limited to: (a) documents reflecting each such submission and the corresponding concept disclosure forms; (b) any option agreement or license agreement relating thereto; and (c) a sample of the final product or a catalog page depicting the final product commercialized by Fisher-Price

Jodyann Galvin, Esq.
February 19, 2004
Page 3 of 3


By limiting the original requests to a finite time period and by further limiting the requests by requesting information only about outside inventor submissions that were ultimately commercialized by Fisher-Price, Plaintiffs have narrowed their requests such that the production will not be unduly burdensome

Please consider this our good faith effort to resolve the discovery dispute relating to the specific requests for production outlined above. Please advise as to Fisher-Price's position on our revised request as soon as possible. If we are unable to reach agreement, we will have no choice but to file a motion to compel with the Court prior to the close of discovery.

Very truly yours,

Russell D. Dize

cc:   Gregory J. Battersby
      Jed Ferdinand

# EXHIBIT D

# GRIMES & BATTERSBY, LLP

ATTORNEYS AT LAW
488 MAIN AVENUE
NORWALK, CONNECTICUT 06851-1008
(203) 849-8300

www.gandb.com

FAX: (203) 849-9300

February 25, 2004
*Via Facsimile and U.S. Mail*

Jodyann Galvin, Esq.
Hodgson Russ LLP
One M&T Plaza
Suite 2000
Buffalo, NY  14203-2391

> Re:   **Victor G. Reiling Associates v. Fisher-Price, Inc.**
>       **Civil Action No. 3:03 CV 222 (JBA)**
>       **Our File No. VGR001USL**

Dear Ms. Galvin:

I refer to my letter dated February 19, 2004 regarding a dispute between the parties with respect to certain documents requested by Plaintiffs as part of their Second Request for Production of Documents. In an effort to resolve the discovery dispute in good faith, to minimize the burden on Fisher-Price and to narrow the requests as much as possible, Plaintiffs have condensed Requests 19 through 22 into the following revised request:

> All documents that refer or relate to outside inventor submissions made to Fisher-Price from 1996 through 2000 that have resulted in or have been incorporated into commercialized products (*i.e.*, products offered for sale) by Fisher-Price, including, but not limited to: (a) documents reflecting each such submission and the corresponding concept disclosure forms; (b) any option agreement or license agreement relating thereto; and (c) a sample of the final product or a catalog page depicting the final product commercialized by Fisher-Price.

Jodyann Galvin, Esq.
February 25, 2004
Page 2 of 2


Please let us know if you will agree to produce documents responsive to the foregoing consolidated request by the close of business today, Wednesday, February 25, 2004. If we are unable to reach agreement, we will have no choice but to file a motion to compel with the Court prior to the close of discovery.

Very truly yours,

Russell D Dize

cc:   Gregory J. Battersby
       Jed Ferdinand

# EXHIBIT E

Jodyann Galvin
Senior Associate
Direct Dial: 716.848.1520
jgalvin@hodgsonruss.com



February 26, 2004

**VIA FACSIMILE**
**and U.S. MAIL**

Russell D. Dize, Esq.
Grimes & Battersby, LLP
488 Main Avenue, Third Floor
Norwalk, CT 06851-1008

Dear Mr. Dize:

      Re:    **Victor G. Reiling & Associates, et al. v. Fisher-Price, Inc.**

     This letter responds to your letter dated February 19, 2004 and your facsimile of February 25, 2004. In particular, this letter responds to plaintiffs' revised document request which seeks outside inventor submissions between 1996 through 2000 that have resulted in or been incorporated into commercialized products by Fisher-Price. This revised request is subject to the same objections Fisher-Price has already interposed to plaintiffs' original requests.

     Most significantly, the information sought is not relevant to plaintiffs' claims. Other agreements, which are negotiated on a case-by-case basis, as was the Option Agreement here, are simply not relevant to the Option Agreement at issue in this case, the allegations of any implied agreement, or to any other cause of action. Moreover, as addressed at the status conference on February 2, this information would necessitate mini-trials on all of the submissions which are responsive to plaintiffs' request and would open the possibility of additional expert testimony on each submission to opine on Fisher-Price's conduct in other matters.

                     Very truly yours,

                     Jodyann Galvin /SRP

JAG/slp

One M&T Plaza  ✦  Suite 2000  ✦  Buffalo, New York  14203-2391  ✦  telephone 716.856.4000  ✦  facsimile 716.849.0349

Albany  ✦  Boca Raton  ✦  Buffalo  ✦  New York City  ✦  Palm Beach Gardens  ✦  Toronto  ✦  www.hodgsonruss.com