

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---

VICTOR G. REILING ASSOCIATES and
DESIGN INNOVATION, INC.,

                Plaintiffs,

- against -

FISHER-PRICE, INC.,

                Defendant.

Index No.: 3:03 CV 222 (JBA)

March 5, 2004

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT

Gregory J. Battersby (Bar No. 7386)
Edmund J. Ferdinand, III (Bar No. 21287)
Russell D. Dize (Bar No. 23064)
Jessica L. Elliott (Bar No. 24871)
GRIMES & BATTERSBY, LLP
488 Main Avenue, Third Floor
Norwalk, Connecticut 06851-1008
(p) (203) 849-8300
(f) (203) 849-9300

Attorneys for Plaintiffs Victor G. Reiling
Associates and Design Innovation, Inc.

Plaintiffs respectfully submit this reply memorandum of law and the accompanying declarations of James M. Kipling, Victor G. Reiling, Bruce P. Popek and Russell D. Dize in further support of their motion for leave to file a Second Amended Complaint

## **PRELIMINARY STATEMENT**

Unable to refute (or even address) the basic fact that the interest of judicial economy is best served by permitting plaintiffs to amend their complaint in lieu of filing a second lawsuit, Fisher-Price has instead resisted plaintiffs' amendment chiefly by raising factual issues that are at the very heart of plaintiffs' case, namely whether Fisher-Price in fact "used" plaintiffs' concept and whether the concept is novel. In so doing, Fisher-Price has asked the Court to rule on issues of fact that are properly addressed in a summary judgment motion. Fisher-Price's effort in this regard is both legally and factually untenable. First, it is well settled that courts apply a permissive standard to proposed amendments under Rule 15 -- a standard akin to adjudicating a motion to dismiss under Rule 12(b)(6) -- and not the more searching summary judgment standard. Moreover, regardless of the correct legal standard, plaintiffs have come forward with evidence demonstrating that the issues of use and novelty are highly disputed, thereby rebutting Fisher-Price's arguments for purposes of this motion and effectively crippling any chance Fisher-Price has of obtaining summary judgment on these issues in the future.

Fisher-Price's other factual and legal arguments relating to the issues of futility, undue delay and prejudice are meritless. In fact, Fisher-Price has failed to present any meritorious legal or factual argument, much less one that would outweigh the strong judicial interest in avoiding piecemeal litigation. Plaintiffs have more than satisfied the permissive standard for amendments under Rule 15. Accordingly, plaintiffs respectfully urge the Court to grant their motion for leave to file a Second Amended Complaint.

1

# ARGUMENT

## I. DEFENDANT'S ARGUMENTS REGARDING THE FUTILITY OF PLAINTIFFS' PROPOSED AMENDMENTS ARE LEGALLY AND FACTUALLY ERRONEOUS

### A. Defendant Has Overlooked Rule 15's Permissive Standard

It is well established that under Rule 15(a) amendments are to be "freely given" and are "reviewed under the same standard that governs a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *See Inside Radio, Inc. v Clear Channel Communications, Inc.*, 209 F. Supp. 2d 302, 306 (S.D.N.Y. 2002) (citing *Nettis v. Levitt*, 241 F.3d 186, 194 n.4 (2d Cir. 2001). The "motion to dismiss" standard also applies to motions under Rule 15(d) even though the text of Rule 15(d) "does not include Rule 15(a)'s mandate that leave to amend be freely given when justice so requires." *See Novak v. Nat'l Broad. Co.*, 724 F. Supp. 141, 145 (S.D.N.Y. 1989). Accordingly, the "Court should accept the allegations in the proposed amended complaint as true and should not preclude the addition of the proposed claim on the ground of futility 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *See Inside Radio*, 209 F. Supp 2d at 307 (quoting *Ricciuti v. New York City Transit Auth*, 941 F 2d 119, 123 (2d Cir. 1991).

Fisher-Price's arguments about futility are based almost exclusively on factual, not legal,[1] grounds. (*See* Defendant's Memorandum in Opposition to Plaintiff's Motion for Leave to Amend ("Def. Mem.") at 12-13, 16-18, 27-29 and 30). Because Fisher-Price has failed to argue that plaintiffs cannot state a claim under the Rule 12(b)(6) standard, its factual challenges that go to the heart of the merits of the case should be disregarded for purposes of determining this motion as a matter of law.

---

[1] The lone exception is defendant's contention that plaintiffs' claims with respect to two accessories, the "Voice Tech" Fire Truck and Jet, are time-barred (Def. Mem at 29). Plaintiffs will address that issue below

B.  The Issues of Use and Novelty Are Highly Disputed in Any Event

Fisher-Price's arguments about the futility of plaintiffs' amendment likewise fail as a factual matter as well. Fisher-Price has the temerity to assert that it is "undisputed that Fisher-Price never used the concepts reflected on any of the three submissions submitted by plaintiffs" (Def. Mem. at 6), when that fact is at the heart of plaintiffs' case and is highly disputed. Indeed, Fisher-Price's conclusory analysis regarding its non-use of plaintiffs' concept (Def. Mem. at 13), is based on the application of an erroneous standard, namely that in order for Fisher-Price to owe a royalty to plaintiffs they needed to use the exact same engineering mechanism described in plaintiffs' written submissions to Fisher-Price in the exact same way in connection with the action figure. (Declaration of Victor G. Reiling, dated March 4, 2004 ("Reiling Dec") ¶ 14). This myopic standard runs afoul of longstanding custom and practice in the toy industry. (*Id.*) Instead, it must be appreciated that: (1) contrary to Fisher-Price's contention, plaintiffs are not bound by the four-corners of the documents they submitted to Fisher-Price for purposes of defining the concept because concepts submitted by outside inventors are typically broadly construed; (2) the performance of the concept by Fisher-Price could be achieved in many different ways and Fisher-Price would still owe a royalty regardless of the particular device used; and (3) the concept may ultimately be changed because the toy company has expended substantial resources to refine and embellish the concept into a "finished" licensed product, but a royalty would still be owed nonetheless (*Id* ¶ 15; Declaration of James Kipling, dated March 4, 2004 ("Kipling Dec."), ¶¶ 11-16, Exh A). Indeed, plaintiffs' principals have submitted two examples of concepts that they themselves sold to Fisher-Price in the past for which Fisher-Price ultimately paid a royalty despite the fact that on each occasion the finished toy product bore little resemblance to the original concept submission because of significant changes made by Fisher-

3

Price. (Reiling Dec. ¶ 16; Declaration of Bruce P. Popek, dated March 4, 2004 ("Popek Dec.") ¶ 6) Moreover, the contracts of Fisher-Price's parent corporation, Mattel, Inc., confirm that the company will still pay a royalty notwithstanding its right to "produce and sell" the concept in a "new form." (Reiling Dec. ¶ 16, Exh. F).

Against this backdrop, the far more credible evidence in the record is the positive comparisons made between plaintiffs' concept (as defined in the Reiling Dec. at par. 4) and the "Rescue Heroes" action figures, accessories and line extensions referenced in the Second Amended Complaint. (*See* Reiling Dec. ¶ 4, 17, Exh. G; Kipling Dec. ¶ 17; Declaration of Russell D. Dize, dated March 5, 2004 ("Dize Dec.") ¶ 7). Likewise, plaintiffs have successfully refuted Fisher-Price's contention (Def. Mem. at 16) that plaintiffs' concept was not novel when they submitted it to Fisher-Price in 1998. (Reiling Dec. ¶¶ 18-21; Kipling Dec. ¶¶ 18-24). As such, Fisher-Price cannot show that it "appears beyond doubt" that plaintiffs "can prove no set of facts" to support its proposed amendments.

### C. The "Relaxed" Novelty Standard Applies to Claims for Breach of Implied-in-Fact Contract

Fisher-Price has grossly misrepresented the governing law with respect to the Second Circuit's standard for determining novelty for a claim of breach of implied-in-fact contract in a submission of idea case under New York law. Defendant erroneously asserts that the "relaxed" novelty standard (*i.e.* novel only to the buyer instead of the entire toy industry) applies only to claims for breach of express contract, (Def. Mem. at 14-15), seemingly hoping that the obscure evidence of Toy Biz's 1995 projector toy will serve to undermine all of plaintiffs' claims. But the plain language of *Nadel v. Play-By-Play Toys & Novelties, Inc.*, 208 F.3d 368 (2d Cir. 2000), makes clear that the novelty to the buyer standard applies to all contract-based claims, including

4

claims for breach of an implied-in-fact contract. *See* 208 F.3d at 373, 376-77, n. 5, 380.[2] Court decisions and law review articles interpreting *Nadel* confirm this conclusion. *See Duffy v. Charles Schwab & Co., Inc.*, 2001 U.S. Dist LEXIS 14040, at *14 (D. N.J. Sept. 4, 2001) ("a showing of novelty to the buyer will supply sufficient consideration to support an implied-in-fact contract;" interpreting *Nadel*) (attached hereto); Mary LaFrance, "*Something Borrowed, Something New: The Changing Role of Novelty in Idea Protection Law,*" 34 SETON HALL L. REV 485, 493, n 4 (same) (attached hereto). Hence, even if the evidence of the Toy Biz projection toy were relevant to the issue of novelty, which it is not, it would have no impact on plaintiffs' claim for breach of implied-in-fact contract.[3]

Finally, Fisher-Price's reference to the *Nadel* case for the proposition that courts may grant summary judgment on issues of novelty (Def. Mem. at 16) is utterly misleading, given that: (1) in *Nadel* the Second Circuit reversed a district court's grant of summary judgment because issues of fact existed with respect to novelty as to both contract and misappropriation claims; and (2) the Second Circuit stated that resolution of novelty as a matter of law was appropriate where "an idea that may be so unoriginal or lacking in novelty that its obviousness bespeaks widespread public knowledge of the idea." 208 F.3d 378-79. As such, *Nadel* actually supports

---

[2] While the Second Circuit repeatedly mentions the novelty standard to be applied for claims of breach of implied-in fact contract, the Court does not reference that plaintiff actually asserted such a claim. *See* 208 F.3d at 370. Plaintiffs' counsel has obtained a copy of the Complaint filed by Mr Nadel in that case. The Complaint contains a claim for breach of implied-in-fact contract. (Dize Dec. ¶ 8).

[3] Fisher-Price's argument that plaintiffs have failed to properly allege a claim for breach of implied-in-fact contract (Def. Mem. at 15) because a specific price term is omitted is curious given that Fisher-Price failed to move to dismiss identical claims raised in the original Complaint and First Amended Complaint under Rule 12(b)(6). Fisher-Price's arguments in this regard are bizarre and show a fundamental misunderstanding of implied-in-fact contract claims, which arise from the Court's justifiable inference that the elements of mutual assent (based on the conduct of the parties, industry custom and course of dealing), consideration (based on novelty), legal capacity and legal subject matter are satisfied. *Nadel*, 208 F.3d at 377, n. 5. The complaint need not allege a specific royalty figure because application of a reasonable royalty is based on industry custom and practice, and in any event plaintiffs' expert provided one in his expert report (6%-7%) (Kipling Dec., Exh. A). Rather, it is sufficient to satisfy Rule 12(b)(6) that plaintiffs alleged that Fisher-Price "agreed to compensate Plaintiffs in the event Fisher-Price actually used Plaintiffs' novel product concept . . ." (Second Amended Complaint ¶ 42).

plaintiffs' position, not Fisher-Price's, because the scant evidence of purported prior-art submitted by Fisher-Price herein can hardly be considered "widespread."

D.   Plaintiffs' Claims Are Not Time Barred

Fisher-Price contends that plaintiffs' claims related to two of the fifteen products at issue in the Second Amended Complaint, the "Voice Tech" Jet and Fire Truck, are time-barred because they were released in 2000. (Def. Mem. at 29-30). Fisher-Price claims that adding these products would be "futile," yet it has conveniently ignored the fact that at the very least plaintiffs' breach of implied-in-fact contract claim would survive because it is governed by a six-year limitation period under New York law.[4] N.Y. CPLR § 213(2). Moreover, even assuming, *arguendo*, that a discovery rule would not apply, Fisher-Price has also failed to disclose that at least one New York court has held that the statute of limitations for a claim alleging misappropriation of an idea is six years. *See Dolgoff Holophase, Inc. v. E.I. DuPont de Nemours & Co.*, 212 A.D.2d 661, 662, 622 N.Y.S.2d 769, 770 (1995). Hence, plaintiffs' misappropriation claim is not time barred either.

E.   Plaintiffs Have Not Waived Claims to Any Product at Issue

Plaintiffs concede that one of its witnesses has testified that, in his opinion, plaintiffs have no claim to the "Voice Tech" vehicles. (Def. Mem. at 27-28). However, that testimony is not dispositive as a waiver of the claim, as other witnesses have confirmed that these vehicles are covered by plaintiffs' concept because they constitute a line extension for which a royalty is typically paid. As a result, plaintiffs' claims should be permitted to go forward at this stage [5]

---

[4] Plaintiffs agree that New York law should govern this action in light of the fact that New York law is well-developed with respect to submission of idea cases.
[5] Fisher-Price has the option of seeking to cross-examine plaintiffs' witnesses at trial with the apparently inconsistent statements and/or admissions against interest.

6

## III. THERE HAS BEEN NO UNDUE DELAY IN SEEKING THE AMENDMENTS

Fisher-Price's argument that plaintiffs unduly delayed in seeking the amendments (Def. Mem. at 20-25) is unavailing because the delay was not considerable and any prejudice to Fisher-Price is outweighed by the interest of avoiding piecemeal litigation. In particular, Fisher-Price excoriates plaintiffs for failing to explain the reasons for the delay in seeking the amendments. (Def. Mem. at 25). In response, plaintiffs have provided satisfactory reasons both for why they did not discover the new products at issue until 1993[6] (Reiling Dec. ¶¶ 9-10; Popek Dec. ¶ 7), and why there was a short delay - only a few months - in seeking the amendment after they had discovered the new products. (Reiling Dec. ¶ 11).

Importantly, "[a] considerable period of delay between the filing of the original complaint and a motion to amend may be grounds for denying a motion to amend," but only "when the delay causes prejudice to existing parties to the action." *See Liz Claiborne v. Mademoiselle Knitwear*, 1997 U.S. Dist. LEXIS 1272, at *8 (S.D.N.Y. Feb. 10, 1997) (amendment granted despite five-month delay) (citing *Sanders v. Thrall Car Mfg. Co.*, 582 F. Supp. 945, 952 (S.D.N.Y. 1983), *aff'd*, 739 F.2d 910 (2d Cir 1984); *H.L. Hayden Co. v. Siemens Med Sys., Inc.*, 112 F.R.D. 417, 419 (S.D.N.Y. 1986)). Here, the delay from the time of discovery until the time that plaintiffs raised the issue of amending the complaint was not even considerable.

Moreover, "amendment is favored where it would allow the merits of a claim to be fully adjudicated." *See Phillips v. Kidder, Peabody & Co.*, 1994 U.S. Dist. LEXIS 14578, at *10 (S.D.N.Y. Oct. 13, 1994) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). As in *Phillips*, Plaintiffs' proposed amendments and/or supplementation seek to augment the original claims

7

and are closely related to the original claims – they involve the very same concept, as depicted in plaintiffs' three submissions to Fisher-Price, as asserted in the First Amended Complaint. As such, even assuming that Fisher-Price was prejudiced by the delay, allowing the amendments serves the interest of judicial economy and it will save both parties from the burden and expense of commencing discovery anew in a second lawsuit. *See, e.g., Lobo Recording Corp. v. Waterland*, 197 F.R.D. 23, 27 (E.D.N.Y. 2000).

### IV. SIGNIFICANT ADDITIONAL DISCOVERY WILL NOT BE REQUIRED AND PLAINTIFF SHOULD CERTAINLY NOT BEAR THE COST OF FISHER-PRICE'S DISCOVERY IN ANY EVENT

Fisher-Price's argument that "significant" additional discovery will be required is a vast overstatement (Def. Mem. at 31), considering that Fisher-Price's counsel has already questioned plaintiffs' witnesses at length about 12 of the 15 new products contained in the Second Amended Complaint, including all of the important action figure lines. (Dize Dec ¶¶ 2-5).[7] Thus, plaintiffs' proposed amendments should not require Fisher-Price to re-examine plaintiffs' witnesses about the new products at issue, and Fisher-Price's self-serving arguments to the contrary (Def. Mem at 32-33) are simply not credible.

Fisher-Price's request that plaintiffs should be responsible for the costs and fees associated with additional discovery in the event the Court grants plaintiffs' motion (Def. Mem. at 33) is absurd for several reasons. First, it is evident that the bulk of the evidence relating to these augmented allegations is likely within Fisher-Price's own possession and will be revealed following Fisher-Price's own internal investigation. *See, e.g., Compu-Blend Corp. v Phillips 66 Co.*, 1988 U.S. Dist. LEXIS 11318, at *5 (D. Kan. Sept. 12, 1988) (court denied shifting costs

---

[6] To this end, it is important to note that the two Fisher-Price products at issue in the Second Amended Complaint that most closely resemble plaintiffs' concept – the "Mission Select" action figure line and the "Telly Photo" "Optic Force" figure – were released in "early" 2003 and October, 2003, respectively. (Def. Mem. at 10-11).

[7] The only products that did not come up were the "Mountain Action Command Center" and "Mission Select" Fire Truck and Police Cruiser.

because "the majority of the evidence regarding [the] new claims will most likely be in defendant's possession"). Second, Fisher-Price's cited authority is distinguishable because the discovery required by the proposed amendments here pales in comparison to the discovery at issue in those cases. *See, e.g., Polycast Technology Corporation v. Uniroyal, Inc.*, 728 F. Supp. 926, 943 (S.D.N.Y. 1989) (defendants argued that they would have to "re-review thousands of documents and re-examine [fourteen individuals who were] already . . . deposed" in order to defend against the amendments).

Third, plaintiffs have acted in good faith and their proposed amendment is timely. *See Liegey v. Ellen Figg, Inc.*, 2003 U.S. Dist. LEXIS 9898, at *10 (S.D.N.Y. June 11, 2003) (refusing to award costs in connection with a motion to amend a Complaint where the motion was not untimely, was not made in bad faith, and where defendants would not suffer prejudice); *Cf., Hayden v. Feldman*, 159 F.R.D. 452, 455 (S.D.N.Y. 1995) (imposing conditions on the filing of an amended complaint where the defendant "would not have been put to the expense of moving to dismiss the faulty Third Amended Complaint had plaintiffs filed a proper complaint at the outset"); *Classicberry Ltd v. Musicmaker.com*, 48 Fed. Appx. 360, 362 (2d Cir. 2002) (finding no abuse of discretion where the district court conditioned its leave to amend on assessing the additional cost of discovery to movant where movant sought amendment "after discovery had closed" and while a motion for summary judgment was pending).

Most importantly, this Court has already acknowledged the disparity of wealth between the parties. *See Victor G. Reiling and Assocs. v. Fisher-Price, Inc.*, 2003 U.S. Dist. LEXIS 13277, at *9 (D. Conn. July 31, 2003). Forcing plaintiffs to pay for Fisher-Price's costs and legal expenses for future discovery would present an undue financial hardship on plaintiffs. (Reiling Dec. ¶ 22; Popek Dec. ¶ 8). Prevailing on this motion, yet having to pay for Fisher-

Price's further discovery (over which plaintiffs would have no input or control regarding costs), would be a pyrrhic victory indeed. If the Court is inclined to accept Fisher-Price's request, plaintiffs would prefer to commence a second action rather than incur such an obligation.

### CONCLUSION

For the foregoing reasons, plaintiffs respectfully request that the Court grant plaintiffs' Motion for Leave to File a Second Amended Complaint and deny Fisher-Price's request to tax costs and fees for further discovery on plaintiffs, and for such other and further relief as the Court deems just and proper.

Dated: Norwalk, Connecticut
March 5, 2004

           Respectfully Submitted,

           GRIMES & BATTERSBY, LLP

           By: _____
           Gregory J. Battersby (Bar No. 7386)
           Edmund J Ferdinand, III (Bar No. 21287)
           Russell D Dize (Bar No. 23064)
           Jessica L. Elliott (Bar No. 24871)
           488 Main Avenue, Third Floor
           Norwalk, Connecticut 06851-1008
           (p) (203) 849-8300
           (f) (203) 849-9300
           Attorneys for Plaintiffs Victor G. Reiling
           Associates and Design Innovation, Inc.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing Reply Memorandum of Law in Further Support of Plaintiffs' Motion for Leave to File a Second Amended Complaint and the accompanying Declarations of James M. Kipling, Victor G. Reiling, Bruce P. Popek and Russell D. Dize have been served upon defendant Fisher-Price, Inc., on this 5th day of March 2004, via U.S. Mail, First Class, postage prepaid, to:

> Bradford S. Babbitt, Esq.
> Michael J. Kolosky, Esq.
> ROBINSON & COLE LLP
> 280 Trumbull Street
> Hartford, CT 06103-3597
>
> Robert J. Lane, Jr., Esq.
> Jodyann Galvin, Esq.
> HODGSON RUSS LLP
> One M&T Plaza, Suite 2000
> Buffalo, New York 14203-2391

*/s/ Russell D. Dize*
Russell D. Dize