UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

VICTOR G. REILING ASSOCIATES and
DESIGN INNOVATION, INC.,

          Plaintiffs,

- against -

FISHER-PRICE, INC.,

          Defendant.

Index No.: 3:03 CV 222 (JBA)

March 5, 2004

**PLAINTIFFS' MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANT'S MOTION TO STRIKE**

Plaintiffs respectfully submit this Memorandum of Law and the accompanying declaration of Bruce P. Popek in opposition to defendant's Motion to Strike.

Defendant, Fisher-Price, Inc. ("Fisher-Price"), argues that threats made by its Vice-President, Stan Clutton, to the plaintiffs that were intended to coerce them into dropping this lawsuit are inadmissible under Federal Rule of Evidence 408 because they were made in the context of settlement discussions. (*See* Defendant's Memorandum of Law in Opposition to Plaintiffs' Motion to Amend and in Support of Its Motion to Strike ("Def. Mem.") at 34-37) In support of its position, Fisher-Price has submitted a letter from Mr. Clutton to the plaintiffs stating that a September 2003 meeting between the parties was being conducted for settlement purposes and that "pursuant to Federal Rule of Evidence 408, the content of the meeting, including any oral or written statements made in the context of the meeting or any follow-up

discussions among the parties, are confidential, not subject to discovery, inadmissible and are made without prejudice to any claims or defenses." (See Declaration of Stan Clutton, dated February 18, 2004 ("Clutton Dec."), Exh. A).

As reflected in the accompanying Declaration of Bruce P. Popek, Mr. Clutton threatened representatives of plaintiffs Victor G. Reiling Associates, Inc. ("VGRA") and Design Innovation, Inc. ("DI") during the fall of 2004, stating that under a policy set by Mattel, Inc., Fisher Price's parent corporation, Fisher Price would terminate its business relationship with plaintiffs DI and Reiling unless they withdrew from the lawsuit. (Declaration of Bruce P. Popek, dated March 4, 2004 ("Popek Dec.") ¶¶ 9-10). These threats to blackball the plaintiffs were clearly intended to coerce and strong-arm plaintiffs into dropping the subject lawsuit.

In fact, on November 7, 2003, Mr. Clutton sent an e-mail to plaintiffs stating as follows:

> On a related issue, I informed you that the company can not do business with someone who has a lawsuit pending against us. The law department is in the process of notifying Fisher-Price and Mattel R&D departments not to place any additional work with Design Innovation. I have convinced them to allow current projects that have been already committed to be completed in the interest of avoiding delays on this work.

(Popek Dec., Exh. A).

DI, who derived a significant amount of business from Fisher Price, considered abiding by Fisher Price's request to drop the suit, but Reiling did not, advising Mr. Clutton that he made it a practice not to do business with companies that stole from him. Mr. Clutton advised Design Innovation that even if they withdrew from the lawsuit, Fisher Price would essentially blacklist them if Reiling, over whom they had no control, continued in the action. (Popek Dec. ¶ 9). As a result, neither plaintiff has withdrawn from the action and, true to Mr. Clutton's word, Fisher Price has now terminated its business relationship with both plaintiffs. (*Id.*)

Fisher-Price's argument that such statements should be stricken fails for a number of reasons, most notably:

- These threats were not "offers of compromise" as contemplated by Federal Rule of Evidence 408;

- Fisher-Price's subsequent conduct of actually blacklisting plaintiffs and cutting off all work occurred outside the context of any settlement discussion and such fact is admissible.

Federal Rule of Evidence 408 is directed to compromise and offers to compromise, stating:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion where the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

In order to qualify for exclusion under Rule 408, the evidence must be an offer to compromise. Demands or ultimatums do not so qualify. *See Liautaud v. Generationxcellent, Inc.*, No. 00 C 6365, 2002 U.S. Dist. LEXIS 2404, at *3-5 (N.D. Ill. Feb. 15, 2002) (where the court noted that "compromise negotiations are not unilateral").

It is inconceivable that a blackmail threat such as the type made by Fisher-Price in the instant case could ever be considered an offer to compromise and be accorded the protection offered by Rule 408. Thus, in *Raybestos Products Company v. Younger*, 54 F.3d 1234 (7th Cir 1995), the Seventh Circuit considered a letter and memorandum that was purported to be a settlement proposal but was characterized by Raybestos as evidence "not as a settlement

proposal, but rather as evidence of Younger and TransGo's continued effort to intimidate Raybestos and extort hundreds of thousands of dollars from it." *Raybestos*, 54 F.3d at 1240. In admitting such letter and memorandum, the court reviewed "the record and the atmosphere in which this letter [and memorandum] was sent" to determine that in the "totality of the circumstances," this letter and memorandum were "volunteered" and not sent in contemplation of "settlement arrangements or discussion." *Id.* at 1241. The court held that the record supported the conclusion that the letter and the memorandum did not relate to any proposal for settlement and, as such, Rule 408 did not bar its admission. *Id.*

Moreover, even in the event that Fisher Price could establish that such a threat was made as an offer to compromise, plaintiffs would still be entitled to use such statements for other purposes, including showing Fisher Price's motive and, in this regard, the court has broad discretion. *See Starter Corp. v. Converse, Inc.*, 170 F.3d 286, 293 (2nd Cir. 1999). *See also Resolution Trust Corp. v. Blasdell*, 154 F.R.D. 675, 681 (D. Ariz. 1993) (defendant's threats of a lawsuit if plaintiff did not enter into a tolling agreement were admissible to reveal to the court what it perceives as retaliatory motive for filing the action, even though it was made in the context of a settlement discussion).

Finally, but perhaps most importantly, it needs to be appreciated that any such threats made by Mr. Clutton during any purported settlement conference have now come to pass. Fisher-Price has, in fact, ceased doing business with plaintiffs. That is a fact—not a threat arguably made in the context of a settlement discussion. As such, plaintiffs should be free to fully develop such fact at trial since any such action is totally independent of any statements made during the course of any such settlement discussion.

## CONCLUSION

For the foregoing reasons, plaintiffs respectfully request that the Court deny defendant's motion to strike in all respects, and for such other and further relief as the Court deems just and proper

Dated: Norwalk, Connecticut
March 5, 2004

Respectfully Submitted,

GRIMES & BATTERSBY, LLP

By: /s/ Jessica L. Elliott
Gregory J. Battersby (Bar No. 7386)
Edmund J. Ferdinand, III (Bar No. 21287)
Russell D. Dize (Bar No. 23064)
Jessica L. Elliott (Bar No. 24871)
488 Main Avenue, Third Floor
Norwalk, Connecticut 06851-1008
(p) (203) 849-8300
(f) (203) 849-9300
Attorneys for Plaintiffs Victor G. Reiling Associates and Design Innovation, Inc.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing Memorandum of Law in Opposition to Defendant's Motion to Strike has been served upon defendant Fisher-Price, Inc., on this 5th day of March 2004, via U.S. Mail, First Class, postage prepaid, to:

Bradford S. Babbitt, Esq.
Michael J. Kolosky, Esq.
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, CT 06103-3597

Robert J. Lane, Jr., Esq.
Jodyann Galvin, Esq.
HODGSON RUSS LLP
One M&T Plaza, Suite 2000
Buffalo, New York 14203-2391

_____
Russell D. Dize

Case 3:03-cv-00222-JBA   Document 58   Filed 03/05/2004   Page 7 of 10

Get a Document - by Citation - 2002 U.S. Dist. LEXIS 2404                    Page 1 of 4

Service: Get by LEXSEE®
Citation: 2002 U.S. Dist. LEXIS 2404

*2002 U.S. Dist. LEXIS 2404, **

JAMES LIAUTAUD, Plaintiff, v. GENERATIONXCELLENT, INC., CHRISTOPHER CASEY, MICHAEL CASEY, and PAUL LEWAKOWSKI, Defendants.

Case No. 00 C 6365

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

2002 U.S. Dist. LEXIS 2404

February 15, 2002, Decided

**DISPOSITION:** [*1] Defendants' motion to dismiss Count I of First Amended Complaint denied.

### CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff brought an action that included count I, which sought to allege violations of § 10(b) of the Securities Exchange Act of 1934, found at 15 U.S.C.S. § 78j(b), § 20(a) of the Securities Exchange Act of 1934, found at 15 U.S.C.S. § 78t(a), and Rule 10b-5, found at 17 C.F.R. § 240.10b-5. Defendants moved to dismiss all counts of plaintiff's first amended complaint. The court addressed the motion to dismiss with respect to count I.

**OVERVIEW:** Plaintiff alleged that he explicitly demanded proof supporting defendants' material statements and was informed that there was no substantiation. Defendants argued that the allegations concerning substantiation had to be stricken because they were based on statements and conduct in compromise negotiations and, used in this manner, violated Fed. R. Evid. 408. The basis for this argument was that plaintiff's demand for substantiation came in a letter his counsel sent to defendants shortly before suit was filed. The court found that it was clear from the wording of the letter that it was not an offer to compromise, and that it was not made in compromise negotiations. There were no negotiations. Defendants never responded to the letter. Even if the letter was read as an offer to compromise, plaintiff's allegations concerning the lack of substantiation also rested on a telephone conversation, and there was no evidence that anyone to the telephone conversation suggested that it was a settlement discussion. The substantiation allegations, if true, could have easily been proven independently of the challenged letter and telephone call. They accordingly were not stricken.

**OUTCOME:** The motion to dismiss count I of the first amended complaint was denied.

**CORE TERMS:** substantiation, negotiation, offer to compromise, settlement, substantiate, telephone conversation, motion to dismiss, telephone call, court pointed, misrepresentations, discoverable, inadmissible, scienter, stricken, legend, discovery

### LexisNexis (TM) HEADNOTES - Core Concepts - ♦ Hide Concepts

Securities Law > Bases for Liability > Private Securities Litigation
*HN1* ± Under the Private Securities Litigation Reform Act of 1995, a plaintiff is required to state with particularity facts giving rise to a strong inference that the defendant

acted with the requisite state of mind. 15 U.S.C.S. § 78u-4(b)(2). More Like This Headnote

Evidence > Relevance > Compromise & Settlement Negotiations
HN2 Compromise negotiations are not unilateral. More Like This Headnote

Evidence > Relevance > Compromise & Settlement Negotiations
HN3 Fed. R. Evid. 408 states plainly that otherwise discoverable evidence is not excluded merely because it was presented in the course of compromise negotiations. Rule 408 does not permit a party to immunize relevant evidence from admissibility merely because it was discussed in a settlement negotiation. More Like This Headnote

**COUNSEL:** For JAMES LIAUTAUD, plaintiff: Jeffrey J. Bushofsky, McDermott, Will & Emery, Chicago, IL.

For GENERATIONXCELLENT INC., CHRISTOPHER CASEY, MICHAEL - CASEY, PAUL LEWAKOWSKI, defendants: Jeffry Mark Henderson, Mark M. Lyman, Michael David Sefton, Henderson & Lyman, Chicago, IL.

**JUDGES:** JOAN B. GOTTSCHALL, United States District Judge.

**OPINIONBY:** JOAN B. GOTTSCHALL

**OPINION: MEMORANDUM OPINION AND ORDER**

Defendants have moved to dismiss all counts of plaintiff's First Amended Complaint. Because Count I of the First Amended Complaint seeks to allege violations of sections 10(b) and 20(a) of the Securities Exchange Act of 1934, as well as Rule 10b-5, the motion to dismiss that count has the effect of staying all discovery in this action pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"). In order to get this case off first base, the court addresses the motion to dismiss as it respects Count I and for reasons set forth below, denies that portion of the motion. A decision on the remaining parts of the motion will be forthcoming. [*2]

As the court determined in its order of July 6, 2001, plaintiff's allegations concerning the misrepresentations made to him were sufficient to satisfy the standards of Rule 9(b), F.R.Civ.P. What was insufficient, in the court's view, were plaintiff's allegations of scienter. HN1 Under the PSLRA, the plaintiff is required to "state with particularity facts giving rise to a strong inference that the defendant acted with the requisite state of mind." 15 U.S.C. § 78u-4(b)(2). The only allegation in the original complaint arguably satisfying this requirement was the allegation that defendants were unable to substantiate the various representations they made to plaintiff. Plaintiff failed, however, to set forth any factual basis for the allegation that defendants were unable to substantiate their various representations to him. Indeed, as the court pointed out, plaintiff failed even to allege that he had *requested* substantiation.

Plaintiff's First Amended Complaint cures the problem the court pointed out. He now alleges that a month before filing this action, he explicitly demanded proof supporting defendants' material statements and was informed that there was [*3] no substantiation. In the court's view, these new allegations give rise to a strong inference of scienter, because it is virtually inconceivable that the statements were true or that defendants could have believed they were true in the absence of some documentation substantiating them.

Case 3:03-cv-00222-JBA    Document 58    Filed 03/05/2004    Page 9 of 10

Get a Document - by Citation - 2002 U.S. Dist. LEXIS 2404                                    Page 3 of 4

Defendants do not challenge this concept at this juncture. Rather, they argue that the allegations concerning substantiation must be stricken under Rule 12(f) as "redundant, immaterial, impertinent, or scandalous" because they are based on statements and conduct "in compromise negotiations" and, used in this manner, violate Rule 408, F.R. Evid. The basis for this argument is that plaintiff's demand for substantiation came in a letter his counsel sent to defendants shortly before suit was filed (Ex. A to the First Amended Complaint), and that the letter stated at its top, "For Settlement Purposes Only." Plaintiff's counsel has informed the court that this legend was placed on the letter to ensure that defendants would not interpret plaintiff's demand for a refund as the limit of their potential liability. This explanation makes considerable sense, but in addition, it is clear from the substantiation [*4] statement itself that it is not an offer to compromise, but rather a demand and an ultimatum. The letter, in pertinent part, states, "Please substantiate your client's representations with any contemporaneous documents (e.g., correspondence from the investment banking firms, offer letters, etc.). Otherwise, I can only conclude that the representations were false and that my client is entitled to the remedies provided by federal and Illinois law relating to securities fraud and consumer protection." See *Zapata Hermanos Sucesores, S.A. v. Hearthside Baking Co.*, 2000 U.S. Dist. LEXIS 17959, 2000 WL 1809988 (N.D.Ill. Dec. 11, 2000), *1 (No. 99 C 4040) ("But as Zapata describes the parties' discussions antedating the lawsuit, those were not within the purview of Evidence Rule 408 at all. For one thing, they were not really compromise negotiations--instead they were collection efforts."); *Ullmann v. Olwine, Connelly, Chase, O'Donnell & Weyher*, 123 F.R.D. 237, 242 (S.D. Ohio 1987)(pre-filing communications of grievances and threats of litigation are not inadmissible under Rule 408). Not only is it clear from the wording of the letter that it is not an offer to compromise, but it is further [*5] clear that it was not made in compromise negotiations. There were no negotiations. Defendants never responded to the letter. HN2 Compromise negotiations are not unilateral. n1

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 The court need not address the issue of whether a party unilaterally attempting to open settlement negotiations risks having their statements used against them. Whatever plaintiff was attempting to do, defendants in this case were not engaged in compromise negotiations.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - -

Even if the letter, due to its legend, is read as an offer to compromise, plaintiff's allegations concerning defendants' lack of substantiation also rest on a telephone conversation, and there is no evidence that anyone to the telephone conversation suggested (or even intended) that it was a settlement discussion. Plaintiff alleges that his counsel, shortly before filing this suit, contacted defendants by telephone and "was informed that there was no substantiation." (First Amended Complaint, P15). Defendants argue that the complaint's allegations indicate that the telephone [*6] call was a follow-up to the letter and, because, they maintain, the letter was part of settlement negotiations, the telephone call takes on the letter's complexion and is inadmissible too. Since the court does not believe that the letter's request for substantiation and the defendants' failure to respond are barred by Rule 408, it is hardly inclined to strike the allegations concerning the subsequent telephone conversation.

Moreover, the parties' conversations and conduct relating to substantiation for the representations allegedly made by defendants to plaintiff are a paradigmatic case of otherwise discoverable evidence, explicitly made admissible by the terms of Rule 408. See *United States v. Hauert*, 40 F.3d 197, 200 (7th Cir. 1994). It cannot be disputed that if the parties had never discussed the issue of substantiation prior to the filing of the litigation, the first object of plaintiff's discovery in this case would be a request for substantiation of the alleged misrepresentations. HN3 Rule 408 states plainly that otherwise discoverable evidence

Case 3:03-cv-00222-JBA   Document 58   Filed 03/05/2004   Page 10 of 10

Get a Document - by Citation - 2002 U.S. Dist. LEXIS 2404                Page 4 of 4

is not excluded "merely because it was presented in the course of compromise negotiations." Rule 408 does not permit a [*7] party to immunize relevant evidence from admissibility merely because it was discussed in a settlement negotiation. The substantiation allegations, if true, can easily be proven independently of the challenged letter and telephone call. They accordingly will not be stricken.

Considering all the allegations of the First Amended Complaint, the court concludes that Count I satisfies both Rule 9(b) and the PSLRA and denies the motion to dismiss Count I of the First Amended Complaint.

ENTER:

JOAN B. GOTTSCHALL

United States District Judge

DATED: February 15, 2002

Service: Get by LEXSEE®
Citation: 2002 U.S. Dist. LEXIS 2404
View: Full
Date/Time: Friday, March 5, 2004 - 11:14 AM EST

* Signal Legend:
- Warning: Negative treatment is indicated
- Caution: Possible negative treatment
- Positive treatment is indicated
- Citing Refs. With Analysis Available
- Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

About LexisNexis | Terms and Conditions

Copyright © 2004 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.