UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

VICTOR G. REILING ASSOCIATES and
DESIGN INNOVATION, INC.,

        Plaintiffs,

v.

FISHER-PRICE, INC.,

        Defendant.

Civil No. 303CV222(JBA)

March 22, 2004

## FISHER-PRICE'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO STRIKE

### Introduction

Fisher-Price submits this reply memorandum of law in further support of its motion to strike all references to confidential settlement discussions between the parties from Victor G. Reiling Associates and Design Innovation, Inc.'s proposed Second Amended Complaint. Any statements made during a settlement meeting among the parties in September 2003, along with any follow-up discussions, are confidential and inadmissible under both Federal Rule of Evidence 408 as well as under the express written agreement between the parties that all such statements would be both confidential and inadmissible. Moreover, pursuant to Rules 8 and 12 of the Federal Rules of Civil Procedure, any references to Fisher-Price's termination of a business relationship with Design Innovation should be stricken because this gratuitous allegation neither supports nor relates to any cognizable cause of action, including plaintiffs' new proposed claim of tortious interference with business relations between Design Innovation and Reiling. Because these allegations are irrelevant and have been included solely in an effort to prejudice Fisher-Price, they must be stricken.

**Argument**

I. **ALL REFERENCES TO SETTLEMENT DISCUSSIONS OR STATEMENTS MADE IN FOLLOW-UP DISCUSSIONS MUST BE STRICKEN**

Plaintiffs have included in their proposed Second Amended Complaint references to Fisher-Price's statements regarding its inability to continue sending new work to Design Innovation unless the lawsuit was resolved. (Plaintiffs' Proposed Second Amended Complaint ¶¶ 40, 57.) Because these statements were made in the context of ongoing settlement discussions, they must be stricken. Plaintiffs argue that Fisher-Price's motion to strike should be denied because Fisher-Price's statements were not "offers of compromise" as contemplated by Federal Rule of Evidence 408. In support of this argument, plaintiffs contend that "unilateral" communications, demands or ultimatums do not qualify as protected compromise negotiations. (*See* Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Strike, dated March 5, 2004 ("Plaintiffs' Memo.") at 3-4.) Neither the facts surrounding the settlement discussions between the parties,[1] nor the scant case law cited by plaintiffs support their position that the discussions among the plaintiffs and Fisher-Price constituted anything but continuous, related settlement discussions. Accordingly, any discussions, comments, or statements made in the context of both the face-to-face settlement meeting and the follow-up discussions, must be protected under Federal Rule of Evidence 408.

---

[1] Plaintiffs' improper conduct in disclosing settlement negotiations has forced Fisher-Price to lay out, in response, the details regarding these settlement discussions between the parties in the Reply Declaration of Stan Clutton, dated March 16, 2004. Not only should the references to the negotiations be stricken from the Proposed Amended Complaint, but plaintiffs should not be permitted to use settlement negotiations for any future purpose; for example, plaintiffs should not be permitted to question Mr. Clutton regarding settlement negotiations or his declarations in support of this motion at his deposition or at trial.

-2-

Additionally, plaintiffs signed a written *agreement* in which they promised and represented that "any oral or written statements made in the context of the meeting *or any follow-up discussions among the parties*, are confidential, not subject to discovery, inadmissible and are made without prejudice to any claims or defenses." (*See* Declaration of Stan Clutton, dated February 18, 2004 (hereinafter "Clutton 2/18 Declaration"), Exhibit A (emphasis added).) The statements made by Mr. Clutton were an integral part of offers of compromise in the context of ongoing settlement discussions protected by Federal Rule of Evidence 408. Finally, contrary to the argument in plaintiffs' opposition papers, plaintiffs cannot demonstrate any "other purpose" for disclosing statements made in the context of settlement discussions. As a result, Fisher-Price's motion to strike should be granted.

### A. Statements by Mr. Clutton Were Offers of Compromise in Context of Settlement Discussions

Plaintiffs agreed in writing that the meeting on September 23, 2003 was being conducted for settlement purposes. Moreover, plaintiffs agreed that "the content of the meeting, including any oral or written statements made in the context of the meeting *or any follow-up discussions among the parties,* are confidential, not subject to discovery, inadmissible and are made without prejudice to any claims or defenses." Mr. Clutton asked that plaintiff "countersign [the letter] to confirm this agreement." (*See* Clutton 2/18 Declaration, Exhibit A.) Victor Reiling and Bruce Popek signed the letter on behalf of plaintiffs and returned it to Mr. Clutton. In the absence of an executed copy of the letter, Fisher-Price would not have agreed to meet with plaintiffs to discuss settlement in September 2003, nor would Fisher-Price have had any follow-up discussions regarding settlement with plaintiffs. (*See* Reply Declaration of Stan Clutton, dated March 16, 2004 (hereinafter "Clutton Reply Declaration") at ¶ 2.)

-3-

The parties did not reach a settlement in September 2003. There were significant follow-up discussions, however, including telephone conversations and e-mail correspondence in October and November, 2003. (*See* Clutton Reply Declaration ¶ 5.) On October 28, 2003, Mr. Popek of Design Innovation sent an e-mail to Stan Clutton of Fisher-Price regarding the continuation of ongoing settlement discussions. Mr. Popek made an offer for a "general agreement" related to settlement, and repeatedly referred to "settlement," "settling" and "offer." (Clutton Reply Declaration, ¶ 6, Exhibit A.) In continuing these ongoing settlement discussions, Mr. Clutton sent an e-mail to Bruce Popek of Design Innovation on November 7, 2003. The subject line of the e-mail is "***Your offer/Our Offer***" and refers to both "settlement" and "offer." The e-mail contained a specific dollar amount, which plaintiffs redacted in their opposition papers, that Fisher-Price offered to settle the case. (*See* Declaration of Bruce Popek, dated March 4, 2004, Exhibit A.) Plaintiffs' redaction of the monetary settlement offer from the November 7, 2003 e-mail illustrates their recognition that these were ongoing settlement discussions and that the status of Fisher-Price's future business with Design Innovation was inextricably linked to monetary offers of compromise.

These facts demonstrate that Mr. Clutton's statements that Fisher-Price might suspend sending new work to Design Innovation were made in the context of ongoing settlement discussions. These statements were neither demands nor an ultimatum. Nor were the discussions during which these statements were made "unilateral." The parties jointly agreed to participate in settlement discussions. Fisher-Price and plaintiffs exchanged specific monetary settlement proposals. It was only as an inextricable part of these cooperative, joint settlement discussions — pursuant to a confidentiality agreement signed by plaintiffs — that Mr. Clutton

-4-

indicated that Fisher-Price would likely not continue to send new projects to Design Innovation absent a settlement, but that it would do so if a settlement was reached.

The differences between the facts of the few cases cited by plaintiffs and the facts of this case make clear that the communications at issue here were mutual settlement discussions protected under Federal Rule of Evidence 408. For example, in *Raybestos Prods. Co. v. Younger*, 54 F.3d 1234 (7th Cir. 1995), the letter at issue was dated eight months ***prior*** to the filing of suit, and no settlement negotiations or discussions had been initiated. Moreover, the letter ***demanded*** payment of $240,000. *Id.* at 1240-41. In this case, the discussions were agreed to by all parties, were initiated seven months ***after*** plaintiffs filed suit and continued for several months. Fisher-Price did not "demand" any payment from plaintiffs; in fact, Fisher-Price offered ***to pay*** plaintiffs to settle their claims.

Plaintiffs' citation of *Liautaud v. Generationxcellent, Inc.*, 2002 U.S. Dist. LEXIS 2404 (N.D. Ill. Feb. 15, 2000), is similarly inapposite. In *Liautaud,* the court emphasized that the so-called settlement letter pre-dated the lawsuit and "was not made in compromise negotiations." *Id.* at *1. No such argument may be made here because the discussions at issue commenced after the lawsuit was filed and there was a clear continuity of settlement discussions among the parties.

Finally, neither *Raybestos* nor *Liautaud* involved a signed agreement that protected the discussion at a face-to-face meeting and any follow-up were settlement discussions. Plaintiffs' argument that the party-to-party discussions during fall 2003 were "purported" settlement discussions thus must be rejected, and the statements made in settlement negotiations must be stricken from the proposed Second Amended Complaint.

-5-

**B.   Plaintiffs Expressly Agreed to the Confidentiality and Inadmissibility of any Statements Made During Settlement Negotiations**

Aside from the protection afforded by Federal Rule of Evidence 408, Mr. Clutton's statements are confidential and inadmissible as a result of plaintiffs' September 2003 written agreement to maintain the confidentiality and inadmissibility of any statements made in the context of settlement discussions, as well as any follow-up discussions. In their papers opposing this motion, plaintiffs completely ignore this express agreement and make no response to the indisputable fact that they have violated a written and executed contract by disclosing Mr. Clutton's statements in their proposed amended complaint. Because they cannot deny the confidentiality and other obligations imposed on them by the September 2003 letter agreement, plaintiffs resort to mischaracterization, referring to the agreement as a "letter from Mr. Clutton to the plaintiffs." (Plaintiffs' Memo. at 1.) This is a misleading attempt to portray the September 2003 letter agreement as a unilateral communication from Fisher-Price to plaintiffs, instead of the jointly agreed contract — executed by plaintiffs — which it is. The September 2003 letter is a binding agreement between the parties — an agreement which plaintiffs flagrantly violated by including references to settlement discussions in their proposed Second Amended Complaint and by attaching an email about settlement negotiations to Mr. Popek's Declaration on this motion. None of the cases cited by plaintiffs involved a written contractual agreement affirming that the discussions, and any follow-up discussions, were settlement negotiations and were agreed to be confidential and inadmissible. This Court should enforce the parties' agreement, and plaintiffs should be barred from disclosing agreed-upon confidential and inadmissible statements.

-6-

### C. Plaintiffs Cannot Demonstrate Another Purpose for Disclosing the Statements in Their Proposed Second Amended Complaint

Finally, plaintiffs attempt to justify their disclosure of confidential settlement negotiations as being permitted under the "other purpose" exception of Federal Rule of Evidence 408.[2] They claim that "plaintiffs would still be entitled to use such statements for other purposes, including Fisher-Price's motive...." (Plaintiffs' Memo. at 4.) Plaintiffs do not even argue what Fisher-Price's "motive" relates to and fail to identify any other purpose for the disclosure or use of the communications made during the parties' settlement negotiations. Fisher-Price's motive would be relevant only if it was linked to a cognizable cause of action against Fisher-Price, which, as set forth below, it plainly is not.

The cases cited by plaintiffs do not support their use of statements made by Fisher-Price during settlement discussions, nor do they support inclusion of the irrelevant factual allegation relating to Fisher-Price's refusal to send new work to Design Innovation. *Starter Corp. v. Converse, Inc.*, 170 F.3d 286 (2d Cir. 1999) does not assist plaintiffs as it does not address "motive" at all. Rather, in *Starter Corp.*, the parties' settlement agreement and their settlement negotiations were introduced to prove claims of contractual and equitable estoppel. *Id.* at 294. No such claim can be made here as plaintiffs do not "need" the settlement negotiations to prove any of their claims, including as discussed below, their intentional interference claim.[3]

---

[2] Federal Rule of Evidence 408 provides that evidence of offers and attempts to compromise a claim are not admissible "to prove liability for the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible." Such evidence may be admissible, however, when "offered for another purpose."

[3] On this motion, Fisher-Price does not dispute that Fisher-Price's discontinuation of sending new projects to Design Innovation is a "fact." (*See* Clutton Declaration ¶ 9.) Fisher-Price is not arguing that the admissibility of this "fact" is barred by Federal Rules of Evidence 408 – merely that Fisher-Price's communications relative to this subject are protected. If plaintiffs could show that the fact that Fisher-

Footnotes continued on next page.

*Resolution Trust Corp. v. Blasdell*, 154 F.R.D. 675 (D. Ariz. 1993), is similarly unavailing. In *Resolution Trust Corp.*, the defendant sought to offer settlement negotiations to demonstrate plaintiffs' improper retaliatory motive in filing a claim against it. There is no claim here that Fisher-Price has improperly retaliated against Design Innovation by filing a claim against it — Fisher-Price has not asserted any counterclaims.

And, even if there were "another purpose" that plaintiffs could possibly accomplish by introducing settlement discussions (which there is not), use of the statements would nevertheless be barred by the express agreement signed by plaintiffs. Plaintiffs have failed to demonstrate that, in the face of such an explicit agreement, they should be permitted to disclose or make use of these statements.

### D. References to Fisher-Price's Termination of its Business Relationship with Design Innovation Must be Stricken as Immaterial and Prejudicial

Plaintiffs appear to contend that the content of the parties' settlement discussions is relevant to their tortious interference cause of action. As Fisher-Price argued in its initial memorandum on this motion (at page 36), however, Fisher-Price's decision to cease sending new work to Design Innovation is not actionable and does not relate even remotely to any pleaded cause of action. Fisher-Price's refusal to "maintain trade relations with any individual is an inherent right which every person may exercise lawfully, for reasons he deems sufficient or for no reasons whatever, and it is immaterial whether such refusal is based upon reason or is the

---

Footnotes continued from previous page.

> Price ceased doing business with Design Innovation was relevant and probative on an issue properly before the Court (which they cannot), it may be admissible. Fisher-Price's settlement communications on this issue are not.

result of mere caprice, prejudice or malice." *Turner Const. Co. v. Seaboard Sur. Co.*, 98 A.D.2d 88, 90, 469 N.Y.S.2d 725, 727 (1st Dep't 1983) (refusal to continue business relationship based on a prior dissatisfactory experience not actionable). ***This right extends even when the party severs business relations with another party who has sued it,*** and the "***practical effect was to exert pressure to discontinue [the] lawsuit.***" *House of Materials, Inc. v. Simplicity Pattern Co.*, 298 F.2d 867, 870 (2d Cir. 1962) (emphasis added). Fisher-Price was thus absolutely privileged to stop sending new work to Design Innovation at any time — and most certainly after Design Innovation had sued Fisher-Price. Plaintiffs apparently recognize this — they have not disputed in their papers on this motion that no cause of action can be based on Fisher-Price's decision to cease sending new work to Design Innovation.

Plaintiffs cannot save their improper allegations by mischaracterizing Fisher-Price's decision to suspend sending new projects to Design Innovations as a "threat" to "blackball" "blacklist" and "blackmail" Design Innovation. (Plaintiffs' Memo. at 2-3.) "Deliberately and at his pleasure, one may ordinarily refuse to deal with another, and the conduct is not regarded as improper, subjecting the actor to liability . . . There is no general duty to do business with all who offer their services, wares, or patronage . . . ." RESTATEMENT (SECOND) OF TORTS, § 166, comment b.[4] Rule 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief," (FED. R. CIV. P. 8) and Rule 12(f) authorizes the court to "strike from any pleading . . . any redundant, immaterial, impertinent or scandalous matter." FED. R. CIV. P. 12(f).

---

[4] *See also Zicos v. Telefood, Inc.*, 45 Misc.2d 64, 65, 256 N.Y.S.2d 152, 153 (Sup. Ct. Bronx Co. 1965) ("one who is not bound by contract or public duty has the right under ordinary conditions, to refuse to sell his property to, or to have dealings with, any other person, absolutely or conditionally, regardless of reason or motive"; dismissing refusal to deal claim) (citation omitted).

BFLODOCS 906218v1 (JF8Q01!.DOC)

Here, the allegation that Fisher-Price terminated its relationship with Design Innovation is not only irrelevant and immaterial, it is also prejudicial. *See Reiter's Beer Distrib., Inc. v. Christian Schmidt Brewing Co.*, 657 F. Supp. 136, 143-44 (E.D.N.Y. 1987) (striking irrelevant and prejudicial allegations). Accordingly, this allegation should be stricken from the proposed Second Amended Complaint.

**Conclusion**

For the foregoing reasons, Fisher-Price's motion to strike should be granted.

Dated: March 22, 2004

DEFENDANT FISHER-PRICE, INC.

By: _____
Bradford S. Babbitt
Federal Bar No.: ct13938
email: bbabbitt@rc.com
ROBINSON & COLE, LLP
280 Trumbull Street
Hartford, CT 06103-3597
tel. no.: (860) 275-8200
fax no.: (860) 275-8299

and

Robert J. Lane, Jr.
e-mail: rlane@hodgsonruss.com
Jodyann Galvin
e-mail: jgalvin@hodgsonruss.com
HODGSON RUSS LLP
One M&T Plaza, Suite 2000
Buffalo, New York 14023-2391
tel. no: (716) 856-4000
fax no.: (716) 849-0349

## CERTIFICATION

The undersigned hereby certifies that a copy of the foregoing Fisher-Price's Reply Memorandum in Support of Its Motion to Strike was mailed, first class postage prepaid, to the attorneys of record recited below on this 22nd day of March, 2004.

Gregory J. Battersby (Bar No. 07386)
Edmund J. Ferdinand, III (Bar No. 21287)
Russell D. Dize (Bar No. 23064)
488 Main Avenue, Third Floor
Norwalk, Connecticut 06851-1008
Phone: 203-849-8300
Fax: 203-849-9300

Bradford S. Babbitt