UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

VICTOR G. REILING ASSOCIATES and :
DESIGN INNOVATION, INC., :
:
            Plaintiffs, :    Civil No. 303CV222(JBA)
:
v. :
:
FISHER-PRICE, INC., :
:
            Defendant. :    March 29, 2004

## FISHER-PRICE'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY

### Preliminary Statement

Fisher-Price submits this memorandum of law in opposition to the motion by plaintiffs Victor G. Reiling Associates ("Reiling") and Design Innovation, Inc. ("Design Innovation") to compel discovery from Fisher-Price. Reiling and Design Innovation seek documents related to the submission of invention proposals by outside inventors to Fisher-Price. Because the documents plaintiffs seek are negotiated agreements Fisher-Price entered into with inventors who are not parties to this action regarding submissions and concepts which are unrelated to plaintiffs' submissions, they are entirely irrelevant to the issues in this action. Further, these documents cannot be used to demonstrate (as plaintiffs contend) "custom and practice" in the toy industry, because they reflect individualized agreements and payment decisions under specific, written agreements[1] not an industry-wide, standard practice which can

---

[1]    In any event, plaintiffs' position in this action is that they never had a written contract with Fisher-Price. This further establishes that their request for written contracts Fisher-Price entered into with other inventors seeks irrelevant documents.

be uniformly proven in order to explain a contract. Finally, disclosure of these documents would lead to multiple mini-trials during the trial of this case and would unnecessarily burden the Court with additional witnesses and documents unrelated to plaintiffs' submissions.

## Factual Background

Fisher-Price develops products in two ways: it has an internal design staff which designs toys and juvenile products, and it accepts submissions from selected outside inventors. (*See* Declaration of Stan Clutton in Opposition to Plaintiffs' Motion to Compel, dated March 26, 2004 ("Clutton Declaration") Tab 1 ¶ 4.) Submissions from outside inventors are generally first reviewed by Fisher-Price's Inventor Relations department. Then, if warranted, the submission may be forwarded for review by the appropriate Fisher-Price design team. When Fisher-Price selects a submission for further development, and potentially manufacture and sale to the public, Fisher-Price negotiates a formal license agreement with the outside inventor. The license agreement governs the rights and obligations of Fisher-Price and the outside inventor, including payment terms. (*See* Clutton Declaration, Tab 1 ¶¶ 5-6.)

Reiling and Design Innovation are independent toy inventors who claim that Fisher-Price misappropriated the submission of their "Reel Heroes" concept in 1998, 1999 and 2000. (*See* First Amended Complaint.) Plaintiffs' "Reel Heroes" concept was based on an already-existing and very successful line of Fisher-Price preschool action figures named "Rescue Heroes".

Neither Reiling nor Design Innovation have a license agreement with Fisher-Price related to their "Reel Heroes" submission. (*See* Clutton Declaration, Tab 1 ¶ 8.) Nevertheless,

-2-

on this motion, plaintiffs inexplicably seek documents relating to license agreements of other outside inventors where the outside inventor's submission resulted in a product offered for sale by Fisher-Price. Specifically, plaintiffs seek to compel the disclosure of:

> All documents that refer or relate to outside inventor submissions made to Fisher-Price from 1996 through 2000 that have resulted in or have been incorporated into commercialized products (*i.e.*, products offered for sale) by Fisher-Price including, but not limited to: (a) documents reflecting each such submission and the corresponding concept disclosure forms; (b) any option agreement or license agreement relating thereto; and (c) a sample of the final product or catalog page depicting the final product commercialized by Fisher-Price.

(Declaration of Russell D. Dize, dated March 3, 2004, ¶ 7.)

## Argument

### I. THE DOCUMENTS SOUGHT BY PLAINTIFFS ARE IRRELEVANT

#### A. Fisher-Price's Agreements With Other Inventors Are Not Relevant to Plaintiffs' Claims

Plaintiffs' request for documents relating to submissions by other outside inventors and related license agreements is patently overbroad and seeks immaterial and unnecessary information. Not surprisingly, plaintiffs cite no case law supporting their argument that they are entitled to discovery of information relating to other, non-party outside inventors.

To the contrary, courts considering this issue have ruled that a company's agreements with non-parties and how the company dealt with those parties are simply not discoverable. In *World Wrestling Federation Entertainment, Inc. v. William Morris Agency, Inc.*, 204 F.R.D. 263 (S.D.N.Y. 2001), a former client of a talent agency sought documents relating to the agency's other clients. The court ruled that the documents were not relevant:

-3-

> How is what happened to [defendant's other clients] relevant? Ordinarily, what is relevant in a breach of contract claim is the transaction between the parties to the contract. Ordinarily, contractual agreements between one of the contracting parties and third parties is irrelevant. . . . [T]he relevance standard for discovery is not unlimited. . . . [T]he treatment of one contracting party in the entertainment field does not really illuminate or is not really relevant to how another party in the entertainment field is treated. . . .

*Id.* at 265 (quoting Magistrate Judge's decision).

Numerous other courts have held that discovery of contracts with third parties should not be permitted. In *Seltel, Inc. v. Channel Communications, Inc.*, 122 A.D.2d 628, 505 N.Y.S.2d 628 (1st Dep't 1986), the defendant alleged that it was excused from performance under a contract by plaintiff's failure to perform. Defendant sought disclosure of "other purportedly similar contracts" to demonstrate plaintiff's failure to perform under other contracts. The appellate court rejected this request as overbroad because the "call[ed] for concomitant disclosures respecting plaintiff's performance under other contracts with other clients, which disclosures are neither material nor necessary." *Id.* at 629, 505 N.Y.S.2d at 630.

Similarly, in *Zohar v. Hair Club for Men, Ltd.*, 200 A.D.2d 453, 607 N.Y.S.2d 5 (1st Dep't 1994), the plaintiff alleged fraud and violation of the Civil Rights Law based on the unauthorized used of his image in a television commercial. Plaintiff sought "documents and information concerning other individuals who appeared in the program promoting the defendant's hair replacement products . . . including ***the amount of 'consideration, if any, they received*** . . . and whether these individuals 'signed releases for their appearance . . .'" *Id.* at 453, 607 N.Y.S.2d at 6 (emphasis added). The court struck the interrogatories as "irrelevant and overbroad," reasoning that:

-4-

> The disclosure sought therein, regarding other purportedly similar contracts between the defendant and other individuals who are not parties to the underlying action, has no bearing on the validity of the particular release executed by the plaintiff herein and *improperly requires concomitant disclosure respecting the defendant's performance under other contracts with other clients, which disclosures are neither material nor necessary, nor have the effect of sharpening the issues of trial.*

*Id.* at 453-54, 607 N.Y.S. at 6 (citations omitted and emphasis added).

Here, it cannot be disputed that the requested license agreements and other documents have no bearing on plaintiffs' claims and will most certainly not have the effect of "sharpening the issues" for trial. Rather, the requested disclosures will require unnecessary documents, will require concomitant discovery from Fisher-Price witnesses (and possibly non-party outside inventors), and require mini-trials about the circumstances relating to each non-party's product.

### B. Documents Relating to Other Outside Inventors Are Not Related to Fisher-Price's "Non-Use" Defense

As plaintiffs correctly acknowledge, Fisher-Price has consistently stated in defense of this action that it has not used plaintiffs' submissions. (*See* Declaration of Howard N. Bollinger in Opposition to Plaintiffs' Motion to Compel Discovery, dated March 25, 2004 ("Bollinger Declaration") Tab 2 ¶ 4.) On this motion, however, plaintiffs have distorted Fisher-Price's straightforward non-use defense, claiming that "[i]mplicit in this defense is an argument that . . . the products actually produced were not 'close enough' to plaintiffs' submission." (Memorandum of Law in Support of Plaintiffs' Motion to Compel Discovery ("Plaintiffs' Memo.") at 6.) This mischaracterization of Fisher-Price's non-use defense appears to be an attempt by plaintiffs to justify their request to examine other agreements to determine whether

-5-

other inventor submissions (not at issue here) were "close" or "not close" to the product ultimately manufactured.

"Not close enough," however, has never been a defense of Fisher-Price. (*See id.*) Instead, Fisher-Price's defense is that it did not make any use of plaintiffs' submission; *i.e.*, the Fisher-Price designers and outside consultants who designed the Rescue Heroes products at issue here did not make any reference to plaintiffs' submission in doing so, nor did they make use of the novel features (if any) of features of plaintiffs' submissions. The record is devoid of any proof that Fisher-Price referred to or used plaintiffs' submissions in designing the products at issue.[2] In any event, no amount of non-party discovery will assist plaintiffs in demonstrating that the claimed novel features of their submissions were used by Fisher-Price.

## C.    Even if Other Agreements Were Relevant, the Burden to Fisher-Price Outweighs Any Probative Value

Finally, even if other inventor agreements and related documents had some relevance to the claims or defenses here (which they do not), discovery should still not be compelled because of the undue burden it would impose. In denying a similar request, one court ruled:

---

[2] Plaintiffs' expert makes note of Fisher-Price's argument that "it is undisputed that Fisher-Price never used the concepts reflected on any of the three submissions submitted by plaintiffs" and states it is a central issue in the case. (*See* Declaration of James M. Kipling in Support of Plaintiffs' Motion to Compel Discovery, dated March 2, 2004 ("Kipling Declaration") ¶ 6.) Plaintiffs, and their expert on this motion, have offered no evidence demonstrating that Fisher-Price did, in fact, use the concepts reflected in their submissions. And, plaintiffs' expert could hardly make any representation about what the evidence reflects thus far. He testified at his deposition that he has not reviewed the testimony of witnesses in this case; nor has he reviewed any of the deposition exhibits in the context of witness testimony. (*See* Kipling Declaration, Exhibit B ("Documents Reviewed").)

> [T]he nature of the agreements that William Morris enters into and how those agreements are enforced, although it has some probative value, ***the probative value is so small that I don't think the burden of producing those documents and the concomitant discovery that that discovery would require justifies the discovery of those documents*** . . .

*World Wrestling Federation*, 204 F.R.D. at 265 (emphasis added).

If compelled to produce the requested documents, Fisher-Price will have to devote over two weeks just to locate responsive documents. (*See* Clutton Declaration, Tab 1 ¶ 9.) This burden can hardly be justified in light of plaintiffs' failure to articulate why this information could be relevant to their claims. The insufficiency of plaintiffs' articulated rationale for seeking these documents is discussed in detail below.

## II. THE DOCUMENTS SOUGHT BY PLAINTIFFS WILL NOT DEMONSTRATE CUSTOM IN THE INDUSTRY

Plaintiffs argue they are seeking information related to outside inventor submissions to show "custom and practice" in the toy industry. Plaintiffs claim that the "custom and practice" has been for a toy company to "compensate inventors and designers for the underlying concept in its various product line manifestations regardless of revisions, enhancements and changes made by the toy company subsequent to submission." (Kipling Declaration ¶ 8.) Plaintiffs also contend that they will use these documents to "demonstrate the extent to which Fisher-Price has considered past products offered for sale by the company to use be based on or influenced by concept submissions from outside toy inventors." (Kipling Declaration ¶ 9.) As discussed above, how Fisher-Price has treated other parties with whom it contracted in the past is legally irrelevant.

-7-

Moreover, plaintiffs bear the burden of establishing custom and practice. "The general function of usage and custom is definition, explanation, and elucidation of the meaning of contracts." 21A AM.JUR.2D *Customs and Usages* § 22. Here, plaintiffs have consistently taken the position that they have no written contract with Fisher-Price. In any event, to make use of "custom and practice" evidence to explain or define a contract, a plaintiff must demonstrate that the alleged custom "is a definite, uniform and known practice." *Anglo-Saxon Petroleum Co., Ltd., v. United States*, 222 F.2d 75, 77 (2d Cir. 1955) (finding no custom where witnesses did not testify about how prevalent practice was). *See also* 21A AM.JUR.2D *Customs and Usages* § 8 ("a custom or usage must be certain, continuous, and uniform"). And, even if a custom may be applicable (which it is not here), parties may contract to deviate from the custom. *See Encyclopaedia Britannica, Inc. v. SS Hong Kong Producer*, 422 F.2d 7, 17-18 n.10 (2d Cir. 1969) (noting custom, even if established, does not override stipulation of parties).

Here, plaintiffs attempted invocation of "custom and practice" is entirely unsupported. Plaintiffs do not seek to define, explain or elucidate a contract; nor are they attempting to supply a missing contract term. Rather, plaintiffs seek to support generalized, conclusory opinions about the practices of toy companies in accepting and developing submissions from outside inventors. This is not a proper use of custom evidence. And, even if it were, custom and practice would not apply here because the documents plaintiffs seek to discover are unique license agreements, and the associated determinations of whether payment is due were made on a case-by-case basis in accordance with specific license agreement terms.

A.  **Fisher-Price's Royalty Obligations to Other
    Outside Inventors Are Governed
    by Particular License Agreements**

Fisher-Price products which are based on outside inventor submissions are always the subject of formal license agreements, negotiated on a case-by-case basis. (*See* Clutton Declaration, Tab 1 ¶ 6.) Fisher-Price's payments to outside inventors are governed by the specific terms of each license agreement. (*See id.* ¶ 7, *see also* Bollinger Declaration, Tab 2 ¶ 5.) Thus, regardless of how "different" a final, commercialized Fisher-Price product may be from the outside inventor's original submission, this evidence would not show anything about an alleged "custom and practice" in the toy industry. Rather, this evidence would show (at most) Fisher-Price's interpretation of its obligations under specific license agreements and its fulfillment of those obligations. Assuming that there was a "custom and practice" (which there is not), the existence of individualized licensed agreements vitiates any claimed "custom and practice" because the parties to an agreement may contract to deviate from a custom. *See Encyclopaedia Britannica*, 422 F.2d at 17-18, n.10.

Plaintiffs have repeatedly argued and admitted that they have no written contracts or agreements governing payment of royalty for use relating to any of their submissions.[3] In these circumstances, it cannot be disputed that the submissions and products which are the subject of express license agreements with non-party inventors could bear no relationship to plaintiffs' claims.

---

[3]  For example, plaintiffs' originally sued for breach of express contract. (*See* Complaint ¶¶ 34-40.) In their First Amended Complaint, however, plaintiffs eliminated their breach of express contract claim and proceeded with a claim of breach of implied contract. (*See* First Amended Complaint ¶¶ 34-40.)

-9-

### B. The Practices of One Industry Participant Cannot Demonstrate Custom and Practice

In addition to claiming that the documents relating to non-party inventor submissions will establish custom and practice in the industry, plaintiffs claim that the documents will also "demonstrate the extent to which Fisher-Price has considered past products offered for sale by the company to use, be based on or influenced by concept submissions from outside toy inventors." (Kipling Declaration ¶ 8.)

The requested documents (even if relevant, which they are not) could not, as plaintiffs contend, establish any custom or practice in the toy industry: "The practice of one company... is generally insufficient to establish a trade usage." *See British Int'l Ins. Co. Ltd. v. Seguros La Republica, S.A.*, 342 F.3d 78, 84 (2d Cir. 2003) (rejecting plaintiff's attempt to use "industry custom and practice") (citing *Encyclopaedia Britannica*, 422 F.2d at 18). The proper way to show custom and practice in the industry is for experts or others to testify about widespread accepted practices which are invariable in the industry. That is clearly not what plaintiffs will attempt to do here.

### C. Review of Outside Inventor Submissions and Agreements Would Require a Series of Mini-Trials

Finally, the discovery plaintiffs seek, and the manner in which they claim they will use the information, will turn the trial of this matter into a series of mini-trials about the circumstances underlying a large number of non-party inventor submissions. The issues in these mini-trials would not be limited to questioning about Fisher-Price's decisions to pay or not pay outside inventors. *See World Wrestling Federation*, 204 F.R.D. at 265 (acknowledging that disclosure of talent agency's contracts with other clients would also require additional discovery

-10-

beyond agreements themselves). Rather, this would require examination of specific license agreement or other contractual provisions which govern Fisher-Price's decision to pay each non-party inventor. In addition, this would require introduction of evidence regarding the chronology of development of each of the Fisher-Price toys based on outside inventor submissions. (*See* Bollinger Declaration, Tab 2 ¶ 6.)

While the documents requested may or may not ultimately be voluminous, the testimony of numerous Fisher-Price designers, managers and legal personnel, as well as the outside inventors themselves, could be required as to each product and the governing agreement. (*See* Clutton Declaration, Tab 1 ¶ 7.) Moreover, the parties would be required to prove the differences and similarities between the inventor's submission and the final product, which could also require the services of additional expert witnesses. Subjecting the jury to a number of mini-trials relating to non-party inventor submissions that are not at issue in this case would be totally inappropriate and would be a waste of the resources of the Court as well as the parties.[4]

---

[4] Moreover, plaintiffs' proposed use of non-party contracts and related documents may force Fisher-Price to mount a defense using other inventor contracts where a product "close" to the one submitted was produced, but no payment was made. Clearly, plaintiffs' tactics here would lead to the parties moving far afield from the heart of the dispute.

## Conclusion

For the foregoing reasons, plaintiffs' motion to compel discovery should be denied.

Dated: March 29, 2004

                                        **DEFENDANT FISHER-PRICE, INC.**

                                        By: _____
                                        Bradford S. Babbitt
                                        Federal Bar No.: ct13938
                                        email: bbabbitt@rc.com
                                        Michael J. Kolosky
                                        Federal Bar No.: ct22686
                                        email: mkolosky@rc.com
                                        **ROBINSON & COLE, LLP**
                                        280 Trumbull Street
                                        Hartford, CT 06103-3597
                                        Tel. no.: (860) 275-8200
                                        Fax no.: (860) 275-8299

                                        and

                                        Robert J. Lane, Jr.
                                        Federal Bar No.: ct24598
                                        e-mail: rlane@hodgsonruss.com
                                        Jodyann Galvin
                                        Federal Bar No.: ct24599
                                        e-mail: jgalvin@hodgsonruss.com
                                        **HODGSON RUSS LLP**
                                        One M&T Plaza, Suite 2000
                                        Buffalo, New York 14023-2391
                                        Tel. no: (716) 856-4000
                                        Fax no.: (716) 849-0349

## CERTIFICATION

The undersigned hereby certifies that a copy of the foregoing was sent by facsimile and mailed, first class postage prepaid, to the attorneys of record recited below on this 29th day of March, 2004.

Gregory J. Battersby (Bar No. 07386)
Edmund J. Ferdinand, III (Bar No. 21287)
Russell D. Dize (Bar No. 23064)
488 Main Avenue, Third Floor
Norwalk, Connecticut 06851-1008
Phone: 203-849-8300
Fax: 203-849-9300

Michael J. Kolosky