UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

VICTOR G. REILING ASSOCIATES and
DESIGN INNOVATION, INC.,

           Plaintiffs,

v.

FISHER-PRICE, INC.,

           Defendant.

Civil No. 3:03CV222(JBA)

April 8, 2004

**REPLY DECLARATION IN FURTHER SUPPORT
OF FISHER-PRICE'S MOTION TO COMPEL**

ERWIN HETZELT, III, under penalty of perjury and pursuant to 28 U.S.C. § 1746, declares the following is true and correct:

1. I am the Manager of Purchasing for Fisher-Price, Inc. ("Fisher-Price"), defendant in this action. I make this declaration in further support of Fisher-Price's motion to compel the production of documents related to Design Innovation, Inc.'s ("Design Innovation") work on Fisher-Price's Rescue Heroes line of toys.

2. Fisher-Price's counsel has advised me that Bruce P. Popek of Design Innovation has submitted an affidavit stating that Fisher-Price should produce all purchase orders and work orders related to work commissioned by Fisher-Price from Design Innovation.

3. As manager of purchasing, I oversee Fisher-Price's purchasing activities at its East Aurora, New York facilities. My duties include supervising the issuance of purchase orders covering design work that is contracted to parties outside of Fisher-Price. In addition, I

oversee the proper generation and execution of design service agreements, which are agreements under which an outside designer agrees: (1) to perform work on a "work-for-hire" basis at an hourly rate or per project basis; and (2) that Fisher-Price owns all work produced thereunder and does not owe any royalties to the outside designer. A copy of Design Innovation's design services agreement is attached as Exhibit A.

4.  Fisher-Price regularly hires outside parties to provide certain design work. For outside design engagement, the manager for the department or team at Fisher-Price responsible for engaging the outside designer submits a requisition to generate a purchase order. For some outside design engagements, Fisher-Price issues a blanket purchase order number, and those outside designers reference that same purchase order number the entire year for each and every assignment it is engaged to work on and which it does complete. In addition to the blanket purchase order, the outside designer was also issued for each assignment an individual release order referred to as a "purchase authorization form" ("PAF").[1] It is likely that Design Innovation was issued a blanket purchase order number for each of the years during which it received work assignments from Fisher-Price, and that within each year Design Innovation was issued PAFs for each assignment.

5.  Until October 2002, all purchase order forms and PAFs were maintained manually. Up to that time, the purchasing department retained a copy of each purchase order form and PAF. However, these physical purchase order forms and PAFs have been archived in

---

[1] In October 2002, Fisher-Price switched to the Oracle electronic system to generate individual release orders referred to as "work order requisitions." PAFs have not been generated since October 2002.

Fisher-Price's retention areas. After October 2002, Fisher-Price switched to an electronic purchasing system for storing and maintaining all post-October 2002 purchase order forms and PAFs.

      6.     To produce Design Innovation's purchase order forms and PAFs from January 1997 through the present, a person would have to manually review the purchasing department files to locate all copies of each purchase order and PAFs issued for Design Innovation. Cartons of purchase order forms and PAFs that are likely to contain Design Innovation's forms would then have to be located and retrieved from Fisher-Price's retention areas. It would take several days before the cartons could be made available to the purchasing department. Upon delivery to the purchasing department, a person would have to physically match each purchase order form and PAFs. Although the cartons are loosely organized alphabetically and by year, Fisher-Price has contracted out thousands of work assignments to outside designers. The time and expense of locating Design Innovation's purchase order forms and PAFs issued from January 1997 through the present and copying them will be very burdensome.

Dated:     April _8_, 2004

                                                    Erwin Hetzelt, III

BFLODOCS 914916v2 (JLYC02!.DOC)

## **CERTIFICATION**

The undersigned hereby certifies that a copy of the foregoing Reply Declaration in Further Support of Motion to Compel was mailed, first class postage prepaid, to the attorneys of record recited below on this 12th day of April, 2004.

Gregory J. Battersby (Bar No. 07386)
Edmund J. Ferdinand, III (Bar No. 21287)
Russell D. Dize (Bar No. 23064)
488 Main Avenue, Third Floor
Norwalk, Connecticut 06851-1008
Phone: 203-849-8300
Fax: 203-849-9300

_____
Bradford S. Babbitt

# AGREEMENT FOR DESIGN SERVICES

This Agreement is between FISHER-PRICE, INC. ("FISHER-PRICE"), having a place of business at 636 Girard Avenue, East Aurora, New York 14052 and Design Innovation, Inc.    #137634

_____ ("DESIGNER"), having a place of business at Greystone Court West, 573 Hopmeadow Street, Simsbury, CT 06070

### 1.0   WORK STATEMENT
DESIGNER is hereby commissioned to provide the design and/or art services described in Appendix A of this Agreement. Services will be provided by DESIGNER in accordance with and subject to the terms and conditions stated in this Agreement and as specified in written supplements to this Agreement signed by both FISHER-PRICE and DESIGNER.

### 2.0   FEES
2.1   In consideration for the services to be provided during the period of this Agreement, FISHER-PRICE will pay DESIGNER the fees specified in Appendix A and in written supplements to this Agreement.

2.2   If fees are to be computed on the basis of an hourly rate for DESIGNER's employees working on the project, DESIGNER shall submit an invoice to FISHER-PRICE on a monthly basis for services rendered. The invoice submitted shall include a detailed statement of the number of hours worked by each person during the billing period.

### 3.0   EXPENSES
If fees to be paid under paragraph 2.1 are to include only personal services at an hourly rate or daily rate for each employee working on the project, FISHER-PRICE will reimburse DESIGNER for all reasonable business expenses incurred in direct support of work to be done under this Agreement providing, however, that DESIGNER must first receive prior authorization from FISHER-PRICE for any such expenditure. DESIGNER shall submit a detailed invoice to FISHER-PRICE for any authorized expenses incurred.

### 4.0   TERM AND TERMINATION
This Agreement shall have a term of INDEFINITELY (__) months commencing JANUARY 1995 ("Effective Date") unless earlier terminated by FISHER-PRICE on thirty (30) days written notice.

### 5.0   SUPPLEMENTS
Written supplements will constitute the only authorization for DESIGNER to take any action or to expend money beyond the scope of the service already specified in this Agreement, and must be in sufficient detail to define the task and the type of service to be provided by DESIGNER. All such supplements shall be deemed to incorporate by reference this Agreement and shall so specify. The supplements shall also specify:

5.1   A detailed description of the services to be performed.
5.2   The location where the services are to be performed.
5.3   The identity of the persons performing the services.
5.4   The fees to be paid.
5.5   The date by which FISHER-PRICE desires the services to begin.
5.6   The date by which FISHER-PRICE requires the services to be completed.

### 6.0   PROJECT SUPERVISION
6.1   DESIGNER's employees shall work at FISHER-PRICE's direction according to the project description in Appendix A of this Agreement.

6.2   If this Agreement is terminated by FISHER-PRICE under paragraph 4.0 of this Agreement, FISHER-PRICE agrees to pay any authorized cost or uncancellable obligation incurred by DESIGNER which relates to the cancelled services, but in no case are such payments to exceed the maximum authorized charge for those services.

### 7.0   MAILING ADDRESS
Invoices to FISHER-PRICE and notices to either party shall be sent to the addresses on page 1 hereof or to such addresses as the parties may from time to time designate by written notice.

### 8.0   PERFORMANCE OF SERVICES
The services to be performed by DESIGNER under this Agreement shall proceed with promptness and diligence and shall be executed to FISHER-PRICE's satisfaction.

### 9.0   INDEPENDENT CONTRACTOR'S OBLIGATIONS
9.1   DESIGNER's status shall be that of an independent contractor and not that of a servant, agent or employee of FISHER-PRICE. Further, no employee of DESIGNER shall be regarded to be an employee of FISHER-PRICE for any purpose, including tax purposes.

9.2   DESIGNER shall cause its employees and agents to observe the working hours, working rules, security regulations, and holiday schedules of FISHER-PRICE while working on FISHER-PRICE's premises, and to perform their respective duties in a manner which does not interfere with FISHER-PRICE's business and operations.

9.3   DESIGNER shall secure any licenses and/or permits required for the proper performance of the services, paying the fees therefor, and shall take all necessary precautions to assure the safety of its employees who are engaged in the

performance of the services and of all equipment and supplies used in connection therewith.

9.4   DESIGNER shall at its own expense comply with all applicable workmen's compensation, unemployment insurance, employer's liability, minimum wage, and other federal, state, county and municipal laws, ordinances, rules, regulations, and orders.

9.5   DESIGNER agrees to abide by applicable federal, state and municipal safety and health laws and any regulations pursuant thereto.

9.6   DESIGNER shall not cause or permit any part of the services to be provided hereunder to be performed by any third party or independent contractor (hereafter "Third Party") except upon receipt of FISHER-PRICE's prior written consent, and delivery to FISHER-PRICE of said Third Party's written agreement to be bound to DESIGNER by terms for FISHER-PRICE'S benefit which are equivalent to the terms of paragraphs 9.7, 10.1, 10.2, 10.3, 10.4 and 11.0 of this Agreement, and all remaining paragraphs hereof with respect to said Third Party's participation and work. Notwithstanding delivery of said document, DESIGNER shall remain liable for said third party's compliance with the terms of the Third Party Agreement and with all applicable portions of this Agreement including, if necessary, receipt from said Third Party and delivery to FISHER-PRICE of duly executed assignments of rights as required pursuant to said Third Party Agreement and paragraph 10.4 hereof. All references herein to DESIGNER's employees or agents shall be read as applicable to all Third Parties if the circumstances require.

9.7   DESIGNER warrants and represents that it is sole owner of all right, title and interest in and to any works delivered to or incorporated in items provided to FISHER-PRICE hereunder except as otherwise disclosed and consented to by FISHER-PRICE in writing, and that it has full right, power and authority to enter into this Agreement and carry out the terms hereof. DESIGNER warrants and represents that to the best of DESIGNER's knowledge, information and belief the commercialization of any work product provided hereunder and commercial use of the DESIGNER's services, including the development, manufacture, promotion, distribution and sale of products based thereon would not infringe any third party rights, including but not limited to, patent, trademark, copyright, trade secret or design rights.

9.8   DESIGNER represents and warrants that neither DESIGNER nor its employees have any conflicting relationships with any former or present clients or employers which would prevent DESIGNER or its employees from performing the services and carrying out the obligations specified in this Agreement.

## 10.0   CONFIDENTIAL AND PROPRIETARY INFORMATION AND INTELLECTUAL PROPERTY

10.1   In order for DESIGNER to perform the services required hereunder, FISHER-PRICE may find it necessary to disclose to DESIGNER certain confidential information, including information relating to FISHER-PRICE's proprietary product designs and business plans. FISHER-PRICE may also contribute proprietary modifications, inventions, enhancements and improvements to DESIGNER's work product. For purposes of this Agreement, all such confidential information and contributions shall hereafter be referred to as Proprietary Information.

10.2   With respect to said Proprietary Information, DESIGNER and FISHER-PRICE hereby agree as follows:

a.   DESIGNER will treat in strictest confidence and in a manner adequate to protect trade secret rights any of FISHER-PRICE's Proprietary Information whether disclosed by FISHER-PRICE or obtained by DESIGNER from FISHER-PRICE during the course of its work for FISHER-PRICE hereunder, or otherwise, including the fact that the DESIGNER's services relate to certain types of toys or products, and DESIGNER will not disclose any such Proprietary Information to third parties, and will use such Proprietary Information only to the extent necessary to perform services for FISHER-PRICE, and will not use any such Proprietary Information for any other purpose whatsoever without FISHER-PRICE's written permission.

b.   DESIGNER will obligate those of its employees or any Third Parties having access to Proprietary Information to protect it against unauthorized use and to maintain such information in strict confidence by means adequate to protect FISHER-PRICE's trade secrets and other rights therein.

c.   FISHER-PRICE's confidential information which is to be regarded as excluded from the above restrictions concerning Proprietary Information is any information which:
- At the time of disclosure is the subject of a general publication or otherwise is in the public domain.
- After disclosure becomes known to the general public through no fault of DESIGNER.
- Prior to disclosure, was already lawfully in DESIGNER's possession from a permitted source, or subsequent to disclosure is obtained from a third party who is lawfully in possession of said information, and is not subject to a contractual or fiduciary obligation imposed on DESIGNER or any third party in an earlier relationship with FISHER-PRICE.

d.   Upon FISHER-PRICE's request, DESIGNER agrees to return to FISHER-PRICE all FISHER-PRICE documents, records or other tangible items containing said Proprietary Information, to certify the destruction of any notes or other records in DESIGNER's possession, written or electronic, containing the confidential Proprietary Information, and to acknowledge that neither DESIGNER nor any of its employees or Third Parties have any ownership thereof.

10.3   Since it is not FISHER-PRICE's desire to be afforded access to confidential information which belongs to DESIGNER or to any third party, DESIGNER agrees that any information which DESIGNER supplies to FISHER-PRICE shall not be subject to an obligation of confidence and FISHER-PRICE shall not be liable for any use or disclosure of such information.

10.4   Any copyrightable works provided by DESIGNER to FISHER-PRICE pursuant to this Agreement or incorporated into any works as aforesaid, shall be deemed specially commissioned works made for hire to the extent provided by law. If any such works shall be determined not to be works made for hire, DESIGNER agrees and does hereby assign all rights in said works to FISHER-PRICE. DESIGNER does hereby assign all rights to any other intellectual property, which arises out of work performed under this Agreement, to FISHER-PRICE, and shall execute any and all documents and provide any information

requested by FISHER-PRICE for the purpose of obtaining patent, copyright, trademark, other mark, trade dress, mask works or other intellectual property protection for FISHER-PRICE thereon. Therefore, as the owner of this intellectual property, FISHER-PRICE is free to use any and all works of authorship, concepts, designs, drawings, inventions and improvements thereon, software, schematics, masks, manuals and additional documents and works made by DESIGNER or Third Party for FISHER-PRICE pursuant hereto or incorporated into the works or work products provided to FISHER-PRICE hereunder (collectively referred to as "Intellectual Property"), and at no time are there to be any contingent or continuing fees (such as royalties, commissions, or profit participation) payable by FISHER-PRICE to DESIGNER or Third Party for the use of such work product by FISHER-PRICE.

**11.0  PUBLICITY**

DESIGNER shall not issue or release for publication any articles or advertising or publicity matter relating to the services performed or work product to be delivered hereunder, or mentioning or implying the name of FISHER-PRICE or any FISHER-PRICE personnel, unless prior written consent is granted by FISHER-PRICE.

**12.0  CHOICE OF LAW**

This Agreement shall be constructed in accordance with the laws of the State of New York, except for its Conflict of Laws doctrine, and both parties agree that personal jurisdiction will be proper only in New York State and venue will be proper only in the courts located in Erie County, New York.

**13.0  RIGHT TO AUDIT**

DESIGNER shall maintain complete records of all costs reimbursable by FISHER-PRICE under this Agreement. All such records shall be maintained in accordance with recognized accounting practices. FISHER-PRICE shall have the right, through its accredited representatives, to examine and audit such records at all reasonable times.

**14.0  SEVERABILITY**

If any provision, or portion thereof, of this Agreement is invalid under applicable statute or rule of law, it is only to that extent to be deemed omitted.

**15.0  ENTIRE AGREEMENT**

This Agreement constitutes the entire agreement between FISHER-PRICE and DESIGNER with respect to the subject matter hereof and shall not be amended or modified without specific written provision to that effect, signed by both parties. No oral statement of any person shall, in any manner or degree, modify or otherwise affect the terms and provisions of this Agreement.

**16.0  SURVIVAL**

Upon termination of this Agreement, the obligations set forth in paragraphs 10.0 and 11.0 shall survive.

**17.0  ASSIGNMENT**

This Agreement may be freely assigned without consent to an entity which assumes substantially all of the business of FISHER-PRICE, INC. including all of the obligations pursuant to this Agreement. Such assignment shall effect a novation.

DESIGNER may not assign this Agreement.

IN WITNESS WHEREOF, the parties hereto have duly executed and delivered this Agreement on the date set forth below.

The signatures below are those of individuals fully authorized to sign for or on behalf of the parties.

| DESIGNER | FISHER-PRICE, INC. |
|---|---|
| By: _[signature]_ | By: _[signature]_ |
| Printed Name: BRUCE BENEDETTO | Printed Name: MATTH THEODORAL |
| Title: VICE PRESIDENT | Title: Purchasing Agent |
| Date: 12-19-94 | Date: 1/3/95 |

**NOTE:** Any work performed by a third party for DESIGNER must comply with the terms of this Agreement, especially Paragraph 9.6 hereof.

# FISHER-PRICE, INC.
# APPENDIX A

.This Appendix is not an independent agreement, but is an integral part of and is necessarily subject to all of the terms and conditions contained in the Agreement For Design Services between FISHER-PRICE, Inc. ("FISHER-PRICE") and _____ ("DESIGNER") to which it is attached.

1.  NAME OF PROJECT:   As per individual Project Authorization form.

2   FEES ARE TO BE CHARGED AT HOURLY RATE OF: *$50.- MODELS   $60.- SCULPTING   $70.- DESIGN*

3.  MAXIMUM AUTHORIZED AMOUNT IS:   As per individual Project Authorization form.

4.  SERVICES TO BE PERFORMED AS EXPLAINED TO DESIGNER BY PRODUCT DESIGN MANAGER ARE:
    As per individual Project Authorization form.

5.  SERVICES TO COMMENCE ON:   As per individual Project Authorization form.

6.  SERVICES TO BE COMPLETED ON: DATE SPECIFIED BY PRODUCT DESIGN MANAGER
    As per individual Project Authorization form.

7.  WORK PRODUCT SHALL CONSIST OF   as per individual Project Authorization form.

    AND IS TO BE DELIVERED ON:   As per individual Project Authorization form.

8.  PROJECT SUPERVISION AND CONTACT WITH FISHER-PRICE:

9.  LOCATION WHERE SERVICES ARE TO BE PERFORMED:

    DESIGNER'S PLACE OF BUSINESS:



RECEIVED JAN - 3 1995 By_____

   DESIGNER acknowledges that in the event a different fee is subsequently arranged between DESIGNER and FISHER-PRICE with respect to any or all of the services or work product resulting from services hereunder, no such agreement shall be binding until it becomes the subject of an appropriate written agreement executed by both parties.