# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

VICTOR G. REILING ASSOCIATES and
DESIGN INNOVATION, INC.,

        Plaintiffs,

v.

FISHER-PRICE, INC.,

        Defendant.

Civil No. 303CV222(JBA)

April 8, 2004

## REPLY DECLARATION IN FURTHER SUPPORT
## OF FISHER-PRICE'S MOTION TO COMPEL

TYLER BERKHEISER, under penalty of perjury and pursuant to 28 U.S.C. § 1746, declares the following is true and correct:

1. I am the Manager of Design, Boys' Team for Fisher-Price, Inc. ("Fisher-Price"), defendant in this action. I make this declaration in further support of Fisher-Price's motion to compel the production of documents related to Design Innovation, Inc.'s ("Design Innovation") work on the Rescue Heroes line of toys.

2. As Manager of Design, Boys' Team, I am responsible for developing new concepts and bringing concepts to physical form, *i.e.*, modeling, detailing, color, and form. From time to time, Fisher-Price hires outside contractors to construct certain materials, primarily foam models and sculptures, according to design specifications as provided by Fisher-Price. This work is typically performed on a "work-for-hire" basis, with the result that all work product belongs to Fisher-Price. Design Innovation was hired on this basis by Fisher-Price to make sculptures (and possibly drawings) for certain original Rescue Heroes toys.

## Fisher-Price Discloses the Product Line to Outside Contractors

3.  Fisher-Price's counsel has advised me that Bruce P. Popek of Design Innovation has submitted an affidavit stating that Fisher-Price frequently does not disclose to Design Innovation whether it is working on a Rescue Heroes project or some other project. Set forth below is a description of how Fisher-Price identifies work assignments for outside design engagements.

4.  When hiring outside contractors for such work, it is necessary to identify for the outside contractor the ultimate project for which the contractor's sculpture will be used so that the outside contractor will create the best sculpture possible to conform with the ultimate product or product-line. For example, it would be practically impossible for an outside contractor to create a model to fit with Fisher-Price's Rescue Heroes line of toys without knowing the assigned work was for Rescue Heroes. This is because Rescue Heroes toys are distinguished from other action figures by three prominent features: (1) they are approximately seven inches tall, broad and heavy with large feet so they stand up reliably, and made out of molded plastic so that their construction is much heavier than most action figures; (2) the individual characters for the Rescue Heroes line have "rescue" identities - such as a firefighter, a police officer, a scuba diver, a paramedic, etc.; and (3) each of the figures comes with a backpack molded to relate to the figure's character (e.g., the firefighter's backpack looked like oxygen tanks, the paramedics carried medical equipment, etc.).

5.  Rescue Heroes toys are intended to appeal to boys over 3 years of age. Therefore, if work was assigned, for example, to an outside contractor to create a Dalmatian dog model, the outside contractor would have to know whether the Dalmatian dog ultimately was

intended for the Little People line of toys, which are intended for a younger age group, are smaller in scale, and which figures do not have moving appendages, or for the Rescue Heroes line of toys. While the working name might not have been specific to each character or toy within the product line (*i.e.* the working name probably did not identify that the assignment was for the "Billy Blazes" character within Rescue Heroes), the working name would have included enough information for the outside contractor to have to know that it was for the Rescue Heroes line of toys. The outside contractor work assignments thus have working names that are identifiable to a product line.

6. Another important reason why outside work assignments are clearly identifiable to a product line is for proper accounting. When Fisher-Price engages an outside party for work, the outside contractor completes the work assignment and thereafter forwards its own invoice to Fisher-Price's accounts payable department for payment on that assignment. The accounts payable department then identifies which department or team assigned the outside work, charges the invoice to that team, and forwards the invoice to the person within that department or team whose position it is to sign off on the invoice (*i.e.*, confirm that the work was done and should be paid for). If, for example, the working name on the outside contractor's invoice was identified solely as "Dalmatian dog," the accounts payable department would not know which team or department was responsible for assigning the outside work and the accounts payable department would not know who to forward the invoice to for proper authorization.

7. Any outside work on Rescue Heroes products assigned to Design Innovation would have come from the boys team, and it would have been communicated to Design Innovation that the assignment was ultimately intended for Rescue Heroes.

## Retention of Outside Contractors' Work by Fisher-Price

8.   Fisher-Price's counsel has also advised me Fisher-Price requested documents to all of Design Innovation's work related to Rescue Heroes, and that Bruce Popek's affidavit stated that Design Innovation could not efficiently conduct its search without a production of documents by Fisher-Price relating to that same request. As set forth below in the description of Fisher-Price's retention of outside engagement work products, Fisher-Price does not have much of the materials Fisher-Price has requested from Design Innovation.

9.   Once the outside contractor completes an assignment and submits its work products, Fisher-Price generally retains and stores sculptures or foam models only until a subsequent plastic model is constructed by Fisher-Price or the project is complete. For line products, all submissions are generally archived for at least some time. Part of maintaining the archives involves periodically going over the items in the archive, and determining whether an item might possibly remain useful to the team, or if it is repetitive or for other reasons would not be useful to my team. In such latter cases, the items are discarded to make space for future models. In general, once a product based on the archived sculpture is released to the public, those sculptures are discarded. Often, they are maintained from six months to one year. Once discarded, no records of the models are kept. However, it would be expected that outside contractors, like Design Innovation, would keep photographs or drawings of their work products.

10.   Generally, drawings by outside contractors, unlike models and sculptures which go to a central archive, are maintained, if at all, by individual members of the team. Each member of the team determines whether a drawing would remain useful, or if it was repetitive or for some other reason would not be useful. Such repetitive or unuseful drawings were discarded.

Dated:    April 8, 2004

_____
Tyler Berkheiser

## CERTIFICATION

The undersigned hereby certifies that a copy of the foregoing Reply Declaration in Further Support of Motion to Compel was mailed, first class postage prepaid, to the attorneys of record recited below on this 12th day of April, 2004.

Gregory J. Battersby (Bar No. 07386)
Edmund J. Ferdinand, III (Bar No. 21287)
Russell D. Dize (Bar No. 23064)
488 Main Avenue, Third Floor
Norwalk, Connecticut 06851-1008
Phone: 203-849-8300
Fax: 203-849-9300

Bradford S. Babbitt