IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

---------------------------------------------------------x
:
VICTOR G. REILING ASSOCIATES and    :
DESIGN INNOVATION, INC.             :        3:03 CV 222 (JBA)
:
v.                                  :
:
:
FISHER-PRICE, INC.                  :        DATE: APRIL 27, 2004
---------------------------------------------------------x

## RULING ON PLAINTIFFS' MOTION TO COMPEL AND ON DEFENDANT'S MOTION TO COMPEL

      Victor G. Reiling Associates and Design Innovations, Inc. ["Design Innovation"] [collectively "plaintiffs"] commenced this action on February 3, 2003 (Dkt. #1) and on May 1, 2003, plaintiffs filed their First Amended Complaint (Dkt. #16), alleging the following five counts against defendant, Fisher-Price, Inc.: breach of implied-in-fact contract (First Count); misappropriation of a novel concept (Second Count); unfair competition in violation of the Connecticut Unfair Trade Practices Act, CONN. GEN. STAT. §§ 42-110a, et seq. and common law (Third and Fourth Counts); and an accounting to determine lost revenue on plaintiffs' novel idea (Fifth Count). On May 15, 2003, defendant filed its Answer and affirmative defenses to plaintiffs' First Amended Complaint. (Dkt. #20).

      On March 3, 2004, plaintiffs filed their Motion to Compel and brief in support (Dkts.

##48-49),[1] as to which defendant filed its brief in opposition (Dkt. #66)[2] on March 29, 2004. On April 12, 2004, plaintiffs filed their reply brief. (Dkt. #67).[3]

On March 3, 2004, defendant also filed its pending Motion to Compel and brief and affidavit in support. (Dkts. ##50-52).[4] Plaintiffs filed their brief and affidavits in opposition on March 24, 2004. (Dkts. ##63-65).[5] On April 12, 2004, defendant filed its reply brief and two affidavits in support. (Dkts. ##68-70).[6]

United States District Judge Janet Bond Arterton referred this lawsuit to this United

---

[1] Attached to plaintiffs' Motion are the following: affidavit of James M. Kipling, to which his expert report is attached as Exh. A; and affidavit of Russell D. Dize ["Dize Affidavit"], dated March 3, 2004, to which five exhibits are attached: copy of Plaintiffs' Second Request for Production of Documents, dated December 16, 2003 (Exh. A); copy of Defendant's Responses and Objections to Plaintiffs' Second Request for Production (Exh. B); and copies of correspondence between counsel, dated February 19, 25 & 26, 2004(Exhs. C-E).

A copy of case law is attached to plaintiffs' brief.

[2] Attached is an affidavit of Stan Clutton ["Clutton Affidavit"](Exh. 1) and an affidavit of Howard N. Bollinger ["Bollinger Affidavit"](Exh. 2) with a copy of his curriculum vitae (Exh. 2-A) and expert report (Exh. 2-B).

[3] Attached is another copy of Bollinger's expert report (Exh. A).

[4] Attached as Exh. A to defendant's brief is a copy of case law.

Attached to defendant's affidavit are the following four exhibits: copy of defendant's Second Request for the Production of Documents, dated January 5, 2004 (Exh. A); copy of Plaintiff Design Innovation's Responses and Objections to Defendant's Second Request for Production of Documents, dated February 4, 2004 (Exh. B); and copies of correspondence, dated February 20 & 26, 2004 (Exhs. C-D).

[5] The first four exhibits attached to another Dize Affidavit, this one dated March 24, 2004, were identical to those attached to defendant's affidavit (Exhs. A-D), see note 4 supra; Exh. E is a copy of defendant's Responses and Objections to Plaintiffs' Second Request for Production, dated January 27, 2004.

[6] Attached to the affidavit of Erwin Hetzelt, III (Dkt. #69) is a copy of the Agreement for Design Services entered into by Fisher-Price, Inc. and Design Innovation, Inc. (Exh. A).

States Magistrate Judge for discovery purposes on March 8, 2004. (Dkt. #59).

For the reasons stated below, plaintiffs' Motion to Compel (Dkt. #48) is <u>denied</u> and defendant's Motion to Compel (Dkt. #50) is <u>granted in part and denied in part</u>.

### I. DISCUSSION

"[T]he scope of discovery under Federal Rules of Civil Procedure 26(b) is very broad, encompassing any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." <u>Maresco v. Evans Chemetics, Div. of W.R. Grace & Co.</u>, 964 F.2d 106, 114 (2d Cir. 1992)(citation & internal quotations omitted).  Specifically, discovery extends to "any matter, not privileged, that is relevant to the claim or defense of any party. . . . " FED. R. CIV. P. 26(b)(1).  Thus, the party receiving a request must not only produce information which is admissible as evidence, but also information which "appears reasonably calculated to lead to the discovery of admissible evidence."  <u>Martin v. Valley National Bank of Arizona</u>, 140 F.R.D. 291, 300 (S.D.N.Y. 1991)(citations omitted). "Reasonably calculated" in Rule 26 means "any possibility that the information sought may be relevant to the subject matter of the action." <u>Morse/Diesel, Inc. v. Fidelity & Deposit Co. of Maryland</u>, 122 F.R.D. 447, 449 (S.D.N.Y. 1988)(citations & internal quotations omitted).  Discovery, however, is not without limitations and this Court has a duty to ensure that discovery requests are reasonable. FED. R. CIV. P. 26(b)(2); <u>In re: Sur. Ass'n of Am.</u>, 388 F.2d 412, 414-15 (2d Cir. 1967).

#### A. PLAINTIFFS' MOTION TO COMPEL

On or about December 16, 2003, plaintiffs served their Second Request for Production of Documents to Defendant Fisher-Price in which plaintiffs requested, in Requests Nos. 19-22, that defendants produce "certain documents related to concept submissions made to [d]efendant by outside toy inventors that ultimately resulted in

commercialized products." (Dkt. #48, Dize Affidavit, ¶¶ 2-3 & Exh. A, at 8; Dkt. #49, at 3). On January 27, 2004, defendant objected to these Requests on grounds that such requests are "overbroad, unduly burdensome and . . . seek[ ] irrelevant information. . . ." (Dkt. #48, Dize Affidavit, ¶ 4 & Exh. B, at 9-10; Dkt. #49, at 4). Six days later, Judge Arterton held a status conference during which this discovery dispute was discussed. (Dkt. #48, Dize Affidavit, ¶ 5; Dkt. #49, at 4).

On February 19, 2004, plaintiffs' counsel corresponded with defense counsel in an attempt to resolve this dispute (Dkt. #48, Dize Affidavit, ¶ 7 & Exh. C; Dkt. #49, at 4-5) and in such correspondence, plaintiffs consolidated their Request to include the following:

> All documents that refer or relate to outside inventor submissions made to Fisher-Price from 1996 through 2000 that have resulted in or have been incorporated into commercialized products (i.e. products offered for sale) by Fisher-Price, including, but not limited to: (a) documents reflecting each such submission and the corresponding concept disclosure forms; (b) any option agreement or license agreement relating thereto; and (c) a sample of the final product or a catalog page depicting the final product commercialized by Fisher-Price.

(Dkt. #48, Dize Affidavit ¶ 7 & Exh. C; Dkt. #49, at 4. See also Dkt. #48, Dize Affidavit, ¶¶ 8-9 & Exhs. D-E; Dkt. #49, at 5).

On March 3, 2004, plaintiffs filed the pending Motion to Compel asserting that the Requests for Production are relevant and material, as one of defendant's defenses is that defendant did not use plaintiffs' concepts and thus plaintiffs are entitled to review past submissions made by outside inventors to defendant, any resulting agreements, and the final products that defendant ultimately commercialized (Dkt. #49, at 6); the documents will demonstrate that the custom and practice in the industry has been to compensate inventors and designers for the underlying concept in its various product line manifestations regardless of revisions, enhancements and changes made by the toy company subsequent

4

to submission (id. at 8); the documents will demonstrate the extent to which defendant has considered past products offered for sale by the company to use, be based on or influenced by concept submissions from outside toy inventors (id.); and the Requests are limited only to products that were actually commercialized and are limited to outside inventor submissions made by defendant during a specific five year period of time. (Id. at 9). Plaintiffs argue that past submissions, resulting agreements, and the final products ultimately commercialized have "probative value as to the extent to which [d]efendant has considered past products that it has commercialized to 'read on' the corresponding concept submissions from outside inventors." (Dkt. #48, Dize Affidavit, ¶ 10).

Defendant contends that "these documents cannot be used to demonstrate . . . 'custom and practice' in the toy industry because they reflect individualized agreements and payment decisions under specific, written agreements" (Dkt. #66, at 1)(footnote omitted); defendants' agreements with other inventors are not relevant to plaintiffs' claims (id. at 3-5); documents relating to other inventors are not related to defendant's "non-use" defense (id. at 5-6); even if other agreements were relevant, the burden to defendant outweighs any probative value as defendant will have to devote over two weeks just to locate the responsive documents (id. at 6-7); and the documents sought by plaintiffs will not demonstrate custom in the industry (id. at 7-11).

Plaintiffs counter that the "agreements are only one of three categories" requested and such documents are sought "because [p]laintiffs are only interested in documents related to inventor submissions on which a royalty was ultimately paid." (Dkt. #67, at 2). Further, "as a compromise, [p]laintiffs would be prepared to accept the requested agreements with the financial terms redacted" and in the event that the Court determines that "[p]laintiffs are not entitled to these requested agreements, [p]laintiffs request that

5

[d]efendant at least provide written assurances that the documents produced relate to outside inventor submissions on which a royalty was paid by Fisher-Price." (Id. at 2-3).

The issue in this litigation is whether defendant incorporated plaintiffs' concepts and after doing so, failed to pay plaintiffs a royalty. For purposes of this motion, the Court will accept plaintiffs' premise that "concept submissions made to toy companies by outside inventors are routinely changed by the time finished products incorporating the concept are ultimately offered for sale by the toy company." (Dkt. #49, at 2). However, it is not custom and practice that determines the payment of a royalty to the inventors for the use of the inventors' concept or for products based on or influenced by the concept; rather, according to defendant, the payment of the royalty is determined on a case-by-case basis after a review of a submission results in its selection for further development, and possibly manufacture and sale at which time defendant negotiates an individualized license agreement. (Dkt. #66, Clutton Affidavit, ¶¶ 5-7; Bollinger Affidavit, ¶¶ 5-7). Plaintiff Design Innovation never entered into a licensing agreement with defendant for the product at issue and because of the individualized nature of the licensing agreement process, the only relevant concept submission and resulting agreement or lack thereof, is that of plaintiffs.[7] (See Dkt. #66, at 2; Clutton Affidavit, ¶ 8)

As previously indicated, plaintiffs argue that the requested documents will demonstrate "the extent to which [d]efendant has considered past products that it has

---

[7]Moreover, plaintiffs' position is inconsistent as discussed in Section II.B. Specifically, plaintiffs contend that the projects upon which the inventors work are often not "readily apparent" in the ultimate products. (See Dkt. #63, at 4-5; but see Dkt. #68, at 7-8; Dkt. # 70). Thus, production of documents submitted by inventors, copies of agreements or even assurances by defendants that the documents produced relate to submissions on which a royalty was paid, and according to plaintiffs' own assertions, samples of the ultimate commercialized product will not clearly establish that a concept has been incorporated into the final product, deserving of a royalty payment.

6

commercialized . . . " (Dkt. #49, at 6) because past "commercialization" of prior concepts can be used to attack defendants' non-use defense (id. at 7-8). However, plaintiffs' request is overbroad as it encompass all products commercialized by defendant, production of such documents would place an undue burden on defendant, and such documents are irrelevant to whether plaintiffs' submissions were incorporated into the final product. Therefore, plaintiffs' Motion to Compel (Dkt. #48) is denied.

### B. DEFENDANT'S MOTION TO COMPEL

On January 5, 2004, defendant served its Second Request for the Production of Documents on plaintiff Design Innovation seeking, inter alia,

> Any documents that reflect, refer, or relate to any work done by plaintiffs relating to Rescue Heroes figures, animals, accessories, vehicles, or play sets from January 1997 through the present, including, without limitation, project books, purchase orders, invoices, time sheets, billing records, calendar entries, sketches, photographs, notes and memorandum.

(Dkt. #51, at 2; Dkt. #52, at 1 & Exh. A; Dkt. #65, Exh. A, Request No. 2). On February 4, 2004, plaintiff Design Innovation objected to this Request on grounds that "it is unduly burdensome, unreasonable, oppressive," and irrelevant. (Dkt. #52, at 2 & Exh. B, at 3; Dkt. #65, Exh. B, at 3). Thereafter, on February 20, 2004, defense counsel corresponded with counsel for plaintiff Design Innovation to address plaintiffs' responses to Requests Nos. 1, 3, 4 & 21. (Dkt. #52, at 2 & Exh. C; Dkt. #65, Exh. C). Six days later, counsel for Design Innovation informed defendant that his client had produced all documents responsive to Requests No. 1 & 3. (Dkt. #52, Exh. D; Dkt. #65, Exh. D). Plaintiff Design Innovation also reiterated its objection to producing documents responsive to Request No. 2 but agreed to produce

> documents related to the work it has done on the Voice Tech Video Mission Rescue Heroes from January 1997 through the present, to the extent that any such documents exist, provided that, in order to facilitate this exchange

of information, [defendant] provides copies of all purchase orders and work orders pertaining to [plaintiff] Design Innovation for the relevant time period.

(Dkt. #52, Exh. D, at 2; Dkt. #65, Exh. D, at 2).

On March 3, 2004, defendant filed the pending Motion to Compel, contending that plaintiff Design Innovation should be compelled to produce all documents related to its work on Rescue Heroes because defendant's own alleged access to any requested information is not relevant (Dkt. #51, at 4-5); documents related to plaintiff Design Innovation's work on Rescue Heroes products are directly relevant to plaintiffs' claims and defendant's defenses (id. at 5-6); and plaintiff Design Innovation's claim of burden must be rejected since defendant narrowly tailored its request to Rescue Heroes and to a specific time frame of seven years (id. at 6-7).[8]

Plaintiff Design Innovation has offered to produce documents, if defendant provides purchase and work orders related to work commissioned by defendant from plaintiff since plaintiff often does not know which project it is working on, the assignments often only have working names, and the ultimate product is often not readily apparent.  (Dkt. #63, at 4-5). Plaintiff Design Innovation further argues that it is "a small company with limited resources . . . [which] pales in comparison to Fisher-Price" and that having the purchase orders and work orders from defendant would enable plaintiff "to conduct the search of its files accurately and expeditiously." (Id. at 6).  Plaintiffs further contend that these documents are not relevant. (Id. at 6-7).[9]

---

[8]Defendant avers that while it has produced more than 3500 documents, plaintiff Design Innovation was produced "a mere 62 pages of documents in discovery."  (Dkt. #52, ¶ 9).

[9]A collateral issue is whether the discovery requests are limited to the Voice Tech Video Mission Rescue Heroes, at issue in the First Amended Complaint, or the additional fifteen products at issue in plaintiffs' Motion for Leave to File a Second Amended

In its reply brief, defendant reiterated that the requested documents are directly relevant to plaintiffs' claims and defendant's defenses (Dkt. #68, at 2-3), that plaintiff Design Innovation's claim of burden must be rejected because its inefficient record-keeping system is not an adequate excuse to frustrate discovery (id. at 4-5), and that it would be equally burdensome for defendant to retrieve all purchase orders forms and purchase authorization forms for outside designer engagements because such documents were maintained manually prior to October 2002. (Id. at 5-9; Dkt. #69, ¶¶ 4-6).

The documents are relevant and plaintiffs' request for assistance from defendant appears reasonable in light of the circumstances under which the commissioned inventors work. (See Dkt. #64, ¶¶ 3-5). Both sides have argued that they will have difficulty in retrieving documents. With one modification, the compromise suggested by plaintiffs is an efficient use of the parties' time and will foster more accurate and thorough compliance with defendant's discovery requests -- in light of the change in the retention policies of defendant since October 2002, defendant shall produce the limited orders easily accessible in its electronic purchasing system from October 2002 through present and plaintiffs are obligated to recover all responsive documents January 1997 through September 2002, as requested. Defendant shall comply **on or before May 10, 2004**, and plaintiffs shall comply **on or before May 28, 2004**.

## II. CONCLUSION

---

Complaint, which is opposed by defendant and is pending before the Court. (Dkts. ##36-37, 42-45, 53-57. See also Dkts. ##40-41, 58, 61-62).

Should plaintiffs' Motion for Leave to File a Second Amended Complaint be granted, plaintiff Design Innovation has agreed to produce additional responsive documents relative to these additional products. (Dkt. #51, at 3 & n.1; Dkt. # 63, at 3; Dkt. # 65, ¶ 7).

9

Accordingly, for the reasons stated in Section II.A. above, plaintiffs' Motion to Compel (Dkt. #48) is <u>denied</u> and for the reasons stated in Section II.B. above, defendant's Motion to Compel (Dkt. #50) is <u>granted in part and denied in part</u>.[10]

<u>See</u> 28 U.S.C. § 636(b)**(written objections to ruling must be filed within ten days after service of same);** FED. R. CIV. P. 6(a), 6(e) & 72; Rule 2 of the Local Rules for United States Magistrate Judges, United States District Court for the District of Connecticut; <u>Small v. Secretary, H&HS</u>, 892 F.2d. 15, 16 (2d Cir. 1989)**(failure to file timely objection to Magistrate Judge's recommended ruling may preclude further appeal to Second Circuit).**

Dated at New Haven, Connecticut, this 27th day of April, 2004.

_____/s/_____
Joan Glazer Margolis
United States Magistrate Judge

---

[10] If any counsel believes a settlement conference before this Magistrate Judge would be productive, he or she should contact Chambers accordingly.