UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

VICTOR G. REILING ASSOCIATES and
DESIGN INNOVATION, INC.,

Plaintiffs,

- against -

FISHER-PRICE, INC.,

Defendant.

Index No.: 3:03 CV 222 (JBA)

May 17, 2004

## OBJECTION TO RULING ON PLAINTIFFS' MOTION TO COMPEL

Plaintiffs, Victor G. Reiling Associates ("Reiling") and Design Innovation, Inc. ("DI") (collectively, "Plaintiffs"), respectfully object to the Magistrate Judge's recommended ruling, dated April 27, 2004, denying Plaintiffs' Motion to Compel.[1]  Plaintiffs have requested documents from Fisher-Price that refer or relate to outside inventor submissions made to Fisher-Price from 1996 through 2000 that have resulted in commercialized products, including: (1) the documents submitted by the inventor; (2) option agreements or license agreements relating to the submission; and (3) a sample of the ultimate product commercialized by Fisher-Price (or a catalog page depicting the product).  The Magistrate Judge has ruled that it would be unduly burdensome for Fisher-Price to produce these documents and that the documents are not relevant to the claims at issue in this case.

Plaintiffs submit that the requested documents are highly relevant, specifically with regard to their implied-in-fact contract claim, as made clear by the leading Second Circuit case on the issue, *Nadel v. Play-By-Play Toys & Novelties, Inc.*, 208 F.3d 368, 377 (2d Cir. 2000).

---

[1] Plaintiffs do not object to the portion of the Magistrate Judge's ruling granting Defendant's Motion to Compel in limited part.

The requested documents will demonstrate toy industry custom and practice, which is one factor that is considered in determining if the parties formed an implied-in-fact contract. As discussed more fully below, Fisher-Price and its parent company Mattel are such large players in the U.S. Toy Industry, specifically within the pre-school market, that their custom and practice is, to a large extent, industry custom and practice. The requested documents will also demonstrate the parties' expectations at the time Plaintiffs submitted their concept to Fisher-Price. In view of *Nadel*, the Magistrate Judge's ruling was clearly erroneous and contrary to the existing law of the Second Circuit with respect to implied-in-fact contract claims. Fed. R. Civ. P. 72(a).

In addition, Plaintiffs submit that it would not be unduly burdensome for Fisher-Price, a subsidiary of one of the world's largest toy companies, to produce the requested documents, which are limited in scope and duration. For the following reasons, Plaintiffs object to the Magistrate Judge's recommended ruling and respectfully request that their Motion to Compel be granted.

## I.   PROCEDURAL BACKGROUND

Plaintiffs served a Second Request for Production of Documents to Defendant Fisher-Price on December 16, 2003. (Declaration of Russell D. Dize in Support of Plaintiffs' Motion to Compel Discovery, dated March 3, 2004 ("Dize Dec.") ¶ 2, Exh. A). As part of their Second Request for Production of Documents, Plaintiffs requested that Defendant produce certain documents related to concept submissions made to Defendant by outside toy inventors that ultimately resulted in commercialized products. (*Id.* ¶ 3). Requests 19 through 22 of Plaintiffs' Second Request for Production of Documents pertain to these documents. (*Id.*, Exh. A). Specifically, Plaintiffs made the following requests:

Request No. 19

    All documents that refer or relate to concept submissions made to Fisher-Price since January 1, 1998, including, but not limited to, all concept disclosure forms.

Request No. 20

    All agreements between inventors and Fisher-Price executed since January 1, 1998, including, but not limited to, all option agreements.

Request No. 21

    For each concept submission that is responsive to Request #19 herein, samples and photographs of the final product introduced by Fisher-Price.

Request No. 22

    For each agreement that is responsive to Request #20 herein, samples and photographs of the final product introduced by Fisher-Price.

(*Id.*, Exh. A).

On January 27, 2004, Defendant objected to each of these requests. (*Id.* ¶ 4, Exh. B). Specifically, Defendant objected to these requests as overbroad, unduly burdensome and as seeking irrelevant information which is not likely to lead to the discovery of admissible evidence. (*Id.*, Exh. B at 9-10). The same objection was raised to each of the four requests for production outlined above. (*Id.*)

On February 2, 2004, the Court conducted a Status Conference during which this discovery dispute was discussed. (*Id.* ¶ 5). Specifically, counsel for Defendant indicated that the requested documents were not relevant to any of the defenses raised by Defendant. (*Id.*) However, on February 11, 2004, during a telephone conversation with Robert J. Lane, Jr., lead counsel for the Defendant, Mr. Lane confirmed that one of Defendant's defenses in this action is that it did not use Plaintiffs' concept – that the concept is not included in any of Defendant's current products. (*Id.* ¶ 6).

On February 19, 2004, counsel for Plaintiffs wrote to counsel for the Defendant in an attempt to resolve the discovery dispute. (*Id.* ¶ 7, Exh. C). In an effort to resolve the dispute, Plaintiffs consolidated the four disputed discovery requests into one revised, narrowed request. (*Id.*) Plaintiffs narrowed the request by limiting it only to products that were actually commercialized (*i.e.*, offered for sale) by Defendant, and by further limiting it to outside inventor submissions made to Defendant during a specific five year period of time. (*Id.*) Specifically, Plaintiffs' made the following consolidated request:

> All documents that refer or relate to outside inventor submissions made to Fisher-Price from 1996 through 2000 that have resulted in or have been incorporated into commercialized products (*i.e.*, products offered for sale) by Fisher-Price, including, but not limited to: (a) documents reflecting each such submission and the corresponding concept disclosure forms; (b) any option agreement or license agreement relating thereto; and (c) a sample of the final product or a catalog page depicting the final product commercialized by Fisher-Price.

(*Id.*, Exh. C).

On February 25, 2004, counsel for Plaintiffs again wrote to counsel for the Defendant in an attempt to resolve the discovery dispute, requesting confirmation that Defendant would produce documents responsive to the consolidated request. (*Id.* ¶ 8, Exh. D). On February 26, 2004, counsel for Defendant responded and indicated that Defendant maintained its previous objections with respect to the consolidated request. (*Id.* ¶ 9, Exh. E).

Plaintiffs filed their Motion to Compel on March 3, 2004 and Defendant responded on March 29, 2004. In their Reply Brief in response to Defendant's opposition, Plaintiffs again offered a compromise with respect their document request, indicating that their main interest was in the submission documents provided to Fisher-Price by outside inventors for products that were ultimately commercialized, and samples or documents depicting the ultimate products produced. (Reply Memorandum in Further Support of Plaintiffs' Motion to Compel Discovery, dated April 12, 2004 ("Reply Mem.") at 2-3). Plaintiffs indicated that they would be prepared to accept the

4

requested agreements in redacted form, or alternatively, would be prepared to forego the agreements, instead accepting confirmation from Defendant that the documents being produced were for products on which a royalty was paid. (*Id.*)

## II. PLAINTIFFS' REQUEST IS RELEVANT TO THE ISSUES IN THIS CASE

### A. Industry Custom Is Relevant To Plaintiffs' Implied-In-Fact Contract Claim

The requests for production to which Defendant has objected are relevant and material to this proceeding, and should be complied with. The Magistrate Judge has correctly noted that one issue in this litigation "is whether defendant incorporated plaintiffs' concepts and after doing so, failed to pay plaintiffs a royalty." (Ruling on Plaintiff's Motion to Compel at 6). In considering this issue in light of Plaintiffs' document request, the Magistrate Judge determined that "such documents are irrelevant to whether plaintiffs' submissions were incorporated into the final product." (*Id.* at 7). However, the Magistrate Judge's analysis seemingly focused on Plaintiffs' misappropriation claim, when in fact their breach of an implied-in-fact contract claim is equally important. Industry custom and practice is an essential element of that claim.

*Nadel v. Play-By-Play Toys & Novelties, Inc.*, 208 F.3d 368 (2d Cir. 2000), is the leading case in the Second Circuit with respect to misappropriation and implied-in-fact contract claims in submission of idea cases. In discussing the implied-in-fact contract claim in *Nadel*, the Second Circuit stated:

> An implied-in-fact contract requires such elements as consideration, mutual assent, legal capacity and legal subject matter. The existence of novelty to the buyer only addresses the element of consideration necessary for the formation of the contract. Thus, apart from consideration, the formation of a contract implied-in-fact will depend on the presence of the other elements. The element of mutual assent, for example, must be inferred from the facts and circumstances of each case, including such factors as *the specific conduct of the parties, industry custom, and course of dealing*." (emphasis added).

*Id.* at 377.[2] *Nadel* makes clear that industry custom is one way in which a plaintiff may prove the element of mutual assent, which is necessary to prove the existence of an implied-in-fact contract. Other cases are in accord. *See Ward v. Nat'l Geographic Soc'y*, 208 F. Supp. 2d 429, 437-38 (S.D.N.Y. 2002), in which the Court stated:

> Under New York law, an implied-in-fact contract arises in the absence of an express agreement, and is based on the conduct of the parties from which a fact-finder may infer the existence and terms of a contract. *Importantly for this case, an implied-in-fact contract may be based on industry custom.* Ordinarily, a determination as to the existence of such an implied agreement must be made by the trier of fact by examining the manner in which the parties conducted themselves in light of ordinary industry practice. (emphasis added).

Therefore, it is clear that industry custom and practice is a relevant issue in this case. Plaintiffs must demonstrate mutual assent to prevail on their implied-in-fact contract claim, and one way to accomplish this is by demonstrating custom and practice in the industry. Custom and practice in the industry is also relevant in that it demonstrates the expectations of the parties at the time the submission was made.

The documents that Plaintiffs have requested are particularly relevant to industry custom and practice. It is Plaintiffs' assertion in this case that when a toy manufacturer adopts an inventors' product concept, in accordance with the long-established custom and practice in the toy industry, the inventor is remunerated by being paid a royalty based on the sales of toys incorporating the concept. (Declaration of Victor G. Reiling in Support of Plaintiffs' Objection to the Court's Ruling on Plaintiffs' Motion to Compel, dated May 13, 2004 ("Reiling Dec.") ¶¶ 2, 9). Pursuant to long-standing industry custom (*i.e.*, the way Fisher-Price and other companies had dealt with Plaintiffs and others in the past), Plaintiffs expected to be paid if Fisher-Price used their concept regardless of changes that were made from the time the concept was submitted to

---

[2] Although Plaintiffs discussed the need to establish industry custom and practice in their motion papers before the Magistrate Judge, the *Nadel* case was not specifically cited.

6

the time a product was ultimately manufactured. (*Id.* ¶ 9). This is the way the toy industry has operated for years. (*Id.*)

Importantly, toy industry custom and practice can be demonstrated through the custom and practice of Fisher-Price. Fisher-Price is a wholly-owned subsidiary of Mattel, Inc., one of the largest toy companies in the world (if not the largest). (Reiling Dec. ¶ 3). According to Mattel's 2003 Annual Report, the company has more than 25,000 employees. (*Id.*, Exh. A). Mattel's gross sales for 2003 were $5.379 billion, $3.203 billion of which were U.S. sales. (*Id.*) Fisher-Price itself had U.S. sales in 2003 that exceeded $1.265 billion. (*Id.*)

The Toy Industry Association recently reported on its website (http://www.toy-tia.org) that 2003 sales of toy products in the U.S. were $20.7 billion, not including video games. (Reiling Dec. ¶ 5, Exh. B). Based upon sales figures provided in Mattel's Annual Report, its gross domestic toy and game sales in 2003 constituted more than 15% of the U.S. Toy Industry's total sales. (Reiling Dec. ¶ 6, Exhs. A, B). Upon information and belief, the only other toy company that approaches this level of sales is Hasbro. (*Id.*) According to Hasbro's Annual Report, its U.S. toy and game sales in 2003 were over $1.9 billion, more than 9% of the total U.S. market. (*Id.*; Exh. C). Increasingly, the toy industry has become dominated by two companies, Mattel/Fisher-Price and Hasbro. (*Id.*) There is a wide gap in sales between these companies and the next tier of toy companies. (*Id.*)

The Toy Industry Association's statistics report that the size of the U.S. infant and pre-school market was $2.6 billion in 2003. (Reiling Dec. ¶ 7; Ex. B). This is the market in which the Rescue Heroes products at issue in this case are sold. (*Id.*) Packaging for the Voice Tech Video Mission Rescue Heroes line of toys indicates that the product is for ages three and up (*i.e.*, the pre-school market). (*Id.*) Fisher-Price is, by far, the most recognized name in the pre-school market. (*Id.*) Upon information and belief, virtually all of the company's sales are in this

market. (*Id.*) Assuming this is correct, Fisher-Price's gross domestic sales of $1.265 billion in 2003 constituted approximately 48% of the pre-school market.

Because Fisher-Price accounts for nearly half of all sales in the pre-school market each year, its practices and procedures comprise a large portion of toy industry custom and practice. (Reiling Dec. ¶ 8). Fisher-Price's custom and practice is, to a large extent, toy industry custom and practice, especially with respect to the pre-school market. (*Id.*)

Plaintiffs have requested documents submitted by toy inventors over a five year period for concepts that were ultimately commercialized by Fisher-Price, and for each such submission, documents that show the final product that was commercialized. The documents that Plaintiffs have requested from Fisher-Price are needed to demonstrate that it was indeed the custom and practice in the industry at the time the submission was made to compensate inventors for their concept, regardless of changes that were made to the concept from the time it was submitted to the time a product was ultimately manufactured. (Reiling Dec. ¶¶ 9-10). These documents are directly relevant to the parties' expectations at the time the submission was made. (*Id.*) Because Fisher-Price, and its parent company Mattel, comprise such a large portion of the U.S. Toy Industry, and specifically the pre-school market, their custom and practice is, to a large extent, industry custom and practice.

Irrespective of its size in the industry, Fisher-Price's custom and practice is independently relevant. The manner in which Fisher-Price has dealt with others in the close-knit inventor community forms industry custom and practice. It is probative as to whether an implied-in-fact contract was formed in this case and what the expectations of the parties were in relation to such contract.

B.  The Requested Documents Are Relevant to Defendant's Non-Use Defense

Plaintiffs maintain their contention that the requested documents are also relevant because one of Defendant's defenses in this action is that it did not use Plaintiffs' concept. (Dize Dec. ¶ 10). As outlined more fully in Plaintiff's Motion to Compel, implicit in this defense is an argument that Plaintiffs' submissions were not incorporated into the products actually produced by Defendant (*i.e.*, the products actually produced were not "close enough" to Plaintiffs' submissions). (*Id.*) In view of that defense, Plaintiffs should be entitled to review past submissions made by outside inventors to Defendant and the final products that Defendant ultimately commercialized. (*Id.*) These documents have probative value as to the extent to which Defendant and the toy industry in general consider products that are commercialized to "read on" the corresponding concept submissions from outside inventors. (*Id.*)

Defendant seeks to avoid payment of a royalty to Plaintiffs on the grounds that, *inter alia*, it did not "use" Plaintiffs' concept in the Rescue Heroes line and that the Defendant's products were not "based on" or "influenced by" Plaintiff's concept. (Declaration of James M. Kipling in Support of Plaintiffs' Motion to Compel Discovery, dated March 2, 2004 ("Kipling Dec.") ¶ 6). In Fisher-Price's Memorandum in Opposition to Plaintiffs' Motion to Amend, Defendant states that "Fisher-Price never made or sold a Rescue Heroes figure embodying the essential elements of plaintiffs' 1998 Submission;" "Fisher-Price never manufactured a Rescue Heroes figure embodying the essential elements of the 1999 Submission;" and "Fisher-Price never manufactured a Rescue Heroes figure with the essential elements of the 2000 Submission . . . ." (Fisher-Price's Memorandum in Opposition to Plaintiffs' Motion to Amend and in Support of its Motion to Strike, dated February 20, 2004 ("Def. Opp. Amend") at 13); (Kipling Dec. ¶ 6).

While Defendant denies that it has raised a defense that Plaintiffs' concept is "not close enough" to the ultimate products produced by Fisher-Price (Fisher-Price's Memorandum in

9

Opposition to Plaintiffs' Motion to Compel, dated March 29, 2004 ("Def. Opp. Compel") at 5-6), Defendant's expert appears to disagree. In his expert report, Defendant's expert testifies as follows:

> I have reviewed all of the materials Plaintiffs submitted to Fisher-Price in connection with their Reel Heroes product concept. Fisher-Price has not utilized plaintiffs' Reel Heroes submissions or product idea in its Rescue Heroes products. In reaching this conclusion, I have compared the design features of the Rescue Heroes products with the design features disclosed in Plaintiffs' submissions . . . This comparison demonstrates that Fisher-Price did not make use of Plaintiffs' submission.

(Expert Report of Howard N. Bollinger on Behalf of Fisher-Price, attached to Plaintiffs' Reply Memorandum in Further Support of Motion to Compel as Exhibit A ("Def. Expert Report") at 10). Since Defendant's own expert has compared Plaintiffs' inventor submissions to Fisher-Price with the products ultimately commercialized in determining that Fisher-Price did not make use of Plaintiffs' submission, it appears that Defendant is in fact raising a defense that the products it commercialized are "not close enough" to Plaintiffs' submissions, despite Defendant's assertions to the contrary.

Moreover, Fisher-Price has argued in documents submitted to this Court that "even a cursory examination of [Fisher-Price's] figures makes clear that they do not *embody or make use of* the features in plaintiffs' submissions." (Def. Opp. Amend at 13) (emphasis added). In view of the foregoing, it appears that Fisher-Price has engaged in semantics by arguing that its defense in this action is "non-use" as opposed to "not close enough."

## III. PLAINTIFFS' REQUEST IS NOT UNDULY BURDENSOME

While Fisher-Price argues that complying with Plaintiffs' request would be unduly burdensome, Fisher-Price is owned by Mattel, one of the world's largest toy companies. It is hard to image how Plaintiffs' narrowly tailored document request could be unduly burdensome

for Defendant. As such, Fisher-Price's objections on burdensomeness grounds are not credible and should be rejected.

Plaintiffs' requests are narrowly tailored in that they are limited only to products that were actually commercialized (*i.e.*, offered for sale) by Fisher-Price, and they are further limited to outside inventor submissions made to Fisher-Price during a specific five year period of time. (Dize Dec. ¶ 7). According to Plaintiffs' expert witness, during his career at Kenner Products and Hasbro, Inc., of the hundreds of concepts that were submitted by outside inventors for consideration by the company, on average only about ten of the company's products offered for sale each year were subject to license agreements with outside inventors. (Kipling Dec. ¶ 9). Accordingly, Plaintiffs' request would not result in a document production that would be unduly burdensome.

Should the Court determine that the requested documents are relevant but that Plaintiffs' request is unduly burdensome as drafted, Plaintiffs would be prepared to further limit their request to documents relating to Fisher-Price's three top selling products that were based on outside inventor submissions for each year during the five year period for which Plaintiffs have requested documents. Plaintiffs would request the submission documents from the outside inventor, as well as a sample or a catalog page depicting the final product that was commercialized.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their Motion to Compel and that Defendant be ordered to produce documents in accordance with Plaintiffs' revised request for production.

Dated: Norwalk, Connecticut
May 17, 2004

                    Respectfully Submitted,

                    GRIMES & BATTERSBY, LLP

                    By: _____
                    Gregory J. Battersby (Bar No. 7386)
                    Edmund J. Ferdinand, III (Bar No. 21287)
                    Russell D. Dize (Bar No. 23064)
                    Jessica L. Elliott (Bar No. 24871)
                    488 Main Avenue, Third Floor
                    Norwalk, Connecticut 06851-1008
                    (p) (203) 849-8300
                    (f) (203) 849-9300

                    Attorneys for Plaintiffs Victor G. Reiling
                    Associates and Design Innovation, Inc.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing Objection to Ruling on Plaintiffs' Motion to Compel and the Declaration of Victor G. Reiling in support has been served upon defendant Fisher-Price, Inc., on this 17th day of May 2004, via U.S. Mail, First Class, postage prepaid, to:

Bradford S. Babbitt, Esq.
Michael J. Kolosky, Esq.
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, CT 06103-3597

Robert J. Lane, Jr., Esq.
Jodyann Galvin, Esq.
HODGSON RUSS LLP
One M&T Plaza, Suite 2000
Buffalo, New York 14203-2391

_____
Russell D. Dize