UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| VICTOR G. REILING ASSOCIATES and DESIGN INNOVATION, INC., | : | |
| | : | |
| Plaintiffs, | : | Civil No. 303CV222(JBA) |
| | : | |
| v. | : | |
| | : | |
| FISHER-PRICE, INC., | : | June 1, 2004 |
| | : | |
| Defendant. | : | |

**FISHER-PRICE'S MEMORANDUM IN OPPOSITION TO
OBJECTION TO RULING ON PLAINTIFFS' MOTION TO
<u>COMPEL AND IN SUPPORT OF CROSS-MOTION TO STRIKE</u>**

**ROBINSON & COLE, LLP**
Bradford S. Babbitt
280 Trumbull Street
Hartford, CT 06103-3597

**HODGSON RUSS LLP**
Robert J. Lane, Jr.
Jodyann Galvin
One M&T Plaza, Suite 2000
Buffalo, New York  14203

**Preliminary Statement**

Fisher-Price submits this memorandum of law in opposition to the Objection filed by Victor G. Reiling Associates ("Reiling") and Design Innovation, Inc. ("Design Innovation") to the April 27, 2004 ruling by Magistrate Margolis denying plaintiffs' motion to compel (the "Magistrate's Ruling").

In addition, Fisher-Price submits this memorandum in support of its cross-motion to strike the declaration of Victor G. Reiling, dated May 13, 2004, submitted in support of plaintiffs' Objection and to strike those portions of their Objection which rely upon the Reiling declaration. As a matter of law, plaintiffs are precluded from introducing new evidence in support of their Objection to the Magistrate's Ruling. Fisher-Price is entitled to an order striking the Reiling declaration as well as all portions of plaintiffs' Objection that refer to or rely upon it.

Moreover, plaintiffs have completely failed to carry the burden necessary to support an objection to a magistrate's discovery ruling. To set aside the Magistrate's Ruling, plaintiffs must demonstrate that it is clearly erroneous or contrary to law. Plaintiffs have not even bothered to discuss the applicable standard of review—let alone show they have met it. In any event, because the Magistrate's Ruling is clearly proper and consistent with other caselaw addressing the same issue, there is no basis for setting aside her determination.

Through their Objection, Plaintiffs are attempting to obtain information to which they are not entitled. Specifically, Reiling and Design Innovation seek documents related to the submission of proposals by outside inventors to Fisher-Price. Because the documents plaintiffs seek are negotiated agreements that Fisher-Price entered into with inventors who are not parties

-2-

to this action regarding submissions and concepts which are unrelated to plaintiffs' submissions, they are entirely irrelevant to the issues in this action. Further, these documents cannot be used to demonstrate "custom and practice" in the toy industry (as plaintiffs argue), because they reflect individualized agreements and payment decisions under specific, written agreements[1] — not an industry-wide, standard practice which can be uniformly proven in order to explain a contract. Finally, disclosure of these documents would lead to multiple mini-trials during the trial of this case and would unnecessarily burden the Court with additional witnesses, discovery, and evidence unrelated to plaintiffs' submissions.

## Factual Background

Fisher-Price develops products in two ways: it has an internal design staff which designs toys and juvenile products, and it accepts submissions from selected outside inventors. *See* Declaration of Stan Clutton in Opposition to Plaintiffs' Motion to Compel, dated March 26, 2004 (the "Clutton Decl.") ¶ 4.[2] Submissions from outside inventors are generally first reviewed by Fisher-Price's Inventor Relations department. Then, if warranted, the submission may be forwarded for review by the appropriate Fisher-Price design team. If Fisher-Price selects a submission for further development, and potentially for manufacture and sale to the public, it negotiates a formal license agreement with the outside inventor. The license agreement governs

---

[1]    Moreover, plaintiffs' position in this action is that they never had a written contract with Fisher-Price. *See* First Amended Complaint (which contains no claim for breach of an express or written contract). This further establishes that plaintiffs' request for written contracts Fisher-Price entered into with other inventors seeks irrelevant documents.

[2]    The declarations cited in this memorandum, other than the May 13 Reiling declaration, were submitted in connection with the motions to compel determined by the Magistrate in her April 27 Ruling.

-3-

the rights and obligations of Fisher-Price and the outside inventor, including royalty payment terms. *See* Clutton Decl. ¶¶ 5-6.

Reiling and Design Innovation are independent toy inventors who claim that Fisher-Price misappropriated the submission of their "Reel Heroes" concept. *See* First Amended Complaint. Plaintiffs' "Reel Heroes" concept was based on an already-existing and very successful line of Fisher-Price preschool action figures named "Rescue Heroes."

Neither Reiling nor Design Innovation claim to have a license agreement with Fisher-Price related to their "Reel Heroes" submission. *See* Clutton Decl. ¶ 8. Nevertheless, plaintiffs inexplicably seek documents relating to license agreements of ***other*** outside inventors where the outside inventor's submission resulted in a product offered for sale by Fisher-Price. Specifically, in their motion to compel, plaintiffs sought the disclosure of:

> All documents that refer or relate to outside inventor submissions made to Fisher-Price from 1996 through 2000 that have resulted in or have been incorporated into commercialized products (*i.e.*, products offered for sale) by Fisher-Price including, but not limited to: (a) documents reflecting each such submission and the corresponding concept disclosure forms; (b) any option agreement or license agreement relating thereto; and (c) a sample of the final product or catalog page depicting the final product commercialized by Fisher-Price.

Declaration of Russell D. Dize, dated March 3, 2004 (the "Dize Decl.") ¶ 7.

-4-

**Argument**

**POINT I.    THE COURT MUST STRIKE THE DECLARATION OF VICTOR G. REILING AND ANY PORTION OF PLAINTIFFS' OBJECTION WHICH RELIES UPON IT**

28 U.S.C. § 636(b)(1) provides as follows:

Notwithstanding any provision of law to the contrary -- (A) a judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court . . . . A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate's order is ***clearly erroneous or contrary to law***.

28 U.S.C. § 636(b)(1)(A) (2004) (emphasis added).[3] "In contrast to the *de novo* review undertaken when a party objects to a magistrate judge's recommended disposition of a dispositive motion, the review of a nondispositive order does not contemplate the receipt of additional evidence by the parties on the issues." *Roberson v. Allied Signal, Inc.*, 1997 WL 222359, at *2 (N.D.N.Y. Mar. 21, 1997).[4] "[W]hen a nondispositive ruling of a Magistrate Judge is at issue, the District Court is not permitted to receive further evidence." *Holmes Prods.*

---

[3]    *See also* FED. R. CIV. P. 72(a) ("A magistrate judge to whom a pretrial matter not dispositive of a claim or defense of a party is referred to hear and determine shall promptly conduct such proceedings as are required and when appropriate enter into the record a written order setting forth the disposition of the matter. Within 10 days after being served with a copy of the magistrate's order, a party may serve and file objections to the order; a party may not thereafter assign as error a defect in the magistrate judge's order to which objection was not timely made. The district judge to whom the case is assigned shall consider such objections and shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law."); D. CONN. L. CIV. R. 72.2 ("In matters determined by the Magistrate Judge under Rule 72.1(C)(2) [*i.e.*, pretrial matters "relating to discovery and other matters of procedure"], the reviewing Judge on timely objection shall set aside any order found to be clearly erroneous or contrary to law . . . .").

[4]    A copy of each unpublished decision cited herein is provided as an attachment. S*ee also Paddington Partners v. Bouchard*, 34 F.3d 1132 (2d Cir. 1994) (noting that even in the less deferential context of a *de novo* review of a magistrate's report and recommendation on a dispositive motion, a party's submission of new evidence is disfavored).

*Corp. v. Dana Lighting, Inc.*, 926 F. Supp. 264, 266-267 (D. Mass. 1996).[5] Rulings pertaining to discovery are "non-dispositive." *Hudson v. Gen. Dynamics Corp.*, 186 F.R.D. 271, 273 (D. Conn. 1999) (citing *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990)).

A party's submission of new evidence on review of a magistrate's ruling is patently improper and should be stricken from consideration by the District Court. *See Branch v. Mobil Oil Corp.*, 143 F.R.D. 255, 256 (W.D. Okla. 1992) (stating that to allow a party to "simply avail itself of an appeal to satisfy [its] burden would render referrals to Magistrates meaningless and a waste of time"). *See also Roberson*, 1997 WL 222359, at *2; *Haines*, 975 F.2d at 91. The reasons for not permitting the introduction of new evidence at this stage of the proceeding are clear:

> First, permitting such piecemeal presentation of evidence is exceptionally wasteful of the time of both the magistrate and district judges, the former having been compelled to write an arguably useless report based on less than the universe of relevant evidence and the latter being deprived of the benefit of the magistrate judge's considered view of the entire record. Second, opposing parties would be put to the burden of proceedings which to a considerable degree, would be duplicative. Third, there would be instances in which parties would be encouraged to withhold evidence, particularly evidence which might be embarrassing as well as helpful on the merits, in the expectation of using it before the district judge only if they failed to prevail before the magistrate judge on a more abbreviated showing. Finally, the routine consideration of evidence in support of objections which could

---

[5] *See also Haines v. Liggett Group, Inc.*, 975 F.2d 81, 91 (3d Cir. 1992) (reversing the district court's decision to set aside a magistrate's ruling, where the district court based its determination on new evidence not submitted to the magistrate); *First Sav. Bank, F.S.B. v. U.S. Bancorp.*, 184 F.R.D. 363, 366 (D. Kan. 1998) (recognizing "the oft-stated rule . . . that a district court may not receive further evidence when reviewing a nondispositive matter under 28 U.S.C. § 636(b)(1)(A)"); *Scott Paper Co. v. United States*, 943 F. Supp. 501, 502 (E.D. Pa. 1996) ("[T]he Court may consider only the evidence presented to the Magistrate Judge.").

> have been presented before the magistrate judge would reward
> careless preparation of the initial papers.

*Morris v. Amalgamated Lithographers of America, Local One*, 994 F. Supp. 161, 163 (S.D.N.Y. 1998). To allow the introduction of new evidence on review by the district court would impermissibly allow the objecting party to a "second bite at the [proverbial] apple." *Id. See also Roberson*, 1997 WL 222359, at *2.

Here, plaintiffs improperly seek to introduce the Reiling declaration in support of their Objection to the Magistrate's Ruling. It cannot be disputed that the declaration and the evidence that plaintiffs annex to it were not presented to the Magistrate for consideration; the declaration is dated well after the Magistrate's Ruling. The arguments and evidence contained in the Reiling declaration cannot be used as a basis for determining that the Magistrate's Ruling was "clearly erroneous," since the Magistrate had not been presented with them at the time she rendered her determination. Accordingly, this Court should strike and disregard the Reiling declaration, as well as those portions of plaintiffs' Objection which rely upon it.[6]

---

[6]     A substantial portion of plaintiffs' Objection relies on the new evidence in the Reiling declaration and must therefore be disregarded. *See, e.g.,* Objection at 6-8.

**POINT II.    PLAINTIFFS HAVE FAILED TO RAISE A TIMELY OBJECTION TO THE MAGISTRATE'S DETERMINATION THAT THEIR DISCOVERY DEMANDS WERE "OVERBROAD"**

The plaintiffs have not objected to one of the three independent bases for the Magistrate Judge's ruling. As they are now time-barred from objecting to that basis for the ruling, the Magistrate's ruling should be upheld.

"Within 10 days after being served with a copy of the magistrate's order, a party may serve and file objections to the order; ***a party may not thereafter assign as error a defect in the magistrate judge's order to which objection was not timely made***." FED. R. OF CIV. P. 72(a) (emphasis added); *see also* 28 U.S.C. § 636(b)(1)(A) (2004); D. CONN. L. CIV. R. 72.2.

The Magistrate denied plaintiffs' motion to compel for three independent reasons: "plaintiffs' request is ***overbroad*** as it encompass[es] <u>all</u> products commercialized by defendant, production of such documents would place an ***undue burden*** on defendant, and such documents are ***irrelevant*** . . . ." Magistrate Ruling at 6-7 (emphasis added). Plaintiffs' Objection, however, only addresses two of the Magistrate's stated reasons for denying their motion to compel — irrelevance and undue burden. *See generally* Objection at 1-2 (stating plaintiffs' contention that the requested documents would be "highly relevant," and "not . . . unduly burdensome"). In fact, plaintiffs do not even acknowledge the Magistrate's determination that their document demands are impermissibly "overbroad." *See* Objection at 1 ("The Magistrate Judge has ruled that it would be unduly burdensome for Fisher-Price to produce these documents and that the documents are not relevant to the claims at issue in this case.").

-8-

The Magistrate's determination that plaintiffs' demands are overbroad is, in and of itself, a sufficient independent basis for upholding her decision denying plaintiffs' motion to compel. Plaintiffs have failed to address the issue in their Objection, and their time for doing so has passed. Accordingly, the Magistrate's Ruling should be upheld and plaintiffs' Objection should be denied in its entirety.

**POINT III.     THE MAGISTRATE'S RULING WAS NOT
                "CLEARLY ERRONEOUS OR CONTRARY TO LAW"**

**A.     The Applicable Standard of Review**

A Magistrate Judge's discovery determination may only be overruled upon a showing that it is clearly erroneous or contrary to law.  28 U.S.C. § 636(b)(1)(A) (2004); FED. R. CIV. P. 72(a); D. CONN. L. CIV. R. 72.2.  "The clearly erroneous standard *requires that the reviewing court affirm* unless it on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  *Claytor v. Computer Assocs. Int'l*, 211 F.R.D. 665, 667 (D. Kan. 2003) (emphasis added) (citing *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948))).  To demonstrate that a magistrate's determination is "contrary to law," an objecting party must show that "it fails to apply or misapplies relevant statutes, caselaw or rules of procedure."  *Surles v. Air France*, 210 F. Supp. 2d 501, 502 (S.D.N.Y. 2002).

As articulated by this Court in *Hudson v. General Dynamics Corp.*, "[u]nder this deferential standard of review, magistrate judges are considered to have broad discretion over discovery matters, and a party seeking to overturn a magistrate judge's discovery ruling bears a 'heavy burden.'  Reversal based upon an improper order denying or curtailing discovery is

'unusual.'" 186 F.R.D. at 273 (citations omitted).[7] "Magistrate judges are thus afforded broad discretion in resolving discovery disputes, and reversal is appropriate only if that discretion is abused." *Hudson*, 186 F.R.D. at 273 (citing *Conway v. Icahn*, 16 F.3d 504, 510 (2d Cir. 1994)). *See also Surles*, 210 F. Supp. 2d at 502 ("A magistrate judge's resolution of discovery disputes deserves substantial deference") (citing *Weiss v. La Suisse*, 161 F. Supp. 2d 305, 321 (S.D.N.Y. 2001)).

A party's dissatisfaction with a Magistrate's determination is not adequate to demonstrate that it is "clearly erroneous." *Claytor*, 211 F.R.D. at 667 ("The mere fact that plaintiff disagrees with [the Magistrate's] decision, however, does not demonstrate that the decision is clearly erroneous."). Moreover, an objecting party may not simply "rehash" or incorporate on review the same arguments which were unsuccessful before the Magistrate, since such arguments cannot possibly demonstrate how the Magistrate "clearly erred." *See Travelers Ins. Co., v. Monpere*, 1995 WL 591141, at *2 (W.D.N.Y. Sept. 8, 1995) ("The incorporation [of ] earlier-filed motion papers is useless. They clearly do not--and indeed, cannot--point out to this Court where [the Magistrate Judge] may have clearly erred.") (citing *Camardo v. Gen. Motors Hourly Rate Employees Pension Plan*, 806 F. Supp. 380 (W.D.N.Y. 1992) (litigants are not entitled to rehash arguments dealt with by a magistrate judge)). *See generally Dennard v. Kelly*,

---

[7]    S*ee also Bath Petroleum Storage, Inc. v. Sovas*, 309 F. Supp. 2d 357, 361 (N.D.N.Y. 2004) ("Pursuant to this highly deferential standard of review, magistrate judges are afforded broad discretion and reversal is only appropriate if there is an abuse of discretion."); *Empire Volkswagen, Inc. v. World-Wide Volkswagen Corp.*, 95 F.R.D. 398, 399 (S.D.N.Y. 1982) ("In resolving discovery disputes, any judicial officer, including a magistrate, has broad discretion, and his exercise of this discretion will be overturned only if it is abused. A litigant who seeks to overturn a magistrate's discovery order bears a heavy burden.") (citations omitted).

1997 WL 9785, at *1 (W.D.N.Y. Jan. 2, 1997) ("The purposes of the Federal Magistrate's Act

are, *inter alia*, to relieve courts of unnecessary work and to increase the overall efficiency of the

federal judiciary.  Such would be thwarted if parties were permitted to simply retrace every step

precisely taken before a Magistrate Judge in order to repeat them before this Court.") (citations

omitted).  "Simply stated, a proceeding before a Magistrate Judge is not a [mere] dress

rehearsal."  *Klawitter v. Chater*, 1994 WL 899094, at *1 (W.D.N.Y. May 4, 1994).

**B.     Plaintiffs Have Failed to Identify or Demonstrate
         Any "Clear Error" in the Magistrate's Ruling**

         In an apparent effort to avoid the heavy burden placed upon them by Section

636(b)(1)(A), plaintiffs have not even cited the relevant standard of review for the Court —

much less authority suggesting the nature of their burden on this appeal.  Further, plaintiffs have

failed to identify any portion of the Magistrate's Ruling which is "clearly erroneous."

         Plaintiffs have not cited to any authority which is contrary to the Magistrate's

Ruling.  While plaintiffs suggest that *Nadel v. Play-By-Play Toys & Novelties, Inc.*, 208 F.3d 368

(2d Cir. 2000), demonstrates the relevance of the information sought by their document requests

(Objection at 5-6), *Nadel* does not stand for (or support) the proposition that the documents

plaintiffs seek are relevant.  At most, *Nadel* provides that the particular element of mutual assent

(necessary for an implied contract claim) can be shown by demonstrating industry custom and

practice.  *Nadel*, 208 F.3d at 377 n.5.  In essence, the *Nadel* court ruled that industry custom

may, in appropriate circumstances, be evidence of an implied agreement between the parties that

an inventor's submission will not be used or disclosed unless the parties reach a further

agreement on compensation for any such use.  *Id.*  Here, plaintiffs do not seek the license

agreements Fisher-Price has negotiated with non-party inventors to show that there is a custom in the toy industry that an inventor's submission will not be used by a toy company absent a further agreement as to compensation. Indeed, it is difficult to imagine how the non-party license agreements and associated documents sought by plaintiffs would have any relevance to that issue.

Plaintiffs do not even argue that they are seeking the documents at issue for the purpose recognized in *Nadel*. Instead, they contend the requested documents might assist them in showing that "custom and practice" in the toy industry has been to "compensate inventors and designers for the underlying concept in its various product line manifestations regardless of revisions, enhancements and changes made by the toy company subsequent to submission." Declaration of James M. Kipling, dated March 2, 2004 (the "Kipling Decl.") ¶ 8. Use of "custom and practice" evidence for this purpose is not authorized by *Nadel* — nor could it be. In essence, plaintiffs are attempting to use "custom and practice" evidence to form a contract where no agreement of any type on any terms has been reached. This is a far cry from *Nadel*, which merely recognizes that custom and practice evidence may provide a single missing element in appropriate circumstances. *See also* § IV.B. below (discussing the limited purposes of custom and practice evidence).

Moreover, *Nadel* does not provide that industry custom and practice may be demonstrated by examination of a single industry participant's individually negotiated agreements with other non-parties, as plaintiffs argue here. Plaintiffs have provided no authority which supports their assertion that Fisher-Price's individually negotiated licenses with other inventors demonstrate industry custom and practice — or are anything other than unique, *sui*

-12-

*generis* examples of license agreements negotiated under specific circumstances. Caselaw is clear, as discussed more fully under Point IV.B.2. below, that the conduct of one industry participant, like Fisher-Price, is not probative to demonstrate industry custom. *See British Int'l Ins. Co. Ltd. v. Seguros La Republica, S.A.*, 342 F.3d 78, 84 (2d Cir. 2003).

Instead of showing that the Magistrate's Ruling is clearly erroneous or contrary to law, plaintiffs simply reiterate on this review the same arguments made before the Magistrate. As discussed above, such arguments cannot show "clear error" in the Magistrate's Ruling. Plaintiffs are simply not entitled to have these arguments reheard *de novo* by the District Court in the hope that they find a more approving audience on appeal.

**POINT IV.    THE DOCUMENT REQUESTS AT ISSUE ARE
<u>IRRELEVANT, OVERBROAD AND UNDULY BURDENSOME</u>**

**A.    <u>Fisher-Price's Agreements With Other
Inventors Are not Relevant to Plaintiffs' Claims</u>**

Plaintiffs' request for documents relating to submissions by other outside inventors and related license agreements is patently overbroad and seeks irrelevant information. Not surprisingly, plaintiffs cite no caselaw supporting their argument that they are entitled to discovery of information relating to other, non-party outside inventors.

To the contrary, courts considering similar requests have ruled that a company's agreements with non-parties and how the company dealt with those parties are not discoverable. In *World Wrestling Federation Entertainment, Inc. v. William Morris Agency, Inc.*, 204 F.R.D. 263 (S.D.N.Y. 2001), a former client of a talent agency sought documents relating to the agency's other clients. The court ruled that the documents were not relevant:

-13-

> How is what happened to [defendant's other clients] relevant?
> Ordinarily, what is relevant in a breach of contract claim is the
> transaction between the parties to the contract.  Ordinarily,
> contractual agreements between one of the contracting parties and
> third parties is irrelevant. . . . [T]he relevance standard for
> discovery is not unlimited. . . . [T]he treatment of one contracting
> party in the entertainment field does not really illuminate or is not
> really relevant to how another party in the entertainment field is
> treated. . . .

*Id*. at 265 (quoting Magistrate Judge's decision).

Numerous other courts have held that discovery of contracts with third parties
should not be permitted.  In *Seltel, Inc. v. Channel Communications, Inc.*, 122 A.D.2d 628, 505
N.Y.S.2d 628 (1st Dep't 1986), the defendant alleged that it was excused from performance
under a contract by plaintiff's failure to perform.  Defendant sought disclosure of "other
purportedly similar contracts" to demonstrate plaintiff's failure to perform under other contracts.
The appellate court rejected this request as overbroad because it "call[ed] for concomitant
disclosures respecting plaintiff's performance under other contracts with other clients, which
disclosures are neither material nor necessary."  *Id*. at 630, 505 N.Y.S.2d 630.

Similarly, in *Zohar v. Hair Club for Men, Ltd.*, 200 A.D.2d 453, 607 N.Y.S.2d 5
(1st Dep't 1994), the plaintiff alleged fraud and violation of the Civil Rights Law based on the
unauthorized use of his image in a television commercial.  Plaintiff sought "documents and
information concerning other individuals who appeared in the program promoting the
defendant's hair replacement products . . . including ***the amount of 'consideration, if any, they
received*** . . . and whether these individuals 'signed releases for their appearance. . . .'" *Id*. at 453,
607 N.Y.S.2d at 6 (emphasis added).  The court struck the interrogatories as "irrelevant and
overbroad," reasoning that:

-14-

> The disclosure sought therein, regarding other purportedly similar contracts between the defendant and other individuals who are not parties to the underlying action, has no bearing on the validity of the particular release executed by the plaintiff herein and ***improperly requires concomitant disclosure respecting the defendant's performance under other contracts with other clients, which disclosures are neither material nor necessary, nor have the effect of sharpening the issues of trial.***

*Id.* at 453-54, 607 N.Y.S. at 6 (citations omitted and emphasis added).

Here, it cannot be disputed that the requested license agreements and associated documents have no bearing on plaintiffs' claims. Rather, the requested disclosures would require unnecessary documents, would require a substantial expansion of discovery from Fisher-Price witnesses (and possibly non-party outside inventors), and (as discussed in Point IV.B.3. below) would require mini-trials about the circumstances relating to each non-party's submission.

**B.    The Documents Sought by Plaintiffs Will**
       <u>**Not Demonstrate Custom in the Industry**</u>

Plaintiffs argue they are seeking information related to outside inventor submissions to show "custom and practice" in the toy industry (Objection at 5-6), and that the "custom and practice" has been for a toy company to "compensate inventors and designers for the underlying concept in its various product line manifestations regardless of revisions, enhancements and changes made by the toy company subsequent to submission." Kipling Decl. ¶ 8. Plaintiffs also contend that they will use the requested documents to "demonstrate the extent to which Fisher-Price has considered past products offered for sale by the company to use, be based on or influenced by concept submissions from outside toy inventors." Kipling Decl. ¶ 9.

-15-

As discussed above, how Fisher-Price has treated other parties with whom it contracted in the past is legally irrelevant.

"The general function of usage and custom is definition, explanation, and elucidation of the meaning of contracts." 21A AM.JUR.2D *Customs and Usages* § 22. To make use of "custom and practice" evidence to explain or define a contract, a plaintiff must demonstrate that the alleged custom "is a definite, uniform and known practice." *Anglo-Saxon Petroleum Co., Ltd., v. United States*, 222 F.2d 75, 77 (2d Cir. 1955) (finding no custom where witnesses did not testify about how prevalent practice was); *see also* 21A AM.JUR.2D *Customs and Usages* § 8 ("a custom or usage must be certain, continuous, and uniform"). And, even if a custom may be applicable (which it is not here), parties may contract to deviate from the custom. *See Encyclopaedia Britannica, Inc. v. SS Hong Kong Producer*, 422 F.2d 7, 17-18 n.10 (2d Cir. 1969) (noting custom, even if established, does not override stipulation of parties).

Here, plaintiffs' attempted invocation of "custom and practice" is entirely inappropriate and contrary to the purposes for which custom and practice evidence may be offered. Plaintiffs do not seek to define, explain or elucidate a contract; nor are they attempting to supply a missing contract term. Rather, plaintiffs seek to support generalized, conclusory opinions about the practices of toy companies in accepting and developing submissions from outside inventors. This is not a proper use of custom evidence.

In any event, the documents plaintiffs seek could not show custom and practice in the toy industry as a whole, because they are unique and specific to individualized contracts Fisher-Price negotiated with particular inventors. Finally, permitting discovery of this evidence

-16-

would substantially increase the scope of discovery in this case and would lead to the presentation of voluminous, non-probative evidence at trial.

      **1.     Fisher-Price's royalty obligations to**
                 **other outside inventors are governed**
                 **by particular license agreements.**

Fisher-Price products which are based on outside inventor submissions are always the subject of formal license agreements, negotiated on a case-by-case basis. *See* Clutton Decl. ¶ 6. Fisher-Price's payments to outside inventors are governed by the specific terms of each license agreement. *See Id.* ¶ 7; *see also* Bollinger Decl. ¶ 5. Thus, regardless of how "different" a final, commercialized Fisher-Price product may be from the outside inventor's original submission, this evidence would not show anything about an alleged "custom and practice" in the toy industry. Rather, this evidence would show (at most) Fisher-Price's interpretation of its obligations under specific license agreements and its fulfillment of those obligations. In any event, assuming that there was an industry "custom and practice" (which there is not), the existence of individualized licensed agreements overrides that "custom and practice" because the parties to an agreement may contract to deviate from industry custom. *See Encyclopaedia Britannica*, 422 F.2d at 17-18 n.10.

Plaintiffs have repeatedly argued that they have no written contract or agreement governing payment of a royalty relating to any of their submissions.[8] In these circumstances, it cannot be disputed that the submissions and products which are the subject of express license

---

[8] For example, plaintiffs originally sued for breach of express contract. *See* Complaint ¶¶ 34-40. In their First Amended Complaint, however, plaintiffs eliminated their breach of express contract claim and proceeded with a claim of breach of implied contract. *See* First Amended Complaint ¶¶ 34-40.

agreements with non-party inventors could bear no relationship to plaintiffs' claims.  As the

Magistrate ruled:

> The issue in this litigation is whether defendant incorporated
> <u>plaintiffs'</u> concepts and after doing so, failed to pay plaintiffs a
> royalty . . . .  [I]t is not custom and practice that determines the
> payment of a royalty to the inventors for the use of the inventors'
> concept or for products based on or influenced by the concept;
> rather, according to defendant, the payment of a royalty is
> determined on a case-by-case basis after a review of a submission
> results in its selection for further development, and possibly
> manufacture and sale, at which time defendant negotiates an
> individualized license agreement. . . .  ***[Plaintiffs] never entered
> into a licensing agreement with defendant for the product at
> issue and because of the individualized nature of the licensing
> agreement process, the only relevant concept submission and
> resulting agreement or lack thereof, is that of plaintiffs.***

Magistrate Ruling at 5-6 (emphasis added).

### 2.    The practices of one industry participant <u>cannot demonstrate custom and practice.</u>

Plaintiffs argue that the documents they seek relating to non-party inventor

submissions will establish custom and practice in the industry by "demonstrat[ing] the extent to

which Fisher-Price has considered past products offered for sale by the company to use, be based

on or influenced by concept submissions from outside toy inventors."  Kipling Decl. ¶ 8.

The requested documents could not, as plaintiffs contend, establish any custom or

practice in the toy industry:  "The practice of one company. . . is generally insufficient to

establish a trade usage."  *British Int'l Ins. Co. Ltd.*, 342 F.3d at 84 (rejecting plaintiff's attempt to

use "industry custom and practice") (citing *Encyclopaedia Britannica,* 422 F.2d at 18).  The

proper way to show custom and practice in the industry is for experts or others to testify about

widespread accepted practices which are invariable in the industry. The documents plaintiffs seek are not probative on this issue.

3.    **Review of outside inventor submissions and agreements would require a series of mini-trials.**

Finally, the discovery plaintiffs seek, and the manner in which they claim they will use the information, will turn the trial of this matter into a series of mini-trials about the circumstances underlying a large number of non-party inventor submissions. The issues in these mini-trials would not be limited to questioning about Fisher-Price's decisions to pay or not pay outside inventors. *See World Wrestling Federation*, 204 F.R.D. at 265 (acknowledging that disclosure of talent agency's contracts with other clients would also require additional discovery beyond agreements themselves). Rather, the argument plaintiffs seek to support would require examination of specific license agreements or other contractual provisions which govern Fisher-Price's decision to pay each non-party inventor. In addition, it would require introduction of evidence regarding the chronology of development of each of the Fisher-Price toys based on outside inventor submissions. *See* Bollinger Decl. ¶ 6.

While the documents requested may or may not ultimately prove to be voluminous,[9] the testimony of numerous Fisher-Price designers, managers and legal personnel, as well as the outside inventors themselves, would be required as to each product and license or other agreement. *See* Clutton Decl. ¶ 7. Moreover, the parties would be required to prove the differences and similarities between the inventor's submission and the final product, which could

---

[9]    Because of the burden involved in locating responsive documents (*see* Clutton Decl. ¶ 9), Fisher-Price has not conducted a search for responsive documents.

also require the services of additional expert witnesses.  Not surprisingly, opposing the argument

plaintiffs seek to make could require document discovery from and depositions of numerous

non-party inventors, as well as non-party toy companies.  Subjecting the jury to a number of

mini-trials relating to non-party inventor submissions that are not at issue in this case would be

totally inappropriate and would be a waste of the resources of the Court as well as the parties.[10]

Plaintiffs' motion to compel was properly denied.

**C.**     **Documents Relating to Other Outside Inventors**
          **Are not Related to Fisher-Price's "Non-Use" Defense**

As plaintiffs correctly acknowledge, Fisher-Price has consistently stated in

defense of this action that it has not used plaintiffs' submissions in any of its products.  *See*

Bollinger Decl. ¶ 4.  On this motion, however, plaintiffs have distorted Fisher-Price's

straightforward non-use defense, claiming that "implicit in this defense is an argument that . . .

the products actually produced were not 'close enough' to Plaintiffs' submissions."  Objection at

9.  This mischaracterization of Fisher-Price's non-use defense appears to be an attempt by

plaintiffs to justify their request to examine other agreements to determine whether other

inventor submissions (not at issue here) were "close" or "not close" to the product ultimately

manufactured by Fisher-Price.

"Not close enough," however, has never been a defense of Fisher-Price.  *See id.*

Instead, Fisher-Price's defense is that it did not make ***any*** use of plaintiffs' submission; *i.e.*, the

---

[10]     Moreover, plaintiffs' proposed use of non-party contracts and related documents may force Fisher-Price to
respond by using other inventor contracts where a product "close" to the one submitted was produced, but
no payment was made.  Clearly, plaintiffs' tactics would lead to the parties moving far afield from the real
issues in this case.

Fisher-Price designers and outside consultants who designed the Rescue Heroes products at issue here did not make reference to plaintiffs' submission in doing so, nor did they make use of the novel features (if any) of plaintiffs' submissions. The record is devoid of any proof that Fisher-Price referred to or used plaintiffs' submissions in designing the products at issue.[11] No amount of discovery relating to other outside inventors will assist plaintiffs in demonstrating that the claimed novel features of their submissions were used by Fisher-Price.

**D.      Even if Other Agreements Were Relevant, the Burden
         to Fisher-Price Outweighs Any Probative Value**

Finally, even if other inventor agreements and related documents had some marginal relevance to the claims or defenses here (which they do not), production of these documents should not be compelled because of the undue burden it would impose. In denying a similar request, one court ruled:

> "[T]he nature of the agreements that William Morris enters into and how those agreements are enforced, although it has some probative value, *the probative value is so small that I don't think the burden of producing those documents and the concomitant discovery that that discovery would require justifies the discovery of those documents* . . ."

*World Wrestling Federation*, 204 F.R.D. at 265 (emphasis added).

If compelled to produce the requested documents, Fisher-Price will have to devote over two weeks just to locate responsive documents. *See* Clutton Decl. ¶ 9. This burden can

---

[11]   Plaintiffs' expert makes note of Fisher-Price's argument that "it is undisputed that Fisher-Price never used the concepts reflected on any of the three submissions submitted by plaintiffs" and states it is a central issue in the case. *See* Kipling Decl. ¶ 6. Plaintiffs, and their expert on this motion, have offered no evidence demonstrating that Fisher-Price did, in fact, use the concepts reflected in their submissions. Given that discovery is essentially complete, the absence of such evidence is telling.

hardly be justified in light of plaintiffs' failure to articulate why these documents would be relevant to their claims.

<u>**Conclusion**</u>

For the foregoing reasons, the Reiling declaration and those portions of plaintiffs' Objection that rely upon it should be stricken and plaintiffs' Objection to the Magistrate's Ruling should be denied.

Dated: June 1, 2004

**DEFENDANT FISHER-PRICE, INC.**

By: _____

Bradford S. Babbitt
Federal Bar No.: ct13938
email: bbabbitt@rc.com
Michael J. Kolosky
Federal Bar No.: ct22686
email: mkolosky@rc.com
**ROBINSON & COLE, LLP**
280 Trumbull Street
Hartford, CT 06103-3597
Tel. no.: (860) 275-8200
Fax no.: (860) 275-8299

and

Robert J. Lane, Jr.
Federal Bar No.: ct24598
e-mail: rlane@hodgsonruss.com
Jodyann Galvin
Federal Bar No.: ct24599
e-mail: jgalvin@hodgsonruss.com
**HODGSON RUSS LLP**
One M&T Plaza, Suite 2000
Buffalo, New York 14023-2391
Tel. no: (716) 856-4000
Fax no.: (716) 849-0349

Table of Contents

Page

Preliminary Statement ................................................................................................2

Factual Background .....................................................................................................3

Argument .....................................................................................................................5

POINT I.      THE COURT MUST STRIKE THE DECLARATION
              OF VICTOR G. REILING AND ANY PORTION OF
              PLAINTIFFS' OBJECTION WHICH RELIES UPON IT ........................5

POINT II.     PLAINTIFFS HAVE FAILED TO RAISE A TIMELY
              OBJECTION TO THE MAGISTRATE'S DETERMINATION
              THAT THEIR DISCOVERY DEMANDS WERE "OVERBROAD" ........8

POINT III.    THE MAGISTRATE'S RULING WAS NOT "CLEARLY
              ERRONEOUS OR CONTRARY TO LAW" ..............................................9

              A.     The Applicable Standard of Review .................................................9

              B.     Plaintiffs Have Failed to Identify or Demonstrate
                     Any "Clear Error" in the Magistrate's Ruling .............................11

POINT IV.     THE DOCUMENT REQUESTS AT ISSUE ARE
              IRRELEVANT, OVERBROAD AND UNDULY BURDENSOME .......13

              A.     Fisher-Price's Agreements With Other
                     Inventors Are not Relevant to Plaintiffs' Claims..........................13

              B.     The Documents Sought by Plaintiffs Will
                     Not Demonstrate Custom in the Industry .....................................15

                     1.     Fisher-Price's royalty obligations to
                            other outside inventors are governed
                            by particular license agreements......................................17

                     2.     The practices of one industry participant
                            cannot demonstrate custom and practice. ..........................18

i

Table of Contents
(continued)

Page

3.  Review of outside inventor submissions and
    agreements would require a series of mini-trials ....................19

C.  Documents Relating to Other Outside Inventors
    Are not Related to Fisher-Price's "Non-Use" Defense.................20

D.  Even if Other Agreements Were Relevant, the Burden
    to Fisher-Price Outweighs Any Probative Value...........................21

Conclusion ........................................................................................................22

ii