IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

```
-----------------------------------------------------x
                                     :
VICTOR G. REILING ASSOCIATES and     :
DESIGN INNOVATION, INC.              :        3:03 CV 222 (JBA)
                                     :
v.                                   :
                                     :
                                     :
FISHER-PRICE, INC.                   :        DATE: SEPT. 28, 2004
-----------------------------------------------------x
```

RULING ON PENDING MOTIONS

_____On March 8, 2004, U.S. District Judge Janet Bond Arterton referred this file to this Magistrate Judge for discovery purposes. (Dkt. #59). Familiarity is presumed with this Magistrate Judge's Ruling on Plaintiffs' Motion to Compel and on Defendant's Motion to Compel, filed April 27, 2004 (Dkt. #71)["April Ruling"]. In denying plaintiff's Motion to Compel, the April Ruling held that documents referring or relating to outside submissions made to Fisher-Price from 1996-2000 are not relevant and defendants' production of such documents would be unduly burdensome. (See Dkt. #71, at 3-7).[1]

On May 17, 2004, plaintiffs filed their Objection to Ruling on Plaintiffs' Motion to Compel[2] in which they "submit that the requested documents are highly relevant, specifically with regard to their implied-in-fact contract claim, as made clear by . . . Nadel v. Play-By-Play Toys & Novelties, Inc., 208 F.3d 378, 377 (2d Cir. 2000)." (Dkt. #72, at 1). That same day,

_____

[1]The April Ruling also granted in part defendant's Motion to Compel.

[2]In the body of their Objection, plaintiffs state that they "respectfully object to the Magistrate Judge's recommended ruling, dated April 27, 2004." (Dkt. #72, at 1). The April Ruling was a non-dispositive ruling on discovery and thus is not a recommended ruling. (See Dkt. #71).

Plaintiffs do not object to the portion of the Magistrate Judge's April Ruling granting defendant's Motion to Compel in limited part. (See Dkt. #72, at 1, n.1; see note 1 supra).

plaintiffs filed an affidavit of Victor G. Reiling, dated May 13, 2004 (Dkt. #73)["Reiling Aff't"].[3] On June 1, 2004, defendant filed its Cross-Motion to Strike the affidavit, and brief in support of its motion and in opposition to plaintiff's Objection.  (Dkts. ##74-75).[4]  Three weeks later, plaintiffs filed their Motion to Strike Defendant's Memorandum in Opposition, and brief in opposition to defendant's cross-motion to strike and in support of plaintiffs' own motion to strike.  (Dkts. ##76-77).[5]  On July 6, 2004, defendant filed its brief in opposition to plaintiff's motion to strike.  (Dkt. #78).

Because plaintiffs' Objection raises new factual and legal issues not previously presented to the Magistrate Judge, including citation to the Nadel decision (see Dkt. #72, at 6, n.2), the Objection is construed as a Motion for Reconsideration.[6]  For the reasons stated below, plaintiffs' Motion for Reconsideration (Dkt. #72) is granted, but the Court adheres to the conclusions reached in the April Ruling; defendant's Cross-Motion to Strike (Dkt. #74) is denied; and plaintiffs' Motion to Strike (Dkt. #76) is denied.

---

[3]Attached to the affidavit are excerpts from the Mattel 2003 Annual Report (Exh. A); excerpts from the Toy Industry Association, Inc. website (Exh. B); and excerpts from the Hasbro 2003 Annual Report (Exh. C).

[4]Attached as Exhibit A to defendant's brief are copies of case law.

[5]Attached to plaintiffs' brief (Dkt. #77) are copies of case law.

[6]Defendant is correct that when objecting to a Magistrate Judge's ruling, a party is not entitled to introduce new evidence to a district judge which was not previously presented before the Magistrate Judge; "such piecemeal presentation of evidence is exceptionally wasteful of the time" of the Magistrate Judge, District Judge and all counsel, and impermissibly allows the objecting part "a second bite at the [proverbial] apple." (Dkt. #75, at 6-7)(citations omitted).  However, in the interest of expediency, the Magistrate Judge will consider plaintiffs' new arguments.

I. DISCUSSION

A.  PLAINTIFFS' MOTION FOR RECONSIDERATION

Plaintiffs reassert that the their consolidated request,[7] or in the alternative, their request to receive the requested agreements in redacted form, or to receive the confirmation from defendant that the documents produced were for products on which a royalty was paid (Dkt. #72, at 4-5), are relevant and not unduly burdensome.  Specifically, plaintiffs contend that industry custom is relevant to plaintiffs' "implied-in-fact contract claim"[8] as plaintiffs may demonstrate mutual assent and the expectations of the parties at the time the submission was made by demonstrating the custom and practice in the industry.  (Dkt. #72, at 5-6). According to plaintiffs, "[b]ecause Fisher-Price accounts for nearly half of all sales in the pre-school market each year, its practices and procedures comprise a large portion of toy industry custom and practice."  (Id. at 8).   Moreover, plaintiffs contend that Fisher-Price's custom and practice is independently relevant as the "manner in which Fisher-Price has dealt

---

[7]The specific consolidated request for production was as follows:

All documents that refer or relate to outside inventor submissions made to Fisher-Price from 1996 through 2000 that have resulted in or have been incorporated into commercialized products (i.e., products offered for sale) by Fisher-Price, including, but not limited to: (a) documents reflecting each such submission and the corresponding concept disclosure forms; (b) any option agreement or license agreement relating thereto; and (c) a sample of the final product or catalog page depicting the final product commercialized by Fisher-Price.

(See Dkt. 72, at 4).

[8]Plaintiffs point out that the April Ruling determined that the documents sought "are irrelevant to whether plaintiffs' submissions were incorporated into the final product." (Dkt. #71, at 7; Dkt. #72, at 5).  Plaintiffs contend that this analysis "seemingly focused on [p]laintiffs' misappropriation claim, when in fact their breach of an implied-in-fact contract claim is equally important . . . [and] [i]ndustry custom and practice is an essential element of that claim."  (Dkt. #72, at 5).

The April Ruling is reflective of plaintiffs' assertions in their previously filed Motion to Compel, in which the focus differs in part from that asserted now.

with others in the close-knit inventor community forms industry custom and practice." (Id.). Plaintiffs also contend that the requested documents are relevant to defendant's non-use defense, which defense is supported by defendant's expert's testimony that a comparison of the design features of the Rescue Heroes products with plaintiffs' submissions "demonstrates that Fisher-Price did not make use of [p]laintiffs' submission." (Id. at 9-10). Finally, plaintiffs assert again that the requests are not unduly burdensome, but should the Court determine that they are relevant but unduly burdensome, plaintiffs would "further limit their request to documents relating to Fisher-Price's three top selling products that were based on outside inventor submissions for each year during the five year period for which [p]laintiffs have requested documents." (Id. at 10-11).

As defendants correctly respond, many of plaintiffs' contentions are mere reiterations of their assertions made in the underlying proceeding[9] (See Dkt. #75, at 13-22); accordingly, this ruling will not entertain further analysis of previously decided issues for which plaintiffs

---

[9]The Court notes the similarity of plaintiffs' current assertions with those set forth in plaintiffs' Motion to Compel, filed March 3, 2004. The April Ruling observed that according to plaintiffs,

> the Requests for Production are relevant and material, as one of defendant's defenses is that defendant did not use plaintiffs' concepts and thus plaintiffs are entitled to review past submissions made by outside inventors to defendant, any resulting agreements, and the final products that defendant ultimately commercialized; the documents will demonstrate that the custom and practice in the industry has been to compensate inventors and designers for the underlying concept in its various product line manifestations regardless of revisions, enhancements and changes made by the toy company subsequent to submission; the documents will demonstrate the extent to which defendant has considered past products offered for sale by the company to use, be based on or influenced by concept submissions from outside toy inventors; and the Requests are limited only to products that were actually commercialized and are limited to outside inventor submissions made by defendant during a specific five year period of time. Plaintiffs argue that past submissions, resulting agreements, and the final products ultimately commercialized have "probative value as to the extent to which [d]efendant has considered past products that it has commercialized to 'read on' the corresponding concept submissions from outside inventors."

(Dkt. #71, at 4-5)(citations omitted).

4

have offered no support contrary to that which was before the Court for the April Ruling.[10] Therefore, the Court will address only plaintiffs' assertions relating to their implied-in-fact contract claim and the alleged relevance of custom and practice in the industry in light of the <u>Nadel</u> case, a case not previously cited or referenced by plaintiffs.

In Count One of their Amended Complaint (Dkt. #16), plaintiffs allege a breach of implied-in-fact contract, which is governed by state law. In support of this count, plaintiffs rely upon the Reiling Affidavit. In his affidavit, Reiling avers as follows: that defendant Fisher-Price is a wholly-owned subsidiary of Mattel, Inc. ["Mattel"], one of the largest toy companies in the world; that the only other significant toy company in this country is Hasbro; that "the toy industry has become dominated by . . . Mattel/Fisher-Price and Hasbro" and that "[t]here is a wide gap in sales between these companies and the next tier of toy companies"; that the products at issue in this litigation are marketed for pre-school age children; and that "Fisher-Price is, by far, the most recognized name in the pre-school market." (Reiling Aff't ¶¶3, 5-7 & Exhs. A-C). From this, Reiling concludes:

> Because Fisher-Price accounts for nearly half of all sales in the pre-school market each year, its practices and procedures comprise a large portion of the toy industry custom and practice. Fisher-Price's custom and practice is, to a large extent, industry custom and practice, especially with respect to the pre-school market.

(Reiling Aff't ¶ 8).

The Second Circuit in <u>Nadel</u> applied New York law to that plaintiff's claim that defendant breached an express or implied-in-fact contract by using plaintiff's idea. 208 F.3d

---

[10]The April Ruling concluded that "plaintiffs' request is overbroad as it encompass <u>all</u> products commercialized by defendant, production of such documents would place an undue burden on defendant, and such documents are irrelevant to whether plaintiffs' submissions were incorporated into the final product." (Dkt. #71, at 6-7)(emphasis in original). Notwithstanding plaintiffs' current reliance on the <u>Nadel</u> case, plaintiffs have offered no support that this conclusion is clearly erroneous or contrary to law. Accordingly, this ruling on reconsideration will address only plaintiffs' assertions relating to the alleged relevance of custom and practice in the industry in light of the <u>Nadel</u> case.

at 373.   In that case, as in this case, in the absence of a pre-disclosure agreement to pay

for a disclosed idea, "the idea seller . . . argue[d] in the alternative, . . . that the parties

entered into an agreement implied-in-fact."  Id. at 377, n.5.

> Applying New York law, the Second Circuit held:
>
> Unlike an express contract, an implied-in-fact contract arises when the agreement and promise have simply not been expressed in words, but a court may justifiably infer that the promise would have been explicitly made, had attention been drawn to it. . . .   An implied-in-fact contract requires such elements as consideration, mutual assent, legal capacity and legal subject matter.  The existence of novelty to the buyer only addresses the element of consideration necessary for the formation of the contract.  Thus, apart from consideration, the formation of contract implied-in-fact will depend on the presence of the other elements.  The element of mutual assent, for example, may be inferred from the facts and circumstances of each case, including such factors as the specific conduct of the parties, industry custom, and course of dealing.

Id. (multiple internal citations & quotations omitted).[11]

Although "Connecticut courts have not yet decided a case concerning the

misappropriation of an idea" in an implied-in-fact contract claim, Senior United States District

Judge Alfred Covello has concluded that the elements for a misappropriation claim are the

existence of a "legal relationship . . . between the parties," and a "novel and concrete" idea.

Ball v. Hershey Foods Corp., 842 F. Supp. 44, 47 (D. Conn.)(citation omitted), aff'd mem.,

14 F.3d 591 (2d Cir. 1993).

As the April Ruling found, "[t]he issue in this litigation is whether defendant

---

[11]The remainder of the ruling focuses on the issue of novelty to a buyer, and on this issue the Second Circuit concluded that "New York law in submission-of-idea cases is governed by the following principles: Contract-based claims require only a showing that the disclosed idea was novel to the buyer in order to find consideration . . . [and] [s]uch claims involve a fact-specific inquiry that focuses on the perspective of the particular buyer."  Id. at 380.  The Second Circuit also noted that "[i]n order to recover for breach of contract, a plaintiff must demonstrate some nexus or causal connection between his or her disclosure and the defendant's use of the idea. . . . " Id. at 380, n.10. This case, therefore, is integral to the analysis of a case involving the novelty of an idea; however, this case in relation to the case at bar, as defendant correctly notes, at most supports plaintiffs' position that demonstrating mutual assent in an implied-in-fact contract can be shown by industry custom and practice.(See Dkt. #75, at 11).

incorporated plaintiffs' concepts and after doing so, failed to pay plaintiffs a royalty." (Dkt. #71, at 5-6)(emphasis in original). Moreover, the April Ruling concluded that "it is not custom and practice that determines the payment of a royalty to the inventors for the use of the inventors' concept or for products based on or influenced by the concept. . . ." (Id. at 6). Rather, it is defendant's practice that "the payment of the royalty is determined on a case-by-case basis after a review of a submission results in its selection for further development, and possibly manufacture and sale at which time defendant negotiates an individualized license agreement." (Id.). Plaintiffs have offered no authority supporting their assertion that the individually negotiated licenses involving non-parties demonstrate custom and practice. Even assuming arguendo that defendant is a key player in the toy industry, and in particular, the pre-school market, the "practice of one company . . . is generally insufficient to establish trade usage." British Int'l Ins. Co. v. Seguros La Republica, S.A., 342 F.3d 78, 84 (2d Cir. 2003)(citations omitted).

Moreover, as stated above, "[a]n implied-in-fact contract requires such elements as consideration, mutual assent, legal capacity and legal subject matter," Nadel, 208 F.3d at 377, n.5. The "existence of novelty to the buyer . . . addresses the element of consideration necessary for the formation of the contract." Id. Again, assuming arguendo that the individually negotiated licenses demonstrate industry custom and practice (which assumption the Court declines to make), in the absence of evidence of consideration, the Second Circuit's decision in Nadel does not compel discovery into industry custom and practice.

As the April Ruling concluded, "[p]laintiff Design Innovation never entered into a licensing agreement with defendant for the product at issue and because of the individualized nature of the licensing agreement process, the only relevant concept submission and

7

resulting agreement or lack thereof, is that of plaintiffs."[12]  (Dkt. #71, at 6)(citations omitted).

Thus, neither <u>Nadel</u> decision nor the Reiling Affidavit alters this conclusions reached in the April Ruling.

## B. MOTIONS TO STRIKE

Both defendant's Motion to Strike (Dkt. #74) and plaintiff's Motion to Strike (Dkt. #76) are <u>denied</u>.

## II. CONCLUSION

For the reasons set forth above, plaintiffs' Motion for Reconsideration (Dkt. #72) is <u>granted, but the Magistrate Judge adheres to the conclusion reached in the April Ruling</u>, defendant's Cross-Motion to Strike (Dkt. #74) is <u>denied</u>, and plaintiffs' Motion to Strike (Dkt. #76) is <u>denied</u>.[13]

This is not a Recommended Ruling but a Ruling on discovery, the standard of review of which is specified in 28 U.S.C. § 636; FED. R. CIV. P. 6(a), 6(e) & 72; and Rule 2 of the Local Rules for United States Magistrate Judges.  As such, it is an order of the Court unless reversed or modified by the District Judge upon timely made objection.

<u>See</u> 28 U.S.C. § 636(b)**(written objections to ruling must be filed within ten days after service of same);** FED. R. CIV. P. 6(a), 6(e) & 72; Rule 2 of the Local Rules for United

---

[12]Moreover, the April Ruling noted that the positions offered by plaintiffs were

inconsistent as . . .  plaintiffs contend that the projects upon which the inventors work are often not "readily apparent" in the ultimate products.  Thus, production of documents submitted by inventors, copies of agreements or even assurances by defendants that the documents produced relate to submissions on which a royalty was paid, and according to plaintiffs' own assertions, samples of the ultimate commercialized product will not clearly establish that a concept has been incorporated into the final product, deserving of a royalty payment.

(Dkt. #71, at 6, n.7)(citations omitted).

[13]Again, as offered in the April Ruling (at 9, n.10), if any counsel believes that a settlement conference before this Magistrate Judge would be productive, he or she should contact Chambers accordingly.

States Magistrate Judges, United States District Court for the District of Connecticut; <u>Small</u> <u>v. Secretary, H&HS</u>, 892 F.2d. 15, 16 (2d Cir. 1989)**(failure to file timely objection to Magistrate Judge's recommended ruling may preclude further appeal to Second Circuit).**

      Dated at New Haven, Connecticut, this 28th day of September, 2004.


                        _____/s/_____
                        Joan Glazer Margolis
                        United States Magistrate Judge