**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| VICTOR G. REILING ASSOCIATES and DESIGN INNOVATION, INC., | : |
| | : |
| Plaintiffs, | : |
| | : Civil No. 303 CV 222(JBA) |
| v. | : |
| | : |
| FISHER-PRICE, INC. | : |
| | : |
| Defendant. | : MAY 2, 2005 |
| | : |

## LOCAL RULE 56(a)1 STATEMENT

Pursuant to Rule 56(a)1 of the Local Rules of this Court, Fisher-Price, Inc. submits this statement of material facts as to which there is no genuine issue to be tried.

**The Parties**

1.     Fisher-Price is engaged in the business of designing, marketing, and selling toys and juvenile products, including action figures. Declaration of Stan Clutton, dated April 27, 2005 (the "Clutton Dec."), ¶ 2.

2.     Fisher-Price employs internal designers and engineers who are responsible for the design and engineering of the vast majority of its products. Clutton Dec. ¶ 2.

3.     Fisher-Price also receives product submissions on an unsolicited basis from certain outside independent inventors. It reviews approximately 2,000 such submissions annually. Clutton Dec. ¶ 3.

- 2 -

4.     Fisher-Price accepts product submissions only from pre-approved independent inventors. In the years leading up to 1998 and thereafter, Fisher-Price required all inventors making submissions to execute its "Policy and Agreement concerning Ideas Submitted by Persons Outside of Fisher-Price, Inc." which set forth the terms on which submissions are accepted for review. Clutton Dec. ¶ 3. The Policy and Agreement included terms providing that Fisher-Price would not treat submissions as confidential and disclaimed any implied obligations to inventors. Declaration of Robert J. Lane, Jr., dated April 29, 2005 (the "Lane Dec."), Exhibit 17.

5.     Because of the volume of submissions, it is important that Fisher-Price have a record of what each inventor showed it. To document submissions from an outside inventor, Fisher-Price asked the inventor to complete a "Concept Submission Form," which requested that the inventor "[p]lease help us to distinguish your concepts *by fully describing each and indicating its unique features.*" Clutton Dec. ¶ 4; Lane Dec., Exhibit 24.

6.     The Concept Submission Form also included a designated space for the inventor to identify the *"Description and Unique Feature(s)/Technology,"* where the inventor was instructed: "The description of *the submitted ideas and/or technology incorporated must be carefully defined* in the description/unique feature(s) area below." Lane Dec., Exhibit 24.

7.     Victor Reiling, principal of Victor G. Reiling Associates, is a "toy industry veteran" who was employed at Fisher-Price from 1970 through 1974 as a design group manager. Second Amended Complaint ("SAC") ¶ 12.

- 3 -

8.      Reiling was also employed by Milton Bradley where he was responsible for reviewing inventor submissions. Lane Dec., Exhibit 4 at 18-21.

9.      Reiling began working as an inventor in 1977. He has licensed products to more than thirty-five toy companies (some of which licensed more than one product from him) and has obtained more than twenty patents. Lane Dec., Ex. 4 at 12, 24-25, 53, 93-94. From 1986 through May 2001, Reiling had approximately 50 meetings with Fisher-Price. Each of these meetings was governed by a Fisher-Price Policy and Agreement. Lane Dec. ¶ 7, Exhibits 16 & 17. Each of the Policy and Agreement forms signed by Reiling contained provisions that the submissions were not made on a confidential basis and that Fisher-Price assumed no implied obligation as a result of any disclosure. Lane Dec., Exhibit 17.

10.      Design Innovation is an independent design group. SAC ¶ 14. In the past, Design Innovation provided modeling and design services to Fisher-Price on a project-by-project, work-for-hire basis. Clutton Dec. ¶ 13.

11.      There is no contract between Design Innovation and Fisher-Price containing any continuing obligation of Fisher-Price to hire Design Innovation and there has never been such a contract. Clutton Dec. ¶ 13.

12.      Design Innovation's work-for-hire projects for Fisher-Price included work on the Rescue Heroes line and, more specifically, work on the Optic Force figures at issue in this case. Lane Dec., Exhibit 8 at 35-36.

- 4 -

**The Rescue Heroes Action Figures**

13.    In the late 1990s, internal designers at Fisher-Price, including Ken
Morton, Tyler Berkheiser, and Peter Pook, developed a line of action figures with rescue-related
identities which were attractive both to preschoolers and to their parents.  Declaration of Tyler
Berkheiser, dated April 27, 2005 (the "Berkheiser Dec."), ¶ 3.   These figures were eventually
marketed and sold under the name "Rescue Heroes."  Berkheiser Dec. ¶ 3.  The Fisher-Price
"Boys Team" (which is responsible for the design of products for boys aged 3 to 6) was
responsible for Rescue Heroes.  *Id.*

14.    The Rescue Heroes are a team of characters with specific rescue-related
identities such as Billy Blazes (firefighter), Jake Justice (police officer), Gil Gripper (scuba
diver), etc.  Rescue Heroes figures were first sold to the public in December 1997.  Berkheiser
Dec. ¶¶ 5-6.

15.    The first Rescue Heroes were known as "basic" figures.  They did not
have any speech or sound effect capability.  Berkheiser Dec. ¶ 7.  The basic figures have
continued since the inception of Rescue Heroes, and many different sub-lines have been
introduced over the last six years.  Berkheiser Dec. ¶¶ 7-8.

16.    Shortly after the introduction of the Rescue Heroes figures, the Boys Team
designers began pursuing the goal of creating a premium line of Rescue Heroes that would
communicate and interact with the figures.  Berkheiser Dec. ¶ 10.

- 5 -

**Plaintiffs' Submissions**

17.     In October 1998, Reiling, acting on behalf of himself and Design Innovation, met with Paul Snyder, Fisher-Price's inventor relations representative, to present the "Reel Heroes concept." SAC ¶¶ 19-24.

18.     Before coming to the meeting, Reiling completed a Fisher-Price "Concept Submission Form" describing the Reel Heroes concept. Lane Dec. ¶ 15, Exhibit 4 at 43-45, Exhibit 24.

19.     On the Concept Submission Form, Reiling provided a detailed description of the Reel Heroes concept under the heading:  "Description and Unique Feature(s)/Technology." Lane Dec., Exhibit 24.

20.     On the Concept Submission Form, Reiling described the Reel Heroes concept in his own handwriting as follows:

> Batt[ery] op[erated] film strip units for each Rescue Hero & dedicated 'TV' and adventure photog[rapher]/ reporter.  Can be expande[d] to include TV projection truck.  Hand held camera has shutter opened by child and look-in viewer.

Lane Dec., Exhibit 24.

21.     The spelling of "Reel" (R-E-E-L) was intended to emphasize that the Reel Heroes concept included the use of a film reel.  Lane Dec., Exhibit 5 at 39.

22.     Plaintiffs' submissions did not propose or conceive of a new product, but suggested a modification or variation to pre-existing Rescue Heroes figures.  SAC ¶ 18.

- 6 -

23.    Plaintiffs' first submission in late 1998 (the "1998 Submission") included

drawings and a prototype comprising an existing Rescue Heroes firefighter character with a

backpack (like all other Rescue Heroes), which contained a film cassette.  To view the film, the

child placed one eye up to a magnifying lens and looked into the backpack.  SAC, Exhibit C.

This submission was not solicited by Fisher-Price.  Lane Dec., Exhibit 3 at 44-45, Exhibit 7 at

38.

24.    In early 1999, Fisher-Price and plaintiffs negotiated and executed an

Option Agreement under which plaintiffs granted to Fisher-Price an exclusive three-month

option to license plaintiffs' concept.  Lane Dec., Exhibit 25.

25.    In Exhibit A to the Option Agreement, plaintiffs and Fisher-Price agreed

to the following definition of the Reel Heroes concept:

> Submitted concept extends cartoons to action figures play
> pattern.  *The concept is a battery operated film reel that is
> activated when the child pushes a button on the backpack
> of the action figure.*  The child may then look through the
> viewer on the backpack to see the film.  The concept may
> include a hand-held "camera" with shutter that is operated
> by the child.  The concept may be incorporated into the
> assorted Fisher-Price Rescue Heroes action figures.  *The
> unique aspect of the concept is the combination of
> existing action figures with film for play pattern.*

Lane Dec., Exhibit 25.

26.    The Option Agreement included all of the material terms of a license in

the event that Fisher-Price exercised the option:  the term of the license was perpetual; it was

exclusive and the geographic scope was worldwide; and plaintiffs would be compensated with a

- 7 -

3% royalty if their submission was used in the Rescue Heroes line.  Lane Dec., Exhibit 12 at

229-32, Exhibit 26 ¶¶ 26, 69.

     27.     Fisher-Price did not exercise its option.  SAC ¶ 22.

     28.     Plaintiffs' prototype was shown by Ken Morton, then the Design Manager

of the Boys Team, to two other Boys Team members, Tyler Berkheiser and Chris Pardi.  Lane

Dec., Exhibit 13 at 135-38; Berkheiser Dec. ¶ 31.

     29.     Morton, Pardi, and Berkheiser agreed that the prototype did not fit the

planned direction for development of the Rescue Heroes line, was too passive for preschooler

play, and would be far too expensive to manufacture.  Lane Dec., Exhibit 14 at 64-70, Exhibit 13

at 135-38; Berkheiser Dec. ¶ 30-31.

     30.     Neither Morton nor Berkheiser believed the prototype was unique.  Lane

Dec., Exhibit 14 at 64-70; Berkheiser Dec. ¶ 31.

     31.     In March 1999, Fisher-Price rejected plaintiffs' 1998 Submission.  SAC

¶ 22 & Exhibit G.

     32.     Plaintiffs re-submitted their concept, again on an unsolicited basis, in May

1999 (the "1999 Submission").  That submission consisted of a drawing (no prototype) of a

Rescue Heroes Billy Blazes figure with a backpack-shaped viewer which included a tinted

housing containing a drum with approximately twenty still action frames showing Rescue Heroes

characters.  SAC, Exhibit H.

- 8 -

33.     These frames were advanced sequentially by means of a hand crank and could be viewed only by placing one eye up to a magnifying lens and looking inside the backpack.  SAC, Exhibit H.

34.     No Boys Team designer saw the 1999 Submission.  Berkheiser Dec. ¶ 33.

35.     Fisher-Price rejected this submission in July 1999.  SAC ¶ 23; Lane Dec., Exhibit 3 at 119.

36.     Plaintiffs submitted their concept, again on an unsolicited basis, for a third time in December 2000 (the "2000 Submission"), nineteen months after their 1999 Submission. SAC ¶ 24.

37.     The 2000 Submission included drawings showing an action figure with a backpack and a digital camera device (which the figure held in its hand) containing a Viewmaster-style film disk with six or more images.  SAC, Exhibit I.

38.     The images could be viewed only by placing one eye up to a magnifying lens and looking into the interior of the backpack or into the digital camera device.  The images were advanced by pushing a lever.  SAC, Exhibit I.

39.     No Boys Team designer saw the 2000 Submission.  Berkheiser Dec. ¶ 33.

40.     Fisher-Price rejected the 2000 Submission in January 2001.  SAC ¶ 25 & Exhibit J.

- 9 -

41.    Plaintiffs claim that their submissions (at least the 1998 and 2000 Submissions) included a second independent concept of a TV cameraman holding a TV camera. SAC ¶ 18.  The camera was designed with a window on top, through which the child could look to see out of the camera lens — giving the impression that he was viewing what the cameraman figure was "filming."  SAC, Exhibits B & C; Bollinger Dec. ¶ 46.

42.    The concept of a cameraman action figure holding a camera in his hand was not novel in 1998.  Lane Dec., Exhibit 5 at 57; Bollinger Dec. ¶ 47.

43.    Fisher-price made and sold to the public an action figure cameraman with a camera that was functionally the same as the camera in the hand of the Filmore Shotz action figure character shown by plaintiffs to Fisher-Price (*i.e.,* the child could look through the camera to see what the cameraman was "filming").  Bollinger Dec. ¶ 47.

**The Accused Products**

44.    The premium Rescue Heroes figure line focused on the goal of bringing communication and interactivity to the figures.  Berkheiser Dec. ¶ 10.  The premium figures were marketed under the "Voice Tech" name.  Berkheiser Dec. ¶ 11.

45.    When the child pressed a button, the figure would speak, saying something related to the disaster associated with that figure.  Berkheiser Dec. ¶ 11.

46.    The first Voice Tech figures were introduced in early 2000.  Plaintiffs have not asserted a claim relating to these figures.  *See* SAC.

- 10 -

47.    Variations (or "sub-lines") to the Voice Tech figures were introduced in 2001, 2002, and 2003. Berkheiser Dec. ¶ 13. The new sub-lines changed the configuration of the figure's backpacks and were primarily intended to improve interactivity between the figures (*i.e.*, provide different ways to get them to talk to each other or, at least, to speak about the same thing). Berkheiser Dec. ¶¶ 11-13.

48.    Plaintiffs have asserted claims against three of the Voice Tech sub-lines. SAC ¶ 28, 35, 38. Plaintiffs have also asserted claims against certain Rescue Heroes playsets and vehicles and against its "Optic Force" figures. SAC ¶¶ 35-37.

49.    Fisher-Price introduced the Voice Tech Mission Command figure sub-line, which were designed by Tyler Berkheiser, in early 2001. Berkheiser Dec. ¶ 15.

50.    The Mission Command figures came with a card that carried a computer chip which stored speech. The card could be inserted into the figure's backpack and, like the Voice Tech figures, when a button was pressed, the figure would say something related to a rescue mission. Each figure's card was unique to that figure; the fireman figure came with a card with a decal showing a burning building, the construction worker came with a card showing a road cracking from an earthquake, etc. The decal on the card identified the subject of the speech stored in the chip. The mission cards could be switched to any figure. Thus, although the earthquake card was sold only with the construction worker figure, it could be placed in the fireman's backpack and the fireman would then speak about an earthquake. This allowed the child, by moving the card from figure to figure, to have them all talk about the same "mission." Berkheiser Dec. ¶¶ 15-17.

- 11 -

51.    The Aquatic Rescue Command Center (the "ARCC"), which was introduced in late 2001, is an aircraft carrier playset. Berkheiser Dec. ¶ 19.

52.    James Bauman, a designer on the Boys Team, designed the ARCC. *See* Declaration of James Bauman, dated April 27, 2005 (the "Bauman Dec."), ¶ 2.

53.    During the design phase of the ARCC, Carterbench/Virtual Video, an independent outside inventor, submitted to Fisher-Price its technology for a lenticular lens mechanism which is synchronized with sound so that a two-dimensional picture of a character appears to be talking. Berkheiser Dec. ¶ 19.

54.    The Boys Team was excited about the technology and added it as a feature of the ARCC. Berkheiser Dec. ¶¶ 18-19.

55.    Fisher-Price pays Carterbench/Virtual Video a royalty on sales of the ARCC. Clutton Dec. ¶¶ 10-11.

56.    Introduced in 2002, the Voice Tech Video Mission figure sub-line features speech related to rescue missions. Berkheiser Dec. ¶ 20. Each figure's backpack also includes a picture related to the Rescue Heroes character (*e.g.*, Billy Blazes' backpack has a picture of a burning building, Matt Medic's backpack has a picture of an x-ray, etc.). Berkheiser Dec. ¶ 20.

57.    Jim Bauman designed the Voice Tech Video Mission backpacks with the assistance of Jeff Neaves, a Fisher-Price engineer, and Carterbench/Virtual Video. Berkheiser Dec. ¶ 20; Bauman Dec. ¶ 3.

- 12 -

58.     Carterbench/Virtual Video was paid a royalty on the Voice Tech Video Mission figures.  Clutton Dec. ¶ 11.

59.     Fisher-Price introduced the Voice Tech Mission Select figures in early 2003.  Berkheiser Dec. ¶ 21.

60.     The Mission Select Rescue Heroes figures sub-line represented a further advance toward reaching the Boys Team's goal of speech interactivity among the figures.  *Id.*

61.     Former Fisher-Price designer Brian Trzeciak designed the Mission Select figures, assisted by James Bauman.  *Id.*

62.     Each figure came with a dial on the figure's backpack.  The dial allowed the child to *"select"* among the six scenarios that form the core of the Rescue Heroes storyline (fire, earthquake, flood, avalanche, volcanic eruption, tornado).  Berkheiser Dec. ¶ 22.

63.     The Mountain Action Command Center ("MACC") is a large playset for Rescue Heroes figures.  When a button is pressed, voices of particular Rescue Heroes relay spoken messages about rescue missions.  Berkheiser Dec. ¶ 22.

64.     The MACC includes a Mission Select dial so the child can coordinate the disasters on the MACC to the disasters selected on the Mission Select figures.  The MACC was designed by James Bauman.  *Id.*

65.     The Rescue Heroes line of toys has included vehicles for use with the figures from the line's inception in 1997.  Berkheiser Dec. ¶ 23.

- 13 -

66.     In summer 2000, Fisher-Price introduced the Voice Tech Jet and Firetruck. *Id.* The Voice Tech Police Cruiser was first sold in 2003. *Id.*

67.     There was a receptacle in the seat of the vehicles that would receive a Voice Tech figure and activate a speech feature. *Id.*

68.     These vehicles, along with all other Rescue Heroes vehicles, are compatible with all Rescue Heroes figures, not only the figures at issue in this case. Berkheiser Dec. ¶ 23.

69.     The Voice Tech vehicles do not include any images or pictures. Berkheiser Dec., Exhibit J.

70.     The Mission Select Firetruck and Police Cruiser were designed by Fisher-Price designer Devin Roberts. He added the Mission Select dial to the existing Voice Tech Firetruck and Police Cruiser. Berkheiser Dec. ¶ 24.

71.     When a figure with speech capability is inserted in the vehicle, it will talk about the scenario specified on the dial. *Id.*

72.     The Mission Select Firetruck and Police Cruiser are compatible with all Rescue Heroes figures. *Id.*

73.     Fisher-Price introduced the "Optic Force" sub-line of basic figures in October 2003. They are not part of the "Voice Tech" line and have no sound or speech capability. Each "Optic Force" figure comes with some type of optical tool or accessory, such as

- 14 -

a microscope, periscope, camera, etc. Berkheiser Dec. ¶¶ 25-28. None of these figures include a film reel or film. Declaration of Howard Bollinger, dated April 28, 2005 (the "Bollinger Dec.") ¶ 29.

74.    The Optic Force Rescue Heroes are based on a "Team Optics" submission from BangZoom, an independent inventor, which is being paid royalties on the Optic Force Rescue Heroes figures. Berkheiser Dec. ¶¶ 25-26; Clutton Dec. ¶ 12; Lane Dec., Exhibit 15 at 16-17.

**Plaintiffs' Definitions of
the Reel Heroes Concept**

75.    On the Concept Submission Form for the Reel Heroes concept, Victor Reiling described the "unique features" of the Reel Heroes concept as follows:

> Batt[ery] op[erated] film strip units for each Rescue Hero & dedicated 'TV' and adventure photog[rapher]/reporter. Can be expanded to include TV projection truck. Hand-held camera has shutter opened by child and look-in viewer.

Lane Dec., Exhibit 24.

76.    Reiling wrote this description himself, in his own handwriting, and signed it. Lane Dec., Exhibit 3 at 37 & Exhibit 24.

77.    The description of Reel Heroes on the Concept Submission Form was written without any input from Fisher-Price. Lane Dec., Exhibit 4 at 44.

- 15 -

78.    The first paragraph of the Option Agreement provides that it relates to "the Reel/Real Heroes concept as is more completely described in the attached Exhibit A." Exhibit A to the Option Agreement defines the Reel Heroes concept as follows:

> Submitted concept extends cartoons to action figures play pattern. The concept is a battery-operated film reel that is activated when the child pushes a button on the backpack of the action figure. The child may then look through the viewer on the backpack to see the film. The concept may include a hand-held "camera" with shutter that is operated by the child. The concept may be incorporated into the assorted Fisher-Price Rescue Heroes action figures. The unique aspect of the concept is the combination of existing action figures with film for play pattern.

Lane Dec., Exhibit 25 (Exhibit A).

79.    By executing the Option Agreement, plaintiffs agreed that the definition of the Reel Heroes concept in Exhibit A to the Option Agreement was accurate and complete and was binding upon them. Lane Dec., Exhibit 25 (Exhibit A); Clutton Dec. ¶ 8.

80.    In their original complaint and their second amended complaint, plaintiffs defined the Reel Heroes concept as follows:

> Plaintiffs' basic concept was to integrate Fisher-Price's successful "Rescue Heroes" figures and cartoon-like images by using a removable backpack that could be made for a specific character. It was designed to mount to each "Rescue Heroes" figure and show animated images of that character in action. For example, a firefighter would be shown putting out a fire or rescuing a child from a building. The animated images enrich the role-playing that a child often enjoys when using toy action figures. The backpack is a battery-operated film strip/disc player with a viewer. By looking through the small viewer and pressing a button,

- 16 -

> the child could see the "countless Rescue Hero adventures."

January 31, 2003 Complaint ¶ 30(A); SAC ¶ 30(A).

81.     Plaintiffs' expert James Kipling defined plaintiffs' Reel Heroes concept as follows:

> A device associated with a Rescue Heroes figure (for example, part of a backpack) for visually communicating to the mind of a child a cue or prompt for role-playing in which the child would use the Rescue Heroes figure and imagine accomplishing a mission assignment, resolving a dangerous situation, performing a rescue or engaging in some other adventurous pretend scenario.

Lane Dec., Exhibit 26 ¶ 11

82.     The Reel Heroes concept does not require that the images or visual cues be located on an action figure's backpack.  Lane Dec., Exhibit 4 at 165 & 223-24, Exhibit 9 at 21-22, Exhibit 11 at 137-38, Exhibit 6 at 46-47.

83.     Plaintiffs' 2000 Submission depicts a photographer action figure holding a digital camera in his left hand; the digital camera contains a Viewmaster disk of images showing the character.  In that depiction of the Reel Heroes concept, the digital camera is the "device associated with a Rescue Heroes figure" referenced in Kipling's definition  SAC, Exhibit I.

84.     The Reel Heroes concept is not limited to Rescue Heroes action figures, but includes other action figures such as Captain America or Spiderman.  Lane Dec., Exhibit 7 at 170-71, Exhibit 9 at 24, Exhibit 6 at 7-8.

- 17 -

85.     The Reel Heroes concept is not limited to action figures, but includes other products such as playsets and toy vehicles.  Lane Dec. ¶ 28(c).  *See also* Lane Dec., Exhibit 4 at 155.

86.     The Reel Heroes concept was submitted by plaintiffs to one of Fisher-Price's competitors, Toy Biz, for use in connection with its "Spiderman and Friends" line of superhero action figures.  Lane Dec., Exhibit 6 at 7, 9.  *See also* Lane Dec., Exhibit 35 at page 2.

87.     In his letter submitting the Reel Heroes concept to Toy Biz for its consideration, Design Innovation principal Bruce Popek stated that the concept "can be incorporated into assorted action figures *or vehicles*."  Lane Dec., Exhibit 36.

**Use of the Reel Heroes Concept**

88.     In all of plaintiffs' three submissions of the Reel Heroes concept, "the child had to put his or her eye up to a viewing lens in order to see the image inside the backpack."  Lane Dec., Exhibit 11 at 185-86.  Plaintiffs never disclosed to Fisher-Price "any embodiment of the [Reel Heroes] concept other than one in which a child put his eye up to a viewing lens to view an image inside the Rescue Hero figure's backpack."  *Id.* at 186.  *See also id.* at 187.

89.     Victor Reiling never showed Fisher-Price anything in connection with the three submissions of the Reel Heroes concept, other than a viewing mechanism that required the child to look through a lens to see a film inside a backpack (or, in the third submission, inside a toy digital camera).  Lane Dec., Exhibit 3 at 99-100, 116, 135-137.

- 18 -

90.     Fisher-Price never made a product using the designs shown in any of plaintiffs' three submissions. Lane Dec., Exhibit 11 at 237-38.

91.     Fisher-Price never made a product using the concept defined in Exhibit A to the Option Agreement. Lane Dec., Exhibit 11 at 192.

92.     The description of the Reel Heroes concept in Exhibit A to the Option Agreement accurately described the Reel Heroes concept as presented to Fisher-Price. Lane Dec., Exhibit 3 at 80-82.

**Prior Art**

93.     There are two pieces of prior art from the early to mid-1990s relating to "projector" action figures (*i.e.,* action figures that include mechanisms for projecting images of the figures' adventures):

a.      In 1993, Toy Biz introduced a line of superhero (*e.g.,* Spiderman, Wolverine, etc.) action figures known as "Projectors." Each figure came with three Viewmaster-style film disks, including 12 images. The disks were inserted into a projector device in the figure's chest. When activated, the device would project images from the disk through a lens in the figure's chest onto a nearby surface. The images showed the particular action figure in action, on an adventure, performing a mission, etc. Bollinger Dec. ¶ 37.

b.      In August 1996, the United States Patent Office issued Patent No. 5,545,072, entitled "Image Projective Toy" (the "'072 Patent"). The '072 Patent describes and covers the Toy Biz Projector figures. In addition to projecting an image of the character in

- 19 -

action or on an adventure, the '072 Patent discloses an alternative embodiment of the invention in which the child looks through the lens on the action figure's chest to view the images within. Bollinger Dec. ¶ 38.

94.    The projection mechanism in the Toy Biz Projector figures were "[a] device associated with [an action] figure . . . for visually communicating to the mind of a child a cue or prompt for role-playing in which the child would use the [action] figure and imagine accomplishing a mission assignment, resolving a dangerous situation . . . or engaging in some other adventurous pretend scenario." Bollinger Dec. ¶ 37.

95.    The '072 patent discloses "[a] device associated with [an action] figure . . . for visually communicating to the mind of a child a cue or prompt for role-playing in which the child would use the [action] figure and imagine accomplishing a mission assignment, resolving a dangerous situation . . . or engaging in some other adventurous pretend scenario." Bollinger Dec. ¶ 39.

96.    A combination of the projector mechanism from the Toy Biz Projector figures and Rescue Heroes figures that pre-existed the Reel Heroes concept would be an embodiment of the Reel Heroes concept. Lane Dec., Exhibit 8 at 64, Exhibit 4 at 177, Exhibit 6 at 109, Exhibit 10 at 22-23.

97.    The Toy Biz Projector figure embodies the Reel Heroes concept. Lane Dec., Exhibit 11 at 49-50, Exhibit 9 at 22-25.

- 20 -

98.    The '072 patent embodies the Reel Heroes concept. Lane Dec., Exhibit 11 at 49-50, Exhibit 9 at 22-25.

99.    "Secret Wars" was a line of action figures sold by Mattel beginning in 1984. The line included both superheroes and villains, each of which came with a shield that the action figure held in its hand. The shield contained a lenticular lens with images showing the action figure in action. Each figure came with eight different pieces of lenticular artwork that could be placed in the shield showing different adventure scenes. For example, one of the Captain America lenticular images shows Captain America swinging down to carry a boy out of the path of an oncoming train. Bollinger Dec. ¶ 40.

100.    The lenticular shield that accompanies each Secret Wars figure is "[a] device associated with [an action] figure . . . for visually communicating to the mind of a child a cue or prompt for role-playing in which the child would use the [action] figure and imagine accomplishing a mission assignment, resolving a dangerous situation . . . or engaging in some other adventurous pretend scenario." Bollinger Dec. ¶ 40; Lane Dec., Exhibit 12 at 116, 120-21.

101.    A combination of the lenticular shield from the Secret Wars figures and Rescue Heroes figures that pre-existed the Reel Heroes concept would be an embodiment of the Reel Heroes concept. Exhibit 6 at 111-12.

102.    The Secret Wars figures embody the Reel Heroes concept. Lane Dec., Exhibit 11 at 137-38.

- 21 -

103.    The Fortress of Solitude was a playset sold to the public in 1976 by Mego Corporation for use with superhero (Superman, Batman, Wonder Woman, etc.) action figures. The playset included multiple pieces of artwork showing the characters in action, engaged in adventures. Bollinger Dec. ¶ 41.

104.    The Fortress of Solitude playset is "[a] device associated with [an action] figure . . . for visually communicating to the mind of a child a cue or prompt for role-playing in which the child would use the [action] figure and imagine accomplishing a mission assignment, resolving a dangerous situation . . . or engaging in some other adventurous pretend scenario." Bollinger Dec. ¶ 41.

105.    The images on the Fortress of Solitude playset show action figure characters engaged in missions or assignments, while the images on the Rescue Heroes ARCC and MACC playsets simply show images of disasters, without depicting an action figure responding to those disasters. Bollinger Dec. ¶ 42.

106.    The Hall of Justice playset was introduced in 1976 by Mego. This playset was intended for use with Batman, Superman, Aqua Man, etc. action figures. It includes artwork showing action figure characters on missions, adventures, etc. Bollinger Dec. ¶ 43.

107.    The Hall of Justice playset is "[a] device associated with [an action] figure . . . for visually communicating to the mind of a child a cue or prompt for role-playing in which the child would use the [action] figure and imagine accomplishing a mission assignment, resolving a dangerous situation," etc. Bollinger Dec. ¶ 44.

- 22 -

108.    In 1976, Mego sold the "Mobile Bat Lab" vehicle for use with Batman and Robin action figures. The vehicle included a flip-up "sun roof" containing an image of Batman fighting the Joker. Bollinger Dec. ¶ 45.

109.    The Mobile Bat Lab, and its sun roof with an image of Batman in action, is "[a] device associated with [an action] figure . . . for visually communicating to the mind of a child a cue or prompt for role-playing in which the child would use the [action] figure and imagine accomplishing a mission assignment, resolving a dangerous situation . . . or engaging in some other adventurous pretend scenario." Bollinger Dec. ¶ 45.

110.    Before 1998, Fisher-Price designer Tyler Berkheiser was aware of the Toy Biz Projector figures. Berkheiser Dec.¶ 36.

111.    Before 1998, Berkheiser was aware of the 1976 Mego Hall of Justice playset for action figures. Berkheiser Dec. ¶ 37.

112.    Prior to 1998, Fisher-Price, maintained an archive of toy catalogs from many other manufacturers. Included in this archive were Mego catalogs which depict the Fortress of Solitude playset and the Mobile Bat Lab. Berkheiser Dec. ¶ 38.

113.    Prior to 1998, Fisher-Price designer James Bauman was aware of the Secret Wars action figures. Bauman Dec.¶ 6.

114.    In 1980, Fisher-Price introduced a product named the "Movie Viewer." This was a product that allowed a child to look through a magnifying lens to see a filmstrip

- 23 -

inside a plastic housing. The film was advanced by turning a crank on the side of the plastic

housing, giving the effect of a traditional motion picture. Berkheiser Dec., Exhibit Q.

115. The Movie Viewer was the inspiration for "coming up with the Reel

Heroes concept." Lane Dec., Exhibit 7 at 74-75, Exhibit 3 at 31-34.

116. A combination of the Movie Viewer and Rescue Heroes figures that pre-

existed the Reel Heroes concept would be an embodiment of the Reel Heroes concept. Lane

Dec., Exhibit 4 at 189-90, Exhibit 12 at 227-29.

**Plaintiffs' Implied Contract Claim**

117. Plaintiffs' implied-in-fact contract claim is based on the allegation that

"Fisher-Price agreed to compensate Plaintiffs in the event Fisher-Price actually used Plaintiffs'

novel product concept." SAC ¶ 42. This is the same subject matter governed by the parties'

Option Agreement. SAC, Exhibit F.

118. The Option Agreement included all major material terms for a license

agreement that would result from Fisher-Price's exercise of the option. Lane Dec., Exhibit 26 ¶

69.

119. All of the conduct on which the alleged implied agreement is based

occurred prior to the Option Agreement. Lane Dec., Exhibit 12 at 284, 288-89. *See also* Lane

Dec., Exhibit 4 at 115, 120-21.

- 24 -

Dated:    May 2, 2005

FISHER-PRICE, INC.

By

Bradford S. Babbitt
e-mail: babbitt@rc.com
Federal Bar No.: ct13938
          Michael J. Kolosky
e-mail: mkolosky@rc.com
Federal Bar No.: ct22686
**ROBINSON & COLE LLP**
280 Trumbull Street
Hartford, CT 06103-3597
Telephone: (860) 275-8200

and

Robert J. Lane, Jr.
e-mail: rlane@hodgsonruss.com
Federal Bar No.: ct24598
Jodyann Galvin
e-mail: jgalvin@hodgsonruss.com
Federal Bar No.: ct24599
**HODGSON RUSS LLP**
One M&T Plaza, Suite 2000
Buffalo, New York 14203-2391
Telephone: (716) 856-4000

BFLODOCS 1235992 v1