EXHIBIT M

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

VICTOR G. REILING ASSOCIATES and
DESIGN INNOVATION, INC.,

                            Plaintiffs,

    – against –

FISHER-PRICE, INC.,

                            Defendant.

Index No.: 3-03 CV 222 (JBA)

February 11, 2005

## PLAINTIFFS' AMENDED RESPONSES TO DEFENDANT'S THIRD SET OF INTERROGATORIES

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiffs Victor G. Reiling Associates ("Reiling") and Design Innovation Inc. ("DI") (collectively, "Plaintiffs"), by their attorneys Grimes & Battersby, LLP, hereby submit their amended responses to Defendant's Third Set of Interrogatories. Plaintiffs reserve the right to supplement these responses should additional information become available through discovery or otherwise

## INTERROGATORIES

### INTERROGATORY NO. 1:

Provide the following information with respect to plaintiffs' 1998 Reel Heroes submission identified in paragraph 18 of the Second Amended Complaint:

        a.    identify every feature of "Reel Heroes" which plaintiffs claim was incorporated into:

            1)    Mission Command Rescue Heroes;

            2)    Mission Select Rescue Heroes;

3)      Optic Force Telly Photo;

4)      Optic Force Maureen Biologist;

5)      Optic Force Matt Medic;

6)      Optic Force Jake Justice;

7)      Optic Force Rock Miner;

8)      Voice Tech Rescue Fire Truck;

9)      Voice Tech Rescue Jet;

10)     Voice Tech Police Cruiser;

11)     Mission Select Firetruck;

12)     Mission Select Police Cruiser;

13)     Mountain Action Command Center

14)     Aquatic Rescue Command Center;

15)     videos;

16)     DVDs;

17)     computer games; and

18)     video games.

b.      for each feature identified, state whether such feature was novel and original at the time of plaintiffs' 1998 submission of Reel Heroes to Fisher-Price and, if so, describe in detail the factual basis for the claim that such feature was novel and original at the time of plaintiffs' 1998 submission of Reel Heroes to Fisher-Price.

## RESPONSE:

(a)    __Features.__    Plaintiffs incorporate by reference herein their response to Interrogatory No. 15 of Defendant's Second Set of Interrogatories and paragraphs 5, 7, 8 and 12 through 21 of the Reply Declaration of Victor G. Reiling dated March 4, 2004.

2

Plaintiffs further state that their concept, embodied in three submissions to Fisher-Price, included the following features: an image component in connection with the backpack of each "Rescue Heroes" action figure that enhanced role play for the child by depicting (which allows the child to visualize) the mission of that particular "Rescue Heroes" character (for example, obstacles and dangers the character might face), which concept could be expanded into accessories and line extensions relating to the "Rescue Heroes" line pursuant to industry custom and practice (hereinafter referred to as "the Concept").

Plaintiffs further state as follows with respect to the 1998 "Reel Action"/"Reel Heroes" submission:

1)    **Mission Command Rescue Heroes**

Each Mission Command Rescue Heroes figure came with a mission card depicting a still, printed image of a mission adventure that the child could insert into the figure's backpack and view from behind. As such, it shares the same core features as Plaintiffs' Concept, namely (a) an image component viewed from behind; (b) in connection with the backpack of each Rescue Heroes figure; and, (c) that enhanced role play for the child by depicting the mission of that particular character (for example, obstacles and dangers that character might face). Moreover, the mission cards could be transferred among figures. Plaintiffs' concept included the idea that the image (in the 1998 submission it was a film reel) could be interchangeable.

2)    **Mission Select Rescue Heroes**

Each Mission Select Rescue Heroes figure came with a backpack that depicted still images on a disc or dial that is embedded in the backpack. The images are viewed from behind. As such, it shares the same core features as Plaintiffs' Concept, namely (a) an image component viewed from behind; (b) in connection with the backpack of each Rescue Heroes figure; and, (c) that enhanced role play for the child by depicting the mission of that particular character (for example, obstacles and dangers that character might face).

3)    **Optic Force Line**

Plaintiffs' 1998 submission also included a TV cameraman character with a distinct design and appearance (for example, who could film the "Rescue Heroes" adventures), to extend the Reel Heroes concept of depicting a "Rescue Heroes"

3

mission (which allows the child to visualize a play scenario through an image component in connection with the backpack)   The character had red hair, facial hair, a baseball cap, press pass and an optical camera attached to the backpack in one hand and a microphone in the other. Fisher-Price has produced the very same reporter/photographer action figure, which it calls "Telly Photo," with a virtually identical look, feel and play pattern.

Moreover, the Optic Force line (Telly Photo,  Maureen Biologist, Matt Medic and Rock Miner) includes action figures that have hand-held optical devices (Jake Justice has a telescope not hand held) attached to the backpack and viewed by the child from behind the character.   The optical devices serve to enhance play value for the child by creating real time images and images related to the character's mission.  Plaintiffs' first submission included the feature of a hand-held optical device (in the form of a camera) attached to the backpack and viewed from behind, with a viewer and fisheye lens, that showed real time images and enhanced play value for the child.

4)      Voice Tech Rescue Fire Truck, Jet and Police Cruiser

Plaintiffs' Concept covers these types of accessories, such as vehicles and play sets, because they are sold together with, or are marketed by Fisher-Price specifically for use with, the accused Rescue Heroes action figure lines (Voice Tech Video Mission, etc.).  Moreover, Plaintiffs' first submission specifically referenced and included vehicle accessories (in the form of a mobile communication and command vehicle)

5)      Mission Select Fire Truck and Police Cruiser

The response to sub-paragraph 4, above is incorporated by reference herein.

6)      Mountain Action Command Center and Aquatic Rescue Command Center

The response to sub-paragraph 4, above is incorporated by reference herein.

7)      Videos, DVDs, Computer Games and Video Games

Plaintiffs' Concept covers these types of products because they are referred to as "line extensions." They are either sold together with, are marketed specifically for use with, or arise out of the images, trademarks or other elements of the popularity and goodwill created by or associated with, the accused Rescue Heroes action figure lines (Voice Tech Video Mission, etc.).

(b)     Novelty.  All of the above-described features were novel and original at the time

of Plaintiffs' 1998 submission of Reel Heroes to Fisher-Price because neither Fisher-Price nor

the toy industry in general had ever marketed and/or sold a toy that incorporated these features. Moreover, Plaintiffs' submissions were specifically submitted in connection with the Rescue Heroes line, and Fisher-Price had neither marketed nor sold a toy in the Rescue Heroes line that incorporated the above-described features at the times when Plaintiffs made their three submissions.

## INTERROGATORY NO. 2:

Provide the following information with respect to plaintiffs' May 22, 1999 Reel Heroes information identified in paragraph 23 of the Second Amended Complaint:

    a.    identify every feature of "Reel Heroes" which plaintiffs claim was incorporated into:

        1)    Mission Command Rescue Heroes;

        2)    Mission Select Rescue Heroes;

        3)    Optic Force Telly Photo;

        4)    Optic Force Maureen Biologist;

        5)    Optic Force Matt Medic;

        6)    Optic Force Jake Justice;

        7)    Optic Force Rock Miner;

        8)    Voice Tech Rescue Fire Truck;

        9)    Voice Tech Rescue Jet;

       10)    Voice Tech Police Cruiser;

       11)    Mission Select Firetruck;

       12)    Mission Select Police Cruiser;

       13)    Mountain Action Command Center;

       14)    Aquatic Rescue Command Center;

15)     videos;

16)     DVDs;

17)     computer games; and

18)     video games.

b.     for each feature identified, state whether such feature was novel and
original at the time of plaintiffs' May 1999 submission of Reel Heroes to
Fisher-Price and, if so, describe in detail the factual basis for the claim
that such feature was novel and original at the time of plaintiffs' May
1999 submission of Reel Heroes to Fisher-Price

<u>RESPONSE</u>:

(a)     <u>Features</u>.     The response to Interrogatory No. 1 is incorporated by reference

herein.

In addition to the features identified in response to Interrogatory No. 1, Plaintiffs further

state that:

1)     <u>Mission Command Rescue Heroes</u>

Each Mission Command Rescue Heroes figure came with a mission card
depicting a still, printed image of a mission adventure that the child could insert
into the figure's backpack. Plaintiffs' second submission included the feature of
adding still, printed images to the backpack of each "Rescue Heroes" character
that enabled children to view still images through a viewing mechanism. The
mechanism and images are viewed from behind. As such, the Mission Command
Rescue Heroes line shares the same core features as Plaintiffs' Concept, namely
(a) an image component viewed from behind; (b) in connection with the backpack
of each Rescue Heroes figure; and, (c) that enhanced role play for the child by
depicting the mission of that particular character. Moreover, the mission cards
could be transferred among figures. Plaintiffs' concept included the idea that the
image (in the second submission the still images were mounted on a drum) could
be interchangeable.

2)     <u>Mission Select Rescue Heroes</u>

Each Mission Select Rescue Heroes figure came with a backpack that depicted
still images on a disc or dial used to select missions that is embedded in the
backpack and viewed from behind. Plaintiffs' second submission included the
feature of adding still, printed images to the backpack of each "Rescue Heroes"

6

character that enabled children to view still images from behind through a viewing mechanism. As such, the Mission Select Rescue Heroes line shares the same core features as Plaintiffs' Concept, namely (a) an image component viewed from behind; (b) in connection with the backpack of each Rescue Heroes figure; and, (c) that enhanced role play for the child by depicting the mission, obstacles, and dangers facing that particular character.

3)    **Aquatic Rescue Command Center**

This accessory uses interchangeable mission cards similar to those used by the

Mission Command action figures.

(b)    **Novelty**. The response to Interrogatory No. 1 is incorporated by reference herein.

**INTERROGATORY NO. 3:**

Provide the following information with respect to plaintiffs' December 7, 2000 Reel Heroes submission referenced in paragraph 24 of the Second Amended Complaint:

a.    identify every feature of "Reel Heroes" which plaintiffs claim was incorporated into:

1)    Mission Command Rescue Heroes;

2)    Mission Select Rescue Heroes;

3)    Optic Force Telly Photo;

4)    Optic Force Maureen Biologist;

5)    Optic Force Matt Medic;

6)    Optic Force Jake Justice;

7)    Optic Force Rock Miner;

8)    Voice Tech Rescue Fire Truck;

9)    Voice Tech Rescue Jet;

10)    Voice Tech Police Cruiser;

11)    Mission Select Firetruck;

7

12) Mission Select Police Cruiser;

13) Mountain Action Command Center;

14) Aquatic Rescue Command Center;

15) videos;

16) DVDs;

17) computer games; and

18) video games

b.  for each feature identified, state whether such feature was novel and original at the time of plaintiffs' December 2000 submission of Reel Heroes to Fisher-Price and, if so, describe in detail the factual basis for the claim that such feature was novel and original at the time of plaintiffs' December 2000 submission of Reel Heroes to Fisher-Price.

RESPONSE:

(a)  **Features.**  The response to Interrogatory Nos 1 and 2 are incorporated by reference herein.

In addition to the features identified in response to Interrogatory Nos 1 and 2, Plaintiffs further state that:

1) **Mission Command Rescue Heroes**

Each Mission Command Rescue Heroes figure came with a mission card depicting a still, printed image that was viewed from behind of a mission adventure that the child could insert into the figure's backpack. Plaintiffs' third submission included the feature of adding still, printed images to the backpack of each "Rescue Heroes" character. As such, the Mission Command Rescue Heroes line shares the same core features as Plaintiffs' Concept, namely (a) an image component viewed from behind; (b) in connection with the backpack of each Rescue Heroes figure; and, (c) that enhanced role play for the child by depicting the mission of that particular character. Moreover, the mission cards could be transferred among figures. Plaintiffs' concept included the idea that the image (in the third submission the still images were mounted on a round disc or dial) could be interchangeable.

8

2)    **Mission Select Rescue Heroes**

Each Mission Select Rescue Heroes figure came with a backpack that depicted still images on a 2" disc or dial used to select missions and to show obstacles and dangers. The dial is embedded in the backpack and viewed from behind. Plaintiffs' third submission included the feature of depicting still images on a round 2" disc that was embedded in the backpack and viewed from behind each Rescue Heroes figure. As such, the Mission Select Rescue Heroes line shares the same core features as Plaintiffs' Concept, namely (a) an image component viewed from behind; (b) in connection with the backpack of each Rescue Heroes figure; and, (c) that enhanced role play for the child by depicting the mission of that particular character.

3)    **Mission Select Fire Truck and Police Cruiser**

These vehicles feature the same rotating 2" dial as the Mission Select action figures, depicting still images that are used to select missions and to show obstacles and dangers

4)    **Mountain Action Command Center**

This accessory features a dial similar to that of the Mission Select action figures that depicts still images that are used to select missions and to show obstacles and dangers.

5)    **Aquatic Rescue Command Center**

This accessory uses interchangeable mission cards similar to those used by the Mission Command action figures.

6)    **DVDs, Videos, Video Games and Computer Games**

Certain of these line extensions feature the same rotating dial as the Mission Select action figures, depicting still images that are used to select missions and to show obstacles and dangers.

(b)    **Novelty.** The response to Interrogatory No. 1 is incorporated by reference herein.


**INTERROGATORY NO. 4:**

Identify each video, by title, which plaintiffs claim incorporates their "novel concept submissions," as alleged in paragraph 39 of the Second Amended Complaint.

9

RESPONSE:

Plaintiffs state that any video that incorporates the features identified in response to Interrogatory Nos. 1, 2 and/or 3 herein incorporates Plaintiffs' novel concept submissions. All such videos, whether sold or provided with the "Rescue Heroes" characters, accessories, line extensions or alone, would be included. At this time, Plaintiffs are aware of a video entitled "Rescue Heroes, The Movie." Plaintiffs expect to learn more about the identity of each such video during discovery.

INTERROGATORY NO. 5:

Identify each DVD, by title, which plaintiffs claim incorporates their "novel concept submissions," as alleged in paragraph 39 of the Second Amended Complaint.

RESPONSE:

Plaintiffs state that any DVD that incorporates the features identified in response to Interrogatory Nos. 1, 2 and/or 3 herein incorporates Plaintiffs' novel concept submissions. All such DVD's, whether sold or provided with the "Rescue Heroes" characters, accessories, line extensions or alone, would be included. At this time, Plaintiffs are aware of a DVD entitled "Rescue Heroes, The Movie." Plaintiffs expect to learn more about the identity of each such DVD during discovery.

INTERROGATORY NO. 6:

Identify each computer game, by title, which plaintiffs claim incorporates their "novel concept submissions," as alleged in paragraph 39 of the Second Amended Complaint.

RESPONSE:

Plaintiffs state that any computer game that incorporates the features identified in response to Interrogatory Nos. 1, 2 and/or 3 herein incorporates Plaintiffs' novel concept

submissions. All such computer games, whether sold or provided with the "Rescue Heroes"

characters, accessories, line extensions or alone, would be included. At this time, Plaintiffs are

aware of a computer game entitled "Mission Select Rescue Heroes" on CD-ROM. Plaintiffs

expect to learn more about the identity of each such computer game during discovery.

## INTERROGATORY NO. 7:

Identify each video game, by title, which plaintiffs claim incorporates their "novel
concept submissions," as alleged in paragraph 39 of the Second Amended Complaint.

## RESPONSE:

Plaintiffs state that any video game that incorporates the features identified in response to

Interrogatory Nos. 1, 2 and/or 3 herein incorporates Plaintiffs' novel concept submissions. All

such video games, whether sold or provided with the "Rescue Heroes" characters, accessories,

line extensions or alone, would be included. At this time, Plaintiffs are not aware of the specific

title of any such video game, but expect to learn more about the identity of each such video game

during discovery.

11

Dated: Norwalk, Connecticut
        February 11, 2005

                        Respectfully Submitted,

                        **GRIMES & BATTERSBY, LLP**

                        By: _____
                            Gregory J. Battersby (Bar No. 7386)
                            Edmund J Ferdinand, III (Bar No. 21287)
                            Russell D. Dize (Bar No. 23064)
                            488 Main Avenue, Third Floor
                            Norwalk, Connecticut 06851-1008
                            (p) (203) 849-8300
                            (f) (203) 849-9300

                            Attorneys for Plaintiffs Victor G. Reiling
                            Associates and Design Innovation, Inc.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing Plaintiffs' Amended

Responses to Defendant's Third Set of Interrogatories has been served upon defendant Fisher

Price, Inc., on this 11th day of February 2005, via facsimile and U.S. Mail, first-class, postage

prepaid, to:

Robert J. Lane, Jr., Esq.
Jodyann Galvin, Esq.
HODGSON RUSS LLP
One M&T Plaza, Suite 2000
Buffalo, New York  14203-2391


Bradford S. Babbitt, Esq.
Michael J. Kolosky, Esq.
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, CT  06103-3597

Russell D. Dize

13

## VERIFICATION

I, Victor G. Reiling, an individual residing in the State of Connecticut, declare that:

1.    I am President of Victor G Reiling Associates;

2.    I have read the foregoing Plaintiffs' Amended Responses to Defendant's Third

Set of Interrogatories and the contents thereof are true and correct to the best of my knowledge,

information and belief.

Dated: February 11, 2005

_____
Victor G. Reiling

14

## VERIFICATION

I, Bruce Popek, an individual residing in the State of Connecticut, declare that:

1.     I am President of Design Innovation, Inc.;

2.     I have read the foregoing Plaintiffs' Amended Responses to Defendant's Third

Set of Interrogatories and the contents thereof are true and correct to the best of my knowledge,

information and belief.

Dated: February 11, 2005

_____

Bruce Popek

# EXHIBIT N

 

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

VICTOR G. REILING ASSOCIATES and
DESIGN INNOVATION, INC.,

Index No.: 3:03 CV 222 (JBA)

Plaintiffs,

- against -

FISHER-PRICE, INC.,

February 20, 2004

Defendant.

## PLAINTIFFS' SUPPLEMENTAL RESPONSES TO DEFENDANT'S
## FIRST SET OF INTERROGATORIES

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiffs Victor G. Reiling Associates ("Reiling") and Design Innovation Inc. ("DI"), by their attorneys Grimes & Battersby, LLP, hereby submit their supplemental responses to Defendant's First Set of Interrogatories. Plaintiffs reserve the right to supplement these responses should additional information become available through discovery or otherwise.

## RESPONSES

6.    Have Plaintiffs submitted "Reel Heroes" to anyone else other than Fisher-Price? If so, state:

        a.    to whom "Reel Heroes" was submitted;
        b.    the date of any such submission; and
        c.    the terms of any such submission.



**RESPONSE:**

Plaintiffs originally responded to this interrogatory by stating that they had not submitted

"Reel Heroes" to anyone other than Fisher-Price because Plaintiff conceived of its "Reel Heroes"

concept as a specific product-expansion opportunity for Fisher-Price's "Rescue Heroes" line of

toys. However, upon further reflection, Plaintiff DI now recalls that after Fisher-Price had

formally rejected Plaintiffs' concept as shown in their third submission, Plaintiff DI submitted a

variation of the concept to Toy Biz for consideration in connection with its "Spiderman Friends"

line of toys. The submission to Toy Biz was made on or about March 20, 2002. It is unclear

what this interrogatory seeks by requesting the "terms" of the submission, but Plaintiffs state that

it was an unsolicited submission made on speculation by Plaintiff DI.


10. State in detail the factual basis for Plaintiffs' claim for breach of express contract

in paragraphs 34-40 of the Complaint and provide the following information:

> a. State whether the express contract was written [sic] oral. If the express
> contract was written, provide a copy. If the express contract was oral:
>
>> i. State the terms;
>>
>> ii. Provide the date of the express contract; and
>>
>> iii. Identify the persons from Fisher-Price and Plaintiffs who
>> communicated about the terms of the express contract and describe
>> the substance of the communications.

**RESPONSE:**

Plaintiffs state that at the time the original complaint was filed, Plaintiffs' counsel, based

upon discussions with Plaintiffs, believed that there was a basis for an express oral contract claim

arising out of discussions between Plaintiff Reiling and Paul Snyder of Fisher-Price which, upon

information and belief, provided that Fisher-Price would remunerate Plaintiffs in the event that it

2

 

commercialized Plaintiffs' novel concept. This oral agreement was separate and apart from the written option agreement. However, after the original complaint was filed, Plaintiffs' counsel determined that it would be difficult to obtain sufficient evidentiary proof regarding the exact terms of any such agreement to prevail on an express oral contract claim at trial. In addition, Plaintiffs' counsel determined that Defendant's conduct more aptly demonstrated a breach of an implied-in-fact contract, which is inferred from custom and practice in the industry and the parties' course of dealing, and counsel believed this was a much stronger claim. In view of these facts, Plaintiffs withdrew their express contract claim when their First Amended Complaint was filed in favor of further prosecution of the stronger implied-in-fact contract claim. Plaintiffs state that there is no written contract on which the express contract claim was based.


11.    With respect to Plaintiffs' claim for breach of implied-in-fact contract in paragraphs 34–40 of the Amended Complaint, describe:

        a.    The "facts and circumstances" surrounding Plaintiffs' disclosure of Reel Heroes which formed the basis of an implied-in-fact contract as referenced in paragraph 35 of the Amended Complaint;

        b.    The "subsequent conduct of the parties" which formed the basis of an implied-in-fact contract as referenced in paragraph 35 of the Amended Complaint;

        c.    The terms of the alleged implied-in-fact contract, including without limitation, the terms relating to compensation;

        d.    The persons from Fisher-Price and Plaintiffs who were involved in the formation of the implied-in-fact contract and the role of each person identified; and

        e.    The date the implied-in-fact contract was formed.

 

**RESPONSE:**

Plaintiffs disclosed their novel concept to Fisher-Price by submitting three proposals in or about November 1998, May 22, 1999 and December 8, 2000, and by presenting the concept to Paul Snyder of Fisher-Price in a meeting on October 29, 1998. The custom and practice in the toy industry dictates that if Fisher-Price used Plaintiffs' concept by incorporating it into a product or line of products, Fisher-Price would pay Plaintiffs a reasonable royalty on the sales of said products. In addition, the course of dealing between Plaintiff Reiling and Fisher-Price (and Mattel) in the past had been that Reiling was paid a reasonable royalty on sales of products which utilized Reiling's submitted concepts, even if the concept submissions were different than the product Fisher-Price ultimately sold.

The custom and practice in the toy industry described above, the course of dealing between the parties, the meeting between Plaintiff Reiling and Paul Snyder during which Mr. Reiling disclosed Plaintiffs' novel concept, the subsequent telephone conversations and correspondence between the parties and the fact that Fisher-Price optioned the concept, collectively was the conduct that formed the basis for an implied-in-fact contract between Fisher-Price and Plaintiffs. Fisher-Price breached the implied-in-fact contract when it used Plaintiffs' submitted novel concept without Plaintiffs' authorization and without remunerating Plaintiffs. Under the formed implied-in-fact contract, Plaintiffs are entitled to compensation from Fisher-Price in accordance with toy industry standards. Plaintiffs do not know all who were involved at Fisher-Price in forming the implied-in-fact contract with Plaintiffs, but state that Victor Reiling and Paul Snyder were involved. The exact date of the formation of the implied-in-fact contract between Fisher-Price and Plaintiffs is unknown, but it formed during the initial meeting between Plaintiff Reiling and Paul Snyder, through subsequent telephone conversations and

 

correspondence between the parties and in accordance with custom and practice in the toy industry and the course of dealing between the parties as described above.

Dated: Norwalk, Connecticut
         February 20, 2004

                              Respectfully Submitted,

                              GRIMES & BATTERSBY, LLP

                              By: _____
                              Gregory J. Battersby (Bar No. 7386)
                              Edmund J. Ferdinand, III (Bar No. 21287)
                              Russell D. Dize (Bar No. 23064)
                              Jessica L. Elliott (Bar No. 24871)
                              488 Main Avenue, Third Floor
                              Norwalk, Connecticut 06851-1008
                              (p) (203) 849-8300
                              (f) (203) 849-9300

                              Attorneys for Plaintiffs Victor G. Reiling
                              Associates and Design Innovation, Inc.

 

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing Plaintiffs' Supplemental Responses to Defendant's First Set of Interrogatories has been served upon defendant Fisher-Price, Inc., on this 20th day of February 2004, via facsimile and U.S. Mail, First Class, postage prepaid, to:

Bradford S. Babbitt, Esq.
Michael J. Kolosky, Esq.
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, CT 06103-3597

Robert J. Lane, Jr., Esq.
Jodyann Galvin, Esq.
HODGSON RUSS LLP
One M&T Plaza, Suite 2000
Buffalo, New York 14203-2391

_____
Russell D. Dize

6

 

## VERIFICATION

I, Victor G. Reiling, an individual residing in the State of Connecticut, declare under the penalty of perjury that:

1.    I am the principal of Victor G. Reiling Associates;

2.    I have read the foregoing Plaintiffs' Supplemental Responses to Defendant's First Set of Interrogatories and the contents thereof are true and correct to the best of my knowledge, information and belief.

Dated· February 20, 2004

_____
            Victor G. Reiling

7

 

## VERIFICATION

I, Bruce Benedetto, an individual residing in the State of Connecticut, declare under the penalty of perjury that:

1.    I am Vice-President of Design Innovation, Inc.;

2.    I have read the foregoing Plaintiffs' Supplemental Responses to Defendant's First Set of Interrogatories and the contents thereof are true and correct to the best of my knowledge, information and belief.

Dated:  February 20, 2004

Bruce Benedetto

8

# EXHIBIT O





**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

FILED

Aug 1  10 00 AM '03

U.S. DISTRICT COURT
NEW HAVEN, CONN

| | | |
|---|---|---|
| Victor G. Reiling | : | |
| and Associates et al. | : | |
| | : | |
| v. | : | No. 3:03cv222 (JBA) |
| | : | |
| Fisher-Price, Inc. | : | |

<u>Ruling on Defendant's Motion to Transfer Venue [Doc. #18]</u>

Plaintiffs Victor G. Reiling and Associates and Design
Innovation, Inc. are independent toy inventors both organized and
existing under the laws of Connecticut and both with principal
places of business in Connecticut. Defendant Fisher-Price, a
well-known toy manufacturer, is a Delaware corporation with a
principal place of business in New York. This diversity action
alleges that defendant used plaintiffs' toy design without
permission or payment, after having previously rejected
plaintiffs' licensing proposal. Defendant has moved to transfer
venue to the U.S. District Court for the Western District of New
York pursuant to 28 U.S.C. §§ 1404(a) and 1406(a), asserting that
the choice of law provision in an option agreement controls. For
the reasons set out below, the motion is denied.

I.    Background

In 1998, plaintiffs submitted a toy prototype to Fisher-
Price that would add an additional feature to Fisher-Price's
already-existing Rescue Heroes line, which included fireman and

1

 

2000 submissions.

Plaintiffs claim that at a February 2002 toy fair in New York they saw a Fisher-Price catalogue containing a new line of Fisher-Price toys called "Voice Tech Video Mission Rescue Heroes," which came equipped with "Special Video Mission Backpacks" that plaintiffs claim constitute misappropriation of their submissions. In March 2002, Fisher-Price started marketing this line of toys online and in stores nationwide.

On January 31, 2003, plaintiffs filed this suit alleging breach of contract, misappropriation of an idea, unfair competition,[2] and for an accounting. While the original complaint divided the breach of contract claim into one count of "breach of express contract" and one count of "breach of implied-in-fact contract,"[3] neither claim was pled as a breach of the option agreement.[4] Plaintiffs subsequently filed an amended

---

[2]Plaintiffs' unfair competition claim is pled as both as both a common law unfair competition claim and a claim under the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110a et seq.

[3]The distinction between the two "involves . . . no difference in legal effect, but lies merely in the mode of manifesting assent." Restatement (Second) Contracts § 4, cmt. a.

[4]The breach of express count alleged in pertinent part:

> There was an express contract between Plaintiffs and Defendants according to which Plaintiffs were to be renumerated for the disclosure of their product concept for a battery operated animated image played designed to look like a backpack and mount on existing Fisher-Price "Rescue Heroes" action figures if said concept

3

 

complaint.  In opposition, plaintiffs assert that their claims in
this suit are not subject to the forum selection clause.

II.  Analysis

A.  § 1406(a)

When venue lies in the wrong division or district, the
district court "shall dismiss, or if it be in the interest of
justice, transfer such case to any district or division in which
it could have been brought."  28 U.S.C. § 1406(a).  While "[a]
forum selection clause is enforceable unless it is shown that to
enforce it would be unreasonable and unjust or that some
invalidity such as fraud or overreaching is attached to it," New
Moon Shipping Co., Ltd. v Man B & W Diesel AG, 121 F.3d 24, 29
(2d Cir. 1997), "[t]his general rule applies, however, only when
the contract containing the forum selection clause is the subject
of the suit," Dan-Dee Int'l, Ltd. v. Kmart Corp., No. 99 Civ.
11689, 2000 WL 1346865, at *4 (S.D.N.Y. Sept. 18, 2000).

In the instant case, the forum selection clause by its terms
applies only to "This Option Agreement," and not to any claim or
dispute that does not arise under the option agreement.[5]  The

    [5]Thus, defendant's reliance on Bense v. Interstate Battery
Sys. of America, 683 F.2d 718 (2d Cir. 1982), is misplaced.
There, the forum selection clause provided that "'[t]he exclusive
venue of any suits or causes of action arising directly or
indirectly from this agreement shall be in Dallas County,
Texas.'"  Id. at 720 (emphasis added).  While plaintiffs' claim
against defendant is arguably indirectly related to the option

5

existed even absent the option agreement, and thus its presence
or absence is of no consequence to the forum selection clause
analysis.

    B.   § 1404(a)

    Defendant alternatively argues for a transfer of venue "for
the convenience of parties and witnesses" or "in the interest of
justice" under 28 U.S.C. § 1404(a). In a § 1404(a) inquiry, the
plaintiff's choice of forum (here, Connecticut) is "accorded
substantial weight." Golanda Mining Corp. v. Herlands, 365 F.2d
856, 857 (2d Cir. 1966). Other factors considered in a § 1404(a)
inquiry are the presence of an applicable forum selection clause;
the location of relevant documents and the relative ease of
access to sources of proof; the locus of operative facts; the
availability of process to compel the attendance of unwilling
witnesses; and the relative means of the parties. See Berman v.
Informix Corp., 30 F. Supp. 2d 653, 657 (S.D.N.Y. 1998). These
factors are either in plaintiff's favor (i.e., as indicated
above, there is no applicable forum selection clause for these
claims, and Fisher-Price is likely of greater means than
plaintiffs) or do not cut strongly either way (location of
sources and witnesses and the locus of operative facts). Thus,
transfer under § 1404(a) is not warranted and plaintiffs' choice
of forum will be respected.