EXHIBIT X

P - 10

# VICTOR G. REILING ASSOCIATES

119 NORTH MAIN STREET • P.O. BOX 677

KENT, CONNECTICUT 06757-0677

PHONE/FAX (860) 927-1927

Memo for Paul Snyder – FISHER PRICE

Dear Paul,

DESIGN INNOVATION and I have been working on a lower cost viewing device for ACTION HEROES.

The drawing shows a backpack type device that consists of the parts shown – it would seem that costs would be such that a device, wether camera, PC, TV Screen or other theme, could be marketed with each hero...or sold as sets.

Our experiments confirm that we can do a viewer as shown in the drawing that is small enough to fit realistically in the hand of any figure.

Using ambient light and a tinted device, we have eliminated motors, batteries and a lot of other parts.

What we do have is a viewer that presents a magnified image that is even larger than the original battery op prototype and with the capability of showing 8 or more scenes that are particularly appropriate to individual heroes.

Best regards,

5/22/99

DI021

(22)



# EXHIBIT Y

P-9

Memo for Peter POOK - FISHER PRICE

Dear Peter,

I am sending these drawings and Design Innovation is sending
the original prototype from our prior submission so that we
may revisit the REEL HEROES/ACTION HEROES concept.

I also include a one page write-up of some of the play
features(please read)as well as copies of your (FP's)
correspondence.

Based on your final response, we have redirected the concept
to include a clear disc, about 2" in diameter, which has 6
or so images, each the size if a standard VIEWMASTER frame.

When dropped into a simple "digital camera" the pictures can
be advanced and then viewed with one eye using VIEWMASTER
optics.

This disc can aleviate the costs of film strips that were of
prior concern.

Each ACTION HERO could come with a disc relating to it's
theme activities. A simple camera can be sold seperately as
well as our Action Hero FILMORE SCHOTZ.

Our guy Filmore is pretty well described in the attached
write-up, but now his back-pack is a lighted "computer
viewing screen" for any disc dropped in - and a as a
projector of any disc image -to create play scenarios on
walls, etc. He would hand carry (see left hand) the simple
Digital Camera and his TV camera would still be to give the
user a feel that they are watching TV being filmed (yes, the
discs could also interact here).

We think this approach is an exciting addition to the RESCUE
HEROES line.

Please give a call when you have the prototype and drawings
together.

With best regards,

12/7/00

DT033





DI025



DI026

# EXHIBIT Z



January 5, 2001

*Dictated but not read.*

Mr. Vic Reiling
VICTOR G. REILING ASSOCIATES
119 North Main Street
P.O. Box 677
Kent, CT 06757-0677
Tel:    (860) 927-1927
Fax:    Same

RE:    CONCEPT RETURN(S): "Sort N Stack Tray" and "Reel Heroes"

Dear Vic,

We've returned both of these items directly to you even though the one came in from Design Innovation.

We reviewed both items with senior management. Following are the results.

"Action Heroes" aka "Reel Heroes" – Too expensive for what it does. Although more appropriate the way it was presented on the boards, this would be the only SKU that would work...a TV cameraman, we could not seem to expand on this. It does not fit the current Rescue Heroes theme.

"Sort N Stack Tray" – Too similar to items we've had in the line. You might want to submit to NYCity office for character brands or to El Segundo as a puzzle possibility.

Vic, if you need more specific information please contact Peter Pook directly.

Thanks for the chance to consider both these concepts.

My best regards,

FISHER-PRICE, INC.

Patricia A. Grabianowski, Administrator
Inventor Relations

P
Enc.
Cc:    P. Pook
        Outside Resources – (Return: 20002762; 2763)

D1027    

# EXHIBIT AA

DESIGN INNOVATION, INC.
20 Tower Lane
Avon, CT 06001
Tel: 860-409-7494
Fax: 860-409-7497

It all starts with

**Fisher-Price** ®

Toy Fair '99







EXHIBIT BB



# Fisher-Price®

## ToyFair 2001

## Fisher-Price® Rocks!





Billy Blazes here! Send back-up!

## 77456 Asst.
### Voice Tech™ Mission Command™ Team

**New!**

Special Mission Command cards slide into backpacks so these quick-response specialists can receive and respond to exciting Voice Tech™ messages. Over 100 different rescue phrases! Figures can interact with Voice Tech™ Fire Truck and Jet, as well as Aquatic Rescue Command Center.™

**Ages 3+** *Stackable Mission/Try me*

  

  

*Each figure comes with a mission card that tells the hero what his next adventure will be. Collect them all!*

**Figures say over 100 phrases each!**

**77457**
Voice Tech™
Billy Blazes™
Firefighter



**77546**
Voice Tech™
Roger Houston™
Astronaut

**77545**
Voice Tech™
Rocky Canyon™
Mountain Ranger





**77459**
Voice Tech™
Jake Justice™ Police Officer




**77458**
Voice Tech™ Jack Hammer™
Construction Expert

**77460**
Voice Tech™
Wendy Waters™ Firefighter



DESIGN INNOVATION, INC.
20 Tower Lane
Avon, CT 06001
Tel: 860-409-7494
Fax: 860-409-7497

**Fisher-Price**®

*Toy Fair 2002*

Discover what's possible™ ... www.fisher-price.com



# PowerMax™ RESCUE HEROES™

**Cool guys who are good guys!**™

**78368 Asst.**
## PowerMax™ Rescue Heroes™

Powerful tools combine with powerful strength in this team of Rescue Heroes figures. They're specially equipped to handle any obstacle that gets in their way, with "power tools" that work at the press of a button. Each figure requires 2 "AA" alkaline batteries.
**3+**
Display box/Try me

**78369**
**PowerMax™**
**Billy Blazes™ Firefighter**

**78370**
**PowerMax™**
**Jack Hammer™**
**Construction Expert**

**78371**
**PowerMax™**
**Rocky Canyon™**
**Mountain Ranger**

**NEW!**

**POWER!**

**78369**
**PowerMax™**
**Billy Blazes™ Firefighter**
Powerful chopping axe for larger-than-average obstacles!

**78370**
**PowerMax™**
**Jack Hammer™**
**Construction Expert**
Powerful circular saw to cut through tough debris!

**78371**
**PowerMax™**
**Rocky Canyon™**
**Mountain Ranger**
Powerful tow winch with hook to rescue stranded victims!

78

# EXHIBIT CC



# Now Rescue Heroes™ figures come to life with voices, sound effects and video images!

**VOICE TECH**
**RESCUE HEROES**

| | | | |
|---|---|---|---|
| Video Mission **Billy Blazes**™ Firefighter | Video Mission **Rocky Canyon**™ Mountain Hero | Video Mission **Wendy Waters**™ Firefighter | Video Mission **Roger Houston**™ Astronaut |
| Video Mission **Jack Hammer**™ Construction Specialist | Video Mission **Warren Waters**™ Commander | Video Mission **Gil Gripper**™ Scuba Diver | Video Mission **Jake Justice**™ Police Officer |
| | | | Video Mission **Matt Medic**™ Physician |
| | | | Video Mission **Ariel Flyer**™ Aviation Veterinarian |

**Ariel Flyer Coming Soon!**

## See and hear them in action!

**Voice Tech**™ Video Mission Rescue Heroes™ figures tackle their urgent **Video Mission** assignments and react with over 100 different rescue phrases. And now, Voice Tech Video backpacks bring new excitement to every rescue-adventure with moving images of rescue missions! Kids can **hear** about the mission and **see** where it will be by pressing the buttons on the Rescue Heroes backpacks.

1. Press the audio button and you can hear the character say lots of phrases.
2. Press the video screen button and you can see the moving video images on the backpack.



**WITH VOICE TECH VIDEO**

**Check out the whole Voice Tech™ force!** Each sold separately & subject to availability.

**WWW.rescueheroes.com**
for action, excitement and adventure!

Summer 2002: Police Car.    Rescue: Fire Truck.

**Fisher-Price**

• Requires 3 bulb-eared "LR44 or equivalent batteries. Dispose of batteries safely.

0 75380 78182 5

# EXHIBIT DD



February 26, 1990

Mr. Victor G. Reiling
The Toy Building at
  Railroad Square
West Cornwall, Connecticut  06796

Dear Vic,

Enclosed I am returning your concept entitled "Bath Boat".  While
this is a cute execution, the basic concept is quite old.  What we
are primarily interested in are more unique concepts that offer
greater novelty to prior art - ideally in the functional aspects of
the product (i.e. Crash Zone).

Thanks for thinking of us and keep them coming.

                                    Best regards,

                                    Thomas A. Mason
                                    Vice President, Product Design

TAM:jec
enc.
Log #900111
cc: Documentation Dept.

VGR 0247

Fisher-Price, Division of The Quaker Oats Company, 636 Girard Avenue, East Aurora, New York 14052-1885 (716) 687-3000 Telex: 91520

FROM : REILING ASSOCIATES                PHONE NO. : 8669 1927               May. 15 2005 12:22PM P12



December 16, 1999                                        *Dictated but not read*

Mr. Vic Reiling
**VICTOR G. REILING ASSOCIATES**
119 North Main Street
P.O. Box 677
Kent, CT 06757-0677
Tel.      (860) 927-1927
Fax:     Same

RE      <u>Concept Return(s):  "Ring Things" and "Mighty Max Tilt N Turn"</u>

Dear Vic,

"Ring Things" is being returned. Senior management and more specifically the preschool team reviewed it and just felt that there are a lot of toys, i.e. Mr. Potato Head with a similar play pattern and play value.

"Mighty Max Tilt N Turn" – is being returned. It was reviewed with senior management and David Berko passed it to the Little People team for further evaluation. Confidentially, the Little People team is working on a similar but different type of front wheel steering item and has developed steering items in other areas. There are also a lot of play vehicles on the market that embody steering capabilities of all types.

If you have any questions please feel free to call David at his NYCity office (212) 820-6217 or call Fisher-Price at (716) 687-3682.

Thank you for allowing us to review these items.

My best regards

**FISHER-PRICE, INC.**

Patricia A. Grabianowski, Administrator
Inventor Relations

p
Enc

Cc:     D. Berko    VP Inventor Relations w/o Enc
        M. Kelley
        D. Dubois
        (Return: #992472; 2494)



April 7, 1987

Mr. Victor G. Reiling
Victor G. Reiling Associates
South Street
Litchfield, Connecticut    06759

Dear Vic,

Enclosed I am returning your concepts entitled "Wizards & Witches", "Doll
Dolls", and "Pony Express". The concensus on "Wizards" is that the
potential association to the occult is too high a risk, no matter how much
we could tone it down. "Doll Dolls", as I indicated in our meeting, is not
a new concept to us or the market, but I wanted to expose Valerie's art
style to our design groups for future project potential. As it turns out,
everyone was already aware of her capabilities. Finally, "Pony Express" is
seen as a conflicting opportunity (i.e. replacement) rather than a
complimentary opportunity for us at this time. As our trikes are continuing
to do well, we would be more interested in a totally different direction in
ride-ons.

We'll be in touch on the "Air Drums" shortly.

Best regards,

FISHER-PRICE

Thomas A. Mason
Senior Director
Product Development

jec
enc.
cc: F. Buckley

VGR 0235



November 13, 1987

Mr. Vic Reiling
Victor G. Reiling Associates
The Toy Building at Railroad Square
West Cornwall, CT    06796

Dear Vic,

Enclosed I am returning your concepts entitled "Sof' Boards", "See Serpent", and "Playrider". Our issues are as follows:

"Sof' Boards"      We feel there is a significant price/value problem when compared to traditional alternatives. While the feature is nice, it doesn't justify the upcharge. Also, there is something very similar on the market - "Pillow Pals" or something like it.

"See Serpent"      We have seen a very similar concept in the past from another inventor. We feel it is just too novelty.

"Playrider"       We simply have too many other directions to explore on basic ride-ons before we get to combination ideas. Also, price/value is a concern here.

Thanks, as always, for giving us a look.

Best regards,

FISHER-PRICE

Thomas A. Mason
Vice President, Design

TAM:jec
enc.:Log #s 1263, 1264, 1266
cc: F. Buckley
    P. Pook

VGR 0290

Fisher-Price, Division of The Quaker Oats Company, 636 Girard Avenue, East Aurora, New York 14052-1885 (716) 687-3000 Telex: 6854326 QACD



**Fisher-Price**

March 4, 1994

Victor G. Reiling Associates
The Toy Studio
197 Sharon Road
PO Box 1600
Lakeville, CT 06039

Dear Pete:

As usual, it was great talking to you the other day.  After we
spoke I presented Tumblekins.  Unfortunately, it didn't pass
muster.  Although the mechanics of the figures are unique, we
didn't feel the rest of the product was right for us and was
similar to other items we've worked on internally.

In the interest of getting product back to the inventors
immediately, I'm sending back Tumblekins today with the hope that
you'll be able to place it with another toy company.

Hope to see you soon.

                    My best regards,

                    Paul (cje)

                    Paul D. Snyder
                    Vice President, R&D Services and
                    Inventor Relations

PDS/cje
Enc.

cc: Design Documentation (#940379)

Fisher-Price, Inc., 636 Girard Ave., East Aurora, NY 14052 (716) 687-3000



EXHIBIT
59
3-9-05 SLT



March 2, 1989

Mr. Victor G. Reiling
The Toy Building
Railroad Square
West Cornwall, Connecticut    06796

Dear Vic:

I'm sending the "Sun Brite Puzzles" back because of prior internal development at Fisher-Price. Neither Paul Snyder nor Tom Mason were aware of our efforts in "Stained Glass Puzzles" that came out of a brainstorming meeting in January of this year.

I'm sure that you can understand this occurring, given the magnitude of internal ideation that occurs this time of the year.

Regards,

FISHER-PRICE

Robert A. Kolich
Manager, Product Design

RAK:jec
cc: Radtke/Kipp
    T. Mason
    P. Snyder
Log #3240

VGR 0291

# EXHIBIT EE

LICENSE AGREEMENT

between

FISHER-PRICE, INC.

and

KISCOM, INC.

Subject:    Silly Sounds

## TABLE OF CONTENTS

| Sections | Page |
|---|---|
| Introduction | 1 |
| 1.  Definitions | 1 |
| 2.  Grant of Rights | 3 |
| 3.  Payments | 3 |
| 4.  Warranties and Representations | 5 |
| 5.  No Duty to Exploit | 6 |
| 6.  Obtaining and Enforcing Rights | 6 |
| 7.  Third Party Claims | 6 |
| 8.  Termination | 7 |
| 9.  Secrecy | 9 |
| 10.  No Joint Venture | 9 |
| 11.  Waiver | 9 |
| 12.  Applicable Law | 9 |
| 13.  Assignment | 10 |
| 14.  Severability | 10 |
| 15.  General Assurances | 10 |
| 16.  Entire Agreement | 10 |
| 17.  Notices, Statements, and Payments | 11 |

### Exhibits and Schedules

| | |
|---|---|
| Exhibit A | Submitted Idea |
| Exhibit B | Option Agreement |
| Exhibit C | Territory |
| Schedule A | Term and Financial Definitions |

## LICENSE AGREEMENT

This Agreement is made and entered into this 2nd day of November 1992 by and between Fisher-Price, Inc., having offices at 636 Girard Avenue, East Aurora, New York 14052 (hereinafter referred to as "FISHER-PRICE") and Kiscom, Inc.; having offices at 133 Williams Drive, Ramsey, New Jersey 07446 (hereinafter referred to as "KISCOM").

WHEREAS, KISCOM has submitted an idea to FISHER-PRICE for a product as described in Exhibit A of this Agreement;

WHEREAS, KISCOM and FISHER-PRICE have entered into an Option Agreement (Exhibit B, attached) whereby FISHER-PRICE has paid the sum of $25,000 for exclusive rights in and to the idea for a specified period of time; and

WHEREAS, KISCOM desires to grant to FISHER-PRICE and FISHER-PRICE desires to obtain from KISCOM an exclusive worldwide license to use, manufacture, have manufactured and sell products embodying any inventions, designs, copyrights, trade secrets, confidential information and any other proprietary rights which may be within the scope of the submitted idea;

NOW, THEREFORE, in consideration of the foregoing, and of the mutual covenants, terms and conditions hereinafter expressed, KISCOM and FISHER-PRICE agree as follows:

### 1. DEFINITIONS

a. "LICENSED SUBJECT MATTER" shall mean any proprietary right derived from the submitted idea as described in Exhibit A of this Agreement and as supplemented by KISCOM including but not limited to supplementation by models, samples, recorded demonstrations, drawings or written description. Any such disclosed material shall be the property of FISHER-PRICE. The proprietary rights assigned by this Agreement shall include but not be limited to all inventions, designs, copyrights, trade secrets, confidential information, and product rights enforceable under trademark or unfair competition causes of action.

b. "LICENSED PRODUCT" or "LICENSED PRODUCTS" shall mean any article embodying the LICENSED SUBJECT MATTER and includes product line extensions.

c. "COLLATERAL MERCHANDISE" shall mean, exclusive of LICENSED PRODUCTS, all goods and services, including, but not limited to entertainment services, which incorporate or embody any of the LICENSED SUBJECT MATTER.

d. The term "PRODUCT" or "PRODUCTS" shall include both LICENSED PRODUCTS and items of COLLATERAL MERCHANDISE and is further defined to mean each sku of product sold.

e. "TERRITORY" shall mean those countries identified in Exhibit C of this Agreement.

--1--

f.  "TERM" shall mean that period of time identified in Schedule A of this Agreement.

g.  "SOLD" shall mean transferred to an unrelated party for consideration.  "SOLD" shall not be construed to include transfers of the PRODUCT within FISHER-PRICE or between FISHER-PRICE and FISHER-PRICE SUBSIDIARIES or AFFILIATES.

h.  "F.O.B. INTERNATIONAL" shall mean the shipping terms of sale in which a PRODUCT is SOLD outside of the United States and the title passes to the customer upon delivery to the transportation carrier of such customer at a shipping point other than a FISHER-PRICE owned facility, e.g. the warehouse of a subcontracted manufacturer in Asia.

i.  "SELLING PRICE" shall mean an average net amount calculated by taking the total gross F.O.B. invoice amount for all PRODUCTS which are SOLD by FISHER-PRICE or its SUBSIDIARIES and AFFILIATES in a given country, in a given calendar quarter, less an amount equal to a percentage (specified in Schedule A as the "Aggregate Discount Rate") of that total gross invoice amount, and then dividing the resulting amount by the number of PRODUCTS which were SOLD by FISHER-PRICE in a given country during the quarter.  The gross F.O.B. invoice amount of the PRODUCTS SOLD by FISHER-PRICE or any sublicensee to any person, firm, or corporation directly or indirectly controlling or controlled by or under common control with FISHER-PRICE or sublicensee shall be the amount which FISHER-PRICE or the sublicensee would normally be expected to invoice for such PRODUCT or components in an arms length sale to a bona fide third party, less only the deductions as specified herein.  In the event that the gross F.O.B. invoice amount or any component thereof is not denominated in U.S. Dollars, it shall be converted to U.S. Dollars according to the exchange rates published in the Wall Street Journal on the last day of the calendar quarter.  The aggregate discount rate is intended to adjust invoiced amounts for discounts and allowances granted to FISHER-PRICE customers, except for those markdown allowances provided customers on PRODUCTS in customer-held inventory purchased at a higher price and then reduced for subsequent sales which are covered in section 3 of this Agreement.  The SELLING PRICE is to be applied in this Agreement except for F.O.B. INTERNATIONAL sales and export sales from the United States as covered below in subparagraphs 1.(j) and 1.(k).

j.  "F.O.B. INTERNATIONAL SELLING PRICE" - In the event that a PRODUCT is SOLD on F.O.B. INTERNATIONAL terms by FISHER-PRICE, for those PRODUCTS and those PRODUCTS only, the SELLING PRICE for each such PRODUCT means an average net amount calculated by taking the gross F.O.B. INTERNATIONAL invoice amount for that PRODUCT in a given calendar quarter less an amount equal to a percentage (specified in Schedule A as the "Aggregate F.O.B. International Discount Rate") of that total gross invoice amount and then dividing the resulting amount by the number of that PRODUCT which were SOLD on F.O.B. INTERNATIONAL terms by FISHER-PRICE during the quarter.

-2-

k. "EXPORT SELLING PRICE" – In the event that a PRODUCT is SOLD by FISHER-PRICE for export from the United States, for those PRODUCTS and those PRODUCTS only, the SELLING PRICE for each such PRODUCT means an average net amount calculated by taking the total gross export invoice amount for that PRODUCT in a given calendar quarter less an amount equal to a percentage (specified in Schedule A as the "Aggregate Export Discount Rate") of that total gross invoice amount and then dividing the resulting amount by the number of that PRODUCT which were SOLD on export terms by FISHER-PRICE during the quarter.

l. "SUBSIDIARIES or AFFILIATES" shall mean any corporations or other entities which FISHER-PRICE controls, or of which FISHER-PRICE possess a legal and/or beneficial interest of at least fifty (50%) percent or which own, control or possess at least a fifty (50%) percent legal or beneficial interest in FISHER-PRICE.

## 2.    GRANT OF RIGHTS

a. KISCOM hereby grants to FISHER-PRICE, for the TERM hereof, the exclusive right and license to use, manufacture, have manufactured, sell, distribute and advertise the PRODUCTS in the TERRITORY. The license includes, but is not limited to, a license under any and all patents and copyrights and any applications therefor which have been filed or may be filed in the future with respect to the LICENSED SUBJECT MATTER.

b. KISCOM also grants to FISHER-PRICE the exclusive right to grant sublicenses to third parties to manufacture and sell the PRODUCTS in the TERRITORY.

c. KISCOM hereby agrees to execute, acknowledge and deliver all such further documents and to do all such other acts as FISHER-PRICE may reasonably find to be necessary or appropriate in order to obtain, perfect or enforce the rights licensed by this Agreement. FISHER-PRICE agrees to cover KISCOM's reasonable out-of-pocket expenses involved in such efforts.

## 3.    PAYMENTS

a. With respect to each PRODUCT which is SOLD by FISHER-PRICE or a FISHER-PRICE SUBSIDIARY or AFFILIATE, FISHER-PRICE shall pay to KISCOM an amount equal to the percentage of FISHER-PRICE's SELLING PRICE, F.O.B. INTERNATIONAL SELLING PRICE, or EXPORT SELLING PRICE identified as the "Periodic Payment Rate" in Schedule A of this Agreement. FISHER-PRICE, may in the future upon request by KISCOM, consider negotiating a separate "periodic payment rate" for F.O.B. INTERNATIONAL PRODUCT but is under no obligation to do so.

–3–

b.    In the event FISHER-PRICE grants any sublicenses to manufacture and sell PRODUCTS pursuant to section 2b of this Agreement, FISHER-PRICE shall pay to KISCOM an amount equal to fifty (50%) percent of the net income received by FISHER-PRICE from such sublicenses.  For the purposes of this paragraph, net income shall mean the gross amount received by FISHER-PRICE less all discounts and allowances granted including third party agency fees necessary to support the sublicensing effort.  KISCOM may request to act as third party agent in such sublicensing efforts.  FISHER-PRICE will negotiate such requests in good faith.

c.    It is agreed that in the event that the list price at which PRODUCTS are sold by FISHER-PRICE is reduced and subsequent to that price reduction, an adjustment to the original purchase price is made for PRODUCTS remaining in customer inventory (either in cash or credit to the customer) which adjustment represents all or a portion of the difference between the original list price and the new list price for the PRODUCTS, that the excess amounts paid to KISCOM in earlier quarters under section 3a of this Agreement shall be recaptured by reducing the payments due under section 3a of this Agreement, first in the same quarter in which the adjustment is made and then, if any excess remains, in subsequent quarters, by an amount equal to that percentage of the amount of the adjustment given to customers identified as the "Periodic Payment Rate" set forth in Schedule A of this Agreement.

d.    The payments calculated pursuant to subsection "a" above shall be paid to KISCOM within thirty (30) days after the last day of each calendar quarter for amounts accruing during that preceding calendar quarter and such payment shall be accompanied by a report setting forth the number and description of PRODUCTS SOLD, the SELLING PRICE, the F.O.B. INTERNATIONAL SELLING PRICE, the EXPORT SELLING PRICE, and the payment due.

e.    The payments calculated pursuant to subsections "b" above shall be paid to KISCOM within sixty (60) days after the last day of each calendar quarter and such payment(s) shall be accompanied by a report setting forth the gross revenues received by FISHER-PRICE for sublicensed LICENSED PRODUCTS or COLLATERAL MERCHANDISE SOLD and the payment(s) due.

f.    FISHER-PRICE shall at all times keep accurate accounts at its principal place of business and maintain complete records of the quantity of the PRODUCTS, both made and sold by FISHER-PRICE and of the other information necessary to enable the amounts payable to KISCOM hereunder to be determined.

Such records of FISHER-PRICE shall be open to inspection on behalf of KISCOM by a Certified Public Accountant selected by KISCOM (the choice of accountant to be subject to FISHER-PRICE's reasonable approval) on reasonable notice, during ordinary business hours, but not more than once in any twelve (12) month period by either party, for the purpose of verifying the records and the accuracy of royalty payments provided for in this Agreement; provided, however, that no such inspection may be made with respect to any calendar

--4--

quarter ending more than four (4) years prior to the date of the inspection notice. Each inspection shall be at the expense of KISCOM unless it shows FISHER-PRICE under-reported royalties by more than ten (10%) percent, provided that in no case shall this expense exceed $2500 per audit. In the event that examination of the records in FISHER-PRICE's possession is made, certain confidential and proprietary business information of FISHER-PRICE's may necessarily be made available to the Certified Public Accountant making examination on behalf of KISCOM, and the parties hereto agree that such accountant shall make his reports to KISCOM in such manner that the names of customers or other information deemed confidential by FISHER-PRICE shall not be disclosed to KISCOM or any other person, firm or corporation; provided, however, that nothing herein contained shall be construed to prevent such accountant from testifying in any court of competent jurisdiction with respect to the information obtained as the result of such examination in any action instituted to enforce the rights of KISCOM under the terms of this Agreement. Acceptance of payment doesn't prevent KISCOM from requesting audits of other unaudited payment periods. In the event that such Certified Public Accountant shall examine the records, documents and materials in the possession of or in the control of FISHER-PRICE with respect to the subject matter hereof, such examination shall be conducted in such manner as not to unduly interfere with the business of FISHER-PRICE.

g. All underpayments or payments not timely paid shall bear interest at the prime rate as published in the <u>Wall Street Journal</u> as of the date any such payment is due.

h. FISHER-PRICE agrees to provide KISCOM twelve (12) production samples on a timely basis after production starts.

4. WARRANTIES AND REPRESENTATIONS

a. KISCOM warrants and represents that KISCOM is the owner or controller of all right, title and interest in and to the LICENSED SUBJECT MATTER and that KISCOM has the sole right to license the LICENSED SUBJECT MATTER to FISHER-PRICE.

b. KISCOM warrants and represents that KISCOM has made no agreement with any third party and will make no agreement in the future with any third party which is inconsistent with the terms and conditions of this Agreement.

c. KISCOM warrants and represents that to the best of KISCOM's knowledge, the commercialization of PRODUCTS including the development, manufacture, promotion, distribution and sale of PRODUCTS would not infringe any third party rights, including but not limited to patent rights, design rights and trademark rights.

d. Nothing herein contained shall be deemed an express or implied warranty on the part of KISCOM that efforts to gain copyright, patent and/or trademark or service mark protection for the PRODUCTS through application or otherwise will succeed and it is understood that no liability shall attach to KISCOM for any failure to secure such protection.

-5-

5. <u>NO DUTY TO EXPLOIT</u>

KISCOM acknowledges that FISHER-PRICE has made no warranty or representation regarding the size of the market for PRODUCTS embodying the LICENSED SUBJECT MATTER, the net dollar value, if any, of this Agreement to KISCOM or FISHER-PRICE's plans regarding the commercial exploitation of PRODUCTS embodying the LICENSED SUBJECT MATTER. FISHER-PRICE shall have no duty to manufacture and/or sell PRODUCTS embodying the LICENSED SUBJECT MATTER or to otherwise exploit the LICENSED SUBJECT MATTER.

6. <u>OBTAINING AND ENFORCING RIGHTS</u>

It shall be the sole responsibility and expense of FISHER-PRICE to direct the filing and prosecution of any and all patent applications within the LICENSED SUBJECT MATTER and to direct any enforcement action relating to the LICENSED SUBJECT MATTER. KISCOM agrees to cooperate with FISHER-PRICE at FISHER-PRICE's expense in any effort by FISHER-PRICE to obtain and enforce rights in the LICENSED SUBJECT MATTER, including cooperation in proceedings involving United States and foreign patent applications, reexamination, opposition, cancellation, priority contests, civil actions and the like. FISHER-PRICE shall have no obligation, however, to obtain or enforce rights relating to the LICENSED SUBJECT MATTER and FISHER-PRICE shall not be liable to KISCOM for any act or omission relating to obtaining or enforcing rights within the LICENSED SUBJECT MATTER.

7. <u>THIRD PARTY CLAIMS</u>

a. KISCOM agrees to indemnify, defend and hold FISHER-PRICE, its parent, subsidiary and/or affiliated companies, their officers, directors , agents and employees harmless from and against any and all damage, loss and expense (including reasonable attorneys' fees and disbursements) incurred through claims of third parties against FISHER-PRICE for breach of KISCOM's representations and warranties contained in this Agreement, however, that such indemnity shall only be applicable in the event of a final decision by a court of competent jurisdiction from which no appeal of right exists and shall be limited up to Fifty Percent (50%) of the amount of the actual monies received by KISCOM under this Agreement. In the event, however, that a third party shall commence an action against FISHER-PRICE based on a breach of any of KISCOM's warranties or representations, FISHER-PRICE shall have the right to deduct an amount equal to its actual, out-of-pocket costs of defending such lawsuit during the term of this Agreement from up to Fifty Percent (50%) of the actual royalty payments due KISCOM. FISHER-PRICE shall continue to deposit said deducted amounts into an interest-bearing escrow account until such time as a decision is rendered by a court of competent jurisdiction. In the event that said court shall determine KISCOM shall have breached its warranty or representations, FISHER-PRICE shall be entitled to continue to escrow up to Fifty Percent (50%) of all royalties due until a final decision is rendered from which no right of appeal exists. Should, however, the court determine that KISCOM has not breached said warranty or representations, all sums in the escrow account shall immediately be turned over to KISCOM and FISHER-PRICE shall not be entitled to escrow any further amounts. Nothing provided for herein shall prevent FISHER-PRICE from reaching a settlement with any third party with the consent of KISCOM. KISCOM agrees to cooperate fully with FISHER-PRICE in any such defense or settlement if requested by FISHER-PRICE.

-6-

b.    FISHER-PRICE agrees to indemnify, defend and hold KISCOM harmless from and against all loss and expense (including reasonable attorneys' fees and disbursements) arising out of any claims of personal injury based on the use of the LICENSED PRODUCTS produced and sold by FISHER-PRICE and/or its subsidiary, affiliated and controlled companies.  FISHER-PRICE agrees that it will obtain, at its own expense, product liability insurance from a recognized insurance company, providing adequate product liability insurance protection (at least in the amount of one million dollars ($1,000,000) per occurrence, five million dollars ($5,000,000) aggregate), naming FISHER-PRICE as named insured and KISCOM as additional named insured against any claims, suits, loss or damage arising out of any such actual or alleged defects in the LICENSED PRODUCTS.  As proof of such insurance, a certificate of insurance naming KISCOM as an additional named insured will be submitted to KISCOM.

c.    FISHER-PRICE agrees to indemnify, defend and hold KISCOM, its subsidiary and/or affiliated companies, their officers, directors, agents and employees harmless from and against any and all damage, loss and expense (including reasonable attorneys' fees and disbursements) incurred in connection with the sale, production, distribution, advertising or other exploitation by FISHER-PRICE of the LICENSED PRODUCT or any product or service produced, provided or licensed pursuant to the provisions hereof, including, without limitation, any changes and/or additions to the LICENSED PRODUCT made by FISHER-PRICE or any affiliate or licensee of FISHER-PRICE.  Notwithstanding the immediately preceding sentence, such indemnification by FISHER-PRICE shall not apply to the extent that any such liability results from, or arises out of, a breach by KISCOM of this Agreement.

8.    TERMINATION

a.    This Agreement may be terminated by either KISCOM or FISHER-PRICE by giving written notice to the other to such effect, in the event that the other party shall default in the performance of any of its material obligations arising hereunder and shall fail to cure such default within thirty (30) days after receipt of written notice thereof from the other party.

b.    Either KISCOM or FISHER-PRICE shall have the right to terminate this Agreement if the other makes an assignment for the benefit of creditors; or files a voluntary petition of bankruptcy; or seeks or consents to any reorganization or similar relief; or is adjudicated bankrupt or insolvent; or if a third party commences any bankruptcy, insolvency, reorganization or similar proceeding involving the other party; or if the assets of such other party or a major part thereof are expropriated, nationalized or otherwise made subject to government control.  Upon the occurrence of any such event the other party shall have the right to terminate this Agreement effective upon notice at any time within ninety (90) days of such event coming to its knowledge.

c.    In the event that, pursuant to any bankruptcy law, a trustee of FISHER-PRICE or FISHER-PRICE as debtor in possession is permitted to assume this Agreement and does so and, thereafter, desires to assign this Agreement to a third party, which assignment (i) satisfies the requirements of such bankruptcy law, (ii) is to a party that has established a reputation for producing products of the same type as the LICENSED SUBJECT MATTER and of a

--7--

quality that is at least equal to the quality of the LICENSED SUBJECT MATTER produced by FISHER-PRICE and consistent with the standards set forth in this Agreement for the LICENSED SUBJECT MATTER, (iii) is to a party that can demonstrate its financial ability to perform the obligations of FISHER-PRICE pursuant to this Agreement, and (iv) provides that any payments in excess of the amounts set forth hereunder be paid only to KISCOM or the trustee of FISHER-PRICE or FISHER-PRICE, as the case may be, and shall notify KISCOM of the terms of such proposed assignment in writing.  The giving of such notice shall be deemed to constitute an offer to KISCOM to have this Agreement assigned to it or to its designee for the consideration, or its equivalent in money, and upon such terms as are specified in the notice.  The aforesaid offer may be accepted only by written notice given to the trustee of FISHER-PRICE or FISHER-PRICE, as the case may be, by KISCOM within fifteen (15) days of KISCOM's receipt of the notice from such party.  If KISCOM fails to give its notice to such party within the said fifteen (15) days, such party may complete the assignment referred to in its notice, but only if such assignment is to the entity named in the notice and for the consideration and upon the terms specified therein.  Nothing contained herein shall be deemed to preclude or impair any rights which KISCOM may have as a creditor in any proceeding or shall be deemed to be consent to any assignment.

d.    Except as otherwise provided herein in regards to termination of this Agreement, FISHER-PRICE shall not thereafter be concerned with the LICENSED PRODUCT whether by way of manufacture, sale, or otherwise, and FISHER-PRICE shall return to KISCOM all the drawings and other technical data supplied to it by KISCOM and all copies thereof in its possession, power, or custody and use its reasonable endeavors to procure the return of all copies in the possession, power, or custody of sublicensees, subcontractor, or other third party, and if required by KISCOM at any time within two years after termination of this Agreement, FISHER-PRICE shall upon payment of ten dollars (U.S. $10) assign to KISCOM all such rights (if any), except trademark rights, tradedress of the LICENSED PRODUCT and its packaging, and copyright of packaging, labels, or decoration of the LICENSED PRODUCT, in the intellectual property rights in respect of the LICENSED PRODUCT as may have become vested in FISHER-PRICE by reason of its use thereof or otherwise.  FISHER-PRICE, may in the future, upon request by KISCOM, consider negotiating rights for trademarks and copyrights but is under no obligation to do so.

e.    Upon the expiration or termination prior to expiration of this Agreement in any manner provided herein, FISHER-PRICE shall have a period of twelve (12) months to dispose of its then existing inventory and work in progress of the PRODUCTS hereunder, subject to all terms and conditions of this Agreement, including but not limited to, reporting and payments as provided for in Paragraph 3 herein.

f.    KISCOM has the right to terminate this Agreement if FISHER-PRICE ceases to actively sell the LICENSED PRODUCT or fails to show the LICENSED PRODUCT in the current catalog of FISHER-PRICE or any AFFILIATE commencing with the year 1994.  In the event FISHER-PRICE chooses to delay the introduction of the LICENSED PRODUCT until 1995 or beyond, then both parties agree to negotiate in good faith an additional advance on royalty.

g.    Upon termination all sums payable to KISCOM per terms of this Agreement become due.

-8-

9. SECRECY

Each party's interest in the PRODUCT and the fact that the parties are working together on the PRODUCT is considered to be confidential information. In addition, any and all information disclosed by one party to the other in connection with the PRODUCT, whether disclosed in writing, orally, visually, or by samples, is considered confidential information. The recipient of confidential information agrees that confidential information disclosed to it hereunder shall be retained in confidence in a manner adequate to protect the disclosing party's trade secret rights therein and shall not be disclosed to others or used for purposes other than the PRODUCT without the disclosing party's prior written consent.

KISCOM understands that FISHER-PRICE's ability to successfully market PRODUCTS requires that any information regarding FISHER-PRICE's products or plans for marketing products must be regarded as a secret of FISHER-PRICE. Accordingly, KISCOM agrees to treat in strictest confidence, in a manner adequate to protect trade secret rights, any information relating to the LICENSED SUBJECT MATTER, PRODUCTS, and this Agreement unless the information is made public by FISHER-PRICE or by any third party authorized by FISHER-PRICE to disclose such information.

10. NO JOINT VENTURE

Nothing in this Agreement shall be construed to place the parties in the relationship of partners or joint venturers, and neither party shall have the power to obligate or bind the other in any manner.

11. WAIVER

No waiver by any party, whether express or implied, of any provisions of this Agreement, nor any breach nor default of any party, shall constitute a continuing waiver, or a waiver of any other provision or provisions of this Agreement, and no such waiver by any party shall prevent such party from enforcing any or all other provisions of this Agreement or from acting upon the same or any subsequent breach or default of the other parties under any provisions of this Agreement.

12: APPLICABLE LAW

This Agreement shall be construed and applied in accordance with the laws of the State of New York applicable to contracts made and performed therein, except as to any provisions hereof that are governed by the laws of the United States of America, in which case the latter shall govern.

13. ASSIGNMENT

a.    FISHER-PRICE's obligations and rights under this Agreement cannot be assigned or sublicensed except to wholly-owned subsidiaries of FISHER-PRICE by FISHER-PRICE except with the permission of KISCOM or to a purchaser of the entire business of FISHER-PRICE which shall agree in writing to be bound by terms and conditions of this Agreement; otherwise, any such sublicense shall be void.

b.    KISCOM's obligations and rights under this Agreement cannot be assigned by KISCOM except to a purchaser of the entire business of KISCOM, provided that (i) such purchaser is not a manufacturer, marketer or licensor of children's toys or amusement devices, and (ii) such purchaser agrees to be bound by the terms and conditions of this Agreement.

14. SEVERABILITY

Invalidity, illegality or unenforceability of any part of this Agreement shall not affect the validity, legality or enforceability of the balance thereof.

15. GENERAL ASSURANCES

KISCOM and FISHER-PRICE agree to execute, acknowledge and deliver all such further instruments, and to do all such other acts, as may be necessary or appropriate in order to carry out the intent and purpose of this Agreement.

16. ENTIRE AGREEMENT

This Agreement contains the entire and only understanding between FISHER-PRICE and KISCOM relating to the LICENSED SUBJECT MATTER and merges all prior agreements between FISHER-PRICE and KISCOM relating to the LICENSED SUBJECT MATTER, and any warranty, representation, promise or condition in connection therewith not expressly incorporated herein shall not be binding upon either FISHER-PRICE or KISCOM. No modification, renewal, extension or waiver of this Agreement or any of its provisions shall be binding unless in writing.

The following exhibits and schedules are incorporated herein:
    Exhibit A:    Submitted Idea
    Exhibit B:    Option Agreement
    Exhibit C:    Territory
    Schedule A:   Term and Financial Definitions

-10-

17. NOTICES, STATEMENTS AND PAYMENTS

Any communication, report or notice required or permitted to be given under this Agreement shall be made in writing and shall be deemed to have been duly and validly given effective upon receipt of same, or if sent by Certified or Registered Mail, return receipt requested, effective three (3) days after mailing, addressed in each case as follows:

a.  If to KISCOM, to it at:

Kiscom, Inc.
133 Williams Drive
Ramsey, New Jersey 07446

Attention:  Mr. Noah Kislevitz

b.  If to FISHER-PRICE, to it at:

Fisher-Price, Inc.
636 Girard Avenue
East Aurora, New York 14052

Attention:  Charles S. Riter
Senior Vice President
Research & Development

IN WITNESS WHEREOF the parties hereto have caused this Agreement to be executed as of the date set forth below.

KISCOM, INC.

BY: _____

PRINT NAME: Noah Kislevitz

FEDERAL I.D. # 222433873

TITLE: Associate

DATE: 11/19/92

FISHER-PRICE, INC.

BY: _____

PRINT NAME: Charles S. Riter

TITLE: Senior Vice President

DATE: 12/8/92

-11-

## EXHIBIT A

CONCEPT:                  Silly Sounds

DESIGNER:                 Kiscom, Inc.

DESCRIPTION:              An activity in which silly faces are created by
                          combining a variety of animal parts.  Inserting
                          pieces activates a variety of animal sounds.

## Fisher-Price

EXHIBIT B

June 15, 1992

Mr. Androc Kislevitz

Kiscom, Inc.

133 Williams Drive

Ramsey, New Jersey 07446

TEL.  (201) 327-3333

FAX:  (201) 327-3807

Dear Mr. Kislevitz:

SUBJECT:  Option Agreement on "Silly Sounds" Concept

This Option Agreement will confirm the understanding between you, Kiscom, Inc.,
and Fisher-Price, Inc. relative to the "Silly Sounds" concept as more completely
described in the attached Exhibit A (hereinafter "ITEM").

1.   Kiscom, Inc. represents that it owns all rights in and to the ITEM and has
     the right to grant the option and exclusive license as set forth herein.

2.   Kiscom, Inc. hereby grants to Fisher-Price, Inc. the exclusive option to
     obtain from Kiscom, Inc. the exclusive worldwide rights to make, have made,
     use and sell the ITEM.  This option shall begin on June 1, 1992 and expire
     on August 31, 1992 but may be extended on the same terms as contained
     herein.

- 1 -

3.   In consideration of the option granted, Fisher-Price, Inc. agrees to pay to
Kiscom, Inc., upon execution of this Agreement, five thousand dollars
($5,000) per thirty (30) day period during the option period as
non-refundable advances against any future royalties generated by the
ITEM. The option payments are due at the end of each thirty (30) day
period. If Fisher-Price, Inc. cancels this Agreement prior to the end of
the thirty (30) day period, a partial payment for the part of that thirty
(30) day period that was used will be paid based on the percentage of time
held prior to the cancellation date.

4.   If Fisher-Price, Inc. should choose not to exercise the option on or before
the end of the Option Agreement, we will have no additional obligation to
each other except the above mentioned advances due as of the time of
termination of this option, and the return to you of all prototypes
developed by you.

5.   During the option period, Kiscom, Inc. agrees not to show to, or discuss the
ITEM concept with any other prospective Licensee or agent thereof or any
other party unless approved by Fisher-Price, Inc.

- 2 -

6.  If Fisher-Price, Inc. should choose to exercise the option, such decision shall
    be communicated in writing by Fisher-Price, Inc. using the form attached hereto
    as Exhibit B.  Upon exercise of the option Fisher-Price, Inc. will pay to
    Riscom, Inc. a non-refundable advance against future royalties generated by the
    ITEM, the maximum amount of which will be twenty-five thousand dollars
    ($25,000), except that the amount of this payment will be reduced by any
    periodic payments which have been made under the terms of this option.  Thus if
    five periodic payments of five thousand dollars ($5,000) each have been made,
    no further payment under this provision would be due.  Upon such exercise, both
    parties agree to negotiate, in good faith, an agreement which shall include,
    among others, the following material terms:

    a.  Term - Perpetual as long as Fisher-Price, Inc. actively sells the ITEM
        including a twelve (12) month sell-off period should Fisher-Price, Inc.
        choose to terminate the License Agreement.

    b.  Rights - Exclusive and worldwide to Fisher-Price, Inc.

    c.  Royalty - A royalty percentage not to exceed five percent (5%) of
        Fisher-Price, Inc.'s average net wholesale price in a given country
        where the sale occurs.  The average net wholesale price is defined as
        the gross invoice amount for the sale of all ITEMS by Fisher-Price, Inc.
        to non-related entities, less the deduction of all discounts and
        allowances of whatever nature allowed customers including:  cash or
        trade discounts and allowances, credits for returned, lost or damaged
        goods, royalties paid to a third party for character or related

- 3 -

endorsement, retail advertising allowances, markdown allowances, and any
other costs to Licensee or deductions allowed to customers.

If this accurately describes our agreement, please sign both copies of this option
agreement and return one signed copy to my attention.

Sincerely yours,

FISHER-PRICE, INC.

Leslie Smith DiFranco
Manager
Research and Development Services

AGREED:

SIGNATURE - KISCOM, INC.

NOAH L. KISLEVITZ
PRINT NAME

SOCIAL SECURITY NUMBER
(if not incorporated)   N/A

DATE:   JUNE 16, 1992

LDF/smf
Enc.
CC:  D.L. Davis
     B. Oravec
     C. Riter
     P. Snyder

– 4 –

<u>EXHIBIT A</u>          Page 1 of 1

CONCEPT:                    Silly Sounds

DESIGNER:                   Kiscom, Inc.

DESCRIPTION:                An activity in which silly faces are created by
                            combining a variety of animal parts.  Inserting
                            pieces activates a variety of animal sounds.

<u>EXHIBIT B</u>

TO:       _____

FROM:     Fisher-Price, Inc.

SUBJECT:  NOTICE OF EXERCISE OF OPTION DATED _____ for

           _____ (ITEM).

This document is written notice of Fisher-Price's decision to exercise the Option Agreement identified above.

FISHER-PRICE, INC.

_____

(Authorized signature)

_____

(Title)

_____

(Date)

## EXHIBIT C

Territory:        The entire world.

## SCHEDULE A

Subject:                    Silly Sounds

Term:                       Perpetual as long as FISHER-PRICE actively sells
                            the LICENSED PRODUCT or shows the LICENSED
                            PRODUCT in the current catalog of FISHER-PRICE
                            or any AFFILIATE including a twelve (12) month
                            sell-off period should FISHER-PRICE choose to
                            terminate the License Agreement.

Aggregate Discount

Rate:                       11.3%

Aggregate F.O.B.

International Discount

Rate:                       6.8%

Aggregate Export

Discount Rate:              11.3%

Periodic Payment Rate:      5%