LEXSEE 2004 US DIST LEXIS 26533

**CALVIN STEWART, Plaintiff, - against - WORLD WRESTLING FEDERATION ENTERTAINMENT, INC., WORLD WRESTLING ENTERTAINMENT, INC., Defendants.**

03 CV 2468 (RLC)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

*2004 U.S. Dist. LEXIS 26533; 74 U.S.P.Q.2D (BNA) 1024; Copy. L. Rep. (CCH) P28,942*

December 22, 2004, Decided
January 11, 2005, Filed

**DISPOSITION:** [*1] Defendant's motion to dismiss granted in part and denied in part. Defendant World Wrestling Federation Entertainment, Inc., in so much as it is simply former name of World Wrestling Entertainment, dismissed from suit.

**LexisNexis(R) Headnotes**

**COUNSEL:** DONALDSON, CHILLIEST & MCDANIEL, Attorney for Plaintiff, New York, New York, XAVIER R. DONALDSON, Of Counsel.

KIRKPATRICK & LOCKHART LLP, Attorney for Defendants, New York, New York, EUGENE LICKER, Of Counsel.

**JUDGES:** ROBERT L. CARTER, U S D J.

**OPINIONBY:** ROBERT L. CARTER

**OPINION:** This diversity case is before the court on a *Rule 12(b)(6), F. R. Civ. P.* motion to dismiss. Defendant contends that plaintiff's state law claims, with the exemption of fraud, are preempted by the federal Copyright Act, *17 U.S.C. § 301*, and generally fail as a matter of law. Defendant also seeks dismissal of plaintiff's claim for fraud under both *Rule 12(b)(6), F. R. Civ. P.* and *Rule 9(b), F. R. Civ. P.*

**Factual Background**

Plaintiff Calvin Stewart, a New York State resident, is a fashion [*2] designer who specializes in creating clothing and lingerie designs as well as video productions for fashion shows. Defendant, the World Wrestling Entertainment, Inc. ("WWE"), is a foreign corporation authorized to do business in the State of New York. Prior to May 2002, the WWE was known as the World Wrestling Federation Entertainment, Inc. n1 The WWE is an integrated media and entertainment company engaged in the development, promotion and marketing of television programming, pay-per-view programming and live arena events, and the licensing and sale of branded consumer products.

n1 Plaintiff has named both the World Wrestling Entertainment, Inc. and the World Wrestling Federation Entertainment, Inc. as defendants in this suit. Defendants seek to dismiss the World Wrestling Federation Entertainment, Inc. as a defendant from this case.

Plaintiff alleges that starting September 22, 2000, he presented defendant with new and novel lingerie design ideas and a marketing strategy for a fashion show. According to [*3] the complaint, plaintiff developed his ideas and concepts for defendant's benefit over the course of the next year through correspondence and numerous meetings with WWE representatives, both in defendant's Connecticut and New York offices. As a result of these discussions, plaintiff obtained permission to use defendant's logo to produce sample designs to be

Case 3:03-cv-00222-JBA    Document 111-3    Filed 05/23/2005    Page 2 of 15

Page 2
2004 U.S. Dist. LEXIS 26533, *; 74 U.S.P.Q.2D (BNA) 1024;
Copy. L. Rep. (CCH) P28,942

shown to the WWE's Consumer Products Division. On September 26, 2001, plaintiff presented the WWE with lingerie samples as well as a video illustrating the fashion show concept he had developed. Following the September 26, 2001 meeting, however, defendant discontinued communications with plaintiff. Nine months later, on June 29, 2002, a television program produced by the WWE entitled 'WWE Divas Lingerie' aired on cable television. Plaintiff claims that the television show, which was subsequently sold nationally for profit by the WWE through DVD and VHS sales, was substantially similar to the video presented to defendant. Moreover, plaintiff alleges that the WWE began utilizing his lingerie ideas and concepts in its New York City restaurant. Plaintiff claims that defendant misappropriated his ideas and concepts and that no authorization [*4] was given nor any compensation received for their use. Plaintiff has filed this suit for breach of confidential relationship, misappropriation, unjust enrichment, conversion, breach of implied contract and fraud

**Choice of Law**

As this case has contacts with two states -- New York and Connecticut -- we initially consider the applicable state law. When a federal court sitting in diversity faces a choice of law conflict, it may apply only one of the laws, and must choose between them according to the choice of law principles of the state in which it sits -- in this instance New York. *Banker v. Nighswander, Martin & Mitchell*, 37 F.3d 866, 871 (2d Cir. 1994) (citing *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S. Ct. 1020, 1021-22, 85 L. Ed. 1477 (1941)). Similarly to the Connecticut choice of law rule, New York focuses on which jurisdiction has the greater interest in a dispute. *Compare Travelers Indem. Co. v. Levy*, 195 A.D.2d 35, 38, 606 N.Y.S.2d 167 (1st Dep't 1993), with *O'Connor v. O'Connor*, 201 Conn. 632, 519 A.2d 13 (Conn. 1986) ("the New York approach to choice of law, which evaluates [*5] and balances the contacts of jurisdictions involved in a choice of law controversy in order to apply the law of the jurisdiction that is the "center of gravity" of the controversy is commonly viewed as having merged with [Connecticut's] *Restatement Second* approach.") (citations omitted). Thus, "the choice of law for tort causes of action is based upon the place which has the most significant contacts with the matter in dispute, thereby giving the place with the most interest in the problem paramount control over the legal issues arising in the case." *Elgin Sweeper Co. v. Melson, Inc.*, 884 F. Supp. 641, 650 n. 12 (N.D.N.Y. 1995). Connecticut's interest in the dispute stems from the fact that defendant is a Connecticut corporation and that some of the meetings took place in its Connecticut offices. We believe however, that New York's interests in the dispute outweigh these contacts. Both parties have significant ties to New York: plaintiff is a New York resident and defendant is authorized to do business in the state and has both offices and stores in New York. Many of the meetings between the two parties took place in defendant's New York offices, defendant allegedly [*6] sold plaintiff's lingerie concept in its New York restaurant and defendant allegedly conducted fashion shows in New York utilizing plaintiff's ideas. Moreover, whatever harm incurred to plaintiff due to the alleged misappropriation of his ideas and concepts was felt in New York. Thus taking into account both Connecticut's and New York's interests in the present case, the court holds that New York's contacts with the dispute predominate and that New York law shall govern.

**Legal Standard**

When deciding a *Rule 12(b)(6), F. R. Civ. P.* motion to dismiss, the Court must take all allegations in the complaint as true and draw all reasonable inferences in favor of plaintiff. *Ortiz v. Cornetta*, 867 F.2d 146, 149 (2d Cir. 1989). A complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957). Nevertheless, the complaint must contain allegations concerning each of the material elements necessary to sustain recovery under a viable legal theory. *AIM Intern. Trading, L.L.C. v. Valcucine S.p.A.*, 2003 U.S. Dist. LEXIS 8594, 2003 WL 21203503, [*7] at *3 (S.D.N.Y.) (Leisure, J.)

The court's consideration of a motion to dismiss is limited to the factual allegations in the complaint, documents incorporated by reference in the complaint, matters of which judicial notice may be taken, and documents either in plaintiff's possession or of which plaintiff had knowledge and relied on in bringing suit. *Brass v. Am. Film Tech., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993). When a party "introduces matter extraneous to the pleadings, the Court must convert the motion to dismiss into a motion for summary judgment or exclude the extraneous documents from consideration." *AIM Int'l Trading, L.L.C.*, 2003 U.S. Dist. LEXIS 8594, 2003 WL 21203503, at *3.

For purposes of ruling on the present motion, the court incorporates defendant's February 9, 2001 letter — granting plaintiff permission to obtain and design fabric bearing the defendant's logo — into the complaint. Plaintiff has both cited and relied upon this letter in his complaint and the court may properly take it into consideration.

Case 3:03-cv-00222-JBA    Document 111-3    Filed 05/23/2005    Page 3 of 15

Page 3
2004 U.S. Dist. LEXIS 26533, *; 74 U.S.P.Q.2D (BNA) 1024;
Copy. L. Rep. (CCH) P28,942

## Discussion

*Copyright Preemption*

Defendant contends that, with the exception of fraud, the Copyright Act preempts all of [*8] plaintiff's state law claims. The Copyright Act provides in pertinent part:

> All legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright ... are governed exclusively by this title. No person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C. § 301(a). Pursuant to this statute, federal copyright law preempts a state law claim when the following two conditions are satisfied. First, the subject matter of the work in which the state law claims are asserted must fall within the subject matter of federal copyright law, as defined in 17 U.S.C. §§ 102 and 103. n2 Second, the rights asserted under state law must be equivalent to the rights protected by the Copyright Act. *See Harper & Row Publishers, Inc. v. Nation Enterprises, 723 F.2d 195, 200 (2d Cir. 1983)*, rev'd on other grounds, *471 U.S. 539, 105 S. Ct. 2218, 85 L. Ed. 2d 588 (1985)*; [*9] *Universal City Studios, Inc. v. T-Shirt Gallery, 634 F. Supp. 1468, 1475 (S.D.N.Y 1986)* (Sprizzo, J.).

> n2 Copyright protection subsists in "original works of authorship fixed in any tangible medium of expression." *17 U.S.C. § 102(a)*. Works of authorship include literary works, musical works, dramatic works, pantomimes and choreographic works, pictorial, graphic and sculptural works, motion pictures and other audiovisual works, sounds recordings and architectural works. *Id.*

*(1) Subject Matter of Plaintiff's State Law Claims*

Plaintiff argues that the misappropriation of an idea, as distinguished from its tangible expression, does not constitute subject matter covered by federal copyright law. Plaintiff maintains that it was his ideas and concepts which were stolen and thus that his claims are exempt from preemption.

Although plaintiff is correct in asserting that ideas are generally not given copyright protection, it is well established that the scope [*10] of preemption under § 301 is not the same as the scope of copyright protection and that the former is in fact broader than the latter. *Katz Dochrermann & Epstein, Inc. v. HBO, 1999 U.S. Dist. LEXIS 3971, 1999 WL 179603, at *2 (S.D.N.Y.) (Griesa, J.)*. Courts have made clear, for instance, that although the Copyright Act does not protect mere ideas alone, the scope of § 301 preemption includes state law claims with respect to uncopyrightable as well as copyrightable material, precisely because if the law was otherwise, "states would be free to expand the perimeters of copyright protection to their own liking, on the theory that preemption would be no bar to state protection of materials not meeting federal statutory standards." *Harper & Row Publishers, Inc., 723 F.2d at 200.*

On the facts alleged in the present case, the ideas at issue cannot be meaningfully separated from their tangible expression for preemption purposes. Plaintiff's complaint makes clear that the majority of his claims do not arise solely from the ideas and concepts orally conveyed to the WWE, but also depend substantially upon the misappropriation of the video and clothing samples -- the tangible [*11] expression of those ideas -- submitted to defendant. *See Katz Dochrermann & Epstein, Inc., 1999 U.S. Dist LEXIS 3971, 1999 WL 179603, at *3* (finding that the idea of an ad campaign could not be meaningfully separated from the literary and musical work expressing that idea). Indeed, Stewart relies heavily on the alleged similarities between his video and lingerie samples and defendant's televised program and its WWE-marketed lingerie items. Given both the broader scope of § 301 and the fact that the video and lingerie samples fall within the subject matter of the *Copyright Act* for preemption purposes, n3 we hold that, with the exception of plaintiff's breach of implied contract claim for the reasons recited below, the subject matter of the work in which the state law claims are asserted fall within the subject matter of copyright law.

> n3 The video is clearly an "audiovisual work" as defined by § 101 of the Copyright Act and this court has indicated that clothing designs, though generally not copyrightable, nevertheless do fall within the subject matter of copyright for preemption purposes. *Morris v. Buffalo Chips Bootery, Inc., 160 F. Supp.2d 718 721 (S.D.N.Y 2000) (Rakoff, J.).*

[*12]

*(2) Equivalency of State Protected Rights to Federal Copyright Law Protected Rights*

2004 U.S. Dist. LEXIS 26533, *; 74 U.S.P.Q.2D (BNA) 1024;
Copy. L. Rep. (CCH) P28,942

The second prerequisite for preemption is that the rights asserted under state law be equivalent to the rights protected by copyright law. For that determination to be made, the court must find that the state law claims are not "qualitatively different" from the rights protected under the Copyright Act. *Wolff v. Institute of Electrical and Electronics Engineers, Inc.*, 768 F. Supp. 66, 69 (S.D.N.Y. 1991) (Haight, J.). Where the state law claims are qualitatively different, they will not be preempted. This Circuit applies an "extra element" test to determine whether the state law claims are indeed qualitatively different:

> If an "extra element" is "required instead of or in addition to the acts of reproduction, performance, distribution or display, in order to constitute a state created cause of action," then the right does not lie 'within the general scope of copyright,' and there is no preemption ... A state law claim is not preempted if the "extra element" changes the nature of the action so that it is qualitatively different from a copyright infringement claim. [*13]

*Computer Assocs. Int'l, Inc., v. Altai, Inc.*, 982 F.2d 693, 716 (2d Cir. 1992) (quoting 1 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 1.01[B], at 1-14-15 (1991); and citing *Mayer v. Josiah Wedgwood & Sons, Ltd.*, 601 F. Supp. 1523, 1535 (S.D.N.Y. 1985) (Leisure, J.)). Accordingly, the Court will conduct an "extra element" inquiry with regards to each of the state law claims defendant maintains are preempted by the Copyright Act. n4

n4 All but plaintiff's fraud claim.

(a) Breach of Confidential Relationship

For a breach of confidence claim to be established, plaintiff must show that the parties either stood in a relationship imposing a duty of trust or confidentiality, or that they entered into an agreement establishing such a confidential relationship. Under New York law, a confidential relationship is "synonymous with fiduciary relationship and ... [exists] generally where the parties do not deal on equal terms and one trusts and relies on the [*14] other." *Sachs v. Cluett Peabody & Co.*, 265 A.D. 497, 39 N.Y.S.2d 853, 856 (N.Y. App. Div. 1943), aff'd, 291 N.Y. 772, 53 N.E.2d 241 (1944); see *McGhan v. Ebersol*, 608 F. Supp. 277 at 285 (S.D.N.Y. 1985). Courts will find a duty not to reveal confidential information only when the recipient has accepted the confidential relationship. See *Smith v. Weinstein*, 578 F. Supp. 1297, 1307 (S.D.N.Y. 1984) (Sofaer, J.). Such a relationship may arise either explicitly by contract, or implicitly by the actions of the parties or other circumstances. See *Klein v. Ekco Products Co.*, 135 N.Y.S.2d 391, 395-96 (N.Y. Sup. Ct 1954).

Plaintiff maintains that the two parties' interaction led to the creation of a confidential relationship and that defendant breached that relationship by exploiting plaintiff's ideas and materials without approval or remuneration. As a general rule, courts have found that the Copyright Act does not preempt such claims because they involve the extra element of a confidential promise or duty of trust between the parties. See *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 717 (2d Cir. 1992) (trade [*15] secret claims); *A. Brod, Inc. v. SK & I Co.*, 998 F. Supp. 314, 323 (S.D.N.Y. 1998) (Sotomayor, J.) (alleged constructive trust); *Brignoli v. Balch Hardy & Scheinman, Inc.*, 645 F. Supp. 1201, 1205-08 (S.D.N.Y. 1986) (Sweet, J.) (alleged agreement not to disclose or use confidential information or trade secrets); *Smith*, 578 F. Supp. at 1307 (alleged breach of trust based on relationship).

Moreover, whether such a confidential relationship exists is ultimately a question to be determined by the trier of fact and all a plaintiff must do to withstand a motion to dismiss is allege certain facts that would create this relationship. *McGhan v. Ebersol*, 608 F. Supp. at 285; *Hogan v. DC Comics*, 1997 U.S. Dist. LEXIS 13799, 1997 WL 570871, at *5 (S.D.N.Y.). Here, plaintiff contends that he and defendant were on unequal bargaining grounds and that the extent of their interaction gave rise to a confidential relationship. Defendant, in an attempt to rebut this claim draws heavily from *Markogianis v. Burger King Corp.*, 1997 U.S. Dist. LEXIS 4452, 1997 WL 167113 (S.D.N.Y.) (Keenan, J), in which the court found no confidential relationship and in favor [*16] of preemption. n5 *Markogianis* 1997 U.S. Dist. LEXIS 4452 [WL] at *4. We disagree with the extent of defendant's characterization of the similarities between *Markogianis* and this case. As described by the court in *Markogianis*, the two parties only had sporadic communications and never actually met in person to discuss plaintiff's materials. *Id.* We believe that the repeated in-person contacts between plaintiff and defendant and the apparent cooperative effort between them to develop the ideas presented sufficiently differentiate the present case before the court for motion to dismiss purposes. We hold that, accepting all of the allegations in the complaint as true, plaintiff has sufficiently alleged a breach of

2004 U.S. Dist. LEXIS 26533, *; 74 U.S.P.Q.2D (BNA) 1024;
Copy. L. Rep. (CCH) P28,942

confidential relationship claim and that it is not preempted.

> n5 In *Markogianis*, plaintiffs were the owners of a copyrighted educational concept geared to children that they presented to defendant Burger King through a series of written correspondences. Though Burger King eventually chose not to adopt the concept, plaintiff claimed that Burger King subsequently did adopt an entirely new marketing approach which misappropriated plaintiff's ideas. In ruling to dismiss plaintiff's breach of confidential relationship claim, the court ultimately found that the level of activity between the two parties was insufficient to give rise to a confidential relationship.

[*17]

(b) Misappropriation

To properly allege a claim for misappropriation, plaintiff must show: (1) the existence of a confidential or fiduciary relationship between the parties; and (2) that the idea is novel and concrete. *McGhan*, 608 F. Supp. at 284. These "extra elements", if properly pleaded, are sufficient to render preemption improper.

As previously discussed, plaintiff has sufficiently alleged the existence of a confidential relationship between the parties. In addition, the novelty and concreteness of the ideas presented are issues best established or refuted through the discovery process. Where, as here, plaintiff has sufficiently alleged that his ideas were novel and concrete, n6 granting of the motion to dismiss would be inappropriate.

> n6 Plaintiff alleges, for example, that defendant acknowledged the novelty and originality of the ideas presented during the course of their meetings. Compl P29.

(c) Unjust Enrichment

In order to recover for unjust enrichment under [*18] New York law, it must be established that plaintiff enriched defendant and that the circumstances were such that it would be unjust to permit defendant to refuse to make any restitution to plaintiff. *Werlin v. Reader's Digest Ass'n, Inc.*, 528 F. Supp. 451, 465 (S.D.N.Y. 1981) (Ward, J.). "The overwhelming majority of courts in this circuit have held that an unjust enrichment claim based upon the copying of subject matter within the scope of the Copyright Act is preempted." *Boyle v. Stephens, Inc.*, 1998 U.S. Dist. LEXIS 15215, 1998 WL 690816, at *6 (S.D.N.Y.) (Scheindlin, J.), citing *Patrick v. Francis*, 887 F. Supp. 481, 484 (W.D.N.Y. 1995) ("the claim that unauthorized copying of plaintiff's work unjustly enriched defendants is equivalent to exclusive rights within the general scope of copyright").

In contrast to the breach of confidential relationship and misappropriation claims, plaintiff has failed to identify any element of its unjust enrichment claim which would render it qualitatively different from a copyright infringement action. The gravamen of plaintiff's cause of action is that defendant obtained plaintiff's new and valuable ideas and materials, [*19] exploited them without plaintiff's permission and thereby enriched himself. As such, nothing in the complaint sufficiently changes the nature of the unjust enrichment claim to differentiate it from a federal copyright action. The claim is thus preempted.

(d) Conversion

In order to sustain a cause of action for conversion it must be established that: (1) defendant acted without authorization; (2) defendant exercised dominion or a right of ownership over property belonging to another; (3) the rightful owner made a demand for the property; and (4) the demand for the return was refused. *Seanto Exports v. United Arab Agencies*, 137 F.Supp 2d 445, 451 (S.D.N.Y. 2001) (Motley, J.), citing *Heneghan v. Cap-A-Radiator Shops*, 132 Misc. 2d 936, 506 N.Y.S.2d 132, 134 (N.Y. App. Div. 1986). Where the original possession is lawful, "conversion does not occur until the defendant refuses to return property after demand or until he sooner disposes of the property." *Id.* In addition, as the Second Circuit has stated, "if unauthorized publication is the gravamen of their claim, then it is clear that the right they seek to protect is coextensive with an exclusive right already [*20] safeguarded by the [Copyright] Act -- namely, control over reproduction and derivative use of copyrighted material. As such, their conversion claim is necessarily preempted." *Harper & Row Publishers, Inc.*, 723 F 2d at 201.

The thrust of plaintiff's conversion claim is that defendant took his ideas and materials and exploited them without his permission. The claim thus appears to be preempted. Moreover, plaintiff's claim fails as a matter of law. Plaintiff has not alleged that he requested the return of his property nor that defendant ever refused such a request and, to the extent plaintiff claims that defendant solely converted his ideas as opposed to anything tangible, New York law fails to recognize a

claim for conversion of intangible property. *Rao v. Verde*, 222 A.D.2d 569, 635 N.Y.S.2d 660, 661 (N.Y. 1995). Plaintiff's conversion claim is therefore dismissed.

### (e) Breach of Implied Contract

Under New York law, a contract will be implied in fact n7 when the parties clearly intended payment to the extent of the use of plaintiff's ideas, though they did not set forth that intention in express language. *Werlin*, 528 F. Supp. at 465. A party may [*21] by contract, express or implied, agree to pay for ideas, even though such ideas could not be protected by copyright law. *Smith*, 578 F. Supp. at 1307. Rights under such an agreement are qualitatively different from copyright claims. *Id*

> n7 Plaintiff generically labels his claim "Breach of Implied Contract" and does not specify whether he is referring to an implied-in-fact contract or an implied-in law contract, or both. In so much as plaintiff bases his claim on a breach of an implied-in-law contract, the claim is dismissed for the same reasons as plaintiff's unjust enrichment claim, namely that there are no elements which render such a claim qualitatively different from a copyright infringement action.

In contrast to plaintiff's other state law claims, it is possible under a breach of implied contract claim to separate the ideas and concepts presented by plaintiff from their tangible expressions. *See Katz Dochrermann & Epstein, Inc.*, 1999 WL 179603, at *4 ("Whereas the [*22] facts alleged in the complaint make it impossible to separate a claim of misappropriation of KDE's idea from a claim of misappropriation of the copyrightable literary work through which that idea was expressed to HBO, KDE's contract claim seeks to enforce a promise to pay for the use of the idea alone, regardless of any subsequent rights KDE may have acquired under the Copyright Act to the storyboards, sample print ads, and other copyrightable work it prepared."). Plaintiff's allegation that the WWE made an implied promise to pay for the value of his ideas is entirely separate and apart from any claim for copyright infringement involving the video and lingerie samples. As such the subject matter of the state law claim does not fall within the subject matter of the Copyright Act. Thus, plaintiff's claim for breach of implied contract is not preempted and defendant's motion to dismiss is denied.

### *Fraud*

Finally, defendant seeks dismissal of the fraud claim on two counts: that plaintiff failed to plead necessary elements of the claim and that the complaint was not plead with the particularity required by *Rule 9(b)*, F. R. Civ. P. n8

> n8 In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally. *Rule 9(b)*, F. R. Civ. P

[*23]

To state a cognizable cause of action for fraud, plaintiff must allege: (i) a misrepresentation or omission of a material fact; (ii) which was false and known to be false by defendant; (iii) made for the purpose of inducing plaintiff to rely on it; (iv) justifiable and reasonable reliance on the material misrepresentation or omission; and (v) resulting injury. *Lama Holding Co. v. Smith Barney, Inc.*, 88 N.Y.2d 413, 668 N.E.2d 1370, 646 N.Y.S.2d 76, 80 (N.Y. 1996), citing *Channel Master Corp. v. Aluminum Ltd. Sales*, 4 N.Y.2d 403, 151 N.E.2d 833, 176 N.Y.S.2d 259 (N.Y. 1958).

Plaintiff's complaint does not sufficiently plead the required elements of fraud. Plaintiff has failed to allege that the WWE made any misrepresentation or omissions of material facts or that any such misrepresentations or omissions were false and known to be false by the WWE. Moreover, the complaint also fails to claim that plaintiff justifiably and reasonably relied on such misrepresentations or omissions of material fact. As such, plaintiff's claim for fraud must be dismissed.

### Conclusion

Defendant's motion to dismiss is granted with regards to plaintiff's claims for unjust enrichment, conversion and fraud. The motion [*24] to dismiss is denied as to plaintiff's breach of confidential relationship, misappropriation and breach of implied contract claims. Defendant the World Wrestling Federation Entertainment, Inc., in so much as it is simply the former name of the WWE, is dismissed from the suit.

**IT IS SO ORDERED**

Dated: New York, New York

December 22, 2004

**ROBERT L. CARTER**

U.S.D.J.

LEXSEE 1997 US DIST LEXIS 7670

**VALTEC INTERNATIONAL, INC. d/b/a VALTEC AIRCRAFT SUPPLY, Plaintiff v. ALLIED SIGNAL AEROSPACE COMPANY, BENDIX WHEELS AND BRAKES DIVISION, Defendant.**

No. 3:93CV01171(WWE)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

*1997 U.S. Dist. LEXIS 7670*

March 7, 1997, Decided
March 7, 1997, FILED

**LexisNexis(R) Headnotes**

**COUNSEL:** [*1] Attorney(s) for Plaintiff: Jeffrey J. Mirman, Levy & Droney, P-S, Farmington, CT. Reed D. Rubinstein, Pepe & Hazard, Hartford, CT.

Attorney(s) for Defendant: Anthony Fitzgerald, Carmody & Torrance, New Haven, CT.

**JUDGES:** Hon. Warren W. Eginton, Sr. U.S. District Judge

**OPINIONBY:** Warren W. Eginton

**OPINION:**

Supplemental Ruling on Defendant's Motion for Summary Judgment

On September 16, 1996, this court (Squatrito, J.) entered an Order denying defendant's motion for summary judgment (Document # 22) based on the existence of material issues of fact. The court reserved ruling on the question of whether Connecticut or Indiana law applies in this case, indicating that a determination would be made prior to trial. The court now enters this supplemental ruling on defendant's motion for summary judgment solely on the choice-of-law issue and holds, for the reasons set forth below, that Connecticut law governs the claims of plaintiff in this case.

Background

This is an action by a worldwide distributor of commercial airline replacement parts against a producer of aircraft wheel and brake assemblies for tortious interference with business relations; violation of Connecticut's Unfair Trade [*2] Practices Act (CUTPA), Conn. Gen. Stat. § 42-110b et seq.; libel and defamation; commercial disparagement; and negligence. All five counts of plaintiff's complaint are based on an allegedly defamatory service information letter that defendant sent to hundreds of airlines and aircraft repair stations located throughout the world concerning replacement parts sold by plaintiff. The service information letter stated, inter alia, that several airlines had investigated leakage problems and had discovered that certain parts purchased from plaintiff leaked in operation. The letter was written by defendant in Indiana, the home office of the Bendix Wheels and Brakes Division, and was mailed from Indiana. The letters were sent worldwide. None of the letters, however, were sent to Connecticut.

Plaintiff claims that this letter, along with other actions allegedly taken by defendant to pressure customers not to do business with plaintiff, have severely damaged its reputation and have caused it significant losses.

Defendant argues that because the service letter was conceived and written in Indiana and was mailed from Indiana, and because the division in question has its principal place [*3] of business in Indiana, n1 Indiana is the only state with a significant relationship to the parties and events. Thus, it contends that the substantive law of Indiana should apply. Plaintiff counters that this is a tort controversy in which this Court should apply the traditional rule of lex loci delicti, the law of the place of injury. It asserts that Connecticut, where its principal

place of business is located, is the state where its competitive position has been most damaged and, thus, the local law of Connecticut must be applied to its claims.

n1 Defendant is a Delaware corporation with its principal place of business in New Jersey. Neither party, however, contends that Delaware or New Jersey law should apply

Discussion

A federal court sitting in diversity must follow the choice-of-law rules of the forum state to resolve conflict-of-law questions. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 85 L. Ed. 1477, 61 S. Ct. 1020 (1941); *AroChem International, Inc. v. Buirkle*, 968 F.2d [*4] 266, 269-70 (2d Cir. 1992); *Economu v. Borg-Warner Corp.*, 652 F. Supp. 1242, 1246 (D. Conn.), aff'd 829 F.2d 311 (2d Cir. 1987). Thus, Connecticut choice-of-law principles will apply to this case.

Plaintiff's complaint contains five different counts, all of which sound in tort. Although the Connecticut courts have traditionally adhered to the doctrine that the substantive rights and obligations arising out of a tort controversy are determined by the law of the place of injury or lex loci delicti, in *O'Connor v. O'Connor*, 201 Conn. 632, 519 A.2d 13 (1986), the Connecticut Supreme Court explicitly abandoned "categorical allegiance" to this doctrine in tort cases. 201 Conn. at 648. Recognizing that there are circumstances in which strict application of this rule will frustrate the legitimate expectations of the parties and will undermine important state policies, the Court adopted the choice-of-law rules promulgated in the Restatement (Second) of Conflict of Laws as the governing principles for those cases "in which application of the doctrine of lex loci would produce an arbitrary, irrational result." 201 Conn. at 649-650.

In its ruling, the Connecticut Supreme Court [*5] provided a detailed template for courts to follow in resolving conflict-of-law issues in tort cases. O'Connor instructs that a court should first ascertain whether the doctrine of lex loci should be applied in its entirety based on the facts of the particular case. If not, then the relative significance of the various factors set forth in *section 145 and 6 of the Restatement Second of Conflict of Laws* should be weighed. 201 Conn. at 650-51. These factors include: (a) the needs of the interstate and international systems; (b) the relevant policies of the forum; (c) the relevant policies of the other interested states and the relative interests of those states in the determination of the particular issue; (d) the protection of justified expectations; (e) the basic policies underlying the particular field of law; (f) certainty, predictability and uniformity of result; and (g) ease in the determination and application of the law to be applied. 201 Conn. at 651, quoting *Restatement (Second) of Conflict of Laws § 6* (1971).

O'Connor further instructs that the list of contacts set forth in section 145(2) of the Restatement should be taken into account in applying the principles [*6] of section 6 set forth above. The four factors are: (a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (d) the place where the relationship, if any, between the parties is centered. 201 Conn. at 652, quoting *Restatement (Second) of Conflict of Laws § 145(2)*(1971). The Court emphasized that in analyzing these factors, it is the significance of the factors, not the number of factors, that determines the outcome of this inquiry under the Restatement approach. 201 Conn. at 652-53.

Accordingly, the analysis of O'Connor will be applied to each of the five tort counts set forth in plaintiff's complaint.

I. Tortious Interference with Business Advantage

In deciding whether Connecticut or Indiana law should apply to plaintiff's tortious interference claim, analysis begins by examining whether the doctrine of lex loci delicti would produce an arbitrary or irrational result. See *Katz v. Gladstone*, 673 F. Supp. 76, 79-80 n.2 (D. Conn. 1987). Applying the traditional lex loci rule to plaintiff's tortious interference [*7] claim will not produce an arbitrary result due to the similarity of the law of Indiana and Connecticut on tortious interference and therefore this claim will be governed by the law of Connecticut, the place of plaintiff's injury. The same conclusion would be reached under the most significant relationship test of *sections 145 and 6 of the Restatement (Second) of Conflict of Laws*. See *Economu v. Borg-Warner*, 652 F. Supp. at 1248.

Both Connecticut and Indiana recognize intentional interference with business relations as an actionable tort. The stated elements of this cause of action, however, are somewhat different in the two states. Both Connecticut and Indiana courts require a plaintiff to prove the existence of a valid business relationship, the defendant's knowledge of the relationship, the defendant's intentional interference with the relationship, and damages resulting from the interference. See, e.g., *Blake v. Levy*, 191 Conn. 257, 464 A.2d 52 (1983); *Comfax Corp. v. North American Van Lines, Inc.*, 587 N.E.2d 118, 124 (Ind. App. 1992).

Indiana courts have required a plaintiff to prove an additional element: the absence of justification for defendant's conduct. [*8] See *Winkler v. V.G. Reed & Sons, Inc.*, 638 N.E.2d 1228, 1235 (Ind. 1994); *Flintridge Station Assoc. v. American Fletcher Mtg. Co.*, 761 F.2d 434, 440 (7th Cir. 1985)(applying Indiana law). In determining what constitutes an absence of justification, Indiana courts have looked to the seven factors set forth in the *Restatement (Second) of Torts § 767* (1977). n2 See, e.g., *Winkler*, 638 N.E.2d at 1235.

   n2 These factors are:

   (a) the nature of the defendant's conduct;

   (b) the defendant's motive;

   (c) the interests of the plaintiff with which the defendant's conduct interferes;

   (d) the interests sought to be advanced by the defendant;

   (e) the social interests in protecting the freedom of action of the defendant and the contractual interests of the plaintiff;

   (f) the proximity or remoteness of the defendant's conduct to the interference; and

   (g) the relations between the parties.
*Restatement (Second) of Torts § 767* (1977).

Connecticut has required the plaintiff to plead and prove not only the [*9] four elements set forth above but also at least some improper motive or improper means on the part of the defendant. *Blake*, 191 Conn. at 262. In that regard, the Connecticut Supreme Court has also cited the seven factors of *section 767 of the Restatement (Second) of Torts* for guidance in determining whether the interference was improper. Id. n.3. Thus, whether designated "absence of justification" or "improper motive or improper means," the substantive laws of the two states on the elements that a plaintiff must prove to state a claim for intentional interference with business advantage are sufficiently similar that application of either Connecticut or Indiana law should not frustrate the legitimate expectations of the parties or undermine an important interest of either state. See *O'Connor*, 201 Conn. at 637. Accordingly, since the injury to plaintiff from defendant's tortious interference with business advantage occurred in Connecticut, the court will apply Connecticut law, the lex loci delicti, to plaintiff's tortious interference claim.

Moreover, Connecticut has the most significant relationship to the alleged tort and the parties, such that its substantive law [*10] should be applied. Plaintiff is both incorporated in and has its principal place of business in Connecticut. Connecticut is also the situs of plaintiff's alleged injury for defendant's tortious interference. Further, while the conduct of defendant occurred in Indiana, it was the customers' receipt of the letters throughout the world and their ensuing actions in refusing to continue purchasing parts from plaintiff that caused the injuries complained of. Predictably, the ultimate damage, if any, would be sustained by plaintiff in Connecticut.

Upon balance, the contacts of Connecticut with the events and the parties are more significant than those of Indiana. Therefore, the substantive law of Connecticut shall apply to plaintiff's tortious interference claim.

II. Negligence

The same analysis must be applied to plaintiff's negligence claim.

The parties disagree as to the characterization of plaintiff's negligence claim. Defendant characterizes plaintiff's negligence count as one for negligent misrepresentation. Plaintiff responds that its claim is not one for negligent misrepresentation, but is for negligent breach of duty. It states that

> plaintiff's claim is that it [*11] was foreseeable that if defendant acted negligently in failing to confirm that the information published in its Service Information Letter was true and accurate, a reasonable company would be aware that the publication of such inaccurate and untrue information would result in damage to Valtec. . . . The action is not one for defamation, but breach of duty. In this regard the action does not seek redress for injury to reputation, but actual damages.

Plaintiff's Brief in Response to Defendant's Motion for Summary Judgment at 41-42. The significance of this issue is that Connecticut recognizes the tort of negligent misrepresentation, whereas Indiana has recognized it only in the limited context of employment relationships, which would not apply here.

Connecticut has long recognized liability for negligent misrepresentation based upon the principles set forth in the *Restatement (Second) of Torts § 552* (1977).

1997 U.S. Dist. LEXIS 7670, *

*Williams Ford, Inc. v. Hartford Courant Co.*, 232 Conn. 559, 575, 657 A.2d 212 (1995). Section 552 provides in relevant part:

> One who, in the course of his business, profession or employment . . . supplies false information for the guidance of others in their business [*12] transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Id. quoting *Restatement (Second) of Torts* § 552 (citations omitted). See also *D'Ulisse-Cupo v. Board of Directors of Notre Dame High School*, 202 Conn. 206, 217-18, 520 A.2d 217 (1987). In this case, however, the party to whom the information was supplied is not the party seeking to hold the defendant liable; rather, the plaintiff is the party allegedly damaged as a result of actions taken by the recipients based upon this information. It is unclear whether a Connecticut court would characterize plaintiff's claim in this context as negligent misrepresentation or negligence. However, as discussed infra, the precise characterization of the claim is unimportant.

While Indiana law on negligent misrepresentation has been recently characterized as in a state of "relative chaos," *Trytko v. Hubbell, Inc.*, 28 F.3d 715, 721 (7th Cir. 1994), the Indiana courts have generally refused to recognize the tort of negligent misrepresentation except in the [*13] context of employment relationships. Id.; *Tri-Professional Realty, Inc. v. Hillenburg*, 669 N.E.2d 1064, 1068 (Ind. App. 1996); *Eby v. York-Division, Borg-Warner*, 455 N.E.2d 623, 628-29 (Ind. App. 1983). The Indiana Supreme Court has not yet spoken on the permissible scope of a negligent misrepresentation claim.

At least one appellate court, however, has recently circumvented this issue in holding that despite the trial judge's characterization of the judgment as one for negligent misrepresentation, the facts supported a judgment based upon ordinary negligence. *Tri-Professional Realty, Inc.*, 669 N.E.2d at 1070 (Ind. App. 1996). In that case, the Indiana Court of Appeals held that judgment was proper based on a theory of negligence on a purchaser's claim against a broker who misrepresented the identity of a parcel of property that was for sale and his authority to sell the property. Id. While the Indiana court specifically declined to characterize plaintiff's claim as one for negligent misrepresentation, the facts are similar to those of illustration 4 of the comments on subsection (2) of *section 552 of the Restatement (Second) of Torts*, n3 which has been adopted by [*14] the courts in Connecticut. See *Williams Ford, Inc.*, 232 Conn. at 576-77 n.14. Thus, it appears that the courts of Indiana might well find actionable plaintiff's claims in this case under a negligence theory, whether they would be characterized as negligent misrepresentation or negligent breach of duty by a Connecticut court.

> n3 Illustration 4 of the comments on subsection (2) of *section 552 of the Restatement (Second) of Torts*, regarding the intended scope of the tort of negligent misrepresentation, provides as follows:
>> A, having real estate lots for sale, negligently supplies misinformation about those lots to a multiple listing agent for the purpose of having the information incorporated into a multiple listing available to numerous potential customers. B, in reliance upon the misinformation, purchases one of A's lots and in consequence suffers pecuniary loss. A is subject to liability to B.

Were this court to apply the doctrine of lex loci delicti to plaintiff's negligence claim in this [*15] case, the law of Connecticut would apply since as noted above Connecticut is both the place of injury and the state with the more significant contacts See *O'Connor*, 201 Conn. at 637 Would this frustrate legitimate interests of the parties or undermine an important state interest of Indiana? This court holds that it would not.

When defendant sent out a worldwide publication, defendant could not reasonably rely on the law of the state where its division was located to insulate it from liability for a widely recognized tort such as negligent misrepresentation. n4 Second, Indiana has not rejected the tort of negligent misrepresentation outright, but has limited its application with the more recent cases extending this tort to certain situations, albeit in somewhat limited contexts. Holding an Indiana division of an out-of-state corporation liable for a negligent misrepresentation with respect to an international publication will not offend an important state interest of the state of Indiana.

> n4 Indeed, both New Jersey and Delaware recognize the tort of negligent misrepresentation.

See *Shapiro v. UJB Financial Corp.*, 964 F.2d 272 (2d Cir.), cert. denied, 506 U.S. 934, 113 S. Ct. 365, 121 L. Ed. 2d 278 (1992)(applying New Jersey law); *H. Rosenblum, Inc. v. Adler*, 93 N.J. 324, 461 A.2d 138 (1983); *Guardian Constr. Co. v. Tetra Tech Richardson, Inc.*, 583 A.2d 1378 (Del. Super. 1990); *Gilbane Building Co. v. Nemours Foundation*, 606 F. Supp. 995 (D. Del. 1985).

[*16]

Accordingly, the law of Connecticut, the lex loci delicti, will be applied to plaintiff's negligence claim.

III. Commercial Disparagement

Plaintiff has also asserted a claim for commercial disparagement, which is akin to the torts of injurious falsehood and slander of title. See Prosser and Keaton on Torts § 128 (5th ed. 1984); *Restatement (Second) of Torts* § 623A (1977). While Connecticut has specifically recognized the tort of commercial disparagement, see *Dale System, Inc. v. Time, Inc.*, 116 F. Supp. 527, 530 (D. Conn. 1953); Indiana has not. Indiana like Connecticut, however, has recognized the related tort of injurious falsehood in a factual setting closely aligned with the facts of the present case. See *Raybestos Products Co. v. Younger*, 54 F.3d 1234 (7th Cir. 1995)(applying Indiana law); see also *Gionfriddo v. Gartenhaus Cafe*, 15 Conn. App. 392, 546 A.2d 284 (1988), aff'd 211 Conn. 67, 557 A.2d 540 (1989); *Jonap v. Silver*, 1 Conn. App. 550, 474 A.2d 800 (1984).

Accordingly, the analysis of this conflict-of-laws issue would be the same as that applied to plaintiff's negligence or tortious interference claim. The substantive law of Connecticut [*17] will be applied to plaintiff's commercial disparagement claim.

IV. Defamation and Libel

Plaintiff correctly points out that federal courts sitting in Connecticut have consistently applied the "single publication rule" in multistate defamation cases as a matter of tort law, such that a plaintiff has only one cause of action for a single aggregate publication to a large number of persons at one time. *Buckley v. New York Post Corp.*, 373 F.2d 175, 179 (2d Cir. 1967); *Fouts v. Fawcett Publications, Inc.*, 116 F. Supp. 535, 536 (D. Conn. 1953); *Dale System, Inc. v. Time, Inc.*, 116 F. Supp. 527, 530 (D. Conn. 1953). In such cases, the courts have applied what might be referred to as a "single publication conflict-of-laws rule" to avoid the problems that would be encountered if the forum state was required to consult and apply the local law of every state in which the defamation was published.

Accordingly, in Dale System, the court held that "the law of plaintiff's domicil is the law to be applied to a multi-state libel which has been communicated in the state of plaintiff's domicil as well as in other jurisdictions." *Dale System*, 116 F. Supp. at 530; see also [*18] *Hazlitt v. Fawcett Publications, Inc.*, 116 F. Supp. 538, 539 (D. Conn. 1953); *Katz v. Gladstone*, 673 F. Supp. 76, 79 (D. Conn. 1987). The court's rationale was that plaintiff's domicile is the place where generally the libel will have done the most harm. *Dale System*, 116 F. Supp. at 530.

This same approach has since been followed by the *Restatement (Second) of Conflict of Laws* § 150, which provides that in multistate defamation cases the rights and liabilities of the parties are to be determined by the local law of the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties under the principles stated in section 6. Section 150 further provides that when the plaintiff is a corporation, the state with the most significant relationship will "usually be the state where the corporation . . . had its principal place of business at the time, if the matter complained of was published in that state." While the Restatement looks to the principal place of business of a plaintiff corporation rather than the place of incorporation, as did the court in Dale System, the underlying rationale is the same. Moreover, in [*19] this case, it matters not whether the law of the place of incorporation or plaintiff's principal place of business is applied, since both are the same.

The problem that this case presents, however, is that the offending letter was apparently never published in Connecticut. Accordingly, it could be said that plaintiff sustained no injury to its reputation in Connecticut, even though plaintiff may have sustained monetary damages in Connecticut as a result of injury to its reputation elsewhere. Since the injury in a defamation case is damage to a plaintiff's reputation and good name, see Prosser and Keaton on Torts § 111 (5th ed. 1984), the place of injury would be where plaintiff's reputation with its customers was damaged — i.e. in diverse places throughout the world. Unfortunately, the parties have provided no specific information in this regard other than the fact that approximately 700 letters were mailed by defendant, that they were sent worldwide, and that none were sent to Connecticut. The parties do not even state whether any of the letters were sent to customers in Indiana.

Because strict application of lex loci delicti as to plaintiff's defamation claim would [*20] in fact produce an irrational result, the court must instead apply the significant relationship test of the Restatement (Second) of Conflict of Laws. See *Alexander Hamilton Life Ins. Co. v. James River Corp. of Virginia*, No. 3:96CV1100(AHN), 1997 WL 13053 (D. Conn. Jan. 14,

Case 3:03-cv-00222-JBA   Document 111-3   Filed 05/23/2005   Page 12 of 15

Page 6
1997 U.S. Dist. LEXIS 7670, *

1997). In so doing, this court finds that Connecticut has more significant contacts with the parties and the events than Indiana. Not only is plaintiff incorporated in Connecticut and has its principal place of business here, the financial losses it sustained were in Connecticut. Moreover, when defendant mailed the service information letter, regardless of whether the information contained therein was defamatory, it had to have known that any damage caused thereby would ultimately be sustained by plaintiff in Connecticut.

Defendant urges instead that Indiana law should apply, where its division was headquartered and also where it claims that the conduct causing the injury took place. Defendant's argument is not persuasive. Although the service information letter was conceived, written and mailed in Indiana, it was its publication to parties throughout the world that actually caused plaintiff's alleged injury. [*21] In single defamation cases, the Restatement states that generally the local law of the state where the publication took place should be applied, not the state where the defendant acted. *Restatement (Second) of Conflict of Laws § 149*.

On balance, the court finds that Connecticut law should apply to plaintiff's defamation and libel claims.

V. CUTPA

Lastly, as to plaintiff's CUTPA claim, in the context of a multistate transaction, where choice-of-law principles dictate that the law of Connecticut should be applied, a cause of action may exist under CUTPA even though none of the acts complained of took place in Connecticut. See *USGI, Inc. v. Michele Limited Partnership*, Civ. No. B-88-229(JAC), *1991 WL 152445* (D. Conn. Jan. 26, 1991); *Bailey Employment System, Inc. v. Hahn*, 655 F.2d 473 (2d Cir. 1987). Therefore, plaintiff may proceed on its CUTPA claim.

Conclusion

For the reasons set forth above, the substantive law of Connecticut shall apply to each of the five counts asserted in plaintiff's complaint.

Dated: March 7th, 1997.

Bridgeport, [*22] Connecticut.

**WARREN W. EGINTON,**

**Senior United States District Judge**

LEXSEE 2003 US DIST LEXIS 13277

Victor G. Reiling and Associates et al. v. Fisher-Price, Inc.

No. 3:03cv222 (JBA)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

2003 U.S. Dist. LEXIS 13277

July 31, 2003, Decided

**SUBSEQUENT HISTORY:** Motion granted by, Motion to strike denied by *Victor G. Reiling Assocs. v. Fisher-Price, Inc.*, 2004 U.S. Dist. LEXIS 21091 (D. Conn., Sept. 30, 2004)

**DISPOSITION:** Defendant's motion to transfer venue was denied.

**LexisNexis(R) Headnotes**

**COUNSEL:** [*1] For Victor G Reiling Assoc, Design Innovation Inc, PLAINTIFFS: Edmund J Ferdinand, III, Grimes & Battersby, Norwalk, CT USA.

**JUDGES:** Janet Bond Arterton, U.S.D.J.

**OPINIONBY:** Janet Bond Arterton

**OPINION:**

Ruling on Defendant's Motion to Transfer Venue [Doc. # 18]

Plaintiffs Victor G. Reiling and Associates and Design Innovation, Inc. are independent toy inventors both organized and existing under the laws of Connecticut and both with principal places of business in Connecticut. Defendant Fisher-Price, a well-known toy manufacturer, is a Delaware corporation with a principal place of business in New York. This diversity action alleges that defendant used plaintiffs' toy design without permission or payment, after having previously rejected plaintiffs' licensing proposal. Defendant has moved to transfer venue to the U.S. District Court for the Western District of New York pursuant to *28 U.S.C. §§ 1404(a) and 1406(a)*, asserting that the choice of law provision in an option agreement controls. For the reasons set out below, the motion is denied.

I. Background

In 1998, plaintiffs submitted a toy prototype to Fisher-Price that would add an additional feature to [*2] Fisher-Price's already-existing Rescue Heroes line, which included fireman and police officers. Plaintiffs proposed attaching a "film/video monitor" backpack to the action figures that would allow the toy user to view footage of the figures in action, and proposed naming these figures Reel/Real Heroes.

Fisher-Price was sufficiently interested n1 in this idea to sign an option agreement, which provided that Fisher-Price would pay plaintiffs $ 7500 in exchange for an exclusive option to license the idea during the February 1, 1999 to May 1, 1999 option period. The final clause of the option agreement provided as follows:

> This Option Agreement shall be constructed [sic] in accordance with the laws of the state of New York, except for its Conflict of Laws doctrine, and both parties agree that personal jurisdiction will be proper only in New York State and venue will be proper only in the courts located in Erie County New York.

---

n1 The amount of interest is in dispute.

---

On March 23, 1999, Fisher-Price [*3] informed plaintiffs that it would not exercise the option because it would be too costly to produce the toy. Plaintiffs thereafter sent Fisher-Price another, less costly prototype

in May 1999 (after the option period expired), but Fisher-Price declined to license that idea as well. In December 2000, plaintiffs sent Fisher-Price yet another prototype that was even more stripped down, which Fisher-Price again rejected as "too expensive for what it does." No written option agreement was signed for the May 1999 and December 2000 submissions.

Plaintiffs claim that at a February 2002 toy fair in New York they saw a Fisher-Price catalogue containing a new line of Fisher-Price toys called "Voice Tech Video Mission Rescue Heroes," which came equipped with "Special Video Mission Backpacks" that plaintiffs claim constitute misappropriation of their submissions. In March 2002, Fisher-Price started marketing this line of toys online and in stores nationwide.

On January 31, 2003, plaintiffs filed this suit alleging breach of contract, misappropriation of an idea, unfair competition, n2 and for an accounting. While the original complaint divided the breach of contract claim into one count of "breach [*4] of express contract" and one count of "breach of implied-in-fact contract," n3 neither claim was pled as a breach of the option agreement. n4 Plaintiffs subsequently filed an amended complaint, deleting the breach of express contract count but retaining the remaining causes of action.

n2 Plaintiffs' unfair competition claim is pled as both as both a common law unfair competition claim and a claim under the Connecticut Unfair Trade Practices Act, *Conn. Gen. Stat. § § 42-110a et seq*.

n3 The distinction between the two "involves . . . no difference in legal effect, but lies merely in the mode of manifesting assent." *Restatement (Second) Contracts § 4, cmt. a*

n4 The breach of express count alleged in pertinent part:

There was an express contract between Plaintiffs and Defendants according to which Plaintiffs were to be renumerated for the disclosure of their product concept for a battery operated animated image played designed to look like a backpack and mount on existing Fisher-Price "Rescue Heroes" action figures if said concept was ultimately used by defendant.

Compl. P 35. The breach of implied in fact contract count alleged in pertinent part:

As an alternative to Count I, the facts and circumstances of Plaintiffs' disclosure of their novel and original toy concept to Defendant created a contract implied in fact between Plaintiffs and Defendant pursuant to which Defendant agreed to compensate Plaintiffs for the disclosure of Plaintiffs' product concept for a battery operated animated image played designed to look like a backpack and mount on existing Fisher-Price "Rescue Heroes" action figures.

Compl P 42

[*5]

On May 15, 2003, defendant moved to transfer venue pursuant to *28 U.S.C. § § 1404(a) and 1406(a)*. The crux of defendant's argument is that the forum selection clause in the option agreement controls because plaintiffs' causes of action relate to the same subject matter as the option agreement, and thus this case should be transferred to the U.S. District Court for the Western District of New York. Defendant claims that plaintiffs cannot avoid the forum selection clause by dropping the express contract claim, apparently equating "express" with "written" and thus believing that the express contract claim was a claim of violation of the written option agreement. Defendant also notes that plaintiffs' *Rule 26(f)* report lists the option agreement as one topic about which discovery will be required, and that the option agreement is one of the exhibits appended to the complaint. In opposition, plaintiffs assert that their claims in this suit are not subject to the forum selection clause.

II. Analysis

A. *§ 1406(a)*

When venue lies in the wrong division or district, the district court "shall dismiss, or if it be in the interest of justice, transfer such case to [*6] any district or division in which it could have been brought." *28 U.S.C. § 1406(a)*. While "[a] forum selection clause is enforceable unless it is shown that to enforce it would be unreasonable and unjust or that some invalidity such as fraud or overreaching is attached to it," *New Moon Shipping Co., Ltd. v Man B & W Diesel AG, 121 F.3d 24, 29 (2d Cir. 1997)*, "this general rule applies, however, only when the contract containing the forum selection clause is the subject of the suit," *Dan-Dee Int'l,*

*Ltd. v. Kmart Corp.*, 2000 U.S. Dist. LEXIS 13411, No. 99 Civ. 11689, 2000 WL 1346865, at *4 (S.D.N.Y. Sept. 18, 2000).

In the instant case, the forum selection clause by its terms applies only to "This Option Agreement," and not to any claim or dispute that does not arise under the option agreement. n5 The option agreement expired in May 1999 and plaintiffs are not asserting any rights under it, as their claims of misappropriation (and related claims regarding their right to their designs) exist even absent the option agreement. The fact that plaintiffs anticipate discovery on the option agreement and included the option agreement as one of the exhibits appended [*7] to the complaint is unexceptional given that the option agreement is undoubtedly part of the contextual background of this case

n5 Thus, defendant's reliance on *Bense v. Interstate Battery Sys. of America*, 683 F.2d 718 (2d Cir. 1982), is misplaced. There, the forum selection clause provided that "'the exclusive venue of any suits or causes of action arising directly or indirectly from this agreement shall be in Dallas County, Texas.'" *Id.* at 720 (emphasis added). While plaintiffs' claim against defendant is arguably indirectly related to the option agreement, the forum selection clause here, unlike the clause in *Bense*, does not apply to disputes that are only indirectly related to the contract containing the forum selection clause.

Defendant's assertion that plaintiffs cannot avoid the forum selection clause merely by having dropped the express contract count is unavailing because the express contract claim was never based on the option agreement. The allegation [*8] in the now-dropped breach of express contract count was that defendants breached "an express contract between Plaintiffs and Defendants according to which Plaintiffs were to be renumerated for the disclosure of their product concept . . . if said concept was ultimately used by defendant," Compl. P 35, and not that defendants failed to abide by the terms of the option agreement by, for example, failing to pay the $ 7500 due under the agreement. See Pls.' Mem. Opp. [Doc. # 24] at 7 ("Plaintiffs have never asserted that Fisher-Price breached the Option Agreement."). Like every other count in the complaint, the express contract claim could have existed even absent the option agreement, and thus its presence or absence is of no consequence to the forum selection clause analysis.

B. § 1404(a)

Defendant alternatively argues for a transfer of venue "for the convenience of parties and witnesses" or "in the interest of justice" under 28 U.S.C. § 1404(a). In a § 1404(a) inquiry, the plaintiff's choice of forum (here, Connecticut) is "accorded substantial weight." *Golconda Mining Corp. v. Herlands*, 365 F.2d 856, 857 (2d Cir. 1966). Other factors [*9] considered in a § 1404(a) inquiry are the presence of an applicable forum selection clause; the location of relevant documents and the relative ease of access to sources of proof; the locus of operative facts; the availability of process to compel the attendance of unwilling witnesses; and the relative means of the parties. See *Berman v. Informix Corp.*, 30 F. Supp. 2d 653, 657 (S.D.N.Y. 1998). These factors are either in plaintiff's favor (i.e., as indicated above, there is no applicable forum selection clause for these claims, and Fisher-Price is likely of greater means than plaintiffs) or do not cut strongly either way (location of sources and witnesses and the locus of operative facts). Thus, transfer under § 1404(a) is not warranted and plaintiffs' choice of forum will be respected.

III. Conclusion

For the forgoing reasons, defendant's motion [Doc. # 18] is DENIED.

IT IS SO ORDERED.

/s/

Janet Bond Arterton, U.S.D.J.

**Dated at New Haven, Connecticut, this 31st day of July, 2003.**