UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| VICTOR G. REILING ASSOCIATES and : <br> DESIGN INNOVATION, INC., : <br> : <br>                 Plaintiffs, : <br> : <br>     v. : <br> : <br> FISHER-PRICE, INC. : <br> : <br>                 Defendant. : <br> : | Civil No. 303CV222(JBA) <br><br> June 4, 2005 |

**MEMORANDUM IN SUPPORT OF**
**FISHER-PRICE'S MOTION TO STRIKE THE**
**DECLARATIONS OF JAMES KIPLING AND VICTOR REILING**

**HODGSON RUSS LLP**
One M&T Plaza, Suite 2000
Buffalo, New York  14203

**ROBINSON & COLE, LLP**
280 Trumbull Street
Hartford, CT  06103-3597

**Table of Contents**

Introduction ..................................................................................................................................1

Argument ....................................................................................................................................1

I.     PORTIONS OF KIPLING'S DECLARATION SHOULD BE STRICKEN........................1

        A.     Kipling Is Not Qualified to Give Opinions or Testify
             as to Any Design-Related Matters ...............................................................................2

        B.     Kipling's Opinions Regarding Novelty Are Contrary to Law ................................5

        C.     Kipling's Opinions Stating Ultimate Legal
             Conclusions Should Not Be Considered ..................................................................7

        D.     Kipling's Speculation as to Underlying Facts
             is Unsupported By the Record ...................................................................................8

II.    REILING'S DECLARATION SHOULD BE STRICKEN
       TO THE EXTEND IT OFFERS EXPERT OPINION ........................................................9

Conclusion ................................................................................................................................12

**Introduction**

Fisher-Price submits this memorandum in support of its motion to strike certain portions of the declaration of James Kipling, dated May 23, 2005 (Docket No. 108) ("Kipling Dec.") and the declaration of Victor G. Reiling, dated May 20, 2005 (Docket No. 107) ("Reiling Dec.") in opposition to Fisher-Price's motion for summary judgment. Portions of Kipling's declaration are subject to preclusion because: (1) he is not qualified to give opinions or testify about any design-related matter (including toy design, use, novelty, concreteness, or prior art), market research in the toy industry, or play patterns of children; (2) he gives opinions regarding novelty which are contrary to law; and (3) he attempts to give legal testimony stating ultimate legal conclusions which are outside the province of expert testimony.

Fisher-Price moves to strike portions of the Reiling declaration on the basis that Reiling gives impermissible and undisclosed expert testimony.

**Argument**

### I. PORTIONS OF KIPLING'S DECLARATION SHOULD BE STRICKEN

James Kipling is a lawyer in private practice in a Cincinnati, Ohio law firm. Prior to entering private practice, he served as a lawyer in the legal department of Kenner/Hasbro between 1974 and 2001. Kipling Dec. ¶ 3.

Kipling admits he is not qualified as a toy designer at a toy company.[1] Kipling is

---

[1] *See* the declaration of Jodyann Galvin, dated June 4, 2005 (the "Galvin Dec."), Ex. B at 9. Kipling acknowledges that Fisher-Price's expert witness, Howard Bollinger is "an expert in toy design." *Id.* at 11-12.

a lawyer in private practice who served as in-house counsel at Kenner/Hasbro from 1974-2001. *See* Kipling Dec. ¶ 3. He has never been employed as a toy designer, nor has he designed a toy of any type. He does not consider himself a product designer, and he does not hold any patents relating to toys. Galvin Dec., Ex. A at 59-60. He has never been employed as a child psychologist. He does not have a degree in market research. *Id.*, Ex. B at 5, 6, 11. While at Kenner/Hasbro, he "rarely" attended "meetings where outside inventor submissions were reviewed for their merit."[2] He did not determine "which toy designs would proceed to commercialization."[3] He did not routinely negotiate royalty rates.[4] While Kipling has some publications to his credit, virtually all of the publications deal with issues of intellectual property *law*, like licensing, copyright, patent, and trademark issues. In the paragraphs of his declaration which describe his expertise and qualifications, Kipling does not claim any expertise or specialized knowledge in toy design. Kipling Dec. ¶¶ 2-7.

### A. Kipling Is Not Qualified to Give Opinions or Testify as to Any Design-Related Matters

The trial court must determine whether Kipling's testimony rests on a reliable foundation, or is simply based on "subjective belief or unsupported speculation." *Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. 579, 590, 113 S. Ct. 2786 (1993). "An expert basing his opinion solely on experience 'must do more than aver conclusorily that his experience led to his opinion,' and he must do more than 'propound a particular interpretation of [a party's]

---

[2] Exhibit A at 142.

[3] *Id*.

[4] *Id.*

conduct . . .. [such an expert] must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Lippe v. Bairnco Corp.,* 288 B.R. 678, 686-87 (S.D.N.Y. 2003) (citing *Primavera Familienstifung v. Askin,* 130 F. Supp.2d 450, 529 (S.D.N.Y. 2001)).

Rule 702 requires a witness to be "qualified as an expert by knowledge, skill, experience, training or education." Fed. R. Evid. 702. Because Kipling has admitted he is not qualified to be a toy designer, this Court should strike any of the statements in his declaration which relate to toy design, design features, novelty, concreteness, possible executions of plaintiffs' concept, or prior art. An expert witness's testimony should be based on training and experience, and lack of such training and experience is a basis for refusal to admit or consider the expert's testimony. *See McCullock v. H.B. Fuller Co.,* 981 F.2d 656, 658 (2d Cir. 1992) (agreeing with District Court's decision not to qualify an electrical and industrial engineer with safety experience as an expert on warning labels).[5]

A court may preclude testimony on issues outside the scope of the witness's expertise and permit testimony on other issues within the witness's expertise. In *Morse/Diesel, Inc. v. Trinity Indus., Inc.*, 67 F.3d 435 (2d Cir. 1995), a construction case, the defendant offered the testimony of a certified public accountant on damages issues. *Id.* at 444. The District Court

---

[5] *See also Trumps v. Toastmaster, Inc.*, 969 F.Supp. 247, 252 (S.D.N.Y. 1997) (disqualify a mechanical engineer from testifying as to electrical engineering); *Bogosian v. Mercedes-Benz of N. Am.*, 104 F.3d 472, 477 (1st Cir. 1996) (upholding preclusion of testimony of mechanic with "extensive experience in automotive repair" as to transmission design defect)

found that a proffered opinion as to "responsibility of various parties for bearing certain costs" was beyond the expert's qualifications. The Second Circuit upheld this finding.[6]

This Court should evaluate Kipling's statements according to the holding of *Morse/Diesel*. In particular, the Court should evaluate the following list of paragraphs from the Kipling Declaration in light of Kipling's training and experience ***as an attorney*** who assisted a toy company with intellectual property matters, not as a toy designer.

- In paragraphs 22, 23 and 24, Kipling makes broad statements regarding "play patterns," "mechanical executions," "specific design," "action figure play," "role-playing scenario," and "performance of a particular design."

- In paragraph 28, Kipling opines that "Plaintiffs' concept can be executed to achieve the described 'visual communication' in any of a multiplicity of structure or forms" or "conceptually interchangeable executions."

- In paragraphs 39 through 43, Kipling purports to compare plaintiffs' submission with certain Rescue Heroes figures (Voice Tech Mission Command, Voice Tech Video Mission, Mission Select, and Optic Force). Kipling also opines on play "value," design features, and the purported "replicat[ion]" of plaintiffs' submissions.

- In paragraph 54, Kipling attempts to distinguish the prior art presented on Fisher-Price's motion. He is not qualified to analyze the prior art and its design features or to compare the design features or elements of the prior art to plaintiffs' submissions.

Because Kipling lacks experience as a toy designer, any opinions he offers on toy design, design features, novelty or concreteness as set forth in paragraphs 22-24, 28, 39-43, and 54 should be stricken or disregarded.

---

[6] The court noted, however, that "[q]uestions relating to accounting methods . . . did fall within [the] witness's expertise." *Morse/Diesel*, 67 F.3d at 435.

B.  **Kipling's Opinions Regarding**
    <u>**Novelty Are Contrary to Law**</u>

"[T]estimony about custom and usage that clearly contradicts an established principle of law" should be precluded.[7] The reliability requirements imposed upon expert witnesses extends to their statements applying legal principles or on the law: "[i]ncorrect statements of the law are no more admissible through 'experts' than are falsifiable scientific theories."[8] Kipling's opinions regarding novelty are contrary to established law. At paragraphs 49 through 51 of his declaration, he states that "in the toy industry [novelty] is not a significant consideration" except in limited circumstances. This conclusion contradicts existing law which analyzes submission of idea cases in the toy industry with respect to novelty. These cases include *Nadel v. Play-by-Play Toys & Novelties, Inc.,* 208 F.3d 368 (2d Cir. 2000),[9] and *AEB & Assocs. Design Group, Inc. v. Tonka Corp.,* 853 F. Supp. 724 (S.D.N.Y. 1994) ("A plaintiff asserting misappropriation of his idea must establish that his concept is sufficiently novel to be entitled to legal protection").

In fact, Kipling has admitted that he did not consider *any* law with respect to novelty requirements.

---

[7]  *Hill v. NSB Niederliebe Schiffahrtsges MBH & Co.*, 2004 U.S. Dist. LEXIS 4837, *4 (E.D. Pa. Mar. 5, 2004). *Hill* and other unpublished cases are attached to this memorandum in alphabetical order.

[8]  *Hebert v. Lisle Corp.*, 99 F.3d 1109, 1117 (Fed. Cir. 1996) ("encourag[ing] exercise of the trial court's gatekeeper authority when parties proffer, through purported experts, not only unproven science . . . but markedly incorrect law"; citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S.Ct. 2786 (1993)). *See also Barban v. Rheem Textile Sys., Inc.*, 2005 U.S. Dist. LEXIS 5996, * 18-19 (Feb. 11, 2005) (rejecting expert's report and deposition testimony for reasons including contradiction of a "well-established principle in tort law").

[9]  Kipling includes *Nadel* in his report. *See* Kipling Dec., Exhibit A.

> Q. . . . In arriving at your conclusion that Fisher-Price owed a royalty . . . did you consider what the law was any particular state as to the requirement for novelty or lack of requirement for novelty?
>
> A. This was my expert opinion. It is not a legal brief.
>
> \* \* \*
>
> Q. . . . With regard to any requirement for novelty, or the lack of any requirement for novelty, did you consider the case law in any particular state in rendering your opinion?
>
> A. Do you mean the definition of novelty under state law?
>
> Q. Yes.
>
> A. No.[10]

Kipling also states that Fisher-Price relies "upon certain case law which may or may not still be valid" in support of its argument that the combination of known elements does not suffice to establish novelty. Kipling Dec. ¶ 51. Kipling rejects this extensive body of caselaw and instead concludes that a combination of known elements may be novel. He purposefully ignores and testifies contrary to the legal standard that requires "genuine novelty and invention, and not merely a clever or useful adaptation of existing knowledge." *Hogan v. D.C. Comics*, 48 F.Supp. 2d 298, 314 (S.D.N.Y. 1999).[11]

---

[10] Galvin Dec., Ex. A at 98-99. Kipling's disregard for the legal novelty standard is evident in his conclusion that a royalty would be owed even if "the company itself had marketed the same thing previously." *Id.* at 98.

[11] *See also Brandwynne v. Combe Int'l*, 74 F. Supp. 2d 364 (S.D.N.Y. 1999) ("a combination of pre-existing elements is not considered 'novel'"); *Educational Sales Programs, Inc. v. Dreyfus*, 65 Misc.2d 412, 416, 317 N.Y.S.2d 840, 844 (Sup. Ct. N.Y. Co. 1970) ("The judicious use of existing means, or the mixture of known ingredients in somewhat different proportions . . . partake more of the nature of elaboration and renovation than of innovation"); *Khreativity Unlimited v. Mattel*, 101 F. Supp. 2d 177, 185-86 (S.D.N.Y.), *aff'd,* 242 F.3d 366 (2d Cir. 2000) ("a combination of pre-existing elements is not considered novel"); *Paul v. Haley*, 183 A.D.2d 44, 588 N.Y.S.2d 897 (2d Dep't 1992) ("Not every good idea is a legally protectible idea, and an idea which is a variation on a basic theme will not support a finding of novelty");

Footnotes continued on next page.

Because Kipling's conclusions contained in paragraphs 49, 50, and 51are contrary to law, the paragraphs should be stricken.

**C. Kipling's Opinions Stating Ultimate Legal Conclusions Should Not Be Considered**

The Court should also strike those portions of Kipling's declaration in which he gives opinions stating ultimate legal conclusions. "While an expert may provide an opinion to help a jury or a judge understand a particular fact, he may not give testimony stating ultimate legal conclusions based on those facts. *In re Initial Public Offering Sec. Litig.*, 174 F. Supp. 2d 61, 64-65 (S.D.N.Y. 2001). In fact, this rule is "so well-established that it is often deemed a basic premise or assumption of Evidence Law -- a kind of axiomatic principal." *Id.* (collecting cases).[12] Thus, an expert opinion should be rejected where the expert's opinion does no more than what counsel for a party would do at argument. *See Primavera*, 130 F. Supp. 2d at 530.

In paragraphs 15 and 16, Kipling concludes that "Fisher-Price's Policy and Agreement form does not bind Plaintiff Reiling in this case, and more importantly, that its

---

Footnotes continued from previous page.

*Ring v. Estee Lauder*, 702 F. Supp. 76, 77 (S.D.N.Y. 1988, *aff'd*, 874 F.2d 994 (2d Cir. 1989) (holding a combination of known elements was non-novel as a matter of law); *Kavanau v. Courtroom Television Network*, 23 U.S.P.Q.2d 1938, (S.D.N.Y. 1992) (rejected plaintiff's "assertion of novelty . . . because the CJN Plan is a mere compilation of elements that were already in use in the television industry").

[12] *See also Kidder-Peabody & Co. v. IAG Int'l Acceptance Group, N.V.,* 14 F. Supp. 2d 391 (S.D.N.Y. 1998) (granting motion to preclude law professor's expert testimony where expert sought to render opinion that party had acted reasonably and in good faith); *Utah Med. Prods., Inc. v. Clinical Innovations Assoc., Inc.,* 79 F. Supp. 2d 1290, 1316 (D. Utah 1999) (precluding legal opinions by a patent attorney on both infringement and claim construction).

practice . . . violates public policy and the general sensibilities of a reasonable man."[13] Whether a party is bound to the terms of an agreement it signed is an ultimate legal conclusion not within the province of expert testimony. Kipling's "opinion" is mere legal argument which does no more than plaintiffs' counsel would do at argument and therefore should be stricken.

In paragraph 19, Kipling gives the conclusion that the 1994 Policy and Agreement was not binding upon Design Innovation because "Reiling did not act as Design Innovation's agent . . . and Reiling never had any authority to bind Design Innovation." This is an ultimate legal conclusion which is outside the scope of permissible expert opinion. Accordingly, this paragraph should be stricken.

### D. Kipling's Speculation as to Underlying Facts is Unsupported By the Record

In paragraphs 44-47, Kipling discusses the "Carterbench rationale." Kipling's conclusion regarding Carterbench, an inventor receiving a royalty on two of the products at issue, is without basis. Kipling concludes: "I believe the entire Carterbench arrangement may have been contrived in an effort to create a smokescreen behind which Fisher-Price intends to hide the royalties improperly denied plaintiffs." This conclusion is without any basis in the record. These paragraphs should be stricken as exceeding the scope of proper expert opinion because Kipling attempts to state "what really happened."[14]

---

[13]   In addition to being an improper legal conclusion, this conclusion is also contrary to law and is subject to preclusion on that basis alone. A virtually identical waiver was upheld in *M.H. Segan Ltd. P'ship v. Hasbro*, 924 F.Supp. 526 (S.D.N.Y. 1996).

[14]   Where an expert report "contains arguments and conclusory statements about questions of fact," such testimony should be precluded. *See Linkco, Inc. v. Fujitsu*, 2002 U.S. Dist. LEXIS 12975, * 4 (S.D.N.Y.

Footnotes continued on next page.

Accordingly, this Court should strike those portions of the Kipling declaration which give opinions: (1) on matters beyond his qualifications; (2) which are contrary to law; and (3) which make ultimate legal conclusions.

### II.  REILING'S DECLARATION SHOULD BE STRICKEN TO THE EXTENT IT OFFERS EXPERT OPINION

Federal Rule of Evidence 701 governs opinion evidence by non-experts:

> If the witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

The purpose of Rule 702(c) is "to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering expert testimony in lay witness clothing."[15]

Testimony which "reflect[s] specialized knowledge . . . because of extensive experience" in an industry should not be admitted under Rule 701. In *Bank of China v. NBM LLC*, 359 F.3d 171, 181-82 (2d Cir. 2004), the Second Circuit held "the District Court abused its discretion to the extent it admitted testimony of a senior bank employee based on his experience

---

Footnotes continued from previous page.

    July 16, 2002). The accusations regarding Carterbench are also jarring because Fisher-Price did not rely on royalties being paid to Carterbench in its motion for summary judgment. Thus, irrelevance is another basis for striking paragraphs 44-47.

[15]    Fed. R. Evid. 701, Advisory Committee's Note.

and specialized knowledge in international banking." The employee was assigned to investigate the activities of the defendants. He testified about the results of the investigation (*i.e.*, the transactions), as well as: (1) how certain transactions failed to "comport with the business community's understanding of normal, true, trade transactions;" (2) how a trust receipt "works in the context of an international commercial transaction"; and (3) what constitutes fraud in the context of trust receipts being used to obtain a loan.

The district court permitted such testimony "based on his many years of experience in international banking and trade." *Id.* at 180-81. But the Second Circuit held that the witness should not have been permitted to testify on matters which "reflected specialized knowledge he has because of his extensive experience . . ." *Id*. at 182. Rather, his testimony should have been limited to matters of specific personal perception: "the investigation and . . . his investigatory findings and conclusions." *Id.* at 181.

Under *Bank of China*, testimony based on specialized knowledge due to years of experience is not permitted unless the witness: (1) satisfies the credibility requirements of Federal Rule of Evidence 702; and (2) was disclosed as an expert. Even if Reiling could satisfy the reliability requirement of Federal Rule of Evidence 702,[16] ***he has not been disclosed as an expert*** and should not be permitted to offer sworn expert testimony on this motion.

Reiling's declaration in opposition to Fisher-Price's summary judgment motion is replete with opinions that are allegedly based on his "decades of experience" in the toy industry

---

[16] While Fisher-Price does not make this motion on the basis that Reiling does not meet the credibility requirements under Federal Rule of Evidence 702, it reserves the right to do so in a pre-trial motion *in limine*.

and the "custom and practice" in the industry. Under Federal Rule of Evidence 701, this testimony is not permitted because it relies on his purported extensive experience and is not based on specific personal perceptions. For example, at paragraphs 16 through 22, Reiling opines about "Toy Industry Custom and Practice." Under this heading, he gives the following conclusions based upon his "experience":

- Toy companies pay royalties according to *"the long-established custom and practice in the toy industry."* Reiling Dec. ¶ 16.

- "During his career, *the custom and practice in the toy industry* has been" to pay equal royalties on line extensions. *Id.* ¶ 18.

- *In his "experience, it is standard toy industry practice* for an inventor to combine several existing elements. *Id*. ¶ 19.

- *"Over the course of [his] career"* he has had disputes with toy companies and *"[t]ypically"* the toy company and inventor attempt to reach a resolution. *Id*. ¶ 20.

- *"Based upon [his] prior experience in the industry*, [he] also expected [his] submission to be held in confidence . . ." *Id.* ¶ 22.

Reiling also makes many other statements about "industry practice" which should be stricken as well. For example, Reiling states that *"[p]er industry practice, "* inventors use a combination of media to illustrate their concept. Reiling Dec. ¶ 29. Reiling states (with no factual foundation whatever) that, *"[i]n his experience*, a toy company enters into an Option Agreement to prevent the inventor from showing the concept to another toy company." *Id.* ¶ 31.

Reiling also relies on his experience or "custom and practice in the toy industry" to conclude the following: (1) Fisher-Price owes a royalty (¶ 37); (2) "Fisher-Price's purported 'evidence' of novelty . . . flies in the face of *longstanding toy industry custom and practice*" (¶ 39); and (3) "evidence [of novelty] is *typically* disclosed to the inventor during the submission

- 11 -

process . . . [and] Toy companies simply do not option a concept if there is an issue about its novelty" (¶ 48). Reiling also attempts to counter what he perceives (incorrectly) as Fisher-Price's position in its motion papers that by again falling back on "the longstanding practice of the toy industry . . . " and "the longstanding custom and practice in the toy industry." *Id.* ¶¶ 55-56.

Finally, Reiling purports to testify about the history and current state of the toy industry and the pre-school market in general in paragraphs 6 through 10 under the heading "Consolidation in the Toy Industry." First, this information is hardly relevant to the dispute between plaintiffs and Fisher-Price. Second, it again smacks of an attempt to get industry information appropriate for expert testimony (if relevant) before the Court without complying with the rules governing expert disclosure. This recitation of facts could hardly be based on Reiling's contemporaneous perception of the events at issue in this case.

It would be difficult to conceive of statements which fit more squarely than Reiling's into the facts of *Bank of China* and the warning of the Federal Rules Advisory Committee that parties cannot evade the requirements of Federal Rule 702 "through the simple expedient of proffering expert testimony in lay witness clothing."

## Conclusion

For the foregoing reasons, this Court should strike and/or disregard those portions of the declaration of James Kipling where he testifies on the following subjects: toy design, use, novelty, concreteness, and prior art; a comparison of features among Fisher-Price's products, plaintiffs' submissions, and the prior art; opinions regarding custom and practice relating to novelty that is contrary to law; the binding nature of the Policy and Agreement; and whether

Victor Reiling acted on behalf of Design Innovation.  This Court should further strike and/or disregard those paragraphs in the declaration of Victor G. Reiling in which he bases his testimony on experience and specialized knowledge.

Dated:  June 4, 2005

| | |
|---|---|
| **HODGSON RUSS LLP** | Bradford S. Babbitt |
| | e-mail:  babbitt@rc.com |
| | Federal Bar No.:  ct13938 |
| By _____s/Jodyann Galvin_____ | Michael J. Kolosky |
| Robert J. Lane, Jr. | email:  mkolosky@rc.com |
| e-mail:  rlane@hodgsonruss.com | Federal Bar No.:  ct22686 |
| Federal Bar No.:  ct24598 | **ROBINSON & COLE LLP** |
| Jodyann Galvin | 280 Trumbull Street |
| e-mail:  jgalvin@hodgsonruss.com | Hartford, CT  06103-3597 |
| Federal Bar No.:  ct24599 | Telephone:  (860) 275-8200 |
| One M&T Plaza, Suite 2000 | |
| Buffalo, New York  14203-2391 | *Attorneys for Fisher-Price, Inc.* |
| Telephone: (716) 856-4000 | |