# EXHIBIT A

```
 1                UNITED STATES DISTRICT COURT

 2                  DISTRICT OF CONNECTICUT

 3                          - - -

 4   VICTOR G. REILING ASSOCIATES      )
     AND                                )
 5   DESIGN INNOVATION, INC.,           )
                                        )
 6                   PLAINTIFFS,        )
                                        )
 7   VS                                 ) CIVIL NO. 303 CV 222
                                        )           (JBA)
 8   FISHER-PRICE, INC.,                )
                                        )
 9                   DEFENDANT.         )
     -----------------------------------

14          DEPOSITION OF:  JAMES M. KIPLING

15                 CINCINNATI, OHIO

16                 JANUARY 30, 2004




19                    ORIGINAL




23   REPORTER:  JILL M. DRAGON SANDY
```

*Giglio Reporting Services (513) 861-2200*          1

1       Q.   And I don't mean the individual figures.
2   I mean, you've referred to video mission figures; correct?
3       A.   I think that that's the way that these
4   are all characterized.
5       Q.   Yeah.  Are you aware of any other types
6   of Rescue Heroes figures, apart from video mission --
7       A.   Whether there are other types?
8       Q.   Yes.
9       A.   Yeah, yeah.
10      Q.   Do you know the names of those other
11  types?
12      A.   No.
13      Q.   Are there other types that you're aware
14  of, separate and apart from video mission Rescue Hero
15  figures, that you believe used or are based on plaintiff's
16  concept?
17      A.   I'm not aware of any.
18      Q.   Have you ever worked as a toy designer?
19      A.   No.
20      Q.   Do you have any patents?
21      A.   Of my own?
22      Q.   Yes.
23      A.   No.
24      Q.   Have you ever designed a toy of any
25  type?

1       A.   No.
2       Q.   Are you a person of ordinary skill in
3  the art of toy design?
4       MR. DIZE:  I'm going to object to the
5  term "ordinary skill" as vague.
6       Q.   Okay.  Go ahead.
7       A.   I've developed a feel for toy design and
8  what goes into the creation of a successful toy line.
9            See, my role with Kenner and Hasbro was
10 all about the product, primarily all about the product, not
11 about, you know, corporate finance or any of those things.
12 It was all about the product.  And I was intimately involved
13 with the development of the product, the development of the
14 advertising, the packaging, not in the sense that I did it,
15 although, you know, there were certain aspects of copy
16 creation, for example, that I did do.  I, you know, wrote
17 some of the sell copy.  In other words, I was enmeshed every
18 day in that process.  I don't consider myself a product
19 designer, or one who is, well, skilled in that --
20      Q.   In that art?
21      A.   -- in that art.  But I was working in
22 that every day.
23      Q.   From your time as a patent lawyer, you
24 know what the phrase "one of ordinary skill in the art"
25 means, don't you?

```
 1              Q.   How often?
 2              A.   There, I would guess four or five a
 3   year.
 4              Q.   Did you attend meetings where outside
 5   inventor submissions were reviewed for their merit?
 6              A.   For their merit?
 7              Q.   For whether to take them or not?
 8              A.   Rarely.
 9              Q.   Okay.  Was it your role to determine
10   which toy designs would proceed to commercialization?
11              A.   No.
12              Q.   Was it your role to negotiate royalty
13   rates, as opposed to the legal provisions in a royalty
14   agreement?
15              A.   Not routinely.
16              Q.   Marketing usually did that?
17              A.   Howard did it, because he would
18   frequently come to me to talk about, you know, different
19   approaches.
20              Q.   Was it your role to decide whether
21   inventors would be offered royalties on line extensions or
22   accessories?
23              A.   That was part of the negotiation process
24   that I was involved with, yeah.
25              Q.   Did you make the decision or did
```