**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

VICTOR G. REILING ASSOCIATES and      :
DESIGN INNOVATION, INC.,      :
     :
              Plaintiffs      :
     :       Civil No. 303CV222(JBA)
      v.      :
     :       June 4, 2005
FISHER-PRICE, INC.      :
     :
              Defendant.      :
     :

**REPLY MEMORANDUM IN SUPPORT OF**
**FISHER-PRICE'S MOTION FOR SUMMARY JUDGMENT**



**HODGSON RUSS LLP**
One M&T Plaza, Suite 2000
Buffalo, New York 14203

**ROBINSON & COLE, LLP**
280 Trumbull Street
Hartford, CT 06103-3597

## **Table of Contents**

**Page**

Table of Authorities .......................................................................................................... iii

Preliminary Statement ......................................................................................................... 1

Argument .............................................................................................................................. 2

    I.      PLAINTIFFS' CLAIM FOR BREACH OF IMPLIED
           CONTRACT IS BARRED AS A MATTER OF LAW ............................................. 2

           A.     The Policy and Agreement Bars the Implied Contract
                    Claim and Is Binding Upon Both Plaintiffs ...................................................... 2

           B.     The Policy and Agreement Precludes any Reasonable
                    Belief of Implied Obligations ............................................................................ 5

           C.     The Option Agreement Precludes an Implied Contract Claim ......................... 6

           D.     Plaintiffs' Alleged Implied Contract Is Indefinite ........................................... 7

           E.     The Statute of Frauds Precludes Plaintiffs' Implied Contract Claim .............. 8

    II.     PLAINTIFFS HAVE NOT SHOWN A CONFIDENTIAL RELATIONSHIP .......... 8

           A.     The Policy and Agreement Precludes Any Claim of Confidentiality .............. 8

           B.     Plaintiffs Had No Reasonable Expectation of Confidentiality ....................... 9

           C.     There Is No Custom and Practice in the Toy Industry Regarding
                    Confidentiality of Inventor Submissions ....................................................... 10

    III.    PLAINTIFFS HAVE DISCLAIMED ALL CLAIMS ALLEGED IN
           THEIR COMPLAINT ........................................................................................ 11

    IV.    PLAINTIFFS' CONTRADICTORY DEFINITIONS OF THE REEL
           HEROES CONCEPT ......................................................................................... 14

    V.     PLAINTIFFS' CONCEPT WAS NOT NOVEL ...................................................... 16

    VI.    PLAINTIFFS' DEFINITION OF THE REEL HEROES CONCEPT
           LACKS CONCRETENESS ................................................................................. 19

    VII.   FISHER-PRICE NEVER USED THE REEL HEROES CONCEPT ...................... 21

i

**Table of Contents**
**(Continued)**

                                                                                            **Page**

VIII.   FISHER-PRICE'S DISCONTINUANCE OF ITS RELATIONSHIP
        WITH DESIGN INNOVATION ......................................................................22

IX.     NEW YORK LAW APPLIES AND CUTPA DOES NOT........................................23

X.      PLAINTIFFS ARE NOT ENTITLED TO PUNITIVE DAMAGES ........................25

Conclusion ...........................................................................................................................25

# Table of Authorities

Page

## Federal Cases

*AEB & Assocs. Design Group, Inc. v. Tonka Corp.*, 853 F.Supp. 724 (S.D.N.Y. 1994) .................. 12

*Ahlert v. Hasbro, Inc.*, 325 F. Supp. 2d 509 (D.N.J. 2004) ................................................ 24

*Anderson v. Century Prods. Co.*,  943 F. Supp. 137 (D.N.H. 1996)........................................9

*Anglo-Saxon Petroleum Co., Ltd. v. United States*, 222 F.2d 75 (2d Cir. 1955)................................ 19

*Bailey Employment Sys., Inc. v. Hahn*, 655 F.2d 473 (2d Cir. 1981) ......................................... 24

*Bergin v. Century 21 Real Estate*, 2000 U.S. Dist. LEXIS 2088 (S.D.N.Y. Feb. 23, 2000),
 *aff'd*, 234 F.3d 1261, 2000 U.S. App. LEXIS 28028 (2000) .......................................... 7

*Bickerstaff v. Vassar Coll.*, 196 F.3d 435 (2d Cir. 1999) ...................................................... 1

*Brady v. Orion TV Prods.*, 15 U.S.P.Q. 2d 1389 (S.D.N.Y. 1990) ...................................... 7

*Brandwynne v. Combe Int'l, Ltd.*, 74 F. Supp. 2d 364 (S.D.N.Y. 1999) .............................. 6

*Brown v. Henderson*, 257 F.3d 246 (2d Cir. 2001)................................................................. 1

*Choate v. Transport Logistics Corp.*, 234 F. Supp. 2d 125 (D. Conn. 2002)....................................... 1

*Connecticut Pipe Trades Health Fund & Int'l Brotherhood of Elec. Workers Local 90
 Benefit Plan v. Philip Morris, Inc.*, 153 F. Supp. 2d 101 (D. Conn. 2001) ................................... 23

*Crown Indus. v. Kawneer Co.*, 335 F. Supp. 749 (N.D. Ill. 1971) ...................................... 9

*Encyclopedia Britannica, Inc. v. SS Hong Kong Producer*, 422 F.2d 7
 (2d Cir. 1969)........................................................................................................ 21

*Fasa Corp. v. Playmates Toys, Inc.*, 892 F. Supp. 1061 (N.D. Ill. 1995)........................................ 11

*Hill v. NSB Niederliebe Schiffahrtges MBH & Co.*, 2004 U.S. Dist. LEXIS 4837, *4
 (E.D. Pa. Mar. 5, 2004)........................................................................................ 19

*Injection Research Specialists, Inc. v. Pacer Indus., Inc.*, 48 U.S.P.Q. 2d 1719
 (Fed. Cir. 1998)................................................................................................... 11

*Kendall-Jackson Winery, Ltd. v. Branson*, 82 F. Supp. 2d 844 (N.D. Ill. 2000)............................... 13

*Khreativity Unlimited v. Mattel, Inc.*, 101 F. Supp. 2d 177 (S.D.N.Y.), *aff'd*, 875
 F.2d 307 (2d Cir. 2000) ....................................................................................... 18

**Table of Authorities**
**(Continued)**

**Page**

*Kublan v. Hasbro*, 50 U.S.P.Q. 2d 1539 (S.D.N.Y. 1999) ....................................................... 9, 12, 13

*Leibowitz v. Cornell Univ.*, 2005 U.S. Dist. LEXIS 1529 (S.D.N.Y. Feb. 3, 2005)............................ 5

*Levin v. The Gap, Inc.*, 1998 U.S. Dist. LEXIS 20378 (S.D.N.Y. Dec. 30, 1998)............................ 11

*Link Group Int'l v. Toymax, Inc.*, 2000 U.S. Dist. LEXIS 4567 (D. Conn. Mar. 17, 2000) .............. 23

*M.H. Segan Ltd. P'ship & Co. v. Hasbro*, 924 F. Supp. 512 (S.D.N.Y. 1996).......................... 3, 9, 12

*NetTech Solutions, L.L.C. v. ZipPark.com*, 2001 U.S. Dist. LEXIS 14753
     (S.D.N.Y Sept. 20, 2001)....................................................................................................... 11

*Nicholas Labs., Ltd. v. Almay*, 723 F. Supp. 1015 (S.D.N.Y. 1989) ................................................ 13

*Otis Elevator Co. v. Civil Factory Mut. Ins. Co.*, 353 F. Supp. 2d 274 (D. Conn. 2005) ................. 24

*Payroll Express Corp. v. Aetna Cas. & Sur. Co.*, 659 F.2d 285 (2d Cir. 1981) ................................. 13

*Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572 (2d Cir. 1969)............................................ 1

*Ramada Franchise Sys., Inc. v. Boychuk*, 283 F. Supp. 2d 777 (N.D.N.Y 2003) ................................ 5

*Reznor v. Artist Mgmt., Inc.*, 365 F. Supp. 2d 565 (S.D.N.Y. 2005) .................................................. 12

*Roy Export Co. Est. of Vaduz Liechtenstein v. Columbia Broad. Sys.*, 672 F.2d 1095
     (2d Cir. 1982)........................................................................................................................ 24

*Sharp v. Patterson*, 2004 U.S. Dist. LEXIS 22311 (S.D.N.Y. Nov. 3, 2004) ................................... 19

*Stewart v. World Wrestling Fed. Ent., Inc.*, 2004 U.S. Dist. LEXIS 26533
     (S.D.N.Y. Jan. 11, 2005)....................................................................................................... 24

*Titan Sports, Inc. v. Turner Broad. Sys., Inc.*, 981 F. Supp. 65 (D. Conn. 1997).............................. 23

*Webb v. CPG Prods. Corp.*, 1981 U.S. Dist. LEXIS 16600 (S.D.N.Y. Dec. 21, 1981)...................... 9

*White Plains Towing Corp. v. Patterson*, 991 F.2d 1049 (2d Cir. 1993) .......................................... 13

*Willingham v. Star Cutter Co.*, 555 F.2d 1340 (6th Cir. 1977) ........................................................... 5

**Table of Authorities**
**(Continued)**

**Page**

**State Cases**

*Ferber v. Sterndent Corp.*, 51 N.Y.2d 782, 433 N.Y.S.2d 85 (1980)..................................................18

*Fink v. Golenbock*, 238 Conn. 183 (1996)...........................................................................................23

*Lubeck Realty, Inc. v. Flintkote Co.,* 170 A.D.2d 800, 565 N.Y.S.2d 922 (1st Dep't 1991) ...............5

*Maas v Cornell Univ.*, 94 N.Y.2d 87, 699 N.Y.S.2d 716 (1999) ........................................................5

*Marraccini v. Bertelsmann Music Group*, 221 A.D.2d 95, 644 N.Y.S.2d 875 (3d Dep't 1996) .........7

*Metzger v. Aetna Ins. Co.*, 227 N.Y. 411 (1920) ...............................................................................3

*Shirley Polykoff Advertising, Inc. v. Houbigant, Inc.*, 43 N.Y.2d 921,
   403 N.Y.S.2d 732 (1978)..............................................................................................................8

**State Statutes**

Conn. Gen. Stat. § 32-322...................................................................................................................4

**Treatises**

21A Am. Jur.2d *Customs & Usages* § 8 .............................................................................................19

## Preliminary Statement

Plaintiffs' opposition to Fisher-Price's motion for summary judgment can only be described as extraordinary. Four aspects of their opposition require particular note:

- Plaintiffs have submitted declarations that repeatedly contradict their sworn deposition testimony, without explaining or even acknowledging their contrary deposition testimony.[1] The Second Circuit has made clear that a plaintiff is not permitted to submit declarations repudiating its sworn deposition testimony in order to avoid summary judgment.[2]

- Plaintiffs continue to offer contradictory definitions of their Reel Heroes concept, choosing the one that is most advantageous to their position on a particular issue.

- Plaintiffs repudiate clear and unambiguous documents prepared in their own handwriting or executed after careful negotiation. They argue that Reiling should not be bound by his own handwritten statement of the "unique features" of the Reel Heroes concept, and that plaintiffs should not be bound by the definition of the Reel Heroes concept included in the formal Option Agreement they executed.

- Plaintiffs repeatedly misuse the doctrine of "custom and practice in the industry." Perhaps the most improper use of alleged custom and practice is their argument that the legal requirement of novelty should be ignored in this case, because novelty is not required for a

---

[1] Indeed, although Fisher-Price's motion is based substantially on plaintiff's sworn admissions at their depositions, plaintiffs never address their deposition testimony at all. Their opposition papers seem to pretend that they never testified and are therefore unencumbered by their previous sworn admissions.

[2] "It is beyond cavil that a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that . . . contradicts the affiant's previous deposition testimony." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 455 (2d Cir. 1999) (quotation omitted). *See also Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969); *Brown v. Henderson*, 257 F.3d 246, 256 (2d Cir. 2001) (refusing to permit a plaintiff to "rescue her claim with a last-minute conversion" to a contradictory position to survive summary judgment); *Choate v. Transport Logistics Corp.*, 234 F. Supp. 2d 125, 132 n.7 (D. Conn. 2002) (holding that plaintiff's affidavit "cannot create a material issue of fact because it contradicts without explanation his prior deposition testimony").

royalty obligation under the "custom and practice in the toy industry."[3]  Plaintiffs also offer custom

and practice to contradict the express terms of the agreements they signed,[4] in direct violation of the

rule that custom and practice cannot override an express agreement.

       Because plaintiffs' opposition to summary judgment is premised upon positions that are

directly contrary to governing law, contradictory definitions of their concept, and repudiation of their

sworn testimony and documents they have authored and executed, summary judgment should be granted

in favor of Fisher-Price.

**Argument**

## I.  PLAINTIFFS' CLAIM FOR BREACH OF IMPLIED CONTRACT IS BARRED AS A MATTER OF LAW

       Fisher-Price moved for summary judgment dismissing plaintiffs' implied contract claim

on four grounds:  (1) plaintiffs explicitly disclaimed any implied obligations; (2) the Option Agreement

is an express contract dealing with the same subject matter; (3) the alleged implied contract is too

indefinite to survive; and (4) the alleged implied contract is barred by the statute of frauds.  Plaintiffs'

responses to these issues are discussed below.

### A.  The Policy and Agreement Bars the Implied Contract Claim and Is Binding Upon Both Plaintiffs

       Attempting to avoid the effect of the express disclaimer of implied obligations in the

December 15, 1994 Policy and Agreement signed by Reiling, plaintiffs argue:  (1) it would be a

"manifest injustice" to enforce the terms of the Policy and Agreement, including the disclaimer of

---

[3]     Pltfs' Memo. at 2-3, 9-10, 34; declaration of James Kipling, dated May 23, 2005 (the "Kipling Dec."), ¶¶ 49 & 51.  Even making this argument is essentially an acknowledgment by plaintiffs that they cannot show novelty.

[4]     Pltfs' Memo. at 23 ("Plaintiffs are not bound by either the Concept Submission Form or the expired Option Agreement for purposes of defining their concept because [of] toy industry custom and practice. . . .").

- 3 -

implied obligations, against Reiling; and (2) Design Innovation is not bound by the Policy and

Agreement at all.  Not surprisingly, plaintiffs fail to address cases which specifically uphold the

enforceability of disclaimers of implied obligations exactly like the one at issue here.  *See* authorities

cited in Fisher-Price's initial memorandum of law (the "FP Memo.") at 18 n.33.  For example, in *M.H.*

*Segan Ltd. P'ship & Co. v. Hasbro,* 924 F. Supp. 512 (S.D.N.Y. 1996), the court enforced a disclaimer

of implied obligations nearly identical to the one at issue here, holding that the it "unambiguously

precludes all of plaintiff's implied contract claims." *Id.* at  526.

     As in *M.H. Segan*, Reiling is bound by the terms of the Policy and Agreement he signed

and cannot overcome it through negligence, ignorance or otherwise.[5]  At his deposition, Reiling

admitted the following regarding the Policy and Agreement:

> 1.  He never asked anyone at Fisher-Price to make any changes to Policy and
>     Agreement forms. Lane Dec., Ex. 4 at 66-67. He elected the option of
>     making the Policy and Agreement terminable upon written notice.[6]
>
> 2.  He knew his submissions to Fisher-Price were governed by the Policy and
>     Agreement forms that he signed. Lane Dec., Ex. 4 at 78-79.
>
> 3.  He never terminated the 1994 Policy and Agreement and had no reason to believe
>     that its terms did not apply to the submission of Reel Heroes. *Id.* at 68-70.
>
> 4.  No one from Fisher-Price ever told him the Policy and Agreement did not apply
>     to him. *Id.* at 79.
>
> 5.  He read all of the Fisher-Price forms. *Id.* at 66.

---

[5]  "[W]hen a party to a written contract accepts it as a contract, he is bound by the stipulations and conditions expressed in it whether he reads them or not.  Ignorance through negligence or inexcusable trustfulness will not relieve a party from his contract obligations.  He who signs or accepts a written contract in the absence of fraud or other wrongful act on the part of another contracting party, is conclusively presumed to know its contents and to assent to them . . ." *Metzger v. Aetna Ins. Co.,* 227 N.Y. 411, 416 (1920).  In over thirty-five years of experience submitting concepts to toy companies, Reiling has completed more than two hundred Concept Submission Forms and 27 Fisher-Price Policy and Agreements.  *See* Declaration of Robert J. Lane, Jr., dated April 29, 2005 (the "Lane Dec."), Ex. 4 at 14, Ex. 17.  Reiling testified to having the same facility with written language as any college graduate, that he always negotiated Option Agreements — including the definitions of the products contained in those agreements — on his own and without the assistance of legal counsel, and that he believes himself competent to do so. Lane Dec., Ex. 4 at 93-94, 104.

[6]  *See* Reply Declaration of Robert J. Lane, Jr., dated June 2, 2005 (the "Lane Reply Dec."), Ex. B at 247.

6.   The industry trend has been to use blanket agreements exactly like the Policy and Agreement: "Toy companies have gone to the practice of having one form that covers a period of time like [the Policy and Agreement]" and such agreements have become more prevalent in the toy industry in the last fifteen years Lane Reply Dec., Ex. B at 13, 15-16.

7.   At the time of plaintiffs' submission, Reiling had no reason to believe that there was "anything really different the way [he had] worked with Fisher-Price for the last fifteen years." Lane Dec., Ex. 4 at 80.

These admissions dispose of plaintiffs' argument that the Policy and Agreement is unenforceable due to unfairness or Reiling's lack of understanding.

Design Innovation argues that Reiling had no "apparent or actual authority" to bind it in connection with the Reel Heroes submission.[7] This is directly contrary to the deposition testimony of Design Innovation's principals and Reiling. Popek testified that "[i]n connection with the Reel Heroes [concept], *Vic Reiling was representing Design Innovation and himself" in "negotiating and dealing with Fisher-Price*."[8] In fact, Design Innovation wanted to avoid "direct dealings" with Fisher-Price in connection with the submission to avoid confusion between its unsolicited concept submissions and its work-for-hire projects with Fisher-Price.[9] Plaintiffs also admitted they were "partners" with respect to their submissions to Fisher-Price.[10] Accordingly, Design Innovation is bound by Reiling's submission

---

[7]   *See* Declaration of Victor G. Reiling, dated May 20, 2005, (the "Reiling Dec."), ¶ 5; Declaration of Bruce P. Popek, dated May 20, 2005 (the "Popek Dec."), ¶ 6. Kipling also makes this conclusion, which has no foundation as he bases it on an unexplained custom and practice in the toy industry. *See* Declaration of James M. Kipling, dated May 23, 2005 (the "Kipling Dec."), ¶ 19.

[8]   Lane Dec., Ex. 6 at 128-29 (emphasis added).

[9]   Lane Dec., Ex. 8 at 106.

[10]   Lane Reply Dec., Ex. F at 22 ("We're usually partners, Design Innovation and Mr. Reiling are partners"); *id.*, Ex. A at 76 (referring to "a declaration of our partnership"); *id.*, Ex. G at 27 (agreeing that DI and Reiling are "joint owners" "on a 50/50 basis"). Connecticut's partnership law states: "An act of a partner . . . for apparently carrying on in the ordinary course the partnership business or business of the kind carried on by the partnership binds the partnership, unless the partner had no authority to act for the partnership in the particular matter and the person with whom the partner was dealing knew or had received a notification that the partner lacked authority." Conn. Gen. Stat. § 32-322 (1). Thus, the only time the partner's actions do not bind the partnership is when a third party knows that a partner is acting outside its authority. This exception does not apply here.

of the Reel Heroes concept on terms that disclaimed any possible implied obligations.[11]

**B.    The Policy and Agreement Precludes any**
**Reasonable Belief of Implied Obligations**

Even if the Policy and Agreement under which the Reel Heroes submission was made
was not binding upon plaintiffs, it nevertheless negates any possible belief that there were implied
obligations between the parties. In analyzing whether an implied contract has formed, "[t]he focus rests
upon the parties' conduct. . . . Where the facts are inconsistent with a finding that the parties agreed to
the specific terms of the contract to which they would be bound, no implied contract may be found to
exist."[12] Where —as here— "the facts are inconsistent with a finding that the parties mutually agreed to
all relevant aspects, no contract will be implied."[13] Reiling executed 27 Policy and Agreements, all of
which expressly disclaimed any implied obligations. Design Innovation executed at least one Policy
and Agreement (which also disclaimed implied obligations), has dealt with Fisher-Price continuously
for "over 15 years," and does not deny that it was familiar with Fisher-Price's practices and documents.
*See, e.g.,* Popek Dec. ¶ 23. In these circumstances, even if the 1994 Policy and Agreement was not
legally binding on plaintiffs (which it was), plaintiffs' familiarity with Fisher-Price's policy of
disclaiming implied obligations precludes any argument that there was conduct by the parties from
which mutual assent (particularly assent by Fisher-Price) to the creation of any implied contract could

---

[11]    Even if plaintiffs' disavowal of their agent-principal relationship is credited, the effect of their status as co-
owners of intellectual property is that Design Innovation is bound by Reiling's dealings with Fisher-Price.
*See, e.g., Willingham v. Star Cutter Co.,* 555 F.2d 1340, 1344 (6th Cir. 1977) (noting that patent "co-owners
are at the mercy of each other . . . . [E]ach . . . may make, use or sell the patented invention without
accounting to the other owners . . . [A] co-owner can even grant a license to a third party without consent of
the other owners and neither the co-owner-licensor nor the third-party-licensee is liable to the other owners").

[12]    *Leibowitz v. Cornell Univ.,* 2005 U.S. Dist. LEXIS 1529, *21 (S.D.N.Y. Feb. 3, 2005) (dismissing claim of
implied agreement as to term of employment where policies and guidelines expressly provided that position
was for five years) (citing *Lubeck Realty, Inc. v. Flintkote Co.,* 170 A.D.2d 800, 565 N.Y.S.2d 922 (1st Dep't
1991)). *See also Maas v Cornell Univ.,* 94 N.Y.2d 87, 93-94, 699 N.Y.S.2d 716, 719-20 (1999) (upholding
summary judgment on plaintiff's implied contract claim). *Leibowitz* and other unpublished decisions not
previously provided to the Court are attached in alphabetical order in the Case Appendix.

[13]    *Ramada Franchise Sys., Inc. v. Boychuk,* 283 F. Supp. 2d 777, 794 (N.D.N.Y 2003) (finding no implied
agreement where facts contradicted claim of mutual assent necessary to form an implied contract).

be inferred.

### C.    The Option Agreement Precludes
an Implied Contract Claim

Although plaintiffs acknowledge that the Option Agreement deals with the same subject matter as the implied contract alleged here (*see* Second Amended Complaint ¶ 21), they argue that the law of the case does not permit analysis of the Option Agreement. Pltfs' Memo. at 44. This is not correct. This Court has never ruled on whether the Option Agreement deals with the same subject matter as plaintiffs' implied contract claim.

To prevail on their argument that the Option Agreement does not bar their implied contract claim, plaintiffs must show that the alleged implied contract concerns different "subject matter" than the Option Agreement.[14] In fact, plaintiffs have admitted that: (1) the implied contract is "almost synonymous" with the Option Agreement;[15] (2) the Option Agreement is one of the facts on which the implied contract is based; (3) all conduct on which the implied contract is based occurred prior to the Option Agreement; and (4) the implied contract was formed as of December 8, 1998, over two months prior to the Option Agreement.[16] Because there is no legitimate dispute that the Option Agreement and the claimed implied agreement deal with the same subject matter, this Court must dismiss plaintiffs' implied contract claim.[17]

---

[14]    *See Brandwynne v. Combe Int'l, Ltd.*, 74 F. Supp. 2d 364, 379 (S.D.N.Y. 1999). In *Brandwynne* the Southern District held that a Secrecy Agreement barred an inventor's implied contract claim because the agreement "govern[ed] the rights and obligations of the parties with respect to [the] use of [the inventor's] ideas." *Id.* at 379. Plaintiffs have no response to *Brandwynne* and do not address it in their opposition. Instead, they correctly point out that the *M.H. Segan* court dismissed implied contract claims based on a disclaimer like the one in Fisher-Price's Policy and Agreement. Pltfs' Memo. at 39. While the Policy and Agreement does offer a separate basis for barring the implied contract claim, the Option Agreement is even more specifically related to the same subject matter as the implied contract at issue here.

[15]    Lane Reply Dec., Ex. B at 111. *See also* testimony cited in FP Memo. at 18-20.

[16]    *See* Lane Reply Dec., Ex. B at 118-19.

[17]    Plaintiffs refer to the Option Agreement as "expired," as if that had some legal significance. Pltfs' Memo. at 43. It does not. The fact that the parties negotiated an express agreement governing the Reel Heroes

Footnotes continued on next page.

### D.    Plaintiffs' Alleged Implied Contract Is Indefinite

Plaintiffs do not contest that an implied contract must have definite terms as to scope, duration and compensation.  However, even though challenged to do so on this motion, *plaintiffs still have not identified for this Court the terms of the alleged implied contract*.  Instead, they simply recite that the implied contract can be found in the unspecified "industry custom, course of dealing and actual conduct of the parties."  Pltfs' Memo. at 44-45.[18]

*The "course of dealing" between the parties is that Fisher-Price has uniformly disclaimed any implied obligations.*  Moreover, there is no industry custom established by the record here, either with respect to compensation, scope, duration, or any other terms of the alleged implied contract.[19]  Because plaintiffs have failed to allege an agreement sufficiently definite to permit the parties to determine their obligations, their implied contract claim fails for lack of definiteness, as did the implied contracts in *Bergin* and *Marraccini*.

### E.    The Statute of Frauds Precludes Plaintiffs' Implied Contract Claim

In response to Fisher-Price's argument that the alleged implied contract is barred by the statute of frauds, plaintiffs argue that the contract "could have been" performed within a year because

---

Footnotes continued from previous page.

submission that had a definite term does not affect the fact that they entered into an express agreement governing that subject matter which bars any implied agreements.  This is especially true where, as here, plaintiffs allege that all facts underlying the implied agreement occurred prior to the Option Agreement.

[18]    The interrogatory responses plaintiffs cite to do not specify any terms and merely reiterate the same vague generalities regarding purported custom and practice in the toy industry and course of dealing between the parties.  Dize Dec., Ex. O at 4.

[19]    *Brady v. Orion TV Prods.*, 15 U.S.P.Q. 2d 1389 (S.D.N.Y. 1990), is of no avail as plaintiffs have failed to raise any question of fact as to negotiations, custom, or the parties' conduct.  Plaintiffs do not address *Bergin v. Century 21 Real Estate*, 2000 U.S. Dist. LEXIS 2088 (S.D.N.Y. Feb. 23, 2000), *aff'd*, 234 F.3d 1261, 2000 U.S. App. LEXIS 28028 (2000) or *Marraccini v. Bertelsmann Music Group*, 221 A.D.2d 95, 644 N.Y.S.2d 875 (3d Dep't 1996), both of which dismissed as indefinite alleged implied contracts in the submission of idea context.

- 8 -

Fisher-Price could have ceased use of their concept. Pltfs' Memo. at 46. To the contrary, plaintiffs have specifically alleged a perpetual agreement under which Fisher-Price was obligated to pay a royalty for the use of plaintiffs' submission now and in the future. Lane Dec., Ex. 44 at 2. Under the agreement claimed by plaintiffs, if Fisher-Price ceased using plaintiffs' concept after a month and began using it ten years later, its obligation to pay a royalty would still be in effect. Plaintiffs' claims in this case make this clear. There is no claim that Fisher-Price even began using plaintiffs' concept until more than two years after it was submitted, yet plaintiffs allege the royalty obligation remained in effect. That continuing obligation, though contingent, places the alleged implied contract squarely with the statute of frauds.[20]

## II.    PLAINTIFFS HAVE NOT SHOWN A CONFIDENTIAL RELATIONSHIP

Plaintiffs acknowledge that they must establish a confidential relationship in order for their misappropriation claim to survive summary judgment. They have failed completely to come forward with any admissible proof on this issue.

### A.    The Policy and Agreement Precludes Any Claim of Confidentiality

Fisher-Price's Policy and Agreement contains an explicit and plain disclaimer of confidentiality:

> The disclosure must be understood to be purely voluntary and no confidential relationship is to be established by such disclosure or implied from our consideration of the submitted material, and the material is not to be considered submitted "in confidence." Confidential relationships have been held to create obligations which are beyond those that the company is willing to assume.

---

[20]    *See, e.g., Shirley Polykoff Advertising, Inc. v. Houbigant, Inc.,* 43 N.Y.2d 921, 922, 403 N.Y.S.2d 732, 733 (1978) (holding contract within statute of frauds where defendant was not obligated to use advertisement and failure to use advertisement did not terminate contract).

Courts have upheld virtually identical clear and unambiguous disclaimers.[21] Such disclaimers are most

strictly enforced where the plaintiff is, like plaintiffs here, "an experienced toy inventor . . . seeking

something for his own profit."[22]

## B.   Plaintiffs Had No Reasonable Expectation of Confidentiality

Even if the Policy and Agreement is not enforceable (which it is), plaintiffs' claim of a

confidential relationship with Fisher-Price fails because they had no reasonable expectation of

confidentiality.  None of the documents or materials plaintiffs submitted relating to the Reel Heroes

concept were marked "confidential."  Plaintiffs were aware that Fisher-Price had consistently disclaimed

any confidentiality obligations in its Policy and Agreements (27 of which were signed by Reiling).

Plaintiffs do not contend that anyone at Fisher-Price ever told them that inventor submissions were held

in confidence.[23]  Design Innovation was also aware that Fisher-Price refused to accept a confidential

---

[21]   *See M. H. Segan Ltd. P'ship,* 924 F. Supp. at 526 (upholding virtually identical waiver) and cases and other authority cited at page 24 of Fisher-Price's Memo.  Equally applicable here is the *M.H. Segan* court's confusion as to why a plaintiff would ever cite *Burten v. Milton Bradley* as "odd in light of the fact that in *Burten* the First Circuit cited with approval a case in which a confidential relationship was expressly waived by means of [a waiver which is] . . . virtually identical to the [Hasbro] 'no confidential relationship' clause" (citing *Crown Indus. v. Kawneer Co.,* 335 F. Supp. 749, 754-55 (N.D. Ill. 1971)).  *See also Webb v. CPG Prods. Corp.,* 1981 U.S. Dist. LEXIS 16600, *2-3 (S.D.N.Y. Dec. 21, 1981) (upholding a waiver of confidentiality sent by plaintiffs' expert James Kipling to an inventor when he was counsel to Kenner Toys).

[22]   *See Kublan v. Hasbro,* 50 U.S.P.Q. 2d 1539, 1540 (S.D.N.Y. 1999). *See also M. H. Segan Ltd. P'ship,* 924 F. Supp. at 526 (holding a waiver "negate[d] the existence of a legal relationship based on a . . . confidential relationship").  *Anderson v. Century Prods. Co.,* 943 F. Supp. 137 (D.N.H. 1996), does not compel a different result.  First, the provision in *Anderson* was expressly limited and the court noted that it "appears only to address Century's potential liability for failure to maintain secrecy by consulting industry experts in aid of the review procedure . . . " *Id.* at 151-52.  Fisher-Price's waiver of confidentiality contains no such limitation and, in fact, expressly informs the inventor that "[c]onfidential relationships have been held to create obligations which are beyond those that the company is willing to assume." Lane Dec., Ex. 20.  Additionally, the *Anderson* court relied on New Hampshire law and cited, with approval, the general rule that a disclosee may disclaim a confidential relationship by "clearly and explicitly indicat[ing] unwillingness to enter the relationship." *Anderson,* 943 F. Supp. at 151.  As recognized by the *Kublan* and *Segan* courts, the waiver in Fisher-Price's Policy and Agreement accomplishes this purpose.

[23]   A former Fisher-Price employee who was subpoenaed by plaintiffs stated that there was no expectation of confidentiality by inventors making submissions to Fisher-Price: "Q: [W]hen an inventor made a submission to you, was there an expectation that you would keep that information confidential?" … A: "No. No. . . . [O]ur form states that."  Lane Reply Dec., Ex. E at 63-64.

relationship with inventors — it signed a Policy and Agreement containing a confidentiality waiver. Lane Dec., Ex. 18. Plaintiffs' knowledge of Fisher-Price's practice with respect to confidentiality vitiates any claimed expectation of a confidential relationship with Fisher-Price.

## C.     There Is No Custom and Practice in the Toy Industry Regarding Confidentiality of Inventor Submissions

Finally, plaintiffs argue that the custom and practice in the toy industry is to treat inventor submissions as confidential, and that this "custom" suffices to establish a confidential relationship between Fisher-Price and plaintiffs. *See* Pltfs' Memo. at 42. This directly contradicts the admissions of plaintiffs and their expert during depositions and in their declarations. Kipling admitted there are a "variety of practices" (*i.e.,* no single custom) as "to whether toy companies commit to keep inventors' submissions confidential."[24] Moreover, Reiling knew that Fisher-Price and other toy companies required inventors to sign agreements providing that companies had no obligation to keep submissions confidential.[25] Thus, plaintiffs and their expert have acknowledged that there is no uniform practice in the industry.

As in *M.H. Segan, Kublan,* and *Webb,* plaintiffs have not established a genuine issue of material fact regarding the existence of a confidential relationship, and their misappropriation claim must therefore be dismissed.

---

[24]     Lane Dec., Ex. 12 at 168-69. In fact, even Hasbro's inventor submission agreement upon which plaintiffs so heavily rely gives only a limited promise of confidentiality for two years. *See* Reply Declaration of Howard Bollinger, dated June 3, 2005, ¶ 28. Thus, even if Fisher-Price's agreement was identical to Hasbro's, the applicable period of confidentiality would have expired because the October 1998 submission was more than two years before the introduction of the first accused product in early 2001.

[25]     Lane Dec., Ex. 4 at 76-77. *See also* Reiling Dec. ¶ 14 (acknowledging Reiling expected a waiver of confidentiality). And, even if there were such a custom and practice (which there is not), plaintiffs' attempt to prove satisfaction of this element of their misappropriation is an improper use of custom evidence.

**III. PLAINTIFFS HAVE DISCLAIMED ALL
CLAIMS ALLEGED IN THEIR COMPLAINT**

Plaintiffs argue that the disclaimer of liability in the Policy and Agreement is somehow unfair and should not be enforced to bar their claims. In support of this argument, they claim that the Agreement is evidence of a "one-sided, adhesionary relationship;" that "it was not reasonable for [Reiling] to appreciate the significance of the waiver provisions;" and that "formal agreements are not uniform among toy companies." Pltfs' Memo. at 39-41. The Policy and Agreement specifically disclaims "any liability in connection with the receipt and examination of your disclosure," with the exception of use which would violate valid patents or copyrights. Lane Dec., Ex. 20 Plaintiffs acknowledge that "[c]ourts have enforced waiver agreements containing language similar to the 1994 P & A form against toy inventors." *See* Pltfs' Memo. at 39.

The cases cited by plaintiffs do not assist them in overcoming the holding in *M.H. Segan Ltd. P'ship,* where the court enforced a blanket waiver agreement with terms virtually identical to the Fisher-Price Policy and Agreement. And the case on which plaintiffs most heavily rely to argue unenforceability is factually inapposite. In *Fasa Corp. v. Playmates Toys, Inc.,* 892 F. Supp. 1061 (N.D. Ill. 1995), the court held that "a purported waiver of future, unknown federal intellectual property rights is unenforceable and void as against public policy" "because it allows [the disclosee] to violate federal intellectual property law with impunity."[26] The Fisher-Price Policy and Agreement specifically carves out federal rights.

---

[26] *Id.* at 1068. The court also relied on Illinois and California law, neither of which is at issue here. Plaintiffs' other purported authority is equally distinguishable. *Injection Research Specialists, Inc. v. Pacer Indus., Inc.,* 48 U.S.P.Q. 2d 1719, 1727 (Fed. Cir. 1998), relied on an analysis under the Connecticut Uniform Trade Secrets Act (which is not at issue here) and found a relationship of trust and confidence based on conversations regarding the need for confidentiality, meetings held under "secure conditions," and efforts of the disclosee to restrict knowledge among its employees of its dealings with the plaintiff. In *NetTech Solutions, L.L.C. v. ZipPark.com,* 2001 U.S. Dist. LEXIS 14753 (S.D.N.Y Sept. 20, 2001), the court found a question of fact regarding plaintiffs' alleged waiver of contract claims only because defendants were, at the time of execution of the waiver, violating the very agreement under which the plaintiffs had waived their rights. Finally, *Levin v. The Gap, Inc.,* 1998 U.S. Dist. LEXIS 20378 (S.D.N.Y. Dec. 30, 1998) involves

Footnotes continued on next page.

Plaintiffs' argument that the Policy and Agreement create one-sided, fiduciary relationship is meritless.  First, it is not a contract of adhesion.[27]  Contracts are presumed to be conscionable because "parties to a contract are basically free to make whatever agreement they wish, no matter how unwise it might appear to a third-party."[28]  "[C]ourts have rarely found a clause to be unconscionable in contracts involving two commercial entities, a situation in which negotiation is presumed possible."[29]  Unconscionability will not be found where the contract contains provisions which are standard in the industry.[30]

Plaintiffs have failed to offer any evidence which overcomes the presumption of conscionability.  In fact, Reiling admitted that such agreements were becoming more prevalent in the toy industry.[31]  Accordingly, any claim by the plaintiffs that the Policy and Agreement is not enforceable because it is unconscionable or unfair must be rejected.

---

Footnotes continued from previous page.

distinguishable facts wherein the disclosee was "concerned" about the agreement at issue (which was similar to *M.H. Segan*) and affirmatively sought additional protections.  The court distinguished *M.H. Segan* on this basis because "there was no comparable cover letter or agreement by the defendant to modify the agreement or to negotiate in good faith.  Hence, different issues were raised and the case is distinguishable." *Id.* at *18 n.2.

[27]  *See AEB & Assocs. Design Group, Inc. v. Tonka Corp.*, 853 F. Supp. 724, 732 (S.D.N.Y. 1994) (finding confidentiality waiver not a contract of adhesion).

[28]  *Reznor v. Artist Mgmt., Inc.*, 365 F. Supp. 2d 565, 577 (S.D.N.Y. 2005) (citing *Rowe v. Great Atl. & Pac. Tea Co.*, 46 N.Y.2d 62, 412 N.Y.S.2d 827, (1978)).  The "archetypal application of [unconscionability] is to a contract of adhesion between a business and a consumer or between a business and an employee." *Reznor,* 365 F. Supp. 2d at 577.

[29]  *Id.  See also Kublan,* 50 U.S.P.Q. 2d at 1540, where the court rejected the argument that Hasbro's waiver was unconscionable, holding that "[p]laintiff was an experienced toy inventor at the time he entered into this *commercial transaction seeking something for his own profit.*"  Further, there is no evidence that negotiation was not possible.  Reiling never asked for any changes to the terms of the Policy and Agreement.  Lane Dec., Ex. 4 at 66-67.

[30]  *Reznor,* 365 F. Supp. 2d at 577.

[31]  *See* Lane Reply Dec., Ex. A at 13, 15-16.  *See also M.H. Segan Ltd. P'ship,* 924 F. Supp. at 526 (analyzing a virtually identical disclaimer provision); *Kublan,* 50 U.S.P.Q. 2d at 340 (same).  Kipling's "fear" that Hasbro's agreement would be struck down is especially unfounded considering that the *Segan* and *Kublan* courts expressly upheld its validity.  *See* Kipling Dec. ¶ 15(b).