UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

VICTOR G. REILING ASSOCIATES and
DESIGN INNOVATION, INC.,

          Plaintiffs,

- against -

FISHER-PRICE, INC.,

          Defendant.

Index No.: 3:03 CV 222 (JBA)

June 20, 2005

**PLAINTIFFS' SUR-REPLY BRIEF IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**I.   INTRODUCTION**

Plaintiffs, Victor G. Reiling Associates ("Reiling") and Design Innovation, Inc. ("DI") (collectively, "Plaintiffs"), respectfully submit this short sur-reply brief in opposition to defendant's Motion for Summary Judgment. In response to Plaintiffs' opposition brief, Fisher-Price, Inc. ("Fisher-Price") argues for the first time that Reiling was acting as DI's agent in dealing with Fisher-Price, and that Reiling and DI were a partnership, in an attempt to convince this Court that DI is bound by the 1994 Fisher-Price Policy and Agreement form (the "P&A Form") that Reiling signed.

As a threshold matter, the actions of Fisher-Price in dealing with Plaintiffs belie any argument that Reiling was acting as DI's agent, or that Reiling and DI were a partnership, because Fisher-Price, recognizing that Reiling and DI were acting independently, required both parties to sign the Option Agreement in this case. Nevertheless, in support of its allegations of agency, Fisher-Price cites deposition testimony of DI's principal that has been taken out of

context and is therefore misleading. Fisher-Price also blatantly ignores the fact that the cited deposition testimony was clarified later in the same deposition, and the clarified testimony is directly contrary to the positions being advanced by Fisher-Price with respect to agency. In fact, the deposition testimony of DI's principal confirms that DI was acting independently and that Reiling had no authority to bind DI. The declarations submitted by Reiling and two principals of DI in opposition to defendant's motion confirm this fact, and therefore are entirely consistent with the prior deposition testimony. Plaintiffs' declarations, the complete testimony of DI's principal and the actions of Fisher-Price in dealing with Plaintiffs with regard to the Option Agreement all lead to the inescapable conclusion that Reiling was not acting as DI's agent, and there was no partnership.

Fisher-Price has also submitted a case to the Court with regard to its Statute of Frauds defense which was not cited in either its moving brief or its reply brief, even though the case was available to Fisher-Price when its briefs were filed. Irrespective of its untimely submission, the case is distinguishable from the facts of this case for the reasons stated herein.

**II.     FISHER-PRICE REQUIRED BOTH REILING AND DI TO EXECUTE THE OPTION AGREEMENT**

Fisher-Price's assertion that Reiling was acting as DI's agent begs the following question: If Reiling was DI's agent, why did Fisher-Price's attorneys draft an option agreement that identified both Reiling and DI on an independent basis and required that both entities sign? (*See* Declaration of Victor G. Reiling, dated May 20, 2005 ("Reiling Decl.") Exh. V, pg. 1, 5.) It is undisputed that Fisher-Price's attorneys drafted the Option Agreement in this case. (Reiling Decl. ¶ 32; Declaration of Bruce P. Popek, dated May 20, 2005 ("Popek Decl.") ¶ 11;

Declaration of Bruce Benedetto, dated May 23, 2005 ("Benedetto Decl.") ¶ 11.) If Reiling was acting DI's agent and Fisher-Price believed that to be the case, they would have simply had Reiling sign on behalf of himself and as an agent for DI, or they would have had DI sign alone. Instead, Fisher-Price required that Doug Melville, a principal of DI, sign the Option Agreement on behalf of DI. (Reiling Decl.; Exh. V, pg. 5.) In addition, the Option Agreement was addressed to both Reiling and DI, and both entities were identified in the agreement as parties. (*Id.*, pg 1.) The Option Agreement was also signed by a Senior Attorney at Fisher-Price. (*Id.*, pg. 5.) Accordingly, the Option Agreement between Reiling, DI and Fisher-Price, on its face, belies any argument that Reiling was acting as DI's agent, and in fact, confirms that Fisher-Price knew DI was acting on its own behalf. At the very least, it presents an issue of material fact in dispute for the jury to decide.

### III.    PLAINTIFFS HAVE TESTIFIED THAT REILING WAS NOT DI's AGENT

Both Reiling and two principals of DI have submitted declarations in opposition to defendant's Motion for Summary Judgment confirming that there was no agency relationship between Reiling and DI, and that Reiling had no authority to bind DI. (Reiling Decl. ¶¶ 4-6; Popek Decl. ¶¶ 5-6; Benedetto Decl. ¶¶ 5-6.) In its reply brief, Fisher-Price erroneously asserts that these declarations are in conflict with the deposition testimony of DI's principal, Bruce Popek, who stated that Reiling was representing DI and himself in making the concept presentation to Fisher-Price. (Reply Memorandum in Support of Fisher-Price's Motion for Summary Judgment, dated June 4, 2005 ("Reply Memo.") at 4.) However, during cross-examination *later in the same deposition*, Mr. Popek clarified his earlier testimony, as follows:

\* \* \* \* \*

    Q:    Mr. Popek, I wanted to ask you about your earlier testimony. You were talking about -- what is your business relationship with Vic Reiling?

3

> A: Mr. Reiling is an equal partner on products we do on a speculative basis. We jointly come up with ideas and concepts. We generally are responsible for creating the board and model prototypes, and he is generally responsible for interfacing with toy companies.
>
> Q: He makes the product presentations?
>
> A: He makes product presentations.
>
> Q: Concept presentations?
>
> A: Yes.
>
> Q: And does he have any authority to bind Design Innovation?
>
> MR. LANE: Objection to the form. Go ahead.
>
> THE WITNESS: No. Mr. Reiling, when we enter into contracts with toy companies and Mr. Reiling, it's reviewed by both of us, and designed [sic] by both of us. We are equal partners.

(Reply Declaration of Russell D. Dize, dated June 20, 2005 ("Dize Reply Decl."), Exh. A at 155-56.)

\* \* \* \* \*

While defense counsel did question Mr. Popek with respect to other issues on re-direct, the issue of agency was not addressed. (*Id.*; Exh. A at 158-160.) Accordingly, Mr. Popek's complete deposition testimony on the subject is entirely consistent with the testimony in Plaintiffs' declarations, which disavows any agency relationship between DI and Reiling. Moreover, in an earlier deposition, Mr. Popek testified that the submission in this case was a joint submission on behalf of both Mr. Reiling and Design Innovation. (*Id.*; Exh. C at 95-96.) It is also worth noting that Bruce Benedetto, another principal of DI, testified at his deposition that although Reiling was the one dealing directly with Fisher-Price, he could not bind DI and had to

seek DI's input and approval before agreeing to any terms. (*Id.*; Exh. B at 106-07.) Therefore, Mr. Benedetto's declaration is also entirely consistent with his prior deposition testimony.

Furthermore, the statement attributed to Mr. Popek is taken out of context. (Reply Memo. at 4.) A review of the complete deposition testimony surrounding the statement in question reveals that Mr. Popek was discussing how it was normal procedure for DI to create drawings and prototypes of its jointly developed concepts, and to leave the task of actually presenting the concepts to toy companies to its partners, such as Reiling. (Dize Reply Decl.; Exh. A at 128-29.) This was due in part to the amount of time it took to make the concept presentations and the fact that Reiling had more experience in this area. (*Id.*; Exh. C at 38-39.) It is clear that Mr. Popek's statement is referring to the fact that Reiling made the presentations of their jointly developed concepts to toy companies, and that it is not referring to an agency relationship. In any event, Mr. Popek clarified the statement later in his deposition, as outlined above.

"The three elements required to show the existence of an agency relationship include: (1) a manifestation by the principal that the agent will act for him; (2) acceptance by the agent of the undertaking; and (3) an understanding between the parties that the principal will be in control of the undertaking." *Lenoble v. Best Temps, Inc.*, 352 F. Supp. 2d 237, 250 (D. Conn. 2005). As evidenced by Plaintiffs' deposition testimony, Fisher-Price has failed to establish any of these elements. DI clearly had no understanding that Reiling would in control of the deal with Fisher-Price, as he had no authority to agree to any terms on DI's behalf.

## IV. THERE WAS NO PARTERSHIP BETWEEN REILING AND DI

Fisher-Price next attempts to argue that Reiling and DI were a partnership, and that DI is therefore bound by the act of its partner, Reiling, in signing the P&A Form. (Reply Memo. at 4-5.) However, Fisher-Price's argument is untenable. The best evidence that Reiling and DI were

not a partnership is the manner in which Fisher-Price treated them with regard to the Option Agreement. Had Fisher-Price thought that Reiling and DI were partners, the partnership would have been a named party to the Option Agreement and would have executed it. Here, Reiling and DI were identified as individual entities, not as a partnership, and the Option Agreement makes no reference to a partnership. (Reiling Decl.; Exh. V.) In addition, Fisher-Price made separate payments to DI and Reiling under the Option Agreement. (*See* Dize Reply Decl.; Exh. E.) This demonstrates that Fisher-Price, and indeed Plaintiffs, did not believe that Reiling and DI were a partnership.

Moreover, Plaintiffs have testified that there was no written agreement regarding their relationship (*i.e.*, no partnership agreement). (Dize Reply Decl.; Exh. C at 22-23; Exh. D at 25-27.) In fact, they testified that the only written agreement that would evidence their relationship with regard to this case was the Option Agreement, which clearly contemplates that Reiling and DI were individual entities, not partners. (Dize Reply Decl.; Exh. D at 25-27.) Fisher-Price's reliance on Plaintiffs' testimony that they were "partners" and that they "partnered" on speculative projects is a weak attempt to tie DI to the P&A Form, and should be disregarded. It is clear that Plaintiffs' after-the-fact statements that they were "50/50 partners" do not establish a legal "partnership," but rather, indicates merely that they worked together on projects and split the expenses and profits.

Pursuant to the Connecticut partnership statute, a partnership forms from "the association of two or more persons to carry on as co-owners a business for profit." Conn. Gen. Stat. § 34-314(a). Here, it is clear that Reiling and DI did not carry on as co-owners a business for profit. At all times, Reiling and DI maintained their individual entities, as evidenced by the Option Agreement and the payments made by Fisher-Price thereunder. "Joint property, common

property or part ownership does not by itself establish a partnership, even if the co-owners share profits made by the use of the property." Conn. Gen. Stat. § 34-314(c)(1). Likewise, "sharing of gross returns does not by itself establish a partnership, even if the persons sharing them have a joint or common right or interest in property from which the returns are derived." Conn. Gen. Stat. § 34-314(c)(2).

Here, DI and Reiling had a very loose affiliation, namely to work jointly on projects and share proceeds on a 50/50 basis. (Dize Reply Decl.; Exh. D at 25-27.) This simply does not rise to the level of a partnership under the Connecticut statute.

## V. DI IS NOT BOUND BY THE P&A FORM AS A CO-OWNER OF INTELLECTUAL PROPERTY

Fisher-Price next attempts to argue that, regardless of whether an agency relationship or a partnership existed, DI is bound by the P&A Form because an owner of intellectual property is bound by the acts of its co-owner. (Reply Memo. at 4-5, n. 11). In support of this assertion, Fisher-Price cites a patent case for the proposition that a co-owner of a patent may grant a license to a third party without the consent of the other owners. (*Id*) However, the situation in this case is entirely different. In a licensing scenario, an owner does not necessarily lose any rights with respect to the property when it is licensed by a co-owner. *See Oddo v. Ries*, 743 F.2d 630, 632-33 (9th Cir. 1984) (each co-owner of a copyright has an independent right to use or license the copyright, and each co-owner must account to the other for any profits earned from licensing). Here, however, Fisher-Price argues that Reiling's execution of the P&A Form should be applied against DI to destroy DI's rights in its concept. This is not merely the case of Reiling granting a license on the submitted concept to a third party DI's rights in the concept it developed with Reiling are personal to DI and cannot be waived by Reiling. Importantly, the P&A Form was signed by Reiling prior to the time when DI and Reiling worked together on developing

7

concepts, and four years before the submission at issue in this case was made (Reiling Decl. ¶¶ 11, 23.)

## VI.   DEFENDANT'S STATUTE OF FRAUDS DEFENSE MUST FAIL

After its moving and reply briefs were filed, Fisher-Price submitted *Holloway v. King*, 361 F. Supp.2d 351 (S.D.N.Y. 2005) for the Court's consideration, even though the case was decided in March 2005 and hence available at the time Fisher-Price's briefs were filed. Notwithstanding the untimely nature of its submission, *Holloway* is nevertheless distinguishable from the facts of this case. Holloway involved an express oral contract, whereas this case involves an implied-in-fact contract. It is well settled that an implied-in-fact contract can be performed within one year, and the Statute of Frauds will not act as a bar even where it is unexpected, unlikely or improbable that the contract will be performed within a year. (*See* Plaintiffs' Memorandum in Opposition to Defendant's Motion for Summary Judgment, dated May 23, 2005, at 45-46).

*Holloway* makes a distinction between contracts that are terminable by one or both parties within a year, which are outside the Statute of Frauds, and contracts that are terminable only by breach of a party, which are within the statute. *Id.* at 357-58. In the former case, even contracts with "potentially infinite duration" will fall outside the statute. *Id* Here, the contract was terminable by Fisher-Price within a year, because Fisher-Price had no obligation to commence with the sale of products incorporating Plaintiffs' concept. In the event that Fisher-Price had never commenced selling, no obligations would have arisen and the contract would have terminated. "If the terms of the contract include an event that might end the contractual relationship within a year, the contract is not with the Statute of Frauds." *Rackson v. Sosin*, 14

Fed. Appx. 23, 24-25 (2d Cir. 2001). In this case, a decision by Fisher-Price not to commence selling was an event that would have ended the contractual relationship within a year.

### VII. CONCLUSION

In view of the foregoing, Plaintiffs respectfully request that defendant's Motion for Summary Judgment be denied in all respects.

Dated: Norwalk, Connecticut
       June 20, 2005

Respectfully Submitted,

GRIMES & BATTERSBY, LLP

By: _____
Gregory J. Battersby (Bar No. 7386)
Edmund J. Ferdinand, III (Bar No. 21287)
Russell D. Dize (Bar No. 23064)
Susan Schlesinger (Bar No. 26625)
488 Main Avenue, Third Floor
Norwalk, Connecticut 06851-1008
(p) (203) 849-8300
(f) (203) 849-9300

Attorneys for Plaintiffs Victor G. Reiling
Associates and Design Innovation, Inc.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing Plaintiffs' Motion to File Sur-Reply Brief, Plaintiffs' Sur-Reply Brief in Opposition to Defendant's Motion for Summary Judgment and the Reply Declaration of Russell D. Dize in support, have been served upon defendant Fisher-Price, Inc., on this 20th day of June, 2005, via U.S. Mail, First Class, postage prepaid, to:

> Bradford S. Babbitt, Esq.
> Michael J. Kolosky, Esq.
> ROBINSON & COLE LLP
> 280 Trumbull Street
> Hartford, CT 06103-3597
>
> Robert J. Lane, Jr., Esq.
> Jodyann Galvin, Esq.
> HODGSON RUSS LLP
> One M&T Plaza, Suite 2000
> Buffalo, New York 14203-2391

_____
Russell D. Dize