UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

VICTOR G. REILING ASSOCIATES and
DESIGN INNOVATION, INC.,

                                  Plaintiffs,

            - against -

FISHER-PRICE, INC.,

                                  Defendant.

Index No.: 3:03 CV 222 (JBA)

**REPLY DECLARATION
OF RUSSELL D. DIZE**

 

I, RUSSELL D. DIZE, pursuant to the requirements of 28 U.S.C. §1746, declare that the following is true and correct under the penalties of perjury:

1.    I am an attorney associated with Grimes & Battersby, LLP in Norwalk, Connecticut, counsel to plaintiffs, Victor G. Reiling Associates ("Reiling") and Design Innovation, Inc. ("DI") (collectively, "Plaintiffs"). I am fully familiar with the facts set forth herein. I submit this reply declaration in opposition to defendant's Motion for Summary Judgment.

2.    True and correct copies of the relevant transcript pages from the deposition of Bruce Popek, principal of DI, on January 28, 2005, are attached hereto as Exhibit A.

3.    True and correct copies of the relevant transcript pages from the deposition of Bruce Benedetto, principal of DI, on January 27, 2005, are attached hereto as Exhibit B.

4.    True and correct copies of the relevant transcript pages from the deposition of Bruce Popek, principal of DI, on November 19, 2003, are attached hereto as Exhibit C.

5.    True and correct copies of the relevant transcript pages from the deposition of Bruce Benedetto, principal of DI, on November 18, 2003, are attached hereto as Exhibit D.

6. True and correct copies of relevant documents produced by Fisher-Price in this case are attached hereto as Exhibit E.

I declare that the foregoing is true and correct under the penalty of perjury.

Russell D. Dize

Dated: Norwalk, Connecticut
       June 20, 2005

EXHIBIT A

Page 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT


----------------------------------)
VICTOR G. REILING ASSOCIATES    )
and DESIGN INNOVATION, INC.     )
            Plaintiff(s),        )
                                 )
VS                               ) Civil Action No.
                                 ) 3:03 CV 222 (JBA)
FISHER-PRICE, INC.               )
            Defendant(s).        )
----------------------------------)




            DEPOSITION Of:  BRUCE POPEK
            DATE:          January 28, 2005
            HELD AT:       Robinson & Cole
                           280 Trumbull Street
                           Hartford, Connecticut


        Reporter:  JENNY C. EBNER, RPR, LSR 00030.
        BRANDON SMITH REPORTING SERVICES, LLC
                44 Capitol Avenue
                Hartford, CT. 06106
                  (860) 549-1850

6c29d58b-d890-4cdc-8f24-c0c2d25318b8

Reiling vs Fisher-Price

1-28-2005                                                    Bruce Popek

Page 128

1    to Fisher-Price's attention, that there was an

2    oversight that we had shown them this concept

3    before, and they agreed to pay us royalties.

4        Q    What product was that?

5        A    Fisher-Price's Bubble Sprinkler.

6        Q    Who was the other inventor?

7        A    I am not sure.

8        Q    Sorry?

9        A    Could be M Design.

10       Q    And did Fisher-Price pay you a reduced

11   royalty in that circumstance or did they pay you the

12   original royalty that had been discussed when you

13   submitted the idea?

14       A    The royalty was probably a reduced

15   royalty, but I don't know what percentage it was.

16       Q    I take it you dealt with inventor relation

17   people at a number of different toy companies; is

18   that true?

19       A    Not that many.  Most of the marketing of

20   our inventions is done through people like Vic

21   Reiling or Kiscom Group that reps us, and they do

22   most of the leg work dealing with inventor relation

23   people.

24       Q    Okay.  In connection with the Reel Heros,

25   Vic Reiling was representing Design Innovation and

Reiling vs Fisher-Price

Bruce Popek

Page 129

```
 1    himself?

 2        A    Yes.

 3        Q    Negotiating with and dealing with

 4    Fisher-Price?

 5        A    That is correct.

 6        Q    To make sure I have it clear, my

 7    understanding is that even if it were later shown

 8    that BangZoom developed the Optic Force line of

 9    Rescue Heros entirely independent, without any

10    access to the Reel Heros Concept, it would still be

11    your position that Fisher-Price owed a royalty to

12    Design Innovation and Victor Reiling?

13        A    That is correct.

14        Q    Okay.  Has Design Innovation ever been

15    sued?

16        A    No.

17        Q    Approximately how much annual business did

18    Design Innovation have with Fisher-Price in the

19    2002-2003 time frame?

20        A    I can't be sure.  I think the business

21    that we did with Fisher-Price, Mattel, Fisher-Price

22    brands through divisions we worked with year to

23    year, I think we did some -- we provided some

24    information to you that said maybe it averaged out

25    to about $600,000 worth of business.
```

Brandon Smith Reporting

Page 135

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

```
-------------------------------)
VICTOR G. REILING ASSOCIATES   )
and DESIGN INNOVATION, INC.    )
          Plaintiff(s),        )
                               )
VS                             ) Civil Action No.
                               ) 3:03 CV 222 (JBA)
FISHER-PRICE, INC.             )
          Defendant(s).        )
-------------------------------)
```

COPY

CONFIDENTIAL

DEPOSITION Of: BRUCE POPEK
DATE:          January 28, 2005
HELD AT:       Robinson & Cole
               280 Trumbull Street
               Hartford, Connecticut

Reporter: JENNY C. EBNER, RPR, LSR 00030.
BRANDON SMITH REPORTING SERVICES, LLC
44 Capitol Avenue
Hartford, CT. 06106
(860) 549-1850

e78ead3d-60cd-48e9-b629-1dfa90662871

Page 155

1        A    No, I don't.

2        Q    Or Play Things?

3        A    No, I don't.

4        Q    Do you get both of those publications at

5    work?

6        A    Yes.

7        Q    Do you get your own copy or circulate it

8    around the office?

9        A    Circulate around.

10            MR. LANE:  Why don't we take a very

11        short break, because I think I am done.  I

12        want to flip through my notes.

13            MR. DIZE:  Okay.

14

15            (Whereupon, a recess was taken from

16        2:45 o'clock p.m. until 2:50 o'clock p.m.)

17            MR. LANE:  All set.  All done.

18            MR. DIZE:  I have a couple questions.

19

20        CROSS EXAMINATION BY MR. DIZE

21

22        Q    Mr. Popek, I wanted to ask you about your

23    earlier testimony.  You were talking about -- what

24    is your business relationship with Vic Reiling?

25        A    Mr. Reiling is an equal partner on

CONFIDENTIAL

Page 156

1    products we do on a speculative basis.  We jointly

2    come up with ideas and concepts.  We generally are

3    responsible for creating the board and model

4    prototypes, and he is generally responsible for

5    interfacing with toy companies.

6        Q    He makes the product presentations?

7        A    He makes product presentations.

8        Q    Concept presentations?

9        A    Yes.

10       Q    And does he have any authority to bind

11   Design Innovation?

12            MR. LANE:  Objection to the form.  Go

13            ahead.

14            THE WITNESS:  No.  Mr. Reiling, when

15            we enter into contracts with toy companies

16            and Mr. Reiling, it's reviewed by both of

17            us, and designed by both of us.

18            We are equal partners.

19   BY MR. DIZE:

20       Q    Is it reviewed for your approval?

21       A    Yes.

22       Q    I want to go back to when you were talking

23   about the time when you saw certain aspects of

24   optic -- what became the Optic Force line on

25   Mr. Benedetto's desk or computer.  Do you recall

CONFIDENTIAL

1-28-2005                    Reiling vs Fisher-Price                    Bruce Popek

Page 158

1    Fisher-Price, your Fisher-Price business, would your

2    sales have been higher in 2004?

3              MR. LANE:  Objection to the form.  Go

4         ahead.

5              THE WITNESS:  Yes, I would assume that

6         our sales would have been substantially

7         higher.

8    BY MR. DIZE:

9         Q    Do you have any idea how much?

10        A    I would --

11             MR. LANE:  Same objection.

12             THE WITNESS:  I would speculate it

13        would be at least half of what we did for

14        Fisher-Price and Mattel previous to that,

15        at least.  So that would be an additional,

16        say $300,000.  That would be a

17        conservative number.

18             MR. DIZE:  That's all I have.

19

20             REDIRECT EXAMINATION BY MR. LANE

21

22        Q    Would you have had to hire additional

23   people if your sales had increased by $300,000?

24        A    Perhaps.

25        Q    A minute ago you indicated that you did

e78ead3d-80cd-48e9-b629-1dfa90662871

Page 159

1    not see enough information back in the fall of 2002

2    to know for sure whether or not the Optic Force line

3    of heros would be an infringement of the Reel Heros

4    Concept.  Correct?

5         A    That is correct.

6         Q    Based on Exhibit 247 did Design Innovation

7    have enough information -- strike that.

8              Based on Exhibit 247 did Design Innovation

9    have enough information in its possession for you to

10   make a determination as to whether the Optic Force

11   line of Rescue Heros infringed the Reel Heros

12   Concept?

13        A    I would think after viewing all of these

14   drawings in this packet of information, I would say

15   yes, it would indicate it was an infringement.  I

16   would also say a lot of times we work on preliminary

17   models, that these were preliminaries models that

18   really don't become anything.

19             It may have been a decision not to -- by

20   Mr. Benedetto and Mr. Reiling not to overly pursue

21   it, if it was still in the preliminary stage and not

22   really becoming a product.

23        Q    Do you know whether that's the case or

24   not?

25        A    I do not.

e78ead3d-60cd-48e9-b629-1dfa90662871

Page 160

```
 1              MR. LANE:  Thanks.  Thanks for your

 2         time:

 3

 4         (Whereupon, the deposition was

 5         concluded at 3:00 o'clock p.m.)

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

e78ead3d-60cd-48e9-b629-1dfa90662871

# EXHIBIT B

Page 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT



------------------------------}
VICTOR G. REILING ASSOCIATES  )
and DESIGN INNOVATION, INC.   )
          Plaintiff(s),       )
                              )  Index No.
VS                            )  3:03 CV 222 (JBA)
                              )
FISHER-PRICE, INC.            )
          Defendant(s).       )
------------------------------}

DEPOSITION Of:  BRUCE BENEDETTO
DATE:           January 27, 2005
HELD AT:        Robinson & Cole
                280 Trumbull Street
                Hartford, Connecticut

Reporter:  JENNY C. EBNER, RPR, LSR 00030.
   BRANDON SMITH REPORTING SERVICES, LLC
             44 Capitol Avenue
           Hartford, CT. 06106
              (860) 549-1850

d6b4fbce-4293-4cbb-9ae5-227eea34cd22

Reiling v. Fisher-Price

1-27-2005                                                                    Bruce Benedetto

Page 106

1              NONCONFIDENTIAL PORTION OF THE

2         DEPOSITION OF BRUCE BENEDETTO CONTINUED

3

4    BY MR. LANE:

5         Q    Now, I want to back up again to the Reel

6    Heros Concept submission.   My understanding is that

7    Design Innovation had no direct dealings with

8    Fisher-Price in connection with that submission; is

9    that correct?

10        A    Ask that again.

11        Q    Yes.   I am trying to back up now to 1998.

12        A    Okay.

13        Q    In connection with the submission of the

14   Reel Heros Concept --

15        A    Yes.

16        Q    -- my understanding is that Design

17   Innovation did not deal directly with Fisher-Price?

18        A    Yes, that is correct.

19        Q    The dealings were through Vic Reiling?

20        A    Yes.

21        Q    Also that it was Design Innovation's

22   choice because it was doing work-for-hire projects

23   for Fisher-Price and didn't want to get the two --

24        A    Yes.

25        Q    -- mixed together.   Correct?

Reiling v. Fisher-Price

Page 107

1      A    Yes.

2      Q    Did Reiling have authority to negotiate

3  for Design Innovation?

4      A    Yes.  Could you ask that question again?

5      Q    Sure.  Did Reiling have authority to

6  negotiate on behalf of Design Innovation?

7      A    Well, I want to get that right, because I

8  think that -- in most cases -- or all cases, I would

9  say, that if it came to any of that -- if it came to

10  that point in negotiations on an item, he would talk

11  to us.

12      Q    He would come back?

13      A    Yes.  We would communicate what went on.

14  He wouldn't necessarily negotiate and then come to

15  us and say, This is the deal I struck.

16      Q    Let me make sure I have it right.  Reiling

17  would negotiate with Fisher-Price and would come

18  back to Design Innovation for approval before he

19  could agree to anything?

20      A    I supposed you could say it that way, yes.

21      Q    Input?  Approval and input?

22      A    Yes.

23      Q    But was he the one having the direct

24  dealings with Fisher-Price?

25      A    Yes.

d6b4fbce-4293-4cbb-9ae5-227eea34cd22

# EXHIBIT C

Page 1

1                    UNITED STATES DISTRICT COURT
                        DISTRICT OF CONNECTICUT

2

3     - - - - - - - - - - - - - - - - - x
                                        |

4     VICTOR G. REILING ASSOCIATES
      AND DESIGN INNOVATION, INC.,      |    Case Number

5             Plaintiffs,               |    303-CV-222(JBA)
      VS.                               |

6

      FISHER-PRICE, INC.,               |

7             Defendant.
                                        |

8     - - - - - - - - - - - - - - - - - x    COPY

9

10

11

                    DEPOSITION OF:   Bruce P. Popek

12                  DATE:  November 19, 2003
                    HELD AT:   Robinson & Cole

13                             280 Trumbull Street
                               Hartford, Connecticut

14

15

16

17

18

19

20

21

22

            Reporter:   Robin L. Balletto, RPR, LSR # 230

23                 BRANDON SMITH REPORTING SERVICE
                             (860) 549-1850

24                          44 Capitol Avenue
                    Hartford, Connecticut   06106

25

7e44b5d4-64b4-40b4-8a46-7c666ad3207a

Reiling Associates vs Fisher Price

11/19/2003                                                    Bruce Popek

Page 22

1       Q     What was the first project that you remember?

2       A     It was called -- Mr. Reiling introduced us to

3    some people at Hasbro who were purchasing his concept,

4    and the concept needed development and refinement, and

5    he recommended us.  That is how we got his first

6    project, I believe, my best recollection.

7       Q     What was the general category of that project?

8       A     Vehicle concepts.

9       Q     When you work with Mr. Reiling, is there a

10   particular business arrangement that you normally have

11   with him?

12      A     We're usually partners, Design Innovation and

13   Mr. Reiling are partners.

14      Q     So he doesn't pay you on an hourly basis?

15      A     No, we don't get paid on an hourly basis.  He

16   may have on one or two projects, but none that I can

17   remember.

18      Q     So normally if you work with Mr. Reiling on a

19   project, Design Innovation and Victor Reiling Associates

20   are partners on the project?

21      A     They're partners in speculative project

22   products.

23      Q     Did you ever work with Mr. Reiling on a

24   project other than a speculative project?

25      A     No.

7e44b5d4-64b4-40b4-8a46-7c666ad3207a

Reiling Associates vs Fisher Price

11/19/2003                                                          Bruce Popek

Page 23

1       Q      And is it always on a 50/50 partnership basis?

2       A      No.

3       Q      So it varies from project to project?

4       A      It can.  There may be other partners involved.

5       Q      If it is just you and Mr. Reiling, is it

6   always on a 50/50 basis?

7       A      I believe so.

8       Q      So the times that it is not on a 50/50 basis

9   is because there is a third or a third and a fourth

10  party involved?

11      A      Correct.

12      Q      Is your arrangement with Mr. Reiling reduced

13  to writing?

14      A      No, it is not.

15      Q      And I take it that it is neither reduced to

16  writing on an overall basis or on a project-by-project

17  basis?

18      A      That's correct.

19      Q      Is that true with respect to the Reel Heroes

20  concept as well.  There is no writing between Design

21  Innovation and Mr. Reiling?

22      A      That's correct.  I believe -- the first time

23  it would really be in writing would be on the advances.

24      Q      The document from Fisher-Price?

25      A      Yes.

7e44b5d4-64b4-40b4-8a46-7c666ad3207a

Page 37

1        Q    After the meeting which you described a few

2    minutes ago, the fall 1998 meeting, where the idea of

3    submitting a Rescue Heroes concept to Fisher-Price was

4    discussed, what did Design Innovation do next to follow

5    up on that?

6        A    We proceeded to create the prototype in front

7    of you, and presentation boards that were presented with

8    the model.

9        Q    When you refer to presentation boards, what

10   does that mean?

11       A    It is in one of your exhibits, I think.

12       Q    Exhibit 201?

13       A    Yes.  It probably would have been this one,

14   yes.

15            A presentation board is used to show the

16   concept to the client, in this case Fisher-Price, and in

17   this case it showed how the concept could be added to a

18   line of characters, Rescue Hero characters.

19       Q    Do you know who did the work reflected in

20   Exhibit 201?

21       A    I'm going to say Bruce Benedetto.

22       Q    Did you do anything after the fall 1998

23   meeting to move the Reel Heroes concept forward?

24       A    No.

25       Q    When the meeting broke up, were people

Reiling Associates vs Fisher Price

Page 38

1    assigned specific tasks that they were supposed to

2    follow up on?

3        A    Yes.

4        Q    What was Mr. Benedetto assigned to do?

5        A    Bruce, in the case of Mr. Reiling and most of

6    our outside inventors that we work with, primarily deals

7    with them as liaison and scheduling, so it was probably

8    his responsibility to get the presentation board

9    together, get the model together to show to

10   Fisher-Price.

11       Q    And what was Mr. Reiling assigned to do, if

12   anything?

13       A    Vic was going to do the contact and initial

14   meeting with Fisher-Price. He then, I guess, made

15   arrangements with the powers to be at Fisher-Price to

16   present it.

17       Q    Do you know why Mr. Reiling was selected for

18   that function?

19       A    Vic always does that. Design Innovation

20   separates their speculative work from their work for

21   hire, and we almost always use someone to market our

22   ideas.

23       Q    And that is to keep your speculative work

24   separate from your hourly work?

25       A    That reason, and also because the time it

7e44b5d4-64b4-40b4-3a46-7c666ad3207a

1    requires to do that aspect of marketing.

2        Q    Was Mr. Melville assigned anything in the

3    continuing project?

4        A    Not that I know of.

5        Q    And you were not either, I take it?

6        A    I don't think so.

7        Q    I see the title on Exhibit 201 is Reel,

8    R-E-E-L, heroes.

9        A    Yes.

10       Q    Do you remember who chose that name?

11       A    I don't know, but it is pretty cute.

12       Q    What does it mean, the reel in Reel Heroes?

13       A    In this case reel means -- it is a play on

14   words with R-E-A-L and R-E-E-L, which would be the

15   concept that we were presenting, it was demonstrated by

16   a reel of film.

17       Q    And when you say a film, do you mean regular

18   celluloid film?

19       A    Yes, as far as I know.

20       Q    Exhibit 200 is a memorandum on Victor G.

21   Reiling Associates letterhead.  Have you seen that

22   before?

23       A    Yes.

24       Q    In what context?

25       A    It was part of the documents in this case, of

7e44b5d4-64b4-40b4-8a46-7c666ad3207a

Page 95

1    to see the image, correct?

2        A    That's correct.

3        Q    And to your knowledge did either Design

4    Innovation or Reiling communicate to Fisher-Price that

5    the concept could be executed in any fashion other than

6    requiring the child to look through a lens with one eye?

7        A    I'm not sure what Mr. Reiling told the people

8    at Fisher-Price.

9        Q    Have you ever seen any document generated by

10   Design Innovation or Reiling that communicated to

11   Fisher-Price that the Reel Heroes concept could have

12   been executed using a method for viewing the image other

13   than a child looking through a lens with one eye?

14       A    No, I don't know of any conversation like

15   that, a document.

16       Q    On the first page of Exhibit 228 there is a

17   reference in the second paragraph where Mr. Reiling

18   states, quote, "I also include a one-page write-up of

19   some of the play features." Do you know what that

20   one-page write-up is?

21       A    No, I don't.

22       Q    Do you have a copy of it back at your office?

23       A    If we had a copy of it, it would have been

24   turned over at this point. So I would say if you don't

25   have it, we don't have it.

Reiling Associates vs Fisher Price

11/19/2003                                                        Bruce Popek

Page 96

1        Q     The View Master type disk on page DI O26, does

2    that contain celluloid film in the little squares that

3    show the image?

4        A     It really doesn't say if it does or not.

5        Q     Well, was this a joint submission on behalf of

6    both Mr. Reiling and Design Innovation?

7        A     Yes, it was.

8        Q     Based on your knowledge of the submission, was

9    it supposed to be celluloid film in the View Master

10   disk?

11       A     It could be done that way if View Master is

12   taken literally, or it can be done with labels if View

13   Master is taken in a broader sense of the mechanism of

14   advancing.

15       Q     When it says on the fourth paragraph of

16   Exhibit 228 that the pictures can be advanced and then

17   viewed with one eye using View Master optics. As you

18   understand the term View Master optics, does that refer

19   to using celluloid film?

20       A     Not at all.

21       Q     Really? What are the View Master optics?

22       A     I think the View Master optics that refers to

23   this concept is this magnifying lens or lens. Optics

24   are usually lenses.

25       Q     Have you ever seen a View Master?

7e44b5d4-64b4-40b4-8a46-7c566ad3207a

# EXHIBIT D

Page 1

```
 1              UNITED STATES DISTRICT COURT
                  DISTRICT OF CONNECTICUT
 2

 3    - - - - - - - - - - - - - - - - x          COPY
                                       |
 4    VICTOR G. REILING ASSOCIATES,
      AND DESIGN INNOVATION, INC.,      |    Case Number
 5              Plaintiffs,                  303-CV-222(JBA)
      VS.                                |
 6
      FISHER-PRICE, INC.,                |
 7              Defendant.
                                         |
 8    - - - - - - - - - - - - - - - - x
 9
10
11
                   DEPOSITION OF:   Bruce J. Benedetto
12                 DATE:   November 18, 2003
                   HELD AT:   Robinson & Cole
13                            280 Trumbull Street
                              Hartford, Connecticut
14
15
16
17
18
19
20
21
22
           Reporter:  Robin L. Balletto, RPR, LSR # 230
23              BRANDON SMITH REPORTING SERVICE
                        (860) 549-1850
24                    44 Capitol Avenue
              Hartford, Connecticut  06106
25
```

d4eb8e4c-2df6-4a2e-b780-88f522fe290b

Page 25

1    some of them aren't, you know, on the market.

2         Q    Are they very recent, or are they --

3         A    Some of them are recent.  Some of the older

4    ones are, you know, there was a couple, generally

5    speaking, there were a couple of vehicle concepts and

6    some games.

7         Q    Any action figure concepts?

8         A    No.  Other than this one, no.

9         Q    Which companies were the vehicle concepts

10   submitted to?

11        A    Tyco at the time, I believe, and then there

12   was Lion L, maybe, possibly Buddy L, if they were still

13   in business at the time, Hasbro.

14        Q    How about the game concepts, who were they

15   submitted to?

16        A    Hasbro or Milton Bradley.

17        Q    When your company worked with Mr. Reiling on

18   the projects you just described, what was the

19   arrangement between Design Innovation and Mr. Reiling?

20        A    Well, our arrangement with Vic now and has

21   been from the beginning is we are 50/50 partners.

22        Q    Is there any written agreement between Design

23   Innovation and Mr. Reiling?

24        A    There might be, but I'm not sure.  It might be

25   on a project-by-project basis.  I'm not sure if there is

d4eb8e4c-2df6-4a2e-b780-38f522fe290b

Reiling Associates vs Fisher Price

11/18/2003                                                    Bruce J. Benedetto

Page 26

1    anything written. I think it is just an understanding

2    that we have. We've had a good working relationship

3    for, like I said, at least 10 or 12 years.

4         Q    Just to be clear, then, it is my understanding

5    that you're not sure whether there is a single overall

6    agreement, whether there is a project-by-project

7    agreement, or no agreement at all in writing?

8         A    Well, I know when a project finally gets sold,

9    or maybe not sold, but looked at, then there is some

10   paperwork generated.

11        Q    Usually by the company?

12        A    Yes.

13        Q    The toy company, I mean by that.

14        A    Yes.

15        Q    Do you recall ever seeing an agreement between

16   Design Innovation and Mr. Reiling separate and apart

17   from anything a toy company generated?

18        A    Not that I can recall.

19        Q    And when you say that Mr. Reiling and Design

20   Innovation have a 50/50 partnership arrangement, what

21   does that relate to, 50/50 of what?

22        A    Of holding money, royalties, if there is any

23   royalties generated, and it also means that when we

24   first do the project, we kind of keep a 50/50 look at

25   what we're spending on time, and you know, he might do

d4eb8e4c-2df6-4a2e-b780-88f522fe290b

Reiling Associates vs Fisher Price

1    some sketches, we might do some models, he might do some

2    models, we might do some supply electronics or graphic

3    work.

4        Q    So there is an attempt to split the effort and

5    expense 50/50?

6        A    Yes.

7        Q    Does Design Innovation keep records of the

8    effort and expense that it puts into projects with

9    Mr. Reiling?

10       A    No, not really.

11       Q    Do you know whether Mr. Reiling keeps such

12   records?

13       A    I don't know.

14       Q    When Design Innovation and Mr. Reiling create

15   a concept, are they joint owners of the concept to your

16   understanding?

17       A    Yes.

18       Q    And that is on a 50/50 basis?

19       A    Yes.

20       Q    Has Design Innovation and Mr. Reiling ever

21   jointly created a concept that actually generated

22   royalties?

23       A    Yes.

24       Q    Which one is that, or ones?

25       A    There is a Play-Doh product right now that is

EXHIBIT E



February 23, 1999

Mr. Vic Reiling                          Mr. Douglas F. Melville, Jr.
**VICTOR G. REILING ASSOCIATES**          **DESIGN INNOVATION**
119 North Main Street                    20 Tower Lane
P.O. Box 677
Kent, CT 06757-0677                      Avon, CT 06001
Tel:      (860) 927-1927                 Tel:      (860) 409-7494
Fax       Same                           Fax:      (860) 709-7497

RE:    <u>Option Agreement Payment(s):  "Reel/Real Heroes" Concept</u>

Dear Vic and Doug,.

In accordance with terms of the option agreement signed by VICTOR G. REILING ASSOCIATES, DESIGN
INNOVATION and FISHER-PRICE, INC., enclosed is a check which represents a non-refundable advance
against future royalties for the term noted.

|          | Victor G. Reiling  | Design Innovation  |
|----------|--------------------|--------------------| 
| Check #: | 655188             | 655175             |
| Date:    | 2/11/99            | 2/11/99            |
| Amount:  | $1,250.00          | $1,250.00          |
| Term:    | February 1-28, 1999 | February 1-28, 1999 |

The Law Department has forwarded one fully executed original of the agreement to you.  If you have any
questions regarding the agreement please contact Liza Tommaney (716) 687-3295.

Any other inventor-related questions can be directed to this department (716) 687-3682.

Thank you.

My best regards

FISHER-PRICE, INC.

Patricia A. Grabianowski  Administrator
Inventor Relations

P
Enc.

Cc:    P. Snyder – VP R&D Services and Inventor Relations w/o Enc
       L. Tommaney – Law Department
       T. Zinter – VP Preschool Design Team

FP 0022

**FISHER-PRICE**
636 GIRARD AVENUE
EAST AURORA, NY 14052

| | CORP. CODE | VENDOR NO. | | CORPORATION NAME | | | CHECK NO. |
|---|---|---|---|---|---|---|---|
| | FP-000-000137634 | | | FISHER-PRICE, GROUP CORP | | | 00655175 |

| VOUCHER NUMBER | INVOICE NUMBER | PURCHASE ORDER | INVOICE DATE | GROSS AMOUNT | DISCOUNT | NET AMOUNT |
|---|---|---|---|---|---|---|
| 177086 2/1-2/18/99 | OPT RH1 | | 02-02-99 | 1,250.00 | | 1,250.00 |

| | | | TOTALS | $1,250.00 | | $1,250.00 |
|---|---|---|---|---|---|---|
| | | | | GROSS AMOUNT | DISCOUNT | NET AMOUNT |

**Fisher-Price**   **FISHER-PRICE**
636 GIRARD AVENUE
EAST AURORA, NY 14052

CORPORATE SERVICES CENTER
**BANK OF AMERICA**
NATIONAL TRUST AND SAVINGS ASSOCIATION

**00655175**

PAY

*One thousand two hundred fifty and 00/100 Dollars*

| DATE | CHECK NO. | NET AMOUNT |
|---|---|---|
| 02/11/99 | 00655175 | ********$1,250.00 |

TO THE
ORDER OF    **DESIGN INNOVATION, INC.**
**20 TOWER LANE**
**AVON         CT 06001**

FIRST UNION NATIONAL BANK
CHAPEL HILL, NORTH CAROLINA

BY

CHECK REQUIRES SECOND SIGNATURE IF OVER $50,000.00

⑆006551753⑆ ⑈053101561⑈ 20799000459 6⑆

FP 0023

# FISHER-PRICE

DATE: 2/2/99

TO:   ACCOUNTS PAYABLE

FROM: PAT GRABIANOWSKI

PLEASE ISSUE A CHECK TO:

DESIGN INNOVATION

20 TOWER LANE

AVON CT 06001

EXPLANATION:    OPTION AGREEMENT PAYMENT: Real Heroes 2/1 to 2/28/99 1st (50% with Relling)

PLEASE GIVE THE CHECK TO:    PAT GRABIANOWSKI

_Kevin J. Curran_
AUTHORIZED SIGNATURE

| VOUCHER | VENDOR | PAYEE | CK | BANK CODE | PAYDATE | PREPARED | VERIFIED | APPROVED |
|---|---|---|---|---|---|---|---|---|
| NUMBER | DATE | | AMOUNT | DISCOUNT | | PAG | CODE | AMOUNT-SALES TAX- |

EN PRI SUB RESPN    EN PRI SUB RESPN    EN PRI SUB RESPN    EN PRI SUB RESPN

Account Number    10 790 810 04850

Account $    $1,250.00

Trans. Anal.    Opt RH1

Additional Information    Opt Pymt: RH 2/1 TO 2/28/99 1ST (50% w Relling)

DATE: 2/2/99

Microsoft Word Template 6.0 Designed by Fisher-Price Graphic Production, East Aurora

FPT-0920 (12/1/97) LJD

FP 0024

**FISHER-PRICE**
636 GIRARD AVENUE
EAST AURORA, NY 14052

| CORP. CODE | VENDOR NO. | | CORPORATION NAME | | | CHECK NO. |
|---|---|---|---|---|---|---|
| FP-000-000152270 | | | FISHER-PRICE, GROUP CORP | | | 00655188 |

| VOUCHER NUMBER | INVOICE NUMBER | PURCHASE ORDER | INVOICE DATE | GROSS AMOUNT | DISCOUNT | NET AMOUNT |
|---|---|---|---|---|---|---|
| 177092 | OPT RH1 | | 02-02-99 | 1,250.00 | | 1,250.00 |
| 2/1-2/28/99 | | | | | | |

|  |  | GROSS AMOUNT | DISCOUNT | NET AMOUNT |
|---|---|---|---|---|
| **TOTALS** | | $1,250.00 | | $1,250.00 |

**Fisher-Price**  **FISHER-PRICE**
636 GIRARD AVENUE
EAST AURORA, NY 14052

CORPORATE SERVICES CENTER
BANK OF AMERICA
NATIONAL TRUST AND SAVINGS ASSOCIATION

00655188

| | DATE | CHECK NO. | NET AMOUNT |
|---|---|---|---|
| | 02/13/99 | 00655188 | *******$1,250.00 |

PAY
*One thousand two hundred fifty and 00/100 Dollars*

TO THE
ORDER OF    **VICTOR G REILING ASSOCIATES**
119 NORTH MAIN ST
PO BOX 677
KENT        CT 06757-0677

FIRST UNION NATIONAL BANK
CHAPEL HILL, NORTH CAROLINA

BY

CHECK REQUIRES SECOND SIGNATURE IF OVER $50,000.00

⑈00655188⑈ ⑆053101561⑆ 2079900009596⑈

# FISHER-PRICE

DATE: 2/2/99

TO:   ACCOUNTS PAYABLE

FROM: PAT GRABIANOWSKI

PLEASE ISSUE A CHECK TO:

VICTOR G. REILING ASSOCIATES

119 NORTH MAIN STREET P. O. BOX 877

KENT, CT 06757 0877

EXPLANATION:   OPTION AGREEMENT PAYMENT: Real Heroes 2/1 to 2/28/99 1st (50% with Design Innovation)

PLEASE GIVE THE CHECK TO:   PAT GRABIANOWSKI

| VOUCHER | VENDOR | PAYEE | CK | BANK CODE | PAYDATE | PREPARED | VERIFIED | APPROVED |
|---------|--------|-------|----|-----------|---------|----------|----------|----------|
| NUMBER | | DATE | | AMOUNT | DISCOUNT | PAG | CODE | AMOUNT-SALES TAX. |

EN PRI SUB RESPN         EN PRI SUB RESPN         EN PRI SUB RESPN         EN PRI SUB RESPN         EN PRI SUB RESPN

_Authorized Signature_

AUTHORIZED SIGNATURE

Account Number     10 790 910 04850

Account $     $1,250.00

Trans. Anal.     Opt RH1

Additional Information     Opt Pymt: RH 2/1 to 2/28/99 1st (50% w Design Innovation)

FPT-0620 (12/1/97) Ltd

Microsoft Word Template 6.0 Designed by Fisher-Price Graphic Production, East Aurora

FP 0026