In opposition to Defendants' motion for summary judgment, J&M submitted the declarations of Mr. Kinder and Mr. Weinstock. Each declared that he "did not conduct [his] analysis or form [his] conclusions on equivalence by looking to the overall design of the headset." (Decl. of Mark E. Kinder P 3; Decl. of David S. Weinstock P 3.) For two reasons, the court finds these declarations insufficient to alter its finding that Mr. Kinder and Mr. Weinstock relied on an impermissible comparison of the accused headsets to the overall patented invention rather than to the single relevant limitation of dual clamps. First, to the extent that these declaration contradict the deposition testimony of Mr. Kinder and Mr. Weinstock, they do not create an issue of fact. See *Kennedy v. Allied Mut. Ins. Co., 952 F.2d 262, 266 (9th Cir. 1991)*. The deposition testimony of both Mr. Kinder and Mr. Weinstock made clear that they compared the accused products to the patented invention as a whole or to limitations other than the dual clamp requirement. They cannot now contradict this testimony through conclusory statements [*72] declaring otherwise. The second reason the court finds the declarations insufficient is that they still fail to provide any analysis of whether use of a single clamp is equivalent to use of dual clamps. Both Mr. Kinder and Mr. Weinstock declare that they found the accused headsets equivalent to the 525 patented headset because the accused headsets "merely integrate[] the microphone mount and plug mount into a single mount otherwise essentially the same." (Decl. of Mark E. Kinder P 2; Decl. of David S. Weinstock P 2.) The conclusion that the accused headsets and the patented headset are essentially the same other than the single-clamp versus dual-clamp difference avoids precisely the analysis that was required to support an opinion of equivalence, i.e., the equivalence of a single clamp as opposed to dual clamps.

Based on the opinions of equivalence reached by Mr. Kinder, Mr. Weinstock, Mr. Howell, and Mr. Lazzeroni, J&M argues that it has proffered sufficient evidence on the issue to withstand summary judgment. However, Mr. Lazzeroni and Mr. Howell were not competent to render such opinion testimony, and the opinions offered by J&M were all based on an erroneous comparison of the [*73] accused headsets to the overall patented invention. Accordingly, J&M has failed to present admissible evidence that the accused headsets contain every claim element either literally or by equivalent, and Defendants are entitled to summary judgment of non-infringement. See *S. Bravo Sys., 96 F.3d at 1376*.

b. Undisputed Evidence Demonstrates that Accused Headsets Are Not Equivalent to Claims 3-7 and 15-17 of the '525 Patent

In addition to J&M's failure to meet its burden at the summary judgment stage of proffering evidence of equivalence, the court finds that a proper analysis of the issue demonstrates that the single-clamp design is not equivalent to the dual-clamp limitation of claims 3-7 and 15-17. The court first notes the Supreme Court's instruction in Warner-Jenkinson that [HN27] an "analysis of the role played by each element in the context of the specific patent claim . . . informs the inquiry as to whether a substitute element matches the function, way, and result of the claimed element, or whether the substitute element plays a role substantially different from the claimed element." *117 S. Ct. at 1054.* An analysis of the role played by the dual-clamp [*74] limitation demonstrates the lack of equivalence between that limitation and a single-clamp design.

The 525 patent noted two problems with the prior art headsets. First, some prior art mounts were attached to the side of a helmet by drilling holes through the helmet, thereby compromising the integrity of the helmet. Second, other prior art mounts that were attached to the lower side edge of the helmet, thereby avoiding the problem of drilling holes, were so constructed that they extended substantially below the lower edge of the helmet. The patentees explained this second problem as follows:

> Other microphone mounts in the prior art clamp to the lower edge of the motorcycle helmet, however, they are so constructed that they extend substantially below the lower edge of the helmet such that when they are installed upon the helmet and the rider wearing the helmet turns his head from side to side, the microphone mount may strike the rider's shoulder which in turn causes discomfort and is a constant source of aggravation. This is especially a problem when the electrical wires, which run from the motorcycle frame to the microphone mount, attach by means of a plug mounted to the microphone [*75] mount such as to enlarge the portion of the mount residing below the helmet lip and present a still larger object for striking the helmet wearer's shoulder when his head turns.

(Schill Decl., Ex. 1, 525 Patent, at col. 2, Ins. 6-20.) It is clear from this passage that the dual-clamp limitation would serve the role of decreasing the bulkiness caused by a single integrated mount. J&M argues that the dual-clamp limitation does not serve this role, but it offers no alternative analysis of the role played by the separation

of the mounts and the clamps. It instead appears to argue that the dual-clamp limitation plays no role, but is rather an insignificant variation on the overall patented design. The Supreme Court, however, has warned that [HN28] every element of a patent claim is material. See *Warner-Jenkinson, 117 S. Ct. at 1049.*

The single clamp design of the accused products cannot possibly serve the role of providing a less bulky object, as it uses a single integrated mount. Accordingly, the single-clamp design is not equivalent to the dual-clamp limitation. See *Vehicular Tech., 141 F.3d at 1090* ("[HN29] If a claim limitation must play a role in the context [*76] of the specific claim language, then an accused device which cannot play that role, or which plays a substantially different role, cannot infringe under the doctrine of equivalents."). Additionally, Defendants' expert Charles W. Coons, in concluding that the single-clamp and dual-clamp designs are not equivalent, set forth several differences between the two designs: a single-clamp design is easier to install and remove; a dual-clamp design requires an exposed wire, which makes it more susceptible to system failures; manufacture of the two different designs involve different tooling costs; and a single-clamp design makes it easier for a user to connect and disconnect the electrical cord with the helmet on because the electrical connector is facing forward, as opposed to backward with a dual-clamp design. (Decl. of Charles W. Coons, Ex. B. Rebuttal Expert Report at 4-5.) In conclusion, the court finds that the undisputed evidence demonstrates that the single-clamp design is a significant change from the dual-clamp limitation of the 525 patent.

The court further finds that the circumstances of this case are similar to those presented in *Sage Products v. Devon Industries, 126 F.3d 1420 (Fed. Cir. 1997),* [*77] where the Federal Circuit upheld the district court's order granting summary judgment of non-infringement. The patented invention at issue in Sage Products was a disposal container that allowed users to deposit hazardous medical waste without being able to touch waste already in the container. *Id. at 1422.* The patent claim contained three elements at issue in the litigation: (1) "an elongated slot at the top of the container body for permitting access to the interior of the container body"; (2) "a first constriction extending over said slot"; and (3) "a complementary second constriction extending beneath said slot." See id. The defendant's disposal container was designed in such a way that only two and not all three of the elements of the patent claim were met. Under any interpretation of the defendant's design, either the elongated slot would not be located at the top of the container, or the first constriction would not extend over the slot. See *id. at 1423-24.*

The plaintiff in Sage, rather than showing that the accused product was substantially equivalent to each limitation of the patent claim, argued that having two constrictions below [*78] the top of the container was equivalent to having one below and one above because each arrangement accomplished substantially the same function in substantially the same way to achieve substantially the same result. See *id. at 1424.* The Federal Circuit concluded that the accused container was not equivalent, reasoning as follows:

> [HN30] For a patentee who has claimed an invention narrowly, there may not be infringement under the doctrine of equivalents in many cases, even though the patentee might have been able to claim more broadly. If it were otherwise, then claims would be reduced to functional abstracts, devoid of meaningful structural limitations on which the public could rely....
>
> ... The claim at issue defines a relatively simple structural device. A skilled patent drafter would foresee the limiting potential of the "over said slot" limitation. No subtlety of language or complexity of the technology, nor any subsequent change in the state of the art, such as later-developed technology, obfuscated the significance of this limitation at the time of its incorporation into the claim. If [plaintiff] desired broad patent protection for any container that [*79] performed a function similar to its claimed container, it could have sought claims with fewer structural encumbrances. Had [plaintiff] done so, then the [PTO] could have fulfilled its statutory role in helping to ensure that exclusive rights issue only to those who have, in fact, contributed something new, useful, and unobvious. Instead, [plaintiff] left the PTO with manifestly limited claims that it now seeks to expand through the doctrine of equivalents. However, as between the patentee who had a clear opportunity to negotiate broader claims but did not do so, and the public at large, it is the patentee who must bear the cost of its failure to seek protection for this foreseeable alteration of its claimed structure.

*Id.* at 1424-25. The Federal Circuit went on to state that it would not ignore the limitations imposed by a "precise arrangement of structural elements" by finding infringement by a product that performs the same function but does so "by a different arrangement of elements." *Id. at 1425-26.*

Like Sage Products, the 525 patent sets forth a clear arrangement of structural elements that includes dual clamps. The court cannot [*80] just ignore that structural limitation. Furthermore, the variation of dual clamps versus a single clamp was certainly foreseeable when the inventors filed the patent application. The application for the 724 patent disclosed prior art wherein a microphone mount and plug mount were integrated into a single mount. Accordingly, if the applicants desired broader patent protection, they could have done so by foregoing the structural limitation of dual clamps.

In conclusion, the court finds that the single-clamp design of the accused headsets is not equivalent to the dual-clamp limitation of claims 3-7 and 15-17 of the 525 patent. Accordingly, Defendants are entitled to summary judgment of non-infringement of these patent claims.

B. Defendants' Alternative Motion for Summary Judgment of Invalidity of Claims 3-7 and 15-17 of the 525 Patent

In the alternative to summary judgment of non-infringement, Defendants move for summary judgment that claims 3-7 and 15-17 of the 525 patent are invalid for failure to disclose the best known mode of practicing the invention, lack of a sufficient written description, failure to meet the requirements of a reissue patent, and obviousness in light of [*81] the prior art. Because the court has already determined that Defendants are entitled to summary judgment of non-infringement, it need not consider this alternative argument. n8

> n8 Furthermore, the court need not reach J&M's motion for partial summary judgment on Defendants' assertion that claims 15-17 of the 525 patent are invalid for failing to follow the requirements of a reissue patent under *35 U.S.C. § 251.*

C. Defendants' Motion for Summary Judgment of Non-willfulness

Defendants have further moved for summary judgment on J&M's claim of willful infringement. Because the court has already determined that Defendants did not infringe claims 3-7 and 15-17 of the 525 patent, no issue remains relating to the claim of willful infringement.

IV. CONCLUSION

Defendants have moved for summary judgment of non-infringement based on two alternative grounds: (1) J&M is not entitled to a range of equivalents that would encompass the single-clamp design of the accused headsets; and (2) even [*82] if J&M is so entitled, the single-clamp design is not equivalent to the dual-clamp limitation of the 525 patent. Though the court finds no merit to Defendants' first proffered ground, it concludes that the single-clamp design is not equivalent to the dual-clamp limitation. Plaintiff has not proffered sufficient evidence to create a genuine issue of fact regarding equivalence. Some of the opinions of equivalence it relies upon were rendered by witnesses incompetent to render such an opinion, and the other opinions were based on a legally incorrect analysis. Furthermore, the undisputed evidence demonstrates that the single-clamp design is a significant change from the dual-clamp limitation of the 525 patent. Finally, because the dual-clamp versus single-clamp variation was foreseeable when the inventors filed their original patent application, the burden was on them to negotiate broader claims by not including the dual-clamp limitation. n9

> n9 The court notes that J&M has recently filed a motion for a more definite statement of the claims of fraud raised in Defendants' Amended Answer and Counterclaim. Because the court grants Defendants summary judgment on the grounds set forth in this order, it will deny J&M's motion for a more definite statement as moot.

[*83]

IT IS ORDERED granting Plaintiff J&M Corporation's Motion for Partial Summary Judgment on the Prosecution History Estoppel Defense, filed August 30, 1999 (doc. 135).

IT IS FURTHER ORDERED granting Plaintiff J&M Corporation's Motion for Partial Summary Judgment on Defendants' Patent Invalidity Defense, filed August 30, 1999 (doc. 138).

IT IS FURTHER ORDERED granting Plaintiff J&M Corporation's Motion for Partial Summary Judgment on Defendants' Defenses of Laches, Equitable Estoppel, and Waiver, filed August 30, 1999 (doc. 141).

IT IS FURTHER ORDERED denying as moot Plaintiff J&M Corporation's Motion for Partial Summary Judgment on Defendants' Reissue Defense, filed August 30, 1999 (doc. 144).

IT IS FURTHER ORDERED granting Defendants' Motion for Summary Judgment, filed August 30, 1999 (doc. 127). The Clerk of the Court is directed to enter judgment for Defendants Harley-Davidson, Inc. and Radio Sound, Inc. and terminate this case.

IT IS FURTHER ORDERED denying as moot Plaintiff's Motion for a More Definite Statement, filed December 13, 1999 (doc. 262).

DATED this 9 day of February, 2000.

Robert C. Broomfield

United States District Judge

LEXSEE 2003 US DIST LEXIS 14338

NTP, INC., Plaintiff, v. RESEARCH IN MOTION, LTD., Defendant.

Civil Action Number 3:01CV767

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA, RICHMOND DIVISION

2003 U.S. Dist. LEXIS 14338; 67 U.S.P.Q.2D (BNA) 1587

May 23, 2003, Decided
May 23, 2003, Filed

**SUBSEQUENT HISTORY:** Costs and fees proceeding at *Ntp, Inc. v. Research in Motion, 270 F. Supp. 2d 751, 2003 U.S. Dist. LEXIS 14341 (E.D. Va., May 23, 2003)*

**PRIOR HISTORY:** *NTP, Inc. v. Research in Motion, Ltd., 261 F. Supp. 2d 423, 2002 U.S. Dist. LEXIS 25468 (E.D. Va., 2002)*

**DISPOSITION:** [*1] Defendant's motion for judgment as matter of law or, in alternative, for new trial denied.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff patent holder sued defendant infringer for direct and indirect infringement of several of its patents contemplating mobile access to electronic mail. The jury found that the infringer infringed the asserted claims of the patents, found that the infringer willfully infringed all the patents-in-suit, and rejected the infringer's defenses. The infringer moved for judgment as a matter of law or, in the alternative, for a new trial.

**OVERVIEW:** The infringer did not meet its high burden of clear and convincing evidence with respect to anticipation and obviousness, and the lack of evidence presented at trial by the infringer with respect to the best mode of the invention supported the jury finding that the patents were not invalid due to failure to disclose the best mode. Also, terms were given their ordinary meaning unless there was a compelling reason not to do so, and the ordinary meaning of the terms were then compared to the intrinsic evidence to determine whether or not the inventors intended that a particular term warranted a special meaning. Therefore, the infringer was not entitled to a new trial based on the claim construction. Finally, the expert's testimony as to claim construction was deemed inadmissible because his expert report contained numerous statements as to the inaccuracy of the court's claim construction, which had the potential to confuse and mislead the jury. In the matter of claim construction, the guidance to the jury could only come from the court.

**OUTCOME:** The infringer's motion for judgment as a matter of law or, in the alternative, for a new trial, was denied.

**LexisNexis(R) Headnotes**

*Civil Procedure > Trials > Judgment as Matter of Law*
*Civil Procedure > Relief From Judgment > Motions for New Trial*
[HN1] A court may grant a motion for judgment as a matter of law only when viewing the evidence in the light most favorable to the non-moving party and drawing every legitimate inference in that party's favor, it determines that the only conclusion a reasonable trier of fact could draw from the evidence is in favor of the moving party. Therefore, if reasonable minds of a jury could differ as to the verdict, then the motion for judgment as a matter of law should not be granted. Courts also have the discretion to grant a new trial as an alternative to judgment as a matter of law. Fed. R. Civ. P. 50(b)(1)(B).

*Patent Law > Infringement Actions > Burdens of Proof*
*Patent Law > Inequitable Conduct > General Overview*

Case 3:03-cv-00222-JBA    Document 129-5    Filed 07/12/2005    Page 7 of 18

Page 2
2003 U.S. Dist. LEXIS 14338, *; 67 U.S.P.Q.2D (BNA) 1587

[HN2] An accused device infringes a claim if it literally embodies every limitation of the claim. Therefore, the evidence adduced at trial must demonstrate that a claim "reads on" the accused product. A patentee has the burden of proving infringement by a preponderance of the evidence.

*Patent Law > Infringement Actions > Defenses > Patent Invalidity > Validity Presumption*
*Patent Law > Inequitable Conduct > Effect, Materiality & Scienter > General Overview*
[HN3] A patent is presumed to be valid. A defendant challenging the validity of a claim that has been approved by the United States Patent and Trademark Office has a high burden, in that it must demonstrate by clear and convincing evidence that the patent is invalid.

*Patent Law > Originality > Joinder of Inventors*
*Patent Law > Date of Invention & Priority > Corroboration of Invention Date*
*Patent Law > Infringement Actions > Defenses > Patent Invalidity > General Overview*
[HN4] All inventors of a patent must be named, otherwise nonjoinder of an inventor will render the patent invalid. *35 U.S.C.S. § 102*(f). The inventor conceives the patented invention. Persons who provide services in perfecting the invention conceived by another are not necessarily inventors. Thus, evidence of inventorship and conception must be corroborated.

*Patent Law > Anticipation & Novelty > General Overview*
[HN5] Anticipation is a term of art in patent law which indicates that a claimed invention lacked novelty, or was unpatentable under *35 U.S.C.S. § 102.*

*Patent Law > Nonobviousness > Elements & Tests > General Overview*
*Patent Law > Inequitable Conduct > Effect, Materiality & Scienter > General Overview*
*Patent Law > Nonobviousness > Evidence & Procedure > Presumptions & Proof*
[HN6] Pursuant to *35 U.S.C.S. § 103*(a), a patent is invalid for obviousness if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art. The determination as to obviousness is based on the following four underlying factual inquiries: (1) the scope and content of the prior art; (2) the differences between the claims and the prior art; (3) the level of ordinary skill in the pertinent art; and (4) secondary considerations, if any, of nonobviousness. An important consideration in the determination of obviousness is whether there was motivation, or a purpose to combine elements of prior art.

*Patent Law > Claims & Specifications > Best Mode > Adequate Disclosure*
*Patent Law > Claims & Specifications > Description Requirement > General Overview*
*Patent Law > Infringement Actions > Burdens of Proof*
[HN7] The specification of a patent must set forth the best mode contemplated by the inventor of carrying out his invention. *35 U.S.C.S. § 112*. To prove failure to disclose the best mode, an alleged infringer must establish that: (1) the patent knew of a mode of practicing his claimed invention that he considered to be better than any other; and (2) the disclosure of that best mode was not adequate enough to enable one skilled in the art to practice the best mode, such that it was effectively concealed from the public.

*Patent Law > Claims & Specifications > Enablement Requirement > General Overview*
*Patent Law > Claims & Specifications > Definiteness > General Overview*
*Patent Law > Claims & Specifications > Description Requirement > General Overview*
[HN8] To be valid, a patent specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to practice it. *35 U.S.C.S. § 112*. Thus, in order to meet the minimum threshold requirement of this statute, the specification must clearly allow persons of ordinary skill in the art to recognize that the patentee invented what is claimed. However, it is not necessary for the specification to exactly describe the subject matter claimed. The test for sufficiency of support in a parent application is whether the disclosure of the application relied upon reasonably conveys to the artisan that the inventor had possession at that time of the later claimed subject matter.

*Patent Law > Infringement Actions > Infringing Acts > General Overview*
[HN9] Upon receiving actual notice of another's patent, a potential infringer has an affirmative duty of care that normally requires the potential infringer to obtain competent legal advice before infringing or continuing to infringe.

*Patent Law > Inequitable Conduct > Effect, Materiality & Scienter > General Overview*
*Patent Law > Infringement Actions > Infringing Acts > General Overview*
[HN10] Upon actual notice of another's patents, an alleged infringer is required to take whatever steps are

Case 3:03-cv-00222-JBA   Document 129-5   Filed 07/12/2005   Page 8 of 18

Page 3

2003 U.S. Dist. LEXIS 14338, *; 67 U.S.P.Q.2D (BNA) 1587

necessary to enable it to conduct itself with reasonable confidence that a court might hold the patent invalid or not infringed. This includes ordering patent prosecution history and performing a prior art history search.

***Patent Law > Claims & Specifications > Enablement Requirement > General Overview***
***Patent Law > Infringement Actions > Claim Interpretation > General Overview***
[HN11] Unless otherwise compelled, a court must give a patent claim term the full range of its ordinary meaning as understood by persons skilled in the relevant art.

***Patent Law > Infringement Actions > Claim Interpretation > General Overview***
[HN12] The presumption in favor of a dictionary definition will be overcome where the patentee, acting as his or her own lexicographer, has clearly set forth an explicit definition of the term different from its ordinary meaning.

***Evidence > Witnesses > Expert Testimony***
[HN13] The United States Court of Appeals for the Fourth Circuit has held that attorneys cannot testify as expert witnesses regarding their opinion as to the meaning and applicability of the law.

***Evidence > Witnesses > Expert Testimony***
[HN14] Expert witnesses cannot testify if their testimony will not be helpful to the jury.

***Evidence > Witnesses > Expert Testimony***
***Patent Law > Infringement Actions > Claim Interpretation > General Overview***
[HN15] The United States Supreme Court has placed the responsibility of claim construction on the presiding judge. Once the claims are construed, it would be folly to allow an expert witness to testify as to opinions at odds with the court's construction. In the matter of claim construction, the guidance to the jury can only come from one source.

**COUNSEL:** For NTP INC., plaintiff: Jack Edward McClard, Maya Miriam Eckstein, Hunton & Williams, Richmond, VA.

For NTP INC., plaintiff: John Benedict Wyss, Floyd Brantley Chapman, Scott Eric Bain, James Harold Wallace, Jr., Wiley Rein & Fielding LLP, Washington, DC.

For NTP INC., plaintiff: Christopher Michael Mills, Wiley Rein & Fielding LLP, McLean, VA.

For RESEARCH IN MOTION, LTD., defendant: Stephen Earl Baril, Williams Mullen PC, Richmond, VA.

For RESEARCH IN MOTION, LTD., defendant: Thomas Robert Goots, Robert Conley Kahrl, Robert Louis Canala, Kenneth Robert Adamo, Jones Day, Cleveland, OH.

For RESEARCH IN MOTION, LTD., defendant: Donald Belton Ayer, Charles Richard Allan Morse, Jones Day, David Wayne Long, Howrey Simon Arnold & White LLP, Washington, DC.

For RESEARCH IN MOTION, LTD., defendant: Henry C. Bunsow, Howrey Simon Arnold & White, [*2] San Francisco, CA.

**JUDGES:** James R. Spencer, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** James R. Spencer

**OPINION:**

**MEMORANDUM OPINION**

THIS MATTER comes before the Court on Defendant Research in Motion, Ltd.'s ("RIM") Motion for Judgment as a Matter of Law or, in the Alternative, for a New Trial; RIM's Motion for Judgment of Non-Infringement as a Matter of Law Based upon New Texas Digital Sys. Decision; and RIM's Motion for New Trial Pursuant to *Federal Rule of Civil Procedure 59(a)*. For the reasons discussed herein, RIM's Motions are DENIED.

I.

Plaintiff NTP, Inc. ("NTP") brought suit against RIM alleging direct and indirect infringement of several patents owned by NTP. The patents that were ultimately asserted at trial include *United States Patent Nos. 5,436,960 (the '960 Patent)*, 5,625,670 (the '670 Patent), 5,819,172 (the '172 Patent), 6,067,451 (the '451 Patent), and 6,317,592 (the '592 Patent) (collectively, the "patents-in-suit" or "Campana Patents"). The patents-in-suit contemplated mobile access to electronic mail, which enabled the user to send and receive electronic mail messages from a mobile device. RIM, a Canadian corporation, with its principal offices located in Waterloo, [*3] Ontario, manufactures various devices and software, commonly known as RIM's BlackBerry line of products, which essentially provide their customers with mobile access to electronic mail through their BlackBerry handheld device.

After a thirteen-day trial, the jury found that RIM infringed the fourteen remaining asserted claims of the

Case 3:03-cv-00222-JBA    Document 129-5    Filed 07/12/2005    Page 9 of 18

Page 4
2003 U.S. Dist. LEXIS 14338, *; 67 U.S.P.Q.2D (BNA) 1587

Campana Patents. n1 Moreover, the jury found that RIM willfully infringed all the patents-in-suit. Finally, the jury rejected every ground of defense asserted by RIM. Consequently, RIM has filed two separate motions for judgment as a matter of law and a motion for a new trial pursuant to *Rule 59(a) of the Federal Rules of Civil Procedure.*

---

n1 RIM was also found to infringe two other claims on summary judgment.

---

II.

RIM's motions for judgment as a matter of law are brought pursuant to *Rule 50(b) of the Federal Rules of Civil Procedure.* Accordingly, they will be discussed together. RIM's Motion for a New Trial pursuant to *Rule 59(a)*, brought as a result of this Court's decision to exclude [*4] the testimony of designated expert witness Larry Nixon, will be discussed separately.

A. Motion for Judgment as a Matter of Law

[HN1] A court may grant a motion for judgment as a matter of law only when "viewing the evidence in the light most favorable to the non-moving party and drawing every legitimate inference in that party's favor, it determines that the only conclusion a reasonable trier of fact could draw from the evidence is in favor of the moving party." *Figg v. Schroeder, 312 F.3d 625, 635 (4th Cir. 2002)* (citations omitted). Therefore, if reasonable minds of a jury could differ as to the verdict, then the motion for judgment as a matter of law should not be granted. *Baynard v. Malone, 268 F.3d 228, 235 (4th Cir. 2001).* Courts also have the discretion to grant a new trial as an alternative to judgment as a matter of law. *Fed. R. Civ. P. 50(b)(1)(B).*

Both RIM and NTP extensively briefed their respective arguments as to the sufficiency of the evidence at trial with respect to infringement, invalidity, and willful infringement. RIM also asserts that, based on the Federal Circuit's ruling in *Texas Digital Sys., Inc. v. Telegenix, Inc., 308 F.3d 1193 (Fed. Cir. 2002)*, [*5] a jury verdict based on erroneous claim construction is also a basis for judgment as a matter of law. Each of these issues will be discussed in turn.

1. Infringement

[HN2] An accused device infringes a claim if it literally embodies every limitation of the claim. *Allen Eng'g Corp. v. Bartell Indus., Inc., 299 F.3d 1336, 1345 (Fed. Cir. 2002).* Therefore, the evidence adduced at trial must demonstrate that a claim "reads on" the accused product. *Minnesota Min. and Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc., 976 F.2d 1559, 1570 (Fed. Cir. 1992).* A patentee has the burden of proving infringement by a preponderance of the evidence. *Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc., 261 F.3d 1329, 1336 (Fed. Cir. 2001).*

RIM essentially reasserts all of the arguments it advanced in its motions for summary judgment, which were all rejected. Based on the evidence in the record, if viewed in a light most favorable to NTP, a reasonable jury would not have found in favor of RIM. Dr. Vernon Rhyne, NTP's expert witness, provided substantial testimony as to each of the elements of the asserted claims, and which component of a particular [*6] RIM product embodies each element. NTP notes that RIM's counsel never asked Dr. Rhyne any questions concerning his opinion and analysis regarding infringement. Instead, RIM argues that, because Dr. Rhyne testified that RIM's customers perform some of the functions of the claim elements, it cannot infringe the Campana Patents. RIM's argument is without merit. RIM provides the instrument which enables customers to participate in the process of sending and receiving wireless email. Finally, NTP also notes that RIM did not ask its own expert, Dr. Jeffrey Reed, any questions concerning infringement.

RIM has not and cannot demonstrate that the evidence presented in this case merits an award of judgment as a matter of law with respect to infringement.

2. Invalidity

[HN3] A patent is presumed to be valid. *Intel Corp. v. U.S. Int'l Trade Comm'n, 946 F.2d 821, 829 (Fed. Cir. 1991).* A defendant challenging the validity of a claim that has been approved by the United States Patent and Trademark Office ("PTO"), has a high burden, in that it must demonstrate by clear and convincing evidence that the patent is invalid. *Netscape Communications Corp. v. Konrad, 295 F.3d 1315, 1320 (Fed. Cir. 2002);* [*7] *Hewlett-Packard Co. v. Bausch & Lomb, Inc., 909 F.2d 1464, 1467 (Fed. Cir. 1991).* RIM asserts that no reasonable minds could differ with respect to the correctness of its defenses of inventorship, anticipation and obviousness, the best mode requirement, and the adequacy of the patent specification.

a. Inventorship

[HN4] All inventors of a patent must be named, otherwise nonjoinder of an inventor will render the patent invalid. *35 U.S.C. § 102(f); Pannu v. Iolab Corp., 155 F.3d 1344, 1349 (Fed. Cir. 1998).* The inventor conceives the patented invention. *C.R. Bard, Inc. v. M3 Sys., Inc., 157 F.3d 1340, 1352 (Fed. Cir. 1998).* Persons who "provide services in perfecting the invention conceived by another" are not necessarily inventors. *Id.* Thus, evidence of inventorship and conception must be corroborated. *Id.* RIM argues that it presented substantial

Case 3:03-cv-00222-JBA    Document 129-5    Filed 07/12/2005    Page 10 of 18

Page 5

2003 U.S. Dist. LEXIS 14338, *; 67 U.S.P.Q.2D (BNA) 1587

evidence that Murali Narayanan and Oren Tavory were unnamed inventors of the Campana Patents.

RIM argues that Narayanan, a paid factual witness, conceived of wireless email, encoding header information, and a "look-up table." However, RIM's corroborating evidence [*8] fails to establish inventorship. First, the Kleiner Perkins Report did not corroborate Narayanan, who was not mentioned in the report and did not see the report until shortly before his testimony. Second, the letter that Thomas Campana wrote concerning Narayanan's work at Bell Labs prior to his work with Campana is insufficient to show that Narayanan's work at Bell Labs was the same work that is claimed in the patents-in-suit. Other evidence by RIM does not conclusively demonstrate that Narayanan did anything other than provide services in perfecting encoding and decoding header messages as well as look-up tables. Even Michael Ponschke, another paid factual witness, could not save Narayanan from himself, when he insisted that he never claimed to be an inventor.

Similarly, RIM could not establish that Oren Tavory did anything other than provide a service in the form of computer code to perfect the Campana Patents. Indeed, Tavory never asserted inventorship of any of the Campana Patents.

Accordingly, the evidence adduced at trial with respect to inventorship was sufficient to find that neither Narayanan nor Tavory were inventors of any of the Campana patents.

b. Anticipation and [*9] Obviousness

i. Anticipation

[HN5] Anticipation is a term of art in patent law which indicates that a claimed invention lacked novelty, or was unpatentable under *35 U.S.C. § 102*. *Lewmar Marine, Inc. v. Barient, Inc., 827 F.2d 744, 748 (Fed. Cir. 1987)*.

RIM argues that reasonable minds could not differ from its conclusion that the patents-in-suit were anticipated by the ALOHANet, the Zabarsky Patent, or the TekNow! System. RIM again devotes little time discussing Dr. Reed's analysis of each of these alleged prior art systems. This is probably due to the fact that, as NTP's notes, much of Dr. Reed's direct testimony was conclusory and failed to analyze and explain the claim language and which components of the prior art embodied each element of the asserted claims. Such conclusory evidence is hardly enough to meet RIM's high burden of clear and convincing evidence with respect to anticipation and obviousness. See *Schumer v. Laboratory Computer Sys., Inc., 308 F.3d 1304, 1315-1316 (Fed. Cir. 2002)*.

NTP further notes that Dr. Reed's credibility may have been discounted by the jury in light of his admission that his testimony was scripted and substantial [*10] portions of his expert report were copied, almost verbatim, from the Prior Art Statement and interrogatory answers prepared by RIM's attorneys. Upon cross-examination, when pressed to apply the prior art to the specific claim language, Dr. Reed was unable to do so. In light of this fact, RIM cannot possibly demonstrate that a reasonable jury could not have reached the conclusion that the asserted claims were not anticipated by any of the prior art presented by RIM.

ii. Obviousness

[HN6] Pursuant to *35 U.S.C. § 103(a)*, a patent is invalid for obviousness "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art ...." The determination as to obviousness is based on the following four underlying factual inquiries: "(1) the scope and content of the prior art; (2) the differences between the claims and the prior art; (3) the level of ordinary skill in the pertinent art; and (4) secondary considerations, if any, of nonobviousness." *Kegel Co., Inc. v. AMF Bowling, Inc., 127 F.3d 1420, 1430 (Fed. Cir. 1997)*. [*11] An important consideration in the determination of obviousness is whether there was motivation, or a purpose to combine elements of prior art. *Yamanouchi Pharm. Co., Ltd. v. Danbury Pharmacal, Inc., 231 F.3d 1339, 1343 (Fed. Cir. 2000)*.

RIM fails to demonstrate that a reasonable jury should have found in its favor with regards to obviousness. First, RIM did not demonstrate the motivation to combine the TekNow! System with the other prior art references of the ALOHANet, the Zabarsky Patent, and May. David Keeney, RIM's fact witness and inventor of TekNow!, testified that he did not have any reason to connect a pager to a computer. Furthermore, NTP offered irrefutable evidence of nonobviousness in the form of tremendous commercial success of the infringing BlackBerry products, which indicated the satisfaction of a "long-felt need." *Pro-Mold and Tool Co., Inc. v. Great Lakes Plastics, Inc., 75 F.3d 1568, 1572 (Fed. Cir. 1996)*. Again, RIM fails to establish that judgment as a matter of law is warranted with respect to obviousness.

c. Best Mode Requirement

[HN7] The specification of a patent must "set forth the best mode contemplated by the inventor of [*12] carrying out his invention." *35 U.S.C. § 112*. To prove failure to disclose the best mode, RIM must establish that: (1) Thomas Campana knew of a mode of practicing his claimed invention that he considered to be better than

Case 3:03-cv-00222-JBA   Document 129-5   Filed 07/12/2005   Page 11 of 18

Page 6
2003 U.S. Dist. LEXIS 14338, *; 67 U.S.P.Q.2D (BNA) 1587

any other; and (2) the disclosure of that best mode was not adequate enough to enable one skilled in the art to practice the best mode, such that it was effectively concealed from the public. *Chemcast Corp. v. Arco Industries Corp., 913 F.2d 923, 928 (Fed. Cir. 1990)*.

RIM asserts that the best mode of the invention, a connector between the Safari laptop computer and the Telefind Messager pager, is falsely disclosed in the prior art drawing of Figure 7. Much of RIM's argument centers around its interpretation of the claim language and the patent specification instead of the evidence adduced at trial. At trial, the testimony of Dr. Rhyne demonstrated that Figure 7 enabled a person of ordinary skill in the art to connect the Telefind pager to any mobile computer, including the Safari laptop. RIM's own expert, Dr. Reed, could not and did not refute Dr. Rhyne's testimony in this regard.

The lack of evidence presented at trial by [*13] RIM with respect to the best mode of the invention supported the jury finding that the patents were not invalid due to failure to disclose the best mode.

### d. Patent Specification

[HN8] To be valid, a patent "specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art" to practice it. *35 U.S.C. § 112*. Thus, in order to meet the minimum threshold requirement of this statute, the specification "must clearly allow persons of ordinary skill in the art to recognize that [the patentee] invented what is claimed. *Vas-Cath, Inc. v. Mahurkar, 935 F.2d 1555, 1561, 1563 (Fed. Cir. 1991)* (citation omitted). However, it is not necessary for the specification to exactly describe the subject matter claimed. *Id. at 1563* (citation omitted). "The test for sufficiency of support in a parent application is whether the disclosure of the application relied upon reasonably conveys to the artisan that the inventor had possession at that time of the later claimed subject matter." *Id.*

RIM asserts that [*14] a person of ordinary skill in the art would not understand from reading the specifications that the Campana Patents taught dual pathways, the containment of the RF receiver and the destination processor in a single device, the transmission of email through the RF Network without an RF Network indicator, or the transmission of information to a wireless device after reception of the information by the destination processor. Again, RIM's motion focuses solely on legal argument, essentially mirroring its motions for summary judgment. Its failure to focus on any other evidence other than its interpretation of the specification and claim language shows that it did not meet its burden of proof at trial.

### 3. Willful Infringement

[HN9] Upon receiving actual notice of another's patent, a potential infringer "has an affirmative duty of care that normally requires the potential infringer to obtain competent legal advice before infringing or continuing to infringe." *Minn. Mining, 976 F.2d at 1580*.

RIM devotes some time arguing that the letter sent by NTP on January 27, 2000 (the "Notice Letter") did not constitute sufficient notice of NTP's patents. Essentially RIM argues that, [*15] because the Notice Letter was legally insufficient to provide notice, it could not have willfully infringed patents that it did not have actual notice of. RIM compares the Notice Letter with a similar letter in *Underwater Devices Inc. v. Morrison-Knudsen Co., Inc., 717 F.2d 1380 (Fed. Cir. 1983)*. In that case, upon notice that the defendant was to bid with others in the construction of underwater ocean pipelines, UDI sent a letter to the defendant and the other bidders indicating that the construction would likely use a patented method and apparatus owned by UDI. *Id. at 1384*. The letter indicated that UDI was willing to enter into a licensing agreement for $ 200,000 to allow the successful bidder to use the method and apparatus. Id. It was routine for UDI to send letters to construction companies bidding for construction contracts to build underwater pipelines. Id. All companies were offered the same terms. Id. The court held that this letter provided actual notice of UDI's patents to the defendant. *Id. at 1389*.

In distinguishing the UDI letter with the Notice Letter sent by NTP, RIM argues that because NTP sent a "form [*16] letter" to forty-five different companies, while UDI sent the letter "to only a few companies," it was not sufficient to constitute actual notice of the Campana Patents. RIM also argues that the Notice Letter was not detailed enough to provide actual notice. RIM's arguments are not persuasive. First, the Notice Letter listed the patents, and stated that they were enclosed for RIM's "careful review." The letter also stated that the patents were likely related to products and activities produced by RIM. It included information regarding these products and services from RIM's internet website as attachments. Finally, and most telling, the letter includes the following statement: "As you are aware, the patent laws cover direct infringement, contributory infringement, and inducement to infringe." In light of what the Notice Letter did include, the fact that NTP did not mention a particular licensing fee is not enough to demonstrate that it did not provide sufficient notice.

RIM's actual notice of NTP's patents triggered its duty of care to perform an adequate investigation to ensure that its products and services did not infringe the patents. The evidence adduced at trial demonstrated

Case 3:03-cv-00222-JBA    Document 129-5    Filed 07/12/2005    Page 12 of 18

2003 U.S. Dist. LEXIS 14338, *; 67 U.S.P.Q.2D (BNA) 1587

Page 7

[*17] that RIM's investigation after receiving notice was far from adequate. At the outset, the testimony of RIM witnesses as to the amount of time dedicated to the investigation and the persons involved in the investigation was so inconsistent that it left considerable doubt as to whether an investigation actually occurred. The jury was entitled to make credibility determinations with respect to this testimony. In any event, even if an investigation was conducted, it was not sufficient. RIM did not order the prosecution history of the patents or conduct a prior art search with the PTO. Charles Meyer apparently sought technical advice from Mike Lazaridis and Gary Mousseau, who were not neutral or disinterested. Charles Meyer issued an oral opinion, which has been found to be unreliable. See *Minn. Mining, 976 F.2d at 1580* (noting that oral opinions carry less weight than written opinions). Furthermore, RIM did not retain any written documentation of its investigative efforts.

In the face of such evidence, RIM attempts to assert that it should not be required to conduct "yeoman efforts" in the investigation of NTP's patents. RIM's argument here is premised on its earlier [*18] argument regarding the sufficiency of notice of the Notice Letter. Thus, RIM's argument in this respect is not persuasive.. [HN10] Upon actual notice of another's patents, RIM is required to take whatever steps are necessary to enable it to conduct itself with reasonable "confidence that a court might hold the patent invalid or not infringed." Id. This includes ordering patent prosecution history and performing a prior art history search. It cannot reasonably be argued that the jury's finding of willful infringement was contrary to law based upon the fact that RIM focused solely on infringement and did not perform any investigation with respect to patent validity. Accordingly, the evidence adduced at trial was sufficient to demonstrate by clear and convincing evidence that RIM had actual notice of the patents-in-suit, and that upon receiving such notice, it failed to exercise its duty of care to adequately investigate those patents such that it would have a reasonable belief of non-infringement or invalidity.

4. Claim Construction

RIM's second Motion for Judgment of as a Matter of Law asks this Court to find that RIM did not infringe any of the asserted claims based on an erroneous [*19] claim construction. RIM bases its request upon its interpretation of the recent Federal Circuit decision of *Texas Digital Sys., Inc. v. Telegenix, 308 F.3d 1193 (Fed. Cir. 2002)*. RIM surmises that this case stood for the proposition that courts are to rely on the dictionary for certain critical claim terms, and had this Court adopted the ordinary dictionary definitions of critical terms, and instructed the jury as to these "correct" interpretations, the jury would have returned a verdict of non-infringement.

*Texas Digital* does not affect the claim construction in this case. In that case, the Federal Circuit determined that the district court improperly construed certain terms because it did not give them their ordinary meaning. For RIM's argument to be successful, it would have to establish that this Court committed the same error. n2 Texas Digital stands for the proposition that, [HN11] unless otherwise compelled, a court must give a claim term "the full range of its ordinary meaning as understood by persons skilled in the relevant art." *Id. at 1202*, This Court recognized and stated this principle in its Markman Order. The Federal Circuit devoted [*20] considerable time discussing the importance of using dictionaries to help determine the plain and ordinary meaning of a term. *Id. at 1202-05*. However, the court also recognized that these ordinary meanings should be read in conjunction with the intrinsic evidence in the patents. *Id. at 1204*. The court also recognized that, [HN12] "the presumption in favor of a dictionary definition will be overcome where the patentee, acting as his or her own lexicographer, has clearly set forth an explicit definition of the term different from its ordinary meaning." *Id.*

---

n2 In any event, the correct remedy would be a new trial, not judgment as a matter of law. *Texas Digital, 308 F.3d at 1216*.

---

This is precisely how this Court approached claim construction in this case. Terms were given their ordinary meaning unless there was a compelling reason not to do so. The ordinary meaning of the terms were then compared to the intrinsic evidence to determine whether or not the inventors intended [*21] that a particular term warranted a special meaning. Interestingly, both parties referred to dictionary definitions in their briefs. However, at that time, RIM actually counseled this Court *against* turning to dictionaries to discern a common meaning and ignoring the intrinsic evidence in favor of a dictionary definition. n3 However, referring to the intrinsic evidence first before discerning the ordinary meaning of a term is precisely what the Federal Circuit warned against. See *id*. ("Consulting the written description and prosecution history as a threshold step in the claim construction process, before any effort is made to discern the ordinary and customary meanings attributed to the words themselves, invites a violation of our precedent counseling against importing limitations into the claims."). Therefore, RIM is not entitled to a new trial based on the claim construction in this case.

Case 3:03-cv-00222-JBA    Document 129-5    Filed 07/12/2005    Page 13 of 18

Page 8

2003 U.S. Dist. LEXIS 14338, *; 67 U.S.P.Q.2D (BNA) 1587

n3 See RIM's Post-Hearing Brief Regarding the Law of Claim Construction (Dkt. # 88).

B. *Rule 59(a)* Motion for New Trial [*22]

RIM's final motion is based on this Court's ruling on a motion in limine advanced by NTP, which excluded the testimony of Larry Nixon, one of its expert witnesses. RIM opines that the exclusion of this testimony directly resulted in the jury finding of willful infringement and the finding that the patents were not invalid.

Larry Nixon was excluded as an expert witness because he was an attorney hired by RIM who sought to offer legal opinions regarding the claim construction. The important factor here is that RIM sought to offer Nixon as an *expert*, not a fact witness. Nixon could have testified as to his investigation of the patents in an effort to determine whether RIM met its duty of care upon notice of the '451 and '592 Patents. However, [HN13] the Fourth Circuit has held that attorneys cannot testify as expert witnesses regarding their opinion as to the meaning and applicability of the law. *Adalman v. Baker, Watts & Co., 807 F.2d 359, 368 (4th Cir. 1986)*.

Nixon's expert report was also not admissible due to unfair prejudice under *Rule 403 of the Federal Rules of Evidence*. First, Nixon was actually hired as an employee of RIM, as opposed to being retained [*23] as independent counsel. After giving an oral opinion to RIM regarding the '451 and '592 Patents, Nixon wrote three opinion letters to RIM. Nixon, by his own deposition testimony, then cut and paste the information contained in those opinion letters into his expert report. This Court found that Nixon's report would be highly misleading, and therefore inadmissible pursuant to *Westberry v. Gislaved Gummi AB, 178 F.3d 257, 261 (4th Cir. 1999)*.

Nixon's testimony as to claim construction was deemed inadmissible because his expert report contained numerous statements as to the inaccuracy of the Court's claim construction, which had the potential to confuse and mislead the jury. [HN14] Expert witnesses cannot testify if their testimony will not be helpful to the jury. *Adalman, 807 F.2d at 369*. For good or bad, [HN15] the Supreme Court has placed the responsibility of claim construction on the presiding judge. Once the claims are construed, it would be folly to allow an expert witness to testify as to opinions at odds with the court's construction. In the matter of claim construction, the guidance to the jury can only come from one source. For this reason, the Nixon testimony [*24] was properly held inadmissible.

III.

Accordingly, RIM's Motion for Judgment as a Matter of Law or, in the Alternative, for a New Trial; RIM's Motion for Judgment of Non-Infringement as a Matter of Law Based upon New Texas Digital Sys. Decision; and RIM's Motion for New Trial Pursuant to *Federal Rule of Civil Procedure 59(a)*, are DENIED.

An appropriate Order shall issue.

UNITED STATES DISTRICT JUDGE

DATE MAY 23 2003

**ORDER**

THIS MATTER comes before the Court on Defendant Research in Motion, Ltd.'s ("RIM") Motion for Judgment as a Matter of Law or, in the Alternative, for a New Trial; RIM's Motion for Judgment of Non-Infringement as a Matter of Law Based upon New Texas Digital Sys. Decision; and RIM's Motion for New Trial Pursuant to *Federal Rule of Civil Procedure 59(a)*. For the reasons discussed in the accompanying Memorandum, RIM's Motions are DENIED.

Let the Clerk send a copy of this Order to all parties of record.

It is SO ORDERED.

UNITED STATES DISTRICT JUDGE

DATE MAY 23, 2003

Case 3:03-cv-00222-JBA    Document 129-5    Filed 07/12/2005    Page 14 of 18

LEXSEE 2001 US DIST LEXIS 9538

PALAZZETTI IMPORT/EXPORT, INC., Plaintiff, -against- GREGORY P. MORSON, et ano., Defendants.

98 Civ. 722 (FM)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

2001 U.S. Dist. LEXIS 9538

July 9, 2001, Decided
July 13, 2001, Filed

**DISPOSITION:** [*1] Palazzetti's motion in limine denied.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff licensor sued defendant licensees in an action arising from the licensing contract. The licensees affirmatively asserted that contract constituted a franchise agreement subject to rescission. The licensor moved in limine to permit the testimony of its proposed expert witness, a franchise law attorney.

**OVERVIEW:** The licensor asserted that its expert would testify that the parties' contract was not a franchise agreement and that, even if it were a franchise agreement, it was only the single agreement of its kind and thus did not require the statutory disclosures from the licensor to be valid. The court first held that the licensor's failure to submit the expert's report prior to requesting admission of his testimony by itself warranted denial of the motion to admit the testimony. In any event, the proposed testimony that the parties' contract, and other contracts of the licensor, were not franchise agreements involved purely legal conclusions which were not subject to expert opinion. Further, to the extent that the expert's proposed testimony concerned the attributes of a franchise, such testimony would not assist the trier of fact since the statutory elements of a franchise did not require knowledge beyond the ken of the average juror.

**OUTCOME:** The licensor's motion in limine was denied.

**LexisNexis(R) Headnotes**

*Civil Procedure > Disclosure & Discovery > Mandatory Disclosures*
[HN1] Fed. R. Civ. P. 26(a)(2)(B) expressly provides that, except as otherwise stipulated or directed by the court, a party wishing to adduce expert testimony shall provide, among other disclosures, a written report prepared and signed by the witness which shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor.

*Evidence > Witnesses > Expert Testimony*
[HN2] A trial court has broad discretion in deciding whether to admit expert testimony.

*Evidence > Witnesses > Expert Testimony*
[HN3] Under Fed. R. Evid. 702, the trial court must determine whether the expert opinion will assist the trier of fact to understand the evidence or to determine a fact in issue. Although courts interpret the rule as permitting expert testimony concerning mixed questions of fact and law, the determination of purely legal issues is the exclusive purview of the court. Thus, expert testimony which merely states a legal conclusion must be excluded.

*Evidence > Witnesses > Expert Testimony*
[HN4] Expert testimony is unnecessary and properly excludable where all the primary facts can be accurately and intelligibly described to the jury, and if they, as

persons of common understanding, are as capable of comprehending the primary facts and of drawing correct conclusions from them as are witnesses possessed of special or peculiar training, experience, or observation in respect of the subject under investigation.

*Trademark Law > Conveyances > Franchises*
*Business & Corporate Entities > Franchises & Distributorships > Franchise Relationships*
*Trademark Law > Infringement Actions > Expert Witnesses*
[HN5] Under N.Y. Gen. Bus. Law § 681, a franchise is a contract in which a franchisor (i) for a fee (ii)(a) prescribes a marketing plan for the sale of goods or services, or (ii)(b) grants a franchisee the right to sell goods or services associated with the franchisor's trademark.

**COUNSEL:** For PALAZZETTI IMPORT/EXPORT, INC., plaintiff: Debra Joy Guzov, Gizov & Rella, New York, NY.

For GREGORY P. MORSON, THE MORSON GROUP, INC., defendants: Dan L. Johnson, New York, NY.

For GREGORY P. MORSON, THE MORSON GROUP, INC., third-party plaintiffs: Dan L. Johnson, New York, NY.

For SERGIO PALAZZETTI, third-party defendant: Debra Joy Guzov, Debra J. Guzov, Esq., New York, NY.

For GREGORY P. MORSON, THE MORSON GROUP, INC., counter-claimants: Dan L. Johnson, New York, NY.

For PALAZZETTI IMPORT/EXPORT, INC., counter-defendant: Debra Joy Guzov, Guzov & Rella, New York, NY.

For GREGORY P. MORSON, THE MORSON GROUP, INC., counter-defendants: Dan L. Johnson, New York, NY.

For SERGIO PALAZZETTI, counter-claimant: Debra Joy Guzov, Debra J. Guzov, Esq., New York, NY.

**JUDGES:** FRANK MAAS, United States Magistrate Judge.

**OPINIONBY:** FRANK MAAS

**OPINION:**

## MEMORANDUM DECISION AND ORDER

### INTRODUCTION

This action arises from a contract pursuant to which plaintiff Palazzetti Import/Export, Inc. ("Palazzetti") licensed defendants Gregory P. Morson and the Morson Group, Inc. d/b/a The Morson Collection (together, "Morson") to use [*2] the Palazzetti name for a furniture store in Boston, Massachusetts (the "Palazzetti-Morson contract"). Morson asserts as an affirmative defense that the Palazzetti-Morson contract constituted the sale of a franchise which was subject to rescission because Palazzetti failed to make the disclosures required by New York law governing the sale of a franchise. By the letter of its counsel Debra J. Guzov, Esq., dated June 4, 2001 ("Guzov Letter"), Palazzetti moves in limine for an order authorizing the testimony of proposed expert witness David Kaufman, Esq. Because the parties have consented to my exercise of jurisdiction pursuant to *28 U.S.C. § 636(c)*, trial of this case is scheduled to commence before me on July 16, 2001.

Kaufman is unquestionably an expert in franchise law. Indeed, he participated in the drafting of *New York General Business Law § 681*, et seq. ("Section 681"), the statute that Morson relies on in this case. According to the Guzov Letter, Kaufman will testify that the Palazzetti-Morson contract was not a franchise agreement. He will further testify that even if the Palazzetti-Morson contract was a franchise agreement, it was the only agreement [*3] of its kind, and therefore fell within Section 681's "single instance exception" to the disclosure requirements that otherwise would apply. See *N.Y. Gen. Bus. Law § 684(3)(c)*. In this regard, Kaufman will also testify that certain agreements involving Palazzetti and other parties, which Morson alleges are franchise agreements, in fact, are not because (i) Palazzetti made capital contributions to the enterprises created in those instances and (ii) such capital contributions are not customary in the franchise industry. (See Joint Pretrial Order dated January 22, 2001).

In the Guzov Letter, Palazzetti maintains that its proposed expert testimony regarding the Palazzetti-Morson contract is admissible under *Rule 704 of the Federal Rules of Evidence* even though the expert will express an opinion regarding an ultimate issue of fact. Palazzetti further argues that testimony about custom within an industry is an area about which experts traditionally have been permitted to testify.

In response, Morson advances several contentions in the June 6, 2001 letter of its counsel, Dan Johnston, Esq. First, Morson argues that the elements of a franchise agreement under Section 681 are sufficiently [*4] straightforward that there is no need, pursuant to *Fed. R. Evid. 702*, to "assist the trier of fact to understand the evidence or to determine a fact in issue." Indeed, to the

extent that Kaufman is prepared to testify that the Palazzetti-Morson contract was not a franchise agreement, Morson argues that allowing such testimony would usurp the role of the Court in charging the jury. Morson also argues that because the elements of a franchise under Section 681 are easily understood, the only question relevant to the single instance exception is how many Palazzetti franchise agreements exist. In that regard, Morson asserts that custom within the industry cannot alter the statutory elements of a franchise agreement and that any capital contribution that Palazzetti may have made is irrelevant.

## DISCUSSION

### A. Rule 26

[HN1] *Fed. R. Civ. P. 26(a)(2)(B)* expressly provides that, "except as otherwise stipulated or directed by the court," a party wishing to adduce expert testimony "shall" provide, among other disclosures, "a written report prepared and signed by the witness [which] shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor [*5] . . . ." Here, however, I have been advised that plaintiff's counsel, in an effort to contain Palazzetti's costs, opted to make its motion before asking Mr. Kaufman to prepare a report. Suffice it to say, I know of no basis for this novel approach, nor is there any indication that Morson has consented thereto. This alone is a sufficient basis to deny Palazzetti's application. Nevertheless, although there are obvious disadvantages in attempting to assess a proposed expert's testimony without the detailed information contemplated by Rule 26(a)(2)(b), the limited information set forth in the Guzov Letter establishes that Palazzetti's motion would have to be denied even if the Rule 26 report had been prepared.

### B. Rule 702

It is well settled that [HN2] a trial court has "broad discretion" in deciding whether to admit expert testimony. *Salem v. United States Lines Co., 370 U.S. 31, 35, 82 S. Ct. 1119, 1122, 8 L. Ed. 2d 313 (1962); United States v. Tapia-Ortiz, 23 F.3d 738, 740 (2d Cir. 1994); Hygh v. Jacobs, 961 F.2d 359, 363 (2d Cir. 1992).* [HN3] Under *Fed. R. Evid. 702*, the trial court must determine whether the expert opinion "will assist [*6] the trier of fact to understand the evidence or to determine a fact in issue." Although courts interpret the rule as permitting expert testimony concerning mixed questions of fact and law, the determination of purely legal issues is the exclusive purview of the court. Thus, expert testimony which merely states a legal conclusion must be excluded. See *Andrews v. Metro North Commuter R.R., 882 F.2d 705, 709-10 (2d Cir.1989)*(reversible error to allow "forensic engineer" to testify that railroad company was negligent); *F. H. Krear & Co. v. Nineteen Named Trustees, 810 F.2d 1250, 1256 (2d Cir.1987)*(district court properly excluded testimony of attorney expert witness that contracts at issue were unenforceable because they lacked essential terms); *Marx & Co. v. Diners' Club, Inc., 550 F.2d 505, 509-10 (2d Cir. 1977)*(reversible error to admit testimony of lawyer, who was expert in securities regulation, regarding contractual obligations of the parties). Thus, to the extent that Palazzetti wishes to have its expert testify to his conclusion that the Palazzetti-Morson contract was not a franchise agreement, the motion must be denied.

If, on [*7] the other hand, the expert is being proffered simply to testify regarding the attributes of a franchise agreement, Palazzetti must demonstrate that the expert "will assist the trier of fact to understand the evidence or to determine a fact in issue." *Fed. R. Evid. 702.* Under this standard, the ability of experts to testify regarding factual issues is not without limitation. Rather, [HN4] expert testimony is:

> unnecessary and properly excludable where "all the primary facts can be accurately and intelligibly described to the jury, and if they, as [persons] of common understanding, are as capable of comprehending the primary facts and of drawing correct conclusions from them as are witnesses possessed of special or peculiar training, experience or observation in respect of the subject under investigation."

*United States v. Castillo, 924 F.2d 1227 (2d Cir. 1991)*(quoting *Salem v. United States Lines Co., 370 U.S. 31, 35, 82 S. Ct. 1119, 8 L. Ed. 2d 313 (1962)*(quotation omitted)). See also *Andrews, 882 F.2d at 708* (expert testimony that railroad platform with ice and trash on it was unsafe and that it was difficult to see when [*8] facing the bright lights of an oncoming train improperly "invaded an area in which the jury was not in need of expert assistance" and was improper); *United States v. Tapia-Ortiz, 23 F.3d 738, 739 (2d Cir.1994)*(expert testimony about the weight, purity, dosages, and prices of cocaine was properly admitted because it "clearly relates to knowledge beyond the ken of the average juror").

Here, it is clear that neither of the elements of a franchise agreement requires knowledge beyond the ken of the average juror. [HN5] Under Section 681, a franchise is a contract in which a franchisor (i) for a fee (ii)(a) prescribes a marketing plan for the sale of goods

Case 3:03-cv-00222-JBA    Document 129-5    Filed 07/12/2005    Page 18 of 18

Page 4
2001 U.S. Dist. LEXIS 9538, *

or services or (ii)(b) grants a franchisee the right to sell goods or services associated with the franchisor's trademark. There is nothing particularly esoteric about any of these elements and, therefore, nothing that leads me to believe that the jurors would be assisted (rather than improperly swayed) by the testimony of the expert. Accordingly, his proposed expert testimony regarding the elements of a franchise agreement and their alleged absence here does not meet the standard of Rule 702.

Finally, Palazzetti proposes [*9] to have its expert testify about custom within the franchise industry to show that its other agreements are not franchise agreements. Palazzetti argues that this testimony should be received because industry custom is a purely factual subject about which experts traditionally have been allowed to testify. While this may be a correct statement of general principles, it is beside the point. Section 681 makes no reference to capital contributions or industry custom. Rather, the only issue with respect to the Palazzetti-Morson contract, or Palazzetti's other contracts, is whether they meet the statutory definition. Industry custom consequently is irrelevant.

*TCBY Systems, Inc. v. RSP Co., 33 F.3d 925 (8th Cir.1994),* to which Palazzetti cites, is not to the contrary. In TCBY Systems, the Eighth Circuit approved the admission of testimony by a franchise expert regarding whether TCBY's site review and evaluation of a potential franchisee's plan for a TCBY store met the custom and practice in the fast food franchise industry. The district court concluded that, because the franchise agreement's provision that TCBY would provide "reasonable assistance" in selecting and [*10] evaluating potential store locations was ambiguous, the testimony of an expert regarding the meaning of the term would assist the jury. *Id., 33 F.3d at 929.* On appeal, the Eighth Circuit held that this determination was not an abuse of discretion Id. By comparison, in the present case, there is nothing to suggest that there is any ambiguity in the Palazzetti-Morson contract or that industry custom is relevant to the question of whether it was, in fact, a franchise agreement. Accordingly, expert testimony concerning industry custom would not assist the jurors and is inadmissible.

## CONCLUSION

For the foregoing reasons, Palazzetti's motion in limine is denied, and the expert testimony of David Kaufman is excluded.

SO ORDERED.

Dated: New York, New York

July 9, 2001

FRANK MAAS

United States Magistrate Judge