UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

VICTOR G. REILING ASSOCIATES and
DESIGN INNOVATION, INC.,

                Plaintiffs,

- against -

FISHER-PRICE, INC.,

                Defendant.

Index No.: 3:03 CV 222 (JBA)

December 27, 2005

## PLAINTIFF'S PROPOSED JURY INSTRUCTIONS

Plaintiff, Design Innovation, Inc. ("Design Innovation"), respectfully submits the following requests to charge for the Court's consideration.

**I. Design Innovation's Claim for Misappropriation**

This case involves the submission of a "concept," otherwise known as an "idea." *See Nadel v. Play-By-Play Toys & Novelties, Inc.*, 208 F.3d 368, 372 (2d Cir. 2000). "An idea may be a property right" if it satisfies certain legal elements. *Downey v. General Foods Corp.*, 31 N.Y.2d 56, 61, 334 N.Y.S.2d 874, 877, 286 N.E.2d 257 (N.Y. 1972). "Toy companies regularly do business with independent inventors" such as Design Innovation "in order to develop and market new toy concepts as quickly as possible." *Nadel*, 208 F.3d at 371. "If the company subsequently uses the disclosed idea, industry custom provides that the company shall compensate the inventor, unless, of course, the disclosed idea was already known to the company." (*Id.* at 371-72).

Design Innovation alleges that Fisher-Price misappropriated their concept. Misappropriation is defined as "[t]he application of another's property ... dishonestly to one's own use." BLACK'S LAW DICTIONARY at 1013 (7th Ed. 1999). "The principle that one may not misappropriate the results of the skill, expenditures and labors of [another] is predicated on the concept that no one is entitled 'to reap where it has not sown.'" NEW YORK PATTERN JURY INSTRUCTIONS CIVIL 3:58 at 520 (2d Ed. 2005) (quoting *International News Service v. Associated Press*, 248 U.S. 215, 239 (1918)); *Electrolux Corp. v. Val-Worth, Inc.*, 6 N.Y.2d 556, 567, 190 N.Y.S.2d 977 (N.Y. 1959) ("The principle that one may not misappropriate the results of the skill, expenditures and labors of a competitor has since often been implemented in our courts").

In order to prove that Fisher-Price is liable for misappropriation, Design Innovation must prove four elements by a preponderance of the evidence:

### A.    Concreteness

First, Design Innovation must prove that its concept -- as described in the written materials, sketches and prototype Design Innovation first submitted to Fisher-Price in 1998 and then later resubmitted in 1999 and 2000 -- was sufficiently "concrete" or "tangible" at the time of submission. The law holds that a concept is concrete if it is in a "fixed and concrete form [so] as to indicate a protectible idea," *Educ. Sales Programs, Inc. v. Dreyfus Corp.*, 317 N.Y.S.2d 840, 845 (N.Y. Sup. Ct. 1970); see *M.H. Segan Ltd. Pshp. v. Hasbro, Inc.*, 924 F. Supp. 512, 526 (S.D.N.Y. 1996), or if the concept is "embod[ied] in a tangible form." *Estate of Hemingway v. Random House, Inc.*, 296 N.Y.S.2d 771, 776 (N.Y. 1968).

**B.     Novelty**

Second, Design Innovation must prove that their concept was "original or novel in absolute terms" at the time of submission to Fisher-Price. *Nadel v. Play-By-Play Toys & Novelties, Inc.*, 208 F.3d 368, 378 (2d Cir. 2000).

"To establish novelty, a plaintiff's idea need not reflect the 'flash of genius....'" *AEB & Associates Design Group v. Tonka Corp.*, 853 F. Supp. 724, 734 (S.D.N.Y. 1994)(internal quotations omitted). Rather, Design Innovation must prove that at the time of submission its concept showed "genuine novelty and invention, and not merely a clever or useful adaptation of existing knowledge." *Hogan v. DC Comics*, 48 F. Supp. 2d 298, 314 (S.D.N.Y. 1999) (quoting *Paul v. Haley*, 588 N.Y.S.2d 897, 903 (N.Y. App. Div. 1992)). "[N]ovelty cannot be found where the idea consists of nothing more than a variation on a basic theme." *AEB & Associates Design Group v. Tonka Corp.*, 853 F. Supp. 724, 734 (S.D.N.Y. 1994) (citing *Murray v. National Broadcasting Co.*, 844 F.2d 988, 993 (2d Cir. 1988)).

To determine the novelty of Design Innovation's concept, you should consider the following four factors:

> 1. "[t]he idea's specificity or generality (is it a generic concept or one of specific application?)"; *Nadel*, 208 F.3d at 378
>
> 2. "its commonality (how many people know of this idea?); (*Id.*)
>
> 3. "its uniqueness (how different is this idea from generally known ideas?); (*Id.*) and,
>
> 4. "its commercial availability (how widespread is the idea's use in the industry?)." (Id.)  This is because an idea cannot be deemed novel and

3

original "if the idea was already in use in the industry at the time of plaintiff's submission or if the defendant himself had already used that idea." *McGhan v. Ebersol*, 608 F. Supp. 277, 286 (S.D.N.Y. 1985).

### C.     **Legal Relationship**

Third, Design Innovation must prove that it disclosed its concept to Fisher-Price in the context of a legal relationship. *See McGhan,* 608 F. Supp. at 284. The law holds that "the legal relationship between the plaintiff and defendant may be either a fiduciary relationship, or based on an express contract, an implied-in-fact contract, or a quasi-contract." *Zikakis v. Staubach Retail Servs.*, 2005 U.S. Dist. LEXIS 21105 at *11 (S.D.N.Y. Sept. 26, 2005). "Under New York law, a confidential relationship is synonymous with [a] fiduciary relationship and … [exists] generally where the parties do not deal on equal terms and one trusts and relies on the other . . . Such a [confidential] relationship may arise either explicitly by contract, or implicitly by the actions of the parties or other circumstances." *Stewart v. World Wrestling Fed'n Entm't, Inc.*, 74 U.S.P.Q. 2d 1024, *13-14 (S.D.N.Y. Jan. 11, 2005) (internal quotations and citations omitted). The law also holds that "the standard custom and practice in the toy industry calls for companies to treat the submission of an idea as confidential." *Nadel*, 208 F.3d at 371. Thus, it is for you to determine from the evidence of the course of dealing of Fisher-Price and Design Innovation, including the evidence of the Option Agreement, whether such a legal or confidential relationship existed in relation to the concept submitted to Fisher-Price.

4

**D.     Use**

Finally, Design Innovation must prove that Fisher-Price used its concept. *AEB & Associates Design Group v. Tonka Corp.*, 853 F. Supp. 724, 734 (S.D.N.Y. 1994). You may find that Fisher-Price made use of Design Innovation's concept based on two elements: (1) a showing of a substantial similarity between Design Innovation's concept and each accused Fisher-Price product; and, (2) Fisher-Price's access to Design Innovation's concept. *See Ball v. Hershey Foods Corp.*, 842 F. Supp. 44, 48 (D. Conn. 1993), *aff'd* 14 F.3d 591 (2d Cir. 1993); *Merritt Forbes & Co. v. Newman Inv. Secur, Inc.*, 604 F. Supp. 943 (S.D.N.Y. 1985); *Ed Graham Prods., Inc. v. Nat'l Broad. Co.*, 347 N.Y.S.2d 766, 768 (N.Y. Sup. Ct. 1973).[1]

> To determine the first element,
>
> Similarities between the submission and the ultimate product may justify the factual inference that one was copied from the other....If the concept submitted is unique, or if there are many points of likeness, the inference is strengthened. On the other hand, a lack of novelty or the existence of many dissimilar features will support a denial that the idea was used by the recipient.

*Ball*, 842 F. Supp. at 48 (quoting *In re Elsinore Shore Associates*, 102 B.R. 958, 971 (D.N.J. 1989) (ellipses in original); *Duffy v. Charles Schwab & Co., Inc.*, 2001 U.S. Dist. Lexis 14070 at *13 (D.N.J. Sept. 4, 2001).

---

[1] New York courts have held in misappropriation of idea cases that a plaintiff must prove that the defendant "used" his or her concept, and that a defendant may raise as part of its affirmative defense of independent development that it lacked "access" to the concept. (*See* Pl. Sum. Judg. Mem. Law at 21-22). However, no court applying New York law in a misappropriation of an idea case has ever explained how to evaluate whether or not the defendant "used" the concept, nor has there ever been a precise definition of what constitutes "access." Accordingly, the Court must look to other sources for guidance. As set forth herein, (1) Plaintiff refers to the law of both Connecticut and New Jersey on the issue of how to determine "use"; and (2) Plaintiff refers to the Second Circuit's generally-accepted definition of "access" in the copyright context. At least one court has applied the copyright standard to determine "access" in a submission of idea case. *See Wrench LLC v. Taco Bell Corp.*, 51 F. Supp.2d 840, 855-57 (W.D. Mich. 1999), *rev'd on other grounds*, 256 F.3d 446, 459-60 (6th Cir. 2001).

"Access may be established directly or inferred from the fact . . . that a party had a reasonable possibility of viewing the prior work." *Boisson v. Banian, Ltd.*, 273 F.3d 262, 270 (2d Cir. 2001) (quoting 4 NIMMER ON COPYRIGHT § 13.02[A] (2001)); *see also Gaste v. Kaiserman*, 863 F.2d 1061, 1066 (2d Cir. 1988).

In this case Design Innovation claims that Fisher-Price used its concept in connection with several different Rescue Heroes products. You must make a separate determination as to whether Fisher-Price made use of Design Innovation's concept for each of the accused Fisher-Price products:

1. Voice Tech Video Mission Action Figures
2. Voice Tech Mission Command Action Figures
3. Mission Select Action Figures
4. "Telly Photo" Optic Force Action Figure

You must also make a separate determination as to whether Fisher-Price made use of Design Innovation's concept with respect to each of the line extensions and accessories that were sold in connection with the four different Fisher-Price action figure lines.

### E.    Conclusion

In sum, if you find by a preponderance of the evidence that: (1) Design Innovation's concept was concrete at the time Design Innovation submitted it to Fisher-Price; (2) Design Innovation's concept was novel at the time Design Innovation submitted it to Fisher-Price; (3) Design Innovation disclosed its concept to Fisher-Price in the context of a legal relationship; and (4) Fisher-Price made use of Design Innovation's concept for any of the accused Fisher-Price products, then you must find for Design

Innovation on this count and consider whether Design Innovation is entitled to damages as a result of Fisher-Price's misappropriation of its concept.

## II.     Design Innovation's Unfair Competition Claim

Design Innovation also claims that Fisher-Price's actions constitute unfair competition. "New York common law of unfair competition is a tort involving the misappropriation for commercial advantage of a benefit or property right belonging to another." *Coors Brewing Co. v. Anheuser-Busch Co.*, 802 F. Supp. 965, 974 (S.D.N.Y. 1992). "The New York law of unfair competition . . . bans 'any form of commercial immorality.' A cause of action for unfair competition requires unfairness and an unjustifiable attempt to profit from another's expenditure of time, labor and talent . . ." *Id.* (ellipses in original) (*quoting Roy Export Co. v. Columbia Broadcasting System, Inc.* 503 F. Supp. 1137, 1151-52 (S.D.N.Y. 1980)); *Cargill, Inc. v. Sears Petroleum & Transp. Corp.*, 388 F. Supp. 2d 37, 68 (N.D.N.Y. 2005) (*citing Louis Capital Mkts., L.P. v. REFCO Group Ltd.*, 9 Misc. 3d 283, 801 N.Y.S.2d 490, 2005 NY Slip Op 25239, 2005 WL 1473944, at *3-4 (Sup. Ct. N.Y. Cty. 2005)). "Central to" the notion of unfair competition is "some element of bad faith." *Michele Pommier Models, Inc. v. Men Women NY Model Mgmt, Inc.*, 1997 U.S. Dist. LEXIS 18294 at *11 (S.D.N.Y. Nov. 18, 1997).

If you find by a preponderance of the evidence that Fisher-Price misappropriated Design Innovation's concept for its own commercial advantage based on a finding of the elements as I explained them to you for purposes of the misappropriation count, and if you then find that Fisher-Price's actions were in bad faith, then you must find for Design

Innovation on this count and should consider whether Design Innovation is entitled to an award of damages based on Fisher-Price's conduct.

### III.     Damages

#### A.     Generally

If you find that Design Innovation has proven by a preponderance of the evidence that Fisher-Price is liable for either misappropriation or unfair competition, then you must determine the damages to which Design Innovation is entitled. However, you should not infer that the plaintiff is entitled to recover damages merely because I am instructing you on the elements of damages. MODERN FEDERAL JURY INSTRUCTIONS – CIVIL § 77.01 (2005).

#### B.     Compensatory Damages

The purpose of the law of damages is to award just and fair compensation for the loss, if any, which resulted from the defendant's violation of the plaintiff's rights. If you find that the defendant is liable on the claims, as I have explained them, then you must award the plaintiff sufficient damages to compensate him or her for any injury proximately caused by the defendant's conduct. (*Id.* § 77.03)

These are known as "compensatory damages." Compensatory damages seek to make the plaintiff whole--that is, to compensate him or her for the damage suffered. (*Id.*)

The damages that you award must be fair and reasonable, neither inadequate nor excessive. (*Id.*)

In awarding compensatory damages, if you decide to award them, you must be guided by dispassionate common sense. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand,

the law does not require a plaintiff to prove the amount of his or her losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit. (*Id.*)

In all instances, you are to use sound discretion in fixing an award of damages, drawing reasonable inferences where you deem appropriate from the facts and circumstances in evidence. (*Id.*)

### 1. Misappropriation Claim

For Design Innovation's misappropriation claim, compensatory damages are measured by the "the reasonable value" of Design Innovation's concept that Fisher-Price misappropriated. *Gilroy v. American Broadcasting Company, Inc.*, 365 N.Y.S.2d 193, 194 (N.Y. App. 1st Dept. Mar. 6, 1975); *Robbins v. Frank Cooper Associates, et al.*, 14 N.Y.2d 913, 915, 252 N.Y.S. 2d 318, 319 (N.Y. 1964); NEW YORK PATTERN JURY INSTRUCTIONS CIVIL 3:58 at 520-521. The law holds that you may award to Design Innovation the reasonable value of its concept based on two different measurements, either:

    1.    by the profits unfairly received by Fisher-Price (that is, a disgorgement of Fisher-Price's profits derived from sales of the accused Rescue Heroes products); or

    2.    by Design Innovation's lost profits (that is, the amount of revenue Design Innovation would have received but for Fisher-Price's misappropriation).

*See Gilroy*, 365 N.Y.S.2d at 194; *A.F.A. Tours, Inc. v. Whitchurch*, 937 F.2d 82, 87 (2d Cir. 1991); *Electro-Miniatures Corp. v. Wendon Co., Inc.*, 771 F.2d 23, 27 (2d Cir. 1985); *Topps Company, Inc. v. Cadbury Stani S.A.I.C.*, 380 F. Supp.2d 250, 268

(S.D.N.Y. 2005); *Softel, Inc. v. Dragon Medical and Scientific Communications, Inc.*, 118 F.3d 955, 969 (2d Cir. 1997).

If you find that Design Innovation is entitled to compensatory damages as a result of Fisher-Price's misappropriation of Design Innovation's concept, you should determine whether you believe fair damages are based on the profits Fisher-Price derived from the misappropriated concept, or the profits Design Innovation would have made but for the misappropriation. Then you should enter such amount in the space provided on the Special Verdict Form.

### 2.     Unfair Competition Claim

For Design Innovation's unfair competition claim, you may award as compensatory damages the amount of profits which Design Innovation "would have made but for [Fisher-Price's] wrong . . ." *Suburban Graphics Supply Corp. v. Nagle*, 5 A.D. 3d 663, 666, 774 N.Y.S.2d 160, 163-64 (N.Y. App. 2d Dept. 2004); *American Electronics, Inc. v. Neptune Meter Co.*, 33 A.D.2d 157, 305 N.Y.S.2d 931, 934 (N.Y. App. 1st Dept. 1969).

If you find that Design Innovation is entitled to compensatory damages as a result of Fisher-Price's acts of unfair competition, you should enter such amount in the space provided on the Special Verdict Form.

### C.     Punitive Damages

If you should find that Design Innovation is entitled to an award of compensatory damages, you have the discretion to award, in addition to compensatory damages, punitive damages. MODERN FEDERAL JURY INSTRUCTIONS – CIVIL § 77.05.

Under New York law, "punitive damages are permitted for tortious conduct in cases involving gross, wanton, or willful fraud or other morally culpable conduct." *Michele Pommier Models, Inc. v. Men Women NY Model Management, Inc.*, 1997 U.S. Dist. LEXIS 18294, *12 ( S.D.N.Y. November 18, 1997) (*quoting Cohen v. Davis*, 926 F. Supp. 399, 405 (S.D.N.Y. 1996)), or "where a wrong is aggravated by recklessness or willfulness…." *Roy Export Company Establishment of Vaduz, Lichtenstein, et. al. v. Columbia Broadcasting System, Inc.*, 672 F.2d 1095, 1106 (2d Cir. 1982).

Conduct is wanton and reckless when it is done in such a manner and under such circumstances as to show an utter disregard for the potential consequences of the conduct on the rights and safety of others. *See Action House, Inc. v. Stanley Koolik*, 54 F.3d 1009, 1011 (2d Cir. 1995).

"Punitive damages serve as a punishment to the defendant for a wrong in a particular case, and for the protection of the public against similar acts, to deter the defendant from a repetition of the wrongful act, and to serve as a warning to others." *Rose v. Brown & Williamson Tobacco Corp.*, 2005 N.Y. Misc. LEXIS 2392 at *19, 2005 N.Y. Slip Op 25459 (N.Y. Sup. Ct. Sept. 29, 2005) (internal quotations omitted) (quoting, *Le Mistral, Inc. v. Columbia Broadcasting System*, 61 A.D.2d 491, 494, 402 N.Y.S.2d 815 (N.Y. App. 1st Dep't 1978).

The law provides no fixed standards for the amount of punitive damages and "no precise mathematical formula has been adopted," but the law holds that "a ratio of 10:1" - representing an award of punitive damages of no more than 10 times the amount of compensatory damages - "is the outside ratio . . . ." *Rosenberg, Minc & Armstrong v. Mallilo & Grossman*, 798 N.Y.S.2d 322, 331, 2005 N.Y. Slip Op 25146 (N.Y. Sup. Ct.

11

2005); *Maskantz v. Hayes*, 798 N.Y.S.2d 345, 2005 N.Y. Slip Op 51130U (N.Y. Sup. Ct. 2004); *Tyco Int'l v. John Does*, 2003 U.S. Dist. LEXIS 25136 at *8 (S.D.N.Y. Aug. 29, 2003); *BMW of North America v. Gore*, 517 U.S. 559, 582 (1996).

"[T]o ensure that the award carries the proper punishment and deterrent effect," *Rose*, 2005 N.Y. Misc. LEXIS 2392 at *26 (citing *Rupert v. Sellers*, 48 A.D.2d 265, 269-70 (N.Y. App. 4th Dep't 1975), you may consider the wealth of Fisher-Price, also referred to as the company's "net worth," and other information such as the company's "net annual revenue, profits it may have derived from its tortious conduct, and any other relevant financial information." (*Id.*)

If you find that Design Innovation is entitled to an award of punitive damages because it has shown by a preponderance of the evidence that Fisher-Price committed acts of misappropriation or unfair competition in a gross, wanton, willful or reckless manner, you should enter such amount as you deem appropriate on the Special Verdict Form.

## IV.    **Fisher-Price's Affirmative Defenses**

### A.    **Agency**

Fisher-Price has raised the defense that Victor Reiling was acting as Design Innovation's agent at the time Design Innovation presented its concept to Fisher-Price. You must determine whether Victor Reiling was an "agent" of Design Innovation. In other words, you will determine whether Mr. Reiling had the authority to act on behalf of Design Innovation as determined by a reasonable view of Design Innovation's words or conduct.

12

You will need to determine whether Mr. Reiling had "authority" to act on Design Innovation's behalf. Authority may be "apparent, actual or implied." *Merrill Lynch Interfunding, Inc. v. Argenti*, 155 F.3d 113, 122 (2d Cir. 1998). "Whether an agent has the authority to enter into such a contract is determined from all the facts and circumstances of the case, in view of the object which the agent is appointed to accomplish." *AEB & Associates Design Group v. Tonka Corp.*, 853 F. Supp. 724, 732 (S.D.N.Y. 1994)(internal quotations omitted).

Apparent authority arises where the "words or conduct" of Design Innovation communicated to Fisher-Price "give rise to the appearance and belief that [Mr. Reiling] possesses authority to enter into a transaction." *Hallock v. State*, 64 N.Y.2d 224, 231 (1984). "[T]he existence of 'apparent authority' depends upon a factual showing that the third party relied upon the misrepresentation of the agent because of some misleading conduct on the part of the principal -- not the agent.'" *See id.* (*quoting Ford v. Unity Hosp.*, 32 NY2d 464, 473 (N.Y. 1973); see, also, Restatement, Agency 2d, § 27) Therefore, under no circumstances can Mr. Reiling "by his own acts imbue himself with apparent authority." *Id.* Finally, Fisher-Price's reliance on any purported 'apparent authority' must be reasonable. *See id.* (*citing Wen Kroy Realty Co. v Public Nat. Bank & Trust Co.*, 260 NY 84, 92-93 (N.Y. 1932); Restatement, Agency 2d, § 8; and Comment *c*; Conant, Objective Theory of Agency: Apparent Authority and the Estoppel of Apparent Ownership, 47 Neb L Rev 678, 681).

Actual authority "is the power of [Mr. Reiling] to do an act or to conduct a transaction on account of [Design Innovation] which, with respect to [Design Innovation], [Mr. Reiling] is privileged to do because of [Design Innovation's]

13

manifestations to [Mr. Reiling]. *Minskoff v. Am. Express Travel Related Servs. Co.*, 98 F.3d 703, 708 (2d Cir. 1996)(*quoting* Restatement (2d) of Agency § 7 cmt. a (1958)). Actual authority may be either express or implied. "Implied actual authority ... is dependent on verbal or other acts by [Design Innovation] which reasonably give an appearance of authority in a manner that is brought home to [Mr. Reiling]." *Allstate Ins. Co. v. Banco Do Estado Do Rio Grande*, 2004 U.S. Dist. LEXIS 11397 *17-18 (S.D.N.Y. June 24, 2004)(internal quotations omitted)(*quoting Greene v. Hellman*, 51 N.Y.2d 197, 204 (N.Y. 1980)). "Whether actual authority exists depends on the actual interaction between [Design Innovation] and [Mr. Reiling], not on any perception a third party may have of the relationship." *Id.* at *18 (internal quotations omitted).

Unless you find that Fisher-Price has proven by a preponderance of the evidence that Mr. Reiling had actual express, apparent, or implied authority to act on behalf of Design Innovation when Design Innovation submitted its concept to Fisher-Price, then you cannot find that Reiling was an agent of Design Innovation.

### B.     Independent Development

As I instructed you earlier, Design Innovation must prove as an essential element of its claim of misappropriation that Fisher-Price used its concept. *AEB & Associates Design Group v. Tonka Corp.*, 853 F. Supp. 724, 734 (S.D.N.Y. 1994).     Fisher-Price has raised the defense of independent development. "[A]ny inference of use, drawn, for example, from the facts of disclosure and similarity, very plainly may be rebutted by [Fisher-Price's] demonstration that it developed the claimed similar concept independently without reference to whatever material [Design Innovation] submitted."

14

*Vantage Point, Inc. v. Parker Bros., Inc.*, 529 F. Supp. 1204, 1211 (E.D.N.Y. 1981). The law holds that "even where a plaintiff's concept is novel and original, recovery will be denied where it is established that the party alleged to have misappropriated another's concept, arrived on its own initiative or by wholly independent means at a concept similar to that devised by the party seeking recovery for misappropriation." *AEB & Associates Design Group v. Tonka Corp.*, 853 F. Supp. 724, 734 (S.D.N.Y. 1994) (internal quotations omitted).

As a result, if you find that Fisher-Price has proven by a preponderance of the evidence that it developed each of the accused Rescue Heroes products independent of Design Innovation's concept, then you cannot find that Fisher-Price used Design Innovation's concept. You must make a separate determination as to Fisher-Price's independent development for each of the following accused Fisher-Price products:

1. Voice Tech Video Mission Action Figures
2. Voice Tech Mission Command Action Figures
3. Mission Select Action Figures
4. "Telly Photo" Optic Force Action Figure

Dated: Norwalk, Connecticut
December 27, 2005

Respectfully Submitted,

GRIMES & BATTERSBY, LLP

By: _____
Gregory J. Battersby (Bar No. 7386)
Edmund J. Ferdinand, III (Bar No. 21287)
Russell D. Dize (Bar No. 23064)
Susan Schlesinger (Bar No. 26625)
488 Main Avenue, Third Floor

Norwalk, Connecticut 06851-1008
(p) (203) 849-8300
(f) (203) 849-9300

SANDAK HENNESSEY & GRECO, LLP
Jay H. Sandak, Esq.
Peter M. Nolin, Esq.
707 Summer Street
Stamford, Connecticut 06901-1026
(p) (203) 425-4200
(f) (203) 325-8608

Attorneys for Plaintiff
Design Innovation, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on December 27, 2005, a copy of the foregoing Proposed Jury Instructions was filed via the Court's electronic filing system. By operation of the Court's electronic filing system, notice of this filing will be sent by e-mail to counsel of record, listed below, who may access this filing through the Court's system:

Jacqueline Bucar Esq.
Tyler Cooper & Alcorn, LLP
205 Church Street
New Haven, Connecticut 06510

Bradford S. Babbitt, Esq.
Michael J. Kolosky, Esq.
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, CT 06103-3597

Robert J. Lane, Jr., Esq.
Jodyann Galvin, Esq.
HODGSON RUSS LLP
One M&T Plaza, Suite 2000
Buffalo, New York 14203-2391

William Wallace, Esq.
Milbank, Tweed, Hadley & McCoy-DC
1825 Eye St., N.W.
Suite 900
Washington, DC 20006

_____
Edmund J. Ferdinand, III