## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| VICTOR G. REILING ASSOCIATES and DESIGN INNOVATION, INC., | : | |
| | : | |
| Plaintiffs | : | |
| | : | Civil No. 303CV222(JBA) |
| v. | : | |
| | : | |
| FISHER-PRICE, INC. | : | |
| | : | DECEMBER 27, 2005 |
| Defendant. | : | |
| | : | |

## DEFENDANT FISHER-PRICE, INC.'S PROPOSED
## PRELIMINARY AND FINAL SUBSTANTIVE JURY INSTRUCTIONS

Defendant Fisher-Price, Inc., in accordance with the instructions contained in the Court's Joint Trial Memorandum (revised as of December 2003), proposes the following preliminary jury instructions and final substantive instructions directed toward the issues in controversy:

**TABLE OF CONTENTS**

Page

DEFENDANT'S PROPOSED PRELIMINARY JURY INSTRUCTION NO. 1.0
    EXPLANATION OF THE CASE...................................................................................... 1

DEFENDANT'S PROPOSED FINAL JURY INSTRUCTION NO. 1.0
    MISAPPROPRIATION & UNFAIR COMPETITION — GENERALLY ........................ 2

DEFENDANT'S PROPOSED FINAL JURY INSTRUCTION NO. 1.1
    MISAPPROPRIATION & UNFAIR COMPETITION —
    CONCRETENESS ............................................................................................................. 4

DEFENDANT'S PROPOSED FINAL JURY INSTRUCTION NO. 1.2
    MISAPPROPRIATION & UNFAIR COMPETITION — ABSOLUTE
    NOVELTY .......................................................................................................................... 5

DEFENDANT'S PROPOSED FINAL JURY INSTRUCTION NO. 1.3
    MISAPPROPRIATION & UNFAIR COMPETITION —
    CONFIDENTIAL RELATIONSHIP................................................................................. 8

DEFENDANT'S PROPOSED FINAL JURY INSTRUCTION NO. 1.4
    MISAPPROPRIATION & UNFAIR COMPETITION — EFFECT OF
    CONFIDENTIALITY WAIVER ...................................................................................... 9

DEFENDANT'S PROPOSED FINAL JURY INSTRUCTION NO. 1.5
    MISAPPROPRIATION & UNFAIR COMPETITION — USE BY
    FISHER-PRICE ............................................................................................................... 10

DEFENDANT'S PROPOSED FINAL JURY INSTRUCTION NO. 1.6
    MISAPPROPRIATION & UNFAIR COMPETITION — USE BY FISHER-
    PRICE — PAYING ANOTHER INVENTOR ................................................................. 12

DEFENDANT'S PROPOSED FINAL JURY INSTRUCTION NO. 1.7
    MISAPPROPRIATION & UNFAIR COMPETITION — BURDEN OF
    PROOF .............................................................................................................................. 13

DEFENDANT'S PROPOSED FINAL JURY INSTRUCTION NO. 2.0
    DISCLAIMER/AGENCY................................................................................................. 14

DEFENDANT'S PROPOSED FINAL JURY INSTRUCTION NO. 2.1
    DISCLAIMER/PARTNER ............................................................................................... 16

DEFENDANT'S PROPOSED FINAL JURY INSTRUCTION NO. 2.2
    DISCLAIMER/CO-OWNER OF REEL HEROES CONCEPT........................................ 17

i

DEFENDANT'S PROPOSED FINAL JURY INSTRUCTION NO. 3.0
    DAMAGES — GENERALLY .......................................................................................... 18

DEFENDANT'S PROPOSED FINAL JURY INSTRUCTION NO. 3.1
    DAMAGES — MISAPPROPRIATION/UNFAIR COMPETITION .............................. 19

DEFENDANT'S PROPOSED FINAL JURY INSTRUCTION NO. 3.2
    DAMAGES — EFFECT OF EXISTING LICENSE AGREEMENT .............................. 20

DEFENDANT'S PROPOSED FINAL JURY INSTRUCTION 3.3
    DAMAGES — NO DOUBLE COUNTING .................................................................... 21

DEFENDANT'S PROPOSED FINAL JURY INSTRUCTION NO. 3.4
    DAMAGES — LINE EXTENSIONS ............................................................................. 22

DEFENDANT'S PROPOSED FINAL JURY INSTRUCTION NO. 3.5
    DAMAGES — PUNITIVE DAMAGES .......................................................................... 23

DEFENDANT'S PROPOSED FINAL JURY INSTRUCTION NO. 3.6
    DAMAGES – BURDEN OF PROOF............................................................................... 26

# TABLE OF AUTHORITIES

## CASES

*AEB & Associates Design Group, Inc. v. Tonka Corp.,*
   853 F. Supp. 724  (S.D.N.Y. 1994) ............................................................... 2, 5, 10, 12, 14

*Allan Dampf P.C. v. Bloom,*
   512 N.Y.S.2d 116 (2d Dep't 1987) ..................................................................... 16

*Ashland Management, Inc. v. Janien,*
   624 N.E.2d 1007 (N.Y. 1993) ............................................................................. 17

*Ball v. Hershey Foods Corp.,*
   842 F. Supp. 44  (D. Conn.), *aff'd*, 14 F.3d 591 (2d Cir. 1993) ......................... 2, 4, 10, 11, 22

*BMW of North America, Inc. v. Gore,*
   517 U.S. 559 (1996) ........................................................................................ 22

*Brandwynne v. Combe Int'l, Ltd.,*
   74 F. Supp. 2d 364 (S.D.N.Y. 1999) .................................................................... 5

*Builders Hardware v. Dipietro,* 2001 Conn.Super. LEXIS 2760
   (Conn. Super. Ct. 2001) ..................................................................................... 16

*Cooper Indus., Inc. v. Leatherman Tool Group, Inc.,*
   532 U.S. 424 (2001) ........................................................................................ 22

*Doe v. Yale Univ.,* 252 Conn. 641 (2000) ................................................................ 16

*Downey v. General Foods Corp.,*
   31 N.Y.2d 56, 334 N.Y.S.2d 874  (1972) ............................................................... 2

*Duffy v. Charles Schwab & Co, Inc.,* 2001 U.S. Dist. LEXIS 14070
   (D.N.J. 2001) ..................................................................................................... 12

*E.R. Squibb & Sons, Inc. v. Lloyd's & Companies,*
   241 F.3d 154 (2d Cir. 2001) ............................................................................... 18

*Ed Graham Prods., Inc. v. National Broadcasting Co.,*
   347 N.Y.S.2d 766 (S. Ct. N.Y. Co. 1973) ........................................................ 5, 10, 11

*Ed Kaplan Assocs. v. Fisher-Price,* 1990 U.S. Dist. LEXIS 6347
   (S.D.N.Y. May 29, 1990) ..................................................................................... 5

*Educational Sales Programs, Inc. v. Dreyfus Corp.,*
   317 N.Y.S.2d 840 (S.Ct. N.Y. Co. 1970) .......................................................... 2, 4

*Ferber v. Sterndent Corp.,* 433 N.Y.S.2d 85 (N.Y. 1980) .......................................... 12

*Futter v. Paramount Pictures, Inc.,* 69 N.Y.S.2d 438 (S. Ct. N.Y. Co. 1947) ................. 6

*Gazzola Bldg. Corp. v. Shapiro,*
   580 N.Y.S.2d 477 (2d Dep't 1992) ..................................................................... 23

*Genentech, Inc. v. Novo Nordisk A/S,*
   108 F.3d 1361 (Fed. Cir. 1997) ............................................................................ 4

*Granoff v. Merrill Lynch & Co.,*
   775 F. Supp. 621 (S.D.N.Y. 1991) ..................................................................... 12

*Hammer v. Continental Ins. Cos.,*
  448 N.Y.S.2d 993 (N.Y.City Civ. Ct. 1982) ......................................................... 23

*Hine v. Mineta,*
  238 F.Supp.2d 497 (E.D.N.Y. 2003) .................................................................... 23

*Hogan v. DC Comics,*
  48 F. Supp. 2d 298 (S.D.N.Y. 1999) ............................................................... 6, 10

*House of Materials, Inc. v. Simplicity Pattern Co.,*
  298 F.2d 867 (2d Cir. 1962) ................................................................................ 21

*Icy Splash Food & Beverage, Inc. v. Henckel,*
  789 N.Y.S.2d 505 (2d Dep't 2005) ...................................................................... 12

*Kavanau v. Courtroom Television Network,*
  23 USPQ2d 1938 (S.D.N.Y. 1992) ..................................................................... 5, 6

*Kearns v. Ford Motor Co.,*
  203 USPQ 884 (E.D. Mich. 1978) ....................................................................... 14

*Khreativity Unlimited v. Mattel, Inc.,* 101 F. Supp. 2d 177 (S.D.N.Y.),
  *aff'd,* 242 F.3d 366 (2d Cir. 2000) ....................................................................... 5

*Koret, Inc. v. RJR Nabisco, Inc.,*
  702 F. Supp. 412 (S.D.N.Y. 1988) ........................................................................ 7

*Link Group, Inc. v. Toymax, Inc.,*
  2000 U.S. Dist. LEXIS 4567 (D. Conn. Mar. 17, 2000) .................................... 2, 4

*Locker v. American Tobacco Co.,*
  106 N.Y.S. 115 (2d Dep't 1907) .......................................................................... 21

*McGhan v. Ebersol,*
  608 F. Supp. 277 (S.D.N.Y. 1985) ................................................................... 6, 10

*Merrill Lynch Interfunding, Inc. v. Argenti,*
  155 F.2d 113 (2d Cir. 1998) ................................................................................ 13

*Munoz v. Puretz,*
  753 N.Y.S.2d 463 (1st Dep't 2003) ................................................................ 22, 23

*Murray v. National Broadcasting Co.,*
  844 F.2d 988 (2d Cir.), *cert. denied,* 488 U.S. 955 (1988) ................................... 5

*Nadel v. Play-By-Play Toys & Novelties, Inc.,*
  208 F.3d 368 (2d Cir. 2000) ..................................................................... 2, 6, 7, 10

*New York University v. Continental Ins. Co.,*
  639 N.Y.S.2d 283 (N.Y. 1995) ............................................................................ 20

*Nichols v. Universal Pictures Corp.,*
  45 F.2d 119 (2d Cir. 1930) .................................................................................... 4

*Oasis Music Inc.,* 614 N.Y.S.2d 878 (S. Ct. N.Y. Co. 1973) ................................... 5

*Paul v. Haley,*
  588 N.Y.S.2d 897 (2d Dep't 1992) ........................................................................ 6

*Penalty Kick Management Ltd. v. Coca Cola Co.,*
  318 F.3d 1284 (11th Cir. 2003) ........................................................................... 12

*Prozeralik v. Capital Cities Communications, Inc.,*
  605 N.Y.S.2d 218 (N.Y. 1993) ............................................................................ 21

*Ramada Franchise Sys., Inc. v. Boychuk,*
   283 F.Supp.2d 777 (N.D.N.Y. 2003) ................................................... 17

*Ring v. Estee Lauder Inc.,* 702 F. Supp. 76 (S.D.N.Y. 1988),
   *aff'd* 242 F.3d 366 (2d Cir. 2000) ..................................................... 6

*Rosenberg, Minc & Armstrong v. Mallilo & Grossman,*
   798 N.Y.S.2d 322 (Sup. Ct. New York Co. 2005) ..................... 21, 22, 23

*Selmon v. Hasbro Bradley, Inc.,*
   669 F. Supp. 1267 (S.D.N.Y. 1987) .................................................. 10

*Sparaco v. Lawler, Matusky, Skelly, Engineers LLP,*
   303 F.3d 460 (2d Cir. 2002) .............................................................. 4

*Suburban Graphics Supply Corp. v. Nagle,*
   774 N.Y.S.2d 160 (2d Dep't 2004) ................................................... 16

*Turner Construction Co. v. Seaboard Surety Co.,*
   469 N.Y.S.2d 725 (1st Dep't 1983) ................................................... 21

*Vitor Corp. of America v. Hall Chem. Co.,*
   292 F.2d 678 (6th Cir. 1961) ............................................................ 17

*Walker v. Sheldon,*
   223 N.Y.S.2d 488 (N.Y. 1961) .................................................... 20, 21

*Wanberg v. Ocean Spray Cranberries, Inc.,*
   194 USPQ 350 (N.D. Ill. 1977) ....................................................... 14

*Willingham v. Star Cutter,* 555 F.2d 1340 (6th Cir. 1977) ......................... 17

*WFB Telecommunications, Inc. v. Nynex Corp.,*
   590 N.Y.S.2d 460 (1st Dep't 1992) ................................................... 21

## OTHER AUTHORITIES

Conn. Gen. Stat. § 34-314(a) ................................................................. 16

NY Jur. Agency, 2d ed. (2005), §97 ........................................................ 14

Restatement Torts, §762 ....................................................................... 21

## DEFENDANT'S PROPOSED PRELIMINARY JURY INSTRUCTION NO. 1.0
## EXPLANATION OF THE CASE

The Plaintiff in this case is a company called Design Innovation, Inc., which is primarily in the business of providing design services to toy companies in return for a fee on an hourly basis. Much less frequently, it submits concepts for new toys to toy companies. The Defendant is Fisher-Price, Inc., which manufactures and sells toys and other children's products.

Design Innovation alleges that it developed a concept for toy action figures together with Mr. Victor Reiling. Design Innovation claims that Mr. Reiling submitted the concept to Fisher-Price and that Fisher-Price subsequently misappropriated the concept without paying for it. Fisher-Price denies that it misappropriated the concept and asserts other defenses.

Originally, Mr. Reiling also sued Fisher-Price. However, I have dismissed Mr. Reiling's case against Fisher-Price because Mr. Reiling signed a contract with Fisher-Price before making the submission in which he agreed that he would not pursue any claims against Fisher-Price relating to the submission unless he had a patent or copyright on the concept. Neither Mr. Reiling nor Design Innovation has a patent or copyright on the concept. I have not dismissed Design Innovation's claim, however, because Design Innovation did not sign an agreement similar to the one signed by Mr. Reiling.

You should not draw any inferences as a result of my decision one away or the other as to whether Design Innovation's claim, or Fisher-Price's defenses, are valid. Instead, you should listen to the evidence that both sides present and decide the merits of the case yourself based on that evidence and on the instructions on the law that I will give you at the end of the case.

## DEFENDANT'S PROPOSED FINAL JURY INSTRUCTION NO. 1.0

## MISAPPROPRIATION & UNFAIR COMPETITION — GENERALLY

Design Innovation contends that Fisher-Price misappropriated the "Reel Heroes" concept and unfairly competed with Design Innovation as a result of the misappropriation. In order to establish that Fisher-Price misappropriated an idea or concept that is legally protected, Design Innovation must prove four distinct things:

1.      First, Design Innovation must prove that the idea or concept is "concrete" enough to be protected under the law.[1]

2.      Second, Design Innovation must prove that the idea or concept is "novel in absolute terms."[2]

3.      Third, Design Innovation must prove that the idea or concept was disclosed to Fisher-Price on a confidential basis.[3]

4.      Fourth, Design Innovation must prove that Fisher-Price actually "used" the concrete idea or concept that Design Innovation claims was misappropriated.[4]

Design Innovation asserts that Fisher-Price misappropriated the concept and incorporated it into the following products: (1) the Voice Tech Mission Command Figures; (2)

---

[1] *Educational Sales Programs, Inc. v. Dreyfus Corp.*, 317 N.Y.S.2d 840, 845 (S.Ct. N.Y. Co. 1970); *Link Group, Inc. v. Toymax, Inc.*, 2000 U.S. Dist. LEXIS 4567, *30 (D. Conn. Mar. 17, 2000); *Ball v. Hershey Foods Corp.*, 842 F. Supp. 44, 47 (D. Conn.), *aff'd*, 14 F.3d 591 (2d Cir. 1993).

[2] *Nadel v. Play-By-Play Toys & Novelties, Inc.*, 208 F.3d 368, 373 (2d Cir. 2000); *Downey v. General Foods Corp.*, 31 N.Y.2d 56, 334 N.Y.S.2d 874, 877 (1972)

[3] *M.H. Segan Limited Partnership v. Hasbro, Inc.*, 924 F. Supp. 512, 526 (S.D.N.Y. 1996); *Ball v. Hershey Foods Corp.*, 842 F. Supp. 44, 47 (D. Conn.), *aff'd*, 14 F.3d 1 (2d Cir. 1993).

[4] *AEB & Associates Design Group, Inc. v. Tonka Corp.*, 853 F. Supp. 724, 734 (S.D.N.Y. 1994).

the Voice Tech Video Mission Figures; (3) the Mission Select Figures; and (4) the Optic Force

Figure known as Telly Photo. You must therefore analyze each product separately. For each

product, you may find Fisher-Price liable for misappropriation only if you find that Design

Innovation has proved all four facts listed above with respect to that product.

## DEFENDANT'S PROPOSED FINAL JURY INSTRUCTION NO. 1.1

## MISAPPROPRIATION & UNFAIR COMPETITION — CONCRETENESS

In order to prevail on its misappropriation claim, Design Innovation must establish that the idea or concept it claims was misappropriated by Fisher-Price was fixed and reduced to concrete form. If you find that the idea or concept was not fixed but rather was vague or changing over time, then it is not entitled to legal protection and therefore you may not find Fisher-Price liable for misappropriation.[5]

---

[5] *Educational Sales Programs, Inc. v. Dreyfus Corp.*, 317 N.Y.S.2d 840, 845 (S.Ct. N.Y. Co. 1970) ("Clearly [the idea] was quite malleable and not in such fixed and concrete form as to indicate a protectible idea. Ideas not reduced to concrete form are not protected."); *Link Group, Inc. v. Toymax, Inc.*, 2000 U.S. Dist. LEXIS 4567, *30 (D. Conn. Mar. 17, 2000) (idea must be "novel and concrete before it can be protected"); *Ball v. Hershey Foods Corp.*, 842 F. Supp. 44, 47 (D. Conn.), *aff'd*, 14 F.3d 591 (2d Cir. 1993) (to sustain claim for misappropriation, "idea must be novel and concrete"); *Sparaco v. Lawler, Matusky, Skelly, Engineers LLP*, 303 F.3d 460, 469 (2d Cir. 2002) (ideas can be too vague to qualify for protection as property under copyright statutes) (citing *Nichols v. Universal Pictures Corp.*, 45 F.2d 119, 120-121 (2d Cir. 1930) (discussing vagueness standard under both copyright and common law standards)); *see also Genentech, Inc. v. Novo Nordisk A/S*, 108 F.3d 1361, 1366 (Fed. Cir. 1997) ("Patent protection is granted in return for an enabling disclosure of an invention, not for vague intimations of general ideas that may or may not be workable.").

## DEFENDANT'S PROPOSED FINAL JURY INSTRUCTION NO. 1.2

## MISAPPROPRIATION & UNFAIR COMPETITION — ABSOLUTE NOVELTY

Ideas that are not novel, or new, are in the public domain and may be used freely by anyone without having to pay for them. In fact, copying of ideas in the public domain is not only permitted, it is encouraged.[6] For this reason, Design Innovation cannot maintain a claim for misappropriation if the idea or concept it claims was misappropriated was not new.

To establish novelty, Design Innovation must show that the idea was genuinely new and inventive, and not merely a clever adaptation of existing knowledge. Novelty cannot be found where the idea consists of nothing more than a variation on a basic theme even if it is a clever or useful variation of existing knowledge. The combination of pre-existing elements is not novel. In addition, an idea is not novel if it had already been used in the industry at the time of Mr. Reiling's first submission of the concept to Fisher-Price.[7]

---

[6] *Brandwynne v. Combe Int'l, Ltd.*, 74 F. Supp. 2d 364, 375 (S.D.N.Y. 1999) ("Ideas which are not novel are in the public domain and may freely be used by anyone with impunity. In fact, copying of ideas in the public domain is not only permitted, it is encouraged."); *M.H. Segan Limited Partnership v. Hasbro, Inc.*, 924 F. Supp. 512, 523 (S.D.N.Y. 1996) ("Ideas that are not novel 'are in the public domain and may be freely used by anyone with impunity,'" (*quoting Murray v. National Broadcasting Co.*, 844 F.2d 988, 993 (2d Cir.), *cert. denied*, 488 U.S. 955 (1988) and *Ed Graham Prods., Inc. v. National Broadcasting Co.*, 347 N.Y.S.2d 766, 769 (S. Ct. N.Y. Co. 1973)).

[7] *Brandwynne v. Combe Int'l, Ltd.,* 74 F. Supp. 2d 364, 376 (S.D.N.Y. 1999) (the "combination of pre-existing elements is not novel"). *See also Ed Kaplan Assocs. v. Fisher-Price,* 1990 U.S. Dist. LEXIS 6347, *8 (S.D.N.Y. May 29, 1990) ("[P]laintiff's design involved common and existing elements used by numerous toy manufacturers. I find that combining existing elements does not create a novel protectible idea"); *Khreativity Unlimited v. Mattel, Inc.,* 101 F. Supp. 2d 177, 185-86 (S.D.N.Y.), *aff'd*, 242 F.3d 366, 2000 U.S. App. LEXIS 33118 (2d Cir. 2000) ("[W]here . . . an idea consists in essence of nothing more than a variation on a basic theme . . . novelty cannot be found to exist"); *Oasis Music Inc.,* 614 N.Y.S.2d 878, 883 (S. Ct. N.Y. Co. 1973) ("These submissions demonstrate that at the time plaintiff submitted its proposal to the defendants, non-trivia based interactive games already existed and that the concept of sound effects was already introduced and operating in interactive games. . . . Therefore, the plaintiff's 'ideas' of non-trivia-based interactive games and sound effects lack novelty"); *Educational Sales Programs, Inc.,* 317 N.Y.S.2d 840, 844 ("the judicious use of existing means, or the mixture of

---

5

The factors you should consider in determining whether the concept was novel are as follows:

> (1)   whether the concept is specific or general (that is, if it is a generic concept it is less likely to be novel than if it is a specific application of a generic concept);

> (2)   how common is the concept (the more people who know of the concept, the less likely it is to be novel, although the concept may not be novel even if Fisher-Price was unaware of it);

> (3)   how unique is the concept (the less different the concept is from generally known ideas, the less likely it is to be novel);

> (4)   the commercial availability of the concept (if the idea was widely commercially available it is not novel).[8]

---

known ingredients in somewhat different proportions . . . partake more of the nature of elaboration and renovation than of innovation"); *Ring v. Estee Lauder Inc.*, 702 F. Supp. 76, 78 (S.D.N.Y. 1988), *aff'd* 242 F.3d 366, 2000 U.S. App. LEXIS 33118 (2d Cir. 2000) (granting summary judgment because plaintiff's idea, as a combination of known elements was non-novel as a matter of law); *Kavanau v. Courtroom Television Network,* 1992 U.S. Dist. LEXIS 11472, *17-18 (S.D.N.Y. July 31, 1992) (plaintiff's "assertion of novelty must also be rejected because the CJN Plan is a mere compilation of elements that were already in use in the television industry" and "ideas" that merely reflect the "[i]mprovement of [a] standard technique or quality, the judicious use of existing means, or the mixture of known ingredients in somewhat different proportions — all variations on a basic theme — partake more of the nature of elaboration and renovation that innovation" (*quoting Educational Sales Programs, Inc.*, 317 N.Y.S.2d at 844)); *Futter v. Paramount Pictures, Inc.*, 69 N.Y.S.2d 438, 440 (S. Ct. N.Y. Co. 1947) ("[M]erely combining these obvious elements cannot convert a general idea, which is not novel, into a unique concept");

[8] *Nadel v. Play-By-Play Toys & Novelties, Inc.*, 208 F.3d 368, 378 (2d Cir. 2000) (listing factors as follows: "The determination of whether an idea is original or novel depends upon several factors, including, inter alia, the idea's specificity or generality (is it a generic concept or one of specific application?), its commonality (how many people know of this idea?), its uniqueness (how different is

You must bear in mind that the test for novelty is a stringent one: the idea must show genuine novelty or invention and not merely a clever or useful adaptation of existing knowledge.[9] A "novel" idea is one that has not been suggested to or known by the public at a prior time.[10]

In addition, in order to maintain a misappropriation claim, novelty must be "absolute." That is, if you find that the idea was known by anyone, even if Fisher-Price was not aware of the idea before Mr. Reiling's submission, then the idea was not novel in absolute terms and therefore Design Innovation's misappropriation claim cannot succeed.[11]

---

this idea from generally known ideas?), and its commercial availability (how widespread is the idea's use in the industry?).").

[9] *Hogan v. DC Comics*, 48 F. Supp. 2d 298, 314 (S.D.N.Y. 1999) ("The test for novelty is a stringent one: the idea must 'show genuine novelty and invention, and not merely a clever or useful adaptation of existing knowledge,'" (*quoting Paul v. Haley*, 588 N.Y.S.2d 897, 903 (2d Dep't 1992)).

[10] *Koret, Inc. v. RJR Nabisco, Inc.*, 702 F. Supp. 412, 414 (S.D.N.Y. 1988) ("A 'novel' idea is one that has not been suggested to or known by the public at a prior time.").

[11] *Nadel v. Play-By-Play Toys & Novelties, Inc.*, 208 F.3d 368, 373 (2d Cir. 2000) ("In contrast to contract-based claims, a misappropriation claim can only arise from the taking of an idea that is original or novel in absolute terms, because the law of property does not protect against the misappropriation or theft of that which is free and available to all.").

**DEFENDANT'S PROPOSED FINAL JURY INSTRUCTION NO. 1.3**

**MISAPPROPRIATION & UNFAIR COMPETITION —
CONFIDENTIAL RELATIONSHIP**

In order to maintain a claim for misappropriation, Design Innovation must also establish that the disclosure of the concept to Fisher-Price was made on a confidential basis at the time of Mr. Reiling's first submission of the concept.[12]  A confidential basis cannot exist if the parties have expressly agreed that it does not exist.  A confidential relationship can be expressly waived by a written agreement that states that no confidential relationship exists.  Therefore, if you find that Mr. Reiling and Fisher-Price agreed that no confidential relationship existed between them at the time the concept was first submitted to Fisher-Price, you cannot find that Design Innovation has proved this element of its misappropriation claim and therefore your verdict must be in favor of Fisher-Price on the misappropriation claim.[13]

---

[12] *M.H. Segan Limited Partnership v. Hasbro, Inc.*, 924 F. Supp. 512, 526 (S.D.N.Y. 1996).

[13] *M.H. Segan Limited Partnership v. Hasbro, Inc.*, 924 F. Supp. 512, 523 (S.D.N.Y. 1996) ("The Waiver negates the existence of a legal relationship  based on the presence of a fiduciary or confidential relationship.")

**DEFENDANT'S PROPOSED FINAL JURY INSTRUCTION NO. 1.4**

**MISAPPROPRIATION & UNFAIR COMPETITION —
EFFECT OF CONFIDENTIALITY WAIVER**

This Court has already ruled that Mr. Reiling signed an agreement with Fisher-Price before he submitted the concept to Fisher-Price and that he is bound by that agreement.[14] That agreement is called the "Policy and Agreement Form" and was signed by Mr. Reiling on December 15, 1994.

The Policy and Agreement Form provides that "The disclosure must be understood to be purely voluntary and no confidential relationship is to be established by such disclosure or implied from [Fisher-Price's] consideration of the submitted material, and the material is not to be considered submitted 'in confidence.' Confidential relationships have been held to create obligations which are beyond those that [Fisher-Price] is willing to assume." Therefore, you must take as an established fact that Mr. Reiling's submission of the concept to Fisher-Price was not made in the course of a confidential relationship.

---

[14] Ruling on Defendant's Motion for Summary Judgment [Doc. #93], dated Dec. 14, 2005, at pp. 15-20.

**DEFENDANT'S PROPOSED FINAL JURY INSTRUCTION NO. 1.5**

**MISAPPROPRIATION & UNFAIR COMPETITION — USE BY FISHER-PRICE**

Finally, in addition to proving the elements of concreteness, novelty and a confidential relationship, Design Innovation must also prove, separately for each of the products it has identified, that Fisher-Price actually used the "Reel Heroes" concept in the design of those products.[15]  In order to make this determination, you should focus on both the similarities and the differences of the particular aspects of the "Reel Heroes" concept as submitted to Fisher-Price, and the design of the toys actually sold by Fisher-Price.[16]

If you find that Fisher-Price developed its toys independently of the information it received from Mr. Reiling, or if Fisher-Price used ideas from other toy inventors beside Mr. Reiling, even if the accused toys contain ideas that are similar to the ideas that were submitted, you may not find Fisher-Price liable for misappropriation.[17]  If you find that Fisher-Price's accused toys contain differences in details and themes from the submitted ideas, this makes it

---

[15] *McGhan v. Ebersol*, 608 F.Supp. 277, 286 (S.D.N.Y. 1985) ("A plaintiff cannot recover for misappropriation of ideas unless the ideas are actually used by a defendant.").

[16] *Selmon v. Hasbro Bradley, Inc.*, 669 F. Supp. 1267, 1272 (S.D.N.Y. 1987) (considering "not only the visual resemblance but also the totality of the characters' attributes and traits in determining the extent to which the allegedly infringing character captures the total concept and feel" of the copyrighted work); *Hogan v. DC Comics*, 48 F. Supp. 2d 298, 311 (S.D.N.Y. 1999) (considering similarities and differences in total look and feel); *Ball v. Hershey Foods Corp.*, 842 F. Supp. 44, 47 (D. Conn.), *aff'd*, 14 F.3d 591 (2d Cir. 1993) (analyzing the similarities and differences in the "details of the two ideas" and the "themes of the two ideas" to determine use by defendant); *Ed Graham Prods., Inc. v. National Broadcasting Co.*, 347 N.Y.S.2d 766, 768 (S. Ct. N.Y. Co. 1973) (analyzing similarities and differences between plaintiff's concept and defendant's accused cartoon character).

[17] *AEB & Associates Design Group, Inc. v. Tonka Corp.*, 853 F. Supp. 724, 734 (S.D.N.Y. 1994) ("[R]ecovery will be denied where it is established that the party alleged to have misappropriated another's concept, arrived on its own initiative or by wholly independent means at a concept similar to that devised by the party seeking recovery for misappropriation."); *Nadel v. Play-By-Play Toys & Novelties, Inc.*, 208 F.3d 368, 377 (2d Cir. 2000) (court must determine "whether the idea the buyer was using was, in fact, the seller's").

less likely that Fisher-Price used the submitted ideas and more likely that Fisher-Price developed its toys independently.[18]

---

[18] *Ball v. Hershey Foods Corp.*, 842 F. Supp. 44, 47 (D. Conn.), *aff'd*, 14 F.3d 591 (2d Cir. 1993) (analyzing the similarities and differences in the "details of the two ideas" and the "themes of the two ideas" to determine use by defendant); *Ed Graham Prods., Inc. v. National Broadcasting Co.*, 347 N.Y.S.2d 766, 768 (S. Ct. N.Y. Co. 1973) (analyzing similarities and differences between plaintiff's concept and defendant's accused cartoon character).

**DEFENDANT'S PROPOSED FINAL JURY INSTRUCTION NO. 1.6**

**MISAPPROPRIATION & UNFAIR COMPETITION — USE BY
FISHER-PRICE — PAYING ANOTHER INVENTOR**

As I have just instructed you, Design Innovation must prove, separately for each of the

products it has identified, that Fisher-Price actually used the "Reel Heroes" concept in the design

of each product. If, with respect to any of the products that Design Innovation has identified,

you find that Fisher-Price chose to use the submission of another inventor that submitted the

same concept, and pay that inventor, rather than Design Innovation, you may not find Fisher-

Price liable for misappropriation with respect to that product. Even if you find that Design

Innovation submitted the concept first, and the other inventor submitted the same concept later, if

you find that Fisher-Price chose to use the submission of, and pay royalties to, the other inventor,

you may not find Fisher-Price liable for misappropriation with respect to that product.[19]

---

[19] *Ferber v. Sterndent Corp.*, 433 N.Y.S.2d 85, 86 (N.Y. 1980) (noting that, even if plaintiff had
submitted novel idea to defendant, subsequent issuance of patent disclosing same idea put idea into public
domain and extinguished plaintiff's claim); *Nadel v. Play-by-Play Toys & Novelties, Inc.*, 208 F.3d 368,
380 n.10 (2d Cir. 2000) (noting there is no claim for recovery "where there is an independent source for
the idea used by the defendant"); *AEB & Associates Design Group, Inc. v. Tonka Corp.*, 853 F. Supp.
724, 734 (S.D.N.Y. 1994) ("[R]ecovery will be denied where it is established that the party alleged to
have misappropriated another's concept, arrived on its own initiative or by wholly independent means at a
concept similar to that devised by the party seeking recovery for misappropriation"); *Duffy v. Charles
Schwab & Co, Inc.*, 2001 U.S. Dist. LEXIS 14070 (D.N.J. 2001) (noting that to prove use, "[a] mere
showing of similarities will not fulfill this requirement because defendant may have received or
developed the material from sources independent of the plaintiffs").

## DEFENDANT'S PROPOSED FINAL JURY INSTRUCTION NO. 1.7

## MISAPPROPRIATION & UNFAIR COMPETITION — BURDEN OF PROOF

In deciding whether or not Fisher-Price misappropriated any ideas or concepts, you must keep in mind that the burden of proving all four of the elements on which I have instructed you rests at all times on Design Innovation.[20]

---

[20] *Icy Splash Food & Beverage, Inc. v. Henckel*, 789 N.Y.S.2d 505, 507 (2d Dep't 2005) ("plaintiffs failed to meet their burden of proof regarding the alleged misappropriation"); *Penalty Kick Management Ltd. v. Coca Cola Co.*, 318 F.3d 1284, 1296 (11th Cir. 2003) ("the plaintiff, maintains the burden of proving misappropriation"); *see also Granoff v. Merrill Lynch & Co.*, 775 F. Supp. 621, 627 (S.D.N.Y. 1991) ("It is not sufficient for plaintiff to assert the novelty of his idea; he must present some basis in fact for that claim.").

13

## DEFENDANT'S PROPOSED FINAL JURY INSTRUCTION NO. 2.0
## DISCLAIMER/AGENCY

As I explained to you at the beginning of the case, I have already ruled that Mr. Reiling agreed in the Policy & Agreement Form that he would not pursue any claims against Fisher-Price relating to the submission of any concept unless he had a patent or copyright protecting the concept. That agreement is binding and effective against Mr. Reiling.

Although Design Innovation did not sign the Policy & Agreement Form, you must decide whether, because of the nature of the relationship between Design Innovation and Mr. Reiling, Design Innovation is bound by the Policy & Agreement Form signed by Mr. Reiling. Design Innovation is bound by the agreement signed by Mr. Reiling if, at the time that Mr. Reiling first submitted the concept to Fisher-Price, he was acting as Design Innovation's agent.

Mr. Reiling was an agent who could bind Design Innovation to the terms of the Policy & Agreement Form if he had actual, apparent or implied authority from Design Innovation to do so. Whether a person has actual or implied authority depends on the overall circumstances of the case.[21] Mr. Reiling had actual authority to act as Design Innovation's agent if there was some agreement or statement, either written or oral, in which Design Innovation authorized Mr. Reiling to act as its agent. Mr. Reiling had apparent or implied authority to act as Design Innovation's agent if Design Innovation, by is acts, voluntarily placed Mr. Reiling in such a

---

[21] *Merrill Lynch Interfunding, Inc. v. Argenti*, 155 F.2d 113, 122 (2d Cir. 1998) (describing as "standard principles of agency" that "an agent must have authority, whether apparent, actual or implied, to bind his principal."); *AEB & Associates. Design Group, Inc. v. Tonka Corp.*, 853 F. Supp. 724, 731-32 (S.D.N.Y. 1994) ("It is axiomatic that agents with proper authority can enter into contracts with third persons on behalf of their principals. Thus, a principal is bound to a third person by acts of another person when the principal has expressly given the latter authority to act on his behalf. Whether an agent has the authority to enter into such a contract is determined from all the facts and circumstances of the case, in view of the object which the agent is appointed to accomplish.") (internal citations omitted).

situation that Fisher-Price, acting with ordinary prudence, was justified in assuming that Mr. Reiling had the authority to act on behalf of Design Innovation when Mr. Reiling submitted the concept to Fisher-Price.[22]

It is possible for a person who submits an idea to another to agree on behalf of his or her co-inventor that the co-inventor will not pursue any claims against the person to whom the idea was submitted unless the co-inventor has a patent or copyright for the idea. If you find that Mr. Reiling acted as an agent for Design Innovation in connection with the submission of the concept to Fisher-Price under the terms of the Policy & Agreement Form that Mr. Reiling had signed, then you must reject all of the claims asserted by Design Innovation in this case and your verdict must therefore be for Fisher-Price.[23]

---

[22] NY Jur. Agency, 2d ed. (2005), §97 ("While actual authority is the result of the principal's consent manifested to the agent, apparent authority is the result of consent manifested to a third party. The words or conduct of the principal, communicated to a third party, that lead to the belief that the agent possesses the authority to enter into a particular transaction is what creates "apparent authority." Apparent authority may arise even if the principal did not actually subjectively intend to create an agency relationship, as long as the third party's reliance on the principal's statement or conduct is reasonable. It may also arise without any contact between the principal and the third party, particularly where the principal has voluntarily placed the agent in such a situation that a person of ordinary prudence conversant with business usages and the nature of the particular business is justified in assuming that the agent has the authority to perform the particular act.").

[23] *M.H. Segan Limited Partnership v. Hasbro, Inc.*, 924 F. Supp. 512, 526 (S.D.N.Y. 1996) (enforcing waiver limiting plaintiff's claims to patent or copyright claims); *Wanberg v. Ocean Spray Cranberries, Inc.*, 194 USPQ 350, 352 (N.D. Ill. 1977) ("The plaintiff submitted his proposal to Ocean Spray together with a release which he drafted of his own volition. This release expressly states that plaintiff is relying solely upon whatever rights he may have under the patent and copyright statutes. Plaintiff is not entitled to pursue other common law claims having voluntarily surrendered that right. The release bars all claims alleged."); *Kearns v. Ford Motor Co.*, 203 USPQ 884, 889 (E.D. Mich. 1978) ("In absolute terms [plaintiff] . . . relinquished all rights and remedies against defendant with respect to his disclosures except those provided for by the patent and copyrights laws. The waivers are to be given effect, and their effect is to bar the claims presented in Counts Two and Three.").

## DEFENDANT'S PROPOSED FINAL JURY INSTRUCTION NO. 2.1

### DISCLAIMER/PARTNER

Design Innovation would also be bound by the Policy & Agreement signed by Mr. Reiling if, at the time that Mr. Reiling first submitted the concept to Fisher-Price, he was acting as Design Innovation's partner.

A partnership is "an association of two or more persons to carry on as co-owners a business for profit."[24] A partnership may exist for the sole purpose of a single project or venture.[25] If you find that Mr. Reiling acted as Design Innovation's partner in connection with the submission of the concept to Fisher-Price under the terms of the Policy & Agreement Form that Mr. Reiling had signed, then Design Innovation is bound by the agreement Mr. Reiling signed with Fisher-Price and therefore you must reject all of the claims asserted by Design Innovation in this case, and your verdict must therefore be for Fisher-Price.

---

[24] Conn. Gen. Stat. § 34-314(a).
[25] *Doe v. Yale Univ.*, 252 Conn. 641, 673 (2000). *See also Builders Hardware v. Dipietro*, 2001 Conn. Super. LEXIS 2760, *10 (Conn. Super. Ct. 2001).

16

## DEFENDANT'S PROPOSED FINAL JURY INSTRUCTION NO. 2.2

## DISCLAIMER/CO-OWNER OF REEL HEROES CONCEPT

Design Innovation would also be bound by the Policy & Agreement signed by Mr. Reiling if, at the time that Mr. Reiling first submitted the concept to Fisher-Price, he was acting as co-owner of the Reel Heroes concept, along with Design Innovation.

One co-owner of intellectual property has the right to bind the other co-owner by licensing or disclosing the intellectual property to another.[26] If you find that Mr. Reiling acted as co-owner of the Reel Heroes concept in connection with the submission of the concept to Fisher-Price under the terms of the Policy & Agreement Form that Mr. Reiling had signed, then Design Innovation is bound by the agreement Mr. Reiling signed with Fisher-Price and therefore you must reject all of the claims asserted by Design Innovation in this case, and your verdict must therefore be for Fisher-Price.

---

[26] *Willingham v. Star Cutter*, 555 F.2d 1340, 1344 (6th Cir. 1977).

## DEFENDANT'S PROPOSED FINAL JURY INSTRUCTION NO. 3.0

## DAMAGES — GENERALLY

Finally, I will instruct you as to damages.  The fact that I am instructing you as to damages does not indicate one way or the other as to whether you should find liability in favor of Design Innovation or as to whether you should award damages.  If you find that Fisher-Price is not liable for misappropriation and unfair competition on the basis of the instructions I have given you, you should not determine damages at all.  Conversely, if you find that Design Innovation has proven that Fisher-Price is liable for misappropriation and unfair competition, you must determine what damage, if any, Design Innovation has proven it has suffered.

## DEFENDANT'S PROPOSED FINAL JURY INSTRUCTION NO. 3.1
## DAMAGES — MISAPPROPRIATION/UNFAIR COMPETITION

The measure of damages for the misappropriation of a concept or idea is the profits that Design Innovation would have made but for the misappropriation. That is, you must measure damages for misappropriation by the amount of money that Design Innovation would have made had Fisher-Price not misappropriated the Reel Heroes concept. You may not award more or less than this amount.[27]

In this case, Design Innovation asserts that Fisher-Price misappropriated the Reel Heroes concept with respect to the following products: (1) the Voice Tech Mission Command Figures; (2) the Voice Tech Video Mission Figures; (3) the Mission Select Figures; and (4) the Optic Force Figure known as Telly Photo. You must determine whether and in what amount Design Innovation has proved damages separately for each of these products.

---

[27] *Suburban Graphics Supply Corp. v. Nagle*, 774 N.Y.S.2d 160, 163-64 (2d Dep't 2004) ("The measure of damages for "unfair competition and the misappropriation and exploitation of confidential information is the loss of profits sustained by reason of the improper conduct . . . ."); *Allan Dampf P.C. v. Bloom*, 512 N.Y.S.2d 116, 117 (2d Dep't 1987) ("The defendant had engaged in unfair competition with the plaintiff by his misappropriation and exploitation of confidential information in abuse of his relationship of trust with the plaintiff . . . . [W]e note that the proper measure of damages for unfair competition and the misappropriation and exploitation of confidential information is the loss of profits sustained by reason of the improper conduct.").

## DEFENDANT'S PROPOSED FINAL JURY INSTRUCTION NO. 3.2

## DAMAGES — EFFECT OF EXISTING LICENSE AGREEMENT

Where the parties have already agreed to a royalty for use of a concept or idea, that royalty is the best measure of the damages due to the misappropriation of the idea. Therefore, if you find that Fisher-Price and Design Innovation had previously agreed on the royalty that would apply for Fisher-Price's use of the Reel Heroes concept, that is the measure of damages you should apply for any alleged misappropriation you may find to have occurred.[28]

---

[28] *Ashland Management, Inc. v. Janien*, 624 N.E.2d 1007, 1009-11 (Ct. App. N.Y. 1993)  (basing damages for breach of contract and misappropriation on royalty established in the parties' previous contract); *Ramada Franchise Sys., Inc. v. Boychuk*, 283 F.Supp.2d 777, 790 (N.D.N.Y. 2003) (determining damages for, *inter alia*, breach of contract and unjust enrichment; stating "a more concrete calculation may be used where, as here, the parties had in place a license agreement providing for the payment of royalties, . . . .") (internal citations omitted); *Vitor Corp. of America v. Hall Chem. Co.*, 292 F.2d 678, 682-83 (6th Cir. 1961) (approving use of royalty established by parties in previous agreement to determine damages for breach of contract).

## DEFENDANT'S PROPOSED FINAL JURY INSTRUCTION NO. 3.3

## DAMAGES — NO DOUBLE COUNTING

Design Innovation may not recover double damages for the same injury. If you find that Design Innovation has proved its claim of misappropriation and unfair competition, you should make an award for all of the injuries that Design Innovation has proved were caused by conduct for which you have found Fisher-Price liable. However, you may not award multiple damages for the same injury.[29] Moreover, you may not award to Design Innovation any damages or losses that may have been suffered by Mr. Reiling. As I have stated, Mr. Reiling's claims have been dismissed and therefore he cannot be awarded damages, nor may you award damages to Design Innovation for any harm suffered by Mr. Reiling. Mr. Reiling and Design Innovation agree that Mr. Reiling was entitled to 50 percent of any proceeds attributable to the Reel Heroes concept. Accordingly, you must reduce any damages you find to be caused by Fisher-Price's alleged use of the Reel Heroes concept by 50 percent in calculating an award to Design Innovation.

---

[29] *E.R. Squibb & Sons, Inc. v. Lloyd's & Companies*, 241 F.3d 154, 173 n.11 (2d Cir. 2001) (Under New York law, "double counting" of damages "is disfavored").

21

## DEFENDANT'S PROPOSED FINAL JURY INSTRUCTION NO. 3.4

## DAMAGES — LINE EXTENSIONS

Design Innovation asserts that it is entitled to collect damages on sales of line extensions of the Rescue Heroes product including: (1) the Aquatic Rescue Command Center; (2) the Mountain Action Command Center; and (3) the Mission Select Vehicles (including the Mission Select Fire Truck and Mission Select Police Car), even though Design Innovation makes no claim that such line extensions embody or use the concept that was allegedly misappropriated by Fisher-Price. A plaintiff may recover royalties or damages on line extensions only if they embody or use the allegedly misappropriated concept.[30] I have already ruled that the Rescue Heroes vehicles and playsets do not embody or use the Reel Heroes concepts. As a result, you may not award damages on sales of these products.

---

[30] *Ball v. Hershey Foods Corp.*, 842 F. Supp. 44 (D. Conn.), *aff'd* 14 F.3d 591 (2d Cir. 1993).

## DEFENDANT'S PROPOSED FINAL JURY INSTRUCTION NO. 3.5

## DAMAGES — PUNITIVE DAMAGES[31]

Finally, only if you have found Fisher-Price liable for misappropriation and unfair competition may you consider the issue of punitive damages.

The standard for an award of punitive damages is very high. Punitive damages may only be awarded in those limited circumstances where it is necessary to deter defendants and others from engaging in conduct that may be characterized as gross and morally reprehensible and of such wanton dishonesty as to imply a criminal indifference to civil obligations. Therefore, you may award punitive damages only if you find that:

1.    Fisher-Price's conduct was so gross and morally culpable or caused by evil and reprehensible motives and demonstrates such wanton dishonesty as to imply a criminal indifference to its civil obligations that it is necessary to punish Fisher-Price for its conduct;

2.    Fisher-Price's conduct must have been directed at Design Innovation in particular; and

3.    Fisher-Price's conduct must be part of a pattern of conduct that is also directed at the public and harmful to the public.[32]

---

[31] Fisher-Price maintains its objection to giving any charge on punitive damages.

[32] *New York University v. Continental Ins. Co.*, 639 N.Y.S.2d 283, 287 (N.Y. 1995) ("Punitive damages are available only in those limited circumstances where it is necessary to deter defendant and others like it from engaging in conduct that may be characterized as 'gross' and 'morally reprehensible,' and of 'such wanton dishonesty as to imply a criminal indifference to civil obligations.' We set forth in the decision the pleading elements required to state a claim for punitive damages as an additional and exemplary remedy when the claim arises from a breach of contract. They are: (1) defendant's conduct must be actionable as an independent tort; (2) the tortious conduct must be of the egregious nature set forth in *Walker v. Sheldon*, 223 N.Y.S.2d 488, 490 (N.Y. 1961); (3) the egregious conduct must be directed to

In considering element 2 above, you should keep in mind that it is a general rule that a business is free to select the parties with whom it deals according to its own interest[33] and refusing to deal with someone is an inherent right that any person may lawfully exercise even if that person intends to harm another.[34]  I have already ruled that Fisher-Price's decision to stop sending projects to Design Innovation after this lawsuit was commenced was lawful and protected and not improper in any respect.

---

plaintiff; and (4) it must be part of a pattern directed at the public generally.") (internal citations omitted); *Walker v. Sheldon*, 223 N.Y.S.2d 488, 490 (Ct. App. NY 1961) ("Punitive or exemplary damages have been allowed in cases where the wrong complained of is morally culpable, or is actuated by evil and reprehensible motives, not only to punish the defendant but to deter him, as well as others who might otherwise be so prompted, from indulging in similar conduct in the future. . . . . "[T]here may be a recovery of exemplary damages in fraud and deceit actions where the fraud, aimed at the public generally, is gross and involves high moral culpability.  And this court has in line with what appears to be the weight of authority sanctioned an award of such damages in a fraud and deceit case where the defendant's conduct evinced a high degree of moral turpitude and demonstrated such wanton dishonesty as to imply a criminal indifference to civil obligations.") (internal citations omitted); *Rosenberg, Minc & Armstrong v. Mallilo & Grossman*, 798 N.Y.S.2d 322, 330 (S. Ct. New York Co. 2005) ("'Punitive damages are awarded in tort actions '[w]here the defendant's wrongdoing has been intentional and deliberate, and has the character of outrage frequently associated with crime,'" (*quoting Prozeralik v. Capital Cities Communications, Inc.*, 605 N.Y.S.2d 218 (N.Y. 1993)).  Thus, the harmful conduct must be 'intentional, malicious, outrageous, or otherwise aggravated beyond mere negligence.'") (certain internal citations omitted).

[33] *House of Materials, Inc. v. Simplicity Pattern Co.*, 298 F.2d 867, 872 (2d Cir. 1962) ("each business enterprise must be free to select its business relations in its own interest").

[34] *Locker v. American Tobacco Co.*, 106 N.Y.S. 115, 121 (2d Dep't 1907) ("It is the well-settled law of this state that the refusal to maintain trade relations with any individual is an inherent right which every person may exercise lawfully, for reasons he deems sufficient or for no reasons whatever; and it is immaterial whether such refusal is based upon reason or is the result of mere caprice, prejudice, or malice.") (quoted by *Turner Construction Co. v. Seaboard Surety Co.*, 469 N.Y.S.2d 725, 727 (1st Dep't 1983) and *WFB Telecommunications, Inc. v. Nynex Corp.*, 590 N.Y.S.2d 460, 461-62 (1st Dep't 1992); *Turner Construction Co.*, 469 N.Y.S.2d at 727 ("The privilege to refuse to deal 'exists regardless of the actor's motive for refusing to enter business relations with another even though the sole motive is a desire to harm the other,'" *quoting* Restatement Torts, §762, cmt. c).

24

You may award punitive damages only if you find that Design Innovation has proven all three elements I have explained above by clear, unequivocal and convincing evidence.[35]  This means that if you believe that the question of whether Design Innovation has proven any of the three elements above is close, you may not award punitive damages.

Finally, if you decide that Design Innovation has met its burden to show it is entitled to punitive damages, you may not award punitive damages that are grossly excessive or out of proportion to the gravity of Fisher-Price's conduct.[36]

---

[35] *Rosenberg, Minc & Armstrong v. Mallilo & Grossman*, 798 N.Y.S.2d 322, 330 (S. Ct. New York Co. 2005) ("[A]n award of punitive damages must be supported by 'clear, unequivocal and convincing evidence,'" *quoting Munoz v. Puretz*, 753 N.Y.S.2d 463, 466 (1st Dep't 2003)).

[36] *Cooper Indus., Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 434 (2001); *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 585-86 (1996).

## DEFENDANT'S PROPOSED FINAL JURY INSTRUCTION NO. 3.6

## DAMAGES — BURDEN OF PROOF

The purpose of damages is to compensate the victims by putting them in the same position they would have been in had the wrongful acts not occurred. Any award you make should be fair and reasonable in light of the evidence presented at trial. You may not award damages based on sympathy, speculation, or guesswork, and as with other issues, Design Innovation bears the burden of proving its entitlement to damages by a preponderance of the credible evidence.[37] However, the standard for proof of punitive damages is, I have mentioned, much higher: clear, unequivocal and convincing evidence.[38]

---

[37] *Gazzola Bldg. Corp. v. Shapiro*, 580 N.Y.S.2d 477, 478 (2d Dep't 1992) ("[I]t was the plaintiff's burden to prove nonspeculative damages by a preponderance of the evidence . . . ."); *Hammer v. Continental Ins. Cos.*, 448 N.Y.S.2d 993, 995 (N.Y.City Civ. Ct. 1982) ("The court also finds that the plaintiff did not prove by a preponderance of the credible evidence that he had sustained any damages."); *Hine v. Mineta*, 238 F.Supp.2d 497, 502 (E.D.N.Y. 2003) ("[T]he Court finds that the plaintiff failed to prove, by a preponderance of the credible evidence, that [damages] should be awarded and her request for such [damages] is denied.").

[38] *Rosenberg, Minc & Armstrong v. Mallilo & Grossman*, 798 N.Y.S.2d 322, 330 (S. Ct. New York Co. 2005) ("[A]n award of punitive damages must be supported by 'clear, unequivocal and convincing evidence,'" *quoting Munoz v. Puretz*, 753 N.Y.S.2d 463, 466 (1st Dep't 2003)).

December 27, 2005                          Respectfully submitted


By _____
Jacqueline D. Bucar
**TYLER COOPER & ALCORN, LLP**
e-mail:  jbucar@tylercooper.com
Federal Bar No.:  ct01187
205 Church Street
P.O. Box 1936
New Haven, CT 06509-0906
Telephone:  (203) 784-8269

**HODGSON RUSS LLP**
e-mail:  rlane@hodgsonruss.com
Federal Bar No.:  ct24598
Jodyann Galvin
e-mail:  jgalvin@hodgsonruss.com
Federal Bar No.:  ct24599
One M&T Plaza, Suite 2000
Buffalo, NY 14203-2391
Telephone:  (716) 856-4000

**MILBANK, TWEED, HADLEY & MCCLOY LLP**
William E. Wallace, III
email:  wwallace@milbank.com
Federal Bar No. PHV0480
International Square Building
1825 Eye Street, N.W., Suite 1100
Washington, D.C. 20006
Telephone:  (202) 835-7500

**ROBINSON & COLE LLP**
Bradford S. Babbitt
e-mail:  bbabbitt@rc.com
Federal Bar No.:  ct13938
Michael J. Kolosky
email:  mkolosky@rc.com
Federal Bar No.:  ct22686
280 Trumbull Street
Hartford, CT 06103-3597
Telephone:  (860) 275-8200

*Attorneys for Fisher-Price, Inc.*

## CERTIFICATE OF SERVICE

This it to certify that a copy of the foregoing was mailed, first class, postage prepaid to all counsel as follows:


Gregory J. Battersby, Esquire
Edmund J. Ferdinand, III, Esquire
Russel D. Dize, Esquire
Jessica Lee Elliott, Esquire
GRIMES & BATTERSBY, LLP
488 Main Street, Third Floor
Norwalk, Connecticut  06851-1008
(.pdf)

Richard E. MacLean, Esquire
PAUL & BAYER
436 Danbury Road
Wilton, Connecticut  06897

Peter M. Nolin, Esquire
Jay H. Sandak, Esquire
SANDAK HENNESSEY & GRECO
707 Summer Street
Stanford, Connecticut  06901-1026
(.pdf)


on this 27th day of December, 2005.


Jacqueline D. Bucar (CT 01187)