VICTOR G. REILING ASSOCIATES and  
DESIGN INNOVATION, INC.,

                        Plaintiffs

        v.

FISHER-PRICE, INC.

                      Defendant.

Civil No. 303CV222(JBA)

December 29, 2005

## MEMORANDUM IN SUPPORT OF
## FISHER-PRICE, INC.'S MOTION TO STRIKE
## DESIGN INNOVATION INC.'S JURY DEMAND

Fisher-Price, Inc. ("Fisher-Price") submits this memorandum in support of its motion to strike the jury demand made by plaintiff Design Innovation, Inc. ("DI") in light of the fact that the claims that once arguably entitled DI to a jury trial have been dismissed and the relief that DI now seeks in this action is equitable in nature. *See* Fed. R. Civ. P. 39(a)(2).

## Argument

On December 14, 2005, this Court issued its Ruling on Fisher-Price's Motion for Summary Judgment (the "Ruling"), and dismissed from this action all of DI's claims except for misappropriation, unfair competition, and an accounting.[1] DI seeks the following relief for its only remaining claims: disgorgement of Fisher-Price's profits,[2] an accounting of Fisher-Price's profits,[3] a permanent injunction,[4] and delivery and destruction of the accused products.[5]

---

[1] *See* Summary Judgment Ruling [Docket No. 145]. As part of the Ruling, DI's claims for breach of implied contract and violation of the Connecticut Unfair Trade Practices Act ("CUTPA") were dismissed with prejudice. *See id.* at pp. 62-63.

[2] *See* Plaintiffs' Responses to Fisher-Price's Fourth Set of Interrogatories, dated March 30, 2005, at pp. 2-4, (attached to the declaration of Robert J. Lane, Jr., dated December 29, 2005, ("Lane Dec.") as Ex. A). DI

- 2 -

The proper inquiry for a court in determining whether the parties are entitled to a jury trial involves the consideration of two factors. First, the court must determine whether the claim is traditionally considered legal, as opposed to equitable.[6] Second, the court must consider the nature of the relief sought by the plaintiff,[7] and even where a plaintiff's claim may be traditionally considered legal, "*if the relief he seeks is equitable in nature, a jury trial is not warranted.*"[8] Because DI's remaining claims are equitable in nature, and because the relief DI seeks is also equitable, DI is no longer entitled to a jury trial.

## I.     DI'S REMAINING CLAIMS ARE NOT SUBJECT TO TRIAL BY JURY

Prior to the Ruling, DI had made claims that arguably entitled it to a trial by jury (breach of implied contract and violation of CUTPA). Now that those claims have been

---

also mentions the possibility of a "reasonable royalty" as the measure of its damages, but does so only in the alternative and not as the primary relief sought. *See id.* at p. 2.

[3]     *See* Second Amended Complaint at ¶¶ 59-61 and p. 15 ("Prayer for Relief"), Lane Dec. Ex. B. Although DI pleaded it as such, the accounting claim is not really a separate cause of action. It simply seeks equitable relief based on the other causes of action pleaded. *Id.* at ¶ 60.

[4]     *See id.* at p. 15.

[5]     *See id.* at pp. 15-16.

[6]     *See, e.g., Webb v. RLR Assocs.*, 2004 U.S. Dist. LEXIS 4489, at *5 (S.D.N.Y. Mar. 19, 2004). A copy of the *Webb* case is attached to this memorandum as Tab 1. *See also Swan Brewery Co. v. United States Trust Co. of N.Y.*, 1992 U.S. Dist. LEXIS 10090, at *12 (S.D.N.Y. July 10, 1992) ("[C]ourts look first to the nature of the issues involved . . . ."). A copy of the *Swan Brewery Co.* case is attached to this memorandum as Tab 2.

[7]     *See Webb*, 2004 U.S. Dist. LEXIS 4489, at *6. *See also Swan Brewery Co.*, 1992 U.S. Dist LEXIS 10090, at *12.

[8]     *See Webb*, 2004 U.S. Dist. LEXIS 4489, at *6 (emphasis added). *See also* 8 MOORE'S FED. PRAC. § 38.10[4][b], at 38-51 (recognizing that the United States Supreme Court "has repeatedly stressed that the second factor – i.e., characterizing the relief sought – is the more important of the two in its analysis"); *Swan Brewery Co.*, 1992 U.S. Dist LEXIS 10090, at *13 (recognizing that the Supreme Court has stated that the second factor is the most important).

- 3 -

dismissed, however, the only claims that remain (misappropriation, unfair competition, accounting for profits) do not entitle DI to a jury trial because they are equitable claims for which DI seeks equitable relief. Accordingly, the Court should grant Fisher-Price's motion to strike DI's jury demand.

**A.  DI's Remaining Claims
Are Equitable in Nature**

A review of DI's misappropriation, unfair competition, and accounting claims reveals that they are equitable in nature. In *Protexol Corp. v. Koppers Co.*,[9] the Southern District Court stated that:

> ***[Misappropriation of] trade secret and unfair competition claims
> are essentially equitable in nature.*** Injunctions are asked, and, in
> keeping with equity's object to grant complete relief, an
> accounting. Claims such as those here set forth are not triable by
> jury at common law and do not come within the purview of either
> the Seventh Amendment of the Constitution or Rule 38(a) [of the
> Federal Rules of Civil Procedure].[10]

Furthermore, one of the primary elements of a cause of action for misappropriation is the existence of a *confidential relationship* between the parties.[11] And, "[u]nder New York law, a confidential relationship is 'synonymous with fiduciary relationship . . . .'"[12] A claim for breach of fiduciary duty is an action in equity,[13] which strongly

---

[9]    1951 U.S. Dist. LEXIS 3494 (S.D.N.Y. Apr. 26, 1951). A copy of the *Protexol* case is attached to this memorandum as Tab 3.

[10]   *Protexol*, 1951 U.S. Dist. LEXIS 3494, at *1 (emphasis added).

[11]   *See M.H. Segan Ltd. P'ship v. Hasbro, Inc.*, 924 F. Supp. 512, 526 (S.D.N.Y. 1996).

[12]   *Stewart v. World Wrestling Fed'n Entm't, Inc.*, 2004 U.S. Dist. LEXIS 26533, at *13 (S.D.N.Y. Dec. 22, 2004) (quoting *Sachs v. Cluett, Peabody & Co.*, 39 N.Y.S.2d 853, 856, 265 A.D. 497, 500 (1st Dep't 1943), *aff'd*, 291 N.Y. 772 (1944)).

- 4 -

supports a finding that DI's misappropriation claim is an equitable one and thus not entitled to be

tried to a jury. Similarly, a claim for an accounting, which requires a fiduciary relationship

between the parties, is also equitable and not subject to a jury trial.[14]

**B.     Because DI Seeks Equitable Relief,**
**It Is Not Entitled To a Jury Trial**

Even if the Court finds that DI's misappropriation, unfair competition, and

accounting claims are legal in nature (which it should not), Fisher-Price's motion to strike DI's

jury demand should nevertheless be granted because *the nature of the relief* sought for the claims

is the more important of the two factors, and here the relief sought – disgorgement, injunctive

relief, collection and destruction of the accused products – is inherently equitable.

A court may make a determination regarding entitlement to a jury trial based on

the nature of the relief sought.[15] DI has provided sworn interrogatory answers specifying the

exact relief sought on each of its claims remaining for trial. Here, DI seeks disgorgement of

Fisher-Price's profits as its remedy for both the misappropriation[16] and common law unfair

---

[13]    *See, e.g., Webb,* 2004 U.S. Dist. LEXIS 4489, at *6-7. *See also Design Strategies, Inc. v. Davis,* 367 F. Supp. 2d 630, 637 (S.D.N.Y. 2005) ("Actions for breach of fiduciary duty, historically speaking, are almost uniformly actions 'in equity' – carrying with them no right to trial by jury.") (internal quotation marks and citations omitted).

[14]    *See, e.g., Chipman v. Steinberg,* 65 N.Y.2d 842, 493 N.Y.S.2d 129 (1985) (holding that, absent a fiduciary relationship, a plaintiff is not entitled to the equitable relief of an accounting); *Bradkin v. Leverton,* 26 N.Y.2d 192, 199, 309 N.Y.S.2d 192, 198 n.4 (1970) ("In view of the fact that there was no fiduciary relationship between the plaintiff and the defendant, the plaintiff has no right to [an] accounting . . . .").

[15]    *See* MOORE'S, *supra,* note 5. *See also Webb,* 2004 U.S. Dist. LEXIS 4489, at *6.

[16]    *See* Lane Dec., Ex. A, at p. 2. DI also mentions the possibility of a "reasonable royalty" as the measure of its damages, but does so only in the alternative and not as the primary relief sought. *See id.*

- 5 -

competition claims.[17]  In addition, DI seeks an accounting of Fisher-Price's profits,[18] as well as a

permanent injunction[19] and delivery and destruction of the accused products.[20]

As for DI's request for disgorgement of Fisher-Price's profits, "monetary

damages may be considered equitable when the damages sought are in the nature of restitution,

*as in actions for disgorgement of improper profits* or money wrongfully withheld."[21]  And

where "the monetary damage claimed is equitable in nature, [plaintiff is] not entitle[d] . . . to a

jury trial."[22]

In addition, an accounting for profits is considered to be an equitable remedy, not

subject to trial by jury.[23]  Courts have held similarly with respect to requests for injunctive

relief.[24]  And DI's request for the delivery and destruction of the accused products cannot be

---

[17]    *See id.* at pp. 3-4 (incorporating by reference its response to Interrogatory No. 2, in which DI states that it seeks disgorgement of Fisher-Price's profits).  DI's interrogatory answer specifying the damages sought on its unfair competition claim also mentions a request for compensatory damages, but that relates solely to its claim that Fisher-Price acted wrongfully in declining to send future projects to DI – a claim this Court dismissed.

[18]    *See* Lane Dec., Ex. B at ¶¶ 59-61.

[19]    *See id.* at p. 15.

[20]    *See id.* at pp. 15-16.

[21]    *Webb*, 2004 U.S. Dist. LEXIS 4489, at *8 (emphasis added).

[22]    *Webb*, 2004 U.S. Dist. LEXIS 4489, at *8.

[23]    *See, e.g., Design Strategies, Inc.*, 367 F. Supp. at 644.

[24]    *See, e.g., Design Strategies, Inc.*, 367 F. Supp. 2d at 643 (recognizing that an injunction is an inherently equitable remedy and, as such, is not subject to a jury trial).  In addition, note that "a monetary award incidental to or intertwined with injunctive relief may be equitable." *Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 571 (1990) (internal quotation marks and citations omitted).

- 6 -

anything but equitable.[25]  Finally, it should be noted that the fact that DI also seeks punitive

damages does not entitle it to a jury trial.[26]

## Conclusion

For the foregoing reasons, this Court should grant Fisher-Price's motion to strike

DI's jury demand.

---

[25]  The relief requested – delivery and destruction of the accused products – is analogous to the remedy available in actions for copyright infringement: "As part of a final judgment or decree, the court may order the destruction or other reasonable disposition of all [infringing articles] found to have been made or used in violation of the copyright owner's exclusive rights . . . ." 17 U.S.C. § 503(b) (2005). This is considered to be an equitable remedy. "[T]he turn-over order of the [infringer's] copy is an *equitable remedy* issued under the broad powers vested in a trial judge under 17 U.S.C. § 503(b) (court may order destruction or other reasonable disposition of infringing copies)." *Rogers v. Koons*, 960 F.2d 301, 313 (2d Cir. 1992) (emphasis added).

[26]  *See Webb*, 2004 U.S. Dist. LEXIS 4489, at *9 (noting that "the fact that [plaintiff] requested punitive damages . . . does not entitle [plaintiff] to a jury trial" where a jury trial was otherwise unwarranted).

- 7 -

Dated: December 29, 2005

**HODGSON RUSS LLP**

By     s/Robert J. Lane, Jr.
          Robert J. Lane, Jr.
e-mail:  rlane@hodgsonruss.com
Federal Bar No.:  ct24598
Jodyann Galvin
e-mail:  jgalvin@hodgsonruss.com
Federal Bar No.:  ct24599
One M&T Plaza, Suite 2000
Buffalo, NY 14203-2391
Telephone:  (716) 856-4000

**MILBANK, TWEED, HADLEY & MCCLOY LLP**
William E. Wallace, III
email:  wwallace@milbank.com
Federal Bar No. PHV0480
International Square Building
1825 Eye Street, N.W., Suite 1100
Washington, D.C. 20006
Telephone:  (202) 835-7500

**TYLER COOPER & ALCORN, LLP**
Jacqueline D. Bucar, Esq.
e-mail:  jbucar@tylercooper.com
Federal Bar No.:  ct01187
205 Church Street
P.O. Box 1936
New Haven, CT 06509-0906
Telephone:  (203) 784-8269

**ROBINSON & COLE LLP**
Bradford S. Babbitt
e-mail:  bbabbitt@rc.com
Federal Bar No.:  ct13938
Michael J. Kolosky
email:  mkolosky@rc.com
Federal Bar No.:  ct22686
280 Trumbull Street
Hartford, CT 06103-3597
Telephone:  (860) 275-8200

# EXHIBIT 1

LEXSEE 2004 U.S. DIST. LEXIS 4489

WILLIAM WEBB, Plaintiff -against- RLR ASSOCIATES, LTD. and ROBERT ROSEN, Defendants.

03 Civ. 4275 (HB)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

*2004 U.S. Dist. LEXIS 4489*

March 19, 2004, Decided
March 19, 2004, Filed

**SUBSEQUENT HISTORY:** Judgment entered by, Findings of fact/conclusions of law at *Webb v. Robert Lewis Rosen Assocs., 2004 U.S. Dist. LEXIS 12024 (S.D.N.Y., June 29, 2004)*

**PRIOR HISTORY:** *Webb v. Robert Lewis Rosen Assocs., 2003 U.S. Dist. LEXIS 23160 (S.D.N.Y., Dec. 22, 2003)*

**DISPOSITION:** [*1] Defendant's motion to strike plaintiff's jury demand granted.

**CORE TERMS:** faithless, jury trial, servant, breach of fiduciary duty, unjust enrichment, arbitration, equitable, advisory jury, discretionary, negotiate, disloyal, renewal, punitive damages, monetary damages, arbitrator, quotations, entitle, baseball, disloyalty, game, arbitration award, motion to strike, disgorgement, restitution, unfaithful, inducement, initiated, conferred, coordinating, compensated

**LexisNexis(R) Headnotes**

*Constitutional Law > Trial by Jury in Civil Actions*
[HN1] The Seventh Amendment determines whether the parties in a civil action are entitled to a jury trial.

*Constitutional Law > Trial by Jury in Civil Actions*
[HN2] See U.S. Const. amend. VII.

*Constitutional Law > Trial by Jury in Civil Actions*
[HN3] Pursuant to U.S. Const. amend. VII, a plaintiff is entitled to a jury if his claims involve rights and remedies of the sort traditionally enforced in an action at law,

rather than in an action in equity. However, if the relief he seeks is equitable in nature, a jury trial is not warranted.

*Civil Procedure > Jury Trials > Right to Jury Trial*
*Business & Corporate Entities > Agency > Duties & Liabilities > Care, Skill & Good Conduct*
*Constitutional Law > Trial by Jury in Civil Actions*
[HN4] Because a claim under the faithless servant doctrine is a claim in equity, a plaintiff is not entitled to a jury trial on that claim.

*Business & Corporate Entities > Agency > Duties & Liabilities > Care, Skill & Good Conduct*
[HN5] The faithless servant doctrine provides relief when an agent is disloyal or unfaithful to his principal, even if the principal suffers no provable damage. This doctrine ensures that the unfaithful agent is not compensated for his disloyal actions. The faithless servant doctrine is an alternative to a claim for breach of fiduciary duty, which compensates the principle for the faithless actions of his agent, even when the principal has suffered no injury.

*Civil Procedure > Jury Trials > Right to Jury Trial*
*Constitutional Law > Trial by Jury in Civil Actions*
*Business & Corporate Entities > Agency > Causes of Action & Remedies > Breach of Fiduciary Responsibility*
[HN6] Generally, even strict fiduciary duty claims are actions in equity--carrying with them no right to a trial by jury. However, some allegations of breach of fiduciary duty have been construed as legal when they constitute claims of breach of contract, fraud, fraudulent transfer, negligence, and gross negligence.

*Civil Procedure > Jury Trials > Right to Jury Trial*
*Business & Corporate Entities > Agency > Duties & Liabilities > Care, Skill & Good Conduct*
*Constitutional Law > Trial by Jury in Civil Actions*
[HN7] The fact that a plaintiff seeks monetary damages under the faithless servant doctrine does not alter his lack of entitlement to a jury.

*Civil Procedure > Jury Trials > Right to Jury Trial*
*Civil Procedure > Remedies > Damages*
*Constitutional Law > Trial by Jury in Civil Actions*
[HN8] While monetary damages are generally regarded as legal, an award of monetary relief is not necessarily legal relief. Instead, monetary damages may be considered equitable when the damages sought are in the nature of restitution, as in actions for disgorgement of improper profits or money wrongfully withheld. Where a plaintiff seeks the disgorgement of profits, the monetary damage claimed is equitable in nature, and therefore does not entitle the plaintiff to a jury trial.

*Civil Procedure > Jury Trials > Right to Jury Trial*
*Constitutional Law > Trial by Jury in Civil Actions*
*Business & Corporate Entities > Agency > Causes of Action & Remedies > Restitution*
[HN9] A plaintiff is not entitled to a jury trial based on his claim for unjust enrichment, stemming from an agent's alleged disloyalty, because the claim is grounded in equity.

*Business & Corporate Entities > Agency > Duties & Liabilities > Care, Skill & Good Conduct*
*Business & Corporate Entities > Agency > Causes of Action & Remedies > Restitution*
[HN10] An unjust enrichment claim brought against an agent is similar to a faithless servant claim; both allege that due to disloyalty, the benefit conferred was undeserved. These claims address the inequity of the benefit derived by the allegedly disloyal actor, rather than remedy the injury or damage suffered by the principal.

*Contracts Law > Remedies > Restitution*
*Contracts Law > Remedies > Equitable Relief*
[HN11] Unjust enrichment is an equitable doctrine that provides for recovery when (1) there is a benefit conferred upon the defendant by the plaintiff; (2) the defendant is aware of the benefit; and (3) the defendant accepts the benefit under such circumstances as to make it inequitable for him to retain the benefit without payment

of its value. Restitution is the traditional remedy employed for unjust enrichment claims.

*Civil Procedure > Jury Trials > Right to Jury Trial*
*Business & Corporate Entities > Agency > Causes of Action & Remedies > Punitive Damages*
*Constitutional Law > Trial by Jury in Civil Actions*
[HN12] The fact that a plaintiff seeks punitive damages from an agent does not change the nature of his unjust enrichment claim to a legal one. The mere assertion of punitive damages does not alter the genre of the proceeding. Where the underlying nature of the plaintiff's claims are in equity, the fact that he requests punitive damages does not entitle him to a jury trial.

*Civil Procedure > Jury Trials > Right to Jury Trial*
[HN13] A discretionary jury is only appropriate in actions when a jury demand might have been made of right. Fed. R. Civ. P. 39(b).

*Civil Procedure > Jury Trials > Right to Jury Trial*
*Civil Procedure > Trials > Judicial Discretion*
[HN14] A district court's power to empanel an advisory jury, pursuant to Fed. R. Civ. P. 39(c), is entirely discretionary.

**COUNSEL:** For Robert Lewis Rosen Associates, Ltd., Defendant: Rodney A. Brown, LEAD ATTORNEY, Brown & Fox, P.C., New York, NY.

For William Webb, Plaintiff: Neil Anthony Capobianco, LEAD ATTORNEY, Greenberg Traurig, LLP, Brian S. Cousin, LEAD ATTORNEY, Greenburg Traurig, LLP, New York, NY.

**JUDGES:** Harold Baer, Jr., U.S.D.J.

**OPINIONBY:** Harold Baer, Jr.

**OPINION:**

OPINION & ORDER

**Hon. HAROLD BAER, JR., District Judge n1:**

n1 Lisa Dudzinski, a spring 2004 intern in my Chambers and a second-year law student at New York Law School, provided substantial assistance in the research and drafting of this Opinion.

Defendant Robert Lewis Rosen Associates, Ltd. ("RLR") moves to strike plaintiff William Webb's ("Webb") jury demand, pursuant to Federal Rules of Civil Procedure *("Fed. R. Civ. P.")* 38(a) and 39(a). For [*2] the following reasons, defendant's motion to strike plaintiff's jury demand is granted.

## I. BACKGROUND

### A. Factual Background

As this court has already issued two Opinions relating to this case, one confirming the arbitration award (*Robert Lewis Rosen Assocs., Ltd. v. Webb*, 03 Civ. 6338, *2003 U.S. Dist. LEXIS 21317 (S.D.N.Y. Nov. 24, 2003)*), and the other granting summary judgment on several of Webb's claims in this action (*Webb v. Robert Lewis Rosen Assocs., Ltd.*, 03 Civ. 4275, *2003 U.S. Dist. LEXIS 23160 (S.D.N.Y. Dec. 23, 2003)*), familiarity with the facts is presumed. Therefore, only a brief summary is warranted.

In 1986, Webb, a director of televised sporting events, hired RLR, a sports management company, to negotiate contracts on his behalf. The contract between RLR and Webb stipulated that "RLR's services are not exclusive to you [Webb] and we [RLR] shall have the right to perform the same or similar services for others." The contract also required Webb to pay RLR ten percent of his earnings in this industry. The contract between RLR and Webb expired in 1986 and was not renewed until 1997. The 1997 renewal contract covered the [*3] period June 8, 1997 through October 12, 2001.

Before the renewal contract took effect, Webb maintains that he had a "loose working relationship under which RLR was compensated for services rendered on a contract-by-contract basis." Compl. P 15. During this time, in the summer of 1995, Webb spoke with John Filippelli ("Filippelli"), who later became the coordinating producer of FOX Baseball, about working as the director of FOX's major league "A" baseball games. Webb contacted Rosen in order to negotiate this FOX contract on his behalf. One month later, Webb learned through Filippelli that RLR had sought to promote another person instead of Webb. At one point, Rosen communicated to Webb that "he would be lucky to do the "B", "C", or "D" game." Compl. P 20. Despite Rosen's alleged disloyal comments and actions, Filippelli still hired Webb to direct FOX's "A" baseball games, and Webb still allowed RLR to negotiate the contract with FOX. Additionally, at the end of February 1997, Webb retained RLR to negotiate his renewal contract with MSG. However, Webb claims that he later discovered that RLR again attempted to promote another client over Webb by telling the coordinating producer of [*4] MSG Baseball that "another of RLR's clients was a better baseball director than Mr.

Webb." Compl. P 26. Webb now seeks recompense for RLR's alleged disloyalty.

### B. Procedural History

On or about April 18, 2001, RLR initiated an arbitration against Webb, pursuant to an arbitration clause in the 1986 agreement, which had been incorporated into the renewal contract. RLR initiated the arbitration to compel Webb to pay fees allegedly owed to RLR for contracts with FOX and MSG that became effective on March 1, 2001. During the pendency of the arbitration, Webb commenced an action in this Court, which this Court stayed pending the outcome of the arbitration and later dismissed without prejudice because of Webb's failure to timely notify the Court of the status of the arbitration. In a March 11, 2003 Interim Opinion and Award, the arbitrator denied Webb's claim for fraudulent inducement, and sustained RLR's claim for breach of the extension agreement. On August 21, 2003, RLR filed an action to confirm the arbitration award and on November 24, 2003, this Court confirmed the award. Following the issuance of the March 11 Award, Webb commenced the instant action. On December 23, 2003, relying [*5] on the arbitrator's findings that Webb suffered no injury, this Court dismissed Webb's claims for (1) fraud in the inducement, (2) breach of oral contract, (3) breach of fiduciary duty (other than under the faithless servant doctrine), and (4) violations of *Article 11 of the New York General Business Law* and *§ 1700.44(a) of the California Labor Code*, but allowed Webb's claims of (1) unjust enrichment and (2) breach of fiduciary duty under the faithless servant doctrine to go forward as neither of these claims required a showing of injury. RLR now moves to strike Webb's jury demand in lieu of the fact that the claims that once entitled Webb to a jury have been dismissed.

## II. DISCUSSION

### A. Motion to Strike Jury Demand

[HN1] The *Seventh Amendment*, which determines whether the parties are entitled to a jury trial, provides that [HN2] "in suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." [HN3] Consequently, a plaintiff is entitled to a jury if his claims "involve rights and remedies of the sort traditionally enforced in an action at law, rather than in an action in equity." *SEC v. Commonwealth Chem. Secs., Inc., 574 F.2d 90, 95 (2d Cir. 1978).* [*6] However, if the relief he seeks is equitable in nature, a jury trial is not warranted. *See Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry, 494 U.S. 558, 565, 108 L. Ed. 2d 519, 110 S. Ct. 1339 (1990).*

1. Breach of Fiduciary Duty (Faithless Servant Doctrine)

[HN4] Because Webb's claim under the faithless servant doctrine is a claim in equity, Webb is not entitled to a jury trial on this claim. [HN5] The faithless servant doctrine provides relief when an agent is disloyal or unfaithful to his principal, even if the principal suffers no provable damage. *Feiger v. Iral Jewelry, Ltd., 41 N.Y.2d 928, 929, 363 N.E.2d 350, 394 N.Y.S.2d 626 (1977).* This doctrine ensures that the unfaithful agent is not compensated for his disloyal actions. *See Phansalkar v. Andersen Weinroth & Co., L.P., 344 F.3d 184, 200 (2d Cir. 2003).* Notably, this court dismissed all of Webb's claims requiring a showing of injury expressly because, as a result of the arbitrator's findings, Webb was collaterally estopped from proving injury. The faithless servant doctrine is an alternative to a claim for breach of fiduciary duty, which compensates the principle for the faithless actions of his agent, even when the [*7] principal has suffered no injury. *See Phansalkar, 344 F.3d at 200.*

[HN6] Generally, even strict fiduciary duty claims are "actions in equity - carrying with them no right to a trial by jury." *Pereira v. Cogan, 2002 U.S. Dist. LEXIS 8513, 00 Civ. 619, at *7 (S.D.N.Y. May 10, 2002)* (internal quotations and citations omitted). However, some allegations of breach of fiduciary duty have been construed as legal when they constitute claims of breach of contract, fraud, fraudulent transfer, negligence, and gross negligence. *Id. 2002 U.S. Dist. LEXIS 8513, at *8* (internal quotations and citations omitted). In this case, the strict breach of fiduciary duty claim, which may have relied on one of the theories discussed in *Pereira*, has already been dismissed. *Webb, 2003 U.S. Dist. LEXIS 23160, at *31.* Only the equitable version remains.

[HN7] The fact that Webb seeks monetary damages under the faithless servant doctrine, does not alter his lack of entitlement to a jury. [HN8] While monetary damages are generally regarded as legal, "an award of monetary relief is not necessarily legal relief." *Swan Brewery Co. v. U.S. Trust Co., 143 F.R.D. 36, 41 (S.D.N.Y. 1992)* (internal [*8] quotations omitted). Instead, monetary damages may be considered equitable when "the damages sought are in the nature of restitution, as in actions for disgorgement of improper profits or money wrongfully withheld." *Id. at 41,* citing *Tull v. United States, 481 U.S. 412, 424, 95 L. Ed. 2d 365, 107 S. Ct. 1831 (1987).* Since Webb -- similar to the plaintiff in *Swan* - seeks the disgorgement of profits, the monetary damage claimed is equitable in nature, and therefore does not entitle Webb to a jury trial.

2. Unjust Enrichment

Similarly, [HN9] plaintiff is not entitled to a jury trail based on his claim for unjust enrichment, stemming from RLR's alleged disloyalty, because this claim as well is grounded in equity. n2

n2 The [HN10] "unjust enrichment claim is similar to the faithless servant claim ... both allege that due to disloyalty, the benefit conferred was undeserved ... these claims address the inequity of the benefit derived by the allegedly disloyal actor, rather than remedy the injury or damage suffered by Webb." *Webb, 2003 U.S. Dist. LEXIS 23160, at *28.*

[*9]

[HN11] Unjust enrichment is an equitable doctrine that provides for recovery when (1) there is a benefit conferred upon the defendant by the plaintiff; (2) the defendant is aware of the benefit; and (3) the defendant accepts the benefit under such circumstances as to make it inequitable for him to retain the benefit without payment of its value. *Van Gemert v. Boeing Co., 590 F.2d 433, 444 (2d Cir. 1987).* "Restitution is the traditional remedy employed for unjust enrichment claims." *Golden Pac. Bancorp v. FDIC, 95 Civ. 9281, 2002 U.S. Dist. LEXIS 24961, at *49 (S.D.N.Y. Dec. 24, 2002),* citing *Brown v. Sandimo Materials, 250 F.3d 120, 126 (2d Cir. 2001).* Therefore, Webb's claim for unjust enrichment does not entitle him to a jury trial. n3 *S.E.C., 574 F.2d at 95-96.* n4

n3 [HN12] The fact that Webb seeks punitive damages "does not change the nature of [his] claim to a legal one." *Hodges v. Virgin Atlantic Airways, Ltd., 714 F. Supp. 75, 77 (S.D.N.Y. 1988)* (striking plaintiff's jury demand based in part on the fact that the mere assertion of punitive damages does not "alter the genre of the proceeding."). *Id. at 78.* As discussed, the underlying nature of Webb's claims are in equity. Therefore, the fact that he requested punitive damages -- which are of questionable appropriateness here anyway -- does not entitle Webb to a jury trial.

[*10]

n4 Webb's reliance on *Ideal World Marketing, Inc. v. Duracell, Inc., 997 F. Supp. 334, 336 (E.D.N.Y. 1998)* for the proposition that a jury trial may be awarded for claims in equity is unfounded. *Ideal,* a case from a neighboring district, discusses a plaintiff's request for damages in the

context of a *Lanham Act* suit. The Court's discussion and conclusion are particular to the area of trademark law, and are therefore inapposite.

**B. Discretionary/Advisory Jury**

This Court also declines to appoint either a discretionary jury or an advisory jury. [HN13] A discretionary jury is only appropriate in actions, unlike this one, when "a [jury] demand might have been made of right." *Fed. R. Civ. P. 39(b)*. And, [HN14] while the Court's power to empanel an advisory jury, pursuant to *Fed. R. Civ. P. 39(c)*, "is entirely discretionary" (*NAACP v. Acusport Corp., 226 F. Supp. 2d 391, 398 (E.D.N.Y. 2002)*, citing *Glanzman v. Schaffer, 252 F.2d 333, 334 (2d Cir. 1958))*, because the [*11] legal issues involved are not of a complicated nature, "the interests of judicial econ-omy would not be served in this case by empanelling an advisory jury." *Pan Am Corp. v. Delta Air Lines (In re Pan Am Corp.), 93 Civ. 7125, 1994 U.S. Dist. LEXIS 5704*, at *11 (S.D.N.Y. May 2, 1994). Therefore, this case will proceed as a bench trial.

**III. CONCLUSION**

For the foregoing reasons, defendant's motion to strike plaintiff's jury demand is granted. The non-jury trial will commence on April 5, 2004.

**IT IS SO ORDERED.**

**March 19, 2004**

Harold Baer, Jr.

**U.S.D.J.**

# EXHIBIT  2

LEXSEE 1992 U.S. DIST. LEXIS 10090

**THE SWAN BREWERY COMPANY LIMITED, Plaintiff, - against - UNITED STATES TRUST COMPANY OF NEW YORK, Defendant.**

**90 Civ. 3521 (RWS)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*143 F.R.D. 36; 1992 U.S. Dist. LEXIS 10090*

**July 8, 1992, Decided**
**July 10, 1992, Filed**

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff, the beneficiary under an indenture entered into with defendant trustee, brought suit against the trustee, alleging claims for breach of contract and seeking injunctive and declaratory relief. The beneficiary sought to amend its complaint to add claims for breach of trust and fiduciary duty, breach of agreement to hold funds in trust and conversion, demand for a jury trial, and an award of punitive damages as to those claims.

**OVERVIEW:** Pursuant to an indenture between the parties, the beneficiary issued limited subordinated debentures. The trustee demanded reimbursement of fees and expenses it incurred under the indenture. The beneficiary paid the bill under protest and brought suit for breach of contract. The trustee sent more bills for payment of the litigation fees and expenses and the beneficiary contested its entitlement to these fees. After the trustee reserved the right to apply the beneficiary's overpayment of money due on the debentures to its claimed fees, the beneficiary sought to amend its complaint. The court permitted the request for punitive damages and denied the request for a jury trial. The court held that (1) under Fed. R. Civ. P. 38, the beneficiary had waived its right to a jury trial as to all issues relating to the general area of dispute; (2) an amended complaint revived the right to demand a jury trial only to new issues of fact; (3) the breach of trust claim was the only claim to raise new factual issues; (4) the claim was one for both legal and equitable relief, so the Seventh Amendment did not require a jury trial; and (5) the request for punitive damages did not prejudice the trustee.

**OUTCOME:** The court granted the trustee's motion to strike the beneficiary's demand for a jury trial and denied the trustee's motion to strike the beneficiary's punitive damages claim.

**LexisNexis(R) Headnotes**

*Civil Procedure > Jury Trials > Right to Jury Trial*
[HN1] Under Fed. R. Civ. P. 38, failure to make a jury demand within ten days after the close of the original pleadings constitutes a waiver of a party's right to a jury trial as to all issues relating to the general area of dispute. Fed. R. Civ. P. 38(b). Nevertheless, to the extent that an amended or supplemental complaint raises new issues of fact, the right to demand a jury trial is revived. An amended or supplemental complaint does not, however, revive the right to demand a jury trial either as to factual issues already framed in the original pleadings, or as to new legal theories based on facts previously pleaded. Therefore, new issues of fact, which raise the possibility of a jury trial, must be distinguished from new issues of law.

*Securities Law > Trust Indentures*
[HN2] To prove that a trustee converted funds received under an indenture, the company must establish (1) that it had legal ownership or immediate superior right of possession to the funds at issue and (2) that it made a demand for the return of the funds, lawfully possessed by the trustee, and that the trustee refused this request.

*Constitutional Law > Trial by Jury in Civil Actions*
[HN3] Under the Seventh Amendment, in suits at common law, where the value in controversy shall exceed $ 20, the right of a trial by jury shall be preserved. U.S. Const. amend. VII. The United States Supreme Court has

Case 3:03-cv-00222-JBA   Document 158   Filed 12/30/2005   Page 16 of 23

Page 2

143 F.R.D. 36, *; 1992 U.S. Dist. LEXIS 10090, **

consistently interpreted the phrase "suits at common law" to refer to suits in which legal rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered. To determine whether a particular action will resolve legal rights, courts look first to the nature of the issues involved by comparing the action to the 18th-century action brought in the courts of England prior to the merger of the courts of law and equity, and second to the nature of the remedy sought. The second inquiry is the more important.

*Contracts Law > Remedies > Equitable Relief*
*Civil Procedure > Remedies > Damages*
[HN4] An award of monetary relief is not necessarily "legal" relief. Actions for damages may be characterized as equitable in nature where (1) the damages sought are in the nature of restitution, as in actions for disgorgement of improper profits or money wrongfully withheld and (2) a monetary award is "'incidental to or intertwined with injunctive relief.

*Estate, Gift & Trust Law > Trusts > Trustee Duties & Powers*
[HN5] If a trustee is under a duty to pay money immediately and unconditionally to the beneficiary, the beneficiary can maintain an action at law against the trustee to enforce payment.

COUNSEL: [**1] ANDREWS & KURTH, Attorney for Plaintiff, 747 Third Avenue, New York, New York 10017, By: MAURA FECHER CARLIN, ESQ., Of Counsel.

CARTER, LEDYARD & MILBURN, Attorney for Defendant, Two Wall Street, New York, New York 10005, By: BETH D. JACOB, ESQ., WILLIAM H. SLOANE, ESQ., Of Counsel.

JUDGES: SWEET

OPINIONBY: ROBERT W. SWEET

OPINION:

[*37] OPINION

Sweet, D. J.

Plaintiff The Swan Brewery Company Limited ("Swan") brought this motion pursuant to *Rules 15 and 38, Fed. R. Civ. P.* for leave to amend and supplement its complaint filed on May 23, 1990 (the "Complaint") against defendant United States Trust Company of New

York ("U.S. Trust"). Based on events taking place after May 23, 1990, the proposed amended and supplemental complaint (the "Amended and Supplemental Complaint") seeks to add claims for breach of trust and fiduciary duty, breach of agreement to hold funds in trust and conversion. As to those added claims, the Amended and Supplemental Complaint demands a jury trial; it also seeks punitive damages as to claims for breach of trust and fiduciary duty and conversion.

The motion to amend and supplement the Complaint was filed on March 27, 1992. Oral argument was heard on April 15, 1992, at which time [**2] Swan's motion was granted to the extent of adding its the causes of action. The court reserved judgment as to the proposed jury trial demand and claim for punitive damages, thus effectively rendering the motion under consideration a motion to strike the jury demand and claim for punitive damages. The Amended and Supplemental Complaint was filed on April 16, 1992. The motion was considered fully submitted as of April 17, 1992. Based on the considerations set forth below, the motion to strike the jury demand is granted, and the motion to strike the demand for punitive damages is denied.

**Background**

The following states the relevant facts, as stated in the pleadings and the submissions of the parties, for purposes of this motion.

**The Complaint**

The action arose out of an indenture with Swan dated as of December 15, 1983 (the "Indenture") under which U.S. Trust was trustee. Pursuant to the Indenture, Swan issued $ 135,000,000 in principal amount of 14 7/8% Limited Subordinated Debentures due December 15, 1998 (the "Debentures").

Section 7.07 of the Indenture provides, in pertinent part, that:

[*38] The Company [Swan] shall reimburse the Trustee upon request for [**3] all reasonable disbursements, expenses and advances incurred or made by it. Such expenses may include the reasonable compensation, disbursements and expenses of the Trustee's agents and counsel.

However, § 7.07 further provides that "the Company need not reimburse the Trustee for any expense or indemnify it against any loss or liability incurred by it through its negligence or bad faith."

By letter dated February 16, 1990, U.S. Trust demanded reimbursement from Swan of $ 141,456.75 to which it claimed it was entitled for in fees and expenses

Case 3:03-cv-00222-JBA    Document 158    Filed 12/30/2005    Page 17 of 23

Page 3

143 F.R.D. 36, *; 1992 U.S. Dist. LEXIS 10090, **

incurred as trustee under the Indenture (the "February Bill"). By Notice of Default dated March 14, 1990, U.S. Trust advised Swan that if it did not pay this amount, U.S. Trust would declare an Event of Default under the Indenture, potentially accelerating the entire principal amount of indebtedness remaining on the Debentures. Swan paid the sum claimed in the February Bill under protest.

U.S. Trust sent another statement on April 19, 1990, claiming fees and expenses in the amount of $ 171,680.56 (the "April Bill"). On May 23, 1990, Swan filed the Complaint, alleging claims for breach of contract, money had and received in the amounts paid [**4] on the February Bill, and seeking an injunction against further collection efforts with respect to the April Bill, a declaratory judgment that U.S. Trust was not entitled to reimbursement of the amounts claimed in the April Bill and a declaratory judgment that U.S. Trust was not entitled under the Indenture to any of the fees and expenses it allegedly had incurred or would incur in defending the instant lawsuit. No timely demand for a jury trial was made, and punitive damages were not requested.

### Events Subsequent to May 23, 1990: the Amended and Supplemental Complaint

The Amended and Supplemental Complaint alleges that on May 23, U.S. Trust sent a Notice of Default relating to the April Bill, stating that it would accelerate the outstanding indebtedness on the Debentures. In response, Swan remitted $ 50,000, reserving the right to claim a refund. From May 23, 1990 to December of 1990, U.S. Trust sent eight additional bills for payment of purported fees and expenses related to this litigation, in the amount of $ 304,125.19. This figure did not include the amounts claimed in the February and April Bills. Swan contests U.S. Trust's entitlement to these fees, as well as [**5] those previously claimed.

On November 28, 1990, Swan wired $ 130,562,906 to U.S. Trust with instructions to satisfy and discharge all of the outstanding Debentures. This sum included an alleged $ 969,796.62 in excess of the amount necessary to pay the Debentures in full (the "Overpayment"). By letter of the same date (the "November 28 Letter"), Swan advised U.S. Trust that the sole purpose of the transfer and deposit was to fulfill Swan's obligation to discharge the Debentures and that Swan did not thereby authorize the deduction of any amounts owing to the trustee. The November 28 Letter further stated that:

subject to the payment of the Satisfaction Amount [calculated to be $ 129,683,109.38] as authorized above, the balance of the Payment Amount [the $ 130,652,906] is to be held in trust for Swan and invested in an interest-bearing account pending its return to Swan and is to be

promptly returned to Swan, with all interest and other income earned thereon, upon demand by Swan.

Swan Ex. C.

By letter dated November 30, 1990, U.S. Trust notified Swan that it was paying out the principal and interest due on the Debentures, had invested the balance and was reserving the right [**6] to apply the Overpayment to its claimed fees. See U.S. Trust Ex. A. U.S. Trust maintains that it never accepted the Overpayment in trust for Swan. By letter of December 28, 1990, U.S. Trust sent Swan an accounting of its fees and expenses that remained due in the amount of $ 425,805.75. See U.S. Trust Ex. A. By letter of August 15, 1991, Swan demanded the return of a portion of the Overpayment, stating that U.S. Trust could [*39] retain $ 460,000 (the amount Swan estimated to be the outstanding balance of U.S. Trust's purported fees and expenses billed to Swan) in trust. See Swan Ex. D. By letter dated September 27, 1991, U.S. Trust advised Swan that it would return all but $ 443,391.71, which it would retain to satisfy the balance of its claimed fees and expenses. See Swan Ex. E.

On September 30, 1991, Swan moved by order to show cause for a temporary restraining order and preliminary injunction to prevent U.S. Trust from applying any portion of the Overpayment to its purported fees and expenses. The temporary restraining order was denied on October 1, 1991, and Swan withdrew its application for a preliminary injunction.

Following a series of failed settlement [**7] negotiations, Swan moved to file the Amended and Supplemental Complaint on March 27, 1991.

### Discussion

#### 1. Demand for Jury Trial

##### A. Waiver of Right to Jury Trial[HN1]

Under *Federal Rule of Civil Procedure 38*, failure to make a jury demand within 10 days after the close of the original pleadings constitutes a waiver of a party's right to a jury trial as to all issues relating to the "general area of dispute." *Fed. R. Civ. P. 38(b)*, (d); *Anaconda-Ericsson v. American Dist. Tel. Co., 101 F.R.D. 13, 15 (E.D.N.Y. 1984)*. Nevertheless, to the extent that an amended or supplemental complaint raises new issues of fact, the right to demand a jury trial is revived. *Catapano v. Western Airlines, Inc., 105 F.R.D. 621, 623 (E.D.N.Y. 1985); Anaconda-Ericsson, 101 F.R.D. at 15.* An amended or supplemental complaint does not, however, revive the right to demand a jury trial either as to factual issues already framed in the original pleadings, *Lanza v. Drexel & Co., 479 F.2d 1277 (2d Cir. 1973);*

Case 3:03-cv-00222-JBA    Document 158    Filed 12/30/2005    Page 18 of 23

143 F.R.D. 36, *; 1992 U.S. Dist. LEXIS 10090, **

Page 4

*Bank of India v. Handloom House (India) Ltd.*, 629 F. Supp. 281, 281 (S.D.N.Y. 1986), [**8] or as to new legal theories based on facts previously pleaded. *Rosen v. Dick*, 639 F.2d 82, 94-96 (2d Cir. 1980). Therefore, new issues of fact, which raise the possibility of a jury trial, must be distinguished from new issues of law. *Id. at 94; Trixler Brokerage Co. v. Ralston Purina Co.*, 505 F.2d 1045, 1050 (9th Cir. 1974).

*Lanza v. Drexel & Co.*, 479 F.2d 1277 (2d Cir. 1973), illustrates the distinction. In that case, the original complaint, which contained no demand for a jury trial, alleged that the defendant had violated § 10(b) of the Securities and Exchange Act of 1934 and Rule 10b-5. The defendant's answer did not demand a jury trial. Subsequently, the plaintiffs twice amended the complaint, adding claims that a certain prospectus was false on the date of issuance and that the defendant's conduct violated § 17(a) of the Securities and Exchange Act of 1933. The defendant's timely requests for a jury trial following each of the amendments were denied. *Id. at 1310.*

The Second Circuit affirmed the denial of the jury trial requests, concluding that:

The amendments did not [**9] raise new issues within the meaning of Rule 38 such as would entitle Kircher to demand a jury trial as of right. The case involved, and the original complaint raised, one basic issue: Whether plaintiffs were fraudulently induced to exchange their Victor stock. Kircher's failure to demand a jury trial waived his right as to all issues relating to this general area of dispute. The amendment added no new issues: the same conduct and the same allegedly false documents constituted the basis for any claim under Rule 10b-5, Section 17(a), or common law fraud. . . . Kircher had been put on notice of the underlying facts and basic legal theory -- fraud -- upon which plaintiffs sought relief, and the character of the suit was in no way changed by the amendments.

Id. (emphasis added).

Conceding that it has waived its right to jury trial as to any claims based on the factual issues raised in the Complaint, Swan contends nevertheless that the three claims for which it has made a timely demand for a jury trial in the Amended and Supplemental Complaint -- breach of trust, breach of agreement to hold funds in trust and conversion -- raise new factual issues [*40] and thus revive its [**10] right to demand a jury trial as to these claims. Swan is correct only as to the claims based on breach of trust.

Articulation of the "general area of dispute" framed in the Complaint is not complicated: the factual issue central to each of the claims in that pleading is whether

U.S. Trust is entitled under the Indenture to its claimed fees and expenses. [HN2] To prove that U.S. Trust converted these funds, Swan must establish (1) that it had legal ownership or immediate superior right of possession to the funds at issue and (2) that it made a demand for the return of the funds, lawfully possessed by U.S. Trust, and that U.S. Trust refused this request. *Republic of Liberia v. Bickford*, 787 F. Supp. 397, 402 (S.D.N.Y. 1992) (citing *Kahn v. Crames*, 92 A.D.2d 634, 459 N.Y.S.2d 941, 943 (1983); *Heneghan v. Cap-a-Radiator Shops*, 132 Misc.2d 936, 506 N.Y.S.2d 132, 134 (1986)).

The "basic [factual] issue" thus posed by this claim is precisely whether U.S. Trust is entitled to the moneys retained by it out of the Overpayment. The mere fact that this claim relates to facts occurring subsequent to the Complaint does [**11] not alter this conclusion because the Complaint is "sufficiently broad to be fairly construed as including" issues relating to these new facts. See *Lanza*, 479 F.2d at 1310-11. Not only was a portion of the money retained attributable to the sums claimed in the April Bill, about which the original Complaint sought declaratory judgment, but the Complaint also encompassed future claims by U.S. Trust for fees and expenses because it sought a declaration that U.S. Trust is not entitled to "any purported fees or expenses which it may incur in defending the instant lawsuit." Complaint at 12, P (c) (emphasis added).

The claims for breach of trust and breach of trust agreement do raise factual issues not framed in the Complaint as to whether a trust existed, and, if so, as to whether U.S. Trust breached the terms of that trust when it retained a portion of the Overpayment in satisfaction of its claimed fees and expenses. Having thus determined that the Amended and Supplemental Complaint revives U.S. Trusts right to demand a jury trial to this extent, it must now be determined whether Swan is entitled to a jury on these claims.

**B. Right to Jury Trial on Claims [**12] for Breach of Trust and Breach of Agreement to Hold Funds in Trust[HN3]**

Under the Seventh Amendment, "in suits at common law, where the value in controversy shall exceed twenty dollars, the right of a trial by jury shall be preserved." U.S. Const. amend. VII. The Supreme Court has consistently interpreted the phrase "Suits at common law" to refer to "'suits in which legal rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered.'" *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41, 106 L. Ed. 2d 26, 109 S. Ct. 2782 (1989) (quoting *Parsons v. Bedford*, 3 Pet. 433, 447 (1830); emphasis in original). To determine whether a particular action will resolve legal rights, courts look

Case 3:03-cv-00222-JBA    Document 158    Filed 12/30/2005    Page 19 of 23

Page 5

143 F.R.D. 36, *; 1992 U.S. Dist. LEXIS 10090, **

first to the nature of the issues involved by comparing the action to the 18th-century action brought in the courts of England prior to the merger of the courts of law and equity, and second to the nature of the remedy sought. *Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry, 494 U.S. 558, 565 (1990)* (hereinafter "Local 391") (quoting *Granfinanciera, 492 U.S. at 41)*. [**13] According to the Supreme Court's most recent pronouncement on the issue, "the second inquiry is the more important." Id.

Consideration of the first factor militates against finding that legal rights are involved in these claims. Actions by a beneficiary against a trustee based on breach of fiduciary duty, such as actions for breach of trust, n1 were within the exclusive [*41] jurisdiction of the 18th-century courts of equity. See id. at 566; 3 Scott on Trusts § 197, at 1625-26 (3d ed. 1967) ("Trusts are, and have been since they were first enforced, within the peculiar province of courts of equity.").

n1 Because the alleged trust in this action is alleged to derive from an agreement, it is unclear what difference is to be found between Swan's claims for breach of trust and breach of trust agreement. Lacking elucidation from Swan as to any elemental differences, these claims shall be treated together for purposes of determining the nature of these claims and the remedies sought. Cf. also 3 Scott on Trusts § 197.2, at 1628-29 (trust beneficiary not able to maintain breach of contract action against trustee).

[**14]

The second factor is somewhat less straightforward. Swan seeks relief on these claims in the form of money damages, which are generally considered legal in nature. Local 391 at 570. n2 However, [HN4] an award of monetary relief is not necessarily "legal" relief. Id. Actions for damages may be characterized as equitable in nature where (1) the damages sought are in the nature of restitution, as in actions for disgorgement of improper profits or money wrongfully withheld and (2) a monetary award is "incidental to or intertwined with injunctive relief.'" Id. at 571 (quoting *Tull v. United States, 481 U.S. 412, 424, 95 L. Ed. 2d 365, 107 S. Ct. 1831 (1987)).*

n2 Although damages for a trustee's breach of trust were, in the 18th century, available only in the courts of equity, this fact is not dispositive in characterizing the nature of the remedy sought. *Local 391, 494 U.S. at 571 n.8.*

While Swan makes much of the fact that the damages sought here lack the second attribute of equitable relief articulated [**15] in Local 391, it ignores the fact that they are in the nature of restitution. Specifically, Swan seeks the return of the retained portion of the Overpayment, allegedly wrongfully held by U.S. Trust.

Swan makes the further argument, based on *§§ 198(1) of the Restatement (Second) of Trusts*, that these claims are legal in nature because the only question to be determined is whether U.S. Trust failed to perform a ministerial act expressly mandated by the purported trust agreement. Section 198(1) provides that:

[HN5]
if the trustee is under a duty to pay money immediately and unconditionally to the beneficiary, the beneficiary can maintain an action at law against the trustee to enforce payment.

A court within this district has given § 198(1) the following interpretation:

It seems to us that the word "unconditionally" in the above quoted text was intended to mean without the intervention of equity. . . . Each of the illustrations [following the text of § 198] presents a situation in which there is no possible need for the intervention of equity, the only question being whether the trustee failed to perform a ministerial act expressly mandated by the trust instrument. The court's [**16] function in such a case is no different from that performed in the interpretation of a contract, or any other document.

*Nobile v. Pension Comm. of Pension Plan for Employees of New Rochelle Hospital, 611 F. Supp. 725, 729 (S.D.N.Y. 1985);* see also 3 Scott on Trusts § 198, at 1631. The Nobile court held, nevertheless, that the facts of the case before it did not satisfy these conditions because it presented the "traditionally equitable question" of whether the trustee had breached its fiduciary duty. Pending resolution of that equitable question, the trustee was under no duty to pay. *Nobile, 611 F. Supp. at 729.*

As in Nobile, there is a need for the "intervention of equity" here. Although the November 28 Letter does direct what would seem to be the type of "ministerial act" contemplated by § 198(1), the existence of the trust as to these funds is disputed by U.S. Trust. Thus, the sole question is not whether U.S. Trust "failed to perform a ministerial act expressly mandated by the trust instrument." Rather, equity must intervene to determine whether in fact a trust existed and, if so, what the terms of that trust were. [**17] The motion to strike Swan's demand for a jury trial as to these claims is therefore granted.

**2. Request for Punitive Damages**

Case 3:03-cv-00222-JBA    Document 158    Filed 12/30/2005    Page 20 of 23

143 F.R.D. 36, *; 1992 U.S. Dist. LEXIS 10090, **

Page 6

Because I find that Swan's request for punitive damages will not prejudice U.S. [*42] Trust, the motion to strike the request is denied.

**Conclusion**

For the foregoing reasons, the motion to strike the jury trial demand is granted. The motion to strike the punitive damages claim is denied.

It is so ordered.

New York N. Y.
July 8, 1992

**ROBERT W. SWEET**
**U.S.D.J.**

# EXHIBIT 3

LEXSEE 1951 US DIST LEXIS 3494

PROTEXOL CORP. v. KOPPERS CO., Inc.

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

*12 F.R.D. 7; 1951 U.S. Dist. LEXIS 3494; 89 U.S.P.Q. (BNA) 530; 1951 Trade Cas. (CCH) P62,828*

April 26, 1951

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff moved for a jury trial in an action for patent infringement and unfair business practices, in which defendant had counterclaimed for declaratory judgment and antitrust violations.

**OVERVIEW:** Plaintiff brought an action for patent infringement and unfair business practices. Defendant counterclaimed for a declaratory judgment of invalidity and non-infringement, and defendant alleged antitrust violations. Plaintiff moved for a jury trial. The court denied plaintiff's motion for a jury trial because plaintiff sought equitable relief and therefore had no right to a trial by jury. However, defendant's antitrust counterclaim could be tried by a jury. Therefore the court allowed severance of defendant's antitrust counterclaim for a jury trial, to be tried after the main case if necessary.

**OUTCOME:** The court denied plaintiff's motion for a jury trial because plaintiff sought equitable relief and therefore had no right to a trial by jury. The court allowed severance of defendant's antitrust counterclaim for a jury trial.

**LexisNexis(R) Headnotes**

*Civil Procedure > Jury Trials > Right to Jury Trial*
*Constitutional Law > Trial by Jury in Civil Actions*
*Trade Secrets Law > Misappropriation Actions > Unfair Competition*
[HN1] Equitable claims that are not triable by jury at common law do not come within the purview of either U.S. Const. amend. VII or Fed. R. Civ. P. 38(a).

*Patent Law > Remedies > Equitable Relief > Injunctions*

*Civil Procedure > Jury Trials > Right to Jury Trial*
*Patent Law > Remedies > Damages > General Overview*
[HN2] 35 U.S.C.S. § 70 specifically provides for the recovery of general damages in actions that are brought pursuant to its terms. Thus, once equitable relief is demanded the entire claim falls within, and is disposable under, the provisions of 35 U.S.C.S. § 70. A separate action on the case for damages does not persist. The issues of patent validity and infringement may be tried to a jury where the complaint seeks no injunctive relief or other equitable remedy. Jury trials in patent cases have been denied where an injunction against infringement was part of the relief sought.

*Civil Procedure > Jury Trials > Right to Jury Trial*
*Civil Procedure > Pleading & Practice > Pleadings > Counterclaims & Cross-Claims*
*Patent Law > Remedies > General Overview*
[HN3] A counterclaim does not, of itself, entitle either party to a jury trial of the issues. The counterclaim is permitted only to prevent the matter from remaining undecided if plaintiff withdraws his suit, and, by not injecting a new issue into the case, does not color or affect the action in any other way. It does not in fact contribute a new or additional issue. Consequently, unless the complaint is abandoned, there is no additional issue tendered by the counterclaim which requires a separate trial with or without a jury. The manner of trial of such a counterclaim becomes relevant and determinative only if the complaint is not prosecuted.

**COUNSEL:** [**1]

   E. John Ernst, Jr., New York City, for plaintiff.

   Cooke, Armstrong & Grant, New York City for defendant.

**OPINIONBY:**

12 F.R.D. 7, *; 1951 U.S. Dist. LEXIS 3494, **;
89 U.S.P.Q. (BNA) 530; 1951 Trade Cas. (CCH) P62,828

KNOX

OPINION:

[*8]

Plaintiff has moved to have this case transferred from the Non-Jury Calendar to the Jury list of causes.

The complaint recites three claims; infringement of a patent, wrongful use of trade secrets disclosed to defendant, and unfair competition in the use of a trademark. On each count, an injunction is sought against the illegal conduct alleged against defendant, together with an accounting for profits and damages resulting therefrom.

The trade secret and unfair competition claims are essentially equitable in nature. Injunctions are asked, and, in keeping with equity's object to grant complete relief, an accounting. [HN1] Claims such as those here set forth are not triable by jury at common law and do not come within the purview of either the Seventh Amendment [*9] of the Constitution or Rule 38(a), Fed.Rules Civ.Proc. 28 U.S.C.A.

Plaintiff contends, however, that, in regard to the alleged patent infringement, it has stated one claim under 35 U.S.C.A. § 67 for damages, and that this is triable by jury as of right. It also asserts a separate [**2] equitable claim under 35 U.S.C.A. § 70, and asks for injunctive relief. Such a construction of the complaint is untenable. Section 70 [HN2] specifically provides for the recovery of general damages in actions that are brought pursuant to its terms. Thus, once equitable relief is demanded the entire claim falls within, and is disposable under, the provisions of Section 70. A separate action on the case for damages does not persist. The correct rule is clearly stated in Binger v. Unger, D.C.S.D.N.Y., 1946, 7 F.R.D. 121: 'The issues of patent validity and infringement may be tried to a jury where the complaint seeks no injunctive relief or other equitable remedy.' Id. 7 F.R.D. at page 121.

Jury trials in patent cases have been denied where an injunction against infringement was part of the relief sought. Bellavance v. Plastic-Craft Novelty Co., D.C.Mass., 1939, 30 F.Supp. 37; see, Beaunit Mills v. Eday Fabric Sales Corp., 2 Cir., 1942, 124 F.2d 563, 565-566. Accord: Bereslavsky v. Kloeb, 6 Cir., 1947, 162 F.2d 862, certiorari denied, 1947, 332 U.S. 816, 68 S.Ct. 156, 92 L.Ed. 393; Bereslavsky v. Caffey, 2 Cir., 1947, 161 F.2d 499, certiorari denied, 1947, 332 U.S. 770, 68 S.Ct. 82, 92 [**3] L.Ed. 355.

Plaintiff urges further that defendant's answer sets up two counterclaims triable by jury, and, inasmuch as the issues of the counterclaims are closely related to those raised by the complaint, the whole case is one for a jury.

Defendant's first counterclaim is for a declaratory judgment that plaintiff's patent is invalid and not infringed. In addition, defendant seeks to have plaintiff enjoined from prosecuting any action charging infringement of the patent.

The second counterclaim asks treble damages under the anti-trust laws for restraints upon competition growing out of plaintiff's conduct with regard to the allegedly invalid patent and trade secrets. There seems no doubt that, if timely demand is made, this claim is triable by jury as of right. Ring v. Spina, 2 Cir., 1948, 166 F.2d 546, certiorari denied, 1948, 335 U.S. 813, 69 S.Ct. 30, 93 L.Ed. 368; Hartford-Empire Co. v. Glenshaw Glass Co., D.C.W.D.Pa., 1943, 3 F.R.D. 50; see, Container Co. v. Carpenter Container Corp., D.C.Del., 1949, 9 F.R.D. 261, 262.

However, the first counterclaim, which attacks the patent, is equitable in nature in the light of the request for an injunction in addition to the declaratory [**4] judgment. An almost identical claim was not considered triable by jury when alleged on behalf of the plaintiff in Ryan Distributing Corp. v. Caley, D.C.E.D.Pa., 1943, 51 F.Supp. 377.

Even if the counterclaim sought only a declaratory judgment that the patent is invalid and uninfringed, without a prayer for an injunction, [HN3] it would not, of itself, entitle either party to a jury trial of the issues. The counterclaim is permitted only to prevent the matter from remaining undecided if plaintiff withdraws his suit, and, by not injecting a new issue into the case, does not color or affect the action in any other way. As was said in Van Alen v. Aluminum Co. of America, D.C.S.D.N.Y., 1942, 43 F.Supp. 833: 'It does not in fact contribute a new or additional issue. Consequently, unless the complaint is abandoned, there is no additional issue tendered by the counterclaim which requires a separate trial with or without a jury.' Id., 43 F.Supp. at page 835. Hence, the manner of trial of such a counterclaim becomes relevant and determinative only if the complaint is not prosecuted.

Many of the issues raised by the anti-trust counterclaim will have been foreclosed upon trial of the patent, trade [**5] secret, and trademark issues to the court. However, if plaintiff insists on trying the anti-trust counterclaim by jury, it will be [*10] severed, to be tried following the main case. Plaintiff's demand for a jury trial was timely served, and the delay in filing will not be held unreasonable. See Rules 5(d), 38(b), F.R.C.P.

Submit order in conformity to this opinion.