## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

VICTOR G. REILING ASSOCIATES and
DESIGN INNOVATION, INC.,

                Plaintiffs

v.

FISHER-PRICE, INC.

                Defendant.

:
:
:
:
:
:
:
:
:
:
:

Civil No. 303CV222(JBA)

January 6, 2006

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION SEEKING PRECLUSION OF EVIDENCE SUPPORTING A DISGORGEMENT OF PROFITS THEORY OF DAMAGES AND SEEKING LIMITATION OF DESIGN INNOVATION'S DAMAGES

### Preliminary Statement

Fisher-Price, Inc. submits this motion in limine in support of its request to preclude Design Innovation, Inc. ("DI") from introducing evidence supporting a disgorgement of profits theory of damages pursuant to Federal Rules of Evidence 401, 402 and 403. Fisher-Price further requests that DI be limited to recovering only one-half of any total damages that may be determined as owing as a result of alleged unauthorized use of the Reel Heroes concept.

2

**Argument**

**I.    DI SHOULD BE BARRED FROM INTRODUCING
EVIDENCE SUPPORTING A DISGORGEMENT
OF PROFITS THEORY OF DAMAGES**

DI should be barred from introducing evidence supporting a disgorgement of

profits theory of damages.  Allowing the introduction of evidence related to Fisher-Price's

sizable profits on the accused products would be irrelevant and unduly prejudicial to Fisher-Price

and runs the risk of confusing and misleading the jury.  *See* Fed R. Evid. 401, 402, 403.

**A.    The Appropriate Measure of Damages for
Misappropriation / Unfair Competition
Is Plaintiffs' Lost Profits**

Under New York law, "[t]he measure of damages for 'unfair competition and the

misappropriation and exploitation of confidential information is the loss of profits sustained by

reason of the improper conduct . . . .'"[1]

DI's second cause of action (misappropriation) and third cause of action (unfair

competition) are both governed by the rule that a plaintiff's lost profits – not disgorgement of

defendant's gain – will provide the measure of damages for misappropriation/unfair competition.

Accordingly, the Court should preclude DI from offering evidence supporting a disgorgement

theory of damages.

---

[1]    *Suburban Graphics Supply Corp. v. Nagle*, 5 A.D.3d 663, 666, 774 N.Y.S.2d 160, 163 (2d Dep't 2004)
(quoting *Allan Dampf, P.C. v. Bloom*, 127 A.D.2d 719, 720, 512 N.Y.S.2d 116 (2d Dep't 1987)).

3

**B.    Disgorgement May Only Be Considered**
       **When Plaintiff's Lost Profits Cannot Be Calculated**

Because the favored rule is that damages for misappropriation/unfair competition are to be calculated by plaintiff's lost profits,[2] disgorgement may *only* be considered "where the plaintiff is *unable to prove specific injury*"[3] thereby making plaintiff's lost profits incapable of calculation.[4]

Here, however, DI's "specific injury" *can* be proven – and its lost profits calculated – by the terms of an Option Agreement, executed by the parties, under which Fisher-Price agreed to pay DI a 3% royalty if Fisher-Price exercised its option to use the Reel Heroes idea.[5] Thus, if Fisher-Price is found liable for misappropriating DI's idea (which it should not

---

[2]    *See, e.g., Univ. Computing v. Lykes-Youngstown Corp.*, 504 F.2d 518, 535 (5th Cir. 1974) (indicating that the best conceptual approach to assessing damages for misappropriation of trade secret is "to measure the loss suffered by the plaintiff").

[3]    *Univ. Computing*, 504 F.2d at 537 (emphasis added) (recognizing that disgorgement of the defendant's profits for misappropriation of a trade secret is a possible remedy only where plaintiff's specific injury cannot be determined).

[4]    Note that where neither plaintiff's loss nor defendant's gain will provide an adequate method for computing damages, plaintiff's damages may be measured by imposing a hypothetical "reasonable royalty." But the existence of a negotiated royalty agreement between the parties obviates the need to create a "reasonable royalty." *See, e.g., Ramada Franchise Sys., Inc. v. Boychuk*, 283 F. Supp. 2d 777, 790-91 (N.D.N.Y. 2003), *aff'd*, 2005 U.S. App. LEXIS 1319 (2d Cir. Jan. 25, 2005) (acknowledging that while the court could calculate the plaintiff's "actual damages" by creating a hypothetical reasonable royalty, "a more concrete calculation may be used where, as here, the parties had in place a license agreement providing for the payment of royalties"); ROGER MILGRIM, 4 MILGRIM ON TRADE SECRETS, §15.02[3][e], 15-202.1-202.5 (2004) ("A distinction can be made between a 'reasonable royalty,' which is a theoretical assessment, and a situation in which, but for the breach of a confidential duty, the disclosee's use of trade secret would only have been permitted by the discloser under a royalty-bearing license agreement. *Where such evidence is presented, presumably any award of royalties would not be a 'reasonable royalty' assessment but rather proof of the discloser's damages by way of its lost profits.*") (emphasis added).

[5]    *See* Option Agreement, (attached to the Declaration of Robert J. Lane, Jr., in Support of Motions in Limine, dated January 3, 2006, ("Lane Dec.") as Ex. L), ¶ 6(c).

4

be), damages should be calculated by the 3% royalty that DI would have received under the terms of the negotiated Option Agreement.

The courts have recognized that where parties entered into an agreement for the payment of a royalty or license fee relating to the allegedly misappropriated idea, the royalty or license fee provided by that negotiated agreement reflects the profits the plaintiff would have earned if not for the defendant's alleged wrongful conduct and is the proper measure of plaintiff's damages.[6] For example, in *Vitro Corp. of America v. Hall Chemical Co.*, the court stated that where "[t]he proofs adequately support, as an equitable measure of damages, established royalties, the payments agreed upon in the 'agreement in principle[,]' [t]his is the

---

[6]  *See, e.g., Ramada Franchise Sys.*, 283 F. Supp. at 790-91 (holding that because the parties had previously operated under a license agreement that required the defendant to pay the plaintiff 8.5% of its gross hotel room revenues for the use of the plaintiff's trademark, the plaintiff's actual damages for the period of trademark infringement should be measured by the previously-agreed upon 8.5% royalty); *Ashland Mgmt., Inc. v. Janien*, 82 N.Y.2d 395, 604 N.Y.S.2d 912 (1993) (upholding the 15% royalty rate to which the parties had previously agreed as the measure of plaintiff's lost profits); *Vitro Corp. of Am. v. Hall Chem. Co.*, 292 F.2d 678 (6th Cir. 1961) (recognizing that where an agreement to enter into a license for a specified royalty existed between the parties, that is the best evidence of the plaintiff's damages); *Univ. Computing*, 504 F.2d at 538 ("Naturally in some cases . . . damages will be subject to exact measurement, [such as where] the parties had previously agreed on a licensing price as in *Vitro Corp. v. Hall Chemical Co. . . . .*"); *Saco-Lowell Shops v. Reynolds*, 141 F.2d 587, 598 (4th Cir. 1944) ("In view of the provisions of the licensing agreement, . . . the measure of the recovery is the royalties therein provided; for plaintiffs are entitled to recover merely what would have been theirs if defendant had done what it should have done, i.e. treated the [misappropriated] ideas . . . as belonging to the [plaintiff] and paid royalties on that basis."); *Computer Assocs. Int'l, Inc. v. Am. Fundware, Inc.*, 831 F. Supp. 1516 (D. Colo. 1993) ("If there is [a royalty agreement in place between the parties], the contractually established royalty will be the best measure of the parties' intent."); *Biodynamic Techs., Inc. v. Chattanooga Corp.*, 658 F. Supp. 266, 270 (S.D. Fla. 1987) ("Where the parties have agreed to the value of the trade secrets, either in a royalty agreement, a licensing contract, or an 'agreement in principle,' such that the damages will be subject to exact measurement, that course should be followed.").

5

best evidence [of plaintiff's damages]. It is but the utilization of what was agreed upon as compensation in the event that a firm contract would be executed."[7]

Here, the parties had executed an Option Agreement which provided that Fisher-Price would pay DI a 3% royalty if it exercised its option to use DI's Reel Heroes concept.[8] That royalty agreement, negotiated by the parties, provides the "best evidence" of DI's damages and negates as a matter of law any argument that DI may be entitled to disgorgement of Fisher-Price's profits. Accordingly, DI should be barred from presenting evidence supporting a disgorgement theory of damages.

**C.    Where the Misappropriated Element Accounts for Only a Portion of the Accused Product, Disgorgement Is Inappropriate**

Finally, "'[i]f the trade secret accounts for only a portion of the profits earned on the defendant's sales, such as *when the trade secret relates to a single component of a product marketable without the secret, **an award to the plaintiff of defendant's entire profit may be unjust.***'"[9]

Here, the allegedly misappropriated component – an animation reel, incorporated into the action figure's backpack, that would allow children to view animated images through a

---

[7]    *Vitro Corp.*, 292 F.2d at 683 (internal quotation marks and citations omitted).

[8]    *See* Lane Dec., Ex. L, ¶ 6(c).

[9]    *Vermont Microsys., Inc. v. Autodesk, Inc.*, 138 F.3d 449, 450 (2d Cir. 1998) (quoting AMERICAN LAW INSTITUTE, RESTATEMENT UNFAIR COMPETITION, § 45, cmt. f) (emphasis added).

6

viewer[10] – was intended to be only a small addition to a pre-existing Fisher-Price product that

was well-established and successfully marketed before the introduction of the accused element.

Therefore, disgorgement of the entire profit that Fisher-Price made on the sale of these

established products would be inappropriate and unjust.

## II.    DI'S ENTITLEMENT TO RECOVERY, IF ANY, SHOULD BE LIMITED TO ONE-HALF OF TOTAL DAMAGES

In any event, if Fisher-Price is found liable to DI (which it should not be), DI's

recovery should be limited to one-half of the total amount of damages resulting from use of the

Reel Heroes concept, because DI has asserted that it and Victor G. Reiling ("Reiling") were

partners and that it was their agreement to share the profits from their concepts equally.[11]

Accordingly, because DI intended to share the profits on the Reel Heroes concept

equally with Reiling, any recovery for damages would have been split equally between Reiling

---

[10]    *See* Lane Dec., Ex. A, ¶ 2.

[11]    *See, e.g.*, Deposition of Bruce Benedetto, dated November 18, 2003, attached to the Reply Declaration of Russell D. Dize, dated June 20, 2005 (Docket No. 128), Ex. D, at 25-26 (testifying that "[DI's] relationship with Vic [Reiling] now and has been from the beginning is we are 50/50 partners" and that the 50/50 relationship between DI and Reiling encompassed the following, to be equally shared between them: "holding money, royalties, if there is any royalties generated"). *See also id.* at 27 (testifying that Reiling and DI are 50/50 joint owners of their concepts); *id.*, Ex. C (Deposition of Bruce Popek, dated November 19, 2003), at 23 (testifying that the relationship between Reiling and DI was on a 50/50 basis); Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, dated May 23, 2005 (Docket No. 135), at 5 ("Reiling and DI are joint inventors and always maintain an equal ownership interest in their jointly developed concepts (*i.e.*, 50% Reiling, 50% DI)"); Declaration of Victor G. Reiling, dated May 20, 2005 (Docket No. 107) ¶ 5 (stating that Reiling and DI "always maintained an equal ownership interest in our jointly developed concepts (*i.e.*, 50% Reiling, 50% DI)"); Declaration of Bruce Benedetto, dated May 20, 2005 (Docket No. 110), at ¶ 6 (same); Declaration of Bruce Popek, dated May 20, 2005 (Docket No. 109), at ¶ 6 (same); Plaintiff's Sur-Reply Brief in Opposition to Defendant's Motion for Summary Judgment, dated June 20, 2005 (Docket No. 128), at 6 (stating that Reiling and DI were "50/50 partners"); *id.* at 7 (stating that Reiling and DI "worked together on projects and split the expenses and profits").

and DI had Reiling remained in this action.  Because Reiling has now been dismissed from this

action, DI should be entitled to, at most, fifty percent of the total damages.  Any other result

would contravene the well-established principle that a party may not be awarded damages that

exceed its loss actually suffered.[12]  Because DI would never have received more than one-half of

any compensation for use of the Reel Heroes concept, it should not be able to recover more than

that amount as a result of Reiling's dismissal from this lawsuit.

### Conclusion

This Court should grant Fisher-Price's motion in limine to preclude DI from

offering evidence supporting a disgorgement theory of damages.  Allowing the introduction of

evidence related to Fisher-Price's sizable profits on the accused products would be irrelevant and

unduly prejudicial to Fisher-Price and runs the risk of confusing and misleading the jury.  In

addition, any possible recovery by DI should be limited to one-half of the total amount of

damages resulting from allegedly unauthorized use of the Reel Heroes concept.

---

[12]    *See, e.g., Koninklijke Luchtvaart Maatschaapij, N. V. v. United Techs. Corp.*, 610 F.2d 1052, 1054 (2d Cir.
1979) (recognizing the "rule that a plaintiff 'has no right to be placed in a better position than (it) would be
if the wrong had not been done'") (quoting *Baker v. Drake*, 53 N.Y. 211, 217 (1873)); *Rolf v. Blyth,
Eastman Dillon & Co.*, 637 F.2d 77, 85 (2d Cir. 1980) (recognizing that "damage computations cannot
restore a plaintiff to a better position than he would have been in if the [wrong] had not occurred")
(internal quotation marks and citations omitted); *City of New York v. Coastal Oil N.Y., Inc.*, 1999 U.S.
Dist. LEXIS 10458, at *27 (S.D.N.Y. 1999) (recognizing that it would be "an unjust windfall to plaintiffs"
to allow them to recover twice for damages based on the same conduct).

8

Dated: January 6, 2006

**TYLER COOPER & ALCORN, LLP**

By _____
          Jacqueline D. Bucar
e-mail: jbucar@tylercooper.com
Federal Bar No.: ct01187
205 Church Street
P.O. Box 1936
New Haven, CT 06509-0906
Telephone: (203) 784-8269

**HODGSON RUSS LLP**
Robert J. Lane, Jr.
e-mail: rlane@hodgsonruss.com
Federal Bar No.: ct24598
Jodyann Galvin
e-mail: jgalvin@hodgsonruss.com
Federal Bar No.: ct24599
One M&T Plaza, Suite 2000
Buffalo, NY 14203-2391
Telephone: (716) 856-4000

**MILBANK, TWEED, HADLEY,&
MCCLOY LLP**
William E. Wallace, III
email: wwallace@milbank.com
Federal Bar No. PVH 0480
International Square Building
1825 Eye Street, N.W., Suite 1100
Washington, D.C. 20006
Telephone: (202) 835-7500

**ROBINSON & COLE LLP**
Bradford S. Babbitt
e-mail: bbabbitt@rc.com
Federal Bar No.: ct13938
Michael J. Kolosky
email: mkolosky@rc.com
Federal Bar No.: ct22686
280 Trumbull Street
Hartford, CT 06103-3597
Telephone: (860) 275-8200

*Attorneys for Fisher-Price, Inc.*

9

## CERTIFICATION

The undersigned hereby certifies that copies of the foregoing Memorandum In

Support of Defendant's Motion Seeking Preclusion of Evidence Supporting A Disgorgement of

Profits Theory of Damages and Seeking Limitation of Design Innovation's Damages, dated

January 6, 2006, was sent on the 6th day of January 2006 via first class mail to:

> Gregory J. Battersby, Esq. (Bar No. 07386)
> Edmund J. Ferdinand, III, Esq. (Bar No. 21287)
> Russell D. Dize, Esq. (Bar No. 23064)
> Grimes & Battersby LLP
> 488 Main Avenue, Third Floor
> Norwalk, CT 06851-1008
> Telephone:  (203) 849-8300
> Facsimile:  (203) 849-9300
>
> Peter M. Nolin, Esq. (Bar No. 06223)
> Jay H. Sandak (Bar No. 06703)
> Sandak Hennessey & Greco LLP
> 707 Summer Street
> Stamford, CT 06901
> Telephone:  (203) 425-4200
> Facsimile:  (203) 325-8608

Jacqueline D. Bucar