UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

VICTOR G. REILING ASSOCIATES and
DESIGN INNOVATION, INC.,
          Plaintiffs,

v.

FISHER-PRICE, INC.
          Defendant.

Civil No. 303CV222(JBA)

January 6, 2006

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION SEEKING PRECLUSION OF EVIDENCE ABOUT PAYMENTS MADE IN CONNECTION WITH OTHER SUBMISSIONS BY DESIGN INNOVATION OR REILING**

**Preliminary Statement**

Fisher-Price, Inc. submits this memorandum in support of its motion to preclude Design Innovation, Inc. ("DI") from offering evidence at trial about payments made in connection with other submissions by Victor G. Reiling or DI to Fisher-Price or Mattel, Inc. DI has indicated on its witness list that it intends to call Reiling to testify about "his personal experiences with regard to other submissions he has made to Fisher-Price . . . and its parent company, Mattel, Inc."[1] and that each of DI's principals will also testify about "his personal experiences with regard to other submissions DI has made to Fisher-Price, Inc. and its parent company, Mattel, Inc."[2] DI's principals and Reiling have previously testified about payments made in connection with four other ideas (unrelated to the "Reel Heroes" concept at issue in this

---

[1] Plaintiff's Witness List, dated December 2, 2005, at 1 (attached to the Declaration of Robert J. Lane, Jr., in Support of Motions in Limine, dated December 31, 2005 ("Lane Dec.") as Ex. D).

[2] Plaintiff's Witness List at 2 (Bruce Popek), 3 (Bruce Benedetto), and 4 (Doug Melville), Lane Dec. Ex. D.

action) that DI or Reiling previously submitted to Fisher-Price: (1) the "Slam Jammers" car; (2) the "First Bike;" (3) the "Bubble Sprinkler;" and (4) "Silly Sounds."

As discussed below, evidence of payments made in connection with other submissions DI or Reiling made to Fisher-Price or Mattel is inadmissible pursuant to Federal Rules of Evidence 401, 402, and 403, because it is irrelevant to the determination of DI's claim for royalties on the Reel Heroes submissions. This evidence is also inadmissible pursuant to Federal Rule of Evidence 408. Accordingly, the Court should preclude DI from offering evidence regarding payments made in connection with other submissions DI or Reiling made to Fisher-Price or Mattel.

## Background

1. **The "Slam Jammers" Car.**

    Reiling testified in his May 20, 2005 declaration about a concept he submitted to Fisher-Price in or about 1988 — 10 years before the Reel Heroes concept — for a battery-powered car that he called "Slam Jammers." Reiling eventually entered into a license agreement with Fisher-Price regarding this concept. Reiling testified that when Fisher-Price brought the toy to market, under the name "Crash Zone," Fisher-Price had changed the toy significantly, but still paid him "an advance of $125,000 in exchange for a lower royalty than provided for in the contract."[3] Reiling offered this testimony in support of his claim that Fisher-Price should pay a

---

[3] Declaration of Victor G. Reiling, dated May 20, 2005 ("Reiling 5/20/05 Dec.") (Docket No. 107), ¶ 17.

royalty on the "Reel Heroes" submission even though Fisher-Price's marketed products are drastically different than that submission.[4]

2. The "First Bike."

Reiling also testified about another submission he made to Fisher-Price, which he called "First Bike." Fisher-Price rejected that concept in 1996. Reiling later claimed that a Fisher-Price product called "Mountain Bike" was similar to his "First Bike" prototype and that he should be paid royalties.[5] Fisher-Price denied (and continues to deny) that it used Reiling's "First Bike" submission, but eventually agreed to make a payment to Reiling *in settlement of the dispute*.[6] Reiling has relied on the First Bike/Mountain Bike settlement in support of his claim that he expected that Fisher-Price would deal with him "fairly" and that "typically" in the toy industry, toy companies and inventors resolve disputes amicably.[7]

3. The "Bubble Sprinkler."

At his deposition, DI president Bruce Popek testified about a Fisher-Price product called the "Bubble Sprinkler."[8] Popek testified that DI had shown a bubbling sprinkler to Fisher-Price, and that Fisher-Price later marketed a "similar-type concept"[9] of the sprinkler based on a

---

[4] Reiling 5/20/05 Dec. ¶ 16.

[5] Reiling 5/20/05 Dec. ¶ 16.

[6] *See* July 14, 1994 letter from Paul D. Snyder to Dan Ferrara and Victor Reiling, included in Ex. N to the Reiling 5/20/05 Dec. (in which Fisher-Price offered, and Reiling, by countersigning, accepted, $200,000 in exchange for Reiling releasing Fisher-Price from all claims relating to the Mountain Bike).

[7] Reiling 5/20/05 Dec. ¶¶ 19-20.

[8] Lane Dec. Ex. G at 127-128.

[9] *Id.*

submission from another inventor. Popek testified that upon learning of the Fisher-Price product, DI brought its submission to Fisher-Price's attention, and Fisher-Price agreed to pay DI a royalty, even though Fisher-Price was already paying the other inventor.[10]

4.  **"Silly Sounds."**

In declarations submitted in opposition to Fisher-Price's summary judgment motion, DI principals Bruce Popek and Bruce Benedetto testified about a concept DI submitted to Fisher-Price in 1994 "for a large, egg-shaped toy with replaceable body parts, known as 'Silly Sounds.'"[11]  Popek and Benedetto testified that Fisher-Price "optioned the product and then acquired it."[12]  They claim that when Fisher-Price brought the concept to market as a toy called "Egg-A-Saurs," the product was different from their concept submission, but that Fisher-Price still paid DI a full royalty.[13]  Popek and Benedetto offered this testimony in support of DI's claim that Fisher-Price should pay them a royalty in this case even though the accused Fisher-Price products are drastically different from the "Reel Heroes" submission.

---

[10]  *Id. See also* Declaration of Bruce Popek, dated May 20, 2005 (Docket No. 109) ¶15 (describing bubble sprinkler); Declaration of Bruce Benedetto, dated May 20, 2005 (Docket No. 110) ¶ 15 (same).

[11]  Popek 5/20/05 Dec. ¶12; Benedetto 5/20/05 Dec. ¶ 12.

[12]  *Id.*

[13]  *Id.*

## Argument

### I. EVIDENCE OF PAYMENTS IN CONNECTION WITH OTHER SUBMISSIONS IS IRRELEVANT AND INADMISSIBLE UNDER FRE 402

DI should be precluded from offering testimony about payments in connection with other submissions made by DI or Reiling to Fisher-Price because this evidence is simply not relevant to the issue in this case -- whether DI should have been paid a royalty based on the "Reel Heroes" submission. Payments made with respect to other submissions are not relevant because whether royalties are due is determined based on the specific characteristics of the submission, the terms of agreements relevant to that particular submission, and the particular product for which an inventor claims royalties are due. Evidence about other submissions is therefore irrelevant and inadmissible pursuant to Federal Rule of Evidence 402.

In fact, the Court has previously determined that the only submission that is relevant to this case is the "Reel Heroes" submission. The Court previously made this determination in the context of plaintiffs' motion to compel discovery from Fisher-Price, when plaintiffs requested discovery regarding submissions by other outside inventors, claiming that these documents would demonstrate that "concept submissions made to toy companies by outside inventors are routinely changed by the time finished products incorporating the concept are ultimately offered for sale by the toy company."[14] Magistrate Judge Margolis ruled against

---

[14] Plaintiffs' Memorandum in Support of Motion to Compel (Docket No. 49) at 2.

plaintiffs, determining that "the only relevant concept submission and resulting agreement or lack thereof" is plaintiffs' Reel Heroes submission.[15]

Because evidence of other submissions unrelated to the Reel Heroes submission made by DI or Reiling is just as irrelevant as evidence of other inventors' submissions, it is inadmissible pursuant to Federal Rule of Evidence 402.[16] Indeed, with respect to any other submissions made by Reiling, Judge Margolis' ruling is directly applicable, because he is no longer a party to the case and is in the same position as other outside inventors, whose submissions Judge Margolis found irrelevant.

## II. EVIDENCE OF PAYMENTS IN CONNECTION WITH OTHER SUBMISSIONS SHOULD BE EXCLUDED UNDER FRE 403

Even if evidence about payments made in connection with other submissions were at all relevant (which it is not), any probative value is substantially outweighed by the danger of confusion of the issues and by considerations of undue delay and waste of time. If DI presents evidence of payments for other submissions, Fisher-Price will need to present evidence of and witnesses to testify about the surrounding circumstances that explains why payment was made in each instance and how these circumstances differ from those presented here. This will result in a series of mini-trials that will confuse the issues and delay resolution of the case,

---

[15] April 27, 2004 Ruling on Plaintiffs' Motion to Compel by Hon. Joan Glazer Margolis (Docket No. 71). That recommended ruling was subsequently adopted by this Court. *See* Order dated February 14, 2005 (Docket No. 88).

[16] As discussed in more detail below, evidence of the settlement of disputes is also inadmissible under Federal Rule of Evidence 408, as evidence of compromise negotiations.

without adding evidence helpful to resolving the issues.[17] This evidence, even if marginally relevant, should thus be excluded pursuant to Rule 403.

### III. FRE 408 BARS EVIDENCE OF SETTLEMENT OF DISPUTES OVER OTHER SUBMISSIONS

Finally, DI should not be permitted to introduce evidence about the settlement of Reiling's claim that he was owed royalties for his "First Bike" submission. This evidence is barred by Federal Rule of Evidence 408, which provides that evidence of furnishing "valuable consideration" in compromising a disputed claim is inadmissible "to prove liability for or invalidity of the claim or its amount." Fisher-Price clearly furnished "valuable consideration" to Reiling to compromise a disputed claim when it paid him $200,000 to resolve the dispute over his "First Bike" submission. DI's only discernable reason for offering such evidence would be to show that Fisher-Price owed a royalty with respect to the First Bike submission and that it therefore (allegedly) owes a royalty with respect to the Reel Heroes submissions. This evidence should therefore be precluded under FRE 408 as well as under FRE 402 and 403.

---

[17] *See* 2 Wigmore, *Evidence* § 443 at 528-29 (1979) ("in attempting to dispute or explain away the evidence thus offered, new issues will arise as to the occurrence of the instances and the similarity of conditions, new witnesses will be needed whose cross-examination and impeachment may lead to further issues; and that thus the trial will be unduly prolonged, and the multiplicity of minor issues will be such that the jury will lose sight of the main issue...."). *See also United States v. Bowe*, 360 F.2d 1, 15 (2d Cir. 1966) ("A trial judge has discretion to exclude evidence which is only slightly probative if its introduction would confuse and mislead the jury by focusing its attention on collateral issues and if it would unnecessarily delay the trial.").

## Conclusion

For the foregoing reasons, the Court should preclude DI from offering evidence at trial about: (1) payments made in connection with Reiling's submissions to Fisher-Price of the "Slam Jammers" car and the "First Bike," (2) payments made in connection with DI's submissions of the "Bubble Sprinkler" and "Silly Sounds;" and (3) payments made by Fisher-Price or Mattel in connection with any other submissions made by Reiling or DI.

Dated: January 6, 2006

**TYLER COOPER & ALCORN, LLP**

By /s/ Jacqueline D. Bucar
Jacqueline D. Bucar
e-mail: jbucar@tylercooper.com
Federal Bar No.: ct01187
205 Church Street
P.O. Box 1936
New Haven, CT 06509-0906
Telephone: (203) 784-8269

**HODGSON RUSS LLP**
Robert J. Lane, Jr.
e-mail: rlane@hodgsonruss.com
Federal Bar No.: ct24598
Jodyann Galvin
e-mail: jgalvin@hodgsonruss.com
Federal Bar No.: ct24599
One M&T Plaza, Suite 2000
Buffalo, NY 14203-2391
Telephone: (716) 856-4000

**MILBANK, TWEED, HADLEY & MCCLOY LLP**
William E. Wallace, III
email: wwallace@milbank.com
Federal Bar No. PVH 0480
International Square Building
1825 Eye Street, N.W., Suite 1100
Washington, D.C. 20006
Telephone: (202) 835-7500

**ROBINSON & COLE LLP**
Bradford S. Babbitt
e-mail: bbabbitt@rc.com
Federal Bar No.: ct13938
Michael J. Kolosky
email: mkolosky@rc.com
Federal Bar No.: ct22686
280 Trumbull Street
Hartford, CT 06103-3597
Telephone: (860) 275-8200

*Attorneys for Fisher-Price, Inc.*

## CERTIFICATION

The undersigned hereby certifies that copies of the foregoing Memorandum in Support of Defendant's Motion Seeking Preclusion of Evidence About Payments Made in Connection With Other Submissions By Design Innovation or Reiling, dated January 6, 2006, was sent on the 6th day of January 2006 via first class mail to:

Gregory J. Battersby, Esq. (Bar No. 07386)
Edmund J. Ferdinand, III, Esq. (Bar No. 21287)
Russell D. Dize, Esq. (Bar No. 23064)
Grimes & Battersby LLP
488 Main Avenue, Third Floor
Norwalk, CT 06851-1008
Telephone: (203) 849-8300
Facsimile: (203) 849-9300

Peter M. Nolin, Esq. (Bar No. 06223)
Jay H. Sandak (Bar No. 06703)
Sandak Hennessey & Greco LLP
707 Summer Street
Stamford, CT 06901
Telephone: (203) 425-4200
Facsimile: (203) 325-8608

_____
Jacqueline D. Bucar