UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| VICTOR G. REILING ASSOCIATES and DESIGN INNOVATION, INC., | : <br> : <br> : |
| Plaintiffs, | : <br> :    Civil No. 303CV222(JBA) |
| v. | : <br> :    January 6, 2006 |
| FISHER-PRICE, INC. | : <br> : |
| Defendant. | : <br> : |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION SEEKING
PRECLUSION OF TESTIMONY BY DESIGN INNOVATION'S PRINCIPALS:
(1) THAT THEY EXPECTED THE CONCEPT SUBMISSION TO
BE CONFIDENTIAL, AND (2) ABOUT SETTLEMENT DISCUSSIONS**

### Preliminary Statement

Fisher-Price, Inc. submits this memorandum in support of its motion to preclude the principals of Design Innovation, Inc. ("DI") from testifying: (1) that they expected that the submission of the "Reel Heroes" concept to Fisher-Price would be confidential, and (2) about settlement discussions between Fisher-Price and DI.

### Argument

**I.  DI'S PRINCIPALS SHOULD BE PRECLUDED
FROM TESTIFYING THAT THEY
EXPECTED THAT THE SUBMISSION OF
THE "REEL HEROES" CONCEPT TO
FISHER-PRICE WOULD BE CONFIDENTIAL**

Both Bruce Popek and Bruce Benedetto testified, in their declarations filed in opposition to Fisher-Price's summary judgment motion, that "DI expected our three Reel Heroes

submissions to be held in confidence by Fisher-Price."[1] DI's principals should be precluded from testifying at trial that they "expected" the submission of the "Reel Heroes" concept to Fisher-Price to be confidential, pursuant to Federal Rules of Evidence 401-403, because this testimony is irrelevant.

While DI must prove that the "Reel Heroes" concept was submitted to Fisher-Price on a confidential basis in order to establish their misappropriation/unfair competition claim, the uncommunicated "expectations" of DI's principals are irrelevant to whether, in fact, the submission was made on a confidential basis. It is undisputed that the "Reel Heroes" concept was submitted by Victor Reiling, not by any of DI's principals. DI never had any direct contact with Fisher-Price about the Reel Heroes concept. The principals of Design Innovation testified that they never spoke to anyone at Fisher-Price about the concept, and that all contacts were made through Reiling.[2] If DI's principals had any "expectations" about how the submission would be made, it is undisputed that they did not communicate them (or anything else) at the time of the submission to Fisher-Price.

---

[1] May 20, 2005 Declaration of Bruce P. Popek (Docket No. 109) ¶ 17; May 20, 2005 Declaration of Bruce Benedetto (Docket No. 110) ¶ 17.

[2] Reply Declaration of Russell D. Dize, dated June 20, 2005 (Docket No. 128-2) ("Dize Reply Dec."), Ex. B at 106-07 (deposition testimony of Bruce Benedetto that "Design Innovation did not deal directly with Fisher-Price" and that "[t]he dealings were through Vic Reiling"); Dize Reply Dec., Ex. C at 38 (deposition testimony of Bruce Popek explaining that Reiling "was going to do the contact and initial meeting with Fisher-Price" and that DI purposely selected Reiling to make the initial contact and presentation of the concept because DI "separates their speculative work from their work for hire, and we almost always use someone to market our ideas"). *See also* Declaration of Bruce Popek, dated May 20, 2005 (Docket No. 109) at ¶ 5 and Declaration of Bruce Benedetto, dated May 20, 2005 (Docket No. 110) at ¶ 5, both of which expressly incorporate ¶¶ 26-28 of the Declaration of Victor G. Reiling, dated May 20, 2005 (Docket No. 107), in which Reiling describes how he alone met with Paul Snyder of Fisher-Price to present the concept for the first time in October 1998.

Because DI's principals did not communicate their claimed expectations of confidentiality to Fisher-Price, their expectations are irrelevant to whether there was any agreement between Fisher-Price and Reiling (acting on DI's behalf) as to whether the submission would be kept confidential.[3] This is especially true given that the Policy and Agreement form, which the Court has ruled governed Reiling's submission of the concept, contains an express waiver of confidentiality.[4] Accordingly, this testimony should be precluded at trial pursuant to Federal Rules of Evidence 401-403.[5]

---

[3] *Mencher v. Weiss*, 306 N.Y. 1, 7 (1953) (in determining whether there is a binding agreement, "an objective test is generally to be applied. That means, simply, that the manifestation of a party's intention rather than the actual or real intention is ordinarily controlling"); *Dillon v. Anderson*, 43 N.Y. 231, 236, 1870 N.Y. LEXIS 116 (1870) (upholding trial court's exclusion of testimony by defendant that he did not intend to be bound by contract because "[i]t called for his purpose mentally formed, but undisclosed, to the plaintiff. It sought to annul, by an intention not expressed, words, and acts relied upon by the plaintiff . . . . An agreement is said to be the meeting of minds of the parties. But minds cannot meet when one keeps to itself what it means to do, nor can one party know that the other does not assent to a contract, the terms of which have been discussed and settled between them, unless dissent is made known"); *The Ingersoll Milling Mach. Co. v. M/V Bodena*, 619 F. Supp. 493, 506 (S.D.N.Y. 1985) ("Fireman's Fund sought to justify the interpretation [of the policy] on the basis of their and Ingersoll's understanding of what the policy meant. But the interpretation offered constituted the subjective views of Fireman's Fund officials, never communicated to Ingersoll until this litigation. The proffered explanation of the policy's meaning, therefore, cannot be used to establish that Fireman's Fund and Ingersoll had such intent and understanding when they entered into the insurance contract").

[4] December 14, 2005 Ruling on Defendant's Motion for Summary Judgment (Docket No. 145) at 15, 19; December 5, 1994 Policy and Agreement form, attached to the Declaration of Robert J. Lane, Jr., in Support of Motions in Limine, dated December 31, 2005 ("Lane Dec.") as Ex. K.

[5] To the extent that DI argues its principals' expectations are relevant to prove the custom and practice in the toy industry regarding the confidentiality of submissions, this argument must be rejected. As set forth fully in Fisher-Price's motion in limine regarding custom and practice evidence, none of DI's principals may testify about toy industry custom and practice because this topic requires expert testimony, and none of them were disclosed as experts. Nor would testimony that DI's principals expected confidentiality meet the high standard for admissibility of custom and practice evidence, which requires proof that a practice is uniform and unvarying throughout the industry.

## II. DI'S PRINCIPALS SHOULD BE PRECLUDED FROM TESTIFYING ABOUT THEIR SETTLEMENT DISCUSSIONS WITH FISHER-PRICE

DI alleges that Fisher-Price "threatened" to stop sending it new design projects unless both DI and Reiling withdrew this lawsuit, and that when Reiling refused to withdraw, Fisher-Price carried through with its "threat."[6] The only communications that have ever occurred relating to the possibility that Fisher-Price would cease sending new projects to DI took place in settlement discussions between Fisher-Price (specifically, Stan Clutton, Senior Vice-President for Inventor Relations) and DI and Reiling that began in the fall of 2003.[7] DI has not disputed that these allegations arise from those settlement discussions. In fact, Bruce Popek, DI's president, confirmed at his deposition that the statements referenced by plaintiffs in these allegations were made in the context of those settlement discussions.[8]

DI's witness list makes clear that it intends to present evidence about these settlement discussions at trial, as DI has listed Mr. Clutton as a witness and described his expected testimony to include "his communications with DI regarding the termination of DI's business relationship with Fisher-Price."[9] DI has also described the topics of testimony of each of its three principals to include "communications with Fisher-Price and Victor G. Reiling regarding . . . the termination of DI's business relationship with Fisher-Price."[10] DI should be

---

[6]   *See* Second Amended Complaint ¶¶ 40, 57 (Docket No. 85), Lane Dec. Ex. A.

[7]   *See* Declaration of Stan Clutton in Support of Motion to Strike dated February 18, 2004 (Docket No. 41) ¶ 3.

[8]   Lane Dec. Ex. G at 122.

[9]   Plaintiff's Witness List, dated December 22, 2005, at 6 (Lane Dec. Ex. D).

[10]  Plaintiff's Witness List at 2-4 (Lane Dec. Ex. D).

precluded from presenting any evidence of those settlement discussions at trial for two reasons: (1) it stipulated that these discussions would be inadmissible, and (2) the settlement discussions are inadmissible under Federal Rule of Evidence 408.

### A. DI Stipulated That the Settlement Discussions Would Be Inadmissible

Before Stan Clutton, Fisher-Price's Senior Vice-President for Inventor Relations, met with DI and Reiling to discuss a potential settlement of this action, he sent them a letter, dated September 19, 2003, which confirmed that they would be meeting, expressly indicated that their discussions would be privileged, and asked them to agree that the parties' settlement discussions would be confidential and not admissible for any purpose:

> This letter also evidences the agreement of all the parties that the meeting is being conducted for settlement purposes. Pursuant to Federal Rule of Evidence 408, *the content of the meeting, including any oral or written statements made in the context of the meeting or any follow-up discussions among the parties, are confidential, not subject to discovery, inadmissible and are made without prejudice to any claims or defenses.*[11]

Both DI (by Bruce Popek) and Reiling signed the letter and returned it to Mr. Clutton, evidencing their agreement to his demand that the parties' discussions be entirely confidential and inadmissible. DI has therefore stipulated in writing that the alleged statements by Mr. Clutton are inadmissible, and it should be bound by its agreement to that effect.

Another district court in this Circuit has enforced a similar agreement. In *Eastman Kodak Co. v. Sun Microsystems, Inc.*,[12] the parties had entered into a written agreement

---

[11] February 18, 2004 Clutton Dec. (Docket No. 41) Ex. A (emphasis added).

[12] 2004 U.S. Dist. LEXIS 18244 (W.D.N.Y. Sept. 7, 2004).

that provided that "[c]ommunications and [c]ontracts that occur in the context of the parties' commercial relationship shall be subject to Rule 408 of the Federal Rules of Evidence and treated as if they were evidence offered of conduct or statements made in settlement discussions." The court granted a motion in limine seeking exclusion of evidence of communications between the parties that occurred after the effective date of the agreement.[13] Similarly, the agreement between Fisher-Price and DI should be enforced, and evidence of their settlement discussions should be excluded.

### B. The Settlement Discussions Are Inadmissible Pursuant to FRE 408

Additionally, separate and apart from the parties' express agreement, Rule 408 of the Federal Rules of Evidence bars evidence about the Fall 2003 settlement discussions. Rule 408 provides:

> Evidence of (1) furnishing or offering or promising to furnish . . . a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible.

The policy behind Rule 408 is that admitting evidence of settlement discussions "could inhibit settlement discussions and interfere with the effective administration of justice."[14]

---

[13] *Id.* at * 4-5.

[14] *Pierce v. F.R. Tripler & Co.*, 955 F.2d 820, 827-28 (2d Cir. 1992). *See also Trebor Sportswear Co. v. Limited Stores, Inc.*, 865 F.2d 506, 510 (2d Cir. 1989) (affirming exclusion of evidence pursuant to Rule 408 and rejecting proponent's argument that the evidence was being used for "another purpose" rather than to show validity or amount of claim).

The discussions at issue clearly fall within the ambit of Rule 408. All the discussions that Mr. Clutton had with DI about whether Fisher-Price would send it new projects were in the context of settlement discussions.[15] In the course of those settlement discussions, Mr. Clutton told DI that, with this lawsuit pending, Fisher-Price would not send it new projects, but that it would consider sending it new projects as a part of a settlement.[16] This offer was clearly "valuable consideration," made in an attempt to compromise the claims disputed in this litigation. DI now seeks to use statements made by Mr. Clutton in those compromise negotiations to prove the validity of their claim for punitive damages against Fisher-Price. This is clearly prohibited by Rule 408.[17]

---

[15] Reply Declaration of Stan Clutton in Further Support of Motion to Strike, dated March 16, 2004 (Docket No. 62) ¶¶ 2, 5, 6, 7, 8, 9.

[16] Fisher-Price's offers in those settlement negotiations included possible monetary terms and the possibility of Fisher-Price committing to giving Design Innovation a specified volume of work over a particular time period. *See* Declaration of Stan Clutton in Support of Fisher-Price's Motion for Summary Judgment, dated April 27, 2005 (Docket No. 97) ¶ 14.

[17] *See Fiberglass Insulators, Inc. v. Dupuy*, 856 F.2d 652, 654-655 (4th Cir. 1988) (affirming trial court's exclusion of statements made in the course of settling prior related litigation between the same parties to the suit before the court, noting that the "spectre of a subsequent use to prejudice a separate and discrete claim is a disincentive which Rule 408 seeks to prevent").

## Conclusion

For the foregoing reasons, the Court should grant Fisher-Price's motion in limine and preclude DI's principals from testifying: (1) that they expected that the submission of the "Reel Heroes" concept to Fisher-Price would be confidential, and (2) about settlement discussions between Fisher-Price and DI.

Dated: January 6, 2006

| | |
|---|---|
| **TYLER COOPER & ALCORN, LLP**<br><br>By _____<br>Jacqueline D. Bucar<br>e-mail: jbucar@tylercooper.com<br>Federal Bar No.: ct01187<br>205 Church Street<br>P.O. Box 1936<br>New Haven, CT 06509-0906<br>Telephone: (203) 784-8269 | **MILBANK, TWEED, HADLEY & MCCLOY LLP**<br>William E. Wallace, III<br>email: wwallace@milbank.com<br>Federal Bar No. PHV 0480<br>International Square Building<br>1825 Eye Street, N.W., Suite 1100<br>Washington, D.C. 20006<br>Telephone: (202) 835-7500 |
| **HODGSON RUSS LLP**<br>Robert J. Lane, Jr.<br>e-mail: rlane@hodgsonruss.com<br>Federal Bar No.: ct24598<br>Jodyann Galvin<br>e-mail: jgalvin@hodgsonruss.com<br>Federal Bar No.: ct24599<br>One M&T Plaza, Suite 2000<br>Buffalo, NY 14203-2391<br>Telephone: (716) 856-4000 | **ROBINSON & COLE LLP**<br>Bradford S. Babbitt<br>e-mail: bbabbitt@rc.com<br>Federal Bar No.: ct13938<br>Michael J. Kolosky<br>email: mkolosky@rc.com<br>Federal Bar No.: ct22686<br>280 Trumbull Street<br>Hartford, CT 06103-3597<br>Telephone: (860) 275-8200 |

*Attorneys for Fisher-Price, Inc.*

## CERTIFICATION

The undersigned hereby certifies that copies of the foregoing Memorandum in Support of Defendant's Motion Seeking Preclusion of Testimony by Design Innovation's Principals: (1) That They Expected the Concept Submission to Be Confidential, and (2) About Settlement Discussions, dated January 6, 2006, was sent on the 6th day of January 2006 via first class mail to:

>Gregory J. Battersby, Esq. (Bar No. 07386)
>Edmund J. Ferdinand, III, Esq. (Bar No. 21287)
>Russell D. Dize, Esq. (Bar No. 23064)
>Grimes & Battersby LLP
>488 Main Avenue, Third Floor
>Norwalk, CT 06851-1008
>Telephone: (203) 849-8300
>Facsimile: (203) 849-9300
>
>Peter M. Nolin, Esq. (Bar No. 06223)
>Jay H. Sandak (Bar No. 06703)
>Sandak Hennessey & Greco LLP
>707 Summer Street
>Stamford, CT 06901
>Telephone: (203) 425-4200
>Facsimile: (203) 325-8608

_____
Jacqueline D. Bucar