UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| VICTOR G. REILING ASSOCIATES and DESIGN INNOVATION, INC., | : <br> : <br> : |
| Plaintiffs, | : <br> :     Civil No. 303CV222(JBA) |
| v. | : <br> :     January 6, 2006 |
| FISHER-PRICE, INC. | : <br> : |
| Defendant. | : <br> : |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION SEEKING
PRECLUSION OF TESTIMONY BY PLAINTIFF'S EXPERT JAMES KIPLING:
(1) ABOUT THE "USE" OF THE CONCEPT; (2) AS TO A DIFFERENT
DEFINITION OF THE CONCEPT; (3) TO INTERPRET THE OPTION AGREEMENT;
AND (4) THAT THE CARTERBENCH LICENSE IS FABRICATED**

### Preliminary Statement

Fisher-Price, Inc. submits this memorandum in support of its motion seeking the following in limine rulings precluding Design Innovation, Inc.'s expert, James Kipling, from testifying: (1) about whether the accused Fisher-Price products use the "Reel Heroes" concept; (2) as to any definition of the "Reel Heroes" concept other than the definition disclosed in his Rule 26 expert report; (3) about the effect or interpretation of the Option Agreement; and (4) that he believes Fisher-Price's license with Carterbench is fabricated.

## Argument

### I. KIPLING SHOULD BE PRECLUDED FROM TESTIFYING ABOUT WHETHER THE ACCUSED PRODUCTS USE THE "REEL HEROES" CONCEPT

The trial witness list disclosed by Design Innovation ("DI") describes as one of the topics of Kipling's testimony, "the similarities between Plaintiff's concept and concept submissions, on the one hand, and Fisher-Price's Rescue Heroes line of products and line extensions."[1] This is consistent with Kipling's declaration submitted in opposition to Fisher-Price's summary judgment motion, in which he offered extensive opinions about which Fisher-Price products "embody, incorporate, are based on, derived from or influenced by Plaintiffs' concept submission."[2]

The Court should preclude Kipling from testifying at trial about whether the Fisher-Price products at issue "use" DI's concept because the Court has already ruled in response to Fisher-Price's motion to strike that Kipling "is admittedly not qualified to testify as an expert on toy design."[3] In order to testify about whether the accused products "use" DI's concept, Kipling would necessarily have to testify about the design elements that characterize and distinguish both the accused products and DI's concept, and how those particular design elements are similar or different as between the accused products and DI's concept. This testimony clearly requires an expert who is qualified in toy design. Kipling is not. Because

---

[1] Plaintiff's Witness List, dated December 22, 2005, attached to the Declaration of Robert J. Lane, Jr. in Support of Motions in Limine, dated December 31, 2005 ("Lane Dec.") as Ex. D.

[2] Declaration of James Kipling, dated May 23, 2005 (Docket No. 108) ¶¶ 37-38.

[3] Ruling on Defendant's Motion to Strike (Docket No. 144) at 4 (citing Galvin Dec. (Docket No. 116); Ex. B at 9 (Q. Would you consider yourself qualified today to be employed at a toy company as a toy designer? A. No.")).

- 2 -

Kipling is not qualified to compare the designs of the accused products and the concept, he should not be permitted to testify at trial that the accused products "embody, incorporate, are based on, derived from or influenced by" DI's submission.[4]

Fisher-Price recognizes that in the Court's Ruling on Defendant's Motion to Strike (Docket No. 144), the Court stated that Kipling's testimony "does not relate to . . . determinations of infringement . . .," p. 2 n. 1, and that, therefore, Fisher-Price's argument that "patent attorneys are not permitted to testify as experts . . . is unavailing." But it is now abundantly clear from DI's witness list that DI intends to offer testimony from Kipling on the issue of use; that is, determining whether the accused product embodies the plaintiff's claimed intellectual property. This is precisely analogous to the issue of infringement in the patent context. The cases cited by Fisher-Price in its motion to strike stand for the proposition that a patent attorney who is not qualified as an expert in the technical art underlying the patent may not testify about infringement — that is, whether the accused product "uses" the patented concept.[5] These cases thus strongly support prohibiting Kipling, whom the Court has already determined not to be an expert in toy design (the underlying art here), from testifying about whether Fisher-Price's products "use" DI's concept.

---

[4] *See Morse/Diesel, Inc. v. Trinity Indus., Inc.*, 67 F.3d 435, 444 (2d Cir. 1995) (upholding district court's ruling permitting accountant witness to testify about accounting methods, but precluding accountant from testifying about the parties' respective responsibilities for certain costs, because the accountant was not qualified to testify on this topic).

[5] *Buckley v. Airshield Corp.*, 116 F. Supp. 2d 658, 662 (D. Md. 2000) (patent attorney, who did not have technical expertise, not permitted to testify that defendants' products did not infringe (*i.e.*, use) plaintiff's patent); *J&M Corp. v. Harley Davidson, Inc.*, 2000 U.S. Dist. LEXIS 21756, * 60-61 (D. Ariz. Feb. 9, 2000), *aff'd* 269 F.3d 1360 (Fed. Cir. 2001) (patent attorney "with no background in the art involved" not permitted to testify about infringement under the doctrine of equivalents).

## II. KIPLING SHOULD BE PRECLUDED FROM TESTIFYING AS TO ANY DEFINITION OF DI'S CONCEPT OTHER THAN THAT DISCLOSED IN HIS EXPERT REPORT

Fisher-Price also seeks an in limine ruling precluding Kipling from testifying about any definition of DI's "Reel Heroes" concept other than the definition he gave of that concept in the January 2005 second supplement to his expert report. In that supplement, Kipling defined DI's "Reel Heroes" concept as follows:

> A device associated with a Rescue Heroes figure (for example, part of a backpack) for visually communicating to the mind of a child a cue or prompt for role-playing in which the child would use the Rescue Heroes figure and imagine accomplishing a mission assignment, resolving a dangerous situation, performing a rescue or engaging in some other adventurous pretend scenario.[6]

But in response to Fisher-Price's summary judgment motion, which made arguments based on the definition in Kipling's January 2005 supplement, Kipling submitted a declaration that backed away from that definition.[7] He discussed, instead, a definition previously given by plaintiffs (but never by him) in response to an interrogatory posed by Fisher-Price.[8]

Kipling should be precluded from testifying at trial as to a definition of the "Reel Heroes" concept different from that contained in his January 2005 supplement. Federal Rule of Civil Procedure 26(a)(2)(B) requires that a party disclose, for each expert identified pursuant to Rule 26(a)(2)(A), a "written report prepared and signed by the witness" that "shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor . . . "

---

[6] Lane Dec. Ex. C (Second Supplement to Expert Report of James Kipling) ¶ 11.

[7] Kipling 5/23/05 Declaration (Docket No. 108) ¶¶ 25-26 ("I have always said that my prior definition [in the January 2005 supplement] was one definition, not the only definition").

[8] Id.

Pursuant to Federal Rule of Civil Procedure 26(e)(1), a party that has disclosed an expert report is under a duty to supplement or correct the report if the party learns that the information disclosed is incomplete or incorrect, by the time the party's pretrial disclosures are due. And pursuant to Federal Rule of Civil Procedure 37(c)(1), "[a] party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) . . . is not, unless such failure is harmless, permitted to use as evidence at trial . . . information not so disclosed."

Based on these rules, Kipling should be precluded from testifying as to any definition of the "Reel Heroes" concept other than that disclosed in the January 2005 supplement to his expert report. Kipling's report has not been supplemented or amended since the January 2005 supplement that supplied his definition of the concept.[9] Any definition other than the one set forth in his January 2005 supplement would be an undisclosed opinion under Rule 26(a)(2)(B) and a substantive change from his original report that was not disclosed as required by Rule 26(e)(1). Fisher-Price would be prejudiced if Kipling testifies about a different definition, moreover, because the last time Kipling was deposed, on February 10, 2005, the only definition he had given was the one contained in his January 2005 supplement. Fisher-Price has not had an opportunity to depose him regarding any other definition. Accordingly, Kipling should be precluded from testifying as to any definition other than the one in his January 2005 supplement pursuant to Rule 37(c)(1).[10]

---

[9] Lane Dec. ¶ 16.

[10] See Air Turbine Tech., Inc. v. Atlas Copco AB, 410 F.3d 701, 713 (Fed. Cir. 2005)("we do not think the district court abused its discretion in excluding Dr. Catz's testimony under Fed. R. Civ. P. 37(c)(1) insofar as his testimony exceeded the material disclosed in his expert report"); Sheek v. Asia Badger, Inc., 235 F.3d 687, 693-94 (1st Cir. 2000)(upholding district court's ruling striking expert's testimony that was a change in his opinion from what had been disclosed in his expert reports, noting that the applicable

Footnotes continued on next page.

### III. KIPLING SHOULD BE PRECLUDED FROM TESTIFYING ABOUT THE EFFECT OR INTERPRETATION OF THE OPTION AGREEMENT

Fisher-Price also seeks a ruling precluding Kipling from testifying about the effect or interpretation of the Option Agreement that Fisher-Price and DI negotiated and executed in early 1999. Kipling testified in his declaration opposing summary judgment that he believes the Option Agreement gave rise to a confidential relationship,[11] even though the Option Agreement did not impose any confidentiality obligations on Fisher-Price.

Kipling should be barred from testifying about how he interprets the Option Agreement or its effect because it is well established that an expert cannot testify as to the interpretation or effect of a contract, which is a legal issue for the Court.[12] This prohibition is part of the general rule that bars "expert testimony that expresses a legal conclusion."[13] The

---

Footnotes continued from previous page.

    Federal Rules "help[s] a party avoid the burden of responding to unexpected and last-minute changes in its opponent's expert testimony," *id.* at 693).

[11] Kipling 5/23/05 Dec. (Docket No. 108) ¶ 21(d).

[12] *Red Rock Commodities, Ltd. v. Standard Chartered Bank*, 140 F.3d 420, 423-24 (2d Cir. 1998) (upholding district court's preclusion of expert testimony by banking experts regarding the meaning of the terms of a credit agreement); *Marx & Co., Inc. v. The Diners' Club, Inc.*, 550 F.2d 505, 508-510 (2d. Cir. 1977) (holding that district court erred in permitting expert witness, an attorney, "to give his opinions as to the legal obligations of the parties under the contract"); *Palazzetti Import/Export, Inc. v. Morson*, 2001 U.S. Dist. LEXIS 9538 at *6 (S.D.N.Y. July 13, 2001) (denying plaintiff's motion for permission to have attorney testify as an expert witness that contract between parties was not a franchise agreement); *Breezy Point Cooperative, Inc. v. CIGNA Property and Casualty Co.*, 868 F. Supp. 33, 36 (E.D.N.Y. 1994) (granting motion to preclude expert testimony by attorney witness that "require[d] him to construe provisions of the insurance contract and thus contains inadmissible 'legal opinions as to the meaning of the contract terms at issue'").

[13] *Hygh v. Jacobs*, 961 F.2d 359, 363 (2d Cir. 1992) ("[t]his circuit is in accord with other circuits in requiring exclusion of expert testimony that expresses a legal conclusion"); *Rondout Valley Cent. Sch. Dist. v. Coneco Corp.*, 321 F. Supp. 2d 469, 980 (N.D.N.Y. 2004) ("it is axiomatic that an expert is not permitted to provide legal opinions, legal conclusions, or interpret legal terms; those roles fall solely within the province of the court").

rationale behind the prohibition on experts testifying as to the legal effect of a document is that "the jury may think that the 'expert' in the particular branch of the law knows more than the judge -- surely an inadvisable inference in our system of law."[14] Additionally, Kipling cannot testify that a confidential relationship existed because an expert may not testify as to the existence of a duty or a breach of duty.[15] Accordingly, Kipling's testimony about his interpretation and effect of the Option Agreement is inadmissible, and the Court should preclude this testimony at trial.

### IV. KIPLING SHOULD BE PRECLUDED FROM TESTIFYING THAT HE BELIEVES FISHER-PRICE'S LICENSE WITH CARTERBENCH IS FABRICATED

In April 2000, an inventing firm from England named Carterbench submitted a new technology called "Virtual Video" to Fisher-Price. Carterbench had a patent for the Virtual Video technology, which consisted of a specialized method for synchronizing the movement of a lenticular image with an electronically generated voice to create the appearance of a person talking. Fisher-Price entered into a license agreement for the Virtual Video technology with Carterbench. Pursuant to the license agreement, Fisher-Price pays royalties to Carterbench on the Voice Tech Video Mission Rescue Heroes figures and the Aquatic Rescue Command Center playset ("ARCC").

---

[14] *Marx*, 550 F.2d at 512.

[15] *Montgomery v. Aetna Cas. & Surety Co.*, 898 F.2d 1537, 1540-41 (11th Cir. 1990)(reversible error to permit an expert witness to testify about defendant's duties, which are a question of law for the court). *See also M&E Manufacturing Co. v. Frank H. Reis, Inc.*, 258 A.D.2d 9, 13, 692 N.Y.S.2d 191, 195 (3d Dep't 1999) (refusing to take into account expert testimony that agent owed duty to insured because existence of duty is an issue of law).

Kipling has testified that he believes that the Fisher-Price/Carterbench license was fabricated: "Fisher-Price used a fabricated low royalty paid to Carterbench to reduce its total royalty obligation at Plaintiff's expense."[16] Kipling bases his unsupported speculation on this subject on the following: (1) in the licensing agreement, it is noted that some of the items on which royalties are paid (*i.e.*, the Voice Tech Video Mission figures) do not use the exact technology licensed from Carterbench (and that payment is being made because of Carterbench's involvement in the development of the items); and (2) Fisher-Price allegedly requested Carterbench's concept submission.

In its Ruling on Defendant's Motion to Strike, the Court struck Kipling's declaration testimony about the "Carterbench rationale," (Docket No. 144, p.4), citing *Linkco, Inc. v. Fujitsu Ltd.*[17] for the holding that an expert may not opine on the credibility of evidence. The Court should extend this ruling to prohibit Kipling from testifying at trial that Fisher-Price's license with Carterbench was fabricated.

Additionally, Kipling's testimony about the Carterbench license should be precluded because it is "speculative and conjectural."[18] The Supreme Court has noted that speculative expert testimony should be excluded because:

---

[16] June 27, 2005 Declaration of James Kipling (Docket No. 125) ¶ 29; May 23, 2005 Declaration of James Kipling (Docket No. 108) ¶¶ 44-47.

[17] 2002 U.S. Dist. LEXIS 12975, * 4 (S.D.N.Y. Jul 16, 2002).

[18] *In re Air Disaster at Lockerbie Scotland on December 21, 1988*, 37 F.3d 804, 824 (2d Cir. 1994) (upholding trial court's exclusion of speculative expert testimony). *See also Zaremba v. General Motors Corp.*, 360 F.3d 355, 358 (2d Cir. 2004) (same); *Baker v. Urban Outfitters, Inc.*, 254 F. Supp. 2d 346, 352-355 (S.D.N.Y. 2003) (granting motion in limine seeking to exclude speculative expert testimony).

> nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.[19]

Furthermore, opinions based on the expert's "personal, subjective views" are inadmissible because they "do not meet the core requirement of Rule 702 that expert testimony rest on 'knowledge,' a term that 'connotes more than subjective belief or unsupported speculation.'"[20]

Applying these standards, Kipling's opinion — that Fisher-Price pays royalties to Carterbench in order to avoid paying royalties to plaintiffs — should be excluded. There is an enormous "analytical gap" between the facts on which Kipling relies (payment of royalties to Carterbench on certain items despite the fact that they employ a slight modification to its technology and Fisher-Price's alleged request for the submission of the concept) and the conclusion Kipling has reached (that Fisher-Price set up an elaborate ruse to defraud plaintiffs). This speculation is not based on any "specialized knowledge," but rather on Kipling's "personal and subjective views." As such, this opinion is not reliable, and thus it is inadmissible under Rule 702. The Court should extend the ruling it made in response to Fisher-Price's motion to strike and preclude Kipling from testifying at trial that Fisher-Price's license with Carterbench was fabricated.

---

[19] *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

[20] *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 543 (S.D.N.Y. 2004) (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 590 (1993)) (granting motion in limine seeking to exclude expert opinions concerning purported ethical standards of pharmaceutical companies).

## Conclusion

For the foregoing reasons, the Court should preclude James Kipling from testifying at trial: (1) about whether the accused Fisher-Price products use the "Reel Heroes" concept; (2) as to any definition of the "Reel Heroes" concept other than the definition disclosed in his report; (3) about the effect or interpretation of the Option Agreement; and (4) that he believes Fisher-Price's license with Carterbench is fabricated.

Dated: January 6, 2006

**TYLER COOPER & ALCORN, LLP**

By _____/s/ Jacqueline D. Bucar_____
    Jacqueline D. Bucar
e-mail: jbucar@tylercooper.com
Federal Bar No.: ct01187
205 Church Street
P.O. Box 1936
New Haven, CT 06509-0906
Telephone: (203) 784-8269

**MILBANK, TWEED, HADLEY & MCCLOY LLP**
William E. Wallace, III
email: wwallace@milbank.com
Federal Bar No. PVH 0480
International Square Building
1825 Eye Street, N.W., Suite 1100
Washington, D.C. 20006
Telephone: (202) 835-7500

**HODGSON RUSS LLP**
Robert J. Lane, Jr.
e-mail: rlane@hodgsonruss.com
Federal Bar No.: ct24598
Jodyann Galvin
e-mail: jgalvin@hodgsonruss.com
Federal Bar No.: ct24599
One M&T Plaza, Suite 2000
Buffalo, NY 14203-2391
Telephone: (716) 856-4000

**ROBINSON & COLE LLP**
Bradford S. Babbitt
e-mail: bbabbitt@rc.com
Federal Bar No.: ct13938
Michael J. Kolosky
email: mkolosky@rc.com
Federal Bar No.: ct22686
280 Trumbull Street
Hartford, CT 06103-3597
Telephone: (860) 275-8200

*Attorneys for Fisher-Price, Inc.*

{03279 00136 BFLODOCS 1434616v1}

## CERTIFICATION

The undersigned hereby certifies that copies of the foregoing Fisher-Price Inc.'s Memorandum in Support of Defendant's Motion Seeking Preclusion of Testimony By Plaintiff's Expert James Kipling: (1) About The "Use" of The Concept; (2) As To a Different Definition of the Concept; (3) To Interpret The Option Agreement; and (4) That the Carterbench License Is Fabricated, dated January 6, 2006, were sent on the 6th day of January 2006 via first class mail to:

>Gregory J. Battersby, Esq. (Bar No. 07386)
>Edmund J. Ferdinand, III, Esq. (Bar No. 21287)
>Russell D. Dize, Esq. (Bar No. 23064)
>Grimes & Battersby LLP
>488 Main Avenue, Third Floor
>Norwalk, CT 06851-1008
>Telephone: (203) 849-8300
>Facsimile: (203) 849-9300
>
>Peter M. Nolin, Esq. (Bar No. 06223)
>Jay H. Sandak (Bar No. 06703)
>Sandak Hennessey & Greco LLP
>707 Summer Street
>Stamford, CT 06901
>Telephone: (203) 425-4200
>Facsimile: (203) 325-8608

_____
Jacqueline D. Bucar

003279:00136 BFLODOCS 1434788v1