UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

VICTOR G. REILING ASSOCIATES and :
DESIGN INNOVATION, INC., :
: 
             Plaintiffs :
: Civil No. 303CV222(JBA)
v. :
: January 6, 2006
FISHER-PRICE, INC. :
:
             Defendant. :
:

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION SEEKING PRECLUSION OF DESIGN INNOVATION'S CLAIMS THAT: (1) LINE EXTENSIONS "USE" THE REEL HEROES CONCEPT, AND (2) IT IS ENTITLED TO RECOVER DAMAGES ON LINE EXTENSIONS**

**Preliminary Statement**

Fisher-Price, Inc. submits this motion in limine pursuant to Federal Rules of Evidence 401, 402 and 403 and in support of its requests to preclude Design Innovation, Inc. ("DI") from claiming that products that DI characterizes as "line extensions" of the accused figures "use" the Reel Heroes concept, and from claiming that it has sustained damages as a result of Fisher-Price's sale of these products.

## Argument

### I. DI SHOULD BE BARRED FROM CLAIMING THAT LINE EXTENSIONS "USE" THE REEL HEROES CONCEPT

In its recent proposed jury charges, DI makes clear that it intends to introduce testimony and argue at trial that the Rescue Heroes vehicles and playsets that it characterizes as "line extensions"[1] actually "use" and embody the Reel Heroes concept.

> "You must also make a separate determination as to whether Fisher-Price made use of Design Innovation's concept with respect to each of the line extensions and accessories that were sold in connection with the four different Fisher-Price action figure lines."[2]

This is directly contrary to DI's memorandum opposing summary judgment, in which it argued that the Rescue Heroes vehicles and playsets did not "use" the Reel Heroes concept, but that it was nevertheless entitled to compensation based on some sort of undefined custom and practice in the toy industry.[3] This Court accepted DI's representation that it was not claiming that the Reel Heroes concept had been "used" or was embodied in the line extension products:

> "The other prior art referenced by defendants are playsets and can be distinguished on this ground, because they do not encompass plaintiffs' concept of adding an image

---

[1] DI argued in opposing summary judgment that the Mission Select Vehicles, the Voice Tech Vehicles, the Mountain Action Command Center playset, and the Aquatic Rescue Command Center playset were line extensions.

[2] DI's Proposed Jury Instructions, dated December 27, 2005, at 6 (Docket No. 149).

[3] *See* Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, dated May 23, 2005 (Docket No. 135), at 47 (arguing that plaintiffs are entitled to compensation for line extensions "that are 'sold together with or are marketed by F-P specifically for use with' the accused Rescue Heroes figures pursuant to industry custom and practice"; but not arguing that the line extensions are themselves "accused" products).

>displaying device to the equipment of an action figure. Moreover, as discussed below plaintiffs' claims for royalties on the Reel Heroes playsets produced by Fisher-Price sounds in industry custom and practice of paying royalties for line extensions, and are not claimed to depend on the novelty of the concept of an interactive playset in and of itself."[4]

The Court's statements that the Rescue Heroes playsets "do not encompass" plaintiffs' concept applies with equal force to the vehicles.[5] Because Design Innovation argued that line extensions were **not** a "use" or embodiment of the Reel Heroes concept, and persuaded the Court to accept this position in its December 14, 2005 Ruling, it must now be precluded from arguing at trial that line extensions are a "use" of the concept.

### II. DI SHOULD BE BARRED FROM INTRODUCING EVIDENCE OF DAMAGES BASED ON FISHER-PRICE'S SALES OF "LINE EXTENSIONS"

In its second amended complaint, DI made claims against several Fisher-Price products that are sold in conjunction with the accused figures as "line extensions."[6] As discussed above, these products do not themselves incorporate the accused "Reel Heroes" concept. They are merely intended to complement the accused figures. Nevertheless, DI seeks to recover damages based on the profits that Fisher-Price made on the sale of these "line extension" products.

---

[4] Ruling on Defendant's Motion for Summary Judgment, dated December 14, 2005 (Docket No. 145) ("December 14, 2005 Ruling") at 35, n.26.

[5] *See also* December 14, 2005 Ruling at 30 (setting forth plaintiffs' definition of their concept as "the use of a device or mechanism for displaying images on the backpack of a Rescue Heroes figure . . . ," which clearly excludes vehicles and playsets) & 50-51 (making clear that the basis of plaintiffs' claim against the line extension products is not that they "use" the Reel Heroes concept; "the basis for this claim is the purported industry custom and practice of compensating inventors for such line extensions. . . .").

[6] *See* Plaintiffs' Second Amended Complaint, dated November 19, 2004, at ¶¶ 36-39, Lane Dec. Ex. A.

4

DI should be barred from introducing evidence of damages based on Fisher-Price's sale of products that are "line extensions" of the accused figures. Because DI has no cognizable claim for damages relating to these products, evidence related to Fisher-Price's profits on these products would be irrelevant and unduly prejudicial to Fisher-Price and allowing the introduction of such evidence runs the risk of confusing and misleading the jury. *See* Fed. R. Evid. 401, 402, 403.

### A. The Existence of an Established Royalty Negates the Possibility of Recovery of Damages Based on Collateral Sales

Where there is an agreement between the parties for payment of an "established royalty" for an accused product, the plaintiff may *not* recover damages flowing from the defendant's sale of products that are sold *in conjunction* with the accused product, sometimes referred to as "collateral sales."

In the patent context, where the parties have negotiated a royalty agreement for a particular product or method, courts will presume as a matter of law that the negotiated royalty represents the entirety of what the parties intended the plaintiff to receive from the defendant in connection with the defendant's use of that product or method. Accordingly, there arises a presumption that the negotiated established royalty "by its nature incorporates the parties' expectations that licensees will derive collateral benefits through the use of the patented method [or licensed product]"[7] and that, therefore, the plaintiff may not recover twice for those collateral

---

[7] *Seal-Flex, Inc. v. W.R. Dougherty & Assocs.*, 254 F. Supp. 2d 647, 656 (E.D. Mich. 2003).

5

benefits or collateral sales.[8] Those "collateral benefits" include the sale of products (like "line extensions") that do not incorporate the invention at issue, along with products that do.

Here, the parties agreed to an established royalty, evident in the terms of the Option Agreement, negotiated and executed by the parties, under which Fisher-Price agreed to pay DI a 3% royalty if Fisher-Price exercised its option to use the Reel Heroes idea. It is undisputed that the Option Agreement only provides for a royalty on products that actually use the Reel Heroes concept;[9] it does not provide for royalties for products "sold along with" those that use the Reel Heroes concept, but do not embody the concept themselves.[10]

Because of the existence of an established royalty in the Option Agreement which is limited to products that actually use the Reel Heroes concept, DI may *not* recover additional damages that were not within the contemplation of the Option Agreement. The parties here had the opportunity to negotiate, and did negotiate, an agreement. That agreement necessarily reflects DI's maximum entitlement to Fisher-Price's profits related to the Reel Heroes concept as a matter of law. If the parties intended for DI to receive any compensation from products sold *in conjunction with* the products that incorporate the allegedly misappropriated idea, that intention would have been made manifest in the Option Agreement.[11]

---

[8] *See id.* (stating that "if the Court were to award Plaintiff additional damages based on collateral sales, above and beyond the established royalty, Plaintiff would in effect receive a double recovery").

[9] *See* Option Agreement, Lane Dec., Ex. L, ¶ 2 ("INVENTORS hereby grant to FISHER-PRICE, INC. the exclusive option [for] products incorporating the CONCEPT . . . .").

[10] *See* Option Agreement at ¶ 6(c) and Exhibit A (attaching to the Option Agreement a visual and written description of the Reel Heroes concept as applied to the existing Rescue Heroes action figures). Lane Dec, Ex. L.

[11] Furthermore, in opposition to Fisher-Price's summary judgment motion, Victor Reiling admitted that the Option Agreement did not include any provision for the payment of royalties on line extensions and

6

## Conclusion

For the foregoing reasons, this Court should grant Fisher-Price's motion to preclude DI from claiming that products that it characterizes as "line extensions" of the accused figures "use" the Reel Heroes concept, and from claiming that it has sustained damages as a result of Fisher-Price's sale of these products.

January 6, 2006

| | |
|---|---|
| **TYLER COOPER & ALCORN, LLP**<br><br>By _/s/ Jacqueline D. Bucar_<br>    Jacqueline D. Bucar<br>e-mail: jbucar@tylercooper.com<br>Federal Bar No.: ct01187<br>205 Church Street<br>P.O. Box 1936<br>New Haven, CT 06509-0906<br>Telephone: (203) 784-8269 | **MILBANK, TWEED, HADLEY & MCCLOY LLP**<br>William E. Wallace, III<br>email: wwallace@milbank.com<br>Federal Bar No. PVH 0480<br>International Square Building<br>1825 Eye Street, N.W., Suite 1100<br>Washington, D.C. 20006<br>Telephone: (202) 835-7500 |
| **HODGSON RUSS LLP**<br>Robert J. Lane, Jr.<br>e-mail: rlane@hodgsonruss.com<br>Federal Bar No.: ct24598<br>Jodyann Galvin<br>e-mail: jgalvin@hodgsonruss.com<br>Federal Bar No.: ct24599<br>One M&T Plaza, Suite 2000<br>Buffalo, NY 14203-2391<br>Telephone: (716) 856-4000 | **ROBINSON & COLE LLP**<br>Bradford S. Babbitt<br>e-mail: bbabbitt@rc.com<br>Federal Bar No.: ct13938<br>Michael J. Kolosky<br>email: mkolosky@rc.com<br>Federal Bar No.: ct22686<br>280 Trumbull Street<br>Hartford, CT 06103-3597<br>Telephone: (860) 275-8200<br><br>_Attorneys for Fisher-Price, Inc._ |

003279/00136 BFLODOCS 1434595v1

---

accessories. _See_ Declaration of Victor G. Reiling in Opposition to Fisher-Price's Motion for Summary Judgment, dated May 23, 2005 (Docket No. 107), at ¶ 33.

## CERTIFICATION

The undersigned hereby certifies that copies of the foregoing Fisher-Price Inc.'s Memorandum in Support of Defendant's Motion Seeking Preclusion of Design Innovation's Claims That: (1) Line Extensions "Use" The Reel Heroes Concept, and (2) It Is Entitled to Recover Damages on Line Extensions, dated January 6, 2006, were sent on the 6th day of January 2006 via first class mail to:

>   Gregory J. Battersby, Esq. (Bar No. 07386)
>   Edmund J. Ferdinand, III, Esq. (Bar No. 21287)
>   Russell D. Dize, Esq. (Bar No. 23064)
>   Grimes & Battersby LLP
>   488 Main Avenue, Third Floor
>   Norwalk, CT 06851-1008
>   Telephone:  (203) 849-8300
>   Facsimile:   (203) 849-9300
>
>   Peter M. Nolin, Esq. (Bar No. 06223)
>   Jay H. Sandak (Bar No. 06703)
>   Sandak Hennessey & Greco LLP
>   707 Summer Street
>   Stamford, CT 06901
>   Telephone:  (203) 425-4200
>   Facsimile:   (203) 325-8608

*(signature)*
Jacqueline D. Bucar