## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

VICTOR G. REILING ASSOCIATES and
DESIGN INNOVATION, INC.,

                      Plaintiffs,

      v.

FISHER-PRICE, INC.

                      Defendant.

Civil No. 303CV222(JBA)

January 6, 2006

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION SEEKING PRECLUSION OF TESTIMONY REGARDING CUSTOM AND PRACTICE IN THE TOY INDUSTRY

### Preliminary Statement

Design Innovation's expert James Kipling, Design Innovation's principals, and Victor Reiling have testified extensively in declarations filed with the Court and at deposition regarding certain alleged customs and practices in the toy industry, as described below. The Court should not permit Design Innovation ("DI") to present this testimony at trial.

As the Court already determined in its Ruling on Defendant's Motion to Strike (Docket No. 114), Reiling cannot testify about custom and practice in the toy industry because he was not disclosed as an expert. DI must thus be precluded from offering any testimony by Reiling about toy industry custom and practice at trial. Similarly, none of DI's principals was disclosed as an expert on custom and practice in the toy industry. Accordingly, they should all be precluded from testifying on this topic at trial as well.

DI should also be precluded from offering testimony by Kipling about toy industry custom and practice. Custom and practice evidence is only admissible if the party

offering it lays a foundation demonstrating that the alleged custom or practice is uniform and

unvarying. Kipling's testimony is not supported by a foundation meeting this high standard.

Additionally, the custom and practice testimony that Kipling has given in his declarations and

depositions contravenes both established law and written agreements between the parties, which

is impermissible, and in some instance also contradicts testimony previously given by DI's

principals and Reiling. For these reasons, as explained more fully below, the Court should bar

DI from offering testimony by Kipling about toy industry custom and practice at trial.

<u>**Argument**</u>

### I.    REILING SHOULD BE PRECLUDED FROM TESTIFYING ABOUT TOY <u>INDUSTRY CUSTOM AND PRACTICE</u>

In its Ruling on Defendant's Motion to Strike, the Court struck from Reiling's

May 20, 2005 Declaration his testimony "opin[ing] on the custom and practice in the toy

industry and what is typical or standard in the toy industry." (Docket No. 114, p. 6). The basis

for the Court's ruling was that: (1) custom and practice evidence requires expert testimony,[1] and

(2) Reiling was never disclosed as an expert. The Court should implement this ruling at trial

and, for the same reasons, preclude Reiling from testifying about custom and practice in the toy

industry at trial.

---

[1]    *Didzbalis v. Sheridan Transp. Co.,* 2002 U.S. Dist. LEXIS 22378, * 2 (S.D.N.Y. Nov. 19, 2002) (barring fact witness from testifying as to "propriety of the practices" used in the industry, stating that "expert testimony is necessary for the introduction of custom and practice evidence."). *See also Bank of China v. NBM LLC,* 359 F.3d 171, 182 (2d Cir. 2004) (holding that testimony based on the witness's "specialized knowledge . . . because of his extensive experience in the industry" was expert testimony which was inadmissible because the witness was not disclosed as an expert under Rule 702).

## II.    DESIGN INNOVATION'S PRINCIPALS SHOULD BE PRECLUDED FROM TESTIFYING ABOUT TOY INDUSTRY CUSTOM AND PRACTICE

In declarations filed in opposition to Fisher-Price's summary judgment motion,

DI principals Bruce Popek and Bruce Benedetto testified about what they believe to be toy

industry custom and practice.[2]  The Court should preclude all of DI's principals — Bruce

Benedetto, Douglas Melville, and Bruce Popek — from testifying at trial about toy industry

custom and practice, for the same reasons that the Court struck Reiling's declaration testimony

on this topic.  Custom and practice evidence can only be introduced by expert testimony, and

none of these individuals were disclosed as experts.[3]  Thus, they cannot testify about toy industry

custom and practice at trial.

## III.    DESIGN INNOVATION LACKS THE PROPER FOUNDATION FOR OFFERING TESTIMONY BY KIPLING ABOUT CUSTOM AND PRACTICE

Kipling has testified about several alleged customs in the toy industry, both at

deposition and in his May 23, 2005 and June 27, 2005 declarations, submitted in opposition to

Fisher-Price's summary judgment motion.[4]  His testimony about custom and practice in the toy

industry should be precluded at trial as it does not meet the high standards for admissibility of

this type of evidence.

---

[2]    May 20, 205 Declaration of Bruce Popek (Docket No. 109) ¶¶ 12-17; May 20, 2005 Declaration of Bruce Benedetto (Docket No. 110) ¶¶ 12-17.

[3]    Declaration of Robert J. Lane in Support of Motions in Limine, dated December 31, 2005, ("Lane Dec.") ¶ 15.

[4]    Kipling's May 23, 2005 Declaration (Docket No. 108) is cited to herein as the "Kipling 5/23 Dec." His June 27, 2005 Declaration (Docket No. 125) is cited to herein as the "Kipling 6/27 Dec." Reiling's May 20, 2005 Declaration (Docket No. 107) is cited to herein as the "Reiling 5/20 Dec."

A.    **The Standard for the Admissibility of
      Custom and Practice Evidence Is Extremely High**

      Under New York law,[5] the burden of proving that a custom or usage exists is on

plaintiffs: "[t]he burden of proving a trade usage has generally been placed on the party

benefiting from its existence."[6] Evidence of industry custom is admissible only if the alleged

custom is "'fixed and invariable' in the industry in question"[7] and the evidence establishes a

custom that is "general, uniform and unvarying."[8]  In other words, there must be proof that

custom is "well settled," "uniformly acted upon" and "long continued."[9]  Evidence that a practice

occurs "often,"[10] "frequently,"[11] or "usually"[12] is insufficient as a matter of law to establish an

---

[5]    As this Court previously noted in its Ruling on Plaintiffs' Motion for Leave to File a Second Amended Complaint, the parties have agreed that this case should be determined under New York law.  Docket No. 80, at 7, n.2.  Plaintiffs have recently changed that position with respect to their CUTPA claim, but the parties nevertheless continue to agree that this case will be primarily determined under New York law.

[6]    *British Int'l Ins. Co. Ltd. v. Seguros la Republica, S.A.*, 342 F.3d 78, 83 (2d Cir. 2003) (quoting *Putnam Rolling Ladder Co. v. Mfrs. Hanover Trust Co.,* 74 N.Y.2d 340, 348, 547 N.Y.S.2d 611, 546 N.E.2d 904 (1989)).

[7]    *Hutner v. Greene*, 734 F.2d 896, 900 (2d Cir. 1984) (quoting *Belasco Theatre Corp. v. Jelin Productions, Inc.*, 270 A.D. 202, 205, 59 N.Y.S.2d 42, 45 (1st Dep't 1945)). *See also Cleveland Wrecking Co. v. Hercules Constr. Corp.,* 23 F. Supp. 2d 287, 294 (E.D.N.Y. 1998) (missing price term in contract could not be supplied by evidence of industry practice as there was no proof regarding "readily discernable industry standard methodology"); *Van Diepen v. Baeza*, 1998 U.S. Dist. LEXIS 5763 at * 24-26 (S.D.N.Y. Feb. 26, 1998) (missing compensation amount in contract could not be supplied by plaintiff's testimony that 80/20 split was "an industry standard;" it was not established that 80/20 split was 'fixed and invariable' in the industry").

[8]    *Belasco Theatre*, 270 A.D. at 206, 59 N.Y.S.2d at 45.  *See also The London Assurance Corp. v. Thompson,* 170 N.Y. 94, 99 (1902).

[9]    *In the Matter of Reuters Ltd. v. Dow Jones Telerate, Inc.*, 231 A.D.2d 337, 343-44, 662 N.Y.S.2d 450, 454 (1st Dep't 1997).

[10]    *Hutner*, 734 F.2d at 900 (evidence that a certain formula was "often" used for setting finder's fee was insufficient to establish that it was custom in industry to use that formula).

[11]    *Id.*

[12]    *Belasco Theatre*, 270 A.D. at 204-05, 59 N.Y.S.2d at 44-45.

industry custom or practice. The practice of a single company "is generally insufficient to establish a trade usage."[13]

Additionally, when a party seeks to introduce evidence of trade usage, it "must show either that the other party to the contract is actually aware of the usage, or that the existence of the usage in the business to which the transaction relates is so notorious that a person of ordinary prudence in the exercise of reasonable care would be aware of it."[14] That is, "that one party had knowledge of the usage, and supposed that it would enter into the contract, is not sufficient."[15]

Custom and practice evidence is not admissible if it contravenes established law.[16] Thus, a court should preclude any testimony about custom and usage that "clearly contradicts an established principle of law."[17] Similarly, evidence of custom and practice may not be used to contradict express contractual obligations.[18] As New York's Court of Appeals has stated, "proof

---

[13]   *British Int'l Ins. Co.*, 342 F.3d at 84.

[14]   *Reuters,* 231 A.D.2d 343, 662 N.Y.S.2d at 454.

[15]   *Reuters,* 231 A.D.2d at 344, 662 N.Y.S.2d at 454-55. *See also Schlanger v. Heyman,* 185 A.D. 599, 601, 173 N.Y.S. 231, 231 (1st Dep't 1918); *British Int'l,* 342 F.3d at 84 (evidence of industry custom insufficient where plaintiff failed to show defendant "either actually knew of the alleged custom" or that the alleged custom was "so notorious in the industry that [defendant] must have been aware of it").

[16]   *Kasen v. Morrell,* 6 A.D.2d 816, 816-17, 175 N.Y.S.2d 315, 317 (2nd Dep't 1958) (custom and usage evidence cannot be admitted if it is "in opposition to fixed rules of law"); *In the Matter of the Application of Gerseta Corp. v. The Silk Ass'n of America,* 220 A.D. 293, 295, 222 N.Y.S. 11, 13 (1st Dep't 1927) (same).

[17]   *Hill v. NSB Niederliebe Schiffahrtsges MBH & Co.,* 2004 U.S. Dist. LEXIS 4837, * 4 (E.D. Pa. Mar. 5, 2004).

[18]   *Dierkes Transp., Inc. v. Germantown Cent. Sch. Dist.,* 295 A.D.2d 683, 684, 742 N.Y.S.2d 739, 741 (3d Dep't 2002)(reversing order granting judgment for plaintiff; trial court erred in relying "upon purported 'custom and practice' as a ground to disregard contractual obligations").

of general custom or usage . . . may not be interposed to alter, vary or contradict unambiguous contractual provisions or modify or change legal obligations assumed by the parties under their contracts."[19]

One New York appellate court has summarized the stringent requirements for custom and practice evidence as follows:

> The essential elements of a custom or usage are: It must be ancient; certain and uniform; compulsory; consistent; general; continued; notorious; reasonable; and not in contravention of law or public policy, and acquiesced in. . . . a custom must be compulsory, and not left to each one's option to obey it. . . . Further, it must be acquiesced in by all persons acting within the scope of its operations. . . . A custom, in order to become part of a contract, must be so far established and so far known to the parties, that it must be supposed that their contract was made in reference to it. For this purpose the custom must be established, *and not casual* -- uniform *and not varying* -- general *and not personal*, and known to the parties. . . . Usage is a matter of fact, not of opinion, and must be shown by those who have observed the method of transacting the particular kind of business as conducted by themselves and others. . . . A general custom is established only by proof of instances and not by characterization or generalizations made by witnesses.[20]

Kipling has admitted that none of the testimony about toy industry custom and practice that he previously offered meets these stringent requirements, and thus Design Innovation should be precluded from offering this testimony at trial, as set forth more specifically below.

---

[19]    *Pink v. American Surety Co. of New York*, 283 N.Y. 290, 296, 28 N.E.2d 842, 845 (1940).

[20]    *Gerseta Corp.*, 220 A.D. at 295, 222 N.Y.S. at 13 (internal quotations and citations omitted) (emphasis in the original).

B.    **Kipling Has Admitted That What He
Considers a "Custom" Does Not Meet
The Legal Standard**

At his deposition, Kipling was questioned about what he meant when he testified

that certain obligations were a matter of "custom and practice" in the toy industry.  He testified

that he did ***not*** consider "custom and practice" to mean that "it's always done that way," but only

that it is the way things are done "***more often than not***" in the industry.[21]  Kipling has thus

admitted that none of the alleged "customs" he has testified about meet the standard for

admission of evidence about a custom, which requires proof that the custom is unvarying and

uniform.  Accordingly, all of his testimony regarding custom and practice in the toy industry

should be barred.

C.    **Design Innovation Did Not Disclose Expert
Testimony Providing a Foundation for
Custom and Practice Evidence**

DI's failure to provide a sufficient foundation for Kipling's opinions regarding

industry custom and practice cannot be cured for two reasons.  First, in each instance, as

discussed below, DI's principals or Kipling has admitted under oath that there is no uniform and

unvarying practice in the toy industry.

Second, the necessary foundation -- proof that these practices are uniform and

unvarying -- can only be supplied by expert testimony.[22]  DI cannot introduce new expert

---

[21]    Lane Dec. Ex. I at 182-84.

[22]    *Didzbalis v. Sheridan Transp. Co.,* 2002 U.S. Dist. LEXIS 22378, * 2 (S.D.N.Y. Nov. 19, 2002) (barring
fact witness from testifying as to "propriety of the practices" used in the industry, stating that "expert
testimony is necessary for the introduction of custom and practice evidence.").  *See also Bank of China v.
NBM LLC,* 359 F.3d 171, 182 (2d Cir. 2004) (holding that testimony based on the witness's "specialized
knowledge . . . because of his extensive experience in the industry" was expert testimony which was
inadmissible because the witness was not disclosed as an expert under Rule 702).

testimony now, on the eve of trial, that was not part of its Rule 26 disclosure material. Because

Kipling's expert report never discussed the issue of whether any alleged custom and practice was

"uniform and unvarying," he is barred from providing the requisite foundation for the custom

and practice testimony. Thus, DI cannot cure the lack of foundation for the testimony offered by

Kipling about alleged custom and practice in the toy industry.

### D.    Kipling's Testimony Regarding the Confidentiality of Submissions Does Not Establish a Custom and Practice

Kipling has testified in a declaration opposing summary judgment that the

majority of toy companies agree to keep confidential the submissions of outside inventors.

Kipling 5/23 Dec. ¶ 15(b). Kipling should be precluded from testifying at trial that there is a toy

industry custom to this effect because he previously admitted at deposition that there are a

"variety of practices" (*i.e.*, no single custom) as to "whether toy companies commit to keep

inventors' submissions confidential."[23] Clearly, this testimony confirms that there is no custom

that is "fixed and invariable" with respect to confidentiality.[24] Additionally, DI may not use

custom and practice evidence to contravene the express terms of the Policy and Agreement,[25]

which explicitly stated that submissions made to Fisher-Price were not confidential.[26] This Court

---

[23]    *See* Lane Dec., Ex. J at 168-69.

[24]    *See, e.g., Hutner,* 734 F.2d at 900.

[25]    *Dierkes Transp.,* 295 A.D.2d at 684, 742 N.Y.S.2d at 741 (reversing trial court's decision after non-jury trial because trial court improperly relied on purported custom and practice that contravened express contractual obligations); *Pink,* 283 N.Y. at 296, 28 N.E.2d at 845 (rejecting defendant's attempt to avoid express contractual obligations by relying on proof of general custom and usage).

[26]    *See* Policy and Agreement, dated December 5, 1994 (attached to the Lane Dec. as Ex. K) at ¶ 1.

- 8 -

has already ruled that the Policy and Agreement governed Reiling's submission of the "Reel Heroes" concept to Fisher-Price.[27]

### E.    Kipling's Testimony Regarding Novelty Contravenes Established Law

Kipling has stated that "in the toy industry [novelty] is not a significant consideration" in determining whether an inventor is entitled to a royalty, except in limited circumstances. Kipling 5/23 Dec. ¶ 49. He later affirmed that this opinion regarding novelty was based upon his view of "custom and practice in the toy industry and how the industry operates." Kipling 6/27 Dec. ¶ 27. In stating that novelty is insignificant, Kipling's testimony is contrary to the well-established body of case law which holds that "absolute" novelty is required to recover under a misappropriation theory and that "novelty-to-the-buyer" is required to recover under a contract theory.[28] The Court has already noted that Kipling's testimony regarding novelty is contrary to law.[29]

Kipling has also suggested that in his experience in the toy industry, the combination of known elements may be considered novel. Kipling 5/23 Dec. ¶ 51. This opinion is completely contrary to the established principle that a combination of known features cannot be novel. As one court has explained, an inventor's "idea must 'show genuine novelty and

---

[27]    Ruling on Defendant's Motion for Summary Judgment (Docket No. 145) at 15, 40.

[28]    *See, e.g., Nadel v. Play-By-Play Toys & Novelties, Inc.*, 208 F.3d 368, 378 (2d Cir. 2000); *Paul v. Haley*, 183 A.D.2d 44, 52, 588 N.Y.S.2d 897, 902 (2d Dep't 1992).

[29]    Ruling on Defendant's Motion for Summary Judgment (Docket No. 145) at 29-30 n.21.

invention, and not merely a clever or useful adaptation of existing knowledge.'"[30]  Again, the

Court has already noted that Kipling's testimony on this point is contrary to law.[31]

As discussed above, custom and practice testimony that contravenes established

law is inadmissible.[32]  Kipling should thus be precluded from testifying at trial that:  (1) the

novelty of an inventor's submission is not significant to determining whether that submission has

been misappropriated, and (2) a combination of known elements may be novel.

### F.    Kipling's Testimony Regarding Payment on Line Extensions Does Not Establish a Custom and Practice

Kipling has taken the position in his expert report and in his declarations and

deposition testimony that DI is entitled to a royalty on products that do not actually embody or

"use" the "Reel Heroes" concept, but which should be considered "line extensions"[33] from the

concept.[34]  Although DI has never clearly identified exactly what products constitute line

extensions, it appears that DI includes in this category any product that is not itself an action

---

[30]    *Hogan v. D.C. Comics*, 48 F. Supp. 2d 298, 314 (S.D.N.Y. 1999).  S*ee also Khreativity Unlimited v. Mattel*, 101 F. Supp. 2d 177, 185-86 (S.D.N.Y.), *aff'd*, 242 F.3d 366 (2d Cir. 2000) (recognizing that even if "plaintiffs provided a compilation of elements never before offered to the public, plaintiffs' idea nevertheless lacks novelty because a combination of pre-existing elements is not considered novel"); *Brandwynne v. Combe Int'l, Ltd.*, 74 F. Supp. 2d 364, 376 (S.D.N.Y. 1999) ("a combination of pre-existing elements is not considered 'novel'"); *Educational Sales Programs, Inc. v. Dreyfus Corp.*, 65 Misc. 2d 412, 416, 317 N.Y.S.2d 840, 844 (S.Ct. N.Y.Co. 1970) ("[T]he judicious use of existing means, or the mixture of known ingredients in somewhat different proportions . . . partake more of the nature of elaboration and renovation than of innovation").

[31]    Ruling on Defendant's Motion for Summary Judgment (Docket No. 145) at 29-30 n.21.

[32]    *Kasen*, 6 A.D.2d at 816-17, 175 N.Y.S. 2d at 317; *Gerseta Corp.*, 220 A.D. at 295, 222 N.Y.S. at 13.

[33]    A "line extension" is a product that is related in some way to a prior product—essentially a "spin off."

[34]    *See* January 5, 2004 Expert Report of James Kipling (Lane Dec. Ex. B) at Point D; Second Supplement to Expert Report of James Kipling (Lane Dec. Ex. C) at 18; Declaration of James M. Kipling in Support of Motion to Amend Complaint, dated March 4, 2004 (Docket No. 54 ) at 10, ¶ 17(c).

figure.  DI's belief that it is entitled to royalties on line extensions is expressly based on its view

of custom and practice in the toy industry.[35]

        This testimony should be precluded.  Kipling and DI's principals themselves have

all testified that there is no uniform custom in the toy industry that requires payment on line

extensions.  DI admitted that "royalties on line extensions are [the subject of] specific

negotiations between inventors and toy companies. . . ."[36] and are "negotiated . . . on a case-by-

case basis."[37]  DI also conceded that "[s]ometimes the toy companies will agree to pay on line

extensions and sometimes they refuse."[38]  Kipling agreed that inclusion of line extensions and

accessories within the royalty obligation of a license agreement is "a matter of negotiation."[39]

Indeed, even Kipling's expert report makes clear that there is no custom and practice in the toy

industry to pay royalties on line extensions.[40]  Kipling also acknowledged at deposition that toy

companies often take the position that they will pay royalties on products that embody an

inventor's concept, but not on accessories or line extensions and that this is a "good faith"

position.[41]

---

[35]    Reply Declaration of Victor G. Reiling in Support of Plaintiffs' Motion for Leave to File a Second
Amended Complaint, dated March 4, 2004 (Docket No. 57) at ¶ 17(d).

[36]    Lane Dec. Ex. G at 90.

[37]    Lane Dec. Ex. F at 77.

[38]    Lane Dec. Ex. F at 78.

[39]    Lane Dec. Ex. J at 234; Ex. I at 184-85; Expert Report of James Kipling, dated January 5, 2004 (Lane Dec.
Ex. B) at Point D; Kipling 5/23 Dec. ¶ 38.

[40]    *See* Expert Report of James Kipling, dated January 5, 2004 (Lane Dec. Ex. B) at Point III.D ("[w]hether
the inventor is compensated when line extensions are independently created and developed by the toy
company is generally a matter of negotiation in the final license agreement for the submitted concept").

[41]    Lane Dec. Ex. J at 233-37.

DI has unequivocally conceded that there is no "fixed and unvarying" custom in the toy industry regarding royalty payments on line extensions. This admission prohibits DI from offering testimony at trial regarding any alleged toy industry custom for payment of royalties on line extensions.

### G.    Kipling's Testimony on the Binding Effect of the Policy and Agreement Does Not Establish a Custom and Practice

Kipling has testified that Fisher-Price's Policy and Agreement is not binding upon DI. Kipling 5/23 Dec. ¶ 15. He claims that this opinion is based on "custom and practice in the toy industry," without elaboration. Kipling 6/27 Dec. ¶ 28. But Kipling has repeatedly acknowledged there is no uniform practice as to whether toy companies require forms like the Policy and Agreement and that the terms of the agreements "differ markedly from company to company" and there is a "lack of consistency" regarding such agreements. Kipling 5/23 Dec. ¶ 15(b). Reiling has also testified that submission agreements are not uniform in the industry. Reiling 5/20 Dec. ¶ 14. This testimony clearly establishes that there is no well-settled, unvarying custom regarding submission agreements in the toy industry or their binding effect. Accordingly, Kipling should be precluded from testifying at trial that Fisher-Price's Policy and Agreement is not binding upon DI due to custom and practice in the toy industry.[42]

---

[42]    In addition, as the Second Circuit has made clear, issues of law, such as whether a contract is binding, are not appropriate for expert testimony. *See Marx & Co. v. Diners' Club, Inc.*, 550 F.2d 505, 512 (2d Cir. 1977) (reversing judgment for plaintiffs, finding that trial court erred in permitting expert witness to testify about the parties' legal obligations under a contract). This is the subject of another one of Fisher-Price's motions in limine.

H.    **Kipling's Testimony Regarding the Binding
      Effect of Inventors' Written Descriptions
      Does Not Establish a Custom and Practice**

Kipling has testified that inventors should not be legally bound by their own written descriptions of their submissions on concept submission forms or option agreements, apparently relying again on his personal view of toy industry custom and practice, and stating that these forms primarily serve "a record-keeping function" and that "inventors typically give little consideration to the description on the concept submission form." Kipling 5/23 Dec. ¶ 29. But Kipling provides no evidence that it is the unvarying, uniform custom in the toy industry that inventors are not expected to accurately and completely describe their submissions. Moreover, as discussed above, an opinion about what "typically" occurs fails to establish an industry custom.[43]

Further, Kipling's claim that "inventors typically give little consideration to the description on the concept submission form" is belied by Reiling's testimony that he would have tried to describe a concept accurately and completely on a concept submission form.[44] Kipling should thus be precluded from testifying at trial that based on industry custom, DI should not be bound by Reiling's written description of the submission on the concept submission form.[45]

---

[43]    *Hutner*, 734 F.2d at 900; *Belasco Theatre*, 270 A.D. at 204-05, 59 N.Y.S.2d at 44-45.

[44]    Lane Dec. Ex. H at 25.

[45]    This same testimony is also barred by the rule announced by the Second Circuit in *Marx*, 550 F.2d at 512, that expert testimony about parties' legal obligations under a contract is not appropriate.

## Conclusion

For the foregoing reasons, the Court should grant Fisher-Price's motion and preclude DI from offering testimony by Reiling, DI's principals, and Kipling regarding custom and practice in the toy industry at trial.

Dated: January 6, 2006


**TYLER COOPER & ALCORN, LLP**

By _____
        Jacqueline D. Bucar
e-mail: jbucar@tylercooper.com
Federal Bar No.: ct01187
205 Church Street
P.O. Box 1936
New Haven, CT 06509-0906
Telephone: (203) 784-8269


**MILBANK, TWEED, HADLEY & MCCLOY LLP**
William E. Wallace, III
email: wwallace@milbank.com
Federal Bar No. PVH 0480
International Square Building
1825 Eye Street, N.W., Suite 1100
Washington, D.C. 20006
Telephone: (202) 835-7500


**HODGSON RUSS LLP**
Robert J. Lane, Jr.
e-mail: rlane@hodgsonruss.com
Federal Bar No.: ct24598
Jodyann Galvin
e-mail: jgalvin@hodgsonruss.com
Federal Bar No.: ct24599
One M&T Plaza, Suite 2000
Buffalo, NY 14203-2391
Telephone: (716) 856-4000


**ROBINSON & COLE LLP**
Bradford S. Babbitt
e-mail: bbabbitt@rc.com
Federal Bar No.: ct13938
Michael J. Kolosky
email: mkolosky@rc.com
Federal Bar No.: ct22686
280 Trumbull Street
Hartford, CT 06103-3597
Telephone: (860) 275-8200


*Attorneys for Fisher-Price, Inc.*


- 14 -

## CERTIFICATION

The undersigned hereby certifies that copies of the foregoing Fisher-Price Inc.'s

Memorandum in Support of Defendant's Motion Seeking Preclusion of Testimony Regarding

Custom and Practice in the Toy Industry, dated January 6, 2006, was sent by U.S. Postal Service,

first class mail, to the attorneys of record recited below on this 6th day of January, 2006.

> Greogry J. Battersby, Esq. ( Bar No. 07386)
> Edmund J. Ferdinand, III, Esq. (Bar No. 21287)
> Russell D. Dize, Esq. (Bar No. 23064)
> Grimes & Battersby LLP
> 488 Main Avenue, Third Floor
> Norwalk, CT  06851-1008
> Telephone:  (203) 849-8300
> Facsimile:  (203) 849-9300
>
> Peter M. Nolin, Esq. (Bar No. 06223)
> Jay H. Sandak (Bar No. 06703)
> Sandak Hennessey & Greco LLP
> 707 Summer Street
> Stamford, CT  06901
> Telephone:  (203) 425-4200
> Facsimile:  (203) 325-8608

Jacqueline D. Bucar (CT 01187)

15.