UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

VICTOR G. REILING ASSOCIATES and
DESIGN INNOVATION, INC.,

      Plaintiffs,

- against -

FISHER-PRICE, INC.,

      Defendant.

Index No.: 3:03 CV 222 (JBA)

January 3, 2006

**PLAINTIFF'S OBJECTIONS TO DEFENDANT'S PROPOSED**
**PRELIMINARY AND FINAL SUBSTANTIVE JURY INSTRUCTIONS**

GRIMES & BATTERSBY, LLP
Gregory J. Battersby, Esq.
Edmund J. Ferdinand, III, Esq.
Russell D. Dize, Esq.
Susan Schlesinger, Esq.
Michael Ryan Patrick, Esq.
488 Main Avenue, Third Floor
Norwalk, Connecticut 06851-1008
(p) (203) 849-8300
(f) (203) 849-9300

SANDAK HENNESSEY & GRECO, LLP
Jay H. Sandak, Esq.
Peter M. Nolin, Esq.
707 Summer Street
Stamford, Connecticut 06901-1026
(p) (203) 425-4200
(f) (203) 325-8608

Attorneys for Plaintiff
Design Innovation, Inc.

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................... II

PROPOSED PRELIMINARY INSTRUCTION NO. 1.0 – EXPLANATION OF THE
    CASE............................................................................................................. 1

PROPOSED FINAL INSTRUCTION NO. 1.1 –
    CONCRETENESS........................................................................................ 2

PROPOSED FINAL INSTRUCTION NO. 1.2 – MISAPPROPRIATION AND UNFAIR
    COMPETITION – ABSOLUTE
    NOVELTY.................................................................................................... 3

PROPOSED FINAL INSTRUCTION NO. 1..3 AND 1.4 – MISAPPROPRIATION AND
    UNFAIR COMPETITION – CONFIDENTIAL
    RELATIONSHIP/WAIVER........................................................................... 4

PROPOSED FINAL INSTRUCTION NO. 1.5 AND 1.7 – MISAPPROPRIATION AND
    UNFAIR COMPETITION – USE/BURDEN OF
    PROOF.......................................................................................................... 7

PROPOSED FINAL INSTRUCTION NO. 1.6 – MISAPPROPRIATION AND UNFAIR
    COMPETITION – PAYING ANOTHER
    INVENTOR................................................................................................... 8

PROPOSED FINAL INSTRUCTION NO. 2.0 --
    DISCLAIMER/AGENCY............................................................................. 10

PROPOSED FINAL INSTRUCTION NO. 2.1 –
    DISCLAIMER/PARTNER............................................................................ 12

PROPOSED PRELIMINARY INSTRUCTION NO. 2.2 – DISCLAIMER/CO-
    OWNER......................................................................................................... 14

PROPOSED FINAL JURY INSTRUCTION NO. 3.0 – DAMAGES -
    GENERALLY................................................................................................ 15

PROPOSED FINAL JURY INSTRUCTION NO. 3.1 – DAMAGES -
    MISAPPROPRIATION/UNFAIR COMPETITION...................................... 16

PROPOSED FINAL JURY INSTRUCTION NO. 3.2 – DAMAGES – EFFECT OF EXISTING
    LICENSE AGREEMENT.............................................................................. 19

PROPOSED FINAL JURY INSTRUCTION NO. 3.3 – DAMAGES – NO DOUBLE
    COUNTING.................................................................................................. 23

PROPOSED FINAL JURY INSTRUCTION NO. 3.4 – DAMAGES – LINE
    EXTENSIONS............................................................................................... 26

PROPOSED FINAL JURY INSTRUCTION NO. 3.5 AND 3.6 – DAMAGES –
    PUNITIVE..................................................................................................... 32

# TABLE OF AUTHORITIES

Page

**Federal Cases**

*A&H Sportswear, Inc. v. Victoria's Secret Stores*, 166 F.3d 197 (3d Cir. 1999).......................... 22

*AEB & Associates Design Group, Inc. v. Tonka Corp.*, 853 F. Supp. 724 (S.D.N.Y. 1994).... 9, 30

*Allan Dampf P.C. v. Bloom*, 512 N.Y.S.2d 116 (N.Y. App. 2d Dept. 1987)............................... 16

*Ashland Management, Inc. v. Janien*, 624 N.E.2d 1007 (N.Y. 1993) ......................................... 20

*Ball v. Hershey Foods Corp.*, 842 F. Supp. 44 (D. Conn. 1993)................................................. 26

*Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979) ................................... 28

*Builders Hardware v. Dipiertro*, 2001 Conn. Super. LEXIS 2760 (Conn. Super. Ct. 2001) ....... 12

*Cargill, Inc. v. Sears Petroleum & Transp. Corp.*, 388 F. Supp. 2d 37 (N.D.N.Y. 2005) ........... 15

*Carvel Corp. v. Noonan*, 350 F.3d 6 (2d Cir. 2003). .................................................................. 34

*Cleghorn v. The New York Central and Hudson River Railroad Co.*, 56 N.Y. 44 (N.Y. 1874)... 33

*Construction Technology, Inc. v. The Lockformer Company, Inc.*,

    704 F. Supp. 1212 (S.D.N.Y. 1989)....................................................................................... 13

*Coors Brewing Co. v. Anheuser-Busch Co.*, 802 F. Supp. 965 (S.D.N.Y. 1992)........................ 15

*Dad's Root Beer Co. v. Doc's Beverages, Inc.*, 94 F. Supp. 121 (S.D.N.Y. 1950)...................... 17

*Downey v. General Foods Corp.*, 31 N.Y.2d 56, 334 N.Y.S.2d 874,

    286 N.E.2d 257 (N.Y. 1972).................................................................................................. 24

*E.R. Squibb & Sons, Inc. v. Lloyd's Companies*, 241 F.3d 154 (2d Cir. 2001)........................... 23

*Educ. Sales Programs Inc. v. Dreyfus Corp.*, 317 N.Y.S.2d 840 (N.Y. Sup. Ct. 1970)................ 2

*Estate of Hemingway v. Random House, Inc.*, 296 N.Y.S.2d 771 (N.Y. 1968)............................ 2

*Ferber v. Sterndent Corp.*, 433 N.Y.S.2d 85 (N.Y. 1980)............................................................. 9

*Gilroy v. American Broadcasting Company, Inc.*, 365 N.Y.S.2d 193

    (N.Y. App. 1st Dept. 1975)..................................................................................................... 17

*Gomez v. Bicknell*, 756 N.Y.S.2d 209 (N.Y. App. 2d Dept. 2002)......................... 18

*Greenbaum v. Svenska Handelsbanken*, 979 F. Supp. 973 (S.D.N.Y. 1997........................ 32

*Greenlight Capital, Inc. v. Greenlight (Switzerland) S.A.*, 2005 U.S. Dist. LEXIS 2
    (S.D.N.Y. 2005)......................... 29

*Hallock v. State*, 64 N.Y.S.2d 224 (1984) ......................... 10

*Hamilton-Brown Shoe Co. v. Wlf Bros. & Co.*, 240 U.S. 251 (1916)......................... 16

*Hidden Brook Air, Inc. v. Thabet Aviation Int'l, Inc.*, 241 F. Supp. 2d 246 (S.D.N.Y. 2002)....... 10

*Kahn v. Kohlberg, Kravis, Roberts & Co.*, 970 F.2d 1030 (2d Cir. 1992) ......................... 28

*Kistler Instrumente A.G. v. PCB Piezotronics*, 419 F. Supp. 120 (W.D.N.Y. 1976) ......................... 29

*Lemelson v. Carolina Enterprises, Inc.*, 541 F. Supp. 645 (S.D.N.Y. 1982) ......................... 29

*M.H. Segan Ltd. Prshp. v. Hasbro, Inc.*, 924 F. Supp. 512 (S.D.N.Y. 1996)......................... 2

*Mahoney v. Adirondack Pub. Co.*, 71 N.Y.2d 31, 517 N.E.2d 1365
    523 N.Y.S.2d 480 (1987)......................... 33

*McGhan v. Ebersol*, 608 F. Supp. 277 (S.D.N.Y. 1985) ......................... 12

*Michel Cosmetics, Inc. v. Tsirkas*, 282 N.Y. 195, 26 N.E.2d 16 (N.Y. 1940)......................... 16

*Michele Pommier Models, Inc. v. Men Women NY Model Mgmt, Inc.*
    1997 U.S. Dist. LEXIS 18294 (S.D.N.Y. Nov. 18, 1997) ......................... 15

*Munoz v. Lieb Puretz*, 753 N.Y.S.2d 463 (App. Div. 1st Dept. 2003) ......................... 33

*Nadal v. Play-by-Play Toys & Novelties, Inc.*, 208 F.3d 368 (2d Cir. 2000) ......................... 8

*New York Times Co. v. Glynn-Palmer Assoc., Inc.*, 138 Misc. 2d 862,
    525 N.Y.S.2d 565 (N.Y. Civ. Ct. 1988)......................... 7

*New York University v. Continental Insurance Co.*, 87 N.Y.2d 308, 662 N.E.2d 763,
    639 N.Y.S.2d 283 (1995)......................... 34

*Racanova v. Equitable Life*, 83 N.Y.2d 603, 634 N.E.2d 940,
    612 N.Y.S.2d 339 (1994)......................... 32

*Ramada FRanchise Systems, Inc. v. Boychuk*, 283 F. Supp. 2d 777 (N.D.N.Y. 2003) .................. 21

*Roginsky v. Richardson-Merrell*, 378 F.2d 832 (2d Cir. 1967) .................................................. 33

*Rose v. Brown & Williamson Tobacco Corp.*, 2005 N.Y. Misc. LEXIS 2392

    N.Y. Slip Op. 25459 (N.Y. Sup. Ct. Sept. 29, 2005) ......................................................... 32

*Rosenberg. Minc & Armstrong v. Cadillo & Grossman*, 798 N.Y.S.2d 322

    (S. Ct. N.Y. Co. 2005) .................................................................................................... 33

*Roy Export Co. Establishment of Vaduz, Lichtenstein v. Columbia Broad. Sys.*,

    672 F.2d 1095 (2d Cir. 1982) .......................................................................................... 30

*Sachs v. Cluett, Peabody & Co.*, 29 N.Y.S.2d 853 (App. Div. 1st. Dept. 1943) ........................... 5

*Sands, Taylor & Wood v. Quaker Oats*, 34 F.3d 1340 (7th Cir. 1994) ...................................... 22

*Schering Corp. v. Roussel*, 104 F.3d 341 (Fed. Cir. 1997) ..................................................... 5, 6

*Scholastic, Inc. v. Harris*, 259 F.3d 73 (2d Cir. 2001) ............................................................. 30

*Shannon v. MTA Metro-North Railroad*, 704 N.Y.S.2d 208 (1st Dept. 2000) ......................... 28

*Sladick v. Hudson General Corp.*, 641 N.Y.S.2d 270 (App. Div. 1st Dept. 1996) ................... 33

*Softel, Inc. v. Dragon Medical and Scientific Communities, Inc.*,

    891 F. Supp. 935 (S.D.N.Y. 1995) .................................................................................. 19

*Softel, Inc. v. Dragon Medical and Scientific Communities, Inc.*,

    118 F.3d 955 (2d Cir. 1997) ............................................................................................ 17

*Sporn v. MCA Records*, 58 N.Y.2d 482 (N.Y. 1983) ............................................................... 29

*Suburban Graphics Supply Corp. v. Nagle*, 5 A.D.3d 663, 774 N.Y.S.2d 160

    (N.Y. App. 2d Dept. 2004) ............................................................................................. 16

*Taylor v. Meirick*, 712 F.2d 1112 (7th Cir. 1983) .................................................................... 28

*Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947 (7th Cir. 1992) .................................... 22

*Tehran-Berkeley Civil & Envt'l Eng'rs v. Tippetts-Abbett-McCarthy-Stratton*,

    888 F.2d 239 (2d Cir. 1989) ........................................................................................... 12

*Topps Company, Inc. v. Cadbury Stani S.A.I.C.*, 380 F. Supp.2d 250 (S.D.N.Y. 2005) .......... 17, 5

*Travis v. St. John*, 176 Conn. 69 (1978) ................................................................................ 30

*University Computing Co. v. Lykes-Youngstown Corp.*, 504 F.2d 518 (5th Cir. 1974) ............. 20

*Vitor Corp. of America v. Hall Chemical Co.*, 292 F.2d 678 (6th Cir. 1961) ........................ 21, 7

*Wallach v. Kurowski (in Re Buffalo Rest. Equip., Inc.)*, 284 B.R. 770 (W.D.N.Y. 2002) ............. 7

*Willingham v. Lawton*, 555 F.2d 1340 (6th Cir. 1977) ........................................................... 5, 14

*Wilson v. Fairchild Republic Co.*, 143 F.3d 733 (2d Cir. 1998) ................................................ 31

*Yurman Design, Inc. v. Chaindom Enterprises, Inc.*, 2003 U.S. Dist. LEXIS 15064
    (S.D.N.Y. Aug. 29, 2003) ...................................................................................................... 7

*Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321 (1971) ..................................... 28

**Statutes**

15 U.S.C. § 1051 .......................................................................................................................... 21

35 U.S.C. § 262 ............................................................................................................................ 23

Conn. Gen. Stat. § 34-314 ..................................................................................................... 12, 13

N.Y. C.P.L.R. § 214 ..................................................................................................................... 27

**Miscellaneous**

N.Y. Jur. 2d, *Evidence and Witnesses* § 164 (2000) ..................................................................... 7

New York Pattern Jury Instructions Civil (Vol. II § 3:58) .......................................................... 17

Restatement of Torts ................................................................................................................... 17

Plaintiff, Design Innovation, Inc. ("DI"), respectfully submits the following objections to Defendant, Fisher-Price, Inc.'s ("F-P"), Proposed Preliminary and Final Substantive Jury Instructions ("F-P Jur.").

## Proposed Preliminary Instruction No. 1.0
### Explanation of the Case

DI objects to this proposed charge on multiple grounds.

In paragraph one, DI objects to the characterization of itself as a work for hire design company that "Much less frequently . . . submits concepts for new toys to toy companies." (F-P Jur. at 1). That proposed sentence should be removed because it is contrary to the evidence to be submitted at trial. DI also moves to exclude it based on Fed. R. Evid. 403 because the sentence has virtually no probative value and it has a negative connotation that may prejudice the jury.

In paragraph two, DI objects to the reference that "Mr. Reiling submitted the concept to Fisher-Price" (*Id.*) to the extent that it suggests that this was Mr. Reiling's concept or that he was acting on behalf of himself or as DI's agent at any time. The evidence at trial will show that DI and Reiling jointly conceived the concept, that the parties were joint owners of the concept and that the parties jointly submitted the concept to Fisher-Price.

DI objects to paragraph three in its entirety and the first sentence of paragraph 4 under Fed. R. Evid. 403 because any probative value will be substantially outweighed by the unfair prejudice that will result from this explanation. DI submits that the jury need only be informed that "Mr. Reiling was at one time a plaintiff in this case, but he is no longer a plaintiff in this case for reasons that are not for the jury's consideration." DI believes that if the jury is told the circumstances for Reiling's dismissal, it will unfairly prejudice and slant the jury by casting a cloud on DI's claims that is not warranted or justified under the circumstances of the case.

## Proposed Preliminary Instruction No. 1.1
### Misappropriation and Unfair Competition - Concreteness

DI objects to this request to charge on the ground that the proposed language "If you find that the idea or concept was not fixed *but rather was vague or changing over time*" (F-P Jur. at 4) (emphasis added) is contrary to law and prejudicial. The law holds that a concept is concrete if it is in a "fixed and concrete form [so] as to indicate a protectible idea," *Educ. Sales Programs, Inc. v. Dreyfus Corp.*, 317 N.Y.S.2d 840, 845 (N.Y. Sup. Ct. 1970); *see M.H. Segan Ltd. Pshp. v. Hasbro, Inc.*, 924 F. Supp. 512, 526 (S.D.N.Y. 1996), or if the concept is "embod[ied] in a tangible form." *Estate of Hemingway v. Random House, Inc.*, 296 N.Y.S.2d 771, 776 (N.Y. 1968). There is no basis to include F-P's proposed language regarding the vagueness or changing nature of DI's concept, other than to slant the jury towards F-P's view of the case. F-P is certainly free to argue these points to the jury during closing argument, but they should not be included in the jury charge because the proposed language is contrary to law.

## Proposed Final Instruction No. 1.2
### Misappropriation and Unfair Competition – Absolute Novelty

DI objects to the proposed instruction as follows:

In the first paragraph on page 7, DI objects to the proposed instruction that the test for novelty is "a stringent one." (F-P Jur. at 7). DI believes this statement is more prejudicial than probative and should be excluded pursuant to Fed. R. Evid. 403. DI is concerned that the jury may perceive that a "stringent" test is one that is impossible to meet, which would prejudice the jury and foreclose any chance of DI prevailing at trial. DI also objects to the remainder of that sentence, "the idea must show genuine novelty or invention and not merely a clever or useful adaptation of existing knowledge," (*Id.*), because that same language appears on page five. The use of that language is, therefore, duplicative and unnecessary.

DI objects to the second paragraph on page 7 to the extent that F-P continues to refer to the concept at issue as "Mr. Reiling's submission." The evidence at trial will show that the concept was a joint effort of Reiling and DI.

3

**Proposed Final Instruction Nos. 1.3 and 1.4**
**Misappropriation and Unfair Competition – Confidential Relationship/Waiver**

These charges mirror the arguments F-P raises in its Motion for Reconsideration, filed with the Court on or about December 28, 2005. By that Motion, F-P claims that DI cannot establish the existence of a confidential relationship with F-P to support a claim for misappropriation under New York law because the 1994 Policy and Agreement form signed by DI's co-inventor, Victor Reiling, destroyed any confidentiality as to DI. (F-P Mem. Law at 2-3).

DI intends to file a formal brief in opposition to F-P's Motion for Reconsideration in accordance with the schedule set by the Court. DI intends to oppose F-P's motion for reconsideration based on the following grounds:

First, the Motion mischaracterizes the nature of the submission, as F-P continually refers to it as "Reiling's submission." (*Id.*) The summary judgment record clearly establishes that the concept was jointly conceived and owned by both DI and Reiling, and the submission to Fisher-Price was a joint submission. (Ruling at 12). Once the submission is correctly characterized as a joint submission, F-P's argument for lack of confidentiality as to DI fails because DI had an expectation of confidentiality when it made its submission to F-P. (*Id.* at 40-41). Toy industry custom and practice and the parties' experts confirm the expectation of confidentiality. (*Id.*)

F-P is incorrect when it asserts that "the relevant issue is not whether Reiling was an agent or whether DI was "bound" by the P&A." (F-P Mem. at 3). In fact, that remains the crucial factual issue to be determined by the jury at trial. DI can only be bound by a waiver signed by its co-inventor (prior to the time that the two entities began working together) if Reiling had the authority to bind DI at the time Reiling and DI jointly submitted their concept to DI in 1998. (Ruling at 12-13).

4

Importantly, F-P fails to cite a single case to support its contention that Reiling's execution of the 1994 P & A form destroys confidentiality as to DI. The cases F-P cites merely stand for the general proposition that a trade secret must be kept secret (*see* F-P Mem. at 3, *citing Sachs v. Cluett, Peabody & Co.*, 29 N.Y.S.2d 853, 856-57 (App. Div. 1st Dept. 1943), or that a waiver agreement can preclude the existence of a confidential relationship as to the inventor who actually signed the waiver. (F-P Jur. at 8, *citing M. H. Segan Ltd. Partnership v. Hasbro, Inc.*, 924 F. Supp. 512, 523 (S.D.N.Y. 1996)).

DI submits that F-P's Motion for Reconsideration and proposed requests to charge are also contrary to well established principles of intellectual property law. Indeed, in the Summary Judgment Ruling the Court recognized that a joint owner of an intellectual property right, such as a patent, has an indivisible interest in that property and may license it to a third party without the co-owner's consent. (Ruling at 14) (citing, *Willingham v. Lawton*, 555 F.2d 1340, 1344 (6th Cir. 1977).[1] *See also Schering Corp. v. Roussel*, 104 F.3d 341, 344 (Fed Cir. 1997) ("Each co-owner's ownership rights carry with them the right to license others, a right that also does not require the consent of any other co-owner").

The Federal Circuit's holding in *Schering Corp.* refutes F-P's argument that DI, as a co-owner of the concept with Reiling, is bound by Reiling's execution of the 1994 Policy and Agreement form for any purpose. As the court explained:

> The flaw in Schering's argument is that the right to license is not incompatible with the unilateral right to sue, as Schering insists. It is true that by granting a license to a prospective defendant, or to a defendant that has already been sued for infringement, a patent co-owner can effectively deprive its fellow co-owner of the right to sue for and collect any infringement damages that accrue after the date of the license. It is also true that the suing co-owner may not obtain an injunction

---

[1] This is consistent with Section 262 of the Patent Act, which provides: "[i]n the absence of any agreement to the contrary, each of the joint owners of a patent may make, use, offer to sell, or sell the patented invention within the United States, or import the patented invention into the United States, without the consent of and without accounting to the other owners." 35 U.S.C. § 262.

5

> against future acts of infringement by the licensee, since the license grants full protection against a claim of future infringement. **But the grant of a license by one co-owner cannot deprive the other co-owner of the right to sue for accrued damages for past infringement. That would require a release, not a license, and the rights of a patent co-owner, absent agreement to the contrary, do not extend to granting a release that would defeat an action by other co-owners to recover damagers for past infringement . . . one co-owner lacks 'the power . . . to destroy the other's accrued right to damages.'**

(*Id.* at 345) (citations omitted; emphasis added). Thus, *Schering Corp.* confirms the Court's Summary Judgment Ruling that Reiling's execution of the 1994 P&A form does not constitute a waiver as to DI – either as a general waiver of liability or a specific waiver as to lack of a confidential relationship - simply because the parties were co-owners of the concept. Clearly, the law does not permit one co-owner of an intellectual property right to destroy the rights of its co-owner without that co-owner's knowledge and consent, as F-P erroneously asserts.

For the reasons stated herein and in DI's memorandum of law in opposition to F-P's Motion for Reconsideration, DI asks the Court to strike any attempt to insert into a request to charge language that refers to or suggests that Reiling's execution of the 1994 P&A form eliminated the confidential relationship between DI and F-P.

**Proposed Final Instruction Nos. 1.5 and 1.7**
**<u>Misappropriation and Unfair Competition – Use/Burden of Proof</u>**

DI objects to these charges on the ground that F-P fails to acknowledge that it bears the burden of proof for all of its affirmative defenses, including the defenses that (1) DI is bound by the acts of its agent, Reiling; and (2) it independently developed the accused Rescue Heroes products without regard to use of DI's concept. *Yurman Design, Inc. v. Chaindom Enterprises, Inc.*, 2003 U.S. Dist. LEXIS 15064 at *5 (S.D.N.Y. Aug. 29, 2003) ("Independent creation is an affirmative defense, evidence of which may be used to rebut a prima facie case of infringement"); 57 N.Y. Jur. 2d, *Evidence and Witnesses* § 164 (2000); *Wallach v. Kurowski (in Re Buffalo Rest. Equip., Inc.)*, 284 B.R. 770, 774 n 3 (W.D.N.Y. 2002); *New York Times Co. v. Glynn-Palmer Assoc., Inc.*, 138 Misc. 2d 862, 865; 525 N.Y.S.2d 565 (N.Y. Civ. Ct. 1988).

## Proposed Final Instruction No. 1.6
## Misappropriation and Unfair Competition – Paying Another Inventor

DI objects to this request to charge on the ground that F-P seeks to rewrite the law of misappropriation in this Circuit and to erase fifty years of toy industry custom and practice in a single stroke. F-P seeks to have the Court instruct the jury that it can find for F-P in the event the jury finds that F-P chose to use the concept submitted by a another inventor, even though DI's submitted its concept to F-P first, the second submission was the "same concept" as DI's, and even though F-P had access to DI's submission and the accused Rescue Heroes products are substantially similar to DI's concept. (F-P Jur. at 12).

F-P has explained in great detail the elaborate steps that a toy company such as F-P takes in soliciting, accepting, reviewing and processing outside concepts. Why would a toy company such as F-P feel compelled to take such Herculean steps if they could simply say to an inventor, "Sorry. We took a similar idea in after you and have decided to compensate that inventor and not you?" F-P's position on this point is certain to send shockwaves throughout the inventor community since, if they truly believe it, it will dramatically change the relationship between toy company and inventor.

F-P's proposed jury instruction is contrary to law. *See Nadel v. Play-By-Play Toys & Novelties, Inc.*, 208 F.3d 368, 371-72 (2d Cir. 2000) ("Toy companies regularly do business with independent inventors" such as Design Innovation "in order to develop and market new toy concepts as quickly as possible." "If the company subsequently uses the disclosed idea, industry custom provides that the company shall compensate the inventor, unless, of course, the disclosed idea was already known to the company"). Indeed, F-P fails to cite a case that even remotely supports its request to charge. The cases F-P cites stand for general propositions that are not relevant to its proposed charge, such as that subsequent disclosure of a concept in a patent

8

application destroys the novelty of a submission (*see Ferber v. Sterndent Corp*, 433 N.Y.S.2d 85, 86 (N.Y. 1980); and general statements about proof of the defense of independent development. *See AEB & Associates Design Group, Inc. v. Tonka Corp.*, 853 F. Supp. 724, 734 (S.D.N.Y. 1994).

F-P's proposed request to charge is contrary to toy industry custom and practice, which provides that a toy company will compensate an inventor if it uses the disclosed concept. *See Nadel*, 208 F.3d at 371-72. The evidence at trial will establish that toy companies regularly pay the first inventor to submit a concept and, thereby, provide the inspiration for a new toy product. Against this backdrop, it must be appreciated the definition of "use" in the toy industry is broadly construed and it is quite common for the finished toy product to bear little, if any resemblance to the concept that was originally taken in by that toy company. It is the inventor's role in the toy industry to develop "concepts" while it is the toy company's responsibility to develop these concepts into final, refined and commercial products. Indeed, as F-P concedes, toy companies routinely make changes to the concept during the development process, but a royalty will be paid nonetheless. (*See* Kipling Summary Judgment Declaration at ¶¶ 10-12; Dize Summary Judgment Declaration., Exh. A, pp. 84-97; Exh. B, pp. 58-60; Exh. C, pp. 15-20).

F-P's proposed charge is also contrary to logic and reason. Such a charge would essentially provide a company with a license to misappropriate (*i.e.* steal) a disclosed concept from a first inventor merely because the same or similar concept later came in the door from another inventor. Such a result would be impermissible.

**Proposed Final Instruction No. 2.0**
**Disclaimer/Agency**

DI objects to this charge on the grounds that it is legally unsound as it relates to the concept of "apparent authority", and, therefore, is an improper charge to be given to the jury in this case.

Specifically, Fisher-Price mischaracterizes both the conduct required by DI and the standard by which Fisher-Price's belief must be judged. Apparent authority "arises from the written or spoken words or any other conduct of the principal which, reasonably interpreted, causes a third person to believe that the principle consents to have an act done on his behalf by the person purporting to act for him." *Hidden Brook Air, Inc. v. Thabet Aviation Int'l, Inc.*, 241 F. Supp. 2d 246, 261 (S.D.N.Y. 2002)(emphasis added). In other words, in order to find the existence of apparent authority, the jury must decide that Fisher-Price reasonably interpreted the "words or conduct" of DI as conferring the "appearance and belief" that Mr. Reiling had authority to bind DI. *Hallock v. State*, 64 N.Y.S.2d 224, 231 (1984).

Fisher-Price's charge is also misleading insofar as it fails to cite the necessary connection that DI's "words or conduct" must lead Fisher-Price to a reasonable belief of authority. Under no circumstances can Mr. Reiling "by his own acts imbue himself with apparent authority." *Id.* ("the existence of 'apparent authority' depends upon a factual showing that the third party relied upon the misrepresentation of the agent because of some misleading conduct on the part of the principal – not the agent").

DI also objects to the final paragraph of this charge as legally unsustainable, and, therefore, is an improper charge.

In their final paragraph of this charge, Fisher-Price posits that "[i]t is possible for a person who submits an idea to another to agree on behalf of his or her co-inventor will not

10

pursue any claims against the person to whom the idea was submitted unless the co-inventor has a patent or copyright for the idea." This sentence improperly suggests that the mere fact that a co-inventor agrees not to pursue claims that the other co-inventor is *automatically* bound to that agreement. This is untrue and misleading.

As set forth above, the mere fact that one is a co-owner of intellectual property does not confer on one co-owner unilateral rights to make such an agreement.

There is no cause to include this paragraph in the charge to the jury, as it is only benefit would be to prejudice the jury against DI.

## Proposed Final Instruction No. 2.1
### Disclaimer/Partner

DI objects to this charge in full on the grounds that it is factually inaccurate and legally untenable, and, therefore is an improper charge to be given to the jury in this case.

Fisher-Price deliberately seeks to lead the jury to believe that a partnership exists any time two or more persons carry on a business for profit. This is not the law in either Connecticut or New York. The formation of a partnership depends upon evaluating the particular set of circumstances presented by the parties, including investigating "the intent of the parties." *Travis v. St. John*, 176 Conn. 69, 73 (1978). For example, in New York, the "crucial factors to be considered are the intent of the parties, express or implied, whether there was joint control and managements of the business, whether there was sharing of profits and losses, and where there was a combination of property, skill or knowledge." *McGhan v. Ebersol*, 608 F. Supp. 277, 282 (S.D.N.Y. 1985) (discussing joint ventures[2]). Ultimately, the jury must find a "mutual agency relationship" (*Builders Hardware v. Dipiertro*, 2001 Conn. Super. LEXIS 2760, *9 (Conn. Super. Ct. 2001) which is "determined from <u>all the facts and circumstances</u>" of Mr. Reiling and DI's relationship. *AEB & Associates Design Group v. Tonka Corp.*, 853 F. Supp. 724, 732 (S.D.N.Y. 1994) (internal quotations omitted).

Under Connecticut law, a partnership is <u>not</u> born from the mere existence of joint or shared rights in property. Conn. Gen. Stat. § 34-314(c)(2)( "sharing of gross returns does not by

---

[2] "Under New York law joint ventures are governed by the same legal rules as partnerships...." *Scholastic, Inc. v. Harris*, 259 F.3d 73, 84 (2d Cir. 2001)(citing *Tehran-Berkeley Civil & Envt'l. Eng'rs v. Tippetts-Abbett-McCarthy-Stratton*, 888 F.2d 239, 243 (2d Cir. 1989)).

itself establish a partnership, even if the persons sharing them have a joint or common right or interest in property from which the returns are derived").[3]

More importantly – and in complete contradiction to Fisher-Price's proposed jury instruction – even shared profit by a co-owner *is not sufficient to create a partnership*. Conn. Gen. Stat. § 34-314(c)(1)("Joint property, common property and part ownership does not by itself establish a partnership, even if the co-owners share profits made by the use of the property.").

As a result, DI asks the Court not to charge the jury in the manner suggested by F-P.

---

[3] The choice of law for the partnership determination is unclear. New York law governs the case, but DI and Reiling are both Connecticut companies. DI submits that application of Connecticut law would be proper, but also includes New York law for purposes of completeness.

## Proposed Final Instruction No. 2.2
### Disclaimer/Co-Owner

DI objects to this charge in full on the grounds that it is factually inaccurate and legally untenable, and, therefore is an improper charge to be given to the jury in this case, for the reasons stated above at pages 23-24.

As this Court stated in its summary judgment decision, no case law exists that would justify "find[ing] that Reiling's execution of the P&A prior to the commencement of its business relationship withy DI can constitute a waiver of DI's rights to sue Fisher-Price, merely because the concept submitted to Fisher-Price is co-owned by Reiling." (Ruling at 14). This Court has already rejected Fisher-Price's lone case in support of this subject, *Willingham v. Lawton.*, 555 F.2d 1340 (6th Cir. 1977). That case "merely provides that a co-owner may grant a license to a third-party without its co-owners' consent." *Id.* As set forth above, the Federal Circuit's decision in *Schering Corp.* confirms that a co-owner of an intellectual property rights cannot destroy the rights of another co-owner without that owner's knowledge and consent.

Because F-P has failed to cite to a single case to support its proposed charge, and because established principles of intellectual property law refute the proposed charge, it should be rejected in full.