UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

VICTOR G. REILING ASSOCIATES and      :
DESIGN INNOVATION, INC.,      :
     :
         Plaintiffs      :
     :     Civil No. 303CV222(JBA)
   v.      :
     :     January 9, 2006
FISHER-PRICE, INC.      :
     :
         Defendant.      :
     :

### REPLY MEMORANDUM IN SUPPORT OF
### FISHER-PRICE, INC.'S MOTION FOR RECONSIDERATION

This memorandum is submitted in reply to Plaintiff's Memorandum of Law in Opposition to

Fisher-Price's Motion for Reconsideration (the "DI Memo.") and in further support of Fisher-Price's motion

for reconsideration. Fisher-Price submits this reply memorandum to address certain issues not raised by DI

previously in opposition to summary judgment or at any other time during this case. Those matters are

discussed below.

1.      **The element of a legal relationship or a confidential disclosure.**

DI argues that it does not need to show that it disclosed the Reel Heroes concept to Fisher-

Price on a confidential basis in order to prevail on its misappropriation claim, indicating that it could satisfy

that element by showing "an express contract, an implied-in-fact contract, or a quasi-contract." DI Memo. at

3-4. The problem with this is that DI has repeatedly claimed that the Reel Heroes concept was disclosed to

Fisher-Price on a confidential basis and has never argued that any other "legal relationship" existed at the

time the Reel Heroes concept was disclosed to Fisher-Price. In addition, this Court has already dismissed

DI's implied contract claim, and DI has never alleged a quasi-contract.

In opposition to this motion, DI asserts that the Option Agreement creates some sort of

undefined confidential relationship. DI Memo. at 8-9. The terms of the Option Agreement demonstrate that

this is not correct. First, the Option Agreement imposes no confidentiality obligations on Fisher-Price. Second, the Option Agreement expired in May 1999. Even if it imposed confidentiality obligations on Fisher-Price (which it did not), those obligations did not survive the expiration. Indeed, the Option Agreement contains a term expressly providing that no obligations (whether confidentiality or otherwise) survive expiration, stating that "neither party shall have any additional obligations to each other" at the end of the Option Term.[1]

## 2.    DI does not dispute that the concept was disclosed to Fisher-Price on a non-confidential basis.

DI admits that "Reiling himself may have been the one who actually presented the concept to F-P in October 1998." DI Memo. at 2. DI does not deny that Reiling's disclosure of the concept was made on a non-confidential basis pursuant to the P&A or that this Court has already ruled that it was. Instead, DI argues only that "there is substantial evidence that [Reiling] was doing so [*i.e.*, disclosing the concept to Fisher-Price] on behalf of both himself and DI." DI Memo. at 2. This simply confirms that Reiling's non-confidential disclosure of the concept to Fisher-Price destroyed any possible misappropriation claim DI could have asserted. The record before this Court on Fisher-Price's summary judgment motion is undisputed that DI itself had no contact with Fisher-Price about the Reel Heroes concept in connection with the initial disclosure of the concept or at any time prior to the Option Agreement four months later.[2] New York law is clear that, on a misappropriation claim, the focus is on the *initial* disclosure of the concept; if that disclosure

---

[1]    *See* 4/29/05 Lane Declaration (the "Lane Dec."), Ex. 25 ¶ 4 [Docket No. 94]. The Option Agreement is discussed in greater detail in "Fisher-Price's Memorandum in Opposition to Plaintiffs' Motion for Reconsideration," dated January 2, 2006, at pages 7-9.

[2]    Reply Declaration of Russell D. Dize, dated June 20, 2005 ("Dize Reply Dec."), Ex. B at 106-07 [Docket No. 128-2] (deposition testimony of Bruce Benedetto that "Design Innovation did not deal directly with Fisher-Price" and that "[t]he dealings were through Vic Reiling"); Dize Reply Dec., Ex. C at 38 (deposition testimony of Bruce Popek explaining that Reiling "was going to do the contact and initial meeting with Fisher-Price" and that DI purposely selected Reiling to make the initial contact and presentation of the concept because DI "separates their speculative work from their work for hire, and we almost always use someone to market our ideas"). *See also* Declaration of Bruce Popek, dated May 20, 2005 at ¶ 5 [Docket No. 109] and Declaration of Bruce Benedetto, dated May 20, 2005 at ¶ 5 [Docket No. 110], both of which expressly incorporate ¶¶ 26-28 of the Declaration of Victor G. Reiling, dated May 20, 2005 [Docket No. 107], in which Reiling describes how he alone met with Paul Snyder of Fisher-Price to present the concept for the first time in October 1998.

is not made on a confidential basis, then the concept enters the public domain and no misappropriation claim may be brought.[3]

In opposing Fisher-Price's summary judgment motion, it was DI's burden to come forward with admissible evidence that it actually submitted the concept on a confidential basis. It is obviously impossible for DI to show that it "submitted" the concept on a confidential basis to Fisher-Price or that it had a confidential relationship with Fisher-Price regarding the concept when it had *no contact whatsoever* with Fisher-Price relating to the concept at the time of the initial disclosure. Because DI admits that the concept was submitted solely through Victor Reiling and Mr. Reiling made that submission on a non-confidential basis, the concept entered the public domain, barring any subsequent misappropriation claim.

### 3.    The P&A bars any implied confidential relationship.

Surprisingly, DI argues that "since the stated purpose of the 1994 P&A was to create no rights until the parties reached further written agreements, it is clear that F-P assumed the parties could form a protected confidential relationship after the disclosure of a concept under the 1994 P&A." DI Memo. at 2. This admission is significant in two respects. First, it is a direct admission that there was *no* "protected confidential relationship" at the time of the disclosure of the Reel Heroes concept under the 1994 P&A (since DI appears to be relying on an alleged subsequent relationship). As discussed above, this is fatal to any misappropriation claim under New York law.

Second, this characterization of the 1994 P&A (that it was not intended to create rights in the parties without a further written agreement) is essentially accurate, although not complete. The language at issue states:

> "No obligation of any kind is assumed by, nor may be implied against Fisher-Price, Inc., unless and until a formal written contract has been entered into, and then the obligation shall be only such as is expressed in the formal written contract executed by an officer of Fisher-Price, Inc."[4]

---

[3]      *See* cases cited in footnote 6 below.

[4]      Lane Dec., Ex. 20 ¶ 2.

- 3 -

Thus, the P&A had the effect of barring any implied agreements or agreements by conduct from arising. Courts have recognized that these sorts of "no implied agreement" clauses prohibit a party from arguing that a confidentiality obligation arose implicitly through the parties' actions or conduct.[5] Thus, the effect of the clause that DI brought to the attention of this Court on page 2 of its memorandum is to bar any argument that the conduct of the parties implicitly created a confidential relationship or an obligation to hold the Reel Heroes concept confidential. This language also bars DI's argument that the Option Agreement imposed on Fisher-Price a confidentiality obligation, because paragraph 2 of the 1994 P&A specifically provides that the obligations assumed by Fisher-Price are limited to "such as is *expressed* in the formal written contract." It is undisputed that the Option Agreement does not "express" any confidentiality obligation on the part of Fisher-Price.

4.    **Patent and Copyright Rights.**

DI argues that property rights in the Reel Heroes concept could not have been destroyed by the 1994 P&A, because that "would mean that patent or copyright rights in the concept would be similarly destroyed, which is clearly not the case." DI Memo. at 3. This is simply wrong. The patent statute, 35 U.S.C. § 102(b), provides that patent rights are only destroyed by "public use" or "sale" if made "more than one year prior to the date of the application for patent in the United States." Accordingly, the right to patent the Reel Heroes concept (it if otherwise qualified for patent protection) would have survived disclosure under the 1994 P&A for twelve months.

5.    **Disclosure to a single potential purchaser.**

DI questions whether "disclosure to a single potential purchaser on a non-confidential basis destroys the confidentiality of the idea." DI Memo. at 6. Caselaw under the Patent Act confirms that intellectual property rights *are* destroyed by disclosure to even a "single potential purchase or on a non-

---

5    *Techs. Inc. v. IBM Corp.*, 2005 U.S. Dist. LEXIS 20311, at *42 (S.D.N.Y. Sept. 19, 2005) ("Although a confidential relationship may be implied in a proper case, where there is an express agreement between the parties covering the subject matter, the law will not create another by inference") (*citing Ferroline Corp. v. Gen. Aniline & Film Corp.*, 207 F.2d 912, 922 (7th Cir. 1953)).

confidential basis."[6] Moreover, all of the case law upholding and enforcing confidentiality waivers of the type at issue here dealt with disclosures to a "single potential purchaser."[7]

### 6.   No confidentiality obligation arose "implicitly by the actions of the parties or other circumstances."

On page 4 of its memorandum, DI argues that a duty to keep the Reel Heroes concept confidential could have arisen "implicitly by actions of the parties or other circumstances." The Court also inquired as to whether a confidentiality obligation could arise on such a basis. The problem with this is that there were no "actions" by DI of any type that could have given rise to a confidentiality obligation owed by Fisher-Price. It is undisputed that DI had no contacts or communications with Fisher-Price relating to the Reel Heroes concept until approximately four months after the initial submission, after any property rights had been destroyed. Moreover, this Court has already ruled that no implied agreements could have arisen between the parties. 12/14/05 Summary Judgment Ruling at 23-25 (the "Ruling"). This includes an implied agreement to maintain the Reel Heroes concept confidential.[8]

---

[6]   *In re Caveney*, 761 F.2d 671, 676 (Fed. Cir. 1985) "[i]t is well established . . . that *a single sale or offer to sell is enough to bar patentability*" under the "on-sale" bar of 35 U.S.C. § 102(b)) (emphasis added); *Evans Cooling Sys., Inc. v. General Motors Corp.*, 125 F.3d 1448 (Fed. Cir. 1997) (holding that a single offer to sell a patented invention, made more than one year before the date of the patent, was sufficient to trigger the "on-sale" bar and find the patent invalid); *Finnsugar Bioproducts, Inc. v. Amalgamated Sugar Co., LLC*, 2001 U.S. Dist. LEXIS 3529, at *12 (N.D. Ill. Mar. 28, 2001) (same).

[7]   *M.H. Segan Ltd. P'ship v. Hasbro, Inc.*, 924 F.Supp. 512, 526 (S.D.N.Y. 1996) (holding that a nearly identical waiver of any confidential relationship "negates the existence of a legal relationship based on a . . . confidential relationship" necessary for a misappropriation claim). *See also Kublan v. Hasbro*, 1999 U.S. Dist. LEXIS 3226, at *5-7 (S.D.N.Y. Mar. 23, 1999) (upholding waiver of confidentiality and rejecting plaintiffs' argument that the waiver was unconscionable because plaintiff was — like Reiling — an "experienced toy inventor . . . seeking something for his own profit"); *AEB & Assoc. v. Tonka Corp.*, 853 F.Supp. 724, 735 n.8 (S.D.N.Y. 1994) ("Kenner was released from liability under [the Kenner] Confidentiality Agreement when Kiscom presented the Jet Art submission to Fisher-Price without restriction: [*i.e.*, on a non-confidential basis]; *Webb v. CPG Prods. Corp.*, 1981 U.S. Dist. LEXIS 16600, at *2-3 (S.D.N.Y. Dec. 21, 1981) (upholding waiver of confidentiality sent by plaintiff's expert James Kipling to an inventor when he was counsel to Kenner Toys). *See also* 2 MILGRIM ON TRADE SECRETS § 7.01[2] at 7-27 ("Nor can disclosure of information after the prospective licensee has carefully disclaimed a confidential relationship or any implied duty, be the basis for an action"); 1 MILGRIM ON TRADE SECRETS § 3.03 at 3-30 ("[an] express disclaimer by the disclose of a confidential relationship from the outset will dispel the existence of such a relationship"). Such waivers are not unique to the toy industry. *See Kearns v. Ford Motor Co.*, 203 U.S.P.Q. 884, 886 (E.D. Mich. 1978) (no confidential relationship where plaintiff "acknowledged defendant's disclaimer regarding its practical incapacity to receive and accept confidential disclosures" by signing a waiver agreement when making disclosures to automobile company); *Telechron, Inc. v. Parissi*, 120 F.Supp. 235, 240 (N.D.N.Y. 1954), *aff'd*, 229 F.2d 440 (2d Cir. 1956) (noting that, in the 1940s, General Electric warned inventors that the company "cannot consider any idea or invention on the basis of a confidential relationship").

[8]   *See Techs. Inc.*, 2005 U.S. Dist. LEXIS 20311, at *42.

- 5 -

### 7.   Fisher-Price accurately cited applicable legal authority.

DI argues that *Sachs v. Cluett & Peabody & Co.*, 265 A.D. 497, 39 N.Y.S.2d 853, 857 (1st
Dep't 1943), is inapposite because it involved "a claim under a confidentiality agreement." DI Memo. at 4.
However, the portion of the *Sachs* opinion cited by Fisher-Price dealt expressly with the nature of trade
secrets as "property," finding that any property interest in a trade secret is destroyed when it is disclosed.[9]
DI attempts to distinguish the *Lemelson* and *M&T Chemicals* cases because the trade secrets at issue there
were disclosed to more than a single person.  As discussed above, that argument is dealt with by cases like
*M.H. Segan, Kublan, Webb,* and *AEB,* all of which found that confidentiality was destroyed by disclosure to
a single person such that no misappropriation claim could be pursued.

DI argues that Fisher-Price "misrepresents the holding of" *Kublan v. Hasbro,* 1999 U.S. Dist.
LEXIS 3226, contending that it held that "plaintiff had no 'Misuse of Trade Secret Claim' because the idea
had been in the public domain." DI Memo. at 6.  In fact, the "misuse of trade secret claim" referenced in
*Kublan* was a tort-based misappropriation claim and the reason the court found that the idea "had been in the
public domain" was because it had been disclosed to a single potential purchaser (Hasbro) in 1992 under a
waiver of confidentiality like the one at issue here.

DI argues that Fisher-Price "mischaracterizes" *AEB & Associates Design Group v. Tonka
Corp.*, 853 F. Supp. 724, because that court allegedly "dismissed plaintiff's misappropriation claim solely on
the grounds of novelty and independent invention, without ever mentioning the element of a confidential
relationship." DI Memo. at 7.  This is simply incorrect.  The *AEB* court ruled that "Kenner was released
from liability under the Confidentiality Agreement when Kiscom presented the Jet Art submission to Fisher-
Price without restriction." 853 F. Supp. at 735.  The reference to presenting the submission to Fisher-Price
"without restriction" relates to the fact that "Fisher-Price reviewed the submission pursuant to its 'Policy and
Agreement'". . . which "provided that 'the disclosure must be understood to be purely voluntary and is not

---

[9]   Indeed, the language at issue follows the Court's statement that "the plaintiff maintains that he does not plead and
need not rely upon his contract but that he pleads upon a violation of a confidential relationship," making clear that
the claim at issue was essentially a misappropriation/property-based claim. 397 N.Y.S. 2d at 856.

- 6 -

made in confidence.'" 853 F. Supp. at 728. The Fisher-Price Policy and Agreement at issue in this case is, of course, the same document which the *AEB* court found destroyed any confidential relationship.

Finally, DI tries to distinguish *M.H. Segan v. Hasbro*, 924 F. Supp. 512, on the ground that it "did not engage in a thorough analysis of the other ways in which New York law recognizes facts and circumstances which could create a legal relationship." DI Memo. at 7. In fact, the *Segan* court expressly considered other "facts and circumstances which could create a legal relationship" and rejected them due to the confidentiality waiver. 924 F. Supp. at 526 n. 17 ("the presence of a written contract (or Waiver) precludes any finding of a legal relation based on theories of implied contract or quasi-contract"). The court then went on to find that a confidentiality waiver identical to the one at issue here was effective to bar any argument that a submission had been made on a confidential basis.

## 8.   The *Nadel* Case.

DI continues to rely in error on *Nadel v Play-by-Play Toys*, 208 F.3d 368, 378 (2d Cir. 2000), quoting its language that "the standard custom and practice in the toy industry calls for companies to treat the submission of an idea as confidential." DI refers to this as "settled law in the Second Circuit." DI Memo. at 9. A review of *Nadel* makes clear that the Second Circuit was simply construing facts in the manner most favorable to the plaintiff-appellant on the appeal of a summary judgment decision, as required by the procedural law applicable to summary judgment review. Obviously, the Second Circuit was not intending to set forth a rule of law as to what "custom and practice in the toy industry" would be, because that is a fact-dependent issue. In any event, the undisputed record on *this* summary judgment motion is directly to the contrary. As this Court noted during argument of Fisher-Price's motion in limine on custom and practice, DI's expert, James Kipling, acknowledged that there is no "custom and practice" in the toy industry with regard to confidentiality of toy submissions and that, in fact, there are "a variety of practices" (*i.e.*, no single custom) as "to whether toy companies commit to keep inventors' submissions confidential."[10]

---

[10]   Lane Dec., Ex. 12 at 168-69.

### 9. The co-owner issue.

DI cites *Schering Corp. v. Roussel*, 104 F.3d 341, 344 (Fed. Cir. 1997), for the proposition that a co-owner of intellectual property may have the unilateral right to license the property, but he does not have the right to grant a release that would defeat an action by other co-owners to recover damages for past infringement. DI Memo at 12. The problem with this argument is that Fisher-Price is not asserting that Reiling, as co-owner, provided a release or a waiver of liability that bound DI.[11] Instead, Fisher-Price is simply contending that Reiling, as co-owner of the Reel Heroes concept, disclosed it to Fisher-Price on a non-confidential basis and that this bars DI from establishing an essential element of its misappropriation claim. There is no legal support for the idea that a co-owner (or even someone with no rights in the concept) cannot disclose an idea on a non-confidential basis. Indeed, if Mr. Reiling's disclosure of the Reel Heroes concept on a non-confidential basis was wrongful, then DI's claim lies against him and not Fisher-Price.

### 10. The 1994 P&A.

DI raises two issues about the 1994 P&A. First on page 13 of its memorandum, DI argues that the 1994 P&A gave Fisher-Price no right to "use" the Reel Heroes concept. This is wrong for two reasons. First, it clearly did, stating that Fisher-Price is "released from any liability in connection with the receipt and examination of your disclosure, except as to such liability that may accrue under any valid patents or copyrights." By its very terms, liability "in connection with the receipt" of a concept includes anything that occurs after the company "receives" the concept. Moreover, the exception for claims "under any valid patents or copyrights" makes clear that this clause was intended to release claims arising from "use" of the submission.

In any event, it is not relevant on this motion whether the 1994 P&A gave Fisher-Price the right to "use" the Reel Heroes concept. The sole basis of this motion for reconsideration is Fisher-Price's contention that DI cannot, in view of the undisputed record on the summary judgment motion, raise an issue of fact as to whether the Reel Heroes concept was disclosed to Fisher-Price on a confidential basis or in the

---

[11]    As agent or partner, or of course, Reiling could and did do so.

- 8 -

context of a confidential relationship. DI does not really dispute that it was disclosed by Reiling on a non-confidential basis.

Second, DI notes that "the 1994 P&A Agreement was designed to protect F-P from claims resulting from unsolicited submissions," apparently ascribing some significance to this fact and implying that the 1994 P&A is effective only to bar claims arising from unsolicited submissions. DI Memo. at 13. If so, this supports Fisher-Price's position on this motion. It is undisputed, and both Victor Reiling and Bruce Benedetto (principal of DI) testified, that the submission of the Reel Heroes concept was not solicited by Fisher-Price. Lane Dec., Ex. 3 at 44-45, Ex. 7 at 38.

### 11. The 1994 P&A was the result of an arm's-length bargain.

At oral argument, the Court raised an issue regarding the fairness of interpreting the 1994 P&A as resulting in a circumstance where no misappropriation of idea claim could ever be raised because the element of the confidential relationship could not be shown. There are three answers to this. First, this Court has ruled that the 1994 P&A is not unconscionable. Ruling at 18.

Second, the disclaimer of a confidential relationship impacts only common law misappropriation/unfair competition claims of the type DI seeks to pursue here. It does not affect claims for patent or copyright infringement; it does not affect claims for a breach of contract. DI has repeatedly argued, both on this motion and on its own motion to reconsider, that Fisher-Price's conduct somehow violated the 1994 P&A or the Option Agreement. While Fisher-Price disagrees, if DI is correct, it should have pleaded and pursued a claim for breach of express contract. Instead, it withdrew its breach of express contract claim in response to Fisher-Price's motion to change venue, electing to abandon that claim. DI should not be heard to complain that it is somehow "inequitable" that it is left without a remedy, when it intentionally abandoned the contractual rights on which it now seeks to rely.

Third, the courts have uniformly rejected the idea that confidentiality waivers are somehow "unfair." *See Kublan*, 1999 U.S. Dist. LEXIS 3226, at *4 n.1 ("plaintiff was an experienced toy inventor at the time he entered into this commercial transaction seeking something for his own profit. The waiver in this

- 9 -

case, therefore, is not unconscionable."); *M.H. Segan*, 924 F. Supp. at 526 (enforcing a nearly identical

confidential waiver and citing several other cases which did the same); *AEB*, 853 F. Supp. at 728 & 735-36

(finding the *exact* confidentiality waiver in Fisher-Price's Policy and Agreement to be enforceable).

### Conclusion

For these reasons, the Court should grant Fisher-Price's motion for reconsideration and

dismiss Design Innovation's claims in their entirety.

Dated: January 9, 2006

**TYLER COOPER & ALCORN, LLP**

By /s/ Jacqueline D. Bucar
Jacqueline D. Bucar
e-mail: jbucar@tylercooper.com
Federal Bar No.: ct01187
205 Church Street
P.O. Box 1936
New Haven, CT 06509-0906
Telephone: (203) 784-8269


**HODGSON RUSS LLP**

Robert J. Lane, Jr.
e-mail: rlane@hodgsonruss.com
Federal Bar No.: ct24598
Jodyann Galvin
e-mail: jgalvin@hodgsonruss.com
Federal Bar No.: ct24599
One M&T Plaza, Suite 2000
Buffalo, NY 14203-2391
Telephone: (716) 856-4000


**MILBANK, TWEED, HADLEY & MCCLOY
LLP**

William E. Wallace, III
email: wwallace@milbank.com
Federal Bar No. PHV0480
International Square Building
1825 Eye Street, N.W., Suite 1100
Washington, D.C. 20006
Telephone: (202) 835-7500


**ROBINSON & COLE LLP**

Bradford S. Babbitt
e-mail: bbabbitt@rc.com
Federal Bar No.: ct13938
Michael J. Kolosky
email: mkolosky@rc.com
Federal Bar No.: ct22686
280 Trumbull Street
Hartford, CT 06103-3597
Telephone: (860) 275-8200

*Attorneys for Fisher-Price, Inc.*

003279/00136 BFLODOCS 1435473v1

- 10 -

## CERTIFICATION

The undersigned hereby certifies that copies of the foregoing Reply Memorandum in

Support of Fisher-Price, Inc.'s Motion for Reconsideration dated January 9, 2006, was sent via

e-mail and by U.S. Postal Service, first class mail, to the attorneys of record recited below on this

9th day of January, 2006.

> Greogry J. Battersby, Esq. ( Bar No. 07386)
> Edmund J. Ferdinand, III, Esq. (Bar No. 21287)
> Russell D. Dize, Esq. (Bar No. 23064)
> Grimes & Battersby LLP
> 488 Main Avenue, Third Floor
> Norwalk, CT 06851-1008
> Telephone: (203) 849-8300
> Facsimile: (203) 849-9300
>
> Peter M. Nolin, Esq. (Bar No. 06223)
> Jay H. Sandak (Bar No. 06703)
> Sandak Hennessey & Greco LLP
> 707 Summer Street
> Stamford, CT 06901
> Telephone: (203) 425-4200
> Facsimile: (203) 325-8608

Jacqueline D. Bucar (CT 01187)