UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| VICTOR G. REILING ASSOCIATES and DESIGN INNOVATION, INC., <br><br> Plaintiffs, <br><br> - against - <br><br> FISHER-PRICE, INC., <br><br> Defendant. | Index No.: 3:03 CV 222 (JBA) <br><br><br> January 9, 2006 |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
FISHER-PRICE'S MOTION TO STRIKE JURY DEMAND**

Plaintiff, Design Innovation, Inc. ("DI"), files this memorandum of law in opposition to Fisher-Price's ("F-P") Motion to Strike Design Innovation Inc.'s Jury Demand, which was filed on December 30, 2005.

In this motion, F-P mischaracterizes the nature and substance of DI's claims in this litigation and slants the applicable law. It should be appreciated that DI's remaining claims in this action are for misappropriation and unfair competition, i.e., tort claims that are legal in nature. More important, DI has always sought damages as its primary requests for relief on its claims including these two claims.

DI made a timely demand for a jury in this case and F-P made no objection and even consented to a jury trial as of the time of the Court's telephone conference on December 16, 2005, after the Court's Summary Judgment Ruling entered on December 15, 2005. The Court, having now picked a jury and having prepared with the parties' consent for a jury trial, should

allow DI to proceed to the currently scheduled jury trial on January 17, 2006.[1] The jury should be permitted to determine the facts of DI's claims of misappropriation and unfair competition and should be permitted to assess reasonable compensatory damages on either the theory that DI's damages should be measured on the basis of F-P's profits from the misappropriated concept or that DI may be awarded its lost profits based on what it would have received based on a reasonable royalty. In addition, the jury should be permitted to hear and determine whether F-P's conduct warrants the imposition of punitive damages and the amount of such damages in accordance with New York law.

## BACKGROUND

DI first claimed this case to a jury with its original Complaint. DI restated its demand for a jury with the filing of its Second Amended Complaint dated November 19, 2004. After the Court's recent Summary Judgment Ruling, DI continues to have claims for common law misappropriation and unfair competition under New York law and a claim for accounting based on the misappropriation claim.[2] DI's prayers for relief include the following:

---

[1] As noted in oral argument, it is at best curious that F-P waited until just two court days before jury selection to raise this issue, after having made no mention of its newly discovered grounds to strike the jury when proposed jury instructions were filed days earlier and after the parties had conferred about witnesses and exhibits for trial pursuant to this Court's Pretrial Procedures just minutes before the Motion was served.

[2] As the Court is aware, DI has sought reconsideration of the imposition of summary judgment on its CUTPA claim and Reiling has sought reconsideration as to whether he should continue to have claims for misappropriation and unfair competition notwithstanding the 1994 P&A.

2

> b. That Plaintiffs be awarded compensatory damages consisting of a royalty on Fisher-Price's sales of the "Rescue Heroes" action figures, accessories, line extensions and licensed products which use Plaintiffs' product concept;
>
> c. That Plaintiffs be awarded compensatory damages consisting of a disgorgement of all Fisher-Price profits and other benefits gained from the commercialization of "Rescue Heroes" action figures, accessories, line extensions and licensed products which use Plaintiffs' product concept;
>
> d. That Plaintiffs be awarded punitive damages based on Fisher-Price's willful and wanton misappropriation and activities that unfairly compete with Plaintiffs:

*See* Second Amended Complaint at p. 15. DI also included two claims for injunctive relief, but, with the passage of time, those claims are now moot.[3] Thus, it is clear that DI has sought compensatory damages in at least two forms: (1) based on the reasonable value or profit of what DI would have earned based upon a reasonable royalty theory or (2) based on the profits F-P actually made on the concept it misappropriated from DI.

F-P appeared ready to proceed to a jury trial and so represented to this Court in the telephone status conference held on December 16, 2005 two days after the parties received the Court's Ruling on the Summary Judgment Motion. F-P's first filing with this Court in preparation for trial, its proposed jury instructions submitted to this Court on December 27, 2005, continued this position. In its proposed *Final Jury Instruction No. 3.1 Damages-- Misappropriation/Unfair Competition*, F-P has asserted that under New York law the "measure

---

[3] DI hereby withdraws its prayers for relief lettered (e) and (f) in Second Amended Complaint, which sought an injunction against further sales of products incorporating Plaintiff's concept and the destruction of any remaining product incorporating Plaintiff's concept.

3

of damages for misappropriation of a concept or idea is the profits" that DI would have made but for the misappropriation. Thus, F-P has already conceded that, under New York law, DI was asserting a legal claim for damages which customarily would be tried to a jury.

In contrast, F-P's Motion to Strike the Jury Demand reflects a change in position which is not only filed at the eleventh hour to DI's prejudice, but, more importantly, is based on a gross mischaracterizations of DI's claims.

First, F-P belatedly tries to characterize the misappropriation and unfair competition claims as essentially equitable without referencing the many cases which have recognized these claims are legal in nature. In addition, F-P asserts that the remedies DI seeks are essentially equitable and seeks to characterize the claim for disgorgement of profits as a form of restitution relief which should be deemed equitable. In its Motion to Strike, F-P seems to assume that DI's claim would be limited to the disgorgement of F-P profits on the misappropriated concept. F-P's Motion to Strike ignores DI's claim for compensatory damages based on a reasonable royalty theory and ignores its own prior proposed jury charges, which recognized that DI was seeking damages in its claims for lost profits. Thereafter, as part of its submission to the Court with the Joint Pretrial Memorandum, F-P filed motions in limine which assert, inconsistent with the Motion to Strike, that DI cannot even bring a claim for disgorgement damages.

In another turn, F-P seeks to re-characterize DI's claims yet again. F-P has submitted a letter brief on January 6, 2006, which now asserts that DI is limited to the recovery of a reasonable royalty and that such an award does not constitute damages but rather is "a form of restitution designed to prevent unjust enrichment." All of these twists of position appear to be designed to try to deprive DI of its right to a jury trial while, at the same time, avoiding DI's

legal claim for damages based on the disgorgement of the multi-millions in dollars in profits that F-P has made from the misappropriated concept.

Obviously DI disagrees with F-P's ever changing characterization of the law on these issues and its effort to re-characterize what are clear claims for compensatory damages as prayers for equitable relief.

**ARGUMENT**

I. **FEDERAL LEGAL STANDARDS CONTROL THE JURY ANALYSIS**

It is well settled that the question of a right to jury trial, even on state claims, is to be decided as a matter of federal law. When state-created rights are enforced in the federal courts, the federal courts are not bound by state jury practices. *See Simler v. Conner*, 372 U.S. 221, 222 (1963) ("[T]he right to a jury trial in the federal courts is to be determined as a matter of federal law in diversity as well as other actions···· In diversity cases, of course, the substantive dimension of the claim asserted finds its source in state law ··· but the characterization of that state-created claim as legal or equitable for purposes of whether a right to jury trial is indicated must be made by recourse to federal law."); *Byrd v. Blue Ridge Rural Elec. Coop., Inc.*, 356 U.S. 525, 538 (1958) ("[T]here is a strong federal policy against allowing state rules to disrupt the judge-jury relationship in the federal courts.").

The Federal Rules of Civil Procedure contemplate that a jury trial will be conducted on all issues properly triable before a jury once a demand has been made unless: (1) the parties or their attorneys of record, by written stipulation made in open court and entered in the record,

consent to trial by the court sitting without a jury or (2) the court upon motion or of its own initiative finds that a right to a trial by jury of some or all of those issues does not exist under the Constitution or statutes of the United States. Fed. R. Civ. P. 39(a). It is undisputed that DI timely demanded a jury under the federal rules and has not stipulated to waive its jury claim.

Thus, the Court should look to the Seventh Amendment which provides that, "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." U.S. Constitution, Amendment VII. The Supreme Court has held that the phrase "[s]uits at common law" refers to "suits in which legal rights [are] to be ascertained and determined, in contradistinction to those where equitable rights alone [are] recognized, and equitable remedies were administered." *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41 (1989) (*quoting Parsons v. Bedford*, 28 U.S. (3 Pet.) 433, 447 (1830)).

Further, the issue of whether a suit is legal or equitable is determined by federal law, even while the cause of action is created by state law. *See Simler*, 372 U.S. at 222 (1963) ("characterization of . . . state-created claim as legal or equitable for purposes of whether a right to jury trial is indicated must be made by recourse to federal law"); *see also, McGuire v. Wilson*, 1988 U.S. Dist. LEXIS 3783, 1988 WL 45627 (S.D.N.Y. May 4, 1988) (denying motion to strike jury demand). The application of federal law is required so that the right to jury trial will be exercised uniformly as demanded by the Seventh Amendment. *Id.*

Federal courts following this approach to determine whether a particular action will resolve legal rights, look first to the nature of the issues involved by comparing the action to the 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity, and second to the nature of the remedy sought. *Germain v. Connecticut National Bank*,

988 F.2d 1323, 1328 (2d Cir. 1993), *citing Granfinanciera,* 492 U.S. at 42. The second stage of this analysis, the nature of the remedy sought, is more important than the first. *Granfinanciera,* 492 U.S. at 42. Indeed, as the Second Circuit has noted, at times it may be irrelevant whether the action actually existed in England in 1791 "for that Amendment requires trial by jury in actions unheard of at common law, provided that the action involves rights and remedies of the sort traditionally enforced in an action at law, rather than in an action in equity or admiralty." *Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.,* 933 F.2d 131, 135 (2d Cir. 1991), *quoting Pernell v. Southall Realty,* 416 U.S. 363, 375 (1974). Moreover, given the Constitutional implications, every presumption should be exercised in favor of the claim to a jury trial. *See Ideal World Marketing, Inc. v. Duracell, Inc.,* 997 F. Supp. 334, 339 (E.D.N.Y. 1998)(a right as fundamental as the right to a jury trial should not turn on accidental results of traditional schism between law and equity). Further, in cases involving both legal and equitable claims, a request for a jury trial in respect to the legal claims cannot be defeated by the mere presence of the equitable claims. *See Tull v. United States,* 481 U.S. 412, 425 (1987); *Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 472-473, (1962); *Germain,* 988 F.2d at 1329.

Therefore this Court should examine first whether the claims asserted by DI are primarily legal in nature and then should focus on whether the remedies sought are of the type, i.e., damages, typically afforded in legal actions. In this case, the Court should answer both inquiries in the affirmative.

## II.  UNFAIR COMPETITION AND MISAPPROPRIATION ARE LEGAL CLAIMS

DI's claims for unfair competition and misappropriation arise out of the common factual allegations that F-P took DI's concept without authority and without compensating DI for it. These two claims share the same legal origin in the common law of deceit.

Many courts, including the Supreme Court, have characterized unfair competition as a common-law tort action, *see, e.g., Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 147 (1989) ("The law of unfair competition has its roots in the common-law tort of deceit: its general concern is with protecting consumers from confusion as to source."). This common law tort arises when one party takes "the skill, expenditures and labors of a competitor and misappropriat[es] for the commercial advantage of one person . . . a benefit or property right belonging to another," *Roy Export Co. Establishment v. Columbia Broadcasting Sys.*, 672 F.2d 1095, 1105 (2d Cir. 1982); *Reproducta Co., Inc. v. Kellmark Corp.*, No. 92 CIV. 9362, 1994 U.S. Dist. LEXIS 18423, 1994 WL 719705, *5 (S.D.N.Y. Dec. 27, 1994). As the Fifth Circuit has noted:

> The law of unfair competition is the umbrella for all statutory and nonstatutory causes of action arising out of business conduct which is contrary to honest practice in industrial or commercial matters. *American Heritage Life Ins. Co. v. Heritage Life Ins. Co.*, 494 F.2d 3, 14 (5th Cir. 1974). Misappropriation is a branch of the tort of unfair competition which involves the appropriation and use by the defendant, in competition with the plaintiff, of a unique pecuniary interest created by the plaintiff through the expenditure of labor, skill and money. *See Conan Properties, Inc. v. Conans Pizza, Inc.*, 752 F.2d 145, 156 (5th Cir.1985).

*Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 367-368 (5th Cir. 2000). As the Second Circuit discussed in *Roy Export Co. Establishment*, this common law tort has been well developed under New York law:

> New York courts have noted the "incalculable variety" of illegal practices falling within the unfair competition rubric, Ronson Art Metal Works, Inc. v. Gibson Lighter Manufacturing Co., 3 A.D.2d 227, 230-31, 159 N.Y.S.2d 606, 609 (1957), calling it a "broad and flexible doctrine" that depends "more upon the facts set forth ... than in most causes of action," Metropolitan Opera Ass'n v. Wagner-Nichols Recorder Corp., supra, 199 Misc. at 792, 101 N.Y.S.2d at 488, 489. It has been broadly described as encompassing "any form of commercial immorality," id. at 796, 101 N.Y.S.2d at 492, or simply as "endeavoring to reap where (one) has not sown," International News Service v. Associated Press, supra, 248 U.S. at 239, 39 S.Ct. at 72; it is taking "the skill, expenditures and labors of a competitor," Electrolux Corp. v. Val-Worth, Inc., 6 N.Y.2d 556, 567, 190 N.Y.S.2d 977, 986, 161 N.E.2d 197, 203 (1959), and "misappropriati(ng) for the commercial advantage of one person ... a benefit or 'property' right belonging to another." Metropolitan Opera Ass'n v. Wagner-Nichols Recorder Corp., supra, 199 Misc. at 793, 101 N.Y.S.2d at 489. The tort is adaptable and capacious.

672 F.2d at 1105.

Given that the torts of unfair competition and misappropriation both arise from the common law tort of deceit, they should be viewed as actions at law. As F-P has itself recognized, such actions are associated with an available remedy of damages based on lost profits and, therefore, must be viewed as legal rather than as purely equitable remedies. *See Suburban Graphics Supply Corp. v. Nagel,* 5 A.D.3d 663, 774 N.Y.S.2d 160 (2004); *F-P Final Jury Instruction No. 3.1 Damages--Misappropriation/Unfair Competition.* Here the issue is particularly clear because DI has not sought merely to obtain injunctive relief. "Allegations that a party has been injured by another's wrongful appropriation to his own use of an invention divulged in reliance on a confidential relationship state a legal cause of action when the relief requested is damages in a specified sum." *Robine v. Ryan,* 310 F.2d 797, 798 (2d Cir. 1962) citing, *Spiselman v. Rabinowitz,* 270 A.D. 548, 551, 61 N.Y.S.2d 138 (1946).[4]

---

[4] The apparently contrary case cited by F-P, *Protexol Corp. v. Koppers Co., Inc.,* 12 F.R.D. 7 (S.D.N.Y 1951), seems to turn on the fact that the common law claims were viewed by the court as seeking primarily injunctive

9

### III.    PLAINTIFF SEEKS DAMAGES

As noted above, the more important test of whether a party is entitled to a jury trial is whether it seeks a legal remedy, such as damages. *Granfinanciera,* 492 U.S. at 42. In this case, of course, Plaintiff has always sought damages. Plaintiff has stated in all of its Complaints that it sought compensatory damages and its currently operative Complaint has made such claims of record for more than a year. Further, although DI has asserted prayers for injunctive relief it has not pursued such claims on any interim or preliminary basis and has now abandoned its claims for injunctive relief, which sought to bar F-P from selling additional accused products or destroying any product which contains the misappropriated concept. Thus, the essence of DI's claim, as the focus of recent pretrial arguments demonstrate, is the recovery of appropriate damages arising from F-P's misappropriation of DI's concept.

Despite its prior arguments to this Court in connection with the proposed jury charges, F-P now tries to argue that awards of monetary relief for unfair competition and misappropriation are actually equitable and not legal. This argument has little merit.

New York cases, including those cited by F-P, have recognized that a plaintiff prevailing in claims for unfair competition and misappropriation is entitled to <u>damages</u> in the form of lost profits. *See Suburban Graphics Supply Corp. v. Nagel,* 5 A.D.3d 663, 774 N.Y.S.2d 160 (2004); *Allan Dampf, PC v. Bloom,* 127 A.D.2d 719, 512 N.Y.S.2d 116 (1987). It is also well established that a plaintiff prevailing in claims for unfair competition and misappropriation under New York law may also recover <u>damages</u> in the form of the profits earned by the defendant as a result of the misappropriation. *See e.g., Softel, Inc. v. Dragon Medical and Scientific*

---

relief. A close reading of this case reveals that trade secret misappropriation claims are equitable <u>only</u> when the plaintiffs are seeking injunctive relief. *Linko, Inc. v. Fujitsu Ltd,* 232 F. Supp. 2d 182, 192 (S.D.N.Y. 2002).

*Communications, Inc.*, 118 F.3d 955, 969-970 (2d Cir. 1997), citing *David Fox & Sons, Inc. v. King Poultry Co.*, 23 N.Y.2d 914, 246 N.E.2d 166, 298 N.Y.S.2d 314 (1969); *Gilroy v. American Broadcasting Co., Inc.*, 47 A.D.2d 728, 365 N.Y.S.2d 193 (1975). Claims for damages based on the defendant's profits may be viewed as a proxy for direct damages or the incalculable lost profits of the plaintiff. *See Daisy Group, Ltd. v. Newport News, Inc.*, 999 F. Supp. 548 (S.D.N.Y. 1998).[5] *Vermont Microsystems, Inc. v. Autodesk, Inc.*, 88 F.3d 142, 151 (2d Cir. 1996) (upholding trial court's decision to award reasonable royalty due to insufficient evidence of lost profits and unjust enrichment). A third measure of <u>damages</u> used when lost profits cannot be calculated or disgorgement of the defendant's profits provides inadequate relief is based on a reasonable royalty. *University Computing Co. v. Lykes–Youngstown Corp.*, 504 F.2d 518 (5th Cir. 1974). As *Linko, Inc. v. Fujitsu Ltd.*, 232 F. Supp. 2d 182 (S.D.N.Y. 2002) makes clear, these alternative forms of relief are all available on a misappropriation claim.

> Once it is established that a trade secret has been misappropriated, there are two obvious ways to calculate plaintiff's damages. *See A.F.A Tours, Inc. v. Whitchurch*, 937 F.2d 82, 87 (2d Cir. 1991) ("The amount of damages recoverable in an action for misappropriation of trade secrets may be measured either by the plaintiff's losses or by the profits unjustly received by the defendant.") *First,* damages may be measured according to any losses plaintiff suffered from the alleged misappropriation. Plaintiff's losses may include the cost of developing the trade secret and the revenue plaintiff would have made but for the defendant's wrongful conduct. *Second,* damages may be measured by the defendant's unjust enrichment as a result of the misappropriation. Unjust enrichment is measured by the profits the defendant obtained from using the trade secret. *See Electro-Miniatures Corp. v. Wendon Co.*, 771 F.2d 23, 27 (2d Cir. 1985).

---

[5] *Daisy Group*, 999 F. Supp. at 551, also notes that the action for accounting originated in the common law, not in equity, 4 Pomeroy on Equity Jurisprudence § 1420, at 1076 (5th ed. 1941), and that accounting for profits was awarded in equity courts only as ancillary relief in cases where another ground for equity jurisdiction existed-typically, the right to an injunction. A claim of accounting for profits, standing alone, did not give rise to equity jurisdiction. *See George Basch Co. v. Blue Coral, Inc.*, 968 F.2d 1532, 1538 (2d Cir. 1992) (citing *Hamilton-Brown Shoe Co. v. Wolf Bros. & Co.*, 240 U.S. 251, 259 (1916)).

> In certain circumstances, these damage calculations provide inadequate compensation to the plaintiff. Courts have therefore developed a third measure of damages: a reasonable royalty. "A reasonable royalty award attempts to measure a hypothetically agreed value of what the defendant wrongfully obtained from the plaintiff." *Vermont Microsystems I*, 88 F.3d at 151. To measure this value, "the Court calculates what the parties would have agreed to as a fair licensing price at the time that the misappropriation occurred." *Id.* (citing *Georgia-Pacific Corp. v. U.S. Plywood-Champion Papers, Inc.*, 446 F.2d 295, 296-97 (2d Cir. 1971)). Because the plaintiff's loss or the defendant's gain may be very difficult to calculate in intellectual property cases, a reasonable royalty is "a common form of award in both trade secret and patent cases." *Vermont Microsystems, Inc. v. Autodesk, Inc.*, 138 F.3d 449, 450 (2d Cir. 1998) ("*Vermont Microsystems II*"); *Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1128 (5th Cir. 1991), *aff'd*, 505 U.S. 763, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992). Moreover, a reasonable royalty is ideal when the commercial context in which the misappropriation occurred requires consideration of multiple factors in order to compensate the plaintiff adequately.

232 F. Supp.2d at 185-186. *See The Topps Co., Inc. v. Cadbury Stani S.A.I.C.*, 380 F. Supp. 2d 250, 268-269 (S.D.N.Y. 2005)(New York law allows all three measures of damages for misappropriation of a trade secret and defendant's profits is a proper measure of damages).

As the case law makes clear, these remedies are all means of measuring <u>damages</u> and courts have held that merely because disgorgement is used in place of the lost profits of the plaintiff as the measure of damages, the action does not become equitable. *See Telewizja Polska USA, Inc. v. EchoStar Satellite Corp.*, 2005 U.S. Dist. LEXIS 21756, 2005 WL 2405797 (N.D. Ill., Sep 28, 2005) (where plaintiff seeks disgorgement as money flowing to its own coffers, disgorgement is a legal remedy for which a jury trial is warranted); *See Ideal World Marketing, Inc. v. Duracell, Inc.*, 997 F. Supp. 334, 339 (E.D.N.Y. 1998) (disgorgement claim in trademark infringement action was in the nature of damages and right to jury attached). Similarly, a reasonable royalty calculation is a form of damages and a misappropriation claim using this

calculation is a legal claim under New York law when the plaintiff seeks such damages rather than other equitable relief. *Linko, Inc.*, 232 F. Supp.2d at 192.

Here, Plaintiff has always sought compensatory damages. The concept at issue was an improvement to F-P's "Rescue Heroes" toy line, and, therefore, DI never had a chance to make a profit itself from the misappropriated concept. Accordingly the compensatory damages requested by DI have always sought to be measured either in the form of a disgorgement of the profits of F-P or, in the alternative, in the form of a reasonable royalty. Given that DI's claims are legal in nature and that it has always sought damages, this Court should find that DI is constitutionally entitled to a jury trial and should, therefore, deny the Defendant's Motion to Strike the Jury Demand.

### IV.     PUNITIVE DAMAGES SHOULD BE TRIED TO THE JURY

A claim for punitive damages such as DI has in this case generally does not by itself require the case as a whole to be presented to a jury. Where, as here however, the case is properly tried to the jury because it involves legal claims and compensatory damages, then it is proper to submit the punitive damages claim to the jury. Under New York law the fact finder determines entitlement to punitive damages and if the fact finder is a jury, then it determines the award. *See Loughry v. Lincoln First Bank, N.A.*, 67 N.Y.2d 369, 494 N.E.2d 70 (1986) (The decision to award punitive damages in any particular case, as well as the amount, are generally matters within the sound discretion of the trier of fact); *Nardelli v. Stamberg*, 44 N.Y.2d 500, 503, 406 N.Y.S.2d 443, 377 N.E.2d 975 (1978)(punitives to be determined by jury). Indeed, under New York law, a claim for punitive damages is "inextricably linked to the underlying

13

cause of action" and cannot stand on its own. *Rose v. Brown & Williamson Tobacco Corp.,* 2005 N.Y. Misc. LEXIS 2392, **44, 2005 WL 2807379 (N.Y.Sup. 2005),[6] quoting *Greenbaum v. Svenska Handelsbanken,* 979 F. Supp. 973, 982 (S.D.N.Y. 1997); citing *Rocanova v. Equitable Life Assurance Society of the United States,* 83 N.Y.2d 603, 616-617, 612 N.Y.S.2d 339, 634 N.E.2d 940 (1944). Thus, it is for the jury to decide whether the Defendant's conduct warrants the imposition of punitive damages under New York law and to then determine the amount of such damages.

Accordingly DI requests that the Court not bifurcate the case and that the Plaintiff be permitted to offer proof to support its claim for punitive damages to the jury.

---

[6] The *Rose* decision also provides a detailed and thorough review of New York law on the standard under which punitive damages may be found and holds that the standard of proof for punitive damages is the same as the standard of proof on the underlying claim.

## CONCLUSION

For the reasons stated, Plaintiffs respectfully ask the Court to deny Fisher-Price's Motion to Strike the Jury Demand and to permit Plaintiff's claims, including the claim for punitive damages, to be presented to the jury currently impaneled.

Respectfully Submitted,

SANDAK HENNESSEY & GRECO, LLP

By: _____
Peter M. Nolin, Esq. (ct06223)
Jay H. Sandak, Esq.
707 Summer Street
Stamford, Connecticut 06901-1026
(p) (203) 425-4200
(f) (203) 325-8608
pnolin@shglaw.com


GRIMES & BATTERSBY, LLP
Gregory J. Battersby (Bar No. 7386)
Edmund J. Ferdinand, III (Bar No. 21287)
Russell D. Dize (Bar No. 23064)
Susan Schlesinger (Bar No. 26625)
488 Main Avenue, Third Floor
Norwalk, Connecticut 06851-1008
(p) (203) 849-8300
(f) (203) 849-9300

Attorneys for Plaintiff Design Innovation, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that on January 9, 2006, a copy of the foregoing Memorandum of Law was served on all counsel of record below by U.S. Mail, First Class, postage prepaid, with a courtesy copy sent via electronic means to:

Jacqueline Bucar Esq.
Robert Allen, Esq.
Tyler Cooper & Alcorn, LLP
205 Church Street
New Haven, Connecticut 06510

Bradford S. Babbitt, Esq.
Michael J. Kolosky, Esq.
Robinson & Cole, LLP
280 Trumbull Street
Hartford, CT 06103-3597

Robert J. Lane, Jr., Esq.
Jodyann Galvin, Esq.
Hodgson Russ LLP
One M&T Plaza, Suite 2000
Buffalo, New York 14203-2391

William Wallace, Esq.
Milbank, Tweed, Hadley & McCoy-DC
1825 Eye St., N.W.
Suite 900
Washington, DC 20006

_____
Russell D. Dize