UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

VICTOR G. REILING ASSOCIATES and
DESIGN INNOVATION, INC.,

Plaintiffs,

- against -

FISHER-PRICE, INC.,

Defendant.

Index No.: 3:03 CV 222 (JBA)

January 9, 2006

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTIONS IN LIMINE NOS. 1 AND 5**

Fisher-Price, Inc. ("Fisher-Price"), has brought two Motions in Limine challenging the proposed testimony of Design Innovation's ("DI") toy industry expert, James Kipling, on a number of grounds. As a threshold matter, Fisher-Price's motions should be summarily denied because, as artfully crafted *Daubert* challenges, they are untimely.

In any event, Fisher-Price's motions are also legally deficient in all material respects. For example, Fisher-Price challenges Mr. Kipling's proposed testimony on toy industry custom and practice on the ground that his testimony shows that such practice is not "uniform and unvarying." (*Def. Mem. MIL No. 1* at 5). Fisher-Price has mischaracterized New York law, however, as that standard is only applicable to opinion evidence that seeks to modify or vary a contractual term, not with respect to custom and practice evidence generally. Because Mr. Kipling's testimony comports with New York law on custom and practice evidence and with the standards of admissibility under Fed. R. Evid. 702, his testimony should be admitted on all issues that are the subject of proper expert testimony.

As the Court has recognized, Mr. Kipling cannot offer testimony that: (1) is contrary to law, such as in the area of absolute novelty; (2) constitutes a legal conclusion on ultimate issues; and (3) addresses the "Carter Bench rationale." Other than these three discrete areas, Mr. Kipling may to testify on any other matter addressed in his prior expert reports or testimony, including toy industry custom and practice on the subjects that remain relevant at trial: concreteness, novelty (*i.e.* relevance of alleged prior art), legal relationship, use, reasonable royalty rates and damages for sales of accessories and line extensions.

Pursuant to the Court's instruction, Design Innovation also seeks to clarify two additional aspects of Mr. Kipling's testimony by this memorandum, namely: (1) damages for sales of accessories and line extensions sold with the accused Rescue Heroes action figures; and (2) Mr. Kipling's methodology for calculating a reasonable royalty in this case.

## I.   DEFENDANT'S MOTIONS SHOULD BE DENIED AS UNTIMELY

As a threshold matter, Fisher-Price waived their right to preclude expert testimony at trial by failing to submit a formal *Daubert* motion when it filed its summary judgment motion, as required by both a Standing Order of this District and a direct order of the Court. Indeed, during a conference on February 2, 2004, the Court instructed Fisher-Price as follows:

> Court: "And what about experts on use?"
>
> Fisher-Price Counsel: "No, I think their expert report makes a passing reference to use in his report, but we don't believe that was a central function of his report, and, frankly, I don't believe he's qualified to make any analysis of that."
>
> \*          \*          \*          \*          \*
>
> Court: "Now, if you are going to be making a genuine *Daubert* challenge, you need to do that at the time of summary judgment because doing it at the time of the final pretrial conference, it doesn't work."
>
> Fisher-Price Counsel: "Okay."

(Trans. at 41).

Thus, Fisher-Price cannot now raise a challenge to Mr. Kipling's qualifications, or to the relevance or reliability of any of his proposed testimony, because they waived that right by failing to file a *Daubert* challenge at the appropriate time. As Fisher-Price's Motion in Limine No. I (Section III(A)-(D) and (F)-(H)) and Motion in Limine No. V(Section I) all challenge Mr. Kipling's qualifications or the reliability of his testimony, each of these Motions should be denied because they are the functional equivalent of a *Daubert* challenge.

Fisher-Price cannot claim that its Motion to Strike was a proper *Daubert* challenge, because that motion merely sought to exclude portions of Mr. Kipling's testimony for purposes of summary judgment, not trial. (*See* Fisher-Price Mem. in Support of Mot. to Strike the Declarations of James Kipling and Victor Reiling, dated June 4, 2005). As the Court explained during the Pre-Trial Conference on January 4, 2006, a motion to strike an expert declaration on summary judgment is different from a *Daubert* motion to exclude an expert's testimony at trial. Indeed, a formal *Daubert* motion typically requires a testimonial hearing and significant briefing, which is precisely the reason why the Court instructed Fisher-Price not to file such a motion on the eve of trial.

Accordingly, Design Innovation asks the Court to deny Fisher-Price's Motions in Limine on the ground that they are untimely.

## II.   MR. KIPLING'S TESTIMONY MEETS RULE 702 AND NEW YORK LAW

### A.   Standard of Fed. R. Evid. 702

Even if the Court were to permit Fisher-Price to bring a belated *Daubert* motion, Mr. Kipling's testimony is plainly admissible under Federal Rule of Evidence 702. Rule 702 provides:

> "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in form of an opinion or otherwise."

Fed. R. Evid. 702. Pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 279 (1993) and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999), the Supreme Court has directed that the trial judge should act as a "gatekeeper" with respect to expert testimony to ensure that it is both relevant and reliable. *See Daubert*, 509 U.S. at 589-91. However, the Second Circuit has cautioned that trial judges acting as gatekeepers under *Daubert* must not "assume the role of St. Peter at the gates of heaven, performing a searching inquiry into the depth of an expert witness's soul" and thereby usurp "the ageless role of the jury" in evaluating witness credibility and weight of the evidence. *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1045 (2d Cir. 1995). As such, disputes as to the strength of a witness's credentials, improper methodology or lack of authority typically go to weight, not admissibility, and the "traditional and appropriate means" of attacking such evidence is through vigorous cross-examination and presentation of contrary evidence, rather than exclusion. *B.F. Goodrich v. Betkoski*, 99 F.3d 505, 525-26 (2d Cir. 1996).

Mr. Kipling's extensive "knowledge, skill, experience, training, [and] education" are well-established in the record. (*See* Declaration of James M. Kipling, 5/23/05, ¶¶2-7; Ruling on Defendant's Motion to Strike, dated December 14, 2005 ("MTS Ruling") at 2-3). This Court has

4

already recognized the value of Mr. Kipling's testimony to the trier of fact on the central issues in the case, namely concreteness, novelty, legal relationship, use and Design Innovation's entitlement to damages for sales of line extensions. (*See* S. J. Ruling at 27, 33, 41, 59-60). Mr. Kipling will provide valuable testimony relating to the toy industry on critical aspects of these issues. The jury, of course, will be free to consider the weight of Mr. Kipling's testimony and any cross-examination by Fisher-Price. Accordingly, Mr. Kipling's testimony should be admissible without limitation, except for the three distinct areas mentioned above.

### B. Fisher-Price Misstates New York Law on Custom and Usage

Industry-related testimony, including customs and practices, is relevant because it "enables the jury to evaluate conduct of parties against industry standards." *Marx & Co. v. Diners' Club, Inc.*, 550 F.2d 505, 509 (2d Cir. 1977). In Sections III(A)-(D) and (F)-(H) of Motion in Limine No. I, Fisher-Price challenges all of Mr. Kipling's proposed testimony on toy industry custom and practice on the ground that Design Innovation has failed to meet the "heightened New York standard" for establishing custom and usage evidence. (*Def. Mem. MIL No. 1* at 3-5). According to Fisher-Price, Mr. Kipling's industry custom and practice testimony must be stricken because it demonstrates that toy industry custom and practice is not "fixed and invariable" or "uniform and unvarying." (*Id.*) Because Fisher-Price has misstated and misapplied New York law, each challenge to Mr. Kipling's proposed testimony on toy industry custom and practice should be denied.

Importantly, the requirement that evidence of industry custom and practice be uniform or invariable is applicable only to contract-based claims (*e.g.*, when attempting to define an ambiguous term or to modify or vary a contractual term) under New York law. Even a cursory review of the cases relied upon by Fisher-Price reveals that New York's "custom and usage"

5

principles relate solely to contractual claims. *See Hunter v. Greene*, 734 F.2d 896, 900 (2d Cir. 1984) ("custom and usage evidence must establish that the omitted <u>term</u> is fixed and invariable in the industry" (internal quotation omitted; emphasis added); *British Int'l Ins. Co. Ltd. v. Seguros la Republica, S.A.*, 342 F.3d 78, 84 (2d. Cir. 2003) (quoting *Hunter*, 734 F.2d at 900); *Belasco Theatre Corp. v. Jelin Productions, Inc.*, 270 A.D. 202, 206 (1st Dept. 1945) ("A custom or usage, <u>if it is to be read into a contract</u> ..., must fix a definite standard by proof establishing that it was general, uniform and unvarying." (internal quotation omitted; emphasis added)); *In the Matter of Reuters Ltd v. Dow Jones Telerate, Inc.*, 231 A.D.2d 337, 343-344 (1st Dept. 1997) ( speaking only in the context of "[o]ne who seeks to use trade usage to define language or annex a term <u>to a contract</u>" and holding that "the defense of trade usage is not admissible to influence the construction <u>of a contract</u> unless ... uniformly acted upon" (internal quotations omitted; emphasis added).

It may be for this very reason that Fisher-Price muddies their motion with references to contract-based theories and principles. For example, Fisher-Price's introduction to New York's "custom and usage" principles is replete with reference to contractual rules and theories. (*Def. Mem. MIL No. 1*. at 4-6). Fisher-Price even ventures so far as to quote a lengthy passage from *In the Matter of the Application of Gerseta Corp. v. The Silk Ass'n of America* that patently confines the asserted "custom and usage" rule to contract-based claims. (*Id.* at 6). (*quoting* 220 A.D. 293, 295 ("[a] custom, <u>in order to become part of a contract</u>, must be so far established ... that it must be supposed that <u>their contract</u> was made in reference to it)" (emphasis added).

Fisher-Price's motion then must be cast as an improper attempt to extend New York's "custom and usage" cases beyond their borders, that is, beyond the contractual context. Each section of Fisher-Price's Motion in Limine No. I (with the exception of Section III(E) on

6

novelty), is based entirely on the faulty premise that Mr. Kipling cannot testify to a uniform or invariable custom. Given that New York law does not require such a standard in non-contract situations, Fisher-Price's arguments fall like dominoes.

To the extent that Mr. Kipling did seek to testify on toy industry custom and practice regarding waiver agreements (*see* Kipling S.J. Dec. §§ 15, 20), such testimony is no longer relevant in light of the Court's dismissal of Mr. Reiling. Consequently, there is no longer any issue to which New York's "custom and usage" principles, to the extent that such principles can be read to impose an obligation above and beyond the requirements of Fed. R. Evid. 702, would apply to the case at hand.

Accordingly, Mr. Kipling should be permitted to testify on toy industry custom and practice on the subjects that remain relevant at trial: concreteness, novelty (*i.e.* relevance of alleged prior art), legal relationship, use, reasonable royalty rates and Design Innovation's entitlement to damages for sales of accessories and line extensions.

### C. The Court Has Already Ruled that Mr. Kipling May Not Testify Contrary to Established Law

In Section III(E) of Motion in Limine No. I, Fisher-Price moves to exclude any testimony by Mr. Kipling on toy industry custom and practice that would be contrary to established law on novelty. (*Def. Mem. MIL No. 1* at 9-10). Specifically, Fisher-Price contends that Mr. Kipling should be prohibited from testifying that "(1) the novelty of an inventor's submission is not significant to determining whether that submission has been misappropriated; and (2) a combination of known elements may be novel." (*Def. Mem.* 10) The Court has already ruled that Mr. Kipling cannot testify to matters that are contrary to established New York law on the issue of novelty. (Ruling at 29-30, n.21). DI does not now seek to challenge the Court's carefully

7

considered conclusion. Accordingly, DI does not oppose Fisher-Price's motion as it relates to the two points discussed herein.

DI maintains, however, that Mr. Kipling may testify as to other aspects of the consideration of whether Design Innovation's concept is novel. For example, Mr. Kipling may still testify that during his tenure at Kenner and Hasbro he never observed a product developed, marketed or sold that embodied Design Innovation's concept. Moreover, Mr. Kipling may also testify that Fisher-Price's evidence of alleged prior art does not, in fact, anticipate Design Innovation's concept. (Kipling S.J. Dec. ¶¶ 52-54). The Court credited that testimony in the summary judgment ruling (see Ruling at 33), and the Court also found Mr. Kipling to be qualified to opine on issues of novelty. (MTS Ruling at 2). Accordingly, Mr. Kipling's testimony on these issues is admissible at trial.

### D. Fisher-Price's Challenge to Mr. Kipling's Testimony on "Use" Should be Rejected

In Motion in Limine No. V(I), Fisher-Price raises an artfully plead *Daubert* challenge by arguing that Mr. Kipling is not qualified to opine on issues related to whether the accused Rescue Heroes figures make use of Design Innovation's concept because Mr. Kipling is not a toy designer. (*Def. Mem. MIL No. V* at 2). As a threshold matter, this *Daubert* challenge is untimely and should be precluded for the reasons stated in Section A, above.

Irrespective of the waiver issue, the Court has already considered and ruled on this issue in the context of Fisher-Price's Motion to Strike. In the context of that motion, Design Innovation provided evidence showing that:

> 1. Mr. Kipling has an undergraduate degree in engineering, was trained as an engineer and worked as an engineering apprentice with a tool manufacturer for five years during college;

8

    2. Mr. Kipling was trained as a patent attorney and acted in that capacity for several companies over a period of many years, during which time he evaluated toys and other products to determine issues of novelty, prior art and comparison of existing design features of products; and,

    3. During his tenure at Kenner and Hasbro, Mr. Kipling was part of a management team and dealt directly with issues related to toy development and design and children's play patterns.

(Pl. Mem. in Opp. to Def. Mot. To Strike (Dock. Index No. 124), at 2-7; Kipling Dec. in Opp. to Def. Mot. to Strike (Dock. Index. No. 125), ¶¶ 1-22). The Court has already ruled on Mr. Kipling's qualifications to testify on a variety of subjects in this matter, including on issues related to "toy use and play patterns." (MTS Ruling at 2).

While the Court did recognize that Mr. Kipling himself admitted he is not qualified as a toy designer (*id*. at 4), Fisher-Price seeks to take that testimony out of context to give it an improper reach. Mr. Kipling's testimony was that he did not consider himself to be qualified to work as a designer at a toy company. That does not mean, however, that given Mr. Kipling's vast experience with toy development and design features spanning a twenty-five year career, he is not qualified to examine the accused Rescue Heroes products and to opine on whether those products embody Design Innovation's concept. *See McCullock*, 61 F.3d at 1043 (expert was qualified based on his "extensive practical experience" despite lacking formal education, training or experience on precise subject matter at hand); *Lappe v. American Honda Motor Co, Inc.*, 857 F. Supp. 222, 226-27 (N.D.N.Y. 1994) (expert witness in product liability action ordinarily is "not strictly confined to his area of practice but may testify concerning related application" even if he has no actual experience in the manufacture of the product); *Primavera Familienstiftung v. Askin*, 130 F. Supp.2d 450, 522-23 (S.D.N.Y. 2001) (rejecting argument that expert was not qualified to opine on subjects within his particular expertise because "the law does not insist on such narrow qualifications") (citing, *McCullock*, 61 F.3d at 1043).

Accordingly, Mr. Kipling should be permitted to testify on the issue of "use" at trial.

E.   **Design Innovation's Entitlement to Damages for Line Extensions**

The Court has asked Design Innovation to clarify its theory as to coverage of the line extensions and accessories sold with the accused Rescue Heroes lines.

As the Court recognized in the Summary Judgment Ruling, the basis for Design Innovation's claim of damages for line extensions and accessories "is the purported industry custom and practice of compensating inventors for such line extensions related to plaintiffs' submitted concepts." (Ruling at 50). Mr. Kipling has opined that "it has been common industry practice that toy manufacturers compensate inventors not only for such embodiments of the submitted concept itself, but also for "line extensions," which can include accessories that do not embody the submitted concept but which are marketed for use with licensed products embodying such concept."[1] (Kipling Expert Report, dated January 5, 2004, Section D). In addition, both Design Innovation and Reiling will testify that <u>in their own experience</u> they are paid royalties on line extensions. (Reiling S.J. Dec. ¶ 18; Popek S.J. Dec. ¶ 13). Fisher-Price's former Vice-President of Inventor Relations, Paul Snyder, confirms that Fisher-Price pays royalties on line extensions. (Dep. Tr. at 63-64).

Accordingly, Design Innovation claims damages for all of the accused line extensions and accessories because they are sold together with, or were marketed by F-P specifically for use with, the accused Rescue Heroes action figures. Design Innovation submits that an award of damages for line extensions and accessories is consistent with New York law for misappropriation and unfair competition, where "The principle that one may not misappropriate the results of the skill, expenditures and labors of [another] is predicated on the concept that no

---

[1] Further, as Mr. Kipling opined, royalties for line extensions are typically a matter of negotiation in the final license agreement, and Design Innovation was deprived of the opportunity to negotiate this and other aspects of the license due to Fisher-Price's misappropriation. (*Id.*)

10

one is entitled 'to reap where it has not sown.'" NEW YORK PATTERN JURY INSTRUCTIONS CIVIL 3:58 at 520 (2d Ed. 2005) (quoting *International News Service v. Associated Press*, 248 U.S. 215, 239 (1918)); *Electrolux Corp. v. Val-Worth, Inc.*, 6 N.Y.2d 556, 567, 190 N.Y.S.2d 977 (N.Y. 1959) ("The principle that one may not misappropriate the results of the skill, expenditures and labors of a competitor has since often been implemented in our courts"). Regardless of whether the ultimate damage award is based on a disgorgement of Fisher-Price's profits or on Design Innovation's expected profits (calculated based on a reasonable royalty of Fisher-Price's sales), it is clear that Fisher-Price should not derive a benefit from products that were marketed and sold with, and for use in connection with, the accused Rescue Heroes action figures.

The accessories and line extensions include the following products:

1. Voice Tech Police Cruiser;
2. Mission Select Fire Truck;
3. Mission Select Police Cruiser;
4. Mountain Action Command Center;
5. Aquatic Rescue Command Center; and
6. Videos, DVDs, computer games and video games (although Design Innovation notes that Fisher-Price has not reported any income from the sales or distribution of these products).

In addition, Design Innovation notes that certain of the accused vehicles and playsets embody <u>certain features</u> of Design Innovation's concept, not the concept in its entirety. For example, the Aquatic Rescue Command Center uses interchangeable mission cards, and the Mission Select Fire Truck and Police Cruiser and the Mountain Action Command Center all feature a rotating 2" dial. As the Court is aware, Design Innovation's concept is defined as:

11

adding an image component to the backpack of each "Rescue Heroes" action figure to enhance role play for the child by depicting the mission of that particular "Rescue Heroes" character. Thus, the playsets and accessories cannot embody the concept in its entirety because the concept, by its very definition, requires adding the image component to the "backpack." For this reason, Design Innovation does not claim entitlement to damages merely because the playsets and accessories feature some components of Design Innovation's concept. As set forth above, Design Innovation claims damages because they are sold with the accused Rescue Heroes products.

### F. Mr. Kipling Has Provided a Sufficient Foundation To Opine on a Reasonable Royalty

In his original Expert Report, Mr. Kipling discusses the standards for awarding a reasonable royalty in the toy licensing context and he opines on the reasonable royalty to be awarded to Plaintiffs in this case. (*See* Kipling S.J. Dec., Exh. A, Section C). During the Pre-Trial Conference on January 5, 2006, counsel for Fisher-Price asserted that Mr. Kipling should be precluded from testifying as to a reasonable royalty in this case because he has failed to provide a sufficient foundation for such testimony.

Contrary to Fisher-Price's argument, Mr. Kipling's testimony regarding royalty rates in the toy industry is not subject to the set of factors applied in *Georgia-Pacific*. See *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970), *modified and aff'd*, 446 F.2d 295 (2d Cir. 1971). The list of factors in *Georgia-Pacific* applies solely to the calculation of a reasonable royalty for a patent license in the context of patent infringement actions. *See id.* at 1120 (delineating factors in the patent infringement context); *see also Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1393-1394 (Fed. Cir. 2003) (applying *Georgia-Pacific* factors solely in the context of patents). This view is more than supported by the factors

themselves, many of which expressly identify patents as the only relevant context. *See Georgia Pacific Corp.*, 318 F. Supp. at 1120-1121 ("1. The royalties received by the patentee for the licensing of the patent in suit.... 2. The rates paid by the licensee for the use of other patents comparable to the patent in suit....", etc.) (emphasis added).

That the *Georgia-Pacific* factors are limited to the patent context is not surprising, particularly since the parties acknowledged that there was no "established" royalty for the patent being licensed. *See id.* at 1121. A wide range of reasonable royalty rates are available in a patent royalty situation. Rates can vary from .05% to 25% depending on a number of circumstances, including the relative bargaining power of the parties (e.g., substantial negotiation). See F. Russell Denton, Paul J. Heald, *Random Walks, Non-Cooperative Games, and the Complex Mathematics of Patent Pricing*, 55 Rutgers L. Rev. 1175, 1191 (2003).

Conversely, toy product licensing is entirely different. In this area, there are "established" royalty rates for the industry and while these rates may vary slightly depending upon the facts of a particular case, they tend to fall within a relatively narrow range and are typically not subject to much negotiation. As such, an expert such as Mr. Kipling who has operated in this industry for more than twenty years and has negotiated literally thousands of toy designer agreements, need not resort to the *Georgia-Pacific* factors for patent licenses. *See Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714, 726-28 (7th Cir. 2003). It is virtually an industry standard that royalty rates in toy product licensing fall within a range of 1% to 6%. *See generally* Battersby & Grimes, *Licensing Royalty Rates 2005* (Aspen Press 2005). This range has been affirmed by F-P's own witness, Paul Snyder. (Snyder Dep. Tr. at 123).

Thus, the *Georgia-Pacific* factors are inapplicable outside the context of patent infringement and certainly do not apply in the toy product licensing area. Mr. Kipling has, therefore, provided a sufficient basis to opine on a reasonable royalty in this case.

### III. CONCLUSION

DI respectfully submits that Fisher-Price's Motion in Limine No. I (Sections III(A)–(D) and (F)-(G) and Motion in Limine No. V(Section I) should be denied in all respects, and for such other and further relief as the Court deems just and proper.

Dated: Norwalk, Connecticut
January 9, 2005

Respectfully Submitted,

GRIMES & BATTERSBY, LLP

By: _____
Gregory J. Battersby (Bar No. 7386)
Edmund J. Ferdinand, III (Bar No. 21287)
Russell D. Dize (Bar No. 23064)
GRIMES & BATTERSBY, LLP
488 Main Avenue, Third Floor
Norwalk, Connecticut 06851-1008
(p) (203) 849-8300
(f) (203) 849-9300

SANDAK HENNESSEY & GRECO, LLP
Jay H. Sandak, Esq.
Peter M. Nolin, Esq.
707 Summer Street
Stamford, Connecticut 06901-1026
(p) (203) 425-4200
(f) (203) 325-8608

Attorneys for Plaintiff
Design Innovation, Inc.

Attorneys for Plaintiff Design Innovation, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on January 9, 2006, a copy of the foregoing Opposition was served on all counsel of record below by U.S. Mail, First Class, postage prepaid, with a courtesy copy sent via electronic means to:.

Jacqueline Bucar Esq.
Robert Allen, Esq.
Tyler Cooper & Alcorn, LLP
205 Church Street
New Haven, Connecticut 06510

Bradford S. Babbitt, Esq.
Michael J. Kolosky, Esq.
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, CT 06103-3597

Robert J. Lane, Jr., Esq.
Jodyann Galvin, Esq.
HODGSON RUSS LLP
One M&T Plaza, Suite 2000
Buffalo, New York 14203-2391

William Wallace, Esq.
Milbank, Tweed, Hadley & McCoy-DC
1825 Eye St., N.W.
Suite 900
Washington, DC 20006

_____
Edmund J. Ferdinand, III