UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

VICTOR G. REILING ASSOCIATES and :
DESIGN INNOVATION, INC., :
 :
           Plaintiffs, :
 : Civil No. 303CV222(JBA)
v. :
 : January 10, 2006
FISHER-PRICE, INC. :
 :
           Defendant. :
 :

REPLY MEMORANDUM IN SUPPORT OF
FISHER-PRICE'S MOTIONS IN LIMINE NOS. 1, 3, AND 5

Fisher-Price submits this memorandum in reply to "Plaintiff's Opposition to Defendant's Motions in Limine Nos. 1 and 5" (the "DI Memo."). The DI Memo. also addresses Fisher-Price's Motion in Limine No. 3, and this memorandum responds to that discussion, as well.

### Argument

**I.    FISHER-PRICE'S MOTION IN LIMINE NO. 1 SHOULD BE GRANTED**

Point III in Fisher-Price's motion in limine no. 1 seeks to bar Kipling from offering testimony about custom and practice in the industry. For the most part, DI has not responded on the merits to this motion. Instead, it has attempted to avoid the merits by asserting that Fisher-Price's motion is untimely. This issue, and DI's arguments on the merits, are discussed below.

**A.    Fisher-Price's Motion Is Not Untimely**

Following up on an inquiry made by the Court at argument on January 4, 2006, DI argues that Fisher-Price's challenge to Kipling's custom and practice testimony should not be entertained because it is untimely and should have been filed at the same time as summary judgment motions were filed. In support of its position, DI cites this Court's statement at the February 2, 2004 conference that if either party is "going to be making a genuine *Daubert* challenge, you need to do that at the time of summary judgment." DI Memo. at 2. There are several problems with DI's

argument.

    First, Fisher-Price's challenge to Kipling's custom and practice evidence is not a "genuine *Daubert* challenge." It is not a challenge to Kipling's qualifications or even his methodology. Instead, Fisher-Price challenges his testimony as contrary to New York law and failing to meet the New York standard required for custom and practice testimony. This issue is discussed in greater detail in Point I.C. below.

    Second, and perhaps more important, the rule that *Daubert* motions be made at the time of summary judgment is based on the understanding that the opinions at issue were timely disclosed in the expert's formal report. Only opinions that are disclosed in the expert report can be challenged at the time of summary judgment. However, the custom and practice opinions that are the subject of motion in limine no. 1 were ***not*** disclosed in Kipling's expert report.[1] Instead, the fact that Kipling intended to testify about these issues was disclosed for the first time in plaintiff's witness list, dated December 22, 2005.[2] For example:

    1.  Kipling testified in his May 23, 2005 declaration opposing summary judgment (at ¶ 15(b)) that toy companies agree to keep confidential the submissions of outside inventors. In describing his testimony in its witness list, DI indicates that Kipling is expected to testify regarding "custom and practice in the toy industry regarding concept submissions from

---

[1] Of course, failure to disclose an opinion on these topics in his expert report provides an independent basis for excluding Kipling's testimony on custom and practice. *See, e.g., Air Turbine Tech., Inc. v. Atlas Copco AB*, 410 F.3d 701, 703 (Fed. Cir. 2005).

[2] A copy of DI's witness list is attached as Exhibit D to the December 31, 2005 Lane Declaration in Support of Fisher-Price's Motions in Limine (the "Lane Dec."). Some of the issues raised on this motion in limine relate to subjects that Kipling dealt with in his declarations on summary judgment. However, discussing a topic in a summary judgment declaration is not the same as including it in an expert opinion; it does not permit the expert to testify about the subject at trial. Moreover, the fact that some of these topics were raised by Kipling in *opposing* Fisher-Price's summary judgment motion shows that Fisher-Price could not have filed a motion seeking to preclude them at the same time as it filed its summary judgment motion.

outside inventors to toy companies." Lane Dec., Ex. D ¶ 6(a). This presumably includes the alleged custom relating to confidentiality; DI does not deny that on this motion. However, there is no discussion in either of Kipling's expert reports about whether toy companies keep submissions confidential as a matter of custom and practice. *See* Lane Dec., Ex. B (Kipling's first expert report) & Ex. C (Kipling's second supplemental expert report).

    2.  In its witness list, DI discloses for the first time that Kipling intends to testify about "the Fisher-Price Rescue Heroes products and line extensions on which a royalty is owed to Plaintiff." As discussed in Fisher-Price's initial memorandum on this motion (at page 10), the argument that there is a custom and practice in the toy industry requiring the payment of royalties on line extensions is actually *contrary to* Kipling's expert report. *See* Lane Dec., Ex. B at Point III.D. ("Whether the inventor is compensated when line extensions are independently created and developed by the toy company is generally a matter of negotiation in the final license agreement for the submitted concept"). Thus, this is not just a matter of an undisclosed expert opinion; the opinion Kipling apparently seeks to offer is *contrary* to the one he disclosed in his expert report.[3]

    3.  In his June 27, 2005 declaration (at ¶ 28), Kipling has argued that Fisher-Price's Policy and Agreement is not binding upon DI. He bases that opinion on "custom and practice in the toy industry." Again, this opinion is not disclosed in either of his expert reports. *See* Lane Dec., Exhibits B & C.[4]

---

[3]  *See Sheek v. Asia Badger, Inc.*, 234 F.3d 687, 693-94 (1st Cir. 2000) (affirming district court's ruling striking expert testimony that was a change from the expert's report).

[4]  *See also* Lane Dec., Ex. D (DI Witness List ¶ 6(d) Kipling intends to testify about "Fisher-Price's Policy and Agreement form").

4.      In opposition to summary judgment, Kipling offered the opinion that inventors should not be legally bound by their own written descriptions of their submissions in concept submission forms or option agreements, again relying on toy industry custom and practice. Kipling 5/23/05 Dec. ¶ 29. In DI's Witness List, it states that Kipling will testify about the "significance of the Option Agreement between Fisher-Price, DI and Victor G. Reiling." Lane Dec., Ex. D ¶ 6(f). Again, Kipling never disclosed an opinion that the written description of the concept in the Option Agreement would not be binding on DI.

Perhaps the clearest evidence that DI never disclosed an opinion by Kipling on these issues is the fact that it listed all of the different subject matters described above in its witness list—instead of simply referring to Kipling's expert report. The reason it did not refer to Kipling's expert report as containing the matters on which he will testify is because DI apparently intended that he offer testimony on issues that were not disclosed in his expert report. Not only is this improper, it denied Fisher-Price any reasonable opportunity to file a motion until it received DI's Witness List.

Finally, it should be noted that, while DI has raised the timeliness issue as essentially its only defense to Fisher-Price's custom and practice motion, it has not claimed or attempted to show any surprise or prejudice. Indeed, given that it had not disclosed the subjects of Kipling's testimony in his expert report, it would be hard to do so. In the absence of surprise or prejudice, Fisher-Price's motion should be determined on the merits. Moreover, Fisher-Price specifically disclosed its objection to testimony that there was a custom or practice in the toy industry that inventor submissions be treated as confidential in its reply memorandum in support of its motion for summary judgment (at page 10). Kipling's testimony that there are "a variety of practices" on this topic is specifically cited there. Thus, there can be no claim of surprise or prejudice.

B.  **Fisher-Price's Motion Is Meritorious**

DI does not deny that Kipling testified under oath that his definition of "custom and

- 4 -

practice" is directly contrary to the legal standard; Kipling testified that he considered something to be "custom and practice" if it was done "more often than not" in the industry. *See* FP Memo. on Motion in Limine No. 1 at 7. This alone renders *all* of Kipling's custom and practice evidence contrary to law and inadmissible.

Moreover, DI does not deny that Kipling testified under oath that there are a "variety of practices" as to "whether toy companies commit to keep inventors' submissions confidential." *See* FP Memo. on Motion in Limine No. 1 at 8. Nor does it deny that Kipling testified that inclusion of line extensions and accessories within the royalty obligation of the license agreement is "a matter of negotiation." *See id.* at 11. Again, these admissions show that Kipling cannot meet the standard for establishing custom and practice.

DI's sole response to these dispositive admissions is to argue that Fisher-Price's case law defining the necessary standard for admission of custom and practice evidence is inapposite. DI claims that the case law offered by Fisher-Price all arises out of contract claims. DI implies that some sort of different standard applies to tort cases. However, DI never describes for the Court the allegedly "different" standard for tort cases, nor does it cite any case law establishing a different standard for tort cases. The reason for this is simple: New York law is clear that there is only one standard for the admission of custom and practice evidence — the standard described in Fisher-Price's initial memorandum on motion in limine no. 1.

C. **DI Concedes That Kipling May Not Testify Contrary to Law**

DI admits that Kipling cannot testify contrary to law and acknowledges that this Court has already ruled that Kipling's testimony will not be permitted to the extent that it attempts to alter or undercut established law on novelty. DI Memo. at 7-8. DI attempts to salvage a portion of Kipling's testimony, however, arguing that "Mr. Kipling may still testify that during his tenure at Kenner and Hasbro he never observed a product developed, marketed or sold that embodied Design

- 5 -

Innovation's concept." DI Memo. at 8. The problem with this testimony is that it is irrelevant and cannot be admitted under FRE 402. Whether Kipling has ever *seen* a particular concept before does not establish the foundation necessary to testify that a concept *is* novel (the only purpose for which such testimony could be relevant). To establish such foundation, Kipling would be required to show that he is knowledgeable of the prior art in the particular area and that he has conducted an in-depth and detailed review of prior art. He should not be permitted to testify casually that he simply has not become aware of prior art reflecting the concept, without showing why that should be significant or why it would "assist the trier of fact" as required by FRE 702.

On page 7 of its memorandum, DI indicates Kipling will also testify on "legal relationship" and "Design Innovation's entitlement to damages for sales of accessories and line extensions." Both of these are legal issues on which no expert testimony is admissible. *See* FP Memo. in Support of Motion in Limine No. 5 at page 6.

## II.    FISHER-PRICE'S MOTION IN LIMINE NO. 5 SHOULD BE GRANTED

In motion in limine no. 5, Fisher-Price seeks to bar Kipling from testifying (1) about the "use" of the concept; (2) as to a different definition of the concept than disclosed in his expert report; (3) to interpret the Option Agreement; and (4) that the Carterbench License is fabricated. At oral argument, DI conceded item 4—that Kipling could not testify that the Carterbench License is fabricated. Moreover, in its memorandum, DI does not *even address* Fisher-Price's request that Kipling be precluded from testifying to a different definition of the concept than the one disclosed in paragraph 11 of his second supplemental expert report. *See* Lane Dec., Ex. C ¶ 11. Accordingly, that portion of Fisher-Price's motion should be granted as it is unopposed by DI.

The portions of the motion that are opposed are discussed below.

### A. Kipling Should Not Be Permitted to Testify About "Use"

DI again raises the argument that this is an untimely and "disguised" *Daubert* challenge. Both of these charges are incorrect. Fisher-Price raised a challenge to Kipling's testimony on the issue of use in its motion to strike. In ruling on the motion to strike, this Court recognized that Kipling was not qualified as a toy designer, but it did not specifically rule whether he could testify about whether a commercial product constituted a "use" of a particular design.[5] Thus, Fisher-Price timely raised a challenge to Kipling testifying on the issue of use. Moreover, Fisher-Price's motion in limine on this issue is specifically based on this Court's ruling on the motion to strike that Kipling "is admittedly not qualified to testify as an expert on toy design." Since that ruling had not been made as of the summary judgment motion, Fisher-Price submits that it provides a timely basis for an additional motion on this issue.

With respect to the merits of the motion, Fisher-Price relies on its initial memorandum. It should be noted, however, that while DI argues that an expert may be qualified without formal training if he has appropriate experience, Kipling has neither training nor experience in toy design.

### B. Reasonable Royalty

DI argues that Kipling should be permitted to provide an opinion on a reasonable royalty. DI Memo. at 12-14. In support of this argument, DI notes that Fisher-Price indicated at the pretrial conference on January 5, 2006, that Kipling should be precluded from testifying as to reasonable royalty "because he has failed to provide a sufficient foundation for such testimony." DI Memo. at 12. Fisher-Price was referring to the fact that Mr. Kipling's expert report provides no basis whatever for his opinion as to a reasonabe royalty, other than his statement that "a 'royalty' . . . is

---

[5] The Court ruled that Kipling might be able to testify about "toy use," but this is a different issue. [Docket No. 114 at page 2].

typically in the range of 5% of total sales" and his unsupported and conclusory opinion that "it is my opinion that the subject Fisher-Price products based upon or derived from Plaintiffs' submitted concept should bear royalty payable to Plaintiffs in the 6% to 7% range." Lane Dec., Ex. B § C. Even summarizing this opinion show that it is without foundation and should not be admitted. DI's memorandum makes this conclusion even more clear. At page 13 of its memorandum, DI states as follows:

> "It is virtually an industry standard that royalty rates in toy product licensing fall within a range of 1% to 6%."

This directly undercuts its own expert's unsupported opinion that DI should recover a royalty of 6% to 7%. Kipling's testimony on this subject should be excluded.

### III. FISHER-PRICE'S MOTION IN LIMINE NO. 3 SHOULD BE GRANTED

On pages 10-12 of its memorandum, DI responds to motion in limine no. 3, which seeks to bar it from claiming that line extensions "use" the Reel Heroes concept or that it is entitled to recover damages on line extensions. As DI notes, "the Court has asked Design Innovation to clarify its theory as to coverage of the line extensions and accessories sold with the accused Rescue Heroes lines." DI Memo. at 10.

DI begins its discussion by referring to two pieces of entirely improper evidence that it intends to offer at trial:

> "DI intends to offer Kipling's testimony that "it has been *common* industry practice that toy manufacturers compensate inventors not only for such embodiments of the submitted concept itself, but also for 'line extensions'."

DI Memo. at 10. As discussed in Fisher-Price's memorandum on the issue of custom and practice, testimony about what is "common" is inadmissible. *See* FP Memo. in Support of Motion in Limine No. 1 at page 4.

- 8 -

Second, DI intends to offer testimony by both Reiling and DI "that <u>in their own experience</u> they are paid royalties on line extensions." DI Memo. at 10. Again, this sort of testimony is irrelevant under FRE 402. DI and Reiling are not entitled to offer evidence of "their own experience" unless that evidence satisfies the standard for custom and practice in the industry. Otherwise, it is simply evidence of isolated experience that is probative of nothing. This Court has already ruled that Reiling (and presumably DI) may not offer testimony about custom and practice in the industry, because such testimony can only be offered through an expert witness and neither Reiling nor DI was disclosed as an expert on that subject. [Docket No. 114 at 5-6].

Finally, DI clarifies that DI is *not* claiming that the accused Fisher-Price line extensions "use" the Reel Heroes concept.

> "Thus, the playsets and accessories cannot embody the concept in its entirety because the concept, by its very definition, requires adding the image component to the 'backpack.' For this reason, Design Innovation does not claim entitlement to damages merely because the playsets and accessories feature some components of Design Innovation's concept. As set forth above, Design Innovation claims damages because they are sold with the accused Rescue Heroes products."

DI Memo. at 12. DI never identifies any legal theory which would allow recovery of a royalty or other damages on products that do not use the allegedly misappropriated concept, merely because they are "sold with" accused products. DI cites no case law supporting such a claim.

In contrast, in Fisher-Price's memorandum in support of motion in limine no. 3, it cites *Seal-Flex, Inc. v. W.R. Dougherty & Assocs.*, 254 F. Supp. 2d 647, 656 (E.D. Mich. 2003). That case made clear that, where an agreement between the parties provided for payment of an established royalty for an accused product, the plaintiff may not recover damages flowing from defendant's sale of products that are sold in conjunction with the accused product. Moreover, in the somewhat analogous area of "convoyed sales" under patent law, it is well established that non-infringing, associated products will not be included in damages calculations, unless they have "no useful

purpose independent of the patented [product]."[6]  DI does not even claim to meet this standard.

### Conclusion

For the foregoing reasons, the Court should grant Fisher-Price's motions in limine nos. 1, 3, and 5.

Dated:     January 10, 2006

| | |
|---|---|
| **TYLER COOPER & ALCORN, LLP**<br><br>By _/s/ Robert W. Allen_<br>          Robert W. Allen<br>e-mail: rwallen@tylercooper.com<br>Federal Bar No.: ct04188<br>Jacqueline D. Bucar<br>e-mail: jbucar@tylercooper.com<br>Federal Bar No.: ct01187<br>205 Church Street<br>P.O. Box 1936<br>New Haven, CT 06509-0906<br>Telephone: (203) 784-8212<br><br>**HODGSON RUSS LLP**<br>Robert J. Lane, Jr.<br>e-mail: rlane@hodgsonruss.com<br>Federal Bar No.: ct24598<br>Jodyann Galvin<br>e-mail: jgalvin@hodgsonruss.com<br>Federal Bar No.: ct24599<br>One M&T Plaza, Suite 2000<br>Buffalo, NY 14203-2391<br>Telephone: (716) 856-4000 | **MILBANK, TWEED, HADLEY & MCCLOY LLP**<br>William E. Wallace, III<br>email: wwallace@milbank.com<br>Federal Bar No. PVH 0480<br>International Square Building<br>1825 Eye Street, N.W., Suite 1100<br>Washington, D.C. 20006<br>Telephone: (202) 835-7500<br><br>**ROBINSON & COLE LLP**<br>Bradford S. Babbitt<br>e-mail: bbabbitt@rc.com<br>Federal Bar No.: ct13938<br>Michael J. Kolosky<br>email: mkolosky@rc.com<br>Federal Bar No.: ct22686<br>280 Trumbull Street<br>Hartford, CT 06103-3597<br>Telephone: (860) 275-8200<br><br>*Attorneys for Fisher-Price, Inc.* |

---

[5]  *Transco Prods., Inc. v. Performance Contracting, Inc.*, 131 F. Supp. 2d 976, 979 (N.D. Ill. 2001) (denying recovery for damages on allegedly "convoyed" non-patented products because recovery may be had on such products only if "the auxiliary [non-patented] components derived their market value from the patented [product] because ***they had no useful purpose independent of the patented [product]***") (quoting *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1550 (Fed. Cir. 1995)) (emphasis added).

## CERTIFICATION

The undersigned hereby certifies that copies of the foregoing Reply Memorandum in Support of Fisher-Price's Motions in Limine Nos. 1, 3, and 5 dated January 10, 2006, was sent via facsimile and U.S. Postal Service, first class mail, to the attorneys of record recited below on this 10th day of January, 2006.

        Greogry J. Battersby, Esq. ( Bar No. 07386)
        Edmund J. Ferdinand, III, Esq. (Bar No. 21287)
        Russell D. Dize, Esq. (Bar No. 23064)
        Grimes & Battersby LLP
        488 Main Avenue, Third Floor
        Norwalk, CT 06851-1008
        Telephone: (203) 849-8300
        Facsimile: (203) 849-9300

        Peter M. Nolin, Esq. (Bar No. 06223)
        Jay H. Sandak (Bar No. 06703)
        Sandak Hennessey & Greco LLP
        707 Summer Street
        Stamford, CT 06901
        Telephone: (203) 425-4200
        Facsimile: (203) 325-8608

        _____
        Robert W. Allen (CT 04188)