UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

Victor G. Reiling Associates    :
and Design Innovation, Inc.,    :
            Plaintiffs,    :    Case. No. 3:03 CV 222 (JBA)
                                :
v.                              :
                                :
Fisher-Price, Inc.,             :
            Defendant.          :


**Ruling on Fisher-Price's In Limine Motions #1 and #5 Seeking to
Preclude Testimony of Plaintiff's Expert James Kipling
[Docs. ## 178, 182]**


In its In Limine Motion #1, Fisher-Price argues that the
standard for admissibility of custom and practice evidence is
extremely high and that the testimony of plaintiff Design
Innovation's expert James Kipling does not meet this standard.
Fisher-Price thus seeks to preclude Kipling's testimony on the
following subjects:  (1) confidentiality of inventor submissions;
(2) novelty;[1] (3) payment on line extensions; (3) the binding
effect of Fisher-Price's Policy and Agreement ("P&A"); and (4)
the binding effect of inventors' written descriptions on concept
submission forms or option agreements.  See Def. Mem. In Limine #
1 [Doc. # 182].[2]  In its In Limine Motion #5, Fisher-Price seeks

---

[1]  Fisher-Price argues that Kipling's testimony on novelty
is inadmissible because it is contrary to law.

[2]  In its In Limine Motion #1, Fisher-Price also sought to
preclude testimony of Victor Reiling and Design Innovation's
principals concerning custom and practice.  This part of Fisher-

to preclude, <u>inter alia</u>, Kipling from testifying "about whether the accused Fisher-Price products 'use' the 'Reel Heroes' concept," arguing that Kipling is not qualified to testify as an expert on toy design.  <u>See</u> Def. Mem. In Limine #5 [Doc. # 178] at 1-2.[3]

In its Opposition Memorandum, plaintiff DI acknowledges that Kipling cannot offer testimony that is contrary to law (such as his opinion about absolute novelty), that constitutes a legal conclusion on ultimate issues, or testimony that addresses the "Carterbench" rationale.  <u>See</u> Pl. Opp. [Doc. # 188] at 2.  DI contends that apart from these three areas, Kipling should be permitted to "testify on any other matter addressed in his prior expert reports or testimony, including toy industry custom and

_____

Price's Motion was denied as moot in the Court's Pre-Trial Endorsement Order because the Court's prior ruling excluding such testimony is not being contested.

   [3] In its In Limine #5, Fisher-Price also sought to preclude Kipling from testifying on: (1) any definition of the Reel Heroes concept other than the definition disclosed in his expert report; (2) the effect or interpretation of the parties' Option Agreement; and (3) that he believes Fisher-Price's license with Carterbench is fabricated.  As ordered in the Court's Pre-Trial Endorsement Order, Fisher-Price's motion is denied as to number one, and denied as moot as to numbers two and three, because the Court's prior rulings on these subjects are not contested.  The Court has revised its earlier ruling as to Kipling's testimony on the definition of the Reel Heroes concept in view of the fact that notice of Kipling's clarification of his definition was provided to defendant in his Declaration in opposition to defendant's Motion for Summary Judgment, and because his expert report stated only that his definition was "one" possible definition of plaintiffs' concept, not the only one.

practice on the subjects that remain relevant at trial: concreteness, novelty (i.e., relevance of the alleged prior art), legal relationship, use, reasonable royalty rates, and damages for sales of accessories and line extensions. Id. Pursuant to a request by the Court at oral argument, DI also clarifies Kipling's methodology for calculating a reasonable royalty in this case.[4]

## I.    CUSTOM AND PRACTICE

## A.   Standard

Fisher-Price argues that under New York law,[5] in order to be admissible evidence of industry custom and practice must be "fixed and invariable," "general, uniform and unvarying" and that evidence that a practice occurs "often," "frequently," or "usually" will not suffice. See Def. Mem. In Limine #1 at 4-5. Fisher-Price argues that Kipling's testimony on purported custom and practice in the industry does not meet this standard and, in

---

[4] DI also argues that "Fisher-Price waived [its] right to preclude expert testimony at trial by failing to submit a formal Daubert motion when it filed its summary judgment motion, as required by both a Standing Order of this District and a direct order of the Court." Pl. Opp. at 2-3. Fisher-Price's motions are not properly characterized as Daubert motions because, rather than attacking the reliability of the proposed testimony itself, Fisher-Price challenges Kipling's testimony on certain topics as outside the scope of his expertise, and the substance of his testimony as contrary to law and failing to meet the legal standard for admissibility of custom and practice evidence.

[5] The parties agree that New York law governs the claims in this case, except for plaintiffs' now-dismissed claim under the Connecticut Unfair Trade Practices Act.

fact, does not even meet Kipling's own definition of custom and practice as something done "more often than not" in the industry. See id. at 7 (citing Declaration of Robert Lane in Support of Fisher-Price's Motions In Limine ("Lane Decl."), Ex. I at 182-84); Def. Reply Mem. [Doc. # 191] at 5.

Fisher-Price cites a litany of cases in support of its position, but every one concerns admissibility of custom and practice evidence to interpret or supplement a contract term. The rationale underlying these cases is that before agreement to a certain contractual term or understanding is inferred from industry custom and practice, the evidence must be that the custom and practice is "so far established and so far known to the parties, that it must be supposed that their contract was made in reference to it. For this purpose the custom must be established, and not casual, uniform and not varying, general and not personal, and known to the parties." Belasco Theatre Corp. v. Jelin Prods., Inc., 59 N.Y.S.2d 42, 45 (App. Div. 1945) (cited in Hutner v. Greene, 734 F.2d 896, 900 (2d Cir. 1984)).[6]

_____

[6] See also e.g., British Int'l Ins. Co. v. Seguros la Republica, S.A., 342 F.3d 78, 83 (2d Cir. 2003) ("The trade usage must be so well settled, so uniformly acted upon, and so long continued as to raise a fair presumption that it was known to both contracting parties and that they contracted in reference thereto.") (internal citation omitted); Hutner v. Greene, 734 F.2d 896, 900 (2d Cir. 1984) (custom and practice evidence offered to infer omitted material price term from contract was insufficient because "custom and usage evidence must establish that the omitted term is fixed and invariable in the industry in question" and the proffered evidence did not rise to this level

Defendant itself implicitly acknowledges the scope of this
standard by citing <u>Reuters Ltd. v. Dow Jones Telerate, Inc.</u>, 662
N.Y.S.2d 450, 454-55 (N.Y. App. Div. 1997), for the proposition
that:

> [W]hen a party seeks to introduce evidence of trade
> usages, it "must show either that the other party <u>to</u>
> <u>the contract</u> is actually aware of the usage, or that
> the existence of the usage in the business to which the
> transaction relates is so notorious that a person of
> ordinary prudence in the exercise of reasonable care
> would be aware of it."  That is, "<u>that one party had</u>
> <u>knowledge of the usage, and supposed that it would</u>
> <u>enter into the contract, is not sufficient</u>."

Def. Mem. In Limine # 1 at 5 (emphasis added).  Defendant's In
Limine Motion might thus have been meritorious had the breach of
implied contract claim survived and DI sought admission of custom
and practice evidence to prove the terms of that contract.
However, because DI's only remaining claims are for
misappropriation and unfair competition, DI does not offer this
evidence to construe a contract, but rather because it may
"assist the trier of fact to understand the evidence or to
determine a fact in issue," <u>see</u> Fed. R. Evid. 702, by placing
certain events and actions in the context of observed toy
industry custom and practice.

While Fisher-Price complains that DI does not describe any
different standard for the admissibility of custom and practice
evidence in tort cases, the rationale behind the very high

———————————————

of "certainty").

standard applied in contract cases to infer parties' agreement or understanding about a contract term lacks applicability for its use in the claims remaining in this action.  In the absence of any other standard for the admissibility of custom and practice evidence in contexts other than contract interpretation under New York law, the Federal Rules of Evidence will be utilized.

Thus, if Kipling's testimony constitutes "scientific, technical, or other specialized knowledge [that] will assist the trier of fact to understand the evidence or to determine a fact in issue," see Fed. R. Evid. 702, it is admissible and Fisher-Price may cross-examine Kipling on variances from the claimed custom and practice.  See also Marx & Co., Inc. v. Diners' Club Inc., 550 F.2d 505, 509 (2d Cir. 1977) ("Testimony concerning the ordinary practices of those engaged in the securities business is admissible under the same theory as testimony concerning the ordinary practices of physicians or concerning other trade customs: to enable the jury to evaluate the conduct of the parties against the standards of ordinary practice in the industry."); Cornelius Hill v. NSB Niederelbe Schiffahrtsges.MBH & Co., Civ. 02-2713, 2004 WL 569908, at *1 (E.D. Pa. 2004) (holding that "experts may give testimony as to custom and usage, or standard practices of the trade, because . . . the issue of custom and practice may be relevant for the jury to assess the liability issues in this case" but that such testimony would be

6

precluded to the extent it is contradicted an "established principle of law") (case cited by defendant in its memorandum).[7]

## B.    Legal Relationship

Fisher-Price argues that Kipling should be precluded from testifying about the toy industry custom and practice of whether toy companies agree to keep confidential the submissions of outside inventors because at deposition he stated that there are "a variety of practices" as to "whether toy companies commit to keep investors' submissions confidential." Def. Mem. In Limine # 1 & n.23 (citing Lane Decl. Ex. J at 168-69). The stricter contract standard of admissibility Fisher-Price advocates is inapplicable and Kipling's testimony will be allowed. Fisher-Price can cross-examine Kipling on the "variety of practices" his testimony reflects and his statement that he "can't state what is the preponderance." See Lane Decl. Ex. J at 168. Notwithstanding the foregoing, the jury still may find his testimony useful in drawing inferences from the circumstances of plaintiffs' submission as to whether the parties intended or

---

[7] Fisher-Price's argument that Kipling's custom and practice evidence is inadmissible because it does not meet his own definition of custom and practice is a proper subject for cross-examination, not preclusion. Moreover, Fisher-Price mischaracterizes Kipling's definition of custom and practice because Kipling also states that his understanding of custom and practice means "the normal practice," something done "routinely." See Lane Decl. Ex. I at 183-84. It will be for the jury to determine whether to credit Kipling's testimony and what weight to give to it.

assumed the submissions would be treated confidentially in light of usual industry practices.  Thus, defendant's Motion In Limine #1 on this ground is denied.

## C.   Novelty/Prior Art

Fisher-Price argues that Kipling should not be permitted to offer an opinion concerning novelty and prior art, on the basis of purported custom and practice or otherwise, that is contrary to law.  In its Ruling on Defendant's Motion for Summary Judgment the Court ruled that Kipling could not offer testimony that was contrary to clearly established law.  <u>See</u> Ruling on Defendant's Motion for Summary Judgment [Doc. # 145] at 29-30 n.21.  Thus, to the extent that Kipling's testimony on novelty and prior art is contrary to law (<u>e.g.</u> testimony stating that in the toy industry novelty is not a material consideration), it will not be permitted.

Fisher-Price also argues that Kipling should be precluded from offering opinions as to whether plaintiffs' Reel Heroes concept was novel because "[w]hether Kipling has ever <u>seen</u> a particular concept before does not establish the foundation necessary to testify that a concept <u>is</u> novel (the only purpose for which such testimony could be relevant)."  <u>See</u> Def. Reply Mem. at 6 (emphasis in original).  Fisher-Price argues that in order to establish the foundation necessary to testify that a concept <u>is</u> novel, Kipling "would be required to show that he is

8

knowledgeable of the prior art in the particular area and that he has conducted an in-depth and detailed review of prior art" and he has not done so. Id. The Court already held in its Ruling on Defendant's Motion to Strike [Doc. # 144] that based on his extensive experience with issues of novelty and prior art, Kipling was qualified to opine on such topics to the extent that his testimony does not advocate ultimate legal conclusions. Contrary to Fisher-Price's contentions, given Kipling's claimed breadth of exposure to toy concepts and products, whether he had ever seen a product that embodied plaintiffs' Reel Heroes concept prior to plaintiffs' submission of the concept to Fisher-Price is relevant to whether plaintiffs' concept is in fact novel because it has a "tendency to make the existence of [a] fact that is of consequence to the determination of the action," i.e., whether the concept was novel, "more probable . . . than it would be without the evidence." Fed. R. Evid. 401. Thus, defendant's Motion in Limine #1 on this ground is granted in part, as to testimony that is contrary to law, and denied in part.

**D.    Payment on Line Extensions**

Fisher-Price seeks to preclude Kipling's testimony of the custom and practice in the toy industry concerning compensation for line extensions because Kipling and DI's principals "have testified that there is no uniform custom in the toy industry that requires payment on line extensions" and Kipling "agreed

9

that inclusion of line extensions and accessories within the royalty obligation of a license agreement is a 'matter of negotiation.'" Def. Mem. In Limine # 1 at 11.  Thus, Fisher-Price argues that Kipling's argument "that there is a custom and practice in the toy industry requiring the payment of royalties on line extensions is actually <u>contrary to</u> Kipling's expert report."  Def. Reply Mem. at 3 (citing Lane Decl., Ex. B at Pt. III.D.) (emphasis in original).

While Kipling did acknowledge in his expert report that "[w]hether the inventor is compensated when line extensions are independently created and developed by the toy company is generally a matter of negotiation in the final license agreement," <u>see</u> Lane Decl., Ex. B. at Pt. III.D., Kipling also stated that "it has been common industry practice that toy manufacturers compensate inventors not only for such embodiments of the submission concept itself, but also for 'line extensions' which can include accessories that do not embody the submitted concept but which are marketed for use with licensed products embodying such concept."  <u>Id</u>.  As noted above, Kipling's testimony need not rise to the level of a "uniform" or "unvarying" practice in order to be admissible.  His testimony on line extensions is relevant to the jury's determination of whether, if it is found that Fisher-Price misappropriated plaintiffs' Reel Heroes concept, DI is entitled to recover

compensation for Fisher-Price's line extensions on products accompanying those which "use" that concept.  Thus, defendant's Motion in Limine # 1 on this ground is denied.

**E.    Binding Effect of Written Agreements**

At oral argument, DI acknowledged that it was not offering Kipling for expert testimony on the binding effect of the P&A or the binding effect of inventors' written descriptions on concept submission forms or option agreements.  Thus, the only remaining issue with respect to this area of testimony is whether Kipling can testify about custom and practice in the toy industry as to what is expected of inventors describing their concepts on submission forms or option agreements.  Fisher-Price disputes that such a custom and practice exists because Kipling provides no evidence "that it is the unvarying, uniform custom in the toy industry that inventors are not expected to accurately and completely describe their submissions" and argues that "an opinion about what 'typically' occurs fails to establish an industry custom."  See Def. Mem. In Limine #1 at 13.

As discussed above, Kipling's testimony about custom and practice in this case need not rise to the level of "unvarying, uniform custom" in order to be admissible.  Thus, Kipling is competent to testify about his experience and understanding of the use and function of concept submission forms, such as that they primarily serve "a record-keeping function," see id. at 13

11

(citing Kipling report), and Fisher-Price can cross-examine Kipling as to why such industry experience is inapplicable to these submissions.  Thus, defendant's Motion in Limine #1 on this ground is denied.

## II.  KIPLING'S COMPETENCE TO TESTIFY ON USE

In its Motion in Limine #5, Fisher-Price seeks to preclude Kipling from testifying about whether Fisher-Price's accused products "use" plaintiffs' Reel Heroes concept, arguing that because Kipling is admittedly not qualified to testify as an expert on toy design, he is not qualified to opine on whether Fisher-Price's products use plaintiffs' concept.  DI argues that while Kipling acknowledged that he was not qualified to work as a designer at a toy company, his "vast experience with toy development and design features spanning a twenty-five year career" qualifies him to opine on whether Fisher-Price's product embody plaintiffs' concept.  See Pl. Opp. at 9.[8]

In the Ruling on Defendant's Motion to Strike, the Court

---

[8]  DI cites cases for the proposition that an expert may be qualified based on "extensive practical experience" despite lacking formal education or training on the precise subject matter at issue.  See McCullock v. H.B. Fuller Co., 61 F.3d 1038, 1043 (2d Cir. 1995) ("[B]ackground and practical experience qualify as 'specialized knowledge' gained through 'experience, training, or education.'"); Lappe v. American Honda Motor Co., 857 F. Supp. 222, 226-27 (N.D.N.Y. 1994) (expert witness in products liability action is "not strictly confined to his area of practice but may testify concerning related application" even if he has no actual experience in the manufacture of the product; "a lack of specialization affects the weight of the opinion, not its admissibility"), aff'd 101 F.3d 681 (2d Cir. 1996).

acknowledged defendant's argument concerning the competence of a patent attorney not qualified in the underlying art to testify concerning infringement.  <u>See</u> Ruling on Defendant's Motion to Strike at 2 n.1.  However, unlike the proposed experts in the cases cited by Fisher-Price that did not have any expertise or background in the underlying art, Kipling has experience in the areas of novelty, toy development, and toy use and play patterns. <u>See</u> Ruling on Defendant's Motion to Strike at 2-3 (noting that "[i]n his position at Kenner Toy Company, Mr. Kipling regularly made determinations regarding whether the toy in question was novel and non-obvious to one reasonably skilled in the art, considered issues of prior art, and was intimately familiar with how Kenner's products worked and how children played with them.").  In fact, determinations of novelty and prior art necessitate conclusions as to whether a prior product "uses" a submitted concept.  Thus, while Kipling is admittedly not an expert on toy design, a toy designer is not the only expert with qualifications to testify about concept use.  Kipling's specialized experience and knowledge in the toy industry concerning use is beyond that of an ordinary lay person and may be helpful to the jury in making its decision as to whether the accused products use plaintiffs' concepts.  Defendant's Motion in Limine #5 on this ground is denied.

13

## III. REASONABLE ROYALTIES

In its Opposition Memorandum, DI responds to Fisher-Price's assertion at oral argument that Kipling should be precluded from testifying as to a reasonable royalty in this case, and clarifies the foundation of Kipling's testimony in this area.  DI states that Kipling's testimony regarding royalty rates in the toy industry is not subject to the factors set forth in Georgia-Pacific Corp. v. United States Plywood Corp., 318 F. Supp. 1116 (S.D.N.Y. 1970), modified and aff'd, 446 F.2d 295 (2d Cir. 1971), because in the patent field, but not the toy industry, royalty rates vary so significantly.  See Pl. Opp. at 12-13.  Plaintiff argues that toy product licensing is "entirely different" from licensing in the patent context, because in the toy product context, there are established royalty rates for the industry with very little variance and which are not typically subject to much negotiation.  See id. at 13.

Defendant responds that, notwithstanding the inapplicability of Georgia-Pacific factors, Kipling has failed to provide sufficient foundation for his testimony on reasonable royalties because he simply states that "'a royalty . . . is typically in the range of 5% of total sales'" and that it is his "'opinion that the subject Fisher-Price products based upon or derived from Plaintiffs' submitted concept should bear royalty payable to Plaintiffs in the 6% to 7% range.'" Def. Reply Mem. at 8 (citing

14

Lane Decl., Ex. B at Pt. III.C.).

In fact, Kipling supports his opinion that a reasonable royalty "is typically in the range of 5% of total sales" by referencing several industry publications.  See Lane Decl., Ex. B at Pt. III.C.  Similarly, any testimony Kipling may offer is based on his career toy industry experience representing both toy inventors and toy companies in negotiating license agreements and royalty rates.  However, Kipling's only stated basis for his opinion that a royalty of 6%-7% is appropriate in this case is his argument that Fisher-Price should not get the benefit of the royalty rate agreed to in the Option Agreement as a cap on any subsequent liability, a principle he states has been recognized by the Federal Circuit and discussed in a trade publication regarding rates awarded as damages by courts.  See id.  The royalty rates awarded by courts and not negotiated in the industry is not a proper subject for Kipling's expert testimony.  Thus, unless DI can articulate some other basis for his opinion that a 6%-7% royalty rate is appropriate in this case, this opinion will be excluded.

**IV.  CONCLUSION**

For the foregoing reasons, defendant's Motion in Limine #1 [Doc. # 182] concerning the admissibility of Kipling's custom and practice evidence is granted in part and denied in part.  Part one of Defendant's Motion in Limine #5 [Doc. # 178], which

15

concerns Kipling's testimony on "use," is denied.  Kipling's testimony on a reasonably royalty rate is limited, as detailed above.

IT IS SO ORDERED.

_____/s/_____
Janet Bond Arterton
United States District Judge

**Dated at New Haven, Connecticut this 12th day of January, 2006.**

16