Exhibit B

*Contains Confidential Information under the Confidentiality Stipulation and Order of August 26, 2003*

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| VICTOR G. REILING ASSOCIATES and DESIGN INNOVATION, INC. <br><br> Plaintiffs, <br><br> -against- <br><br> FISHER-PRICE, INC., <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil No.: 3:03 CV 222 (JBA) <br> ) <br> ) <br> ) <br> ) <br> ) |

## INITIAL EXPERT REPORT OF ABRAM E. HOFFMAN, DBA

## I. INTRODUCTION

I have been retained as an expert in this case by Hodgson Russ LLP. I am a principal in Abram E Hoffman, LLC ("AEH"). I have served as a consultant to businesses, trade associations and government agencies on matters involving economic, financial and statistical analysis. My work often involves analyzing, modeling or projecting economic or financial data to determine the economic impact of business decisions, regulations or transactions. I have served as an expert witness or consultant in a range of litigation matters including applying economic principles to quantifying damages in intellectual property infringement, trade secret misappropriation, and breach of contract matters, among others. My resume is attached as *Exhibit 1*. A list of cases in which I have testified in the last four years is attached as *Exhibit 2*.

1

*Contains Confidential Information under the Confidentiality Stipulation and Order of August 26, 2003*

AEH is being compensated at its standard hourly rate for the work that I perform in this matter. My current hourly rate is $380. The compensation is unaffected by the outcome of this matter.

## II. INFORMATION REVIEWED

During the course of work on this matter I have reviewed the legal pleadings in this matter, reports of the damages witnesses for plaintiffs,[1] business documents, deposition testimony and deposition exhibits produced by both the Plaintiffs and the Defendant. These are listed in *Exhibit 3*. I have had conversations with an employee of Fisher-Price ("F-P"). The information in this report is based on discovery and materials made available to me through the date of this report. I understand that additional material relevant to this report may become available. If so, I will supplement my opinions.

## III. SUMMARY OF THE FACTS AND MY OPINIONS

Victor G. Reiling Associates ("Reiling") is an independent toy developer.[2] Design Innovation, Inc. ("DI") is an industrial design firm that develops prototypes and models of toys and other products. DI has collaborated with Reiling on games and toys.[3]

---

[1] Rule 26 Expert Report of Alan Ratliff, January 31, 2005; Letter to Mr. Russell D. Dize from Alan Ratliff, March 30, 2005; Expert Report of James Kipling, January 5, 2004; Supplement to Expert Report of James Kipling, January 28, 2004; Second Supplement to Expert Report of James Kipling, January 31, 2005; and Declaration of James M. Kipling in Support of Motion to Amend Complaint, March 4, 2004.

[2] Second Amended Complaint, November 19, 2004, paragraphs 12-13.

[3] Second Amended Complaint, November 19, 2004, paragraphs 14-15.

2

*Contains Confidential Information under the Confidentiality Stipulation and Order of August 26, 2003*

Plaintiffs have asserted various claims against F-P in connection with their submission to F-P of the "Reel Heroes" concept as it relates to F-P's Rescue Heroes toy line. The initial submission occurred in October 1998 with additional submissions in May 1999 and December 2000 in response to rejections of "Reel Heroes" by F-P. Plaintiffs' claims include: (1) Breach of implied-in-fact contract, (2) Misappropriation, (3) Unfair competition, (4) Common Law Unfair Competition, and (5) Accounting. I have been retained by counsel for the defendants to: (1) analyze plaintiffs' claims for damages against F-P, and (2) quantify plaintiffs' damages under (a) a lost profits damages theory; (b) a reasonable royalty damages theory; and (c) a disgorgement of profits damages theory.

### Summary of My Opinions

In my opinion, plaintiffs' claims are overstated. Mr. Ratliff fails to consider or quantify damages under either a lost profits theory or a reasonable royalty theory. Additionally, his disgorgement of profits theory fails to consider any cost offsets to net revenues. Further, to the extent that he relies on F-P documents generated in December 2004 for net revenues, he is mistaken. I understand that Mr. Kipling opines that reasonable royalty damages should be based on 6 to 7 percent of sales of Rescues Heroes figures and toys, accessories, and line extensions, but has not quantified either the royalty base or royalty amounts. In any event, his percentages are unsupported by either the Option Agreement between the parties or licenses produced in this litigation.

3

*Contains Confidential Information under the Confidentiality Stipulation and Order of August 26, 2003*

In my opinion, assuming liability with respect to all accused products identified by Mr. Ratliff, under a lost profits damages theory, plaintiffs' losses are represented by the 3 percent royalty on relevant sales negotiated by the parties in early 1999. This amounts to at most, approximately $2.8 million based on net sales through the end of 2004.[4] Under a reasonable royalty damages theory, damages would also amount to the same figures. Under a disgorgement of operating profits damages theory, operating profits for the accused products for 2001 through 2004 amount to at most, approximately $12.5 million.[5] Apportioning this amount between the concepts contributed by the plaintiffs and the concepts, investments, brand equity and business risks contributed or borne by F-P yields $2.8 million (approximately 22 percent) as damages to the plaintiffs and the remainder or $9.7 million (approximately 78 percent) attributable to F-P.[6]

## IV. ANALYSIS OF PLAINTIFFS' CLAIMS

Mr. Ratliff has produced two documents in this litigation: (1) an Expert Report dated January 31, 2005, and (2) a letter to plaintiffs' counsel of March 30, 2005. Both documents are directed to disgorgement as the measure of plaintiffs' damages. He fails to consider or quantify damages under either a lost profits damages theory or a reasonable royalty damages theory. In his January 31, 2005 report he acknowledges that Mr. Kipling will testify on royalty damages.

---

[4] This amount may be overstated as 2001 sales may include sales of non-accused products. Additionally, see the discussion in Section V.1 and Exhibit 4 for details of lost profits and reasonable royalties on subsets of the entire accused product set and of the entire 2001-2004 time period.
[5] This amount may be overstated as 2001 sales may include sales of non-accused products.
[6] See the discussion in Section V.3 and Exhibit 5 for details of operating profits (and apportionment thereof) for subsets of the entire accused product set and of the entire 2001-2004 time period.

4

*Contains Confidential Information under the Confidentiality Stipulation and Order of August 26, 2003*

In addressing his damages theory of disgorgement of F-P's profits, Mr. Ratliff has tallied up F-P's 2000 – 2004 net sales on the accused products without any subtractions to reduce the sales figures to a profits measure or recognition that sales of accused products did not begin until 2001. Profit and Loss (P&L) statements by SKU produced by F-P allow these cost offsets to be computed (see Section V.3 below). Additionally, any operating profits earned by F-P on the relevant items should be apportioned between the plaintiffs and F-P, a damages quantification issue not addressed substantively by Mr. Ratliff.

In his March 30, 2005 letter to plaintiffs' counsel, Mr. Ratliff notes differences in the aggregate sales figures he computed by reference to documents generated for this litigation by F-P in December 2004,[7] and Net Sales figures disclosed in FP 14922, produced subsequently. The later-produced figures are somewhat higher in aggregate. To the extent that he relies on F-P documents generated in December 2004 for net sales, that reliance is misplaced.

In his first report of January 5, 2004 and his Declaration in Support of Motion to Amend Complaint (March 4, 2004) Mr. Kipling opines that reasonable royalty damages should be based on 6 to 7 percent of sales of Rescues Heroes figures and toys, accessories, and line extensions. In his Supplemental Expert Report (January 28, 2004), he also opines on other measures of damages of a punitive nature. As to his opinion on compensatory damages, he has not quantified either the royalty base or royalty amounts. In any event,

---

[7] FP 0775-0888 and FP 13381-13523.

*Contains Confidential Information under the Confidentiality Stipulation and Order of August 26, 2003*

his percentages are unsupported by either the Option Agreement[8] actually negotiated between the parties (3 percent of gross wholesale selling price of Rescue Hero products embodying the "Reel Heroes" concept) or licenses produced in this litigation (at 3 and 5 percent of sales).

## V. DAMAGES ASSUMING LIABILITY

As a threshold matter, all the damages quantification approaches described below assume that plaintiffs have met their burden of proving liability under the relevant claim. If not, damages are zero. Nothing in my discussion of damages assuming liability should be taken as my opinion on liability issues or as an admission of liability by the defendant.

### 1. Lost Profits

The plaintiffs' lost profits are the amount of royalties they would have earned had F-P paid royalties on sales of relevant products under the Option Agreement. This is a royalty of 3 percent of the "gross wholesale selling price"[9] of Rescue Heroes products embodying the "Reel Heroes" concept. "Gross wholesale selling price" is defined in the agreement as the gross invoiced amount less discounts and allowances, credits for returns, and royalties paid to third parties (net sales). The Option Agreement also provides for a royalty rate of 5 percent for entirely new figures/toys not based on the

---

[8] Deposition Exhibit 210.
[9] Deposition Exhibit 210 at VGR 0013.

6

*Contains Confidential Information under the Confidentiality Stipulation and Order of August 26, 2003*

Rescue Heroes platform.[10]  Plaintiffs claim that the accused products would have entitled

them to royalties at the 3 percent rate.[11]

*Exhibit 4* provides a calculation of royalties of 3 percent of net sales on the accused

Rescue Heroes products from 2001 through the end of 2004.  The first accused products

introduced to the public were the Voice Tech Mission Command figures, first sold in

2001.[12]  The data currently available does not permit me to distinguish with certainty

sales of Voice Tech Mission Command figures from sales of Voice Tech figures (which

are not accused).  For purposes of this report, I have included all 2001 sales.  If more

precise data becomes available I will adjust my calculations to eliminate the non-accused

products.  This calculation will be updated close to trial for subsequent sales.

I understand that F-P contends that the Optic Force Team figures were derived from a

submission of another toy development company, Bang Zoom Design, Ltd. ("Bang

Zoom"), and from existing F-P "Adventure People" figures.  Exhibit 4 also calculates lost

royalties excluding the sales of these figures.

I also understand that F-P contends that certain Rescue Hero vehicles and playsets are, at

best, line extensions of the "Reel Heroes" concept, which the Option Agreement did not

---

[10] Reiling depo December 10, 2003, p74.
[11] Reiling depo December 10, 2003, p203-4.
[12] I understand that plaintiffs are also making a claim with respect to Voice Tech vehicles (which were sold earlier) but only to the extent that they were sold with other accused products.

*Contains Confidential Information under the Confidentiality Stipulation and Order of August 26, 2003*

treat as royalty-bearing.[13]  Exhibit 4 also calculates 3 percent royalties on the accused

Rescue Heroes products excluding sales of these vehicles and playsets.


I have also been asked to calculate royalties excluding the Aquatic Rescue Command

Center (SKU # 78157) and Voice Tech Video Mission figures (SKU # 78177) as being

subject to royalties payable to Virtual Video (UK) Limited.[14]


I have been asked to assume that that the Bang Zoom submission to F-P in late 2001 was

an independent submission disclosing the subject matter of the "Reel Heroes" concept,

and as such, serves as a bar to plaintiffs' damages from that point onward.  Accordingly, I

have provided alternative calculations in Exhibit 4 with royalties calculated only through

the end of 2001.[15]


## 2. Reasonable Royalties


The usual approach in calculating reasonable royalty damages is to hypothesize the

results of royalty negotiation that never took place (or did not proceed sufficiently to

reach consensus on the economic terms).   This analysis involves considering the relative

bargaining power of the two parties at the time of the hypothetical negotiation.  Often the

---

[13] See, for example, Melville depo, January 28, 2005 pp24-30; Benedetto depo, November 18, 2003, pp122-4, and pp146-7; Benedetto depo, January 27, 2005, pp76-80; and Kipling depo, February 10, 2005, pp151-5 and pp231-7.

[14] License Agreement (May 21, 2001) FP 0337-0412 and Amendments FP 0533-36, FP 0305-08, and FP 0297-300.

[15] I understand that Bang Zoom submissions occurred in October 2001 (FP 15305-07) and December 2001 (FP 15304).  To give the benefit of the doubt to plaintiffs, I compute 3 percent royalties on net sales through the end of 2001.

8

*Contains Confidential Information under the Confidentiality Stipulation and Order of August 26, 2003*

analyst considers a list of reasonably comprehensive factors (such as those in *Georgia-Pacific* patent infringement case[16]) in estimating the results of that hypothetical negotiation.

Here, as is sometimes the case, there is no need to resort to a hypothetical negotiation, since an actual one occurred. Its economic terms are contained in the Option Agreement of February 16, 1999. After discussions with F-P's Paul Snyder, Reiling accepted the terms of the Option Agreement without modification to the economic terms.[17] As stated above, the parties agreed to a 3 percent royalty for the accused toys and figures. As Reiling,[18] DI's Melville,[19] and their expert witness Kipling[20] testified, the economic terms were fully negotiated and there was no room for either party to back out. Additionally, Kipling notes that toy concept royalties are typically 5 percent, but are lower if the concept is applied to an existing product or established product line such as Rescue Heroes.[21] Therefore, I find that 3 percent is a reasonable royalty. The calculation is the same as described above for Lost Profits for each liability scenario (Exhibit 4).

Other licenses produced or referenced in this litigation are either at 3 percent[22] or at 5 percent.[23]    In any case, it would be inappropriate to substitute terms of other licenses,

---

[16] *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970).
[17] Reiling depo, December 10, 2003, pp226-231; Reiling depo, February 15, 2005, pp95-103.
[18] Reiling depo, February 15, 2005, pp95-103.
[19] Melville depo, January 22, 2004, pp34-5.
[20] Kipling, Second Supplement, January 31, 2005, p7 & p19; Kipling depo, February 10, 2005, pp229-233.
[21] Kipling depo, January 30, 2004, pp247-250.
[22] Deposition Exhibit 326: F-P – Reiling "Air Drums," February 26, 1987.
[23] Mattel – Taylor, "Clean Up Your Room," June 12, 1996; and F-P – Kiscom, "Silly Sounds," November 2, 1992.

*Contains Confidential Information under the Confidentiality Stipulation and Order of August 26, 2003*

negotiated by other parties, or at different times or under different circumstances for the result actually obtained by these parties under the relevant circumstances.

### 3. Disgorgement

I provide a calculation of F-P's operating profits on the accused products in *Exhibit 5* based on the sales and costs by SKU from F-P's Rescue Heroes Worldwide Profit and Loss (P and L) statement. As shown, deductions are taken for Cost of Goods Sold and royalties (column 9), tooling (column 11), advertising and merchandising (column 12), and total overhead (column 13). Operating profits (column 14) for the accused products for the period 2001–2004 total approximately $12.5 million or approximately 13.6 percent of Net Sales.[24]

It would be inappropriate to attribute all of these operating profits to the "Reel Heroes" concept, even under the assumption that F-P received some benefit from the plaintiffs' submission that it should be compelled to disgorge. F-P contributed its brand name and considerable reputation in the marketplace, provided the platform of the successful Rescue Heroes action figure line, and bore the costs and business risks of investment in design, tooling, manufacturing, advertising and promotion in return for the expectation of profits in excess of royalty obligations. Apportionment of operating profits between the parties is appropriate in these circumstances. In my opinion, given that the economic terms of the Option Agreement specify the negotiated revenue-sharing arrangement, it is

---

[24] As stated above, 2001 sales may be adjusted if more precise data becomes available.

*Contains Confidential Information under the Confidentiality Stipulation and Order of August 26, 2003*

reasonable to credit the plaintiffs with the agreed-upon 3 percent royalty and attribute the remainder of operating profits to F-P. As shown, this results in an apportionment of approximately 22 percent of the operating profits to plaintiffs (disgorgement damages of approximately $2.8 million) and an apportionment of approximately 78 percent (the remaining approximately $9.7 million) to F-P.[25]

Exhibit 5 also provides operating profits (and apportionment to the parties) under the alternative liability scenarios considered above under Lost Profits (Section V.1 and Exhibit 4).

* * * * * * * * * *

I anticipate that I may use demonstrative or summary exhibits in my testimony and these will be provided when and as required.

May 11, 2005

Abram E. Hoffman, DBA

---

[25] It should be noted that the parties jointly acknowledged the concept of apportionment in the terms of the Option Agreement. The royalty rate varies depending on the platform the inventor's concept is applied to, recognizing, at least to some extent, that apportionment is appropriate when the licensed concept is applied to licensee's existing successful product line.

11

EXHIBIT 1

## ABRAM E. HOFFMAN, DBA
(202) 364-0936

| | |
|---|---|
| **Position** | Principal<br>Abram E Hoffman, LLC,<br>3330 Stuyvesant Place, NW<br>Washington, DC 20015 |
| **Education** | Bachelor of Science, Mechanical Engineering, Economics minor, University of Pennsylvania, 1970.<br><br>Doctor of Business Administration, Managerial Economics and Finance, Harvard University Graduate School of Business Administration, 1976.<br><br>Certified Cost Estimator/Analyst, 2002 |
| **Professional Affiliations** | American Economic Association<br>Society of Cost Estimating & Analysis |
| **Range of Experience** | Dr. Hoffman's litigation engagements have focused on damage quantification in a range of underlying matters including: patent, copyright and trademark infringement, trade secret misappropriation, antitrust, false advertising, breach of contract, personal injury, wrongful death, medical malpractice, and wrongful termination.<br><br>He has testified as an expert in U.S. District Courts in New York, Pennsylvania, Delaware, Maryland, D.C., Virginia, Florida, Minnesota, Iowa, and Florida; U.S. International Trade Commission; U.S. Court of Federal Claims; Circuit Courts in Florida and Maryland; D.C. Superior Court; the American Arbitration Association; before a subcommittee of the U.S. House of Representatives, and before the Joint Economic Committee of the U.S. Congress. |
| Intellectual Property | Economic expert for the United States in the matter of *Chemical Separation Technology, et al. v. United States.* Quantified reasonable royalty damages and delay damages for the alleged infringement of an acid mine wastewater remediation technology used in the Superfund cleanup of the Summitville Mine in Colorado. Trial Testimony: October 2004 (Court of Federal Claims).<br><br>Damages expert on the issue of reasonable royalty damages in *Litex, Inc. v. Delphi Automotive Systems Corporation and Delphi Automotive Systems LLC* (patent infringement – automotive emissions reduction). Testimony in binding arbitration on damages – April 2004).<br><br>Economic expert in the matter of: *Certain Universal Transmitters for Garage Door openers,* U.S. International Trade Commission Investigation No. 337-TA-497. Addressed the issue of irreparable harm due to alleged violation of the Digital Millennium Copyright Act.<br><br>Damages expert on the issue of reasonable royalty damages in *Oakwood Laboratories, LLC and University of Kentucky Research Foundation v. TAP Pharmaceutical Products, Inc., et al.* (patent infringement - sustained release leoprolide acetate). Deposition testimony: May 2003 (District of Northern Illinois) |

ABRAM E. HOFFMAN, DBA
(202) 364-0936                                                                          **Page 2**

**Intellectual Property**
**(continued)**

Damages expert on the issues of lost profits, reasonable royalty, convoyed sales in *American Standard, Inc. v. York International Corp.* (patent infringement – industrial and commercial chillers). Deposition testimony: August 2002 (District of Wisconsin).

Economic expert for the U.S. Mint on the issues of trademark, copyright and false advertising damages in *United States of America v. The Washington Mint, LLC et al.* Issues addressed include trademark confusion, false advertising and copyright and trademark damages under a disgorgement of profits theory and corrective advertising expenses.

Damages expert in: *Elf Atochem North America v. La Roche Industries* (patent infringement – HCFC 141b). Quantified damages under lost profits (including price erosion) and reasonable royalty damages theories. Assessed likelihood of entry and competitive impact of non-infringing alternative suppliers.

Damages expert in *Fonar Corporation v. HealthSouth Inc.* (patent infringement – magnetic resonance imaging). Issues addressed include quantifying the extent of accused MRI procedures and royalty base for reasonable royalty damages.

Served as damage expert in a copyright and contract dispute pertaining to CAD/CAM computer software. Issues addressed include quantifying damages under a disgorgement theory and a reasonable royalty claim.

Served as damages expert in *IMS Technology v. Haas Automation* (patent infringement – software controller for milling machines). Quantified reasonable royalty damages.

Damages expert in *Mobilificio San Giacomo v. Sangiacomo* (trademark infringement, false advertising – furniture). Quantified damages under a disgorgement of profits theory.

Served as damages expert in: *Pioneer Hi-Bred International Inc. v. The Lubrizol Corporation* (patent infringement – high oleic sunflower seeds and oil). Issues addressed included lost profits, price erosion, reasonable royalties, and pre-judgement interest. Deposition testimony: May 1998, Trial testimony: November 1998 (Southern District of Iowa).

Served as damages expert in *Evans Medical Ltd. and Medeva PLC v. American Cyanamid Co. et al.* (patent infringement – acellular pertusis vaccine). Issues addressed include lost profits, price erosion, and reasonable royalties. Deposition testimony: April 1998 (Southern District of New York).

Served as damages expert in *Accuscan v. Samsung Electronics* (patent infringement – facsimile machines and scanners). Addressed reasonable royalty damages

Damages expert in *Vehicular Technologies v. Titan Wheel International* (patent infringement – transmission lockers). Issues addressed include lost profits, price erosion, and reasonable royalties

Damages expert in *Datapoint Corporation v. PictureTel Corporation* (patent infringement – video telephony). Addressed reasonable royalty damages. Deposition testimony: February 1998 (Northern District of Texas, Dallas Division).

ABRAM E. HOFFMAN, DBA
(202) 364-0936                                                                                               **Page 3**

**Intellectual Property**         Damages expert in *Out of Line Sports, Inc. v. Bauer Inc., and Bauer USA Inc.*
**(continued)**                   (patent infringement – in-line skate brakes).  Addressed reasonable royalty
                                  damages.

                                  Served as damages expert in *The Johns Hopkins University v. Cardiac
                                  Pacemakers, Inc. et al.* (patent infringement and breach of contract - implantable
                                  cardiac defibrillators).  Issues addressed include reasonable royalties, lost
                                  royalties, and breach of contract damages. Deposition: June 1997 (District of
                                  Maryland, Northern Division).

                                  Served as patent damages expert in *DiscoVision Associates v. Disc
                                  Manufacturing, Inc.* (patent infringement – compact discs).  Issues addressed
                                  include reasonable royalty damages and pre-judgment interest. Deposition: May
                                  1997 (District of Delaware).

                                  Damages expert in *Augustine Medical, Inc. v. Mallinckrodt Medical Group*
                                  (patent infringement, false advertising – convective surgical warming blankets).
                                  Issues addressed include lost profits, reasonable royalties, price erosion, and
                                  profit disgorgement.  Deposition testimony:  October 1996 and January 1997,
                                  Trial testimony: September 1997 (Eastern District of Missouri and District of
                                  Minnesota).

                                  Served as damages expert in *C.S. Telecom v. Hewlett-Packard* (patent
                                  infringement – computer networking hardware).  Issues addressed include
                                  reasonable royalties.  Deposition testimony:  October 1996  (District of
                                  Columbia).

                                  Served as damages expert in *ADC Telecommunications v. Siecor* (patent
                                  infringement – fiber optic modules). Issues addressed include lost profits and
                                  price erosion. Deposition testimony: October 1996 (District of Delaware).

                                  Damages expert for defendant in *Chemtron v. Diversey* (patent infringement –
                                  dispenser for industrial dishwashing detergent). Issues addressed included lost
                                  profits on lost sales, price erosion, and reasonable royalties.  Deposition
                                  testimony: June 1996 (Eastern District of Virginia).

                                  Economic expert in the matter of *Hardware Logic Emulation Systems and
                                  Components Thereof, Inv. No. 337-TA-383*, for respondents Meta Systems and
                                  Mentor Graphics. (Hardware logic emulators).  Issues addressed included
                                  irreparable harm, lost sales, and price erosion. Deposition testimony: April 1996;
                                  Hearing testimony: April 1996 (U.S. International Trade Commission).

                                  Served as damages expert in *Glock, Inc. v. Smith & Wesson Corp.* (trade dress
                                  and patent infringement – polymer frame handguns). Issues addressed include
                                  reasonable royalties and disgorgement of profits. Deposition testimony: January
                                  1996 (Northern District of Georgia).

                                  Damages expert in *Elf Atochem North America, Inc., v. Libbey-Owens-Ford Co.,
                                  Inc.* (patent infringement – chemical process for Low Emissivity Glass).  Issues
                                  addressed included lost profits and reasonable royalty.  Deposition testimony:
                                  July and November 1995 (District of Delaware).

                                  Economic expert in the matter of *Certain Electrical Connectors and Products
                                  Containing Same, Inv. No. 337-TA-374*, for Respondent Berg Electronics, Inc.,
                                  (Single In-line Memory Modules - SIMM Connectors). Issues addressed
                                  included product substitution, market definition, price erosion, and irreparable

ABRAM E. HOFFMAN, DBA
(202) 364-0936                                                                 **Page 4**

**Intellectual Property**
**(continued)**

harm. Deposition testimony: June 1995, Hearing testimony: July 1995 (U.S. International Trade Commission).

Served as damages expert in *Berg v. Molex* (patent infringement – Single In-line Memory Module connectors). Issues addressed include price erosion, lost profits on lost sales, and reasonable royalty damages. Deposition testimony: February and September 1995, Trial testimony: October 1995 (District of Delaware).

Served as damages expert for the United States in *Gargoyles, Inc. and Pro-Tec, Inc. v. The United States* (patent infringement – ballistic and laser protective eyewear). Issues addressed included lost profits on lost sales, reasonable royalties, and delay damages. Trial testimony: February 1995 (U.S. Court of Federal Claims).

Served as damages expert in *Chemtron v. Burns Chemical* (patent infringement - dispenser for industrial detergent). Issues addressed included lost profits on lost sales, market segmentation, convoyed sales, and reasonable royalties. Deposition testimony: October 1994 (Eastern District of Virginia).

Served as damages expert in *AMP v. Fujitsu* (patent infringement – computer connectors). Issues addressed include price erosion on past and future sales.

Served as damages expert in *B.F. Goodrich v. Allied-Signal et al.* Quantified damages in this patent infringement matter involving wheels and brakes for the Boeing 777 aircraft. Issues addressed include lost profits, future price erosion, reasonable royalties, discounting of future damages, and the overall economic and operational prospects for the airline industry over the damage period. Trial testimony: October 1993 (District of Delaware).

Served as damages expert for counterclaimant in the patent infringement suit *Pirkle et al. v. Ogontz Controls Co.* (locomotive freeze protection valves). Issues addressed include lost profits on lost sales, cost accounting, manufacturing and marketing capacity, price erosion, and prejudgment interest. Trial testimony: November 1993 and April 1994 (Eastern District of Pennsylvania).

Served as damages expert in *Dentsply v. Minnesota Mining and Manufacturing* (patent infringement – dental products). Issues addressed include lost profits on lost sales (domestic and international), cost accounting, reasonable royalty, price erosion, and lost profits on convoyed sales. Deposition testimony: May 1993 (District of Delaware).

Served as damages expert for plaintiff in *Unisys v. Amperif* patent infringement suit. (Computer data storage devices). Issues addressed include lost profits on lost sales, price erosion, convoyed sales, and reasonable royalties. Deposition testimony: June 1993 (Eastern District of Pennsylvania).

Consultant on the *Minnesota Mining and Manufacturing v. Johnson & Johnson* patent litigation (orthopedic casting tapes) on the issues of price erosion, market expansion, cost accounting, and convoyed sales.

**Antitrust and Unfair Competition**

Economic expert in the matter of: *Certain Set-Top Boxes and Components Thereof, Inv. No. 337-TA-454* (patent misuse – interactive program guides in cable and satellite TV set-top boxes). Issues addressed include market definition, market share and market power, analysis of licensing practices, tying, and other alleged anticompetitive behavior. Deposition testimony: November 2001; Hearing testimony: December 2001 (U.S. International Trade Commission).

Economic expert on damages due to antitrust conspiracy, false advertising, and tortuous interference claims in *Santana Products v. Bobrick Washroom Equipment* (washroom partitions). Issues addressed include lost jobs, lost profits, profit disgorgement, and harm to competition.

Expert witness for defendant in *In Re: America Online Version 5.0 Software Litigation* (unfair competition, false advertising, fraud – internet service provider software). Analyzed the feasibility of computing aggregate and class member damages from common information. Deposition testimony: September 2001 (Southern District of Florida).

*In Re: Mercedes Benz Antitrust Litigation.* Economic expert for defendants regarding class certification in a case of alleged price fixing by automobile dealers. Issues addressed included common impact and feasibility of calculating class-wide damages from common information. Deposition testimony: April 2002 (District of New Jersey).

Provided economic consulting services for a large, international, class-action antitrust case. The analysis involved liability and damage assessment arising from allegations of price-fixing of a common food ingredient.

Served as an expert witness for the defendant in a Robinson-Patman fraud and unfair business practices class-action matter on the issue of class certification *Pharmacare et al. v. Caremark Inc., et al.* (alternate site infusion therapy). Analyzed the degree to which the named plaintiffs were representative of the entire class, disparate situations of class members with respect to injury and damages, and whether injury and damages could be inferred from common information. Deposition testimony: March 1999 (District of Hawaii).

Served as economic expert before the Federal Trade Commission (FTC) in an acquisition by a major pharmaceutical and medical device manufacturer under review by the FTC. Issues included product market definition, market shares, and likelihood of market entry by other competitors. The acquisition was challenged on the grounds that the acquirer was a potential de-novo market entrant. The acquisition was ultimately approved.

Served as antitrust economic expert in a challenge to the acquisition of control of *Physician's Insurance Company of Ohio* by PIE Mutual Insurance Co. (antitrust/merger - medical malpractice insurance). Testified before the Ohio Department of Insurance on geographic and product market definition, market shares and power, barriers to market entry, and efficiency. The transaction was ultimately abandoned by the acquirer.

Antitrust economics and damages expert in *Semiconductor Energy Laboratory Co. v. Samsung Electronics Co., Ltd., et al.* (patent infringement and antitrust - amorphous silicon for active matrix computer displays). Issues addressed include antitrust liability and damages, and reasonable royalty patent damages. Economic issues addressed included relevant product, technology, and

ABRAM E. HOFFMAN, DBA
(202) 364-0936                                                          **Page 6**

**Antitrust and Unfair Competition (continued)**

innovation markets, market shares, and market power. Deposition testimony: November 1997 and February 1998 (Eastern District of Virginia).

Served as antitrust economics expert in *Teves v. Manatee Memorial Hospital* (Florida) on the issues of antitrust liability and damages (anesthesia services). Issues addressed included: the relevant product and geographic markets, market shares and market power, probability of monopolization of the relevant markets, and damages. Trial testimony: March 1992 (Circuit Court of the Twelfth Judicial Circuit of the State of Florida).

Expert antitrust economist in *Michigan Medical and Dental v. Healthwares* (Durable Medical Equipment). Addressed relevant geographic and product markets for home health equipment and supplies, market shares and market power, possibility of the monopolization of the relevant markets, and damages.

Economic expert in *Northshore Medical Center, Ltd. et al. v. Evanston Hospital Corporation et al.* (antitrust, conspiracy – medical office building). Issues addressed include geographic market definition, damages, financial projections, and ability to service debt and satisfy loan covenants. Deposition testimony: January 1997 (Northern District of Illinois).

In a price fixing case involving consumer product manufacturers, defined the relevant geographic market and assessed the extent of the affected commerce in support of settlement negotiations with the Department of Justice. Critique of plaintiff's damages model was used to settle subsequent class action suits brought by supermarkets. Our critique focused on the opposing expert's failure to model adequately other market factors that affected the product's price during the period of collusion.

In a class action alleging price fixing by a manufacturer of steel drums, critiqued the opposing damage expert's failure to account adequately for supply and demand factors in his calculation of but-for prices. Performed detailed cost analysis, gross margin analysis, and comparisons of pricing patterns to product cost changes over time. Settled favorably based on our analysis.

Served as an expert antitrust economist on liability and damages issues in *Key Enterprises v. Venice Hospital* (Durable Medical Equipment). Analysis included geographic market definition, product market definition, market power, market shares, probability of successful monopolization, and damages. Deposition testimony: October and December 1987, Trial testimony: February 1988 (Middle District of Florida).

Testified as an economic and financial expert in *Ethicon v. Aetna* on the issues of allocating the antitrust damages that arose out of the malicious prosecution of the *Handgards* patent infringement suits. Deposition testimony: November 1991, Trial testimony: September 1992 (Southern District of New York).

**Trade Secrets**

Damages expert in *Omniplex World Services Corp. v. Science Applications International Corp. et al.* (theft of trade secrets - background investigation services). Issues addressed included disgorgement damages on government contracts.

Damages expert in *Teligent Inc. v. Clara Vista Corp.* (theft of trade secrets – communications services). Misappropriations of trade secrets including internet-based customer billing system.

ABRAM E. HOFFMAN, DBA
(202) 364-0936                                                                                       **Page 7**

| | |
|---|---|
| **Trade Secrets**<br>**(continued)** | Served as damages expert in *NRB Industries v. Milliken* (theft of trade secrets – textile manufacturing). Misappropriation of trade secrets including customer lists and business plans. Assessed damages under both a lost profits theory (including price erosion) and disgorgement of unjust enrichment. |
| | Damages expert in *Nadel v. Play by Play Toys* (trade secret – toys). Quantified lost profits in Lanham Act counterclaim. |
| | Served as damages expert in *Charles Dascal v. Morgan E. O'Brien and Nextel Communications Inc.* (trade secrets, breach of duty - wireless telecommunications). Addressed lost profits and unjust enrichment damages. Issues included valuation of multiple components of a business plan at different dates, and financial analysis of the operations and future prospects for a wireless services provider. Deposition testimony: May 1997 (Southern District of Florida). |
| | Damages expert in *BOC Group v. Inhalon Pharmaceuticals* (trade secrets - inhalation anesthetics). Misappropriation of trade secrets by former employees of BOC who formed Inhalon to produce Enflorane and Isoflorane. Quantified damages under both a lost profits theory (including price erosion) and disgorgement of unjust gains. |
| **International Trade -**<br>**Domestic Industry** | Economic expert on the issue of domestic industry in the matter of: *Certain Display Controllers with Upscaling Functionality and Products Containing Same. Inv. No. 337-TA-481* (video display microprocessors). Deposition testimony: April 2003 (U.S. International Trade Commission). |
| | Economic expert in the matter of: *Certain Microlithographic Machines and Components Thereof. Inv. No. 337-TA-468* (microprocessor manufacturing). Addressed economic prong of the domestic industry test. Deposition testimony: July 2002, Hearing testimony, October 2002 (U.S. International Trade Commission). |
| **Breach of Contract,**<br>**Fraud, Malpractice** | Damages expert in *Babington, et al. v. AB Electrolux, et al.* (breach of contract – portable heating devices). Critiqued plaintiff's breach of contract damage theory and quantified counterclaim breach of contract damages. Deposition testimony: January 2002, Trial testimony: March 2002 (Eastern District of Virginia). |
| | Expert witness in *Scinet, Inc. v. SoftMed Systems, Inc.* (software royalty dispute: breach of contract and fraud – medical billing software). Issues addressed included proper royalty base for software license agreement. Deposition testimony: January 2001 (District of Maryland). |
| | Expert witness in *American Recovery Corporation v. Hamilton P. Fox, III et al.* (legal malpractice). Critiqued plaintiff damages study of prospective lost commissions and profits on an international medical device distribution joint venture allegedly terminated due to the alleged legal malpractice. |
| | Expert witness in *Carol Kropinski et al. v. Johnson and Johnson* (fraud and misrepresentation – disposable contact lenses). Issues addressed include capital budgeting decision modeling, price elasticity of demand, price discrimination, and damages. Deposition testimony: January 2000 (Superior Court of New Jersey). |

ABRAM E. HOFFMAN, DBA
(202) 364-0936                                                                                    **Page 8**

| | |
|---|---|
| **Breach of Contract,**<br>**Fraud, Malpractice**<br>**(continued)** | Expert witness in the wrongful termination matter: *Shultes v. McDonald Investments, Inc. et al.* Issues addressed included valuation of stock options and contingent compensation in quantifying damages due to breach of employment agreement of executive of steel plant in Thailand. |
| | Expert witness in *Winners Unlimited LLC v. Telco Communications Group, Inc.* (breach of contract – long distance telecommunications). Issues addressed included quantifying billing errors and erroneous commission payments, lost profits, and business valuation. Deposition testimony: March 1998 (Eastern District of Virginia). |
| **Personal Injury,**<br>**Wrongful Death,**<br>**Medical Malpratice** | Damages witness for remaining helicopter component manufacturer (General Motors) in wrongful death suit by family of Georgetown toy store and mail order business owner in helicopter crash into Potomac river. Issues addressed included lost income, consumption offsets, business valuation, value of household services. Deposition and trial testimony: November 1993; *Joy v. Bell Helicopter et al.* (U.S. District Court for the District of Columbia). |
| | Damages witness for family in wrongful death of high school senior. Issues addressed included lost future income, fringe benefits, education expenses, and consumption offsets. Case settled for exact amount of my quantification. Deposition testimony: September & October 1998; *Richard M. Cooper, et al. v. Willis (a/k/a Willie) Curry et al.* (Superior Court of the District of Columbia). |
| | Economic witness for defendant hospitals and doctors in a number of medical malpractice matters, 1988-2000. Hospital included: Georgetown University Medical Center, Columbia Hospital for Women Medical Center, Children's National Medical Center. Issues addressed included lost future income, future medical expenses, work-life expectancy, offsets for US and State taxes, returns on investment of lump sum award. Deposition and trial testimony in Superior Court of the District of Columbia. |
| **Publications  and**<br>**Presentations** | "Antitrust" in The Litigation Services Handbook, coauthor, John Wiley, 1990, Second Edition 1995, Third Edition 2001. |
| | "The Million Dollar Question: Structuring and Setting International Franchise Fees", with Andrew P. Loewinger, Franchise Update, 1995. |
| | "Valuing Intellectual Property Licenses under Hart-Scott-Rodino", American Intellectual Property Lawyers Association, Mid-Winter Institutes, January 1994, January 1997, and January 2003, and Computer Law Section of the District of Columbia Bar, March 1994. |
| | "Valuing Intellectual Property", Georgetown University Graduate School of Business Administration, December 1998 and November 1999, George Washington University Law School, April 2005. |
| | "Licensing of Intellectual Property" DuPont Intellectual Property Seminar, October 1997. |
| | Patent Damages in ALI/ABA seminar "Trial of a Patent Case," September 1996 and September 1997. |

**ABRAM E. HOFFMAN, DBA**
**(202) 364-0936**                                                                 **Page 9**

| | |
|---|---|
| **Publications and**<br>**Presentations**<br>**(continued)** | Panel Discussant "Problems Facing the District Courts' Civil Dockets and How the Processing of Civil Cases Might Be Improved," Eleventh Circuit Judicial Conference, April 1996. |

"Trial-Level Litigation in the Year 2000: Document Management and Damages Testimony," American Intellectual Property Lawyers Association, Mid-Winter Institute, January 1996, Legal Tech, November 1996, Price Waterhouse General Counsel Forum, June 1998.

"A Survey of Intellectual Property Damages" — Intellectual Property Law Section of the District of Columbia Bar, and Arlington County Bar Association, March 2002.

"A Practical Guide to Copyright Damages" — Intellectual Property Law Section of the District of Columbia Bar, January 2003.

"Patent Damages: Current Economic Issues and Strategies" — Intellectual Property Law Section of the District of Columbia Bar and Arlington Country Bar Association, April 2003.

Damages Witness, Trial of a Patent Case, American Intellectual Property Law Association Mid-Winter Institute, January 2004.

ABRAM E. HOFFMAN, DBA
(202) 364-0936

| | |
|---|---|
| **Professional History** | Abram E Hoffman, LLC<br>Principal, 2004-present. |
| | PricewaterhouseCoopers LLP:<br>Principal, 1986 to 2004, Senior Manager, 1981 to 1986, Manager, 1981. |
| | Acumenics Research & Technology, Inc.<br>Chief Economist, 1978-1981. |
| | Urban Systems Research & Engineering, Inc.<br>Manager, Housing Economic Analysis, 1976-1978. |
| | The Board of Governors of the Federal Reserve System<br>Economic Consultant, 1972; Research Assistant, 1968-1970. |
| **Community and Professional Service** | The District of Columbia Bar:<br>Board of Governors, 2000 – Present<br>Board liaison to Section of Intellectual Property Law, 2001-03 and 2004-present. |
| | Special Committee on Multidisciplinary Practice 1999 – Present. |
| | Attorney Client Arbitration Board, 1993 – 1999<br>Vice Chair, 1998 – 1999<br>Arbitrator 1997 – Present |
| | The Appleseed Foundation, Board of Directors, 1999 – 2001. |
| | City of Rehoboth Beach (Delaware) Planning Commission, 2004-present. |
| **Contact Information** | Abram E Hoffman, LLC<br>3330 Stuyvesant Place, NW<br>Washington DC 20015 |
| | aeh@IPDAMAGES.NET |
| | (202) 364-0936 (Tel & Fax)) |

Exhibit 2

**Abram E. Hoffman, DBA**

Deposition and Trial Testimony
<u>Within the Last 4 Years</u>

Scimed Life Systems, Inc., Boston Scientific Scimed, Inc. and Medinol Ltd. v. Johnson & Johnson, Cordis Corporation and Johnson & Johnson Interventional Systems, Inc., U. S. District Court for the District of Delaware (Depositions: June 2000 and August 2001; Trial: September 2001).

Scinet, Inc. v. Softmed Systems, Inc., U. S. District Court for the District of Maryland, Greenbelt Division (Deposition: January 2001).

Dr. Bradley S. Fordham v. OneSoft Corporation, James W. McIntyre, IV, and Frederick C. Hawkins, III, U.S. District Court for the Eastern District of Virginia, Alexandria Division (Deposition: January 2001, Trial: February 2001).

In Re: America Online. Inc. Version 5.0 Software Litigation, U.S. District Court for the Southern District of Florida, Miami Division (Deposition: September 2001).

In the Matter of Certain Set-Top Boxes and Components Thereof, Investigation No. 337-TA-454, U.S. International Trade Commission (Deposition: November 2001; Hearing: December 2001).

Babington, et al. v. AB Electrolux. et al., U.S. District Court for the Eastern District of Virginia, Alexandria Division (Deposition: January 2002, Trial: March 2002).

In Re: Mercedes Benz Antitrust Litigation, U.S. District Court for the District of New Jersey, (Deposition: April 2002).

In the Matter of Certain Microlithographic Machines and Components Thereof, Investigation No. 337-TA-468, U.S. International Trade Commission (Deposition: July 2002; Hearing: October 2002).

American Standard, Inc., et al. v. York International Corp., et al., U.S. District Court for the Western District of Wisconsin, Madison Division (Deposition: August 2002).

Augustine Medical, Inc. v. Mallinckrodt. Inc., et al., U.S. District Court for the District of Delaware, (Deposition: December 2002).

In the Matter of Certain Display Controllers with Upscaling Functionality and Products Containing Same, Investigation No. 337-TA-481, U.S. International Trade Commission (Deposition: April 2003).

Oakwood Laboratories, LLC and University of Kentucky Research Foundation v. TAP Pharmaceutical Products. Inc. et al., No. 01-C-7631, U.S. District Court of Northern District of Illinois, Eastern Division (Deposition: May 2003).

Litex, Inc. v. Delphi Automotive Systems Corporation and Delphi Automotive Systems LLC (Testimony in binding arbitration on damages: April 2004).

Chemical Separation Technology, et al. v. United States. U.S. Court of Federal Claims. (Trial Testimony: October 2004).

Bridge Technology Corporation v. The Kenjya Group et al., In the Circuit Court for Fairfax County (Virginia), In Chancery No. 186469, (Deposition: February 2005)

**Exhibit 3**

## Documents Received

### Deposition Transcripts:

<u>Plaintiffs' Witnesses</u>:

Bruce Benedetto (Design Innovation) - Depo dates 11/18/03 & 01/27/05
Bruce Popek (Design innovation) - Depo dates 11/19/03 & 01/28/05
Brian Manzolli (Design Innovation) - Depo date 01/27/05
Thomas McDonald (Design Innovation) - Depo date 01/22/04
Douglas Melville (Design Innovation) - Depo dates 01/22/04 & 01/28/05

Victor Reiling - Depo dates 12/10/03 & 02/15/05
James M. Kipling (design expert) - Depo dates 01/30/04 & 02/10/05

<u>Defendant's Witnesses</u>:

James Bauman (Fisher-Price) - Depo date 03/16/05
Tyler Berkheiser (Fisher-Price) - Depo dates 11/13/03 & 03/17/05
David Ciganko (Fisher-Price) - Depo dates 11/13/03 & 03/17/05
Patricia Grabianowski (Fisher-Price) - Depo date 03/18/05
Kenneth Morton (Fisher-Price) - Depo date 03/18/05
Christopher Pardi (Fisher-Price) - Depo dates 11/12/03 & 03/16/05
Henry Schmidt (Fisher-Price) - Depo date 11/12/03

Peter Pook (former Fisher-Price employee) - Depo date 03/26/05
Paul Snyder (former Fisher-Price employee) - Depo date 03/09/05

Howard N. Bollinger (design expert) - Depo date 03/09/05


<u>Deposition Exhibits (excluding physical exhibits)</u>:

Plaintiffs' Exhibits. 1-24 & 50-105.

Defendant's Exhibits  200-341.


<u>Plaintiffs' Expert Reports</u>:

Expert Report of James Kipling (01/05/04)

Supplement to Expert Report of James Kipling (01/28/04)

Second Supplement to Expert Report of James Kipling (01/31/05)

Rule 26 Expert Report of Alan Ratliff (01/31/05)

Alan Ratliff's 03/30/05 letter and supplemental exhibits Huron A-1 & Huron B

"Cost" Documents Cited in Ratliff's Huron Exhibit B (Bates #s listed footnote B)

Exhibit 3

Carterbench / Virtual Video Documents:

License Agreement between Virtual Video (UK) Limited and Fisher-Price Inc. re Sound-
Synchronised Lenticular Screens, dated 05/21/01 (FP 0337-412)
First amendment to License Agreement, dated 05/21/01 (FP 0533-536)
Second amendment to License Agreement, dated 06/11/02 (FP 0305-308)
Third amendment to License Agreement, dated 10/10/02 (FP 0297-300)

Bang Zoom Documents:

Product Disclosure Form dated 10/25/01 re Rescue Heroes Super Imaging Scope (FP 15307)
Confidential Disclosure Agreement dated 11/10/01 between Fisher-Price & Bang Zoom
Design Limited (not signed) (FP 15305-15306)
Product Disclosure Form dated 12/27/01 re Team Optics (FP 15304)

License Agreement dated 10/25/02 re Optical Enhancements for Rescue Heroes (FP 14231-
14250)

Cases cited in Kipling's Expert Reports:

Telex Corp. v. Telex Computer Prods., Inc., 510 F.2d 894 (10th Cir. 1975)
Sofiel Inc. v. Dragon Medical and Scientific Communications Ltd., 891 F. Supp. 935 (S.D.N.Y.
1995)
A.F.A. Tours Inc. v. Whitchurch, 937 F.2d 82 (2d Cir. 1991)
Electro-Miniatures Corp. v. Eccles, 771 F.2d 23 (2d Cir. 1985)
Learning Curve Toys Inc. v. Playwood Toys Inc., 342 F.3d 714 (7tb Cir. 2003)
Nadel v. Play-by-Play Toys & Novelties Inc., 208 F.3d 368 (2d Cir. 2000)

Cases re Damages:

In Design v. K-Mart Apparel Corp., 13 F.3d 559 (2d Cir. 1994)
University Computing Co. v. Lykes-Youngstown Corp., 504 F.2d 518 (5th Cir. 1974)
Vitor Corp. of America v. Hall Chemical Co., 292 F.2d 678 (6th Cir. 1961)
Ashland Management Inc. v. Janien, 82 N.Y.2d 395, 604 N.Y.S.2d 912 (Ct. App. 1993)
Allan Dampf P.C. v. Bloom, 127 A.D.2d 719, 512 N.Y.S.2d 116 (2d Dept. 1987)
McRoberts Protective Agency, Inc. v. Lansdell Protective Agency, 61 A.D.2d 652, 403 N.Y.S.2d
511 (Vt Dept. 1978)
Vermont Microsystems, Inc. v. Autodesk, Inc., 138 F.3d 449 (2d Cir. 1998)

Pleadings & Discovery Responses:

Complaint (1/31/03)
Confidentiality Stipulation and Order (08/26/03)
Second Amended Complaint (11/19/04)
Fisher-Price's Answer to Second Amended Complaint (12/09/04)
Declaration of James M. Kipling in Support of Motion to Amend Complaint (03/04/04)
Reply Declaration of Bruce P. Popek (in support of motion to amend complaint) (03/04/04)
Reply Declaration of Victor G. Reiling (in support of motion to amend complaint) (03/04/04)
Plaintiffs' Third Set of Interrogatories to Defendant (1/27/05)
Fisher-Price's Responses and Objections to Plaintiffs' Third Set of Interrogatories (03/14/05)
Plaintiffs' Responses to Defendant's Fourth Set of Interrogatories (03/30/05)

**Exhibit 3**

Fisher-Price sales documents:

Royalty reports:                                      FP0775-0888; FP 13381-13523
Worldwide sales report (2000-2004):                  FP 14922
Worldwide P and L (2000-2004 actuals):               (no Bates #s)

Fisher-Price Toy Fair Catalog excerpts:

1998-2003:      FP 1591-1661
2004:           FP 14728-14736

Fisher-Price Rescue Heroes action figures:

Basic Billy Blazes
Voice Tech Jack Hammer
Mission Command (Card) Wendy Waters
Voice Tech Video Mission Billy Blazes
Mission Select Gil Gripper
Optic Force Telly Photo

Public Information:

Mattel, Inc. 2004 Form 10-K.

Contains Confidential Information under the Confidentiality Stipulation Order of August 25, 2005

Victor G. Reising Associates and Design Innovation, Inc. v. Fisher-Price, Inc.

Exhibit 4

## Lost Profits and Reasonable Royalties

| Market Prod No | Selling Method | Prod Desc | 2001* Units (000) | 2001* Net Sales ($000) | 2002 Units (000) | 2002 Net Sales ($000) | 2003 Units (000) | 2003 Net Sales ($000) | 2004 Units (000) | 2004 Net Sales ($000) |
|---|---|---|---|---|---|---|---|---|---|---|
| D | 77455 | FIRE TRUCK | 222,339 | 4,550.9 | 68,347 | 1,342.2 | 1,913 | 39.7 | | |
| | 77455 | FIRE TRUCK | 33,760 | 640.7 | 11,200 | 316.6 | 6,000 | 104.0 | | |
| | 77455 Total | | 256,099 | 6,466.6 | 77,447 | 1,660.8 | 6,913 | 163.7 | 0.00 | 0.0 |
| O | 77456 | VT FIGURE ASST | 670,200 | 4,085.5 | 9,300 | 55.3 | | | | |
| O | 77456 | VT FIGURE ASST | 118,900 | 363.8 | | | | | | |
| I | 77456 | VT FIGURE ASST | 118,780 | 817.1 | | | | | | |
| | 77456 Total | | 811,780 | 6,676.4 | 9,300 | 55.3 | | | 0.00 | 0.0 |
| I | 77457 | VT BILLY BLAZES | 4,500 | 38.2 | 9,300 | 83.3 | 0.000 | 0.0 | 0.00 | 0.0 |
| | 77457 Total | | 4,500 | 38.2 | | | | | | |
| I | 77459 | VT JAKE JUSTICE | 4,500 | 37.2 | 0.000 | 0.0 | 0.000 | 0.0 | 0.00 | 0.0 |
| | 77459 Total | | 4,500 | 37.2 | | | | | | |
| O | 77469 | RH VOICE TECH JET | 272,014 | 4,646.8 | 111,757 | 1,653.2 | 0.000 | 0.0 | | |
| O | 77473 | RH VOICE TECH JET | 15,300 | 197.2 | 36,520 | 473.5 | 9,370 | 134.7 | | |
| I | 77473 | RH VOICE TECH JET | 55,300 | 603.8 | 27,000 | 348.3 | 1,200 | 13.2 | | |
| | 77473 Total | | 229,374 | 4,846.7 | 175,387 | 2,467.0 | 10,570 | 149.9 | 0.00 | 0.0 |
| O | 76157 | ARCC | 411,358 | 20,906.2 | 183,892 | 8,453.3 | 26,175 | 987.9 | | |
| O | 76157 | ARCC | | | | | 0.100 | 6.0 | | |
| | 76157 Total | | | | | | | | | |
| O | 78177 | RH VOICE TECH FIG | 411,358 | 26,566.3 | 163,892 | 6,453.3 | 26,175 | 813.9 | 0.00 | 1,460.0 |
| O | 78177 | RH VOICE TECH FIG | 53,760 | 391.2 | 672,227 | 6,377.4 | 57,975 | 412.0 | 204.29 | 102.4 |
| I | 78177 | RH VOICE TECH FIG | | | 55,300 | 379.3 | 55,002 | 213.9 | 15.42 | 202.0 |
| | 78177 Total | | | | | | 19,000 | 146.0 | 53.00 | 292.0 |
| O | 76561 | POLICE | 53,760 | 391.2 | 907,437 | 6,751.1 | 131,377 | 778.9 | 0.00 | 0.0 |
| O | 76561 | POLICE | | | 424,372 | 7,573.3 | 27,286 | 476.2 | 53.00 | 1,794.4 |
| | 76561 Total | | | | 52,700 | 1,000.9 | 7,000 | 114.0 | 55.64 | 1,109.6 |
| O | 82092 | MISSION SELECT FIGS | 0.000 | 0.0 | 477,072 | 6,974.2 | 34,286 | 592.2 | | |
| O | 82092 | MISSION SELECT FIGS | | | | | 8,864 | 62.4 | 0.00 | 0.0 |
| I | 82092 | MISSION SELECT FIGS | | | | | 377,164 | 2,708.6 | 204.29 | 253.9 |
| | 82092 Total | | 0.000 | 0.0 | 0.000 | 0.0 | 52,000 | 371.0 | 15.42 | 5.3 |
| O | 82347 | MACC | | | | | 469,049 | 5,143.2 | 53.00 | 39.0 |
| | 82347 | MACC | | | | | 183,136 | 9,760.0 | 5.42 | 44.3 |
| | 82347 Total | | 0.000 | 0.0 | 0.000 | 0.0 | 4,000 | 229.0 | 1.10 | 25.0 |
| O | 83066 | MS SEL POLICE CAR | | | | | 187,186 | 16,054.0 | 56.64 | 1,109.6 |
| | 83066 | MS SEL POLICE CAR | | | | | 141,696 | 2,581.2 | 0.42 | 5.3 |
| | 83066 Total | | 0.000 | 0.0 | 0.000 | 0.0 | 17,000 | 232.0 | 5.00 | 39.0 |
| O | 83732 | MS SEL FIRE TRUCK | | | | | 108,996 | 2,083.2 | 5.42 | 44.3 |
| | 83732 | MS SEL FIRE TRUCK | | | | | 111,460 | 2,500.5 | 1.10 | 25.0 |
| | 83732 Total | | 0.000 | 0.0 | 0.000 | 0.0 | 5,000 | 109.0 | | |
| O | 87684 | OPTIC TEAM | | | | | 118,460 | 2,811.5 | 1.10 | 25.0 |
| | 87684 | OPTIC TEAM | | | | | 29,984 | 161.5 | 44.43 | 253.9 |
| | 87684 Total | | 0.000 | 0.0 | 0.000 | 0.0 | | | 11.00 | 79.0 |
| O | 88105 | FSS: OPTIOWELD | | | | | 29,984 | 161.5 | 87.43 | 331.9 |
| I | 88105 | FSS: OPTIOWELD | | | | | 45,986 | 247.5 | 101,625 | 517.1 |
| | 88105 Total | | | | | | 26,244 | 115.3 | 79,000 | 320.0 |
| | Grand Total | | 0.000 | 0.0 | 0.000 | 0.0 | 72,240 | 362.3 | 180,623 | 837.1 |
| | | | 1,370,926 | 38,078.5 | 1,970,986 | 27,823.7 | 1,232,946 | 21,773.9 | 587,800 | 4,142.3 |

* 2001 may included sales of non-accused products

Contains Confidential Information under the Confidentiality Stipulation Order of August 26, 2005

Victor G. Reiling Associates and Design Innovation, Inc. v Fisher-Price, Inc.

Lost Profits and Reasonable Royalties

Exhibit 4

| | Exclusions | Excluded SKUs | 2001 - 2004 | | 2001 * | |
| --- | --- | --- | --- | --- | --- | --- |
| | | | Net Sales ($000) | Royalty at 3 Percent ($000) | Net Sales ($000) | Royalty at 3 Percent ($000) |
| All accused products | | (none) | 81,918.4 | 2,757.6 | 38,078.5 | 1,142.4 |
| (1) | - excluding Optic Force Team | 87844 | 81,425.0 | 2,742.8 | 38,078.5 | 1,142.4 |
| (2) | - excluding Optic Force Team & Wildlife Team | 87584, 88105 | 80,226.0 | 2,706.8 | 38,078.5 | 1,142.4 |
| (3) | - excluding Voice Tech Fire Truck, Voice Tech Rescue Jet & Voice Tech Police Cruiser | 77455, 77473, 78351 | 67,976.3 | 2,039.3 | 27,733.2 | 832.0 |
| (4) | - excluding Voice Tech Fire Truck, Voice Tech Rescue Jet, Voice Tech Police Cruiser, Mission Select Police Cruiser & Mission Select Firetruck | 77455, 77473, 78351, 83096, 85722 | 62,412.3 | 1,872.4 | 27,733.2 | 832.0 |
| (5) | - excluding Aquatic Rescue Command Center & Mission Select Mountain Action Command Center | 78157, 82987 | 50,899.4 | 1,526.1 | 17,490.3 | 524.7 |
| (6) | - excluding Aquatic Rescue Command Center & Voice Tech Video Mission Figures | 78157, 78177 | 54,091.8 | 1,622.8 | 17,098.1 | 513.0 |
| Figures only | | all but 77455, 77457, 77455, 78177, 82987, 87584, 88105 | 21,362.3 | 640.9 | 7,144.0 | 214.3 |

* 2001 only included sales of non-accused products

Contains Confidential Information under the Confidentiality Stipulation Order of August 26, 2005

Victor G. Flaherty Associates and Design Innovation, Inc. / Fisher-Price, Inc.

Operating Profits

Exhibit 6

| (1) Year | (2) Market | (3) Prod No | Selling Method | (4) Prod Desc | (5) Actual Units (000s) | (6) Gross Sales ($000) | (7) Net Sales ($000) | (8) Mktg Contrib ($000) | (9) COS & Royalties ($000) | (10) Mktg Contrib % NS | (11) Tooling ($000) | (12) Total A&M ($000) | (13) Total Ovhd ($000) | (14) Oper Profit ($000) | (15) Operating Profit % NS | (16) Oper Profit by SKU 2001-2004* ($000) | (17) Oper Profit by SKU 2001-2004* ($000) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | FIRE TRUCK | | | | | | | | | | | | | |
| | | | | FIRE TRUCK | | | | | | | | | | | | | |
| | | | | FIRE TRUCK | | | | | | | | | | | | | |
| | | | | FIRE TRUCK | | | | | | | | | | | | | |
| | | | | FIRE TRUCK | | | | | | | | | | | | | |
| | | | | VT FIGURE ASST | | | | | | | | | | | | | |
| | | | | VT FIGURE ASST | | | | | | | | | | | | | |
| | | | | VT FIGURE ASST | | | | | | | | | | | | | |
| | | | | VT LAKE JUSTICE | | | | | | | | | | | | | |
| | | | | RH VOICE TECH JET | | | | | | | | | | | | | |
| | | | | RH VOICE TECH JET | | | | | | | | | | | | | |
| | | | | RH VOICE TECH JET | | | | | | | | | | | | | |
| | | | | RH VOICE TECH JET | | | | | | | | | | | | | |
| | | | | AQUA COMMAND CENTER | | | | | | | | | | | | | |
| | | | | AQUA COMMAND CENTER | | | | | | | | | | | | | |
| | | | | AQUA COMMAND CENTER | | | | | | | | | | | | | |
| | | | | RH VOICE TECH FIGURES WITH VIDEOS | | | | | | | | | | | | | |
| | | | | RH VOICE TECH FIGURES WITH VIDEOS | | | | | | | | | | | | | |
| | | | | RH VOICE TECH FIGURES WITH VIDEOS | | | | | | | | | | | | | |
| | | | | RH VOICE TECH FIGURES WITH VIDEOS | | | | | | | | | | | | | |
| | | | | POLICE | | | | | | | | | | | | | |
| | | | | POLICE | | | | | | | | | | | | | |
| | | | | POLICE | | | | | | | | | | | | | |
| | | | | MISSION SELECT RGS | | | | | | | | | | | | | |
| | | | | MISSION SELECT RGS | | | | | | | | | | | | | |
| | | | | MISSION SELECT RGS | | | | | | | | | | | | | |
| | | | | MISSION SELECT RGS | | | | | | | | | | | | | |
| | | | | MACC | | | | | | | | | | | | | |
| | | | | MACC | | | | | | | | | | | | | |
| | | | | MIS SEL POLICE CAR | | | | | | | | | | | | | |
| | | | | MIS SEL POLICE CAR | | | | | | | | | | | | | |
| | | | | MIS SEL POLICE CAR | | | | | | | | | | | | | |
| | | | | MIS SEL FIRE TRUCK | | | | | | | | | | | | | |
| | | | | MIS SEL FIRE TRUCK | | | | | | | | | | | | | |
| | | | | OPTIC TEAM | | | | | | | | | | | | | |
| | | | | OPTIC TEAM | | | | | | | | | | | | | |
| | | | | RGS OPTIC/WALDLIFE/INFLATABLE | | | | | | | | | | | | | |
| | | | | RGS OPTIC/WALDLIFE/INFLATABLE | | | | | | | | | | | | | |
| | | | | RGS OPTIC/WALDLIFE/INFLATABLE | | | | | | | | | | | | | |
| | | | | Total | | | | | | | | | | | | | |

*2001 may included value of non-current products

Page 1 of 2

Containing Confidential Information under the Confidentiality Stipulation Order of August 26, 2003

Victor G. Reiling Associates and Design Promotion, Inc. v Fisher-Price, Inc.

Operating Profits

Exhibit 5

| Exclusions | Excluded SKUs | 2001 - 2004 | | | 2001* | | |
|---|---|---|---|---|---|---|---|
| | | Operating Profits | Royalty at 3 Percent of Net Sales | Remaining Operating Profits | Operating Profits | Royalty at 3 Percent of Net Sales | Remaining Operating Profits |
| All accused products | (none) | 12,486.5 (100.0) | 3,757.6 (23.1) | 9,728.7 (77.9) | 6,959.0 (100.0) | 1,142.4 (19.2) | 4,816.6 (80.8) |
| (1) - excluding OptiX Force Team | 87894 | 13,466.8 (100.0) | 3,782.8 (22.0) | 9,783.3 (78.0) | 6,959.9 (100.0) | 1,143.4 (19.2) | 4,816.8 (80.8) |
| (2) - excluding OptiX Force Team & Wildlife Team | 87894, 88106 | 13,254.4 (100.0) | 3,706.8 (22.1) | 9,547.8 (77.9) | 5,959.0 (100.0) | 1,143.4 (19.2) | 4,816.8 (80.8) |
| (3) - excluding Volce Tech Fire Truck, Volce Tech Rescue Jet & Volce Tech Police Cruiser | 77449, 77473, 72581 | 6,859.4 (100.0) | 2,083.3 (34.4) | 3,996.1 (65.6) | 3,466.9 (100.0) | 822.0 (24.0) | 2,528.9 (76.0) |
| (4) - excluding Volce Tech Fire Truck, Volce Tech Rescue Jet, Volce Tech Police Cruiser, Mission Select Police Cruiser & Mission Select Firetruck | 77449, 77473, 72581, 83066, 85722 | 6,353.3 (100.0) | 1,971.4 (34.6) | 3,611.9 (65.2) | 3,466.9 (100.0) | 822.0 (24.0) | 2,528.9 (76.0) |
| (5) - excluding Aquatic Rescue Command Center & Mission Select Mountain Action Command Center | 78167, 82467 | 11,386.8 (100.0) | 1,526.1 (34.6) | 9,840.7 (84.4) | 4,441.8 (100.0) | 524.7 (11.8) | 3,917.1 (88.2) |
| (6) - excluding Aquatic Rescue Command Center & Volce Tech Video Mission Figures | 78167, 78177 | 8,371.9 (100.0) | 1,022.9 (17.5) | 7,949.1 (82.5) | 4,227.0 (100.0) | 613.0 (11.8) | 3,614.0 (88.1) |
| Figures only | all but 77449, 77467, 77469, 78177, 82466, 87894, 88106 | 4,283.6 (100.0) | 648.9 (15.1) | 3,613.9 (84.9) | 1,944.7 (100.0) | 214.3 (11.0) | 1,730.4 (89.0) |

* 2001 may included sales of non-accused products

Page 2 of 2

District of Connecticut _____    United States District Court _____

VICTOR G. REILING ASSOCIATES and
DESIGN INNOVATION, INC.,

        Plaintiffs,

   v.                                           Civil No.:  3:03 CV 222 (JBA)

FISHER-PRICE, INC.,

        Defendant.

---

**HODGSON RUSS LLP**
Attorneys for Fisher-Price, Inc.

*Office, Post Office Address and Telephone*
ONE M & T PLAZA, SUITE 2000
BUFFALO, NEW YORK 14203-2391
(716) 856-4000