Exhibit D

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT


VICTOR G. REILING ASSOCIATES §
and DESIGN INNOVATION, INC., §
                    *Plaintiffs,* §
                                  §
        -against-                 §          INDEX NO.: 3:03 CV 222 (JBA)
                                  §
                                  §
FISHER-PRICE, INC.,               §
                    *Defendant.*  §          **January 31, 2005**
                                  §


### <u>Rule 26 Expert Report of Alan Ratliff</u>

This report is being provided pursuant to the parties' agreements and the Federal Rules of Civil Procedure. Further, discovery is ongoing and incomplete on subjects that affect my opinions. Therefore, I unilaterally reserve the right to supplement this report as additional discovery becomes available and for any other reasons as I may deem appropriate.


Respectfully submitted,


*Alan Ratliff*
_____
Alan Ratliff, CPA-JD
Managing Director

Date: January 31, 2005


EXHIBIT
335

# INTRODUCTION

## Scope of Engagement

1. I have been retained as an expert witness on damages and related issues by the law firm of Grimes & Battersby, L.L.P., on behalf of their clients, Victor G. Reiling Associates and Design Innovation, Inc. (collectively referred to as "plaintiff"). In particular, I have been requested to determine the amount of the defendant's ("Fisher-Price") profits that may be due to the plaintiff in this case. I understand that another expert has provided opinions on the amount of reasonable royalty that may be due to plaintiff.

## Qualifications

2. I am a Managing Director with the Huron Consulting Group, a national business consulting firm with seven offices and more than 500 professionals across the United States. I am the firm's National Practice Leader for Intellectual Property Consulting services and the regional practice leader for economic damages, dispute and investigation services.

3. I am a Certified Public Accountant and Attorney at Law licensed to practice in the State of Texas. I have my BBA, Master's of Accounting and law degrees, including more than 50 hours of accounting and more than 30 hours of economics and statistics. I have been qualified as an expert in several state and federal courts (including the Southern District of Texas) and, more specifically, I have been qualified as an expert on patent and other IP and tort damages, as well as technology licensing.

4. I regularly attend and speak at legal and accounting continuing education courses on subjects about which I testify. I have spoken on intellectual property, economic damages and financial expert issues at programs offered by the American Bar Association, Boston University, the Association of Corporate Counsel, the California Society of CPAs, the City Bar of New York, the U.S. Intellectual Property Owner's Association, the Computer & Information Law Institute, the American Lawyer's LegalTech Conference, the State Bar of Texas, the Dallas Bar Association, the Houston Bar Association, the Louisiana and New Orleans Bar Associations, the Houston Intellectual Property Law Association, the University of Houston, and the University of Texas.

5. In addition, I have published articles on damages, experts and intellectual property in publications including the ABA's IP and litigation section newsletters, Houston Law Review, The Trial Lawyer and IP Litigator by Aspen Legal Publishing, ACCA Docket, Texas

2

Lawyer, Journal of Commercial Biotechnology and the Texas Tech Law Review. A complete list of my publications in the last ten years appears in Exhibit 1.

6. I have significant experience in computing damages in litigation matters, including reasonable royalties, lost profits, and disgorgement, among others, using generally accepted methodologies, as well as experience with issues relating to licensing, market economics and other industry and business subjects. I have testified, been designated as an expert in and consulted on several economic damage and intellectual property litigation matters. Taking into account cases that involved testimony as well as those that settled before my deposition, I have actively participated in more than 200 litigation matters as an attorney and consultant, including more than 50 intellectual property-related disputes. A complete list of my trial and deposition testimony during the past four years is included in the attached Huron Exhibit 1.

**Compensation**

7. Huron is being compensated at rates ranging from $95 to $450 per hour and fees are not contingent upon the outcome of this litigation.

**Reservation of right to supplement**

8. This report reflects my damage opinions and conclusions as of this date. It is my understanding that discovery in this matter is ongoing and is otherwise incomplete with respect to information that may be relevant to my damages opinions. Therefore, I reserve the right to supplement this report after additional relevant information becomes available. In addition, I reserve the right to prepare demonstrative exhibits to help explain my analysis and opinions if I am requested to do so.

**Basis for Opinions and Conclusions**

9. My opinions and conclusions are based on the discovery made available to me in this matter, described more fully in Huron Exhibit 2, and my experience.

**Summary of Plaintiff's Damages Claim**

10. From my review of the pleadings in this case, Plaintiff alleges, among other things, that Fisher-Price breached an implied-in-fact contract, engaged in unfair competition, and misappropriated ideas and concepts in connection with certain Fisher-Price Rescue Heroes product lines. Plaintiff seeks damages including, but not limited to, disgorgement of profits and/or a reasonable royalty.

## OPINIONS

11. In actions claiming various types of theft, fraud or misappropriation, a customary common law and statutory remedy is disgorgement of the defendant's profits resulting from the alleged acts. In many instances, the profits are those from sales of accused products using the misappropriated property or information. For purposes of my opinions, I assume that the defendant is found liable for alleged acts for which disgorgement of defendant's profits is an available remedy.

12. Based on the pleadings, it is my understanding that the accused products are certain Fisher-Price Rescue Heroes product lines including Voice Tech Video Mission Rescue Heroes, Mission Select Rescue Heroes, Voice Tech Mission Command Rescue Heroes and Optic Force Rescue Heroes. In addition, based on the pleadings and financial information provided, it is my understanding that the accused product lines include sales of accessory items such as the "Mission Select Police Cruiser", the "Mission Select Firetruck" and the "Voice Tech Video Mission Rescue Jet", among others.

13. The defendant's financial information that has been provided to me represents the worldwide net sales of the accused product lines from January 2000 to September 2004. However, it appears that this information may be incomplete since there are defective return amounts in 2000 for SKU 77457 (Voice Tech Billy Blaze) but no corresponding sales on or after that period for this product line.

14. Nonetheless, based on the information I have, I have computed in Exhibit A the revenues for the accused product lines for this period totaling $104.3 million. In connection with a disgorgement of profits remedy, the plaintiff is generally required only to establish the amount of accused sales. The defendant must establish the allowable deductions, if any. Normally, I would review cost and other information to at least attempt to determine the amount of allowable deductions, if any, but it is my understanding that insufficient cost information for the accused product lines has been produced.[1] Thus, I am not aware of any allowable deductions or any basis for apportioning any accused product revenues to property or information other than that allegedly misappropriated by the defendant.

---

[1] I have been advised by counsel that only incomplete cost information has been received. Furthermore, it is my understanding that additional financial information has recently been produced to Plaintiff's counsel, but has not yet been reviewed.

15. Based on the foregoing, my preliminary opinion is that the amount of disgorgement damages is $104.3 million.





## Alan G. Ratliff

Managing Director

P 713-222-5912
F 801-469-1133
aratliff@huronconsultinggroup.com

711 Louisiana Street, Suite 3200
Houston, TX 77002

**Curriculum Vitae**

Alan is a Managing Director in the Financial & Economic Consulting services practice where he works on economic damage disputes, as well as fraud and forensic accounting investigations. Alan is also Huron's National Practice Leader for Intellectual Property Consulting services. Alan has been qualified as an expert in federal (district and bankruptcy) and state court on a wide-range of issues in complex commercial and IP litigation including damages, accounting, auditing and royalty auditing, economics, valuation, industry, business, and discovery issues. Alan has more than 15 years of combined experience in law, accounting and consulting. In addition to experience as a trial lawyer and expert, Alan has served as a Special Master, arbitrator, and mediator.

**Professional experience**
Alan has testified dozens of times in complex commercial litigation matters, including engagements for ADP, Compaq, Daimler-Chrysler, Dow Chemical, Great Lakes Chemical, International Rectifier, Informix, Roche Diagnostics, Martin Marietta, St. Luke's Hospital and VERITAS, and law firms including Akin Gump, Baker & McKenzie, Bingham McCutchen, Coudert Brothers, Haynes & Boone, Latham & Watkins, Foley & Lardner, Porter & Hedges, Wilmer Cutler Hale & Dorr, and Vinson & Elkins, among others.

His recent engagements include serving as an accounting expert in purchase price and joint venture disputes, conducting fraud and accounting investigations, serving as an economic damages or valuation expert in medical malpractice, patent infringement, trade secret, copyright, trademark, automotive franchise, toxic tort, contract and business tort disputes, and serving as a business custom and practice expert in several commercial disputes. In addition, Alan has served as an arbitrator and special master on accounting, licensing and damages issues, and currently serves as an arbitrator in several commercial disputes.

*Select Testimony Experience*
- *West Teleservices* (Texas state court, San Antonio, 1999). Testimony used at deposition and class certification hearing for defendant telecommunications company in multi-million dollar class action dispute in Texas state court on industry custom and practice. Class not certified.
- *Frost Bank* (Texas state court, Houston, 1999). Testimony used at deposition and injunction hearing for defendant bank in debtor-creditor and tax dispute in Texas state court. Injunction denied.
- *Great Lakes Chemical Co.* (N.D. Il., 2000). Testifying expert for defendant chemical company at deposition and trial in $15 million asset purchase agreement dispute in Illinois federal court. No damages awarded.
- *Informix* (N.D. Cal., 2000). Testifying expert at deposition and trial defendant software company in software patent, copyright, license and trade secret dispute. No damages awarded.
- *Compaq* (Argentenian trial court, 2001). Testifying expert at deposition for defendant technology company in $10 million customer contract dispute in Argentina concerning damages and accounting issues. Case settled.
- *IGEN/Roche* (D. Md., 2001). Special Master in multi-million dollar, multinational licensing dispute. Provided testimony for use at deposition and trial. Case settled post-appeal.
- *Alenco/Reliant Holdings* (N.D. Tex. 2002). Testifying accounting expert at deposition and hearing for seller-plaintiff in connection with post-acquisition dispute in construction industry. Court granted a new accounting.



- *International Rectifier/IXYS* (C.D.CA., 2002). Testifying damages expert in deposition and at trial for plaintiff semi-conductor manufacturer in patent infringement dispute. Jury and court awarded $27 million in actual damages and trebling, plus costs and attorney's fees.
- *UCS/ADP* (Texas State District Court 2003). Testifying damages rebuttal expert for successful defendant ADP in $70-$90 million automobile dealership management software copyright and trade secret misappropriation case. Testified in deposition and trial; no damages awarded.
- *Storage Computer/VERITAS (N.D. Tex. 2003)*. Testifying damages expert for defendant VERITAS in storage software patent case. Deposition given, case terminated favorably on summary judgment.
- *Positive Software/New Century* (N.D. Tex. 2004). Testifying damages expert at deposition and trial for plaintiff in Digital Millenium Copyright Act, copyright infringement, fraud and breach of contract action. Case pending.
- *Soil Controls/Martin Marietta* (W.D.Tex. 2004). Testifying damages expert for defendant in Lanham Act trademark infringement dispute relating to sale of Dustbuster business line. Deposition taken, case settled.
- *Metro Ford and Graff v. Freightliner, Sterling Truck and Ford* (Austin, 2004). Testifying financial expert for defendants Sterling Truck and Freightliner in franchise dealership termination dispute. Testified in deposition and administrative proceeding. Decision pending.
- *Cameron/St. Luke's* (Houston 2004): Testifying damages expert for defendant hospital in multi-million dollar medical malpractice dispute. Case pending.
- *Dow/Syngenta* (Delaware 2004): Testifying damages expert for defendant in multi-million dollar biotech patent infringement dispute. Complex lost profits and royalty issues. Testified in deposition. Case resolved on liability issues in client's favor in December 2004.
- *ClearCube/Avocent* (Alabama 2004): Testifying damages expert for defendant thin-client computer system provider in multi-million dollar patent infringement dispute. Case pending.
- *Williams/ Kuhlman Corporation et al.* (Mississippi 2005): Testifying business expert for plaintiff in connection with toxic tort litigation. Testified in deposition. Case pending.
- *PAZ Gas/Coral* (Houston 2005): Testifying damages expert for defendant in connection with energy joint venture dispute. Testified in deposition. Case pending.

*Types of disputes:*

| | | |
|---|---|---|
| Antitrust | Environmental | Regulatory |
| Bankruptcy | Fiduciary | Securities |
| Business Interruption | Franchise | Tax |
| Class Action | Fraud | Theft |
| Consumer | Labor | Trade Secret |
| Contract | Lost Profits | Trademark |
| Copyright | M&A | |
| Derivatives | Patent | |

Other professional experience includes intangible asset management, tangible and intangible asset and business valuations, licensing consulting, forensic accounting investigations, auditing, restructuring advisory services, tax and investment planning.

*Industries served:*

| | | |
|---|---|---|
| Automotive | Medical Devices | Securities |
| Chemical | Military Contractor | Semiconductor |
| Computer | Pharma & Biotech | Software |
| Construction | Professional Services | Systems Consulting |
| Energy and Utility | Publishing | Technology |
| Financial Services | Real Estate | Telecom |
| Gaming | Recreation Equipment | Web |
| Insurance | Retail | |



**Education & certifications**

* J.D. *cum laude*, Law Review, Order of the Coif, Southern Methodist University
* Master of Accounting (Taxation), Baylor University
* BBA in Accounting, *magna cum laude*, Baylor University (Cumulative Hours: Accounting 54; Eco/Stat 30; Tax 30)
* Past Adjunct Professor at South Texas College of Law, and the University of Houston Law Center; Lecturer, Baylor University, University of Houston, *Conviser CPA Review*
* Licensed attorney in Texas. Member of the bars of the US Supreme Court, Fifth and Eighth Circuits. AV-rated by Martindale-Hubbell.
* Licensed CPA, Texas

**Publications and speeches**

* Speaker, approximately 100 client seminar presentations since 1992.
* Co-Author, "Opinion Testimony," Texas Evidence Treatise, Chapter 7 (Aspen Legal Publishing pending Winter 2004) (PEER REVIEWED).
* Presenter, "Accounting & Valuation Experts," The Law of Accounting and Valuation, Univ. of Houston Law Center, Houston (November 2004).
* Presenter, "Using Experts in IP Litigation," City Bar of New York (September 2004).
* Co-presenter, "Valuing Business Method Patents," Financial Services IP Conference, New York (July 2004).
* Co-presenter, "Expert Update," University of Houston Law Center, Dallas and Houston (June 2004).
* Co-presenter, "Financial Damages Update," Houston Bar Association Litigation Section, Houston (May 2004).
* Panelist, "IP as a Core Asset," Entrepreneurship in the New Economy, Boston (June 2004).
* Co-presenter, "Kicking the Tires After *Kumho*: 2004 Expert Update," Federal Bar Association, Houston (May 2004).
* Author, "Daubert in the States, " American Bar Association Tort & Insurance Section (April 2004).
* Presenter, "Profits, Damages and Statutory Damages in Trademark Infringement Cases, " American Bar Association, Section of Litigation, IP Committee, Dallas, Houston, Tampa, New Orleans (March 2004).
* Presenter, "IP Valuation: Real World Licenses v. The Reasonable Royalty in Litigation," Louisiana Bar Association and New Orleans Bar IP Sections (January 2004).
* Co-presenter, "*Robinson* and Texas Expert Update," Houston Bar Association, Section of Litigation (January 2004).
* Co-presenter, "Accounting Hot Topics for Computer & Information Lawyers," 18th Annual Computer & Information Law Conference, Dallas (October 2003).
* Author, "Kumho Wrestling: Are Your IP Experts in Shape? - 2003 Update," ABA IPL Quarterly (October 2003) (PEER REVIEWED).
* Author, "Biotech and Pharma R&D and Licensing Trends," 10 Journal of Biotechnology 1 (pending September 2003).
* Co-Author, "The Independent Expert Evolution," 34 Texas Tech Law Review 4 (pending Summer 2003) (PEER REVIEWED).
* Co-presenter, "Kicking The Tires After Kumho: 2003 Commercial Litigation Expert Update," Association of Women Attorneys, Houston (August 2003).
* Speaker, "Global Licensing & Litigation Risk Update," Going Global Conference (Boston University, June 2003)
* Speaker, "IP Valuation: Real World Licensing Royalty Rates v. The Reasonable Royalty in Litigation," Fourth Annual IP Institute, Austin (February 2002).
* Speaker, "Expert Update," Advanced Expert Witness III, State Bar of Texas, Houston (December 2002).
* Speaker, "IP Expert Update," US IP Owner's Association Annual Meeting, Los Angeles (November 2002).
* Author, "Kicking The Tires After Kumho: The Bottom Line on Admitting Financial Expert Testimony 2002 Update," Trial Lawyer (Aspen Legal Publishing, 3 parts beginning October 2002) (PEER REVIEWED).
* Author, "*Daubert*-proofing Your IP Experts: 2002 Update," *IP Litigator* (Aspen Legal Publishing, August 2002) (PEER REVIEWED).
* Speaker, "Antitrust Implications of Patent Settlements," State Bar of Texas Annual Meeting, IP Section (June 2002).
* Lecturer, "IP Damages," University of Houston, School of Business (March 2002).
* Speaker, "Daubert-proofing Your Expert Reports: A View from the Chair," Advanced Litigation Institute, South Texas College of Law (February 2002).
* Panelist, "Protecting Your IP and Preventing it from Walking Out the Door," *LegalTech*, London (November 2001).
* Panelist, "Managing IP Litigation," *ACCA Annual Meeting* (October 2001).
* Moderator, "International IP Update," 15th Annual Computer & Information Law Institute, Dallas (October 2001).
* Moderator, "Expert's Shoot-out," *Ultimate Trial Advocacy Institute*, Houston (September 2001).



- Co-author, "Kicking the Tires After Kumho: 2001 Update," 24 *Trial Lawyer* Vols. 4-5 (Aspen 2001) (PEER REVIEWED).
- Moderator, "Intellectual Property Protection Strategies," *LegalTech*, San Francisco (August 2001).
- Moderator, "IP Management Panel," *Annual Convention of the State Bar of Texas, IP Section*, Austin (June 2001).
- Speaker, "Daubert Panel," *Advanced Economics & Valuation Institute*, CA Society of CPAs, Palm Springs (May 2001).
- Author, "It's Not Just About Injunctions Anymore: An Overview of Money Damages in IP Litigation," 7 *IP Litigator* Nos. 3-4 at 1, 14 (Mar-Apr 2001) (Aspen).
- Co-author, "Increasing Shareholder Value in the New Economy," American Corporate Counsel Association's *ACCA Docket*, Vol. 18 No. 10 at 60 (Nov/Dec 2000) (PEER REVIEWED).
- Author, "*Kumho* Wrestling: Are Your IP Experts in Shape?" 23 *Trial Lawyer* 6 at 457 (Nov/Dec 2000) (Aspen).
- Speaker, "Financial Expert Witness Update," *Annual Litigation Services Conference*, sponsored by State Bar of Texas Litigation Section and TSCPA Litigation Services Committee (Houston, November 2000).
- Speaker, "Kicking The Tires After *Kumho*: Implications of *Daubert* for IP Experts," *Institute on Intellectual Property* (Galveston, October 2000).
- Speaker, "Expert Witness Update," Federal Bar Association's *Federal Practice Workshop* (Houston, September 2000).
- Co-author, "Kicking the Tires After Kumho: The Bottom Line on Admitting Financial Experts," 37 HOU. LAW REVIEW 431 (Summer 2000) (PEER REVIEWED).
- Author, "Damages in Intellectual Property Litigation," *The American Lawyer's* CORPORATE COUNSEL MAGAZINE A18 (February 2000).
- Speaker, "*Kumho* Wrestling: Are Your Financial Experts in Shape," *Business Torts Institute* (Houston, January 2000).
- Speaker, "Expert Discovery: Discovery Rules & Expert Techniques," *Litigation Services Conference* (Houston, November 1999).
- Co-author, "*Kumho* Wrestling: Are Your Experts in Shape?" TEXAS LAWYER 32 (October 25, 1999).
- Speaker, "It's Not Just About Injunctions Anymore: Money Damages in IP Cases," *Intellectual Property Institute* (Houston, September 1999).
- Speaker, "Y2K Update," *ABA Section of Litigation Annual Meeting*, Dallas (3/99).
- Speaker, "No More or Know More? Imputation and Adverse Interests/Limitations in Professional Malpractice Cases," *Litigation Services Symposium*, Houston (10/95).
- Author, "There's More to (and behind) the Recent Amendments to the Federal Rules of Civil Procedure," 41 FEDERAL BAR JOURNAL 433 (July 1994) (also reprinted by the Oregon Bar Association) (PEER REVIEWED).
- Author, "Businesses Must Sometimes Decide: To Litigate or Not to Litigate", 12 BAYLOR BUSINESS REVIEW 9 (Spring 1994).
- Speaker, "Ethical Issues for a CPA That May Arise In Connection with a Criminal Tax Investigation of a Client," *Client Representation in Criminal Tax Investigations*, Houston (2/94).
- Co-Author, "Collateral Effects of a Bank Fraud Indictment or Conviction of Professional," *1992 ABA Business Crimes Seminar C1*, Dallas (3/92).
- Author, "Congress Deals Aviation Another Bad Hand," Southern Methodist University's *Law Review*, 55 J. AIR L. COMM. 1159 (Summer 1990).

## Professional associations

- Current Chair, ABA IP Section's technical advisor, special master and other expert's sub-committee
- ABA Section of Litigation IP Experts sub-committee past co-chair, 1999-2002 (past co-chair pre-trial and discovery sub-committee)
- Board, American Corporate Counsel Association (Houston Chapter), 2001-2003
- Barrister, American Inns of Court
- American Institute of CPAs
- American Intellectual Property Law Association (Spec. Comm. On Experts)
- Steering Committee, Computer & Information Law Institute (Dallas 2000-)
- Board, Past President and Past National Delegate, Federal Bar Association (Houston Chapter)
- Houston Bar Association (past chair or co-chair CLE Seminars, Internet CLE, Lawyers in Public Schools, Legal Lines; committee member Fee Disputes, Professionalism, Law Day)
- Licensing Executives Society



- Life Fellow, Houston and Texas Bar Foundations
- Houston Intellectual Property Law Association (Audit and Program committees)
- Intellectual Property Owner's Association (Damage Theories Committee)
- International Trademark Association
- State Bar of Texas (Chair & Vice-Chair, Coordination With Other Professions Committee, 1996-98; Litigation, IP sections)
- Texas Society of CPAs (Houston Chapter)

**Civic & community**
- Honorary Committee Co-Chair, Houston Downtown Alliance Gala (2003)
- Chair, Houston International Jazz Festival, Mayor's Jazz Brunch (2002)
- President and Chairman of the Board, Girls, Inc. of Greater Houston
- Downtown Houston Association committees (1999-)
- Board, Texas Accountants & Lawyer's for the Arts (past officer)
- Board, Chinquapin School
- Houston Steering Committee, Baylor Alumni Association Network
- Athletic Director's Council, Baylor University
- Development Council, Baylor University
- Lawyer's in Public Schools Volunteer Substitute Teacher
- Pro Bono College, State Bar of Texas (1995 - )
- Life Fellow, Texas and Houston Bar Foundations
- Weil, Gotshal & Manges Outstanding Pro Bono Service Award (Houston 1996)
- Weil, Gotshal & Manges Partner's Award (Houston 1995)
- Sports Chaplain, 2004 Summer Olympics, 2002 SLC Winter Olympics
- Habitat For Humanity Partner & Houston 100 Coordinator

5

Hu... ...bit 2

| Starting Bates # | Ending Bates # | Document Description |
|---|---|---|
| FP 0775 | FP 0776 | Fisher-Price - Virtual Video Carterbench Product Development Limited for Period 4/1/2003 to 6/30/2003 (Redacted) |
| FP 0777 | FP 0784 | Mattel Affiliated Royalty Payable Report for Fisher-Price - Virtual Video for 2nd Quarter of 2003 |
| FP 0785 | FP 0785 | Fisher-Price - Virtual Video Carterbench Product Development Limited for Period 1/1/2003 to 3/31/2003 |
| FP 0786 | FP 0792 | Mattel Affiliated Royalty Payable Report for Fisher-Price - Virtual Video for 1st Quarter of 2003 |
| FP 0793 | FP 0793 | Fisher-Price Virtual Video Royalty Report for October - December 2002 (Redacted) |
| FP 0794 | FP 0795 | Fisher-Price - Virtual Video Carterbench Product Development Limited for Period 10/1/2002 to 12/31/2002 |
| FP 0796 | FP 0796 | Mattel Affiliated Royalty Payable Report for Fisher-Price - Virtual Video for 4th Quarter of 2002 |
| FP 0797 | FP 0803 | Domestic Royalty Carterbench Licensor for the period of October - December 2002 (Redacted) |
| FP 0804 | FP 0805 | Domestic Royalty Carterbench Licensor for the period of 2002 FP Toy Store (Redacted) |
| FP 0806 | FP 0807 | Domestic Royalty Carterbench Licensor for the period of 2002 Mattel Toy Store (Redacted) |
| FP 0808 | FP 0812 | Virtual Video (UK) Limited International Royalties Report for October - December 2002 (Redacted) |
| FP 0813 | FP 0813 | Fisher-Price Virtual Video Royalty Report for July - September 2002 (Redacted) |
| FP 0814 | FP 0814 | Fisher-Price - Virtual Video Carterbench Product Development Limited for Period 7/1/2002 to 9/30/2002 |
| FP 0815 | FP 0815 | Mattel Affiliated Royalty Payable Report for Fisher-Price - Virtual Video for 3rd Quarter of 2002 |
| FP 0816 | FP 0821 | Domestic Royalty Carterbench Licensor for the period of July - September 2002 (Redacted) |
| FP 0822 | FP 0826 | Virtual Video (UK) Limited International Royalties Report for July - September 2002 (Redacted) |
| FP 0827 | FP 0827 | Fisher-Price Virtual Video Royalty Report for April - June 2002 (Redacted) |
| FP 0828 | FP 0829 | Fisher-Price - Virtual Video Carterbench Product Development Limited for Period 4/1/2002 to 6/30/2002 |
| FP 0830 | FP 0830 | Mattel Affiliated Royalty Payable Report for Fisher-Price - Virtual Video for 2nd Quarter of 2002 |
| FP 0831 | FP 0837 | Domestic Royalty Carterbench Licensor for the period of April - June 2002 (Redacted) |
| FP 0838 | FP 0841 | Virtual Video (UK) Limited International Royalties Report for April - June 2002 (Redacted) |
| FP 0842 | FP 0842 | Fisher-Price Virtual Video Royalty Report for January - March 2002 (Redacted) |
| FP 0843 | FP 0843 | Fisher-Price - Virtual Video Carterbench Product Development Limited for Period 1/1/2002 to 3/31/2002 |
| FP 0844 | FP 0844 | Mattel Affiliate Royalty Payable Report for Fisher-Price - Virtual Video for 1st Quarter of 2002 |
| FP 0845 | FP 0851 | Domestic Royalty Carterbench Licensor for the period of January - March 2002 (Redacted) |
| FP 0852 | FP 0888 | Virtual Video (UK) Limited International Royalties Report for January - March 2002 (Redacted) |
| FP 13381 | FP 13383 | Fisher-Price and Latin America World wide sales information Rescue Heroes Pro Forma for Period 1/1/2000 - 12/31/2000 |
| FP 13384 | FP 13404 | Mattel Affiliated Royalty Payable Report and Summary Report for Rescue Heroes for Period 1/1/2000 to 12/31/2000 |
| FP 13405 | FP 13407 | Fisher-Price and Latin America World wide sales information Rescue Heroes Pro Forma for Period 1/1/2001 - 12/31/2001 |
| FP 13408 | FP 13427 | Mattel Affiliated Royalty Payable Report and Summary Report for Rescue Heroes for Period 1/1/2001 to 12/31/2001 |
| FP 13428 | FP 13429 | Fisher-Price World wide sales information Rescue Heroes Voice Tech Video Mission Pro Forma for Period 1/1/2001 - 12/31/2001 |
| FP 13430 | FP 13432 | Fisher-Price and Latin America World wide sales information Rescue Heroes Pro Forma for Period 1/1/2002 - 12/31/2002 |
| FP 13433 | FP 13447 | Mattel Affiliated Royalty Payable Report and Summary Report for Rescue Heroes for Period 1/1/2002 to 12/31/2002 |
| FP 13448 | FP 13449 | Fisher-Price World wide sales information Rescue Heroes Voice Tech Video Mission Pro Forma for Period 1/1/2002 - 12/31/2002 |
| FP 13450 | FP 13459 | Mattel Affiliated Royalty Payable Report and Summary Report for Rescue Heroes Voice Tech Video Mission for Period 1/1/2002 to 12/31/2002 |
| FP 13460 | FP 13462 | Fisher-Price and Latin America World wide sales information Rescue Heroes Pro Forma for Period 1/1/2003 - 12/31/2003 |
| FP 13463 | FP 13479 | Mattel Affiliated Royalty Payable Report and Summary Report for Rescue Heroes for Period 1/1/2003 to 12/31/2003 |
| FP 13480 | FP 13481 | Fisher-Price World wide sales information Rescue Heroes Voice Tech Video Mission Pro Forma for Period 1/1/2003 - 12/31/2003 |

Hu    .bit 2

| Starting Bates # | Ending Bates # | Document Description |
|---|---|---|
| FP 13482 | FP 13492 | Mattel Affiliated Royalty Payable Report and Summary Report for Rescue Heroes Voice Tech Video Mission for Period 1/1/2003 to 12/31/2003 |
| FP 13493 | FP 13494 | Mattel Affiliated Royalty Payable Report and Summary Report for Rescue Heroes Mission Select for Period 1/1/2003 to 12/31/2003 |
| FP 13495 | FP 13496 | Fisher-Price World wide sales information Rescue Heroes Pro Forma for Period 1/1/2004 - 12/31/2004 |
| FP 13497 | FP 13512 | Mattel Affiliated Royalty Payable Report and Summary Report for Rescue Heroes for Period 1/1/2004 to 9/30/2004 |
| FP 13513 | FP 13514 | Fisher-Price World wide sales information Rescue Heroes Voice Tech Video Mission Pro Forma for Period 1/1/2004 - 12/31/2004 |
| FP 13515 | FP 13520 | Mattel Affiliated Royalty Payable Report and Summary Report for Rescue Heroes Voice Tech Video Mission for Period 1/1/2004 to 9/30/2004 |
| FP 13521 | FP 13523 | Mattel Affiliated Royalty Payable Report and Summary Report for Rescue Heroes Mission Select for Period 1/1/2004 to 9/30/2004 |

**Legal Filings**

Confidentiality Stipulation and Order dated August 26, 2003
Declaration of James M. Kipling in Support of Motion to Amend Complaint dated March 4, 2004
Expert Report of James Kipling on Behalf of Plaintiffs Victor G. Reiling Associates and Design Innovation, Inc. dated January 5, 2004
Reply Declaration of Bruce P. Popek dated March 4, 2004
Reply Declaration of Victor G. Reiling dated March 4, 2004
Second Amended Complaint with exhibits dated November 19, 2004
Supplement to Expert Report of James Kipling on Behalf of Plaintiffs Victor G. Reiling Associates and Design Innovation, Inc. dated January 28, 2004
Plaintiffs' Confidential Settlement Conference Memorandum dated January 9, 2004

**Other**

Rescue Heroes Advertisement "Cool guys who are good guys!"

In th......tter of
Victor G. Reiling Associates, et. al. v. Fisher-Price Inc.

EXHIBIT A
Fisher-Price Accused Sales

| TYPE | SKU | Description | 2000 Net Sales [1,2] | 2001 Net Sales [3] | 2002 Net Sales [4] | 2003 Net Sales [5] | 2004 Net Sales [6] | Total Net Sales [6] |
|---|---|---|---|---|---|---|---|---|
| Rescue Heroes | 77455 | Voice Tech Rescue Firetruck | $3,855,019.47 | $5,137,582.94 | $1,596,048.36 | $42,645.85 | $15,694.52 | $10,446,951.13 |
| Rescue Heroes | 77456 | Voice Tech Mission Command | $2,426,460.65 | $5,227,217.06 | ($8,272.08) | ($154.96) | $7.35 | $7,645,164.09 |
| Rescue Heroes | 77473 | Voice Tech Rescue Jet | $5,271,313.39 | $4,410,684.10 | $1,704,765.27 | $206,887.11 | | $11,673,856.95 |
| Rescue Heroes | 77157 | Voice Tech Aquatic Rescue | | $22,264,991.39 | $8,998,883.34 | $1,140,265.23 | $59.76 | $32,430,199.72 |
| Rescue Heroes | 78161 | Voice Tech Police Cruiser | | | $8,202,712.61 | $1,870,420.31 | $1,130.91 | $10,074,263.83 |
| Rescue Heroes | 82692 | Mission Select Figures | | | | $2,916,481.20 | $1,536,504.61 | $4,452,385.81 |
| Rescue Heroes | 82697 | Mission Select Mountain Command Center | | | | $10,730,653.55 | $1,209,596.22 | $11,940,449.61 |
| Rescue Heroes | B3056 | Mission Select Police Cruiser | | | | $2,760,033.69 | $277,701.17 | $3,067,736.06 |
| Rescue Heroes | B5732 | Mission Select Firetruck | | | | $2,783,101.62 | $765,740.37 | $3,548,641.99 |
| Rescue Heroes | B8106 | OPTIC-FIGURE-ANIMAL ASSORT | | | | $268,888.84 | $335,057.45 | $603,746.39 |
| Rescue Heroes Video Mission | 76177 | Video Mission | | $416,315.22 | $6,822,237.36 | $976,177.85 | $7,151.86 | $8,222,062.41 |
| Rescue Heroes Video Mission | 78178 | Video Mission | | | | | $774.00 | $774.00 |
| Rescue Heroes Video Mission | 76162 | Rocky Video Mission | | | | | $1,818.00 | $1,818.00 |
| Rescue Heroes Video Mission | 78183 | Video Mission | | | | | $1,314.00 | $1,314.00 |
| TOTALS | | | $11,352,733.51 | $37,477,001.59 | $27,336,374.87 | $23,731,400.68 | $4,352,735.56 | $104,310,246.19 |

[1] FP 13381-13383
[2] 2000 Net Sales does not reflect $116.00 in defective returns for SKU 77457 (Voice Tech Billy Blaze). This return amount is for a product that does not reflect any sales during the January 2000 to October 2004 time period, and therefore, has been excluded.
[3] FP 13405-13407, FP 13428-13429
[4] FP 13430-13432, FP 13448-13449
[5] FP 13460-13462, FP 13480-13481
[6] FP 13495-13496, FP 13513-13514

Exhibit E

Westlaw.

Slip Copy

Slip Copy, 2005 WL 563095 (D.Conn.)
**(Cite as: Slip Copy)**

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,D. Connecticut.
Dolores DUNN, et. al., Plaintiffs,
v.
ZIMMER, INC., Defendant.
**No. 3:00CV1306 (DJS).**

March 9, 2005.

Mark A. Dubois, Robert I. Reardon, Jr., Scott D. Camassar, Jennifer L. Booker, The Reardon Law Firm, New London, CT, for Plaintiffs.
Robert I. Reardon, Jr., Scott D. Camassar, Francis H. Morrison, III, Allan B. Taylor, Deborah Skelley Russo, Day, Berry & Howard Cityplace, Hartford, CT, Kelly S. Witte, Baker & Daniels, Indianapolis, IN, Albert J. Dahm, Michael S. Elvin, Dahm & Elvin, Fort Wayne, IN, for Defendant.
Stephen V. Manning, O'Brien, Tanski, Tanzer & Young Cityplace II, Michael P. Ungaro, Bingham McCutchen, Hartford, CT, for Movant.

MEMORANDUM OF DECISION

SQUATRITO, J.
*1 Defendant, Zimmer, Inc. ("Zimmer"), has moved the court [doc. # 207] to exclude the testimony of Dr. Lisa A. Pruitt ("Pruitt"), an expert retained by the plaintiffs as a rebuttal witness, on the grounds that the plaintiffs failed to disclose Dr. Pruitt as an expert in a timely fashion. The court GRANTS the motion for the following reasons.

*Background*

Plaintiffs Dolores Dunn, Stacia Bogden, Sonia Fuentes-Weed, Joann Lopes and Cynthia Vino (collectively "Plaintiffs" or "Dunn") filed the present lawsuit on July 10, 2000. All of the plaintiffs seek damages from Zimmer arising out of the manufacture of allegedly defective artificial hip implants. Plaintiffs have retained a variety of experts to aid in the presentation of their case. Dr. Pruitt was not among the experts disclosed by the plaintiffs. Defendant disclosed its experts in August 2002 and plaintiffs were scheduled to complete depositions of Zimmer's experts in September 2002. There was no provision in the court's scheduling order for the disclosure of rebuttal experts. Zimmer filed motions for summary judgment on December 5, 2002. Plaintiffs then produced Dr. Pruitt as an expert and produced her expert report in the responses to Zimmer's motions for summary judgment filed on March 14, 2003. Zimmer then moved to preclude Dr. Pruitt's expert testimony as untimely on April 30, 2003.

*Discussion*

Zimmer has moved to preclude Dr. Pruitt's testimony on the grounds that Plaintiffs failed to properly and timely disclose her as an expert in accord with the court's orders and the Federal Rules of Civil Procedure. Plaintiffs respond with the assertion that Dr. Pruitt is a rebuttal witness and thus need not be disclosed at the same time as other expert witnesses under the Federal Rules. Further, Plaintiffs dispute that Zimmer will be prejudiced in any fashion through the admission of Dr. Pruitt's testimony.

The Federal Rul provide that, where an expert's report is produced solely for the purpose of contradicting or rebutting the testimony of another party's expert, the rebuttal expert must be disclosed within thirty days after the other party's disclosure. Fed .R.Civ.P. 26(a)(2)(C). [FN1] The rule is a default that may be avoided by court order or by stipulation of the parties. *In re Kreta Shipping, S.A.,* 181 F.R.D. 273, 276 (S.D.N.Y.1998). Failure to meet the deadlines set forth in either the Federal Rules or the court's orders may result in the exclusion of the rebuttal expert's testimony. *Id.*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                    Page 2

Slip Copy, 2005 WL 563095 (D.Conn.)
**(Cite as: Slip Copy)**

> FN1. Zimmer claims that Local Rule of
> Civil Procedure 16(b) establishes the
> standard for review of the motion to
> exclude. Rule 16(b) establishes that the
> court's scheduling order may not be
> modified except by a showing of good
> cause by the party seeking modification.
> D.Conn.L.Civ.R. 16(b). There is not,
> however, any motion to modify any
> scheduling order pending in this case. The
> court's scheduling order did not establish a
> time for the disclosure of rebuttal experts
> and therefore the Rule 26(a)(2)(C) applies
> as a default. Thus, the court will apply the
> standard for reviewing motions made
> pursuant to Fed.R.Civ.P. 37(c), which
> governs the court's authority to remedy
> violations of Rule 26(a).

The remedy of exclusion is considered "drastic"
and should not be imposed where it could frustrate
the overarching objective of the Rules, which is to
provide substantial justice for litigants. *Cartier, Inc.
v. Four Star Jewelry Creations, Inc.,* No. 01
Civ.11295, 2003 WL 22471909 *1, (S.D.N.Y.
Oct.31, 20003). The decision to preclude considers
the existence of prejudice in fact against the
surprised party, the ability to cure the prejudice, the
extent to which the improperly disclosed testimony
would disrupt trial and whether the failure to
disclose was a bad faith or willful act. *See, In re
Kreta,* 181 F.R.D. at 277; *Cartier,* 2003 WL
22471909 at *2.

**\*2** The facts here show that the thirty day window
for disclosure of rebuttal experts began to tick at
some point during September 2002. The report of
Dr. Pruitt was not disclosed until March 2003, in
response to Zimmer's motions for summary
judgment. The post-motion disclosure of a witness
that the plaintiffs were obligated to disclose,
pursuant to Rule 26(a)(2)(C), no later than Nov. 1,
2002, at the latest, must be considered highly
prejudicial. Zimmer was deprived of an opportunity
to consider and respond to Dr. Pruitt's testimony in
its motions for summary judgment. Re-opening the
period for discovery, a necessary step to cure the
prejudice suffered by Zimmer, would be disruptive
and costly and is certainly unwarranted at this time.

The prejudice to Zimmer is serious and extremely
difficult to cure without severe disruptions of the
case.

Plaintiffs offer no explanation for the late disclosure
of Dr. Pruitt beyond an assertion that they are
entitled to use rebuttal experts. The court does not
question the right to use rebuttal experts, but that
right is not unlimited and plaintiffs do not cite to, or
show any awareness of, the time restrictions set
forth in Rule 26(a)(2)(C). Plaintiffs make no claim
that the late conclusion of discovery regarding
defendants' experts led to the untimely disclosure of
Dr. Pruitt, and there is nothing in the present record
that would permit such an inference. Plaintiffs
contend that there is no prejudice to Zimmer
because Dr. Pruitt's testimony is rebuttal evidence
that merely bolsters the testimony of other expert
witnesses, but, even if that is the case, Zimmer was
still entitled to consider Dr. Pruitt's report while
preparing its motions for summary judgment.
Plaintiffs' failure to properly disclose Dr. Pruitt has
resulted in prejudice to Zimmer that cannot easily
be cured.

*Conclusion*

Plaintiffs failed to disclose Dr. Pruitt as a rebuttal
expert within the time set forth by Rule 26(a)(2)(C).
Zimmer suffered prejudice to its case as a result of
plaintiffs use of a surprise witness and that
prejudice cannot be cured in a reasonable fashion.
Plaintiffs offer no explanation for their failure to
properly disclose Dr. Pruitt, and absent some
explanation the witness must be excluded. Dr. Pruitt
is not permitted to testify in this action and her
expert report and affidavit are stricken from the
record. The motion to preclude expert testimony
[doc. # 207] is GRANTED.

IT IS SO ORDERED.

D.Conn.,2005.
Dunn v. Zimmer, Inc.
Slip Copy, 2005 WL 563095 (D.Conn.)

Briefs and Other Related Documents (Back to top)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2005 WL 563095 (D.Conn.)
**(Cite as: Slip Copy)**

• 3:00cv01306 (Docket) (Jul. 14, 2000)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2001 WL 34314729 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
VIRGIN ENTERPRISES LIMITED, Plaintiff,
v.
AMERICAN LONGEVITY, Joel D. Wallach, and
Wellness Lifestyles, Inc., Defendants.
**No. 99 Civ. 9854(CSH).**

March 1, 2001.

MEMORANDUM & ORDER

HAIGHT, Senior J.
**\*1** In this trademark action the above-captioned plaintiffs move the Court, pursuant to Fed. R. Civ. Pro. 37(c)(1), for an Order **excluding** the defendants' **expert** witness Prof. Oldfield for failure to comply with **Rule** 26(a). The factual background of this case was discussed at length in my opinion dated February 28, 2001, familiarity with which is assumed. [FN1]

> FN1. In an opinion dated February 7, 2001 the Court denied the present motion. The following articulates the Court's reasoning for that decision.

DISCUSSION

Fed.R.Civ.P., **Rule** 26(a)(2)(A) requires that "a party shall disclose to other parties the identity of any person who may be used at trial to present evidence" as an **expert**. This **disclosure** of **experts** must be "accompanied by a written report prepared and signed by the witness" which contains the following:
a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary

of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and **testimony**; and a listing of any other cases in which the witness has testified as an **expert** at trial or by deposition within the preceding four years.

**Rule** 26(a)(2)(B). In the absence of court direction to the contrary, the **disclosures** listed above "shall be made at least 90 days before the trial date or the date the case is to be ready for trial ". **Rule 26(a)(2)( C)**. Under **Rule** 37(c), in relevant part, "[a] party that without substantial justification fails to disclose information required by **Rule** 26(a) shall not, unless such failure is harmless, be permitted to use as evidence at a trial any witness or information not so disclosed." The relevant 1993 amendments to the Federal **Rules** of Civil Procedure imposed "an additional duty to disclose information regarding **expert testimony** sufficiently in advance of trial that opposing parties have a reasonable opportunity to prepare for effective cross examination and perhaps arrange for **expert testimony** from other witnesses." Fed. R. Civ. Pro. 26(a)(2) 1993 advisory committee notes.

The trial of this action, by Order dated November 20, 2000, is to commence March 12, 2001. Under **Rule 26(a)(2)(C)**, the parties were obliged to make the required **disclosures** regarding any **expert** witnesses not later than December 12, 2000. The defendants' concede that, with respect to Oldfield, their **disclosure** was "late-two weeks past the deadline," specifically, December 26, 2000, by facsimile. Plaintiff's Memorandum of Law in Support of Motion to **Exclude** ("Plaintiff's Memorandum") at 8; Defendants' Memorandum of Law in Opposition to Plaintiff's Motion to **Exclude** ( "Defendants' Memorandum") at 2.

According to the plaintiff, this " 'disclosure' was not just untimely, but was grossly non-compliant with even the minimum requirements of Fed. R.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2001 WL 34314729 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

Page 2

Civ. Pro 26(a)(2)." Plaintiff's Memorandum at 8. The plaintiff is correct that Oldfield's report and CV, sent by fax to the plaintiff on December 26, 2000, was clearly not compliant with Rule 26(a)(2)(B). Firstly, the CV, while indicating the universities and names of degrees Oldfield has received (University of British Columbia, BSA, M.S.A. § and Oregon State University, PhD), does not indicate what fields those degrees are in. CV of James Oldfield, Plaintiff's Memorandum, Exhibit 18. Secondly, the CV states that Oldfield has " authored or co-authored 139 technical papers and [ ] 90 reports and non-journal articles," but it does not list the publications, as required by the Rule. *Id.* Plaintiff believes that these omissions "plainly were calculated to conceal Oldfield's background and likely lack of qualifications or expertise relevant to the challenged claims made by Wallach," and argues the defendants' have "deprived [Virgin] of any reasonably (sic) opportunity to prepare to cross-examine Oldfield either prior to or during trial. " Plaintiff's Memorandum at 8. For this reason they ask that the Court "exercise its discretion under **Rule** 37(c)(1) to bar defendants from calling Oldfield as a trial witness." Plaintiff's Memorandum at 8.

**\*2** The defendants respond that with regard to Oldfield, on January 20, 2001 they fully complied with the **disclosure** requirements, more than a month before the discovery deadline of February 23, 2001, thereby giving ample **time** for plaintiff to depose Oldfield. Defendants' Memorandum at 3. Plaintiff concedes that the defendants eventually complied, but asserts that the 90 day **rule** was violated nonetheless, and that countenancing defendants belated compliance would create an incentive to disregard the **rules** of procedure. Plaintiff's Reply Memorandum at

In determining whether to **exclude** trial **testimony** under **Rule** 37(c)(1), the Court considers (1) the surprise or **prejudice** suffered by the moving party; (2) the ability of that party to cure the **prejudice;** (3) whether waiver of the **rule** against calling unlisted witnesses is appropriate; (4) bad faith or willfulness in failing to comply with a court order. *In the Matter of Kreta Shipping, S.A.,* 181 F.R.D. 273, 277 (S.D.N.Y.1998), *citing In Re Paoli R.R.*

*Yard PCB Litig.,* 35 F.3d 717, 791 (3d Cir.1994). The purpose of the rule is to prevent sandbagging an adversary with undisclosed evidence. *Johnson Electric v. Mabuchi Motor America Corp.,* 77 F.Supp.2d 446, 458 (S.D.N.Y.1999). Although the language implies automatic preclusion, courts recognize preclusion is a drastic remedy and therefore use discretion and caution. *Ventra v. U.S.,* 121 F.Supp.2d 326, 332 (S.D.N.Y.2000)(precluded for failure to disclose witness altogether, where in bad faith plaintiff denied **expert** treated him for injuries). In fact, "preclusion of **expert testimony** is generally ordered only where the court finds that the party's failure to comply with the requirements was both unjustified and **prejudicial**." *DiPirro v. U.S.,* 43 F.Supp.2d 327, 340 (W.D.N.Y.1999).

Despite plaintiff's assertion that "[c]ourts have not hesitated to enforce **Rule** 37(c)(1) and preclude late-disclosed **experts** in circumstances less egregious than those presented here," all the cases cited by plaintiff involve more egregious circumstances than those in the case at bar. There is no evidence, beyond mere allegation, that bad faith motivated the untimely **disclosure**. Furthermore, any **prejudice** will be remedied by the deposition of Oldfield, which the plaintiff will have had nearly two months to take from the agreed upon date of full **disclosure**, January 20, to the **time** of trial, March 12, and more than a month from the discovery deadline, February 23. The Court reminds that **Rule** 37 sanctions are "drastic remed[ies] that should only be applied" in rare cases where a party's conduct represents " 'flagrant bad faith and callous disregard of the Federal **Rules** of Civil Procedure'." *Grdinich v. Bradlees,* 187 F.R.D. 77, 79 (S.D.N.Y.1999) (citations omitted); *Hinton v. Patnaude,* 162 F.R.D. 435, 439 (N.D.N.Y.1995).

Because there is no substantive evidence of bad faith or callous disregard for the **rules** of procedure, the plaintiff's motion is denied.

**\*3** It is SO ORDERED.

S.D.N.Y.,2001.
Virgin Enterprises Ltd. v. American Longevity
Not Reported in F.Supp.2d, 2001 WL 34314729 (S.D.N.Y.)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2001 WL 34314729 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

Briefs and Other Related Documents (Back to top)

• 1:99cv09854 (Docket) (Sep. 20, 1999)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.