UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| VICTOR G. REILING ASSOCIATES and<br>DESIGN INNOVATION, INC.,<br><br>Plaintiffs,<br><br>- against -<br><br>FISHER-PRICE, INC.,<br><br>Defendant. | Index No.: 3:03 CV 222 (JBA)<br><br><br>January 20, 2006 |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO STRIKE PORTIONS OF RATLIFF'S SUPPLEMENTAL REPORT**

Fisher-Price's motion to exclude portions of the Rule 26 First Supplemental Expert Report of Alan Ratliff, Plaintiff Design Innovation's ("DI") damages expert, should be denied for the following reasons:

• The opinions contained in Ratliff's Supplemental Report are consistent with his original report and his deposition testimony. Indeed, he was examined at length at his deposition about the same theories of cost deductions that are included in his Supplemental Report. Fisher-Price cannot, therefore, claim surprise or prejudice as to Mr. Ratliff's new calculations, because they are based on the same damages theories he testified to at his deposition in April, 2005.

• The filing of Ratliff's Supplemental Report in early January by DI was not in bad faith. It was always anticipated that Fisher-Price's expert, Mr. Hoffman, would update his original report to provide additional sales information. DI did not believe that having Mr. Ratliff prepare a second "preliminary" report prior to the time when Mr.

Hoffman disclosed final sales figures would be productive, particularly while Fisher-Price's summary judgment motion remained pending.

• Exclusion of expert testimony is considered a "drastic remedy" and courts typically look to cure any prejudice to the moving party through deposition testimony. Based on the current trial schedule, DI expects Mr. Ratliff to testify at trial on Friday, January 27, 2006. In order to cure any prejudice to Fisher-Price, DI proposes to make Mr. Ratliff available for a deposition in New Haven at Fisher-Price's convenience prior to the date of his trial testimony.

## ARGUMENT

To determine whether to exclude expert testimony on timeliness grounds, courts in this Circuit examine several factors: (1) surprise or prejudice to the moving party; (2) the ability to cure the prejudice to the moving party; and (3) the existence of bad faith on the part of the non-movant. *See Equant Integrations Services, Inc. v. United Rentals (North America), Inc.*, 217 F.R.D. 113 (D. Conn. 2003); *Virgin Enterprises, Ltd. v. American Longevity*, 2001 WL 34314729 (S.D.N.Y. March 1, 2001). "Rule 37 sanctions are 'drastic remedies that should only be applied' in rare cases where a party's conduct represents 'flagrant bad faith and callous disregard of the Federal Rules of Civil Procedure." *Virgin Enterprises*, 2001 WL 34314729 at*2 (denying plaintiff's motion due to lack of evidence of bad faith and ability of movant to take expert's deposition; *Equant Integrations Services*, 217 F.R.D. at 118 (finding that "preclusion is a drastic remedy"

2

and permitting further depositions to go forward).[1] In the event the Court determines that certain disclosures contained in Mr. Ratliff's Supplemental Report are, in fact, untimely, under the circumstances of this case DI submits that allowing Fisher-Price to take Mr. Ratliff's deposition prior to his trial testimony would be an appropriate remedy to cure any prejudice to Fisher-Price.

In order to evaluate the timeliness of Mr. Ratliff's Supplemental Report, it is important to trace the procedural history of this action as it relates to disclosure of expert testimony.

Mr. Ratliff submitted his original Expert Report on January 31, 2005.[2] In that report, Mr. Ratliff opined that DI was entitled to a remedy of disgorgement of profits based on its claims of misappropriation and unfair competition. (F-P Mem., Exh. D at 4). To measure the amount of disgorgement damages, Mr. Ratliff opined that DI was entitled to the amount of Fisher-Price's total revenues derived from sales of accused Rescue Heroes products, less any allowable deductions. (*Id.*) Mr. Ratliff opined that it was Fisher-Price's obligation to establish the amount of allowable deductions, if any, from the total revenues it received from sales of accused Rescue Heroes Products. He stated that

---

[1] The exclusion of the expert report in *Dunn v. Zimmer, Inc.*, 2005 WL 563095 (D. Conn. March 9, 2005), was based on a more egregious set of facts than those presented herein. In that case, the expert -- who was acting solely as a rebuttal witness -- was disclosed for the first time in connection with a summary judgment motion and long after the discovery period had closed. For these reasons, the court found a violation of Fed. R. Civ. P. 26(A)(2)(C) that could not be cured through additional testimony. Moreover, DI submits that Rule 26(A)(2)(C) is not applicable here because Mr. Ratliff's Supplemental Report is not intended "solely" to contradict or rebut the Hoffman Reports, as the rule provides. Portions of Mr. Ratliff's Supplemental Report may also be read to supplement the opinions contained in his original report. That is, he simply provided actual calculations (using Hoffman's updated figures) based on a methodology that he disclosed in his original report and later explained at his deposition.

[2] The expert reports are attached to Fisher-Price's Memorandum of Law as Exhibits A – D.

he did not have sufficient cost information to make a calculation of allowable deductions at that time. (*Id.*, n. 1).

Pursuant to the Court's Scheduling Order, discovery closed on April 1, 2005. Pursuant to the parties' agreement, Fisher-Price took Mr. Ratliff's deposition after the close of discovery on April 5, 2005. At his deposition, Fisher-Price examined Mr. Ratliff at length regarding his original report <u>and</u> his theories with respect to what constitutes an allowable deduction by Fisher-Price under generally accepted standards. (*See* Tr. of Deposition of Alan Ratliff, dated April 5, 2005, at 36-53 (deductions issue) and 61-95 (apportionment issue) (attached hereto).

On May 1, 2005, Fisher-Price filed a case-dispositive summary judgment motion.

On May 11, 2005, Fisher-Price filed the report of its damages expert, Mr. Hoffman.[3] In that report, Mr. Hoffman opines on a number of matters, including the calculation of reasonable royalties and damages under a disgorgement theory. (F-P Mem., Exh B). Because Mr. Hoffman's original report, which is styled an "Initial Expert Report," contained sales figures only through 2004, DI always anticipated that Mr. Hoffman would need to prepare a supplemental report prior to trial. In fact, DI requested updated sales figures from Fisher-Price by a letter dated November 16, 2005. (A copy of counsel's letter is attached hereto).

Following the Court's ruling on Defendants' Motion for Summary Judgment on December 14, 2005, Mr. Hoffman provided an updated report -- to reflect additional sales information -- on December 17, 2005. (*Id.*, Exh. C).

---

[3] By agreement of the parties, Fisher-Price was permitted to file its expert report on damages after Mr. Ratliff's deposition and after the close of discovery.

4

Mr. Ratliff's Supplemental Report, dated January 3, 2006, uses the financial information provided in the December 17, 2005 Hoffman to analyze the proper amount of allowable deductions Fisher-Price may take under generally accepted standards. (*Id*, Exh. A, ¶¶ 3-21). Fisher-Price claims that Mr. Ratliff's opinions are "new," but that is not accurate. In his original report, Mr. Ratliff stated that it was Fisher-Price's burden to show allowable deductions. At his deposition he then testified at length about his beliefs regarding the proper methodology to measure allowable deductions. (*See* Tr. at 36-53). Likewise, he testified at length about the issue of apportioning damages because the accused products contain intellectual property that is the property of Fisher-Price, an issue that Fisher-Price maintains is also "new" to the Supplemental Report. (*See* Tr. at 61-95). What may be new about Mr. Ratliff's Supplemental Report is that he has now applied the methodology described in his original report and discussed at length at his deposition to make actual calculations of allowable deductions based upon the most recent cost information provided in the December 17, 2005 Hoffman report.

Because Fisher-Price examined Mr. Ratliff at length about his methodology for determining allowable deductions at his deposition, DI submits that Fisher-Price cannot now claim "unfair surprise" about Mr. Ratliff's calculations.

Nevertheless, if the Court believes that Fisher-Price has suffered prejudice, pursuant to the case law set forth above DI submits that the proper remedy to cure such prejudice would be to allow Fisher-Price to take Mr. Ratliff's deposition at its convenience this week.

A deposition is the proper remedy under the circumstances because DI did not act in bad faith. Indeed, DI did not intentionally withhold Mr. Ratliff's report in order to

"ambush" Fisher-Price prior to trial. Rather, DI always anticipated that Mr. Hoffman would need to update his original report to provide additional sales information prior to trial. DI understood that Mr. Ratliff would also need to prepare a supplemental report prior to trial based on Mr. Hoffman's final sales information. DI did not believe, however, that a second preliminary report from Mr. Ratliff would have been productive, particularly during the period when Fisher-Price's summary judgment motion remained pending. Following the Court's ruling and receipt of Mr. Hoffman's updated sales figures, the Ratliff report was prepared and served in an expeditious manner considering the conflict of the holiday season.

For these reasons, DI requests that the Court deny Fisher-Price's motion to strike. In the event the Court believes that a remedy is necessary, DI believes that the appropriate remedy would be to allow Fisher-Price to depose Mr. Ratliff prior to trial.

Dated: Norwalk, Connecticut
       January 20, 2006

                        Respectfully Submitted,

                        GRIMES & BATTERSBY, LLP

                        By: _____
                        Gregory J. Battersby (Bar No. 7386)
                        Edmund J. Ferdinand, III (Bar No. 21287)
                        Russell D. Dize (Bar No. 23064)
                        Susan Schlesinger (Bar No. 26625)
                        488 Main Avenue, Third Floor
                        Norwalk, Connecticut 06851-1008
                        (p) (203) 849-8300
                        (f) (203) 849-9300

                        SANDAK HENNESSEY & GRECO, LLP
                        Jay H. Sandak, Esq.
                        Peter M. Nolin, Esq.
                        707 Summer Street

Stamford, Connecticut 06901-1026
(p) (203) 425-4200
(f) (203) 325-8608

Attorneys for Plaintiff
Design Innovation, Inc.

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 20, 2006 a copy of the foregoing Memorandum was served on all counsel of record below via electronic means to:.

Jacqueline Bucar Esq.
Robert Allen, Esq.
Tyler Cooper & Alcorn, LLP
205 Church Street
New Haven, Connecticut 06510

Bradford S. Babbitt, Esq.
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, CT 06103-3597

Robert J. Lane, Jr., Esq.
Jodyann Galvin, Esq.
HODGSON RUSS LLP
One M&T Plaza, Suite 2000
Buffalo, New York 14203-2391

William Wallace, Esq.
Milbank, Tweed, Hadley & McCoy-DC
1825 Eye St., N.W. , Suite 900
Washington, DC 20006

_____
Edmund J. Ferdinand, III



# GRIMES & BATTERSBY, LLP
ATTORNEYS AT LAW
488 MAIN AVENUE
NORWALK, CONNECTICUT 06851-1008
(203) 849-8300

www.gandb.com

Fax: (203) 849-9300

November 16, 2005
*Via Facsimile and U.S. Mail*

Robert J. Lane, Jr., Esq.
Jodyann Galvin, Esq.
Hodgson Russ LLP
One M&T Plaza
Suite 2000
Buffalo, NY  14203-2391

    Re:   Victor G. Reiling Associates v. Fisher-Price, Inc.
           Civil Action No. 3:03 CV 222 (JBA)
           Our File No. VGR001USL

Dear Mr. Lane and Ms. Galvin:

    We would like to request updated sales figures for all of the accused products in the Second Amended Complaint through third quarter 2005. In response to Plaintiffs' Third Request for Production of Documents dated November 19, 2004, it appears that Fisher-Price produced documents reflecting sales through third quarter 2004. Since Fisher-Price has a continuing duty to supplement its discovery responses, please provide supplemental documents evidencing Fisher-Price's sales of the accused products to date.

                                    Very truly yours,

                                      Russell D. Dize