## UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

DESIGN INNOVATION, INC.,                    :
                                            :
                    Plaintiff,              :
                                            :
    v.                                      :        Civil No. 303CV222(JBA)
                                            :
FISHER-PRICE, INC.                          :
                                            :
                    Defendant.              :
                                            :        FEBRUARY 3, 2006
                                            :

### NOTICE OF FILING
### REQUESTED CHANGES TO JURY INSTRUCTIONS

Defendant Fisher-Price, Inc. hereby files the attached Defendant Fisher-Price,

Inc.'s Requested Changes to the Court's Draft Jury Instructions, dated February 1, 2006.

This document was submitted informally to the court prior to the jury charge conference

and discussed on the record on February 1, 2 and 3, 2006.

Respectfully Submitted,

By _____
Jacqueline D. Bucar
**TYLER COOPER & ALCORN, LLP**
e-mail: jbucar@tylercooper.com
Federal Bar No.: ct01187
205 Church Street
P.O. Box 1936
New Haven, CT 06509-0906
Telephone: (203) 784-8269

**HODGSON RUSS LLP**
e-mail:  rlane@hodgsonruss.com
Federal Bar No.:  ct24598
Jodyann Galvin
e-mail:  jgalvin@hodgsonruss.com
Federal Bar No.:  ct24599
One M&T Plaza, Suite 2000
Buffalo, NY 14203-2391
Telephone:  (716) 856-4000

**MILBANK, TWEED, HADLEY & MCCLOY LLP**
William E. Wallace, III
email:  wwallace@milbank.com
Federal Bar No. PHV0480
International Square Building
1825 Eye Street, N.W., Suite 1100
Washington, D.C. 20006
Telephone:  (202) 835-7500

**ROBINSON & COLE LLP**
Bradford S. Babbitt
e-mail:  bbabbitt@rc.com
Federal Bar No.:  ct13938
Michael J. Kolosky
email:  mkolosky@rc.com
Federal Bar No.:  ct22686
280 Trumbull Street
Hartford, CT 06103-3597
Telephone:  (860) 275-8200

*Attorneys for Fisher-Price, Inc.*

~~January 31~~February 1, 2006

(~~9~~2:05pm)

## UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

Design Innovation, Inc.,          :
         Plaintiff,     :
                :     Case. No. 3:03 CV 222 (JBA)
v.                               :
                :
Fisher-Price, Inc.,              :
         Defendant.     :

## DRAFT FOR DISCUSSION PURPOSES ONLY
### JURY INSTRUCTIONS

## DEFENDANT FISHER-PRICE, INC'S REQUESTED CHANGES

### THIS IS NOT A BREACH OF CONTRACT CASE

As I told you in my preliminary instructions, this is not a breach of contract case. There is no allegation by Design Innovation that Fisher-Price breached the requirements of the 1999 Option Agreement between Fisher-Price and Design Innovation and Reiling (Exhibit 10) or any other contract, including the 1994 Policy & Agreement Form (Exhibit 1).[1] The issue in this case is whether Fisher-Price "misappropriated," as I will define that term shortly, the concept disclosed to it by plaintiff and Mr. Reiling or whether Fisher-Price unfairly competed with plaintiff.

You may consider, however, the existence and language of

---

[1] Fisher-Price requests this change to clarify that Plaintiff has no breach of contract claim in this case at all, including a claim for breach of any provision in the 1994 P&A Agreement requiring "fairness."

1

~~January 31~~<u>February 1</u>, 2006

(9<u>2</u>:05pm)

agreements between the parties as some evidence of the nature or characteristics of their course of dealing with each other, along with any other evidence from which you can determine the relationships of the parties.  Written agreements signed by the parties to the agreements are "contracts" even if not titled "contract."

~~January 31~~February 1, 2006

(9̶2:05pm)

MEANING OF CONTRACTS

When interpreting contracts, you look to the language of the contract.  Where parties express what they are agreeing to in a clear, complete document, you should interpret that contract according to the terms stated in the contract.  A contract is clear, or "unambiguous," when it has a definite and precise meaning and the intent of the parties is determined from the language of the contract giving the unambiguous contract terms their plain meaning.  On the other hand, contract language is "ambiguous" if it can have more than one meaning when read in the context of the whole contract.

3

~~January 31~~<u>February 1</u>, 2006

(~~9~~<u>2</u>:05pm)

<u>DESIGN INNOVATION'S MISAPPROPRIATION CLAIM</u>

Plaintiff Design Innovation claims that Fisher-Price misappropriated the toy concept submitted by Design Innovation and Reiling to Fisher-Price in 1998 to 2000. To prove that Fisher-Price misappropriated ~~plaintiff's~~ <u>the submitted</u> concept,<u>2</u> Design Innovation must prove each of four elements:

(1) That the submitted concept was <u>concrete</u>;

(2) That the submitted concept was <u>novel</u>;

(3) That the submitted concept was disclosed <u>in the context of a confidential relationship</u>; and

(4) That Fisher-Price <u>used</u> the submitted concept in its products.

I will describe to you each of these elements in greater detail.

---

2 Changes are requested throughout to phraseology that implies that the Court has determined that the concept belongs to or was developed solely by Plaintiff Design Innovation as opposed to jointly developed with Victor Reiling either within or outside a partnership arrangement (the latter being an issue of fact for the jury to decide).

4

~~January 31~~<u>February 1</u>, 2006

(~~9~~<u>2</u>:05pm)

ELEMENT #1: CONCRETENESS

First, Design Innovation must prove that the concept ~~it~~<u>that</u>

<u>was</u>

submitted    to Fisher-Price ~~in 1998, 1999, and 2000~~ that it

claims Fisher-Price misappropriated was fixed and concrete in

form.  "Concrete" means something that is specific, particular,

real, or tangible.  "Fixed" means having a final or crystalized

form or character.

5

~~January 31~~February 1, 2006

(~~9~~2:05pm)

## ELEMENT #2: NOVELTY

Next, Design Innovation must prove that ~~its~~ the submitted concept was novel in the industry, not just to Fisher-Price.  To be novel, a concept must exhibit genuine novelty or invention rather than <u>being nothing more than a variation on a basic theme or</u>3 merely a clever or useful adaptation of existing knowledge; a combination of common and existing elements used by toy manufacturers does not create a novel legally protectible idea.

In determining whether a concept is "novel," you may consider the following factors:

(1)   The concept's specificity or generality (<u>that is, if it is a generic concept it is less likely to be novel than if it is a specific concept</u>~~A specific application of a generic concept is more likely to be novel than a generic concept~~)4;

(2)   The concept's commonality (The more people that are aware of the concept, the less likely it is to be

---

3 The articulation of the legal standard for novelty is found in, e.g., AEB & Associates Design Group, Inc. v. Tonka Corp., 853 F. Supp. 724, 734 (S.D.N.Y. 1994) ("To establish novelty, a plaintiff's idea need not reflect the 'flash of genius,' but it must show genuine novelty and invention, and not a merely clever or useful adaptation of existing knowledge.  While even original ideas combine elements that are themselves not novel, novelty cannot be found where the idea consists of nothing more than a variation on a basic theme.   In addition, a plaintiff may not claim that an idea is original if it was already in use in the industry at the time of the submission."); see also Murray v. National Broadcasting Co., 844 F.2d 988, 993 (2d Cir. 1988) (novelty cannot be variation on a theme)

4 Fisher-Price requests this change because the prior wording "specific application of a generic concept" may be

~~January 31~~February 1, 2006

(9~~2~~:05pm)

novel, even if Fisher-Price was unaware of it);

(3)   The concept's uniqueness (A concept that is different from generally known ideas is more likely to be novel than a concept similar to generally known ideas); and

(4)   The concept's commercial availability (A concept already in use in the industry and commercially available at the time of submission is not a novel concept).

You have seen a United States patent in this case, Exhibit 116, owned by Toy Biz.  Patents are public documents and therefore in considering whether Design Innovation's submitted concept is novel, you may consider the Toy Biz patent in the same way as you consider any of the other prior commercial products that have been received into evidence in this case.

---

confusing and imply that specific applications are more novel likely novel than not.

~~January 31~~February 1, 2006

(9̶2:05pm)

### ELEMENT #3: CONFIDENTIAL RELATIONSHIP

Design Innovation must prove that it submitted its concept to Fisher-Price in the context of a confidential relationship. A confidential relationship is synonymous with a fiduciary relationship and may be found to exist where the parties do not deal on equal terms and one trusts and relies on the other. However, a confidential relationship can only be found to exist where the recipient has demonstrated acceptance of the relationship. Moreover, a conventional or "arm's length" business relationship alone cannot constitute a confidential relationship.5

A confidential relationship may arise explicitly by agreement of the parties as in a contract, or implicitly by the actions and course of dealing of the parties or other circumstances, including industry customs and practices. To determine the existence of a confidential relationship at the time of concept submission, you may consider the course of the

---

5 Fisher-Price requests the paragraphs be re-arranged for clarity and to more closely track the case law, including, e.g., Stewart v. World Wrestling Federation Entertainment, Inc., 74 USPQ2d 1024 (S.D.N.Y. 2005). See also Beneficial Commercial Corp. v. Murray Glick Datsun, Inc., 601 F. Supp. 770,, 772 (S.D.N.Y. 1985) ("No fiduciary relationship exists under the facts alleged in the pleadings which show that the two parties were acting and contracting at arms's length"); Compania Sud-Americana de Vapores S.A. v. IBJ Schroder Bank & Trust Co., 785 F. Supp. 411, 426 (S.D.N.Y. 1992) ("New York law is quite clear, however, that a 'conventional business relationship, without more, does not become a fiduciary relationship by mere allegation.'") (quoting Oursler v. Women's Interart Center, Inc., 170 A.D.2d 407, 566 N.Y.S.2d 295 (1st Dept. 1991); Sachs v. Cluett Peabody & Co., 265 A.D.2d 497, 39 N.Y.S.2d 853, 856 (App. Div. 1943) ("Parties dealing at arm's length, each seeking for himself the best advantage to be derived from a transaction, are not in a confidential relationship.").

~~January 31~~February 1, 2006

(~~9~~2:05pm)

parties' dealings ~~after, as well as~~ before~~,~~6 plaintiff's initial disclosure of its concept and any written contract that relates to the confidentiality of the concept submission.7 ~~An arm's length business relationship alone cannot constitute a confidential relationship.~~

The standard for determining the existence of a confidential relationship is an objective standard and such a relationship does not arise from the subjective expectations of one party that

6 Fisher-Price is unaware of authority holding that a confidential relationship can be established by conduct after the submission has been made. Once a trade secret has been disclosed outside of a confidential relationship, its legal protection is lost. Sachs v. Cluett Peabody & Co., Inc., 265 A.D. 497, 500-01, 39 N.Y.S.2d 853, 856-57 (1st Dep't 1943) (An inventor's secret "is valuable only because of its being a secret, and only so long as he keeps it secret. * * * Once the trade secret has 'escaped,' unlike most things termed property, it cannot effectively be reduced to possession" and thus its value as property is destroyed); see also Lemelson v. Carolina Enters., Inc., 541 F. Supp. 645, 659 (S.D.N.Y. 1982) ("The property in a secret process is the power to make use of it to the exclusion of the world. If the world knows the process, then the property disappears."); M & T Chems., Inc. v. Int'l Bus. Machs. Corp. (IBM), 403 F. Supp. 1145, 1148 (S.D.N.Y. 1975), aff'd without opinion, 542 F.2d 1165 (2d Cir. 1976) ("disclosure of a trade secret totally destroys it").

7 Fisher-Price requests this change in recognition of the law that holds that the parties may define the confidential nature of their relationship by written contract. See, e.g., M.H. Segan Limited Partnership v. Hasbro, Inc., 924 F. Supp. 512, 526 (S.D.N.Y. 1996); AEB & Associates Design Group, Inc. v. Tonka Corp., 853 F. Supp. 724, 731 (S.D.N.Y. 1994) ("the Court finds that the Confidentiality Agreement controls the rights and obligations of the parties").

~~January 31~~<u>February 1</u>, 2006

(~~9~~<u>2</u>:05pm)

are not communicated to the other party~~, a confidential~~

~~relationship can only be found to exist where the recipient has~~

~~demonstrated acceptance of the relationship~~.

10

~~January 31~~<u>February 1</u>, 2006

(9<u>2</u>:05pm)

### ELEMENT #4: USE

Design Innovation must prove that Fisher-Price actually used ~~Design Innovation's~~<u>the</u> submitted concept in Fisher-Price's products. Because there often is no direct evidence of use, you may infer that Fisher-Price used ~~Design Innovation's~~<u>the</u> concept based on two factors:

(1)   A substantial similarity between ~~Design Innovation's~~<u>the</u> submitted concept and Fisher-Price's later products; and

(2)   Whether Fisher-Price had access to ~~Design Innovation's~~<u>the</u> submitted concept.

In your consideration of whether there is a substantial similarity between ~~Design Innovation's~~<u>the</u> submitted concept and Fisher-Price's accused products, you should focus on both the similarities and the differences between particular aspects of ~~Design Innovation's~~<u>the</u> concept as submitted to Fisher-Price, and the design of the products actually sold later by Fisher-Price. The products plaintiff claims used ~~its~~<u>the</u> concept are:

(1)   Voice Tech Video Mission Action Figures;

(2)   Voice Tech Mission Command Action Figures;

(3)   Mission Select Action Figures; and

(4)   "Telly Photo" Optic Force Action Figure.

You must make separate determinations of whether plaintiff has

11

~~January 31~~February 1, 2006
(9~~2~~:05pm)

proved that Fisher-Price made use of ~~Design Innovation's~~the

concept for each of the accused Fisher-Price sub-lines of

products.

In summary, unless you find that the plaintiff has proved

all four elements of misappropriation, it cannot prevail.  If you

do find misappropriation proved, you will then consider Fisher-

Price's affirmative defense in which it claims that it

independently created the accused products, and thus did not use

~~plaintiff's~~the concept.

12

~~January 31~~February 1, 2006

(~~9~~2:05pm)

FISHER-PRICE'S AFFIRMATIVE DEFENSE OF INDEPENDENT CREATION

Fisher-Price has asserted the affirmative defense that the products at issue were developed independently by Fisher-Price or other outside inventors.8 Even if you find that Design Innovation has proven the elements of misappropriation, Fisher-Price will not be liable to Design Innovation if it has proven that ~~it developed~~ the claimed similar products were developed independently and without reference ~~whatsoever~~ to plaintiff's submission.9 Fisher-Price bears the burden of establishing this affirmative defense of independent creation by a preponderance of the evidence.

Thus, if you find that Design Innovation has proven its claim of misappropriation, you must consider whether Fisher-Price has proven that ~~it developed~~ the accused products were developed

---

8 Fisher-Price requests this change in recognition of the law holding that independent creation can also be established by showing creation by a third party and licensing by Fisher-Price. Evidence on this point exists with respect to Carterbench.

9 The deletion of "whatsoever" is requested because the word is unnecessary and the clause as changed would parallel the last sentence in the instruction.

13

~~January 31~~<u>February 1</u>, 2006

(~~9~~<u>2</u>:05pm)

independently, without reference to Design Innovation's concept

submissions.

~~January 31~~February 1, 2006

(9<u>2</u>:05pm)

<u>DESIGN INNOVATION'S UNFAIR COMPETITION CLAIM</u>

A claim of unfair competition is a tort involving the misappropriation for commercial advantage of a property right belonging to another.  A cause of action for unfair competition requires unfairness and an unjustifiable attempt to profit from another's expenditure of time, labor and talent.  Central to the notion of unfair competition is an element of bad faith on the part of the defendant.  Thus, in order to prove its claim that Fisher-Price unfairly competed with Design Innovation, Design Innovation must prove:

(1)  That Fisher-Price misappropriated the submitted concept for its own commercial advantage, based on the elements of misappropriation I just discussed; and

(2)  That Fisher-Price did so in bad faith.

15

~~January 31~~February 1, 2006

(9̶2:05pm)

[FISHER-PRICE'S AFFIRMATIVE DEFENSE OF WAIVER]

**[COUNSEL: THIS NEEDS MORE DISCUSSION]**

~~[~~Fisher-Price asserts as an additional affirmative defense that Design Innovation is bound to the terms of the 1994 Policy & Agreement contract signed by Victor Reiling, and therefore Design Innovation has waived any claim it may have had for misappropriation and thus, unfair competition.  Fisher-Price has the burden of proving this affirmative defense by a preponderance of the evidence.

It is undisputed that Design Innovation did not sign any Policy & Agreement form for voluntary concept submissions specifically related to its 1998 Reel Heroes concept submission. It is also undisputed that Design Innovation did sign a Design Services Agreement (Exhibit 206) in which Fisher-Price stated that it did not wish to receive confidential information from Design Innovation. You must decide whether, because of the nature of the relationship between Design Innovation and Mr. Reiling, Design Innovation is bound by the terms of the 1994 Policy & Agreement form signed by Mr. Reiling (Exhibit 1) because Reiling either (1) was acting as Design Innovation's agent or (2) was Design Innovation's partner when he made ~~with apparent authority to make~~ the Reel Heroes concept submission in accord with the terms of Reiling's 1994 Policy & Agreement.

16

~~January 31~~February 1, 2006

(~~9~~2:05pm)

In order to prove that Reiling was Design Innovation's agent at the time ~~they made~~ their 1998 Reel Heroes submission was made to Fisher-Price, Fisher-Price must demonstrate: (1) a manifestation by Design Innovation that Reiling would act for it; (2) an acceptance by Reiling of that undertaking; and (3) an understanding between Reiling and Design Innovation that Design Innovation would be in control of the undertaking.  A manifestation of an agent's authority may be actual or apparent:

Actual Authority: Actual authority may be express, by an express oral or written agreement, or implied from the circumstances.  Implied authority is proven circumstantially, by deductions or inference from the manifestations of consent of the principal and from the acts of the principal and the agent.

Apparent Authority: Apparent authority is the semblance of authority which a principal, through its own acts, causes or allows third parties to believe his agent possesses. Apparent authority is to be determined not by the agent's own acts, but by the acts of the principals.  Thus, in order to find that Reiling possessed apparent authority to act as Design Innovation's agent for the 1998 concept submission, Fisher-Price must prove that by Design Innovation's conduct it held Reiling out as possessing authority to act as its

17

~~January 31~~February 1, 2006

(~~9~~2:05pm)

agent or knowingly permitted Reiling to act as having such authority, and that Fisher-Price, acting in good faith, reasonably believed under all of the circumstances that Reiling had the necessary authority to bind Design Innovation by his 1994 Policy & Agreement with Fisher-Price.

In addition, a partner is an agent of a partnership and therefore the actions of a partner are binding on the partnership unless the partner had no authority to act for the partnership. In order to determine whether Reiling and Design Innovation were acting as partners at the time the Reel Heroes submission was made, Fisher-Price must prove by a preponderance of the evidence that Reiling and Design Innovation associated to carry on as co-owners of a business for profit where or not they intended to form a partnership. Joint property, common property or part ownership does not by itself establish a partnership, even if the co-owners share profits made from the use of the property and the sharing of the gross returns does not by itself establish a partnership even if the persons sharing them have a joint or common right or interest in the property from which the returns are derived.10

---

10 CONN. GEN. STAT. § 34-322(1) ("Each partner is an agent of the partnership for the purpose of its business. An act of a partner, including the execution of an instrument in the partnership name, for apparently carrying on in the ordinary course the partnership business or business of the kind carried on by the partnership binds the partnership, unless the partner had no authority to act for the partnership in the particular matter and the person with whom the partner was dealing knew or had received a notification that the partner lacked authority."). See also

~~January 31~~February 1, 2006

(9~~2~~:05pm)

    If you find that Mr. Reiling acted either as Design

Innovation's agent with authority or partner with authority when

he submitted the Reel Heroes concept to Fisher-Price, then your

verdict must be for Fisher-Price because Design Innovation will

have been bound to the same terms and conditions agreed to by

Reiling when the submission was made.

---

Constr. Coordinators Unltd., Inc. v. Chmiel, 1994 Conn. Super. LEXIS 2305, at *14-15 (Conn. Super. Ct. 1994) (holding, under CONN. GEN. STAT. 34-47(1) (now CONN. GEN. STAT. 34-322(1)), that a partnership was bound by the act of one of its partners where the partner had authority to act for the partnership on that matter); McCutcheon & Burr, Inc. v. Berman, 1990 Conn. Super. LEXIS 235, at *3-4 (Conn. Super. Ct. 1990) (same). Definition of partnership taken from the Court's preliminary charge. (1/17/06 Tr. 18:25-10:12).

~~January 31~~February 1, 2006

(9̲2̲:05pm)

### DAMAGES

I shall now instruct you on the issue of damages.  If you find that Design Innovation has proven its misappropriation claim and/or its unfair competition claim, and Fisher-Price has not proved its affirmative defenses, then you must determine the appropriate amount of damages, if any, to award for losses that Design Innovation has proved were caused by such misappropriation and/or unfair competition.  Any damages must be based upon the evidence presented and not on any sympathy you may feel for either of the parties.  You may award damages only in the amount you find to be justified by the evidence, no more and no less.

The fact that I am instructing you on damages does not mean that I have any opinion as to whether the defendant should in fact be held liable.

20