UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

VICTOR G. REILING ASSOCIATES and
DESIGN INNOVATION, INC.,

Index No.:  3:03 CV 222 (JBA)

Plaintiffs,

- against -

FISHER-PRICE, INC.,

January 22, 2006

Defendant.

### MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO QUASH THE KIPLING SUBPOENA OR IN THE ALTERNATIVE FOR A PROTECTIVE ORDER

#### Preliminary Statement

On January 18, 2006, Fisher-Price served a subpoena duces tecum on Plaintiff's toy industry expert, James Kipling, seeking production of eleven different categories of documents.[1] Pursuant to Rules 45(c)(3)(A), (B) and 26(c) of the Federal Rules of Civil Procedure,  Plaintiff respectfully moves to quash the subpoena, or in the alternative for entry of a protective order on the ground that Fisher-Price's subpoena is inconsistent with Rule 45 because it amounts to a broad discovery subpoena during trial.  The discovery deadline has long passed and Fisher-Price had every opportunity to seek documents from Mr. Kipling (and in fact did so) during discovery. District courts have routinely quashed subpoenas under similar circumstances.

In addition, Fisher-Price seeks production of "all contracts or licenses that form the basis for any of Your Opinions."  Plaintiff objects to any request that seeks production of contracts or license agreements on the ground that any such agreements entered into by Kenner or Hasbro

---

[1] A copy of the subpoena is attached as Exhibit A for the Court's reference.  The only documentation that Fisher-Price is entitled to at this time is number 10, Mr. Kipling's updated time records reflecting the amount he has billed for this case.  Plaintiff will provide those records prior to Mr. Kipling's testimony.

during the term of Mr. Kipling's employment by those companies contain highly confidential

business terms which should not be disclosed to Fisher-Price, one of Hasbro's major

competitors. Fisher-Price has not shown a substantial need for such documents at this time.

Finally, Fisher-Price seeks production of any notes taken by Mr. Kipling during trial that

relate to his observations of trial "or that otherwise relate to the captioned action." While Mr.

Kipling has not taken any notes since he arrived in Connecticut that would be responsive to this

request, Plaintiff wishes to lodge an objection that any such notes, if they existed, would be

protected by the work product privilege and should be exempt from disclosure. Fed R. Civ. P.

26(b)(3); 45(C)(3)(a).

**Argument**

**I.      The Kipling Subpoena Should Be Quashed
        Because Fisher-Price Has Abused Rule 45**

"Since a subpoena duces tecum is issued upon the request of a party without notice or any

action by the court, there is some potential for its misuse. " 9A Charles A. Wright, *et. al.*,

*Federal Practice and Procedure: Civil 2d* § 2459, at 38 (2d ed. 1995). A court may quash a

trial subpoena when it seeks discovery of documents and the discovery deadline has long since

passed. *Revander v. Denman*, 2004 U.S. Dist. LEXIS 628 (S.D.N.Y. 2004).

In Fisher-Price's subpoena, the requests in paragraphs one through nine are broad in

scope and could have been brought during the discovery period. *See* Subpoena, Schedule A at ¶ ¶

1-9 (requesting "[a]ll contracts or licenses" and [a]ll documents"). During discovery Fisher-

Price had every opportunity to request documents from Mr. Kipling. In fact, Fisher-Price served

a Notice of Deposition on Mr. Kipling on February 3, 2005, in which Fisher-Price sought Mr.

Kipling's entire file related to his work on this case, any documents that he had reviewed in

connection with his expert reports, and several other categories of documents. (*See* Amended

2

Notice of Deposition, attached as Exhibit B). If Fisher-Price had wanted to review the broad

categories of contracts and licenses that it now seeks by subpoena, it certainly could have

included additional requests in the Notice of Deposition, or served a subpoena during discovery.

Fisher-Price's failure to seek documents in discovery does not now entitle it to seek them

via a subpoena duces tecum served <u>during</u> trial. Indeed, "[s]ubpoenas calling for 'any and all

records' are exactly the type of 'shotgun' subpoenas that should not be issued on the eve of [or

during] trial." *Revander* 2004 U.S. Dist LEXIS 628 at *4 (quoting *Pitter v. Am. Express Co.*,

1984 U.S. Dist. LEXIS 21736 (S.D.N.Y. 1984). To allow a trial subpoena which is so broad

"'render[s] nugatory'" the "'pretrial order detailing those documents which it may use at trial'

when documents "'not previously produced or identified'" are requested. *Id.* at *4 (quoting

*BASF Corp. v. Old World Trading Co.*, 1992 U.S. Dist. LEXIS 1111 (N.D. Ill. 1992). To the

extent Fisher-Price seeks documents which it could have obtained during discovery, Defendant's

subpoena should be quashed as improper and untimely. *See Four M Corp. v. Guiliano*, 1991

U.S. Dist. LEXIS 3656 (S.D.N.Y. 1991); *Mattel, Inc. v. Walking Mountain Productions*, 353 F.

3d 792, 813-14 (9th Cir. 2003) (sanctions for service of subpoenas which were overly

burdensome and for an improper purpose).[2]

## II.    Fisher-Price's Subpoena Seeks Highly Confidential Business Information

As an additional consideration, Plaintiff also asks the Court to quash, modify or grant a

protective order as to categories one through seven of Fisher-Price's subpoena, because the

contracts and licenses of Mr. Kipling's former employer, as well as the contracts he has

negotiated for outside inventors since his departure from Hasbro, all contain highly confidential

---

[2] Compliance with the subpoena also poses serious logistical problems due to the fact that Mr. Kipling will remain in Connecticut and not return to his office in Cincinnati until after he testifies at trial this week. Having the subpoena quashed will, therefore, avoid the undue burden of having Mr. Kipling arrange for location of these documents by others in his absence. Such an exercise would be time-consuming and result in a delay of Mr. Kipling's trial testimony.

business terms that should not be disclosed to Fisher-Price, one of Hasbro's chief competitors. *See American Standard, Inc. v. Pfizer, Inc.*, 828 F.2d 734 (Fed. Cir. 1987) (noting harm of disclosure of confidential business information to a competitor).

Courts interpreting Rule 45(C)(3)(B) have analyzed whether the requesting party can show that the documents sought are relevant and necessary. *See Spartanburg Regional Healthcare System v. Hillenbrand Industries, Inc.*, 2005 U.S. Dist. LEXIS 30594 (W.D. Mich. Aug. 24, 2005); *Allen v. Howmedica Leibinger GmbH*, 190 F.R.D. 518 (D.C. Tenn. 1999). Here, Fisher-Price cannot show that production of the license agreements and contracts it seeks, which are likely to number in the hundreds, is necessary for trial. For example, Mr. Kipling will not base his testimony on the issue of what constitutes a reasonable royalty in this case based on any single contract that he has negotiated or viewed in the past, but rather on the weight of his overall experience spanning twenty-five years in the toy industry. For this reason, production of all of the agreements listed in Fisher-Price's subpoena is simply not necessary for Fisher-Price's cross-examination of Mr. Kipling.[3]

Moreover, production of these contracts would result in a <u>lengthy</u> delay of Mr. Kipling's trial testimony because he would first have to approach Hasbro's legal department to get its clearance to have the confidential information disclosed for purposes of this case. Fisher-Price has not presented any justification to delay the trial in this manner.

---

[3] Even if Fisher-Price could show that the agreements are both relevant and necessary, Fisher-Price's subpoena should still be quashed because it could have sought these agreements during discovery, which would have allowed the parties a full opportunity to explore the metes and bounds of Fisher-Price's request and to brief the issue in detail.

## Conclusion

Because Fisher-Price's subpoena is untimely, overly broad, unduly burdensome and seeks production of highly confidential business information, Plaintiff asks the Court to quash the subpoena or in the alternative to grant a protective order for all paragraphs except for paragraph 10.

Dated: Norwalk, Connecticut
January 22, 2006

Respectfully Submitted,

GRIMES & BATTERSBY, LLP

By: _____

Gregory J. Battersby (Bar No. 7386)
Edmund J. Ferdinand, III (Bar No. 21287)
Russell D. Dize (Bar No. 23064)
Susan Schlesinger (Bar No. 26625)
488 Main Avenue, Third Floor
Norwalk, Connecticut 06851-1008
(p) (203) 849-8300
(f) (203) 849-9300

SANDAK HENNESSEY & GRECO, LLP
Jay H. Sandak, Esq.
Peter M. Nolin, Esq.
707 Summer Street
Stamford, Connecticut 06901-1026
(p) (203) 425-4200
(f) (203) 325-8608

Attorneys for Plaintiff
Design Innovation, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on January 22, 2006 a copy of the foregoing Memorandum was served on all counsel of record below by electronic means:

Jacqueline Bucar Esq.
Robert Allen, Esq.
Tyler Cooper & Alcorn, LLP
205 Church Street
New Haven, Connecticut 06510

Bradford S. Babbitt, Esq.
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, CT 06103-3597

Robert J. Lane, Jr., Esq.
Jodyann Galvin, Esq.
HODGSON RUSS LLP
One M&T Plaza, Suite 2000
Buffalo, New York 14203-2391

William Wallace, Esq.
Milbank, Tweed, Hadley & McCoy-DC
1825 Eye St., N.W. , Suite 900
Washington, DC 20006

Edmund J. Ferdinand, III



AD 88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

### DISTRICT OF
### CONNECTICUT

Design Innovation, Inc.,
          **Plaintiff**

**V.**

Fisher-Price, Inc.,
          **Defendant.**

## SUBPOENA IN A CIVIL CASE

CASE NUMBER: CA:03-CV-222 (JBA)

TO: James M. Kipling

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

Documents listed in Schedule A

| PLACE    United States Courthouse<br>141 Church Street<br>New Haven, CT 06510 | DATE AND TIME<br>January 23, 2006<br>8:30AM |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| William L. Wallace III | 1/18/2006 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Milbank, Tweed, Hadley & McCloy LLP
1850 K Street, NW, Washington, DC 20006
Counsel for the Defendant

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

¹ If action is pending in district other than district of issuance, state district under case number.

## DEFINITIONS

1. "You" or "your" refer to James M. Kipling.

2. "Opinion" or "opinions" refer to any opinion contained in any expert report prepared by you, or any opinion about which you have testified in deposition or intend to testify at trial in the course of the lawsuit captioned in this subpoena.

3. "Document" includes any information recorded in tangible form, including but not limited to paper, magnetic storage media, video storage media, computer storage media or similar material.

## SCHEDULE A

1. All contracts or licenses, and all Documents related thereto, that form the basis for any of Your Opinions.

2. All contracts or licenses, and all Documents related thereto, upon which you rely for any of Your Opinions.

3. All contracts or licenses, and all Documents related thereto, that relate to the subject matter of Your Opinions.

4. All contracts or licenses, and all Documents related thereto, that comprise the basis for Your alleged familiarity with the "custom and practice" in the toy industry.

5. All Documents that reflect, refer to, or relate to the terms on which inventors submit ideas to toy companies.

6. All Documents that reflect, refer to, or relate to the terms on which toy companies accept or reject submissions of ideas from inventors.

7. All Documents that reflect, refer to, or relate to any royalties or other compensation paid to inventors by toy companies for submitted ideas.

8. All Documents that reflect authorization to You to disclose the documents requested in paragraphs 1-7 above and/or to testify at trial about any transaction reflected therein.

9. All Documents that reflect any of Your training, education or experience specific to toy use or the play patterns of children.

10. All records reflecting the amount of time spent by You working on the captioned lawsuit, the amount invoiced by You including fees and expenses, and the amount received by You in connection with any work on the captioned lawsuit.

11. All notes taken during the trial of the captioned action or that otherwise reflect Your impressions of the testimony or anything that You have observed during the trial or that otherwise relate to the captioned action.

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

VICTOR G. REILING ASSOCIATES and      :
DESIGN INNOVATION, INC.,      :
     :
         Plaintiffs,    :      Civil No. 303 CV 222 (JBA)
     :
v.      :
     :
FISHER-PRICE, INC.,      :
     :
         Defendant.    :

## AMENDED NOTICE OF DEPOSITION

Pursuant to Rule 30 of the Federal Rules of Civil Procedure, the testimony, upon oral examination, of **JAMES KIPLING**, an expert witness for the plaintiffs, will be taken by stenographic means on February 10, 2005 at 9:00 a.m., at the offices of Frost, Brown & Todd, 2200 PNC Center, 201 East 5th Street, Cincinnati, Ohio 45202, and continuing from day to day as necessary, with respect to all matters material and necessary to the defense of this action. We demand that the witness bring with him to deposition the following materials:

(1)     His entire file relating to the preparation of any expert report rendered in connection with this case.

(2)     Any documents, objects, or materials reviewed or considered in connection with the preparation of any expert report rendered in this case.

(3)     All license agreements on which Mr. Kipling relies to reach his conclusion that a reasonable royalty to be awarded to plaintiffs in this case would be between 6% and 7%.

(4)     Any documents, objects, or materials which relate to or are the result of any prior art search conducted in this case.

(5)    Any correspondence and documents exchanged between James Kipling and plaintiffs' counsel.

(6)    Any correspondence to or from plaintiffs or documents exchanged between James Kipling and plaintiffs at any time.

(7)    Any drafts of any expert report prepared in this case.

(8)    Any expert report rendered by James Kipling in any other case.

Dated:  February 3, 2005

**HODGSON RUSS LLP**

By _____
        Robert J. Lane, Jr. (Bar No. ct24598)
        email: rlane@hodgsonruss.com
        Jodyann Galvin (Bar No. ct24599)
        email: jgalvin@hodgsonruss.com
    One M&T Plaza, Suite 2000
    Buffalo, New York  14203-2391
    Telephone: (716) 856-4000

    and

    Bradford S. Babbitt (Bar No. ct13938)
    email:  bbabbitt@rc.com
    Robinson & Cole LLP
    280 Trumbull Street
    Hartford, CT 06103-3597
    Tel. No.: (860) 275-8200

    *Attorneys for Fisher-Price, Inc.*

Service: **Get by LEXSEE®**
Citation: **2004 U.S. Dist. LEXIS 628**

*2004 U.S. Dist. LEXIS 628, ** 

THOMAS A. REVANDER, Plaintiff, - against - GENE DENMAN, et al., Defendants.

00 Civ. 1810 (RJH)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

2004 U.S. Dist. LEXIS 628

January 20, 2004, Decided
January 21, 2004, Filed

**PRIOR HISTORY:** Revander v. Denman, 2000 U.S. Dist. LEXIS 10373 (S.D.N.Y., July 25, 2000)

**DISPOSITION:** **[*1]** Defendant's request for subpoenas duces tecum denied.

**COUNSEL:** Thomas A Revander, PLAINTIFF, Pro se.

For Thomas A Revander, PLAINTIFF: Kevin J Curnin, Stroock & Stroock & Lavan, LLP, New York, NY USA. Thomas A Revander, Franklin Correctional Facility, Malone, NY USA.

For Gene Denman, DEFENDANT: Ira J Cohen, Sullivan County Atty, Monicello, NY USA. Michael Frey, Appelbaum, Bauman & Appelbaum, Esqs, Liberty, NY USA.

For H Garner, Kenneth La Porte, DEFENDANTS: Michael Frey, Appelbaum, Bauman & Appelbaum, Esqs, Liberty, NY USA.

For Sullivan County, County of Sullivan, DEFENDANTS: Joel R Appelbaum, Appelbaum, Bauman & Appelbaum, Liberty, NY USA. Michael Frey, Appelbaum, Bauman & Appelbaum, Esqs, Liberty, NY USA.

**JUDGES:** Richard J. Holwell, United States District Judge.

**OPINIONBY:** Richard J. Holwell

**OPINION: Memorandum Opinion and Order**

The following Memorandum Opinion and Order addresses defendant Gene Denman's ("Defendant") request for the Court to "So Order" the Subpoenas Duces Tecum drafted by Defendant. Plaintiff Thomas Revander ("Plaintiff") opposes the request. For the following reasons, Defendant's request is denied.

BACKGROUND

All discovery in this **[*2]** case was closed on November 28, 2003. On December 15, 2003, the parties filed proposed voir dire questions, jury instructions, and a joint pre-trial order. Trial is set to begin on January 21, 2004.

By letter dated December 30, 2003, Defendant requested that this Court "So Order" three subpoenas duces tecum "so that they may be utilized for cross-examination purposes." The subpoenas were directed to three correctional facilities where plaintiff had been, or is

presently, incarcerated. The subpoenas sought "any and all records regarding the incarceration of the Plaintiff".

On January 5, 2004, Plaintiff faxed a letter to chambers opposing Defendant's request on the ground that discovery had been completed. Defendant then responded with a letter arguing that the subpoenas were trial subpoenas, not discovery subpoenas, and thus should be allowed.

The Court held a telephone conference on this matter on January 8, 2004. All parties were present as represented by counsel. After hearing argument, the Court gave the parties 24 hours to make additional submissions. Both parties made submissions within the 24-hour period.

DISCUSSION

Trial subpoenas are appropriate in certain circumstances, **[*3]** such as securing an original document previously disclosed during discovery, or for purposes of memory recollection or trial preparation. See Bufkin v. Norfolk S. Corp., No. 1:00-CV-424, 2002 WE 32144317, at *1 (N.D. Ind. Mar. 20, 2002). "However, when a [party] is aware of the existence of documents before the discovery cutoff date and issues discovery requests including subpoenas after the discovery deadline has passed, then the subpoenas and discovery requests should be denied." _McNerney v. Archer Daniels Midland Co., 164 F.R.D. 584, 588 (W.D.N.Y. 1995)._

Defendant argues that (a) none of the reasons for quashing a subpoena pursuant to _Fed. R. Civ. P. 45_ are present here; (b) Plaintiff does not have standing to oppose the subpoenas; and (c) the subpoenas are offered for trial purposes, specfically cross examination, not for discovery.

Plaintiff argues that (a) Defendant's request should be examined not only in the context of _Rule 45_, but also of _Fed. R. Civ. P. 26 and 34_; (b) the Court has discretion to deny a subpoena; and (c) Defendant's **[*4]** request is too broad to be a proper trial subpoena.

The Court finds that Plaintiff has the better of the arguments. Although a party generally does not have standing to challenge a subpoena issued to a third-party witness unless a personal privacy right or privilege is implicated, the Court, in the exercise of its discretion, may deny a subpoena request when it finds that there is no reason why the subpoena could not have been brought during the discovery period. See _McNerney, 164 F.R.D. at 587._

Moreover, Defendant's argument that the subpoenas are trial, as opposed to discovery, subpoenas is belied by their broad scope. Subpoenas calling for "any and all records" are exactly the kind of "shotgun" subpoenas that should not be issued on the eve of trial. See, e.g., _Pitter v. Am. Express Co., No. 82 Civ. 7451-CSH, 1984 U.S. Dist. LEXIS 21736, 1984 WL 1272, at *6 (S.D.N.Y. Nov. 27, 1984). Indeed, "the court's policy of requiring parties to submit a pretrial order detailing those documents which it may use at trial is rendered nugatory if a trial subpoena may issue demanding documents not previously produced or identified." BASF Corp. v. Old World Trading Co., No. 86 C 5602, **[*5]** 1992 U.S. Dist. LEXIS 1111, 1992 WL 24076, at *2 (N.D. Ill. Feb. 4, 1992).

CONCLUSION

For the foregoing reasons, Defendant's request that the Court "So Order" the Subpoenas Duces Tecum is DENIED.

Dated: New York, New York

January 20, 2004

Richard J. Holwell

Service: **Get by LEXSEE®**
Citation: **1991 u.s. dist. lexis 3656**

*1991 U.S. Dist. LEXIS 3656, \**

FOUR M CORPORATION, Plaintiff and Counterclaim-Defendant, v. FRANCIS J. GUILIANO, Defendant and Counterclaim-Plaintiff

No. 89 Civ. 5275 (KTD)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

1991 U.S. Dist. LEXIS 3656

March 27, 1991, Decided

**JUDGES: [\*1]**

Naomi Reice Buchwald, United States Magistrate Judge.

**OPINIONBY:** BUCHWALD

**OPINION:** MEMORANDUM AND ORDER

Plaintiff has moved to quash a subpoena duces tecum to the Keeper of the Records of Stone Container Corporation and a deposition subpoena to Roger Stone on the ground that both were served after the discovery cut-off. Defendant, however, asserts that plaintiff should not be able to rely on an untimeliness argument since plaintiff withheld documents until after the discovery cut-off which revealed for the first time the necessity for the discovery now sought. While defendant maintains that the "withheld information" was not previously available, plaintiff's reply papers, and the exhibits annexed thereto, reveal that there was sufficient information available to defendant prior to the discovery cut-off to demonstrate a basis for the Stone discovery. Thus, while the documents produced more recently could be considered more explicit, defendants were on notice as to the issue of contact between Dennis Mehiel and Roger Stone of the Stone Container Corporation well before the cut-off. Accordingly, defendant's decision not to seek third-party discovery from the Stone Container Corporation during the **[\*2]** discovery period will not be disturbed.

IT IS SO ORDERED.

Service: **Get by LEXSEE®**
Citation: **1991 u.s. dist. lexis 3656**
View: Full
Date/Time: Sunday, January 22, 2006 - 5:53 PM EST

\* Signal Legend:
🔴 - Warning: Negative treatment is indicated
[Q] - Questioned: Validity questioned by citing refs
⚠️ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
Ⓐ - Citing Refs. With Analysis Available
ⓘ - Citation information available
\* Click on any *Shepard's* signal to *Shepardize*® that case.

Service: **Get by LEXSEE®**
Citation: **2005 U.S. Dist. LEXIS 30594**

*2005 U.S. Dist. LEXIS 30594, \**

SPARTANBURG REGIONAL HEALTHCARE SYSTEM, Plaintiff, v. HILLENBRAND INDUSTRIES, INC. et al., Defendants.

Case No. 1:05-mc-107

UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN, SOUTHERN DIVISION

2005 U.S. Dist. LEXIS 30594

August 24, 2005, Decided
August 24, 2005, Filed

**SUBSEQUENT HISTORY:** Affirmed by Spartanburg Reg'l Healthcare Sys. v. Hillenbrand Indus., 2005 U.S. Dist. LEXIS 30590 (W.D. Mich., Oct. 12, 2005)

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff healthcare system filed an antitrust action against various defendants in the U.S. District Court for the District of South Carolina alleging violation of federal antitrust laws with respect to the sales of hospital beds. As part of its defense against the allegations of monopoly, one defendant served a subpoena to produce and permit inspection and copying of certain documents upon a competitor who filed a motion to quash the subpoena.

**OVERVIEW:** The competitor asserted that defendant's requests sought the production of confidential and proprietary trade information, that compliance with the subpoena would subject it to an undue burden, and that a protective order would not sufficiently protect the confidentiality of the information. The court found that the competitor had met its burden in proving the sensitive and confidential nature of the information requested. The court further found that production of the requested information would subject the competitor to significant harm and that a protective order would not adequately protect the competitor's interests. While factual information regarding the market for in-room furniture products may have been relevant, defendant instead sought to obtain confidential information regarding the thought processes by which its competitor develops, prices, and markets its products. The court discerned no legitimate use for such information. When balancing the alleged need for the requested information against the potential injury, the court concluded that the balancing weighed heavily in the competitor's favor.

**OUTCOME:** The motion to quash the subpoena was granted.

**CORE TERMS:** confidential, subpoena, requested information, competitor, documents requested, compete, proprietary, requested material, in-room, rental, protective order, potential harm, confidentiality, disclosure, furniture, business records, relevance, relevancy, non-party, market share, competitive, planning, beds, articulated, marketplace, volume, failed to demonstrate, attempt to obtain, motion to quash, monopoly power

**LexisNexis(R) Headnotes** ✦ Hide Headnotes

Civil Procedure > Disclosure & Discovery > Protective Orders 

Civil Procedure > Trials > Subpoenas

*HN1* Fed. R. Civ. P. 45(c) provides for the protection of persons subject to subpoenas. Rule 45(c)(3) identifies those circumstances in which a court may quash a subpoena. As has been recognized, Rule 45(c)(3) tracks the provisions of Fed. R. Civ. P. 26(c) which provides for the issuance of protective orders. Thus, a non-party may seek the court's protection via the overlapping and interrelated provisions of Fed. R. Civ. P. 26 and 45. The application of these provisions requires the court to balance several competing factors: (1) relevance, (2) need, (3) confidentiality, and (4) harm.  More Like This Headnote

Civil Procedure > Trials > Subpoenas

Evidence > Procedural Considerations > Burdens of Proof

*HN2* The burden of demonstrating that a document request seeks the production of trade secrets and confidential commercial information, the production of which would unfairly harm its ability to compete in the marketplace rests with the objector. If the objector demonstrates that the documents requested by a subpoena are confidential and that disclosure of such would subject it to harm, the burden then shifts to the party initiating the subpoena to establish that the requested documents are both relevant and necessary. If the subpoena initiator can satisfy its burden, the court must then balance that party's need for the information against the potential harm to the objector by its disclosure.  More Like This Headnote

Civil Procedure > Trials > Subpoenas

*HN3* As courts have long recognized, disclosure of sensitive business information to a competitor is more harmful than disclosure to a noncompetitor.  More Like This Headnote

Civil Procedure > Trials > Subpoenas

*HN4* While the standard for relevancy is defined very broadly, a finding of relevance cannot be based upon a theoretical argument that the requested information somehow relates to an action pending in another district. Instead, the party seeking the information must be able to demonstrate the linkage between the discovery sought and admissible evidence.  More Like This Headnote

**COUNSEL: [*1]** For Hillenbrand Industries, Inc., named as Hillenbrand Industries, Inc., et al., Hill-Rom, Inc., Hill-Rom Company, Inc., defendants: Jeffrey G. Muth, Barnes & Thornburg, Grand Rapids, MI; K. Scott Hamilton, Dickinson Wright, PLLC, Detroit, MI; Rock A. Wood, Dickinson Wright, PLLC, Grand Rapids, MI.

For Steelcase Inc., objector: D. Andrew Portinga, Jon G. March, Miller Johnson Snell & Cummiskey PLC, Grand Rapids, MI.

**JUDGES:** ELLEN S. CARMODY, United States Magistrate Judge. Hon. Richard Alan Enslen.

**OPINIONBY:** ELLEN S. CARMODY

**OPINION: OPINION**

This matter is before the Court on Steelcase Inc.'s Motion to Quash Subpoena. (Dkt. # 4). The Court heard oral argument on this motion on August 2, 2005. For the reasons discussed

below, Plaintiff's motion to quash subpoena is **granted.**

## BACKGROUND

This matter relates to a lawsuit initiated by Spartanburg Regional Healthcare System (Spartanburg) against Hillenbrand Industries, Inc., Hill-Rom, Inc., and Hill-Rom Company, Inc. (Hillenbrand) in the United States District Court for the District of South Carolina (the South Carolina action). (Dkt. # 5, Exhibit B). In that action, Spartanburg alleges that Hillenbrand has acted in violation **[*2]** of federal antitrust laws with respect to its sales of hospital beds. Specifically, Spartanburg alleges that Hillenbrand possesses monopoly power regarding the sale of its standard hospital beds (and related in-room products) and, furthermore, has consciously employed such advantage in an attempt to obtain monopoly power with respect to its sales of specialty hospital beds. As part of its defense against these allegations, Hillenbrand served upon Steelcase, Inc. (Steelcase) a subpoena "to produce and permit inspection and copying of" certain documents. (Dkt. # 5, Exhibit A). Steelcase submitted objections to this subpoena as well as the present motion to quash.

## I. Motion to Quash

The challenged subpoena requests that Steelcase produce the following documents:

For the period January 1, 1988 to the present day:

1. Product listings or brochures sufficient to identify the products you manufacture, rent and/or sell.

2. With respect to Competing Products, only those financial, planning or summary documents sufficient to show:

(a) annual unit sale or rental revenue from the sale or rental of each such product;

(b) your share of the United States **[*3]** market for each such product;

(c) those companies with which you compete for sales or rentals of each such product and their respective shares of the United States market for each such product;

(d) the date on which you first introduced, or entered the market for, each such product;

(e) your list sales prices or list rental rates for each such product; and

(f) discounts, rebates or other incentives that you or your competitors offered to customers or prospective customers.

3. Business planning and competitive and strategic analysis documents, board and committee meeting minutes, and data compilations and analyses concerning:

(a) competition in the markets for the Competing Products;

(b) entry by new competitors in the markets for the Competing Products;

(c) whether the prices of Competing Products, including your

products, net of any discounts, have increased or decreased over time in any manner;

(d) your actual or forecasted business and/or financial performance with respect to the Competing Products; and

(e) comparisons between Competing Products that you and your competitors sell or rent.


4. All documents concerning **[*4]** Spartanburg Regional Healthcare System (SRHS) and any proposed or actual sale or rental of any product to SRHS.

5. All documents produced in response to subpoenas issued by the parties in *Kinetic Concepts, Inc., et al. v. Hillenbrand Industries, et al.,* W.D. Tex. Case No. 95-cv-755.

6. All documents concerning any agreements or understandings between you and any other manufacturer concerning Competing Products.

7. All documents concerning any actual or proposed group purchasing agreements with a Group Purchasing Organization (GPO) or Integrated Delivery Network (IDN).

8. Documents sufficient to show how you define the product markets in which you compete and how you monitor your market share and the market share of your competitors in such product markets.


With respect to the first request to produce, Steelcase has agreed to provide Hillenbrand with brochures regarding its products which are intended for use in patient care rooms. With respect to requests to produce 5 and 6, Steelcase asserts that "no such documents" exist, a claim which Hillenbrand has not challenged. Thus, only requests to produce 2-4 and 7-8 are presently before the Court.

Steelcase **[*5]** asserts that Hillenbrand's requests seek the production of confidential and proprietary trade information which is irrelevant and unnecessary to the resolution of any of the claims asserted by Spartanburg in the South Carolina action. Steelcase also asserts that compliance with the subpoena would subject it to an undue burden. Finally, Steelcase claims that a protective order would not sufficiently protect the confidentiality of the information requested by Hillenbrand.

*HN1*⚓Federal Rule of Civil Procedure 45(c) provides for the "protection of persons subject to subpoenas." Rule 45(c)(3) identifies those circumstances in which the Court may quash a subpoena. As has been recognized, Rule 45(c)(3) "tracks the provisions of Rule 26(c)" which provides for the issuance of protective orders. See *Mannington Mills, Inc. v. Armstrong World Indus., Inc.,* 206 F.R.D. 525, 529 (D. Del. 2002). Thus, a non-party may seek the Court's protection "via the overlapping and interrelated provisions" of Rule 26 and 45. The application of these provisions requires the Court to balance several competing factors: (1) relevance, (2) need, (3) confidentiality, **[*6]** and (4) harm. *Id.*

Steelcase asserts that the document requests at issue seek the production of "trade secrets" and "confidential commercial information," the production of which would unfairly harm its ability to compete in the marketplace. *HN2*⚓The burden of demonstrating that such is the case rests with Steelcase. See *Mannington Mills,* 206 F.R.D. at 528-29; *Echostar Comm.*

*Corp. v. The News Corp. Ltd.,* 180 F.R.D. 391, 394 (D. Colo. 1998); *American Standard Inc. v. Pfizer, Inc.,* 828 F.2d 734, 741 (Fed. Cir. 1987); *Coca-Cola Bottling Co. of Shreveport, Inc. v. The Coca-Cola Co.,* 107 F.R.D. 288, 292 (D. Del. 1985).

If Steelcase demonstrates that the documents requested by Hillenbrand's subpoena are confidential and that disclosure of such would subject it to harm, the burden then shifts to Hillenbrand to establish that the requested documents are *both* relevant and necessary. *See Mannington Mills,* 206 F.R.D. at 528-29; *Echostar,* 180 F.R.D. at 394; *American Standard,* 828 F.2d at 741; *Coca-Cola Bottling,* 107 F.R.D. at 292. If Hillenbrand can satisfy **[*7]** its burden, the Court must then balance Hillenbrand's need for the information against the potential harm to Steelcase by its disclosure. *Echostar,* 180 F.R.D. at 394; *Coca-Cola Bottling,* 107 F.R.D. at 293.

A. Confidentiality and Potential Harm

In support of its claim that Hillenbrand seeks the production of confidential business information, Steelcase has submitted the affidavits of Richard Cocos, Regional Sales Director, Southeast Region for Steelcase, Inc., and Gina Chapman-Cox, Vice-President of Brayton International, Inc.

With respect to the confidential nature of the requested documents, Mr. Cocos asserts that "we consider nearly all of the documents requested to be highly confidential and proprietary trade information which we would not voluntarily share outside our company, particularly to a competitor, or in some cases, our dealers." n1 (Cocos Affidavit at P6). Ms. Chapman-Cox likewise asserts that "nearly all of the documents requested seek highly confidential and proprietary trade information which we do not share with anyone outside our company (and in some cases our dealers), let alone with a competitor." (Chapman-Cox Affidavit at P8). **[*8]** She further asserts that

> For a competitor such as Hill-Rom to have any of the information [requested by the subject subpoena] would cause significant harm to our company and our efforts to compete in the marketplace. Hill-Rom would know precisely our business strategy, including our most sensitive pricing information, and it would allow Hill-Rom to undermine our competitive position. They could target our existing and future business as they chose to do so. Knowing our price structure, they could undercut us at will.

*Id.* at P9.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 At hearing Steelcase clarified that it considered *all* of the documents sought by requests to produce 2-4 and 7-8 to be confidential in nature. Steelcase explained that the "nearly all" qualifier referred to the documents sought by requests 1, 5, and 6 which, as previously noted, are not presently at issue. Thus, for purposes of requests to produce 2-4 and 7-8, Mr. Cocos has asserted that all of the documents requested are confidential in nature. This rational applies with equal force to the affidavit submitted by Ms. Chapman-Cox.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - **[*9]**

Hillenbrand asserts that Steelcase has failed to demonstrate that the documents at issue are confidential in nature. Specifically, Hillenbrand claims that the affidavits submitted by Mr. Cocos and Ms. Chapman-Cox are "conclusory" and lack the requisite specificity. The Court disagrees and finds that Steelcase has met its burden in this regard.

First, that Hillenbrand seeks the production of sensitive and confidential business information is apparent from the very nature of the requests at issue. For example, as noted above, Hillenbrand requests that Steelcase produce documents regarding: (1) "planning and competitive and strategic analysis;" (2) "data compilations and analyses;" (3) "actual or forcasted business and/or financial performance;" (4) sales revenue and market share; and (5) how Steelcase defines "the product markets in which [it] compete[s]." It is unreasonable to assert that such requests do not seek the production of confidential and proprietary business information. Furthermore, the affidavits submitted by Mr. Cocos and Ms. Chapman-Cox are sufficient to establish that Hillenbrand seeks the production of confidential and proprietary business information. To require **[*10]** the affiants to provide more detail would necessitate that they divulge the very sort of information which they are attempting to protect through the present motion to quash.

The Court further finds that production of the requested information would subject Steelcase to significant harm. Hillenbrand is requesting documents detailing sensitive and confidential aspects of Steelcase's business strategy. Moreover, it is undisputed that Steelcase and Hillenbrand directly compete against each other in the market for in-room furniture products. *HN3* As courts have long recognized, **disclosure** of sensitive business information to a **competitor** is "more **harmful than disclosure** to a **noncompetitor.**" _American Standard, 828 F.2d at 741_; see also, _Mannington Mills,_ 206 F.R.D. at 531; _Allen v. Howmedica Leibinger,_ 190 F.R.D. 518, 526 (W.D. Tenn. 1999); _Echostar,_ 180 F.R.D. at 395; _In re Vitamins Antitrust Litigation,_ 267 F.Supp.2d 738, 741-42 (S.D. Ohio 2003). The Court also finds unpersuasive Hillenbrand's assertion that a protective order will adequately protect Steelcase's interests.

B. Relevance and Necessity

As **[*11]** Steelcase has established that the requested material is confidential and that its production could result in harm to its business, Hillenbrand must establish that the requested information is relevant **and** that its production is necessary.

*HN4* While the standard for relevancy is "defined very broadly," a finding of relevance cannot be based upon "a theoretical argument that the requested information somehow relates to an action pending in another district." _Allen,_ 190 F.R.D. at 522. Instead, Hillenbrand must be able to demonstrate the "linkage between the discovery sought and admissible evidence." _Id._

Hillenbrand asserts that the requested information is relevant to demonstrate the existence of competition for the sale of in-room furniture products. While information regarding the existence (or lack thereof) of competition in this particular sub-market _may_ be relevant to resolution of the claims advanced in the South Carolina action, what Hillenbrand seeks to obtain through the subpoena at issue is information of an entirely different character. While _factual_ information regarding the market for in-room furniture products (e.g., information regarding **[*12]** the nature of Steelcase's in-room furniture products or the price at which Steelcase has offered such products to actual or potential purchasers), _may_ be relevant, Hillenbrand instead seeks to obtain confidential information regarding the _thought processes_ by which Steelcase develops, prices, and markets its products. The Court discerns no legitimate use for such information and Hillenbrand has presented no authority suggesting otherwise.

The Court recognizes that a certain limited number of the requested documents may satisfy the relevancy standard articulated in _Rule 26_. This is not surprising given the volume of documents requested. Such limited exceptions notwithstanding, the Court finds that Hillenbrand has failed to demonstrate that the documents at issue are relevant in the South Carolina action. Even were the Court to conclude otherwise, however, Hillenbrand cannot establish that it needs the documents requested in the challenged subpoena.

As Steelcase asserted at hearing, to the extent that the requested information is relevant Hillenbrand can obtain such from members of the plaintiff class or from other individuals and entities with whom Steelcase has conducted **[*13]** business. Moreover, as the Court has previously observed, much of the requested information is available in the public domain through various for-profit business information services, as well as other sources such as Steelcase's annual reports. The fact that the requested information may be obtained from other sources greatly diminishes the argument that Hillenbrand *needs* to obtain discovery of Steelcase's confidential business records. See *American Standard,* 828 F.2d at 743; *Mannington Mills,* 206 F.R.D. at 532; *Allen,* 190 F.R.D. at 525.

Furthermore, the fact that there exists no evidence that Hillenbrand has made *any* attempt to obtain the requested information from any source other than Steelcase significantly undermines its claim of need. See *Echostar,* 180 F.R.D. at 395 ("until Echostar has exhausted its efforts to seek production of these types of [confidential] materials from News Corp., and until Echostar has, at least, completed some depositions, it cannot even begin to argue that it has a substantial need to obtain the [confidential] materials from the non-parties").

In sum, Hillenbrand has not established **[*14]** that the requested material is relevant. Moreover, even if the requested material is deemed relevant Hillebrand has not established sufficient need for Steelcase's confidential business records.

C. Balancing Need Against Potential Harm

Even if the Court were to find that Hillenbrand has established both relevancy and need, the outcome is the same. When balancing Hillenbrand's alleged need for the requested information against the potential injury that would result to Steelcase if such material were produced, the Court concludes that the balancing weighs heavily in Steelcase's favor.

Given the volume of material requested and its extremely sensitive nature, the potential harm to Steelcase is significant and easily outweighs whatever need Hillenbrand may have for such material. Moreover, the fact that Steelcase is not a party to the South Carolina action counsels in favor of granting its motion to quash. See *Katz v. Batavia Marine & Sporting Supplies, Inc.,* 984 F.2d 422, 424 (Fed. Cir. 1993); *Allen,* 190 F.R.D. at 521; *Echostar,* 180 F.R.D. at 394.

Finally, the Court is unpersuaded by Hillenbrand's argument that a protective order **[*15]** will sufficiently protect Steelcase's interests to permit production of the requested material. As has been recognized, in circumstances such as this a protective order is of little or no benefit to the non-party being asked to produce confidential business records for use in a distant forum. The parties to the South Carolina action have no incentive to maintain the confidentiality of the requested material. See *Micro Motion, Inc. v. Kane Steel Co.,* 894 F.2d 1318, 1325; *Mannington Mills,* 206 F.R.D. at 530-31; *Allen,* 190 F.R.D. at 526. Furthermore, there is no evidence that Steelcase would possess the standing necessary to protect its interests in the South Carolina district court. See *Micro Motion,* 894 F.2d at 1325; *Allen,* 190 F.R.D. at 526.

## CONCLUSION

For the reasons articulated herein, Steelcase Inc.'s Motion to Quash Subpoena, (dkt. # 4), is **granted.** An Order consistent with this Opinion will enter.

Date: August 24, 2005

ELLEN S. CARMODY

United States Magistrate Judge

## ORDER

Consistent with the Opinion filed this day, Steelcase Inc.'s Motion to Quash Subpoena, (dkt. # 4), is **granted. [*16]**

**IT IS SO ORDERED.**

Date: August 24, 2005

ELLEN S. CARMODY

United States Magistrate Judge

Service: **Get by LEXSEE®**
Citation: **2005 U.S. Dist. LEXIS 30594**
View: Full
Date/Time: Sunday, January 22, 2006 - 2:47 PM EST

* Signal Legend:
⬤ - Warning: Negative treatment is indicated
[Q] - Questioned: Validity questioned by citing refs
⚠ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
[A] - Citing Refs. With Analysis Available
[I] - Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

 **LexisNexis®**     About LexisNexis  | Terms & Conditions
Copyright © 2006 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.