UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| VICTOR G. REILING ASSOCIATES and DESIGN INNOVATION, INC., | : | |
| | : | |
| | : | |
| Plaintiffs | : | |
| | : | Civil No. 303CV222(JBA) |
| v. | : | |
| | : | February 23, 2006 |
| FISHER-PRICE, INC. | : | |
| | : | |
| Defendant. | : | |
| | : | |

MEMORANDUM IN SUPPORT OF FISHER-PRICE'S
MOTION FOR JUDGMENT AS A MATTER OF LAW OR A NEW TRIAL

**TYLER COOPER & ALCORN, LLP**
Robert W. Allen
Jacqueline D. Bucar
205 Church Street
P.O. Box 1936
New Haven, CT 06509-0906

**HODGSON RUSS LLP**
Robert J. Lane, Jr.
Jodyann Galvin
One M&T Plaza, Suite 2000
Buffalo, NY 14203-2391
Telephone: (716) 856-4000

**MILBANK, TWEED, HADLEY &
   MCCLOY LLP**
William E. Wallace III, Esq.
Jay I. Alexander, Esq.
International Square Building
1850 K Street, N.W., Suite 1100
Washington, D.C. 20006

TABLE OF CONTENTS

Table of Contents ...................................................................................................... i, ii

Table of Authorities ................................................................................... iii, iv, v, vi, vii

Preliminary Statement ........................................................................................................ 1

Statement of Facts ............................................................................................................. 2

Argument ........................................................................................................................... 6

I.     THE UNDISPUTED EVIDENCE AT TRIAL ESTABLISHED THAT
THE REEL HEROES SUBMISSIONS WERE NOT DISCLOSED ON A
CONFIDENTIAL BASIS OR IN THE CONTEXT OF A CONFIDENTIAL
RELATIONSHIP ...................................................................................................... 7

     A.    To Support a Claim for Common Law Misappropriation, an Idea Must Be
*Both* Secret *and* Disclosed in the Context of a Confidential Relationship .............. 7

     B.    The Reel Heroes Concept Was Not a "Secret" Because It Had Been
Disclosed on a Non-Confidential Basis .................................................................. 9

     C.    DI Did Not Disclose the Reel Heroes Concept In the Context of a
Confidential Relationship With Fisher-Price ......................................................... 13

          1.    DI did not disclose the Reel Heroes concept to
Fisher-Price *in the context of* its alleged confidential
relationship with Fisher-Price. ................................................................. 14

          2.    DI introduced no evidence that it ever communicated a
request for a confidential relationship with Fisher-Price. ........................... 15

          3.    DI introduced no evidence that Fisher-Price ever
accepted a confidential relationship. ......................................................... 16

     D.    Testimony by Reiling and Other Witnesses Confirmed the Absence of a
Confidential Relationship ...................................................................................... 19

     E.    The Evidence on Other Elements of the Court's Confidentiality Instruction
Further Established  the Absence of a Confidential Relationship ......................... 22

i

F.  DI's Arguments for a Confidential Relationship Are Legally Insufficient ...........26

1.  The absence of a P&A signed by DI.........................................................26

2.  The Option Agreement .........................................................................28

3.  License negotiations...............................................................................32

II.  DI INTRODUCED NO COMPETENT EVIDENCE AND
ADVANCED NO COGNIZABLE LEGAL THEORY THAT WOULD
PERMIT RECOVERY OF DAMAGES ON LINE EXTENSIONS.................................33

A.  Damages May Not Be Awarded in a Misappropriation Case With
Respect to Products That Do Not Misappropriate the Concept............................34

B.  There Was No Evidence at Trial Establishing That Fisher-Price's Sale
of Line Extension Products Caused DI Any Damage.............................................34

III.  DI ADMITTED THAT FISHER-PRICE DID NOT "USE" THE REEL HEROES
CONCEPT IN ITS ONLY CONCRETE FORM.................................................................37

A.  Only the Reel Heroes Concept As Submitted to Fisher-Price Is Relevant for
Determining Use .....................................................................................................38

B.  Fisher-Price Did Not Use The Reel Heroes Concept As Submitted......................39

C.  Popek and Reiling Argued That The Descriptions of The Reel Heroes Concept
Communicated to Fisher-Price Were "Wrong" and Admitted That What They
Consider The Concept Was Never Communicated ...............................................44

D.  DI Cannot Rely on Its Uncommunicated Definition of the Reel Heroes
Concept                                                                                            46

IV.  THE UNDISPUTED EVIDENCE SHOWED THAT THE REEL HEROES
CONCEPT WAS NOT FIXED AND CONCRETE.........................................................48

V.  DI FAILED TO OFFER COMPETENT EVIDENCE THAT THE REEL
HEROES CONCEPT WAS NOVEL .................................................................................52

Conclusion ...........................................................................................................................55

## Table of Authorities

**Page**

**Federal Cases**

*AEB & Assocs. Design Group v. Tonka Corp.*, 853 F. Supp. 724 (S.D.N.Y. 1994) ........ 30, 31, 52

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1985) ................................................................. 1, 2

*Ball v. Hershey Foods Corp.*, 842 F. Supp. 44 (D. Conn.),
  *aff'd*, 14 F.3d 591 (2d Cir. 1993) ................................................................. 8, 38, 48

*Basquiat v. Sakura Int'l*, 2005 U.S. Dist. LEXIS 13989 (S.D.N.Y. July 5, 2005) ....................... 32

*Bateman v. Mnemonics, Inc.*, 79 F.3d 1532 (11th Cir. 1996) ....................................................... 18

*Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F. 2d 523 (2d Cir. 1985) .................................. 43

*Bonito Boats, Inc. v. Thunder Craft Boats*, 489 U.S. 141 (1989) .................................................... 8

*Brandwynne v. Combe Int'l, Ltd.*, 74 F. Supp. 2d 364 (S.D.N.Y. 1999) ................................. 52, 54

*Byrd v. Blue Ridge Rural Elec. Coop.*, 356 U.S. 525 (1958) .......................................................... 2

*Calvin Klein Trademark Trust v. Wachner*, 123 F. Supp. 2d 731 (S.D.N.Y. 2000) ..................... 15

*Compco Corp. v. Day-Brite Lighting, Inc.*, 376 U.S. 234 (1964) .................................................... 8

*E.I. DuPont de Nemours Powder Co. v. Masland*, 244 U.S. 100 (1917) ........................................ 8

*Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270 (2d Cir. 1992) ................................ 35

*Ed Kaplan Assoc. v. Fisher-Price*, 17 U.S.P.Q. 2d 1877 (S.D.N.Y. 1990) ................................... 54

*Eolas Techs., Inc. v. Microsoft Corp.*, 399 F.3d 1325 (Fed. Cir. 2005) ........................................ 12

*Estate of Genecin v. Genecin*, 363 F. Supp. 2d 306 (D. Conn. 2005) .......................................... 43

*Holloway v. King*, 361 F. Supp.2d 351 (S.D.N.Y. 2005) .............................................................. 22, 25

*Hernandez v. Keane*, 341 F.3d 137 (2d Cir. 2003) ......................................................................... 1

*Isley v. Motown Record Corp.*, 69 F.R.D. 12 (S.D.N.Y. 1975) ...................................................... 2

*Kavanau v. Courtroom Television Network*, 23 U.S.P.Q. 2d 1938 (S.D.N.Y. 1992) ............. 52, 54

## Table of Authorities

Page

*Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470 (1974) ................................................................ 8

*Khreativity Unlimited v. Mattel, Inc.*, 101 F. Supp. 177 (S.D.N.Y.),
    *aff'd*, 242 F.3d 366 (2d Cir. 2000) ..................................................................................... 52, 54

*Kublan v. Hasbro*, 1999 U.S. Dist. LEXIS 3226 (S.D.N.Y. Mar. 22, 1999) ................................. 31

*Lemelson v. Carolina Enters., Inc.*, 541 F.Supp. 645 (S.D.N.Y. 1982) .................................... 9, 10

*Liebowitz v. Elsevier Sci., Inc.*, 927 F. Supp. 688 (S.D.N.Y. 1996) ............................................. 32

*Link Group Int'l v. Toymax, Inc.*, 2000 U.S. Dist. LEXIS 4567
    (D. Conn. Mar. 17, 2000) ........................................................................................... 51, 52, 54

*Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb, Inc.*, 767 F. Supp. 1220
    (S.D.N.Y. 1991), *rev'd on other grounds*, 967 F.2d 742 (2d Cir. 1992) ...................... 16, 25, 32

*M & T Chems., Inc. v. Int'l Bus. Machs. Corp. (IBM)*, 403 F.Supp. 1145
    (S.D.N.Y. 1975), *aff'd*, 542 F.2d 1165 (2d Cir. 1976) .......................................................... 9, 10

*M.H. Segan Ltd. P'ship v. Hasbro, Inc.*, 924 F. Supp. 512 (S.D.N.Y. 1996) ................................. 8

*Markogianis v. Burger King Corp.*, 42 U.S.P.Q. 2d 1862 (S.D.N.Y. 1997) ................................. 48

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ...................................... 2

*Maxon Premix Burner Co. v. Eclipse Fuel Eng'g Co.*, 1971 U.S. Dist. LEXIS 12564
    (N.D. Ill. 1971) .......................................................................................................................... 15

*McGhan v. Ebersol*, 608 F. Supp. 277 (S.D.N.Y. 1985) .............................................. 8, 48, 53, 54

*Moy v. Adelphi Inst.*, 866 F. Supp. 696 (E.D.N.Y. 1994) ............................................................. 22

*National Westminster Bank v. Ross,* 130 B. R. 656 (S.D.N.Y. 1991), *aff'd, Yaeger v. National
    Westminster*, 962 F.2d 1 (2d Cir. 1992) ...................................................................................... 23

*O'Brien v. RKO Radio Pictures, Inc.*, 68 F. Supp. 13 (S.D.N.Y. 1946) ....................................... 48

*Otero v. Housing Auth. of the City of Bridgeport*, 263 F. Supp. 2d 440 (D. Conn. 2003) ............. 1

*Painton & Co. v. Bourns, Inc.*, 442 F.2d 216 (2d Cir. 1971) .......................................................... 8

*Pommier v. Peoples Bank Marycrest*, 967 F.2d 1115 (7th Cir. 1992) .............................. 23, 24, 25

## Table of Authorities

Page

*Radio Today, Inc. v. Westwood One, Inc.*, 684 F. Supp. 68 (S.D.N.Y. 1988) .............................. 30

*Ring v. Estee Lauder*, 702 F. Supp. 76 (S.D.N.Y. 1988),
    *aff'd*, 874 F.2d 109 (2d Cir. 1989) .......................................................................................... 54

*Seal Flex, Inc. v. W.R. Dougherty & Assoc.*, 254 F. Supp.2d 647 (E.D. Mich. 2003) ................ 35

*Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225 (1964)............................................................. 8

*Selmon v. Hasbro Bradley, Inc.*, 669 F.Supp. 1267 (S.D.N.Y. 1987) ..................................... 38, 46

*Sharp v. Patterson*, 2004 U.S. Dist. LEXIS 22311 (S.D.N.Y. Nov. 3, 2004) .............................. 52

*Smith v. Weinstein*, 578 F. Supp. 1297 (S.D.N.Y. 1984),
    *aff'd*, 738 F.2d 419 (2d Cir. 1984) ........................................................................................... 25

*Sony Music Entm't Inc. v. Robison*, 2002 U.S. Dist. LEXIS 3100
    (S.D.N.Y. Feb. 26, 2002)................................................................................................... 23, 32

*Soo Line R.R. Co. v. St. Louis Southwestern R.R. Co.*, 125 F.3d 481 (7th Cir. 1997)................. 43

*Stratienko v. Cordis Corp.*, 429 F.3d 592 (6th Cir. 2005) ........................................................... 38

*United Magazine Co. v. Murdoch Magazines Distrib.*, 2001 U.S. Dist. LEXIS 20878
    (S.D.N.Y. 2001)................................................................................................................... 22

*United States v. 77 East 3rd Street*, 869 F. Supp. 1042 (S.D.N.Y. 1994) ..................................... 2

*United States v. Cassese*, 273 F. Supp. 2d 481 (S.D.N.Y. 2003) ........................................... 25, 33

*United States v. Chestman*, 947 F.2d 551 (2d Cir. 1991) ....................................................... 25, 33

*United States v. Falcone*, 257 F.3d 226 (2d Cir. 2001) ............................................................... 33

*Univ. Computing Co. v. Lykes-Youngstown Corp.,* 504 F.2d 518 (5th Cir. 1974) .........................34

*Vermont Microsystems Inc. v. Autodesk, Inc.,* 138 F.3d 449 (2d Cir. 1998) .................................34

*Vitro Corp. of Amer. v. Hall Chem. Co.,* 292 F.2d 678 (6th Cir. 1961) .........................................34

*Zikakis v. Staubach Retail Svcs., Inc.*, 2005 U.S. Dist. LEXIS 21105
    (S.D.N.Y. Sept. 22, 2005)................................................................................................... 52

# Table of Authorities

**Page**

**State Cases**

*Atkins Nutritionals, Inc. v. Ernst & Young, LLP*, 301 A.D.2d 547, 754 N.Y.S.2d 320
(2d Dep't 2003) .................................................................................................................... 22

*Bristol v. Equitable Life Assurance Soc.*, 132 N.Y. 264 (1892) ....................................................... 9

*Buggs v. Veterans Butter & Egg Co.*, 120 A.D.2d 361, 502 N.Y.S.2d 12 (1st Dep't 1986)......... 35

*Ed Graham Prods., Inc. v. Nat'l Broad. Co.*, 75 Misc.2d 334, 347 N.Y.S.2d 766
(S. Ct. N.Y. Co. 1973) ......................................................................................................... 38

*Educational Sales Programs, Inc. v. Dreyfus Corp.*, 65 Misc.2d 412, 317 N.Y.S.2d 840
(Sup. Ct. N.Y. Co. 1970) ................................................................................................ 51, 54

*Feigen v. Advance Capital Mgmt. Corp.*, 150 A.D.2d 281, 541 N.Y.S.2d 797
(1st Dep't 1989).................................................................................................................... 22

*Futter v. Paramount Pictures, Inc.*, 69 N.Y.S.2d 438 (S. Ct. N.Y. Co. 1947) .............................. 54

*Julien J. Studley, Inc. v. N.Y. News, Inc.*, 70 N.Y.2d 628, 518 N.Y.S.2d 779 (1987) ................. 30

*King v. Edward B. Marks Music Corp.*, 45 N.Y.S.2d 630 (Sup. Ct. N.Y. Co. 1943).................... 32

*Lane v. Mercury Record Corp.*, 21 A.D.2d 602, 252 N.Y.S.2d 1011 (1st Dep't 1964),
*aff'd* 18 N.Y.2d 889, 276 N.Y.S.2d 626 (1966)......................................................................... 32

*Larkin v. Pennsylvania R.R. Co.*, 125 Misc. 238, 210 N.Y.S. 374
(Sup. Ct. N.Y. Co. 1925) ...................................................................................................... 10

*National Union Fire Ins. Co. v. Williams*, 223 A.D.2d 395, 637 N.Y.S.2d 36
(1st Dep't 1996)..................................................................................................................... 11

*Oasis Music, Inc. v. 900 U.S.A., Inc.*, 161 Misc.2d 627, 614 N.Y.S.2d 878
(N.Y. Co. 1994) ................................................................................................. 48, 52, 53, 54

*Oursler v. Women's Interart Ctr., Inc.*, 170 A.D.2d 407, 566 N.Y.S.2d 295
(1st Dep't 1991)..................................................................................................................... 22

*Paul v. Haley*, 183 A.D.2d 44, 53-54, 588 N.Y.S.2d 897, 903 (2d Dep't 1992) .......................... 52

*Sachs v. Cluett, Peabody & Co., Inc.*, 265 A.D. 497, 39 N.Y.S.2d 853
(1st Dep't 1943), *aff'd*, 291 N.Y. 772 (1944) .................................................................. 9, 10, 22

## Table of Authorities

**Page**

*Smith v. D.A. Schulte, Inc.*, 280 A.D. 913, 116 N.Y.S.2d 212 (1st Dep't 1952).......................... 35

*Sprewell v. NYP Holdings, Inc.*, 1 Misc.3d 847, 772 N.Y.S.2d 188
(Sup. Ct. N.Y. Co. 2003) ........................................................................................................... 35

*Surge Licensing, Inc. v. Copyright Promotions Ltd.*, 258 A.D.2d 257, 685 N.Y.S.2d 175
(1st Dep't 1999)........................................................................................................................... 32

*Vanguard Military Equipment Corp. v. Schulein*, 266 A.D. 912, 42 N.Y.S.2d 526
(1st Dep't 1943)........................................................................................................................... 35

*WIT Holding Corp. v. Klein*, 282 A.D.2d 527, 724 N.Y.S.2d 66 (2d Dep't 2001)....................... 24

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| VICTOR G. REILING ASSOCIATES and<br>DESIGN INNOVATION, INC., | : |
| | : |
| Plaintiffs | : |
| | : Civil No. 303CV222(JBA) |
| v. | : |
| | : February 23, 2006 |
| FISHER-PRICE, INC. | : |
| | : |
| Defendant. | : |
| | : |

**MEMORANDUM IN SUPPORT OF FISHER-PRICE'S**
**MOTION FOR JUDGMENT AS A MATTER OF LAW OR A NEW TRIAL**

**Preliminary Statement**

Fisher-Price, Inc. submits this memorandum in support of its renewed motion for

judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b). At trial, Fisher-

Price moved for judgment as a matter of law at the close of the case presented by Design

Innovation, Inc., and again at the close of all proof. Fisher-Price also joins a motion for a new

trial pursuant to Rule 59.

A court must grant a motion for judgment as a matter of law under Rule 50(b) of

the Federal Rules of Civil Procedure where "there is such an overwhelming amount of evidence

in favor of the movant that reasonable and fair minded men could not arrive at a verdict against

him."[1] More than a mere "metaphysical doubt as to the material facts" must exist to defeat a

---

[1]   *Hernandez v. Keane,* 341 F.3d 137, 144 (2d Cir. 2003). *See also Anderson v. Liberty Lobby, Inc.,* 477
U.S. 242, 250 (1985) (equating the standard for granting judgment as a matter of law under Rule 50 to the
standard for granting a Rule 56 motion and stating that "the trial judge must direct a verdict if, under the
governing law, there can be but one reasonable conclusion as to the verdict"); *Otero v. Housing Auth. of
the City of Bridgeport,* 263 F. Supp. 2d 440, 443 (D. Conn. 2003) (stating that judgment as a matter of law
is appropriate where "the evidence is such that, without weighing the credibility of the witnesses or

motion for judgment as a matter of law.[2]   The party opposing the Rule 50 motion must offer

"concrete evidence from which a reasonable juror could return a verdict in his favor."[3]

## Statement of Facts

Set forth below is a brief summary of the facts established by the testimony at

trial that are relevant to consideration of this motion.

Victor Reiling ("Reiling") became an independent toy inventor in the mid-1970s.

He has submitted several hundred ideas to toy companies on a speculative basis in the hope of

licensing the idea for a royalty. In the 1980s and 90s, he submitted over 180 toy ideas to Fisher-

Price. Reiling admitted at trial that *every one* of these ideas was submitted pursuant to Fisher-

Price's Policy & Agreement ("P&A") form or a similar form. (Tr. 102:4-8, 296:3-11). Reiling

signed *27* separate P&A forms over the years, and every one provided expressly that Fisher-Price

did not agree to hold inventor submissions in confidence and that no confidential relationship

would be established between the parties. (Tr. 287:8-19, DX 126-28, 740-58, 848-49, 919-21).

DI is an independent design firm which has in the past provided modeling and

design services to Fisher-Price on a work-for-hire basis. DI has also submitted toy ideas to

Fisher-Price on a speculative basis over the years. DI's president, Bruce Popek, testified that he

---

[2]   otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that
reasonable men could have reached").

[2]   *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, (1986).

[3]   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 256. *See also United States v. 77 East 3rd Street*, 869 F.
Supp. 1042, 1056 (S.D.N.Y. 1994). In addition, Fisher-Price is alternatively moving for a new trial under
Rule 59(a). A motion for a new trial may be granted where the jury's verdict is "against the weight of the
evidence." *Byrd v. Blue Ridge Rural Elec. Coop.*, 356 U.S. 525, 540 (1958). *See also Isley v. Motown
Record Corp.*, 69 F.R.D. 12, 16 (S.D.N.Y. 1975) ("[I]t is the duty of the trial judge to set aside a verdict
and grant a new trial if, in his opinion, the verdict is based upon evidence which is false or the verdict
results in a miscarriage of justice. The trial court is empowered to do this even though there may be
substantial evidence which would prevent the direction of a verdict.").

- 2 -

was aware of Fisher-Price's policy that inventors could submit ideas only by signing a P&A form. (Tr. 785:2-15, 786:21-25, 992:6-9 & 15-25). Popek further testified that he was aware of Fisher-Price's policy that inventor submissions are not treated as confidential, and that he knew about it throughout the 1990s. (Tr. 992:20-993:6, 994:16-995:25). He also admitted that DI was willing to continue to submit concepts on a non-confidential basis during the time period when the Reel Heroes submissions were taking place. (Tr. 996:1-20). In the 1990s, DI signed at least four Fisher-Price P&A or similar forms, all of which provided that inventor submissions would not be held in confidence and that no confidential relationship was established between Fisher-Price and the submitting inventor. *See* JX 201, 202, 203 & DX 837.

In 1995, DI and Reiling formed a relationship pursuant to which they collaborated on the development and submission of ideas to toy companies. (Tr. 780:8-781:10). In August 1998, Reiling and DI, working together, conceived the Reel Heroes concept which is the subject of this lawsuit. Both Reiling and DI testified that they described themselves as "partners" with respect to toy company submissions, that they developed the Reel Heroes concept jointly, that their joint goal was to license the concept to a toy company, and that they were co-owners of the concept. (Reiling: Tr. 150:9-15, 255:21-24, 267:19-23, 268:2-21, 283:15-284:1, 284:17-285:21; Popek: Tr. 966:12-15, 966:21-969:1, 971:11-19).

The Reel Heroes concept was submitted in three separate versions to Fisher-Price. The first version consisted of a battery-operated filmstrip unit showing a Rescue Heroes character on an adventure. The filmstrip unit was located inside a Rescue Heroes figure's backpack. The second version was submitted to Fisher-Price in May 1999 and modified the first version by replacing the filmstrip unit with a rotating drum showing pictures of a Rescue Heroes figure on an adventure. The third version was submitted to Fisher-Price in December 2000 and

- 3 -

modified the second version by replacing the rotating drum with a Viewmaster disc mechanism

showing film images of a Rescue Hero character on an adventure. (Tr. 365:20-366:2, 370:21-23,

DX 864 ¶¶ 23, 24).[4]

       The Reel Heroes concept was first disclosed to Fisher-Price in a meeting between

Victor Reiling and Fisher-Price's Vice President/Inventor Relations, Paul Snyder on October 29,

1998. Reiling does not recall anything substantive that was said at the meeting. (Tr. 336:9-

337:1). The Concept Disclosure Form Reiling filled out in connection with the disclosure (JX 2)

listed "Victor Reiling Associates" as the sole inventor of the Reel Heroes concept. (Tr. 287:7-

288:3). No witness testified that DI was disclosed as being involved with or a co-owner of the

Reel Heroes concept at the time of the first disclosure in 1998.

       As this Court ruled prior to trial, at the time Reiling disclosed the Reel Heroes

concept to Fisher-Price, he was bound by a Fisher-Price P&A form that he executed in 1994

which provided that any ideas he submitted to Fisher-Price would not be held in confidence and

which specifically disclaimed any confidential relationship. *See* JX 1. Reiling admitted at trial

that the submission of the Reel Heroes concept was "covered" by his 1994 P&A form. (Tr.

289:6-290:4).

---

[4]    DI also asserted a claim relating to a second aspect of the Reel Heroes concept — a design for a
cameraman Rescue Heroes action figure. DI claimed that Fisher-Price's "Telly Photo" Rescue Heroes
figure misappropriated the cameraman idea. The Telly Photo figure was based on an actual cameraman.
(Tr. 1937:23-1938:13, 2239:19-2240:12). Brian Manzolli (who is now employed at DI) was solely
responsible for the design of the Telly Photo figure in approximately 2002 when he was then a designer at
Fisher-Price. (Tr. 2228:20-2229:14). He incorporated the actual cameraman's physical features into Telly
Photo (Tr. 2239:19-2240:12, JX 109) and did not know about and did not rely on Reiling's cameraman
drawing in designing the figure. (Tr. 2246:20-2247:2). In addition, Reiling admitted that the idea of a
cameraman action figure was not new or novel in 1998. (Tr. 535:17-24). The jury's finding of
misappropriation as to the Telly Photo figure may be the most stark example of the jury ignoring both
undisputed evidence and DI's admissions in favor of unreasonable and speculative conclusions.

- 4 -

Popek testified that DI never had *any* contact with Fisher-Price relating to the disclosures of the Reel Heroes concept. (Tr. 940:1-941:10, 968:15-969:10, 1028:12-15, 1030:3-12). At the time the Reel Heroes concept was originally submitted to Fisher-Price, DI's sole relationship with Fisher-Price was its work-for-hire design work; the only contract in effect between the parties was the Design Services Agreement DI had in place with Fisher-Price. (Tr. 610:18-611:24). That agreement specifically provided that there was no confidential relationship between the parties and that anything DI submitted to Fisher-Price would be non-confidential. *See* JX 206 ¶ 10.3.

At trial, both Reiling and Popek testified unequivocally that Fisher-Price never used the features disclosed in any of the three versions of the Reel Heroes concept. They also both testified that the submissions failed to adequately communicate what they intended to be the scope of the Reel Heroes concept, contending that the three Reel Heroes submissions described only the prototype or individual alternative embodiments of the Reel Heroes concept, but failed to describe the concept itself. *See* Section III below and testimony cited therein. The Reiling and Popek testimony was clear that the Reel Heroes concept as DI defined it for purposes of the trial was never communicated to Fisher-Price. In fact, at trial, DI's witnesses testified to a number of different definitions of the Reel Heroes concept, none of which were communicated to Fisher-Price at any time before this litigation. *See* Section IV below and testimony cited therein.

DI's witnesses made several admissions reflecting that the Reel Heroes concept was not new or novel at the time it was submitted to Fisher-Price. These include admissions by Reiling and Popek that: (1) the first version of the Reel Heroes concept was nothing more than a combination of the pre-existing Fisher-Price Movie Viewer with a pre-existing Rescue Heroes

- 5 -

figure; (2) combining the Viewmaster-style disk mechanism from a 1994 Toy Biz Projector figure with a Rescue Heroes figure results in the Reel Heroes concept; and (3) combining the lenticular shield from a 1984 Mattel Secret Wars figure with a pre-existing Rescue Heroes figure results in the Reel Heroes concept. *See* Section V below and testimony cited therein.

Finally, DI asserted claims against certain line extension products (Rescue Heroes playsets and toy vehicles) which it admits do ***not*** incorporate or use the Reel Heroes concept. The sole basis for DI's claim against these products is that they were "sold with" Rescue Heroes figures that DI claims use the Reel Heroes concept. *See* Section II below and testimony cited therein.

<u>**Argument**</u>

Fisher-Price is entitled to judgment as a matter of law because: (1) the undisputed evidence at trial was that the Reel Heroes submission was not made to Fisher-Price on a confidential basis or in the context of a confidential relationship; (2) there was no factual or legal basis presented at trial for DI's claim for damages on "line extension" products; (3) DI offered no competent evidence showing that Fisher-Price "used" its Reel Heroes submissions and DI's own witnesses admitted that Fisher-Price did not; (4) the definition of the Reel Heroes concept DI argued to the jury was not concrete as a matter of law; and (5) DI offered no competent evidence showing that its submissions were absolutely novel and its witnesses admitted they were not.

- 6 -

I.    THE UNDISPUTED EVIDENCE AT TRIAL
       ESTABLISHED THAT THE REEL HEROES
       SUBMISSIONS WERE NOT DISCLOSED ON A
       CONFIDENTIAL BASIS OR IN THE CONTEXT
       OF A CONFIDENTIAL RELATIONSHIP

The Court instructed the jury that, to prevail on its misappropriation claim, DI

must show that the disclosure of the Reel Heroes concept was made "in the context of a

confidential relationship." The Court further instructed that "[a] confidential relationship can

only be found to exist where the recipient has demonstrated acceptance of the relationship." Jury

Instructions [Docket No. 238] at 25.

The uncontroverted evidence at trial established that the Reel Heroes concept was

disclosed to Fisher-Price by Victor Reiling on October 29, 1998 on a non-confidential basis, that

the disclosure to Fisher-Price was not made in the context of a confidential relationship, and that

Fisher-Price never accepted or assented to any confidential relationship with DI. To the

contrary, both DI's and Fisher-Price's witnesses testified that Fisher-Price had a long-standing

policy well-known to both DI and Reiling — that inventor submissions would not be treated as

confidential and disclaiming any confidential relationships. The evidence was clear that, far

from "accepting" the formation of any confidential relationship, Fisher-Price did everything

possible to negate it.

A.    To Support a Claim for Common Law Misappropriation,
       an Idea Must Be *Both* Secret *and* Disclosed in the
       Context of a Confidential Relationship

The Supreme Court has made clear that the general rule is that no legal protection

exists for unpatented ideas. State laws (whether based in statute or caselaw) that purport to

provide "patent-like" protection for ideas are generally invalid under the federal pre-emption

- 7 -

doctrine.[5] A limited exception has been established for ideas that are not publicly disclosed, but are disclosed only to persons obligated to maintain the ideas as confidential or secret.[6] This exception is narrow. It is not in the nature of a true property right in the idea (as a patent is); instead, it is a right to prohibit the use of a concrete idea: (1) that is truly a "secret" and not known by others, and (2) that was disclosed to the defendant "through a special confidence that he accepted." *E.I. DuPont de Nemours Powder Co. v. Masland*, 244 U.S. 100, 102 (1917). In other words, ownership of an idea is not a traditional property right; the law protects a truly secret idea against use only by those to whom the idea has been disclosed in confidence and who have accepted the confidential nature of the disclosure. No further protection may be provided by any state's common law without violating the principal that "patent-like" protection for unpatented ideas is barred by federal pre-emption. *Bonito Boats,* 489 U.S. at 981-86.

New York's common law of misappropriation has developed in harmony with these fundamental intellectual property law principles. Thus, a misappropriation plaintiff must prove that its idea or concept was disclosed to the defendant in a "confidential relationship."[7] The Court recognized this when it instructed the jury that "Design Innovation must prove that it submitted its concept to Fisher-Price in the context of a confidential relationship." Jury

---

[5]  *Bonito Boats, Inc. v. Thunder Craft Boats,* 489 U.S. 141, 154-55 (1989) (state law may not protect ideas that have been disclosed on a non-confidential basis or that have entered the public domain; any such protection is pre-empted by the patent laws); *Sears, Roebuck & Co. v. Stiffel Co.,* 376 U.S. 225, 231 (1964) (publicly disclosed ideas could not be protected from use by state unfair competition laws); *Compco Corp. v. Day-Brite Lighting, Inc.,* 376 U.S. 234, 237 (1964) (same).

[6]  *Kewanee Oil Co. v. Bicron Corp.,* 416 U.S. 470, 489-90 (1974); *Painton & Co. v. Bourns, Inc.,* 442 F.2d 216, 223-24 (2d Cir. 1971).

[7]  *M.H. Segan Ltd. P'ship v. Hasbro, Inc.,* 924 F. Supp. 512, 526 (S.D.N.Y. 1996); *McGhan v. Ebersol,* 608 F. Supp. 277, 284 (S.D.N.Y. 1985); *see also Ball v. Hershey Foods Corp.,* 842 F. Supp. 44, 47 (D. Conn.), *aff'd,* 14 F.3d 591 (2d Cir. 1993).

- 8 -

Instructions at 25. The idea itself must also be "secret"; that is, not generally known.[8] Were

New York law to require otherwise it would run afoul of the Supreme Court's clear precedent on

pre-emption by creating "patent-like protection" for information in the public domain. That is

why, to be a legally cognizable claim, DI had to prove that the Reel Heroes idea was **both** secret

and disclosed in a confidential relationship.

At trial, DI offered no evidence of either element necessary to protect its Reel

Heroes concept. It did not show that the idea was truly "secret" when allegedly used by Fisher-

Price — because the undisputed evidence is that the idea had been disclosed to Fisher-Price on a

non-confidential basis by Victor Reiling. In addition, it did not show that the idea was disclosed

to Fisher-Price in the context of a confidential relationship which Fisher-Price had accepted —

there was no evidence that DI either requested or sought to establish a confidential relationship

or that Fisher-Price ever accepted such a relationship. These issues are discussed below.

## B.    The Reel Heroes Concept Was Not a "Secret" Because It Had Been Disclosed on a Non-Confidential Basis

As discussed above, even if DI established a confidential relationship with Fisher-

Price (which it did not), no misappropriation claim can be brought if the concept was disclosed

on a non-confidential basis. This is because only confidential, secret ideas are protectable.[9]

---

[8]    *Sachs v. Cluett, Peabody & Co., Inc.*, 265 A.D. 497, 500-01, 39 N.Y.S.2d 853, 856-57 (1st Dep't 1943), *aff'd*, 291 N.Y. 772 (1944) (An inventor's secret "is valuable only because of its being a secret, and only so long as he keeps it secret. * * * Once the trade secret has 'escaped,' unlike most things termed property, it cannot effectively be reduced to possession" and thus its value as property is destroyed); *Lemelson v. Carolina Enters., Inc.*, 541 F.Supp. 645, 659 (S.D.N.Y. 1982) ("The property in a secret process is the power to make use of it to the exclusion of the world. If the world knows the process, then the property disappears.") (citing *Sachs*, 265 A.D. at 501, 39 N.Y.S.2d at 857); *M & T Chems., Inc. v. Int'l Bus. Machs. Corp. (IBM)*, 403 F.Supp. 1145, 1148 (S.D.N.Y. 1975), *aff'd*, 542 F.2d 1165 (2d Cir. 1976) ("disclosure of a trade secret totally destroys it").

[9]    In *Bristol v. Equitable Life Assurance Soc.*, 132 N.Y. 264, 267 (1892), the plaintiff voluntarily disclosed the secret to the defendant in order to make a sale, and the defendant accepted no obligation not to use that

The record at trial was undisputed that Reiling disclosed the concept to

Fisher-Price on October 29, 1998 on a non-confidential basis, pursuant to the December 15, 1994

Policy and Agreement ("P&A") form. *See* JX 1 ¶ 1 ("the material [submitted by the inventor] is

not to be considered submitted 'in confidence'"). *See also* Ruling on Plaintiff's and Defendant's

Motions for Reconsideration, dated January 10, 2006 [Docket No. 189] (the "1/10/06 Ruling") at

8 (acknowledging "the enforceability of the confidential relationship disclaimer in Reiling's

1994 P&A").[10] The testimony at trial confirmed that the Reel Heroes concept was disclosed by

Reiling on a non-confidential basis.

- Reiling admitted that his disclosure of the Reel Heroes concept to Fisher-Price was "covered" by the 1994 P&A (with its acknowledgement of non-confidentiality and its disclaimer of any confidential relationship). (Tr. 289:6-23, 292:9-18).

- Reiling admitted at trial that he had disclosed over 100 concepts to Fisher-Price in the 80s and 90s — *all* on a non-confidential basis. (Tr. 302:24-307:15, 316:12-24).

- Reiling admitted that he knew that Fisher-Price's policy was that concept submissions would not be treated as confidential and that all of his

secret to its own advantage. The Court held "Without denying that there may be property in an idea, or trade secret or system, it is obvious that its originator or proprietor must himself protect it from escape or disclosure. If it cannot be sold or negotiated or used without a disclosure, it would seem proper that some contract should guard or regulate the disclosure, otherwise it must follow the law of ideas and become the acquisition of whoever receives it." *See also Larkin v. Pennsylvania R.R. Co.*, 125 Misc. 238, 240, 210 N.Y.S. 374, 376 (Sup. Ct. N.Y. Co. 1925) ("[A] party who took part in a negotiation and gives information to another party has no cause of action for the value of such information."); *Sachs v. Cluett, Peabody & Co., Inc.*, 265 A.D. 497, 500-01, 39 N.Y.S.2d 853, 856-57 (1st Dep't 1943), *aff'd*, 291 N.Y. 772 (1944) (An inventor's secret "is valuable only because of its being a secret, and only so long as he keeps it secret. * * * Once the trade secret has 'escaped,' unlike most things termed property, it cannot effectively be reduced to possession" and thus its value as property is destroyed); *Lemelson*, 541 F.Supp. at 659 ("The property in a secret process is the power to make use of it to the exclusion of the world. If the world knows the process, then the property disappears."); *M & T Chems. Inc.*, 403 F.Supp. at 1148 ("disclosure of a trade secret totally destroys it").

[10]    Although these were three separate Reel Heroes submissions (one in October 1998, one in May 1999, and one in December 2000), all of DI's witnesses testified that all three submissions were embodiments of the same concept. (Tr. 370:14-16, 1039:3-12, 1539:9-13). Thus, the disclosure of the *concept* that is the subject of DI's misappropriation claim occurred in October 1998, at the time of the first submission. The later two submissions were simply variations of the first. The Reel Heroes concept was disclosed to Fisher-Price at the October 29, 1998 meeting between Reiling and Popek. (Tr. 287:22-288:3).

submissions to Fisher-Price were disclosed on this basis. (Tr. 302:8-307:15, 312:8-19, 316:3-24, 611:7-24).

•    Reiling admitted that he disclosed the concept to Fisher-Price on behalf of himself and DI and that DI had authorized him to disclose the concept to Fisher-Price. (Tr. 284:17-286:7). Popek also testified that Reiling was authorized to disclose the concept to Fisher-Price. (Tr. 968:15-969:10, 982:21-984:2).

In denying Fisher-Price's motion to reconsider, the Court ruled that the 12/15/94 P&A (JX 1) signed by Reiling was in the nature of a "release" pursuant to which Reiling personally released any claims based on a confidential relationship; the Court ruled that it was not clear that such a release extended to DI. *See* 1/10/06 Ruling at 5. Fisher-Price agrees that certain language in the P&A is a release[11]; other language is not. The language in paragraph 1 of the P&A that "material [provided by inventors to Fisher-Price] shall not be considered submitted in confidence" is not a release; it is an express acknowledgment that materials reflecting inventor submissions are disclosed on a non-confidential basis.[12] Fisher-Price was entitled to include *both* a release *and* an acknowledgement of non-confidentiality in its P&A form — and that is what it did in paragraphs 1 and 3. The acknowledgment of a non-confidential relationship and that inventor submissions are not made "in confidence" is clear and unambiguous and means what it says. It establishes that the Reel Heroes concept was disclosed to Fisher-Price by Reiling on a non-confidential basis, with the result that any rights to utilize the general concept or idea — whether owned by Reiling or DI — were lost as a matter of law.

---

[11]    *See, e.g.,* JX 1 ¶ 3 (which expressly provides that Fisher-Price is "released from any liability in connection with the receipt and examination of your disclosure. . . .").

[12]    To construe the acknowledgement of non-confidentiality as a release would render it duplicative of the language disclaiming a confidential relationship in paragraph 1 and the express release in paragraph 3 of the P&A. This would violate the well-established canon of contract interpretation that contractual language should not be construed to be duplicative or "mere surplusage." *See National Union Fire Ins. Co. v. Williams,* 223 A.D.2d 395, 397, 637 N.Y.S.2d 36, 38 (1st Dep't 1996) (an interpretation that renders certain clauses "mere surplusage" is "a result that offends a fundamental principal of contract interpretation").

- 11 -

It is important to note that the issue here is **not** whether DI was bound by Reiling's 1994 P&A form. Instead, the issue is whether Reiling disclosed the concept on a non-confidential basis to Fisher-Price. To answer this question, it is irrelevant whether DI was bound by the 1994 P&A or whether it authorized the disclosure. The non-confidential disclosure of an idea by a party other than the owner operates to destroy the protectability of the idea just as effectively as disclosure by the owner. [13]   Here, the non-confidential disclosure of the Reel Heroes concept was made by Reiling — who DI admits is a 50 percent co-owner of the concept and who was **expressly authorized to disclose it to Fisher-Price by DI**.[14]   In these circumstances, there can be no dispute that Reiling's non-confidential disclosure destroyed any protectable interest in the concept.

Finally, in denying Fisher-Price's motion to reconsider, the Court ruled that: "[w]hether or not DI will be able to prove that a confidential relationship was established between itself and Fisher-Price is left for the forthcoming trial. . . ." 1/10/06 Ruling at 8. However, DI never addressed (either in pretrial motion practice or at trial) the central question to be answered: What **was** the status of the Reel Heroes submission after the October 29, 1998 meeting between Victor Reiling and Paul Snyder; *i.e.*, does DI deny that the submission had been

---

[13]   For example, no one would dispute that, if Fisher-Price wrongfully disclosed the Reel Heroes concept to the public in its accused Rescue Heroes figures (which it did not), then the concept has now entered the public domain and any other toy company can use it without fear of liability to DI for misappropriation. This results from the rule discussed in *Sachs* that once "a trade secret has escaped," its value is destroyed — regardless of how it escapes or who discloses it. In the analogous area of patent law, the Federal Circuit has made clear that it would. In *Eolas Techs., Inc. v. Microsoft Corp.,* 399 F.3d 1325, 1334 (Fed. Cir. 2005), the Federal Circuit ruled that a single demonstration of a software invention — **by a third party inventor** (not the inventor of the patent-in-suit) — was a sufficient disclosure to bar patentability of the invention, where the demonstration was made without a confidentiality agreement.

[14]   Popek testified that "Mr. Reiling represented both himself and Design Innovation . . . in dealing with Fisher-Price about the Reel Heroes concept," that "Design Innovation authorized [Reiling] to disclose it and discuss it with Fisher-Price," and that "Design Innovation also authorized Mr. Reiling to receive and react to feedback from Fisher-Price." (Tr. 968:15-969:10).

disclosed by Reiling to Fisher-Price on a non-confidential basis?  The evidence at trial is

undisputed that it was disclosed non-confidentially.  Reiling testified that he disclosed the Reel

Heroes submission to Fisher-Price pursuant to the 1994 P&A (Tr. 289:6-290:4, 316:3-24,

603:17-605:14).[15]  Popek admitted that he has no information about the circumstances of the

disclosure of the submission on October 29, 1998.  (Tr. 940:4-941:10).  DI had no contact with

Fisher-Price regarding the disclosure of the submission and had no evidence to offer on that

subject.  As a result, it clearly failed to sustain its burden of establishing that the Reel Heroes

concept was disclosed to Fisher-Price on a confidential basis.  This requires a determination as a

matter of law that there were no protectable rights in the Reel Heroes concept thereafter which

could form the basis for a misappropriation claim.

## C.    DI Did Not Disclose the Reel Heroes Concept In the Context of a Confidential Relationship With Fisher-Price

As the Court recognized in its jury instructions, in addition to showing that the

Reel Heroes concept was submitted on a confidential basis, DI had the burden of establishing

that the concept was submitted to Fisher-Price in the context of a confidential relationship.  To

satisfy this requirement, DI must show three things:  (1) that *it* disclosed the concept to Fisher-

Price *in the context of* DI's alleged confidential relationship with Fisher-Price; (2) that DI

objectively communicated its request for or expectation of a confidential relationship to Fisher-

Price; and (3) that Fisher-Price accepted the confidential relationship.  Jury Instructions at 25.

---

[15]    Reiling also testified that, even during the time when the Reel Heroes submissions were ongoing (between the second and third submissions), he was "still willing to make submissions to Fisher-Price under agreements that provided that the submission was not made in confidence." (Tr. 611:16-24).

- 13 -

1.   **DI did not disclose the Reel Heroes concept to Fisher-Price *in the context of* its alleged confidential relationship with Fisher-Price.**

As far as Fisher-Price can determine, DI did not even argue that it satisfied the first requirement for establishing a confidential relationship. DI does not claim to have disclosed the concept to Fisher-Price; Reiling did. (*See* Tr. 284:17-288:3, 940:4-941:10, 968:15-969:10; 982:21-983:3). Moreover, DI denies that Reiling made the disclosure acting as DI's agent or partner. *See, e.g.,* Plaintiff's Objections to Defendant's Proposed Preliminary and Final Substantive Jury Instructions [Docket No. 184] at 12-13. Thus, the record establishes that the disclosure to Fisher-Price was not made by DI — either directly or indirectly — and it therefore could have no claim for misappropriation against Fisher-Price.

Moreover, there is not a shred of evidence in the record that demonstrates any kind of confidential relationship between DI and Fisher-Price. In fact, testimony *offered by DI* established that the disclosure of the Reel Heroes concept was not made "in the context of" *any* relationship between DI and Fisher-Price — and certainly not a confidential one. DI's president, Bruce Popek admitted that DI never had any contact with Fisher-Price regarding the Reel Heroes concept. (Tr. 940:1-941:10, 968:15-969:10, 1028:12-15, 1030:3-12). Thus, whatever "relationship" DI may have had with Fisher-Price, the Reel Heroes concept was simply not submitted "in the context" of that relationship.[16]

Instead, the record establishes that the Reel Heroes concept was disclosed to Fisher-Price "in the context of" *Reiling's* non-confidential relationship with Fisher-Price. No

---

[16]    In fact, the evidence at trial was that the only relationship in existence between DI and Fisher-Price in October 1998 was DI's work-for-hire pursuant to the Design Services Agreement (JX 206), which provides that no information received from DI shall be treated as confidential and which disclaims any confidential relationship (at ¶ 10.3). (Tr. 961:5-963:4).

- 14 -

witness testified that anyone ever communicated to Fisher-Price that DI had any involvement with the Reel Heroes concept in the timeframe of the October 1998 submission. Thus, the record is uncontroverted that the Reel Heroes concept was not submitted to Fisher-Price in the context of a confidential relationship between DI and Fisher-Price.

### 2.    DI introduced no evidence that it ever communicated a request for a confidential relationship with Fisher-Price.

This Court instructed the jury that "subjective expectations of one party that are not communicated to" the other party cannot support a claim of a confidential relationship. Jury Instructions at 25. Instead, the plaintiff must have objectively communicated its expectation of or request for a confidential relationship to the defendant such that an objective third party would have understood it.[17]

Given that DI had no contact with Fisher-Price relating to the disclosure of the Reel Heroes submissions, there can be no dispute that it took no action to establish a confidential relationship with respect to those submissions. That DI never established a confidential relationship with Fisher-Price relating to any submission is shown by the testimony of Popek and Benedetto (discussed in section I.C.3. below) that DI's regular method of submitting concepts to Fisher-Price was pursuant to Fisher-Price's P&A form, which disclaims any confidential relationship. (*See also* Tr. 786:21-25, 983:4-23, 992:6-993:6).

---

[17]    *See, e.g., Calvin Klein Trademark Trust v. Wachner*, 123 F. Supp. 2d 731, 734 (S.D.N.Y. 2000) ("Under New York law, . . . allegations of subjective intent [cannot] substitute for an absence of objective manifestation of fiduciary obligation in the contracts in question."); *Maxon Premix Burner Co. v. Eclipse Fuel Eng'g Co.*, 1971 U.S. Dist. LEXIS 12564, at *16 (N.D. Ill. 1971) ("[A] confidential relationship cannot be established by a unilateral act of submission with a gratuitous statement of submission on such basis").