ideas preclude the inference that the defendant used the plaintiff's idea."[42] As set forth below, DI admits that Fisher-Price did not use the Reel Heroes concept as submitted, and instead, alleges that Fisher-Price somehow managed to misappropriate something Reiling and DI never communicated to it.

### A. Only the Reel Heroes Concept As Submitted to Fisher-Price Is Relevant for Determining Use

As determined by the Court, only the concept *as actually shown and communicated* to Fisher-Price may be considered in determining whether substantial similarity exists between the Reel Heroes concept and the accused Fisher-Price Rescue Heroes figures. The Court ruled, in response to Fisher-Price's motion in limine no. 2, that evidence of how Reiling or DI **interpreted** the Reel Heroes concept, or what they **intended** it to cover, was not relevant. Whether Fisher-Price "used" the concept could not be measured by comparison to Reiling's or DI's subjective, uncommunicated intent as to the definition or scope of the concept, but only by comparison to the actual documents and materials submitted.[43] In this case, the

---

[42]  *See Ball v. Hershey Foods Corp.*, 842 F. Supp. 44, 47 (D. Conn. 1993), *aff'd*, 14 F.3d 591 (2d Cir. 1993) (granting summary judgment to defendant where "the differences between the two ideas preclude the inference that the defendant used the plaintiff's ideas"); *Ed Graham Prods., Inc. v. Nat'l Broad. Co.*, 75 Misc.2d 334, 347 N.Y.S.2d 766, 768 (S. Ct. N.Y. Co. 1973) (granting summary judgment where defendant's cartoon series was "not essentially similar" to plaintiff's idea). *See also Stratienko v. Cordis Corp.*, 429 F.3d 592, 601-02 (6th Cir. 2005) (granting summary judgment to defendant where plaintiff failed to present "sufficient circumstantial evidence of similarity to withstand summary judgment. [Plaintiff's] evidence does not reveal which novel features [defendant's] device shares with [plaintiff's] device."); *Selmon v. Hasbro Bradley, Inc.*, 669 F.Supp. 1267, 1272-73 (S.D.N.Y. 1987) (rejecting plaintiffs' claim of substantial similarity because their characters, contents of storyline, and artistic renditions were not similar to the actual products).

[43]  The Court considered whether the uncommunicated interpretation of the concept submission could be offered in the context of Fisher-Price's motion in limine #2 [Docket No. 181]. In discussions at the final pretrial conference, the Court denied the motion as moot having determined from counsel's colloquy that: (1) "[t]he things that Mr. Reiling has said he never conveyed he's not going to testify about …" (Transcript of January 4, 2006 Pretrial Conference at 103); and (2) "the parties are agreed that Reiling won't be offered to testify on his subjective, uncommunicated interpretation of his concept submission" (Transcript of January 4, 2006 Pretrial Conference at 106). The Court's ruling was memorialized in the Pre-Trial Endorsement Order [Docket No. 195] at 3.b.

communication of the concept to Fisher-Price was limited to the prototype, drawings, and written descriptions submitted by Reiling, because Reiling admitted that he did not recall any substantive oral communications with Fisher-Price concerning the submission. (Tr. 331:21-332:15). Thus, a finding of a misappropriated use is properly determined solely by comparing the similarities and differences between Fisher-Price's accused products and the prototype, drawings, and written descriptions submitted by Reiling.

### B. Fisher-Price Did Not Use The Reel Heroes Concept As Submitted

Reiling and Design Innovation admitted that what was actually communicated to Fisher-Price as the Reel Heroes concept was never used by Fisher-Price. None of the contents of the first submission of the Reel Heroes concept, or the second and third revisions, were incorporated into any Fisher-Price product.

**The First Submission of the Reel Heroes Concept.** On October 29, 1998, Reiling disclosed the Reel Heroes concept to Fisher-Price at a meeting where he presented a Concept Submission Form describing the Reel Heroes concept (JX 2). At the same meeting, Reiling presented the prototype demonstrating the Reel Heroes concept (JX 7). Reiling then sent in to Fisher-Price a narrative description (JX 3) and three drawings (JX 4, 5, and 6). The first version consisted of a battery-operated film strip in a backpack. The film strip, which depicted a Rescue Hero on an adventure or in action, was viewed through a magnifying lens or could be projected out of a toy truck. (JX 2, 3, 7).

Reiling and Popek admitted that Fisher-Price did not use the Reel Heroes concept as shown or communicated in the first submission:

- Reiling admitted that Fisher-Price did not include what is shown in the prototype in any of its products. (Tr. 341:18-21).

- Reiling admitted that Fisher-Price never included a film strip in any of its products. (Tr. 348:11-18; *see also* Tr. 357:15-20, Tr. 330:16-331:8).

- Reiling admitted that Fisher-Price did not use anything in the first submission drawing. (Tr. 344:18-21).

- Reiling admitted that Fisher-Price did not use the first submission (which he described as the "Cadillac" version of the Reel Heroes concept). (Tr. 365:20-366:2).

- Reiling admitted that none of the accused figures showed an action figure on an adventure. (Tr. 388:1-19; *see also* Tr. 387:22-25).

- Reiling admitted that "no Fisher-Price Rescue Hero . . . includes magnifying lenses or projection." (Tr. 388:20-24; *see also* Tr. 386:12-21).

- Popek admitted that Fisher-Price "never made a backpack with a filmstrip in it." (Tr. 1026:2-13; JX 4; *see also* Tr. 1025:18-21, Tr. 1035:20-1036:2).

- Popek admitted that Fisher-Price did not use the design shown or described in: (1) the prototype (JX 7); (2) the first submission drawing (JX 4); or (3) the first submission narrative (JX 3). (Tr. 1036:3-1037:3)

- Popek admitted that no Rescue Hero figure incorporates images of a Rescue Hero character in action or on an adventure. (Tr. 1053:8-1055:5).

**The Second Version.** The second version of the Reel Heroes concept was submitted to Fisher-Price by Reiling in May 1999 and consisted of a drawing (JX 14) and a narrative description (JX 13). The second version incorporated still images on a drum inside a Rescue Heroes backpack. (Tr. 367:21 - 368:23). The images were advanced with a hand crank and viewed through a magnifying lens. The images depicted the Rescue Hero figure on an adventure. (Tr. 366:12-17). The second version was described as a less expensive version of the Reel Heroes concept. (Tr. 365:20 - 366:2, DX 864 ¶ 23).

Reiling and Popek admitted that Fisher-Price did not use anything shown or communicated in the second version:

- Reiling unequivocally admitted that Fisher-Price never included the "less expensive" second submission in any of its products. (Tr. 365:20-366:2; *see also* Tr. 368:24-369:2).
- Reiling admitted that "no Fisher-Price Rescue Hero . . . includes magnifying lenses or projection." (Tr. 388:20-24; *see also* Tr. 386:12-21).
- Popek admitted that "[n]o Fisher-Price product used an image on a reel or drum" as depicted in the second submission drawing. (Tr. 1038:19-23).
- Popek admitted that no Fisher-Price product used, as described in the second version narrative, "a viewer that presents a magnified image . . . and with the capability of showing eight or more scenes that are particularly appropriate to individual heroes." (Tr. 1039:16-24).

**The Third Version**. The third version of the Reel Heroes concept consisted of three drawings (JX 16, 17, 18) and a narrative description (JX 15). Reiling also resubmitted to Fisher-Price the materials from the two previous versions of the concept. (Tr. 370:6-13). The third submission incorporated a Viewmaster disc inside a Rescue Heroes backpack, with images that were viewed with one eye through a magnifying lens or projected out of a toy laptop computer or handheld camera. The images showed a Rescue Heroes character on an adventure. (Tr. 385:7-11). The third version was a simpler and less expensive version of the Reel Heroes concept. (Tr. 370:21-23, DX 864 ¶ 24).

Reiling and Popek admitted that Fisher-Price did not use anything from the third version:

- Reiling admitted that no Fisher-Price product used a Viewmaster mechanism or showed a Rescue Heroes character on an adventure. (Tr. 384:20-386:21).
- Reiling admitted that the Mission Select figures do not include a transparent Viewmaster disc. (Tr. 387:17-21).
- Popek admitted that no Fisher-Price Rescue Heroes product makes use of a Viewmaster type disc. (Tr. 1045:19-23).
- Reiling admitted that "no Fisher-Price Rescue Hero . . . includes magnifying lenses or projection." (Tr. 388:20-24; *see also* Tr. 386:12-21).

As communicated to Fisher-Price in the three submissions,[44] the Reel Heroes concept included the following essential elements:

(1) an action figure with a filmstrip unit, rotating drum, or Viewmaster mechanism (Tr. 361:12-19, 368:4-13, 372:13-373:4, 384:25-385:11, 1042:2-16)

(2) which displays a series of sequential images (Tr. 367:21-368:8; 368:21-23)

(3) that are viewed through a magnifying lens or by projection (Tr. 362:3-8; 367:11-14, 370:24-371:12, 382:18-383:14, 385:12-16, 1010:5-9, 1038:14-18, 1046:13-17, 1069:14:21)

(4) showing the action figure on an adventure (Tr. 361:23-362:2, 366:3-367:4, 1006:21-1007:2).

Reiling testified that these elements comprise what was shown to Fisher-Price. (Tr. 361:12-362:8; 384:20-386:21).

Design Innovation does not disagree that this defines the concept *as submitted* to Fisher-Price.[45] The parties further expressly agreed in the definition of the concept in the Option Agreement that "the unique aspect *of the concept* is the combination of existing action figures with film for play pattern." (JX 10, Tr. 835:7-16 (emphasis added)). Popek admitted that Fisher-Price did not use the Reel Heroes concept as described in the Option Agreement. (Tr. 1037:4-8).

---

[44] Design Innovation agreed that the materials submitted to Fisher-Price, together with the Option Agreement, define the Reel Heroes concept. As its counsel noted during closing argument: "It's in the documents, it's in the Option Agreement, it's in the submission, it's in the evidence." (Tr. 2627:7-10).

[45] A witness in Design Innovation's own case agreed with this description of the concept. Paul Snyder, then-Vice President of Inventor Relations at Fisher-Price, testified that he believed what was being presented was "a film of the activity . . . If it's a fireman, maybe a film of firefighting or something like that." Tr. 690:21-691:1.

Both Popek and Reiling testified that they had read the concept description in the Option Agreement, and both acknowledged that the "Description" in the Option Agreement was a description *of the concept* (Tr. 354:17-355:6, 1031:22-25). DI had even requested that changes be made to the description to ensure its accuracy. (Tr. 153:9-154:5, 1031:22-1023:9). Popek stated that he was satisfied with the description of the concept in the Option Agreement once the "small changes" requested by DI were made. (Tr. 1033:7-10).

Finally, DI defined the Reel Heroes concept in all three of its complaints as follows:

> Plaintiffs' basic concept was to integrate Fisher-Price's successful "Rescue Heroes" figures and cartoon-like images by using a removable backpack that could be made for a specific character. It was designed to mount to each "Rescue Heroes" figure and show animated images of that character in action. For example, a firefighter would be shown putting out a fire or rescuing a child from a building. The animated images enrich the role-playing that a child often enjoys when using toy action figures. The backpack is a battery-operated firm strip/disc player with a viewer. By looking through the small viewer and pressing a button, the child could see the "countless RESCUE HERO adventures."
> JX 209 ¶ 30A; DX 863 ¶ 30A; DX 864 ¶ 30A.

This description of the concept — which was maintained *in every version* of the plaintiffs' complaint — constitutes a judicial admission to which DI is bound in this case.[46] Additionally, in all three versions of its complaint, DI alleged that its concept was adding an

---

[46] *See Estate of Genecin v. Genecin*, 363 F. Supp. 2d 306, 326 (D. Conn. 2005) (holding plaintiff to an allegation made in his complaint as a binding judicial admission and rejecting his later-developed, alternate interpretation of the meaning of beneficiary designation documents); *Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F. 2d 523, 528 (2d Cir. 1985) (holding that district court "properly disregarded . . . affidavits seeking to controvert [a party's] own pleading" because "[a] party's assertion of fact in a pleading is a judicial admission by which it normally is bound through the course of the proceedings."). *See also Soo Line R.R. Co. v. St. Louis Southwestern R.R. Co.*, 125 F.3d 481, 483 (7th Cir. 1997) ("A plaintiff can plead himself out of court by alleging facts which show that he has no claim, even though he was not required to allege those facts . . . and although the rule smacks of legalism, judicial efficiency demands that a party not be allowed to controvert what it has already unequivocally told a court by the most formal and considered means possible.").

"animation reel component" to the Rescue Heroes — "an interchangeable battery-operated image player ... in the form of a backpack [that] allowed children to view animated images through a viewer."[47] **Popek admitted that Fisher-Price did not use the Reel Heroes concept as described in their three complaints.** (Tr. 1053:8-1055:11). This concession — that Fisher-Price never used the Reel Heroes concept as DI defined and described it in its three complaints — is a dispositive admission that requires judgment in favor of Fisher-Price on the issue of use as a matter of law.

### C. Popek and Reiling Argued That The Descriptions of The Reel Heroes Concept Communicated to Fisher-Price Were "Wrong" and Admitted That What They Consider The Concept Was Never Communicated

Despite the clarity of the submission materials and the description set forth in the Option Agreement, in their trial testimony Reiling and Popek disavowed the descriptions they had previously agreed to. DI and Reiling repeatedly argued and testified that the submission materials did not accurately describe the concept, but were actually only descriptions of one possible "embodiment" of the concept or the prototype itself and that the submitted materials were too narrow to encompass the allegedly broad scope of the Reel Heroes concept.[48]

Reiling, for example, testified that the description of the concept he wrote on the Fisher-Price Concept Submission Form was not a "careful description," as the instructions

---

[47] DX 864 ¶ 2. The two subsequent revisions were designed to "simplify the image player" and to "simplify the film player." DX 864 ¶ 23, 24.

[48] For example, Reiling testified that the drawing that accompanied the first submission (JX 4) depicted "the embodiment of the concept." (Tr. 342:24-347:6). He also testified that the first submission narrative (JX 3) was an "additional description of the concept and the embodiment of the concept." (Tr. 346:24-347:6).

require. (Tr. 325:5-10, JX 2).[49] Reiling testified that "it was the embodiment I was disclosing" on Fisher-Price's Concept Submission Form. (Tr. 331:14-15). Reiling also testified that the Option Agreement description does not describe the Reel Heroes concept (despite what the Option Agreement plainly indicates) but rather describes the "embodiment" or prototype of the Reel Heroes concept. (Tr. 357:21-358:9; 356:1-13). Reiling stated that, "*in my mind*, I knew [the concept] went further than that." (Tr. 358:17-22 (emphasis added)). This amounts to Reiling's subjective, uncommunicated intent as to definition of concept.[50] Popek also testified that the Option Agreement description of the concept was "a description not necessarily of the concept that was submitted but more of the mechanism." (Tr. 834:16-18). Neither Reiling nor DI did anything to correct this alleged defect in the description of the concept in the Option Agreement (despite having other changes accepted by Fisher-Price). Reiling conceded that "the *mistake* would be mine for not changing that." (Tr. 356:1-13 (emphasis added)).[51] Popek also admitted that DI "could have" asked for a change to the description of the concept, but DI declined to ask for any additional changes. (Tr. 1033:19-22).

Thus, DI and Reiling both admitted throughout their testimony that: (1) the materials submitted to Fisher-Price did not accurately reflect or communicate what they consider

---

[49] Reiling acknowledged that Fisher-Price asked for a "careful description" of the concept. (Tr. 326: 9-13). Reiling testified that, even though Fisher-Price asked him to describe his *concept*, he had "a penchant for describing the embodiment of a concept maybe a bit more than the concept." (Tr. 323:5-9). Reiling also acknowledged that the definition of the Reel Heroes concept on Fisher-Price's Concept Submission Form (JX 2) consisted of words he chose and that no one else gave him those words. (Tr. 332:16-25).

[50] The concept definition as it existed in Reiling's mind is wholly irrelevant. As the Court held, "the parties are agreed that Reiling won't be offered to testify on his subjective, uncommunicated interpretation of his concept submission." (Transcript of January 4, 2006 Pretrial Conference at 106).

[51] Reiling also testified that the Option Agreement described "the embodiment of the concept . . . Other things could have been added to it if we needed to further clarify it. I thought it was sufficient to clarify what we were doing at that time." (Tr. 358:5-9). Notably, Reiling testified at his deposition that the description contained in the Option Agreement "certainly covered the Reel Heroes concept as presented to Paul Snyder." (Tr. 360:2-8).

to be the Reel Heroes concept; and (2) Fisher-Price never used what *was* communicated to it as being the Reel Heroes concept. Caselaw is clear that use is determined by reference to the concrete materials submitted, not by reference to the inventor's subjective intent as to what he later *wishes* he had communicated.[52] Because DI has admitted that Fisher-Price did not use anything in the prototype, drawings, or written descriptions that were actually submitted, and he did not use the Reel Heroes concept as defined in DI's judicial admissions in its three complaints, judgment that Fisher-Price did not use the Reel Heroes concept must be granted as a matter of law.

### D. DI Cannot Rely on Its Uncommunicated Definition of the Reel Heroes Concept

Faced with the plainly-observable fact that Fisher-Price never used any of the actual submissions to Fisher-Price, DI set out to recast the Reel Heroes concept in amorphous terms which would avoid the overwhelming dissimilarities with Fisher-Price's Rescue Heroes figures. Throughout the course of the litigation, up to and including trial, DI, former plaintiff Reiling, and their attorney-expert James Kipling, continued to reformulate the concept definition in order to eliminate the specific features of the concept as submitted and to minimize the dissimilarities between the Fisher-Price products and the alleged Reel Heroes concept.

For example, Popek testified that:

"the concept that was presented to Fisher-Price in all three of our
submissions was an image on the backpack of Rescue Heroes that
was interchangeable or changeable, and those images would
enhance the role play for the child by showing pictures of

---

[52]  *See Selmon*, 669 F. Supp. at 1273 ("[T]he artistic renditions speak for themselves. It often has been said that 'a picture is worth a thousand words,' and we attach copies of drawings depicting [the respective] characters. We will not belabor the obvious. Suffice it to say that we find no artistic similarities between the works.").

- 46 -

> missions, disasters, obstacles, things they would come across."
> (Tr. 848:23-849:5).

Popek admitted that DI never showed to Fisher-Price any drawing depicting images on a backpack and that DI had "never shown images on a backpack" to Fisher-Price. (Tr. 1011:15-18, 1047:12-23).[53] Popek further admitted that Design Innovation "came up with that exact language . . . as part of this trial." (Tr. 1048:20-22). The definition presented at trial ***"was never communicated to Fisher-Price in those terms."*** (Tr. 1049:15-18 (emphasis added)). And certainly, Popek did not communicate this definition as he (or anyone else from DI) never had any contact with Fisher-Price about the Reel Heroes concept. (Tr. 9410:1-941:10, 968:15-969:10, 1028:12-15, 1030:3-12).

> James Kipling testified:
>
> "My understanding is plaintiff's concept is an image component carried on or in the backpack of [a] Rescue Heroes figure, the images being of rescue opportunities, scenes of potential disaster and other situations in which the assistance of the Rescue Heroes figure might be required. The scenes are multiple and interchangeable, and each one is -- triggers the pretend -- excuse me, the role playing pretending by the little boy or little girl playing with the Action Heroes figure to play out the rescue sequence as a result of seeing that image." (Tr. 1335:9-20).
>
> Kipling testified that the definition of the Reel Heroes concept he gave at trial had

not appeared in ***any document*** in the case. (Tr. 1472:10-17). Reiling, who disclosed the Reel Heroes concept to Fisher-Price and drafted the narrative submissions containing all of the information he could think of, "never used the words 'image component'" in describing his concept in 1998. (Tr. 328:9-24).

---

[53] Popek also admitted that "language relating to putting an image on a backpack that would enhance role play" was not included in the written description on the Concept Submission Form. (Tr. 1047:24-1048:5).

- 47 -

As this Court recognized in its ruling on Fisher-Price's motion in limine no. 2, Fisher-Price cannot be liable for using what was never communicated to it. Both Popek's and Kipling's testimony regarding the purported similarities between the concept and Fisher-Price's products are based on the uncommunicated concept "definition" created during this litigation. Because the testimony offered by DI on the issue of substantial similarity was not based on the concrete features shown in the three submissions, it is insufficient as a matter of law. Because this legally insufficient testimony was the *only* testimony DI offered on the topic of use, Fisher-Price is entitled to judgment as a matter of law that it did not use the Reel Heroes concept.

### IV. THE UNDISPUTED EVIDENCE SHOWED THAT THE REEL HEROES CONCEPT WAS NOT FIXED AND CONCRETE

There is no evidence supporting the jury's finding that the Reel Heroes concept was concrete. DI was required to show that the Reel Heroes concept was "fixed and concrete in form."[54] As discussed above, DI has admitted that Fisher-Price never used what was disclosed in the three variations of the Reel Heroes concept submitted to Fisher-Price.[55] Instead, during pretrial proceedings and at trial, DI offered a series of different and more abstract definitions of the Reel Heroes concept in an effort to find one that covers Fisher-Price's products.

---

[54] See Jury Instructions at 22. See also Ball v. Hershey Foods Corp., 842 F. Supp. 44, 47 (D. Conn.), aff'd, 14 F.3d 591 (2d Cir. 1993) (to support a misappropriation of idea claim, "the idea must be novel and concrete"); Oasis Music, Inc. v. 900 U.S.A., Inc., 161 Misc.2d 627, 631, 614 N.Y.S.2d 878, 881 (S. Ct. N.Y. Co. 1994) (idea must be concrete to be protectible); Markogianis v. Burger King Corp., 42 U.S.P.Q. 2d 1862, 1865 (S.D.N.Y. 1997) (an idea must be concrete to support a breach of implied contract claim); Educ. Sales, 65 Misc. 2d at 417, 317 N.Y.S.2d at 845 (citing O'Brien v. RKO Radio Pictures, Inc., 68 F. Supp. 13, 14 (S.D.N.Y. 1946)) ("It is well-settled law that an author has no property right in his ideas unless the same are given embodiment in a tangible form")); McGhan v. Ebersol, 608 F. Supp. 277, 284 (S.D.N.Y. 1985) ("In order for an idea to be susceptible to a claim of misappropriation, two essential elements must be established: the requisite legal relationship must exist between the parties, and the idea must be novel *and concrete*") (emphasis added).

[55] See Section III above and the collection of admissions that Fisher-Price did not use the concept as submitted to Fisher-Price in three versions.

In its three complaints, DI defined the Reel Heroes concept as:

> "Plaintiffs' basic concept was to integrate Fisher-Price's successful 'Rescue Heroes' figures and cartoon-like images by using a removable backpack that could be made for a specific character. It was designed to mount to each 'Rescue Heroes' figure and show animated images of that character in action. For example, a firefighter would be shown putting out a fire or rescuing a child from a building. The animated images enrich the role-playing that a child often enjoys when using toy action figures. The backpack is a battery-operated firm strip/disc player with a viewer. By looking through the small viewer and pressing a button, the child could see the 'countless RESCUE HERO adventures.'"

JX 209 ¶ 30A; DX 863 ¶ 30A; DX 864 ¶ 30A.

Plaintiff's expert, James Kipling, broadened the definition of the Reel Heroes concept, moving away from the concept as submitted to Fisher-Price. As of January 2004, Kipling defined the concept as:

> "In essence, is the visual transmission to a child of the adventure or the heroic exploit he is about to undertake in the role of the associated figure. So it's a visual. The concept is ***the visual expression of a cue or a prompt or an assignment of an adventure*** or a dangerous situation to be remedied or a portrayal of some adventure the little boy is cued to pretend by virtue of the visual elements of -- associated with this figure. That's my view."
> (Tr. 1511:7-16 (emphasis added)).

Over time, the definition continued to change. As of January 2005, Kipling was defining the Reel Heroes concept as a device that was not necessarily part of a backpack:

> "***a device*** associated with a Rescue Heroes figure, ***for example, part of a backpack***, for visually communicating to the mind of a child a cue or prompt for the role-playing in which the child would use the Rescue Heroes figure and imagine accomplishing a mission assignment, resolving a dangerous situation, performing a rescue or engaging in some other potential pretend scenario."
> (Tr. 1506:2-13 (emphasis added)).

At trial, however, the definition shifted once again, and this time, incorporated images on or in a backpack. According to Kipling:

> "My understanding is plaintiff's concept is **an image component carried on or in the backpack** of [a] Rescue Heroes figure, the images being of rescue opportunities, scenes of potential disaster and other situations in which the assistance of the Rescue Heroes figure might be required. The scenes are multiple and interchangeable, and each one is -- triggers the pretend -- excuse me, the role playing pretending by the little boy or little girl playing with the Action Heroes figure to play out the rescue sequence as a result of seeing that image." (Tr. 1335:9-20).

Kipling admitted that he was not aware that this definition had been disclosed in any document prior to the filing of the complaints. (Tr. 1472:10-17). He also admitted that this definition was different from the definition given by DI in its three complaints. (Tr. 1472:10-1473:2).

At trial, DI's own definition of the concept was different from Kipling's. As set forth above in Section III, Popek testified at trial:

> "the concept that was presented to Fisher-Price in all three of our submissions was an image on the backpack of Rescue Heroes that was interchangeable or changeable, and those images would enhance the role play for the child by showing pictures of missions, disasters, obstacles, things they would come across." (Tr. 848:23-849:5).[56]

Popek admitted that DI came up with this definition "as part of this trial." (Tr. 1048:20:22).

DI admitted that this definition created for trial did not accurately describe the Reel Heroes concept as submitted to Fisher-Price. The testimony at trial illustrated that the Reel

---

[56] DI's shell game of changing definitions is especially confounding since Popek admitted that his trial definition "was never communicated to Fisher-Price in those terms." (Tr. 1049:15-18). Reiling offered his own definition at trial: "The idea was to put an image component on the backpack of each Rescue Hero and visualizing the image would enable a child to enjoy the role play, have more role play with the product." (Tr. 544). Reiling admitted he never used the words "image component" back in 1998 when describing the Reel Heroes concept. (Tr. 328:22-24).

- 50 -

Heroes concept is not limited to only Rescue Hero action figures. Popek testified that the Reel Heroes concept was actually submitted to one of Fisher-Price's competitors, Toy Biz, for use in connection with its "Spiderman and Friends" line of superhero action figures. (Tr. 888:14-17). Nor does the Reel Heroes concept require that the image be on the backpack of the Rescue Heroes figure. (Tr. 845:6-15, 1011:19 - 1012:8).

The caselaw is clear that a changing, evolving idea is not sufficiently concrete to be entitled to legal protection. For example, in *Educational Sales Programs, Inc. v. Dreyfus Corp.*, 65 Misc.2d 412, 317 N.Y.S.2d 840 (Ct. N.Y. Co. 1970), the plaintiff's idea for a tape cassette program to promote defendant's mutual funds to independent fund salesman "changed considerably" over the three months that the plaintiff and the defendant discussed the program. The court found that the idea was therefore "quite malleable and not in such fixed and concrete form as to indicate a protectible idea." 65 Misc.2d at 417, 317 N.Y.S.2d at 845. In *Link Group International v. Toymax, Inc.*, 2000 U.S. Dist. LEXIS 4567 (D. Conn. Mar. 17, 2000), the plaintiff first submitted its idea for a "Laser Combat" toy to the defendant in 1986, but the toy was not developed at that time. In the mid-1990's, the plaintiff and defendant began to discuss the development of a new version of Laser Combat and some related concepts. The plaintiff used the plans and sketches from the earlier version of Laser Combat in presenting the updated version to the defendant, but did not provide the defendant with prototypes or schematics for the updated version. The Court ruled that the updated version of Laser Combat was not a concrete entitled to legal protection. *Id.* at * 38.

The Reel Heroes concept, defined in an ever-changing manner, lacks concreteness as a matter of law, just like the evolving concepts in *Educational Sales* and *Link Group Int'l*. The definitions DI propounded pretrial and at trial were not fixed — they were numerous and

shifting. The definitions were not concrete — they did not describe any particular product or feature.[57] DI simply failed to prove that the Reel Heroes concept was concrete enough to merit legal protection. For this reason as well, the Court should enter judgment in favor of Fisher-Price.

### V. DI FAILED TO OFFER COMPETENT EVIDENCE THAT THE REEL HEROES CONCEPT WAS NOVEL

The Court should enter judgment in favor of Fisher-Price for the additional reason that the evidence presented at trial was legally insufficient to support the jury's determination that the Reel Heroes concept was novel. The issue of novelty is often decided by the court as a matter of law.[58] Accordingly, it is clear that here, where the evidence overwhelmingly demonstrated that the Reel Heroes concept was not novel, and no competent evidence was submitted to the contrary,[59] the Court should rule in Fisher-Price's favor.

---

[57] To the extent any of its definitions were concrete, for example, in the submission documents or the three complaints, DI has admitted Fisher-Price did not use them. *See* Section III above.

[58] *AEB & Assocs. Design Group, Inc. v. Tonka Corp.*, 853 F. Supp. 724, 734 (S.D.N.Y. 1994) ("whether an idea is novel is an issue of law which may properly be decided on a motion for summary judgment"). *See also Brandwynne v. Combe Int'l, Ltd.*, 74 F. Supp. 2d 364, 375 (S.D.N.Y. 1999) (same); *Oasis Music, Inc.*, 161 Misc. 2d at 631, 614 N.Y.S.2d at 881 (same); *Khreativity Unlimited v. Mattel, Inc.*, 101 F. Supp. 2d 177, 185 (S.D.N.Y.), *aff'd*, 242 F.3d 366 (2d Cir. 2000) (stating that "as a matter of law, [plaintiff's] idea for a cross-marketing venture between Mattel and the NBA was so unoriginal and lacking in novelty that knowledge of the idea can be imputed to Mattel" and granting defendant's motion for summary judgment dismissing plaintiff's contract claims); *Link Group*, 2000 U.S. Dist. LEXIS 4567, at *38-39 (finding that plaintiff's idea was not novel as a matter of law and granting defendant's motion for summary judgment dismissing plaintiff's claims for breach of implied contract and unjust enrichment); *Kavanau v. Courtroom Television Network*, 23 U.S.P.Q. 2d 1938, 1942 (S.D.N.Y. 1992) (stating that "[w]hether an idea is novel is an issue of law which may properly be decided on a motion for summary judgment," and granting defendants' motion for summary judgment); *Zikakis v. Staubach Retail Svcs., Inc.*, 2005 U.S. Dist. LEXIS 21105, * 9-11 n. 3 (S.D.N.Y. Sept. 22, 2005) (dismissing misappropriation claim for lack of novelty on motion to dismiss); *Sharp v. Patterson*, 2004 U.S. Dist. LEXIS 22311, at * 32-34 (S.D.N.Y. Nov. 3, 2004) (granting motion to dismiss misappropriation claim because idea for book based on love letters not novel as a matter of law).

[59] *See Paul v. Haley*, 183 A.D.2d 44, 53-54, 588 N.Y.S.2d 897, 903 (2d Dep't 1992) ("[T]he plaintiff, who bears the burden of coming forward with proof of novelty, ***cannot rest on mere assertions of novelty and originality***, but must instead demonstrate some basis in fact for those claims. Case law is replete with instances in which plaintiffs alleging misappropriation of novel ideas have failed to meet this burden.")

As the Court instructed the jury, "a concept that combines known elements must itself be a novel idea" to satisfy the novelty requirement, and "[a] concept cannot be found to be novel if it is merely a variation on a basic theme or is an idea already in use in the public domain . . . ."[60] Yet the evidence at trial, including the admissions of DI's witnesses, conclusively established that the Reel Heroes concept was just that — a variation on a basic, known theme. No reasonable jury could have concluded that the Reel Heroes concept was novel.

Both Bruce Popek and Victor Reiling admitted at trial that the Reel Heroes concept was a mere combination of ideas that were already known and in use in the toy industry. They conceded that any of the following combinations of pre-existing products would result in the Reel Heroes concept: (1) the Toy Biz projector film disk mechanism and a Rescue Heroes figure/backpack (Tr. 527:2-8); (2) the lenticular shield from a Secret Wars figure and a Rescue Heroes figure/backpack (Tr. 1079:16-1080:9); (3) a Fisher-Price movie viewer and a Rescue Heroes figure/backpack (Tr. 277:25-278:7); (4) a Fisher-Price changeable disk camera and a Rescue Heroes figure/backpack (Tr. 376:1-377:3); and (5) a Viewmaster mechanism and a Rescue Heroes figure/backpack (Tr. 1077:8-25).[61]

---

(emphasis added). See also *AEB*, 853 F. Supp. at 734 ("In establishing an idea's originality, a plaintiff cannot rest on mere assertions, but must demonstrate some basis in fact for its claims") (citing *Woman Golfer, Inc. v. Meredith Corp.*, 792 F. Supp. 211, 214 (S.D.N.Y. 1992) (same)); *Oasis Music, Inc.*, 161 Misc. 2d at 632, 614 N.Y.S.2d at 882 (same); *McGhan*, 608 F. Supp. at 287 ("[Plaintiff's] assertions of originality cannot overcome his failure to provide some affirmative indication that his version of events is not fanciful").

[60]   Jury Instructions at 23.

[61]   Both Reiling and Popek testified that the Fisher-Price Movie Viewer was the "inspiration" for the Reel Heroes concept. (Tr. 276:11-16, 981:2-12). They further testified that they purposely suggested adding technology that Fisher-Price already owned (Movie Viewer and Viewmaster) to the Rescue Heroes backpacks because it would be easier to sell Fisher-Price something with which it was already familiar. (Tr. 276:17-277:24, 373:5-14, 1077:22-1078:17).

These admissions by Popek and Reiling require a finding of non-novelty as a matter of law. Simply taking a feature (such as Fisher-Price's own products, the Toy Biz projector film disk mechanism or the Secret Wars lenticular shield) and moving it from a pre-existing action figure on to the backpack of a pre-existing Rescue Heroes figure is clearly "a variation on a theme" or "an idea already in use in the public domain."[62]

Finally, the law is clear that a combination of known elements is not novel.[63] A combination of non-novel elements — even if never before found together in the same product — is nothing more than "a variation on a [known] basic theme" and is non-novel as a matter of law.[64] Fisher-Price maintains that it was erroneous not to charge the jury that a combination of known elements is not novel and asks that the Court reconsider its ruling on the issue. The failure to include this legal principle in the charge was clearly prejudicial in light of the fact that DI's witnesses admitted, as discussed above, that the Reel Heroes concept did nothing more than

---

[62]   See *Khreativity Unlimited*, 101 F. Supp. 2d at 185-86 (finding plaintiff's idea of putting NBA uniforms on Mattel's Cabbage Patch dolls was non-novel as a matter of law because Mattel had previously dressed its dolls in other sports uniforms); *Link Group*, 2000 U.S. Dist. LEXIS 4567, at * 37 (finding plaintiff's idea of white-light guns was non-novel as a matter of law because "[m]ost of its components had previously been used in the toy industry" and the idea was not anything "other than a variation on a theme").

[63]   See *Oasis Music, Inc.*, 161 Misc. 2d at 634, 614 N.Y.S.2d at 883 (where the individual elements of plaintiff's concept are known, its "program is based on ideas and concepts already in the public domain," and is non-novel as a matter of law); *Brandwynne*, 74 F. Supp. 2d at 376 ("a combination of pre-existing elements is not considered 'novel'"); *Khreativity*, 101 F. Supp. 2d at 185-86 (recognizing that even if "plaintiffs provided a compilation of elements never before offered to the public, plaintiff's idea nevertheless lacked novelty because a combination of pre-existing elements is not considered novel"); *Educ. Sales*, 65 Misc. 2d at 416, 317 N.Y.S.2d at 844 ("[T]he judicious use of existing means, or the mixture of known ingredients in somewhat different proportions . . . partake more of the nature of elaboration and renovation than of innovation"); *Ring v. Estee Lauder*, 702 F. Supp. 76, 78 (S.D.N.Y. 1988), *aff'd*, 874 F.2d 109 (2d Cir. 1989) (granting summary judgment because plaintiff's idea, a combination of known elements, was non-novel as a matter of law); *Kavanau*, 23 U.S.P.Q. 2d at 1943 (plaintiff's "assertion of novelty must also be rejected because the CJN Plan is a mere compilation of elements that were already in use in the television industry"); *Futter v. Paramount Pictures, Inc.*, 69 N.Y.S.2d 438, 440 (S. Ct. N.Y. Co. 1947) ("[M]erely combining these obvious elements cannot convert a general idea, which is not novel, into a unique concept").

[64]   See *McGhan*, 608 F. Supp. at 286-87; *Ed Kaplan Assoc. v. Fisher-Price*, 17 U.S.P.Q. 2d 1877 (S.D.N.Y. 1990); *Khreativity Unlimited*, 101 F. Supp. 2d at 185; *Link Group Int'l*, 2000 U.S. Dist. LEXIS 4567, at * 36-37 (applying New York law).

- 54 -

combine features of previously existing action figures. On both of these bases, the jury's verdict cannot be permitted to stand.

### Conclusion

For the foregoing reasons, Fisher-Price's motion for judgment as a matter of law dismissing DI's claims in their entirety and entering judgment in favor of Fisher-Price should be granted.

Dated: February 23, 2006

**TYLER COOPER & ALCORN, LLP**

By _____
        Robert W. Allen
e-mail: rwallen@tylercooper.com
Federal Bar No.: ct04188
Jacqueline D. Bucar
e-mail: jbucar@tylercooper.com
Federal Bar No.: ct01187
205 Church Street
P.O. Box 1936
New Haven, CT 06509-0906
Telephone: (203) 784-8269

**HODGSON RUSS LLP**
Robert J. Lane, Jr.
e-mail: rlane@hodgsonruss.com
Federal Bar No.: ct24598
Jodyann Galvin
e-mail: jgalvin@hodgsonruss.com
Federal Bar No.: ct24599
One M&T Plaza, Suite 2000
Buffalo, NY 14203-2391
Telephone: (716) 856-4000

**MILBANK, TWEED, HADLEY & MCCLOY LLP**
William E. Wallace, III
email: wwallace@milbank.com
Federal Bar No. PVH 0480
International Square Building
1825 Eye Street, N.W., Suite 1100
Washington, D.C. 20006
Telephone: (202) 835-7500

*Attorneys for Fisher-Price, Inc.*

- 55 -

## CERTIFICATION

The undersigned hereby certifies that copies of the foregoing Fisher-Price Inc.'s Memorandum in Support of Fisher-Price Motion for Judgment as a Matter of Law or a New Trial, dated February 23, 2006, was sent on the 23rd day of February 2006 via first class mail to:

Gregory J. Battersby, Esq. (Bar No. 07386)
Edmund J. Ferdinand, III, Esq. (Bar No. 21287)
Russell D. Dize, Esq. (Bar No. 23064)
Grimes & Battersby LLP
488 Main Avenue, Third Floor
Norwalk, CT 06851-1008
Telephone: (203) 849-8300
Facsimile: (203) 849-9300

Peter M. Nolin, Esq. (Bar No. 06223)
Jay H. Sandak (Bar No. 06703)
Sandak Hennessey & Greco LLP
707 Summer Street
Stamford, CT 06901
Telephone: (203) 425-4200
Facsimile: (203) 325-8608

_____
Robert W. Allen

003279/00136 BFLODOCS 1473837v1