9

The New York Court of Appeals has consistently followed this rule. In *David Fox & Sons, Inc. v. King Poultry Co.*, 23 N.Y.2d 914, 298 N.Y.S.2d 314 (1969), defendant company was found to have misappropriated the plaintiff's confidential customer information. *Id.* The Court of Appeals (adopting the dissenting opinion of the Appellate Division below) determined that the plaintiff was entitled to recover the profits that *it* would have made on sales by the defendant, not the profits that the defendant made. The court specifically excluded recovery of profits on sales that the defendant made to customers to whom the plaintiff was forbidden to sell. *Id.* ("defendants established, without contradiction, that sales to two of those customers [on the restricted list] could not have been made by plaintiffs and, accordingly, the sales for which defendants are accountable should be reduced. . . ." 30 A.D.2d 789, 790, 292 N.Y.S.2d 21, 24 (1st Dep't 1968) (Appellate Division dissent, adopted by Court of Appeals)). On those sales, the plaintiff suffered no loss and therefore obtained no award. If disgorgement of profits were an available remedy, the plaintiff in *David Fox* would have been entitled to the profits the defendant made on sales to the restricted customers — the fact that the plaintiff could not have made those sales itself would have been irrelevant. Thus, the *David Fox* case shows that the proper measure of damages in misappropriation cases under New York law is the actual loss suffered by the plaintiff, not the gains obtained by the defendant.

In *Michel Cosmetics, Inc. v. Tsirkas*, 282 N.Y. 195 (1940), an unfair competition and misappropriation case, the Court of Appeals applied this same rule, holding that:

> *if the plaintiff would otherwise have made the sales* of lipsticks which in fact the defendants made by use of the plaintiff's formulas, then the plaintiff is entitled to recover

Case 3:03-cv-00222-JBA Document 288-2 Filed 04/10/2006 Page 2 of 10

> from the defendants the amount of profits which the
> plaintiff would have acquired upon such sales but for the
> defendant's wrong.

282 N.Y. at 200 (emphasis added). Because "at least in part, the sales by the defendants were

not made in territory where the plaintiff did business," there was "no evidence . . . which would

support a finding that plaintiff would have sold those lipsticks but for the defendant's wrong."

*Id.* at 201. Accordingly, the court reversed an award of defendant's profits to plaintiff.

   *Ronson Art Metal Works v. Gibson Lighter Manufacturing. Co.,* 3 A.D.2d 227,

159 N.Y.S.2d 606 (1st Dep't 1957), was an unfair competition case involving "copying of

plaintiff's designs." Recognizing that "[t]he basic rule of damages in a case of unfair

competition is the amount which the plaintiff would have made, except for the defendant's

wrong," the court reversed an award of defendant's profits because the evidence was

"insufficient to justify an inference that the plaintiff would have made all the sales actually made

by the defendants if the defendants had not competed with it." 3 A.D.2d at 232-33, 159

N.Y.S.2d at 611-12.[6]

   As far as Fisher-Price has been able to determine, no New York court has

awarded defendant's profits under circumstances (like those at issue here) where the plaintiff

---

[6]   *See also Santa's Workshop, Inc. v. Sterling,* 2 A.D.2d 262, 267, 153 N.Y.S.2d 839, 844-45 (3d Dep't
1956) (the trial court awarded plaintiff damages calculated on the basis of "defendant's increased profits";
ruling that there was no basis for the assumption that "all of [defendant's] theoretical increased profits are
attributable to the unfair advertising practices and none to other factors in defendant's business," the
appellate court reversed and replaced it with a calculation based on *plaintiff's* lost sales), *aff'd* 3 N.Y.2d
757, 163 N.Y.S.2d 986 (1957).

11

does not compete with the defendant, does not claim that it would have made the sales defendant

made, and does not claim that defendant's profits have any relationship to its lost profits.[7]

Indeed, New York courts have refused to award defendant's profits even when the plaintiff was

unable to prove its actual losses and was therefore left without a remedy.[8] This demonstrates

that New York law permits the use of defendant's profits as a measure of damages in only

extremely limited circumstances — circumstances which do not exist here. DI admits that it is

not a competitor in the toy industry. (Tr. 770:4-772:13). It does not claim that, in the absence of

Fisher-Price's alleged misappropriation, it would have made the sales that resulted in the profits

it seeks to recover from Fisher-Price. DI does not argue that Fisher-Price's profits are a

---

[7]     See *Ronson Art Metal Works*, 3 A.D.2d at 229-30, 159 N.Y.S.2d at 608-09 (ruling that, even where plaintiff and defendant were competitors, defendant's profits could not be awarded because plaintiff "offered no proof to establish any causal relationship between [defendant's] profits and its own losses"; rejecting the argument that plaintiff was entitled to defendant's profits as a matter of law); *Spielvogel v. Zitofsky*, 175 A.D.2d 830, 831, 573 N.Y.S.2d 198 (2d Dep't 1991) (reversing an award of defendant's profits because there was no evidence that "the plaintiffs would have made all the sales actually made by the [defendant]"); *Electrolux Corp. v. Val-Worth, Inc.*, 6 N.Y.2d 556, 571-72, 190 N.Y.S.2d 977, 989-90 (1959) (refusing to award defendant's profits in an unfair competition case and distinguishing cases that did so on the ground that they involved sales diverted from the plaintiff); *David Fox & Sons, Inc.*, 23 N.Y.2d 914, 298 N.Y.S.2d 314 (damages in a misappropriation case are limited to profits on sales by defendant that plaintiff proves it would have made itself if not for defendant's wrong).

[8]     See *Electrolux Corp.*, 6 N.Y.2d at 572, 190 N.Y.S.2d at 990 (denying defendant's profits even though court recognized that actual damages "will no doubt be most difficult to prove"); *Ronson Art Metal Works*, 3 A.D.2d at 232, 159 N.Y.S.2d at 611 (reversing an award of defendant's profits and remanding for a determination of "the fair compensation, *if any*, due the plaintiff for the illegal acts of the defendants"); *Spielvogel*, 175 A.D.2d at 831, 573 N.Y.S.2d at 198 (reversing an award of defendant's profits and remanding for a new trial as to "what extent, *if at all*, the plaintiffs' business" was damaged; recognizing that the alternative is nominal damages); *Hertz*, 106 A.D.2d at 251, 485 N.Y.S.2d at 54 (ruling that plaintiff would not be entitled to recover defendant's profits even though it could not show actual losses). *See also Michel Cosmetics, Inc.*, 282 N.Y. at 203-04 (reversing an award of damages based on defendant's sales in a misappropriation case where there was insufficient evidence that plaintiff's lost sales were properly measured by defendant's total sales).

12

reasonable approximation or measure of DI's actual losses (*i.e.*, what DI would have earned if not for Fisher-Price's alleged wrongful conduct).

Under these circumstances, an award to DI of Fisher-Price's profits would be inappropriate on the facts as they are characterized *by DI*. In this case, there is no connection between Fisher-Price's profits and DI's loss. Unlike those cases in which defendant's profits are a valid measure of the plaintiff's loss, an award to DI of Fisher-Price's profits in this case would be a naked windfall for DI, contrary to New York law. Accordingly, DI's claim for an award of defendant's profits fails as a matter of law.

### III. DI'S ACTUAL LOSS HAS ALREADY BEEN DETERMINED BY THE JURY

As stated above, the measure of damages applicable to a misappropriation and/or unfair competition case is plaintiff's lost profits. DI's alleged lost profits have already been calculated by the jury in this case. DI's president, Bruce Popek, testified that DI was in the business, *inter alia*, of creating toy ideas and licensing them to toy companies. The profits it earned from that activity were in the form of royalty payments. (Tr. 773:22-776:4, 777:22-779:4). Popek testified that the Reel Heroes concept was submitted to Fisher-Price in the hope it would be licensed for a royalty payment. (Tr. 967:24-968:9). The evidence at trial established that DI's sole plan for earning a profit on the Reel Heroes concept was to license it to Fisher-Price.

At the close of the trial, DI argued to the jury that its actual lost profits damages were properly measured by the royalties it allegedly would have received if not for Fisher-Price's

13

purported misappropriation. The jury agreed and awarded DI royalty damages (although in a far

lower amount than requested by DI). [9]  There can be no dispute that the jury award was intended

to represent compensatory damages measuring the lost royalties DI would have received if not

for the alleged misappropriation. Both this Court's jury instructions and DI's closing argument

make this clear. As this Court instructed the jury:

> [Y]ou must make a determination whether and in what
> amount Design Innovation has proved lost royalties for [the
> products at issue]. . . .
>
> Plaintiff claims that Fisher-Price's use of the Reel Heroes
> concept without acknowledgment caused it to lose
> licensing royalties it would otherwise have received from
> both the accused products and certain line extensions and
> accessories. Plaintiff must prove the extent to which
> defendant's actions caused loss of royalty payments as to
> each of these. . . .
>
> [DI] claims that Fisher-Price's misappropriation caused [it]
> to lose royalty payments it would have collected from
> Fisher-Price but for Fisher-Price's misappropriation of the
> submitted concept. You will determine whether [DI] has
> proved that Fisher-Price caused [DI's] loss of royalty
> payments . . .

Jury Instructions at 35, 37. In his closing argument, DI's counsel stated:

> DI and Mr. Reiling came up with this idea, and they
> deserve fair compensation for it. And that's all we're

---

[9]     DI's counsel asked the jury to award approximately $4 million in royalties in his closing argument, but the
jury awarded only $1.7 million. (Tr. 2571:9-25, 2652:20-2653:3).

14

> asking, a reasonable royalty as we walked you through the
> numbers on Fisher-Price's own document.[10]

Because the jury awarded actual damages to DI measured by alleged lost royalty payments, DI has been fully compensated for its claimed losses and is not entitled to a disgorgement measure of damages. Anything in excess of lost royalties would violate the principle of New York law that monetary damages are limited to the amount necessary to compensate plaintiff for its actual loss (*see* footnotes 4 & 5). Moreover, an award of Fisher-Price's profits would be punitive in nature, and, therefore, contrary to New York law and the decision of the jury to deny DI's claim for punitive damages.

For these reasons, DI should be limited to the actual compensatory lost royalty damages awarded by the jury, and its claim for disgorgement should be dismissed.

## IV. THE AUTHORITY PREVIOUSLY CITED BY DI TO SUPPORT DISGORGEMENT DAMAGES IS INAPPOSITE

In earlier briefing in this case, DI relied principally on *Softel, Inc. v. Dragon Medical and Scientific Communications, Ltd.*, 118 F.3d 955 (2d Cir. 1997), in support of its claim that it is entitled to recover disgorgement damages.[11] *Softel* provides no support for DI's position.

---

[10]  Tr. 2628:2-6.

[11]  *See* Plaintiff's Objections to Defendant's Proposed Preliminary and Final Substantive Jury Instructions [Docket No. 184] at 17; Plaintiff's Memorandum in Opposition to Fisher-Price's Motion to Strike Jury Demand [Docket No. 187] at 10-11.

15

*Softel* involved defendant's misappropriation of plaintiff's proprietary computer code. Defendant was held liable for copyright infringement, which by statute entitled the plaintiff to an award of defendant's profits as well as its own losses. 17 U.S.C. § 504(b). The district court also found defendant liable for misappropriation of trade secrets and calculated defendant's profits as damages for that claim; however, the court specifically disallowed recovery of those damages as duplicative of the copyright damages. *Softel*, 891 F. Supp. 935, 945 (S.D.N.Y. 1995). On appeal, the plaintiff did not dispute that a second award of defendant's profits would have been duplicative of its copyright damages; instead it argued that it should have been awarded a reasonable royalty on its misappropriation claim which (plaintiff argued) would not have been duplicative of its copyright damages award. The Second Circuit disagreed and affirmed the trial court. 118 F.3d at 969-70.

Both the district court and the Second Circuit in *Softel* noted that defendant's profits may be an available measure of damages in a trade secret case. 891 F. Supp. at 942; 118 F.3d at 969. However, *all* of the cases cited by the district court and the Second Circuit in support of that proposition are consistent with the rules of damages Fisher-Price relies on here. Each of the cases cited by the district court involved a misappropriation claim brought by a plaintiff that competed with the defendant and could itself have made the sales made by the defendant. 891 F. Supp. at 942. The Second Circuit cited *David Fox & Sons v. King Poultry Co.*, 23 N.Y.2d 914 (1969) in support of the lower court's award of defendant's profits. *See* 118 F.3d at 969. As discussed above, the *David Fox* court applied the well-established rule of New York law that defendant's profits may be used as a measure of damages where plaintiff would

16

have earned a corresponding profit but for defendant's wrongful conduct — however, a plaintiff

may *not* look to defendant's profits that plaintiff would not have earned itself.

Not surprisingly, neither the district court nor the Second Circuit in *Softel*

analyzed the issue of whether the plaintiff could have made the sales made by defendant. Such

an analysis was unnecessary, as both courts ruled that plaintiff was not entitled to separate

misappropriation damages because it had been fully compensated by the award of copyright

damages. Indeed, the defendant never argued, and the court never addressed, whether any

portion of the profits awarded would or would not have been earned by plaintiff. Thus, *Softel* is

not contrary to the overwhelming weight of New York caselaw and does not support an award of

disgorgement damages to DI.

Finally, the Southern District of New York has interpreted *Softel* in this way. In

*Gidatex*, the court cited to *Softel* for its analysis of the interplay between copyright and

misappropriation damages and its analysis of the potential for double recovery. In the context of

that same analysis, the court went on to state and apply the rule Fisher-Price relies on here; *i.e.,*

that "[u]nder New York law, a jury awards a defendant's profits under the theory that 'a plaintiff

is "entitled to recover as damages the amount of [actual] loss sustained by it, including

opportunities for profit on the accounts diverted from it through defendant's conduct [citing

*Hertz*].'" 82 F. Supp. 2d at 146 (recognizing the rule that defendant's profits can be used only as

a measure of plaintiff's profits where plaintiff would otherwise have earned them). Accordingly,

*Softel* is not contrary to the rule that defendant's profits can be used only as a measure of

17

plaintiff's lost profits — and only where plaintiff could itself have earned those profits. Thus, *Softel* provides no support for DI's request for disgorgement in this case.

**Conclusion**

For the foregoing reasons, this Court should rule as a matter of law that DI is not entitled to disgorgement of Fisher-Price's profits and should cancel the May 1, 2006 evidentiary hearing scheduled to address that issue.

Dated: April 10, 2006

**TYLER COOPER & ALCORN, LLP**

By _Jacqueline D. Bucar_
Jacqueline D. Bucar
e-mail: jbucar@tylercooper.com
Federal Bar No.: ct01187
205 Church Street
P.O. Box 1936
New Haven, CT 06509-0906
Telephone: (203) 784-8269

**HODGSON RUSS LLP**
Robert J. Lane, Jr.
e-mail: rlane@hodgsonruss.com
Federal Bar No.: ct24598
Jodyann Galvin
e-mail: jgalvin@hodgsonruss.com
Federal Bar No.: ct24599
One M&T Plaza, Suite 2000
Buffalo, NY 14203-2391
Telephone: (716) 856-4000

**MILBANK, TWEED, HADLEY, & MCCLOY LLP**
William E. Wallace, III
email: wwallace@milbank.com
Federal Bar No. PVH 0480
Jay I. Alexander
e-mail: jalexander@milbank.com
Federal Bar No. PVH 0858
International Square Building
1825 Eye Street, N.W., Suite 1100
Washington, D.C. 20006
Telephone: (202) 835-7500

**KENYON & KENYON LLP**
Charles A. Weiss
e-mail: cweiss@kenyon.com
Richard L. DeLucia
e-mail: rdelucia@kenyon.com
Jeffrey M. Butler
e-mail: jbutler@kenyon.com
One Broadway
New York, NY 10004-1007
Telephone: (212) 908-6287

*Attorneys for Fisher-Price, Inc.*

18

## CERTIFICATION

The undersigned hereby certifies that copies of the foregoing Fisher-Price, Inc.'s

Memorandum in Support of Fisher-Price's Motion to Cancel Disgorgement Hearing, dated April

10, 2006, was sent on the 10th day of April 2006 via first class mail to:

Gregory J. Battersby, Esq. (Bar No. 07386)
Edmund J. Ferdinand, III, Esq. (Bar No. 21287)
Russell D. Dize, Esq. (Bar No. 23064)
Grimes & Battersby LLP
488 Main Avenue, Third Floor
Norwalk, CT 06851-1008
Telephone:  (203) 849-8300
Facsimile:  (203) 849-9300

Peter M. Nolin, Esq. (Bar No. 06223)
Jay H. Sandak (Bar No. 06703)
Sandak Hennessey & Greco LLP
707 Summer Street
Stamford, CT 06901
Telephone:  (203) 425-4200
Facsimile:  (203) 325-8608

Jacqueline D. Bucar