UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DESIGN INNOVATION, INC., <br><br> Plaintiff, <br><br> - against - <br><br> FISHER-PRICE, INC., <br><br> Defendant. | Index No.: 3:03 CV 222 (JBA) <br><br><br> April 10, 2006 |

### PLAINTIFF'S TRIAL BRIEF ON DISGORGEMENT DAMAGES

Plaintiff, Design Innovation, Inc. ("DI"), respectfully submits this brief in anticipation of the continuation of the trial of this action on May 1, 2006.

Following a three-week trial, the jury returned a verdict in DI's favor, finding that defendant Fisher-Price had misappropriated DI's novel concept and that Fisher-Price's actions also constituted unfair competition (which required a finding that Fisher-Price's misappropriation was committed in bad faith). Consistent with New York law, DI sought compensatory damages under two theories: disgorgement of the profits made by Fisher-Price from the misappropriated concept; or, in the alternative, the profits that DI would have made but for the misappropriation in the form of a reasonable royalty calculation. By agreement of the parties, the disgorgement issue was reserved for a subsequent bench trial by the Court and the reasonable royalty claim alone was submitted to the jury.[1] On the reasonable royalty theory the

---

[1] This ruling was in response to Fisher-Price's motion to strike the Supplemental Expert Report of DI's damages expert, Alan Ratliff. The Court also ordered that Fisher-Price be given the opportunity to depose Mr. Ratliff prior to the bench trial on disgorgement damages.

jury awarded monetary damages in the amount of approximately $1.7 million on February 6, 2006.

In accordance with the Court's request, DI submits this trial brief: (1) to establish that disgorgement of a defendant's profits is the appropriate, and in fact preferred, method of awarding damages in cases of misappropriation and unfair competition under New York law; and (2) to demonstrate the proper method of calculating the amount of a defendant's profits for purposes of an award of disgorgement damages (*i.e.*, what costs, if any, may be deducted from the total amount of gross sales under New York law).

Because the jury found that Fisher-Price misappropriated DI's novel concept in bad faith, and the evidence presented to date and to be further established at the subsequent bench trial will demonstrate that Fisher-Price derived a substantial monetary benefit from its wrongful, bad faith misappropriation of DI's concept, an award of disgorgement of Fisher-Price's profits is fair, appropriate and entirely supported by New York law.

### A. Disgorgement is the Preferred Measure of Damages in Misappropriation and Unfair Competition Cases

Under New York law, "[i]t is axiomatic that the defendant must not be permitted to derive a profit from his own wrongdoing." *McNamara v. Powell*, 52 N.Y.S.2d 515, 533 (Sup. Ct., Oneida Cty. 1944), *citing, Riggs v. Palmer*, 115 N.Y. 506, 511, 22 N.E. 188 (N.Y. 1889). Compensatory damages in common law misappropriation and unfair competition cases are measured by "the reasonable value" of the plaintiff's concept that was misappropriated. *Gilroy v. American Broadcasting Company, Inc.*, 365 N.Y.S.2d 193, 194 (N.Y. App. 1st Dept. Mar. 6, 1975); *Robbins v. Frank Cooper Associates, et al.*, 14 N.Y.2d 913, 915, 252 N.Y.S.2d 318, 319 (N.Y. 1964). Cases have that have discussed how to calculate such reasonable value in a misappropriation case have used disgorgement of the defendant's profits on the misappropriated

concept as one measure. New York law for common law misappropriation claims provides "three methods of awarding damages for misappropriation of trade secrets - compensation for plaintiff's losses, an accounting of defendant's profits, or a reasonable royalty...." *Topps Co., Inc. v. Cadbury Stani S.A.I.C.,* 380 F. Supp.2d 250, 270 (S.D.N.Y. 2005).[2] In this case, because Fisher-Price made substantial revenues and profits on the misappropriated idea and because Fisher-Price acted in bad faith and also committed an act of unfair competition, the Court should award DI damages based on a full disgorgement of Fisher-Prices profits on the misappropriation.

"The most commonly accepted measure of damages for trade secret misappropriation is the defendant's profits...." *Id.* (*quoting,* Michael A. Rosenhouse, *Proper Measure and Elements of Damage for Misappropriation of Trade Secret,* 11 A.L.R.4th 12 §2(a) (2004)); *see also Electro-Minatures Corp. v. Wenden Co.,* 771 F.2d 23, 27 (2d. Cir. 1985); *Softel, Inc. v. Dragon Medical and Scientific Communications, Inc.,* 118 F.3d 955 (2nd Cir. 1997) (under New York law, disgorgement is an appropriate remedy for the misappropriation of a trade secret and awarding reasonable royalties because defendant made no profits); *Dad's Root Beer v. Doc's Beverages,* 94 F. Supp. 121 (1950)("[o]ne who has gained unlawfully, as a result of unfair competition, shall not retain his profits."); *Miss Susan v. Enterprise & Century Undergarment, Co., Inc.,* 62 N.Y.S.2d 250 (Sup. Ct., App. Div. 1st Dept. 1946).

The *Gilroy* decision is instructive. That case involved a misappropriation of an author's literary property. In evaluating the value of such a subjective property, the *Gilroy* court held that the lower court erred by "limiting plaintiff's recovery to defendant's profits." *Id.* at 194

---

[2] The availability of disgorgement of profits for common law misappropriation of trade secret claims under New York law, which are based on the Restatement of Torts, demonstrates, by analogy, the propriety of awarding such damages in a case of misappropriation of an idea. Other common law claims that routinely invoke disgorgement of profits as the remedy, such as common law breach of fiduciary duty, *see Gomez v. Bicknell,* 756 N.Y.S.2d 209, 214 (N.Y. App. 2d Dept. 2002), further confirm that disgorgement of profits is well-established under New York common law.

(emphasis added). *See also A.F.A. Tours, Inc. v. Whitchurch*, 937 F.2d 82, 87 (2d Cir. 1991); *Electro-Miniatures Corp. v. Wendon Co., Inc.*, 771 F.2d 23, 27 (2d Cir. 1985) (holding that proof of infringer's sales was sufficient to support an award in the corresponding amount to the inventor). *Gilroy* thus establishes that not only is disgorgement of profits a proper remedy for misappropriation under New York law, it should actually be a floor, not a ceiling, to a plaintiff's recovery depending on the value of the plaintiff's property and whether or not defendant did in fact profit from the misappropriated concept.

In the *Topps* case, the Court rejected the defendant's argument that the plaintiff's damages were restricted to an award of reasonable royalties based on the 3% royalty rate in the parties' agreement. The Court in *Topps* held that the defendant could not "seriously contest that an accounting of defendant's profits is a proper remedy in a case concerning misappropriation of trade secrets; a remedy which the Second Circuit has called 'an appropriate measure of damages under New York law.'" *Id*. at 268 (quoting *Softel,* 118 F.3d at 969.[3]

An award of reasonable royalties is typically appropriate where plaintiff's lost profits or defendant's unjust enrichment fail to adequately compensate the plaintiff. *Linkco, Inc. v. Fujitsu, Ltd.,* 232 F.Supp.2d 182, 186 (S.D.N.Y. 2002), *citing, See Vermont Microsystems I,* 88 F.3d 142, 151 (2d Cir. 1996); *University Computing Co. v. Lykes-Youngstown Corp.,* 504 F.2d 518, 535-37 (5th Cir. 1974); *see also* Restatement (Third) of Unfair Competition § 45(1) (use of reasonable royalty more appropriate when plaintiff's loss is greater than defendant's gain).

Here, disgorgement of Fisher-Price's profits is the appropriate remedy because the jury found Fisher-Price liable for misappropriation and unfair competition (*i.e.*, bad faith

---

[3] In *Softel*, an independent software maker's work product was used to produce other programs and video content for the defendant's former customer after the termination of the working relationship. The trial court chose not to consider the plaintiff's trade secret misappropriation claims against the subsequent films, but the Second Circuit remanded the case for consideration of those claims. *Softel* at 967-8.

4

misappropriation). Thus, the jury found that Fisher-Price acted with intent to harm DI and Mr. Reiling by willfully and knowingly using their concept without paying them for it. Accordingly, the Court should award disgorgement not only to ensure that Fisher-Price does not benefit from its wrongful conduct, but also as a deterrent to future conduct. "[D]isgorgement removes an incentive for misappropriating trade secrets by removing the benefit of misappropriation…. Although disgorgement discourages misappropriation, it is not punitive." *W. Mason DDS v. Sybron Corp.*, 955 F. 2d 48, 49 (9th Cir. 1991); *see Maltina Corp. v. Cawy Bottling Co., Inc.*, 613 F. 2d 582, 585 (5th Cir. 1980); *see also Roulo v. Russ Berrie & Co.*, 886 F. 2d 931 (7th Cir. 1989)(profits are awarded for deterrence); *Playboy Enterprises, Inc. v. Baccarat Clothing, Co.*, 692 F.2d 1272 (9th Cir. 1982) (award of nominal damages in a Lanham Act violation case would "encourage a counterfeiter to merely switch from one infringing scheme to another as soon as the infringed owner became aware of the fabrication").

Similarly, several courts have held that the mere payment of a reasonable royalty is disfavored as a measure of damages because of its failure to appropriately compensate the plaintiff and have a deterrent effect. "Nunc pro tunc payment of the royalty fee becomes simply the 'judicial expense' of doing business." *Sands Taylor & Wood v. Quaker Oats Co.*, 34 F.3d 1340, 1351 (7th Cir. 1994), *quoting, Playboy*, 692 F. 2d at 1275. "Determination of a reasonable royalty after infringement, like many devices in the law, rests on a legal fiction. Created in an effort to compensate when profits are not provable, the reasonable royalty device conjures a willing licensor and licensee…" *Id. quoting, Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F. 2d 1152, 1158 (6th Cir. 1978) ("the infringer would have nothing to lose, and everything to gain if he could count on paying only the normal, routine royalty non-infringers might have paid"). That analysis is particularly appropriate in this case. Fisher-Price had the chance to

obtain DI's concept for a reasonable royalty pursuant to a negotiation as is evidenced by the Option Agreement. Fisher-Price chose not to use that negotiated purchase to obtain DI's concept, but as the jury has now found, decided to misappropriate it in bad faith without compensating DI. It would be a perverse use of the law to permit Fisher-Price to benefit from a bargain it chose to ignore and to hold DI to a contract that Fisher-Price refused to honor.

Accordingly, disgorgement of the profits that Fisher-Profits received from the bad faith misappropriation of DI's concept is the proper measure of damages in this case, not the jury's award of $1.7 million for lost royalty revenue.

### B. The Court Should Award DI All of the Profits Fisher-Price Earned from the Misappropriated Idea

"Unjust enrichment is measured by the profits the defendant obtained" from use of the misappropriated item. *Linkco, Inc. v. Fujitsu, Ltd.*, 232 F. Supp. 2d 182, 185-86 (S.D.N.Y. 2002), *citing, Electro-Miniatures Corp. v. Wendon Co.*, 771 F.2d 23, 27 (2d Cir. 1985). Some courts have held that "[a] person who receives confidential information from another and misappropriates it for personal benefit is deemed to hold the proceeds of the misappropriation in a constructive trust for the benefit of the entrusting party." *Bausch & Lomb, Inc., v. Alcon Lab., Inc.*, 64 F. Supp. 2d 233, 254 (W.D.N.Y. 1999), *quoting United States v. Reed*, 601 F. Supp. 685, 700 (S.D.N.Y. 1985), *rev'd on other grounds*, 773 F.2d 477 (2d. Cir. 1985).

In determining whether an award of all of defendant's profits is appropriate, New York courts focus on the specific facts of each case. *Electrolux Corp. v. Val-Worth, Inc.*, 6 N.Y.2d 556, 571 (1959). "Equity will treat the wrongdoer as a trustee for the plaintiff so far as the former has realized profits from its acts." *Id.* (internal quotations and citations omitted). "The infringer is required in equity to account for and yield up his gains to the true owner, upon a principle analogous to that which charges a trustee with the profits acquired by wrongful use of

6

the property of the cestui que trust." *Dad's Root Beer Co. v. Doc's Beverages, Inc.*, 94 F. Supp. 121, 122 (S.D.N.Y. 1950), *aff'd,* 193 F.2d 77 (2d Cir. 1951), *quoting Hamilton-Brown Shoe Co. v. Wolf Bros. & Co.*, 240 U.S. 251, 259 (1916). "It may well be that this accounting will deprive defendants of some profits legitimately earned by them. Also, to some extent, plaintiff may enjoy a windfall. But, in the circumstances, there is an inability to refine proceedings to the point where each individual sale can be analyzed, and an apportionment made of that which defendants might rightfully keep. To do this, defendants bear the burden of demonstration.... Courts are willing to accept the above imperfections rather than coddle the wrongdoer." *Dad's Root Beer Co.,* 94 F. Supp. at 123. (internal citations omitted).

Fisher-Price's "profits are calculated as the gross sales of infringing goods minus the costs that [Fisher-Price] proves are attributable to the production and sale of those goods." *Hamil Am., Inc. v. GFI, Inc.,* 193 F.3d 92, 104 (2d Cir. 1999); *see also Linkco, Inc.*, 232 F. Supp. 2d at 185-86 ("[a]lthough the calculation of the amount of damages is a factual determination, the formula used in making that calculation is a question of law"), *citing, United States use of N. Maltese and Sons, Inc. v. Juno Constr. Corp.*, 759 F.2d 253, 255 (2d Cir. 1985)). In order to recover disgorgement of profits, DI must prove Fisher-Price's gross revenue that is "reasonably related" to the misappropriated products. *See Caffey v. Cook*, 409 F. Supp. 2d 484, 503 (S.D.N.Y 2006) (internal quotations and citations omitted). Fisher-Price then has the burden to prove deductions from the accused sales. *McNamara*, 522 N.Y.S.2d at 531-33; *Corporate Interiors, Inc. v. Pappas*, 784 N.Y.S.2d 919, 2004 N.Y. Misc. LEXIS 294 at *8 (Sup. Ct., Queens Cty., April 7, 2004); *Gomez v. Bicknell*, 302 A.D.2d 107, 756 N.Y.S.2d 209, 215 (App. Div., 2nd Dept. 2002); *Kaufman v. Eagle Lion Classics, Inc.*, 7 Misc.2d 686, 164 N.Y.S.2d 335,

341 (Sup. Ct., N.Y. Cty. 1957); *Buckout v. The City of New York*, 176 N.Y. 363, 367, 68 N.E. 659 (N.Y. 1903).[4]

During the jury trial, DI submitted un-rebutted evidence demonstrating Fisher-Price's net sales solely relating to the action figures containing the misappropriated idea, as well as line extensions and accessories that would not have been sold but for the misappropriated idea. (*See* Joint Trial Exhibit ("JX") 170). JX 170 is a document that Fisher-Price produced during discovery in this case. These records show that DI had net sales of $66,282,800 on products which used or were marketed with the misappropriated concept, and the jury in fact used that number in fashioning its royalty award to DI. Based upon this document and royalty reports produced by Fisher-Price during discovery, DI's damages expert will also testify that Fisher-Price's net sales were $66,282,800 on the accused products and the accessories and line items that the jury determined would not have been sold but for the misappropriation of DI's concept.[5] (*See* Supplemental Demonstrative Exhibit A-4; DI0596; JX 170).

Fisher-Price's utter disregard for DI's ownership of the submitted idea and its cavalier conduct in taking that submitted idea and using it as its own is exactly the type of conduct that calls for an award to DI of all of the profits that Fisher-Price earned from the misappropriated idea. Any lesser award would permit Fisher-Price to merely pay the 'judicial expense' of doing business," *Sands Taylor & Wood v. Quaker Oats Co.*, 34 F.3d 1340, 1351 (7th Cir. 1994), quoting *Playboy Enters., Inc. v. Baccarat Clothing Co.*, 692 F.2d 1272, 1275 (9th Cir. 1982), and fails to fully compensate DI for the damages it has suffered at Fisher-Price's hands. Thus the

---

[4] This is consistent with the statutory approach for federal trademark and copyright cases, where the defendant bears the burden of proving deductible costs and expenses after a plaintiff has proven gross sales. 15 U.S.C. §1117(a); 17 U.S.C. §504(b).

[5] This Court charged that the jury could only award damages on the accessory and line extension products if it found such product sales were causally tied to the misappropriated idea. (Jury Instructions at 37). The jury made such a finding and awarded damages on the four accessory products – Aquatic Rescue Command Center, Mountain Action Command Center, Mission Select Fire Truck and Mission Select Police Cruiser - upon which DI sought damages. (Verdict Form at 3).

Court may properly award $66,282,800 as the proper measure of disgorgement damages for the misappropriation and unfair competition which the jury has found that Fisher-Price has committed.

### C. The Court Should Disallow Further Deductions From Fisher-Price's Gross Sales

#### 1. Fisher-Price Has Not Proffered Sufficient Evidence of Deductions

A court may, in its discretion, deduct from the defendant's gross profits certain expenses incurred while garnering the illegal profits. *Litton Industries, Inc. v. Lehman Bros. Kuhn Loeb, Inc.*, 734 F. Supp. 1071, 1077 (S.D.N.Y 1990), *rev'd on other grounds*, 967 F.2d 742 (2d Cir. 1992). However, it is well settled that the defendant cannot merely group expenses under broad categories of business costs and expect deductions from the disgorgement amount without providing sufficient supporting evidence. *S.E.C. v. Benson*, 657 F. Supp. 1122, 1133-34 (S.D.N.Y. 1987).

In many cases involving disgorgement, a defendant will attempt to deduct overhead expenses for the production of the misappropriated or infringed product. "The Second Circuit employs a two step procedure to calculate overhead. The first step is to determine what overhead expense categories (such as rent, business, entertainment, personnel and public relations) are actually implicated by the production of the infringing product.... The second step is to arrive at a fair, accurate, and practical method of allocating the implicated overhead to the infringement." *Burns v. Imagine Films Entm't, Inc.*, 2001 U.S. Dist. LEXIS 24653 at *18 (W.D.N.Y. Aug. 23, 2001), *citing, Hamil Am., Inc.*, 193 F.3d at 105.

Fisher-Price has the burden to demonstrate what overhead expenses "are actually implicated in the production of the infringing product." *Caffey*, 409 F. Supp. 2d at 504, *citing*

*Hamil Am., Inc.*, 193 F.3d at 106. Fisher-Price must also provide the Court with a proposed "fair and acceptable formula for allotting a share of overhead expenses to the infringed work." *Id.* Moreover, "[a]ny uncertainty as to profits that is caused by the defendant's failure to keep adequate records of costs will be resolved in favor of the plaintiff." *Id.*

In this case, Fisher-Price has not, and cannot, prove a sufficient nexus between its overhead expenses and the accused products. Indeed, Fisher-Price has proffered no evidence in this case that would permit it to make such an argument. Likewise, Fisher-Price's own expert has provided no such evidence. At this point in the litigation, Fisher-Price should be barred from attempting to introduce any such evidence. At best, an argument for the deduction of overhead would require the Court to speculate as to what percentage of Fisher-Price's total overhead expenses specifically apply to the accused products. Such speculation by the Court would permit Fisher-Price to gain from its own inability or conscious failure to provide sufficient proof. Under New York law, any confusion or conflict with respect to deductions from sales must be resolved in favor of DI. *Id.* Accordingly, the Court should reject any argument from Fisher-Price that would require speculation as to deductions from sales. In this context the disgorgement should be based on the $66,282,800 in "net sales" which Fisher-Price has disclosed and has put before the jury and the court as a joint exhibit.

### 2. Only Incremental Expenses Are Deductible

The general rule regarding deductions from sales for purposes of disgorgement of profits is that only incremental expenses are deductible, not fixed expenses. *See, generally, McNamara v. Powell*, 52 N.Y.S.2d 515 (Sup. Ct. 1944). Incremental expenses are expenses that would not have been incurred *but for* the sale of the accused products, whereas fixed expenses are those that would have been incurred regardless of the sale of the accused products. *Carboline Co. v.*

*Jarboe*, 454 S.W.2d 540, 554 (Mo. 1970) (deductible expenses must be those necessarily incurred in the unlawful venture, which would not have been incurred but for engaging in such venture; where the accused product is one of several produced by defendant, only the increase in expenses that can be related to the accused product should be allocated to that product).

For example, courts have permitted deductions for business expenses, but typically only to the extent that such expenses can be shown to be directly attributable to the sale of the accused products. *McNamara v. Powell*, 52 N.Y.S.2d at 526-27. In *McNamara*, the defendant misappropriated a muffler design from an inventor, resulting in sales of mufflers that incorporated the design. In determining profits for disgorgement purposes, the Court stated:

> "expenses are proper deductions in arriving at profits if they can be attributed directly to the offending or infringing product or if such segregation be impossible, deduction may be made by apportionment. When there is no sound basis for an apportionment, no allowance can be made and the loss caused by the co-mingling or confusion must fall upon the one responsible for the failure to keep accurate and complete records by means of which segregation or approximation might have been possible."

*Id.* at 531, *citing Computing Scale Co. v. Toledo Computing Scale Co.*, 279 F. 648, 673 (7th Cir. 1921) ("If a manufacturer . . . decides to chance an unlicensed use, he should realize that he may be caught by a final decree on the merits and be ordered to respond accordingly; and, so realizing, he should be held to the duty of keeping separate and accurate records of all his infringing acts; and, on his failure to keep such records, the court, in measuring damages on account of his trespasses, should resolve all doubts against him"), *and citing Michel Cosmetics, Inc. v. Tsirkas*, 282 N.Y. 195, 203 (1940) ("The defendants are wonton wrongdoers and in such case every doubt and difficulty should be resolved against them").

The issue of allowable deductions from sales often is raised in the context of misappropriation of trade secret cases, an analogous situation. Courts have typically permitted

11

deduction of only those expenses directly attributable to the manufacture and marketing of accused products. *See McNamara*, 52 N.Y.S.2d at 526-27. In refusing to allow other deductions, however, some courts have reasoned that it is only proper to allocate a portion of a company's expenses to accused products when the manufacture or marketing of those products increases such expenses. *Carter Prods., Inc. v. Colgate-Palmolive Co.*, 214 F. Supp. 383, 401 (D. Md. 1963). Otherwise, the defendant would be permitted to gain from its own wrongdoing. *Id.* For example, in the context of trade secret cases, New York courts have held that deductions for items such as printed advertising matter and salesmen's commissions were not deductible where: (1) the advertising matter promoted many of defendant's products; (2) treatment of commissions made it impossible to know the sums actually paid; and (3) the defendant failed to provide any sound basis for apportioning such expenses. *See McNamara*, 52 N.Y.S.2d at 531-32.

In addition, New York courts have held that such items as bad debt expense, legal fees and income taxes are not deductible. *Id.* at 529-30; 534-35. This is because bad debt expense is not an element of cost, but rather, is in the nature of a business loss which cannot be classified with other expenses incurred in making the sales which created the profit. *Id.* The defendant's profits must be measured by the sales less only those costs incurred in producing and marketing the accused products. *Id.* Likewise, legal expenses are typically not deductible unless they are directly or indirectly connected with the production of the accused products. *Id.* Also, income taxes paid by the defendant are generally not deductible. In such situations, courts have reasoned that the profit on which defendant paid the income taxes did not belong to the defendant, and equity would not justify a deduction from sales where the plaintiff would be called upon to pay income taxes in the future on the amount of its recovery. *Id.*

Trademark cases are also analogous for purposes of analysis of deductible expenses. Under the Lanham Act, one of the measures of damages available to a plaintiff in a trademark infringement action is defendant's profits. 15 U.S.C. § 1117. Under trademark law, "the plaintiff has the burden of showing the amount of the defendant's sales of the infringing product. The defendant has the burden of showing all elements of cost and other deductions." *Maltina Corp. v. Cawy Bottling Co.*, 613 F.2d 582, 585-86 (5th Cir. 1980); *see also* 15 U.S.C. § 1117(a). In *Maltina*, the defendant attempted to claim deductions for general overhead and other items that it did not show were attributable to the accused products. The decision of the District Court to refuse to allow the deductions was affirmed, as the Court "could not determine whether the advertising, sales, commissions, legal fees, telephone, and other expenses claimed by [defendant] related to [accused product] sales or to the sales of other products." *Id.* at 586. Because the defendant failed to meet its burden of proof, the deductions were not allowed. The Court also concluded that defendant's claims for deduction of overhead expenses were not allowable, noting that there was no evidence in the record that production of the accused products actually increased overhead expenses. *Id.* The Court held that "a proportionate share of overhead is not deductible when the sales of an infringing product constitute only a small percentage of total sales." *Id.*

In this case, Fisher-Price has produced no evidence, via financial records, expert reports, testimony or otherwise, that would meet its burden to prove deductible expenses. The record is simply devoid of any such evidence. Moreover, Fisher-Price is a subsidiary of Mattel, Inc., one of the largest toy companies in the world. Fisher-Price's net sales of the accused products in this case, approximately $66 million, are only a small percentage of Mattel's total annual revenues,

13

which are in the billions of dollars. Therefore, a proportionate share of general overhead expenses should not be deducted in this case with respect to the accused products.

## CONCLUSION

Based on the evidence adduced at the jury trial and which plaintiff expects will be adduced at the subsequent hearing on disgorgement, DI respectfully urges the Court to award damages based on the profits made by Fisher-Price as a direct result of its misappropriation and unfair competition. That disgorgement award should be based on the $66,282,800 in proven net sales that Fisher-Price had of products which directly relate to the idea it misappropriated from DI.

Dated: Norwalk, Connecticut
      April 10, 2006

Respectfully Submitted,

GRIMES & BATTERSBY, LLP

By: _____
Gregory J. Battersby (Bar No. 7386)
Edmund J. Ferdinand, III (Bar No. 21287)
Russell D. Dize (Bar No. 23064)
Susan Schlesinger (Bar No. 26625)
488 Main Avenue, Third Floor
Norwalk, Connecticut 06851-1008
(p) (203) 849-8300
(f) (203) 849-9300

SANDAK HENNESSEY & GRECO, LLP
Jay H. Sandak, Esq.
Peter M. Nolin, Esq.
707 Summer Street
Stamford, Connecticut 06901-1026
(p) (203) 425-4200
(f) (203) 325-8608
Attorneys for Plaintiff
Design Innovation, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on April 10, 2006 a copy of the foregoing Trial Brief was served on all counsel of record below by U.S. Mail, First Class, postage prepaid, with a courtesy copy sent via electronic means to:

Jacqueline Bucar Esq.
Robert Allen, Esq.
Tyler Cooper & Alcorn, LLP
205 Church Street
New Haven, Connecticut 06510

Bradford S. Babbitt, Esq.
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, CT 06103-3597

Robert J. Lane, Jr., Esq.
Jodyann Galvin, Esq.
HODGSON RUSS LLP
One M&T Plaza, Suite 2000
Buffalo, New York 14203-2391

William Wallace, Esq.
Jay Alexander, Esq.
Milbank, Tweed, Hadley & McCoy-DC
1825 Eye St., N.W., Suite 900
Washington, DC 20006

_____
Edmund J. Ferdinand, III