## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

DESIGN INNOVATION, INC.,                                :
                                                        :
                                   Plaintiff            :
                                                        :
        v.                                              :        Civil No. 303CV222(JBA)
                                                        :
FISHER-PRICE, INC.                                      :
                                                        :
                                   Defendant.           :
                                                        :
                                                        :

### FISHER-PRICE, INC.'S TRIAL MEMORANDUM
### REGARDING DISGORGEMENT ISSUES

Defendant Fisher-Price respectfully submits this Trial Memorandum pursuant to

the Scheduling Order dated February 17, 2006. Fisher-Price maintains that plaintiff Design

Innovation ("DI") is not entitled to a disgorgement of profits as a matter of law. Fisher-Price's

arguments to that effect are set forth in its concurrently filed memorandum in support of its

motion to cancel the disgorgement hearing and in this Trial Brief.

**1.      Trial Counsel for Fisher-Price, Inc.**

*Hodgson Russ LLP*
Robert J. Lane, Jr.
Jodyann Galvin
One M&T Plaza, Suite 2000
Buffalo, NY 14203
Telephone: (716) 856-4000
Facsimile: (716) 849-0349

*Tyler Cooper & Alcorn, LLP*
Jacqueline D. Bucar
205 Church Street
New Haven, CT 06509-0906
Telephone: (203) 784-8269
Facsimile: (203) 865-7865

*Milbank Tweed Hadley & McCloy LLP*
William E. Wallace, III
Jay I. Alexander
International Square Building
1825 Eye Street, N.W., Suite 1100
Washington, D.C. 20006
Telephone: (202) 835-7500
Facsimile: (202) 263-7511

**2.    Jurisdiction**

Plaintiff claims jurisdiction pursuant to 28 U.S.C. § 1332.

**3.    Jury/Non-Jury**

Design Innovation has agreed to a non-jury trial on its claim for a disgorgement of
defendant's profits relating to the Rescue Heroes products at issue.

**4.    Length of Trial**

Subject to (i) the Court's ruling on Fisher-Price's Motion to Cancel Hearing, and (ii)
Fisher-Price's objection to the expert testimony of Mr. Ratliff, defense counsel
anticipates that the trial will require 3 - 4 days.

**5.    Further Proceedings**

Fisher-Price has filed a Motion for Judgment as a Matter of Law or in the Alternative for
a New Trial.  If the motion for a judgment as a matter of law is granted, the result will be
the entry of a final judgment and a conclusion to the proceedings in this Court.  Fisher-
Price has also filed a Motion to Cancel Hearing.  If the relief requested by this motion is
granted, there will be no need for a trial on plaintiff's claim for a disgorgement of profits.
DI and Victor Reiling Associates have filed a joint Notice of Appeal, which has been
withdrawn as prematurely filed.

**6.    Fisher-Price's Statement of the Nature of Case**

Fisher-Price incorporates the "Statement of the Nature of the Case" set forth in its
previous Trial Memorandum dated January 3, 2006.

7.    **Fisher-Price's List of Potential Witnesses**

Fisher-Price currently anticipates potentially calling the following witnesses:

1.    Ronald Fick
      Fisher-Price, Inc.
      636 Girard Avenue
      East Aurora, NY 14052

      Mr. Fick is the Director of Brand Analysis at Fisher-Price and may testify about
      sales of the products accused by plaintiffs and other financial information relating
      to plaintiff's claim for a disgorgement of profits.

2.    Abram Hoffman
      Abram E. Hoffman, LLC
      3330 Stuyvesant Place, N.W.
      Washington, DC 20015-2454

      Mr. Hoffman is a designated testifying expert witness and is expected to testify
      regarding the subjects contained in his expert reports.

3.    Christopher Pardi
      Fisher-Price, Inc.
      636 Girard Avenue
      East Aurora, NY 14052

      Mr. Pardi is a Director of Marketing at Fisher-Price. He may testify about the
      marketing efforts for the Rescue Heroes line and the accused products.

4.    Charles Scothon
      Mattel, Inc.
      333 Continental Blvd.
      Mail Stop M1-0900
      El Segundo, CA 90245

      Mr. Scothon is a General Manager and Senior Vice President of Girls Marketing at
      Mattel, Inc. and may testify about certain of the products accused by plaintiffs.


Fisher-Price reserves the right to call any witness previously identified in the January 3, 2006
Trial Memorandum, including a corporate representative of DI.

8.    **Exhibits**

Fisher-Price's Exhibit List has been filed with the January 3, 2006 Trial Memorandum.

9.    **Legal Issues**

Fisher-Price submits legal analysis on the following five issues, each of which will arise during the course of the trial:

1.    Ratliff's January 2006 report is unreliable and any testimony relating to its content should be excluded.

2.    An award to DI of Fisher-Price's profits would be unjust.

3.    The equitable remedy of disgorgement is not available because DI has an adequate remedy at law.

4.    DI has not carried its burden of showing that the Reel Heroes concept was the proximate cause of sales of the accused products, or of apportioning Fisher-Price's profits between DI's concept on the one hand and Fisher-Price's preexisting product line and other contributions on the other hand.

5.    Because DI claims only a one-half ownership of the Reel Heroes concept, the starting point for computing any disgorgement award to DI should be only one-half of Fisher-Price's profits.

First, the expert opinion testimony of plaintiff's expert, Mr. Ratliff, as reflected in the plaintiff's eve-of-trial expert report, is inadmissible as a matter of law because: (1) he improperly assumes that general overhead is not deductible in calculating disgorgement damages; (2) he improperly uses the publicly reported company-wide profit margins of Mattel and Hasbro and simply assumes that the products at issue here had incremental margins similar to the average overall profit margins of those two companies; and (3) he fails to apportion profits between Fisher-Price's intellectual property and DI's intellectual property. [1]

---

[1]    Fisher-Price also objects to plaintiff's attempt to modify and supplement further the opinion of its expert subsequent to January 2006. More specifically, Fisher-Price objects to the Report filed on March 31, 2006 which includes new analysis and new including a new opinion, by way of new Demonstrative Exhibits which purport to analyze "Unjust Enrichment Damages." Not only is the entire supplement untimely, there has never been a claim in this case for unjust enrichment.

Second, as an equitable remedy, disgorgement is not available when the circumstances would make such an award unjust. In the case at bar, disgorgement would be unjust on several grounds, including: the gross disparity between the windfall-award sought by DI and the amount of actual damages found by the jury, the small contribution allegedly made by DI to the success of the accused products (which at most added DI's minor modification to a few products in an existing and successful product line), and the complete lack of proof by DI that its concept was responsible in any meaningful way for sales of these already-successful products.

Third, disgorgement is inappropriate when the plaintiff's actual losses can be calculated. Here, DI has tried its damages case to the jury, has presented its calculation of damages, and has received an award. Accordingly, the alternative remedy of disgorgement is not available to DI under these circumstances.

Fourth, disgorgement requires an apportionment between profits earned by the defendant's own efforts and any that are attributable to the plaintiff's contribution. In the case at bar, the accused products are modifications to certain products in an existing Fisher-Price product line. As such, the character and features of the accused products are overwhelmingly Fisher-Price's existing intellectual property that long predated the Reel Heroes concept, *e.g.*, Rescue Heroes figures, characters, trademarks, and copyrights. DI cannot establish that Fisher-Price's alleged misappropriation was the proximate cause of the profits DI seeks to disgorge. DI introduced no evidence at trial, and its damages expert offers no opinion, that sales of the Fisher-Price products at issue were the proximate result of the Reel Heroes concept and not based on the existing popularity of the well-established Rescue Heroes product line itself. If the Court decides that disgorgement is appropriate, however, the jury has already determined the correct apportionment through its award of reasonable royalties to DI. In any event, an absolute ceiling

on the value of DI's contribution is established by the three percent royalty agreed to by the parties in the Option Agreement.

Fifth, the profit base that forms the starting point for computing any disgorgement award to DI should be only one-half of Fisher-Price's profits, since DI admits that it owned only a one-half interest in the Reel Heroes concept (the other one-half interest being owned by Reiling Associates).[2] Further, because Reiling Associates noticed an appeal of the Court's dismissal of its claims, an award to DI based on the full amount of Fisher-Price's profits would expose Fisher-Price to the risk of a double payment if such dismissal is reversed on appeal.

## I. RATLIFF'S JANUARY 2006 REPORT IS UNRELIABLE AND ANY TESTIMONY RELATING TO ITS CONTENT SHOULD BE EXCLUDED

On January 3, 2006, DI's damages expert, Alan Ratliff, issued a supplemental damages report. Ratliff's expert report is flawed. The three most serious flaws in calculating disgorgement damages, which render the opinions expressed in the Ratliff Report inadmissible, are: (1) Ratliff assumes that general overhead is not deductible in calculating disgorgement damages, and that such damages should be calculated based on an "incremental profits approach;" (2) Ratliff uses publicly reported company-wide profit margins of Mattel and Hasbro and simply assumes that the products at issue here had incremental profit margins similar to the average overall profit margins of those two companies; and (3) Ratliff fails to apportion Fisher-Price's profits between DI's concept on the one hand and Fisher-Price's preexisting product line and other contributions on the other hand.

---

[2] As noted, this is only the starting point for computation of an award; apportionment between the value contributed by DI and that created by Fisher-Price itself would still be required, as would deductions for costs, expenses, and the like that reduce the amount of profits.

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993),

requires the court to "ensure that any and all scientific testimony or evidence admitted not only is

relevant, but ***reliable***" (emphasis added). This gate-keeping function applies to all specialized

expert testimony. *Brooks v. Outboard Marine Corp.*, 234 F.3d 89, 91 (2d Cir. 2000).

> [A]s gate-keeper, the Court must first determine whether [the
> expert's] proffered testimony rests on a reliable foundation — that
> is, whether his testimony is "more than subjective belief or
> unsupported speculation." As the Second Circuit stated, "Expert
> testimony should be excluded if it is speculative or conjectural, or
> if it is based on assumptions that are so unrealistic and
> contradictory as to suggest bad faith or to be in essence an apples
> and oranges comparison." . . . "[N]othing in either *Daubert* or the
> Federal Rules of Evidence requires a district court to admit opinion
> evidence which is connected to existing data only by the ipse dixit
> of the expert. A court may conclude that there is simply too great
> an analytical gap between the data and the opinion proffered."

*MTX Communications Corp. v. LDDS/Worldcom, Inc.*, 132 F. Supp. 2d 289, 291 (S.D.N.Y.

2001). *See also Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 75 F. Supp. 2d 235,

238-39 (S.D.N.Y. 1999) (damages expert testimony excluded because it would "not assist the

trier of fact" where the expert simply assumed without foundation that the damages he calculated

were caused by defendant).

Accordingly, in evaluating whether the opinions disclosed in Ratliff's January

2006 report are admissible, this Court should consider whether Ratliff's "proffered testimony

rests on a reliable foundation," whether it is based on unrealistic assumptions, whether it is

"connected to existing data" by more than his unsupported say-so, and whether it is "relevant in

that it 'fits' the facts of this case."[3]  These considerations require exclusion of Ratliff's proposed

testimony, as analyzed below.

## A.    General Overhead Is Properly Deducted in Computing Disgorgement

In his January 2006 report, Ratliff indicates that he has calculated disgorgement

damages according to his theory of "incremental profits."  Ratliff Report ¶ 27.  Ratliff argues that

only "direct and incremental costs that were incurred to produce the associated accused

revenues" may be deducted "in determining the amount of profits to be disgorged."  Ratliff

Report ¶¶ 8-9.  Ratliff's disgorgement calculation is  wrong for two reasons.

First, it is contrary to New York law, which the Court has determined governs

DI's misappropriation and unfair competition claims.  In those limited circumstances where New

York law uses a defendant's profits as a measure of plaintiff's loss, it is well-established that

general overhead expenses, including those expenses not directly attributable to the production

of the accused products, are deductible.[4]

---

[3]     Ratliff's opinions concerning "unjust enrichment" are irrelevant and inadmissible because they do not fit the facts of this case. There has never been a claim for unjust enrichment asserted in this case.

[4]     *See Cutter v. Gudebrod Bros. Co.*, 190 N.Y. 252, 254-55 (1907) (holding that, where plaintiff sought an accounting of defendant-competitor's profits for using plaintiff's name to sell its goods, *defendant was entitled to deduct its general expenses from its gross profits even though defendant had experienced no increase in its expenses* in connection with the production and sale of the accused goods); *Conviser v. J.C. Brownstone Co.*, 120 Misc. 92, 93, 197 N.Y.S. 682, 682 (S. Ct. Kings Co. Dec. 1922) ("In [New York] the law seems to be settled that in determining the profits made by a defendant from unfair competition he is entitled to deduct a proportionate part of his general expense, *even though no added expense was caused by the doing of the business which constituted the unfair competition*.") (emphasis added); *Softel, Inc. v. Dragon Med. & Sci. Communications, Ltd.*, 891 F. Supp. 935, 941-42 (S.D.N.Y. 1995) ("Courts have allowed the deduction of a variety of expenses, including an allocation of fixed cost overhead expenses"). *See also Bates Chevrolet Corp. v. Haven Chevrolet, Inc.*, 16 A.D.2d 917, 917 (1st Dep't 1962) (holding that the trial court improperly failed to deduct overhead expenses from the calculation of profits ) (citing *Cutter* and *Tremaine v. Hitchcock & Co.*, 90 U.S. 518 (1875)); *Basic Am., Inc. v. Shatila*, 133 Idaho 726, 746, 992 P.2d 175, 195 (1999) (in a misappropriation of trade secret case, permitting the defendant to

Footnotes continued on next page.

Second, Ratliff purports to base his view of disgorgement on federal copyright law (*see* Ratliff Report ¶ 15) which is inapposite because disgorgement of a defendant's profits are specifically permitted by the copyright statute. Moreover, even in the copyright context, the Second Circuit has rejected Ratliff's theory of "incremental profits." In *Hamil America, Inc., v. GFI, Inc.*, 193 F.3d 92, 106 (2d Cir. 1999), the Second Circuit reversed a district court decision in a copyright infringement case which "prohibited [defendant] from deducting any overhead whatsoever unless [defendant] could show that its overhead was actually increased by its production of [the accused product]."[5] Relying on *Sheldon v. Metro-Goldwyn Pictures Corp.*, 106 F.2d 45 (2d Cir. 1939), the Second Circuit ruled that overhead expenses, including those "relating to creating and maintaining a 'supervising staff and organization' were appropriately deducted from gross revenue" in calculating disgorgement damages. 193 F.3d at 104-05. The Second Circuit went on to find that a defendant need not show that any particular expense was related to the production of the infringing product, but only that the "category of overhead" has a

---

Footnotes continued from previous page.

deduct "other operating expense[s]," including general and administrative overhead expenses "equivalent to the [accused product's] percentage of [defendant's] total sales" in computing disgorgement damages). *See also Tremaine v. Hitchcock & Co.*, 90 U.S. 518 (1875) ("[w]e cannot see why the general expenses incurred by defendants in carrying on their business, such expenses as store rent, clerk hire, fuel, gas, porterage, etc., do not concern one part of their business as much as another" and allowing deduction of these expenses in calculating disgorgement damages).

[5]    The district court's damages methodology rejected by the Second Circuit was identical to that proposed by Ratliff. *See* 193 F.3d at 106 (quoting the district court as stating that: "The Court must examine the facts to determine those *incremental costs* of the infringer that were increased as a direct result of the production and sale of the infringing goods . . . and to separate them from those fixed costs that would have been incurred in any event") (emphasis added). *See also* 193 F.3d at 104 (describing the district court as having "rejected [defendant's] submission to the extent that it sought deductions for overhead expenses, stating that [defendant] 'would have had general administrative expenses of "X" amount whether [it] sold [the infringing] goods or not'").

nexus to "the production or sale of the infringing product." If so, "a court need not scrutinize for inclusion or exclusion particular items within the overhead category." 193 F.3d at 105.[6]

Accordingly, Ratliff's "incremental profits" methodology of calculating disgorgement damages is directly contrary to both New York law and the law of the Second Circuit. For this reason, Ratliff's testimony on this topic should be excluded.[7]

**B.      Ratliff's Use of the Reported Profit Margins of Mattel and Hasbro in Calculating Disgorgement Is Speculative Because it is not Connected to the Specific Products at Issue**

In his January 2006 report, Ratliff recognizes that it is necessary to deduct at least some costs associated with production of the products at issue. Ratliff Report ¶ 8. Because DI never sought any discovery relating to Fisher-Price's costs or expenses, Ratliff has no information on which to base his calculation of those costs. Lane Dec. ¶ 4. Lacking the information necessary to do a proper calculation of his erroneous "incremental profits" figure, Ratliff has resorted to pure speculation by relying on the incremental margins publicly reported

---

[6]      *See also In Design v. K-Mart Apparel Corp.*, 13 F.3d 559, 565-66 (2d Cir. 1994) (indicating that "overhead expense is also a proper deduction from the profits of an infringer" if they "contributed to the production of the infringing items"; but not requiring (as Ratliff did) a showing that the overhead expense would have been avoided had the infringing item not been produced), *overruled, in part, on other grounds, by Clark v. Judson Bay Music*, 1996 U.S. App. LEXIS 24245 (2d Cir. Sept. 26, 1996). *See also* 13 F.3d at 566-67 (ruling that "we include income tax expenses in the deductible overhead in determining a defendant's net profit" where the defendant is a nonwillful infringer).

[7]      *See Fashion Boutique*, 75 F. Supp. 2d at 239-41 (excluding damages expert opinion that failed to conform to New York law as irrelevant); *Hebert v. Lisle Corp.*, 99 F.3d 1109, 1117 (Fed. Cir. 1996) ("encourag[ing] exercise of the trial court's gatekeeper authority when parties proffer, through purported experts, not only unproven science . . . but markedly incorrect law") (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S.Ct. 2786 (1993)). *See also Barban v. Rheem Textile Sys., Inc.*, 2005 U.S. Dist. LEXIS 5996, at *18-19 (Feb. 11, 2005) (rejecting expert's report and deposition testimony for reasons including contradiction of a "well-established principle in tort law"). *See also Bickerstaff v. Vassar College*, 196 F.3d 435, 449-50 (2d Cir. 1999) (statistical expert's opinion excluded as irrelevant and not probative where it failed to account for major variables). Here, Ratliff's opinion failed to account for costs and expenses that are clearly deductible under controlling New York and Second Circuit precedent.

by Mattel and Hasbro over the last three years. Ratliff Report ¶ 11. In so doing, Ratliff has

simply assumed that the Rescue Heroes products at issue in this case enjoyed the same

incremental profit margin that Mattel and Hasbro reported on a company-wide basis.

There is no rational support for this assumption, and Ratliff does not attempt to

provide any. *See McGlinchey v. Shell Chem. Co.*, 845 F.2d 802, 807 (9th Cir. 1988) (excluding

expert's damages opinion that "rests on unsupported assumptions"). Indeed, Ratliff claims in his

report that "accused sales are $105,496,320"[8] over a four-year period. As DI pointed out at trial,

Mattel's sales (including those of Fisher-Price) are billions of dollars ***annually***. The accused

Rescue Heroes products account for less than one percent of Mattel's sales during the time at

issue. There is simply no basis for Ratliff's use of an average of Mattel and Hasbro profit

margins as a surrogate for the actual profit margins associated with the products at issue.[9]

Caselaw is clear that profit calculations which rely on data that include products or businesses

unrelated to the accused products are irrelevant and must be excluded. *E.W. Bruno Co. v.*

*Friedberg*, 28 A.D.2d 91, 93, 281 N.Y.S.2d 504, 506 (1st Dep't 1967) (excluding damages

calculations based on data from defendant's entire "import department" because the

misappropriation claim related only to defendant's "hair brush importation" business);

---

[8]      This figure has recently been adjusted substantially downward to reflect this Court's dismissal of DI's
claims against four Optic Force Rescue Heroes figures and DI's abandonment at trial of its claims against
the Voice Tech vehicles.

[9]      Mattel's company-wide profit margins are derived from a number of Mattel, Fisher-Price and American
Girl products (such as Barbie, Hot-Wheels, Matchbox, Uno, Scene-It, Little People, PowerWheels, and
Babygear juvenile products) that have no relationship whatsoever to the accused Rescue Heroes products.
Moreover, Mattel's revenues are generated from different business models (including catalogue
businesses, retail stores, movies & entertainment, and out-licensing of the Mattel brands for such products
as books, clothing, beauty supplies, music and party supplies). There can be wide variation between profit
margins depending on the business model and/or product line. By definition, Hasbro's incremental profit
margin has no relation whatsoever to the Rescue Heroes product line.

*Am. Elecs., Inc. v. Neptune Meter Co.*, 33 A.D. 2d 157, 158-60, 305 N.Y.S.2d 931, 933-34 (1st Dep't 1969) (excluding damages calculation based on plaintiff's estimated profit percentage on all sales for a period of years prior to the alleged unfair competition and requiring that damages be calculated based on the costs and revenues associated with the specific contract that was the subject of the unfair competition/misappropriation claim).

Moreover, DI served interrogatories seeking Fisher-Price's profit margins for the products at issue, and Fisher-Price provided this information by way of sworn interrogatory answers. *See* Lane Dec., Exhibit C. Here, Ratliff ignored the only specific profit margin data he was provided by Fisher-Price in favor of speculating (with no basis whatsoever) that the profit margins for the Rescue Heroes products at issue would be the same as an arbitrarily selected average of profit margin data for Mattel and Hasbro. *See MTX Communications*, 132 F. Supp. 2d at 292 (excluding damages opinion as "neither reliable nor relevant" where expert "ignored financials and quality of management, . . . employed unreasoned, untestable information from the author of the valuation chart" and ignored "the fact that the company was indeed insolvent under the balance sheet definition of insolvency"). In these circumstances, DI has no excuse for the speculative nature of Ratliff's profit calculations. Therefore, those profit calculations must be excluded. *McGlinchey*, 845 F.2d at 807 (excluding expert damages testimony based on an unsupported assumption that sales would grow 41% per year); *MTX Communications*, 132 F. Supp. 2d at 291-92 (excluding expert damages testimony based on an unsupported assumption that a 6.5 "multiple" of billings should be used for valuation purposes as speculative and not probative).