C.    **Ratliff's Failure to Provide for Apportionment**
      **Requires Exclusion of His Disgorgement Calculations**

DI admits that the Rescue Heroes products at issue here are comprised of intellectual property owned by Fisher-Price, as well as DI.[10]  Where the success and profitability of an accused product, such as the Rescue Heroes figures, is due in part to the product's pre-existing goodwill, together with the defendant's marketing and development efforts, disgorgement of the entirety of defendant's profits on the product is inappropriate. *See, e.g., Santa's Workshop, Inc., v. Sterling,* 2 A.D.2d 262, 266-67, 153 N.Y.S.2d 839, 844 (3d Dep't 1956) (declining to award defendant's profits where "[t]here are factors other than defendant's wrong which seem to have entered into the increase in defendant's admissions, including both the enlargement of his animal exhibits, the general increase in business in the area, and his advertising other than that which may be regarded as engrafted on plaintiff's promotion").

As a matter of law, any calculation of disgorgement damages must include apportionment between the plaintiff's and the defendant's intellectual property. *Alcatel USA, Inc. v. Cisco Systems, Inc.*, 239 F. Supp. 2d 660, 670-73 (rejecting as "conjectural" and "speculative" an expert opinion that failed to properly apportion).  In his report, Ratliff does not deny that a substantial amount of the profits on the products at issue are attributable to Fisher-Price's pre-existing intellectual property.  However, he seems to argue that, as a matter of law, apportionment should not be required. Ratliff Report ¶¶ 15-18.  It is well-settled that an expert

---

[10]    DX 864 (2d Amended Complaint) ¶ 2 ("In 1998, Plaintiffs submitted to Fisher-Price a novel concept for adding an animation reel component to Fisher Price's existing 'Rescue Heroes' toy line") & ¶ 30(A) ("Plaintiff's basic concept was to integrate Fisher-Price's *successful* 'Rescue Heroes' figures and cartoon-like images by using a removable backpack that could be made for a specific character.  It was designed to mount to each 'Rescue Heroes' figure and show animated images of that character in action") (emphasis added).

may not testify as to conclusions of law. *Hygh v. Jacobs,* 961 F.2d 359, 363 (2d Cir. 1992)

("[t]his circuit is in accord with other circuits in requiring exclusion of expert testimony that

expresses a legal conclusion"); *Rondout Valley Cent. Sch. Dist. v. Coneco Corp.,* 321 F. Supp. 2d

469, 480 (N.D.N.Y. 2004) ("it is axiomatic that an expert is not permitted to provide legal

opinions, legal conclusions, or interpret legal terms; those roles fall solely within the province of

the court").

In any event, because the legal conclusions underlying his damages calculations

are wrong, Ratliff's opinions based on those incorrect legal conclusions must be excluded. [11]

## D.    Ratliff's Opinion Must Be Excluded
## Due to Failure of Proof of Causation

A damages expert's opinion will be excluded if he seeks to testify to damages that

have not been shown by competent evidence to have been *caused* by the defendant's alleged

wrongful conduct. *Fashion Boutique,* 75 F. Supp. 2d at 238-39 (excluding expert's damages

calculation due to lack of evidence of causation and noting that a damages expert may not

himself render an opinion on causation because, while he is an expert in analysis and calculation

of damages, "[a]ny opinions regarding causation . . . are outside of his expertise"); *McGlinchey,*

845 F.2d at 806-07 (expert opinion on damages excluded where there was no concrete evidence

that damages at issue were caused by defendants); *Nichols-Morris Corp., v. Morris,* 174 F. Supp.

691, 699 (S.D.N.Y. 1959) (rejecting expert testimony regarding damages because earnings base

---

[11]        *Hebert,* 99 F.3d at 1117 ("encourag[ing] exercise of the trial court's gatekeeper authority when parties
proffer, through purported experts, not only unproven science . . . but markedly incorrect law")(citing
*Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993)). *See also Barban,* 2005 U.S. Dist. LEXIS
5996, at * 18-19 (rejecting expert's report and deposition testimony for reasons including contradiction of
a "well-established principle in tort law").

and expense allocation were arbitrary and unsupported). There has been and will be no evidence that any profits Fisher-Price earned — either on the sale of the accused Rescue Heroes figures or the non-accused line extension products — were "caused" by the alleged use of the Reel Heroes concept.

For each of the foregoing reasons, the proposed expert testimony of Mr. Ratliff is inadmissible and should be excluded.

## II.    AN AWARD TO DI OF FISHER-PRICE'S PROFITS WOULD BE UNJUST

When allowed, disgorgement is an equitable remedy. *See Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 352 (1998); *G.A. Modefine S.A. v. Burlington Coat Factory Warehouse Corp.*, 888 F. Supp. 44, 45-46 (S.D.N.Y. 1995). As an equitable remedy, disgorgement may be ordered only when just and equitable under the circumstances. *See, e.g., Sands, Taylor & Wood Co. v. The Quaker Oats Co.*, 978 F.2d 947, 963 (7th Cir. 1992).

There are numerous grounds applicable to this case that would render an order of disgorgement unjust and inequitable. Several are illustrated by cases applying the law of other states, since disgorgement is not available under New York law for the causes of action at issue in this case. Nevertheless, a number of bases that make disgorgement (or an award of the defendants' profits) unjust under such other laws apply with equal force here:

- Disgorgement is inequitable where defendant's intellectual property contributed to the success of the product at issue and apportionment would require speculation. *Vermont Microsystems, Inc. v. Autodesk, Inc.*, 138 F.3d 449, 450 (2d Cir. 1998).

- Disgorgement is denied where the plaintiff lacked the capacity to market its device. *Goldberg v. Medtronic, Inc.*, 686 F.2d 1219, 1229 (7th Cir. 1982).

- Disgorgement may be denied where proof of the defendant's bad faith is "marginal." *Sands, Taylor & Wood Co. v. The Quaker Oats Co.*, 978 F.2d 947, 963 (7th Cir. 1992).

Each of these principles counsel against an order of disgorgement. Together, they are compelling.

First, there can be no serious dispute with the fact that Fisher-Price's pre-existing Rescue Heroes characters (with their associated intellectual property, good will, and consumer popularity) were the driving force behind the success of the accused figures and line extensions at issue in this case. The evidence at trial was undisputed that Fisher-Price expended substantial resources and efforts developing and marketing the products well before the plaintiff ever submitted its concept. Thus, there is no doubt that Fisher-Price's own pre-existing intellectual property and ongoing development and marketing efforts contributed significantly to the success of the products at issue, and DI has not offered any basis beyond speculation to make the required apportionment.

Second, DI does not claim it could have marketed or sold the products. DI is not a toy manufacturer, lacked the capacity to make and sell the products at issue, and would have been precluded from doing so in any event by Fisher-Price's intellectual property surrounding the Rescue Heroes.

Third, there was no proof of bad faith by Fisher-Price. This case is properly viewed as a routine business dispute, and Fisher-Price clearly had reasonable grounds (albeit rejected by the jury) for believing it had no obligation to pay DI a royalty.

Further, the jury's rejection of DI's damages analysis—established by its award of an amount that was less than half what DI sought — shows the jury's determination that DI was fully and fairly compensated by an award of $1.7 million. Allowing DI to seek a substitute measure of damages more than 10 times greater than the jury's award would be grossly inequitable and facially inconsistent with the jury's verdict.

### III.    THE EQUITABLE REMEDY OF DISGORGEMENT IS NOT AVAILABLE BECAUSE DI HAS AN ADEQUATE REMEDY AT LAW

Under traditional principles, equitable remedies are available only when there is no adequate remedy at law, *Brown v. Sandimo Materials*, 250 F.3d 120, 127 (2d Cir. 2001); *United States v. Ribadeneira*, 920 F. Supp. 553, 556 (S.D.N.Y. 1996), as when the plaintiff's actual damages cannot be calculated. *Goldstein v. Cogswell*, 1991 U.S. Dist. LEXIS 4793, at *54 (S.D.N.Y. Apr. 11, 1991).

Under New York law, damages in cases of misappropriation and unfair competition are the plaintiff's own actual damages (which may be the plaintiff's lost profits), not disgorgement of the defendant's profits.[12] Where the parties had agreed that the defendant would pay the plaintiff a royalty for use of the plaintiff's intellectual property, that agreed-to royalty is the best measure of the plaintiff's actual loss. *Vitro Corp. of Am. v. Hall Chem. Co.*, 292 F.2d 678, 683 (6th Cir. 1961) (such measure of damages is an appropriate "utilization of what was agreed upon as compensation in the event that a firm contract would be executed"); *Ramada Franchise Sys. v. Boychuk*, 283 F. Supp. 2d 777, 790-91 (N.D.N.Y. 2003).

---

[12]    *See* Fisher-Price's Memorandum in Support of Fisher-Price's Motion to Cancel Disgorgement Hearing.

Here, DI asked the jury for damages in the form of a royalty and got just that (although in a lesser amount than requested). Both DI's closing argument and the Court's instructions to the jury leave no room to doubt that the jury's verdict on damages was a finding of the royalties that DI would have received if not for the alleged misappropriation. (Tr. at 2628) ("DI and Mr. Reiling came up with this idea, and they deserve fair compensation for it. And that's all we're asking, a reasonable royalty as we walked you through the numbers on Fisher-Price's own document."); Jury Instructions at 35, 37 ("[DI] claims that Fisher-Price's misappropriation caused [it] to lose royalty payments it would have collected from Fisher-Price but for Fisher-Price's misappropriation of the submitted concept. You will determine whether [DI] has proved that Fisher-Price caused [DI's] loss of royalty payments . . . .").

Because DI's alleged losses were determined and awarded by the jury, it is not entitled to the alternative equitable relief of disgorgement.

**IV.   DI HAS NOT CARRIED ITS BURDEN OF SHOWING THAT THE REEL HEROES CONCEPT WAS THE PROXIMATE CAUSE OF SALES OF THE ACCUSED PRODUCTS, OR OF APPORTIONING FISHER-PRICE'S PROFITS BETWEEN DI'S CONCEPT ON THE ONE HAND AND FISHER-PRICE'S PREEXISTING PRODUCT LINE AND CONTRIBUTIONS ON THE OTHER**

**A.   DI Has Not Shown That Sales Of The Accused Products (And Fisher-Price's Resulting Profits) Were Attributable To Use Of The Reel Heroes Concept**

DI cannot show that the Reel Heroes concept was the proximate cause of any of Fisher-Price's sales (and thus its profits) of the products at issue in this case. DI adduced no evidence at trial that the alleged presence of the Reel Heroes concept in the accused Rescue Heroes figures was the proximate cause of any sales of those products. Its damages expert Mr. Ratliff has not referenced any evidence in the record (or not) that establishes a causal

relationship between use of the Reel Heroes concept in the accused figures and the sales (or profits) associated with them.

DI's causation problem is even more severe with respect to the line extension vehicles and play sets, since DI admits that those products do not themselves incorporate the Reel Heroes concept. Moreover, the jury's decision to award DI a royalty on the line extensions does not support its claim for disgorgement of profits for the line extensions, since the jury's implicit finding that the parties would have negotiated for a royalty on the line extensions as part of the mechanism to compensate DI for its concept in no way establishes a causal relationship in fact between the Reel Heroes concept and sales of the line extensions.

DI's claim for disgorgement of profits on the line extensions must turn instead on a theory that Fisher-Price somehow indirectly made profits on sales of products *not using* the Reel Heroes concept because a number of *other products* allegedly used that concept. But no witness testified at trial that this occurred, DI offered no evidence supporting such notion, and Mr. Ratliff has not opined on it in any of his various expert reports.

Without proof that use of the Reel Heroes concept caused sales of the accused products, DI is not entitled to any award of Fisher-Price's profits. *E.W. Bruno Co. v. Friedberg*, 281 N.Y.S.2d 504, 506-07 (1st Dep't 1967) (excluding claim in unfair competition case for damages based on sales from defendant's entire "import department" where the wrongful conduct of defendant related only to defendant's "hair brush importation" business); *Mackie v. Rieser*, 296 F.3d 909, 915-16 (9th Cir. 2002) (holding in copyright case that to survive motion for summary judgment on claim for indirect profits, plaintiff must proffer "non-speculative

evidence to support a causal relationship between the infringement and the profits generated

indirectly from such an infringement").

Because there is no evidence in the trial record supporting any claim that Fisher-

Price's profits on the products at issue were the causal result of the alleged use of the Reel

Heroes concept, DI is not entitled to disgorgement.

**B.      Even If Sales Of The Accused Products Were Attributable
         In Part To Use Of The Reel Heroes Concept, DI Has Not
         Carried Its Burden Of Apportioning Between The Claimed
         <u>Value Of Its Concept And The Value Contributed By Fisher-Price</u>**

The phrase "disgorgement of profits," in the jurisdictions that permit such awards,

is used as short hand to denote disgorgement only of that *portion* of profits that are attributable to

the plaintiff's property. *Vermont Microsystems, Inc.*, 138 F.3d at 450. In the real world, this

amount is less than a simple measure of net profits, since the defendant's own intellectual

property, marketing efforts, goodwill, and the like all contribute to the success of the accused

product and are responsible for some (and often most) of the profits associated with that product.

*Westinghouse Elec. & Mfg. Co. v. Wagner Elec. & Mfg. Co.*, 225 U.S. 604, 616-17 (1912)

(recognizing that where defendant had added "valuable improvements which had contributed to

the making of the profits," plaintiff was not entitled to recover that portion of profits attributable

to defendant's improvements).

For this reason, a rational apportionment of profits among the plaintiff's

intellectual property and the defendant's intellectual property is required as a matter of law.

*John G. Danielson, Inc. v. Winchester-Conant Props., Inc.*, 322 F.3d 26, 47 (1st Cir. 2003)

("[t]he caselaw is clear on this point:  there must be a rational apportionment of profits . . .

between those portions attributable to the infringement and those attributable to other sources");

*Orgel v. Clark Boardman Co.*, 301 F.2d 119, 121-22 (2d Cir. 1962); *Softel, Inc. v. Dragon Med. & Sci. Communications, Ltd.*, 891 F. Supp. 935, 943 (S.D.N.Y. 1995), *aff'd*, 118 F.3d 955 (2d Cir. 1997); *see also Vermont Microsystems, Inc.*, 138 F.3d at 450 (requiring apportionment in the context of a misappropriation of trade secret claim and, upon finding that apportionment would be "too imprecise and speculative," determining that defendant's profits should not be awarded and that damages should be measured by a reasonably royalty). Stated differently, the proper question is not "what were the defendant's profits?" but rather "what portion of the defendant's profits were attributable to use of the plaintiff's idea?"

The Second Circuit also ruled in *Vermont Microsystems* that where the evidence supporting apportionment is "too imprecise and speculative . . . to determine the unjust enrichment," disgorgement may not be awarded and a royalty measure of damages must be used. 138 F.3d at 450.[13]

DI's Reel Heroes concept was not an idea for a product, but rather a suggested additional feature for Fisher-Price's already existing and successful Rescue Heroes line.[14] But DI has no evidence that would permit the Court to make a rational apportionment. DI's damages expert Mr. Ratliff ignores the issue entirely. Accordingly, DI has not shown its

---

[13]   The *Vermont Microsystems* court applied California law, which unlike New York law recognizes the remedy of disgorgement of profits.

[14]   DX 864 (2d Amended Complaint) ¶ 2 ("In 1998, Plaintiffs submitted to Fisher-Price a novel concept for adding an animation reel component to Fisher-Price's existing 'Rescue Heroes' toy line") & ¶ 30(A) ("Plaintiff's basic concept was to integrate Fisher-Price's ***successful*** 'Rescue Heroes' figures and cartoon-like images by using a removable backpack that could be made for a specific character. It was designed to mount to each 'Rescue Heroes' figure and show animated images of that character in action") (emphasis added).

entitlement to disgorgement and the compensatory damages awarded by the jury based on a

royalty theory provide a full measure of relief. *Vermont Microsystems, Inc.*, 138 F.3d at 450.

C.    **Because The Jury's Determination Of A Reasonable Royalty Is
      The Best Evidence Of The Relative Contributions Of Fisher-Price
      And DI, No Further Apportionment Is Appropriate And Any
      Disgorgement Award Would Simply Duplicate The Jury's Verdict,
      But In The Alternative, The Maximum Apportionment To DI Is The
      Agreed-To Three Percent Royalty Negotiated Between The Parties**

        The purpose of apportionment is to determine the relative contribution the

plaintiff's invention or idea makes to the accused product and its profits. *Westinghouse Elec.*,

225 U.S. at 614-15. This has already been accomplished by the jury's determination of a

reasonable royalty, which was based on a hypothetical negotiation to determine what DI would

have been paid if an agreement to license the idea had been reached. An award of disgorgement

could not exceed this amount, and thus any such award would be duplicative of what was already

awarded by the jury.

        If the Court were to reject this approach or otherwise disregard the jury's verdict,

it should look to the agreement between DI and Fisher-Price as the best evidence (apart from the

jury verdict) of apportionment. Specifically, the parties already determined the relative value of

the Reel Heroes concept as applied to the existing Rescue Heroes products by negotiating a

royalty rate in the Option Agreement (JX 10). The three percent royalty negotiated by the parties

before the dispute arose represents the parties' express agreement that the value of the portion of

the accused figures contributed by DI (*i.e.*, the Reel Heroes concept) was three percent of the

wholesale selling price of each figure. (JX 10 ¶ 6(c)).[15]  Mr. Reiling further testified that the 3%

royalty was the result of negotiation with Fisher-Price, and that both he and DI found it

acceptable (Tr. 540).

Thus, if the Court gives DI a disgorgement award (which it should not) and does

not rely on the jury verdict for apportionment, the amount should be capped at the three percent

royalty agreed to by the parties as a measure of relative value.  In that case, however, the Court

would have to deduct the damages already awarded by the jury, since the result would otherwise

be a double recovery by DI.

## V.    BECAUSE DI CLAIMS ONLY A ONE-HALF OWNERSHIP OF THE REEL HEROES CONCEPT, THE STARTING POINT FOR COMPUTING ANY DISGORGEMENT AWARD TO DI SHOULD BE ONLY ONE-HALF OF FISHER-PRICE'S PROFITS

DI owns only one-half of the Reel Heroes concept (the other half belonging to

dismissed co-plaintiff Reiling Associates).[16]  Accordingly, the profits base that is the starting

point for computing any disgorgement award should be limited to one-half of Fisher-Price's

profits.

If Reiling's claims had not been dismissed, any disgorgement award would have

been equally divided between Reiling and DI.  Because DI would never have received more than

---

[15]    The Option Agreement provides that the royalty rate will be 3% if the Reel Heroes concept is used with existing product lines (such as Rescue Heroes) and 5% if used with new product lines.  (JX 10 ¶ 6(c)).  This difference shows DI's recognition of the value of the intellectual property that Fisher-Price owned in the form of the Rescue Heroes characters, designs, copyrights, trademarks, and customer goodwill, and demonstrates in part the contribution of Fisher-Price to the success and profitability of Rescue Heroes products incorporating the Reel Heroes concept.

[16]    Tr. 255, 267-68, 966-67, 971-72, 2197.

24

one-half of any compensation for use of the Reel Heroes concept, it should not be able to recover a full measure of disgorgement due to the dismissal of Reiling's claims.

Further, Reiling Associates already noticed an appeal of the Court's judgment dismissing its claims. If Reiling's appeal succeeds and DI has already been awarded a full measure of damages, Fisher-Price could be exposed to paying the same damages twice, *i.e.*, paying one a full-measure disgorgement award to DI and a second full-measure disgorgement award to Reiling.

Dated:  April 10, 2006

**TYLER COOPER & ALCORN, LLP**

By _____
      Jacqueline D. Bucar
Federal Bar No.: ct01187
e-mail: jbucar@tylercooper.com
205 Church Street
P.O. Box 1936
New Haven, CT 06509-0906
Telephone:  (203) 784-8269

**HODGSON RUSS LLP**
Robert J. Lane, Jr.
Federal Bar No.: ct24598
e-mail: rlane@hodgsonruss.com
Jodyann Galvin
Federal Bar No.: ct24599
e-mail: jgalvin@hodgsonruss.com
One M&T Plaza, Suite 2000
Buffalo, NY 14203-2391
Telephone:  (716) 856-4000

**MILBANK, TWEED, HADLEY & MCCLOY LLP**
William E. Wallace, III
email: wwallace@milbank.com
Federal Bar No. PHV0480
Jay I. Alexander
e-mail: jalexander@milbank.com
Federal Bar No. PVH 0858
International Square Building
1850 K Street, N.W., Suite 1100
Washington, D.C. 20006
Telephone:  (202) 835-7511

*Attorneys for Fisher-Price, Inc.*

25

## CERTIFICATION

The undersigned hereby certifies that copies of the foregoing Fisher-Price, Inc.'s Trial Memorandum, dated April 10, 2006, were sent on this 10th day of April, 2006 by first-class mail to:

Gregory J. Battersby, Esq. (Bar No. 07386)
Edmund J. Ferdinand, III, Esq. (Bar No. 21287)
Russell D. Dize, Esq. (Bar No. 23064)
Grimes & Battersby LLP
488 Main Avenue, Third Floor
Norwalk, CT 06851-1008
Telephone: (203) 849-8300
Facsimile:  (203) 849-9300

Peter M. Nolin, Esq. (Bar No. 06223)
Jay H. Sandak, Esq. (Bar No. 06703)
Sandak Hennessey & Greco LLP
707 Summer Street
Stamford, CT 06901
Telephone: (203) 425-4200
Facsimile:  (203) 325-8608

Jacqueline D. Bucar

003279/00136 BFLODOCS 1515414v1