```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

Victor G. Reiling Associates   :
and Design Innovation, Inc.,   :
         Plaintiffs,           :   Case. No. 3:03cv222 (JBA)
                               :
v.                             :
                               :
Fisher-Price, Inc.,            :
         Defendant.            :
```

**RULING ON DEFENDANT'S MOTION TO CANCEL DISGORGEMENT HEARING**
**[Doc. # 287]**

On February 6, 2006, after a three-week trial, the jury returned a verdict for plaintiff Design Innovation ("DI") on its claims of misappropriation and unfair competition against defendant Fisher-Price ("FP") for using the Reel Heroes toy concept submitted by DI and co-plaintiff Victor Reiling without compensation, awarding damages to DI in the form of reasonable royalties in the amount of $1.7 million. Prior to trial, the parties agreed to postpone for the Court's determination whether plaintiff was entitled to a disgorgement of Fisher-Price's profits as damages for misappropriation and unfair competition, if proved. After the jury returned its verdict, the Court set down a hearing on the disgorgement issue to begin May 1, 2006. FP now moves to cancel the hearing on the grounds that DI is not entitled to a disgorgement of FP's profits as damages for its claims as a matter of law [Doc. # 287]. For the reasons that follow, FP's motion will be GRANTED.

1

**I.   Background**

Familiarity with the factual background of this case from the Court's previous rulings, 409 F. Supp. 2d 112 (D. Conn. 2006); 406 F. Supp. 2d 175 (D. Conn. 2005); 2004 WL 2381719 (D. Conn. Sept. 30, 2004), is assumed and only a brief summary of relevant facts will be included here.

Plaintiff DI, an independent toy design company, and another toy inventor, Victor Reiling, submitted the Reel Heroes toy concept to FP in 1998-2000 for FP's consideration. After entering into an Option Agreement regarding the concept in 1999, FP declined to license or buy the concept, and returned the submissions to the inventors.  DI and Reiling accused FP of subsequently using the concept in certain of its Rescue Heroes figures and other products and instituted this action asserting claims of, <u>inter</u> <u>alia</u>, misappropriation and unfair competition. At trial, the jury found these claims proved, and awarded DI damages in the form of reasonable royalties that the jury determined DI would have received from FP had FP not misappropriated the concept and unfairly competed with DI.  As noted above, DI also advanced a damages theory based on disgorgement of FP's profits on sales of the accused products, arguing that disgorgement of profits is an appropriate alternative remedy for such claims.  FP disputed the applicability of such a damages theory, and the Court reserved

decision for a "Phase 2" bench trial on the issue.

That Phase 2 proceeding has now been scheduled and FP has filed the instant motion to cancel, urging a legal conclusion that recovery of disgorgement of profits on DI's claims is unavailable as a matter of law, arguing that there is no remedy under New York law (which law is applicable to plaintiff's claims) for disgorgement of profits on misappropriation or unfair competition claims, that a defendant's profits can be used as a measure of a plaintiff's damages only where the plaintiff would have made those profits absent the misappropriation or unfair competition, and that here, DI's actual loss, <u>i.e.</u> loss of royalties on sales of the accused products, has already been determined by the jury.  DI opposes FP's motion and contends that compensatory damages for misappropriation and unfair competition claims should constitute the reasonable value of the misappropriated concept, which can be measured in three ways – the plaintiff's lost profits, a disgorgement of the defendant's profits, or an award of a reasonable royalty.  DI argues that disgorgement should be awarded "not only to ensure that [FP] does not benefit from its wrongful conduct, but also as a deterrent to future conduct."  Pl. Trial Brief [Doc. # 289] at 5.

**II.  Discussion**

At trial, the jury awarded DI compensatory damages in the form of lost royalties but found that DI had not proved

entitlement to punitive damages.  "Compensatory damages, as indicated by the word employed to characterize them, simply make good or replace the loss caused by the breach of contract or tortious conduct complained of. . . . Unless the circumstances are such as to justify an award of punitive or exemplary damages, the injured party is entitled to indemnity for [its] loss, and no more."  N.Y. Jur. 2d Damages §§ 8-9.  Accordingly, unlike cases involving claims under federal statutes which specifically allow for recovery of profits for deterrence purposes or under other states' laws, compensatory damages in New York are not used for the purpose of deterring wrongful behavior, "because New York law achieves deterrence through punitive damages," which the jury found inapplicable in this case.[1]  See Gidatex v. Campaniello Imports, Ltd., 82 F. Supp. 2d 136, 146 (S.D.N.Y. 2000) (citing Getty Petroleum Corp. v. Island Transp. Corp., 878 F.2d 650, 657 (2d Cir. 1989)).

In keeping with these general principles of compensatory damages, the best measure of damages in this case, to compensate

---

[1] DI's argument that "the Court should award disgorgement not only to ensure that [FP] does not benefit from its wrongful conduct, but also as a deterrent to future conduct" is thus misplaced and the cases it cites in support of this proposition distinguishable.  See Maltina Corp. v. Cawy Bottling Co., 613 F.2d 582, 585 (5th Cir. 1980) (Lanham Act provides for recovery of a defendant's profits); Roulo v. Russ Berrie & Co., 886 F.2d 931 (7th Cir. 1989) (Lanham Act and Copyright Act claims); Playboy Enter., Inc. v. Baccarat Clothing, Co., 692 F.2d 1272 (9th Cir. 1982) (Lanham Act claim).

DI for the loss it suffered as the result of the proved misappropriation and unfair competition, is the jury's award of royalties on FP's sales of the accused products. New York case law provides that, where the actual loss to plaintiff can be calculated, that is the appropriate measure of damages.[2] In this

---

[2] See, e.g., Suburban Graphics Supply Corp. v. Nagle, 5 A.D.3d 663, 666, 774 N.Y.S.2d 160, 163 (N.Y. App. Div. 2004) ("The measure of damages for unfair competition and the misappropriation and exploitation of confidential information is the loss of profits sustained by reason of the improper conduct."); Allan Dampf, P.C. v. Bloom, 127 A.D.2d 719, 720, 512 N.Y.S.2d 116, 117 (N.Y. App. Div. 1987) (same); McRoberts Protective Agency, Inc. v. Landsdell Protective Agency, Inc., 61 A.D.2d 652, 655, 403 N.Y.S.2d 511, 513 (N.Y. App. Div. 1978) ("The appropriate measure of plaintiff's damage is the amount of loss sustained by it, including opportunities for profit on the accounts diverted from it through defendants' conduct, or, stated differently, the amount which the plaintiff would have made except for the defendant's wrong"); E.W. Bruno Co. v. Friedberg, 21 A.D.2d 336, 341, 250 N.Y.S.2d 187, 192 (N.Y. App. Div. 1964) ("[A]s far as profits are concerned, what is to be ascertained . . . is the amount which the plaintiff would have earned except for the defendant's wrong. . . . In our opinion the present record does not justify the trial court's assumption that the profits defendants made are necessarily a valid measure of those plaintiff would have made."); Conviser v. J.C. Brownstone & Co., 209 A.D. 584, 592, 205 N.Y.S. 82, 89 (N.Y. App. Div. 1924) ("It is not what profit, if any, the wrongdoer made; it is the profit the lawful owner would have made if his property had not been stolen.").

Cases cited by plaintiff are not to the contrary. Sands, Taylor & Wood v. Quaker Oats Co., 34 F.3d 1340, 1351 (7th Cir. 1994), criticizes a reasonable royalty award as "rest[ing] on a legal fiction. Created in an effort to compensate when profits are not provable, the reasonable royalty device conjures a willing licensor and licensee." However, in this case, lost profits are provable, and were determined by the jury, because had FP not misappropriated the Reel Heroes concept, DI would have been paid royalties for FP's use of the concept in its products. See also Mason v. Sybron Corp., 955 F.2d 48, 49 (9th Cir. 1992) ("[U]nless a specific injury to the plaintiff can be established, such as lost sales, the loss to plaintiff is not the proper basis

case, the evidence established that had FP not misappropriated the Reel Heroes concept, it would have paid DI royalties on sales of the accused products.  From this evidence, and including the royalty rate provided in the Option Agreement and expert testimony concerning typical royalty rates in the industry, the jury awarded DI damages on a royalty basis.  Thus, the jury's award compensated DI for its lost profits, i.e., lost royalties.

Accordingly, a disgorgement of FP's profits would bear no relation to DI's actual losses, and would constitute a windfall above and beyond any profits DI could have ever expected to make. Those cases that award a disgorgement of a defendant's profits do so only because a misappropriating defendant diverted sales and

---

for assessing damages.  In such cases defendant's gain may serve as the point of proper reference in determining the extent of the plaintiff's loss.") (emphasis added).  While The Topps Co. v. Cadbury Stani S.A.I.C., 380 F. Supp. 2d 250, 270 (S.D.N.Y. 2005), states that "[t]he most commonly accepted measure of damages for trade secret misappropriation is the defendant's profits," the authority that Topps cites for this proposition, Michael A. Rosenhouse, Proper Measure and Elements of Damage for Misappropriation of a Trade Secret, 11 A.L.R.4th 12 § 2(a), also provides that "[i]n determining the proper measure of damages . . . . the first inquiry of the courts generally has been whether there is any factual basis, such as a royalty agreement . . . from which one might legitimately determine the value which the parties themselves actually assigned to the misappropriated information.  Where such circumstances exist, the courts usually have drawn upon them in order to measure the plaintiff's damages, calling the award a 'reasonable royalty,' an 'established royalty,' a 'negotiated royalty,' or, simply, a 'royalty.'" In this case, in addition to the existence of the Option Agreement providing for royalties, DI does not dispute that had FP decided to license or buy the concept, DI's "profits" would have been a negotiated royalty.

reaped profits that the plaintiff itself would otherwise have received, and thus the defendant's profits are a reasonable measure, or proxy, for plaintiff's lost profits. See Gidatex, 82 F. Supp. 2d at 146 ("Under New York law, a jury awards a defendant's profits under the theory that a plaintiff is entitled to recover as damages the amount of loss sustained by it, including opportunities for profit on the accounts diverted from it through defendants' conduct."); Hertz Corp. v. Avis, Inc., 106 A.D.2d 246, 251, 485 N.Y.S.2d 51, 54 (N.Y. App. Div. 1985) ("[A]n accounting for profits is based upon the assumption and showing that the defendant has either infringed upon plaintiff's trademark or otherwise passed his goods off as plaintiff's goods, or unfairly competed in some way as to pre-empt business which would otherwise have gone to plaintiff. The accounting for profits in such cases is not in lieu of damages but is the method of computing damages.") (emphasis added).[3] This is not the case

---

[3] See also David Fox & Sons, Inc. v. King Poultry Co., 23 N.Y.2d 914 (N.Y. 1969) (plaintiff could recover defendant's profits only on sales that plaintiff would have made); Michel Cosmetics v. Tsirkas, 282 N.Y. 195, 200 (N.Y. 1940) ("Here if the plaintiff would otherwise have made the sales of the lipsticks which in fact the defendants made by the use of plaintiff's formulas, then the plaintiff is entitled to recover from the defendants the amount of the profits which the plaintiff would have acquired upon such sales but for the defendant's wrong."); Spielvogel v. Zitofsky, 175 A.D.2d 830, 831, 573 N.Y.S.2d 198, 199 (N.Y. App. Div. 1991) ("In awarding to the plaintiffs a sum of money allegedly representing all the profit made by the [defendant] during the time of his improper competition, the Supreme Court necessarily found that the plaintiffs would have made all the sales actually made by the [defendant] if the

here where DI does not dispute that it is not a toy manufacturer, would never have marketed and sold action figures incorporating the Reel Heroes concept, and only ever would have received (as the evidence at trial established) a royalty on sales of the accused products.[4]  The jury's award thus compensates DI for its

---

[defendant] had not competed with them.") (internal citation omitted).

    [4] The cases cited by DI to justify disgorgement are either distinguishable or do not support its position.  See Softel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc., 118 F.3d 955, 969-70 (2d Cir. 1997) (award based on defendant's profits for misappropriation of trade secrets, while ultimately set aside as coextensive with copyright infringement damages, was appropriate measure of damages because it approximated plaintiff's lost profits where plaintiff and defendant were competitors); Vermont Microsystems, Inc. v. Autodesk, Inc., 88 F.3d 142, 151 (2d Cir. 1996) (amount plaintiff would have charged for software embodying the misappropriated trade secret was inappropriate measure of damages and reasonable royalty should be imposed to measure the "hypothetically agreed value of what the defendant wrongfully obtained from the plaintiff [by] calculat[ing] what the parties would have agreed to as a fair licensing price at the time that the misappropriation occurred"); AFA Tours, Inc. v. Whitchurch, 937 F.2d 82, 87 (2d Cir. 1991) (considering possible damages on a misappropriation of trade secret claim for jurisdictional purposes, noting that "what [the information provided] mean[t] in terms of loss of earnings to [plaintiff]," was not revealed by the record and thus "the court could not conclude to a legal certainty that the value of [plaintiff's] claims did not exceed the jurisdictional minimum") (emphasis added); Electro-Miniatures Corp. v. Wendon Co., 771 F.2d 23, 27 (2d Cir. 1985) (jury's award was appropriate and supported by evidence where plaintiff and defendant were the only United States companies capable of producing the products using the misappropriated trade secret material and thus defendant's sales came at the expense of the plaintiff); Univ. Computing Co. v. Lykes-Youngstown Corp., 504 F.2d 518, 535-37 (5th Cir. 1974) (the value of the misappropriated trade secret to the defendant would only be awarded if plaintiff was unable to prove specific injury); Linkco, Inc. v. Fujitsu, Ltd., 232 F. Supp. 2d 182, 186 (S.D.N.Y. 2002) (reasonable royalty awarded where plaintiff's lost profits

losses, and disgorgement of FP's profits would not more adequately measure those losses, and is thus inappropriate.[5]

### III. Conclusion

For the foregoing reasons, defendant's Motion to Cancel the Disgorgement Hearing [Doc. # 287] is GRANTED.

IT IS SO ORDERED.

/s/
Janet Bond Arterton
United States District Judge

**Dated at New Haven, Connecticut this 25th day of April, 2006.**

---

(from lost sales) were difficult to calculate given that plaintiff had gone out of business, and defendant had made no profit); Gilroy v. Am. Broad. Co., 365 N.Y.S.2d 193 (N.Y. App. Div. 1975) (the measure of damages is the reasonable value of what was misappropriated and, in this case, plaintiff should not have been limited to defendant's profits where those profits did not adequately measure the value of the plaintiff's idea).

[5] The case law cited herein demonstrates that in misappropriation cases, New York considers disgorgement of defendant's damages as one potentially accurate measure of a plaintiff's compensatory damages, as opposed to an equitable remedy. As FP observes, DI would not be entitled to disgorgement of FP's profits on an equitable theory, because DI has an adequate remedy at law – compensatory damages in the form of lost profits/royalties. See Brown v. Sandimo Materials, 250 F.3d 120, 127 (2d Cir. 2001) ("[B]efore equitable relief will be granted, plaintiffs must show that they have no adequate remedy at law.").