ORIGINAL

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

DESIGN INNOVATION, INC.,

                                Plaintiff,                    Index No.:  3:03 CV 222 (JBA)

        - against -

FISHER-PRICE, INC.,

                                Defendant.                    May 9, 2006

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR RECONSIDERATION OF THE COURT'S RULING ON DEFENDANT'S MOTION TO CANCEL DISGORGEMENT HEARING

### PRELIMINARY STATEMENT

Plaintiff, Design Innovation, Inc. ("DI"), respectfully submits this memorandum in support of Plaintiff's Motion, under Federal Rules of Civil Procedure 59(a) and 60(b) and Local Rule 7(c)(1), for Reconsideration of the Court's Ruling on Defendant's Motion to Cancel Disgorgement Hearing entered on April 25, 2006 (the "Ruling").  As a preliminary matter, it appears that through some confusion on the briefing schedule the Court granted Fisher-Price's Motion to Cancel the Disgorgement Hearing without the opportunity to receive or review Plaintiff's memorandum in opposition.  Even though Plaintiff's opposition was not due until May 1, 2006 under the local rules, Plaintiff indicated that it would file its opposition on April 25, 2006 so the Court would have an opportunity to consider the matter before the disgorgement phase of trial commenced on May 1, 2006.  However, the Court ruled on Defendant's motion on April 25, 2006, before Plaintiff filed its opposition.

More importantly, by granting the Defendant's Motion to Cancel the Disgorgement portion of the trial the Court has unfairly limited Plaintiff's damage claim and has effectively penalized Plaintiff for an agreement to bifurcate the trial into two parts. Prior to the commencement of trial, Fisher-Price filed a motion to strike Plaintiff's jury claim on grounds that disgorgement was not appropriate for the jury to consider. The Court denied Fisher-Price's motion. Also prior to the commencement of trial, Fisher-Price argued that disgorgement was not an appropriate measure of damages for misappropriation in its Motion in Limine No. 8(1), which the Court denied on January 12, 2006. Before trial commenced, Plaintiff made known its intention to argue two theories of damages to the jury. Plaintiff indicated that it would argue that disgorgement of profits and reasonable royalty were both potential remedies that the jury could award, and the jury would be permitted to choose the remedy that was most appropriate under the circumstances, but Plaintiff would contend that disgorgement was the preferred remedy.

During trial, to resolve an evidentiary issue raised by Fisher-Price, the parties and the Court expressly agreed that the Court would hold a separate bench trial on disgorgement after the conclusion of the liability phase if Plaintiff prevailed before the jury. The Court now adopts Fisher-Price's new theory that because the jury awarded the royalty remedy, Plaintiff cannot seek disgorgement of Fisher-Price's profits made from the bad faith misappropriation of Plaintiff's concept. That ruling is contrary to the agreement of the parties and the Court, it effectively reverses the Court's two prior rulings on disgorgement being a jury issue, and it has deprived DI of its right to a jury trial on the issue of disgorgement damages. DI should have had an opportunity to present its evidence on disgorgement and then the fact finder should have had the opportunity to choose the most appropriate of the two remedies, disgorgement or a reasonable royalty damage calculation. In exchange for the agreement that the Court consider

2

disgorgement, DI has now been unfairly deprived of that opportunity, while at the same time it has also been deprived of the Court's hearing the disgorgement phase of the trial.

Further, New York law permits a plaintiff to recover disgorgement of defendant's profits in misappropriation and unfair competition cases and such a remedy remains compensatory. In addition, Plaintiff submits that the cases cited by Fisher-Price in support of its motion are distinguishable, and that contrary to Fisher-Price's assertions, there is no requirement under New York law that the parties be competitors in order for the Court to award disgorgement of profits.

For all of these reasons, Plaintiff respectfully requests that the Court reconsider its Ruling on Defendant's Motion to Cancel Disgorgement Hearing and that the Court reschedule the disgorgement bench trial, to which both parties and the Court previously agreed.

## ARGUMENT

### I.    THE COURT RULED IN FAVOR OF FISHER-PRICE WITHOUT PERMITTING DI TO RESPOND TO THE MOTION

It appears that due to confusion resulting from the bifurcation of trial and the subsequent order on pre-trial briefing, the Court ruled on Fisher-Price's motion without permitting DI to respond to the motion. The scheduling order regarding briefing for the disgorgement bench trial specified that Trial Briefs were due on April 10, 2006 and Reply Briefs were due on April 17, 2006. Both DI and Fisher-Price filed Trial Briefs and Reply Briefs. However, Fisher-Price also filed a separate Motion to Cancel Disgorgement Hearing on April 10, 2006. This motion was separate and apart from the trial briefing, and in fact should never have been made given that Fisher-Price agreed on the record that DI would be permitted a separate hearing to continue its trial evidence before the Court on the issue of disgorgement damages. Even Fisher-Price acknowledged the appropriate timeframe for the briefing of its motion in its letter to the Court

dated April 21, 2006 requesting an adjournment of the bench trial: "An adjournment also would allow the parties to complete their briefing on Fisher-Price's motion to cancel the disgorgement hearing. Plaintiff's responsive brief is currently due on April 25 and Fisher-Price's reply would be due on May 2." (*See* Fisher-Price's April 21, 2006 letter, n.1).

Fisher-Price served its Motion to Cancel Disgorgement Hearing on April 10, 2006. Under the local rules, DI had twenty-one days to file its opposition. Therefore, DI's opposition was due on May 1, 2006. (L. Civ. R. 7(a)). When the Clerk of the Court docketed Fisher-Price's motion, it set a response deadline of May 1, 2006. DI realized that because Fisher-Price had waited so long to serve its motion, DI's response would not be due until the first day of the disgorgement bench trial. Accordingly, in order to allow the Court to consider the matter before the bench trial commenced, DI indicated in its Reply Trial Brief that it would file an opposition by April 25, 2006, even though one was not technically due under the local rules until May 1, 2006. (*See* Plaintiff's Reply Trial Brief, dated April 17, 2006, n.1). However, the Court granted Fisher-Price's motion on April 25, 2006, before DI had an opportunity to file its opposition. The Court's Ruling on Fisher-Price's motion has impermissibly deprived DI of its right to be heard on the motion.

## II.    THE COURT'S RULING HAS DEPRIVED DI OF ITS RIGHT TO A JURY TRIAL ON THE ISSUE OF DISGORGEMENT DAMAGES

### A.    Prior to Trial, The Court Ruled That Disgorgement Was an Issue for the Jury

Fisher-Price filed a Motion to Strike DI's jury demand on December 29, 2005. (*See* Doc. # 157, 158). At that time, Fisher-Price did not argue that disgorgement was not an available remedy, but rather, that disgorgement was equitable in nature and therefore DI was not entitled

to a jury trial. (*Id.*) The Court denied Fisher-Price's motion on January 13, 2006. (*See* Doc. #

201). The Court stated:

> The motion to strike the jury demand has been considered, and although the
> elements of the two-prong inquiry with respect to the cause of action and damages
> are indeed close questions, there is divided authority. The answer is not clear, but
> there is a strong federal policy which favors jury decisions in matters of disputed
> fact, and, therefore, I will resolve those doubts in favor of a jury trial on these
> claims, *see Lee Pharmaceuticals v. Mishler*, 526 F.2d 1115, and there may be a
> written ruling to follow, but that at least tells you what the analysis -- the
> conclusion is with the analysis being largely the discussion of the cases on the one
> side and the cases on the other side, and my decision that what will make the
> difference is the policy in favor of a jury trial. So we will proceed with that
> premise.

(*See* Transcript of Pre-Trial Conference ("P.T. Tr."), dated January 13, 2006, at 214-15).

Also prior to the commencement of trial, Fisher-Price filed its Motion in Limine No. 8(1)

(Doc. # 175) seeking, *inter alia*, to preclude DI from offering evidence in support of a

disgorgement theory of damages. Fisher-Price argued that "the introduction of evidence related

to Fisher-Price's sizable profits on the accused products would be irrelevant and unfairly

prejudicial to Fisher-Price and runs the risk of confusing and misleading the jury." (Doc. # 175-

2 at 2). Fisher-Price also argued that: (1) the appropriate measure of damages for

misappropriation and unfair competition claims is Plaintiff's lost profits (*Id.* at 2); (2)

disgorgement may only be considered when Plaintiff's lost profits cannot be calculated (*Id.* at 3-

5); and (3) where the misappropriated element accounts for only a portion of the accused

product, disgorgement is inappropriate (*Id.* at 5-6).

At the pretrial conference on January 5, 2006, the following colloquy occurred on the

record:

> THE COURT: Okay, disgorgement of profits is number eight. Fisher-Price's
> cases are for the proposition that a plaintiff's lost profits is the appropriate
> measure in a misappropriation case. I have looked at DI's opposition to Fisher-
> Price's proposed jury instruction, which cases are cited that disgorgement of

profits is at least one of the appropriate measures of damages. The <u>AFA Tours v. Whitchurch</u> speaks in terms of misappropriation of trade secrets as measured by plaintiff's losses or profits unjustly received. <u>Topps v. Cadbury Stani</u>, a Southern District case, analyzes New York law as providing three methods of awarding misappropriation damages, plaintiff's losses, defendant's profits, or reasonable royalty, "defendant cannot contest that accounting of defendant's profits is a proper remedy in a case concerning misappropriation of trade secrets, a remedy which the Second Circuit has called 'an appropriate measure of damages' under New York law," <u>Softell v. Dragon Medical</u>. The cases of <u>Linkco v. Fujitsu</u> from the Southern District and <u>Gilroy v. American Broadcast</u> from the appellate division don't seem to be to the contrary . . .

(P.T. Tr., dated January 5, 2006, at 180-81).

\* \* \* \* \*

MR. WALLACE: However, it does lead to the second point which is under consideration in a different context, is whether an accounting and disclosure of profits is appropriate for the jury at all, and we contend it is not. That equitable remedy is for the Court to determine and not for the jury, and the jury's role in this case would be to set an appropriate royalty, if they can. And if they can't, that would then also go into your Honor's consideration as to whether a disgorgement of profits would be appropriate, but it is not for the jury.

(*Id.* at 182).

\* \* \* \* \*

THE COURT: It seems to me that if, and only if . . . liability were determined and the jury were unable to reach a royalty rate **or the parties decided to submit damages, the disgorgement remedy, if that's what the plaintiff chose, to the Court, wouldn't we solve all of those problems?**

MR. WALLACE: **We would, your Honor.** The issue is really one we need to reach in steps because in the first instance the motion that your Honor has is that a misappropriation theory like this in fact does not go to the jury at all . . . **Certainly submitting damages to your Honor would be a perfectly acceptable solution as well and we would avoid all of the issues.**

(*Id.* at 182-83) (emphasis added).

\* \* \* \* \*

THE COURT: What do you think about this damages issue? I think your case law is right, that disgorgement is a remedy.

6

MR. NOLIN: Not only is it a remedy, your Honor, but it is a species, and this is what we're going to be briefing for Monday, it is a species of damages, and in fact some of the cases suggests it is the preferred remedy and you only default to royalty or potential profit of the plaintiff if in fact you can't prove that they had any profits. There are cases out there, I think you may have mentioned a couple of them, that actually say the mere fact that the defendant did not profit should not entitle them to get off without damages. Well, in this case they did in fact profit, and profit handsomely in our view. So, we think that is the first level of damages that the jury should assess, not a default. . .

(*Id.* at 183-84).

\* \* \* \* \*

THE COURT: Well, since we have so many other things that are somewhat in flux, why don't we consider this bifurcation possibility because in fact if the jury comes back with misappropriation not proved by DI, we have saved everybody a lot of time. Okay, let's think about that. **But I am at this point persuaded that the disgorgement of profits theory is an appropriate measure of damages in a misappropriation case, and I'm going to deny motion in limine number eight which seeks to preclude that as a damages theory.** What the ramifications of that are, are not yet fully fleshed out.

(*Id.* at 185) (emphasis added).

\* \* \* \* \*

By Order dated January 12, 2006, the Court denied Fisher-Price's Motion in Limine No. 8 in its entirety. (*See* Doc. # 195 at 3). Accordingly, prior to trial, the Court determined that disgorgement was an appropriate measure of damages in a misappropriation case under New York law, and that DI was permitted to submit evidence regarding its disgorgement damages theory at trial.

"Under the doctrine of law of the case, a decision on an issue of law made at one stage of a case becomes a binding precedent to be followed in successive stages of the same litigation." 1B James W. Moore, Jo D. Lucas & Thomas S. Currier, *Moore's Federal Practice* 0.404[1], at 117 (1991). The Second Circuit has previously held that "The law of the case doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same

7

issues in subsequent stages of the same case." *DiLaura v. Power Auth. of the State of New York*, 982 F.2d 73, 76 (2d Cir. 1992). "Decisions may not usually be changed unless there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice." *Virgin Atl. Airways Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992). Fisher-Price's Motion to Cancel the Disgorgement Hearing met none of those criteria.

**B.    During Trial, the Parties and The Court Agreed to a Separate Bench Trial Regarding Disgorgement Damages**

When Fisher-Price raised an evidentiary issue to Plaintiff's expert witness Alan Ratliff, who was prepared to offer evidence and analysis on the profits Fisher-Price had obtained from the products that incorporated or were sold based upon Fisher-Price's misappropriation of DI's concept, the Court sought to fashion an equitable solution. Until that time, Plaintiff was planning to present evidence on Fisher-Price's profits and to argue to the jury that instead of a royalty based remedy it should award disgorgement for the misappropriation and unfair competition claims. When the Court proposed the separate bench trial, Plaintiff's counsel agreed to seek approval from DI to present the disgorgement issue in a continuation of the trial before the Court, if Plaintiff prevailed on its liability claims for misappropriation and unfair competition.

Thus the following colloquy occurred on the record during trial:

THE COURT: All right. I would like – I think we left off with plaintiff declining my suggestion that the issue of disgorgement of profits be a matter for the Court, that is, not presented to the jury. I urge you to reconsider that in light of the pending motion to strike as it would provide a cure period that -- the exigencies of time, apart from the other matters raised by the defendant has created, so, just -- we'll address that later.

(Tr. at 927).

\* \* \* \* \*

THE COURT: All right, with respect to Ratliff, is there anything that you wish to report?

MR. NOLIN: Just one brief second. Your Honor, I think we would certainly explore the idea. Mr. Popek obviously has been busy and has not fully confirmed with his partners, but we would have an answer either later today or tomorrow morning. We would certainly be willing to explore what your Honor's considering.

THE COURT: Here is the problem: There is, in the cases that I have reviewed that have -- while the late disclosure has been technically afoul of the federal rules, they've always had a cure period that is not in the middle of trial. Defendant here does not have that, and thus, the nature of prejudice, if nothing more, emanates from the inability to do an appropriate deposition. That can be rectified and prejudice eliminated by giving the defendant the opportunity, not in the middle of trial, to depose the expert. And as I had originally proposed, to have the Court determine disgorgement of profits in the context of the defendant's motion to strike the jury claim since disgorgement of profits is often treated as a bench matter. This seemed to the Court to strike a fair balance between the disfavored drastic result of striking expert testimony, or a portion thereof, and the timing which has caused prejudice. It is some of the timing, as I suggested earlier, that perhaps the Court has pushed the parties to trial too soon in this case, but was unaware of this problem. **Mr. Wallace, does that approach seem to appropriately meet your claim of prejudice?**

MR. WALLACE: **I believe so, your Honor. If I understand the proposal to be that the issue of the plaintiff's right to disgorgement of profits and the result thereof would be tried to the Court at some later time after we've had an opportunity, in a more reasonable manner, to cross-examine the witness on the supplemental report, I believe that would address the prejudice issue, your Honor.** I think your Honor also can order that with or without their consent.

THE COURT: I think Mr. Nolin is hearing what I'm saying.

MR. NOLIN: I hear very well, your Honor. As soon as we can speak to Mr. Benedetto and Mr. Melville, I'm sure they will hear as well. So we would expect to have a formal answer before the end of the day. Yes, we'll try to send an e-mail whether we consent or not, your Honor.

THE COURT: All right. The issue that we discussed at the beginning of the case, which is appropriateness of damages and the sorts of damages, I think remains unchanged by this. **The view I had from the New York cases reviewed was that in the absence of being able to prove lost profits, disgorgement of defendant's profits was appropriate with royalties as an alternative to that.** I would still be assuming that the jury would look at the issue of royalties, and then I cannot only hear the evidence of disgorgement of profits, but under the totality

9

of circumstances proved in the case, if there remains some reason to distinguish whether – distinguish this case from others that have held disgorgement of profits to be the appropriate remedy, I can consider that, too.

MR. WALLACE: **Yes, your Honor.  We're agreeable to that.**

(Tr. at 1138-1141) (emphasis added).

\* \* \* \* \*

MR. NOLIN:  Your Honor . . . As we communicated to the Court last night and to defendants by e-mail, we're going to reserve with your Honor the issue of disgorgement damages, which means Mr. Ratliff will not need to testify on that at this time.

(Tr. at 1149).

\* \* \* \* \*

Thus it was clear that DI expressly agreed to the Court's suggestion that it should withdraw its right to argue to the jury that disgorgement was the preferred remedy in exchange for the Court and the Defendant agreeing that evidence on disgorgement, including evidence of Fisher-Price's profits, could be presented in a separate bench hearing if DI prevailed in proving to the jury that Fisher-Price had misappropriated DI's concept and/or had committed unfair competition in such misappropriation.  It was agreed that the Court upon an evidentiary hearing after the jury verdict would weigh whether there was any basis to determine that disgorgement was not the preferred remedy.  Immediately after the jury verdict in favor of DI on February 6, 2006, the Court requested that the parties provide available dates in March, April and May 2006 for the completion of the trial.  On February 15, 2006, the Court issued a scheduling order setting a briefing schedule and scheduling the bench trial for May 1, 2006.

**C.**    **DI's Right to Jury Trial Has Been Circumvented By The Court's Ruling and The Court Should Not Use the Jury Award to Deprive DI of Disgorgement**

The Court's actions in crafting the framework of a separate bench trial on disgorgement damages, obtaining DI's approval to remove that issue from the jury and reserve it for the Court, and then granting Fisher-Price's Motion to Cancel Disgorgement Hearing without considering DI's opposition, have deprived DI of its right to jury trial on the issue of disgorgement. From the commencement of trial, DI made clear that it would argue for disgorgement of profits to the jury as a preferred and alternate remedy to a reasonable royalty. As a result of the agreement crafted by the Court, the parties agreed that the jury would consider liability and only the possibility of royalty damages. DI neither submitted evidence on Fisher-Price's profits nor argued that the jury had the right to consider the alternate and preferred remedy of disgorgement. Now, the Court is unfairly using the jury's finding of a reasonable royalty as a predicate to take away the remedy of disgorgement altogether.

The Seventh Amendment provides that, "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." U.S. Constitution, Amendment VII. The Supreme Court has held that the phrase "[s]uits at common law" refers to "suits in which legal rights [are] to be ascertained and determined, in contradistinction to those where equitable rights alone [are] recognized, and equitable remedies were administered." *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 41 (1989) (*quoting Parsons v. Bedford,* 28 U.S. (3 Pet.) 433, 447 (1830)).

As discussed in detail in Plaintiff's Memorandum of Law in Opposition to Fisher-Price's Motion to Strike Jury Demand, dated January 9, 2006 ("Opp. Strk. Jury") at 5-13, unfair competition and misappropriation are legal claims which necessitate a jury trial. Moreover, a party is entitled to a jury where it seeks a legal remedy, such as damages. *Id.* In this case,

11

Plaintiff has always sought damages. Because DI's claims are legal in nature and it has always sought damages, DI is constitutionally entitled to a jury trial. *Id.* The Court recognized this fact when it denied Fisher-Price's Motion to Strike Jury Demand before the commencement of trial.

In agreeing to allow the Court to determine the disgorgement remedy after a presentation of evidence on the subject, DI of course was also agreeing that the jury would not be in a position to pick which of the two remedies was preferable. As a result of the agreement, DI did not present the jury with evidence on the disgorgement issue. Indeed, that was precisely the point of the agreement, that the testimony of Mr. Ratliff and any other evidence on Fisher-Price's profits would be reserved for the subsequent bench hearing. In this context where the parties and the Court expressly agreed that DI would not submit the issue of disgorgement to the jury, the Court's reliance on the jury finding of a reasonable royalty to deprive DI of the disgorgement remedy appears to be improper. DI would never have entered the agreement if the Court had made it clear that it was asking DI to abandon any claim to disgorgement, but that is precisely how the Court has now construed the agreement reached during trial.[1] Therefore if this Court uses the jury award of royalty damages to deprive DI of its claim for disgorgement, the Court is unfairly denying DI's right to a jury trial and is varying, or worse, disregarding the agreement the parties reached in which DI gave up its right to present the disgorgement claim to the jury.

---

[1] Under the Court's Ruling, the agreement reached at trial meant that if DI lost the liability claim at trial it could not pursue its disgorgement remedy. As a result of the Court's ruling canceling the disgorgement hearing, DI was prevented from pursuing disgorgement damages even though DI established liability at trial and the jury awarded the only damage remedy before it. That result is contrary to how the Court framed the proposed agreement when it presented it to the parties during the trial.

## II.    DISGORGEMENT OF PROFITS IS APPROPRIATE UNDER NEW YORK LAW

### A.    Disgorgement is the Preferred Measure of Damages in Misappropriation and Unfair Competition Cases

Plaintiff has provided the Court with authority that establishes that disgorgement of profits is an available remedy under New York law for misappropriation and unfair competition claims. *See Topps Co. v. Cadbury Stani S.A.I.C.*, 380 F. Supp. 2d 250, 270 (S.D.N.Y. 2005); *Electro-Miniatures Corp. v. Wenden Co.*, 771 F.2d 23, 27 (2d. Cir. 1985); *Softel, Inc. v. Dragon Medical and Scientific Communications, Inc.*, 118 F.3d 955 (2nd Cir. 1997); *Dad's Root Beer Co. v. Doc's Beverages, Inc.*, 94 F. Supp. 121 (S.D.N.Y. 1950), *aff'd* 193 F.2d 77 (2d Cir. 1951); *Miss Susan, Inc. v. Enterprise & Century Undergarment Co.*, 62 N.Y.S.2d 250 (Sup. Ct., App. Div. 1st Dept. 1946), *aff'd* 297 N.Y. 512 (1947); *McNamara v. Powell*, 52 N.Y.S.2d 515, 533 (Sup. Ct., Oneida Cty. 1944).

Compensatory damages in common law misappropriation and unfair competition cases are measured by "the reasonable value" of the plaintiff's concept that was misappropriated. *Gilroy v. American Broadcasting Co.*, 365 N.Y.S.2d 193, 194 (N.Y. App. 1st Dept. 1975); *Robbins v. Frank Cooper Associates, et al.*, 14 N.Y.2d 913, 915, 252 N.Y.S.2d 318, 319 (1964). *Gilroy* involved a misappropriation of an author's literary property.  In evaluating the value of such a subjective property the court held that reasonable value can be measured either by the profits unfairly received by the defendant, or by the plaintiff's lost profits. *Gilroy*, 365 N.Y.S.2d at 194; *A.F.A. Tours, Inc. v. Whitchurch*, 937 F.2d 82, 87 (2d Cir. 1991); *See also Electro-Miniatures Corp.*, 771 F.2d at 27 (holding that proof of an infringer's sales was sufficient to support an award in the corresponding amount to the inventor).  The Court also held that the lower court erred by "limiting plaintiff's recovery to defendant's profits." *Gilroy*, 365 N.Y.S.2d at 194 (emphasis added). *Gilroy* thus establishes that not only is disgorgement of profits a

proper remedy for misappropriation under New York law, it may actually be a floor, not a ceiling, to a plaintiff's recovery depending on the value of the plaintiff's property.

New York law for common law misappropriation claims provides "three methods of awarding damages for misappropriation of trade secrets - compensation for plaintiff's losses, an accounting of defendant's profits, or a reasonable royalty...." *Topps Co.*, 380 F. Supp. 2d at 270. "The most commonly accepted measure of damages for trade secret misappropriation is the defendant's profits...." *Id.* (*quoting*, Michael A. Rosenhouse, *Proper Measure and Elements of Damage for Misappropriation of Trade Secret*, 11 A.L.R.4[th] 12 §2(a) (2004)); *see also Electro-Miniatures Corp.*, 771 F.2d at 27; *Softel, Inc.*, 118 F.3d 955 (under New York law, disgorgement is an appropriate remedy for the misappropriation of a trade secret and awarding reasonable royalties only because defendant made no profits); *Dad's Root Beer Co.*, 94 F. Supp. 121 ("[o]ne who has gained unlawfully, as a result of unfair competition, shall not retain his profits."); *Miss Susan, Inc.*, 62 N.Y.S.2d 250.

In the *Topps* case, the Court rejected the defendant's argument that the plaintiff's damages were restricted to an award of reasonable royalties based on the 3% royalty rate in the parties' agreement. The Court in *Topps* held that the defendant could not "seriously contest that an accounting of defendant's profits is a proper remedy in a case concerning misappropriation of trade secrets; a remedy which the Second Circuit has called 'an appropriate measure of damages under New York law.'" *Topps Co.*, 380 F. Supp. 2d at 268 (quoting *Softel, Inc.*, 118 F.3d at 969).

An award of reasonable royalties is typically appropriate where plaintiff's lost profits or defendant's unjust enrichment fail to adequately compensate the plaintiff. *Linkco, Inc. v. Fujitsu, Ltd.*, 232 F. Supp. 2d 182, 186 (S.D.N.Y. 2002), *citing, Vermont Microsystems v. Autodesk, Inc.*, 88 F.3d 142, 151 (2d Cir. 1996); *University Computing Co. v. Lykes-Youngstown Corp.*, 504

F.2d 518, 535-37 (5th Cir. 1974); *see also* Restatement (Third) of Unfair Competition (use of reasonable royalty more appropriate when plaintiff's loss is greater than defendant's gain).

Here, disgorgement of Fisher-Price's profits is the appropriate compensatory remedy because the jury found Fisher-Price liable for misappropriation and unfair competition (*i.e.*, bad faith misappropriation). Thus, the jury found that Fisher-Price acted with intent to harm DI by willfully and knowingly using its concept without paying for it. Accordingly, the Court should award disgorgement not only to ensure that Fisher-Price does not benefit from its wrongful conduct, but as a deterrent to future conduct. "[D]isgorgement removes an incentive for misappropriating trade secrets by removing the benefit of misappropriation . . . Although disgorgement discourages misappropriation, it is not punitive." *Mason v. Sybron Corp.,* 955 F. 2d 48, 49 (9th Cir. 1992); *see Maltina Corp. v. Cawy Bottling Co.,* 613 F.2d 582, 585 (5th Cir. 1980); *see also Roulo v. Russ Berrie & Co.,* 886 F.2d 931 (7th Cir. 1989) (profits are awarded for deterrence); *Playboy Enterprises, Inc. v. Baccarat Clothing, Co.,* 692 F.2d 1272, 1274 (9th Cir. 1982) (award of nominal damages in a Lanham Act violation case would "encourage a counterfeiter to merely switch from one infringing scheme to another as soon as the infringed owner became aware of the fabrication"). Significantly, neither Fisher-Price nor the Court in the Ruling cite to any New York authority which characterizes disgorgement of profits resulting from a misappropriation as punitive or anything but compensatory damages.

Similarly, several courts have held that the mere payment of a reasonable royalty is disfavored as a measure of damages because of its failure to appropriately compensate the plaintiff and have a deterrent effect. "Nunc pro tunc payment of the royalty fee becomes simply the 'judicial expense' of doing business." *Sands Taylor & Wood v. Quaker Oats Co.,* 34 F.3d 1340, 1351 (7th Cir. 1994), *quoting, Playboy,* 692 F. 2d at 1275. "Determination of a reasonable

royalty after infringement, like many devices in the law, rests on a legal fiction. Created in an effort to compensate when profits are not provable, the reasonable royalty device conjures a willing licensor and licensee... *Id., quoting, Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.,* 575 F.2d 1152, 1158 (6th Cir. 1978) ("the infringer would have nothing to lose, and everything to gain if he could count on paying only the normal, routine royalty non-infringers might have paid"). Here, it would be manifestly unfair to limit DI to a royalty award, when the evidence established that Fisher-Price presented a potential royalty agreement in the Option in the spring of 1999, but then, as the jury has now found, misappropriated DI's novel concept in bad faith. Moreover, in limiting DI to claims of misappropriation and unfair competition instead of implied contract this Court expressly found that the option agreement had expired without exercise by Fisher-Price. Putting DI back to what it might have had seven years ago but for Fisher-Price's wrongful bad faith conduct is not an adequate compensatory award and allows Fisher-Price to profit unfairly from its tortuous conduct. Again, the Court should be mindful that the jury accepted that measure of damages only because it was presented with no other damage option as the parties' agreement reserved the disgorgement evidence for a subsequent hearing.

Accordingly, disgorgement of the profits that Fisher-Price received from the bad faith misappropriation of DI's concept should continue to be the proper measure of damages in this case.

### B.    The Cases Relied Upon By Fisher-Price Are Distinguishable

Fisher-Price cites *Suburban Graphics Supply Corp. v. Nagle*, 5 A.D.3d 663, 666, 774 N.Y.S.2d 160, 163-64 (N.Y. App. 2d Dep't 2004) and *Allan Dampf, P.C. v. Bloom*, 127 A.D.2d 719, 720, 512 N.Y.S.2d 116 (2d Dep't 1987) for the proposition that damages in cases of unfair competition and misappropriation of an idea are limited to an award of the profits that a plaintiff

should have received but for the improper conduct of the defendant. (*See* Defendant's Memorandum in Support of Motion to Cancel Disgorgement Hearing, dated April 10, 2006 ("Def. Mem.") at 3-6).

As a threshold matter, to the extent that the court in *Suburban Graphics* relied on the New York Court of Appeals' prior decision in *Michel Cosmetics, Inc. v. Tsirkas*, 282 N.Y. 195, 26 N.E.2d 16 (1940), for the proposition that the proper measure of damages in a case of unfair competition is <u>limited</u> to an award of a plaintiff's lost profits and not an award of defendant's profits (*see* 774 N.Y.S.2d at 163-164), that reading of the *Michel Cosmetics* decision appears to be erroneous. Indeed, in *Michel Cosmetics*, the court cited with approval the Supreme Court's prior decision in *Hamilton-Brown Shoe Co. v. Wolf Bros. & Co.*, 240 U.S. 251, 259 (1916), in which the Court held that the plaintiff "might be compelled to yield up his gains to the true owner, upon a principle analogous to that which charges a trustee with the profits acquired by the wrongful use of the property of the *cestui que trust*." 26 N.E.2d at 17 (quoting *Hamilton-Brown Shoe Co.*, 240 U.S. at 259). The court in *Michel Cosmetics* did not seek to award plaintiff the profits of the defendant in that case because the defendant had no profits. (*Id.*) ("Here it does not appear that the defendants acquired any profits"). A later decision from the Southern District of New York, *Dad's Root Beer Co. v. Doc's Beverages, Inc.*, 94 F. Supp. 121, 122 (S.D.N.Y. 1950), confirms that *Hamiton-Brown Shoe* and *Michel Cosmetics* stand for the proposition that an award of a disgorgement of a defendant's profits is a proper remedy for claims of common law unfair competition under New York law. *See* 94 F. Supp. at 122 ("The New York authorities are clear that one who has gained unlawfully, as the result of unfair competition, shall not retain his profits").

Other authority confirms the availability of the remedy of disgorgement of profits in cases of misappropriation and unfair competition under New York law. *See Gilroy*, 365 N.Y.S.2d at 194. In *Gilroy*, a case relied upon by the NEW YORK PATTERN JURY INSTRUCTIONS CIVIL (Vol. II § 3:58) to measure damages in a misappropriation case under New York law, the Court held that the lower court had erred by "limiting plaintiff's recovery to defendant's profits." *Id.* (emphasis added).

### C.    Trade Secret Cases Are Closely Analogous and Should Be Followed

The availability of disgorgement of profits for other common law claims under New York law demonstrates, by analogy, the propriety of awarding such damages in a case of misappropriation of an idea. These include, without limitation, claims for common law misappropriation of trade secrets, which under New York law are based on the RESTATEMENT OF TORTS, *see Softel, Inc.*, 118 F.3d at 969 (disgorgement of profits is "an appropriate measure of damages under New York law"); *Topps Co.*, 380 F. Supp. 2d at 268; and common law breach of fiduciary duty. *See Gomez v. Bicknell*, 756 N.Y.S.2d 209, 214 (N.Y. App. 2d Dep't 2002).

Cases involving misappropriation of a trade secret are closely analogous to cases involving misappropriation of an idea because the elements of the respective claims are nearly identical. In *Georgia-Pacific Corp. v. United States Plywood Corp.*, 243 F. Supp. 500, 531 (S.D.N.Y. 1965), the Court stated:

> The doctrine of unjust enrichment is most dramatically exemplified in those cases dealing with the misappropriation of inventive ideas and trade secrets; that is, cases of nonpatent torts. In this particular area, common-law principles control. Illustratively, the measure of damages has been either quantum meruit for the use value of the property (*Strubbe v. Sonnenschein*, 299 F.2d 185, 97 A.L.R.2d 1386 (2d Cir. 1962)) or the malefactor's profits (*Franke v. Wiltschek*, 209 F.2d 493 (2d Cir. 1953)).

243 F. Supp. at 531 (emphasis added). This analysis confirms that disgorgement of profits is available for misappropriation claims, and it also highlights the similarity of claims for misappropriation of trade secrets and misappropriation of ideas.

In fact, as *Linkco, Inc. v. Fujitsu Ltd.*, 232 F. Supp. 2d 182 (S.D.N.Y. 2002), makes clear, there are three alternative forms of relief available on a misappropriation claim: defendant's profits, plaintiff's lost profits or a reasonable royalty analysis. But a reasonable royalty calculation is in fact the last option and is meant to be used when disgorgement of defendant's profits is inadequate to compensate the plaintiff:

> Once it is established that a trade secret has been misappropriated, there are two obvious ways to calculate plaintiff's damages. *See A.F.A Tours, Inc. v. Whitchurch*, 937 F.2d 82, 87 (2d Cir. 1991) ("The amount of damages recoverable in an action for misappropriation of trade secrets may be measured either by the plaintiff's losses or by the profits unjustly received by the defendant.") *First*, damages may be measured according to any losses plaintiff suffered from the alleged misappropriation. Plaintiff's losses may include the cost of developing the trade secret and the revenue plaintiff would have made but for the defendant's wrongful conduct. *Second*, damages may be measured by the defendant's unjust enrichment as a result of the misappropriation. Unjust enrichment is measured by the profits the defendant obtained from using the trade secret. *See Electro-Miniatures Corp. v. Wendon Co.*, 771 F.2d 23, 27 (2d Cir. 1985).
>
> In certain circumstances, these damage calculations provide inadequate compensation to the plaintiff. Courts have therefore developed a third measure of damages: a reasonable royalty. "A reasonable royalty award attempts to measure a hypothetically agreed value of what the defendant wrongfully obtained from the plaintiff." *Vermont Microsystems I*, 88 F.3d at 151. To measure this value, "the Court calculates what the parties would have agreed to as a fair licensing price at the time that the misappropriation occurred." *Id.* (citing *Georgia-Pacific Corp. v. U.S. Plywood-Champion Papers, Inc.*, 446 F.2d 295, 296-97 (2d Cir. 1971)). Because the plaintiff's loss or the defendant's gain may be very difficult to calculate in intellectual property cases, a reasonable royalty is "a common form of award in both trade secret and patent cases." *Vermont Microsystems, Inc. v. Autodesk, Inc.*, 138 F.3d 449, 450 (2d Cir. 1998) ("*Vermont Microsystems II*"); *Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1128 (5th Cir. 1991), *aff'd*, 505 U.S. 763, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992). Moreover, a reasonable royalty is ideal when the commercial context in which the misappropriation occurred requires consideration of multiple factors in order to compensate the plaintiff adequately.

232 F. Supp. 2d at 185-186. By granting Fisher-Price's motion to cancel the bench trial on disgorgement damages, the Court has disregarded the primary point of the *Linkco* case, which is recent case law establishing that reasonable royalty is, in fact, the third choice of available remedies in a misappropriation case and should only be available when plaintiff's own profits are not calculable and defendant has not profited from the misappropriation. Thus the fact that DI might have been paid on a royalty basis but for Fisher-Price's misappropriation is not a basis to prefer a royalty remedy over disgorgement of Fisher-Price's profits on the misappropriation and unfair competition claims.

Accordingly, it is proper for the Court to award DI the profits that Fisher-Price received by virtue of its wrongful misappropriation of DI's concept and a hearing on that issue should be held.

## III.    IT IS NOT NECESSARY THAT PLAINTIFF WOULD HAVE MADE THE SALES AND EARNED THE PROFITS MADE BY DEFENDANT

Fisher-Price argues that defendant's profits may be used as a measure of damages only where the plaintiff would have made the sales and earned the profits made by defendant. (Def. Mem. at 6-12). However, such an argument is contrary to New York law which clearly indicates that a wrongdoer should not be permitted to benefit from its acts. *See Electrolux Corp. v. Val-Worth, Inc.,* 6 N.Y.2d 556, 571 (1959) ("Equity will treat the wrongdoer as a trustee for the plaintiff so far as the former has realized profits from its acts" (internal quotations and citations omitted)); *See also Dad's Root Beer Co.,* 94 F. Supp. at 122 ("The infringer is required in equity to account for and yield up his gains to the true owner, upon a principle analogous to that which

charges a trustee with the profits acquired by wrongful use of the property of the cestui que

trust"), *aff'd*, 193 F.2d 77 (2d Cir. 1951), *quoting Hamilton-Brown Shoe Co.*, 240 U.S. at 259.

> In *Dad's Root Beer Co.*, the Court stated:

> "It may well be that this accounting will deprive defendants of some profits legitimately earned by them. Also, to some extent, plaintiff may enjoy a windfall. But, in the circumstances, there is an inability to refine proceedings to the point where each individual sale can be analyzed, and an apportionment made of that which defendants might rightfully keep. To do this, defendants bear the burden of demonstration.... Courts are willing to accept the above imperfections rather than coddle the wrongdoer."

*Dad's Root Beer Co.*, 94 F. Supp. at 123 (internal citations omitted).

Furthermore, there is no bright line rule in New York law under which defendant's

profits may be used as a measure of damages only where the plaintiff would have made the sales

and earned the profits made by defendant, as Fisher-Price suggests. Fisher-Price argues that

disgorgement may only be awarded where the parties are competitors. There is no New York

case that articulates such a rule and New York law appears to be contrary to it. For example,

*McNamara v. Powell* is a common law misappropriation case involving the misappropriation of

an inventor's muffler design. *McNamara*, 52 N.Y.S.2d 515. Applying New York law in that

case, the Court awarded the inventor disgorgement of the defendant's profits, even though the

inventor and the misappropriator were not direct competitors and the inventor was not in a

position to sell mufflers. *Id.*

In addition, in *Topps Co.*, 380 F. Supp. 2d 250, the Court awarded disgorgement

damages where the parties were not competitors, but rather, were in a licensor-licensee

relationship. Furthermore, in *Gilroy*, 365 N.Y.S.2d 193, disgorgement damages were awarded in

a misappropriation and unfair competition case where a broadcasting company misappropriated

an author's literary work. Again, the parties were not competitors.

The foregoing cases more closely resemble the inventor versus corporation dynamic that exists in this case, than a situation where the parties are in direct competition. This further underscores the availability of disgorgement damages for misappropriation and unfair competition under New York law.

## IV.    DI'S DAMAGES SHOULD NOT BE LIMITED TO THE JURY VERDICT

Fisher-Price argues that DI's damages should be limited to the jury verdict because the verdict represents DI's lost profits. (Def. Mem. at 12-14). However, as discussed previously, several courts have held that the mere payment of a reasonable royalty is disfavored as a measure of damages because of its failure to appropriately compensate the plaintiff and have a deterrent effect. "Nunc pro tunc payment of the royalty fee becomes simply the 'judicial expense' of doing business." *Sands Taylor & Wood,* 34 F.3d at 1351, *quoting, Playboy,* 692 F.2d at 1275. "Determination of a reasonable royalty after infringement, like many devices in the law, rests on a legal fiction. Created in an effort to compensate when profits are not provable, the reasonable royalty device conjures a willing licensor and licensee... *Id. quoting, Panduit Corp.,* 575 F.2d at 1158 ("the infringer would have nothing to lose, and everything to gain if he could count on paying only the normal, routine royalty non-infringers might have paid").

It is improper for the Court to consider the royalty rate provided in the Option Agreement in determining that disgorgement "would constitute a windfall above and beyond any profits DI could have ever expected to make." (Ruling at 6). Fisher-Price argued at trial for the 3% royalty provided for by the Option Agreement, and that argument was rejected by the jury as evidenced by its award. Moreover, but for the agreement the Court and parties reached on the presentation of disgorgement, DI would have been in a position to ask the jury to choose between a reasonable royalty based damage analysis and a disgorgement analysis. Because the agreement

took the second analysis from the jury, it is not proper to now use the jury's award of a reasonable royalty as means of depriving Plaintiff of the disgorgement hearing that was agreed upon. The jury found Fisher-Price liable for misappropriation and bad faith. It awarded damages on the only theory it had before it. That award of a less preferred damage remedy should not now preclude a finding that DI is entitled to disgorgement.

Finally, it is patently unfair to hold DI to the reasonable royalty it would have received seven years earlier had Fisher-Price not stolen its concept and had DI not had to engage in a lengthy and expensive legal battle to vindicate its rights. To hold otherwise is to allow Fisher-Price to merely pay "the judicial expense of doing business" for the benefit it gained by its theft and to reap without consequence multiple millions of dollars in profits from DI's misappropriated concept.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court reconsider its Ruling on Defendant's Motion to Cancel Disgorgement Hearing and proceed with the trial on disgorgement damages at the earliest convenient date.

Dated: May 9, 2006

Respectfully Submitted,

GRIMES & BATTERSBY, LLP

By: _____
Gregory J. Battersby (Bar No. 7986)
Edmund J. Ferdinand, III (Bar No. 21287)
Russell D. Dize (Bar No. 23064)
Susan M. Schlesinger (Bar No. 26625)
488 Main Avenue, Third Floor
Norwalk, Connecticut 06851-1008
(p) (203) 849-8300
(f) (203) 849-9300

SANDAK HENNESSEY & GRECO, LLP
Jay H. Sandak, Esq.
Peter M. Nolin, Esq.
707 Summer Street
Stamford, Connecticut 06901-1026
(p) (203) 425-4200
(f) (203) 325-8608

Attorneys for Plaintiff
Design Innovation, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on May 9, 2006, a copy of the foregoing Memorandum of Law in Support of Plaintiff's Motion for Reconsideration of the Court's Ruling on Defendant's Motion to Cancel Disgorgement Hearing was served on all counsel of record below by U.S. Mail, First Class, postage prepaid, with a courtesy copy sent via electronic means to:

Jacqueline Bucar Esq.
Robert Allen, Esq.
Tyler Cooper & Alcorn, LLP
205 Church Street
New Haven, Connecticut 06510

Bradford S. Babbitt, Esq.
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, CT 06103-3597

Robert J. Lane, Jr., Esq.
Jodyann Galvin, Esq.
HODGSON RUSS LLP
One M&T Plaza, Suite 2000
Buffalo, New York 14203-2391

William Wallace, Esq.
Milbank, Tweed, Hadley & McCoy-DC
1825 Eye St., N.W., Suite 900
Washington, DC 20006

Russell D. Dize