UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| VICTOR G. REILING ASSOCIATES and DESIGN INNOVATION, INC., | : | |
| | : | |
| Plaintiffs | : | |
| | : | Civil No. 3:03 CV 222(JBA) |
| v. | : | |
| | : | June 2, 2006 |
| FISHER-PRICE, INC. | : | |
| | : | |
| Defendant. | : | |
| | : | |

FISHER-PRICE'S MEMORANDUM IN OPPOSITION TO DI'S
MOTION FOR RECONSIDERATION OF THE COURT'S
 RULING CANCELING THE DISGORGEMENT HEARING 

**MURTHA CULLINA LLP**
Jacqueline D. Bucar
Whitney Grove Square
Two Whitney Avenue
New Haven, CT  06510

**HODGSON RUSS LLP**
Robert J. Lane, Jr.
Jodyann Galvin
One M&T Plaza, Suite 2000
Buffalo, New York  14203-2391

**MILBANK, TWEED, HADLEY &
    MCCLOY LLP**
William E. Wallace III
Jay I. Alexander
International Square Building
1850 K Street, N.W., Suite 1100
Washington, D.C.  20006

## TABLE OF CONTENTS

**Page**

Preliminary Statement..................................................................................................1

Argument ....................................................................................................................3

I.      DI'S PROCEDURAL ARGUMENTS SHOULD BE REJECTED ...................................4

        A.      DI Had a Full Opportunity to Present Its Position Regarding
                Disgorgement Damages Prior to This Court's Ruling.............................4

        B.      This Court Did Not Violate the Law of the Case Doctrine
                in the Disgorgement Ruling ..................................................................5

        C.      DI Was Not "Deprived" of Its Right to a Jury Trial ..............................8

II.     UNDER NEW YORK LAW, DEFENDANT'S PROFITS MAY
        BE AWARDED ONLY WHERE THEY ACCURATELY
        MEASURE PLAINTIFF'S ACTUAL LOSSES ............................................................10

        A.      DI Ignores Controlling New York Case Law Which
                Prohibits an Award of Defendant's Profits Here ..................................10

        B.      The Case Law Cited By DI Is Either Distinguishable
                From or Consistent With New York Law...............................................14

Conclusion ................................................................................................................17

**Preliminary Statement**

Plaintiff Design Innovation, Inc. ("DI") seeks reconsideration of this Court's April 25, 2006 ruling (the "Disgorgement Ruling," Docket No. 295) canceling the disgorgement hearing. Although DI argues both procedural and substantive error by the Court, it raises no argument in its motion to reconsider that has not previously been raised, considered and rejected; nor does DI explain how or why the ultimate result would be any different if its damages expert witness had testified to the opinions reflected in his expert report. The Court's Disgorgement Ruling was manifestly correct as a matter of law, both substantively and procedurally.

Procedurally, DI argues that:

(1)     it was not given an opportunity to make its substantive arguments;

(2)     its alleged "entitlement" to disgorgement had already been determined and became "law of the case" when the Court denied Fisher-Price's pre-trial in limine motion seeking to preclude the admission of evidence on the issue of disgorgement; and

(3)     the Court's cancellation of the disgorgement hearing deprived DI of its alleged right to a jury trial on the issue of disgorgement.

All three procedural arguments are without merit. First, DI's substantive argument that it is entitled to disgorgement damages was fully briefed in "Plaintiff's Response to Defendant's Trial Memorandum Regarding Disgorgement Damages." DI makes no substantive argument now that was not previously made in its trial briefs; nor does it cite to a single case in its current brief that was not previously cited in its trial briefing. Second, this Court never ruled

1

that DI was (or was not) entitled to disgorgement damages; it simply declined to preclude DI

from attempting to prove entitlement to disgorgement damages.  Third, the Court did nothing to

deprive DI of its alleged right to a jury determination of its claim for disgorgement.  Whatever

might have been DI's right to a jury trial on disgorgement was lost when DI ignored both the

Federal Rules of Civil Procedure and the Court's various orders setting deadlines for the filing of

expert reports. To avoid having its expert report stricken, DI voluntarily ***agreed*** to withdraw its

claim for disgorgement from the jury and have the Court act as the trier of fact on this issue.

Having waived its jury demand in order to keep alive the possibility of a disgorgement award, DI

cannot be heard to complain of procedural error when the Court — after presiding over several

weeks of trial and hearing all the evidence that DI would present on its disgorgement claim (save

for calculation of an amount) — proceeded to decide the matter.

Substantively, DI renews its oft stated positions that:

(1)    disgorgement of a defendant's profits is available in misappropriation of

idea cases as a measure of damages under New York law, and

(2)    the award of such damages is necessary to deter future acts of

misappropriation.

In repeating these arguments, DI once again ignores the long and unbroken line of New York

case law and this Court's holding that defendant's profits may not be awarded except as a

measure of plaintiff's actual losses.   DI's persistence in arguing an equitable entitlement to

disgorgement of profits to deter the defendant's future conduct is exceeded only by the force of

the controlling New York law rejecting that argument.

2

## **Argument**

The standard for granting a motion for reconsideration is "strict." *Mody v. Gen. Elec. Co.*, 2006 U.S. Dist. LEXIS 24439, at *2 (D. Conn. Apr. 26, 2006). As this Court stated in its January 10, 2006 reconsideration ruling [Docket No. 189]:

> Reconsideration is only appropriate where the moving party can point to controlling law or evidence that "might reasonably be expected to alter the conclusion reached by the court." *See Shrader v. CSX Transp.,* 70 F.3d 255, 257 (2d Cir. 1995). A motion for reconsideration gives the Court an opportunity to "correct manifest errors of law or fact or to consider newly discovered evidence." *LoSacco v. City of Middletown,* 822 F. Supp. 870, 876-77 (D. Conn. 1993) (citation omitted), *aff'd,* 33 F.3d 50 (2d Cir. 1994).

Ruling on Plaintiff's Motion for Reconsideration and Defendant's Motion for Reconsideration dated January 10, 2006, at 2. Because DI has failed to "point to [any] controlling law or evidence that might be expected to alter the conclusion reached by the court," DI's motion for reconsideration must be denied.

3

## I.    DI'S PROCEDURAL ARGUMENTS
## SHOULD BE REJECTED

**A.    DI Had a Full Opportunity to Present Its
Position Regarding Disgorgement Damages
Prior to This Court's Ruling**

DI argues that it did not have an opportunity to advance its disgorgement-related arguments before the Court issued its ruling cancelling the disgorgement hearing on April 25, 2006.  *See* "Memorandum of Law in Support of Plaintiff's Motion for Reconsideration," dated May 9, 2006, (the "DI Memo.") at 3-4.  DI overstates the record.  While it might not have had an opportunity to repeat its disgorgement arguments, every argument advanced in the current Motion to Reconsider was advanced by DI in its Trial Briefs.  On April 10, 2006, both Fisher-Price and DI filed their respective Trial Briefs.  Both sets of briefs addressed the legal issues surrounding the scheduled disgorgement hearing.  Fisher-Price's trial brief also incorporated the simultaneously filed motion to cancel.  On April 17, 2006, DI filed "Plaintiff's Response to Defendant's Trial Memorandum Regarding Disgorgement Damages" (the "DI Disgorgement Response").  Although DI advised that it intended to file an independent opposition to Fisher-Price's motion to cancel, DI addressed in detail the merits of Fisher-Price's arguments for cancellation of the hearing.  *See* DI Disgorgement Response at 9-16.  It cites no case law on this motion which it did not cite and discuss in its disgorgement hearing briefs.

The Court specifically discussed and rejected DI's arguments (the same arguments which they have again made with this motion) in the Disgorgement Ruling.[1]  DI's real complaint is not that it was deprived of an opportunity to advance its legal arguments.  Its real complaint is that it does not like the result.  This is not the purpose of a motion to reconsider.

---

[1]    *See, e.g.*, page 4, note 1; page 5, note 2; page 8, note 4.

**B.**    **This Court Did Not Violate the Law of**
    **the Case Doctrine in the Disgorgement Ruling**

DI argues repeatedly that this Court's ruling violated the law of the case doctrine. DI Memo. at 2, 4-8, and 12.  DI relies on two of this Court's pre-trial rulings that allegedly established the "law of the case":  the January 12, 2006 ruling denying Fisher-Price's motion in limine seeking to bar all evidence of disgorgement damages [Docket No. 195]; and the January 13, 2006 ruling denying Fisher-Price's motion to strike DI's jury demand on the ground that its claim for disgorgement damages was equitable in nature [Docket No. 201].  DI contends that in each of these rulings the Court affirmatively determined that DI would be entitled to an award of disgorgement damages if it prevailed on liability.  DI Memo. at 4-7.  This is wrong for at least three reasons.

First, DI has mischaracterized this Court's pre-trial decisions.  In denying Fisher-Price's motion in limine to bar evidence of disgorgement damages, this Court did ***not*** rule that DI would be entitled to disgorgement damages if it prevailed on liability. Rather, the Court determined that ***at that stage of the proceedings, before the evidence was heard***, it would not preclude DI from maintaining its claim to disgorgement.  ("I'm going to deny motion in limine number eight which seeks to preclude [disgorgement] as a damages theory.  What the ramifications of that are, are not yet fully fleshed out." 1/5/06 Tr. at 61).  In denying Fisher-Price's motion to strike DI's jury demand, the Court ruled that, although it was a very close issue, the "strong federal policy" in favor of jury trials supported denial of the motion.  *See* DI Memo. at 5; 1/3/06 Tr. at 214-15.  Again, the Court did not make any ruling that DI had shown or could show facts that would entitle it to disgorgement damages upon a finding of liability. Colloquy among the Court and counsel concerning the possibility for a stipulation that the Court

5

would act as the trier-of-fact on the disgorgment claim made clear that the ultimate question of whether DI would be able to substantiate a disgorgement claim (even if liability were found) remained open. *See* 1/24/06 Tr. at 1141.[2]

Second, it is black-letter law that a ruling may be treated as "law of the case" only if it has ***finally*** decided an issue on the merits.[3] Denial of a motion in limine is much like denial of a motion for summary judgment, *i.e.*, an interlocutory decision that an issue does or may exist. In no way does a court's denial of an in limine motion that seeks to preclude a certain theory of damages establish that the plaintiff is automatically and necessarily entitled to recover on that theory of damages, regardless of the facts, if liability is found. By DI's argument, the Court's denial of Fisher-Price's motion to preclude DI's claim for punitive damages "established" that DI was entitled to such damages. DI's argument that an interlocutory, in limine motion establishes the "law of the case" that controls an issue even after the evidence is heard is not supported by law or logic.

---

[2]    Both parties' counsel acknowledged on the record during trial that the issue of whether DI's claim for disgorgement damages would fail as a matter of law was still open and had not been determined by the Court. *See* 2/2/06 Tr. at 109 (Nolin acknowledgment that Fisher-Price's "[c]hallenges to [a] potential disgorgement remedy" remain under consideration by the Court); 1/24/06 Tr. at 1140 (Wallace statement that "the issue of plaintiff's right to disgorgement of profits," if any, would be determined by the Court under the proposal that DI stipulate to waive any right to present disgorgement evidence to the jury). Moreover, it is telling that in its current motion to reconsider, DI relies heavily on argument that disgorgement is an equitable remedy (DI Memo. at 20, citing *Electrolux* and *Dad's Root Beer*) for which a jury trial would not be available.

[3]    As the Second Circuit has explained, "interlocutory orders remain subject to modification or adjustment prior to the entry of a final judgment adjudicating the claims to which they pertain." *Cullen v. Margiotta,* 811 F.2d 698, 708 (2d Cir. 1987). In general, the law of the case doctrine binds trial courts only to issues previously decided by an appellate court, *see, e.g.*, *Rezzonico v. H&R Block, Inc.*, 182 F.3d 144, 148-49 (2d Cir. 1999), or where the issue was finally decided by the trial court and not raised on appeal. *See, e.g.*, *Nokia Corp. v. Uzan*, 425 F.3d 1005, 1008 (2d Cir. 2005). *See also Vander Malle v. Ambach*, 667 F. Supp. 1015, 1030 (S.D.N.Y. 1987) (finding that the "law of the case" doctrine did not apply to bar the court from reconsidering an earlier, preliminary determination of the issue of whether plaintiffs had failed to exhaust their remedies "[b]ecause the doctrine depends upon a prior *final* decision of an issue or claim by the court or by an appellate tribunal") (emphasis in original) (citing 18 C. WRIGHT, A. MILLER & E. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4478 (2d ed. 1981); 18 MOORE'S FEDERAL PRACTICE - CIVIL § 134.20[3].

Third, as DI itself notes, the law of the case doctrine does not apply where new evidence becomes available.  DI Memo. at 8.[4]  It is undisputed that after having heard four weeks of trial testimony, and having the opportunity to consider the jury's verdict, the Court had new facts available that were not available at the time of the in limine rulings.   DI's witnesses testified to facts establishing that DI could not recover an award of defendant's profits as a matter of law.  DI's main business was providing design services on a work-for-hire basis, with a small portion of DI's business developing toy concepts on a speculative basis to be offered for license for royalties.  1/23/06 Tr. at 772-773; 1/24/06 Tr. at 963-964.  This evidence made clear that DI did not manufacture, market, or sell toys, and that it could not, under any circumstances, have earned the profits that Fisher-Price earned on the sale of the accused Rescue Heroes products.  *See* Disgorgement Ruling at 8.[5]  When the Court ruled on Fisher-Price's in limine motion, these facts had not yet been established.  Accordingly, because the factual record underlying the Court's dismissal of DI's claim for defendant's profits was established after the Court's rulings on Fisher-Price's motion in limine and motion to strike, the doctrine of the law of the case could not apply, even if the Court's earlier decisions could plausibly be described as "final."

---

[4]     *See also DiLaura v. Power Auth. of N.Y.,* 982 F.2d 73, 76 (2d Cir. 1992) (recognizing that "the availability of new evidence" is one of the "major grounds justifying reconsideration" of a previous ruling) (citations omitted); *Page Mill Asset Mgmt. v. Credit Suisse First Boston Corp.,* 2001 U.S. Dist. LEXIS 10803, at *4-6 (S.D.N.Y. July 30, 2001) (holding the "law of the case" doctrine inapplicable where new evidence had become available after the court's previous ruling on a particular issue).

[5]     DI's counsel admitted these facts on the record during trial.  *See* 1/13/06 Tr. at 254 ("[DI was] not in a position to sell [toy products using the Reel Heroes concept] ourselves, so the only model of our own profits would be reasonable royalty, as I read the cases").

**C.     DI Was Not "Deprived" of Its Right to a Jury Trial**

        DI argues that this Court wrongfully "deprived DI of its right to a jury trial on the issue of disgorgement," by "crafting" a "framework" that misled DI into stipulating to submit the issue of disgorgement/defendant's profits to the Court.  DI Memo. at 11.  DI's argument seems to be premised on the assumption that the Court misled DI into believing that it already had shown legal entitlement to disgorgement damages and that the only issue remaining was "how much?"  This, of course, did not happen.  DI also ignores Fisher- Price's objection that DI had submitted its "supplemental" expert report — identifying for the first time the basis of an opinion on disgorgement damages — eleven months after such a report was due and less than two weeks before the start of trial.  DI seems to have forgotten the tactical reasons underlying its stipulation.

        It is also clear that DI elected to pursue claims for both a royalty and for disgorgement, that DI proffered an expert who testified how a royalty could and should be calculated, and that DI has not identified one shred of evidence (save for calculation of an amount) that would change the ***factual bases*** of the Court's ruling that DI is not entitled to disgorgement.  DI's contention that it was tricked by the Court is unfounded and offensive.

        Even the portions of the transcript quoted by DI in its memorandum of law make clear that the Court never determined that DI had shown a legal entitlement to an award of defendant's profits.  The Court expressly advised DI that, if DI consented to waive any jury rights with respect to its disgorgement claim, the Court would continue to consider Fisher-Price's position that disgorgement damages were not available under the particular facts of this case.  1/24/06 Tr. at 1141 (noting that if the parties stipulate to submit the issue of disgorgement to the Court, then "if there remains some reason to distinguish whether — to distinguish this case from

others that have held disgorgement of profits to be the appropriate remedy, I can consider that too"). *See also* 1/5/06 Tr. at 61 ("I'm going to deny motion in limine number eight which seeks to preclude [disgorgement] as a damages theory. ***What the ramifications of that are, are not yet fully fleshed out***.") (emphasis added). Thus, DI cannot credibly contend it was unaware that the issue of its legal entitlement to disgorgement damages under the facts to be established at trial was still open and under consideration by the Court. Indeed, as discussed above in footnote 2, DI's counsel confirmed on the record his understanding that the issue was contested and had not been determined by the Court.

DI also contends that "the Court's reliance on the jury finding of a reasonable royalty to deprive DI of the disgorgement remedy appears to be unfair," asserting that it would not have agreed to submit the issue of disgorgement to the Court if it had known that a jury award of a reasonable royalty would preclude any right to disgorgement.[6] DI Memo. at 12. DI was fully aware of Fisher-Price's position on the availability (or unavailability) of disgorgement, and the Court had also aired its view that New York law provided for an award of disgorgement/defendant's profits only "in the absence of being able to prove [plaintiff's] lost profits." *See* 1/24/06 Tr. at 1141. The Court noted in its Disgorgement Ruling (at pages 8-9),

---

[6]     Plaintiff relies on *Gilroy v. Am. Broad. Co.*, 365 N.Y.S.2d 193 (1st Dep't 1975) to argue that that disgorgement of profits is not only a proper remedy for misappropriation under New York law, but it is "a floor, not a ceiling, to a plaintiff's recovery depending on the value of the plaintiff's property" (DI Memo. at 14) and disgorgement of profits has been awarded where the parties were not competitors (DI Memo. at 21). Yet, this court has already examined *Gilroy* and determined in its ruling that it was distinguishable. *See* Disgorgement Ruling at 8 (noting that in *Gilroy* the measure of damages was the reasonable value of what was misappropriated and the court held that plaintiff should not have been limited to defendant's profits where those profits did not adequately measure the value of the plaintiff's idea). The New York Pattern Jury Instructions Civil, upon which DI also relies, does not support plaintiff's interpretation of *Gilroy* but instead references the case for the basic proposition that "damages for misappropriation are measured by the reasonable value of the idea and expert opinion is admissible to prove the value of the idea." NEW YORK PATTERN JURY INSTRUCTIONS CIVIL 3 G 4 INTRO. In this case, the value of the idea was the royalty that could be earned by plaintiff upon a license, which was the only available avenue of revenue to the plaintiff.

that DI was able to prove its actual losses at trial. Based on this, and consistent with what the

Court told DI's counsel on the record on January 24, 2006, the Court ruled that DI was not

entitled to pursue its disgorgement claim. DI knew what it was doing when it waived its jury

demand on its disgorgement claim, and acts in ill grace when it accuses the Court of depriving it

of its right to a jury trial. DI's real complaint is not that the Court decided this issue, but rather

that the Court decided it in a way that DI does not like.

> ## II.    UNDER NEW YORK LAW, DEFENDANT'S PROFITS MAY BE AWARDED ONLY WHERE THEY ACCURATELY MEASURE PLAINTIFF'S ACTUAL LOSSES

In arguing that it is not legally barred from pursuing disgorgement damages, DI

ignores the controlling case law cited by Fisher-Price, as well as this Court's reasoned analysis of

that case law and its import. DI does not address this authority even in passing; it pretends it

does not exist and acts as if this Court had no basis at all for its ruling that defendant's profits

may be awarded only when they accurately measure plaintiff's actual losses.[7]

## A.    DI Ignores Controlling New York Case Law Which Prohibits an Award of Defendant's Profits Here

While DI asserts that "there is no bright line rule in New York law under which

defendant's profits may be used as a measure of damages only where the plaintiff would have

made the sales and earned the profits made by defendant" (DI Memo. at 21), DI fails to

acknowledge the long line of cases directly to the contrary. It never cites or discusses *Hertz*

---

[7]    DI has admitted that its actual losses are properly measured by the royalty it would have received if it had entered into a license for the Reel Heroes concept. *See* 1/13/06 Tr. at 254 (statement by DI's counsel that DI was "not in a position to sell [toys incorporating the Reel Heroes concept] ourselves, so the only model of our own profits would be reasonable royalty, as I read the cases"). Thus, DI does not dispute that its actual losses are measured by a royalty and that an award of defendant's profits would not measure its actual losses.

*Corp. v. Avis, Inc.,* 106 A.D.2d 246, 485 N.Y.S.2d 51 (1st Dep't 1985), where the court noted that defendant's profits may be used as a measure of damages in unfair competition cases only in circumstances where they are a reasonable approximation of the amount of **plaintiff's** actual lost profits.[8]  DI similarly fails to discuss other cases which articulate the same rule.  *See Ronson Art Metal Works, Inc. v. Gibson Lighter Mfg. Co.*, 3 A.D.2d 227, 230, 159 N.Y.S.2d 606, 609 (1st Dep't 1957) (recognizing that defendant's profits are an available damages measure only where the unfair competition operated to divert sales plaintiff would have made; "[t]he accounting for profits under such circumstances is not in lieu of nor an alternate measure of damages, but is a method of computing [plaintiff's] damages"); *Biltmore Publ'g Co. v. Grayson Publ'g Corp.*, 272 A.D. 504, 507, 71 N.Y.S.2d 337, 339 (1st Dep't 1947) (stating that under New York law, an "accounting for profits is based upon the assumption and showing that the defendant . . . **unfairly competed in some way as to pre-empt business which would otherwise have gone to plaintiff**. The accounting for profits in such cases is not in lieu of damages **but is the method of computing damages**") (emphasis added); *E.W. Bruno Co.*, 21 A.D.2d 336, 341, 250 N.Y.S.2d 187, 192 (1st Dep't 1964) (reversing award of defendant's profits where the record did not support "the trial court's assumption that the profits defendants made are necessarily a 'valid measure' of those plaintiff would have made").[9]  DI makes no attempt to discuss or distinguish this controlling New York authority.

---

[8]    *See* 106 A.D.2d at 251, 485 N.Y.S.2d at 54 ("The accounting for [defendant's] profits in such [*i.e.,* misappropriation/unfair competition] cases is not in lieu of [plaintiff's] damages but is the method of computing [plaintiff's] damages"; "Avis' profits . . . would be relevant only as a measure of Hertz' lost profits"; declining to allow discovery of Avis's profits because they would not be an accurate measure of Hertz's lost profits in the circumstances at issue).

[9]    *See also David Fox & Sons, Inc. v. King Poultry Co.,* 23 N.Y.2d 914, 298 N.Y.S.2d 314 (1969) (plaintiff could recover defendant's profits only on sales that plaintiff could have made); *Spielvogel v. Zitofsky,* 175 A.D.2d 830, 831, 573 N.Y.S.2d 198, 199 (2d Dep't 1991) ("in awarding the plaintiffs a sum of money

Perhaps most surprisingly, DI does not discuss the recent case of *Gidatex, S.r.L. v. Campaniello Imports, Ltd.*, 82 F. Supp. 2d 136 (S.D.N.Y. 2000), which was cited by this Court twice in its Disgorgement Ruling.  The *Gidatex* court held that defendants' profits are awarded under New York law only as a measure of "the amount of loss sustained by [plaintiff], including opportunities for profit on the accounts diverted from it through defendants' conduct."  82 F. Supp. 2d at 146.  Thus, the Southern District of New York has recently affirmed the exact rule that DI argues does not exist under New York law:  the rule that defendant's profits are only awarded then they accurately measure plaintiffs' actual losses, a situation present only when plaintiff and defendant are competitors.

Moreover, DI makes no real attempt to distinguish the numerous New York cases that ***reversed*** awards of defendant's profits in circumstances where the plaintiff failed to show that it would have made the sales and earned the profits made by the defendant:

- *Electrolux Corp. v. Val-Worth, Inc.*, 6 N.Y.2d at 571, 190 N.Y.S.2d at 990 (***reversing*** an award of defendant's profits in an unfair competition case because "[t]here is nothing here to indicate that the purchasers of the rival machines thought that they were doing business with [plaintiff]" or that sales or profits were diverted from plaintiff).

- *Michel Cosmetics, Inc. v. Tsirkas*, 282 N.Y. at 204 (***reversing*** an award of defendant's profits in an unfair competition case where the evidence was "insufficient to justify an inference that the plaintiff would have made all the sales actually made by the defendants if the defendants had not competed with it").

---

allegedly representing all of the profit made by the [defendant] during the time of his improper competition, the Supreme Court necessarily found that 'the plaintiffs would have made all the sales actually made by the [defendant]'"); *Michel Cosmetics, Inc. v. Tsirkas,* 282 N.Y. 195, 200 (1940) ("Here if the plaintiff would otherwise have made the sales of lipsticks which in fact the defendants made by the use of plaintiff's formulas, then the plaintiff is entitled to recover from the defendants the amount of the profits which the plaintiff would have acquired upon such sales but for defendant's wrong."); *Electrolux Corp. v. Val-Worth, Inc.,* 6 N.Y.2d 556, 571, 190 N.Y.S.2d 977, 989 (1959) (reversing an award of defendant's profits because there was no proof that defendant's sales were diverted from plaintiff).

- *Santa's Workshop, Inc. v. Sterling*, 2 A.D.2d 262, 266-67, 153 N.Y.S.2d 839, 844 (3d Dep't 1956), *aff'd*, 3 N.Y.2d 757, 163 N.Y.S.2d 986 (1957) (***reversing*** an award of defendant's profits because "a large part of the increased number of customers of the defendant's facility . . . would not have patronized the plaintiff, even if the defendant had not engaged in his unfair competitive practice").

- *E. W. Bruno Co. v. Friedberg*, 21 A.D.2d at 341, 250 N.Y.S.2d at 192 (***reversing*** an award of defendant's profits because the record did not support "the trial court's assumption that the profits defendants made are necessarily 'a valid measure' of those plaintiff would have made").

- *Ronson Art Metal Works, Inc. v. Gibson Lighter Mfg. Co.*, 3 A.D.2d at 231, 159 N.Y.S.2d at 610 (***reversing*** an award of defendant's profits because "there was insufficient evidence to establish that, absent the unfair competition, the plaintiff would have made the sales which the defendant did").

Thus, a number of New York courts have actually ***rejected and vacated*** awards of defendant's profits on the ground that they did not measure the plaintiff's actual loss.  There could be no stronger statement that this is the governing rule of law in New York.

Likewise, DI does not address the line of New York cases which state expressly and unequivocally that an award of defendant's profits is ***not*** an available measure of damages in an unfair competition or misappropriation case.

- *Suburban Graphics Supply Corp. v. Nagel*, 5 A.D.3d 663, 666, 774 N.Y.S.2d 160, 163-64 (2d Dep't 2004) ("[t]he measure of damages for unfair competition and the misappropriation and exploitation of confidential information is the loss of [plaintiff's] profits sustained by reason of the improper conduct, . . . ***not the profits received by the defendants***" (emphasis added) (citations omitted).[10]

---

[10]    DI argues in its brief that the *Suburban Graphics* decision was wrong and contrary to *Hamilton-Brown Shoe Co. v. Wolf Brothers & Co.*, 240 U.S. 251 (1916).  *See* DI Memo. at 17 ("*Hamilton-Brown Shoe* . . . stand[s] for the proposition that an award of disgorgement of a defendant's profits is a proper remedy for claims of common law unfair competition under New York law").  To the contrary, in ruling that defendant's profits were an available remedy, the Supreme Court made clear that this remedy was awarded on the trademark infringement claim only.  It did not disturb the district court's decision that defendant's profits were not an appropriate remedy under the common law unfair competition claim.  240 U.S. at 255-56.

13

- *McRoberts Protective Agency, Inc. v. Lansdell Protective Agency, Inc*., 61 A.D.2d 652, 655, 403 N.Y.S.2d 511, 513-14 (1ˢᵗ Dep't 1978) (affirming the trial court's decision to the extent that it computed the plaintiff's damages based on "the amount which the plaintiff would have made except for the defendant's wrong, . . . *not the profits or revenues actually received or earned by [defendant]*") (emphasis added) (citations omitted).

- *Conviser v. J.C. Brownstone & Co.*, 209 A.D. 584, 592, 205 N.Y.S. 82 (2d Dep't 1924) ("*It is not what profit, if any, the wrongdoer made* [that is the measure of damages in an unfair competition case] — it is the profit the lawful owner would have made if his property had not been stolen") (emphasis added).

Accordingly, the overwhelming weight of New York authority is clear that an award of defendant's profits is generally prohibited, except for those limited circumstances where defendant's profits are an accurate proxy for plaintiff's actual losses. DI does not — because it cannot — argue that Fisher-Price's profits on sales of the accused products accurately measure its own actual losses. DI's motion for reconsideration must, therefore, be denied.

**B.     The Case Law Cited By DI Is Either Distinguishable
From or Consistent With New York Law**

The cases cited by DI do not support an entitlement to disgorgement damages in this case. First, a number of the cases DI cites involve a plaintiff that competed with the defendant and which could have made the sales and earned the profits made by the defendant. *See, e.g.*, *LinkCo, Inc. v. Fujitsu, Ltd*., 232 F. Supp. 2d 182, 190 (S.D.N.Y. 2002) ("It is not surprising that when the infringer has profited from its wrongful use of a *competitor's* intellectual property, and sometimes quite handsomely, the injured party urges that those profits *reflect the damages it has suffered*") (emphasis added); *Topps Co., Inc. v. Cadbury Stani S.A.I.C.*, 380 F. Supp. 2d 250, 269 (S.D.N.Y. 2005) (parties were competitors in the chewing gum business); *Electro-Miniatures Corp. v. Wendon Co*., 771 F.2d 23 (2d Cir. 1985) (plaintiff and defendant were the only two manufacturers of the products in question in the United States

14

and, therefore, the defendant's gains were a direct reflection of plaintiff's lost profits); *Miss Susan, Inc. v. Enter. & Century Undergarment Co*., 270 A.D. 747, 62 N.Y.S.2d 250 (1st Dep't 1946) (holding, in a pre-Lanham Act trademark infringement case in which the parties were direct competitors in the manufacture and sale of ladies' slips, that defendant's profits may be awarded where they were commensurate with the plaintiff's losses); *Hamilton-Brown Shoe Co. v. Wolf Brothers & Co.,* 240 U.S. 251 (1916) (plaintiff and defendant were direct competitors in women's shoe market). *See also* Disgorgement Ruling at 6-7.

Second, DI relies on a group of cases involving counterfeiting or trademark violations where the defendant passed off its products as the plaintiff's products. For example, in *Dad's Root Beer Co. v. Doc's Beverages, Inc.*, 94 F. Supp. 121 (S.D.N.Y. 1950), *aff'd*, 193 F.2d 77 (2d Cir. 1951), a passing-off case, the district court upheld the special master's order of an accounting where the parties had operated under a franchise agreement to sell plaintiff's root beer and, after the agreement's termination, defendants continued distributing root beer to those same customers ***while falsely representing to them that it was still plaintiff's product*** — resulting in lost sales to the plaintiff. In affirming the District Court's decision, the Second Circuit court recognized that under New York law, "***recovery of defendant's profits seems . . . to [be] associated with the working hypothesis that they are a valid measure of plaintiff's lost sales.***" 193 F.2d at 83 (emphasis added). *See also Miss Susan, Inc.,* 270 A.D. at 749, 62 N.Y.S.2d at 252 (finding that an award of defendant's profits was appropriate where defendant's "conduct in the manufacture and sale of its garment . . . was deliberately and fraudulently intended to enable retailers to pass off [defendant]'s slip as that of the [plaintiffs]"); *Hamilton-Brown Shoe Co.,* 240 U.S. at 259 (awarding defendant's profits where defendant infringed plaintiff's trademark and passed off its products as plaintiff's). Consistent with New York law,

the courts in these cases were justified in concluding that the sales at issue could have been made by and were in fact diverted from the plaintiff — given that consumers believed they were actually purchasing from the plaintiff.

Third, DI cites cases that do not discuss whether defendant's profits could be awarded in circumstances where the plaintiff could not itself have made the sales or earned the defendant's profits. For example, in *McNamara v. Powell*, 52 N.Y.S.2d 515 (S. Ct. Oneida Co. 1944), the court never addressed whether a plaintiff in a misappropriation case could recover defendant's profits absent a showing that the plaintiff could itself have made those profits. Moreover, *McNamara* was a 1944 trial court decision that pre-dates the significant and well-developed body of New York case law that firmly establishes the rule that in a misappropriation/unfair competition case defendant's profits are only relevant as a measure of the plaintiff's losses.

Finally, DI cites a number of cases that were either decided under federal law (*i.e.,* the Lanham Act or the Copyright Act) or were decided under the laws of states other than New York.[11] For the most part, DI cites these cases in support of its contention that an award of defendant's profits is proper to deter misappropriation of trade secrets and/or ideas. DI Memo. at 15. DI does not discuss the rule (although it is specifically pointed out in this Court's Disgorgement Ruling, at page 4) that the recovery of defendant's profits is ***not*** permitted under New York law, "because New York law achieves deterrence through punitive damages."

---

[11]    *See* DI Memo. at 15-16, citing *Mason v. Sybron Corp.*, 955 F.2d 48 (9th Cir. 1992) (Uniform Trade Secrets Act and Montana law); *Maltina Corp. v. Cawy Bottling Co.,* 613 F.2d 582 (5th Cir. 1980) (Lanham Act); *Roulo v. Russ Berrie & Co.,* 886 F.2d 931 (7th Cir. 1989) (Lanham Act and Copyright Act); *Playboy Enters., Inc. v. Baccarat Clothing Co.,* 692 F.2d 1272 (9th Cir. 1982) (Lanham Act); *Sands Taylor & Wood v. Quaker Oats Co.,* 34 F.3d 1340 (7th Cir. 1994) (Lanham Act).

16

*Gidatex,* 82 F. Supp. 2d at 146 (citing *Getty Petroleum Corp. v. Island Transp. Corp.*, 878 F.2d 650, 657 (2d Cir. 1989)).

For these reasons, the case law cited by DI should be rejected as inapposite.

### Conclusion

DI has failed to point to any controlling law or evidence that could reasonably be expected to alter this Court's ruling. There has been no manifest error of law and for the foregoing reasons, DI's motion for reconsideration should be denied. In the alternative, if DI's motion for reconsideration is granted, this Court should nevertheless reaffirm its April 25, 2006 Disgorgement Ruling.

Dated: June 2, 2006

**MURTHA CULLINA LLP**

By  /s/  Jacqueline D. Bucar
          Jacqueline D. Bucar
e-mail:  jbucar@murthalaw.com
Federal Bar No.: ct01187
Whitney Grove Square
Two Whitney Avenue
New Haven, CT 06510
Telephone:  (203) 772-7773

**MILBANK, TWEED, HADLEY, &
   MCCLOY LLP**
William E. Wallace III
email:  wwallace@milbank.com
Federal Bar No. PVH 0480
Jay I. Alexander
e-mail:  jalexander@milbank.com
Federal Bar No. PVH 0858
International Square Building
1850 K Street, N.W., Suite 1100
Washington, D.C. 20006
Telephone:  (202) 835-7500

**HODGSON RUSS LLP**
Robert J. Lane, Jr.
e-mail:  rlane@hodgsonruss.com
Federal Bar No.:  ct24598
Jodyann Galvin
e-mail:  jgalvin@hodgsonruss.com
Federal Bar No.:  ct24599
One M&T Plaza, Suite 2000
Buffalo, NY 14203-2391
Telephone:  (716) 856-4000

*Attorneys for Fisher-Price, Inc.*

17

## CERTIFICATION

The undersigned hereby certifies that copies of the foregoing Fisher-Price, Inc.'s Memorandum in Opposition to DI's Motion for Reconsideration of the Court's Ruling Canceling the Disgorgement Hearing, dated June 2, 2006, was sent on the 2nd day of June 2006 via first class mail to:

> Gregory J. Battersby, Esq. (Bar No. 07386)
> Edmund J. Ferdinand, III, Esq. (Bar No. 21287)
> Russell D. Dize, Esq. (Bar No. 23064)
> Grimes & Battersby LLP
> 488 Main Avenue, Third Floor
> Norwalk, CT 06851-1008
> Telephone:  (203) 849-8300
> Facsimile:  (203) 849-9300
>
> Peter M. Nolin, Esq. (Bar No. 06223)
> Jay H. Sandak (Bar No. 06703)
> Sandak Hennessey & Greco LLP
> 707 Summer Street
> Stamford, CT 06901
> Telephone:  (203) 425-4200
> Facsimile:   (203) 325-8608

/s/  Jacqueline D. Bucar
     Jacqueline D. Bucar

18