The cases DI relies on do not support the extraordinary proposition that it must advance in this case: that a plaintiff can somehow establish that it disclosed information in the context of the confidential relationship when it had no communication or contact with the defendant. It is simply impossible as a matter of law for a plaintiff to show that it formed a confidential relationship with the defendant, or disclosed information in the context of a confidential relationship, when it had no contact or communication with the defendant relating to the information at issue. *See* § I.B. above.

## II. DI CITES NEITHER LEGAL AUTHORITY NOR SUFFICIENT EVIDENCE TO SUPPORT THE JURY'S DAMAGES AWARD FOR THE LINE EXTENSION PRODUCTS

### A. DI Cites No Authority Supporting an Award of Damages Based on Products That Do Not Embody the Allegedly Misappropriated Idea

DI candidly admits that no court has *ever* awarded compensatory damages (in the form of lost royalties or otherwise) in a misappropriation of idea (or trade secret) case with respect to products that do not embody the idea or secret at issue. DI acknowledges that its claim for such damages is "an issue of first impression." In support of its position that it is entitled to recover lost royalty damages on sales of line extensions, DI cites only to a 1958 New Jersey case and a 1951 Colorado case: *Adolph Gottscho, Inc. v. Am. Mktg. Corp.*, 139 A.2d 281 (N.J. 1958); *Julius Hyman & Co. v. Velsicol Corp.*, 233 P.2d 977 (Colo. 1951), *cert. denied*, 342 U.S. 870 (1951). Neither case supports DI's position.

In *Adolph Gottscho,* the New Jersey court awarded disgorgement damages under New Jersey law. As explained in Fisher-Price's Motion to Cancel the Disgorgement Hearing, courts applying New York law are not permitted to make such an award where, as here, it would not provide a reasonable measure of plaintiff's actual loss. The trade secrets in *Adolph Gottscho* were embodied in printing press machines. In addition to profits on machines, the court also awarded the defendant's profits on sales of type, ink and solvents because sale of those products was "ancillary to and part of the sale of the machines" that embodied the trade secrets and as such were "so intimately connected with the

defendant's illegal activities" that the award should include those products. 139 A.2d at 284-85. As the court noted, "[t]he machines will not operate without ink, type and solvents." *Id.* at 284.

DI's claim that the playsets and vehicles that comprise the "line extension" products in this case are analogous to the type, ink and solvents on which profits were awarded in *Adolph Gottscho* is absurd. It is uncontroverted that the Rescue Heroes action figures that allegedly embody DI's concept will work without the Aquatic Rescue Command Center ("ARCC") or Mountain Action Command Center ("MACC") playsets, or the Mission Select Police Car or Firetruck. And vice-versa: the playsets or vehicles function without the accused action figures. The playsets/vehicles and the accused action figures lack the "intimate connection" on which the court based its award in *Adolph Gottscho.*

DI's assertion that *Julius Hyman* was a "trade secret misappropriation" case that "included profits made by defendants for sales of secondary product that resulted from manufacture of accused chemical product" (DI Memo. at 32) is flat wrong. The trade secret at issue related to the manufacture of an insecticide known as chlordane. 233 P.2d at 983-84, 989, 1002, 1006-07. The plaintiff-competitor was awarded the defendant's profits (not lost royalties or actual losses) on sales of chlordane — the trade secret itself — not on any "secondary product," as DI asserts. *Id.* at 1007-08, 1010, 1018-19.

**B.    DI's Evidence Is Insufficient as a Matter of Law
to Recover Under Its Proposed Patent Law Analogy**

Recognizing the dearth of legal authority supporting its claim, DI argues that patent case law, by analogy, would support an award of lost royalty damages with respect to non-accused products. DI Memo. at 35. While courts have looked to patent law in fashioning rules for calculating damages in common law misappropriation cases (*see, e.g., University Computing Co. v. Lykes-Youngstown Corp.,* 504 F.2d 518, 535 (5th Cir. 1974); *Vermont Microsystems, Inc. v. Autodesk, Inc.,* 138 F.3d 449, 450 (2d

Cir. 1998)), the evidence in this case was insufficient to support an award of damages for products that do not embody the allegedly misappropriated idea under standards used in patent cases.

To recover damages for patent infringement, "a patentee must show that it would have received additional profits 'but for' the infringement." *Ferguson Beauregard/Logic Controls v. Mega Systems, LLC*, 350 F.3d 1327, 1346 (Fed. Cir. 2003).[15] Patent law does not permit the recovery of damages with respect to sales of non-infringing products, except in very limited circumstances, and subject to very strict causation requirements. Two showings must be made to establish causation sufficient for an award of damages on sales of a non-infringing product "sold with" a patented product. First, "[a]ll the components together must be analogous to components of a single assembly or parts of a complete machine, or . . . constitute a functional unit." *Rite-Hite Corp. v. Kelley Co.,* 56 F.3d 1538, 1550 (Fed. Cir. 1995). Explaining this requirement, the Federal Circuit has ruled that where an infringing and a non-infringing piece of equipment "could effectively have been used independently of each other," damages could not be awarded on the non-infringing item. *Id.* at 1551.[16] Second, to collect damages on non-infringing products, the plaintiff must show that the patented feature is the "basis for customer demand" for the non-infringing product.[17]

---

[15] The common law tort standard for causation of damages is similar. *See Diduck v. Kaszycki & Sons Contractors, Inc.,* 974 F.2d 270, 279 (2d Cir. 1992) (explaining necessity of proof of causation between tort and loss alleged); *Smith v. D.A. Schulte, Inc.,* 280 A.D. 913, 913, 116 N.Y.S.2d 212, 213 (1st Dep't 1952) (plaintiff must show that damage arose from the wrong complained of); *Vanguard Military Equip. Corp. v. Schulein,* 266 A.D. 912, 912, 42 N.Y.S.2d 526, 527 (1st Dep't 1943) (same).

[16] In *Rite-Hite,* the court **denied** the patentee recovery for sales of unpatented dock levelers, a device for bridging vehicle and dock edges. Although the dock levelers could be "used with" the patented vehicle restraint (devices used to secure trucks to loading docks), the court noted that the two pieces of equipment *"each could effectively have been used independently of each other."* 56 F.3d at 1551. The court ruled that, as a result, the district court had "erred as a matter of law in including [the dock levelers] within the compensation base." *Id. See also Promega Corp. v. Lifecodes Corp.,* 1999 U.S. Dist. LEXIS 21094, at *31 (D. Utah 1999) (rejecting the argument that a reasonable royalty should be applied to all products sold "at the same time as" and which "could all be used with" the infringing products because the non-infringing products "could, and often were, used independently from the [infringing products]"; limiting the reasonable royalty to products that themselves infringe).

[17] *Rite-Hite,* 56 F.3d at 1549, 1551; *Ferguson,* 350 F.3d at 1346; *Imonex Servs., Inc. v. W.H. Munzprufer Dietmar Trenner GmbH,* 408 F.3d 1374, 1380 (Fed. Cir. 2005).

- 20 -

No testimony was adduced at trial that would satisfy either required showing. There was no evidence that Rescue Heroes action figures were "sold with" the playsets and vehicles. To the contrary, the action figures and playsets/vehicles were sold separately and could be used independently of one another. (Tr. 2022:2-2026:12). The only testimony that DI elicited on this point was Popek's testimony that the Rescue Heroes figures were compatible with and *could be* used with the line extension products. (Tr. 875:8-880:3). However, Popek readily admitted that the playsets and vehicles could be used with any Rescue Heroes character, including non-accused Rescue Hero lines. (Tr. 876;12-19, 877:20-25, 878:21-879:8). In patent cases, testimony that a non-infringing product merely can be "used with" an infringing product is insufficient as a matter of law to establish entitlement to damages with respect to the non-infringing product. *See Rite-Hite*, 56 F.3d at 1551.

To make the second showing required to establish causation, DI needed to establish that the protected feature — an *"image component on the backpack"* of the accused Rescue Heroes figures — was the basis of demand for the playsets and vehicles. It would not be sufficient to show merely that the accused Rescue Heroes figures were the "basis of demand" for the playsets and vehicles. *See, e.g., Ferguson Beauragard/Logic Controls*, 350 F.3d at 1346 (reversing an award that was not limited to damages "that could fairly be allocated to customer demand related to the features embodying" the patented invention). In any event, DI offered no evidence on *either* subject.

Analogy to copyright law leads to the same result. *Burns v. Imagine Films Entertainment, Inc.*, 2001 U.S. Dist. LEXIS 24653 (W.D.N.Y. Aug. 23, 2001), is a copyright case DI relied on and attached to its "Trial Brief on Disgorgement Damages." Addressing the same issue under consideration here, the court noted that "[t]here are rare instances in which a copyright holder may recover profits from a non-infringing enterprise" and that "recovery of such indirect profits must be based on a factual basis, rather than undue speculation." *Id.* at *11. "[A] copyright holder must prove a causal nexus between infringement of his work and the profits, *and must accurately calculate the*

*portion of profits attributable to infringement*." *Id.* (emphasis added) (citing *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.,* 886 F.2d 1545, 1553-54 (9th Cir. 1989)). Finding that plaintiffs "have not offered any reasonably accurate method of calculating profits [from the non-infringing activity] attributable to infringements," the court granted summary judgment dismissing the claim for profits relating to non-infringing activities. *Id.* at *12. Here, DI does not even claim to have satisfied its burden of establishing "the portion of the profits" from the non-accused line extension products attributable to use of the Reel Heroes concept in the accused Rescue Heroes figures.

Accordingly, under causation standards recognized at common law or in patent or copyright cases, DI's claim for royalties on non-accused line extension products fails as a matter of law.

**C.    DI's Evidence Is Insufficient to Show That Fisher-Price Would Have Paid Royalties on Line Extensions Had the Parties Negotiated a License Agreement**

DI also asserts that its evidence showed that Fisher-Price would have paid royalties on line extensions had the parties negotiated a license agreement. DI Memo. at 34. DI entered the trial with the evidence heavily stacked against it on this point. The parties had signed an Option Agreement that contained the negotiated terms of the compensation that Fisher-Price would have paid had Fisher-Price chosen to exercise the option. (JX 10; Tr. 538:17-540:19). That agreement granted Fisher-Price the option to obtain exclusive rights to "***products*** incorporating the CONCEPT." (JX 10; ¶ 2). Had Fisher-Price chosen to exercise the option, it agreed that it would pay a royalty for the "***product,***" referring to "Rescue Heroes products that used the Reel Heroes concept." (JX 10;¶ 6(c); Tr. 538:25-539:5). This Court charged the jury that the playsets and vehicles did not "use" the concept, and DI cites no evidence that the parties mutually negotiated or agreed that royalties would be paid on such products.

DI cites Paul Snyder's testimony in support of its assertion that Fisher-Price would have agreed to pay royalties on line extensions. DI Memo. at 34. However, a close examination of his

testimony does not support DI's assertion. Mr. Snyder's statement that inventors "would be paid on line extensions" related only to line extensions that "included what the inventor submitted as the concept." (Tr. 716:11-13). Snyder made clear that the inventor would not get a royalty on a product that did not include the concept. (Tr. 716:13-19; Tr. 742:9-15).

Finally, DI attempts to argue that, had Fisher-Price licensed the Reel Heroes concept, toy industry "custom" would have required Fisher-Price to pay royalties for line extensions. DI Memo. at 34. In fact, the testimony of DI's own expert at trial was directly to the contrary. James Kipling specifically testified that "[t]here are no 'givens' in connection with royalty applicability or revenue participation, and these [*i.e.,* whether royalties are paid on line extensions] are matters for negotiation. . . . [T]hese are all issues to be considered and negotiated." (Tr. at 1552:4-1553:1).

### III.    DI'S EVIDENCE WAS LEGALLY INSUFFICIENT TO SHOW USE OF A NOVEL AND CONCRETE CONCEPT

DI does not dispute that to prevail, it had to show that Fisher-Price **used** a concept that was both ***novel*** and ***concrete***. The requirement of concreteness means that the alleged concept must be "fixed" as opposed to "vague" and "malleable." *Educ. Sales Programs, Inc. v. Dreyfus Corp.*, 65 Misc. 2d 412, 417, 317 N.Y.S.2d 840, 845 (S. Ct. N.Y. Co. 1970). The requirement of novelty means that the idea must "show genuine novelty and invention"; it cannot be merely "a clever or useful adaptation of existing knowledge" or "a variation on [an existing] theme" or something "already in use in the industry at the time of the submission." *AEB & Assocs. Design Group, Inc. v. Tonka Corp.*, 853 F. Supp. 724, 734 (S.D.N.Y. 1994).[18] In addition, the idea must be novel in the "absolute sense" — thus it does not matter whether the idea was new to Fisher-Price when submitted. *Nadel*, 208 F.3d at 378.

---

[18] *See also Murray v. Nat'l Broad. Co.*, 844 F.2d 988, 993 (2d Cir. 1988) (novelty cannot be variation on a theme); *Kavanau v. Courtroom Television Network*, 1992 U.S. Dist. LEXIS 11472, at *20 (S.D.N.Y. Aug. 3, 1992) ("[S]pecial protection is afforded only to truly innovative ideas while allowing the free use of ideas that are merely clever or useful variations of existing knowledge").

- 23 -

Prior to and during trial, DI struggled to come up with a definition of an idea that could be threaded through the requirements of concreteness and novelty and yet still be argued to have been used in the Rescue Heroes products. DI now admits that the only concrete ideas actually communicated to Fisher-Price were those depicted in the three concept submissions. DI Memo. at 37. DI's witnesses admitted that Fisher-Price did not use what was shown in its submissions. FP Memo. at 39-44. Thus, DI was forced in a series of submissions over time, including its three complaints,[19] its expert's report and the testimony of its witnesses, to constantly re-define the concept. FP Memo. at 48-50. That re-definition process continued right up to and during the trial. (*See* Tr. 1048:20-22 Popek: "We came up with that exact language that you reference, that we referenced, as part of this trial, to better define what the concept is."). DI's ever-changing definitions of the concept are the epitome of "malleable" and the opposite of "fixed."

DI now urges the Court to ignore its ever-changing definitions (and also ignore its binding admissions of the concept definition contained in each of its complaints), and instead adopt the following definition that was never communicated to Fisher-Price: "adding an image component to the backpack of the Rescue Heroes characters to enhance role play by depicting the mission of the character." DI Memo. at 37. DI admits that the legal definition of the concept to which the parties agreed in the Option Agreement (JX 10: Exh. A) required use of film (DI Memo. at 39), as did all of the materials comprising the first Reel Heroes submission. This evidence is fatal to DI's position — it proves that to the extent the concept was concrete and communicated to Fisher-Price the use of film was required. But Fisher-Price never used film, or any of the other concrete ideas that were actually communicated to it. FP Memo. at 40-42.

---

[19] As discussed in the FP Memo. at 43-44, the definitions of the Reel Heroes concept set forth in the complaints are judicial admissions, binding on DI. Popek admitted that Fisher-Price never used the concept as defined in the complaints. FP Memo. at 44. This alone requires judgment as a matter of law in favor of Fisher-Price.

Moreover, DI ignores the Court's pre-trial ruling that prohibited it from relying on uncommunicated definitions of the concept. FP Memo. at 38 n.43. DI concedes that Fisher-Price was never shown "images on a backpack" (Tr. 1011:15-18, 1047:12-23) and that its trial definition of the Reel Heroes concept "was never communicated to Fisher-Price in those terms." (Tr. 1049:15-18). This requires a finding in favor of Fisher-Price on the element of "use" as a matter of law.

DI's case also stumbles over the novelty requirement. If the Court were to accept DI's definition as the "concrete" definition of the concept, the evidence at trial was undisputed that the concept of adding "an image component" to an action figure character "to enhance role play by depicting the mission of the character" was old news in the toy industry. Popek admitted that both the Toy Biz Wolverine character sold in 1994 and the Secret Wars figures sold in 1984 had an "image component" that depicted the character on a mission. (Tr. 1050:5-11; Tr. 1068:19-1069:6; Tr. 1079:16-22; DX913: DX916). Moreover, the Toy Biz "Image Projective Patent" (JX 116), was nearly identical to the first Reel Heroes submission: it disclosed an action figure that included images of the action figure on an adventure, which were viewed by looking through a lens to see images located inside the figure. Popek admitted that the only difference between these prior art action figures and the accused Rescue Heroes figures was the location of the image on a backpack rather than being projected out of the figure's chest (Toy Biz) or embodied in a lenticular image on the character's shield (Secret Wars). (Tr. 1072:12-17; Tr. 1079:8-13). The location of the "image component" on the backpack rather than the shield or the chest is, at most, a variation on an existing theme and cannot pass the novelty test as a matter of law. *Murray*, 844 F.2d at 993; *AEB*, 853 F. Supp. at 734; *Kavanau*, 1992 U.S. Dist. LEXIS 11472, at *17-18.

No reasonable jury could have found that Fisher-Price used a concept submitted to it that was simultaneously concrete and novel. The only concept that was even arguably concrete or novel was what was embodied in the prototype and drawings actually communicated to Fisher-Price in the three

concept submissions. DI admitted that Fisher-Price did not use the concept as communicated. FP

Memo. at 44-46. If the concept is defined so broadly that it could arguably encompass what was "used"

by Fisher-Price in the accused Rescue Heroes products, it fails the novelty and concreteness

requirements. Either way, the jury's verdict of liability cannot stand.

### Conclusion

For the foregoing reasons, and those stated in Fisher-Price's Memorandum in Support of

its Motion for Judgment as a Matter of Law or in the Alternative a New Trial, this Court should grant

judgment as a matter of law in favor of Fisher-Price.


Dated:  April 17, 2006


**TYLER COOPER & ALCORN, LLP**

By _Jacqueline D. Bucar_
       Jacqueline D. Bucar
e-mail: jbucar@tylercooper.com
Federal Bar No.: ct01187
205 Church Street
P.O. Box 1936
New Haven, CT 06509-0906
Telephone:  (203) 784-8269

**HODGSON RUSS LLP**
Robert J. Lane, Jr.
e-mail:  rlane@hodgsonruss.com
Federal Bar No.: ct24598
Jodyann Galvin
e-mail: jgalvin@hodgsonruss.com
Federal Bar No.: ct24599
One M&T Plaza, Suite 2000
Buffalo, NY 14203-2391
Telephone:  (716) 856-4000

**MILBANK, TWEED, HADLEY& MCCLOY LLP**
William E. Wallace, III
e-mail: wwallace@milbank.com
Federal Bar No. PHV 0480
Jay I. Alexander
e-mail: jalexander@milbank.com
Federal Bar No. PHV 0858
International Square Building
1825 Eye Street, N.W., Suite 1100
Washington, D.C. 20006
Telephone:  (202) 835-7500

*Attorneys for Fisher-Price, Inc.*

- 26 -

## CERTIFICATION

The undersigned hereby certifies that copies of the foregoing Reply Memorandum in Support of Fisher-Price's Motion for Judgment as a Matter of Law, dated April 17, 2006, was sent on the 17th day of April 2006 via first class mail to:

> Gregory J. Battersby, Esq. (Bar No. 07386)
> Edmund J. Ferdinand, III, Esq. (Bar No. 21287)
> Russell D. Dize, Esq. (Bar No. 23064)
> Grimes & Battersby LLP
> 488 Main Avenue, Third Floor
> Norwalk, CT 06851-1008
> Telephone: (203) 849-8300
> Facsimile: (203) 849-9300
>
> Peter M. Nolin, Esq. (Bar No. 06223)
> Jay H. Sandak (Bar No. 06703)
> Sandak Hennessey & Greco LLP
> 707 Summer Street
> Stamford, CT 06901
> Telephone: (203) 425-4200
> Facsimile: (203) 325-8608

Jacqueline D. Bucar

003279/00136 BFLODOCS 1519868v1