UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

VICTOR G. REILING ASSOCIATES and
DESIGN INNOVATION, INC.,

           Plaintiffs,

v.

FISHER-PRICE, INC.

           Defendant.

Civil No. 303CV222(JBA)

April 17, 2006

## FISHER-PRICE'S REPLY TO PLAINTIFF'S
## TRIAL BRIEF ON DISGORGEMENT DAMAGES

**TYLER COOPER & ALCORN, LLP**
Jacqueline D. Bucar
205 Church Street
P.O. Box 1936
New Haven, CT 06509-0906

**HODGSON RUSS LLP**
Robert J. Lane, Jr.
Jodyann Galvin
One M&T Plaza, Suite 2000
Buffalo, NY 14203-2398

**MILBANK, TWEED, HADLEY &
   MCCLOY LLP**
William E. Wallace III
Jay I. Alexander
International Square Building
1850 K Street, N.W., Suite 1100
Washington, D.C. 20006

# TABLE OF CONTENTS

                                                                                                                            Page

Preliminary Statement ..................................................................................................................1

Argument ......................................................................................................................................1

        DI HAS NOT SHOWN THAT IT IS ENTITLED TO A WINDFALL AWARD
        OF DISGORGEMENT, AND NO SUCH AWARD MAY BE MADE UNDER
        CONTROLLING NEW YORK LAW ON THE FACTS AT BAR ..................................1

                A.      The "Reasonable Value" of the Reel Heroes Concept
                         Is What DI Could Have Earned But For Fisher-Price's
                         Alleged Misappropriation, Not the Profits That
                         Fisher-Price Was Able to Obtain By (Allegedly) Using
                         That Concept As An Addition to a Pre-Existing Product
                         Line That DI Could Not Itself Have Made or Sold ........................................3

                B.      An Award of "All" of Fisher-Price's Profits to DI is Inappropriate
                         Because New York Law Requires That DI Reasonably
                         Apportion the Gains Attributable to the Reel Heroes Concept .....................7

                C.      Costs and Expenses Are Properly Deductible From
                         Fisher-Price's Gross Profits Under New York Law .....................................8

                        1.      General Overhead Is Deductible .......................................................8

                        2.      The Theory of Incremental Profits is
                               Rejected by New York Courts ..........................................................9

Conclusion ..................................................................................................................................10

**Preliminary Statement**

Design Innovation, Inc.'s ("DI's") Trial Brief lacks the required discussion of the witnesses and evidence it plans to present, leaving Fisher-Price with little to say by way of response except for replying to DI's repetitive and unsound legal arguments. By failing to present its evidence in its brief, DI confirms that it intends to rely exclusively on the trial record for purposes of establishing its supposed entitlement to disgorgement, and that its evidence at the hearing will be confined to the question of "how much."

The substance of DI's arguments, and the cases it relies on, confirm Fisher-Price's position that the hearing should be cancelled because DI is not entitled as a matter of law to an award of disgorgement on the existing record.

**Argument**

**DI HAS NOT SHOWN THAT IT IS ENTITLED TO A WINDFALL AWARD OF DISGORGEMENT, AND NO SUCH AWARD MAY BE MADE UNDER CONTROLLING NEW YORK LAW ON THE FACTS AT BAR**

DI's concession that the measure of compensatory damages for the tort of misappropriation is "the reasonable value" of the plaintiff's idea (DI Trial Br. at 2)[1] should be the end of its demand for a windfall award masquerading as an equitable remedy.[2] The "reasonable value" of DI's idea has already been determined by the jury and certainly is *not* measured by Fisher-Price's profits on the Rescue Heroes product line. As shown in Fisher-

---

[1]  DI's initial trial brief on disgorgement damages is cited as the "DI Trial Br."

[2]  It is indeed remarkable that DI appeals to equity to support the outrageous sum demanded in its Trial Brief—$66,282,800—which is more than three times the amount its own expert Mr. Ratliff opines is appropriate, does not even purport to have a rational connection to the actual damages DI claims to have suffered, and vastly exceeds the total value of DI as a business.

Price's opening brief and in its brief in support of its motion to cancel the disgorgement hearing, the reasonable value of an idea is what the holder and a recipient would have negotiated for the use of the idea, which is also the measure of the plaintiff's actual damage if the idea is misappropriated. Here, the reasonable value of the Reel Heroes concept is not measured by Fisher-Price's profits because DI:

(i) could not have exploited the Reel Heroes concept on its own;

(ii) never could have realized the profits made by Fisher-Price;

(iii) never could have negotiated an agreement under which it would receive such profits, and;

(iv) cannot connect the value of its idea to the profits that another party (in this case, Fisher-Price) was able to achieve (allegedly) by coupling that idea to some products in an existing product line that was already in the market generating profits.

For these reasons, the profits earned by Fisher-Price are not a valid measure of the "reasonable value" of the Reel Heroes concept, and the proper measure is a reasonable royalty as already determined (and awarded) by the jury.

DI's belated recognition that the proper measure of damages is the reasonable value of the idea is the same point repeatedly made by Fisher-Price, *i.e.*, that the measure of compensatory damages under New York law is the profit lost by the plaintiff as a proximate result of the defendant's improper conduct. *See, e.g., David Fox & Sons, Inc. v. King Poultry Co.*, 23 N.Y.2d 914, 298 N.Y.S.2d 314 (1969); *McRoberts Protective Agency, Inc. v. Lansdell Protective Agency, Inc.*, 61 A.D.2d 652, 655, 403 N.Y.S.2d 511, 513 (1st Dep't 1978) (holding that the measure of damages is "the amount which the plaintiff would have made except for the defendant's wrong, . . . not the profits or revenues actually received or earned by" the defendant). It is that amount—the value that the plaintiff would have earned but for the defendant's alleged

misappropriation—which is the "reasonable value" of the plaintiff's idea. Moreover, it is that amount which has already been determined and awarded by the jury, rendering any additional award of disgorgement barred under doctrines of law and principles of equity.

A. **The "Reasonable Value" of the Reel Heroes Concept Is What DI Could Have Earned But For Fisher-Price's Alleged Misappropriation, Not the Profits That Fisher-Price Was Able to Obtain By (Allegedly) Using That Concept As An Addition to a <u>Pre-Existing Product Line That DI Could Not Itself Have Made or Sold</u>**

While conceding that damages for misappropriation are measured by "the reasonable value" of the plaintiff's misappropriated concept, DI errs by contending that this value is necessarily measured by the defendant's profits. DI Trial Br. at 2-3. Rather, the profits earned by the defendant are a measure of the plaintiff's loss (and thus a measure of the idea's value) only if the sales (and profits) made by the defendant otherwise would have been made by the plaintiff.

For this reason, DI's reliance on trade secret cases fails, because unlike the usual situation in trade secret cases, Fisher-Price and DI are *not* competitors and DI would *not* have made the sales actually made by Fisher-Price. In *Electro-Miniatures Corp. v. Wendon Co., Inc.*, 771 F.2d 23, 27 (2d Cir. 1985), trade secrets were stolen by an employee of the plaintiff and turned over to direct a competitor who used the trade secrets to divert to itself the plaintiff's sales, as plaintiff and defendant were the only two companies capable of producing the product at issue. In *A.F.A. Tours, Inc. v. Whitchurch*, 937 F.2d 82, 88 (2d Cir. 1991), the court expressly based its damages calculation on the fact that defendant planned to solicit customers that otherwise would have gone to plaintiff. Thus, neither *A.F.A. Tours* nor *Electro-Miniatures* support an award of Fisher-Price's profits to DI, given the undisputed facts that the parties are not competitors and that DI could not have made the sales (or earned the profits) made by Fisher-

- 3 -

Price. *See Michel Cosmetics, Inc. v. Tsirkas*, 282 N.Y. 195, 198-203 (1940) (reversing award of defendant's profits where record showed that plaintiff would not itself have made the sales made by defendant).

DI's reliance on *Softel, Inc. v. Dragon Medical & Scientific Communications, Ltd.*, 891 F. Supp. 935 (S.D.N.Y. 1995), *aff'd*, 118 F.3d 955 (2d Cir. 1997), and *Topps Co., Inc. v. Cadbury Stani S.A.I.C.*, 380 F. Supp. 2d 250 (S.D.N.Y. 2005), is also misplaced. The district court in *Softel* made an award of the defendant's profits under an express provision of the copyright statute providing for an award of the infringer's profits **in addition to** the plaintiff's actual damages (17 U.S.C. § 504(b)), and thus found that any award on the plaintiff's trade secret claim would have been duplicative of the copyright damages it had already awarded. 891 F. Supp. at 942-43. Indeed, the *Softel* court relied on cases consistent with the New York rule that damages for misappropriation are the plaintiff's actual losses, which **may** be measured by the defendant's profits where factually supported, as when the defendant's profits are a reasonable approximation of what the plaintiff would have earned but for the defendant's conduct. *Id.* (citing *A.F.A. Tours*, 937 F.2d at 87). The court in *Topps* relied on *Softel* for the proposition that the defendant's profits may be an accepted measure of damages in appropriate circumstances, and did not hold that disgorgement was the correct measure of damages but rather observed that a full factual inquiry was necessary to determine what damages were appropriate on the facts of each case. *Topps*, 380 F. Supp. 2d at 268-69.

DI overstates the holding of *Gilroy v. American Broadcasting Company, Inc.*, 47 A.D.2d 728, 365 N.Y.S.2d 193 (1st Dep't 1975), by asserting that it sets the defendant's profits as the floor for the plaintiff's recovery in misappropriation cases. DI Trial Br. 4. The *Gilroy* court stated that the proper measure of damages for the defendant's misappropriation of the

plaintiff's literary character was the reasonable value of the plaintiff's misappropriated property, and remanded for a determination of this value because the trial court excluded expert testimony of what this value was. *Id.* The Appellate Division's holding that the trial court erred in *limiting* the plaintiff's recovery to the defendant's profits is fully consistent with the New York rule that damages are measured by the plaintiff's actual loss, not the defendant's profits.

Nor can DI find solace in *Dad's Root Beer Co. v. Doc's Beverages*, 94 F. Supp. 121 (S.D.N.Y. 1950), *aff'd*, 193 F.2d 77 (2d Cir. 1951), or *Miss Susan, Inc. v. Enterprise & Century Undergarment Co.*, 270 A.D. 747, 62 N.Y.S.2d 250 (1st Dep't 1946). Each was a trademark case in which the defendant passed off its own infringing products as those of the plaintiff. Further, the Second Circuit in *Dad's Root Beer* reiterated the New York rule that the defendant's profits may be used to measure compensatory damages when they are a valid measure of the plaintiff's loss, stating that the defendant's sales of the infringing products replaced those previously enjoyed by the plaintiff. *Dad's Root Beer*, 193 F.2d at 83.

DI's reliance on an A.L.R. annotation shows just how little support it has in New York law. (*See* DI Trial Br. at 3, citing Annotation, "Proper Measure and Elements of Damages for Misappropriation of Trade Secret," 11 A.L.R. 4th 12 (1982)). Even then, DI fails to point out the annotation's preceding explanation that the *first inquiry* is whether there is a basis to determine the value which the parties themselves placed on the alleged trade secret. 11 A.L.R. 4th at 20 ("In determining the proper measure of damages for misappropriation of a trade secret, the first inquiry of the courts generally has been whether there is any factual basis, such as a royalty agreement or an offer and a counteroffer in anticipation thereof, from which one might legitimately determine the value which the parties themselves actually assigned to the misappropriated information. Where such circumstances exist, the courts usually have drawn

upon them in order to measure the plaintiff's damages, calling the award a 'reasonable royalty,' an 'established royalty,' a 'negotiated royalty,' or, simply, a 'royalty.'").

DI misstates the holdings of the cases its cites for the proposition that reasonable royalties are awarded only when the plaintiff's lost profits or defendant's "unjust gains" are inadequate to compensate the plaintiff. DI Trial Br. at 5. For example, in *LinkCo, Inc. v. Fujitsu Ltd.*, 232 F. Supp. 2d 182, 186 (S.D.N.Y. 2002), the court held that a reasonable royalty was the best measure of damages because neither the plaintiff's losses nor the defendant's gains were adequate methods of calculation on the facts at hand. Contrary to DI's assertion, the court did not resort to reasonable royalty as a disfavored measure on the theory that the plaintiff's losses were inadequate to compensate the plaintiff, but instead based its decision on the inability to accurately measure the plaintiff's actual losses. *Id.* The inability to accurately measure the plaintiff's actual loss was also the basis of the court's use of a reasonable royalty in *Vermont Microsystems, Inc. v. Autodesk, Inc.*, 88 F.3d 142, 151 (2d Cir. 1996) (applying California law), and *University Computing Co. v. Lykes-Youngstown Corp.*, 504 F.2d 518, 535-36 (5th Cir. 1974) (applying Georgia law). In the case at bar, by contrast, DI's losses (and hence its recoverable damages) could be determined and indeed *were determined* by the jury.

DI's attempt to justify its receipt of a windfall to deter Fisher-Price from acting improperly in the future fails as a matter of New York law. The cases that DI cites for this rationale all apply the law of other states or rely on statutory authorization for enhanced awards.[3] In New York, deterrence is achieved through an award of punitive damages, *Gidatex, S.r.L. v.*

---

[3] *See* DI Trial Br. at 5-6, citing *W. Mason DDS v. Sybron Corp.*, 955 F.2d 48 (9th Cir. 1991) (Montana law); *Roulo v. Russ Berrie & Co.*, 886 F.2d 931 (7th Cir. 1989) (statutory damages under 15 U.S.C. § 1117); *Playboy Enters., Inc. v. Baccarat Clothing Co.*, 692 F.2d 1272 (9th Cir. 1982) (same); *Maltina Corp. v. Cawy Bottling Co., Inc.*, 613 F.2d 582 (5th Cir. 1980) (same).

*Campaniello Imports, Ltd.*, 82 F. Supp. 2d 136, 146 (S.D.N.Y. 2000), which are not available here because the jury rejected them and DI did not move for judgment as a matter of law to overturn the jury's decision.

**B.  An Award of "All" of Fisher-Price's Profits to DI is Inappropriate Because New York Law Requires That DI Reasonably Apportion the Gains Attributable to the Reel Heroes Concept**

An award to DI of the entirety of Fisher-Price's profits on sales of the accused products and line extensions is not permitted by case law. As briefed previously by Fisher-Price, it is incumbent on DI to make a reasonable apportionment of the portion of Fisher-Price's profits attributable to the Reel Heroes idea, and its failure to do so bars its claim for an award of Fisher-Price's profits even if such an award were potentially available on the facts of this case (which it is not).

The prohibition against DI's attempt to shift the entire burden of allocation to Fisher-Price is illustrated by a recent Second Circuit case in which the propriety of disgorgement was manifest because the plaintiff was the FTC acting to redress consumer wrongs. Even on such compelling facts, the Second Circuit held that a plaintiff seeking disgorgement must reasonably approximate the portion of the defendant's profits attributable to its wrongful conduct before the burden can be shifted to the defendant. *Federal Trade Comm'n v. Verity Int'l, Ltd.*, 2006 U.S. App. LEXIS 8184, at *56 (2d Cir. Mar. 27, 2006) (explaining that "if the law were otherwise, the [plaintiff] would be relieved at the first stage from submitting a reasonable approximation of unjust gain and could recover any amount that it chose to submit, however unreasonable, that fit within the presumption against the wrongdoer"). Presumably unaware of the recent *Verity* case and the well-established legal rules that support it, DI would lead this Court into the same error that led to vacatur of a disgorgement award in *Verity*.

DI cannot avoid its obligation to apportion the profits from the accused products between the Reel Heroes concept and Fisher-Price's own contribution by resort to the theory that the defendant must establish its right to deduct expenses. Apportionment of value and deduction of expenses are different things: (i) apportionment is about the plaintiff's obligation to show the extent to which its idea contributed to the success (and profits) of the accused product, whereas (ii) expenses are simply an accounting matter, *i.e.*, determining the expenses properly deducted from gross sales in order to determine net profits. The Second Circuit's decision in *Verity* confirms that DI's failure to carry its burden on apportionment ends the matter without consideration of what expenses are properly deductible from Fisher-Price's gross sales.

### C.  Costs and Expenses Are Properly Deductible From Fisher-Price's Gross Profits Under New York Law

#### 1.  General Overhead Is Deductible

The cases cited by DI do not support the contention that Fisher-Price must prove the portion of its overhead expenses directly attributable to the production of products using the Reel Heroes concept. In *S.E.C. v. Benson*, 657 F. Supp. 1122, 1133-34 (S.D.N.Y. 1987), the court held that a defendant who had embezzled corporate funds could not deduct funds used for "corporate purposes" because he failed to offer any shred of evidence that the funds were actually used for any legitimate corporate purpose. In contrast, Fisher-Price's deductions are legitimate corporate expenses incurred in maintaining its business of manufacturing and distributing toys.

The holdings in the other cases cited by DI, although factually inapplicable because the cases concern the statutory disgorgement of damages for copyright infringement, are nevertheless contrary to DI's position. The court specifically recognized in *Caffey v. Cook*, 409

F. Supp. 2d 484 (S.D.N.Y. 2006), that general overhead expenses are deductible, and allowed the defendant to deduct as general overhead such fees as legal fees, insurance, public relations fees, and travel expenses. *Id.* at 504. In *Burns v. Imagine Films Entertainment, Inc.*, 2001 U.S. Dist. LEXIS 24653 (W.D.N.Y. Aug. 23, 2001), the plaintiff was awarded default judgment on his claim for copyright infringement as a discovery sanction. *Id.* at *1-*2. Even then, the district court held that the defendant was permitted deduct from profits general overhead that was indirectly related to the production of the infringing film. *Id.* at *18-*24. These two copyright cases are entirely consistent with New York state law in allowing deductions for general overhead. *See Cutter v. Gudebrod Bros. Co.*, 190 N.Y. 252, 254-55 (1907) (holding that defendant was entitled to deduct general expenses); *see also Softel*, 891 F. Supp. at 941-42 ("Courts have allowed the deduction of a variety of expenses, including an allocation of fixed cost overhead expenses.").[4]

### 2. The Theory of Incremental Profits is Rejected by New York Courts

DI argues that only "incremental" expenses incurred solely in the production of the accused products are deductible. DI Trial Br. at 10-14. Its alleged support is a sixty-year old trial court decision, but even that case does not establish the supposed rule that DI proffers. Rather, the court in that case cited and applied the New York Court of Appeals' decision in *Cutter* that general expenses incurred in carrying on a business *are* deductible. *McNamara v. Powell*, 52 N.Y.S.2d 515, 526-27 (S. Ct. Oneida Co. 1944). Indeed, the court rebuffed the

---

[4] It is ironic that DI cites *Burns* in its quest for a windfall award of Fisher-Price's profits, as *Burns* held that the failure to apportion profits for a movie between the plaintiff's infringed screenplay and the other story elements "would virtually guarantee an award of 'windfall' damages," and that it would be "inequitable and illogical to award damages without any consideration of the noninfringing elements of the film." *Id.* at *32. It is just such a forbidden windfall, based on Fisher-Price's gross profits without apportionment between the Reel Heroes concept and the many contributions of Fisher-Price, that DI now asks this Court to award.

argument made here by DI in rejecting the plaintiff's contention that general overhead expenses were not deductible unless they were directly connected to production of the infringing products. *Id.* at 532. DI's lack of support for its contention that only expenses directly related to production of the accused products underscores New York's allowance of deductions for general overhead. *See Cutter*, 190 N.Y. at 254-55.

### Conclusion

For the reasons set forth above and in its opening Trial Brief on this issue, Fisher-Price respectfully urges the Court to find that DI is not entitled to any award of Fisher-Price's profits.

Dated: April 17, 2006

**TYLER COOPER & ALCORN, LLP**

By _/s/ Jacqueline D. Bucar_
Jacqueline D. Bucar
e-mail: jbucar@tylercooper.com
Federal Bar No.: ct01187
205 Church Street
P.O. Box 1936
New Haven, CT 06509-0906
Telephone: (203) 784-8269

**HODGSON RUSS LLP**
Robert J. Lane, Jr.
e-mail: rlane@hodgsonruss.com
Federal Bar No.: ct24598
Jodyann Galvin
e-mail: jgalvin@hodgsonruss.com
Federal Bar No.: ct24599
One M&T Plaza, Suite 2000
Buffalo, NY 14203-2391
Telephone: (716) 856-4000

**MILBANK, TWEED, HADLEY & MCCLOY LLP**
William E. Wallace, III
e-mail: wwallace@milbank.com
Federal Bar No. PHV 0480
Jay I. Alexander
e-mail: jalexander@milbank.com
Federal Bar No. PHV 0858
International Square Building
1825 Eye Street, N.W., Suite 1100
Washington, D.C. 20006
Telephone: (202) 835-7500

*Attorneys for Fisher-Price, Inc.*

003279:00136 BFLODOCS 1521086 v2

## CERTIFICATION

The undersigned hereby certifies that copies of the foregoing Fisher-Price's Reply to Plaintiff's Trial Brief on Disgorgement Damages, dated April 17, 2006, was sent on the 17th day of April 2006 via first class mail to:

>Gregory J. Battersby, Esq. (Bar No. 07386)
>Edmund J. Ferdinand, III, Esq. (Bar No. 21287)
>Russell D. Dize, Esq. (Bar No. 23064)
>Grimes & Battersby LLP
>488 Main Avenue, Third Floor
>Norwalk, CT 06851-1008
>Telephone: (203) 849-8300
>Facsimile: (203) 849-9300

>Peter M. Nolin, Esq. (Bar No. 06223)
>Jay H. Sandak (Bar No. 06703)
>Sandak Hennessey & Greco LLP
>707 Summer Street
>Stamford, CT 06901
>Telephone: (203) 425-4200
>Facsimile: (203) 325-8608

*/s/ Jacqueline D. Bucar*
Jacqueline D. Bucar