the last option and is meant to be used when disgorgement of defendant's profits is inadequate to compensate the plaintiff:

> Once it is established that a trade secret has been misappropriated, there are two obvious ways to calculate plaintiff's damages. *See A.F.A Tours, Inc. v. Whitchurch*, 937 F.2d 82, 87 (2d Cir. 1991) ("The amount of damages recoverable in an action for misappropriation of trade secrets may be measured either by the plaintiff's losses or by the profits unjustly received by the defendant.") *First,* damages may be measured according to any losses plaintiff suffered from the alleged misappropriation. Plaintiff's losses may include the cost of developing the trade secret and the revenue plaintiff would have made but for the defendant's wrongful conduct. *Second,* damages may be measured by the defendant's unjust enrichment as a result of the misappropriation. Unjust enrichment is measured by the profits the defendant obtained from using the trade secret. *See Electro-Miniatures Corp. v. Wendon Co.*, 771 F.2d 23, 27 (2d Cir. 1985).
>
> In certain circumstances, these damage calculations provide inadequate compensation to the plaintiff. Courts have therefore developed a third measure of damages: a reasonable royalty. "A reasonable royalty award attempts to measure a hypothetically agreed value of what the defendant wrongfully obtained from the plaintiff." *Vermont Microsystems I,* 88 F.3d at 151. To measure this value, "the Court calculates what the parties would have agreed to as a fair licensing price at the time that the misappropriation occurred." *Id.* (citing *Georgia-Pacific Corp. v. U.S. Plywood-Champion Papers, Inc.*, 446 F.2d 295, 296-97 (2d Cir. 1971)). Because the plaintiff's loss or the defendant's gain may be very difficult to calculate in intellectual property cases, a reasonable royalty is "a common form of award in both trade secret and patent cases." *Vermont Microsystems, Inc. v. Autodesk, Inc.*, 138 F.3d 449, 450 (2d Cir. 1998) ("*Vermont Microsystems II*"); *Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1128 (5th Cir. 1991), *aff'd,* 505 U.S. 763, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992). Moreover, a reasonable royalty is ideal when the commercial context in which the misappropriation occurred requires consideration of multiple factors in order to compensate the plaintiff adequately.

232 F. Supp.2d at 185-186.

Moreover, courts have held that merely because disgorgement is used in place of the lost profits of the plaintiff as the measure of damages, the action does not become equitable. *See Telewizja Polska USA, Inc. v. EchoStar Satellite Corp.*, 2005 U.S. Dist. LEXIS 21756, 2005 WL 2405797 (N.D. Ill., Sep 28, 2005) (where plaintiff seeks disgorgement as money flowing to its own coffers, disgorgement is a legal remedy for which a jury trial is warranted); *See Ideal World Marketing, Inc. v. Duracell, Inc.*, 997 F. Supp. 334, 339 (E.D.N.Y. 1998) (disgorgement claim in trademark infringement action was in

14

the nature of damages and right to jury attached). Thus, Fisher-Price's use of the entitlement to jury trial cases and its attempt to characterize disgorgement damages as purely "equitable relief", are an improper attempt to undermine DI's ability to recover damages which are available and appropriate under the circumstances of this case.

The fact that the parties had agreed on a 3% royalty rate in the Option Agreement has absolutely no bearing on the disgorgement analysis. As Fisher-Price itself has argued repeatedly, this is not a contract case and the option agreement, having expired without exercise by Fisher-Price, cannot control the rights of the parties. Further, it is well-settled that a contractual royalty rate will not govern an award of damages for purposes of a misappropriation claim, where a plaintiff has been denied the benefit of the bargain based on a defendant's wrongful conduct. *See The Topps Co.*, 380 F. Supp.2d at 268 (rejecting defendant's argument that plaintiff should be limited to 3% royalty rate in parties' agreement for purposes of claim for common law misappropriation of trade secrets, and referencing availability of disgorgement of defendant's profits as available remedy under New York law). Decisions in other cases involving royalty rates are in accord. *See Softel, Inc. v. Dragon Medical*, 891 F. Supp. 935, 942 (S.D.N.Y. 1995) ("application of the 'reasonable royalty' measure of damages in lieu of the usual approach of measuring damages by defendants' profits was appropriate where defendants made no profits from the misappropriation. If defendants had made a profit, the court indicated it would have measured damages by the profits gained by defendants through the use of the plaintiff's trade secret") (*citing, University Computing Co. v. Lykes-Youngstown Corp.*, 504 F.2d 518, 536 (5th Cir. 1974)), *aff'd in part, vacated on other grounds,*, 118 F.3d 955, 969 (2d Cir. 1997).

*Vitor Corp. of America v. Hall Chemical Co.*, 292 F.2d 678 (6th Cir. 1961) cannot be read to limit DI's damages to the 3% royalty rate contained in the parties' expired Option Agreement for purposes of DI's misappropriation and unfair competition claims under New York law. In *Vitor*, the defendant, Hall, had disclosed a proprietary scrap metal recovery process to the plaintiff, Vitor, and the parties entered into a nondisclosure agreement. The parties also reached an "agreement in principle"

15

for use of the proprietary process, for which Hall would be paid a fixed advance upon execution of a formal agreement and then a minimum of $50,000 over six years. Vitor ultimately decided not to license Hall's proprietary process, and following its adoption and use of a similar process for its own business, Hall brought suit alleging a claim for breach of the nondisclosure agreement. Finding that Vitor had no profits or proof of sales, a special master awarded to Hall the full amount it was to receive under the "agreement in principle." In rejecting Vitor's challenge to the damage award on appeal, the Sixth Circuit explained that an award based on the "agreement in principle" was proper as a matter of equity even though it was not a firm contract because the actual value of Vitor's profits and Hall's damages could not otherwise be measured. (*Id.* at 682-83).

## IV. THE DOCTRINE OF APPORTIONMENT IS INAPPLICABLE IN THIS CASE

### A. Fisher-Price Misstates the Element of "Causation"

The Court charged the jury that DI had the:

> [B]urden to prove that [Fisher-Price's] actions were the cause of the losses it claims. [DI] claims that Fisher-Price's use of the Reel Heroes concept without acknowledgement caused it to lose licensing royalties it would otherwise have received from both the accused products and certain line extensions and accessories. [DI] must prove the extent to which the defendant's actions cause loss of royalty payments as to each of these.

(Jury Instructions at 37). The Court also charged the jury that DI had the burden to show that "Fisher-Price's misappropriation caused DI to lose royalty payments it would have collected from Fisher-Price" on the four line extension and accessory products "but for Fisher-Price's misappropriation of the submitted concept." (*Id.*)

To satisfy its burden to show causation under New York law, DI submitted evidence that Fisher-Price made unauthorized use of the Reel Heroes concept in connection with three action figure lines and the Telly Photo cameraman character. That is, DI demonstrated that the accused Rescue Heroes action figure lines were substantially similar to the submitted concept and that Fisher-Price had access to the concept. (A detailed recitation of the evidence at trial supporting the elements of

16

substantial similarity and access can be found at DI's Memorandum in Opposition to Fisher-Price's Motion for Directed Verdict, filed with the Court on March 24, 2006 ("DI Rule 50 Opp. Mem.") at 47-50). DI also demonstrated that Fisher-Price sold, and marketed for sale, four different line extension and accessory products for use in connection with the accused Rescue Heroes action figure lines. (Tr. at 875-880; JX 73, 91, 93, 95). Each of these accessory products were packaged and marketed with images of the misappropriated concept. DI introduced evidence of Fisher-Price's net sales for all of the accused action figures and accessories (JX 170), and asked the jury to award reasonable royalties based on a percentage of those sales figures in accordance with toy industry custom and practice. (Tr. at 2567-2571). The jury found in DI's favor on each element of its misappropriation and unfair competition claims and awarded damages for each accused Rescue Heroes action figure line and line extension/accessory product, except for the Telly Photo character.[5] (Verdict Form at 1-3).

Despite the above evidence and jury finding, Fisher-Price argues that DI cannot show that "the alleged presence of the Reel Heroes concept in the accused Rescue Heroes figures was the proximate cause of any sales of those products." (Def. Tr. Mem. at 18). As a threshold matter, Fisher-Price is factually incorrect, because DI provided evidence that clearly demonstrated a causal connection between the submitted concept and the accused action figures lines. The jury has already made such a finding. The record at trial demonstrated that: (1) Fisher-Price had originally marketed and sold generic Rescue Heroes lines with "equipment packs" of no play value prior to DI's concept submission; and (2) following DI's submission, Fisher-Price marketed and sold a series of new action figure lines (in addition to the traditional lines which continued to be offered for sale) whose only point of differentiation was the video/image component on the backpacks of the characters. (Tr. at 865-874; DI Rule 50 Opp. Mem. at 47-49). Of critical importance is the fact that on the package of the accused action figure products Fisher-Price touted the enhanced play value provided by the video/image component on the backpack by stating, for example, **"SEE MY MISSION ON MY VIDEO**

---

[5] DI asked the jury for a finding of liability as to Telly Photo, but did not ask the jury to award any damages for this figure.

17

BACKPACK." (*See* JX 170(70)). Based on this evidence, it was reasonable for the jury to have found a causal connection and to award damages and this Court should accept that causal connection as already established for purpose of this case.

To the extent Fisher-Price would require DI to prove something more than unauthorized "use" (*i.e.* substantial similarity and access) of the Reel Heroes concept in the accused action figure lines and Fisher-Price's sales in order to establish causation for purposes of establishing entitlement to disgorge Fisher-Price's profits, its argument is not supported by New York law. (Jury Instructions at 37).

Moreover, as set forth in Section IV(B), below, it is Fisher-Price that carries a heavy burden on the issue of apportionment. Fisher-Price must provide evidence showing that the non-infringed portions of the accused products had significant value and were not so intertwined and suffused with the infringing portions. *See Business Trends Analysts, Inc. v. Freedonia Group, Inc.*, 887 F.2d 399, 407 (2d Cir. 1989). Thus, while DI could satisfy its burden of proving causation for damages through evidence of use and Fisher-Price's sales figures for the accused action figure lines, in order to show an entitlement to apportion (or lessen) the amount of those sales because of the existence of certain non-infringing elements in each product, Fisher-Price needed to submit evidence, via consumer surveys or otherwise, to demonstrate that consumers purchased the accused products for reasons not related to the backpacks with an image component. Fisher-Price failed to do so.

### B. Fisher-Price Has the Burden to Prove Apportionment and Has Not Met This Burden

#### 1. Fisher-Price Has the Burden

Fisher-Price has misstated the law on apportionment. The burden to prove apportionment lies with the defendant, not with the plaintiff. *Business Trends Analysts, Inc. v. The Freedonia Group, Inc.*, 887 F.2d 399, 407 (2d Cir. 1989); *See also Data General Corp., et al. v. Grumman Systems Support Corp.*, 36 F.3d 1147, 1174 (1st Cir. 1994). DI has presented evidence of sales made on the infringing products. (*See* JX 170 and Ratliff Report ¶ 21, Exhs. A-2, C and D). Once the plaintiff has provided

evidence on profits, it is up to the infringer to show if any apportionment is possible. This is the standard followed in the Second Circuit. "The burden is on the infringer, however, to prove the portion of total profits attributable to non-infringing elements." *Id.* at 407.

This is the standard set forth in federal trademark and copyright law, law relating to common law misappropriation, and in other contexts as well. *See* the Lanham Act, 15 U.S.C. § 1117(a)(3); 5 J. Thomas McCarthy, *McCarthy on Trademarks* §30:65 (4th ed.) (stating that "Under the federal Lanham Act, *as well as the common law*, it is the infringer's burden to prove any proportion of his total profits which may not have been due to use of the infringing mark.") (emphasis added); the Copyright Act, 17 U.S.C. 504(b); *Hyman and Company v. Velsicol Corp.*, 233 P.2d 977 (Colo. 1951) (explaining in a misappropriation of trade secrets case that if any feature to an infringing product were not part of what was infringed "the burden of establishing the amount of the contribution was upon defendants wherein this knowledge was reposed, and not upon plaintiff...."); *Maxwell v. Angell-Etts*, 2001 U.S. Dist. LEXIS 25418 *20 (C.D. Cal. 2001) (citing *Nickson Industries, Inc. v. Rol Mfg. Co.*, 847 F.2d 795 (Fed. Cir. 1988) and discussing in a patent infringement case that "[i]f it is impossible to make a mathematical or approximate apportionment between infringing and non-infringing shoes, the infringer bears the burden of this inexactitude"). Accordingly, DI is not required to show apportionment when such burden to show apportionment is on the defendant. *SEC v. Robert Breed et al.*, 2004 U.S. Dist. LEXIS 7336 (S.D.N.Y. 2004) (explaining in securities and exchange context that "[w]here disgorgement calculations cannot be exact, 'any risk of uncertainty ... should fall on the wrongdoer whose illegal conduct created that uncertainty.'"(quoting *SEC v. Lorin*, 76 F.3d 458, 462 (2d Cir. 1996)); *Rotating Products Systems, Inc. v. Dennis Grimes*, 2001 U.S. Dist. LEXIS 25147 *28-29 (D. Colo. 2001) (explaining in tort context burden of showing apportionment of liability among joint tortfeasors is upon the tortfeasors).

The standard set forth above comports with the opinion of DI's expert. "[T]o calculate damages based on defendant's profits, a plaintiff may simply establish the amount of accused sales

19

thereby shifting the burden to defendant to explain any allowable deductions from sales or reductions for apportionment of income to sources other than the subject of the alleged liable acts." (Ratliff Report, ¶ 5).

    2.    Fisher-Price Has Failed to Meet Its Burden to Show that Apportionment is Applicable in this Case

Fisher-Price cites several cases for the proposition that apportionment is required by law. This is inaccurate -- the law *allows* for apportionment, but what is *required* is that the infringer must prove such apportionment when applicable. *See Softel, Inc. v. Dragon Medical and Scientific Communications, Ltd.*, 891 F. Supp. 935, 941 (S.D.N.Y. 1995). Importantly, the Second Circuit has made clear that the infringer must come forward with evidence to demonstrate that apportionment is applicable:

> Finally, we turn to TFG's claim that the damage award must be reduced to reflect an apportionment between the value created by the infringing material and the value created by the non-infringing material. It is true that Judge Conboy found as a fact that only certain portions of TFG's robotics study infringed the Predicasts study. It is also true that "where an infringer's profits are not entirely due to the infringement, and the evidence suggests some division which may rationally be used as a springboard it is the duty of the court to make some apportionment." *Orgel v. Clark Boardman Co.*, 301 F.2d 119, 121 (2d Cir.), *cert. denied*, 371 U.S. 817, 9 L. Ed. 2d 58, 83 S. Ct. 31, 135 U.S.P.Q. (BNA) 502 (1962); *see also Sygma Photo News, Inc. v. High Society Magazine*, 778 F.2d 89 (2d Cir. 1985). The burden is on the infringer, however, to prove the portion of total profits attributable to non-infringing elements. *Sheldon v. Metro-Goldwyn Pictures*, 309 U.S. 390, 405-06, 84 L. Ed. 825, 60 S. Ct. 681 (1940); *Lottie Joplin Thomas Trust v. Crown Publishers, Inc.*, 592 F.2d 651, 657 (2d Cir. 1978). Judge Conboy found that TFG had not carried its burden, and we agree. He found as a fact that the "heavily infringed" portions were the sections of both reports "that most gave them their value." 700 F. Supp. at 1241. That finding is not clearly erroneous. Moreover, we agree that here infringed portions are so suffused and intertwined with non-infringing portions as to render [an apportionment] impossible" in the instant case. *Id*. Under such circumstances, no apportionment is appropriate. *See Sheldon*, 309 U.S. at 401-02; *Belford v. Scribner*, 144 U.S. 488, 508, 36 L. Ed. 514, 12 S. Ct. 734 (1892); *Callaghan v. Myers*, 128 U.S. 617, 665-66, 32 L. Ed. 547, 9 S. Ct. 177 (1888); *Alfred Bell & Co. v. Catalda Fine Arts, Inc.*, 86 F. Supp. 399 (S.D.N.Y. 1949), aff'd as modified, 191 F.2d 99 (2d Cir. 1951).

*Business Trends Analysts, Inc. v. Freedonia Group, Inc.*, 887 F.2d 399, 407 (2d Cir. 1989).

Fisher-Price cannot meet its burden to prove apportionment. The Hoffman Report does not offer evidence for an apportionment theory. "Apportioning this amount between the concepts contributed by the plaintiffs and the concepts, investments, brand equity and business risks contributed or bourne by Fisher-Price yields $2.8 million (approximately 22 percent) as damages to the plaintiffs and the $9.7 million (approximately 78 percent) attributable to Fisher-Price. (*See* Hoffman Report at 4). Mr. Hoffman makes broad statements without an analysis of where he derived such figures. Further, Mr. Hoffman explains that the apportionment should be pursuant to the three percent royalty of the Option Agreement which is presumably how he arrives at the 22 percent figure. (*Id.* at pg. 10-11) Yet, this is not an analysis of apportionment of infringing and non-infringing elements of products as set forth in the law on apportionment. Rather, it is merely a calculation of the royalty of the expired Option Agreement as applied to what Mr. Hoffman refers to as the "operating profits" of Fisher-Price.[6] (*Id.*)

Fisher-Price should not now be allowed to apportion profits where there is no evidence to support what is attributable, if anything, to non-infringing components of the products sold. *See Hamilton-Brown Shoe Co. v. Wolf Brothers & Co.*, 240 U.S. 251 (1916) (quoting *Graham v. Plate*, 40 Cal. 593, 598 (1871) for an infringing use of a trademark "it is more consonant with reason and justice that the owner of the trade-mark should have the whole profit than that he should be deprived of any part of it by the fraudulent act of the defendant."); *Trappey et al. v. McIlhenny Co.*, 12 F.2d 19, 21 (5th Cir. 1926) (citing *Hamilton-Brown Shoe Co. v. Wolf Bros.*, 240 U.S. 251-60 (1915) and explaining that

---

[6] In *Caffey v. Cook*, 409 F. Supp. 2d 484, 506-07 (S.D.N.Y. 2006), under the section of the opinion, "*Defendant's Burden in Showing Profits Attributable to Other Factors*" the court discussed factors that the Second Circuit considers for apportionment purposes such as the following: 1) "defendants' 'own notoriety and ability to command high prices for [their] work" (quoting *Rogers v. Koons*, 960 F.2d 301, 313 (2d Cir. 1992); 2) "the 'expert and creative operations involved in the production'" of the product (quoting from *Sheldon v. Metro-Goldwyn-Mayer, Inc.*, 309 U.S. 390, 406 (1940); 3) the "drawing power of the defendants" (*Id.* at 406.); and 4) "the creativity of the defendants" in the product (citing *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 886 F.2d 1545 (9th Cir. 1989). Fisher-Price has not offered or even identified evidence to show these types of factors from which an apportionment of profits may be made. Accordingly, an apportionment of profits cannot be determined in this case.

21

because there was "no possible way of allocating the effect of the infringed trade-mark upon the distribution of profits, there was no burden on the appellee to make such allocation."); *Knitwaves Inc. v. Lollytogs Ltd.*, 71 F.3d 996 (2d Cir. 1995) (upholding "district court's decision [in copyright case] not to apportion its award of wrongful profits" where "the infringing aspects of the matching sets…gave the sets their value"); *Maxwell v. Angell-Etts*, 2001 U.S. Dist. LEXIS 25418 * 21 (S.D.N.Y. July 11, 2001) (explaining that defendant had not proved apportionment in patent infringement case and, therefore, defendant had no basis to dispute the damages); *Business Trends Analysts, Inc. v. The Freedonia Group, Inc.*, 887 F.2d at 407 (citing *Sheldon v. Metro-Goldwyn Pictures*, 309 U.S. 390, 401-02 (1940); *Belford v. Scribner*, 144 U.S. 488, 508 (1892); *Callaghan v. Myers*, 128 U.S. 617, 665-66 (1888); *Alfred Bell & Co. v. Catalda Fine Arts, Inc.*, 86 F. Supp. 399 (S.D.N.Y. 1949), *aff'd as modified*, 191 F.2d 99 (2d Cir. 1951)).

### C. Neither the Jury's Verdict, Nor the Three Percent Royalty Is Appropriate for Apportionment

As an initial matter, apportionment was not an issue before the jury for determination. *See Tamko Roofing Products, Inc. v. Ideal Roofing Company, Ltd.*, 282 F.3d 23 (1st Cir. 2002) (upholding award of defendant's entire profits and noting that defendant did not ask for a jury finding on issue of apportionment and that defendant had not provided evidence on the issue). Fisher-Price's argument that the Court should rely on apportionment based on the jury verdict or on the three percent (3%) royalty from the expired Option Agreement are not factors which are appropriate for determining apportionment. (Def. Tr. Mem. at 22-23). The jury's verdict represents a reasonable royalty, not an apportionment pursuant to a disgorgement of profits. It is impossible to ascertain the basis for the jury's precise award. Any attempt to suggest that apportionment was a basis for the jury's award is pure speculation. Indeed, no evidence for apportionment was presented to the jury and Fisher-Price did no seek to submit any question to the jury to determine if an apportionment should or could be made. It would also be highly unlikely since Fisher-Price never even argued that apportionment was

22

appropriate. Rather, Fisher-Price argued that the jury should find no liability and award no damages to DI.

Similarly, the royalty from the expired Option Agreement is also inapplicable to the disgorgement proceeding. Fisher-Price has the burden to show non-infringing elements of the accused products, and to also provide evidence that those non-infringing elements were a factor in consumers' purchasing decisions. Fisher-Price once again relies on *Vermont Microsystems, Inc. v. Autodesk, Inc.*, 138 F.3d 449 (2d Cir. 1998) for the proposition that a reasonable royalty should be used in this case. However, the reasonable royalty method was used in *Vermont Microsystems* because the district court found previously that a determination could not be made as to plaintiff's actual loss or defendant's actual profit. Therefore, the issue was not that apportionment was imprecise but that profits could not be determined at all. (*Id.*) In this case, Fisher-Price's profits have been shown and can be disgorged. Any royalty calculation, including the royalty in the parties' expired Option Agreement, is simply inapplicable to the issue of apportionment.

## V. THERE IS NO BASIS TO REDUCE THE AMOUNT OF DI'S AWARD OF DISGRORGEMENT DAMAGES BY ONE-HALF

In asking the Court to reduce the amount of DI's award of disgorgement damages by one-half because DI and Mr. Reiling owned the Reel Heroes concept on a 50%-50% basis, Fisher-Price repeats the exact same argument that it presented to the Court in its Motion in Limine No. 8(2). Because the Court denied Fisher-Price's motion on January 12, 2006, the issue of whether DI's damage award should be reduced by one-half as a matter of law is now law of the case and Fisher-Price is barred from re-arguing it at this stage of the proceedings.[7]

---

[7] "Under the doctrine of law of the case, a decision on an issue of law made at one stage of a case becomes a binding precedent to be followed in successive stages of the same litigation." 1B James W. Moore, Jo D. Lucas & Thomas S. Currier, *Moore's Federal Practice* 0.404[1], at 117 (1991). The Second Circuit has previously held that "The law of the case doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case." *Dilaura v. Power Auth. Of the State of New York*, 982 F.2d 73, 76 (2d Cir. 1992). "Decisions may not usually be changed unless there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice." *Virgin Atl. Airways Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992).

23

Irrespective of the application of law of the case doctrine, Fisher-Price cites no legal authority to support its charge that DI's damages must be reduced by one-half as a result of Reiling's dismissal. In its proposed jury instructions, Fisher-Price had relied on the case of *E.R. Squibb & Sons, Inc. v. Lloyd's Companies*, 241 F.3d 154, 173 n.11 (2d Cir. 2001) for the proposition that the Second Circuit does not permit double recovery of damages. Fisher-Price's failure to reference that decision in its Trial Memorandum is not surprising given that the case actually refutes Fisher-Price's "double recovery" argument. *E.R. Squibb* involved a complex insurance coverage action. During the course of the litigation, several of the insurers settled with the plaintiff, Squibb. On appeal, the remaining insurers challenged the lower court's damage award to Squibb on the ground that it "resulted in an improper 'double recovery' for Squibb by virtue of the fact that its allocation scheme attributed to the [remaining defendants] excessive responsibility for certain claims that had been the subject of settlements with the primary insurers." (*Id.* at 172). The Second Circuit rejected the insurers' challenge on appeal and affirmed the lower court's damage award. In so doing, the court expressly recognized that a "double recovery" might result under the particular circumstances of the case. (*Id.* at 172-173, n. 11).

Fisher-Price's position is also contrary to well-established principles of intellectual property law. A joint owner of an intellectual property right, such as a patent, has an indivisible interest in that property and may license it to a third party without the co-owner's consent. *Willingham v. Lawton*, 555 F.2d 1340, 1344 (6th Cir. 1977); *see also* 35 U.S.C. § 262. *See also Schering Corp. v. Roussel*, 104 F.3d 341, 344 (Fed Cir. 1997) ("Each co-owner's ownership rights carry with them the right to license others, a right that also does not require the consent of any other co-owner"). The evidence at trial established that DI and Reiling are co-owners of the Reel Heroes concept, and a concept is an established property right. (Tr. at 268-69); *Downey v. General Foods Corp.*, 31 N.Y.2d 56, 61, 334 N.Y.S.2d 874, 877, 286 N.E.2d 257 (N.Y. 1972). It follows that if DI could license its indivisible

24

interest in the concept to Fisher-Price for full compensation without Reiling's consent, it should be entitled to receive full compensation when its rights are misappropriated.

Moreover, an award to DI of the full amount of the damages that flow from Fisher-Price's misappropriation is also consistent with the fact that Fisher-Price treated the concept here as a distinct intellectual property right, without regard to the number of owners. Indeed, the evidence at trial established that Fisher-Price intended to compensate the Reiling/DI joint inventive entity for the use of Reel Heroes concept, irrespective of the number of parties that made up the inventive entity. (*See* JX 10). For this reason, Fisher-Price should not benefit by the fact that one of the two co-owners of the concept was dismissed from the lawsuit. It should still be liable in full to the remaining party, DI, who possesses an undivided interest in the concept. [8]

## CONCLUSION

For all of the foregoing reasons this Court should proceed with the bench trial on damages and those damages should be based on Fisher-Price's net sales of $66,282,800, reduced only by those costs which Fisher-Price can establish are directly related to the production and sales of those products.

GRIMES & BATTERSBY, LLP

By: *[signature]*
Edmund J. Ferdinand, III (Bar No. 21287)
488 Main Avenue, Third Floor
Norwalk, Connecticut 06851-1008
(p) (203) 849-8300

SANDAK HENNESSEY & GRECO, LLP
Jay H. Sandak, Esq.
Peter M. Nolin, Esq.
707 Summer Street
Stamford, Connecticut 06901-1026
(p) (203) 425-4200

---

[8] Fisher-Price references the fact that Mr. Reiling filed an appeal of the Court's summary judgment decision. While Mr. Reiling does not deny his intention to appeal absent some satisfactory resolution of his claims, Fisher-Price should have advised the Court that the appeal has been dismissed by a joint motion of the parties on the basis that the appeal was premature given the ongoing proceedings in this Court.

## CERTIFICATE OF SERVICE

I hereby certify that on April 17, 2006 a copy of the foregoing Response to Defendant's Trial Memorandum Regarding Disgorgement Damages was served on all counsel of record below by U.S. Mail, First Class, postage prepaid, with a courtesy copy sent via electronic means to:

Jacqueline Bucar Esq.
Robert Allen, Esq.
Tyler Cooper & Alcorn, LLP
205 Church Street
New Haven, Connecticut 06510

Bradford S. Babbitt, Esq.
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, CT 06103-3597

Robert J. Lane, Jr., Esq.
Jodyann Galvin, Esq.
HODGSON RUSS LLP
One M&T Plaza, Suite 2000
Buffalo, New York 14203-2391

William Wallace, Esq.
Jay Alexander, Esq.
Milbank, Tweed, Hadley & McCoy-DC
1825 Eye St., N.W., Suite 900
Washington, DC 20006

_____
Edmund J. Ferdinand, III