UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

**Design Innovation, Inc.,**          :
    **Plaintiff,**                    :
                                      :
v.                                    :     Case No. 3:03cv222 (JBA)
                                      :
**Fisher-Price, Inc.,**               :
    **Defendant.**                    :

**RULING ON PLAINTIFF'S MOTION FOR RECONSIDERATION OF RULING ON DEFENDANT'S MOTION TO CANCEL DISGORGEMENT HEARING [DOC. # 296]**

On April 25, 2006, the Court issued its Ruling on Defendant's Motion to Cancel Disgorgement Hearing ("Disgorgement Ruling") [Doc. # 295], granting defendant's motion and cancelling the disgorgement hearing on the basis that plaintiff Design Innovation ("DI") was not entitled to a disgorgement of defendant Fisher-Price ("FP")'s profits as damages for its claims as a matter of law.

Plaintiff DI now moves for reconsideration [Doc. # 296] on the basis that (1) the Court ruled in favor of FP before receiving DI's opposition to FP's motion; (2) the Court's ruling effectively deprived DI of its right to a jury trial on the issue of disgorgement damages; and (3) disgorgement of profits is the preferred measure of damages in misappropriation and unfair competition cases under New York law.

Although plaintiff's motion is styled as one for reconsideration, the Court treats it as an opposition memorandum because the Court issued its ruling on defendant's request to

cancel before receiving plaintiff's formal opposition memorandum, although as discussed below, the arguments DI advances here were already aired and considered prior to and during the Phase 1 trial as well as in the parties' Phase 2 trial memoranda.[1] However, even treating plaintiff's motion as an opposition memorandum, and therefore not invoking the strict standard normally applied to reconsideration motions, the Court sees no basis for altering its prior conclusion. Accordingly, plaintiff's motion is denied.

## I.   Procedural Background

As detailed more fully in the Court's Disgorgement Ruling, on February 6, 2006 the jury returned a verdict for DI on its claims of misappropriation and unfair competition against FP for using the Reel Heroes toy concept submitted by DI and co-plaintiff Victor Reiling without compensation and awarded damages to DI in the form of reasonable royalties in the amount of $1.7 million. The award was reduced post-trial to $786,756.00 to eliminate damages awarded for line extensions. See Am. Judgment [Doc. # 314]. Prior to trial, the parties agreed to postpone for the Court's determination whether plaintiff was entitled to a disgorgement of FP's profits as damages for misappropriation and

---

[1] The Court notes that DI does not cite any case in its reconsideration motion related to the merits of whether disgorgement is an appropriate remedy in this case not previously referenced in its pre-Phase 1 briefing or Phase 2 trial memoranda.

unfair competition, if proved. After the jury returned its verdict, the Court set down a hearing date on the disgorgement issue for May 1, 2006. However, after reviewing the parties' trial memoranda and FP's motion to cancel, the Court determined that disgorgement of FP's profits was not an appropriate remedy for the liability the jury found proved and accordingly cancelled the disgorgement hearing.

    The Court determined that, in keeping with the principle under the New York law applicable to this case that compensatory damages are to "make good or replace the loss caused by the . . . tortious conduct complained of," rather than to deter future conduct, where the actual loss to a plaintiff can be calculated, that loss is the appropriate measure of damages. The Court observed that the cases where disgorgement of a defendant's profits are awarded involve circumstances where a defendant diverts sales away from a plaintiff and thus reaps profits that the plaintiff itself would otherwise have received, and thus the defendant's profits are a reasonable measure, or proxy, for plaintiff's lost profits. See Disgorgement Ruling at 6-7. The Court found that by contrast, "[i]n this case, the evidence established that had FP not misappropriated the Reel Heroes concept, it would have paid DI royalties on sales of the accused products," that the jury's verdict thus "compensated DI for its lost profits, i.e., lost royalties," and therefore "a

disgorgement of FP's profits would bear no relation to DI's actual losses, and would constitute a windfall above and beyond any profits DI could have ever expected to make." Id. at 5-6. The Court accordingly held that the jury's verdict adequately compensated DI for its losses and that a disgorgement of FP's profits would be inappropriate as a matter of law.

**II. Discussion**

    A.   Plaintiff's Law of the Case Argument

"[T]he doctrine of law of the case posits that when a court decides upon a rule of law, that decision should generally continue to govern the same issues in subsequent stages in the same case." Rezzonico v. H&R Block, Inc., 182 F.3d 144, 148 (2d Cir. 1999) (citing Arizona v. California, 460 U.S. 605, 618 (1983)). "Application of the law of the case doctrine varies depending upon the context. . . . [R]ulings of the district court are subject to revision by that court 'at any time before the entry of final judgment.'" Id. (quoting Fed. R. Civ. P. 54(b)); see also DiLaura v. Power Auth. of the State of N.Y., 982 F.2d 73, 76 (2d Cir. 1992) ("This doctrine is admittedly discretionary and does not limit a court's power to reconsider its own decisions prior to final judgment."). "[T]he major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." DiLaura,

982 F.2d at 76.

Here, as plaintiff acknowledges in its reply memorandum, prior to the issuance of the Court's Disgorgement Ruling, DI's entitlement to disgorgement damages had not been determined in the Court's rulings.  See Reply Br. [Doc. # 311] at 1.  While the Court denied FP's pre-trial motion in limine which sought to preclude disgorgement as a damages theory, it did so non-substantively, noting "[w]hat the ramifications of that are, are not yet fully fleshed out."  1/5/06 Tr. [Doc. # 193] at 161.  During trial, the parties and the Court discussed the "proposal . . . that the issue of the plaintiff's right to disgorgement of profits and the result thereof would be tried to the Court at some later time," which DI agreed to.  1/24/06 Tr. [Doc. # 260] at 1140.  Thus, the record is clear that, as DI admits, no final decision had been rendered concerning DI's entitlement to a disgorgement remedy.  There was no pre-trial "law of the case" applicable to the disgorgement issue as DI's potential entitlement to disgorgement required fuller elaboration of the legal foundation for such a claimed remedy as well as the trial evidence, which established, as also recognized by plaintiff's counsel, that this case was "not a misappropriation in a situation where we were, in fact, selling the concept to somebody else, so it's a question of how much our profit got diverted.  We were not in a position to sell this ourselves, so the only model

<u>of our own profits would be reasonable royalty</u>, as I read the cases." 1/13/06 Tr. [Doc. # 202] at 254 (emphasis added).

Rather than press its "law of the case" argument on reply, plaintiff argues that although it "agreed to withdraw its claim of disgorgement from the jury and have the Court act as trier of fact on the disgorgement issue," "DI did not agree that its right to be heard on the disgorgement issue would be forfeit [sic] if the jury returned a verdict in DI's favor on the remaining theory of a reasonable royalty." Reply Br. at 1-2. However, notwithstanding DI's representations concerning the factual and expert evidence it would have offered at a hearing, plaintiff's right to be heard on the disgorgement issue was <u>not</u> forfeited as its position (both as to legal entitlement and calculation methodology) was aired in substantial argument and briefing pre-, post-, and during the Phase 1 trial, and was considered by the Court in its decision that as a matter of law (and regardless of what plaintiff's proffered evidence might show), DI was not entitled to a disgorgement remedy. Indeed, DI's position, as re-aired and fleshed out in this reconsideration motion, is being considered again by the Court.

Thus, pursuant to the parties' agreement at trial that the issue of a disgorgement remedy would be tried by the Court, DI's entitlement to that remedy was necessarily always to be determined by the Court. The Court cancelled any hearing to

conserve the resources of the Court and the parties once the Court's research and consideration of prior submissions convinced it that DI was not entitled to this remedy as a matter of law. While the Court appreciates plaintiff's frustration arising from the timing of the decision, before DI's opposition to FP's motion to cancel was filed, and therefore is treating this reconsideration motion as an opposition memorandum, as described below the Court does not find plaintiff's arguments concerning entitlement to disgorgement to be meritorious.

### B. Disgorgement as Remedy

As the Court observed in its Disgorgement Ruling, under New York law "[c]ompensatory damages, as indicated by the word employed to characterize them, simply make good or replace the loss caused by the . . . tortious conduct complained of. . . . Unless the circumstances are such as to justify an award of punitive or exemplary damages, the injured party is entitled to indemnity for [its] loss, and no more." N.Y. Jur. 2d Damages §§ 8-9. In New York, compensatory damages are not used for the purpose of accomplishing social policies or deterring wrongful behavior "because New York law achieves deterrence through punitive damages." Gidatex v. Campaniello Imports, Ltd., 82 F. Supp. 2d 136, 146 (S.D.N.Y. 2000) (citing Getty Petroleum Corp. v. Island Transp. Corp., 878 F.2d 650, 657 (2d Cir. 1989)).

DI offers the proposition that "the Court should award

disgorgement not only to ensure that Fisher-Price does not benefit from its wrongful conduct, but as a deterrent to future conduct. Disgorgement removes an incentive for misappropriating trade secrets by removing the benefit of misappropriation. . . . Although disgorgement discourages misappropriation, it is not punitive." Pl. Mem. [Doc. # 297] at 15, 20-21. Many of the cases plaintiff cites, however, do not apply New York law, which explains the application of principles which conflict with New York's as described above.[2] See Maltina Corp. v. Cawy Bottling Co., 613 F.2d 582, 585 (5th Cir. 1980) (Lanham Act provides for recovery of a defendant's profits); Roulo v. Russ Berrie & Co., 886 F.2d 931 (7th Cir. 1989) (Lanham Act and Copyright Act claims); Playboy Enter., Inc. v. Baccarat Clothing, Co., 692 F.2d 1272 (9th Cir. 1982) (Lanham Act claim). While the decision in Sands, Taylor & Wood v. Quaker Oats Co., 34 F.3d 1340, 1351 (7th Cir. 1994), criticizes a reasonable royalty award as "rest[ing] on a legal fiction," in this case DI's lost profits were provable because the evidence showed that had FP not misappropriated DI's

---

[2] Plaintiff argues that "the mere payment of a reasonable royalty is disfavored as a measure of damages because of its failure to appropriately compensate the plaintiff and have a deterrent effect [and] [n]unc pro tunc payment of the royalty fee becomes simply the judicial expense of doing business." Pl. Mem. at 22. However, plaintiff sought punitive damages for this purpose and the jury determined they were not warranted. Moreover, the "American Rule" is that each side pays its own costs and fees of litigating absent statutory authorization. See Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 602 (2001).

Reel Heroes concept, DI would have been paid specific royalties for FP's use of the concept in its products.[3]  <u>Electrolux Corp. v. Val-Worth, Inc.</u>, 6 N.Y.2d 556 (1959), while recognizing the principle that "equity will treat the wrongdoer as a trustee for the plaintiff so far as the former has realized profits from its acts," actually found disgorgement inappropriate because the defendant had not diverted plaintiff's profits to itself, but instead "[t]he damage . . . [wa]s chiefly to the good will and reputation of plaintiff corporation.  Thus, it would seem that the measure of damages would be any loss in business which can be traced directly to respondents' disparagement of the [plaintiff corporation]."  6 N.Y.2d at 571-72.  The <u>Electrolux</u> court also noted that "especially in a suit for unfair competition [] disposition of each case peculiarly depends upon the precise state of facts disclosed."  <u>Id</u>. at 571.  <u>Dad's Root Beer Co. v. Doc's Beverages, Inc.</u>, 94 F. Supp. 121, 121-22 (S.D.N.Y. 1950), <u>aff'd</u> 193 F.2d 77 (2d Cir. 1951), is distinguishable from this case because both parties in <u>Dad's</u> were root beer sellers and the defendant's profits approximated the plaintiff's losses because defendant sold root beer in a market previously served by

---

[3] <u>Mason v. Sybron Corp.</u>, 955 F.2d 48, 49 (9th Cir. 1992), can also be distinguished on this basis as that decision stated, "<u>unless a specific injury to the plaintiff can be established</u>, such as lost sales, the loss to plaintiff is not the proper basis for assessing damages.  In such cases defendant's gain may serve as the point of proper reference in determining the extent of the plaintiff's loss." (emphasis added).

plaintiff, passing off its product as plaintiff's.

Moreover, the dated New York cases from a half-century ago cited by DI for the proposition that a wrongdoer should be disgorged of its profits have been superseded by contemporary cases concluding that disgorgement is an appropriate remedy only when a defendant's profits are a reasonable proxy for a plaintiff's lost profits.  See, e.g., Gidatex, 82 F. Supp. 2d at 146 ("Under New York law, a jury awards a defendant's profits under the theory that a plaintiff is entitled to recover as damages the amount of loss sustained by it, including opportunities for profit on the accounts diverted from it through defendants' conduct."); Hertz Corp. v. Avis, Inc., 106 A.D.2d 246, 251, 485 N.Y.S.2d 51, 54 (N.Y. App. Div. 1985) ("[A]n accounting for profits is based upon the assumption and showing that the defendant has either infringed upon plaintiff's trademark or otherwise passed his goods off as plaintiff's goods, or unfairly competed in some way as to pre-empt business which would otherwise have gone to plaintiff.  The accounting for profits in such cases is not in lieu of damages but is the method of computing damages.").[4]

---

[4] See also David Fox & Sons, Inc. v. King Poultry Co., 23 N.Y.2d 914 (N.Y. 1969) (plaintiff could recover defendant's profits only on sales that plaintiff would have made); Michel Cosmetics v. Tsirkas, 282 N.Y. 195, 200 (N.Y. 1940) ("Here if the plaintiff would otherwise have made the sales of the lipsticks which in fact the defendants made by the use of plaintiff's formulas, then the plaintiff is entitled to recover from the

The cases cited by DI are not to the contrary.  As noted in the Court's Disgorgement Ruling, although <u>The Topps Co. v. Cadbury Stani S.A.I.C.</u>, 380 F. Supp. 2d 250, 270 (S.D.N.Y. 2005), states that "[t]he most commonly accepted measure of damages for trade secret misappropriation is the defendant's profits," the treatise that <u>Topps</u> cites for this proposition, Michael A. Rosenhouse, <u>Proper Measure and Elements of Damage for Misappropriation of a Trade Secret</u>, 11 A.L.R.4th 12 § 2(a), also opines that "[i]n determining the proper measure of damages . . . the first inquiry of the courts generally has been whether there is any factual basis, such as a royalty agreement . . . from which one might legitimately determine the value which the parties themselves actually assigned to the misappropriated information.  Where such circumstances exist, the courts usually have drawn upon them in order to measure the plaintiff's damages, calling the award a 'reasonable royalty,' an 'established royalty,' a 'negotiated royalty,' or, simply, a 'royalty.'"  In

---

defendants the amount of the profits which the plaintiff would have acquired upon such sales but for the defendant's wrong."); <u>Spielvogel v. Zitofsky</u>, 175 A.D.2d 830, 831, 573 N.Y.S.2d 198, 199 (N.Y. App. Div. 1991) ("In awarding to the plaintiffs a sum of money allegedly representing all the profit made by the [defendant] during the time of his improper competition, the Supreme Court necessarily found that the plaintiffs would have made all the sales actually made by the [defendant] if the [defendant] had not competed with them.") (internal citation omitted).

11

this case, such evidence existed.[5] The remainder of the cases cited by plaintiff support the principle that disgorgement awards are permitted only where such an award will approximate the plaintiff's actual loss. See Softel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc., 118 F.3d 955, 969-70 (2d Cir. 1997) (award based on defendant's profits for misappropriation of trade secrets, while ultimately set aside as coextensive with copyright infringement damages, was appropriate measure of damages because it approximated plaintiff's lost profits where plaintiff and defendant were competitors); AFA Tours, Inc. v. Whitchurch, 937 F.2d 82, 87 (2d Cir. 1991) (considering possible damages on a misappropriation of trade secret claim for jurisdictional purposes, noting that "what [the information provided] mean[t] in terms of loss of earnings to [plaintiff]," was not revealed by the record and thus "the court could not conclude to a legal

---

[5] Plaintiff argues that "although the Reel Heroes concept was intended specifically for Fisher-Price's Rescue Heroes line of action figures, it could have been adapted for other product lines by other manufacturers, had Defendant not misappropriated it [and] [t]he compensation that DI would have received was not necessarily a reasonable royalty, as a toy company has the option to purchase an idea for a lump-sum payment [and] it is also possible that DI could have reached an agreement with another company which would have resulted in a portion of the profits being paid to DI."  Apart from the speculative nature of this argument, it also does not support plaintiff's claim of entitlement to disgorgement because loss of a lump-sum payment or a portion of another company's profits would not be approximated by a disgorgement of FP's profits from the sale of its action figures.  Moreover, the jury's award is in itself a "portion of" FP's profits.

12

certainty that the value of [plaintiff's] claims did not exceed the jurisdictional minimum") (emphasis added); Electro-Miniatures Corp. v. Wendon Co., 771 F.2d 23, 27 (2d Cir. 1985) (jury's award was supported by the evidence where plaintiff and defendant were the only United States companies capable of producing the products using the misappropriated trade secret material and thus defendant's sales came at the expense of the plaintiff); Univ. Computing Co. v. Lykes-Youngstown Corp., 504 F.2d 518, 535-37 (5th Cir. 1974) (the value of the misappropriated trade secret to the defendant would only be awarded if plaintiff was unable to prove specific injury); Linkco, Inc. v. Fujitsu, Ltd., 232 F. Supp. 2d 182, 186 (S.D.N.Y. 2002) (reasonable royalty awarded where plaintiff's lost profits (from lost sales) were difficult to calculate given that plaintiff had gone out of business, and defendant had made no profit); Gilroy v. Am. Broad. Co., 365 N.Y.S.2d 193 (N.Y. App. Div. 1975) (the measure of damages is the reasonable value of what was misappropriated and plaintiff should not have been limited to defendant's profits where those profits did not adequately measure the value of the plaintiff's idea); Miss Susan, Inc. v. Enter. & Century Undergarment Co., 270 A.D. 747, 749-50, 62 N.Y.S.2d 250, 253-54 (N.Y. App. Div. 1946) (award of defendant's profits from sales of "women's slips with trade-mark and label which were a simulation of plaintiffs' trade-mark and label and with intention to cause the purchasing public to

13

believe that defendant's slip was the same as plaintiffs'" was appropriate where plaintiff and defendant were direct competitors); McNamara v. Powell, 52 N.Y.S.2d 515 (N.Y. Sup. Ct. 1944) (not addressing issue of disgorgement where defendant's profits are not a reasonable approximation of the profits lost by plaintiff).

Plaintiff's contention that disgorgement is appropriate because any damages award should approximate the "reasonable value" of the concept that was misappropriated, Pl. Mem. at 13, is inapposite because that value is reflected by the jury's award – calculated by imposing a royalty rate on FP's sales of the products which the jury found misappropriated DI's concept – because the evidence showed that had FP not misappropriated DI's concept, the amount of that royalty is what DI would have received. FP's net profits on the sales of its action figures incorporating DI's concept are thus not a reasonable measure for the loss of that royalty that DI suffered. Indeed, as DI's counsel acknowledged, this is not a case where plaintiff was "selling the concept to somebody else . . . We were not in a position to sell this ourselves, so the only model of our own profits would be reasonable royalty, as I read the cases." 1/13/06 Tr. at 254. Additionally, as discussed above, New York law does not envision a disgorgement of profits to deter conduct similar to FP's in the future, because that is the function and

14

province of punitive damages.

### III. Conclusion

For the foregoing reasons, plaintiff's Motion for Reconsideration [Doc. # 296] is DENIED.

                                   IT IS SO ORDERED.

                                         /s/
                                 Janet Bond Arterton
                                 United States District Judge

**Dated at New Haven, Connecticut this 28th day of November, 2006.**